Carol A. Sobel (SBN 84483)
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Ave.
Santa Monica, California 90401
Tel: (310) 393-3055
Email: carolsobel@aol.com

Shayla R. Myers (SBN 264054)           Catherine Sweetser (SBN 271142)
**LEGAL AID FOUNDATION**               **SCHONBRUN SEPLOW HARRIS**
**OF LOS ANGELES**                     **& HOFFMAN, LLP**
7000 S. Broadway                       11543 W. Olympic Blvd.
Los Angeles, CA 90003                  Los Angeles, CA 90064
Tel: (213) 640-3983                    Tel: (310) 396-0731
Email: smyers@lafla.org                Email: catherine.sdshhh@gmail.com

*Attorneys for Proposed Intervenors*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

|  |  |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.<br><br>Plaintiff(s),<br><br>vs.<br><br>City of Los Angeles, et. al.<br><br>Defendant(s). | CASE NO. 20-CV-02291-DOC-KES<br><br>Hon. David O. Carter<br>Courtroom 1<br><br>PROPOSED INTERVENORS' EX PARTE APPLICATION FOR INTERVENTION AND APPEARANCE AT MARCH 19, 2020 CONFERENCE<br><br>Date: None<br>Time: None<br>Ctrm: 1<br><br>Complaint Filed: March 10, 2020 |

1

TO ALL ATTORNEYS OF RECORD, pursuant to Fed. R. Civ. Pro. Proc. 65 and Local Civil Rule 65-1, Proposed Intervenors CANGRESS dba Los Angles Community Action Network ("LA CAN") and Los Angeles Catholic Worker file this ex parte application to allow LA CAN and LACW to intervene, pursuant to Federal Rule of Civil Procedure 24(a)(2) and 24(b) in this action and/or intervene at the conference currently set for March 19, 2020 at 10:00 a.m. in Courtroom 1 of the United States District Court in Santa Ana, California before the Honorable David O. Carter.

Absent the requested relief on an ex parte basis, LA CAN and LACW will suffer irreparable harm. The March 19 conference is likely to deal with matters that directly and adversely impact LA CAN and LACW, including matters that could directly interfere with the continued enforcement of the settlement in *Mitchell v. City of Los Angeles*, Case No. 16-cv-01750 SJO JPR.

Counsel for LA CAN and LA Catholic Worker advised Counsel for Plaintiff and the County of Los Angeles by email on March 17, 2020 and March 18, 2020 respectively of the intention to move ex parte for intervenor status. Attorneys for the City, Scott Marcus, was advised via telephone on March 17, 2020. There is no indication of their positions to date, regarding the ex parte application.

This ex parte application is based on the Complaint, the Memorandum of Points and Authorities below, the Request for Judicial Notice and corresponding Exhibits, Notice of Related Case, the argument of counsel, and such further evidence as the Court may consider regarding this Application.

//
//
//
//

2

Pursuant to Local Civil Rule 7-19, Plaintiff provides the following information:

Elizabeth A. Mitchell
Spertus, Landes & Umhofer LLP
617 W. 7th Street, Suite 200
Los Angeles, California 90012
T: (213) 205-6520
E: emitchell@spertuslaw.com

Mary Wickham
Los Angeles County Counsel
Kenneth Hahn Hall of Administration
500 West Temple Street #648
Angeles, California 90017
T: (213) 974-1833
E: mwickham@counsel.lacounty.gov

Scott Marcus
Office of the City Attorney, City of Los Angeles
200 N. Main Street
City Hall East, Rm. 800
Los Angeles, California 90012
T: (213) 978-8100
E: scott.marcus@lacity.com

Dated: March 18, 2020                Respectfully submitted,
                                     Legal Aid Foundation of Los Angeles

                                     _____/s/ Shayla Myers_____
                                     Attorneys for Proposed Intervenors

# **Table of Contents**

I.   **INTRODUCTION** ...........................................................1

II.  **BACKGROUND**..................................................................2

   a.   Proposed Intervenors.............................................2

   b.   Factual And Procedural Background ..............................3

III.   **PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT** ..............................................5

   a.   Proposed Intervenors have a Significant Protectable Interest in This Litigation .........................................................6

   b.   A Decision in this Action May Impair Intervenors' Ability to Protect their Interests ....................................................7

   c.   The Request is Timely .............................................8

   d.   Existing Parties May Not Represent Proposed Intervenors' Interests.............9

IV.   **LA CAN AND LACW SHOULD BE ALLOWED PERMISSIVE INTERVENTION** ...........................................................12

**Proposed Intervenor's Memorandum of Points and Authorities**
**ISO Motion to Intervene**

**Federal Cases**

*Arakaki v. Cayetano* 324 F.3d 1078 (9th Cir. 2003) ...............................................15

*Bond v. Utreras*, 585 F.3d 1061 (7th Cir. 2009) .......................................19

*Citizens for Balanced Use v. Mont.Wilderness Ass'n*, 647 F.3d 893

(9th Cir. 2011) ..............................................................................14, 17

*Coal. of Arizona/New Mexico Cnties for Stable Economic Growth*

 F.3d 837, 844–45 (10th Cir. 1996) ............................................15, 16

*County of Fresno v. Andrus,* 622 F.2d 436 (9th Cir.1980) ....................................17

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ............................................11

*Garcia v. City of Los Angeles*, 2:19-cv-06182-DSF-PLA ......................................16

*GOJO Indus., Inc. v. Barough*, ("*GOJO*"),

2018 WL 5880829, at *3 (C.D. Cal. Apr. 2, 2018) ....................................19

*Idaho Farm Bureau Fed. v. Babbit*, 58 F.3d 1392 (9th Cir. 1995) ..................13, 15

*In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 536 F.3d 980

(9th Cir. 2008) ...................................................................................12

*Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006),

*vacated*, 505 F.3d 1006 (9th Cir. 2007) ...........................................16

*Lavan v. City of Los Angeles*, 2:11-cv-02874-PSG-AJW (filed April 5, 2011) .......9

*Lavan v. City of Los Angeles*, 797 F.Supp.2d 1005 (C.D. Cal. 2011)...............9, 13

*Lavan v. City of Los Angeles*, 693 F.3d 1022 (9th Cir. 2012)...........................10, 16

*Los Angeles Catholic Worker et al. v. Los Angeles Downtown Industrial District,*

 *et al,* CV14-7344 PSG (AJWx). ..........................................................10

*Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) ..........................................17

*Mitchell v. City of Los Angeles*, 16-CV-01760-SJO (JPR) ........................7, 8, 9, 10

*Orange County Catholic Worker, et al. v. County of Orange*,

  18-CV-00155-DOC-JDE ("OCCW"). ...................................................18

*Providence Baptist Church v. Hillandale Comm. Ltd.,* 425 F.3d 309

(6th Cir.2005) ...........................................................................19

*Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525 (1983) ........................14

*Smith v. Los Angeles Unified School District*, 830 F.3d 843 (9th Cir. 2016) .........12

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir.)........................13

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ....................15

*Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989), *aff'd sub nom. Venegas v.*

  *Mitchell*, 495 U.S. 82 (1990) ..............................................................18

*Wash. State Building & Construction Trades v. Spellman*, 684 F.2d 627

(9th Cir. 982), .........................................................................13

## **Statutes**

## **Rules**

Fed. R. Civ. Proc. 24 ...........................................................10, 12, 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

**Proposed Intervenor's Memorandum of Points and Authorities**
**ISO Motion to Intervene**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This current action, brought by the Los Angeles Alliance for Human Rights ("LA Alliance") an unincorporated association made up primarily of business owners in Downtown Los Angeles, seeks to have this court issue orders to compel the City and County of Los Angeles to take actions regarding homelessness that could greatly impact the rights of homeless people throughout the City and County, and in particular, the rights of people who currently have no other option but to live outside. And yet, there are currently no homeless people who are unsheltered in the case.

Even worse, Plaintiffs' lawsuit seeks both implicitly and explicitly to collaterally attack the settlement in another case, *Mitchell v. City of Los Angeles*, 16-CV-01760-SJO (JPR), which was a lawsuit brought by four homeless individuals and Proposed Intervenors, Los Angeles Catholic Worker ("LACW") and Cangress, dba Los Angeles Community Action Network ("LA CAN"), (collectively, "Proposed Intervenors") against the City of Los Angeles ("City") in 2016 to protect the constitutional rights of unhoused people in Skid Row.  That case ended in a settlement that the parties signed in June 2019, which aims to protect unhoused residents of Skid Row from continuing violations of their civil rights, including by 1) creating protocols to ensure that unhoused people's belongings are not seized and thrown away as part of daily street cleanings in Skid Row; 2) establishing minimum standards for notice and storage of belongings so people can retrieve those belongings if they are taken to storage following an arrest or as part of a cleanup; and 3) establishing additional standards to ensure the City can address issues related to ADA access, access to buildings, and other issues related to the public rights of way, without violating unhoused people's rights (an issue that is all the more critical to LA CAN and LA Catholic worker, since many of their members and clients, as well as the individual plaintiffs in *Mitchell* have significant disabilities).

The Plaintiffs in this case previously attempted to intervene in *Mitchell v. City of Los Angeles* to invalidate the settlement. They bring this separate lawsuit to do what they could not do in *Mitchell*—use the Court to compel the City and County to take actions that could contravene unhoused residents' constitutional rights. Proposed Intervenors have a right to intervene in this litigation to protect both their interests in the *Mitchell* settlement and to ensure that the interests of their members and are not threatened as well.

## II.   BACKGROUND

### a. Proposed Intervenors

Proposed Intervenor LA CAN is a grassroots, non-profit organization that has operated in Skid Row and throughout Los Angeles for approximately two decades. The primary purpose of the organization is to organize and empower community residents to work collectively to address systemic poverty and oppression in the community. For example, in 2016, LA CAN was a supporter of Measure HHH and since then, has spent considerable resources working to ensure accountability in the spending of Measure HHH funds, including threatening litigation in 2016 to prevent the expenditure of funds on projects that were not authorized by the proposition.

Since its founding in 1999, LA CAN has been the only member-driven organization in Skid Row whose goal is to protect the rights and prevent the further disenfranchisement of homeless and poor people in Los Angeles. More than 800 low-income residents of Skid Row are involved with LA CAN. Many of its members are houseless and unsheltered each night on the streets of Los Angeles. LA CAN moves to intervene in this lawsuit on its own behalf and on behalf of its members who are unsheltered in Skid Row and throughout Los Angeles.

Proposed Intervenor Los Angeles Catholic Worker, ("LACW"), founded in 1970, is an unincorporated lay Catholic community of women and men that operate a free soup kitchen, hospitality house for the homeless, hospice care for the dying and by-monthly newspaper. Nicknamed the "Hippie Kitchen," the facility is located on

the Northeast corner of 6th Street and Gladys Avenue in Skid Row.  LACW provides full meals to the community three times a week.  In furtherance of its mission, the Hippie Kitchen associates to provide other services, including access to dental care, over-the-counter medications, podiatry services, toiletries and other personal items. In furtherance of its mission, for the past several years, the Hippie Kitchen has purchased shopping carts to provide them to unsheltered homeless persons to store and move their personal belongings.

Both LA CAN and LACW were plaintiffs in *Mitchell v. City of Los Angeles*, along with four homeless individuals who lived on the streets in Skid Row, were arrested for incredibly minor quality of life offenses or subjected to street cleanings, and had all of their belongings seized and destroyed or otherwise stored in a location that was completely inaccessible to them.  The individual plaintiffs in the action, Carl Mitchell, Judy Coleman, and Salvador Roque, [1] assigned their rights to enforce the settlement to LA CAN and LACW.  Therefore, Proposed Intervenors bring this motion to intervene on behalf of themselves, the members of LA CAN, and the individual plaintiffs in *Mitchell*.

### b. Factual And Procedural Background

As this Court well knows, and as the Plaintiffs spell out in their complaint, the issue of the rights of homeless individuals in Southern California has been the subject considerable litigation for decades, and most relevant here, for the past 10 years.

In 2011, the City of Los Angeles was sued by eight unhoused individuals related to the destruction of their belongings in Skid Row.  *Lavan v. City of Los Angeles*, 2:11-cv-02874-PSG-AJW (filed April 5, 2011).  The resulting Preliminary Injunction issued by Judge Gutierrez, enjoined the City of Los Angeles from seizing and destroying individuals' belongings. *See Lavan v. City of Los Angeles*, 797 F.Supp.2d 1005 (C.D. Cal. 2011).  The City appealed the injunction to the Ninth

---

[1] Michael Escobedo, the fourth individual plaintiff, passed away during the pendency of the litigation.

Circuit, which upheld the injunction.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1033 (9th Cir. 2012).

Shortly after the Ninth Circuit upheld the injunction, Proposed Intervenors LA CAN and LA Catholic Worker, along with four unsheltered residents on Skid Row, sued the Central City East Association and the Downtown Industrial District Business Improvement District,[2] as well as the City of Los Angeles, alleging that the City and Business Improvement District were colluding to deprive unhoused residents of their constitutional rights.  *See Los Angeles Catholic Worker et al. v. Los Angeles Downtown Industrial District, et al,* CV14-7344 PSG (AJWx).  Specifically, Plaintiffs alleged that Defendant City of Los Angeles ("City") provided law enforcement support and coordination to LADID to assist them in seizing and destroying property, despite the Court's preliminary injunction in *Lavan* to stop these illegal practices. *See* Proposed Intervenor's Request for Judicial Notice ("RJN"), ¶1, Exh. A.

After three years of litigation, the parties entered into a settlement agreement, which among other things, prevented the City of Los Angeles from continuing to collude with the Central City East Association to violate unhoused people's rights. The Los Angeles Police Department was required to issue a special order expressly instructing LAPD officers not to collude with BID employees to take and destroy individuals' belongings, in violation of the injunction issued in *Lavan*. *Id.*  The settlement remains in effect and the U.S. District Court retains jurisdiction to enforce the agreement. *Id.*

In 2016, four more homeless individuals and the Proposed Intervenors filed *Mitchell v. City of Los Angeles*, which yet again challenged the City's practice of seizing and either destroying homeless people's belongings, or storing seized belongings in a way that was completely inaccessible to Plaintiffs.  After the Court granted yet another preliminary injunction against the City of Los Angeles, the

parties entered into significant negotiations and finally reached a tentative settlement. The approval of the settlement was incredibly contentious, resulting in what was certainly a significant debate amongst the City Council members during a three hour closed session and ultimately, an instruction to the City Attorney to settle the case.

Before the settlement was finalized, the Plaintiffs in this lawsuit, then operating under the name DTLA Alliance for Human Rights,[3] indicated their intention to intervene in the litigation before the lawsuit was dismissed. The group inexplicably failed to do so, and the settlement was finally approved. Thereafter, the Court retained jurisdiction to enforce the settlement, and the Court dismissed the case. (*See* RJN, ¶2, Exhibit B). Thereafter, the group filed a motion to intervene, which was denied as untimely. LA Alliance filed a notice of appeal, but dropped the appeal before filing any briefs. Instead, on the day the group dismissed its appeal, they filed this instant lawsuit, making the same allegations as those outlined in Plaintiffs' Motion to Intervene and as discussed below, seeking in part to invalidate the settlement agreement in *Mitchell*.

### III. PROPOSED INTERVENORS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT

Federal Rules of Civil Procedure 24(a) provides that a party "who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" must be allowed to intervene in a case "unless existing parties adequately represent that interest." Fed. R. of Civ. Proc. 24(a)(2).

To be granted intervention as a matter of right, Proposed Intervenors must demonstrate that 1) they have a "significant protectable interest" relating to the matter that is the subject of the action; 2) a decision in the action may, as a practical matter, impair or impede Proposed Intervenors' ability to protect its interest; 3) the request to intervene is timely; and 4) the existing parties may not adequately

---

[3] *See* https://www.la-alliance.org/press.

represent proposed Intervenors' interest.  *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).  "Though the applicant bears the burden of establishing these elements, we have repeatedly instructed that 'the requirements for intervention are [to be] broadly interpreted in favor of intervention.'"  *Smith v. Los Angeles Unified School District*, 830 F.3d 843, 853 (9th Cir. 2016). Proposed Intervenors easily satisfy each of these prongs.

### a. Proposed Intervenors have a Significant Protectable Interest in This Litigation

Proposed Intervenors have a significant protectable interest in this litigation. Rule 24(a) does not require that the protectable interest at stake in the litigation be a specific legal or equitable interest.  "The 'interest' test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the 'interest' test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.  *In re Estate of Ferdinand E. Marcos Human Rights Litigation*, 536 F.3d 980, 984–85 (9th Cir. 2008)( quoting *S. Cal. Edison Co. v. Lynch,* 307 F.3d 794, 802 (9th Cir.2002).

Proposed Intervenors have a legally protectable interest in the settlement in *Mitchell v. City of Los Angeles*, which Plaintiffs explicitly and implicitly challenge in this lawsuit.  Plaintiffs allege in the seventh cause of action that the settlement in *Mitchell* was a project under CEQA, for which an environmental review was required.  *See* Comp. ¶ 165.  The eleventh cause of action challenges the settlement on due process and equal protection grounds, namely that the settlement distinguished between Skid Row and the rest of the City without a rational reason for doing so.  In addition to those causes of action that explicitly mention the *Mitchell* settlement, other causes of action, including the first, third through fourth, and seventh causes of action for negligence, nuisance, and violations of substantive due process, relate to conditions in Skid Row that Plaintiffs allege throughout the

complaint were caused by the *Mitchell* injunction and settlement. *See e.g.*, Comp. ¶¶ 30, 37, 48; Comp. Pg. 47. [4]

### b. A Decision in this Action May Impair Intervenors' Ability to Protect their Interests

To satisfy the second prong of the test for intervention as a matter of right, Plaintiffs must show that "the disposition of this case will, as a practical matter, affect" the interest at stake. *California ex rel Lockyer v. U.S.*, 450 F.3d 436, 442 (9th Cir. 2006). Again, as with all of the factors, the proposed intervenors "need not demonstrate that their interest would be impaired in a legal sense, only that their interest 'would be substantially affected in a practical sense." *Sw. Ctf. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir.) (quoting Fed. R. Civ. P. 24, Advisory Committee Notes).

Here, the remedy sought by the Plaintiffs could have the effect of undermining or even invalidating Proposed Intervenors' settlement with the City of Los Angeles. Indeed, Plaintiffs are seeking to do so here, just Plaintiffs explicitly sought to do when they moved to intervene in the *Mitchell*, and they intended to object to and ultimately aimed to invalidate the settlement. This is a more than sufficient showing for intervention. *See e.g., Idaho Farm Bureau Fed. v. Babbit*, 58 F.3d 1392, 1398 (1995) (decision in another case that could result in a legal decision undermining the result of another case is sufficient showing of impairment to support intervention). In

---

[4] Proposed Intervenors also have legally protected interests stemming from advocacy to pass and subsequently to protect the integrity of Measure HHH, *see Washington State Building & Construction Trades v. Spellman*, 684 F.2d 627 (9th Cir. 982), as well as on behalf of their members, who have a protectable interest to be free from increased enforcement and the violation of their constitutional rights. Although less concrete than the right to protect their settlement, Courts have recognized these as sufficient interests to support intervention, particularly where, as here, there is no other representation of unsheltered homeless people in Los Angeles, who are most likely to be impacted by any proposed remedies in this case.

7

addition, however, the settlement could also result in orders related to the expenditures of Measure HHH funds and changes in the allocation of resources, as well as the increased criminalization and enforcement of laws against LA CAN's members. All of these potential outcomes, contemplated by the sweeping complaint filed by Plaintiffs, could impact Proposed Intervenors' rights. *See Sagebrush Rebellion, Inc. v. Watt,* 713 F.2d 525, 526-27 (1983) (finding a right to intervene when an adverse decision in the suit would impair the intervenor's interest in the preservation of birds and their habitats); *Washington State Building & Construction Trades v. Spellman*, 684 F.2d 627 (9th Cir. 982) (public interest group entitled as a matter of right to intervene in an action challenging the legality of a measure which it had supported). There is more than enough potential to impair LA CAN and LACW's rights, that they should be allowed to intervene in this case.

### c. The Request is Timely

There should be no dispute that Proposed Intervenors' motion is timely. A motion made "at an early stage of the proceedings" will generally satisfy the timeliness requirement. *See Citizens for Balanced Use v. Mont.Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). In fact, Proposed Intervenors could hardly have moved faster to intervene. This case was filed on March 10, 2020, only eight days before Proposed Intervenors move to intervene, before even Defendants have appeared in this case. Proposed Intervenors moved ex parte, in order to intervene before the first hearing in this case, which has been set for just three days after this Court accepted the transfer of the case, in order to address emergency issues related to the Coronavirus. Proposed Intervenors' motion is therefore timely. *See Idaho Farm Bureau Fed. v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (intervention timely when applicant moved to intervene prior to hearing on a preliminary injunction motion, before any hearings or rulings on substantive matters).

//

//

### d. Existing Parties May Not Represent Proposed Intervenors' Interests

Finally, the parties in this case simply cannot adequately represent the Proposed Intervenors' interests. Whether another party's representation of Applicants' interests is adequate depends on: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003). The burden to show that a party's interests may not be adequately represented is minor: "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 (1972).

When the government is a party, the standard to demonstrate that the proposed intervenor's interest are not adequately represented has sometimes been held to be higher. *See e.g., Arakaki,* 324 F.3d at 1086. However, where as here, the government is antagonistic to the proposed intervenors or proposed intervenors have a discrete and particularized interest, the higher standard does not apply. *See Coal. of Arizona/New Mexico Counties for Stable Economic Growth v. Dept. of Interior*, 100 F.3d 837, 844–45 (10th Cir. 1996) ("An applicant may fulfill this burden by showing collusion between the representative and an opposing party, that the representative has an interest adverse to the applicant, or that the representative failed in fulfilling his duty to represent the applicant's interest."); *see also Idaho Farm Bureau Fed*., 58 F.3d at 1398 (9th Cir. 1995) (government agency unlikely to make strong arguments in support of its actions because it took those actions largely to fulfill a settlement agreement).

In this case, none of the parties can adequately represent Proposed Intervenors'

interests. First, with regards to the City, LA CAN and LACW have been directly adverse to the City in two lawsuits directly related to the issues in this case.[5]  In the first lawsuit, *LA Catholic Worker v. LADID*, Plaintiffs accused the City of colluding with the Central City East Association and the Los Angeles Downtown Industrial District, which is the business improvement district in Skid Row.  Although CCEA is not technically a plaintiff in this case, LA Alliance is intimately intertwined with CCEA.[6]  *See Coalition of Arizona/New Mexico Cnties for Stable Economic Growth* 100 F.3d at 844–45.  With regards to the actions to undermine the Mitchell settlement, even though the parties reached a stipulated settlement, the settlement came only after a hotly contested Preliminary Injunction, in which the City sought to overturn the injunction.  And as Plaintiffs note in their complaint, the City of Los Angeles continues to strenuously fight to prevent the protections secured in the *Mitchell* settlement from being implemented City-wide.  *See Garcia v. City of Los Angeles*, 2:19-cv-06182-DSF-PLA.  Therefore, "there is reason to doubt that the

---

[5] To say nothing of the numerous other cases in which the City has been adverse to houseless residents who have brought suit to protect their civil rights, but which the Proposed Intervenors were not plaintiffs, including most notably, *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacated*, 505 F.3d 1006 (9th Cir. 2007) and *Lavan*, 693 F.3d 1022, 1033 (9th Cir. 2012).  *See also Garcia v. City of Los Angeles*, 2:19-cv-06182-DSF-PLA.

[6] Four of CCEA/LADID's eleven board members appear in the pleadings in this case.  See http://www.centralcityeast.org/about (last accessed on March 18, 2020), including Mark Shinbane, the chair of CCEA, Compl. p. 46; Larry Rausch, the past chair of CCEA and current member of the board, Comp., p. 48; Bob Smiland, who serves on the CCEA and LADID Board, and Andrew Bales, who is also on the CCEA board and runs the Union Rescue Mission, which employs or houses a number of the individuals involved in the litigation, see e.g., Charles Malow, who lives at the Union Rescue Mission, Comp. ¶ 97. In addition the group is chaired by Don Steir, the "longtime general counsel of the Central City East Association."  *See* LA Alliance, "Frequently Asked Questions," available at https://www.la-alliance.org/faqs; *see also* LA Alliance Go Fund Me Fundraising Account, https://www.gofundme.com/f/la-alliance-for-human-rights.

[City] would fully protect the interests" of the Proposed Intervenors, and instead would seek to undermine the *Mitchell* settlement. *County of Fresno v. Andrus,* 622 F.2d 436, 439 (9th Cir.1980); *see also Citizens for Balanced Use,* 647 F.3d 893, 900 (9th Cir. 2011); *Idaho Farm Bureau Fed.*, 58 F.3d at 1398.

Nor can Proposed Intervenors rely on any of the parties in the case to make the same arguments Proposed Intervenors will make. Although much of the arguments and remedies ostensibly sought by Plaintiffs could or in some instances, must rely on *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019). But all of the parties have demonstrated hostility towards or a desire to overturn it. *See* RJN, ¶ 4, Brief Amicus Curiae of City of Los Angeles; RJN, ¶ 5, Brief for Amici Curiae California State Association of Counties and 33 California Counties and Cities; RJN, ¶ 6, Brief of Amicus Curiae International Downtown Association, California Downtown Association, Central City East Association of Los Angeles, Hollywood Property, Owners' Alliance, Historic Business Improvement District, Property Owners Association, and Downtown Property Owner/ Association in Support of Petitioner. This alone is sufficient to demonstrate the parties will not adequately protect Proposed Intervenors.

Finally, "[t]he 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of existing parties.'" *Citizens for Balanced Use,* 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086). In this case, the LA Alliance brings a sweeping lawsuit to address homelessness in Los Angeles, including purporting to seek an affirmative right to shelter for individuals who are currently have no other option but to sleep on the sidewalks in Los Angeles. Yet not a single identified member of its organization or individual plaintiff is currently unsheltered. In contrast, the LA CAN seeks to intervene on behalf of its members, many of whom are homeless, and both LACW and LA CAN seek to protect the interests of individual plaintiffs in *Mitchell* who assigned their rights to enforce the settlement to LACW and LA CAN, and therefore, the Proposed

Intervenors seek to protect their interests as well.[7]  The interests of unhoused residents are distinct from the business owners in Skid Row, many of whom represent an organization that has been sued for violating unhoused people's rights, and the interests of the City and County of Los Angeles, both of which have been sued for the same reason.

Plaintiffs easily show they have a protectable interest that could be affected by the resolution in this case, that they were timely in seeking to intervene, and that none of the parties can protect their interests.   As such, Proposed Intervenors are entitled to intervene as a matter of right.

## IV.    LA CAN AND LACW SHOULD BE ALLOWED PERMISSIVE INTERVENTION

Even if Proposed Intervenors were not entitled to intervene as a matter of right, they should be allowed to intervene under the Court's authority pursuant to Rule 24(b), which allows permissive intervention when "an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(1)(B).[8]  Permissive intervention is in the "broad discretion of the trial court."

---

[7] On March 17, 2020, this Court granted intervention to Orange County Catholic Worker, the lead plaintiff in *Orange County Catholic Worker, et al. v. County of Orange*, 18-CV-00155-DOC-JDE ("OCCW"). Intervenor sought to intervene based on Plaintiffs' representations regarding the effect of this litigation on the consent decree issued by this Court.  OCCW represents the interests unhoused residents in Orange County and seek to protect their consent decree in a related action.  While this perspective is critically important to this litigation and OCCW complements the perspectives and interests of LACW and LA CAN, their interests are distinct from those of Proposed Intervenors, who operate in and whose members live in Skid Row and throughout Los Angeles.

[8] The other factors for permissive intervention are 1) the intervention is timely, which Proposed Intervenors easily demonstrate, *see supra* Section 3(c), and 2) the standing to assert the interests claimed. *GOJO*, 2018 WL 5880829,  at *3. While the applicant must show that the court has jurisdiction, *Venegas v. Skaggs*, 867 F.2d 527, 529 (9th Cir. 1989), *aff'd sub nom. Venegas v. Mitchell*, 495 U.S. 82 (1990), there is no need to independently prove standing.  The court has the

*GOJO Indus., Inc. v. Barough*, ("*GOJO*"), No. SACV171382DOCJDEX, 2018 WL 5880829, at *3 (C.D. Cal. Apr. 2, 2018). LACAN and LACW represent important interests in this case that are otherwise not represented and as such, should be allowed to permissively intervene.

The Plaintiffs' argument raises many common questions of fact with the *Mitchell* case, as discussed above. They allege that requiring due process for property in Skid Row causes "health and safety risks". Compl. ¶¶ 29-30. They also discuss at length how the *Mitchell* settlement purportedly caused those risks.

One of the factors to be considered by the court is whether "whether [the] part[y] seeking intervention will significantly contribute to full development of the underlying factual issues." *GOJO*, 2018 WL 5880829, at *9 (C.D. Cal. Apr. 2, 2018). As noted above, none of the parties currently in the case, include any individual who is currently unsheltered in Los Angeles. On the other hand, LA CAN and LACW have members and clients who live on the streets. These perspectives are critical to a case that seeks as broad of remedies as Plaintiffs purport to seek, it is unimaginable how the case could go forward without the participation of an organization that includes unsheltered homeless individuals amongst its members. Moreover, organizers and staff of LA CAN and LACW monitor what is happening on the streets, not just in Skid Row, but throughout Los Angeles. For example, the complaint alleges that the encampment under the overpass at Venice and the 405 is

_____

discretion to permit LACAN and LACW to intervene at this point in the lawsuit regardless of whether they have standing. *Bond v. Utreras*, 585 F.3d 1061, 1070 (7th Cir. 2009); *Providence Baptist Church v. Hillandale Comm. Ltd.,* 425 F.3d 309, 315 (6th Cir.2005). Notwithstanding that it is unnecessary, Plaintiffs LACAN and LACW both would have independent grounds for jurisdiction because LACAN is a membership organization with unhoused members and LACW diverts its resources when its unhoused guests and neighbors are treated unlawfully or criminalized by the City. LACW expends resources it could be using to feed the homeless to monitor the situation regarding property seizure. Thus, both proposed intervenors have standing.

blocking the sidewalk. LA CAN has organizers and members that regularly visit that encampment and are familiar with the conditions there. The sweeps and property seizures at the overpass at Venice and the 405 divert LA CAN's resources; yet this lawsuit is alleging the need for increased sweeps and enforcement. Complaint at 177.

Similarly, LA CAN, as mentioned above, has unhoused members that reside on Skid Row and would be impacted by increased sweeps and enforcement. Not only are their interests affected, their participation will aid the court in determining the factual context of the litigation and in proving or disproving the parties' statements about accessibility and state-created danger. It will also aid the court to hear from un-sheltered individuals, as the only unhoused individual represented by Plaintiffs was sheltered prior to the lawsuit beginning.

At this stage of the litigation, the court has the discretion to allow LA CAN and LACW to intervene in the lawsuit as permissive intervenors.

Dated: March 18, 2020

Respectfully submitted,
Legal Aid Foundation of Los Angeles


_____/s/ Shayla Myers_____
Attorneys for Proposed Intervenors


Schonbrun Seplow Harris & Hoffman LLP


_____/s/Catherine Sweetser_____
Attorneys for Proposed Intervenors


Law Office of Carol A. Sobel


_____/s/ Carol A. Sobel_____
Attorneys for Proposed Intervenor

**Proposed Intervenor's Memorandum of Points and Authorities
ISO Motion to Intervene**