BROOKE WEITZMAN SBN 301037
WILLIAM WISE SBN 109468
ELDER LAW AND DISABILITY
RIGHTS CENTER
1535 E 17th Street, Suite 110
Santa Ana, California 92705
t. 714-617-5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org

CAROL A. SOBEL SBN 84483
WESTON ROWLAND SBN 327599
LAW OFFICE OF CAROL SOBEL
725 Arizona Avenue, Suite 300
Santa Monica, California 90401
T. 310 393 3055
e. carolsobellaw@gmail.com
e. rowland.weston@gmail.com

PAUL L. HOFFMAN SBN 71244
CATHERINE SWEETSER SBN 271142
SCHONBRUN, SEPLOW, HARRIS &
& HOFFMAN
11543 W. Olympic Blvd.
Los Angeles, California 90064
t. 310 396 7031
e. hoffpaul@aol.com
e. csweetser@sshhlaw.com

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br>     Plaintiffs, <br> v. <br> CITY OF LOS ANGELES, et al., <br>     Defendants. | Case No.: 2:20-cv-02291 DOC-KES <br><br> REPORT RE RECENT DEVELOPMENTS BY INTERVENOR ORANGE COUNTY CATHOLIC WORKER <br><br> Action filed: March 10, 2020 <br><br> Date: March 19, 2020 <br> Time: 10:00 a.m. <br> Ctrm: 1 (1st Street Courthouse) <br><br> Assigned to the Hon. David O. Carter |

    Intervenor Orange County Catholic Worker ("OCCW") files this Status Report in advance of the conference in this matter on March 19, 2020. The Plaintiffs in this action filed a Status Report, urging the Court to consider proposals set out in their

1

complaint in advance of the hearing because the current situation with the pandemic COVID-19 is now a "calamity."

While OCCW shares the concern for the urgency of the current situation, they file this Report to request that the Court direct the defendants adopt the directives of public health officials in implementing any response to this crisis. Even with the extraordinary number of unhoused persons in Los Angeles City and County, there can be no exemption from the public health directives that all residents of the United States are to observe at this time.

Key among these preventive steps is the caution to maintain "social distancing." This means staying a distance of at least six feet from other people. For those at higher risk - the elderly, diabetics, coronary conditions, asthma and compromised immunity systems - distance and self-isolation is even more critical. https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications/older-adults.html.

Earlier this week the CDC recommended, and many officials enacted, emergency bans on more than 50 people together for the next eight weeks. *See* https://www.ocregister.com/2020/03/15/cdc-recommends-no-gatherings-of-50-or-more-for-8-weeks. This may now be reduced to no more than 10 people together. https://www.nytimes.com/2020/03/16/health/coronavirus-social-distancing-crowd-size.html. Los Angeles County passed a similar restriction on indoor gatherings of more than 50 people. County Health Officer Montu Davis described the County's Order as "[c]ommunity mitigation efforts

Moving people in these higher risk categories, as a significant percentage of unhoused individuals are, into large emergency communal shelters is antithetical to the directives of public health officials. Such an environment would more likely act as a high contagion petrie dish, rather than a facility that would alleviate a public health threat to both unhoused and unhoused individuals. Intervenor is especially

concerned because Mayor Garcetti announced today that the City intends to implement its emergency plan for earthquakes, setting up 6,000 beds in 43 existing recreation centers. That means approximately 140 people in each confined building, far larger than the 50-person limit set by the CDC. In addition, the Mayor announced today that the City will also open a new bridge shelter that is now ready and will acquire several hundred trailers for quarantine of those diagnosed with COVID-19. While a plan to quarantine the most seriously ill individuals is encouraging, to date, the City's bridge shelters, like the recreation centers, do not allow space for "social distancing" consistent with the CDC guidelines. In total, the Mayor's proposal addresses only a small portion of the City's unhoused residents - barely 10% - and, apparently, will not concern the health and safety of the remaining people without homes unless and until they become symptomatic for COVID-19.

Moreover, in such an environment, if one individual who stays or works at the recreation centers shows symptoms of the novel corona virus, the universe of individuals directly exposed and then needing to be quarantined would be enormous, including all other residents of the facility, all persons staffing services there, and everyone they come into contact with. By contrast, moving people to hotels, motels, currently empty hospitals such as St. Vincent, and other unoccupied buildings would serve to protect the health and safety of unhoused persons and at the same time lessen the potential spread of the virus.

The Court should direct that, wherever individuals are relocated, provisions be made to ensure the availability of food and critical medical support currently accessible at service providers on Skid Row and near other areas with larger communities of unhoused individuals.

In this instance, protection of the health and safety of unhoused persons must be consistent with CDC recommendations on the most effective means to "flatten the curve" and get ahead of the spread of the pandemic. Intervenor OCCW requests that

the Court require the defendant City and County to follow CDC recommendations and guidelines in any placements for currently unhoused individuals to limit their exposure, as well as that of the greater community, to the COVID-19 virus.

Dated: March 18, 2020  Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL

/s/ Carol A. Sobel
CAROL A. SOBEL
Attorneys for Plaintiffs