Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, an unincorporated association, JOSEPH BURK, HARRY TASHDJIAN, KARYN PINSKY, CHARLES MALOW, CHARLES VAN SCOY, GEORGE FREM, GARY WHITTER, and LEANDRO SUAREZ, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; COUNTY OF LOS ANGELES, a municipal entity; and DOES 1 through 200 inclusive,<br><br>Defendants. | Case No. 2:20-cv-02291 DOC-KES<br><br>**(PROPOSED) ORDER RE: REQUEST FOR STATUS REPORT**<br><br>**Date:  N/A**<br>**Time:  N/A**<br>**Ctrm:  N/A** |

Having reviewed the requests submitted by Plaintiffs, and all oral argument thereon if any, there court finds good cause and hereby orders:

The City and County, jointly or separately, shall submit a status report on or before [April 10, 2020] [_____] addressing the following questions:

1

STATUS CONFERENCE REPORT

1. What is the timeline for opening the remaining 16 recreational centers?
2. With the distance requirements in mind, what is the updated estimated bed count that will be provided in:
   a. The second round of 13 recreational shelters?
   b. The remaining 16 recreational shelters?
3. What plans do the City and County have in place to make up the additional beds that now cannot be included in the recreational centers?
4. In conducting the initial intake for emergency shelter placement, what number of persons were symptomatic?
   a. Where, if anywhere, have such persons been placed?
   b. What number, if any, have declined voluntary isolation and what measures were taken in response, if any?
5. How many hotel/motel rooms have been purchased, leased, or otherwise reserved that will be specifically provided to the 4,000 most vulnerable homeless Angelenos, as identified by LAHSA?
   a. If less than the 4,000 identified, what is the reason for delay? And what alternative provisions have been made to isolate these individuals who present a strong vector of susceptibility to this disease?
6. What, if any, efforts or arrangements have been made to provide services (including mental health and drug rehabilitation counseling) to those who are being isolated?
7. What, if any, efforts have been made specifically to decrease the density of the Skid Row population?
8. What methods are being utilized to ensure all hygiene centers and stations are maintained?

9. What methods are being utilized to ensure homeless individuals are aware of the centers' and stations' presence and manner of use?

10. What methods are being utilized to ensure the restrooms are not used as bastions for criminal activity, but rather for their intended use?

11. What measures have the City and County taken to site and plan for permanent and interim solutions, so that when the emergency sheltering options in recreational centers and hotels and motels conclude, homeless Angelenos will not simply be turned back to the streets to be yet again subject to the COVID-19 virus and other health risks?

12. What measures have the City and County taken, if any, to secure LifeArk modular buildings or other large-scale options are utilized as a significant solution to this crisis?

13. What measures, if any, have the City and County taken to secure the offered Salvation Army sites as temporary, interim, or permanent shelter locations?

14. What sites currently exist within the County and City that are government-owned or easily acquirable that could support permanent or interim low-cost immediate solutions?

[Furthermore, the Court ORDERS weekly updates on each of the above enumerated issues to the extent any have changed from the previous report.]

Dated: April 6, 2020

Hon. David O. Carter
United States District Court Judge

3
STATUS CONFERENCE REPORT