Carol A. Sobel (SBN 84483)
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Ave.
Santa Monica, California 90401
Tel:  (31) 393-3055
Email: carolsobel@aol.com

Shayla R. Myers (SBN 264054)
**LEGAL AID FOUNDATION
OF LOS ANGELES**
7000 S. Broadway
Los Angeles, CA 90003
Tel: (213) 640-3983
Email: smyers@lafla.org

Catherine Sweetser (SBN 271142)
**SCHONBRUN SEPLOW HARRIS
& HOFFMAN, LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel:  (310) 396-0731
Email: catherine.sdshhh@gmail.com

*Attorneys for Intervenors CANGRESS
 and Los Angeles Catholic Worker*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.<br><br>         Plaintiff(s),<br><br>vs.<br><br>City of Los Angeles, et. al.<br><br>         Defendant(s). | CASE NO. 20-CV-02291-DOC-KES<br><br>Hon. David O. Carter<br>Courtroom 1<br><br>STATUS REPORT OF INTERVENORS LOS ANGELES COMMUNITY ACTION NETWORK AND LOS ANGELES CATHOLIC WORKER<br><br>Date: April 7, 2020<br>Time: 2:00 p.m.<br>Ctrm:  Offsite<br><br>Complaint Filed:  March 10, 2020 |

Intervenors Los Angeles Community Action Network (LA CAN) and Los Angeles Catholic Worker (LACW) file this status report in advance of the status conference on April 7, 2020.

Over the past month, both the City and the County of Los Angeles have taken unprecedented actions to address the emergency created by the COVID-19 global pandemic, including issuing extraordinary shelter-in place orders that have dramatically impacted daily life but will undoubtedly save thousands of lives.  The City has also dramatically increased the region's emergency medical capabilities by standing up field hospitals, bringing testing sites online, and even helping to develop personal protective gear for medical staff.

At the same time, however, the response to providing support for unhoused residents in Los Angeles has been insufficient to adequately address the crisis. There are currently approximately 44,214 individuals who are unsheltered in Los Angeles County and 27,221 in the City of Los Angeles alone.[1]  Of the unsheltered population in Los Angeles County, approximately 13,606 are over the age of 55.[2] And individuals who are unhoused, particularly those who are unsheltered, face "extraordinarily high susceptibility to symptomatic infection, hospitalization, and fatality due not only to their advanced age, but also the accelerated physical decline

---

[1] Los Angeles Homeless Services Authority, 2019 Greater Los Angeles Homeless Count-Total Point-in-Time Homeless Population by Geographic Areas, June 4, 2019, last updated November 21, 2019, *available at* https://www.lahsa.org/documents?id=3467-2019-greater-los-angeles-homeless-count-total-point-in-time-homeless-population-by-geographic-areas.pdf.

[2] Los Angeles Homeless Services Authority, 2019 Greater Los Angeles Homeless Count-Total Point-in-Time Homeless Population, Subpopulations:  Aging populations (55+), June 4, 2019, last updated November 21, 2019, *available at* https://www.lahsa.org/documents?id=3467-2019-greater-los-angeles-homeless-count-total-point-in-time-homeless-population-by-geographic-areas.pdf.

**STATUS REPORT FROM LOS ANGELES INTERVENORS**

and mental weathering that frequently results from repeat exposure to harsh elements."[3]

To date, the City and County's primary interventions to address the threat of COVID-19 among people who are homeless has been to 1) stand up new shelters in recreation centers; 2) deploy handwashing stations and portable toilets at encampments; and 3) bring approximately 760 hotels and motel rooms and 500 trailers online.  These interventions, while critically important, are not being deployed at anywhere near the scale necessary to significantly impact the trajectory of this pandemic among the City's most vulnerable residents.

   **a. New Shelters**

First, the City of Los Angeles has invested significant resources over the past three weeks to stand up shelters at 42 recreation centers throughout Los Angeles. The City originally projected that this resource-intensive undertaking would bring 6,000 beds online.[4]  However, after three weeks, the City has opened only 13 of the projected 42 shelters.  And because of the need to increase social distancing and de-densify the shelters, the capacity of these shelters is far less than originally projected—the first 13 shelters had room for only 563 individuals, instead of the projected 1600.  Based on that rate, the recreation centers will house only 2,000 Angelenos.  And at the same time, large congregate shelters in Los Angeles that house a significant portion of the 25% of the population in Los Angeles that is homeless but sheltered, must de-densify to meet the Centers for Disease Control and Prevention ("CDC") guidelines for social distancing,[5] to attempt to prevent an

---

[3] Dennis Culhane, Randall Kuhn, et al., *Estimated Emergency and Observational/Quarantine Capacity Need for the US Homeless Population Related to COVID-19 Exposure by County; Projected Hospitalizations, Intensive Care Units and Mortality* (Mar. 25, 2020), Dkt. 47-1, Exh. A at p. 2.

[4] Assuming all of these beds became available, they would have provided shelter for approximately one-quarter of the City's nearly 27,0000 unsheltered homeless.

[5] Centers for Disease Control and Prevention, "Responding to Coronavirus Disease 2019 (COVID-19) among People Experiencing Unsheltered

outbreak among shelter residents. Therefore, the number of net *new* shelter beds for currently unsheltered but vulnerable residents is likely to be even less.

### b. Hygiene for Existing Encampments

Based on the City's current projections for both shelter beds and hotels and motels, the vast majority of homeless individuals in Los Angeles will be left to shelter at their encampments. According to the CDC and the State of California[6], in order to slow the spread of COVID-19 at these encampments, individuals must be able to access hygiene services and have enough space at encampments to ensure social distancing. In addition, researchers at UCLA, University of Pennsylvania, and Boston University have provided additional recommendations, building off the CDC's more general guidance. According to their report, individuals in encampments must have:

- Ability to maintain social distance among encampment residents and from others outside the encampment
- Ability to maintain adequate handwashing and sanitation for a long duration of delayed service
- Ability to assess and report suspected infections, meaning either regular access to outreach workers or to mobile phones with reliable service and electrical power
- Ability to maintain adequate food, water and medicine supplies through local stores or service providers

---

Homelessness: Interim Guidance," last reviewed March 22, 2020, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/unsheltered-homelessness.html

[6] State of California, "Recommended Strategic Approaches for COVID-19 Response for Individuals Experiencing Homelessness," March 2020, *available at* https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Protocols-Homeless-Pop.pdf

The report highlights the necessity of these services: "Encampments or individuals failing to meet these criteria may face severe risk of infection and indirect consequences in the event of a more severe emergency."[7]

Despite these recommendations, the City and the County have not provided the hygiene, supplies, and services to encampments that are necessary to prevent an outbreak among the City's homeless encampments. To date, the City has provided approximately 400 handwashing stations and 120 portable toilets to heavily-populated encampments throughout Los Angeles. While the number deployed over the past three weeks has exponentially increased the number of handwashing stations and portable toilets throughout the City, the number is still inadequate for the nearly 27,000 people living in encampments and in vehicles, who are spread out over approximately 500 square miles.

Moreover, the City is struggling to adequately service the handwashing stations. As this Court observed with the new handwashing stations in Skid Row, these services are critical, but have proven incredibly difficult to maintain. As this Court observed, *see* Dkt. 51, the handwashing stations often lack water, soap, or paper towels.

This problem is not isolated to the hygiene stations in Skid Row. Intervenor Los Angeles Community Action Network, along with its partners at grassroots mutual aid organizations throughout Los Angeles have been monitoring handwashing stations around the City of Los Angeles and have observed many of the same issues observed by this Court. These issues have also been reported in the media and on social media.[8]

---

[7] Culhane, *supra* note 3 at 9.
[8] Lexis-Olivier Ray, "LA Installed Hundreds of Hand-Washing Stations at Homeless Camps. Some Are Drying Up.", CURBED LOS ANGELES, April 1, 2020, *available at* https://la.curbed.com/2020/4/1/21203396/homeless-coronavirus-los-angeles-handwashing-stations.

On April 3, 2020, the City announced that it had entered into a partnership with the YMCA to re-open nine YMCA locations throughout Los Angeles to allow unhoused Angelenos to use the showers and other facilities. While important for individuals who are sheltering near the nine facilities or who are living in vehicles and can travel to the sites, these nine locations do not replace the hundreds of gyms, recreation centers, pools, and other facilities that unhoused individuals previously relied on before the shelter in place orders went into effect and which are no longer available.

Finally, it does not appear that the City has opened park restrooms overnight, as it was suggested at the March 19, 2020 hearing. Nor has the City generally opened parks for individuals to shelter in place, where internet and other necessary resources are available. Other jurisdictions have done so, in order to provide resources and services.[9] Moreover, as this Court noted at the last status conference on March 26, 2020, the recreation center fields remain empty, even though allowing individuals to shelter in place on these fields would bring these individuals closer to the life-saving interventions offered by the shelters. *See* Dkt. 47-1, Exh. D.

**c. Hotels, Motels, and Trailers**

There is significant agreement among public health experts that single-occupancy accommodations like hotels, motels, and trailers are the best intervention for slowing the spread of COVID-19 among homeless individuals and preserving necessary resources like hospital beds. *See e.g.*, CDC Interim Guidance, State of California Guidance, Dkt. 47-1, Exh. A-C. Yet to date, the County of Los Angeles, which is the primary agency responsible for this undertaking, has reported there are currently only approximately 760 hotel and motel rooms available throughout Los Angeles County. This includes the rooms available for isolation and quarantine.

---

[9] *See e.g.*, Christopher O'Connell, "Tampa Sets up Tent City So Homeless Can Shelter in Place", March 29, 2019, *available at* https://www.tampabay.com/news/health/2020/03/29/tampa-sets-up-tent-city-so-homeless-can-shelter-in-place/

Case 2:20-cv-02291-DOC-KES   Document 55   Filed 04/06/20   Page 7 of 9   Page ID #:694

There are an additional 500 trailers that have been provided by the State of California, including 112 at Dockweiler State beach, which are available for isolation and quarantine for anyone who needs them, including but not exclusively, individuals who are unhoused. The other trailers have been deployed to the recreation center shelters, where Intervenors understand they are also on standby for isolation and quarantine.

Other than these room and trailers, there does not appear to be any plan to bring individuals who are homeless and vulnerable into individual rooms, even though there is growing agreement that the failure to do so will result in the further spread of COVID-19 and the significant expenditure of public health resources to treat the individuals who contract the virus.[10]

The County and the City have not provided any explanation for this failure to bring more resources online, despite repeated indications that it would be able to do so. The Mayor of the City of Los Angeles and the County's Director of Emergency Operations, as well as the Governor of the State of California have considerable legal authority to act to secure the use of property as necessary to meet the emergency.[11] There is also funding available. Under an agreement with FEMA, the cost of hotels and motels are a reimbursable expense, up to 75%, and this includes the cost of staffing and other resources. The rest of the money is available from the

---

[10] *See e.g.,* Culhane, *supra* note 3 at 12; State of California, *supra* note 6; Dkt. 47-1, Exh. B-C.

[11] *See* Los Angeles Charter, Section 8.30, Power to Requisition Supplies and Personnel ("The Director of the Emergency Operations Organization may obtain vital supplies and other such property as is needed for the protection of life and property of the people, and bind the City for the fair value thereof, and, if required immediately, may commandeer the same for public use"); Los Angeles County Code, Section 2.68.220 (granting Director of Office of Emergency Management the authority to commandeer property as necessary); State of California, Executive Order N-25-20 (granting California Health and Human Services and Office of Emergency Services authority to commandeer hotel rooms as necessary).

6

STATUS REPORT FROM LOS ANGELES INTERVENORS

State of California, which has provided $150 million in emergency funds to jurisdictions, including the County of Los Angeles.[12]  Finally, additional federal resources, are currently being made available through the CARES Act, passed on March 27, 2020.[13]

Despite the unprecedented nature of the global pandemic and the threat it poses to unhoused residents of Los Angeles, the City and County have inexplicably failed to take steps that public health experts agree could reduce the risk to unhoused residents and the community.  Significant and urgent interventions are necessary now, to avert the pending crisis.

Dated: April 6, 2020

Respectfully submitted,
Legal Aid Foundation of Los Angeles

/s/ Shayla Myers
Attorneys for Intervenors


Schonbrun Seplow Harris & Hoffman LLP

/s/Catherine Sweetser
Attorneys for Intervenors


Law Office of Carol A. Sobel

/s/ Carol A. Sobel

---

[12] California Homeless Coordinating and Financing Council, "COVID-19 Emergency Homeless Funding Grant Allocations," available at https://www.bcsh.ca.gov/hcfc/coronavirus19/allocations.pdf

[13] Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 div. B tit. XII, 134 Stat. 281 (2020).  The Act provides for $4 billion in funding through the Emergency Solutions Grant program.  Funds received by the program will be eligible for reimbursement under the Act.  See H.R.748-328, and the Act waives bidding and other contract requirements. See H.R. 748-329.

**STATUS REPORT FROM LOS ANGELES INTERVENORS**