**BROOKE WEITZMAN** SBN 301037
**WILLIAM WISE** SBN 109468
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E 17th Street, Suite 110
Santa Ana, California 92705
t. 714-617–5353
e. bweitzman@eldrcenter.org
e. bwise@eldrcenter.org

| | |
|---|---|
| **CAROL A. SOBEL** SBN 84483 | **PAUL L. HOFFMAN** SBN 71244 |
| **WESTON ROWLAND** SBN 327599 | **CATHERINE SWEETSER** SBN 271142 |
| **LAW OFFICE OF CAROL SOBEL** | **SCHONBRUN, SEPLOW, HARRIS &** |
| 725 Arizona Avenue, Suite 300 | & HOFFMAN |
| Santa Monica, California 90401 | 11543 W. Olympic Blvd. |
| T. 310 393 3055 | Los Angeles, California 90064 |
| e. carolsobellaw@gmail.com | t. 310 396 7031 |
| e. rowland.weston@gmail.com | e. hoffpaul@aol.com |
| | e. csweetser@sshhlaw.com |

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | Case No.: 2:20-cv-02291 DOC-KES <br><br> INTERVENOR OCCW STATUS REPORT <br><br> Date: April 14, 2020 <br> Time: 10:00 a.m. <br> Ctrm: None <br><br> Action filed: March 10, 2020 |

On April 9, 2020, the Court issued an Order concerning RVs used by otherwise unhoused persons in the region. [Dkt. 62] Intervenor OCCW submits this status report to provide information to the Court in advance of the discussion of this matter

1

on April 14, 2020. The undersigned counsel for Intervenors has been involved in this issue for a decade, litigated *Desertrain v. City of Los Angeles*, advised the Safe Parking LA community group and is currently challenging the targeting and towing of the vehicles of unsheltered individuals in *Schellenberg v. City of Los Angeles*, Case 2:20-cv-01313 MWF (C.D. Ca. 2020). This Report is filed in addition to any document filed by the other parties in response to the Court's Order. The identification of available parkinig sites is limited to the area outside of Skid Row along the 10 Freeway overpass where there is presently a concentration of vehicles used for living purposes.

**THE NUMBER OF PEOPLE LIVING IN VEHICLES**

More than 16,500 people - approximately 28 percent of the unhoused community in the City and County - live in a vehicle according to the LAHSA 2019 Point-in-Time Count.[1]

**THE HISTORY OF LAMC §85.02.**

In late 2010, the City of Los Angeles was sued for enforcement of Los Angeles Municipal Code §85.02, making it a crime to "live" in a vehicle at any time or any place in the City other than private property. *Desertrain v. City of Los Angeles*, Case No. 2:10-cv-09053-RGK-PJW (C.D. Ca. 2010). The LAPD began issuing citations pursuant to §85.02 and other purported parking violations, but then started arresting individuals and towing vehicles, even in daytime. [Dkt. 54, pp. 220-229 (Dec. of Steve Jacobs Elstein)].

After *Desertrain* was filed, then-Councilmember Bill Rosendahl, who preceded Mike Bonin in CD 11, introduced LAMC §85.11 to create designated safe parking lots. The proposal was tied to participation in a "Roadmap to Housing." *See*

---

[1] Exhibit A: 2019 Point-in-Time Court: Table 2. Number of Persons in Vehicles, Tents, and Makeshift Shelters by Service Planning Area.

2

file:///C:/Users/carol/OneDrive/Desktop/85.02/11-0398_RPT_ATTY_03-10-2011.pdf.  The City did not adopt the ordinance.

In December 2014, the Ninth Circuit struck down §85.02.  *See Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014).[2]  Two years later, the City enacted a revised 85.02 ordinance, approved by the City Council in November 2016. At the time, the City published maps of allowed overnignt parking sites for persons who resided in their vehicles. Each LAPD division made the map available on its website.

The 2016 ordinance included a sunset clause of July 2018.  The City extended the ordinance and amended it again, most recently in 2019.  The latest amendments included a sunset clause effective January 1, 2020, unless the City Council acted to extend it.  The Council did not do so.  Consequently, there is no restriction on living in a vehicle in the City of Los Angeles at this time.

When the Council amended LAMC §85.02 in 2016 in response to *Desertrain* to end the ban on living in a vehicle, it expressly allowed for enactment of other restrictions, such as a limitation on overnight parking on certain streets between 2 a.m. and 5 a.m. and a prohibition on over-sized vehicles on certain streets.[3] *Id.* Almost weekly, the City Council approves restricting parking on various streets.  A recent sample of such actions is attached at Exhbiit B.  These restrictions, effectively, criminalized living in a vehicle in most of the City by producing daunting fines for violations of parking rules, resulting in towing and impound of vehicles.[4]

---

[2] Almost every city within the County enacted its own version of §85.02.

[3] This is usually a ban on vehicles over 7 feet high or 22 feet long, with an exemption for commercial vehicles.

[4] *See*, "Towed Into Debt: How Towing Practices in California Punish Poor People" at https://wclp.org/wp-content/uploads/2019/03/TowedIntoDebt.Report.pdf.

3

**THE SAFE PARKING LA PROGRAM:**

There is at least $4,136,650 in funding available in 2020 to administer "Safe Parking Programs."[5]  In 2019, after three years of talk, the City and County passed a Safe Parking Program but limited it to participants in various service programs.  In the entire County there are only 434 spaces available at 19 sites.[6]  Eleven of the 19 sites prohibit RVs and three others allow RVs only if space is available.  *Id.*

According to the 2019 Point-in-Time Count, in every jurisdiction there are more people living in an RV or camper than in cars and vans combined.[7]  For example, in CD 8, Councilmember Harris-Dawson's district, 500 people were counted living in an RV or camper and 313 were in cars or vans.  Similarly, in neighboring CD 11, Councilmember Price's district, 554 were counted in an RV or camper and 329 were counted in cars or vans.  *Id.*

**CURRENT SAFE PARKING IN SKID ROW**

Currently, there is only one Safe Parking Program site located in Downtown Los Angeles.  It is operated by Volunteers of America, does not accept RVs and is limited to 20 vehicles.  Ex. D, p. 4.  Ordinarily limited to veterans, it is accepting other vehicle residents during the COVID-19 crisis.  *Id.*

**AVAILABLE SITES FOR SAFE PARKING NEAR SKID ROW**

The Cal Trans lot at Maple and 16th Streets, two blocks from the vehicles parked on 16th Street, is on the list of available, free properties published pursuant to

---

[5] Exhibit C, Los Angeles Homeless Services Authority Request for Proposals, "Safe Parking Program" issued January 16, 2020.

[6] The currently available sites are listed in Exhibit D and posted at https://www.lahsa.org/news?article=592-lahsa-administered-safe-parking-sites-in-los-angeles

[7] Exhibit A: 2019 Point-in-Time Court: Table 6. Number of Persons in Vehicles, Tents, and Makeshift Shelters by Council District, City of Los Angeles, 2019

4

Governor Newsom's order issued earlier last month. It is slightly under one acre. There is a small group of tent residents who are on the property, but it is large enough to accommodate both the three dozen vehicles currently parked on 16th Street, and the tent residents, with hygiene stations on site. Exhibits E-F. While the property is fenced, there is a double-gate on one side which would allow entry to the property by cars, vans and RVs. Exhibit G. The nearby parking areas under the 10 freeway are occupied by Metro buses, that readily clear the underpass.

There is a private parking lot at 1933 S. Broadway, near to the Metropolitan Courthouse operated by The Reef. Exhibit H . The lot appears to be at least 1.5 acres. It occupies almost the entire block below Washington between Broadway and Main. There is a fabric company at the south end of the block that is entirely separate from the fenced parking lot.

There is a second sizable and fenced private lot on the west side of San Pedro at 9th Street, just two blocks outside of the Skid Row area, that has no habitable structures on it. It is posted with a sign stating that it is for rent for film shooting.

**CONCLUSION**

There are viable locations for immediate operation of additional safe parking sites near Skid Row, as well as other areas of the City and County. The Court should direct that entry into a safe parking site during the COVID-19 crisis not be restricted to individuals who qualify for the placement programs or are already assessed for participation in the CES program.

Dated: April 12, 2020                Respectfully submitted,

                                     LAW OFFICE OF CAROL A. SOBEL

                                          /s/   Carol A. Sobel
                                     By: CAROL A. SOBEL
                                     Attorneys for Intervenor OCCW

5