MARY C. WICKHAM, County Counsel
(SBN 145664)
RODRIGO A. CASTRO-SILVA, Senior Assistant
County Counsel (SBN 185251)
THOMAS J. FAUGHNAN, Senior Assistant
County Counsel (SBN 155238)
LAUREN M. BLACK, Principal Deputy
County Counsel (SBN 192302)
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone:   (213) 974-1830
Facsimile:    (213)626-7446
Email: lblack@counsel.lacounty.gov

BRANDON D. YOUNG (SBN 304342)
MANATT, PHELPS & PHILLIPS, LLP
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone:   (310) 312-4000
Facsimile:    (310) 312-4224
Email: bdyoung@manatt.com

Attorneys for Defendant
COUNTY OF LOS ANGELES

[Additional counsel listed on next page.]

*Miller Barondess, LLP*
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>                Defendants. | **CASE NO. 2:20-cv-02291 DOC-KES**<br><br>**COUNTY OF LOS ANGELES' STATUS CONFERENCE STATEMENT**<br><br>Date:      April 23, 2020<br>Time:     10:00 a.m.<br>Crtrm.:   501 S. Spring St,<br>              Los Angeles, CA 90013<br><br>Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

1    [Continued from previous page]

2  BYRON J. MCLAIN (SBN 257191)
   FOLEY & LARDNER, LLP
3  555 South Flower Street, Suite 3300
   Los Angeles, California 90071
4  Telephone:  (310) 972-4500
   Facsimile:   (213)486-0065
5  Email: bmclain@foley.com

6  LOUIS R. MILLER (SBN 54141)
   MIRA HASHMALL (SBN 216842)
7  MILLER BARONDESS, LLP
   1999 Avenue of the Stars, Suite 1000
8  Los Angeles, California 90067
   Telephone:  (310) 552-4400
9  Facsimile:   (310) 552-8400
   Email.: mhashmall@millerbarondess.com

10
   Attorneys for Defendant
11 COUNTY OF LOS ANGELES

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL:(310) 552-4400   FAX:(310) 552-8400

# I.    <u>INTRODUCTION</u>

The County of Los Angeles ("County") is facing an unprecedented public health crisis.  There are now over 13,000 known cases of COVID-19, and over 600 deaths, in the County.  Public health experts project that immediate safety measures will be critical to curbing the spread of COVID-19.

The County faces a particularly daunting challenge during this pandemic: housing the significant number of County residents who are experiencing homelessness.  Individuals experiencing homelessness are at particular risk of being exposed to, and contracting, COVID-19.  They are also less likely to have access to the basic hygiene facilities, healthcare services, and medical resources that could save their lives.

Governor Gavin Newsom recognized the need to find a way to protect the tens of thousands of people experiencing homelessness in California, and created a novel initiative called "Project Roomkey."  Project Roomkey, the first program of its kind in the nation, marshals support from the hard-hit hospitality sector by identifying hotel and motel rooms that can be used as temporary housing for individuals experiencing homelessness most susceptible to the risk of contracting and spreading COVID-19.  Project Roomkey has been praised by the National Alliance to End Homelessness.  The Federal Emergency Management Agency ("FEMA") also signed on, agreeing to fund a 75 percent cost-share reimbursement for state and local governments.

In partnerships with the State, the City of Los Angeles ("City") and the Los Angeles Homeless Services Authority ("LAHSA"), the County has been at the forefront of Project Roomkey, as well as efforts to establish isolation and quarantine facilities, procuring and securing more than 2,500 hotel and motel rooms at over 250 hotels across the region.

Meanwhile, the County has also been working to establish hotel and motel facilities for the purposes of isolating and quarantining persons with, or exhibiting symptoms of, COVID-19.  While these facilities are available to any persons in need of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   isolation or quarantine, they have been predominately used by, and made available to,

2   persons experiencing homelessness, providing an additional housing option and

3   alternative to hospitalization or Project Roomkey.  The State and FEMA have also

4   authorized these efforts in response to the declared emergency.

5        Between these two programs, the County is working to provide safe isolation and

6   quarantine capacity, as well as prevent the spread of COVID-19 and flatten the curve

7   by protecting our most vulnerable citizens.

8        Many cities have embraced Project Roomkey and the establishment of isolation

9   and quarantine facilities.  The County's efforts have met resistance from several cities,

10  however, necessitating this status conference.  While cities are questioning this critical

11  public health initiative by relying on zoning laws, use permits, and contractual

12  provisions, they ignore the fact that both of these programs are temporary, emergency

13  initiatives that are critical to protecting the health of the greater community.  These

14  cities also ignore that the County-administered programs are expressly permitted under

15  the California Emergency Services Act and Governor Gavin Newsom's Executive

16  Orders.  This is a matter of statewide concern that the cities cannot override, whether by

17  way of letter, ordinance, or lawsuit.

18  **I.      THE COUNTY'S EMERGENCY HOUSING PROGRAMS**

19       On March 4, 2020, the Governor of the State of California proclaimed a State of

20  Emergency to exist in California as a result of COVID-19.  That same day, the Los

21  Angeles County Board of Supervisors proclaimed a local emergency, and the Los

22  Angeles County Health Officer declared a local health emergency.

23       On March 12, 2020, the Governor issued an Executive Order (N-25-20) that,

24  among other things, included the following directive:

25       The California Health and Human Services Agency and the Office of
     Emergency Services shall identify, and shall otherwise be prepared to
26   make available—including through the execution of any necessary
     contracts or other agreements and, if necessary, through the exercise of the
27   State's power to commandeer property—hotels and other places of

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    temporary residence[.]

2    On March 13, 2020, the President of the United States issued a nationwide

3    Emergency Declaration.

4    On March 18, 2020, the Governor announced $150 million in emergency funding

5    to find a way to move individuals experiencing homelessness indoors.  Of the $150

6    million, $50 million was to be used for buying travel trailers and leasing hotels, motels,

7    and other temporary housing facilities.  The County immediately began negotiating

8    with hotel and motel owners to provide beds for persons diagnosed or exhibiting

9    symptoms of COVID-19, as well as persons experiencing homelessness most at risk of

10   contracting COVID-19.  The County entered into its first contract for an isolation and

11   quarantine facility in mid-March 2020, followed by its first contracts for hotel and

12   motel beds for persons at risk for COVID-19 on March 31, 2020.

13   On April 3, 2020, the Governor announced Project Roomkey.  Project Roomkey

14   is intended to protect "high risk" individuals, which FEMA defines as persons

15   experiencing homelessness over 65 years of age or who have certain underlying health

16   conditions (respiratory, compromised immunities, chronic disease), and who require

17   emergency non-congregate shelter as a social distancing measure.  According to the

18   Governor, the goal of Project Roomkey was to secure "thousands of isolation rooms in

19   hotels and motels for extremely vulnerable individuals experiencing homelessness to

20   help flatten the curve and preserve hospital capacity."  The Governor received approval

21   for a 75 percent cost-share reimbursement from FEMA, making California the first

22   state to receive FEMA's approval for this type of project.  The State identified more

23   than 950 potential lodging facilities for these individuals.  The Governor then directed

24   counties to implement the program.

25   Through the isolation and quarantine and Project Roomkey programs, the County

26   endeavors to provide temporary housing, with specific emphasis on persons

27   experiencing homelessness, by providing shelter and necessary support to those

28   individuals who have no alternative isolation or quarantine housing option.  These sites

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

are essential to ensuring that those who are impacted by COVID-19, but do not require hospitalization, can be cared for in a way that protects the community and does not overburden the County healthcare system.

## II.   <u>OBJECTIONS TO PROJECT ROOMKEY</u>

While the County is grateful for everything many city officials and private hotel owners have done to support Project Roomkey, both the County and hotels participating in the program have met some resistance.  As relevant to the cities who have been asked to attend the April 23, 2020 status conference:

- On April 14, 2020, the City of Lawndale wrote to the Best Western Plus South Bay Hotel in Lawndale and expressed its belief that "irreparable harm to the Lawndale Community" would occur if the hotel moved forward with its Project Roomkey contract.  The letter invoked land use approvals, zoning regulations, the California Environmental Quality Act ("CEQA"), and the hotel's business license.

- On April 15, 2020, the City of Bell Gardens demanded that Bell Gardens Hospitality, LLC cease "intake and acceptance of new patients immediately" and arrange "to transfer existing patients to other available facilities as soon as possible."  Bell Gardens threatened that it had prepared a declaratory relief action and would be submitting an emergency *ex parte* application for a temporary restraining order and preliminary injunctive relief directing the hotel to cease accepting new patients.

There are other cities that have expressed resistance to Project Roomkey.

## III.   <u>*CITY OF LAGUNA HILLS V. ELITE HOSPITALITY, LLC*</u>

The County is not alone in experiencing opposition to Project Roomkey and its efforts to implement life-saving measures by providing temporary shelter and quarantining and treating high-risk individuals experiencing homelessness.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    On April 14, 2020, the City of Laguna Hills and four property owners sued the

2    Board of Supervisors of Orange County to stop the County from taking possession of

3    the Laguna Hills Inn for use in Project Roomkey (*City of Laguna Hills v. Elite*

4    *Hospitality, Inc.*, Case No. 30-2020-01139345-CU-MC-CJC (County of Orange)).  The

5    hotel's owner and a nonprofit specializing in homeless outreach were also named.  The

6    plaintiffs brought claims for abatement of public nuisance, breach of the Declaration of

7    Covenants, Conditions, Restrictions and Reservation of Easements ("CC&Rs") for

8    properties within Plaza Pointe, and declaratory relief.

9    On April 16, 2020, the court denied the plaintiffs' request for a temporary

10   restraining order with respect to two causes of action, i.e., abatement of public nuisance

11   and abatement of nuisance.  The court then ordered the parties to provide supplemental

12   briefing on the question of whether the CC&Rs barred Orange County from using the

13   Laguna Hills Inn as a Project Roomkey site.

14   On April 20, 2020, the court (Honorable Thomas A. Delaney) issued an order

15   denying plaintiffs' request for a temporary restraining order as it related to the claim for

16   breach of the CC&Rs.  The court rejected plaintiffs' argument that the contract between

17   defendant Elite Hospitality and the County to use the Laguna Hills Inn to shelter

18   homeless individuals was a change in the use of the hotel.  The court held that Orange

19   County was "acting consistent with the Governor's orders in the context of this state of

20   emergency.  The CC&Rs must temporarily yield to the government's limited use of its

21   police powers during this state of emergency."  The court's April 20, 2020 ruling is

22   attached as **Exhibit A**.

23   Governor Gavin Newsom filed a brief describing the critical mission of

24   Project Roomkey and explaining that local resistance threatens to undermine the

25   State's ability to respond to this unprecedented public health emergency.  The

26   Governor's brief is attached as **Exhibit B**.

27

28

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## IV.   THE GOVERNOR'S EMERGENCY AUTHORITY

### A.   The California Emergency Services Act

The California Emergency Services Act empowers state and local governments to declare emergencies and coordinate efforts to provide services.  Cal. Gov't Code § 8550 *et seq*.  Once an emergency is declared, state and local governments have broad authority to protect citizens and property.  *See Jacobson v. Massachusetts*, 197 U.S. 11, 27 (1905); *Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*, 186 U.S. 380 (1902); *Rasmussen v. Idaho*, 181 U.S. 198 (1901).  As set forth above, federal, state, and local emergencies have already been declared.

Several provisions of the California Emergency Services Act apply to the Governor's authority to order, and the County's' authority to implement, Project Roomkey:

- The Governor has "all police power vested in the state."  Cal. Gov't Code § 8627.  This includes authority to "make, amend, and rescind orders and regulations necessary" to respond to the emergency (*id*., § 8567), as well as to "suspend any statute prescribing the procedure for conduct of state business, or the orders, rules, or regulations of any state agency . . . where the Governor determines and declares that strict compliance with any statute, order, rule, or regulation would in any way prevent, hinder, or delay the mitigation of the effects of the emergency."  (*Id*. § 8571.)

- The Governor has authority to "[u]se and employ any of the property, services, and resources of the state as necessary to carry out the purposes of this chapter."  Cal. Gov't Code § 8570.  He can also "[p]lan for the use of any private facilities, services, and property[.]"  *Id*.

- The Governor can commandeer or utilize any private property or personnel deemed necessary in carrying out his responsibilities as Chief Executive of the state.  *Id*. § 8572.

- Under a Governor-declared state of emergency, a political subdivision, which includes counties, "shall take such action as may be necessary to carry out the provisions thereof."  Cal. Gov't Code § 8568; *see also* Cal. Gov't Code § 8557 (b) (defining "political subdivision" to include any county).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

- Local governing bodies can promulgate orders and regulations necessary for the protection of life and property.  Cal. Gov't Code § 8634.

- Every political subdivision is obligated to take all actions necessary to carry out a statewide emergency plan.  Cal. Gov't Code § 8568.

- The California Emergency Services Act designates the counties as operational areas.  Cal. Gov't Code § 8605.  The County has the ultimate power to govern the disaster area, which includes the cities. 62 Ops. Cal. Atty. Gen. 701 (1979) ("Cities within a county are bound by county rules and regulations adopted by the county pursuant to section 8634 of the Government Code during a county proclaimed local emergency when the local emergency includes both incorporated and unincorporated territory of the county.").

- If there are conflicts between county and city emergency ordinances/orders, the county's emergency ordinances/orders control.  *Id.* (stating "insofar as measures taken by different levels of government with respect to the same emergency conflict, the measures taken by the agency with the more inclusive territorial jurisdiction (e.g., county versus a city) must govern").

Given this broad authority, the State and the County have the authority, and the public safety obligation, to implement Project Roomkey.

## B.    Project Roomkey Is A Matter Of Statewide Concern

Under Article 11, section 7 of the California Constitution, cities can only regulate their local affairs to the extent there is no conflict with state or federal law.  Local legislation in conflict with general law is void.  *California Fed. Savings & Loan Ass'n. v. City of Los Angeles*, 54 Cal. 3d 1, 17 (1991); *Anderson v. City of San Jose*, 42 Cal. App. 5th 683, 693 (2019).  In *Anderson*, the Court of Appeal held that the City of San Jose's policy for the sale of surplus city-owned land was preempted by the State's affordable housing act.  *Anderson*, 42 Cal. App. 5th at 693.

Here, the County's emergency use of hotels/motels under Project Roomkey and for the purposes of isolation and quarantine, as authorized by the California Emergency Services Act and the Governor's Executive Order, is a matter of statewide concern. Housing individuals experiencing homelessness is necessary to protect public health

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   and save lives.  Individuals experiencing homelessness, particularly the elderly and the

2   medically compromised, are particularly vulnerable to COVID-19, whether they are on

3   the streets or in crowded shelters where isolating is not feasible.    Individuals

4   experiencing homelessness are also more likely to use hospital emergency rooms when

5   ill.  Providing them with temporary housing will relieve the pressure on the already-

6   strained hospital system.

7        The law is clear that cities cannot interfere with Project Roomkey or efforts to

8   procure and operate rooms for the purpose of isolation and quarantine, whether by way

9   of order, rule, regulation, or contract.

10  **V.    CONCLUSION**

11       Project Roomkey and County efforts to procure and operate rooms for the

12  purpose of isolation and quarantine are authorized by the California Emergency

13  Services Act and Executive Order N-25-20.  It is part of the County's ongoing

14  efforts to meet the needs of its most vulnerable residents.

15

16  DATED:  April 21, 2020              MILLER BARONDESS, LLP

17

18

19                          By:    /s/ Louis R. Miller
                                   _____

20                                 LOUIS R. MILLER
                                   Attorneys for Defendant

21                                 COUNTY OF LOS ANGELES

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# EXHIBIT A

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF ORANGE**
**CENTRAL JUSTICE CENTER**

**MINUTE ORDER**

DATE: 04/20/2020                  TIME: 10:00:00 AM        DEPT: C25

JUDICIAL OFFICER PRESIDING: Thomas A. Delaney
CLERK: Alma Bovard
REPORTER/ERM: (ACRPT) Cheri Violette CSR# 3584
BAILIFF/COURT ATTENDANT: None

CASE NO: **30-2020-01139345-CU-MC-CJC**  CASE INIT.DATE: 04/14/2020
CASE TITLE: **City of Laguna Hills vs. Elite Hospitality, Inc.**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Misc Complaints - Other

---

EVENT ID/DOCUMENT ID: 73261226

**EVENT TYPE:** Ex Parte
MOVING PARTY: Sukin & Rosenfeld LLC, City of Laguna Hills, GJC Properties 8 LP, Erik M. Block,
BFE Asset Partners, LLC
CAUSAL DOCUMENT/DATE FILED: Complaint, 04/14/2020

---

**APPEARANCES**
Daniel Heaton, Kelly Richardson, Daniel Nordberg, from Richardson Ober DeNichilo, present for
Plaintiff(s) telephonically.
Donald Dunn, Laura Knapp, from County Counsel, present for Defendant(s) telephonically.
Interested Party: Jonathan Eisenberg appearing by CourtCall for Governor Gavin Newson
Interested Party: Brooke Weitzman appearing by Courtcall for Orange County Catholic Work
Cheri Violette appeared telephonically.

---

The Court allows the following news media to appear telephonically for listening purposes only:

Corbin Carson, Reporter from KFI AM 640
Carla Hall, Editorial Writer from LA Times
Hannah Fry, Reporter from LA Times
Martin Macias, Reporter from Courthouse News
Jeong Park, Reporter from OC Register
Margaret Carrero from KNX News
Paul Anderson from City News Service

The Court's tentative ruling is provided to all Counsel and news media via e-mail.

Plaintiff made oral objections to Counsel Eisenberg and Brooke Weitzman speaking at this hearing. The
Court overrules the objections as to appearing at the hearing and tables the issue of speaking.

The Court hears oral arguments.

The Court confirms the tentative ruling as follows:

On Thursday, April 16, 2020, the Court denied Plaintiffs' request for a temporary restraining order sought
on the basis of first and fourth causes of action for abatement of public nuisance and abatement of
nuisance, and ordered supplemental briefing from the parties on the issues related to the third cause of
action for breach of CCRs. Specifically, the Court ordered the parties to brief whether Defendant County

---

DATE: 04/20/2020                                     Page 1
DEPT: C25                         MINUTE ORDER
                                                     Calendar No.

CASE TITLE:  City of Laguna Hills vs. Elite Hospitality, Inc.                      CASE NO.  30-2020-01139345-CU-MC-CJC

has the authority, pursuant to Government Code section 8572 (or any other legal authorities), to utilize the Laguna Hills Inn ("LHI" or "the hotel") for the planned purpose in light of the existing Conditions, Covenants, Restrictions and Reservation of Easements on the property.

Having read and considered the supplemental briefing of Plaintiffs and Defendant County, the Court now rules that Plaintiffs' request for a temporary restraining order sought on the basis of the breach of CC&Rs is denied. The objections submitted by Plaintiffs to the supplemental declarations of Frank Kim and Kevin Akash are sustained. The remainder of Plaintiffs' objections are overruled.

Plaintiffs have the burden to show all elements necessary to support issuance of a temporary restraining order. (*O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1481). In ruling on an application for a TRO, the Court must weigh the likelihood that Plaintiffs will ultimately prevail on the merits and the relative interim harm to the parties from issuance or nonissuance of the injunction. ( *Id.* at 1463.)

The third cause of action for Breach of CC&Rs alleges that LHI is located within a commercial interest development known as Plaza Point, which is subject to certain CC&Rs. Plaintiffs argue that the contract between Defendant Elite Hospitality and the County to use LHI temporarily to shelter homeless individuals who are Covid-19 positive or symptomatic is a change in use of the hotel and, therefore, a breach of the CC&Rs.

Defendant County does not dispute that the CC&Rs apply to LHI. Instead, the County argues that the planned use of the hotel in this instance is not a change in use of the hotel, but even if it is, the County has the authority, as agent of the State under the Governor's declaration of emergency, to utilize the hotel in this manner to address this public health crisis.

While the Court remains unpersuaded by the County's argument that this is not a change in use of LHI, the Court finds that the County has the authority to enter into this contract with Defendant Elite Hospitality to utilize the hotel under these limited circumstances in the manner it has proposed, regardless of the CC&Rs.

Plaintiffs do not dispute that, when a state of emergency is declared, the Governor can commandeer or utilize any private property deemed necessary in carrying out his responsibilities. (Gov. Code § 8572.) Under a state of emergency, a political subdivision, which includes counties, "shall take such action as may be necessary to carry out the provisions thereof." (Gov. Code, § 8568; see also Gov. Code § 8557 (b) (defining "political subdivision" to include any county).)

Defendant County has produced sufficient evidence that it is acting as an agent for the State in contracting with Defendant Elite Hospitality to shelter homeless individuals who are Covid-19 positive or symptomatic. Pursuant to Resolution No. 2020-11, the County Board of Supervisors directed all County departments and agents to take "those actions, measures and steps deemed necessary to assure the health, safety and welfare of Orange County citizens and property, including requesting mutual aid to the extent such aid is necessary." (Simmering Dec., Exhibit 4.) The Governor then issued a series of Executive Orders ordering state agencies to identify and make available, including through commandeering property, hotels and other places of temporary residence, in part to provide shelter for homeless Californians and to remove restrictions on a local jurisdiction from spending funds to address the impacts of the Covid-19 pandemic on homeless individuals for their own sake, as well as for the purpose of protecting public health in general by flattening the curve and slowing the spread of COVID-19 in local communities and throughout the State. (Simmering Dec., ¶¶ 13-16, Exhibits 6, 7, 8, and 9.) Finally, the lease between the County and LHI provides that the Agreement is directly related to the Covid-19 emergency and that the County "enters into this Occupancy as the agent of the State of California." (Simmering Dec., Exhibit 14.)

The County is acting consistent with the Governor's orders in the context of this state of emergency. The

CASE TITLE: City of Laguna Hills vs. Elite Hospitality, Inc.  CASE NO. 30-2020-01139345-CU-MC-CJC

CC&Rs must temporarily yield to the government's limited use of its police powers during this state of emergency.

Accordingly, the request for a temporary restraining order on the claim for breach of CC&Rs is denied. Insofar as the second cause of action for declaratory relief is based on the same theory as the claim for breach of CC&Rs, the request for a temporary restraining order is denied for the same reasons.

The Court notes that, this morning, it received a brief from the Governor of California Gavin Newsom, which apparently was sent by electronic mail to the Court and counsel for the parties yesterday, Sunday, April 19, 2020 at approximately 9:24 p.m. The Court has not read or considered the Governor's brief given the time it was received because the Court sees no need for further briefing at this time. Also, allowing for further briefing from the Governor or any other interested party would necessitate allowing Plaintiffs the opportunity to respond to the further briefing, thereby requiring the Court to delay its ruling.

Plaintiffs are ordered to give notice.

**The Order to Show Cause re: Preliminary Injunction is scheduled for hearing on 04/30/2020 at 10:00 AM in Department C25.** All parties shall appear by telephone.

Pursuant to Mr. Richardson's request, the Ex Parte documents are deemed the moving papers. Defendants' response must be served by e-mail (CivilUrgent@occourts.org) by 5:00 pm on April 23, 2020 and e-filed on the same day. Plaintiff's reply must be served by e-mail (CivilUrgent@occourts.org) by April 27, 2020, 5:00 pm and e-filed on the same day.

Plaintiffs are ordered to give notice.

# EXHIBIT B

1   XAVIER BECERRA
    Attorney General of California
2   THOMAS S. PATTERSON
    Senior Assistant Attorney General
3   JONATHAN M. EISENBERG
    Deputy Attorney General
4   LARA HADDAD
    Deputy Attorney General
5   State Bar No. 319630
      300 South Spring Street, Suite 1702
6     Los Angeles, CA  90013
      Telephone:  (213) 269-6250
7     Fax:  (916) 731-2124
      E-mail:  Lara.Haddad@doj.ca.gov
8   *Attorneys for Governor of California Gavin Newsom*

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**04/20/2020**

Clerk of the Superior Court
By Imelda Yu, Deputy Clerk

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10           COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

11

12

13   **CITY OF LAGUNA HILLS, ET AL.,**          Case No. 30-2020-01139345-CU-MC-CJC

14                              Plaintiffs,     **BRIEF OF GOVERNOR GAVIN
                                                NEWSOM, BY SPECIAL APPEARANCE,**
15          v.                                  **IN SUPPORT OF ORANGE COUNTY'S
                                                OPPOSITION TO PLAINTIFFS' *EX***
16                                              ***PARTE* APPLICATION FOR ORDER TO
                                                SHOW CAUSE AND TEMPORARY**
17   **ELITE HOSPITALITY, INC., ET AL.,**       **RESTRAINING ORDER**

18                              Defendants.     Date:        April 20, 2020
                                                Time:        10:00 a.m.
19                                              Dept:        C-25
                                                Judge:       Thomas A. Delaney
20                                              Trial Date:  None Set
                                                Action Filed: April 14, 2020
21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

BACKGROUND: EXECUTIVE ORDERS AND PROJECT ROOMKEY ................................. 2

ARGUMENT .............................................................................................................. 4

I.     The Governor Has Broad Authority to Issue Executive Orders During a State of Emergency, and the County May Implement Those Orders During An Emergency.................................................................................. 4

II.    The State and the Public Will Be Harmed if Injunctive Relief is Granted ............ 8

     A.    Plaintiffs Have Failed to Assert Harms that Outweigh Using the Laguna Hills Hotel for Project Roomkey.................................... 8

     B.    Issuance of a TRO Would Immediately and Irreparably Harm the Public Interest.................................................................................. 9

CONCLUSION ........................................................................................................ 10

i

1

# TABLE OF AUTHORITIES

2

3

**CASES**

4

*Barrett v. Dawson*
    (1998) 61 Cal.App.4th 1048 ...................................................................8

5

6

*Benson v. Walker*
    (4th Cir. 1921) 274 F. 622 ...................................................................5

7

*Compagnie Francaise de Navigation a Vapeur v. Bd. of Health of State of La.*
    (1902) 186 U.S. 380 .............................................................................4

8

9

*Hall v. Butte Home Health, Inc.*
    (1997) 60 Cal.App.4th 308 ...................................................................8

10

*Hickox v. Christie*
    (D.N.J. 2016) 205 F. Supp. 3d 579 .....................................................5

11

12

*Interstate Marina Development Co. v. County of Los Angeles*
    (1984) 155 Cal.App.3d 435...................................................................6

13

14

*Jacobson v. Massachusetts*
    (1905) 197 U.S. 11 ...........................................................................4, 5

15

16

*People ex rel. Gallo v. Acuna*
    (1997) 14 Cal.4th 1090 .......................................................................8

17

*Rasmussen v. Idaho*
    (1901) 181 U.S. 198 ............................................................................5

18

19

*United States v. Chalk*
    (4th Cir. 1971) 441 F.2d 1277.............................................................5

20

**STATUTES**

21

Gov. Code, § 8568 .......................................................................................6

22

23

Gov. Code, § 8570, subd. (d) ......................................................................6

24

Gov. Code, § 8572 ...................................................................................6, 7

25

Gov. Code, § 8627 .......................................................................................5

26

Gov. Code, § 8634 .......................................................................................6

27

**OTHER AUTHORITIES**

28

62 Ops.Cal.Atty.Gen. 701 (1979) ...............................................................6

County of Orange, Proclamation of a Local Emergency ...................................................6

Governor Newsom, Executive Order N-25-20 .......................................................3, 7

Governor Newsom, Executive Order N-32-20 ............................................................4

Governor Newson, Executive Order N-33-20 ............................................................4

Governor Gavin Newsom files this brief in support of Orange County's opposition to Plaintiffs' *ex parte* application for an order to show cause and temporary restraining order, and requests to specially appear at the hearing scheduled for April 20, 2020.  Due to the urgency and importance of public health measures implemented during the coronavirus emergency, the Governor respectfully requests that the Court accept and consider this brief and allow attorneys for the Governor to appear at the hearing on this matter.  As discussed below, consistent with the broad emergency authority granted to the Governor and the County, the Court should deny Plaintiffs' application and permit County officials to implement vital public safety measures, such as Project Roomkey, that are designed to curb the spread of the deadly COVID-19 virus.

## INTRODUCTION

The State of California, like the rest of the world, is combatting a public health emergency of a magnitude unseen for at least a century.  COVID-19 is an infectious and frequently deadly disease that already has killed over 39,000 Americans.  This extraordinary pandemic calls for swift and decisive action using the limited tools available to curb the disease's spread.  In particular, the pandemic will be halted only if transmission is curbed, and if individuals who have been diagnosed with or exposed to the disease are isolated from others (and given proper medical treatment).

California faces a particularly difficult challenge in fighting the pandemic, because of the State's large homeless population, present in every one of the State's 58 counties.  For various reasons, homeless individuals often have particularly great risk of being exposed to and contracting COVID-19, yet they do not have homes in which to self-isolate, increasing the risk of the disease spreading.  That is why addressing the homelessness crisis is a critical element of California's strategy to stop the spread of COVID-19.

In response to the COVID-19 pandemic, the Governor has proclaimed a state of emergency and initiated Project Roomkey.  Project Roomkey's purpose is to utilize, throughout the State, hotel and motel rooms that are currently sitting empty, to temporarily house, isolate, and treat homeless individuals who have been diagnosed with or are at high risk of contracting COVID-19.  Local authorities are authorized to coordinate with the State to identify and convert appropriate

1  facilities and enter into contracts with owners for these purposes, in accordance with a strict set of

2  guidelines.

3       As part of Project Roomkey, the County, in coordination with the State, contracted with

4  Co-Defendant Elite Hospitality, Inc., to use its hotel, the Laguna Hills Inn, to isolate and, where

5  necessary, to provide appropriate treatment for homeless individuals in Orange County.

6  However, Plaintiffs are trying to block this crucial emergency public-health initiative, on the

7  meritless claim that the Covenants, Conditions, Restrictions, and Reservations of Easements

8  (CCR&Rs) that apply to Laguna Hills Inn prevent it from being used as temporary housing for

9  sick or vulnerable people, in the midst of a harrowing pandemic.  But the steps that the Governor

10  and the County have taken fall squarely within the emergency authority of the Governor and

11  County to take decisive action to address the crisis.  This authority encompasses the ability to

12  temporarily suspend *localized*, *non-emergency*, *contractual* CCR&Rs.  A patchwork of localized

13  and private contracts, which were entered into during ordinary circumstances, do not supersede

14  emergency powers exercised by the Governor in cooperation with the counties to address the

15  unprecedented pandemic at hand.

16       In seeking emergency equitable relief to obstruct state and local emergency actions to

17  respond to a public health emergency, plaintiffs bear a particularly heavy burden.  But rather than

18  begin to satisfy this burden Plaintiffs all but ignore the extraordinary state of emergency, as well

19  as the imminent threat that the COVID-19 pandemic poses to the health and safety of all

20  Californians absent measures like those provided for in Project Roomkey.  Nor have Plaintiffs

21  shown that they will suffer more harm in the absence of injunctive relief than the general public

22  will suffer if a temporary restraining order is granted.  The harms Plaintiffs point to are

23  speculative and ignore the reality on the ground.  Without Project Roomkey, state and local

24  officials will lose an important tool to combat the virus, and more Californians will suffer and die.

25  **BACKGROUND: EXECUTIVE ORDERS AND PROJECT ROOMKEY**

26       To prepare for and respond to suspected or confirmed cases of COVID-19 in California and

27  to implement measures to mitigate the spread of COVID-19, the Governor proclaimed a State of

28  Emergency in California on March 4, 2020.  (Defs.' Opp. to Plfs.' Ex Parte Applic. for OSC/TRO

1  ("Def. TRO Opp."), Ex. 5 [State of California Proclamation of State of Emergency by Governor

2  Gavin Newsom].)

3      COVID-19 presents a particular threat to the state's homeless population.  Recognizing this

4  risk, the State acted quickly to address the particular risks of transmission to the homeless

5  population, implementing a series of measures that together are called Project Roomkey.  On

6  March 10, 2020, noting the increased risks of COVID-19 infection of the homeless population

7  and, therefore, the greater potential of that population to transmit the virus, the California

8  Business, Consumer Services and Housing Agency directed homeless assistance providers

9  throughout California to identify spaces that can be used to accommodate sick and vulnerable

10  homeless individuals who have no option to self-quarantine outdoors. (Def. TRO Opp., Ex. 10

11  [Guidance for Homeless Assistance Providers on Novel Coronavirus (COVID-19)], pp. 1, 3.)

12      On March 12, 2020, Governor Newsom signed Executive Order N-25-20, which cited to

13  the immediate need to secure numerous facilities in order to isolate and treat individuals exposed

14  to COVID-19, and which also cited to the increased demands and strain on existing homeless

15  shelters and resources.  (Def. TRO Opp., Ex. 6 [Executive Order N-25-20], p. 1.)  Accordingly,

16  the Governor ordered the California Health and Human Services Agency and Office of

17  Emergency Services to identify and make available hotels and other similar facilities to be used as

18  temporary residences for quarantining and treating individuals who have tested positive for or

19  have a high-risk exposure to COVID-19.  (*Id.*, p. 3, ¶ 8.)  Executive Order N-25-20 specifically

20  provides that such property be made available "*through the use of any contracts or other*

21  *necessary agreements*, and, if necessary, through the State's power to commandeer property."

22  (*Id.*, italics added.)

23      On March 18, 2020, the State issued additional guidance to homeless assistance providers

24  statewide, updating them on the State's efforts to secure hotel/motel rooms to temporarily house

25  homeless individuals that are diagnosed or exposed to COVID-19.  (Def. TRO Opp., Ex. 11

26  [Interim Guidance for Homeless Assistance Providers on Novel Coronavirus (COVID-19)], p. 3.)

27  Homeless assistance providers were directed to coordinate with their local County Office of

28  Emergency Management to determine the need for such spaces and to also coordinate with the

3

1    State.  (*Id.*, p. 4.)  The next day, March 19, 2020, the Governor signed Executive Order N-33-20,

2    well-known as the stay-at-home order.  (Def. TRO Opp., Exh. 9 [Executive Order N-33-20].)

3        On March 27, 2020, following the State's pledge of funds in furtherance of Project

4    Roomkey, the State secured federal funds from the Federal Emergency Management Agency

5    (FEMA).  (Def. TRO Opp., Exh. 12 [Letter, FEMA to OES].)

6        Project Roomkey is a program of statewide importance, as explained in the detailed

7    guidelines issued as part of the program's implementation.  (See Def. TRO Opp., Ex. 2 [Project

8    Roomkey: Emergency Housing for Immediate Protection Factsheet].)  It necessarily requires the

9    suspension of certain restrictions on the use of funds and property.  (See, e.g., Def. TRO Opp.,

10   Ex. 8 [Executive Order N-32-20], pp.1-2 [suspending portions of Health and Safety Code].)

11   Hotel rooms that would ordinarily not be eligible for certain funds to be converted to isolation

12   shelters are no longer restricted, and certain regulations governing those funds are suspended, on

13   a temporary basis, under Project Roomkey.  (*Id.*, ¶¶ 1-3.)  Given the unique circumstances that

14   each county faces regarding homelessness and Project Roomkey's stringent requirements, the

15   State works with local authorities as well as private entities to identify appropriate hotel/motel

16   rooms, which allows each county "to focus its resources on the provision of site supervision,

17   security, laundry, sanitation, and other services."  (Project Roomkey: Emergency Housing for

18   Immediate Protection Fact Sheet, available at https://www.cdss.ca.gov/Portals/9/FEMA/Project-

19   Roomkey-Fact-Sheet.pdf (last accessed April 19, 2020.)

20                                            **ARGUMENT**

21   I.    **THE GOVERNOR HAS BROAD AUTHORITY TO ISSUE EXECUTIVE ORDERS DURING A**
            **STATE OF EMERGENCY, AND THE COUNTY MAY IMPLEMENT THOSE ORDERS**
22          **DURING AN EMERGENCY**

23        The U.S. Supreme Court has long recognized that "a community has the right to protect

24   itself against an epidemic of disease which threatens the safety of its members."  (*Jacobson v.*

25   *Massachusetts* (1905) 197 U.S. 11, 27, internal quotation marks omitted.)  In that regard, the

26   Supreme Court has permitted states to enact "quarantine laws and health laws of every

27   description."  (*Id.* at p. 25)  Courts have universally upheld actions similar to the Executive

28   Order's measures to combat the COVID-19 pandemic.  (See, e.g., *Compagnie Francaise de*

                                                    4

1    *Navigation a Vapeur v. Bd. of Health of State of La.* (1902) 186 U.S. 380 [upholding quarantine

2    law against constitutional challenges]; *Rasmussen v. Idaho* (1901) 181 U.S. 198 [permitting a ban

3    on certain animal imports if evidence of disease was found]; see also *Benson v. Walker* (4th Cir.

4    1921) 274 F. 622 [board of health resolution preventing circuses from entering a county because

5    of 1918-1919 influenza epidemic found lawful]; *Hickox v. Christie*  (D.N.J. 2016) 205 F. Supp.

6    3d 579 [quarantine of nurse who had treated Ebola patients in Sierra Leone found lawful].)

7        Through the California Emergency Services Act, the Legislature has centralized authority

8    to respond to state emergencies within the Governor.  In emergencies like the present one, the

9    Governor has "all police power vested in the state."  (Gov. Code, § 8627.)  This includes

10   authority to "make, amend, and rescind orders and regulations necessary" to respond to the

11   emergency (*id.*, § 8567), as well as to "suspend any statute prescribing the procedure for conduct

12   of state business, or the orders, rules, or regulations of any state agency . . . where the Governor

13   determines and declares that strict compliance with any statute, order, rule, or regulation would in

14   any way prevent, hinder, or delay the mitigation of the effects of the emergency."  (*Id.*, § 8571).

15       The State's proclamation of a state of emergency and invocation of emergency powers

16   "necessarily restrict[] activities that would normally be constitutionally protected," and "[a]ctions

17   which citizens are normally free to engage in [have] become subject to criminal penalty."

18   (*United States v. Chalk* (4th Cir. 1971) 441 F.2d 1277, 1281.)[1]  Given this broad authority, the

19   Governor has the authority to implement Project Roomkey, and to authorize local authorities to

20   carry out its provisions, even if doing so temporarily overrides contracts or agreements currently

21   in place.[2]  Indeed:

22           [i]n the exercise of the emergency powers . . . vested in him during a state of war
             emergency or state of emergency, the Governor is authorized to commandeer or
23           utilize any private property or personnel deemed by him necessary in carrying out the
             responsibilities hereby vested in him as Chief Executive of the states and the state
24           shall pay the reasonable value thereof.

25   _____

26           [1] Indeed, states are permitted to curtail constitutional rights during an emergency.  (See,
     e.g., *Jacobson v. Massachusetts*, *supra*, 197 U.S. at p. 29 [recognizing that "under the pressure of
27   great dangers," constitutional rights may be reasonably restricted "as the safety of the general
     public may demand"].)
             [2] County Defendants address this issue at length in their briefing to the court.  (Def. Supp.
28   Opp. at pp. 2-8.)

(Gov. Code, § 8572.)  Plaintiffs' request here threatens to undermine the unique design of California's system of government in responding to public health emergencies at a moment of extreme peril.  Under the Emergency Services Act, the Governor has the power to approve a local emergency response plan.  (Gov. Code, § 8570, subd. (d).)  The Governor has exercised that power in the above-noted Executive Orders, and specifically approves the County's execution of contracts to procure privately-owned quarantine and isolation spaces for temporary use during this moment of crisis.  Also under the Emergency Services Act, each political subdivision, including Orange County and the City of Laguna Hills, is obligated to take all actions necessary to carry out a statewide emergency plan.  (Gov. Code, § 8568.)  The County is taking appropriate actions to implement Project Roomkey, and the City of Laguna Hills does not have authority to attempt to curb those actions.  (Cf. *Interstate Marina Development Co. v. County of Los Angeles* (1984) 155 Cal.App.3d 435 (holding that county rent-control ordinance did not unconstitutionally impair pre-existing real-estate development contracts); Jared Igerman, *California Counties: Second-Rate Localities or Ready-Made Regional Governments?,* 26 Hastings Const. L.Q. 621, 670 (Spring 1999) ("In principle, there is nothing to prevent the State from delegating to the counties any or all of its land use regulation powers that preempt conflicting municipal laws").)

In addition, the County itself has the authority to temporarily override the CCR&Rs as needed to combat an emergency health crisis.[3]  The Emergency Services Act expressly provides that counties may take actions precisely like the ones at issue here.  (Gov. Code § 8634 [cities and counties "may promulgate orders and regulations necessary to provide for the protection of life and property"].)  Cities, including Laguna Hills, must abide by county emergency rules and regulations.  (See 62 Ops.Cal.Atty.Gen. 701 (1979) ["Cities within a county are bound by county rules and regulations adopted by the county pursuant to section 8634 of the Government Code during a county proclaimed local emergency when the local emergency includes both incorporated and unincorporated territory of the county"].)  On February 26, 2020, the County declared a local emergency and local health emergency in response to COVID-19.  (See County

---

[3] This is the case even assuming the CC&Rs would actually apply to the contract between the County and the hotel owner.  As the County has forcefully argued, there is serious doubt that the CC&Rs are in any way violated by the agreement to address an immediate health crisis.

1  of Orange, Proclamation of a Local Emergency, available at

2  https://www.ocgov.com/civicax/inc/blobfetch.aspx?BlobID=112436, pp. 4-6 (last accessed April

3  19, 2020).)  In that proclamation, the County explicitly ordered that "all County departments and

4  agencies take those actions, measures and steps deemed necessary to assure the safety and welfare

5  of Orange County residents and property." (County of Orange, Proclamation of a Local

6  Emergency, p. 5.)  Neither the city nor private parties have authority to interfere with these life-

7  saving measures.

8  Finally, contrary to Plaintiffs' argument (Plaintiffs' Supp. TRO, at pp. 2-4.), nothing

9  requires the Governor to fully "commandeer" private property in all circumstances.  The flexible

10  authority granted to the Governor allows him to "utilize" property, including through contracts

11  and voluntarily arrangements, as Executive Order N-25-20 specifically provides for.  (Gov. Code,

12  § 8572; Def. TRO Opp., Ex. 6, ¶ 8.)  The use of one option versus another would not make any

13  difference to the rights of third parties or the general public.

14  There is no merit to Plaintiffs' assertion that what the Governor may do through

15  commandeering property he may not do through much less drastic measures: the voluntary

16  cooperation of the County and private property owners in accordance with existing executive

17  orders and the County's own emergency declaration.[4]  Project Roomkey provides for homeless

18  housing, on a temporary basis, with the agreement and participation of counties and hotel/motel

19  owners, in order to stop the spread of the virus.  In an emergency, there is no prohibition on the

20  Governor or local officials to take these steps and allow the State to arrange with counties and

21  private parties, in a cooperative fashion, to temporarily utilize property to address a public

22  emergency, as has been done here.[5]  The CCR&Rs—which are private, localized, non-

23  _____
      [4] Plaintiffs' argument also undercuts their claim of irreparable harm absent an injunction,
24  because, they tacitly admit, the Governor could lawfully commandeer the Laguna Hills Inn for
     Project Roomkey.
25      [5] Moreover, Plaintiffs appear to be using the CCR&Rs as a stand-in for their objections to
     Project Roomkey, for they contend that "no amount of security or other precautions can make
26  [Laguna Hills Inn] safe." (Plaintiffs' TRO, at p. 7.)  It is disingenuous to urge this Court, as
     Plaintiffs do, to require the County and the State to seek approval from the Development
27  Committee, which would have denied approval as a foregone conclusion, even assuming that a
     functioning Development Committee exists, something that has been called into question.  (See
28  Akash Decl., § 14 ["In the 22 years that Elite has owned the LHI, I have never heard of a

7

1  emergency, contract-based regulations—must yield, for now, to the overarching emergency

2  authorities of the Governor and the County when they are addressing an unprecedented global

3  pandemic.[6]

4       Moreover, as the County points out, CCR&Rs are generally void if contrary to public

5  policy.  (See, e.g., *Hall v. Butte Home Health, Inc.* (1997) 60 Cal.App.4th 308 [restrictive

6  covenant preventing group home for the disabled violated state law prohibiting discrimination

7  against the disabled]; *Barrett v. Dawson* (1998) 61 Cal.App.4th 1048 [upholding state law

8  declaring restrictive covenants against day care homes in residential neighborhoods were void;

9  recognizing significant and legitimate public purpose].)   Here, the CCR&Rs are not generally

10  void; however, during the pandemic and the ongoing state of emergency, there is a clear statutory

11  power to override them temporarily to the extent that they conflict with the Governor's and

12  County's orders.

13  **II.   THE STATE AND THE PUBLIC WILL BE HARMED IF INJUNCTIVE RELIEF IS GRANTED**

14      **A.   Plaintiffs Have Failed to Assert Harms That Outweigh Using the Laguna Hills Hotel for Project Roomkey**

15       The issuance of an injunction here would lead to far greater harm to the Defendants—and

16  to the general public—as compared to the harm Plaintiffs would suffer if the injunction were

17  denied; therefore, Plaintiffs' application for a TRO should be denied.  (*People ex rel. Gallo v.*

18  *Acuna* (1997) 14 Cal.4th 1090, 1109.)

19       Plaintiffs contend that the individuals to be housed within the City pose a risk to Laguna

20  Hills residents because they may violate the requirements of the Stay-At-Home order, quarantine

21  orders, and the requirements of accommodation and treatment set forth by Project Roomkey, and

22  enter the community at large.  (Plfs.' TRO App. at pp. 4-5, 7, 15.)  Other than speculation,

23  Plaintiffs have no basis to make such assertions.  As County Defendants note, there is now a

24  fence entirely around the Laguna Hills Inn (Decl. of David H. Solo, ¶ 7 and Exh. A) and there

25  

26  ——————————————

Development Committee for Plaza Pointe . . . nor have I received any communications from such a committee"].)

27    [6] Moreover, many businesses in Plaza Pointe are now effectively prohibited from complying with CCR&Rs, because the State has ordered those businesses closed.

28

1    will be a full-time security detail at the site (Decl. of Ahmad Hamini, ¶ 3.)  Further, Plaintiffs

2    discount the minimal risk to permanent residents who are in compliance with the Stay-At-Home

3    Order.[7]  Plaintiffs' contention that the use of the Laguna Hills Inn for Project Roomkey would

4    expose the City's population to potentially infected healthcare workers and other staff is similarly

5    based on pure speculation.  (Plaintiffs' TRO at p. 7, 15.)  The risk is no greater than that posed by

6    the healthcare workers who work in medical facilities within the City limits or who live within

7    the City but commute to healthcare facilities outside the City, or by all other essential employees

8    who commute to or from Laguna Hills.  The harms to Plaintiffs stem from the ongoing crisis, not

9    the efforts to prevent the spread of the disease.

10       **B.**    **Issuance of a TRO Would Immediately and Irreparably Harm the Public
              Interest**

11

12         On the other hand, an injunction would cause immediate harm to the general public.  As

Plaintiffs correctly note, the most effective measures to stopping the spread of COVID-19 is to

13    remain "physically separated from known or potentially infected individuals."  (Plfs.' TRO App.,

14    at p. 2.)  To that end, the Governor has issued multiple orders and taken other actions.  And

15    because of the significant threat to the homeless population posed by the virus, and the threat of

16    continued transmission by the homeless population, the State has launched Project Roomkey.

17    Counties are directed to implement Project Roomkey across the state in order for the program to

18    be effective, including making use of hotels and motels—wherever they may be—that are well-

19    suited to provide accommodations for the purposes of isolation and treatment.

20
         Swift implementation of Project Roomkey is of vital statewide importance.   If homeless

21    individuals who have been diagnosed with or are exhibiting signs of COVID-19 are left unhoused

22    and without treatment, the virus will continue to spread, and not just within the homeless

23    population, but to the wider population, in Laguna Hills and elsewhere.[8]

24

25           [7] Plaintiffs assert that the Laguna Hills Inn is next to a "bustling" commercial area.
    (Plaintiffs' TRO, at p. 3.)  Although that may be the case for the period before and after the

26    present emergency, Plaintiffs' assertion ignores the fact that the Stay-At-Home Order allows only
    emergency services and essential businesses to operate.

27           [8] Plaintiffs point to the low numbers of confirmed Covid-19 cases in the City thus far.
    (Plaintiffs' TRO at p. 3.)  But these numbers are likely a mere fraction of the true rate of

28    infections.  (See Mason, Netburn, "Coronavirus Infections Could Be Much More Widespread

1    Granting a TRO here would significantly damage Project Roomkey's success, at a crucial

2   time where the Governor is urging cities to overcome their hesitancy and implement its

3   provisions.  (See McGreevy, "Some Cities Are Blocking California Efforts to Protect Homeless

4   People From Coronavirus, Newsom Says" (Los Angeles Times, April 18, 2020), available at

5   https://www.latimes.com/california/story/2020-04-18/gavin-newsom-project-roomkey-homeless-

6   people-housing-california-hotels (last accessed April 18, 2020).)  The County would have to start

7   from scratch to locate new temporary housing for homeless coronavirus victims in South Orange

8   County, causing delays that could be deadly.  The risk of infection to asymptomatic homeless

9   persons would increase.  And infections in the homeless population could easily spread to the

10   wider population.  Finally, an injunction would send the wrong signal to cities who are similarly

11   resisting implementing Project Roomkey.

12                                    **CONCLUSION**

13    For the foregoing reasons, the Governor respectfully requests that the Court deny Plaintiffs'

14   application for a temporary restraining order.

15   Dated:  April 19, 2020                           Respectfully Submitted,

16                                                     XAVIER BECERRA
                                                       Attorney General of California
17                                                     THOMAS S. PATTERSON
                                                       Senior Assistant Attorney General
18                                                     JONATHAN M. EISENBERG
                                                       Deputy Attorney General
19

20

21

22                                                     */s Lara Haddad*
                                                       _____
23                                                     LARA HADDAD
                                                       Deputy Attorney General
24                                                     *Attorneys for Governor of California Gavin
                                                       Newsom*

25

26   Than Believed, California Study Suggests," (Los Angeles Times, April 17, 2020), available at
     https://www.latimes.com/california/story/2020-04-17/coronavirus-antibodies-study-santa-
27   clara-county (last accessed April 18, 2020).)

28

                                              10

<u>**DECLARATION OF SERVICE BY E-MAIL**</u>

Case Name:   **City of Laguna Hills vs. Elite Hospitality, Inc.**
No.:           **30-2020-01139345-CU-MC-CJC**

I declare:

On <u>April 19, 2020</u>, I served the attached **BRIEF OF GOVERNOR GAVIN NEWSOM, BY SPECIAL APPEARANCE, IN SUPPORT OF ORANGE COUNTY'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER** by transmitting a true copy via electronic mail to the following recipients:

**Honorable Thomas A. Delaney**
civilurgent@occourts.org

**Laura D. Knapp**
Laura.knapp@coco.ocgov.com
**D. Kevin Dunn**
Kevin.dunn@coco.ocgov.com
**Suzanne E. Shoai**
Suzy.shoai@coco.ocgov.com
**Golnaz Zandieh**
Golnaz.zandieh@coco.ocgov.com

**Kelly G. Richardson**
kelly@rodllp.com
**Daniel A. Nordberg**
dan@rodllp.com
**Alisa E. Sandoval**
alisa@rodllp.com
**Daniel C. Heaton**
daniel@rodllp.com

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on April 19, 2020, at Los Angeles, California.

| Lara Haddad | *s/ Lara Haddad* |
|:---:|:---:|
| Declarant | Signature |