# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                      Date: May 2, 2020

Title: LA ALLIANCE FOR HUMAN RIGHTS ET AL. v. CITY OF LOS ANGELES ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Deborah Lewman for Kelly Davis | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   SCHEDULING NOTICE RE: SETTLEMENT NEGOTIATIONS**

The Court thanks the parties to this action for having demonstrated a very enlightened approach to addressing the issues before us. The agreement of all parties that the Court would be allowed and encouraged to engage in *ex parte* communication with both parties and non-parties in pursuit of a humane and efficient solution to the problems created by homelessness has enabled the Court to acquire a much better understanding of the issues presented than would be possible in a more conventional framework.

By way of background information, the Court notes that the Complaint (Dkt. 1) in this action was filed on March 10, 2020. As alleged in the Complaint, over 50,000 homeless persons are located in the County of Los Angeles, over 60% of whom live in the City of Los Angeles. The homeless population in the City and County continues to grow, and there is no significant portion of the City or County in which homeless persons are not living in or on parks, beaches, sidewalks, alleyways, and other areas intended for the use of the general public. Virtually all of this activity is prohibited by various City and/or County ordinances, but federal law prohibits the enforcement of these ordinances absent the government's ability to provide shelter for the homeless population.


**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KESDate: May 2, 2020
Page 2

On this basis, the Complaint alleges fourteen causes of action relating to negligence, maintenance of a public and private nuisance, inverse condemnation, waste of public resources, California Environmental Quality Act violations, violation of state and federal disabled person rights, failure to provide rehabilitative services required by law, violations of the Due Process and Equal Protection Clauses, and uncompensated takings. *See generally* Compl. The relief sought includes injunctive relief, damages, costs, and attorneys' fees. *See generally id.*

Thus far, over the course of several status conferences and other less formal discussions, the parties to this action have identified a number of ways in which alternative living facilities can be provided. The three most-discussed options have been the use of recreation centers, the State of California's "Project Roomkey," and the relocation of homeless persons to publicly owned or controlled locations designated for use as temporary and/or permanent living locations.

On April 24, 2020, the Court issued a request (Dkt. 78) that the parties file a Progress Report regarding (1) safe parking sites, (2) the implementation of Project Roomkey, and (3) the use of recreational centers as shelters. On April 30, 2020, the Court received the requested Progress Report (Dkt. 88). The Court thanks the parties for this information, and now addresses each of these topics in turn.

First, the Court has previously been informed that there are approximately 6,000 cars, vans, and campers being used as homes in the City of Los Angeles.[1] With respect to safe parking sites, the parties have now informed the Court that the City of Los Angeles currently has eighteen safe parking sites, with a combined maximum capacity of 406 vehicles (including recreational vehicles, vans, and cars) and varying actual occupancy.[2] Out of over 300 parking lots owned by the City of Los Angeles's Department of Transportation, several additional lots have been identified for potential use as safe parking sites.

---

[1] This data is drawn from LAHSA's report titled "2019 Greater Los Angeles Homeless Count—Vehicles, Tents, and Makeshift Shelters by Geographic Area." *See* Page 4, Table 5, enumerating the "Number of Vehicles, Tents, and Makeshift Shelters by Council District, City of Los Angeles, 2019." The report is available at the following URL:  https://www.lahsa.org/documents?id=3468-2019-greater-los-angeles-homeless-count-vehicles-tents-and-makeshift-shelters-by-geographic-area.pdf

[2] As stated in the most recent Progress Report (Dkt. 88), "[t]he City will work with LAHSA and its service providers to compile occupancy data for the Safe Parking Program and submit it to the Court in a supplemental report." The Court looks forward to receiving this information in advance of the upcoming settlement conference.

      Second, with respect to Project Roomkey, as of April 28, 2020, the County of Los Angeles reports that there are twenty-six hotels and motels with a combined 2206 beds under contract—out of a goal of 15,000—with 1204 of those beds currently occupied. So far, 1351 clients have been served by this program. While many local communities, to their great credit, have been fully cooperative in implementing Project Roomkey, the parties have also indicated resistance from some local communities in which the subject hotels and motels are located. In addition, the City of Los Angeles has contracted with twelve hotels and motels to provide an additional 962 rooms under Project Roomkey, 727 of which are currently occupied by 814 guests, and the City reports that another eighty-seven rooms are in the process of being added.

      Third, with respect to the use of recreational centers as shelters, the parties report that twenty-four facilities are currently being used as emergency shelters, with a combined capacity of 1019 beds (of which 909 beds are currently occupied). The City is also using some recreational centers to place emergency trailers received from the State of California. So far, 207 trailers have been placed at six locations, and sixty of the trailers are currently occupied. And a further six recreational centers have been set up as safe parking sites, with fifty-six spaces currently occupied. The Court notes that the use of recreational centers is commendable and creative, but is also a short-term solution, and one that has an unavoidable negative impact on the communities which would otherwise access these facilities. Furthermore, these negative impacts are most strongly felt in those communities where residents are least able to find other recreational opportunities at their own expense.

      It appears, moving forward, that the most viable option is to use public property for the creation of a safe and healthy living environment for the homeless population currently living without shelter. While the goal is ultimately to provide transitional and then permanent affordable housing for this population, that goal appears unattainable in the short term, and the exigencies of the COVID-19 pandemic necessitate more immediate access to shelter.

      Additionally, the Court has learned that sites like the location at 16th and Maple, as well as freeway overpasses, underpasses, and ramps, pose a health hazard to the homeless individuals who live in such locations. These health risks stem from environmental pollutants and contaminants, and, as pertains to freeway entrances and exits, the potential to be struck by vehicles. It is unclear as to which governmental authority is ultimately responsible for managing these freeway areas. The Court needs clarity on this issue as the parties proceed with settlement discussions. To facilitate discussions concerning freeway areas and future properties, the Court respectfully

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KESDate: May 2, 2020
Page 4

REQUESTS the attendance of Caltrans District 7 Director John Bulinski, or a knowledgeable designated representative, at the upcoming settlement negotiations.

     Were this case to follow the traditional trajectory of litigation, up to and including trial, the burdens of discovery alone would consume significant time and money that could be better directed towards addressing the core problem of homelessness. It is the function of the courts to facilitate the resolution of disputes; while this goal has paradigmatically been achieved through a trial and judgment on the merits, the statistical reality is that a vast majority of disputes brought within the jurisdiction of the courts are resolved through settlements agreeable to all parties. The instant case cries out for such a resolution, and the Court will do anything legally permissible to enable the parties to achieve that result—which the Court believes to be in the best interest of both the parties and the Los Angeles homeless population. As the parties have indicated to the Court, previous years of litigation on the issue of homelessness have resulted in only minimal improvements for the homeless population, the business community, and the general citizenry of Los Angeles. Now, having observed the initiative and cooperation demonstrated thus far by the City Council, the Mayor's Office, and the County Board of Supervisors, the Court is optimistic that the parties will be able to reach a settlement to the benefit of all persons living in the City and County of Los Angeles. This will to succeed is encouraging to the Court, and the Court looks forward to the upcoming settlement negotiations.

     In pursuit of that goal, the Court REQUESTS that the parties commence settlement negotiations, together with the Court, at 10:00 a.m. on Thursday, May 7, 2020. In order to comply with the Central District of California's Continuity of Operations Plan and other public health guidance, the settlement negotiations shall be held at the Alexandria Ballrooms, 501 S. Spring St., Los Angeles, CA 90013. The Court further REQUESTS that the parties confidentially submit their written settlement positions to the Court in advance of the settlement negotiations.

     The Clerk shall serve this minute order on the parties.

MINUTES FORM 11Initials of Deputy Clerk: kd/djl
CIVIL-GEN