# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                   Date: May 13, 2020

Title: LA ALLIANCE FOR HUMAN RIGHTS ET AL. v. CITY OF LOS ANGELES ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER FOR BRIEFING**

As the record has developed in this case, the Court has become increasingly concerned that a particular subset of individuals experiencing homelessness—those who live under freeway overpasses and underpasses, and near entrance and exit ramps—are exposed to severely heightened public health risks as a result of where they live. Indeed, all parties in this action agree that it is unreasonably dangerous for humans to live in areas that may, for example, be contaminated with lead or other carcinogenic substances.[1] However, as with many issues involving individuals experiencing homelessness, no party appears to be addressing this problem with any urgency. The Court is therefore considering issuing an emergency order requiring this subset of individuals experiencing homelessness to be relocated away from freeway overpasses, underpasses, and ramps.

---

[1] *See* California Department of Transportation, Hazardous Waste Assessment of Parcel for Air Space Lease for Homelessness Solutions Located at 16th Street and Maple Ave., Los Angeles (April 10, 2020) [hereinafter Assessment] at 3 ("However, based on the location of the parcel being directly under the heavily travelled I-10 Freeway and past use of leaded gasoline, there is a high probability that the unpaved soil areas on the parcel and around the perimeter of the parcel at the columns and fence will contain hazardous waste concentrations of lead."). The Assessment is attached to this order as Exhibit A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                                                    Date: May 13, 2020
                                                                                                                                         Page 2

### I. Public Health Risks of Living Adjacent to Freeways

Since this case began on March 10, 2020, the burgeoning COVID-19 pandemic has been a primary concern. This crisis poses an especial danger to the vulnerable homeless population. Without adequate access to shelter, hygiene products, and sanitation facilities, individuals experiencing homelessness face a greater risk of contracting the novel coronavirus, and an outbreak in the homeless community would threaten the general public as well. In its hearings, status conferences, and settlement negotiations, the Court has therefore maintained a particular focus on the public health issues facing the homeless community in the greater Los Angeles area.

As the Court has continued to learn from the parties, as well as other participants in hearings and conferences, it has become clear that many homeless individuals face an additional, immediate health hazard as a result of camping near freeway overpasses, underpasses, and ramps. These locations pose a twofold danger. First, they expose homeless individuals to elevated levels of pollutants and contaminants, including lead and other carcinogens, which have deleterious health impacts and can shorten a homeless person's life expectancy by decades.[2] Second, these locations also increase the danger that a homeless person will be struck by a vehicle or injured in the event of an earthquake or crash.[3]

### II. The Court's Proposed Emergency Measures

To protect those individuals experiencing homelessness currently living near freeway overpasses, underpasses, and ramps, the Court is contemplating issuing an injunction requiring that they be relocated away from such areas.

#### A. Legal Standard

A district court may order injunctive relief on its own motion and is not restricted to ordering the relief requested by a party. *Armstrong v. Brown*, 768 F.3d 975, 980 (9th Cir. 2014) (citing *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1150 (9th Cir. 2004)). A preliminary injunction is an "extraordinary remedy," requiring courts to balance competing claims on a case-by-case basis, with "particular regard for the public

---

[2] *See* Assessment at 3; *see also* Tr. of Apr. 13, 2020 Proceedings (Dkt. 94) at 75-76 (discussing danger of fumes to "people sleeping under freeways").

[3] *See* Tr. of Apr. 13, 2020 Proceedings at 75-76 (noting further danger of "the freeway collapsing in earthquakes").

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                                                                     Date: May 13, 2020
                                                                                                                                                  Page 3

consequences" of issuing an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

      For a court to issue a preliminary injunction, it must find that (1) there is a likelihood of success on the merits; (2) absent preliminary relief, irreparable harm is likely; (3) the balance of equities tips in favor of preliminary relief; and (4) an injunction is in the public interest. *See Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). Alternatively, an injunction can also be justified if there are "serious questions going to the merits" and the balance of hardships "tips sharply" in favor of injunction relief, "assuming the other two elements of the *Winter* test are met." *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" exists when there is "a fair chance of success on the merits." *See Sierra On-Line, Inc. v. Phx. Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984). The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another," as long as "irreparable harm is *likely*." *See Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (quoting *Cottrell*, 632 F.3d at 1131).

     **B.**     **Discussion**

          **1.**     **The Likelihood of Success on the Merits Supports Preliminary Relief**

The California Welfare and Institutions Code provides as follows:

> Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.

Cal. Welf. & Inst. Code § 17000 (West 2020). This provision is intended "to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed." *Id.* § 10000. Such aid and services shall be "provided promptly and humanely, with due regard for the preservation of family life," and on a non-discriminatory basis. *Id.*

      There is, at the very least, a serious question as to whether the City of Los Angeles and County of Los Angeles have failed to meet these obligations under California law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                                          Date: May 13, 2020
                                                                                                          Page 4

By providing inadequate housing—such that homeless individuals must shelter in inherently dangerous locations—the City of Los Angeles and County of Los Angeles[4] may also have exposed the homeless residents living near freeways to a public nuisance. And while *Martin v. City of Boise*, 920 F.3d 584, addressed only the Eighth Amendment, it gave constitutional significance to the availability of shelter—which, in this context, could plausibly implicate the Due Process and Equal Protection Clauses of the Fifth and Fourteenth Amendments.

Accordingly, the Court finds a sufficient likelihood of success on the merits to support a preliminary injunction and provide relief to the narrow subset of individuals experiencing homelessness who live under or around freeways in the greater Los Angeles area.

### 2. The Likelihood of Irreparable Harm Justifies Preliminary Relief

Given the health hazards described above, the Court has no difficulty finding a grave risk of irreparable harm. When homeless individuals are exposed to such dangers as toxic fumes, "hazardous waste concentrations of lead," car crashes, and the potential collapse of an overpass in an earthquake, their health is threatened in a way that monetary damages cannot adequately compensate. Additionally, homeless persons living near freeways need not suffer these harms at all—or, at least, need not suffer them any further—and this outcome could be achieved with a preliminary injunction.

Because of the public health risks inherent in living near freeways, the Court finds that the homeless individuals that live in such locations face a likelihood of irreparable harm, justifying a preliminary injunction.

### 3. The Balance of Equities Tips in Favor of Preliminary Relief

As already discussed, the homeless individuals who live near freeway overpasses, underpasses, and ramps face severe health hazards. By comparison, the City of Los Angeles and County of Los Angeles would only need to invest relatively modest financial and administrative resources to provide safe and healthy shelters to these individuals. As such, the Court finds that the balance of the equities weighs in favor of an injunction.

---

[4] The Court would also enjoin the State of California with the proposed preliminary injunction; however, the Court does not presently have jurisdiction to do so, as the State of California has not been joined as a party to this action.

### 4. A Preliminary Injunction Is in the Public Interest

Finally, a humane relocation away from freeways in support of public health will support the public interest.

### C. Proposed Relief

As mentioned above, to protect the homeless individuals camping near freeway overpasses, underpasses, and ramps—and the general public—the Court is considering issuing an injunction requiring these individuals to be humanely relocated away from such areas. As part of this humane relocation effort, and to promote the underlying public health and safety goals, the City of Los Angeles and County of Los Angeles would be required to provide shelter—or alternative housing options, such as safe parking sites, or hotel and motel rooms contracted under Project Roomkey—to individuals experiencing homelessness.

As shelters are established and homeless camps are relocated away from freeway overpasses, underpasses, and ramps, the following criteria, at a minimum, would have to be satisfied to ensure the process remains humane and serves the best interests of the affected individuals experiencing homelessness:

(1) All shelters and alternative housing options must be configured with adequate physical space to allow the sheltered individuals to maintain the minimum recommended social distance of six feet to mitigate the transmission of SARS-CoV-2.

(2) All shelters and alternative housing options must have adequate hygiene facilities, such as handwashing stations and showers.

(3) All shelters and alternative housing options must have nursing staff who, upon intake, can test each homeless individual for communicable diseases and other health conditions. The Court would consider revising this aspect of the injunction in the future, depending on the state of the COVID-19 pandemic.

(4) All shelters and alternative housing options must be staffed by security as necessary to ensure the safety of the homeless persons sheltered therein.

(5) All homeless individuals shall be able to retain possession of their belongings, whether they choose to enter a shelter or alternative housing option, or simply relocate a sufficient distance away from freeway overpasses, underpasses, and ramps.

Case 2:20-cv-02291-DOC-KES   Document 103   Filed 05/13/20   Page 6 of 7   Page ID #:1326

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                                      Date: May 13, 2020
Page 6

(6) Before beginning the process of clearing freeway overpasses, underpasses, and ramps, all homeless individuals living in the vicinity must be given advance notice; such notice shall include information about nearby shelters and alternative housing options.

(7) After such notice is given, and after the City of Los Angeles and/or County of Los Angeles provide adequate alternative shelter for individuals experiencing homelessness living in the vicinity of a freeway, the City of Los Angeles and County of Los Angeles will be allowed to enforce anti-camping laws in the vicinity of freeways to ensure that these individuals are moved to a safer location. (That is, while an individual experiencing homelessness could not be ordered to enter a shelter facility, they could be ordered to relocate an adequate distance away from freeway locations.) If all of the above requirements are met, then enforcement in these limited, freeway-adjacent areas would be fully compliant with *Martin v. City of Boise*.

The Court also welcomes the parties' input on how these criteria might be improved to better support the health and well-being of the individuals experiencing homelessness currently living near freeway overpasses, underpasses, and ramps.

If enjoined, the City of Los Angeles and County of Los Angeles[5] would be responsible for disentangling which entity has authority over the subject freeway locations.

## III.    Briefing Schedule

Although the Court believes the health risks described above constitute an emergency and demand a swift response, the Court invites the parties' input before ordering injunctive relief. To that end, the Court hereby ORDERS that the parties file briefing on the above proposal by 5:00 p.m. on Wednesday, May 20, 2020. Each brief should be no longer than twenty-five pages, and should, at a minimum, discuss the party's position on the legal justification for injunctive relief and the proposed remedy outlined above. The Court further ORDERS the City of Los Angeles and County of Los Angeles to submit an estimate of how many individuals experiencing homelessness would be affected by the proposed relief no later than 10:00 a.m. on Friday, May 15, 2020.

---

[5] And the State of California, if made a party to this action, per Footnote 4 above.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES	Date: May 13, 2020
	Page 7

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11	Initials of Deputy Clerk: kd
CIVIL-GEN