MARY C. WICKHAM,
County Counsel (Bar No. 145664)
RODRIGO A. CASTRO-SILVA, Senior
Assistant County Counsel (Bar No. 185251)
THOMAS J. FAUGHNAN, Senior
Assistant County Counsel (Bar No. 155238)
LAUREN M. BLACK, Principal Deputy
County Counsel (Bar No. 192302)
Email: lblack@counsel.lacounty.gov
500 West Temple Street, Suite 468
Los Angeles, CA 90012
Telephone: (213) 974-1830
Facsimile: (213) 626-7446

MANATT, PHELPS & PHILLIPS, LLP
BRANDON YOUNG (Bar No. 304342)
Email: byoung@manatt.com
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

FOLEY & LARDNER LLP
BYRON MCLAIN (Bar No. 257191)
Email: bmclain@foley.com
555 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: 213-972-4500
Facsimile: 213-486-0065

Attorneys for Defendant
COUNTY OF LOS ANGELES

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. ALLIANCE FOR HUMAN RIGHTS, an unincorporated association, JOSEPH BURKE, HARRY TASHDJIAN, KARYN PINSKY, CHARLES MALOW, CHARLES VAN SCOY, GEORGE FREM, GARY WHITTER, and LEANDRO SUAREZ, individuals, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, a municipal entity; COUNTY OF LOS ANGELES, a municipal entity; and DOES 1 through 200 inclusive. <br><br> Defendants. | Case No. 2:20-CV-02291 <br><br> Hon. David O. Carter <br><br> **DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO THE COURT'S MAY 15, 2020 PRELIMINARY INJUNCTION ORDER** <br><br> Compl. Filed: March 10, 2020 |

# TABLE OF AUTHORITIES

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY ................................................................................ 3

    A.   The parties agreed to stay the case to allow them to meaningfully engage in settlement discussions ................................. 3

    B.   The parties have worked with the Court to address issues it has identified during settlement negotiations ................................. 4

    C.   Without notice, the Court issued an injunction ordering the City and County to relocate individuals from freeways ................... 5

III. ARGUMENT ....................................................................................................... 7

    A.   The Court cannot usurp the County's discretion or legislative authority under Section 17000 ................................................ 8

    B.   The Court's injunction fails on the merits ................................... 10

        1.   Plaintiffs will not prevail on the merits of their cause of action under Welf. & Inst. Code § 17000 ................................. 10

            a.   There is no mandatory duty when an enactment is discretionary or permissive ........................................... 11

            b.   Section 17000 vests the County with broad discretion to provide aid to the indigent ......................... 12

        2.   There is no evidence that Plaintiffs will suffer irreparable harm absent the Court's injunction ........................................ 13

        3.   The Court's injunction is contrary to the public interest and would interfere with the County's response to homelessness, the equitable distribution of resources, and protecting the public health ...................................... 14

    C.   The Court's preliminary injunction is not supported by evidence ..... 16

        1.   A preliminary injunction is an extraordinary remedy and must be supported by competent evidence ................................. 16

        2.   No party requested injunctive relief in this case or submitted any evidence supporting the Court's order ............. 17

    D.   The preliminary injunction is procedurally defective ......................... 19

        1.   The Court improperly relies on the "serious question" standard, which does not apply to mandatory preliminary injunctions .................................................................. 19

        2.   The Court failed to give the parties adequate notice under Rule 65(a)(1) to oppose the injunction ................................. 20

        3.   The Court's preliminary injunction would improperly interfere with complex matters of state and local policy .......... 21

IV.  CONCLUSION ................................................................................................. 23

i

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO THE COURT'S MAY 15, 2020
PRELIMINARY INJUNCTION ORDER; CASE NO. 2:20-CV-02291

# TABLE OF AUTHORITIES

**Page**

## CASES

*Adkins v. Leach,*
  17 Cal. App. 3d 771 (1971) ................................................................. 13

*Alleyne v. New York State Educ. Dep't,*
  516 F.3d 96 (2d Cir. 2008) ................................................................. 16

*Am. Passage Media Corp. v. Cass Comm'ns, Inc.,*
  750 F.2d 1470 (9th Cir. 1985) ....................................................... 13, 16

*Amoco Prod. Co. v. Vill. of Gambell,*
  480 U.S. 531 (1987) ........................................................................... 14

*Anderson v. Davila,*
  125 F.3d 148 (3d Cir. 1997) ............................................................... 20

*Arizonans for Official English v. Arizona,*
  520 U.S. 43 (1997) ............................................................................. 14

*Armstrong v. Brown,*
  768 F.3d 975 (9th Cir. 2014) .............................................................. 21

*Aubry v. Tri-City Hospital Dist.,*
  2 Cal.4th 962 (1992) ........................................................................... 13

*Burford v. Sun Oil Co.,*
  319 U.S. 315 (1943) ........................................................................... 22

*Checker Motors Corp. v. Chrysler Corp.,*
  405 F.2d 319 (2d Cir. 1969) ............................................................... 16

*Christ v. Blackwell,*
  Case No. 2:10-CV-760-EFB P, 2014 WL 4656200 (E.D. Cal. Sept.
  16, 2014) ........................................................................................... 17

*City Limits of N. Nev., Inc. v. Cty. of Sacramento,*
  Case No. 2:06-cv-1244-GEB-GGH, 2006 WL 2868950 (E.D. Cal.
  Oct. 6, 2006) ..................................................................................... 22

*Clement v. Cal. Dep't of Corr.,*
  364 F.3d 1149 (9th Cir. 2004) ............................................................ 21

*Clemes v. Del Norte Cty. Unified Sch. Dist.,*
  843 F. Supp. 583 (N.D. Cal. 1994) .................................................... 22

ii

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Coalition for Econ. Equality v. Wilson,*
    122 F.3d 718 (9th Cir. 1997) ............................................................... 15

5

*Corning Inc. v. PicVue Electronics, Ltd.,*
    365 F.3d 156 (2d Cir. 2004) ............................................................... 16

6
7

*Creason v. Dep't of Health Services,*
    18 Cal. 4th 623 (1998) ....................................................................... 11

8
9

*Cty. of San Diego v. State of Cal.,*
    15 Cal. 4th 68 (1997) ......................................................................... 12

10

*de Villers v. Cty. of San Diego,*
    156 Cal. App. 4th 238 (2007) ............................................................ 11

11
12

*Freecycle Network, Inc. v. Oey,*
    505 F.3d 898 (9th Cir. 2007) ............................................................. 19

13

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) ............................................................. 19

14
15

*Gladstone Realtors v. Village of Bellwood,*
    441 U.S. 91 (1979) ............................................................................ 14

16
17

*Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.,*
    739 F.2d 466 (9th Cir. 1984) ............................................................. 14

18
19

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck
    Drivers Local No. 70,*
    415 U.S. 423 (1974) .......................................................................... 20

20

*Haggis v. City of Los Angeles,*
    22 Cal.4th 490 (2000) ................................................................... 11, 13

21
22

*Henderson v. Newport-Mesa Unified Sch. Dist.,*
    214 Cal. App. 4th 478 (2013) .............................................................. 8

23
24

*Hunt v. Superior Court,*
    21 Cal.4th 984 (1999) ........................................................................ 11

25

*In re Canter,*
    299 F.3d 1150 (9th Cir. 2002) ........................................................... 21

26
27

*In re Edgar,*
    93 F.3d 256 (7th Cir. 1996) ............................................................... 19

28

iii

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO THE COURT'S MAY 15, 2020
PRELIMINARY INJUNCTION ORDER; CASE NO. 2:20-CV-02291

1

2

## TABLE OF AUTHORITIES
(continued)

**Page**

3

4

*In re Kensington Int'l Ltd.*,
368 F.3d 289 (3d Cir. 2004) ................................................................. 19

5

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ............................................................................. 22

6

7

*Kwai Chiu Yuen v. Immigration and Naturalization Service*,
406 F.2d 499 (9th Cir. 1969) ................................................................. 8

8

*League of Wilderness Defenders v. Connaughton*,
752 F.3d 755 (9th Cir. 2014) ............................................................... 15

9

10

*Los Angeles County* v. *Dep't of Social Welfare*,
41 Cal.2d 455 (1953) ........................................................................... 12

11

12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................... 13, 14

13

*Manney v. Cabell*,
654 F.2d 1280 (9th Cir. 1980) ............................................................. 22

14

15

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) ............................................................... 19

16

17

*Mazurek v. Armstrong*,
520 U.S. 968 (1997) ...................................................................... 16, 21

18

*Pac. Bell Tel. Co. v. City of Walnut Creek*,
428 F. Supp. 2d 1037 (N.D. Cal. 2006) ............................................... 22

19

20

*Patten v. San Diego Cty.*,
106 Cal. App. 2d 467 (1951) ............................................................... 13

21

*Poverty Resistance Ctr. v. Hart*,
213 Cal. App. 3d 295 (1989) ................................................................. 9

22

23

*Qureshi v. United States*,
600 F.3d 523 (5th Cir. 2010) ......................................................... 20, 21

24

25

*Railroad Comm'n v. Pullman Co.*,
312 U.S. 496 (1941) ............................................................................. 22

26

*Richardson v. Koshiba*,
693 F.2d 911 (9th Cir. 1982) ............................................................... 22

27

28

*Rizzo v. Goode*,
423 U.S. 362 (1976) ............................................................................. 15

1
2

# TABLE OF AUTHORITIES
(continued)

Page

3
4

*San Mateo Union High School Dist. v. Cty. of San Mateo*,
  213 Cal. App. 4th 418 (2013) ................................................................. 12

5

*Scates v. Rydingsword*,
  229 Cal. App. 3d 1085 (1991) .............................................. 2, 9, 10, 12

6
7

*Scott v. Common Council of San Bernardino*,
  44 Cal. App. 4th 684 (1996) ..................................................................... 8

8
9

*Stanley v. Univ. of Southern Cal.*,
  13 F.3d 1313 (9th Cir. 1994) ........................................................... 15, 20

10

*Stefanelli v. Minard*,
  342 U.S. 117 (1951) ................................................................................ 15

11
12

*Steiner v. Super. Ct.*,
  50 Cal. App. 4th 1771 (1996) ................................................................... 8

13

*Tailfeather v. Bd. of Supervisors*,
  48 Cal. App. 4th 1223 (1996) ................................................................. 12

14
15

*Texas v. United States*,
  523 U.S. 296 (1998) ................................................................................ 13

16
17

*United States v. Contra Costa County Water Dist.*,
  678 F.2d 90 (9th Cir. 1982) .................................................................... 17

18

*Weems v. Tyson Foods, Inc.*,
  665 F.3d 958 (8th Cir. 2011) .................................................................. 17

19
20

*Weitzman v. Stein*,
  897 F.2d 653 (2d Cir. 1990) .............................................................. 20, 21

21

*Winters v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008) ............................................................................. 10, 13

22
23

*Withrow v. Larkin*,
  421 U.S. 35 (1975) .................................................................................. 16

24
25

*Wuillamey v. Werbin*,
  364 F. Supp. 237 (D.N.J. 1973) .............................................................. 14

26

*Wyandotte Nation v. Sebelius*,
  443 F.3d 1247 (10th Cir. 2006) .............................................................. 21

27

# STATUTES

28

Cal. Bus. & Prof. Code § 500, *et seq.* ......................................................... 11

1
2

## TABLE OF AUTHORITIES
(continued)

**Page**

3 Cal. Civ. Proc. Code § 1085 ........................................................................... 9

4 Cal. Gov't Code § 814 ..................................................................................... 9

5 Cal. Gov't Code § 815.6 ...................................................... 8, 10, 11, 13

6 Cal. Health & Safety Code § 1250, *et seq.* ............................................... 11

7 Cal. Welf. & Inst. Code § 2500 ............................................................. 12, 13

8 Cal. Welf. & Inst. Code § 17000 .................................................... passim

9 Cal. Welf. & Inst. Code § 17000.5 ............................................................. 12

10 Cal. Welf. & Inst. Code § 17001 ......................................................... 9, 12

## OTHER AUTHORITIES

11 Cal. Const., Article III, Section 3 ............................................................... 8

## RULES

13 Fed. R. Civ. P. 52(a) ...................................................................... 10

14 Fed. R. Civ. P. 52(a)(1)-(2) ......................................................... 16

15 Fed. R. Civ. P. 65(a)(1) ............................................................ 20, 21

16 Fed. R. Civ. P. 65(c) ........................................................................ 16

17 Fed. R. Civ. P. 65(d) ............................................................... 10, 16

18 Fed. R. Civ. P. 65(d)(1) ................................................................ 16

19 Fed. R. Evid. 408 .............................................................................. 17

20 Fed. R. Evid. 408(a) ......................................................................... 17

21 Fed. R. Evid. 602 .............................................................................. 17

22 Fed. R. Evid. 702 .............................................................................. 17

23
24
25
26
27
28

## I.    INTRODUCTION

The County of Los Angeles ("County") understands the Court's desire to eradicate homelessness as quickly and humanely as possible. Like the Court, the County is committed to elevating the dignity and worth of every person.

Since the start of this litigation, the County has worked closely with the Court, the City of Los Angeles ("City") and intervenor homeless rights advocates.  Together with the Plaintiffs and Intervenors, the County has already made significant progress toward settlement in a short period of time.

Then, on May 15, 2020, the Court issued, *sua sponte*, a preliminary injunction directing Defendants to relocate persons experiencing homelessness living near freeways in the City of Los Angeles ("City"), the unincorporated County, and other cities in the region. The Court's effort to address homelessness head-on should be lauded, and the County is committed to finding safe places for the 200-300 County residents who reside near freeways. The County expects other cities to do the same for those living outside the unincorporated County. The County stands ready to partner with other cities in their own efforts to provide support to persons experiencing homelessness in a way that is fair and equitable.

For this reason, on May 19, 2020, the County—in partnership with homeless rights advocates at the Legal Aid Foundation of Los Angeles, Los Angeles Community Action Network, Los Angeles Catholic Worker, and Orange County Catholic Worker—filed an alternative plan to the preliminary injunction. In crafting the plan, the County had one aim: address the Court's goals, as expressed in the injunction, while being mindful of the public health and safety in light of COVID-19 and the unique needs of the unincorporated County and other cities. (ECF No. 115.)

The County wants to work with the Court and the parties to achieve realistic, achievable solutions. However, the injunction itself, is not the right mechanism to address the Court's, and the County's, goals.

First, the injunction rests on an incorrect interpretation of California Welfare and Institutions Code § 17000 ("Section 17000"), a state law that establishes the minimum level of general relief (i.e., cash-based aid or welfare) that counties provide. Section 17000 does not allow a court to dictate how a county must comply with state law or create a legal duty to provide the type of relief set forth in the injunction. Section 17000 vests counties with discretion to determine how and in what form to provide general assistance to persons who need it—and courts are not empowered to usurp that legislative function. In fact, the California Court of Appeal has rejected such attempts, stating that "[t]he code sections grant no such power to a court" and that legislative action is reserved for the counties alone. *Scates v. Rydingsword*, 229 Cal. App. 3d 1085 (1991).

Second, the injunction is procedurally defective. It was issued *sua sponte*, without notice or an opportunity to conduct an evidentiary hearing to assess, weigh, and explore the facts and to balance the risks and potential conflicts with existing programs. As the Court knows, there are considerable state, federal, and local efforts currently underway, not only to combat homelessness, but also to reduce the spread of COVID-19—and those efforts require extensive coordination. Without detailed fact finding, evidence, and factual exploration, any injunction at this point is too blunt of a tool to actually accomplish the goals of the Court and the County.

Third, the injunction intrudes into complex policy and legislative matters that are within the sole purview of local government. As things stand, the injunction may galvanize the over-enforcement of anti-camping ordinances for those unwilling to relocate from freeway underpasses, contrary to County policy intended to decriminalize homelessness. The injunction could also require the County to redirect resources based solely on geography. The fact that a person experiencing homelessness lives under or near a freeway should not automatically confer priority to shelter and services. Resources should be prioritized for those most vulnerable. The County does not believe the Court wants its preliminary injunction to result in

negative outcomes, but the scope of the injunction is so broad, all are within the realm of possibility. This underscores why the Court's preliminary injunction is not appropriate under the circumstances.

The County respectfully requests that the Court vacate its May 15, 2020 preliminary injunction order so the parties can meaningfully and productively work through complex settlement issues in good-faith. The County believes there is a pathway to both a global resolution of the litigation and also protecting persons experiencing homelessness, but unfortunately the injunction does not support this end.[1]

## II.    PROCEDURAL HISTORY

### A.    The parties agreed to stay the case to allow them to meaningfully engage in settlement discussions.

Plaintiffs L.A. Alliance for Human Rights, Charles Van Scoy, Harry Achadjian, George Frem, Leandro Suarez, Joseph Burk, Gary Whitter, Karyn Pinsky, and Charles Malow are business owners, individuals who formerly experienced homelessness, and individuals currently experiencing homelessness in the Skid Row area of Los Angeles. (ECF No. 1 ("Compl."), ¶¶ 76-122.) None of the plaintiffs live near freeway overpasses, underpasses, or ramps. (*See id.*) On March 10, 2020, Plaintiffs filed this action against Defendants City of Los Angeles and County of Los Angeles asserting thirteen separate causes of action, including federal constitutional claims and claims based solely on state law. (*Id.*) The case was assigned to the Honorable David O. Carter.

On March 19, 2020, the Court held an emergency status conference in light of the COVID-19 pandemic. At the conference, the parties agreed to stay the litigation in order to work with the Court to explore settlement. (ECF No. 90 at 116:19-117:22.) The parties agreed that the Court could engage in *ex parte* conversations with parties and non-parties to facilitate settlement. (*Id.*) Following the March 19, 2020 status

---

[1] The County's brief should not be interpreted as a sign of unwillingness to work with the Court or the parties.

conference, the parties have engaged in extensive settlement negotiations and have participated in a number of public status conferences at the Court's request. (ECF Nos. 43, 81, 82.)

**B.      The parties have worked with the Court to address issues it has identified during settlement negotiations.**

After the parties agreed to stay litigation, the Court took an active role in focusing the parties on particular issues and calling for action. The Court first directed the parties to address concerns relating to hygiene facilities in the Skid Row area. From April 1, 2020 to April 14, 2020, the Court held numerous conferences over hygiene in Skid Row, requiring sanitation improvements in the City of Los Angeles, which both the City and County actively addressed. (ECF Nos. 48, 49, 51, 58, 60, 62, 64, 92 at 7:19-13:4.) This history was marked by the Court's fact-finding based on conversations with elected officials both on and off the record as well as personal walking tours of Skid Row. (*Id*.) From the County's perspective, the Court's activism and its orders for action were intended to foster greater collaboration and an eventual settlement.

After focusing on the hygiene issues at Skid Row, the Court shifted to take a more active role in identifying properties to develop shelter for persons experiencing homelessness, and to monitor City and County efforts to respond to COVID-19 among the most vulnerable persons experiencing homelessness. For example, from April 15 to 24, 2020, the Court remained focused on the City's efforts to develop a safe parking or modular shelter site near Skid Row, with specific reference to a parcel known as "16th and Maple." (ECF Nos. 70, 72, 73, 78.)[2] The County stood ready to

---

[2] The Court also took a broad approach to convening the community, making recommendations for shelter acquisition, improving services for veterans, and getting Caltrans more engaged with assisting the City and County. (*E.g.*, ECF Nos. 39, 77, 110.) The Court called the City to action. (*Id*.)

assist, again, on the presumption that the Court's efforts to galvanize action would materially advance settlement as litigation remained stayed. (*Id*.)

By May 2020, the parties began to move closer to settlement after a month of responding to the Court's orders to address hygiene at Skid Row, develop safe parking at 16th and Maple (or elsewhere), and coordinate in the regional response to COVID-19 and the protection of the most vulnerable persons experiencing homelessness. (*See supra*). On May 7, 2020, the Court held a conference to discuss settlement, and on May 9, 2020 issued an order asserting that "no party has provided a clear structure in which to proceed forward with these complicated settlement discussions." (ECF Nos. 89, 99.) The Court proposed a structure for the ongoing negotiations (*id.*) and ordered the City and County to provide detail regarding "all of the properties available for use as shelters for homeless persons." (ECF No. 101.) At the same time, the County remained engaged in settlement negotiations with the parties, focused on the unincorporated areas of the County.

### C.  Without notice, the Court issued an injunction ordering the City and County to relocate individuals from freeways.

On May 13, 2020, without notice, the Court *sua sponte* issued an order for briefing on a potential preliminary injunction. (ECF No. 103.) The Court began by stating that "[a]s the record has developed in this case, the Court has become increasingly concerned that a particular subset of individuals experiencing homelessness—those who live under freeway overpasses and underpasses, and near entrance and exit ramps—are exposed to severely heightened public health risks as a result of where they live." (*Id*. at 1.) The "record" referenced in the order cited to a general conversation between attorneys concerning freeway underpasses in the context of City safe parking programs and included a single attachment from a report relating to the 16th and Maple parcel to support its broad conclusions. (*Id.* at 3-4.)

The May 13, 2020 order stated the Court was "contemplating issuing an

injunction requiring that [these individuals] be relocated away from such areas." (*Id.* at 3.) The contemplated injunction would require the City and County to "provide shelter—or alternative housing options, such as safe parking sites, or hotel and motel rooms contracted under Project Roomkey—to individuals experiencing homelessness." (*Id.* at 5.) The Court ordered the parties to provide an estimate of affected individuals by May 15 and submit briefing by May 20, 2020. (*Id.* at 7.)

The Court held a conference on May 15, 2020. (ECF No. 106.) At the conference, the Los Angeles Homeless Services Authority ("LAHSA") began its presentation concerning the issues with location-based approaches to homelessness, the risk to vulnerable populations in the event the Court's injunction issued, and the racial disparities to access to services that could result. (ECF No. 117 at 4:7-11:22.) The Court stopped the presentation and asked the parties to develop a "plan" to assist persons experiencing homelessness near freeways. (*Id.* at 13:4-23, 44:23-45:12.) The County presented a framework in response. (*Id.* at 20:9-33:20.) However, the Court issued the injunction order, with the relief proposed in its May 13, 2020 order, shortly after the conclusion of the May 15 conference. (ECF No. 108.) The parties had no opportunity to submit briefing before the Court issued its order on May 15, 2020.

In its modified order, the Court justified the preliminary injunction by stating that there was a "serious question" as to whether the City and County satisfied its obligations under California Welfare & Institutions Code § 17000. The Court's order provided that the preliminary injunction would become effective May 22, 2020; that the parties could submit an "alternative plan" by May 19, 2020; and that the Court could modify the injunction "either on its own motion or upon consideration of the parties' input." (*Id.*)

On May 19, 2020, the County, jointly with intervenors, submitted an alternative plan "to address the short term and long term needs of persons experiencing homelessness near freeways." (ECF No. 115 at 1.)  The County stands

ready to work with other cities, including the City of Los Angeles.[3] On May 20, 2020, the Court cancelled a previously scheduled hearing to discuss the alternative plan. (ECF No. 108.) This brief followed.

## III.   ARGUMENT

As discussed below, the Court cannot usurp the County's discretion or legislative authority under Section 17000. Further, the preliminary injunction is substantively flawed: Plaintiffs will not prevail on the merits; Section 17000 does not create a mandatory duty upon which the County is liable; and the injunction is contrary to the public interest.

Moreover, an injunction is an extraordinary remedy, which must be founded on competent and substantial evidence. Such evidence does not exist here. The injunction is not supported by any sworn testimony or affidavits. The Court may not rely on statements made in the context of settlement or based on *ex parte* discussions or independent fact-finding

Finally, the Court's preliminary injunction is procedurally defective. It is based on an incorrect legal standard and was issued without adequate notice to the County to oppose the injunction.  Moreover, the Court had no basis to issue a preliminary injunction *sua sponte*.

---

[3] In California, "[a] county or city may make and enforce within its limits all local police, sanitary and other ordinances and regulations not in conflict with general laws." California Constitution at Art. XI, Sec. 7.  The City, pursuant to the powers granted to it by its charter, is responsible for its municipal affairs, including the general safety and welfare of its people.  *Id*. at Art. XI, Sec. 5 (a).  The County does not have jurisdiction over the hygiene, housing, or enforcement polices within other cities, including the City of Los Angeles.  However, the County can and will offer a package of "mainstream" services available to persons experiencing homelessness. This includes health and behavioral health outreach, disability benefit advocacy services, and substance abuse services through the Departments of Health Services, Mental Health, and Public Health.  In addition, the County Department of Public Social Services ("DPSS") further assists persons experiencing homelessness in applying for and obtaining public assistance, including EBT benefits to purchase food, temporary financial assistance and employment-focused services to families with minor children, Medi-Cal enrollment, and general relief (i.e., temporary financial assistance for indigent adults who are otherwise ineligible for state or federally funded benefits).

**A.    The Court cannot usurp the County's discretion or legislative authority under Section 17000.**

In its order, the Court seeks to substitute its judgment concerning how the County should provide welfare aid under Section 17000 for the judgment of the County. However, under the doctrine of separation of powers, the Court cannot set that legislative judgment aside.

The doctrine of separation of powers operates as a constitutional limitation between the branches of government. *Kwai Chiu Yuen v. Immigration and Naturalization Service*, 406 F.2d 499, 500-01 (9th Cir. 1969). The California Constitution likewise provides for the explicit separation of powers between the legislative and judicial branches of state government. Article III, Section 3 states: "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the other except as permitted by this Constitution." This doctrine applies equally to the acts of local governments, including counties. *Steiner v. Super. Ct.*, 50 Cal. App. 4th 1771, 1785 (1996).

The County's provision of monetary aid under Section 17000 is legislative in nature and tied to the County's imperative to balance its financial resources in the best way possible for the good of the most people possible. In reviewing the County's legislative actions, the Court may consider only whether those actions are within the County's authority and whether those actions violate any constitutional provision. *Scott v. Common Council of San Bernardino*, 44 Cal. App. 4th 684, 693-94, (1996). This Court's preliminary injunction would require the County to provide specific services not found in Section 17000 and the Court would effectively commandeer discretion legislatively granted to the County, which is improper.[4]

---

[4] The Court's preliminary injunction purports to order the County to exercise its legislative function under Section 17000. The County notes that Plaintiffs assert only a claim under Gov't Code § 815.6. (Compl. ¶ 141.) "Government Code section 815.6 allows an individual to state a claim for damages against a governmental entity based on its violation of a mandatory statutory duty[.]" *Henderson v. Newport-Mesa*

The California Court of Appeal has specifically addressed courts' limited authority under Section 17000. For instance, in *Scates v. Rydingsword*, 229 Cal. App. 3d 1085 (1991)*,* indigent plaintiffs challenged a county homeless shelter program that was not funded under Section 17000 (similar to the homeless programs at issue here) and requested a variety of remedies the court determined were improper, including the reinstatement of an emergency shelter program that expired. *Id.* at 1099. The Court of Appeal explained that counties "have the option" to provide in-kind aid in lieu of monetary payments under Section 17000. *Id.* at 1098. However, the court noted that in-kind programs were susceptible to attack if they did "not demonstrably benefit enough indigents or relieve conditions county-wide to count as section 17000 aid." *Id.* at 1098 (citing *Poverty Resistance Ctr. v. Hart*, 213 Cal. App. 3d 295, 306-07 (1989)).

The Court of Appeal wrote that plaintiffs' requested injunctive relief—to reinstate a shelter (*i.e.*, in-kind aid in lieu of monetary aid)—"misconceives the remedy for an inadequate section 17000 program." *Id.* at 1101. The court explained that "Sections 17000 and 17001 vest power in the board [of supervisors] to provide indigent care and aid and to adopt standards to that end" and "[t]hese are legislative functions," with judicial review limited "to determining whether a sufficient factual basis appears to support the board's actions." *Id.* The court explained:

> The argument is misguided. No degree of inadequacy can justify the judicial creation of programs under section 17000. The code sections grant no such power to a court, and case law restricts the judicial role to evaluating the adequacy of *existing* programs, reserving legislative action for the board [of supervisors]. [citation] Preserving existing section-17000 programs might be proper in a given case, as would ordering that new programs be created, but creating them is the domain of the board alone. Perceived "inequity" cannot confer legislative

---

*Unified Sch. Dist.*, 214 Cal. App. 4th 478, 494 (2013); Gov't Code § 814, Leg. Comm. Cmts. ("[T]he various provisions of this part determine only whether a public entity or public employee is liable for money or damages. These provisions do not create any right to any other type of relief.") Plaintiffs have not petitioned for a writ of mandate under California Code of Civil Procedure § 1085.

power on a court under section 17000.

*Id*. 1102 (emphasis in original). As the Court of Appeal recognized, "[f]iscal planning demands that control of aid programs be in the hands of the local governing body, not left to the uncertain fate of judicial construction." *Id*.

## B.   The Court's injunction fails on the merits.

The Court's injunction also fails on the merits. It does not satisfy any of the elements required for a mandatory preliminary injunction: (i) that Plaintiffs are "likely to succeed on the merits," (ii) that Plaintiffs are "likely to suffer irreparable harm in the absence of preliminary relief," (iii) that "the balance of equities tips in [Plaintiffs'] favor," and (iv) that "an injunction is in the public interest." *Winters v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

1.    Plaintiffs will not prevail on the merits of their cause of action under Welf. & Inst. Code § 17000.

The Court's injunction is premised on Plaintiffs' second cause of action under California Government Code section 815.6, in which Plaintiffs allege that the County violated a mandatory duty set forth in Section 17000 requiring the County to provide shelter to individuals experiencing homelessness.[5] (ECF No. 108 at 3; Compl. ¶¶ 134-141.) As discussed below, there is no such duty.

---

[5] The Court also suggests in its order that the injunction *could* be justified by other causes of action pled in the complaint. (ECF No. 108 at 4.) Yet, in violation of Fed. R. Civ. P. 65(d) and 52(a), the Court fails to set forth any facts or legal reasoning to support that assertion. The Court contends the City and County "may also have exposed the homeless residents living near freeways to a public nuisance." The Court does not identify the nuisance or any statute requiring the City or County to abate such a "nuisance." The Court also argues the injunction could "plausibly" be supported by constitutional due process and equal protection requirements. The Court unfortunately applies the wrong legal standard, and also fails to identify any deprivation of a property right, any denial of process, or any discriminatory action triggering constitutional protections.

       a.     There is no mandatory duty when an enactment is discretionary or permissive.

To establish a claim under Government Code section 815.6, a plaintiff must prove that the public entity failed to exercise reasonable diligence in discharging a duty imposed by an enactment. Cal. Gov't Code § 815.6; *Haggis v. City of Los Angeles*, 22 Cal.4th 490, 498 (2000). Plaintiffs' claim fails because there is no mandatory duty in Section 17000 requiring the County to provide shelter to individuals experiencing homelessness.[6] Welf. & Inst. Code § 17000.

To support a mandatory duty claim, "the enactment at issue [must] be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken." *Haggis*, 22 Cal.4th at 498. "It is not enough" that the public entity may "have been under an obligation to perform a function if the function itself involves the exercise of discretion." *Id.*; *de Villers v. Cty. of San Diego*, 156 Cal. App. 4th 238, 260 (2007) (where a legislative enactment leaves implementation to discretion, "lend[ing] itself to a normative or qualitative debate over whether [the duty] was adequately fulfilled," alleged failure in implementation will not give rise to liability); *Creason v. Dep't of Health Services*, 18 Cal.4th 623, 638 (1998) (court properly sustained demurrer where DHS's formulation of tests and reporting was

---

[6] To the extent Plaintiffs or the Court contends housing falls within the County's obligation to provide medical care under Section 17000, they are wrong. No court has interpreted the medical care obligation in Section 17000 or its predecessors to extend to housing. Consistent with California law, courts have interpreted Section 17000 only to extend to medical services provided at healthcare facilities licensed under Health & Safety Code § 1250, *et seq.* ("Health Facilities") and by healthcare practitioners licensed under Business & Professions Code § 500, *et seq.* ("Healing Arts"). The California Supreme Court has explained that the County's obligation under Section 17000 to provide medical care extends only to "medical services necessary for the treatment of life- and limb-threatening conditions and emergency medical services." *Hunt v. Super. Ct.*, 21 Cal.4th 984, 991, 1011 (1999). Additionally, as Section 17000 is a "last resort" statute, the County has no legal obligation to provide health care to adult patients with the means to pay for health care, whether those means are found in friends or family, or from private or governmental forms of insurance, such as Medi-Cal and Medicare. *See id.*

discretionary); *San Mateo Union High School Dist. v. Cty. of San Mateo*, 213 Cal. App. 4th 418, 429-32 (2013) (court properly sustained demurrer where statutes did not order specific acts but instead "involved crucial investment policy decisions" by the county requiring a balancing of "the risks and advantages" of competing opportunities).

  b.   Section 17000 vests the County with broad discretion to provide aid to the indigent.

Section 17000 bears the hallmarks of discretionary activity that should not be the subject of second-guessing by a coordinate branch of government. It sets forth a general requirement, to be interpreted and implemented by each county:

> Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.

Cal. Welf. & Inst. Code §17000. The statute "creates 'the residual fund' to sustain indigents 'who cannot qualify . . . under any specialized aid programs.'" *Cty. of San Diego v. State of Cal.*, 15 Cal. 4th 68, 92 (1997). Under Section 17001, counties must "adopt standards of eligibility for aid and care for the indigent and dependent poor." *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1237 (1996). These standards are in the nature of administrative regulations, and their adoption is a legislative function. *Scates*, 229 Cal. App. 3d at 1101.

The Legislature has revisited Sections 17000 and 17000.5 on numerous occasions, but has never specified the types or form of aid counties must provide. Rather, as courts recognize, the Legislature vested counties with the sole discretion to determine the type and form of aid. *Los Angeles Cty. v. Dep't of Social Welfare*, 41 Cal.2d 455, 458 (1953) (discussing former Welf. & Inst. § 2500, the prior codification of Section 17000; "The counties are not required to grant any specific type of relief . . . . The administration of county relief to indigents . . . is vested exclusively in the county supervisors who have discretion, without supervision by the

state, to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief."); *Patten v. San Diego Cty.*, 106 Cal. App. 2d 467, 470 (1951) (discussing former § 2500: "The Welfare and Institutions Code does not require that the county grant indigents any specific type of relief" as "[t]hese are matters within the discretion of the boards of supervisors[.]"); *Adkins v. Leach*, 17 Cal. App. 3d 771, 778 (1971) (same).

Section 17000 confers broad discretion on the County to provide aid, and does not require counties to provide any specific program or service.[7] Plaintiffs' cause of action under Government Code section 815.6 therefore fails on the merits.[8]

> ### 2.   There is no evidence that Plaintiffs will suffer irreparable harm absent the Court's injunction.

The Court's injunction also fails because there is no evidence any of the Plaintiffs will be harmed absent the Court's injunction. *Winters*, 555 U.S. at 20. An injunction may not issue unless the threatened future harm is real and immediate, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 55-560 (1992). An alleged injury is too speculative if the proposed harm depends upon the occurrence of contingent future events that may or may not occur as anticipated or that may not occur at all. *Texas v. United States*, 523 U.S. 296, 300 (1998); *Am. Passage Media Corp. v. Cass Comm'ns, Inc.*, 750 F.2d 1470, 1473-44 (9th Cir. 1985)

---

[7] Plaintiffs' claim fails for additional reasons. For example, a public entity is only liable under Section 815.6 if it fails to reasonably discharge its duties. *Haggis*, 22 Cal.4th at 498. The County has reasonably discharged its duty to provide aid under Section 17000. Additionally, public entities "may be held liable *only* for injuries to the kind of interests that have been protected by the courts in actions *between private persons.*" *Aubry v. Tri-City Hospital Dist.*, 2 Cal.4th 962, 968 (1992) (emphasis in original). The alleged injuries in the Complaint, which include negative impacts to business as a result of non-parties, could not exist in an action between private persons. Finally, there is no evidence that Section 17000 was enacted to protect against these alleged injuries. Cal. Gov't Code § 815.6.

[8] Additionally, the Court's injunction is overbroad in multiple respects. Among other things, Section 17000 aid applies only to individuals who are "lawfully resident" of the County. Welf. & Inst. Code § 17000. Further, Section 17000 is a statute of "last resort" and extends aid to individuals only "when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." *Id.*

(reversing preliminary injunction for insufficient evidence of irreparable injury); *Goldie's Bookstore, Inc. v. Super. Ct. of State of Cal.*, 739 F.2d 466, 471-72 (9th Cir. 1984) (reversing preliminary injunction because the district court's findings of lost "goodwill and 'untold' customers" was speculative and not established by evidence); *cf. Wuillamey v. Werbin*, 364 F. Supp. 237, 241 (D.N.J. 1973) (estimate of possible air pollution is at best highly speculative and forecloses ability to demonstrate irreparable harm).

In this case, Plaintiffs are business owners, housed residents, and individuals experiencing homelessness in Skid Row, which is located in the City of Los Angeles but not under a freeway. (*See* Compl. ¶¶ 76-122.) There is no evidence that any of the Plaintiffs are irreparably harmed by pollutants associated with freeways. Indeed, none of the Plaintiffs allege they even live in these locations. (*See id.*) No Plaintiff has submitted an affidavit establishing Article III standing, let alone evidence establishing the "actual and imminent" harm needed to support a preliminary injunction.[9]

        3.   <u>The Court's injunction is contrary to the public interest and would interfere with the County's response to homelessness, the equitable distribution of resources, and protecting the public health.</u>

Finally, a court considering a preliminary injunction must "balance the competing claims of injury [and] consider the effect on each party of the granting or withholding" of the injunction and also weigh its impact on the public interest. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). This requirement "deserves special attention in cases where the public interest may be affected" by the

---

[9] Standing requires a showing that a plaintiff has suffered an actual loss, damage or injury or is threatened with the impairment of his or her own interests. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979). An interest shared generally with the public at large in the proper application of the law is not sufficient to confer standing. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997). With respect to injunctive relief, a plaintiff must demonstrate there is a substantial likelihood the relief sought will redress the alleged injury. *Lujan*, 504 U.S. at 55-560.

preliminary injunction. *League of Wilderness Defenders v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).

"When a plaintiff seeks to enjoin the activity of a government agency . . . his case must contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976). Further, "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951). A state suffers "irreparable injury whenever an enactment of its people or their representatives is enjoined." *Coalition for Econ. Equality v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997).

The balance of equities tips sharply in favor of the County. As set forth above, there is no evidence or indication that Plaintiffs live near freeways, are materially harmed by pollutants or other dangers associated with freeways, or will obtain any benefit from the Court's injunction. By contrast, the County and the public will suffer harm if the Court's order stands. The Court's order conflicts with state and local guidance, and raises numerous practical, budgetary, and policy concerns, including that it: (i) encourages enforcement of anti-camping ordinances, contrary to County policy; (ii) could result in the re-prioritization of resources from more vulnerable individuals experiencing homelessness to those living near freeways; (iii) could cause freeway locations to become "magnets" for individuals experiencing homelessness, with individuals actively moving to those locations as a way to access shelter; and (iv) without any clear timelines, may conflict with state and federal regulatory guidance to not move individuals from encampments during the COVID-19 pandemic, unless certain requirements can first be met.

In sum, the Court's order fails to satisfy the stringent requirements for a mandatory preliminary injunction. The facts and law "clearly favor" the County—not the Plaintiffs. *See Stanley v. Univ. of Southern Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

**C.      The Court's preliminary injunction is not supported by evidence.**

In addition, the injunction is not supported by competent evidence. The Court did not make the requisite factual findings to support an injunction.[10]

> 1.      <u>A preliminary injunction is an extraordinary remedy and must be supported by competent evidence.</u>

A preliminary injunction is an extraordinary and drastic remedy and "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (noting "the requirement for substantial proof is much higher" for a preliminary injunction than for summary judgment). Each of the elements of a preliminary injunction must be established by competent evidence. *E.g., Maruzek*, 520 U.S. at 972 (reversing preliminary injunction for "insufficient evidence" to establish a likelihood of prevailing on the merits); *Am. Passage*, 750 F.2d at 1473 (reversing preliminary injunction for insufficient evidence of irreparable injury); *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 322 (2d Cir. 1969) (affirming denial of a temporary restraining order where "no evidence" was offered to support plaintiff's claim). The district court's specific factual findings must be set forth in the court's order. Fed. R. Civ. P. 52(a)(1)-(2) and 65(d)(1); *Withrow v. Larkin*, 421 U.S. 35, 44-45 (1975) (it is proper to vacate a district court's injunction order for failure to comply with Rules 65(d) and 52(a)); *Alleyne v. New York State Educ. Dep't*, 516 F.3d 96, 101 (2d Cir. 2008) (same).

The preliminary injunction does not offer a "clear showing" of each element required for an injunction, nor does it meet "the burden of persuasion." *See infra* (discussing evidentiary lapses).

---

[10] The Court also failed to make factual findings regarding the need for security. Fed. R. Civ. P. 65(c); *Corning Inc. v. PicVue Electronics, Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (vacating court's order for failure to address whether security was required prior to issuing injunction).

1

2

   2.  <u>No party requested injunctive relief in this case or submitted any evidence supporting the Court's order.</u>

3    No party submitted affidavits, testimony, or documents to support the Court's

4 injunctive relief. Rather, the Court's injunction is based solely on the "evidence"

5 cited in its order. (ECF No. 108 at 2.) In its order, the Court cites to statements made

6 at conferences intended to coalesce the parties around settlement—statements made

7 by an Assistant City Attorney on April 23, 2020, and statements made by a

8 representative of a non-party, Heidi Marston, the interim executive director of the

9 Los Angeles Homeless Services Authority ("LAHSA") on May 15, 2020. (*Id.*)

10    To allow transparency and public participation in the resolution of this case, the

11 City and County took the unprecedented step of allowing their settlement conferences

12 to be open to the public. The parties' transparency and openness, however, does not

13 allow the Court to convert those discussions intended to advance settlement into

14 judicial, evidentiary hearings.[11] The statements made by the City's attorney and

15 LAHSA representative were not provided at an evidentiary hearing or admitted into

16 evidence. These individuals were not sworn in as witnesses or cross-examined. Nor

17 was any foundation laid for their personal knowledge or any qualification as experts.

18 Fed. R. Evid. 602, 702. This raises fundamental due process concerns.

19    Additionally, the statements at issue do not support the Court's order. The

20 Court cites to the City's attorney for the proposition that freeways pose "elevated

21 levels of pollutants and contaminants," "can shorten a homeless person's life

22

---

[11] Federal Rule of Evidence 408 ensures that parties can engage in full and open disclosure at settlement conferences by ensuring these discussions are "not admissible" to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a); *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 968 (8th Cir. 2011) (vacating judgment where "district court violated the policy and exclusionary provision of Rule 408" by admitting settlement discussions into evidence); *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982) (Rule 408 prevents the use of settlement negotiations as evidence of damages). Rule 408 applies equally to statements made at judicial settlement conferences. *Christ v. Blackwell*, Case No. 2:10-CV-760-EFB P, 2014 WL 4656200, at *3 (E.D. Cal. Sept. 16, 2014) ("[S]tatements allegedly made by them at the settlement conference are not admissible to prove their liability.").

expectancy by decades," and "increase the danger that a homeless person will be struck by a vehicle or injured in the event of an earthquake or crash." (ECF No. 108 at 2.) The City's attorney stated only there are legal restrictions about individuals sleeping under freeways, although he did not know the underlying policy reason for them. (ECF No. 94 at 57:21-25 ("[W]hether it's from fumes or the freeway collapsing in earthquakes, I don't know what it is. But you can't put residences under freeways.").) Further, LAHSA's representative informed the Court there were serious problems concerning its preliminary injunction. (ECF No. 117 at 5:23-7:12, 8:19-9:13, 10: 18-11:15.) Among other things, she explained that the Court's location-based approach to resource allocation contradicted federal guidance and could result in a number of unintended outcomes, including increased risk to individuals most vulnerable to COVID-19 and racial inequities in the provision of shelter and services. (*Id.*)

The Court's order also cited a hazardous waste assessment issued by the California Department of Transportation ("Caltrans"). (ECF No. 108 at 1 n.1.) The Court stated that the report shows "pollutants and contaminants" have "deleterious health impacts" and "can shorten a homeless person's life expectancy by decades." (*Id.*) The report does not say this. Caltrans' waste assessment report concerns a single parcel of land, 1616 Maple Avenue. (ECF No. 103-1.) It states the City submitted plans for a shelter at that location, but Caltrans believed there was a "probability" the parcel contained lead and that other types of contamination "may exist." (*Id.* at 3-4.) Caltrans concluded its report by stating the Department of Toxic Substances Control "will determine what information is needed to make the public health decision for use of the property." (*Id.*) The Caltrans report does not prove that this single parcel was contaminated, let alone that all under or near freeways in the City and County have elevated levels of pollutants or contaminants. Further, the report says nothing about causation or harm to any persons experiencing homelessness.

Finally, the injunction order also appears to be informed by the Court's *ex parte*

communications. (*E.g.*, ECF No. 108 at 2 ("As the Court has continued to learn from the parties, as well as other participants in hearings and conferences, it has become clear. . . ").) The Court has actively served as a settlement judge in this case and, as part of those efforts, has engaged in *ex parte* conversations with elected officials, local administrators, and others outside the presence of the County and its attorneys. *Ex parte* contacts are "extrajudicial," because they are not "controverted or tested by the tools of the adversary process." *In re Edgar*, 93 F.3d 256, 259 (7th Cir. 1996). The City and County agreed that the Court could engage in *ex parte* communications, but those conversations were not admitted as "evidence," because there is "no way of knowing what was said during those unrecorded meetings." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 310-11 (3d Cir. 2004).

### D.   The preliminary injunction is procedurally defective.

1.   The Court improperly relies on the "serious question" standard, which does not apply to mandatory preliminary injunctions.

The preliminary injunction is problematic because the Court relies on an incorrect legal standard. The Court states that a preliminary injunction is justified "if there are 'serious questions going to the merits.'" (ECF No. 108 at 3.) This legal standard does not apply to mandatory preliminary injunctions, which are subject to far greater scrutiny. *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007) (a district court abuses its discretion in granting an injunction based on "an erroneous legal standard").

A "mandatory injunction"—an injunction requiring a party to act, rather than refrain from acting—is a remedy that "goes well beyond simply maintaining the status quo" and "is particularly disfavored." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). The burden is "doubly demanding," *id.*, and mandatory injunctions are "not granted unless extreme or very serious damage will result and are not issued in doubtful cases." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009). "When a mandatory preliminary

injunction is requested, the district court should deny such relief unless the facts and law clearly favor the moving party." *Stanley*, 13 F.3d at 1320.

In this case, the Court issued a preliminary injunction ordering the County to take specific actions to provide shelter to a specific population along with security, nursing, and other forms of support. Even if unintentional, this could disrupt a system that is designed to help the most vulnerable, regardless of their location. There need to be clear facts and law to permit such an extreme action. That did not happen here. The Court has provided only generalized statements of the harm of living near freeways, without taking into context the broader population of persons experiencing homelessness and the system designed to support those individuals, which does not meet the "doubly demanding" standard for preliminary mandatory injunctions.

### 2.  The Court failed to give the parties adequate notice under Rule 65(a)(1) to oppose the injunction.

The injunction is also problematic because the Court failed to give the parties adequate notice to oppose it. The Federal Rules of Civil Procedure state that a preliminary injunction may be issued "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). This notice requirement "has constitutional as well as procedural dimensions." *Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir. 2010) (citation omitted); *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997) (the notice requirement is "a fundamental aspect of procedural due process under the Constitution"). The Supreme Court has explained the defendant must be "given a fair opportunity to oppose the application and to prepare for such opposition," including time to marshal the evidence. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 433 n.7 (1974); *see also Weitzman v. Stein*, 897 F.2d 653, 657 (2d Cir. 1990) ("[T]he court must allow that party sufficient time to marshal his evidence and present his arguments against the issuance of the injunction.").

Here, the Court issued its preliminary injunction *before* permitting the parties to submit any briefing on it. At the same time, with the injunction issued, the Court asked the parties to issue alternative plans under threat of injunction, cancelled a hearing to discuss those plans, and then required briefing within a day of the cancelled hearing. The Court's approach violates Rule 65(a)(1). *Qureshi*, 600 F.3d at 526 (vacating injunction for lack of notice); *see also Weitzman*, 897 F.2d at 656-658 (same); *In re Canter*, 299 F.3d 1150, 1155-56 (9th Cir. 2002) (same); *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1252-53 (10th Cir. 2006) (same).

### 3. The Court's preliminary injunction would improperly interfere with complex matters of state and local policy.

Since the case was filed, the parties have worked diligently with the Court to reach a global resolution of the lawsuit and to do so outside of costly litigation. None of the Plaintiffs or the Intervenors have sought preliminary injunctive relief against the County and no party has supported the preliminary injunction. The Court *sua sponte* fashioned and ordered injunctive relief on its own motion. The Court's *sua sponte* order is highly unusual and concerning because it would interfere with complex matters of state and local policy. In turn, the County offers the following additional objections.

First, the Court does not cite authority for its extraordinary judicial action.[12] The case has been stayed since the complaint was filed two months ago. The

---

[12] The Court cites *Armstrong v. Brown*, 768 F.3d 975 (9th Cir. 2014) and *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1149 (9th Cir. 2004) for the proposition that it can issue *sua sponte* injunctive relief. (ECF No. 108 at 3.) Neither case concerned a mandatory preliminary injunction, as here, issued *sua sponte* without affidavits, testimony, or other evidence. *Armstrong* concerned a district court's modification of a permanent injunction, which was issued after extensive fact-finding and years of litigation. *Armstrong*, 768 F.3d at 978-79. *Clement* involved an injunction issued after the district court granted summary judgment based on uncontroverted evidence. *Clement*, 364 F.3d at 1152-53. The injunction there barred enforcement of certain prison policies. It did not order broad mandatory injunctive relief against the defendant agency. *Id.* There is "a dearth of authority as to whether the district court even has the power to enter an injunction of this type on its own motion." *Weitzman*, 897 F.2d at 657.

pleadings have not been tested; no discovery has taken place; and the City and County have had no opportunity to address the limited jurisdiction of this Court.

Second, it is inappropriate for this Court to issue broad mandatory injunctive relief based on a novel interpretation of state law. The Court has not exercised supplemental jurisdiction over Plaintiffs' state law claims. Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. It is presumed that a cause of action lies outside their jurisdiction, and the burden of establishing otherwise rests on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts routinely decline to exercise supplemental jurisdiction in actions seeking injunctive relief against a state or municipal entity, because these cases raise "[c]onsiderations of federalism and comity" and "are uniquely in the interest and domain of state courts." *Clemes v. Del Norte Cty. Unified Sch. Dist.*, 843 F. Supp. 583, 596 (N.D. Cal. 1994).[13]

Third, this case presents serious questions of federalism. Federal courts should abstain from interfering in actions that implicate complex issues of state policy that disrupt local government's efforts to establish a coherent policy with respect to matters of public concern. *Burford v. Sun Oil Co.*, 319 U.S. 315, 317-18 (1943); *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 499-502 (1941).[14]

---

[13] *See also Pac. Bell Tel. Co. v. City of Walnut Creek*, 428 F. Supp. 2d 1037, 1055 (N.D. Cal. 2006) (declining to exercise supplemental jurisdiction over claim seeking mandatory injunction against the city); *City Limits of N. Nev., Inc. v. Cty. of Sacramento*, Case No. 2:06-cv-1244-GEB-GGH, 2006 WL 2868950, at *3 (E.D. Cal. Oct. 6, 2006) (declining to exercise supplemental jurisdiction over claim seeking injunction against county based on "novel issues of interpretation" of California state law).

[14] *See, e.g.*, *Richardson v. Koshiba*, 693 F.2d 911, 917 (9th Cir. 1982) (district court should have abstained from deciding state law matter involving state judicial merit selection system); *Manney v. Cabell*, 654 F.2d 1280, 1285 (9th Cir. 1980) (district court should have abstained from deciding action involving challenge to state's operation of its juvenile detention facilities).

## IV.    CONCLUSION

The County respectfully requests that the Court vacate its May 15, 2020 preliminary injunction order.

Dated: May 21, 2020          MARY C. WICKHAM

By: */s/ Lauren M. Black*
Lauren M. Black
Principal Deputy County Counsel
COUNTY OF LOS ANGELES

Dated: May 21, 2020          MANATT, PHELPS & PHILLIPS, LLP

By: */s/ Brandon D. Young*
Brandon D. Young
Attorneys for Defendant
COUNTY OF LOS ANGELES

Dated: May 21, 2020          FOLEY & LARDNER, LLP

By: */s/ Byron J. McLain*
Byron J. McLain
Attorneys for Defendant
COUNTY OF LOS ANGELES

326318383.1