Humberto M. Guizar, Esq., (SBN 125769)
Christian Contreras, Esq., (SBN 330269)
ccontreras@ghclegal.com
**GUIZAR, HENDERSON & CARRAZCO, L.L.P.**
Justice-X Building
3500 W. Beverly Blvd.,
Los Angeles, CA 90640
Telephone: (323) 725-1151
Facsimile: (323) 597-0101

Stephen King, Esq., (SBN 224683)
**KINGS JUSTICE LAW**
Justice-X Building
3500 W. Beverly Blvd.,
Los Angeles, CA 90640
Telephone: (323) 546-4523

Attorneys for Proposed Intervenor-Plaintiffs,
LATINO COALITION OF LOS ANGELES
& PASTOR JOSUE TIGUILA

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LA ALLIANCE FOR HUMAN RIGHTS, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF LOS ANGELES, et al.,**<br><br>Defendants. | CASE NO.: 2:20-cv-02291 DOC-KES [Assigned to the Hon. David O. Carter]<br><br>**EX PARTE APPLICATION FOR AN ORDER PERMITTING LATINO COALITION OF LOS ANGELES & PASTOR JOSUE TIGUILA TO INTERVENE**<br><br>Date:<br>Time:<br>Ctrm:  First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, CA 90012<br><br>Action filed: March 10, 2020 |

i

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that moving parties**,** Proposed Intervenor-Plaintiffs Latino Coalition of Los Angeles and Pastor Josue Tiguila, hereby apply Ex Parte for an Order, pursuant to Federal Rules of Civil Procedure, Rules 24(a)(2) and 24(b)(1)(B) to allow the Latino Coalition of Los Angeles and Pastor Josue Tiguila to intervene as additional plaintiffs in this action, and permitting them to participate in subsequent settlement discussions and status conferences.

As discussed in the memorandum of points and authorities, good cause exists for granting this Ex Parte application. Good cause exists insofar Proposed Intervenor-Plaintiffs Latino Coalition of Los Angeles and Pastor Josue Tiguila have a protectable interest in the result of this action, and disposing of this action may as a practical matter impair or impede the movants' ability to protect their interest. Alternatively, as also discussed in the memorandum of points and authorities, good cause exists to grant Proposed Intervenor-Plaintiffs permissive intervention.

This Ex Parte Application is based on the Complaint, the Memorandum of Points and Authorities below, the argument of counsel, the request for judicial notice, the supporting declaration lodged with the Court hereto, and such further evidence as the Court may consider regarding this Application.

Pursuant to Local Civil Rule 7-19, Latino Coalition of Los Angeles and Pastor Josue Tiguila provide the following information:

| | |
|---|---|
| Elizabeth Anne Mitchell, Esq. | Carol A. Sobel, Esq. |
| Matthew Donald Umhofer, Esq. | Weston C. Rowland, Esq. |
| **SPERTUS LANDES AND UMHOFER LLP** | **LAW OFFICE OF CAROL A. SOBEL** |
| 617 West 7th Street, Suite 200 | 725 Arizona Avenue Suite 300 |

**EX PARTE APPLICATION TO INTERVENE**

| | |
|---|---|
| Los Angeles, CA 90017<br>Tel. (213) 205-6520<br>Attorneys for LA Alliance for<br>Human Rights, et al. | Santa Monica, CA 90401<br>Tel. (310) 393-3055<br>Attorneys for Orange County<br>Catholic Worker, Los Angeles<br>Catholic Worker, CANGRESS<br>doing business as<br>Los Angeles Community Action<br>Network (LA CAN) |
| Catherine Elizabeth Sweetser, Esq.<br>**SCHONBRUN SEPLOW HARRIS**<br>**HOFFMAN AND ZELDES LLP**<br>11543 West Olympic Boulevard<br>Los Angeles, CA 90064<br>Tel. (310) 396-073<br>Attorneys for Orange County<br>Catholic Worker, Los Angeles<br>Catholic Worker, CANGRESS<br>doing business as<br>Los Angeles Community Action<br>Network (LA CAN) | Brooke Alyson Weitzman, Esq.<br>William R Wise , Jr., Esq.<br>**ELDER LAW AND DISABILITY**<br>**RIGHTS CENTER**<br>1535 East 17th Street Suite 110<br>Santa Ana, CA 92705<br>Tel. (714) 617-5353<br>Attorneys for Orange County<br>Catholic Worker |
| Shayla Renee Myers, Esq.<br>**LEGAL AID FOUNDATION OF**<br>**LOS ANGELES**<br>7000 S Broadway<br>Los Angeles, CA 90003<br>Tel. (213) 640-3983<br>Attorneys for Los Angeles Catholic<br>Worker, CANGRESS doing<br>business as Los Angeles<br>Community Action Network (LA<br>CAN) | Byron J. McLain, Esq.<br>**FOLEY AND LARDNER LLP**<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071-2411<br>Tel. (213) 972-4500<br><br>Jennifer Mira Hashmall, Esq.<br>Louis R. Miller, Esq.<br>**MILLER BARONDESS LLP**<br>1999 Avenue of the Stars Suite 1000 |

**EX PARTE APPLICATION TO INTERVENE**

| | |
|---|---|
| | Los Angeles, CA 90067 |
| Paul L Hoffman, Esq. | Tel. (310) 552-4400 |
| **SCHONBRUN SEPLOW HARRIS** | Amie S. Park, Esq. |
| **HOFFMAN AND ZELDES LLP** | Lauren M. Black, Esq. |
| 11543 West Olympic Boulevard | **LOS ANGELES COUNTY** |
| Los Angeles, CA 90064 | **COUNSEL OFFICE** |
| Tel. (310) 396-073 | 500 West Temple Street 6th Floor |
| Attorneys for Orange County | Los Angeles, CA 90012 |
| Catholic Worker | Tel. (213) 893-5939 |
| | |
| | Brandon D. Young, Esq. |
| Arlene Nancy Hoang, Esq. | **MANATT PHELPS AND** |
| Scott D. Marcus, Esq. | **PHILLIPS LLP** |
| Jessica Mariani, Esq. | 2049 Century Park East, Suite 1700 |
| **LA CITY ATTORNEY'S OFFICE** | Los Angeles, CA 90067 |
| 200 North Main Street Room 675 | Tel. (310) 312-4281 |
| Los Angeles, CA 90012 | Attorneys for the County of Los |
| Tel. (213) 978-6952 | Angeles |
| Attorneys for City of Los Angeles | Brooke Alyson Weitzman, Esq. |
| | William R. Wise, Jr., Esq. |
| | **ELDER LAW AND DISABILITY** |
| | **RIGHTS CENTER** |
| | 1535 East 17th Street Suite 110 |
| | Santa Ana, CA 92705 |
| | Tel. (714) 617-5353 |
| | Attorneys for Orange County |
| | Catholic Worker |

Dated: July 17, 2020        **GUIZAR, HENDERSON & CARRAZCO, LLP**

By: _Christian Contreras_

CHRISTIAN CONTRERAS
Attorneys for Proposed Intervenor
Plaintiffs, LATINO COALITION OF LOS
ANGELES & PASTOR JOSUE TIGUILA

iv

**EX PARTE APPLICATION TO INTERVENE**

1
2

# TABLE OF CONTENTS

3

**I.**     **INTRODUCTION**.................................................................**1**

4

**II.**    **PROPOSED INTERVENORS**......................................**2**

5

**III.**   **LATINOS HAVE A UNIQUE PROTECTABLE RIGHT WHICH NO**

6

        **OTHER PARTY IN THIS ACTION CAN ADEQUETELY**

7

        **REPRESENT.** .................................................................**3**

8

**A.**    **Latinos in the County of Los Angeles are Undercounted and**

9

      **Underrepresented in the Homelessness Count**......................**4**

10

**i.**     **Due to Cultural Reasons, Latinos do not Identify as Homeless.**.........**4**

11

**ii.**    **The Definition of Homelessness Preclude Latinos from Being**

12

      **Counted as Homeless.** ...................................................**5**

13

**iii.**   **An Underreporting of Latinos as Homeless is Unique to Latinos**

14

      **which has Many Repercussions Including Deprivation of Allocation**

15

      **of Resources.**................................................................**5**

16

**B.**    **Monolingual Latinos Face an Additional Barriers in Homelessness**

17

      **including Access to Resources.**.......................................**5**

18

**C.**    **Latinos Experience Homelessness Uniquely In Terms of**

19

      **Experiencing Homelessness as a Family Unit.** .....................**6**

20

**D.**    **Latinos are Criminalized at a Greater Rate Compounding the Causes**

21

      **of Homelessness as Well as Unaccompanied Youth From Detention**

22

      **Centers and Foster Youth Creates an Additional Issue Unique to**

23

      **Latinos.** ......................................................................**7**

24

**IV.**   **ARGUMENT** .................................................................**7**

25

**A.**    **LCLA and Pastor Josh have Established that they Have a Significant**

26

      **Protectable Interest in this Action.** ................................**8**

27
28

v

**B.**    **Excluding LCLA and Pastor Josh Will Impede and Impair Their Ability to Protect Their Interests Including the Impeding the Ability to Help and Advocate for People Experiencing Homelessness in Los Angeles County.** ........................................................................**10**

**C.**    **The Instant Intervention Application is Timely Based on This Action Being Filed Four Months Ago.** ................................................**10**

**D.**    **The Existing Parties Do Not Adequately Represent LCLA's and Pastor Josh's Interests.** ........................................................**11**

**V.**    **IN THE EVENT THE COURT DOES NOT GRANT INTERVENTION AS A MATTER OF RIGHT, THIS COURT SHOULD GRANT PERMISSIVE INTERVENTION.** ............................................**12**

**VI.**    **CONCLUSION** .....................................................................**14**

**EX PARTE APPLICATION TO INTERVENE**

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) .................................................................12, 13

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) .............................................................11, 12, 13

*Donnelly v. Glickman,*
  159 F.3d 405 (9th Cir. 1998) .....................................................................9, 13

*Nw. Forest Res. Council v. Glickman,*
  82 F.3d 825 (9th Cir. 1996) ............................................................................8

*Orange v. Air Cal.,*
  799 F.2d 535 (9th Cir. 1986) ........................................................................14

*Perry v. Schwarzenegger,*
  630 F.3d 898 (9th Cir. 2011) ..........................................................................9

*Spangler v. Pasadena Bd. of Ed.,*
  552 F. 2d 1326 (9th Cir. 1977) .....................................................................14

*United States ex rel. McGough v. Covington Tech. Co.,*
  967 F.2d 1391 (9th Cir. 1992) ........................................................................9

*United States v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) ..........................................................................9

*United States v. Oregon,*
  913 F.2d 576 (9th Cir. 1990) ........................................................................12

**Statutes**

42 U.S.C. § 11302 ...........................................................................................6

**Rules**

Fed. Rules Civ. Proc. R. 24......................................................................8, 11, 13
Fed. Rules Civ. Proc. R. 24(a)(2)....................................................................2, 9
Fed. Rules Civ. Proc. R. 24(b)(1)(B) ...........................................................2, 13
Fed. Rules Civ. Proc. R. 24(b)(3) ....................................................................13

**EX PARTE APPLICATION TO INTERVENE**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Homelessness in Los Angeles County is a crisis ignored far too long, and Latinos in Los Angeles County are at the forefront of the homelessness crisis by comprising 36.1% of the homeless population in 2020. (*See* Proposed Intervenors' Request for Judicial Notice ("RJN") Exh. 101.) Based on the Los Angeles Homeless Services Authority's (hereinafter "LAHSA") 2020 Greater Los Angeles Homeless Count, there are approximately twenty-three thousand nine hundred eighty-three (23,983) Latinos experiencing homelessness. 36.1% of the homeless population in Los Angeles County is Latino, more than any other demographic. (*See* RJN, Exh. 101.)

In four (4) out of the eight (8) Service Planning Areas (hereinafter "SPA"), Latinos were the highest percentage of individuals experiencing homelessness. In the four (4) remaining SPAs, Latinos were the second highest percentage of individuals experiencing homelessness. The foregoing figures do not even encompass the reporting of Latinos who do not identify as being homeless based on cultural traditions unique to Latinos, do not report being homeless for fear of adverse immigration consequences, the narrow definition of homelessness excluding certain Latinos, and language barriers preventing monolingual Latinos from access to homelessness resources.

Respectfully, this action is making decisions about Latinos, without Latino voices and without Latino representation. Proposed Intervenor-Plaintiffs, the Latino Coalition of Los Angeles (hereinafter "LCLA") and Pastor Josue Tiguila (hereinafter "Pastor Josh") have a protectable interest in any outcome in this action, and exclusion of LCLA and Pastor Josh will impede and impair their protectable interest of ensuring Latinos can adequately obtain homelessness resources, and the protectable interest of

**EX PARTE APPLICATION TO INTERVENE**

ensuring Latinos can partake in any and all potential resolutions resulting from this action.

Accordingly, as further discussed below, it is imperative this Court grant the instant application to allow the proposed intervenor plaintiffs who represent Latino interests in Los Angeles County to intervene in this action as a matter of right in order to include Latinos in any further settlements discussions and resolutions to the homelessness crisis in the County of Los Angeles. In the alternative, this Court should allow a permissive intervention of the proposed intervenors.

## II.    PROPOSED INTERVENORS

Proposed Intervenor the Latino Coalition of Los Angeles is an active California nonprofit 501(c)(4) social welfare committee. (*See* Declaration of Cindy Villegas, LCLA President). In 2009, LCLA was born after a coalition of Latino leaders joined together to discuss the new proposed Koreatown boundaries. (*See* Dec. of Cindy Villegas ¶6). In the middle of a contentious debate, it became clear that the Los Angeles County Latino community needed to organize and share their recommendations to ensure that LCLA and other marginalized groups were included in the redevelopment plans in Los Angeles County. (*See* Dec. of Cindy Villegas ¶6). LCLA brought together Korean, Bangladeshi, Mexican and Central American Leaders to lay out an equitable and transparent designation of community boundaries that reflected the demographics of the diverse communities. (*See* Dec. of Cindy Villegas ¶6).

The mission of LCLA is to create a collaborative infrastructure to support initiatives which will create positive change for the Latino community and other marginalized groups. (*See* Dec. of Cindy Villegas ¶3).

Proposed Intervenor Pastor Josue Tiguila (hereinafter "Pastor Josh") is a senior pastor at Los Angeles Church of the Nazarene located at 3401 W. 3rd

2

St, Los Angeles, CA, 90020. (*See* Dec. of Pastor Josh ¶1). Pastor Josh was ordained in 2004 and has served as lead pastor in multiple churches in Los Angeles County. (*See* Dec. of Pastor Josh ¶¶ 5, 6). In Pastor Josh's capacity as senior pastor at Los Angeles First Church of the Nazarene's English congregation, Pastor Josh engages in extensive outreach ministries which serve people who are experiencing homelessness including providing showers, providing haircuts to those who need grooming, providing a safe place to take naps, providing food distribution, and hopefully soon once again, able to provide hot meals. (*See* Dec. of Pastor Josh ¶¶ 11, 12).

All of the ministry work Pastor Josh engages in at the First Church cannot be done without a small group of Latino people who serve as volunteers. (*See* Dec. of Pastor Josh ¶13). Roughly 80% of the individuals where Pastor Josh provides direct services are Latino, and all of which are members of the surrounding community. (*See* Dec. of Pastor Josh ¶13). There is a portion of the people we serve who use us as their exclusive source for service, they would not be able to obtain these services anywhere else. (*See* Dec. of Pastor Josh ¶14). Pastor Josh and his church are a safe haven for these people. (*See* Dec. of Pastor Josh ¶14).

Pastor Josh was instrumental in mentoring the undersigned when the undersigned experienced homelessness with his mother as a minor in Skid Row, Downtown Los Angeles. (*See* Dec. of Pastor Josh ¶10). Pastor Josh's work in the community is invaluable, including his work with the homeless.

## III. LATINOS HAVE A UNIQUE PROTECTABLE RIGHT WHICH NO OTHER PARTY IN THIS ACTION CAN ADEQUETELY REPRESENT.

As explained below, there are multiple distinct issues which are unique to Latinos experiencing homelessness in Los Angeles County which are not remotely represented by the current parties in this action. Proposed

3

Intervenor-Plaintiffs Latino Coalition of Los Angeles and Pastor Josue Tiguila provide the following as a foundation to adequately articulate their protectable rights. Proposed Intervenor-Plaintiffs further note that homelessness is a racial justice issue which affects people of color disproportionately in Los Angeles County. Proposed Intervenor-Plaintiffs have a proven track record of coalition building and seek to intervene to unite to produce a result which will be just and equitable for all those involved and for the people of Los Angeles County.

## A. Latinos in the County of Los Angeles are Undercounted and Underrepresented in the Homelessness Count.

An undercounting of Latinos in traditional homelessness counts in Los Angeles County is a prerequisite issue which is unique to Latinos and must be addressed before all else. An undercounting of Latinos has grave ramifications including a lack of resources in SPAs which is based on the number of people experiencing homelessness in each SPA. A lack of funding creates a snowball effect which compounds the rise in Latinos who become homeless.

### i. Due to Cultural Reasons, Latinos do not Identify as Homeless.

Latinos are reluctant to identify as homeless due to pride, shame and the stigma associated with homelessness. While other demographics likely also experience shame in identifying as homeless, it is inherent in Latino culture that perseverance will allow one to overcome their homeless current state and admitting to homelessness will prevent one from overcoming such a state. The result is a willful refusal to identify as homeless and thus, not be counted in homelessness counts.

///

///

**EX PARTE APPLICATION TO INTERVENE**

### ii. The Definition of Homelessness Preclude Latinos from Being Counted as Homeless.

42 U.S.C. § 11302 defines the terms "homeless", "homeless individual", and "homeless person" means in six (6) circumscribed criteria. The six (6) criteria are limited to, (1) lacking an adequate fixed nighttime residence; (2) having a nighttime residence which is not ordinarily designed for sleeping accommodations; (3) living in a shelter; (4) living in a shelter or place not meant for human habitation; (5) an individual or family who will immediately lose their housing or has not no subsequent residence identified; and (6) unaccompanied youth and homeless families with children. The foregoing definition which is used by many state agencies to define homelessness inherently fails to account for the unique experience of Latinos who experience homelessness.

### iii. An Underreporting of Latinos as Homeless is Unique to Latinos which has Many Repercussions Including Deprivation of Allocation of Resources.

Further, there is a general lack of Latino representation in County of Los Angeles homelessness resources. For example, there is no ad-hoc committee in LAHSA on Latinos experiencing homelessness. The primary source of resources for many Latinos who are experiencing homelessness is through local churches where records are not kept of those who receives resources. (*See* Dec. of Pastor Josh ¶14).

### B. Monolingual Latinos Face an Additional Barriers in Homelessness including Access to Resources.

Monolingual populations such as Latinos who may only speak Spanish, may face barriers in terms of the process to identify and obtain assistance, which is also compounded by cultural beliefs around self-sufficiency prevent individuals from seeking services. (*See* RJN, Exh. 102).

5

Latino populations in Los Angeles appear to have difficult time in the rental market for a number of reasons. (*See* RJN, Exh. 102). Latinos who are Monolingual Spanish speakers are likely unable to understand rental documents and legal documents which are in the English language, including leases, notices to quit, notices to repair, and eviction notices. (See RJN, Exh. 102). Monolingual renters, in order to secure housing, may enter into lease or rental agreements without fully comprehending what the documents contains and may subsequently, inadvertently violate a term of the agreement. (*See* RJN, Exh. 102). Data has shown instances in which renters, in an effort to afford rental costs, Monolingual speakers unintentionally violated their lease by allowing additional occupants who are not on their original lease or rental agreement to move into the unit with them. (*See* RJN, Exh. 102).

In turn, Latinos in Los Angeles County are unable to secure permanent housing because of the lack of understanding of the rental process and the lack of understanding of legal documents which are necessary to obtain a permanent home.

### C. Latinos Experience Homelessness Uniquely In Terms of Experiencing Homelessness as a Family Unit.

Latinos in Los Angeles County experience homelessness as a family unit with children at a greater rate than any other demographic. 41% of Latinos experience homelessness with children compared to 28% for Black people and 12% for Caucasians. (*See* RJN, Exh. 102). Further, Latino households experiencing homelessness are also more likely to include intergenerational family members (*See* RJN, Exh. 102 citing Homelessness Policy Research Institute and CA Policy Lab 2018).

Moreover, Latinos are also likely to have multiple families in one home living in overcrowded households. (*See* RJN, Exh. 102 (citing to Burr, Jeffrey

6

A., Jan E. Mutchler, and Kerstin Gerst. 2010. "Patterns of Residential Crowding among Hispanics in Later Life: Immigration, Assimilation, and Housing Market Factors.")).

Inherently, people who experience homelessness in the Latino community will experience homelessness as a family unit, whether that be homelessness in the narrow definition detailed above, or whether that be in the non-traditional sense where there are multiple families living in a small housing unit.

### D. Latinos are Criminalized at a Greater Rate Compounding the Causes of Homelessness as Well as Unaccompanied Youth From Detention Centers and Foster Youth Creates an Additional Issue Unique to Latinos.

While Black people are incarcerated are a much higher rate, Latinos are also incarcerated at a high rate. According to the 2010 U.S. Census Latinos comprised 38% of the total population but accounted for 41% of the incarcerated population in California. To fully understand Latino homelessness, this requires understanding the criminal justice system and the homeless-to-prison pipeline. Experts have noted that the release of low-level offenders is increasing the number of individuals exiting the criminal justice system, a system in which black and Latino men are overrepresented. (*See* RJN, Exh. 102). Further, the foster care system and immigration detention centers also contribute to the homelessness numbers in Latino communities.

### IV.    ARGUMENT

"Intervention is governed by Fed. R. Civ. P. 24 which permits two types of intervention: intervention as of right and permissive intervention." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996).

Federal Rules of Civil Procedure, Rule 24 provides in pertinent part,

**EX PARTE APPLICATION TO INTERVENE**

"[o]n timely motion, the court must permit anyone to intervene who: …
claims an interest relating to the property or transaction that is the subject of
the action, and is so situated that disposing of the action may as a practical
matter impair or impede the movant's ability to protect its interest, unless
existing parties adequately represent that interest." Fed. Rules Civ. Proc. R.
24(a)(2).

Specifically, Ninth Circuit jurisprudence requires "that an applicant for
intervention make four showings to qualify under this Rule: '(1) it has a
"significant protectable interest" relating to the property or transaction that
is the subject of the action; (2) the disposition of the action may, as a practical
matter, impair or impede the applicant's ability to protect its interest; (3) the
application is timely; and (4) the existing parties may not adequately
represent the applicant's interest.'" *Perry v. Schwarzenegger*, 630 F.3d 898, 903
(9th Cir. 2011) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Generally, "Rule 24(a)(2) is construed broadly in favor of proposed
intervenors." *United States ex rel. McGough v. Covington Tech. Co.*, 967 F.2d
1391, 1394 (9th Cir. 1992). The "liberal policy in favor of intervention serves
both efficient resolution of issues and broadened access to the courts." *United
States v. City of Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) (citation
omitted).

As the Ninth Circuit has noted, [b]y allowing parties with a practical
interest in the outcome of a particular case to intervene, we often prevent or
simplify future litigation involving related issues; at the same time, we allow
an additional interested party to express its views before the court. *United
States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002).

### A. LCLA and Pastor Josh have Established that they Have a Significant Protectable Interest in this Action.

Under the first showing, "[a]n applicant has a "significant protectable

interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a 'relationship' between its legally protected interest and the plaintiff's claims. The relationship requirement is met if the resolution of the plaintiffs' claims actually will affect the applicant. The 'interest' test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the 'interest' test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.

Here, the "interest test" is satisfied by LCLA and Pastor Josh based on the practical ramifications of any resolution to this action which will affect LCLA, Pastor Josh, and the Latino community at large in Los Angeles County. As detailed above in Section III, the protectable interest is the interest of ensuring Latinos are being adequately represented in homelessness counts and in turn, ensuring Latinos in Los Angeles are receiving specific services which Latinos need in order to address the homelessness issue in Latino communities.

Here, LCLA's specific protectable right is having the ability to zealously advocate for homeless individuals, convene, brokers solutions to obtain favorable results among involved parties, and convenes with multicultural and multigenerational communities in order to adequately assist individuals who are experiencing homelessness in Los Angeles County. LCLA has a protectable interest in being able to provide the foregoing services to people experiencing homelessness. (*See* Dec. of Cindy Villegas).

Pastor Josh's specific protectable right is similar to LCLA as well as the additional interest of ensuring  being able to adequately provide direct services to homeless individuals in the Westlake and Koreatown community.

9

**EX PARTE APPLICATION TO INTERVENE**

**B. Excluding LCLA and Pastor Josh Will Impede and Impair Their Ability to Protect Their Interests Including the Impeding the Ability to Help and Advocate for People Experiencing Homelessness in Los Angeles County.**

Under the second showing, Court analyze whether "the disposition of this action may, as a practical matter, impair or impede Applicants' ability to protect their interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). "If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ." *Id* (quoting Fed. R. Civ. P. 24 advisory committee's note.)

Here, excluding LCLA will impair and impede LCLA's ability to zealously advocate for people experiencing homelessness in Los Angeles County. LCLA is a coalition builder and participating in this action will impair and impede LCLA's ability to include their members and the organizations LCLA is partnered with throughout Los Angeles County.

Pastor Josh's protectable interest of adequately serving people experiencing homelessness will be impeded and impaired because an adverse resolution to this action can potentially bring a larger influx of people experiencing homelessness to the streets of Los Angeles County which will prevent Pastor Josh from providing quality services to vulnerable populations such as families and children and the elderly.

Further, both LCLA's and Pastor Josh' protectable interest in representing their communities in this action will be impaired and impeded if LCLA and Pastor Josh are not given a "seat at the table."

**C. The Instant Intervention Application is Timely Based on This Action Being Filed Four Months Ago.**

Court consider three criteria in determining whether a motion to

10

1  intervene is timely: (1) the stage of the proceedings; (2) whether the parties
2  would be prejudiced; and (3) the reason for any delay in moving to intervene.
3  *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990), cert. denied, 501 U.S.
4  1250 (1991).

5     In *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897
6  (9th Cir. 2011), the Court determined a motion to intervene was timely when
7  it was filed less than three months after the complaint.

8     Here, this action was filed on March 10, 2020, slightly over four months
9  ago showing the instant motion is brought early in the state of the
10 proceedings. Further, the prejudice, if any, the parties would suffer is not
11 apparent. In point in fact, including LCLA and Pastor Josh will enrich any
12 resolution to this case and provide benefits to the City and County *vis a vis*
13 including a large population of the County and City. Accordingly, the instant
14 application is timely.

15     **D. The Existing Parties Do Not Adequately Represent LCLA's and
16     Pastor Josh's Interests.**

17     The final showing requires "that the existing parties may not
18 adequately represent the applicant's interest." *Citizens for Balanced Use v.
19 Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). The burden of
20 showing inadequacy of representation is "minimal" and satisfied if the
21 applicant can demonstrate that representation of its interests "may be"
22 inadequate. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003).

23     In evaluating adequacy of representation, courts examine three factors:
24 "(1) whether the interest of a present party is such that it will undoubtedly
25 make all of a proposed intervenor's arguments; (2) whether the present party
26 is capable and willing to make such arguments;  and (3) whether a proposed
27 intervenor would offer any necessary elements to the proceeding that other
28 parties would neglect." *Id.*

**EX PARTE APPLICATION TO INTERVENE**

The "most important factor" in assessing the adequacy of representation is "how the interest compares with the interests of existing parties." *Id.* If an applicant for intervention and an existing party share the same ultimate objective, a presumption of adequacy of representation arises. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citations omitted). To rebut the presumption, an applicant must make a "compelling showing" of inadequacy of representation. *Arakaki*, 324 F.3d at 1086.

Here, while Orange County Catholic Workers, Los Angeles County Catholic Workers, Legal Aid Foundation of Los Angeles, and CANGRESS are great advocates, LCLA and Pastor Josh represent the interest of communities and demographics not currently represented in this action. It is imperative LCLA and Pastor Josh be included to advance the interest of the communities they represent throughout Los Angeles.

## V.   IN THE EVENT THE COURT DOES NOT GRANT INTERVENTION AS A MATTER OF RIGHT, THIS COURT SHOULD GRANT PERMISSIVE INTERVENTION.

Federal Rules of Civil Procedure, Rule 24 provides in pertinent part, "On timely motion, the court may permit anyone to intervene who: . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. Rules Civ. Proc. R. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. Rules Civ. Proc. R. 24(b)(3).

An applicant who seeks permissive intervention must prove that it meets three threshold requirements of, (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly v.*

12

*Glickman,* 159 F.3d 405, 412 (9th Cir. 1998). "Permissive intervention is committed to the broad discretion of the district court." *Orange v. Air Cal.*, 799 F.2d 535, 539 (9th Cir. 1986).

Here, as discussed in the foregoing section, LCLA and Pastor Josh meet all three threshold requirements for permissive intervention. LCLA and Pastor Josh incorporate the arguments made in the previous sections.

Once an applicant has met the three primary requirements for permissive intervention, a court may also consider a number of other relevant factors in determining whether to exercise its discretion and permit the requested intervention. *Spangler v. Pasadena Bd. of Ed.*, 552 F. 2d 1326, 1329 (9th Cir. 1977).

The pertinent factors courts may consider are: "[t] he nature and extent of the intervenor['s] interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case . . . whether changes have occurred in litigation so that intervention that was once denied should be reexamined, whether the intervenor['s] interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether [the] part[y] seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.*

Here, LCLA and Pastor Josh are integral parties to this action since the Plaintiffs seek broad of remedies as Plaintiffs purport to seek in their complaint. It is critical LCLA and Pastor Josh participate in order to adequately represent the interest of communities and demographics not currently represented.

///

///

**EX PARTE APPLICATION TO INTERVENE**

1

## VI.    CONCLUSION

2    Based on the foregoing, LCLA and Pastor Josh Application to Intervene

3 should be granted.

4 Respectfully Submitted,

5 Dated: July 17, 2020              **GUIZAR, HENDERSON & CARRAZCO, LLP**

6

7

8    By: _____

9    CHRISTIAN CONTRERAS
     Attorneys for Proposed Intervenors,
     LATINO COALITION OF LOS
10   ANGELES & PASTOR JOSUE TIGUILA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EX PARTE APPLICATION TO INTERVENE**