Carol A. Sobel (SBN 84483)
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Ave.
Santa Monica, California 90401
Tel:  (31) 393-3055
Email: carolsobel@aol.com

Shayla R. Myers (SBN 264054)          Catherine Sweetser (SBN 271142)
**LEGAL AID FOUNDATION**              **SCHONBRUN SEPLOW HARRIS &**
**OF LOS ANGELES**                    **HOFFMAN, LLP**
7000 S. Broadway                      11543 W. Olympic Blvd.
Los Angeles, CA 90003                 Los Angeles, CA 90064
Tel: (213) 640-3983                   Tel:  (310) 396-0731
Email: smyers@lafla.org               Email: catherine.sdshhh@gmail.com

*Attorneys for Intervenors Los Angeles*
*Community Action Network and*
*Los Angeles Catholic Worker*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

|  |  |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al. | ) CASE NO. 20-CV-02291-DOC-KES<br>)<br>) Hon. David O. Carter<br>) Courtroom 1 |
| Plaintiff(s), | ) |
| vs. | )<br>) INTERVENORS' REQUEST FOR<br>) CLARIFICATION AND STATUS<br>) CONFERENCE |
| City of Los Angeles, et. al. | ) |
| Defendant(s). | )<br>) Status Conference:<br>) Time:<br>) Location:<br>)<br>)<br>) |

On October 13, 2020, the City of Los Angeles began the process of evicting individuals from freeway underpasses and other locations along the 101 freeway in Council District 3.  On that day, the City posted notices along underpasses throughout Council District 3, indicating that the City was conducting a "mandatory relocation" from all areas within 500 feet of the 101 freeway between Lindley and Valley Circle, and that all individuals would be required to leave the freeway by October 27, 2020.  *See* Exhibit A.  The notices posted by the City refer explicitly to this case, referencing it by name and case number.  The notices also state that representatives from this Court are overseeing the eviction.

Yet there is no mention of this operation as part of any public court record in this matter.  No discussions of the operation have occurred during the court proceedings in this case, and neither the plans for this forced relocation or the notices posted by the City have been made part of the Court record.  The operation is not being conducted pursuant to any publicly filed court order on record in this case.  In fact, counsel for Los Angeles Community Action Network and Los Angeles Catholic Worker ("Los Angeles Intervenors") who are parties to this case, were not even informed about this operation, although planning for it appears to have been ongoing for weeks, if not months.  And while counsel for both the Plaintiffs and the Defendant City of Los Angeles were aware of and present alongside this Court on the morning of October 13, 2020 when the operation commenced, counsel for the Los Angeles Intervenors was never even notified by the Court about those proceedings.

Intervenors respectfully request this Court convene a status conference in order to give the parties and the public the opportunity to obtain some clarification as to the relationship between the City's actions and this litigation.

**Procedural History**

Plaintiff LA Alliance filed this lawsuit on March 10, 2020.  On March 17, this Court granted intervention status to the Orange County Catholic Worker, *see*

1

Dkt. 18, and on March 18, granted LA Catholic Worker and Los Angeles Community Action Network's motion to intervene.  *See* Dkt. 26.  On March 19, 2020, this Court held its first hearing in this matter, at which time all parties to the litigation agreed to stay the litigation for a short period to engage in settlement negotiations.  *See* Dkt. 39 at p. 117.  As a condition of the Court's participation in settlement discussions, the Court required the parties to agree to allow the Court to engage in ex parte communications.  *See* Dkt. at p. 110.  Intervenors did not object to the Court's ex parte communications to facilitate settlement, given the agreed-upon timeline and the parties' stated interest in working towards a solution that resulted in the creation of more housing for people experiencing homelessness.  *Id.*

However, on May 15, 2020, while the stay was in place, this Court issued a Preliminary Injunction against the City and County of Los Angeles.  *See* Dkt. 108.  The *sue sponte* preliminary injunction mandated that the City and County relocate individuals from under freeway overpasses and underpasses throughout the City and County of Los Angeles.  The order was issued without any briefing from the parties, although the Court gave the parties a limited window to file objections after the fact, which Defendants City of Los Angeles and County of Los Angeles and Intervenors did.  *See* Dkts. 120-23.

On May 22, this Court entered a revised preliminary injunction, which was to go into effective September 1, 2020.  *See* Dkt. 123.  The new order faulted the City and County for failing to work together to reach an agreement regarding the funding for services for people living under freeways, and noted that the "ongoing endeavor to develop humane and sustainable responses to the challenges of homelessness is beleaguered  by a legacy of bureaucratic entanglement and gridlock." *Id*. at p. 4.

Thereafter, the City and County entered into a mediation with Judge Birotte. On June 18, 2020, the City and County announced during a further status conference that they had entered into an agreement regarding the funding for 6700

**REQUEST FOR CLARIFICATION AND STATUS CONFERENCE**

new beds.  *See* Dkt. 162. Pursuant to the agreement, the County would provide funding to the City to pay for services in conjunction with the creation of 6700 beds, and these beds would be provided to individuals living within 500 feet of freeway, individuals over the age of 65, and other vulnerable adults.  Dkt. 136. The terms of the agreement addressed only the creation and funding of these new beds and commensurate services.  *Id.*  The agreement explicitly did not reference the relocation of any individuals from any locations within the City of Los Angeles.

As a condition of the parties' agreement, both the City and County moved for the Court to vacate its May 22, 2020 order.  *See* Dkt. 162 at p. 35-37.  This Court agreed.  The Court granted the oral motion, *id.*, and then entered an order that day, vacating the May 22, 2020 Preliminary Injunction, without prejudice to re-entering the order if the City and County did not fulfill the terms of the agreement related to funding and the creation of housing. *See* Dkt. 138.

To date, the Court has not issued any orders that are part of the record of this case that have reinstated the May 22, 2020 Preliminary Injunction.

**Mandatory Relocation Operation**

Although there is currently no order in place requiring the City to do so, the City of Los Angeles has commenced an operation to relocate unhoused individuals residing under freeway underpasses along the 101 freeway.  This "Mandatory Relocation" appears to have commenced on October 13, 2020, when the City of Los Angeles posted notices throughout Council District 3, stating that, "effective October 27, 2020, "anyone sitting, lying or lodging within 500 feet of the 101 freeway between Lindley and Valley Circle will be required to relocate."  *See* Exhibit A.

The top of the notice states:

IN RE LAWSUIT ENTITLED LOS ANGELES ALLIANCE V. CITY AND

COUNTY OF LOS ANGELES, ET AL. FEDERAL DISTRICT COURT,

**REQUEST FOR CLARIFICATION AND STATUS CONFERENCE**

CENTRAL DISTRICT OF CALIFORNIA, CASE NO. LA CV 20-02291-DOC-KES

The notices further state that "[r]epresentatives of the United States District Court, Central District of California, Southern Division will be present on October 13 and 27, and may be present during that time period." *Id.*

The clear implication of these notices is that the Mandatory Relocation being undertaken by the City of Los Angeles, a defendant in this case, is occurring under this Court's supervision.  The notices explicitly state that the Mandatory Relocation is part of these judicial proceedings.  Further, the form of the notice gives the impression that the actions taken by the City are pursuant to an order from the Court, even though the City is well aware that the May 22, 2020 Preliminary Injunction was vacated by this Court, and there is no order currently in place in this case.

Indeed, Intervenors are informed that the Court has been present on numerous occasions at the underpasses throughout Council District 3, including at or around the time the City posted these notices on October 13, 2020.  Intervenors have also been informed that the Court appears to be providing instructions, which could be construed as orders, about when and how the "relocation" is to occur.  And according to the notices issued by the City, the Court appears to be actively supervising the operation.

Although the City's notices indicate that its Mandatory Relocation is being conducted pursuant to this litigation and the Court's active participation in the planning and implementation of this operation indicate the same, none of the City's actions are being taken pursuant to any court order or court proceeding.  The Court vacated its earlier order on June 18.  The agreement entered in its place between the City and the County relates only to the creation of and funding for new beds created by the City of Los Angeles, not the City's enforcement of municipal codes to keep individuals away from the underpasses.  The only

4

---

**REQUEST FOR CLARIFICATION AND STATUS CONFERENCE**

reference to freeways in the agreement is that the City has created a new priority for individuals living within 500 feet of freeways for placement in these new beds.

The Mandatory Relocation currently underway is wholly unrelated to even that provision of the agreement. Intervenors understand that the individuals who are being relocated from freeways as part of this operation are not being housed in beds funded by the agreement between the City and County. They are currently being offered short-term motel vouchers, the funding for which is coming from COVID relief funds. The intention is to transfer individuals to existing bridge housing, once shelter become available,[1] but even these bridge housing beds will be existing beds, not new beds created pursuant to the agreement between the City and the County.

Nor is the Mandatory Relocation part of any other proceeding in this case. It is being planned and executed away from public view and without any participation of parties that are adverse to the City of Los Angeles. Intervenors were never even informed by this Court or any parties that this operation was being planned. They were not notified that notices would be posted, let alone provided copies of the notices. On the morning of October 13, 2020, the City Attorney's office and counsel for the Plaintiffs were present with this Court when this operation commenced. Yet Intervenors were not informed of these proceedings in advance and were not given any opportunity to participate.[2] Nor was any aspect of

---

[1] Intervenors understand that the beds that had been set aside for individuals being relocated from freeways are currently unavailable because of outbreaks of COVID-19 at each of the shelters.

[2] Counsel for Intervenor Orange County Catholic Worker was notified at approximately 8:00 a.m. on the morning of October 13, 2020 that this was occurring; the Los Angeles intervenors was never notified by the Court. Counsel for Plaintiffs notified the LA Intervenors' counsel at approximately 8:40 a.m. that they were at the location of the Mandatory Relocation with this Court and counsel for the City, but made it clear she was under no obligation to inform Intervenors

**REQUEST FOR CLARIFICATION AND STATUS CONFERENCE**

the proceedings made public in any way, and there does not appear to be any record of any of these proceedings.

Intervenors are concerned that these private proceedings have the tendency to undermine the public confidence in the court system. *See U.S. v. Index Newspapers LLC,* 766 F.3d 1072, 1084 (9th Cir. 2014). Intervenors' consent to ex parte communications, given at the outset of this litigation, was not intended to allow parties to create plans and enforcement strategies that are shielded from public disclosure and therefore, public scrutiny. Nor was it intended to include the Court's oversight of the planning and execution of an operation by the City to evict individuals residing under freeway underpasses.

Intervenors respectfully request this Court schedule a status conference as soon as possible regarding the relationship between this litigation and the City's Mandatory Relocation. Intervenors further request this Court provide written notice of any orders, informal or otherwise, it has issued in this case that are not already part of the written record and order the disclosure to all parties of any written documents provided to the Court in the course of planning this or any other Mandatory Relocation. Finally, Intervenors request the Court disclose to all parties the role of any agencies, individuals or other entities participating in the Mandatory Relocation and any communications it has had with parties and non-parties regarding the planning and implementation of this or any other Mandatory Relocation currently being planned or contemplated by the City.

Dated: October 15, 2020          Respectfully submitted,
                                 Legal Aid Foundation of Los Angeles


                                 _____/s/ Shayla Myers_____
                                 Attorneys for Intervenors

_____

about this meeting and was providing notice only as a courtesy to Intervenors' counsel.

6

REQUEST FOR CLARIFICATION AND STATUS CONFERENCE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Schonbrun Seplow Harris & Hoffman LLP

_____/s/Catherine Sweetser_____
Attorneys for Intervenors

Law Office of Carol A. Sobel

_____/s/ Carol A. Sobel_____
Attorneys for Intervenors

**REQUEST FOR CLARIFICATION AND STATUS CONFERENCE**

Exhibit A



**IN RE LAWSUIT ENTITLED** *LOS ANGELES ALLIANCE V. CITY AND COUNTY*
*OF LOS ANGELES,* ET AL.
**FEDERAL DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA,**
**CASE NO. LA CV 20-02291-DOC-KES**

**NOTICE OF MANDATORY RELOCATION BY ANY PERSON SITTING, LYING OR SLEEPING WITHIN 500 FEET
OF THE 101 FREEWAY BETWEEN LINDLEY AND VALLEY CIRCLE AND
ENFORCEMENT OF REGULATIONS REGARDING STORAGE OF PERSONAL PROPERTY IN PUBLIC AREAS**

# EFFECTIVE OCTOBER 27, 2020
## [Posted October 13, 2020]

**ON OCTOBER 27, 2020, ANYONE SITTING, LYING, SLEEPING OR LODGING WITHIN 500 FEET OF THE 101 FREE-
WAY BETWEEN LINDLEY AND VALLEY CIRCLE WILL BE REQUIRED TO RELOCATE.** On October 27, 2020, be-
ginning at 6:00 a.m., the City of Los Angeles will begin enforcement of Los Angeles Municipal Code Section 41.18(d)* and
California Penal Code Sections 555 and 647(e)** as well as Los Angeles Municipal Code Section 56.11 **within 500 feet of
the 101 freeway between Lindley and Valley Circle** and enforce regulations regarding storage of personal proper-
ty in public areas, pursuant to Los Angeles Municipal Code Section 56.11.***

This enforcement action is taken to protect individuals experiencing homelessness who are lodging or camping unshel-
tered or in tents or makeshift shelters near freeway overpasses, underpasses, and ramps, and also to protect the public
health, safety and welfare.

Any Person lodging in this posted area as of October 13, 2020 will be offered shelter for relocation or alternative hous-
ing options by Outreach and Engagement Personnel. The shelter or alternative housing options include govern-
ment encampments following the existing Veterans Affairs model, safe parking sites, or hotel and motel rooms con-
tracted following the Project Roomkey model.

Persons declining offered shelter or housing options will be given a warning and an opportunity to relocate before be-
ing subject to enforcement.

Representatives of the United States District Court, Central District of California, Southern Division, will be present on
October 13 and October 27, and may be present on multiple days during that time period.

**ALL PERSONAL PROPERTY MUST BE REMOVED FROM THIS POSTED AREA WITHIN 500 FEET OF THE 101
FREEWAY BETWEEN LINDLEY AND VALLEY CIRCLE BY 6:00 AM ON OCTOBER 27, 2020.** Any personal proper-
ty remaining in this area after 6:00 a.m. on October 27, 2020, will be removed and maintained in a secure location for 90
days and available for retrieval – regardless of the size of any item or the total volume – except for trash, and personal
property that constitutes an immediate threat to the health or safety of the public, or evidence of a crime or contraband.

On the day of enforcement, the City will provide trash bins and voluntary trash services prior to cleaning the area of re-
maining personal property.
Personal property may be retrieved for 90 days following removal at The BIN, located at 507 Towne Avenue, Los An-
geles, California 90013 ((213) 806-6355 or (844) 475-1244)  between the hours of 8:00 a.m. and 5:p.m. Monday
through Friday, 8:00 a.m. and 1:00 p.m. on Saturdays (closed Sundays).

**For assistance locating shelter or mental health, substance abuse, or other services call 211 or visit www.la-
hop.org.**

*Los Angeles Municipal Code Section 41.18(d) will be applied in a manner consistent with the decision in *Martin v. City of Boise*, 920
F.3d 584 (9th Cir. 2019) and the settlement agreement in the case of *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006), *vacat-
ed*, 505 F.3d 1006 (9th Cir. 2007).

**California Penal Code Sections 555 and 647(e) will be applied in a manner consistent with the decision in *Martin v. City of Boise*,
920 F.3d 584 (9th Cir. 2019) and the settlement agreement in the case of *Jones v. City of Los Angeles*, 444 F.3d 1118 (9th Cir. 2006),
*vacated*, 505 F.3d 1006 (9th Cir. 2007).

***Enforcement of Los Angeles Municipal Code Section 56.11 will comply with the Court injunction issued in *Garcia v. City of Los An-
geles*, Federal District Court, Central District of California case number 2:19-cv-06182-DSF-PLA.