SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
617 W. 7th Street, Suite 200
Los Angeles, California 90017
Telephone: (213) 205-6520
Facsimile: (213) 205-6521
mumhofer@spertuslaw.com
emitchell@spertuslaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, an unincorporated association, JOSEPH BURK, HARRY TASHDJIAN, KARYN PINSKY, CHARLES MALOW, CHARLES VAN SCOY, GEORGE FREM, GARY WHITTER, and LEANDRO SUAREZ, individuals,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; COUNTY OF LOS ANGELES, a municipal entity; and DOES 1 through 200 inclusive,<br><br>Defendants. | Case No. 2:20-cv-02291 DOC-KES<br><br>**PLAINTIFFS' REQUEST FOR CLARIFICATION** |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs hereby submit the following request for clarification regarding two issues: (i) status of Project Roomkey wind-down efforts and (ii) participation of County services, particularly Department of Public Health, Department of

1

PLAINTIFFS' REQUEST FOR CLARIFICATION

Mental Health, and Department of Health Services in the outreach programs to individuals within 500 feet of freeways.

Status of Project Roomkey Wind-Down

    Plaintiffs applaud the effort to move the most vulnerable unhoused persons into rented hotel and motel rooms during the pandemic to save lives and slow the spread of this deadly virus. This concept was raised at the first hearing held in this matter, before it even had a name at the state-level. However, one of the greatest concerns has always been what would happen to Project Roomkey participants when the project winds down, either due to dwindling funds or dwindling need. From very early on, the Court and parties have been assured that Project Roomkey residents will not be returned to the street and instead will be offered permanent housing, shelter beds, or other accommodation as appropriate.

    However, Plaintiffs have recently received information that suggests that the residents of certain hotels and motels that are exiting Project Roomkey are not being offered alternate shelter or housing arrangements. Furthermore in a recent Los Angeles Times article noted confusion and strain with service providers and LAHSA finding shelter for both those exiting Project Roomkey and those camping near freeways.[1] Yet at the last hearing LAHSA Executive Director Heidi Marston testified that LAHSA could do both and that the money was there to "do it all."[2]

    While Plaintiffs have not been able to verify the accuracy of the information concerning the failure to place individuals who leave Project

---

[1] Benjamin Oreskes, *Chaos and confusion as judge pushes plan to clear homeless camps from near freeways* (October 23, 2020), https://www.latimes.com/homeless-housing/story/2020-10-23/judge-efforts-bolster-complicate-homeless-housing

[2] Transcript of Hearing September 17, 2020, 161:11-163:5

2

PLAINTIFFS' REQUEST FOR CLARIFICATION

Roomkey, **Plaintiffs seek assurance that in fact no hotel or motel will be eliminated or reduced from the program without ensuring that each resident is released only to appropriate housing or shelter**. It would be both counterproductive and cruel if any Project Roomkey residents are forced to return to the streets after months of shelter and services, and Plaintiffs are prepared to seek court intervention to prevent that outcome.

In the same vein, Plaintiffs seek clarification about the use of the 6,700 beds created as part of the agreement between the City and the County. It is Plaintiffs' understanding that there are approximately 3,000 individuals within the City of Los Angeles living within 500 feet of freeways.[3] It has always been Plaintiffs' understanding that the remaining 3,700 beds were intended to be used to assist with Project Roomkey exits, pursuant to the Term Sheet (Docket 136) and MOU (Docket 185-1). As Project Roomkey winds down, **Plaintiffs seek clarification of the City and County's intentions concerning these additional 3,700 of beds, and whether they are to be available to assist with Project Roomkey exits.** If not, Plaintiffs seek clarification regarding the intended use of these additional beds.

Finally, Plaintiffs request clarification regarding LAHSA's Covid-19 Recovery plan. It is Plaintiffs understanding that as part of the proposed Covid-19 recovery plan, LAHSA intends to "Rapidly House 15,000 of the Most Vulnerable People", including through "Permanent Supportive Housing )(PSH) matching, Rapid Re-housing (RRH), Problem-Solving and other interventions."[4] Importantly, the first enumerated point on the Recovery Plan Framework is "No

---

[3] *See* Transcript of Hearing May 15, 2020, 5:4-14; City's Report re Plan in Response to Court's Order, May 19, 2020, p. 2, 7-8

[4] Heidi Marston, *LAHSA COVID-19 Recovery Plan Report* (June 23, 2020), https://www.lahsa.org/documents?id=4579-lahsa-covid-19-recovery-plan-report

3
PLAINTIFFS' REQUEST FOR CLARIFICATION

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Returns from COVID-19 Response to the Street: Anyone sheltered through project Roomkey or any of the other COVID-response interim housing should not exit back to unsheltered homelessness." *Id*. p. 2. It is Plaintiffs' understanding that the Plan has been partially funded, with enough for housing for "at least 4,900 of the most vulnerable."[5] **Plaintiffs request clarity about LAHSA's Covid-19 Recovery Plan and the utilization of these funds for Project Roomkey exits.**

Participation of County Services in the Freeway Program

Councilmember Blumenfield recently presided over a massively successful 14-day outreach program which provided shelter to each person living within 500 feet of the freeways in Council District 3. Approximately 60 people were provided with shelter in accordance with the City and County Memorandum of Understanding, and there was no need for any enforcement action.

Tragically, a single individual remained who was by all appearances gravely mentally ill, yet no help was immediately provided by the County Department of Mental Health (DMH). It is unclear why there were insufficient DMH personnel to assist, and it is unclear why additional personal from Department of Public Health (DPH) or Department of Health Services (DHS) were not present given the significant health issues involved. It is Plaintiffs' view that outreach and sheltering programs will only be successful if the County provides the services which they are not only required to provide under the law, but are necessary to the success of the Agreement reached by the City and County over the summer.

[5] LAHSA Begins Transition From Project Roomkey to Covid-19 Recovery Plan (September 22, 2020), https://www.lahsa.org/news?article=755-lahsa-begins-transition-from-project-roomkey-to-covid-19-recovery-plan.

There may be some confusion within the County regarding its critical participation in the effort to shelter those individuals who fall within the ambit of the MOU, specifically including "people experiencing homelessness ("PEH") living within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles." (Memorandum of Understanding, Docket 185-1, p.1.) Plaintiffs are informed and believe that the Los Angeles County Director of the Office of Homeless Initiative, Phil Ansell, directed Heidi Marston and several County officials within DHS, DMH, and DPH that the County has not agreed to participation in the enforcement of freeway-camping restrictions or "redirection" of existing interim or permanent housing resources from other people experiencing homelessness to people living near freeways. However, it is Plaintiffs understanding that no "redirection" would be necessary, and there are sufficient resources to conduct both. Plaintiffs are informed and believe Mr. Ansell also noted that Judge Carter has no authority to direct the work of County staff. It is Plaintiffs' understanding that County and City have both consented, and indeed requested, that Judge Carter supervise the implementation of the Agreement.

**Plaintiffs request clarification regarding the role the County, and in particular the County services including DMH, DPH, and DHS, intends to take regarding implementation of these outreach and sheltering programs.**

Respectfully submitted,

Dated: October 30, 2020

*/s/ Elizabeth A. Mitchell*
SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)

*Attorneys for Plaintiffs*

5
PLAINTIFFS' REQUEST FOR CLARIFICATION