

FILED
CLERK, U.S. DISTRICT COURT

3/23/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___KD___ DEPUTY

March 23, 2021

LA CV 20-2291-DOC

The Honorable David O. Carter
Ronald Reagan Federal Building and United States Courthouse
411 West Fourth Street, Courtroom 9D
Santa Ana, CA 92701-4516

Dear Judge Carter:

For over 80 years, the Los Angeles Business Council (LABC) has had a major impact on public policy by harnessing the power of business and government to promote progress in the Los Angeles region. Our annual Mayoral Housing Forum, in its 20th year, is attended by hundreds of local, state, and federal decision makers and leaders from the policy, nonprofit, government and business sectors to address the top housing issues of our time.

We are a progressive business organization with a longstanding commitment to solving homelessness and providing relief to those suffering and dying on our streets. We have dedicated the better part of the past two decades evaluating and advocating for solutions to the widening housing affordability gap that has contributed so greatly to the homelessness catastrophe our city and county currently face.

Our City's inability to address the scope of the crisis is frustrating and unacceptable. We believe that people experiencing homelessness have a right to housing and that it is unacceptable not to give them a choice to come off the streets.

The LABC supported the HHH and H initiatives in 2016 and 2017, respectively, which were intended to provide both permanent supportive housing (PSH) and interim housing. It is profoundly disappointing that $1.1 billion dollars has been spent or obligated to PSH, while only $50 million has gone toward interim housing solutions.

Most recently, we called on City leaders to greatly expand their thinking around Project Roomkey (PRK) given the Biden Administration's decision to provide 100% FEMA reimbursement. We called for leaders to use their bully pulpit to encourage hotel and motel owners to participate in the program and set a goal of providing 15,000 rooms for the next six months.

### *Angelenos Deserve a Right to a Roof – A Focus on Diverse Housing Types*

Judge Carter, the City needs to take a multilayered approach with the goal of providing access to a bed, bathroom, and roof for every homeless person who desires that support. On one end of the spectrum, we need immediate solutions to get people indoors and protected. On the other end of the policy spectrum, we need a nuanced, long-term approach to meet the diverse needs of the many constituencies of homeless residents – from those who can be mainstreamed quickly to those who suffer from mental health and/or addiction issues and need longer-term support.

As of 2020, LAHSA had identified 63,706 homeless individuals in the Los Angeles Continuum of Care. Of these individuals, 72% were unsheltered, for a total of 46,090. LAHSA's System Analysis, released in

March of 2020, found that "a balanced portfolio of housing interventions will increase system throughput, rehousing people as quickly as possible." The LAHSA report concludes: "Ultimately, the success of our system requires an "all of the above" housing strategy: the right mix of PSH, enriched adult residential care, rapid re-housing (RRH), and interim housing (IT). Part of this 'all of the above' strategy requires growing the affordable housing stock to prevent greater inflow into homelessness, enable more exits into permanent housing, and to allow the homeless services system to function effectively."

The Los Angeles Business Council agrees, and that is why we have supported AB 816 (Chiu) introduced in the current state legislative session to require localities to submit plans to achieve virtual zero homelessness by 2029, as well as LA City Councilmember Mark Ridley-Thomas' "Right to Housing" motion seeking to identify the resources necessary for the goal of establishing a legislative, budgetary, administrative, and policy framework to provide a Right to Housing.

**As you consider options in the LA Alliance for Human Rights case, we believe it is crucial that the City be required to achieve virtual zero homelessness and establish a Right to Housing by providing a wide spectrum of housing options to meet the diverse needs of people experiencing homelessness in Los Angeles.**

To help meet these requirements, below are a series of actionable policy recommendations, put together by our leadership, for consideration that reflect the urgency of the homelessness crisis we face in Los Angeles and support the diverse, immediate, and long-term needs of our homeless population:

1. **Direct the City to develop and submit a Master Plan to Address Homelessness, similar to the City of Sacramento's (attached), 6 months from the date of your ruling, based on a needs assessment that identifies: all public and privately-owned sites with a range of proposed facilities (completed in the first 45 days); best practices for operations; existing and proposed programs and services for facilities; and existing and potential funding resources. Modeled on the nation's Base Realignment and Closure Commission (BRAC), the plan should be approved by yourself followed by the LA City Council with a singular vote. The Court should have authority over budget and administrative approvals, to override the costs and delays, and to oversee and implement the Master Plan with broad decision-making powers. The Plan should only go back to City Council if modifications are required to the Master Plan, not individual project approvals. If the court chooses to delegate these powers to an independent body, we recommend the Court establish an independent, Seven Person Commission of private/public/nonprofit individuals.**

    In his groundbreaking HHH audit, City Controller Ron Galperin stated that "…the City has full authority to fully fund the construction of interim housing and facilities on City-owned property or acquire property and initiate projects." All eligible parcels have been identified; there has been no will to pursue those that are reasonably available for use. In 2018, the real estate firm CBRE created a comprehensive database of governmental properties – federal, state, county, city – in Los Angeles; many may offer opportunities for housing. This comprehensive database identifies specific sites and proposed uses that could work on those sites. CBRE did this work in collaboration with Gensler, the City of Los Angeles, and the County of Los Angeles. Unfortunately, the report has attracted more dust than action, yet it

provides a detailed roadmap for the mix of housing required to address the homeless crisis. These projects on government-owned land would dramatically reduce costs by removing one of the largest cost issues – land acquisition.

During the 6-month timeline, the Plan should be developed in conjunction with, and include outreach to, stakeholders representing the county, state, federal government, private industry, philanthropy, and community organizations.

2. **If in your authority, direct a third party to conduct an overall economic analysis, in parallel to the Master Plan, identifying the direct and indirect costs related to addressing homelessness, gaps in resources and coordination, and an estimate of revenue needed to house the entire population of people experiencing homelessness by cohort, recognizing the diversity of housing typesets and levels of services needed.**

Much of the economic analysis to date has been done in silos. There is a lack comprehensive analysis to estimate the overall need, including different levels of housing and services needed to meet the scope of our population experiencing homelessness. This analysis will help identify the large gap between existing resources and the need, and where there is a lack of coordination and inefficiencies.  It will also help determine whether there is a better allocation of resources. The Los Angeles Business Council Institute, our 501(c)(3) research arm, would gladly offer to help fund the costs and manage the research associated with this recommendation.

3. **Suspend City regulations adding cost and time to the development of interim, permanent supportive, and affordable housing, and provide incentives to fast-track necessary approvals for the development of said housing.**

There is no justifiable excuse for a tiny home to cost $130,000, approximately 10 times what other cities are spending, or for a permanent supportive housing unit to cost nearly $550,000, near the median price to purchase a home. Overburdensome discretionary reviews, a lack of standardized plans, excessive fees, unnecessary infrastructure requirements (notably for interim housing), a lack of enforced timelines for plan reviews, and much more, attribute to these costs and delayed development timelines. The City should be required to suspend regulations that are redundant, costly, and add delay to life-saving housing. **We are strong advocates for Councilmember de León's "A Way Home" package of motions that seeks to address many of these issues. Incentives should be tied to the implementation of the Master Plan.**

4. **Direct the City and County to request a one-year extension from the federal government beyond the September 30, 2021 deadline for FEMA reimbursements and clarification that FEMA reimbursements include all forms of non-congregate shelters, beyond hotels and motels.**

While the light at the end of the tunnel to recover from the COVID-19 pandemic is approaching thanks to an expansion of vaccinations, homelessness will undoubtedly continue to be a problem well beyond the September 30th deadline set by the federal government for FEMA reimbursements. It is crucial that the City and County continue to aggressively expand Project Roomkey. Extending the deadline is necessary to ensure the City and County have adequate time to identify willing properties and secure necessary, upfront funding.

Additionally, FEMA is reimbursing roughly $100 per night for housing under PRK. If the City could use those funds to pay "rent" for other non-congregate shelters, such as tiny homes, community cabins, or other modular structures, after 8-12 months the payments would be enough for the City to have acquired these homes under a lease to purchase program. The challenge with this strategy – which we believe is surmountable – is timing. These units require a few months to be set up – if the PRK program ends as planned on September 30th, there would not be enough time. But if the Biden Administration agrees to extend the deadline, we could make it work. While PRK payments cannot be used for purchasing property per se, a transfer of the residual assets may be negotiable without violating FEMA standards under a "lease to own" program in which the nightly "rent" is applied to the purchase. The City and County should pursue this model and get pre-approval from FEMA and the Biden Administration for this structure.

5. **Direct the City to conduct a review/audit of Prop HHH to ensure that any instances of fraud, waste and abuse be identified and addressed, and set a 12-month timeframe to finalize pre-development of HHH funded projects.**

Since 2016, when HHH was approved by the voters, the HHH program has produced less than 500 units of PSH. During that same five-year period, over 5,000 men and women have died on Los Angeles Streets. It is imperative that the City review its current list of commitments to identify any cases of fraud, waste, and abuse and immediately terminate those projects and reallocate funding to more urgent bridge/transitional housing needs.

Further, On April 17, 2020, at a time when the Governor specifically exempted all construction and financing from the COVID shutdown, the City of Los Angeles suspended all time frames for the production of housing by HCID. *(See attached: Tolling HCIDLA Deadlines and Revising Expiration of Emergency Orders.)* The April 2020 tolling order extended all deadlines for HHH projects. Not only do we question the policy itself because it contrasts sharply with Governor Newsom's decision last year to deem construction work "essential," the tolling order has resulted in the delay of HHH projects because they no longer have a 24-month limit for pre-development. The unintended consequence of the tolling order – still in effect – is the inability to reallocate funds to achieve more impact.

<u>Hundreds of millions of dollars are now sitting dormant in City coffers with no mandatory timeline under which housing is required to be produced.</u> Projects that have been allocated dollars are not required to begin construction. The City of Los Angeles should be required to deliver all their environmental, administrative and processing approvals and clearances within 12 months, excluding lawsuits.

*Conclusion*

Judge Carter, we support your view that too little has been done for too long to help our homeless residents in Los Angeles – up to five homeless people are dying on the streets of LA each day – this is unacceptable. We need bold solutions to meet the scale of need. The challenges are clearly immense. Yet no matter the complexity of the issues, we must continue focusing on the tragedy that plays out on our streets every day.

We are not the only ones frustrated by inaction; a broad spectrum of Angelenos is equally upset by the lack of any substantive progress. In the months before COVID-19 gripped our city and nation, LABC worked in partnership with the *Los Angeles Times* on comprehensive public opinion research on homelessness in Los Angeles; the results of that research are attached.

Ninety-five percent (95%) of Los Angeles voters identified homelessness as the top issue facing Southern California. Sixty-six percent (66%) called homelessness an "emergency situation" requiring a break with longstanding practices to solve, and seventy-five percent (75%) supported establishing a legal right to shelter.

Two-thirds of survey respondents felt that HHH bond measure funding was not being spent either effectively or timely.  That was before City Controller Galperin released his audit showing that the average cost of a permanent supportive housing unit was $539,000, the *LA Times* reported the City was spending $130,000 per unit on tiny homes, and *KCRW* disclosed fraud in the HHH program.

Los Angeles Business Council supports solutions that address the scale of the challenge before us. We believe that more innovation, leadership, and urgency is required, just as we saw in the aftermath of the 1994 earthquake. Our City is capable of taking decisive action to help and protect people.  If we had an earthquake and 50,000 people were left homeless, we would not let them sleep on the street night after night. We would require swift and comprehensive action – trailers to house people, food services, water, and medical care. We have allowed this crisis to develop in slow motion; it is past time to accelerate effective solutions.

Your honor, we appreciate your intensive focus on homelessness, and we offer the Court any assistance as you consider outcomes in this case.

Sincerely,

| | | |
|---|---|---|
| *[signature]* | *[signature]* | *[signature]* |
| Nadine Watt | Brad Cox | Mary Leslie |
| Chair | Chair | President |
| LABC | LABC Institute | LABC |

CC:   Richard Ziman, Founding Chair, Los Angeles Business Council
      Antonio Manning, Vice Chair, Los Angeles Business Council
      David Nahai, Vice Chair, Los Angeles Business Council
      David Sears, Treasurer, Los Angeles Business Council
      Lew Horne, Board Member, Los Angeles Business Council
      Jon Vein, Board Member, Los Angeles Business Council

# Overview
# Master Plan to Address Homelessness

**Addressing Homelessness a 2021 Priority**: At its first meeting in January, the Sacramento City Council confirmed that addressing homelessness is a top priority for 2021. "The suffering of people living outdoors is a primary reason we must act with greater urgency," said Mayor Darrell Steinberg in a Dec. 6, 2020 letter to his colleagues. Several thousand people have found temporary and permanent shelter in the past four years through efforts by the City, County, Sacramento Steps Forward, and state government. Despite this progress, the problem has grown worse. Rising rents and job losses due to the Covid-19 pandemic have exacerbated the crisis caused by the lack of shelter resources and mental health services. Importantly, there is another clear reason the City has not made more progress: The *pace* of siting decisions for shelter, temporary housing, and permanent supportive housing is simply too slow..

**Master Plan**:  The Sacramento City Council approved a bold proposal at the Jan. 5, 2020 meeting. The Council will lead an effort with the community, providers, and expert partners to create a Master Siting, Programmatic, Operations and Financing Plan to Address Homelessness (Master Plan). The Master Plan will identify:
- **Sites:** public and privately-owned sites in each Council district with a range of proposed facilities.
- **Operations:** best practices for operations of each type of facility including Good Neighbor policies
- **Programs & Services:** existing and proposed programs and services for the facilities
- **Financing**: Existing and potential resources to fund facilities and ongoing services. The Plan will also include programs to prevent homelessness, including: rental and mortgage assistance and home repair programs

The Council will take a single vote on the Comprehensive Master Plan, including all site decisions, in June 2021. With this approval, the City Manager will be granted authority to implement homeless solutions with only administrative and financing approvals returning to future Council meetings.

**Councilmembers Host Online District Workshops**:
Jan:       Overview of Master Plan, Guiding Principles and Community Feedback on How Best to Address Homelessness
Feb:       Vetting Sites for Housing, Shelter and Permanent Supportive Housing

**City Council Workshops**:
Feb. 9:         Comprehensive Homeless Service Center Concepts (Large Campus Solutions)
Feb. 16:        Council Discussion on Needs, Services, Numeric Goals, Guiding Principles and County-Regional Partners Collaborating on Solutions to Homelessness
Mar 2:          Funding and Financing and Good Neighbor Policy
Mar 16 &23:     Council Workshops: Review Sites by District (2 Districts per Workshop)
Apr 6 & 20:     Council Workshop: Review Sites by District (2 Districts per Workshop)
May 11:         Prioritization of Sites to Meet Numeric Goals and Range of Needs
May 25:         Prevention –Homeless Prevention, Rental & Mortgage Assistance, Home Repair
Jun:            Final Vote on Plan


For More Information:
Council Report: https://sacramento.granicus.com/MetaViewer.php?view_id=21&event_id=3874&meta_id=610742
Website: http://www.cityofsacramento.org/Mayor-Council/Districts/Mayor/Initiatives/Addressing-Homelessness
Office of Mayor Darrell Steinberg  |  Julia Burrows, Senior Policy Advisor  - jburrows@cityofsacramento.org

January 12, 2021