Case 2:20-cv-02291-DOC-KES   Document 253   Filed 03/26/21   Page ... 1448

FILED
CLERK, U.S. DISTRICT COURT
3/26/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___KD___ DEPUTY



LA CV 20-2291-DOC

March 24, 2021

The Honorable Judge David O. Carter
Ronald Reagan Federal Building and United States Courthouse
411 West Fourth Street,
Courtroom 9 D
Santa Ana, CA, 92701-4516

RE: L.A. Alliance for Human Rights v. City of Los Angeles and a Collective Impact Approach to Homelessness

Dear Judge Carter:

You recently invited feedback from key stakeholders on several aspects of our unsheltered crisis and the court's involvement in the collective response. More specifically, you asked the parties in the *L.A. Alliance for Human Rights v. City of Los Angeles* case to address the wisdom of redirecting unobligated HHH funds for temporary shelter, and about the role of racism, ableism, and sexism on the homeless crisis and the government's response.[1]

Although we are not a party to the case and hope for its timely resolution, the United Way of Greater Los Angeles (UWGLA) has made a longstanding investment in the matter of ending homelessness that compels us to join other partners in offering our suggestions to your questions. We are also taking this opportunity to communicate our perspective on the effectiveness of the local homeless re-housing system compared to other systems and levels of government which are also vital to ending homelessness. Through this letter and our ongoing partnerships, we aim to offer solutions that align short-term and long-term priorities and change the status quo, which, as you have repeatedly highlighted, continues to fail people experiencing homelessness (PEH). Since the beginning of the case, when the plaintiffs' original complaint asserted that "*the only way out of the current crisis is to provide beds to the unsheltered*," the court has been disproportionately focused on the provision of shelter beds and services and has emphasized the life/safety risk of specific geographic locations. While we support the creation of additional safe shelter capacity, we offer three perspectives for the court's consideration.

First, the court's focus on specific locations is not fully aligned with the priorities and guidance of public health and housing experts who are actively managing through the evolving complexities of a pandemic. We appreciate that the City and County have agreed to include *age* as an additional risk factor and prioritization criterion for scarce shelter resources, because the data is clear that the risk of contracting and dying of COVID-19 is much higher for older adults experiencing homelessness,[2] and that the overall

---

[1] Case 2:20-cv-02291-DOC-KES, Document 213, Filed 02/08/21, Page 1 of 2, Page ID #:3689, https://spertuslaw.sharefile.com/share/view/s9006437341174818b4a2b91fb8a50461

[2] Summary Report of COVID-19 in People Experiencing Homelessness (PEH), LA County Department of Public Health, March 14, 2021. http://publichealth.lacounty.gov/media/coronavirus/docs/SummaryReport_People_Experiencing_Homelessness.pdf

mortality risk among PEH escalates dramatically after age 55.[3] Moving forward, **we encourage the prioritization and alignment of beds and services for our oldest and sickest unhoused neighbors, regardless of where their homelessness is occurring**.

Second, the court has highlighted the inadequate pace of our local response to the humanitarian crisis on our streets. We share the court's frustration. However, **Los Angeles has invested unprecedented financial resources into our homeless re-housing system through Measure H and Proposition HHH, and recent evidence makes clear that those investments are fueling progress which should not be derailed**. Proposition HHH is on track to deliver over 7,000 supportive units faster than originally anticipated at an average loan commitment of only $140,000 per unit;[4] and a recent County report shows Measure H has driven increased enrollments in services, increased permanent housing placements, and a significant increase in interim housing placements compared to pre-Measure H baselines.[5] Although that progress has been understandably impacted by a global pandemic, LAHSA and its rehousing partners responded to COVID-19 with an unprecedented expansion of interim shelter through 38 Project Roomkey sites which have safely sheltered over 10,000 households in non-congregate settings. We will not be satisfied until every Angeleno is safely housed, but we encourage the court to account for genuine evidence of recent progress and lower costs as you shape the case's focus and preside over its final resolution.

Third, we know that our collective inability to make a visible impact on our streets generates escalating frustration of local businesses and communities across the county and seriously threatens the public support needed to continue implementing plans that end homelessness. More importantly, it fails the tens of thousands of vulnerable unhoused neighbors who are struggling to stay alive without a long-term home. However, **shifting resources from permanent housing solutions, like Proposition HHH, to pay for short-term shelter is the wrong approach**. Sheltered homelessness, though one step in the right direction, is still homelessness. We support the creation of additional safe shelter capacity, just not at the expense of permanent solutions. Therefore, we urge you to use your influence and authority to identify *new* resources to build dignified, immediate housing tied to clear countywide goals for specific populations, starting with seniors. Those added resources should include dedicated capital funding for interim and permanent housing from the State and federal government and a federal Housing Choice Voucher available to everyone who qualifies, as promised by the Biden Administration.

This unprecedented moment requires the requisite financial resources, land use authority, and targeted policies to concurrently create and scale both immediate and long-term solutions. We are encouraged by the recent passage of the American Rescue Plan Act and the federal resources it provides to address the impact of the pandemic on our housing crisis.[6] Unfortunately, those resources are temporary. **Californians need dedicated state and federal funding for interim and permanent housing.** We concur with experts at LAHSA who note that the magnitude of the crisis and the pace of progress depend also on homeless prevention, affordable housing creation, and adequate health and safety supports for people in crisis.

---

[3] Los Angeles County Department of Public Health, Center for Health Impact Evaluation, Recent Trends In Mortality Rates and Causes of Death Among People Experiencing Homelessness in Los Angeles County, January 2021. http://publichealth.lacounty.gov/chie/reports/HomelessMortality2020_CHIEBrief_Final.pdf

[4] City of Los Angeles Housing and Community Investment Department, Proposition HHH Progress Report, March 2021. https://hcidla2.lacity.org/housing/hhh-progress

[5] Assessing LAHSA's Performance Over a Period of Three Years, Los Angeles County Chief Executive Office, pages 10-15. http://file.lacounty.gov/SDSInter/bos/bc/1103521_3-2-21RevisitingLAHSA_sStructure_Function_ExploringNewGovModelstoImproveFunding.pdf#search=%22Measure%20H%22

[6] American Rescue Plan Act Summary, National Low Income Housing Coalition, March 2021: https://nlihc.org/sites/default/files/COVID-Relief-Budget_Reconciliation.pdf

Without those adequately resourced upstream systems working in concert with rehousing efforts, homelessness will never be sharply and sustainably reduced.[7]

Finally, we urge you to continue highlighting the role that racism, ableism, and sexism have played in our housing crisis, but our response to those systemic injustices must include solutions at scale that fundamentally change underlying causes. Homelessness is the result of historical, well-documented, systemic policy failures that disproportionately impact people of color, especially Black people, and those with access and functional needs. As the court looks to confront those long-standing injustices, we advocate for permanent solutions that are resourced to scale and designed for the very people they aim to help. That is why **UWGLA is pushing our state partners to create dedicated annual funding for homeless solutions and establish a single countywide housing solutions agency that can dramatically increase housing and services for extremely low-income people.**

Ending homelessness in L.A. County requires a collective impact approach at the local, state, and federal levels. When we choose to invest in and rapidly scale immediate solutions that meet the moment, we must do so in a way that maintains our commitment to what will best serve unhoused residents in the long run: permanent, affordable housing and supportive services. The COVID-19 pandemic has underscored where we've failed, but it has also highlighted where we can succeed with greater state and federal support. The court has added another venue to confront these challenges and address a broken status quo. Elected officials, policymakers, service providers, and others are responding to this call for a new path forward.

Thank you for using your empathy and jurisprudence for good, for your continued engagement, your push for timely resources and equity, and your partnership in the fight to end homelessness. We hope for a swift resolution to this case and a brighter future for Los Angeles. In the meantime, we are always available to discuss our perspective on these important issues.

Sincerely,

*Elise C. Buik*

*About the United Way of Greater Los Angeles: The United Way of Greater Los Angeles has spent over a decade focusing on ending the housing and homelessness crisis. In 2010, we launched Home For Good -- a collective impact initiative that develops, funds, and scales equitable and effective solutions to end homelessness in L.A. County. In 2018, we launched the Everyone In campaign -- a grassroots education, engagement, and activation campaign with more than 190,000 supporters. Through these two multi-sector initiatives, we have invested our time, political capital, and philanthropic resources into solutions that scale, and we've witnessed the challenges of our unhoused neighbors and those working tirelessly to rehouse them.*

---

[7] *LAHSA's Role in Los Angeles' Homelessness Response in LA Alliance for Human Rights et al. v. City of Los Angeles et al.*, Case 2:20-cv-02291-DOC-KES Document 248-1 Filed 03/05/21 Page 2 of 16 Page ID#:4398 Exh. A, Page 4.