RODRIGO A. CASTRO-SILVA (SBN 185251), *County Counsel*
rcastro-silva@counsel.lacounty.gov
LAUREN M. BLACK (SBN 192302), *Assistant County Counsel*
AMIE S. PARK (SBN 273346), *Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone:   (213) 974-1830
Facsimile:   (213) 626-7446

BYRON J. MCLAIN (SBN 257191)
bmclain@foley.com
FOLEY & LARDNER, LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:   (310) 972-4500
Facsimile:   (213) 486-0065

LOUIS R. MILLER (SBN 54141)
smiller@millerbarondess.com
MIRA HASHMALL (SBN 216842)
EMILY A. RODRIGUEZ-SANCHIRICO (SBN 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | **CASE NO. 2:20-cv-02291 DOC-KES** <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS** <br><br> Hearing Date: May 10, 2021 <br> Time: 8:30 a.m. <br> Location: Courtroom 9D <br><br> Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ......................................................................................... 9

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................... 9

    A.  The Plaintiffs ................................................................................... 9

    B.  The Allegations ............................................................................ 10

    C.  The County's Efforts To Combat Homelessness ......................... 11

    D.  The County Made Significant Progress In 2020 .......................... 12

    E.  County Services ............................................................................ 14

III.  LEGAL STANDARD ................................................................................ 14

IV.  THERE IS NO JUSTICIABLE CASE OR CONTROVERSY BETWEEN PLAINTIFFS AND THE COUNTY ........................................... 15

    A.  Plaintiffs' Alleged Injuries Are Not Fairly Traceable To The County .......................................................................................... 16

    B.  This Court Cannot Award Plaintiffs' Requested Injunctive Relief ...... 18

    C.  Plaintiffs Also Lack Standing As A Prudential Matter ................. 21

V.  PLAINTIFFS HAVE NO VIABLE CLAIMS AGAINST THE COUNTY ...................................................................................................... 22

    A.  Plaintiffs Have Not Stated A Claim Under 42 U.S.C. Section 1983 ............................................................................................ 22

        1.  Plaintiffs Have Not Stated a Substantive Due Process Claim ................................................................................. 22

        2.  Plaintiffs Have Not Alleged an Equal Protection Violation ....... 24

        3.  The State-Created Danger Doctrine Does Not Apply ............... 25

        4.  The County Has No Unlawful Policy, Custom or Practice ........ 27

    B.  Plaintiffs Have Not Stated A Claim Under California Law ................. 28

        1.  The Statutory Claims Are Not Cognizable ................................ 28

        2.  The California Tort Claims Fail ................................................. 31

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

VI.   CONCLUSION ............................................................................................. 33

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Albright v. Oliver*,
510 U.S. 266 (1994) ......................................................................22

*Allen v. Wright*,
468 U.S. 737 (1984) ......................................................................21

*Americopters, LLC v. F.A.A.*,
441 F.3d 726 (9th Cir. 2006) .......................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................15, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................15

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) .....................................................14

*City of Los Angeles v. County of Kern*,
581 F.3d 841 (9th Cir. 2009) .......................................................21

*Collins v. City of Harker Heights, Tex.*,
503 U.S. 115 (1992) ......................................................................27

*Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*,
847 F.2d 593 (9th Cir. 1988) .......................................................24

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ..........................................................22, 23, 24

*Culinary Studios, Inc. v. Newsom*,
2021 WL 427115 (E.D. Cal. Feb. 8, 2021) ................................24

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ...............................................................14, 15

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) .......................................................28

*Freeman v. City of Santa Ana*,
68 F.3d 1180 (9th Cir. 1995) .......................................................24

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

*Halverson v. Skagit County*,
    42 F.3d 1257 (9th Cir. 1994)........................................................................23

*Hodel v. Indiana*,
    452 U.S. 314 (1981) ...................................................................................25

*Horne v. Flores*,
    557 U.S. 433 (2009) .............................................................................20, 21

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ...................................................................................26

*In re Tourism Assessment Fee Litig.*,
    2009 WL 10185458 (S.D. Cal. Feb. 19, 2009) ..........................................24

*Kawaoka v. City of Arroyo Grande*,
    17 F.3d 1227 (9th Cir. 1994)......................................................................23

*Kennedy v. City of Ridgefield*,
    439 F.3d 1055 (9th Cir. 2006)....................................................................25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ...................................................................................14

*L.W. v. Grubbs*,
    974 F.2d 119 (9th Cir. 1992)......................................................................25

*Lewis v. Casey*,
    518 U.S. 343 (1996) .............................................................................20, 21

*Linda R.S. v. Richard D.*,
    410 U.S. 614 (1973) ...................................................................................17

*Missouri v. Jenkins*,
    515 U.S. 70 (1995) .....................................................................................21

*Monell v. Dep't of Soc. Servs. of City of New York*,
    436 U.S. 658 (1978) .............................................................................26, 27

*Native Village of Kivalina v. ExxonMobil Corp.*,
    696 F.3d 849 (9th Cir. 2012)................................................................16, 18

*Patel v. Kent Sch. Dist.*,
    648 F.3d 965 (9th Cir. 2011)......................................................................26

*Pauluk v. Savage*,
    836 F.3d 1117 (9th Cir. 2016)....................................................................26

*Raines v. Byrd*,
    521 U.S. 811 (1997) ...................................................................................15

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Rizzo v. Goode,*
    423 U.S. 362 (1976) .................................................................. 19, 21

*Simon v. E. Ky. Welfare Rights Org.,*
    426 U.S. 26 (1976) .......................................................................... 18

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) ........................................................................... 16

*Taylor v. List,*
    880 F.2d 1040 (9th Cir. 1989) .................................................... 23, 24

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,*
    610 F.3d 1171 (9th Cir. 2010) .......................................................... 12

*Trevino v. Gates,*
    99 F.3d 911 (9th Cir. 1996) ............................................................... 28

*United States v. Lazarenko,*
    476 F.3d 642 (9th Cir. 2007) ............................................................ 21

*Village of Euclid, Ohio v. Ambler Realty Co.,*
    272 U.S. 365 (1926) .......................................................................... 22

*Warth v. Seldin,*
    422 U.S. 490 (1975) ........................................................ 17, 18, 21, 26

*Wash. Envtl. Council v. Bellon,*
    732 F.3d 1131 (9th Cir. 2013) .......................................................... 16

*Wayte v. United States,*
    470 U.S. 598 (1985) .................................................................... 24, 25

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.,*
    24 F.3d 56 (9th Cir. 1994) ................................................................. 22

## **STATE CASES**

*Caldwell v. Montoya,*
    10 Cal. 4th 972 (1995) ...................................................................... 32

*City of Dublin v. County of Alameda,*
    14 Cal. App. 4th 264 (1993) ............................................................. 17

*County of San Diego v. State,*
    15 Cal. 4th 68 (1997) ........................................................................ 29

*Cty. Sanitation Dist. No. 2 v. County of Kern,*
    127 Cal. App. 4th 1544 (2005) ......................................................... 17

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION
TO DISMISS

*El Escorial Owners' Ass'n v. DLC Plastering, Inc.*,
    154 Cal. App. 4th 1337 (2007)......................................................................33

*Freeny v. City of San Buenaventura*,
    216 Cal. App. 4th 1333 (2013)......................................................................32

*Haggis v. City of Los Angeles*,
    22 Cal. 4th 490 (2000)..................................................................................29

*Herzberg v. County of Plumas*,
    133 Cal. App. 4th 1 (2005)...........................................................................30

*Hunt v. Superior Court*,
    21 Cal. 4th 984 (1999)..................................................................................29

*Lyons v. Santa Barbara Cty. Sheriff's Office*,
    231 Cal. App. 4th 1499 (2014)......................................................................30

*Melton v. Boustred*,
    183 Cal. App. 4th 521 (2010)........................................................................33

*Richards v. Dep't of Alcoholic Beverages Control*,
    139 Cal. App. 4th 304 (2006)........................................................................32

*Richeson v. Helal*,
    158 Cal. App. 4th 268 (2007)........................................................................17

*San Mateo Union High Sch. Dist. v. County of San Mateo*,
    213 Cal. App. 4th 418 (2013)........................................................................32

*Scates v. Rydingsword*,
    229 Cal. App. 3d 1085 (1991)..................................................................28, 30

*Searcy v. Hemet Unified Sch. Dist.*,
    177 Cal. App. 3d 792 (1986).........................................................................31

*Steiner v. Superior Court*,
    50 Cal. App. 4th 1771 (1996)........................................................................30

*Sundance v. Mun. Court*,
    42 Cal. 3d 1101 (1986)..................................................................................31

*Tailfeather v. Bd. of Supervisors*,
    48 Cal. App. 4th 1223 (1996)..................................................................29, 30

*Tarasoff v. Regents of Univ. of Cal.*,
    17 Cal. 3d 425 (1976)....................................................................................32

*Watkins v. County of Alameda*,
    177 Cal. App. 4th 320 (2009)........................................................................29

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

## FEDERAL STATUTES

28 U.S.C. § 1367(c) ..................................................................................................28

42 U.S.C. § 1983 ................................................................................................passim

## STATE STATUTES

Cal. Civ. Proc. Code § 526a ....................................................................................30

Cal. Gov't Code § 815.2 ..........................................................................................32

Cal. Gov't Code § 815.6 ..........................................................................................28

Cal. Gov't Code § 820.2 ..........................................................................................32

Cal. Welf. & Inst. Code § 17000 ..............................................................28, 29, 30

Cal. Welf. & Inst. Code § 17001 ............................................................................29

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(1) ..........................................................................................14

Fed. R. Civ. P. 12(b)(6) ..........................................................................................15

## OTHER AUTHORITIES

9th Cir. Model Civ. Jury Instr. 9.5 (2017 ed.) ........................................................27

Cal. Const. art. XI, § 5(b) ........................................................................................17

Cal. Const. art. XI, §§ 5(a), 7 ..................................................................................17

L.A.M.C. § 41.18(d) ................................................................................................16

L.A.M.C. § 56.11 .....................................................................................................16

U.S. Const. art. III ............................................................................................15, 18

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## I.    <u>INTRODUCTION</u>

The County of Los Angeles ("County") is committed to addressing the homelessness crisis and is undertaking tremendous efforts to support people experiencing homelessness ("PEH").  Plaintiffs acknowledge the County has made substantial efforts to combat homelessness and that such efforts are "impressive and commendable."  The County spends hundreds of millions of dollars each year on PEH and has stepped up its efforts in recent years.  With funding from voter-approved Measure H, the County developed and funded the Homeless Initiative, which has 47 Strategies recommended by experts, academics, public interest groups, homeless advocates and other stakeholders.  The COVID-19 pandemic presented new challenges, which the County met with innovative strategies such as Project Roomkey.

While the County shares Plaintiffs' goal of providing shelter to all PEH, their lawsuit is not the proper forum.  The Complaint alleges 14 causes of action, nine against the County, to support the core relief Plaintiffs seek—a broad and unmanageable federal court injunction.  There is simply no precedent under federal or state law to support such a remedy.  Complex policy questions about how to address homelessness must be resolved by the County's elected governing body, the Board of Supervisors.  This lawsuit seeks to intrude upon the County's legislative process based on untenable legal theories.

## II.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

### A.    <u>The Plaintiffs</u>

The LA Alliance for Human Rights ("LA Alliance") is an unincorporated association of members working to address the homeless crisis.  (Compl. ¶ 76.)  Each of its members is a resident of the City of Los Angeles.  (*Id.*)  None of the plaintiffs are currently homeless.

All eight of the individual Plaintiffs are members of LA Alliance.  (*Id.*)  Seven of the individual Plaintiffs live, work and/or own property in Skid Row.  (*Id.*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

¶¶ 77-106, 112-22.)  The only Plaintiff not in Skid Row is George Frem (*id.* ¶¶ 108-11), who owns an auto-repair shop in Mar Vista that is near a homeless encampment underneath the 405 freeway.  (*Id.* ¶ 108.)  All Plaintiffs are located in the City of Los Angeles.

### B.   The Allegations

The Complaint acknowledges that the "City and the County combined spend over a billion dollars annually providing police, emergency, and support services to those living on the streets."  (Compl. ¶ 2.)  Plaintiffs recognize that "[o]fficials in both the County and City have gone to great lengths in the last couple years to address this crisis" and avers that these efforts are "impressive and commendable."  (*Id.* ¶ 18; *id.* ¶ 74 ("Plaintiffs do not suggest the City and County are doing nothing; the amount of effort and resources that have been devoted to addressing this issue is considerable and admirable.").)

Nevertheless, the Complaint alleges that the City of Los Angeles ("City") is responsible for the recent growth of homeless encampments in Skid Row.  The Complaint alleges that, as a result of settlements and court orders in civil litigation, the City has not been able to fully enforce its anti-vagrancy laws.  (*E.g.*, *id.* ¶¶ 47-48.)  The most significant court order, according to Plaintiffs, is the recent decision by the Ninth Circuit in *Martin v. City of Boise*.  (*Id.* ¶ 47.)  Plaintiffs allege that the Ninth Circuit held in *Martin* that municipal governments cannot enforce anti-vagrancy laws to evict the homeless unless there are a sufficient number of beds within that jurisdiction to house every single homeless person.  (*Id.*)  Plaintiffs allege that this decision prevents the City from evicting the homeless from Skid Row because there are not enough homeless shelters in the City to house all PEH.

The Complaint claims that the City has sufficient funds to build enough shelters.  Plaintiffs allege that Proposition HHH will raise $1.2 billion over the next 10 years and that those funds would be sufficient if utilized efficiently and according to Plaintiffs' housing recommendations.  (*Id.* ¶ 61.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

As to the County, Plaintiffs do not allege the County is responsible for the recent growth in homeless encampments.  Rather, Plaintiffs claim that the County is liable because it could help the City build enough homeless shelters so that the City's enforcement of anti-vagrancy laws can resume.  To support this, Plaintiffs allege the County has sufficient funds within its general fund and in sales tax revenue raised from Measure H to build enough homeless shelters to house all PEH within Los Angeles County.  Plaintiffs also allege there is approximately $1 billion in tax revenue collected pursuant to the Mental Health Services Act ("MHSA") that could be used to increase the number of beds available to PEH at mental health facilities.  (*Id.* ¶ 66.)  Plaintiffs further claim there are emergency funds available that have not been utilized.  (*Id.* ¶ 67.)

**C.     The County's Efforts To Combat Homelessness**

As set forth in the accompanying Request for Judicial Notice ("RJN"), Plaintiffs' admissions as to the "impressive and commendable" efforts by the County are well-supported by the public record.  As a recent quarterly report from the County Chief Executive Office ("CEO") states, since July 2017:

- 19,767 PEH have been permanently housed through Measure H strategies;
- 39,218 PEH have been placed in interim housing;
- Public Housing Authorities throughout the County have provided $2,288,145 in incentives to landlords to help house 1,139 formerly homeless individuals and families with housing vouchers; and
- Countywide Benefits Entitlement Services Teams have helped 3,486 disabled individuals apply for SSI and/or Veterans Disability Benefits.  [Declaration of Mira Hashmall ("Hashmall Decl.") Ex. 2; *see also* Ex. 18.]

As to Measure H funds, Plaintiffs acknowledge that the County spends hundreds of millions of dollars each year to serve PEH.  (Compl. ¶¶ 66-67.)  The County allocates voter-approved Measure H funds, which is codified in the County Code, to execute the strategies set forth in the Homeless Initiative.  [Hashmall Decl. Ex. 4.]  The Homeless Initiative contains 47 Strategies to combat homelessness that

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   were developed after conducting 18 policy summits involving 25 County

2   departments, 30 cities and other public agencies, and over 100 community

3   stakeholders.  [Hashmall Decl. Ex. 1.]  A Citizens' Oversight Advisory Board

4   reviews all expenditures from the special sales tax.  [Hashmall Decl. Ex. 5, p. 6.]

5   The audits are publicly available.[1]  Thus, Plaintiffs' allegation that the County is not

6   effectively utilizing Measure H funds is entirely conclusory.[2]

7        As to MHSA funds, Plaintiffs claim there are $1 billion in available funds, but

8   that too is contradicted by the public record.  The County's MHSA funds are

9   allocated according to a three-year expenditure plan approved by the State.  The

10  California Department of Health Services and the MHSA Oversight and

11  Accountability Commission review and approve each county's three-year program

12  and expenditure plan.  [ECF No. 197.]  This process is subject to State monitoring

13  and supervision.  [*Id.*]  MHSA spending must comply with a detailed regulatory

14  scheme, including strict state guidelines regarding the eligible service population

15  and the eligible services and programs.  [*Id.*]  There is no support for Plaintiffs'

16  conclusory allegations.

**D.   The County Made Significant Progress In 2020**

17

18       As Plaintiffs seek injunctive relief, it is important to evaluate that claim based

19  on the *current* record.  *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d

20  1171, 1182 (9th Cir. 2010) (injunctions do not punish "past conduct").  Since the

21  creation of the Homeless Initiative and passage of Measure H, the County has

22  accelerated its work to improve the lives of PEH in the region.

23       In March 2020, the County facilitated Project Roomkey and a quarantine and

24  isolation program to house an especially vulnerable subset of the homeless

25

26  [1] https://homeless.lacounty.gov/oversight/

27  [2] Plaintiffs allege the County does not spend all of Measure H revenue each year,

28  but it is undisputed that excess funds *roll over* to next year's budget.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

population in hotel and motel rooms where they could isolate and practice social distancing to reduce the likelihood of contracting and spreading COVID-19.  To date, the County has housed close to 4,000 PEH in hotels and motels.  [Hashmall Decl. Ex. 6, p. 12.]

The County is also developing post-pandemic housing plans for PEH.  On April 14, 2020, the Board directed CEO to develop a program to provide long-term housing options and services to PEH who are aged 65 years or older, including those who were provided temporary emergency housing.  [Hashmall Decl. Exs. 11-12.] On May 12, 2020, the Board directed the Los Angeles Homeless Services Authority ("LAHSA") to work with partner agencies to develop a post-COVID-19 recovery plan for homelessness.  [Hashmall Decl. Ex. 13.]

On June 23, 2020, LAHSA submitted its COVID-19 Recovery Plan to the Board.  The Recovery Plan requires the participation of both the County and the City, and encompasses the entire region.  It proposes using bridge housing, rental subsidies and rehousing services to provide permanent housing placements and long-term housing stability for thousands of the County's PEH.  [Hashmall Decl. Ex. 9, p. 3.]

The County also works closely with the City to address homelessness.  In June 2020, the County and the City reached an agreement to provide 6,700 beds within 18 months to house or shelter (i) PEH living within 500 feet of freeway overpasses, underpasses, and ramps in the City, and to give priority to providing housing or shelter to (ii) PEH 65+ and (iii) other vulnerable PEH within the City. [ECF Dkt. No. 136.]  As part of the agreement, the County committed to investing $293 million over the next five years to assist in funding services for 6,000 of these beds.  [*Id*.]  The County had no legal obligation to do so.

Alongside these efforts, the County dedicates resources to the Preventing and Ending Homelessness Program, which provides legal services and advocacy for PEH, and the Problem-Solving Program, which trains staff at key points of inflow

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

into the homeless service system on how to prevent or rapidly resolve a person's homelessness through empowerment techniques and flexible financial assistance. [Hashmall Decl. Ex. 2, p. 20.]

There is no simple solution to this complex problem.  Combatting homelessness is, and will continue to be, a community-wide undertaking.  The County is working hard, achieving meaningful results, and remains ready and willing to work collaboratively to continue in its efforts to address homelessness. This lawsuit, however, is not the solution—legally or factually.

### E.    County Services

Through 11 different County departments—Children and Family Services, Health Services, Mental Health, Public Health, Public Social Services, LAHSA, Development Authority, Sheriff's Department, Probation, Public Defender and Workforce Development, Aging and Community Services—the County provides an extensive array of services to PEH.  They are provided to PEH and others throughout the County and are summarized in the accompanying RJN.  [Hashmall Decl. Ex. 17.]

## III.    LEGAL STANDARD

On a Rule 12(b)(1) motion, the federal court must presume that it lacks jurisdiction and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (the party asserting federal jurisdiction has the burden of establishing it).  Because standing pertains to the court's subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  In ruling on a challenge to subject matter jurisdiction, "the district court is not confined by the facts contained in the four corners of the complaint—it may consider facts and need *not* assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

On a motion to dismiss under Rule 12(b)(6), plaintiffs must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must disregard "legal conclusions" and "conclusory statements" and scrutinize the well-pleaded factual allegations to ensure that they are more than "'merely consistent with' a defendant's liability." *Id.* at 678-79 (citation omitted).

## IV.   THERE IS NO JUSTICIABLE CASE OR CONTROVERSY BETWEEN PLAINTIFFS AND THE COUNTY

No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *DaimlerChrysler Corp.*, 547 U.S. at 342.

Article III standing is a critical issue when a federal lawsuit is brought by taxpayers challenging discretionary spending by a municipality on issues that impact the general welfare of its residents. *DaimlerChrysler Corp.*, 547 U.S. at 346 (holding that generally "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers").  As the Supreme Court explained:  "because state budgets frequently contain an array of tax and spending provisions, any number of which may be challenged on a variety of bases, affording state taxpayers standing to press such challenges simply because their tax burden gives them an interest in the state treasury would interpose the federal courts as "'virtually continuing monitors of the wisdom and soundness'" of state fiscal administration, contrary to the more modest role Article III envisions for federal courts." *Id.* (citation omitted).

Thus, generalized grievances about local government are not viable.  To have Article III standing, a plaintiff must establish (1) that he or she suffered an "injury in

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

fact" (2) that is fairly traceable to the alleged conduct of the defendant and (3) that can be redressed by a federal court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-03 (1998) (citation omitted).  Here, Plaintiffs lack standing to sue the County.

### A.   Plaintiffs' Alleged Injuries Are Not Fairly Traceable To The County

To show causation, Plaintiffs must show that their injuries are "fairly traceable" to the County's alleged misconduct. *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (citation omitted).  The line of causation must be "more than 'attenuated.'" *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (Pro, J., concurring) (citation omitted).  Where the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, the causal chain is too weak to support standing. *Id.*

Plaintiffs allege that their lives and businesses have been impacted by the growth of the homeless population in Skid Row.  Plaintiffs do not allege—nor could they—that the County is responsible.  Rather, Plaintiffs allege that the recent population growth was caused by *the City* and by recent *federal court orders* in litigation involving the City:

(1)   an implicit bargain between the City and real estate developers in the 1970s to send "undesirable population elements" to Skid Row;

(2)   the City's settlement in *Jones* in 2006 in which the City agreed not to enforce L.A.M.C. § 41.18(d) between the hours of 9 p.m. and 6 a.m.;

(3)   the injunction affirmed by the Ninth Circuit in *Lavan* in 2011 that limited the City's ability to fully enforce L.A.M.C. § 56.11;

(4)   the City's settlement in *Mitchell* after a federal court issued an injunction limiting the enforcement of L.A.M.C. § 56.11; and

(5)   the Ninth Circuit's decision in *Martin*, which limits a municipal

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

government's ability to arrest homeless individuals for vagrancy.

(Compl. ¶¶ 25-32.)  The County is *not* linked to *any* of these alleged causes.

Skid Row is within the incorporated territory of the City of Los Angeles.  The City has authority over, and responsibility for, municipal affairs within its borders.  Cal. Const. art. XI, § 5(b); *Richeson v. Helal*, 158 Cal. App. 4th 268, 277 (2007) ("The state Constitution gives California cities broad and flexible power to promote the public welfare.").  Under the powers granted to it by the California Constitution and its charter, the City is responsible for the general safety and welfare of its residents within its territory.  Cal. Const. art. XI, §§ 5(a), 7.

The County's authority, meanwhile, is only in the *unincorporated* areas of the County.  *City of Dublin v. County of Alameda*, 14 Cal. App. 4th 264, 274-75 (1993) ("[T]he California Constitution specifies that the police power bestowed upon a county may be exercised 'within its limits,' i.e., only in the unincorporated area of the county." (citation omitted)); *Cty. Sanitation Dist. No. 2 v. County of Kern*, 127 Cal. App. 4th 1544, 1612 (2005) (cities "are necessarily outside the jurisdiction and authority of County; County's authority extends only to the unincorporated areas").

Plaintiffs have failed to allege causality between their alleged injuries (caused by PEH in Skid Row) and the County.  *See Warth v. Seldin*, 422 U.S. 490 (1975) (taxpayers lacked standing to challenge zoning regulations as the link between their increased tax burden to fund low-income housing in their own town was not sufficiently linked to the alleged failure to support low-income housing in a neighboring town); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-18 (1973) (plaintiff lacked standing to challenge district attorney's failure to prosecute fathers for delinquent child support because the link between unpaid support and prosecutorial discretion was too attenuated).

Plaintiffs' theory against the County can be distilled in the following hypothetical:  *If* the County had made better use of its funds, it could have constructed additional homeless shelters, then there would be enough homeless

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  shelters such that, *if* the City enforced its anti-vagrancy laws, the encampments in
2  Skid Row would be eliminated and then Plaintiffs could return to the full use and
3  enjoyment of their property. This theory, however, is too attenuated to support
4  standing. *Warth*, 422 U.S. at 509 (pleadings must be something more than an
5  ingenious academic exercise in the conceivable).

6        This theory is also speculative. *Simon v. E. Ky. Welfare Rights Org.*, 426
7  U.S. 26, 42-44 (1976) (standing cannot rest on speculation). Even if the Court
8  assumes that the County and the City can achieve their goal of ensuring that every
9  PEH has an available bed, which Plaintiffs concede "will not be easy" (Compl.
10  ¶ 32), Plaintiffs' theory assumes that the City could *successfully* enforce its anti-
11  vagrancy laws. This assumption is belied by Plaintiffs' citation to numerous
12  examples of lawsuits filed against the City and other municipalities in response to
13  local enforcement of anti-vagrancy laws. Those lawsuits blocked the very same
14  type of enforcement that Plaintiffs want in Skid Row, and led to further restrictions
15  that, according to Plaintiffs, resulted in the very harm that they seek remedies for in
16  this action.

17        Thus, this Court would have to assume that there will be favorable results in
18  hypothetical, future enforcement actions, *and* that there will be favorable results in
19  subsequent lawsuits filed in response to those hypothetical, future enforcement
20  actions. Article III standing is lacking here. *Native Village of Kivalina*, 696 F.3d at
21  867.

22        **B.**    **This Court Cannot Award Plaintiffs' Requested Injunctive Relief**

23        Even if Plaintiffs could trace their injuries to the County, there is still the
24  problem of redressability. The Complaint fairly interpreted seeks a federal court
25  injunction requiring the County and the City to spend hundreds of millions of
26  dollars of taxpayer funds in a specific manner to create enough housing for PEH.
27  (*See, e.g.*, Compl. ¶ 32 ("[I]t is clear the *only way* out of the current crisis is to
28  provide beds to the unsheltered." (emphasis added)).) The Supreme Court has

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

18

1   repeatedly cautioned federal trial courts against issuing injunctions that interfere

2   with matters of state and local government discretion.

3        Going back almost 50 years, the Supreme Court rejected this type of

4   interference with matters of local policy.  In *Rizzo v. Goode*, 423 U.S. 362 (1976),

5   plaintiffs filed a class action against the City of Philadelphia and local officials

6   alleging police mistreatment of minority citizens and other city residents.  Plaintiffs

7   sought equitable relief, including appointment of a receiver to supervise the police

8   department and civilian review of police activity.  The district court found that

9   police procedures discouraged the filing of civilian complaints and minimized the

10  consequences of police misconduct.  *Id*. at 368-69.  The court ordered the city to

11  submit "a comprehensive program for dealing adequately with civilian complaints,"

12  in accordance with comprehensive court-ordered "guidelines."  *Id*. at 369.

13       The proposed program, which was developed to comply with the court's

14  order, was incorporated into a final judgment.  423 U.S. at 365.  Among other

15  things, the police commissioner was required to implement a directive governing the

16  manner in which citizens' complaints against police officers should be handled.  *Id*.

17  The Court of Appeals affirmed, holding that the equitable relief ordered "appeared

18  to have the potential for prevention of future police misconduct."  *Id*. at 365-66.

19       The Supreme Court reversed, holding that the judgment was "an unwarranted

20  intrusion by the federal judiciary into the discretionary authority committed to [the

21  city officials] by state and local law to perform their official functions."  423 U.S. at

22  366.  "[F]ederal courts must be constantly mindful of the 'special delicacy of the

23  adjustment to be preserved between federal equitable power and State

24  administration of its own law.'"  *Id*. at 378 (citation omitted).  Thus, a plaintiff

25  seeking to enjoin a government agency "must contend with 'the well-established

26  rule that the Government has traditionally been granted the widest latitude in the

27  "dispatch of its own internal affairs."'"  *Id*. at 378-79 (citations omitted).

28       Twenty years later, the Supreme Court reaffirmed the limited scope of federal

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

1   equity power in *Lewis v. Casey*, 518 U.S. 343 (1996).  There, prison inmates sued

2   the Arizona Department of Corrections for alleged violations of their right of access

3   to the courts.  A special master proposed a permanent injunction with changes to the

4   Arizona state prison system, which the court adopted.  *Id.* at 346-47.

5       The Supreme Court held that the district court's actions violated separation of

6   powers, explaining that "it is not the role of courts, but that of the political branches,

7   to shape the institutions of government in such fashion as to comply with the laws

8   and the Constitution."  518 U.S. at 349.  As aptly put in the concurring opinion:

> Principles of federalism and separation of powers impose stringent
> limitations on the equitable power of federal courts. When these
> principles are accorded their proper respect, Article III cannot be
> understood to authorize the Federal Judiciary to take control of core
> state institutions like prisons, schools, and hospitals, and assume
> responsibility for making the difficult policy judgments that state
> officials are both constitutionally entitled and uniquely qualified to
> make.  Broad remedial decrees strip state administrators of their
> authority to set long-term goals for the institutions they manage and of
> the flexibility necessary to make reasonable judgments on short notice
> under difficult circumstances.

17  *Id*. at 385 (Thomas, J., concurring) (citation omitted).

18      In *Horne v. Flores*, 557 U.S. 433 (2009), English Language–Learner ("ELL")

19  students and their parents filed a class action alleging that Arizona was violating the

20  Equal Educational Opportunities Act by failing to take appropriate action to

21  overcome language barriers.  The district court issued an injunction requiring the

22  state to increase funding for ELL programs, held the State in civil contempt for

23  failing to do so, and rejected the State's proposed legislation as inadequate.

24  Arizona's Superintendent of Public Instruction and Arizona legislators intervened,

25  moved to purge the contempt order, and sought relief from the injunction.  The

26  district court denied the requests, and the Court of Appeals affirmed.

27      The Supreme Court reversed, cautioning against federal court decrees that

28  have the effect of dictating state or local budget priorities because "[s]tates and local

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

1  governments have limited funds."  557 U.S. at 448 (citing *Missouri v. Jenkins*, 515

2  U.S. 70, 131 (1995) ("A structural reform decree eviscerates a State's discretionary

3  authority over its own program and budgets and forces state officials to reallocate

4  state resources and funds.")).  It held that the lower court "improperly substituted its

5  own educational and budgetary policy judgments for those of the state and local

6  officials to whom such decisions are properly entrusted."  *Id.* at 455.

7       Here, Plaintiffs are asking the Court to issue injunctive relief in contravention

8  of the principles established in *Rizzo*, *Lewis*, and *Horne*.  Plaintiffs want this Court

9  to dictate how the County addresses homelessness, how the County allocates its

10  financial and human resources, and how the County prioritizes housing for PEH.

11  The Court may not substitute its own policy judgments for those of elected County

12  officials and usurp the County's discretionary authority to "dispatch . . . its own

13  internal affairs.'"  *Rizzo*, 423 U.S. at 379.

14  **C.**    **Plaintiffs Also Lack Standing As A Prudential Matter**

15       There exists a body of "judicially self-imposed limits on the exercise of

16  federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 751 (1984), "founded in

17  concern about the proper—and properly limited—role of the courts in a democratic

18  society," *Warth*, 422 U.S. at 498.  These concerns are commonly referred to as

19  "prudential" standing.  *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845

20  (9th Cir. 2009).  "Prudential standing encompasses 'the general prohibition on a

21  litigant's raising another person's legal rights, the rule barring adjudication of

22  generalized grievances more appropriately addressed in representative branches, and

23  the requirement that a plaintiff's complaint fall within the zone of interests protected

24  by the law invoked.'"  *United States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir.

25  2007) (quoting *Allen*, 468 U.S. at 751).

26       Here, Plaintiffs are asserting generalized grievances that are not redressible in

27  the courts.  476 F.3d at 649-50.  Thus, Plaintiffs also lack standing as a "prudential"

28  matter.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

21

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

1

## V.   PLAINTIFFS HAVE NO VIABLE CLAIMS AGAINST THE COUNTY

2

### A.   Plaintiffs Have Not Stated A Claim Under 42 U.S.C. Section 1983

3       In their Eleventh, Twelfth and Fourteenth Causes of Action, Plaintiffs allege

4   the County violated section 1983 by (1) infringing Plaintiffs' substantive due

5   process rights, (2) denying Plaintiffs equal protection under the law, and

6   (3) violating the state-created danger doctrine.

7               **1.   Plaintiffs Have Not Stated a Substantive Due Process Claim**

8       A threshold requirement of a substantive due process claim "is the plaintiff's

9   showing of a liberty or property interest protected by the Constitution."

10  *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994).

11  Substantive due process usually applies to matters relating to marriage, family,

12  procreation, and the right to bodily integrity.  *Albright v. Oliver*, 510 U.S. 266, 272

13  (1994).

14      A substantive due process claim that does not involve fundamental rights

15  requires proof that the government's conduct was "clearly arbitrary and

16  unreasonable, having no substantial relation to the public health, safety, morals, or

17  general welfare."  *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395

18  (1926); *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998) (substantive

19  due process prohibits the arbitrary deprivation of individuals' liberty by

20  government).

21      Here, Plaintiffs do not contend the County violated their fundamental rights.

22  In fact, Plaintiffs do not even specify what constitutional rights underlie their claim.

23  (*See* Compl. ¶¶ 185-86.)  At best, Plaintiffs allege that they suffered economic

24  harms, such as lost business, increased costs and lost property value, as a result of

25  encampments in Skid Row.  (*Id.*)  As these are not fundamental rights, Plaintiffs'

26  theory is necessarily limited to a claim that the County violated their rights through

27  arbitrary action.  *County of Sacramento*, 523 U.S. at 845-49; *Village of Euclid*, 272

28  U.S. at 395.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

Plaintiffs "shoulder a heavy burden." *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1994). They must allege that the County "*could* have had no legitimate reason for its decision." *Id.* (citing *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994)). If the County's conduct was rationally related to a legitimate governmental interest, there is no due process violation. *Id.*

Plaintiffs have not alleged that the County acted irrationally or arbitrarily. Rather, the Complaint attacks decisions made *by the City* in response to federal court cases in which the County was not a party. (Compl. ¶ 186 (alleging that the City "had no rational basis" for entering into a settlement in the *Mitchell* case and for relying on that settlement to not enforce anti-vagrancy laws in Skid Row).) Plaintiffs cannot sue the County based on alleged irrational conduct by the City. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").

Plaintiffs must also demonstrate that the County's conduct "shocks the conscience." *County of Sacramento*, 523 U.S. at 846. This requires a showing that the County acted with an intent to injure. *Id.* at 849. Plaintiffs do not and cannot meet that burden. At best, Plaintiffs allege that the County spent taxpayer funds ineffectively, but this theory has been rejected by the Supreme Court. *Id.* at 848-49 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Plaintiffs admit the County's efforts have been commendable in responding to the homelessness crisis. (Compl. ¶ 2 ("The City and the County combined spend over a billion dollars annually providing police, emergency, and support services to those living on the streets."); *id*. ¶ 18 (the County has "gone to great lengths in the last couple years to address this crisis"); *id*. ¶ 73 ("[T]he City and County have made efforts to address this crisis . . ."); *id*. ¶ 74 ("[T]he amount of effort and resources that have been devoted to addressing this issue is considerable and admirable.").) These admissions foreclose liability. *County of Sacramento*, 523

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   U.S. at 845-49.

2   **2.** **Plaintiffs Have Not Alleged an Equal Protection Violation**

3   "The first step in equal protection analysis is to identify the [defendants']

4   classification of groups." *Country Classic Dairies, Inc. v. State of Montana, Dep't*

5   *of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). This is

6   because a plaintiff must "show that the law is applied in a discriminatory manner."

7   *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). The next step is

8   to "determine the level of scrutiny." *Country Classic Dairies*, 847 F.2d at 596.

9   Plaintiffs allege that the County violated equal protection by "enforcing the

10   law in some areas and declining to enforce the law in others," which allowed some

11   homeless encampments to persist. (Compl. ¶¶ 185-86.) This theory fails.

12   First, there is no allegation that *the County* engaged in any enforcement.

13   *Taylor*, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing

14   of personal participation by the defendant."). The Complaint only alleges that *the*

15   *City* failed to enforce its own anti-vagrancy laws in Skid Row. (Compl. ¶ 30.) The

16   County does not enforce the City's anti-vagrancy laws, including within Skid Row.

17   Second, Plaintiffs do not allege discrimination against a suspect class. *Wayte*

18   *v. United States*, 470 U.S. 598, 608 (1985) ("It is appropriate to judge selective

19   prosecution claims according to ordinary equal protection standards."). Plaintiffs

20   complain that homeless encampments are permitted to remain in certain places in

21   Los Angeles. But physical location is not a suspect classification. *Culinary Studios,*

22   *Inc. v. Newsom*, 2021 WL 427115 (E.D. Cal. Feb. 8, 2021) (applying the rational

23   basis test to equal protection challenge claiming that COVID-19 policies

24   discriminate against businesses based on their physical location); *In re Tourism*

25   *Assessment Fee Litig.*, 2009 WL 10185458 (S.D. Cal. Feb. 19, 2009) (applying

26   rational basis review to equal protection challenge to state program that granted

27   favorable treatment to persons who rented cars at airports as opposed to other

28   locations). The rational basis test applies. *Hodel v. Indiana*, 452 U.S. 314, 331

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   (1981) (laws that do not "employ suspect classifications or impinge on fundamental

2   rights must be upheld against equal protection attack when the legislative means are

3   rationally related to a legitimate governmental purpose").

4           Under rational basis review, the presumption that governmental decision-

5   making is rational "can only be overcome by a clear showing of arbitrariness and

6   irrationality." *Hodel*, 452 U.S. at 331-32.  Here, the Complaint alleges that *the City*

7   is limited in its ability to enforce City anti-vagrancy laws due to the Ninth Circuit's

8   decision in *Martin*.  (Compl. ¶ 31.)  Plaintiffs' equal protection theory requires this

9   Court to find that compliance with *Martin* is "irrational."  That theory is untenable.

10          Third, Plaintiffs cannot show that the County discriminated against anyone.

11  A plaintiff bringing an equal protection challenge must show "both that the . . .

12  system had a discriminatory effect and that it was motivated by a discriminatory

13  purpose." *Wayte*, 470 U.S. at 608-09.  Plaintiffs contend that the City did not

14  enforce its anti-vagrancy laws in Skid Row.  The County has no enforcement

15  authority in the City and, in fact, has a "Care First" model that does not support

16  enforcement as a solution to homelessness.  Thus, Plaintiffs have not alleged and

17  cannot allege a discrimination claim against the County under section 1983.

18          Plaintiffs cannot allege discriminatory animus.  The County admittedly has

19  made substantial efforts to serve the needs of PEH and reduce homelessness.

20  (Compl. ¶¶ 2,18, 73, 74.)

21          **3.    The State-Created Danger Doctrine Does Not Apply**

22          The "state-created danger" doctrine is a theory of substantive due process

23  liability.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-62 (9th Cir. 2006).

24  Generally, "members of the public have no constitutional right to sue [public]

25  employees who fail to protect them against harm inflicted by third parties."  *L.W. v.*

26  *Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992).  The "state-created danger" doctrine is a

27  narrow exception that permits a plaintiff to sue officers who fail "to protect a

28  person's interest in his personal security or bodily integrity when the [officer]

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION
TO DISMISS

affirmatively and with deliberate indifference placed that person in danger." *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016).

To assert a "state-created danger" claim, the plaintiff must prove that the officials (1) created an actual, particularized danger through their own affirmative conduct, and (2) acted with deliberate indifference to a known or obvious danger. *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).  In addition, a municipal government, such as the County, cannot be vicariously liable under section 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  To assert a "state-created danger" claim against the County, Plaintiffs must further allege that the County is directly responsible for the conduct of its employees through a recognized theory of municipal liability.  *Id.*

Here, Plaintiffs do not allege any of these essential elements.  Plaintiffs do not allege that any County official committed an affirmative act that created an imminent risk of bodily harm.  In fact, the individual Plaintiffs do not allege that they suffered *any* bodily harm.[3]  Plaintiffs also do not allege that any County official acted with deliberate intent to expose Plaintiffs to a known or obvious danger.

Plaintiffs also do not allege that the County is directly responsible under *Monell*.  Instead, Plaintiffs rely solely on conclusory allegations (Compl. ¶¶ 189-90), which does not work.  *Iqbal*, 556 U.S. at 678 ("[A] formulaic recitation of the elements of a cause of action will not do." (citation omitted)).

Plaintiffs must show that this County official acted with deliberate indifference *and* pursuant to an official County policy.  *Monell*, 436 U.S. at 691. Plaintiffs cannot do so as they concede the County has made substantial efforts to

---

[3] LA Alliance cannot pursue a "state-created danger" claim.  An organization cannot sue on behalf of its members if the claim asserted or the relief requested requires the participation of the individuals. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  The cognizable injuries—bodily harm—are "peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof." *Warth*, 422 U.S. at 515-16.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   both serve the needs of PEH and reduce homelessness.  (Compl. ¶¶ 2, 18, 73, 74.)

2   **4.   The County Has No Unlawful Policy, Custom or Practice**

3   Plaintiffs' Fourteenth Cause of Action (Municipal Liability) alleges that the

4   County injured Plaintiffs through an unlawful policy, custom or practice, but that is

5   not a standalone claim.  It is an element of the other section 1983 claims.  *Collins v.*

6   *City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992) ("[P]roper analysis requires

7   us to separate two different issues when a § 1983 claim is asserted against a

8   municipality:  (1) whether plaintiff's harm was caused by a constitutional violation,

9   and (2) if so, whether the [municipal government] is responsible for that

10  violation."); *Monell*, 436 U.S. at 691 (municipal governments cannot be held liable

11  under section 1983 "unless action pursuant to official municipal policy of some

12  nature caused a constitutional tort.").

13  Plaintiffs cannot satisfy their pleading burden based on conclusory

14  allegations.  (Compl. ¶ 195 (alleging, on information and belief, that the conduct of

15  the County and its agents were "all pursuant to policy, procedure, or customs held

16  by the City and County of Los Angeles").)  Plaintiffs do not identify any official

17  County policies that caused them harm.  9th Cir. Model Civ. Jury Instr. 9.5 (2017

18  ed.) (an "[o]fficial policy" means a "formal policy, such as a rule or regulation

19  adopted by the defendant . . . resulting from a deliberate choice to follow a course of

20  action").  Nor do they allege widespread or longstanding customs or practices that

21  could plausibly constitute "standard operating procedure." *Id.* (a "[p]ractice or

22  custom" means "any longstanding, widespread, or well-settled practice or custom

23  that constitutes a standard operating procedure of the defendant").

24  The only allegation, made on information and belief, is that unnamed County

25  officials told PEH that they could go to Skid Row.  (Compl. ¶ 186.)  Even if true,

26  this allegation would not support *Monell* liability.  Liability for improper custom

27  may not be predicated on isolated or sporadic incidents because the alleged custom

28  or practice must be so persistent and widespread that it constitutes a permanent and

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

1   well settled policy.  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

2       Plaintiffs have not stated a claim against the County.  *Dougherty v. City of*

3   *Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (affirming dismissal of section 1983

4   claim because the complaint "lacked any factual allegations . . . demonstrating that

5   his constitutional deprivation was the result of a custom or practice of the City").

6       **B.      Plaintiffs Have Not Stated A Claim Under California Law**

7       Because Plaintiffs' federal claims against the County are untenable, the Court

8   should dismiss the state claims for lack of supplemental jurisdiction.  28 U.S.C.

9   § 1367(c).  To the extent the Court is inclined to retain supplemental jurisdiction, the

10  Court must still dismiss the County from this case because Plaintiffs have not stated

11  a claim against the County under California statutory or common law.

12      **1.      The Statutory Claims Are Not Cognizable**

13      The primary California statutory claim asserted against the County is the

14  Second Cause of Action, brought under California Government Code section 815.6,

15  which alleges that the County violated mandatory duties owed under Welfare &

16  Institutions Code ("WIC") section 17000.[4]  (Compl. ¶¶ 134-41.)  Plaintiffs allege

17  that the County had a *mandatory duty* to provide economic support to the homeless

18  as set forth in WIC section 17000, but failed to do so.  (*Id.*)  This claim fails because

19  WIC section 17000 does not create mandatory duties, but rather vests counties with

20  *discretion* to determine the type and form of "care and aid" they provide.  *See Scates*

21  *v. Rydingsword*, 229 Cal. App. 3d 1085, 1101 (1991).

22      To establish a claim for violation of a mandatory duty, a plaintiff must first

23  prove that the statute at issue is "*obligatory*, rather than merely discretionary or

24

25  ---

[4] WIC section 17000 provides:  "Every county and every city and county shall

26  relieve and support all incompetent, poor, indigent persons, and those incapacitated

    by age, disease, or accident, lawfully resident therein, when such persons are not

27  supported and relieved by their relatives or friends, by their own means, or by state

28  hospitals or other state or private institutions."

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  permissive, in its directions to the public entity; it must *require*, rather than merely

2  authorize or permit, that a particular action be taken or not taken." *Haggis v. City of*

3  *Los Angeles*, 22 Cal. 4th 490, 498 (2000).  It is not enough that the public entity has

4  an obligation to perform a function if the function itself involves the exercise of

5  discretion.  *Id.*

6  Here, WIC section 17000 provides "general assistance" or "general relief" to

7  aid indigents.  *County of San Diego v. State*, 15 Cal. 4th 68, 92 & n.15 (1997)

8  (citation omitted).  The statute establishes the State's "overarching 'macro' policy"

9  relating to its indigent population.  *Watkins v. County of Alameda*, 177 Cal. App. 4th

10  320, 330 (2009) (citation omitted).  Under WIC section 17001, implementation of

11  the "macro policies" is left to the discretion of California counties.  Cal. Welf. &

12  Inst. Code § 17001 ("The *board of supervisors of each county*, or the agency

13  authorized by county charter, shall adopt standards of aid and care for the indigent

14  and dependent poor of the county or city and county." (emphasis added)).

15  WIC section 17000 creates two obligations: (1) provide financial or "general

16  assistance" to the indigent; and (2) provide medically necessary care to "medically

17  indigent persons."  *Hunt v. Superior Court*, 21 Cal. 4th 984, 1002-03 (1999).  WIC

18  section 17001 leaves it to the Board to adopt the "standards of aid and care."

19  Because the County has *discretion* to determine how to discharge its

20  obligations, the mandatory duty claim fails.  *Haggis*, 22 Cal. 4th at 498; *Tailfeather*

21  *v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1246 (1996) ("Achieving the mandated

22  level of care requires the exercise of considerable discretion as the County chooses

23  between a multitude of potential courses of action.").  The County is exercising its

24  discretion in this regard and cannot be second-guessed.  Hashmall Decl. Exs. 1-16;

25  *Tailfeather*, 48 Cal. App. 4th at 1246 (because counties have discretion to determine

26  the type of relief they provide under WIC sections 17000 and 17001, a court's role

27  is limited to determining "whether the County has abused or exceeded its discretion

28  under the governing statutes—not to dictate how that discretion must be exercised").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

In *Scates*, the court held that counties "have the option" to provide in-kind aid in lieu of monetary payments under WIC section 17000, but that the plaintiffs' requested injunctive relief—to reinstate a shelter (i.e., in-kind aid in lieu of monetary aid)—"misconceives the remedy for an inadequate section-17000 program." 229 Cal. App. 3d at 1098, 1101. "Sections 17000 and 17001 vest power in the board [of supervisors] to provide indigent care and aid and to adopt standards to that end." *Id.* at 1101.

The court's sole inquiry is whether a sufficient factual basis supports the board's actions. 229 Cal. App. 3d at 1101; *Tailfeather*, 48 Cal. App. 4th at 1232 (indigent health care policies and local government finances are best left to the legislature). Here, per the accompanying RJN, there is no question that the County is exercising its discretion, and that exercise of discretion cannot be second-guessed by a court.

Plaintiffs ask this Court to dictate the County's budget priorities and what programs and policies to implement to that end. There is no legal basis to request such relief. *See Scates,* 229 Cal. App. 3d at 1098-1101; *Steiner v. Superior Court*, 50 Cal. App. 4th 1771, 1785 (1996) (separation of powers applies to local governments, including counties).

The other statutory claim is the Sixth Cause of Action alleging that the County's expenditures constituted waste under California Code of Civil Procedure section 526a. (Compl. ¶¶ 155-61.) To obtain relief, the taxpayer must establish that the expenditure of public funds which he seeks to enjoin is illegal. *Herzberg v. County of Plumas*, 133 Cal. App. 4th 1, 23-24 (2005); *Lyons v. Santa Barbara Cty. Sheriff's Office*, 231 Cal. App. 4th 1499, 1503 (2014) ("The trial court correctly ruled that a taxpayer's action may not be maintained where the challenged government conduct is legal.").

Plaintiffs do not contend that any expenditures by the County are illegal, but rather that the County could be making better use of its funds. (Compl. ¶ 160.) The

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Case No. 2:20-cv-02291 DOC-KES

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF LOS ANGELES' MOTION TO DISMISS

1   waste claim therefore fails.  *Sundance v. Mun. Court*, 42 Cal. 3d 1101, 1138-39

2   (1986) ("[T]he term 'waste' as used in section 526a means something more than an

3   alleged mistake by public officials in matters involving the exercise of judgment or

4   wide discretion.  To hold otherwise would invite constant harassment of city and

5   county officers by disgruntled citizens and could seriously hamper our

6   representative form of government at the local level." (alteration in original)

7   (citation omitted)).[5]

8                    **2.    The California Tort Claims Fail**

9           In their First Cause of Action, Plaintiffs allege that the County is liable for

10  negligence because it breached its duty to Plaintiffs by not keeping public areas in

11  certain unspecified areas "safe and clean."  (Compl. ¶ 128.)  To state a negligence

12  claim, the plaintiff must assert that the government's duty arises from a statute.

13  *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (1986) ("Since the

14  duty of a governmental agency can only be created by statute or 'enactment,' the

15  statute or 'enactment' claimed to establish the duty must at the very least be

16  identified.").  Duty "cannot be alleged simply by stating 'defendant had a duty under

17  the law'; that is a conclusion of law, not an allegation of fact.  The facts showing the

18  existence of the claimed duty must be alleged." *Id*.

19          Plaintiffs do not identify a statutory duty that the County violated, and there is

20  none here.  Instead, Plaintiffs allege that Measure H obligates the County "to

21  implement [Measure H] in a manner to achieve its purposes."  (Compl. ¶ 131.)  The

22  County does exactly that, and has checks and balances in place to ensure public

23  accountability regarding the use of Measure H funding.  [Hashmall Decl. Ex. 5,

24  p. 6.]

25          The County is also immune from suit under the law.  California Government

---

26  [5] Plaintiffs also name the County as a defendant in the Seventh Cause of Action

27  (CEQA), but there are no allegations against the County on that claim and thus the

28  County was erroneously named as a defendant therein.  (Compl. ¶¶ 162-66.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Code section 820.2 provides that "a public employee is not liable for an injury

2   resulting from his act or omission where the act or omission was the result of the

3   exercise of the discretion vested in him, whether or not such discretion be abused."

4   This immunity applies when a lawsuit, like the one here, accuses local governments

5   of negligence in the exercise of "quasi-legislative policy-making." *Caldwell v.*

6   *Montoya*, 10 Cal. 4th 972, 981 (1995) (citation omitted) (such areas call for judicial

7   abstention from interference with governing body's decision-making process).  This

8   discretionary act immunity gives "legislative and executive policymakers sufficient

9   breathing space in which to perform their vital policymaking functions." *Tarasoff v.*

10  *Regents of Univ. of Cal.*, 17 Cal. 3d 425, 445 (1976); *San Mateo Union High Sch.*

11  *Dist. v. County of San Mateo*, 213 Cal. App. 4th 418, 434 (2013) (granting immunity

12  to county treasurer who exercised discretion involving "crucial investment policy

13  decisions that assessed the risks and advantages of competing investment

14  opportunities"); *Freeny v. City of San Buenaventura*, 216 Cal. App. 4th 1333, 1341

15  (2013) (At the core of this immunity are basic policy decisions.).

16          Here, Plaintiffs allege County officials were "negligent" in spending county

17  funds.  (Compl. ¶¶ 129, 131-32.)  Discretion in spending public funds is a legislative

18  policy function.  Thus, Plaintiffs' negligence theory triggers discretionary immunity.

19          Government Code section 815.2 provides that a government agency is

20  immune from vicarious liability "where the employee is immune from liability."

21  *Richards v. Dep't of Alcoholic Beverages Control*, 139 Cal. App. 4th 304, 317

22  (2006) ("[A] public entity is not vicariously liable if the employee is immune from

23  liability.").  Because County officials enjoy discretionary act immunity under

24  Government Code section 820.2, the County is immune from Plaintiffs' vicarious

25  liability claim.  *Id.*

26          Plaintiffs' Third Cause of Action (public nuisance) fails for the same reasons.

27  Where a plaintiff asserts a negligence and a public nuisance claim based on the same

28  alleged lack of due care, the nuisance claim stands or falls with the negligence

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

claim.  *Melton v. Boustred*, 183 Cal. App. 4th 521, 542 (2010).

This leaves Plaintiffs' Fourth Cause of Action (private nuisance), which fails for the same reason.  183 Cal. App. 4th at 542; *see also El Escorial Owners' Ass'n v. DLC Plastering, Inc.*, 154 Cal. App. 4th 1337, 1349 (2007) ("Where negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim.").

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, the County requests that the Court grant the Motion in its entirety.


DATED:  March 29, 2021                    Respectfully submitted,

MILLER BARONDESS, LLP



By:    /s/ Louis R. Miller

LOUIS R. MILLER
Attorneys for Defendant
COUNTY OF LOS ANGELES