RODRIGO A. CASTRO-SILVA (SBN 185251), *County Counsel*
rcastro-silva@counsel.lacounty.gov
LAUREN M. BLACK (SBN 192302), *Assistant County Counsel*
AMIE S. PARK (SBN 273346), *Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone:  (213) 974-1830
Facsimile:   (213) 626-7446

BYRON J. MCLAIN (SBN 257191)
bmclain@foley.com
FOLEY & LARDNER, LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Telephone:  (310) 972-4500
Facsimile:   (213) 486-0065

LOUIS R. MILLER (SBN 54141)
smiller@millerbarondess.com
MIRA HASHMALL (SBN 216842)
EMILY A. RODRIGUEZ-SANCHIRICO (SBN 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:  (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>Defendants. | **CASE NO. 2:20-cv-02291 DOC-KES**<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS**<br><br>Hearing Date: May 10, 2021<br>Time: 8:30 a.m.<br>Location: Courtroom 9D<br><br>Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

Defendant County of Los Angeles (the "County") hereby submits this Request for Judicial Notice pursuant to Rule 201 of the Federal Rules of Evidence in support of its Motion to Dismiss:

## I. LEGAL STANDARDS

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court "may take judicial notice at any stage of the proceeding," and "must take judicial notice if a party requests it and the court is supplied with the necessary information." *Id*. at 201(c)(2), (d).

In ruling on a motion to dismiss under Rule 12(b)(6), a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) (citation omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss," and "[s]uch consideration does 'not convert the motion to dismiss into a motion for summary judgment.'" *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (citation omitted).

In addition, when a plaintiff moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "a court may look beyond the complaint to matters of [which judicial notice is taken] without having to convert the motion into one for summary judgment. It also need not presume the truthfulness of the plaintiffs'

allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) (citation omitted).

Courts may take judicial notice of "matters of public record." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). These "matters of public record" include government records and reports. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (holding that the district court properly took judicial notice of a field operations handbook for a regional division of the Department of Labor because the handbook "clearly constitute[d]" judicially noticeable facts); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (observing "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies'" (citation omitted)).

This includes records of municipal governments. *Price v. County of Los Angeles*, No. 2:20-cv-04911-SB-KS, 2020 WL 7861975, at *2 (C.D. Cal. Dec. 1, 2020) (taking judicial notice of 15 documents submitted by the County of Los Angeles, including the "orders and proclamations made by the Los Angeles County Board of Supervisors and the Governor of the State of California," the Twitter posts from county officials, and records of official motions and votes of the Los Angeles County Board of Supervisors); *Best Supplement Guide, LLC v. Newsom*, No. 2:20-cv-00965-JAM-CKD, 2020 WL 2615022, at *2 (E.D. Cal. May 22, 2020) (taking judicial notice of "various documents issued by the federal government, the State of California, San Joaquin County, and the City of Lodi"); *Bd. of Trs. of Leland Stanford Junior Univ. v. County of Santa Clara*, No. 18-cv-07650-BLF, 2019 WL 5087593, at *4 (N.D. Cal. Oct. 10, 2019) (taking judicial notice of various documents, including official acts of the Board of Supervisors, a transcript of a Board of Supervisors' public hearing, county ordinances, staff reports made public prior to Board of Supervisors' meeting, and other such public records); *Jenkel v. City & County of San Francisco*, No. C 06-2593 MHP, 2006 WL 2053502, at *1 n.3 (N.D. Cal. July 21, 2006) (taking judicial notice of documents found on the website for the San Francisco Board of Supervisors, including resolutions and

agendas for meetings).

The documents set forth below are publically available at Los Angeles County websites, and their accuracy cannot reasonably be questioned. The documents are relevant to, and offered in support of, the County's Motion to Dismiss to show that the County is, in fact, exercising its discretion to address people experiencing homelessness.

## II.  DOCUMENTS SUBJECT TO JUDICIAL NOTICE

Pursuant to the above authority, the County respectfully requests that the Court take judicial notice of the documents submitted with and attached as Exhibits to the Declaration of Mira Hashmall:

### A.  Measure H And The Homeless Initiative

On August 17, 2015, the Los Angeles County Board of Supervisors (the "Board") launched the Homeless Initiative to combat the homeless crisis in Los Angeles. The Homeless Initiative was created following 18 policy summits on nine topics with 25 County departments, 30 cities and other public agencies, and over 100 community partners and stakeholders. In February 2016, the Homeless Initiative finalized its recommended Strategies (the "2016 HI Report") and submitted it to the Board for approval. The County requests that the Court take judicial notice of the 2016 HI Report. (Declaration of Mira Hashmall ("Hashmall Decl.") Ex. 1.)

On February 9, 2016, the Board approved the Homeless Initiative's recommendations and instructed the County's Chief Executive Office ("CEO") to report to the Board on a quarterly basis. (Hashmall Decl. Ex. 2 (Feb. 28, 2020 CEO Report) at 1.) The County requests that the Court take judicial notice of a report submitted by the CEO to the Board on February 28, 2020. (Hashmall Decl. Ex. 2.)

In March 2017, voters approved Measure H, which is a 0.25% increase to the County's sales tax to provide an ongoing revenue stream to address the homeless crisis. As it appeared on the ballot, Measure H also required "independent annual

audits and citizens' oversight." (Hashmall Decl. Ex. 3 (Mar. 7, 2017 Ballot).) The County requests that the Court take judicial notice of the March 7, 2017 Countywide Measure known as "Measure H" appearing on the ballot. (*Id.*)

On June 13, 2017, the Board approved the recommended funding allocations for each of the Measure H-eligible Homeless Initiative strategies set forth in the 2016 HI Report. (Hashmall Decl. Ex. 4 (Sep. 29, 2017 CEO Report) at 1.) The County requests that the Court take judicial notice of the report submitted by the CEO to the Board on September 29, 2017. (Hashmall Decl. Ex. 4.)

In the ensuing years, Measure H generated an estimated $355 million annually, which "accelerated" the critical work of the Homeless Initiative to "improve the lives of individuals and families experiencing homelessness." (Hashmall Decl. Ex. 2 (Feb. 2020 HI Quarterly Report) at 3.) As of February 2020, the Homeless Initiative reported to the Board that all 51 Strategies had been fully or partially implemented. (*Id.* at 4.) The Homeless Initiative also reported to the Board that, since July 2017, 19,767 individuals and family members have been permanently housed because of Measure H strategies, and 39,218 individuals and family members entered interim housing funded in whole or in part from Measure H. (*Id.* at 4.) The County requests that the Court take judicial notice of the February 2020 HI Quarterly Report (*id.*) and the December 2020 HI Quarterly Report (Hashmall Decl. Ex. 18).

On September 15, 2020, the Board adopted the CEO's Measure H and Homeless Housing, Assistance and Prevention (HHAP) Funding Recommendations. The funding recommendations total $465,090,000 for Fiscal Year 2020-21, which includes $28,737,000 in Measure H funds to be carried over from the prior fiscal year. The funds are allocated for specific strategies, as set forth in Attachment I. The County requests that the Court take judicial notice of the September 15, 2020 funding recommendations that were adopted by the Board. (Hashmall Decl. Ex. 5.)

On February 22, 2021, the CEO submitted the Countywide Homeless

Initiative's Year Four performance evaluation prepared by Public Sector Analytics ("PSA"). The PSA evaluation was prepared by Dr. Halil Toros (Statistical Analytics Consultant, USC Price Center for Social Innovation), Dr. Dennis Culhane (Professor, University of Pennsylvania, Social Policy & Practice), and Dr. Stephen Metraux (Assistant Professor, University of Delaware, Biden School of Public Policy & Administration). The PSA reported to the Board that the Homeless Initiative is responsible for 30,900 permanent housing placements and 52,201 interim housing placements funded in whole or in part through the Homeless Initiative since it was adopted. (Hashmall Decl. Ex. 6 (PSA Year Four Report) at 2.) The PSA reported that, "for the third consecutive year, over 20,000 people experiencing homelessness exited homeless services to [Permanent Housing ("PH")] placements," and "nearly 10,000 of these PH placements occurred within the purview of HI-supported initiatives." (*Id.* at 38.) The County requests that the Court take judicial notice of the February 22, 2021 CEO report to the Board, the transmitted Countywide Homeless Initiative's Year Four performance evaluation. (*Id.*)

### B. The County's COVID-19 Response

On March 4, 2020, the State of California declared a state of emergency related to COVID-19. As part of the response, the Governor created Project Roomkey to combat the spread of COVID-19 and address the needs of the most vulnerable individuals in the community. Project Roomkey is a statewide motel/hotel program that seeks to provide asymptomatic people experiencing homelessness with temporary housing.

The County, in partnership with the City of Los Angeles and the Los Angeles Homeless Services Authority ("LAHSA"), facilitated the implementation of Project Roomkey in Los Angeles by finalizing agreements with hotels/motels, working with service providers to staff the hotels/motels, and deploying disaster relief workers to staff the sites. (Hashmall Decl. Ex. 7 (May 15, 2020 CEO Report).) As of May 15,

2020, over 2,000 people experiencing homelessness had been placed in hotels/motels pursuant to Project Roomkey. (*Id.* at 2.) The County Requests that the Court take judicial notice of the May 15, 2020 report by the CEO to the Board.[1] (Hashmall Decl. Ex. 7.)

On May 12, 2020, the Board directed LAHSA, in collaboration with the CEO, other county departments, the City of Los Angeles, philanthropy and other key partners to develop a Homelessness COVID-19 Recovery Plan. (Hashmall Decl. Ex. 9 (July 2, 2020 CEO Report) at 1.) The Board directed the CEO to identify existing resources, including The CARES Act (H.R. 748) Coronavirus Relief Fund, to support the plan and to report back within 45 days. (*Id.*) LAHSA created a COVID-19 Recovery Plan, which focuses on five key goals: (1) no returns from COVID-19 response to the street; (2) rapidly house 15,000 of the most vulnerable people; (3) reduce inflow into homelessness; (4) prepare systems for future crises; and (5) ensure racial equity throughout. (*Id.*) LAHSA projected that it would cost $806,595,604 over the next three fiscal years to implement the plan in its entirety. (*Id.* at 2.) Of that total, $609,178,112 represents new costs that must be identified from existing or new funding sources. (*Id.*) On July 2, 2020, the CEO submitted the LAHSA COVID-19 Recovery Plan to the Board. (*Id.*) The County requests that the Court take judicial notice of the July 2, 2020 submission by the CEO to the Board and the attached LAHSA COVID-19 Recovery Plan. (*Id.*)

On July 2, 2020, the CEO submitted a Funding Plan to the Board to support the LAHSA COVID-19 Recovery Plan. (Hashmall Decl. Ex. 5 (Sep. 15, 2020 CEO Funding Recommendation) at 3.) The CEO's Funding Plan identified four funding

---

[1] As of March 15, 2021, the County has 2,261 available rooms as part of Project Roomkey, with 1,713 rooms occupied by 1,945 clients. (Hashmall Decl. Ex. 8 (Mar. 15, 2021 COVID-19 Update).) The County requests that the Court take judicial notice of the March 15, 2021 Los Angeles County Emergency Operations Center COVID-19 Update. (*Id.*)

streams: (1) $111 million from the County's Coronavirus Relief Fund allocation for use through December 2020; (2) $80 million in Emergency Solutions Grants for use through mid-2022; (3) $65 million in Measure H funding for Strategy B3-Rapid Re-Housing through FY 2022-23; and (4) $52 million in potential federal Medicaid funding. (*Id.*) The Funding Plan noted that additional funding may come from the City of Los Angeles and LAHSA, but that is "pending decisions from their respective governing bodies." (*Id.*) The County requests that the Court take judicial notice of the September 15, 2020 funding recommendations that were adopted by the Board. (*Id.*)

### C. The County's Crisis Response Strategy

Prior to the onset of the COVID-19 pandemic, the California Council of Regional Homeless Advisors developed a "Comprehensive Crisis Response Strategy to Address Homelessness Statewide" (the "Crisis Response Strategies"). (Hashmall Decl. Ex. 10 (Mar. 24, 2020 CEO Report).) In response, Supervisors Mark Ridley-Thomas and Janice Hahn submitted a motion to the Board which recommended that the Board take action to implement the feasible and appropriate recommendations set forth in the State's Crisis Response Strategies.

On January 21, 2020, the Board directed the CEO and other county departments to establish a comprehensive homelessness crisis response strategy and to report back within 60 days. (*Id.* at 1.) On March 24, 2020, the CEO reported to the Board that the CEO-Homeless Initiative and Office of Emergency Management convened a workgroup comprised of several county departments to develop the response strategy. (*Id.* at 2.) The workgroup determined that the best course of action was to focus on a specific sub-population to establish a framework for addressing the entire homeless population. (*Id.*) The workgroup preliminarily selected a sub-group of homeless who are age 65 or older and developed a pilot program with recommendations for how to serve this population. (*Id.*) The workgroup noted, however, that "new on-going funding would need to be

identified," as General Relief funds were not a viable funding source, and the Mental Health Services Act ("MHSA") funds are "currently allocated for other purposes." (*Id.* at 2-3.) The County requests that the Court take judicial notice of the March 24, 2020 report to the Board. (*Id.*)

On April 14, 2020, Supervisors Ridley-Thomas and Hahn submitted a motion to the Board requesting that the Board take appropriate action to implement the recommended strategies in the March 24, 2020 report (the "April 14, 2020 Motion"). The County requests that the Court take judicial notice of the April 14, 2020 Motion. (Hashmall Decl. Ex. 11.)

On May 12, 2020, Supervisors Ridley-Thomas and Hahn submitted a motion to the Board requesting that the Board direct the Executive Director of LAHSA, in collaboration with the CEO and other County departments, as well as the City, philanthropy and other key partners, to develop a Homelessness COVID-19 Recovery Plan (the "May 12, 2020 Motion"). The motion explained that the Homelessness COVID-19 Recovery Plan should include "post-pandemic housing plans for homeless older adults," and requested that the Board direct the CEO to identify existing resources, including The CARES Act (H.R. 748) Coronavirus Relief Fund, to support the plan. The motion further requested that the Board direct the CEO's Legislative Affairs and Intergovernmental Relations Branch in Washington, D.C. and Sacramento to continue to advocate for federal and state resources to expand housing for the homeless. The County requests that the Court take judicial notice of the May 12, 2020 Motion. (Hashmall Decl. Ex. 13.)

### D. The Freeway Plan

On June 16, 2020, the County and the City entered into a binding term sheet whereby the County agreed to pay up to $60 million per year for five years to finance the City's agreement to provide 6,700 beds for persons experiencing homelessness. (ECF Dkt. No. 136 (the "Freeway Plan").) These 6,700 beds are intended to house and shelter persons experiencing homelessness who live within

500 feet of a freeway overpass, and then to give priority housing and shelter to persons experiencing homelessness who are 65 or older or who are otherwise vulnerable. (*Id.*) The County requests that the Court take judicial notice of the Freeway Plan. *E.g., Nichols v. Brown*, 859 F. Supp. 2d 1118, 1124 n.2 (C.D. Cal. 2012) (taking judicial notice of court opinions and dockets).

### E. Mental Health Services Act

In the Complaint, Plaintiffs allege that as of 2019, "the County had almost $1 billion in funds allocated to it through the Mental Health Services Act, and . . . to date no reported expenditure has been made." (Compl. ¶ 66.)

On November 3, 2020, the County submitted a Status Report explaining how the County allocates and spends MHSA funds. (ECF Dkt. No. 197.) The County explained that MHSA funds are allocated pursuant to a three-year expenditure plan that is approved by the California Department of Health Services and the California MHSA Oversight and Accountability Commission. (*Id.* at 4.) The County requests that the Court take judicial notice of its November 3, 2020 Status Report. *E.g., Nichols*, 859 F. Supp. 2d at 1124 n.2 (taking judicial notice of court opinions and dockets).

On May 30, 2017, the Board adopted the MHSA three-year expenditure plan for fiscal years 2017-18, 2018-19 and 2019-20. Per this plan, MHSA funds are allocated for a variety of programs and services to meet the mental health needs of county residents. The County requests that the Court take judicial notice of the MHSA three-year expenditure plan adopted by the Board on May 30, 2017. (Hashmall Decl. Ex. 15.)

As a result of the COVID-19 pandemic, the Los Angeles County Department of Mental Health ("DMH") received an extension to continue with its three-year expenditure plan for fiscal year 2020-21. Per DMH, this "will allow for adequate time to ensure the stakeholder process is fully engaged in preparation of a new Three-Year Plan that reflects 1) a thorough understanding of community needs

which are in transition as a result of the ongoing COVID-19 pandemic and civil unrest, and 2) meaningful budget forecasts." The County requests that the Court take judicial notice of the following statements set forth on DMH's official website, at URL link: dmh.lacounty.gov/about/mhsa/announcements. (Hashmall Decl. Ex. 16.)

### F. County Services

Through 11 different County departments—Children and Family Services, Health Services, Mental Health, Public Health, Public Social Services, LAHSA, Development Authority, Sheriff's Department, Probation, Public Defender and Workforce Development, and Aging and Community Services—the County provides an extensive array of services to people experiencing homelessness. (Hashmall Decl. Ex. 17 (ECF Dkt. No. 189).) The County requests that the Court take judicial notice of the County's list of "Programs Serving People Experiencing Homelessness" (ECF Dkt. No. 189). *E.g., Nichols*, 859 F. Supp. 2d at 1124 n.2 (taking judicial notice of court opinions and dockets).

### III. CONCLUSION

The above documents are relevant to, and offered in support of, the Motion to Dismiss to show that the County is exercising its discretion to address homelessness. They are public records available at Los Angeles County websites and their accuracy cannot reasonably be questioned. Thus, the County requests that the Court grant this request and take judicial notice of the documents.

DATED: March 29, 2021            MILLER BARONDESS, LLP

By: /s/ Louis R. Miller
       LOUIS R. MILLER
       Attorneys for Defendant
       COUNTY OF LOS ANGELES

502793.3

12

Case No. 2:20-cv-02291 DOC-KES

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS