SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
617 W. 7th Street, Suite 200
Los Angeles, California 90017
Telephone: (213) 205-6520
Facsimile: (213) 205-6521
mumhofer@spertuslaw.com
emitchell@spertuslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, an unincorporated association, JOSEPH BURK, HARRY TASHDJIAN, KARYN PINSKY, CHARLES MALOW, CHARLES VAN SCOY, GEORGE FREM, GARY WHITTER, and LEANDRO SUAREZ, individuals, Plaintiffs, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a municipal entity; COUNTY OF LOS ANGELES, a municipal entity; and DOES 1 through 200 inclusive, Defendants., <br><br> Defendants. | CASE NO. 2:20-CV-02291-DOC-KES <br><br> Assigned to Judge David O. Carter <br><br> **PLAINTIFFS' OPPOSITION TO THE COUNTY OF LOS ANGELES' MOTION TO DISMISS** <br><br> Complaint Filed: March 10, 2020 <br><br> <u>Hearing</u>: <br> Date:     May 10, 2021 <br> Time:     8:30 a.m. <br> Location: Courtroom 9D <br>                411 West Fourth St. <br>                Santa Ana, CA 92701 |

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................. 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 2

    A. Plaintiffs ................................................................. 2

    B. Procedural History ...................................................... 2

III. LEGAL STANDARD ............................................................ 3

    A. 12(b)(1) Standards ...................................................... 3

    B. The 12(b)(6) Standard .................................................. 4

IV. PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE COUNTY AND THIS COURT HAS THE POWER TO ORDER THE RELIEF SOUGHT ................................................. 5

    A. This Court Enjoys Broad Equitable Powers ......................... 5

    B. Plaintiffs Have Article III Standing to Bring This Case ............ 7

    C. Prudential Standing is Not a Barrier To Plaintiff's Case. ........... 9

V. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983 ............ 10

    A. Plaintiffs Have Alleged Sufficient Facts to Support a Substantive Due Process Claim ...................................... 10

VI. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW ................................ 14

    A. Plaintiffs Have Alleged Sufficient Facts to State a Claim for Violation of Welf. & Inst. Code Section 17000 Under Both Negligence and Mandatory Duty Theory ............................. 14

    B. Plaintiffs Have Alleged Sufficient Facts to Support a Taxpayer Waste Claim under California Code of Civil Procedure Section 526a ...................................................................... 17

    C. Discretionary Immunity is Inapplicable to Claims for Equitable and Injunctive Relief .................................................. 18

VII. CONCLUSION .................................................................. 19

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE(S)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................4

*Brown v. Plata,*
  563 U.S. 493 (2011) ................................................................................................5

*Chiatello v. City & County of San Francisco,*
  189 Cal. App. 4th 472 (2010) ................................................................................17

*City & County of San Francisco v. Superior Court,*
  57 Cal. App. 3d 44 (1976) ....................................................................................16

*Cooke v. Superior Court,*
  213 Cal. App. 3d 401 (1989) ................................................................................16

*County of Alameda v. State Boardd of Control,*
  14 Cal. App. 4th 1096 (1993) ................................................................................16

*Harnett v. Sacramento County,*
  195 Cal. 676 (1925) ..............................................................................................17

*Harris v. Board of Supervisors,*
  366 F.3d 754 (9th Cir. 2004) ...........................................................................5, 16

*Hernandez v. City of San Jose,*
  897 F.3d 1125 (9th Cir. 2018) ..............................................................................11

*Horne v. Flores,*
  557 U.S. 433 (2009) ................................................................................................7

*Huezo v. Los Angeles Community College District,*
  672 F. Supp. 2d 1045 (C.D. Cal. 2008) ................................................................5

*Hunt v. Superior Court*
  21 Cal. 4th 984 (1999) ..........................................................................................15

*Johnson v. Riverside Healthcare Systems, LP,*
  534 F.3d 1116 (9th Cir. 2008) ................................................................................4

*Kennedy v. City of Ridgefield,*
  439 F.3d 1055 (9th Cir. 2006) .......................................................................10, 11

*Kentucky Department of Corrections v. Thompson,*
  490 U.S. 454 (1989) ..............................................................................................12

*L.W. v. Grubbs,*
  974 F.2d 119 (9th Cir. 1992) ................................................................................12

*Leite v. Crane Co.,*
  749 F.3d 1117 (9th Cir. 2014) ................................................................................4

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*Lewis v. Casey*,
  518 U.S. 343 (1996)..................................................................................6

*Lexmark International, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)..................................................................................9

*Los Altos Property Owners Ass'n v. Hutcheon*,
  69 Cal. App. 3d 22 (1977) ......................................................................17

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)..................................................................................7

*Mateos-Sandoval v. County of Sonoma*,
  942 F. Supp. 2d 890 (N.D. Cal. 2013).....................................................14

*McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*,
  298 U.S. 178 (1936)..................................................................................3

*Morales v. City of Los Angeles*,
  214 F.3d 1151 (9th Cir. 2000) ..................................................................4

*Ocean Advocates v. United States Army Corps of Engineers*,
  402 F.3d 846 (9th Cir. 2005) ....................................................................8

*Patel v. Kent School District*,
  648 F.3d 965 (9th Cir. 2011) ..................................................................10

*Rizzo v. Goode*,
  423 U.S. 362 (1976)..................................................................................6

*Rodde v. Bonta*,
  357 F.3d 988 (9th Cir. 2004) .................................................................5, 6

*Rosales v. County of San Diego*,
  --- F. Supp. 3d ---, Case No.: 19-CV-2303 JLS (LL),
  2021 WL 37723 (S.D. Cal. Jan. 5, 2021) ................................................13

*Ryan v. Salisbury*,
  382 F. Supp. 3d 1031 (D. Haw. 2019)......................................................9

*Scates v. Rydingsword*,
  229 Cal. App. 3d 1085 (1991) ................................................................16

*Silvas v. E\*Trade Mortg. Corp.*,
  514 F.3d 1001 (9th Cir. 2008) ...............................................................4, 5

*Santa Cruz Homeless v. Bernal*,
  ---F. Supp. 3d----, Case No. 20-cv-09425-SVK,
  2021 WL 222005 (N.D. Cal. Jan. 20, 2021), *order modified*,
  2021 WL 1256888 (N.D. Cal. Apr. 1, 2021)...........................................11

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................13

*Swann v. Charlotte-Mecklenburg Board of Education*,
  402 U.S. 1 ................................................................................................5

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

iv

*Tailfeather v. Board of Supervisors*,
  48 Cal. App. 4th 1223 (1996) ................................................................15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...............................................................................4

*Tyler v. Cuomo*,
  236 F.3d 1124 (9th Cir. 2000) ...............................................................7

*United States v. James Daniel Good Real Property*,
  510 U.S. 43 (1993) ..........................................................................12, 13

*United States v. JP Morgan Chase Bank Account Number Ending 8215*,
  835 F.3d 1159 (9th Cir. 2016) ...............................................................9

*Warth v. Seldin*,
  422 U.S. 490 (1975) .....................................................................7, 8, 11

*Whisnant v. United States*,
  400 F.3d 1177 (9th Cir. 2009) ...........................................................3, 4

*Wood v. Ostrander*,
  879 F.2d 583 (9th Cir. 1989) ...............................................................12

**STATUTES**

28 U.S.C. § 1331 ...............................................................................................3

42 U.S.C. § 1983 .............................................................................................10

California Code of Civil Procedure § 526a ......................................................17

California Government Code § 814...................................................................18

California Government Code § 815.6.........................................................14, 16

California Government Code § 815.2...............................................................18

California Government Code § 820.2...............................................................18

California Welfare & Institutions Code § 10000............................................15

California Welfare & Institutions Code § 14059.5(a) .....................................15

California Welfare & Institutions Code § 17000.................................*passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO THE COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Instead of embracing the opportunity this case offers to heal the wounds of homelessness in Los Angeles, Defendant Los Angeles County seeks to escape responsibility for its failures through an ill-conceived and meritless motion to dismiss.  The County's motion turns on the misguided notion that because it has spent hundreds of millions of dollars, the County has necessarily done *enough* for its unsheltered constituents.  But a walk down 5th Street, where the Court's last hearing was held, exposes falsity of the County's notion.

The County's contention calls to mind a person peddling a stationary bike, expending great effort but covering little ground.  This lawsuit was brought not because of the County's lack of *effort* or *money*, but because of a failure of *progress* and *results* in protecting those experiencing homelessness.  And despite the County's receipt of over $500 million in additional yearly funding solely focused on homelessness relief, the unhoused population continues to rise year-after-year.  Millions are misdirected, wasted, or unused while human beings languish and die on the streets.  Below is a graph on the deaths of homeless individuals in Los Angeles County over the past seven years—the results speak for themselves.[1]



---

[1] Ethan Ward, *They were homeless, now they're dead: Last year, 1,383 people experiencing homelessness died in Los Angeles County*, Crosstown (Feb. 10, 2021), https://xtown.la/2021/02/10/homeless-deaths-los-angeles/.

The County, most certainly, has not done *enough*—indeed, it has fallen so far short of enough that it has violated its statutory and constitutional obligations to the County's unsheltered citizens.  The County's actions and omissions, and deliberate indifference to the danger to which it has subjected its constituents, including Plaintiffs, demand the relief sought in this case.  Plaintiffs have alleged more than sufficient facts to support claims under the first, second, third, fourth, sixth, eleventh, twelfth, thirteenth, and fourteenth causes of action, and the motion should be denied.[2]

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   Plaintiffs

LA Alliance for Human Rights ("LA Alliance") is a broad coalition of Los Angeles residents who believe that homelessness in LA is a human rights crisis and must be addressed with the "FEMA-like response" many local leaders have espoused (but never undertaken).  Its membership consists of current and formerly homeless individuals, non-profits, businesses, residents, and community members that are frustrated with the pace of solutions and looking to change the trajectory of the crisis for the betterment of the entire community—housed and unhoused.  Each individual plaintiff, while also a member of LA Alliance, has been separately injured by the County's actions and omissions.

### B.   Procedural History

Plaintiffs filed this case at the start of the pandemic, on March 10, 2020.  Nine days later, all parties agreed to stay litigation to explore settlement intended to urgently resolve the homelessness crisis for the benefit of all parties and the Los Angeles community as a whole.  Less than three months later, the City and County officially voted to enter into global settlement negotiations in this case.  The City and County, despite many differences, entered into an historic agreement for 5,300 new

---

[2] Defendants stipulate to dismissal of seventh cause of action as to County only. Defendants agree that the fourteenth cause of action, *Monell* liability, may be considered an element of each constitutional cause of action alleged.

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

beds to serve persons experiencing homelessness within nine months, and another 1,400 beds with other conditions.  Significant progress was made.

For months, the parties sought to engage the County in settlement discussions aimed at a global resolution in the case.  The County, however, was conspicuously unengaged, and in the fall of 2020, the County changed course dramatically—it brought in new counsel, stopped working with the parties and the Court, and fell back into old patterns of finger-pointing and blame-shifting.  This despite several eloquent calls to action on homelessness by County Supervisors in Court proceedings in this matter.

After one year without a global agreement, and more indications that the County would not be the partner that the parties—not to mention suffering Angelenos—need, Plaintiffs filed a notice of intent to file a motion for preliminary injunction.  (ECF No. 240.)  Even though Plaintiffs had not yet filed the preliminary injunction motion and sought to involve the County in settlement discussions, the County stuck to the sidelines and then filed this motion to dismiss on March 29, 2021.

## III.   LEGAL STANDARD

### A.   12(b)(1) Standards

To prevail under a 12(b)(1) motion, Plaintiffs need only demonstrate that they meet the jurisdictional requirements to be before this Court through competent allegations.  *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936).  When considering a facial attack on subject matter jurisdiction under 12(b)(1), this Court should consider all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2009) (relying on factual allegations in complaint where 12(b)(1) motion to dismiss challenged legal question).  Federal courts possess federal question jurisdiction over "all civil actions arising under the Constitution, laws, or Treaties of the United States." 28 U.S.C. § 1331.

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

3

The County contends that a court "may consider facts and need not assume the truthfulness of the complaint" in a motion under 12(b)(1). (County's Memo. ISO Mot. to Dismiss ("MTD") 14, ECF No. 256-1 (original emphasis omitted) (citation omitted).).  However, this is only true where the movant introduces new substantive facts to dispute the subject matter jurisdiction claims made in the Complaint.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (summarizing prevailing case law on "factual" vs "facial" 12(b)(1) motions).

Here, the County claims that the allegations by the LA Alliance for Human Rights are insufficient but neglects to challenge the accuracy of any material factual allegations.  The County argues that wrongs claimed in the Complaint can't be traced to the County (MTD) at (IV)(A).), that this Court lacks the authority to grant the requested relief (MTD at (IV)(B).), and that the issues complained about by Plaintiffs fall outside the rule of "prudential standing" (MTD at (IV)(C).).  None of these challenges ask this Court to consider any new factual information outside of the Complaint; instead, they challenge the sufficiency of allegations as pled.  Thus, as in *Whisnant*, the County's challenge is a "facial" 12(b)(1) one, meaning the factual allegations must be deemed true during this Court's review.  The County's additional "facts" are irrelevant, cannot be considered, and should be disregarded.

## B.    The 12(b)(6) Standard

Complaints need only contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "This is not an onerous burden."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).  The Court "must consider the complaint in its entirety," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), accept as true "[a]ll allegations of material fact . . . in the light most favorable to the nonmoving party," *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008), and "draw all reasonable inferences in favor of the non-moving party."  *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000).  Indeed, "[a] complaint must not be

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."  *Silvas*, 514 F.3d at 1003-04.

## IV.   PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE COUNTY AND THIS COURT HAS THE POWER TO ORDER THE RELIEF SOUGHT

### A.   This Court Enjoys Broad Equitable Powers

"The law and the Constitution demand recognition of certain [] rights . . . If government fails to fulfill [its] obligation, the courts have a responsibility to remedy the resulting [] violation."  *Brown v. Plata*, 563 U.S. 493, 511 (2011) ("*Plata*"); *see also* Pls.' Resp. to Ct. Req. for Br'g., ECF No. 239, incorporated herein by reference, at pp. 13-19.  The County argues, incorrectly, that this Court lacks the authority to issue the injunctive relief requested by Plaintiffs.  (MTD pp. 18-21.); *cf. Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (when considering the affirmative acts of a government body "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies").

This Court also possesses the power to enjoin the County to prevent current or imminent statutory violations.  *See*, *e.g.*, *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004); *Harris v. Bd. of Supervisors*, 366 F.3d 754, (9th Cir. 2004); *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1054 (C.D. Cal. 2008).  In *Rodde*, Los Angeles County was considering closing a hospital which provided services to plaintiffs and other special needs patients receiving care through Medi-Cal.  *Id.* at 990.  The district court found that the county would be unable to fill its statutory obligations under Welfare and Institutions Code section 17000 if it closed the hospital, which would have led to significant harm to the plaintiffs.  *Id.* at 993-94. The district court imposed—and the court of appeals upheld—an injunction obligating the county to keep the hospital open which required it to spend upwards of

5

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

$50 million per year to provide services.  *Id.* at 999-1000.  Here the Court retains the power to enjoin the County to provide services to avoid statutory violations just as the courts did in *Rodde*, *Harris*, and *Huezo*.

The County cites three cases for the proposition that "This Court Cannot Award Plaintiffs' Requested Injunctive Relief," (MTD, p. 18.), all of which turned on the absence of what is present here: actions by the County that adversely affect Plaintiffs.

In *Rizzo v. Goode*, the Supreme Court specifically noted that injunctive relief to direct the activities of local government agencies is within the power of the court.  423 U.S. 362, 375 (1976) ("[W]hen a pattern of frequent . . . violations of rights is shown, the law is clear that injunctive relief may be granted.") (citation omitted.)  The *Rizzo* court found "critical" to its decision to reverse the district court's injunction that the district court "found that the responsible authorities had played no affirmative part in [the alleged actions]."  *Id.* at 377 (emphasis added).  Thus, the court reasoned, the claims fell outside of the "settled rule that in federal equity cases the nature of the violation determines the scope of the remedy[.]"  *Id.* at 378 (internal quotations and citations omitted).  This case is on far different footing because the Plaintiffs have alleged that the responsible County authorities have indeed played an affirmative part in the conduct that has caused injury.  (Compl. ¶¶ 25-26, 40-42, 58-59, 64-72, 137-141, 158-160, 188-190.)

*Lewis v. Casey* is likewise unsupportive of the County's position.  518 U.S. 343 (1996).  That case turned on whether the plaintiffs had actually been injured, not the scope of the Court's power.  518 U.S. at 351 (plaintiffs could not show that they had suffered a "relevant actual injury" and misunderstood the prevailing law); *see also id.* at 356-57 (reasoning further that actual injury was insufficiently shown).  Here, there are robust allegations of relevant injury to the Plaintiffs, and *Lewis* offers little help to the County.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Last, the County cites to *Horne v. Flores*, 557 U.S. 433 (2009), which, like *Lewis* and *Casey*, turned on the nature of the injury, and also did not find that the court would be unable to provide equitable relief.  In *Horne*, the Supreme Court concluded that the appellate court was mistaken in limiting its analysis to whether specific funding targets were met, instead of considering whether any actual injury persisted.  *Id*. at 452; *see also*, *id.* at 454 (noting that the court of appeal erred in not considering whether there was an ongoing violation of federal law).  The Court remanded the case for factual findings of whether injury was ongoing; it did not dissolve the injunction for lack of authority.  *Id.* at 472.

In short, none of the cases cited by Defendant County support the proposition that this Court lacks authority to order equitable relief of the sort needed to address this crisis comprehensively should the parties not manage to do so themselves.

### B.     Plaintiffs Have Article III Standing to Bring This Case

Plaintiffs possess Article III standing because they each have alleged that they (1) suffered an "injury in fact" which is (2) "fairly traceable" to actions by the County, and (3) it is "likely" that the injury will be redressed by a favorable decision by this Court.  *See Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The County argues the injuries suffered by Plaintiffs are not sufficiently connected to the County's conduct.  (MTD p. 16).  An injury is "fairly traceable" to a defendant's conduct when a causal connection is shown between the injury alleged and the conduct of the defendant.  *Tyler*, 236 F.3d at 1132.  In *Tyler*, the court distinguished *Warth v. Seldin*, 422 U.S. 490 (1975)—a case cited by Defendant County—reasoning that the *Warth* Court held the alleged harm was traceable only to factors other than the Defendants' conduct.  *Id.*  In contrast, the *Tyler* court found that a group of Plaintiffs suing the City of San Francisco alleged conduct that was "fairly traceable" to the City because the City refused to hold meetings to hear the complaints of the homeowners, despite possibility that the meetings would lead to no

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

substantive change. *Id.* (reasoning that the action was sufficient as it was not "the result of the independent action of some third party not before the court."). Importantly, at early stages of litigation, the traceability requirement of standing is a low bar to clear—as one court put it, "the causal connection . . . need not be so airtight at this stage of litigation as to demonstrate that the plaintiffs would succeed on the merits." *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (citation omitted) (noting that while other factors may impact a plaintiff's harm, the injury may still be sufficiently traceable and affirming denial of summary judgment on standing grounds). Here, at the early stages of this litigation, and indeed before this litigation has even begun in earnest, Plaintiffs' allegations clear this low bar.

Defendant County sets up a strawman (rather, a straw-city) argument to claim Plaintiffs' injuries are not traceable to the County's conduct, but only traceable to the City's. Not true. Plaintiffs have properly alleged their injuries are traceable not just to the City, but to the County as well:

- the County centralizes its services and otherwise incentivized homeless persons to relocate to areas of significant health and safety risk, causing harm to both those homeless persons and surrounding properties;

- the County is completely failing in its duty to care for indigent persons, including providing for sufficient medical and mental health care under Welfare & Institutions Code section 17000;

- the County has wasted and continues to waste Measure H funds which are designed to reduce homelessness, yet homelessness has only increased since Measure H was passed; and

- the County, together with the City, fund and direct LAHSA which is ineffective in several ways, including its failure to move people from emergency and bridge shelters into permanent housing, and failure to support

8

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

successful solutions when they do not comport with LAHSA's ideological standards.

These actions by the County are all either causing the number of persons experiencing homelessness to increase or causing the conditions in which they live to worsen, both of which directly affect each Plaintiff for all the reasons described in the Complaint.

## C.    Prudential Standing is Not a Barrier To Plaintiff's Case.

Prudential standing consists of three general prohibitions: (1) raising another person's legal rights, (2) adjudication of generalized grievances more appropriately addressed by the representative branches, and (3) that Plaintiff's complaint falls into the zone of interests protected by the concerned law. *United States v. JP Morgan Chase Bank Account Number Ending 8215*, 835 F.3d 1159, 1167-68 (9th Cir. 2016). The prudential standing inquiry "has fallen into disfavor in recent years." *Id.* (citing *Lexmark In'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)).  As the *Lexmark* court noted, where a federal court finds Article III jurisdiction, declining to hear the case on prudential grounds would be "in some tension with [the Supreme Court's] recent reaffirmation of the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." 572 U.S. at 126 (internal quotation marks and citations omitted).

The County only appears to challenge Plaintiffs' prudential standing of the second type, claiming Plaintiffs' grievances are too generalized to be appropriately addressed by this Court.  (MTD p. 21.)  Courts have found that grievances are sufficiently specific to pass the generalized grievance threshold where the complaint alleges that specific actions or conduct by defendants harmed or threaten to harm plaintiffs.  *See*, *e.g.*, *Ryan v. Salisbury*, 382 F. Supp. 3d 1031, 1049-50 (D. Haw. 2019) (finding that party met prudential standing where complaint alleged plaintiff suffered injuries as the result of the defendant's conduct); *JP Morgan*, 835 F. 3d at 1167-68 (holding that where a plaintiff alleged an ownership interest in potentially

9

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

forfeited funds, prudential standing was met). As discussed *supra,* Part IV-B, Plaintiffs allege several distinct actions by the County referencing specific actions taken by County which directly injured Plaintiffs.

Further, the Complaint alleges these harms are ongoing and likely to recur in the future. Therefore, should this Court even undertake a prudential standing analysis, Plaintiffs have alleged prudential standing because the harm alleged is both specific and redressable by this Court.

## V. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983

### A. Plaintiffs Have Alleged Sufficient Facts to Support a Substantive Due Process Claim

The County of Los Angeles has placed its homeless and housed constituents in danger by (i) needlessly centralizing services within areas of the county—most notably the Skid Row area— which requires unhoused individuals to travel to and often remain in what it knows to be dangerous and unhealthy locations and then (ii) acting with deliberate indifference to the health and safety of those in the area. The Ninth Circuit has recognized the constitutional right, under the Due Process clause, to be free from state-created danger. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-62 (9th Cir. 2006). When a state or local official acts to place a person in a situation of known danger, with "deliberate indifference" towards their person or physical safety, the state violates due process. *Id.; see also Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (state-created danger exists where (1) "there is affirmative conduct on the part of the state in placing the plaintiff in danger" and (2) "the state acts with 'deliberate indifference' to a 'known or obvious danger'")

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

(citations omitted).[3]

Defendants have violated Due Process under the Fifth and Fourteenth
Amendment by adopting and implementing policies that have created danger to
Plaintiffs and persons experiencing homelessness.  Courts have recently recognized
that a municipality's policy that places homeless individuals in danger can violate due
process and merit injunctive relief.  In *Santa Cruz Homeless v. Bernal*, the court took
judicial notice of the COVID-19 pandemic and granted homeless plaintiffs'
preliminary injunction to halt the closure of two parks where the plaintiffs were
camping.  ---F. Supp. 3d----, Case No. 20-cv-09425-SVK, 2021 WL 222005, at *1
(N.D. Cal. Jan. 20, 2021), *order modified*, 2021 WL 1256888 (N.D. Cal. Apr. 1,
2021).  The court held that by closing the parks without an alternate shelter, the State
would place residents in a more vulnerable situation and in greater danger.  *Id*. at 17-
18.  Here the facts are much more compelling because Defendants' policies created
incredible danger for those in and around the areas of centralized services, most
notably Skid Row. (Compl. ¶¶ 25, 33-42, 94-96, 108, 115, 122, 188-190.)  These
facts fall in line with a series of cases in which courts have held public entities liable
for creating dangerous conditions.  *See, e.g., Hernandez v. City of San Jose*, 897 F.3d
1125, 1136 (9th Cir. 2018) (Plaintiffs alleged sufficient facts to support a state-
created danger claim where "throughout the Rally, the Officers witnessed the many
violent criminal acts perpetrated by dozens of anti-Trump protesters and yet
continued to direct the Attendees into the job.") (internal quotation marks omitted);
*Kennedy*, 439 F.3d at 1067 (upholding denial of summary judgment on qualified
immunity grounds where officer knew aggressor was violent and told aggressor of

---

[3] Defendant County argues that Plaintiff LA Alliance is precluded from pursuing a
claim under the "state-created danger" doctrine because "bodily harm" requires
"individualized proof."  (MTD p. 26 fn. 3.)  Yet *Warth v. Seldin*, cited by County,
only stands for the proposition that an association "has no standing to claim damages
on behalf of its members."  422 U.S. 490, 492 (1975).  In fact, LA Alliance seeks no
monetary relief on behalf of its members for "bodily harm" or any other harm.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

victim's allegations after promising victim to alert her before doing so, because "[n]o reasonable officer in Shields's position, knowing what he allegedly knew and what he must be charged with knowing, could have concluded otherwise than that Kennedy had a right not to be placed in obvious physical danger as a result of his deliberately indifferent action."); *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir. 1992) (reversing district court's grant of motion to dismiss where registered nurse was placed in a clinic alone with inmate who then raped and terrorized her, appellate court found the pleadings properly alleged the defendants "enhanced L.W.'s vulnerability to attack by misrepresenting to her the risks attending her work."); *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) ("The fact that Ostrander arrested Bell, impounded his car, and apparently stranded Wood in a high-crime area at 2:30 a.m. distinguishes Wood from the general public and triggers a duty of the policy to afford her some measure of peace and safety.").

Plaintiffs have also properly alleged the County has violated procedural due process under the Fifth and Fourteenth Amendments by infringing on the interests of residents without due process.  Under the doctrine of procedural due process, Defendants may not interfere with a liberty or property interest without following constitutionally sufficient procedures. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  Such procedures require at a minimum "notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop*., 510 U.S. 43, 48 (1993).

Here, Plaintiffs have properly alleged that for over 40 years, Defendant County has repeatedly taken actions which concentrate homeless individuals in unsafe areas, particularly in Skid Row. (Compl. ¶¶ 25, 26, 188-190.)  The City and County were both complicit in this policy. *(Id*.)  This policy has been implemented without proper procedures for the people affected by it, thus depriving them of their property.  (*Id*. ¶¶ 76-122.)  For example, Joseph Burk cannot find tenants or otherwise use or sell his property due to the dangerous conditions in the Containment area.  (*Id*. ¶¶ 77-85.)

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Used needles and fecal matter fill gutters and accumulate on Mark Shinbane's property.  He routinely spends hundreds of thousands of dollars a year attempting to keep some semblance of sanitation only for the waste to invariably return.  (*Id.* ¶ 76(e).)  Harry Tashdjian has been forced to routinely repair parts of his building which are affected by out-of-control fires, urination and feces, and frequent graffiti. (*Id.* ¶¶ 86-92.)  Forcing residents to pay for basic municipal services, after depreciating their property values through City and County policy of containment, is economically equivalent to exacting a taking upon these residents without due process and without just compensation.  Even if Plaintiffs' claims did not involve fundamental rights—which they do—the County cannot justify any "rational basis" for these policies in light of the clear harm being inflicted on Plaintiffs daily. (*Id.* ¶¶ 33-75.)

Finally, Plaintiffs properly allege all actions were taken by County agents pursuant to official "policy, procedure, or customs held by the . . . County of Los Angeles" (*id.* ¶ 195) with "deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff[s]." *Id.*)  Under *Starr v. Baca*, (1) the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations . . . must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  652 F.3d 1202, 1216 (9th Cir. 2011).  Plaintiffs have identified the specific policies alleged and acted upon throughout the complaint, which, taken together, entitle Plaintiffs to relief. (Compl. ¶¶ 25-26, 40-42, 58-59, 64-72, 137-141, 158-160, 188-190.)  Moreover, identification of the specific actors and specific policies, procedures, or customs under *Monell* are a proper subject for discovery.  *See Rosales v. Cty. of San Diego*, --- F. Supp. 3d ---, Case No.: 19-CV-2303 JLS (LL), 2021 WL 37723, at * 21-22 (S.D. Cal. Jan. 5, 2021) (denying motion to dismiss on basis of allegedly threadbare allegations

because at early point in case "listing of informal or overarching deficient policies was adequate . . . particularly since information relating to the policies, customs, and practices of County Defendants . . . is likely to be easily available to them.") (internal quotations and citations omitted); *see also Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899-900 (N.D. Cal. 2013) (allegations identifying "the content of the policies, customs, or practices the execution of which [give] rise to []constitutional injuries" is sufficient to support a *Monell* claim.).  Because Plaintiffs have identified clear constitutional injuries and policies of Defendant County which were the moving force behind those injuries, Plaintiffs have exceeded the standard required under *Starr*.

## VI. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW

### A. Plaintiffs Have Alleged Sufficient Facts to State a Claim for Violation of Welf. & Inst. Code Section 17000 Under Both Negligence[4] and Mandatory Duty Theory

Plaintiffs have alleged facts sufficient to support their claim that the County is in violation of California Government Code section 815.6 and Welfare & Institutions Code section 17000 ("Section 17000") by failing to provide medically necessary care to unhoused individuals in Los Angeles.  Section 17000 mandates that counties provide support to "all incompetent, poor, indigent persons and those incapacitated by age, disease, or accident" when such persons are not otherwise supported.  Cal. Welf. & Inst. Code § 17000.  The purpose of this section is "to provide for protection, care, and assistance to the people of the state in need thereof," and to provide "appropriate aid and services to all of its needy and distressed . . . promptly and

---

[4] Defendant County challenges the third and fourth causes of action only insofar as it challenges the Negligence cause of action.  (MTD pp. 32-33).  Because Plaintiffs have alleged facts sufficient to support a Negligence claim, Plaintiffs' third and fourth claims against Defendant County must also stand.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

humanely . . . as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society." Cal. Welf. & Inst. Code § 10000. Courts have clarified that Section 17000 creates two separate obligations: (a) provision of "general assistance" in terms of financial or in-kind relief and (b) provision of subsistence medical care to the indigent. *Hunt v. Super. Ct.,* 21 Cal. 4th 984, 1011-13 (1999).

The County argues that because section 17000 permits counties to act with discretion in determining the "type and form of 'care and aid' they provide, 17000 necessarily does not impose a mandatory duty. (MTD p. 28.) In fact, while a County has some manner of discretion in *how* it provides relief, the County is still obligated *to* provide relief and only in accordance with statute. *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1245 (1996), *modified on denial of reh'g* (Sept. 18, 1996) ("Section 17000 . . . mandates that medical care be provided to indigents and section 10000 requires that such care be provided promptly and humanely. The duty is mandated by statute. There is no discretion concerning whether to provide such care.") and 1237 ("[C]ounties have a great deal of discretion in setting standards for eligibility and levels of aid. Nonetheless, the county's discretion can be exercised only within fixed boundaries and consistent with the underlying purpose of the statutes which impose the duty.") (internal quotation marks and citation omitted); *see also Hunt*, 21 Cal. 4th at 991 ("Although this provision confers upon a county broad discretion to determine eligibility for—and the types of—indigent relief, this discretion must be exercised in a manner that is consistent with—and that furthers the objectives of—state statutes.").

Under *Tailfeather,* "counties must, at a minimum, provide medical care, not just emergency care, and provide it at a level which remedies [] pain and infection . . ." 48 Cal. App. 4th at 1236. That care must be provided "at a level which does not lead to unnecessary suffering or endanger life and health." *Id.* at 1240. This mandate includes subsistence medical services and medically necessary services which are defined as those "reasonable and necessary to protect life, to prevent significant

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA  90025
Telephone 310-826-4700; Facsimile 310-826-4711

illness or significant disability, or to alleviate severe pain." Cal. Welf. & Inst. Code § 14059.5(a); *see also County of Alameda v. State Bd. of Control*, 14 Cal. App. 4th 1096, 1108 n.8 (1993).

If the County fails to meet this obligation, a court "must intervene to enforce compliance." *City & County of San Francisco v. Super. Ct.*, 57 Cal. App. 3d 44, 50 (1976). For example, in *Cooke v. Superior Court*, the court found that the County of San Diego was required to provide indigent residents with dental care sufficient to remedy substantial pain and infection. 213 Cal. App. 3d 401, 413-14 (1989). In *Harris v. Board of Supervisors,* the Ninth Circuit affirmed the district court's grant of a preliminary injunction under Section 17000 requiring Los Angeles County to continue to provide beds at two hospitals where the county had intended to reduce capacity, finding that eliminating the beds would violate Section 17000. 366 F.3d 754, 765 (9th Cir. 2004); *see also San Francisco*, 57 Cal. App. 3d at 50.

The County's reliance on *Scates v. Rydingsword*, is misplaced because that case rests upon the County's obligation for general relief and does not address the County's obligation to provide health care—two distinct obligations under Section 17000. 229 Cal. App. 3d 1085, 1113 (1991) *reh'g denied and op. modified* (May 31, 1991). And while the *Scates* court noted that the Welfare Code gave municipalities discretion in what services to provide homeless individuals and permitted cuts in services, there were no allegations that government policy encouraged and helped create the dangerous and unhealthy conditions that exist in LA County, particularly Skid Row.

Defendant County has a duty to provide "subsistence" medical care, and Plaintiffs have alleged sufficient facts to support the conclusion that "subsistence" medical care includes basic shelter. (*See* Compl. ¶¶ 40-42; 137-140.) Thus, Plaintiffs have alleged sufficient facts to support causes of action against the County under both California Government Code Section 815.6 and common law negligence theory.

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

**B.** **Plaintiffs Have Alleged Sufficient Facts to Support a Taxpayer Waste Claim under California Code of Civil Procedure Section 526a**

Contrary to the County's argument, Plaintiffs need not demonstrate an expenditure is "illegal" to constitute a claim under section 526a; "waste" may also be shown where the government conduct is:

> [A] useless expenditure of public funds that is incapable of achieving the ostensible goal. Certainly it reaches outright fraud, corruption, or collusion. Even when done in the exercise of a lawful power, public spending may qualify as waste if it is completely unnecessary or useless or provides no public benefit. Waste is money that is squandered, or money that is left uncollected, and thus is a constitutionally prohibited gift of public resources. Waste can exist even when there is no net loss, as when illegal procedures actually permit a saving of tax funds.

*Chiatello v. City & County of San Francisco*, 189 Cal. App. 4th 472, 482 (2010) (internal quotation marks and citations omitted). For example, in *Los Altos Property Owners Ass'n v. Hutcheon*, plaintiffs' allegations were sufficient to support a finding of waste under section 526a where they alleged defendant school district "will be expending public funds on a consolidation plan that costs a great deal more than alternative plans considered, without a finding of any additional public benefit." 69 Cal. App. 3d 22, 30 (1977). Similarly in *Harnett v. Sacramento County*, the California Supreme Court found that holding an election which could not achieve the stated goal would be a "useless expenditure and waste of public funds." 195 Cal. 676, 682-683 (1925). Likewise, Plaintiffs have properly alleged that taxpayer funds have been misused in a way that makes it impossible for Measure H to achieve the ostensible goal for which it was passed. (Compl. ¶¶ 58-59; 64-65 ("[T]here is little indication that the funds spent have actually reduced the homelessness crisis. The problem is outpacing the solution, and the goal of measure H—reducing and preventing homelessness—remains largely unrealized."); ¶¶ 66-72; 158-159 ("Measure H [was] promoted and passed by the electorate to address the homelessness crisis in a comprehensive and effective way. Instead, homelessness has steadily increased in the City and County."); ¶ 160 (". . .[T]he County [has] spent

enormous amounts of public funds on the homelessness crisis in ways that have had little or no effect on the crisis, and thereby wasted those funds.").)

### C.   Discretionary Immunity is Inapplicable to Claims for Equitable and Injunctive Relief

California Government Code section 814, which governs all claims for immunities under Title 1, Division 3.6, Part 2, Chapter 1 (inclusive of Government Code sections 815.2 and 820.2, cited by Defendant County), states: "Nothing in this part affects liability based on contract or the right to obtain relief <u>other than money or damages</u> against a public entity or public employee." (emphasis added); *see also* Cal. Gov. Code § 814, Legislative Committee Comments—Senate ("The various provisions of this part determine only whether a public entity or public employee is liable <u>for money or damages</u> . . . .  This section also declares that the provision of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief <u>other than money or damages</u>.") (emphasis added.).

Plaintiffs seek only equitable and injunctive relief for their California Tort causes of action (*see* Compl. ¶¶ 133, 141, 151; Prayer for Relief No. 2 ("As to the federal claims and claims under the California constitution only, compensatory damages and other special, general and consequential damages according to proof."). Defendant County's claims of immunity under 820.2 and 815.2 are inapplicable to Plaintiffs' action.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court DENY Defendant County's Motion to Dismiss in its entirety.  Alternatively, if the Court is inclined to grant Defendant's Motion to Dismiss, Plaintiffs request the opportunity to amend the complaint to overcome any legal insufficiencies the Court may have found.

Dated: April 19, 2021                                    /s/ Elizabeth A. Mitchell
                                                         SPERTUS, LANDES & UMHOFER, LLP
                                                         Matthew Donald Umhofer (SBN 206607)
                                                         Elizabeth A. Mitchell (SBN 251139)

                                                         *Attorneys for Plaintiffs*

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS