RODRIGO A. CASTRO-SILVA (SBN 185251), *County Counsel*
rcastro-silva@counsel.lacounty.gov
LAUREN M. BLACK (SBN 192302), *Assistant County Counsel*
AMIE S. PARK (SBN 273346), *Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1830 | Fax: (213) 626-7446

BYRON J. MCLAIN (SBN 257191)
bmclain@foley.com
FOLEY & LARDNER, LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Tel.: (310) 972-4500 | Fax: (213) 486-0065

LOUIS R. MILLER (SBN 54141)
smiller@millerbarondess.com
MIRA HASHMALL (SBN 216842)
EMILY A. RODRIGUEZ-SANCHIRICO (SBN 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | **CASE NO. 2:20-cv-02291 DOC-KES** <br><br> **DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:   May 10, 2021 <br> Time:   8:30 a.m. <br> Place:   Courtroom 9D <br><br> Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

*Miller Barondess, LLP*
*ATTORNEYS AT LAW*
*1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067*
*TEL: (310) 552-4400   FAX: (310) 552-8400*

507134.4

Case No. 2:20-cv-02291 DOC-KES
DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ...................................................................................7

II.  THE FACTS ..........................................................................................9

    A.  The Plaintiffs ...............................................................................9

    B.  The Complaint .............................................................................9

    C.  The County's Efforts To Combat Homelessness .......................10

    D.  Plaintiffs Attempt To Rewrite Their Lawsuit Through Their Motion ........................................................................................12

III.  LEGAL STANDARD .........................................................................13

IV.  ARGUMENT ......................................................................................14

    A.  Plaintiffs Lack Article III And Prudential Standing .................14

        1.  Injuries to Third Parties Do Not Support Standing ..................15

        2.  The Alleged Injuries Are Not Traceable to the County .............15

        3.  Plaintiffs Cannot Show Redressibility......................................18

        4.  Plaintiffs Also Lack Prudential Standing .................................21

    B.  Plaintiffs Have No Likelihood Of Success On The Merits .......21

        1.  The Mandatory Duty Claim Fails as a Matter of Law ..............22

        2.  The State-Created Danger Doctrine Does Not Apply ...............24

        3.  Plaintiffs Cannot Assert a Procedural Due Process Claim ........26

        4.  The County Did Not Create a Public or Private Nuisance .........27

    C.  The Requested Injunction Is Not Sound Policy ........................28

    D.  Plaintiffs Have Not Established Irreparable Harm....................29

    E.  Plaintiffs Make No Showing On The Remaining Elements.......30

V.  CONCLUSION ...................................................................................31

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*All. for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011)....................................................21

*Allen v. Wright*,
    468 U.S. 737 (1984)....................................................21

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
    750 F.2d 1470 (9th Cir. 1985)....................................................17

*Christensen v. Yolo Cty. Bd. of Supervisors*,
    995 F.2d 161 (9th Cir 1993)....................................................26

*City of Los Angeles v. County of Kern*,
    581 F.3d 841 (9th Cir. 2009)....................................................21

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)....................................................14

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015)....................................................13, 14, 21

*Halverson v. Skagit County*,
    42 F.3d 1257 (9th Cir. 1994)....................................................26

*Hamdan v. Rumsfeld*,
    548 U.S. 557 (2006)....................................................23

*Harris v. Bd. of Supervisors*,
    366 F.3d 754 (9th Cir. 2004)....................................................23

*Harris v. County of Riverside*,
    904 F.2d 497 (9th Cir. 1990)....................................................26

*Horne v. Flores*,
    557 U.S. 433 (2009)....................................................20

*Immigrant Legal Res. Ctr. v. City of McFarland*,
    827 F. App'x 749 (9th Cir. 2020) (mem.)....................................................30

*Juliana v. United States*,
    947 F.3d 1159 (9th Cir. 2020)....................................................14, 18, 19

*Kennedy v. City of Ridgefield*,
    439 F.3d 1055 (9th Cir. 2006)....................................................24

*L.W. v. Grubbs*,
    974 F.2d 119 (9th Cir. 1992)....................................................24

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Lewis v. Casey,*
518 U.S. 343 (1996) .................................................................. 15, 19, 20

*Linda R.S. v. Richard D.,*
410 U.S. 614 (1973) ........................................................................ 15, 16

*Martin v. City of Boise,*
920 F.3d 584 (9th Cir. 2019) ................................................................. 10

*Maya v. Centex Corp.,*
658 F.3d 1060 (9th Cir. 2011) ...................................................... 15, 16, 17

*Missouri v. Jenkins,*
515 U.S. 70 (1995) ............................................................................... 20

*Monell v. Dep't of Soc. Servs. of City of New York,*
436 U.S. 658 (1978) .............................................................................. 24

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
810 F.3d 631 (9th Cir. 2015) ................................................................. 26

*Park Vill. Apartment Tenants Ass'n. v. Mortimer Howard Tr.,*
636 F.3d 1150 (9th Cir. 2011) ............................................................... 14

*Patel v. Kent Sch. Dist.,*
648 F.3d 965 (9th Cir. 2011) ................................................................. 24

*Pauluk v. Savage,*
836 F.3d 1117 (9th Cir. 2016) ............................................................... 24

*Raines v. Byrd,*
521 U.S. 811 (1997) .............................................................................. 14

*Rizzo v. Goode,*
423 U.S. 362 (1976) .................................................................. 18, 19, 20, 21

*Rucho v. Common Cause,*
139 S. Ct. 2484 (2019) .......................................................................... 18

*Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.,*
997 F.2d 484 (8th Cir. 1993) ................................................................. 21

*Santa Cruz Homeless Union v. Bernal,*
2021 WL 222005 (N.D. Cal. Jan. 20, 2021) .......................................... 25, 26

*Stanley v. Univ. of S. Cal.,*
13 F.3d 1313 (9th Cir. 1994) ................................................................. 14

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ............................................................................... 14

*Townley v. Miller,*
722 F.3d 1128 (9th Cir. 2013) ............................................................... 15

*United States v. Lazarenko,*
    476 F.3d 642 (9th Cir. 2007).............................................................21

*Warth v. Seldin,*
    422 U.S. 490 (1975)..........................................................15, 16, 21

*Wash. Envtl. Council v. Bellon,*
    732 F.3d 1131 (9th Cir. 2013)..........................................................15

*Waste Action Project v. Dawn Mining Corp.,*
    137 F.3d 1426 (9th Cir. 1998)..........................................................23

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)..................................................13, 29, 30

*Yazzie v. Hobbs,*
    977 F.3d 964 (9th Cir. 2020)......................................................14, 17

**STATE CASES**

*Ass'n for Neighborhood Rehab., Inc. v. Bd. of Assessors of City of Ogdensburg,*
    917 N.Y.S.2d 734 (N.Y. App. Div. 2011) ..........................................16

*Caldwell v. Montoya,*
    10 Cal. 4th 972 (1995)......................................................................28

*City of Dublin v. County of Alameda,*
    14 Cal. App. 4th 264 (1993)............................................................27

*Cooke v. Superior Court,*
    213 Cal. App. 3d 401 (1989)............................................................23

*Cty. Sanitation Dist. No. 2 v. County of Kern,*
    127 Cal. App. 4th 1544 (2005)........................................................27

*Freeny v. City of San Buenaventura,*
    216 Cal. App. 4th 1333 (2013)........................................................28

*Haggis v. City of Los Angeles,*
    22 Cal. 4th 490 (2000)......................................................................22

*Hunt v. Superior Court,*
    21 Cal. 4th 984 (1999) ....................................................................22

*Matter of J.P.,*
    486 Mass. 117 (Mass. 2020) ..........................................................16

*Richards v. Dep't of Alcoholic Beverages Control,*
    139 Cal. App. 4th 304 (2006)..........................................................28

*Richeson v. Helal,*
    158 Cal. App. 4th 268 (2007)..........................................................27

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

5

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*San Diego Gas & Elec. Co. v. Superior Court*,
    13 Cal. 4th 893 (1996) ..............................................................................26

*State v. Pippin*,
    200 Wash. App. 826 (Wash. Ct. App. 2017) .................................................16

*Tailfeather v. Bd. of Supervisors*,
    48 Cal. App. 4th 1223 (1996)..........................................................22, 24

*Taylor v. Buff*,
    172 Cal. App. 3d 384 (1985) .......................................................................28


**FEDERAL STATUTES**

42 U.S.C. § 1983..............................................................................................24


**STATE STATUTES**

Cal. Gov't Code § 815.2 ..................................................................................28

Cal. Gov't Code § 815.6 ..................................................................................22

Cal. Gov't Code § 820.2 ..................................................................................28

Cal. Welf. & Inst. Code § 17000 ..........................................................22, 23, 24

Cal. Welf. & Inst. Code § 17001 ..............................................................22, 24


**OTHER AUTHORITIES**

Cal. Const. art. XI, § 5(a) ................................................................................27

Cal. Const. art. XI, § 7 ....................................................................................27

U.S. Const. amend. XIV ...................................................................................26

U.S. Const. art. III...................................................................................14, 15

# I.      **INTRODUCTION**

The County of Los Angeles ("County") is undertaking tremendous efforts to support people experiencing homelessness ("PEH").  In Plaintiffs' Complaint, they acknowledge that the County has made substantial efforts to combat homelessness and that such efforts are "impressive and commendable."  The County spends hundreds of millions of dollars each year to provide housing and services to those experiencing homelessness and has stepped up its efforts in recent years.  With funding from voter-approved Measure H, the County developed and funded the Homeless Initiative, which is implementing 47 Strategies recommended by experts, academics, public interest groups, homeless advocates, and other stakeholders to combat homelessness.  The COVID-19 pandemic presented new challenges, which the County met with innovative strategies such as Project Roomkey, quarantine and isolation sites, and expanded outreach with COVID-19 testing to reduce the spread of the Corona virus among PEH Countywide.

While the County shares Plaintiffs' stated goal of providing shelter and housing for PEH in Skid Row and throughout Los Angeles County, the requested preliminary injunction is without legal basis and not grounded in sound public policy.  A preliminary injunction is an extraordinary remedy.  Here, the request is for a mandatory injunction—which seeks to unilaterally impose directives developed by the Plaintiffs on both the County and the City of Los Angeles ("City").  Mandatory injunctions are disfavored under the law and are rarely granted.  The Ninth Circuit has made it clear that a plaintiff seeking a mandatory injunction has a "doubly demanding" burden to show that the facts and the law clearly support the requested injunction.

The mandatory injunction Plaintiffs ask for—on an expedited basis and a paper-thin record—is for the Court to take over core policy functions that are entrusted to politically accountable local government officials.  The U.S. Supreme Court has repeatedly instructed district courts that their equitable powers do not

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

permit the usurpation of core policy functions entrusted to elected officials. Without an underlying violation of law—and Plaintiffs fail to identify any malfeasance by the County—a federal court has no remedial authority.

Plaintiffs cannot meet their burden to show the County has violated the law. The County, years ago, recognized the need to prioritize addressing homelessness and has gone above and beyond its legal obligations in Los Angeles County. Plaintiffs' theory in the Motion is that homeless encampments have increased in Skid Row because of a policy of "containment," but Plaintiffs admit this was a *City* policy. Plaintiffs nevertheless seek to enjoin the County because it allegedly "concentrates" social and medical services to those in need in Skid Row. In other words, the County is at fault, according to Plaintiffs, because it responded to the needs of PEH by providing services where PEH reside. There is no legal authority for the Court to issue a mandatory injunction because the County provides services to its residents. Indeed, it would be illogical and absurd.

The hook for the extraordinary relief Plaintiffs seek—this "concentration" theory—*is not alleged in the Complaint*. Plaintiffs' claims are based on the theory that the County was "negligent" in spending Measure H and other funds. The County recently filed a Motion to Dismiss explaining why that theory of liability is not cognizable, as courts cannot compel County officials to exercise their discretion in a particular manner. As a result, Plaintiffs decided to pivot and assert a brand new theory as the basis for their request for a mandatory injunction. This they cannot do. A plaintiff is limited to the four corners of its complaint.

Plaintiffs not only have changed their legal theory, they have also tried to recast themselves as homeless advocates. The Motion makes it seem like this case was brought by PEH living in Skid Row or a public interest organization seeking to vindicate their rights. Not so. Rather, the Motion is a red herring to distract from the fact that Plaintiffs are property and business owners who live and work in Skid Row. They do not seek to vindicate the rights of PEH. In fact, they are

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

*adverse* to PEH.  They demand the City *resume enforcement* of its anti-vagrancy laws to remove the tents and other property belonging to PEH, and to forcibly relocate PEH from Skid Row to other areas.  Despite the lofty rhetoric in the Motion, Plaintiffs' declarations confirm this case is about their property values.

The County is committed to addressing homelessness, but not through litigation.  The requested injunction is improper and therefore the Motion should be denied.

## II.   THE FACTS

### A.   The Plaintiffs

The LA Alliance for Human Rights ("LA Alliance") is an unincorporated association of members working to address the homeless crisis.  (Compl. ¶ 76.) Each of its members is a resident of the City of Los Angeles.  (*Id.*)  None of the Plaintiffs are currently homeless.

All eight of the individual Plaintiffs are members of LA Alliance.  (*Id.*) Seven of the individual Plaintiffs live, work and/or own property in Skid Row. (*Id.* ¶¶ 77-106, 112-22.)  The only Plaintiff not in Skid Row is George Frem (*id.* ¶¶ 108-11), who owns an auto-repair shop in Mar Vista near a homeless encampment underneath the 405 freeway (*id.* ¶ 108).  All Plaintiffs are located in the City of Los Angeles.

### B.   The Complaint

The Complaint acknowledges that the "City and the County combined spend over a billion dollars annually providing police, emergency, and support services to those living on the streets."  (Compl. ¶ 2.)  Plaintiffs recognize that "[o]fficials in both the County and City have gone to great lengths in the last couple years to address this crisis" and avers that these efforts are "impressive and commendable." (*Id.* ¶ 18; *id.* ¶ 74 ("Plaintiffs do not suggest the City and County are doing nothing; the amount of effort and resources that have been devoted to addressing this issue is considerable and admirable.").)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Nevertheless, the Complaint alleges that the City is responsible for the recent growth of homeless encampments in Skid Row.  Specifically, the Complaint alleges that, as a result of settlements and court orders in civil litigation, the City has not been able to fully enforce its anti-vagrancy laws.  (*E.g.*, *id.* ¶¶ 47-48.)  The most significant court order, according to Plaintiffs, is the recent decision by the Ninth Circuit in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019).  (*Id.* ¶ 47.) Plaintiffs allege the Ninth Circuit held in *Martin* that municipal governments cannot enforce anti-vagrancy laws to evict PEH unless there are a sufficient number of beds within that jurisdiction to house every single PEH.  (*Id.*)  Plaintiffs allege this decision prevents the City from evicting PEH from Skid Row because there are not enough homeless shelters in the City to house all PEH.

The Complaint claims that the City has sufficient funds to build enough shelters.  Plaintiffs allege that Proposition HHH will raise $1.2 billion over the next 10 years and that those funds would be sufficient if utilized efficiently and according to Plaintiffs' recommendations.  (*Id.* ¶ 61.)

As to the County, Plaintiffs do not allege the County is responsible for the recent growth in homeless encampments.  Rather, Plaintiffs claim that the County is liable because it could help the City build enough homeless shelters so that the City's enforcement of anti-vagrancy laws can resume.  To support this, Plaintiffs allege the County has sufficient funds within its general fund and in sales tax revenue raised from Measure H to build enough homeless shelters to house all PEH within Los Angeles County.  Plaintiffs also allege there is approximately $1 billion in tax revenue collected pursuant to the Mental Health Services Act ("MHSA") that could be used to increase the number of beds available to PEH at mental health facilities.  (*Id.* ¶ 66.)  Plaintiffs further claim there are emergency funds available that have not been utilized.  (*Id.* ¶ 67.)

**C.     The County's Efforts To Combat Homelessness**

Plaintiffs note that the County spends hundreds of millions of dollars each

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

year to serve PEH.  (Compl. ¶¶ 66-67.)  Plaintiffs' admissions as to the "impressive and commendable" efforts by the County are supported by the public record.

On August 17, 2015, the Los Angeles County Board of Supervisors ("Board") launched the Homeless Initiative to combat the homeless crisis in Los Angeles. (Declaration of Cheri Todoroff ("Todoroff Decl.") ¶ 6 & Ex. A.)  The Homeless Initiative was created following 18 policy summits on nine topics with 25 County departments, 30 cities and other public agencies, and over 100 community partners and stakeholders.  (*Id*.)

In March 2017, voters approved Measure H, which is a quarter cent increase to the County's sales tax, to provide an ongoing revenue stream to address the homeless crisis.  (*Id*. ¶ 7 & Ex. B.)  In the ensuing years, Measure H generated an estimated $355 million annually, which accelerated the critical work of the Homeless Initiative to improve the lives of individuals and families experiencing homelessness.  (*Id*. ¶ 9 & Ex. D.)  The County allocates voter-approved Measure H funds, which is codified in the County Code, to execute the strategies set forth in the Homeless Initiative.  (*Id*. ¶¶ 8, 10 & Exs. C, E.)  A Citizens' Oversight Advisory Board reviews all expenditures from the special sales tax, and its audits are publicly available.  (*Id*. ¶ 9.)

The County and its partners have built a robust infrastructure to provide strategic and deliberate services to PEH throughout the County.  (*Id*. ¶ 25.)  Through 11 different County departments and partner agencies—Children and Family Services, Health Services, Mental Health, Public Health, Public Social Services, LAHSA, Development Authority, Sheriff's Department, Probation, Public Defender and Workforce Development, Aging and Community Services—the County provides an extensive array of services to PEH.  (*Id*. & Ex. K.)

Since the creation of the Homeless Initiative and passage of Measure H, the County has accelerated its work to improve the lives of PEH in the region.  On February 22, 2021, the County's CEO submitted the Countywide Homeless

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Initiative's Year Four performance evaluation prepared by Public Sector Analytics
2   ("PSA") to the Board.  (Todoroff Decl. ¶¶ 12-13 & Ex. G.)  The PSA evaluation
3   was prepared by Dr. Halil Toros (Statistical Analytics Consultant, USC Price Center
4   for Social Innovation), Dr. Dennis Culhane (Professor, University of Pennsylvania,
5   Social Policy & Practice), and Dr. Stephen Metraux (Assistant Professor, University
6   of Delaware, Biden School of Public Policy & Administration).  (*Id.*)

7        The PSA determined that the Homeless Initiative is responsible for 30,900
8   permanent housing placements and 52,201 interim housing placements, funded in
9   whole or in part through the Homeless Initiative, since it was adopted.  (*Id.*)  The
10  PSA reported that, "for the third consecutive year, over 20,000 people experiencing
11  homelessness exited homeless services to [Permanent Housing ('PH')] placements,"
12  and "nearly 10,000 of these PH placements occurred within the purview of HI-
13  supported initiatives."  (*Id.*)

14       As to MHSA funds, Plaintiffs claim there are $1 billion in available funds, but
15  that too is contradicted by the public record.  The County's MHSA funds are
16  allocated according to a three-year expenditure plan approved by the State.  The
17  California Department of Health Services and the MHSA Oversight and
18  Accountability Commission review and approve each county's three-year program
19  and expenditure plan.  [Dkt. No. 197.]  This process is subject to State monitoring
20  and supervision.  [*Id.*]  MHSA spending must comply with a detailed regulatory
21  scheme, including strict state guidelines regarding the eligible service population
22  and the eligible services and programs.  [*Id.*]

23       **D.    Plaintiffs Attempt To Rewrite Their Lawsuit Through Their**
24              **Motion**

25       On March 29, 2021, the County filed a motion to dismiss ("MTD").  [Dkt.
26  No. 256.]  In the MTD, the County argued that Plaintiffs lack standing to assert their
27  claims against the County and that, in the alternative, Plaintiffs have not stated a
28  claim against the County.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

The County explained that Plaintiffs lacked standing because they did not allege a sufficient causal link between their injuries (lost business and diminished property values) and the alleged wrongdoing by the County (negligence in spending Measure H funds).  The County further argued that the injunctive relief Plaintiffs seek in their Complaint cannot be awarded by this Court, and thus Plaintiffs failed to allege that their injuries are redressible.  On the merits, the County argued that its officials have discretion on how to allocate Measure H and other funds, which prohibits Plaintiffs from prevailing on their negligence and mandatory duty claims against the County.

Plaintiffs filed their Motion two weeks after the County filed its MTD.  In their Motion, Plaintiffs changed their theory of liability against the County.  The Motion is not brought on the basis that the County was "negligent" in spending public funds, which is the thrust of Plaintiffs' Complaint.  Rather, Plaintiffs assert that the County "concentrates" its services in Skid Row which sometimes has contributed to the increase in homeless encampments there.  (Mot. at 8:16-17.)  Moreover, this theory is both illogical and inaccurate.  (Todoroff Decl. ¶¶ 21-26.)  How can the County be in violation of the law by providing services where they are most needed?

## III.  **LEGAL STANDARD**

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Id.* at 20.

In seeking a mandatory injunction, Plaintiffs face an even higher burden.  *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (a mandatory injunction is one that orders a responsible party to take action).  Mandatory injunctions are

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

13
DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

1  "particularly disfavored" because they go "well beyond simply maintaining the

2  status quo *pendente lite*." *Id.* (quoting *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313,

3  1320 (9th Cir. 1994)).  It is well-established that "mandatory injunctions should not

4  issue in 'doubtful cases.'" *Id.* (quoting *Park Vill. Apartment Tenants Ass'n. v.*

5  *Mortimer Howard Tr.*, 636 F.3d 1150, 1160 (9th Cir. 2011)).  The facts and law

6  must "clearly favor the moving party." *Id.* (citation omitted).

7  **IV.   ARGUMENT**

8       **A.    Plaintiffs Lack Article III And Prudential Standing**

9       No principle is more fundamental to the judiciary's proper role in our system

10  of government than the constitutional limitation of federal-court jurisdiction to

11  actual cases or controversies. *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Standing is

12  an essential and unchanging part of the case-or-controversy requirement of Article

13  III. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).  A plaintiff must

14  establish standing throughout the litigation. *Juliana v. United States*, 947 F.3d 1159

15  (9th Cir. 2020) (affirming denial of preliminary injunction because plaintiffs lacked

16  Article III standing).

17       Article III standing is a critical issue when a federal lawsuit is brought by

18  taxpayers challenging discretionary spending by a municipality on issues that impact

19  the general welfare of its residents. *DaimlerChrysler Corp.*, 547 U.S. at 346

20  (holding that state taxpayers have no standing under Article III to challenge state tax

21  or spending decisions by virtue of their status as taxpayers).  Generalized grievances

22  about local government spending are not viable. *Id.* at 348.

23       To have Article III standing, a plaintiff must establish that (1) he or she

24  suffered an "injury in fact"; (2) there is a is fairly traceable connection to the alleged

25  conduct of the defendant; and (3) the injury can be redressed by a federal court.

26  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citation omitted).

27  At the "preliminary injunction stage," plaintiffs "must make a clear showing of each

28  element of standing." *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (quoting

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013)).

### 1.   Injuries to Third Parties Do Not Support Standing

The Motion primarily addresses the plight of the unhoused population living on Skid Row, but Plaintiffs are *not* persons experiencing homelessness on Skid Row *nor* do they seek to represent the Skid Row unhoused population.  This case is brought by an unincorporated association of property and business owners who claim that they have lost property value and business revenue due to the increase of homeless encampments on Skid Row.  (Compl. ¶¶ 55-57, 76-92, 108-11.)

This distinction is critical, as it is well-established that alleged injuries to third parties—here, PEH in Skid Row—cannot be used to support Article III standing. *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (plaintiffs must "assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties"); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("If . . . a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care simply on the ground that the prison medical facilities were inadequate, the essential distinction between judge and executive would have disappeared: it would have become the function of the courts to assure adequate medical care in prisons." (citation omitted)).

### 2.   The Alleged Injuries Are Not Traceable to the County

To show causation, Plaintiffs must establish that their injuries are "fairly traceable" to the County's alleged misconduct.  *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (citation omitted).  The line of causation must be "more than 'attenuated.'"  *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (citation omitted).  Where the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs'

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400     FAX: (310) 552-8400

15

1    injuries, the causal chain is too weak to support standing.  *Id.*

2    Plaintiffs claim they have suffered injuries as a result of the increase of

3    homeless encampments in Skid Row, but it is widely recognized that there are a

4    variety of factors that contribute to homelessness.  *Matter of J.P.*, 486 Mass. 117,

5    124 (Mass. 2020) ("We further note that people become homeless for many reasons,

6    including, but not limited to, being a domestic abuse survivor, being unemployed or

7    underemployed, and falling on hard times."); *State v. Pippin*, 200 Wash. App. 826,

8    844-45 (Wash. Ct. App. 2017) (noting that the Washington Legislature found that

9    "there are many causes of homelessness, including a shortage of affordable housing;

10    a shortage of family-wage jobs which undermines housing affordability; a lack of an

11    accessible and affordable health care system . . .; domestic violence; and a lack of

12    education and job skills necessary to acquire adequate wage jobs" (citation

13    omitted)); *Ass'n for Neighborhood Rehab., Inc. v. Bd. of Assessors of City of*

14    *Ogdensburg*, 917 N.Y.S.2d 734, 736 (N.Y. App. Div. 2011) ("While indigency is

15    certainly a major cause of homelessness, the evidence established that there are

16    other causes—often overlapping—including mental health problems, substance

17    abuse and domestic violence.").

18    Given that homelessness is a complex social problem, Plaintiffs face a heavy

19    burden to show that the increase in homeless encampments on Skid Row was

20    *caused by* the County.  *See Warth*, 422 U.S. at 508-10 (taxpayers lacked standing to

21    challenge zoning regulations as the link between their increased tax burden to fund

22    low-income housing in their own town was not sufficiently linked to the alleged

23    failure to support low-income housing in a neighboring town); *Linda R.S.*, 410 U.S.

24    at 617-18 (plaintiff lacked standing to challenge district attorney's failure to

25    prosecute fathers for delinquent child support because the link between unpaid

26    support and prosecutorial discretion was too attenuated).

27    Plaintiffs claim the increase in the Skid Row homeless encampments was

28    caused by a policy of "containment," but admit that this was a *City* policy.  (Mot. at

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

8:16-17 ("While the policies of Containment and Redlining are the City's . . . .").) Plaintiffs lack standing to seek an injunction against the County based on an "independent decision[]" made by the City. *Maya*, 658 F.3d at 1070 (citation omitted).

The only "link" between Plaintiffs' alleged injuries and the County is the theory that the County "concentrates" its service delivery in Skid Row.[1] (Mot. at 8:18-20.) But that is not supported by the evidence in the record, as Plaintiffs rely only on conclusory declarations without supporting facts. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing grant of preliminary injunction because the plaintiff's declarations were "conclusory and without sufficient support in facts"). As noted above, Plaintiffs' theory against the County is nonsensical as Plaintiffs try to fault the County for doing what it is supposed to do—deliver services.

Plaintiffs rely on the declaration of Don Steier (Mot. at 9:4-9), an attorney, Chairperson of LA Alliance, and the General Counsel of a property owners association (CCEA). [Dkt. 265-2 at p. 60, ¶¶ 2-4.] He does not define or explain what he means by "concentration" of services, or provide specific facts to support his opinion. [*Id.* at pp. 60-61, ¶¶ 12, 14.] The declaration of Reverend Andrew J. Bales also does not satisfy Plaintiffs' burden. [Dkt. No. 265-2 at pp. 3-4, ¶ 3.] Reverend Bales asserts his "belief" that the County has a policy of concentrating services on Skid Row, but points to no specific facts to support any causation or wrongdoing. [*Id.*] Plaintiffs must make a "clear showing" to obtain their requested injunction against the County, but they have not done so. *Yazzie*, 977 F.3d at 966 (citation omitted).

Moreover, Plaintiffs' "concentrated" services theory is incorrect. The County provides services to PEH throughout Los Angeles County. (Todoroff Decl. ¶¶ 21-

---

[1] Plaintiffs do not define what they mean by "concentration" of services.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

26.)  The County offers the same suite of services and programs to the homeless in Skid Row that it offers throughout the County.  (*Id.*)  The location of service delivery is a function of where the services are needed.  (*Id.* & Exs. H, K.)

### 3. <u>Plaintiffs Cannot Show Redressibility</u>

"To establish Article III redressibility, the plaintiffs must show that the relief they seek is . . . within the district court's power to award."  *Juliana*, 947 F.3d at 1170.  "As the Supreme Court recently explained, 'a constitutional directive or legal standards' must guide the courts' exercise of equitable power."  *Id.* at 1173 (quoting *Rucho v. Common Cause*, 139 S. Ct. 2484, 2508 (2019)).  "Absent those standards, federal judicial power could be 'unlimited in scope and duration,' and would inject 'the unelected and politically unaccountable branch of the Federal Government [into] assuming such an extraordinary and unprecedented role.'"  *Id.* (alteration in original) (quoting *Rucho*, 139 S. Ct. at 2507).

Going back almost 50 years, the Supreme Court rejected this type of interference with matters of local policy.  In *Rizzo v. Goode*, 423 U.S. 362 (1976), plaintiffs filed a class action against the City of Philadelphia and local officials alleging police mistreatment of minority citizens and other city residents.  Plaintiffs sought equitable relief, including appointment of a receiver to supervise the police department and civilian review of police activity.  The district court found that police procedures discouraged the filing of civilian complaints and minimized the consequences of police misconduct.  *Id.* at 368-69.  The court ordered the city to submit "a comprehensive program for dealing adequately with civilian complaints," in accordance with comprehensive court-ordered "guidelines."  *Id.* at 369.

The proposed program, which was developed to comply with the court's order, was incorporated into a final judgment.  423 U.S. at 365.  Among other things, the police commissioner was required to implement a directive governing the manner in which citizens' complaints against police officers should be handled.  *Id.* The Court of Appeals affirmed, holding that the equitable relief ordered "appeared

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

to have the potential for prevention of future police misconduct." *Id*. at 365-66.

The Supreme Court reversed, holding that the judgment was "an unwarranted intrusion by the federal judiciary into the discretionary authority committed to [the city officials] by state and local law to perform their official functions." 423 U.S. at 366. "[F]ederal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" *Id*. at 378 (citation omitted). Thus, a plaintiff seeking to enjoin a government agency "must contend with 'the well-established rule that the Government has traditionally been granted the widest latitude in the "dispatch of its own internal affairs."'" *Id*. at 378-79 (citations omitted).

Twenty years later, the Supreme Court reaffirmed the limited scope of federal equity power in *Lewis v. Casey*, 518 U.S. 343 (1996). There, prison inmates sued the Arizona Department of Corrections for alleged violations of their right of access to the courts. A special master proposed a permanent injunction with changes to the Arizona state prison system, which the court adopted. *Id.* at 346-47.

The Supreme Court held that the district court's actions violated separation of powers,[2] explaining that "it is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." 518 U.S. at 349. As aptly put in the concurring opinion:

> Principles of federalism and separation of powers impose stringent limitations on the equitable power of federal courts. When these principles are accorded their proper respect, Article III cannot be understood to authorize the Federal Judiciary to take control of core state institutions like prisons, schools, and hospitals, and assume responsibility for making the difficult policy judgments that state officials are both constitutionally

---

[2] "[R]edressibility questions implicate the separation of powers." *Juliana*, 947 F.3d at 1173.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

> entitled and uniquely qualified to make. Broad remedial decrees strip state administrators of their authority to set long-term goals for the institutions they manage and of the flexibility necessary to make reasonable judgments on short notice under difficult circumstances.

*Id.* at 385 (Thomas, J., concurring) (citation omitted).

In *Horne v. Flores*, 557 U.S. 433 (2009), English Language–Learner ("ELL") students and their parents filed a class action alleging that Arizona was violating the Equal Educational Opportunities Act by failing to take appropriate action to overcome language barriers.  The district court issued an injunction requiring the state to increase funding for ELL programs, held the State in civil contempt for failing to do so, and rejected the State's proposed legislation as inadequate. Arizona's Superintendent of Public Instruction and Arizona legislators intervened, moved to purge the contempt order, and sought relief from the injunction.  The district court denied the requests, and the Court of Appeals affirmed.

The Supreme Court reversed, cautioning against federal court decrees that have the effect of dictating state or local budget priorities because "[s]tates and local governments have limited funds."  557 U.S. at 448 (citing *Missouri v. Jenkins*, 515 U.S. 70, 131 (1995) ("A structural reform decree eviscerates a State's discretionary authority over its own program and budgets and forces state officials to reallocate state resources and funds.")).  It held that the lower court "improperly substituted its own educational and budgetary policy judgments for those of the state and local officials to whom such decisions are properly entrusted."  *Id.* at 455.

Here, Plaintiffs ask the Court to issue injunctive relief in contravention of the principles established in *Rizzo*, *Lewis*, and *Horne*.  Plaintiffs want this Court to dictate how the County addresses homelessness, how the County allocates its financial and human resources, and how the County prioritizes housing for PEH. The Court may not substitute its own policy judgments for those of elected County officials and usurp the County's discretionary authority to "dispatch . . . its own

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  internal affairs.'"  *Rizzo*, 423 U.S. at 379.

2  **4.   Plaintiffs Also Lack Prudential Standing**

3  There exists a body of "judicially self-imposed limits on the exercise of

4  federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 751 (1984), "founded in

5  concern about the proper—and properly limited—role of the courts in a democratic

6  society," *Warth*, 422 U.S. at 498.  These concerns are commonly referred to as

7  "prudential" standing.  *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845

8  (9th Cir. 2009) (citation omitted).  "Prudential standing encompasses 'the general

9  prohibition on a litigant's raising another person's legal rights, the rule barring

10  adjudication of generalized grievances more appropriately addressed in

11  representative branches, and the requirement that a plaintiff's complaint fall within

12  the zone of interests protected by the law invoked.'"  *United States v. Lazarenko*,

13  476 F.3d 642, 649-50 (9th Cir. 2007) (quoting *Allen*, 468 U.S. at 751).

14  Plaintiffs' generalized grievances are not redressible in the courts.  476 F.3d

15  at 649-50.  Plaintiffs lack standing as a "prudential" matter.

16  **B.   Plaintiffs Have No Likelihood Of Success On The Merits**

17  Plaintiffs also cannot obtain the requested injunction because they have no

18  likelihood of success on the merits.[3]  *Garcia*, 786 F.3d at 740 (mandatory

19  injunctions are disfavored, so plaintiffs' burden is "doubly demanding"; the facts

20  and the law must "clearly favor the moving party" (citation omitted)).  The

21  likelihood of success factor is the "most important."  *Id.*  This is especially the case

22  when the requested mandatory injunction would give the plaintiff "substantially the

23  relief it would obtain after a trial on the merits."  *Sanborn Mfg. Co., Inc. v.*

24  *Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993) (citation

25  ─────────────────

26  [3] Because Plaintiffs seek a mandatory injunction, the "serious questions" test in
*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011), does not

27  apply.  *Garcia*, 786 F.3d at 740 ("[M]andatory injunctions should not issue in

28  'doubtful cases.'" (citation omitted)).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  omitted).

2  ### 1.    The Mandatory Duty Claim Fails as a Matter of Law

3  Plaintiffs argue they are likely to succeed on their Second Cause of Action,

4  which asserts that the County violated California Government Code section 815.6

5  and Welfare & Institutions Code section 17000 ("WIC § 17000").  (Mot. at 26:1 -

6  28:18.)  Plaintiffs contend that, under WIC § 17000, the County owes a duty to

7  provide housing to the unhoused, and this obligation is a "mandatory duty"

8  actionable under Government Code section 815.6.  (*Id.*)  This allegation is

9  unsupported by law.

10  To establish a claim for violation of a mandatory duty, a plaintiff must first

11  prove that the statute at issue is "*obligatory*, rather than merely discretionary or

12  permissive, in its directions to the public entity; it must *require*, rather than merely

13  authorize or permit, that a particular action be taken or not taken."  *Haggis v. City of*

14  *Los Angeles*, 22 Cal. 4th 490, 498 (2000).  Further, it is not enough that the public

15  entity has an obligation to perform a function if the function itself involves the

16  exercise of discretion.  *Id.*

17  Plaintiffs misrepresent what WIC § 17000 requires.  WIC § 17000 imposes

18  two obligations on counties:  (1) to provide general assistance ("GA") to the

19  indigent; and (2) to provide medically necessary care to "medically indigent

20  persons."  *Hunt v. Superior Court*, 21 Cal. 4th 984, 1002-03 (1999).  Section 17001

21  leaves it to the Board of Supervisors to adopt the "standards of aid and care."  Cal.

22  Welf. & Inst. Code § 17001 ("The *board of supervisors of each county*, or the

23  agency authorized by county charter, shall adopt standards of aid and care for the

24  indigent and dependent poor of the county or city and county." (emphasis added)).

25  Because the County has *discretion* to determine how to discharge its obligations, the

26  mandatory duty claim fails.  *Haggis*, 22 Cal. 4th at 498; *Tailfeather v. Bd. of*

27  *Supervisors*, 48 Cal. App. 4th 1223, 1246 (1996) ("Achieving the mandated level of

28  care requires the exercise of considerable discretion as the County chooses between

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

a multitude of potential courses of action.").

Plaintiffs do not, and cannot, contend that the County has failed to discharge its obligations under WIC § 17000.  They concede that the County provides GA and medically necessary care.  Their mandatory duty claim is based on a more expansive reading of the "health care" obligation.  (Mot. at 28:4.)  According to Plaintiffs, "housing is healthcare."  (*Id.* at 28:8-9; Compl. ¶¶ 135-40.)

Plaintiffs do not cite any statute or case that supports this argument, because there is none.[4]  Grasping at straws, they point to a statement LAHSA executive director Heidi Marston made at a recent town hall meeting.  (Mot. at 27:8-9.)  This statement by Ms. Marston—who is not a party to the case and was not speaking on behalf of the County—does not provide a *legal* basis to argue that housing equates to "medical care" under the statute.  *Waste Action Project v. Dawn Mining Corp.*, 137 F.3d 1426, 1428 (9th Cir. 1998) (statutory interpretation is a "purely legal question"); *Hamdan v. Rumsfeld*, 548 U.S. 557, 623 n.52 (2006) (stating that, in evaluating the legality of executive action, the Court has never "deferred to comments made by [government] officials to the media").

The County has exercised its discretion and determined how to support its indigent residents.  Plaintiffs acknowledge as much in the Complaint, describing "the significant percentage of County funds allocated to departments to address issues of homelessness, including those housed and treated in County jails, emergency treatment and transport, Department of Mental Health, LA County Fire Department, medical treatment through various hospitals and treatment centers, and criminal prosecution and defense costs, not to mention funding General Relief and other myriad social services."  (Compl. ¶ 64.)

Plaintiffs' argument, therefore, is not that the County has failed to discharge a

---

[4] Plaintiffs' cited cases, *Cooke v. Superior Court*, 213 Cal. App. 3d 401 (1989) (dental care), and *Harris v. Board of Supervisors*, 366 F.3d 754 (9th Cir. 2004) (hospital beds), do not establish a "right" to housing under WIC § 17000.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1    mandatory obligation.  Their argument is that they want the County to discharge its

2    obligations in a *different way*.  The inquiry can end there.  The County has acted by

3    exercising its discretion.  *Tailfeather*, 48 Cal. App. 4th at 1246 (because counties

4    have discretion to determine the type of relief they provide under WIC sections

5    17000 and 17001, a court's role is limited to determining "whether the County has

6    abused or exceeded its discretion under the governing statutes—not to dictate how

7    that discretion must be exercised").

8                    **2.    The State-Created Danger Doctrine Does Not Apply**

9            Plaintiffs fare no better on their Twelfth Cause of Action (state created

10   danger).  The "state-created danger" doctrine is a theory of substantive due process

11   liability.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-62 (9th Cir. 2006).

12   Generally, "members of the public have no constitutional right to sue [public]

13   employees who fail to protect them against harm inflicted by third parties."  *L.W. v.*

14   *Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992).  The "state-created danger" doctrine is a

15   narrow exception that permits a plaintiff to sue officers who fail "to protect a

16   person's interest in his personal security or bodily integrity when the [officer]

17   affirmatively and with deliberate indifference placed that person in danger."  *Pauluk*

18   *v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016).

19          To assert a "state-created danger" claim, the plaintiff must prove that the

20   officials (1) created an actual, particularized danger through their own affirmative

21   conduct, and (2) acted with deliberate indifference to a known or obvious danger.

22   *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).  In addition, a municipal

23   government, such as the County, cannot be vicariously liable under section 1983.

24   *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978).

25   To assert a "state-created danger" claim against the County, Plaintiffs must further

26   allege that the County is directly responsible for the conduct of its employees

27   through a recognized theory of municipal liability.  *Id.*

28          Here, there is no evidence that the County affirmatively placed any of the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

DEFENDANT COUNTY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Plaintiffs in imminent risk of serious bodily harm.  In fact, the County is only allegedly at fault because it *provided necessary services* in a "concentrated" manner to the homeless in Skid Row.  (Mot. at 8:17-19.)  No evidence or law supports Plaintiffs' theory that providing services to PEH, in the place where they live, constitutes deliberate indifference to the plight of those living and working in Skid Row.  That theory belies common sense.  And Plaintiffs admit the County made substantial efforts to serve the needs of PEH and reduce homelessness. (Compl. ¶¶ 2, 18, 73, 74.)  The state-created danger doctrine does not apply.

Plaintiffs cite cases where a police offer required attendees at a rally to exit into a crowd of violent protestors, where a police officer failed to warn a victim about a violent aggressor, and where a police officer impounded a vehicle which left the female occupant alone in the middle of the night in a high crime area.  (Mot. at 12-20.)  Those cases are not remotely analogous to this lawsuit, because in each case the government official affirmatively placed the plaintiff in danger and acted with deliberate indifference to a known and obvious risk.

The cases cited by Plaintiffs are not remotely similar to the present case and do not provide any legal support for their position.  There is no allegation or evidence that any County official did anything to affirmatively place anyone in danger.  And there is no further allegation or evidence that any County official did so with deliberate disregard for a known and obvious risk.  This theory is not well pleaded in the Complaint, and is not supported by evidence in the Motion.[5]

---

[5] Plaintiffs cite a recent decision by the Northern District of California, but that case is inapposite as well.  There, the court issued a *prohibitory* injunction that was designed to preserve the status quo.  *Santa Cruz Homeless Union v. Bernal*, 2021 WL 222005, at *4 (N.D. Cal. Jan. 20, 2021).  The court found that, based on the CDC guidelines, the closure of two parks would increase the risk that PEH living in the parks would contract COVID-19 as they would need to find new shelter.  The court did not analyze the deliberate indifference element of the substantive due process claim, noting that the issuance of a prohibitory injunction requires a lesser

### 3.    <u>Plaintiffs Cannot Assert a Procedural Due Process Claim</u>

"A court's equitable power lies only over the merits of the case or controversy before it.  When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction."  *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015). This rule applies here because there is no procedural due process claim asserted in the Complaint.  The 14th Amendment due process claim alleges only "arbitrary" action (substantive due process) and "discrimination" (equal protection).  There is no allegation the County did anything to take away Plaintiffs' liberty or property based on a constitutionally infirm set of procedures.

Procedural due process also does not apply to broadly applicable, quasi-legislative acts as here.  *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994) ("[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient."); *Christensen v. Yolo Cty. Bd. of Supervisors*, 995 F.2d 161, 166 (9th Cir 1993) (no individual notice and hearing required where county zoning decisions affect a large number of people and individuals are not targeted); *Harris v. County of Riverside*, 904 F.2d 497, 501-02 (9th Cir. 1990) (no individual notice and hearing required where county decisions affect vast areas and large numbers of people); *see also San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 951 (1996) (homeowners were not entitled to due process notice and opportunity to be heard regarding PUC policy because it was a quasi-legislative act "designed not to adjudicate individual rights and obligations but to develop a legislative record and adopt a general policy or promulgate general regulations").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

---

showing than a request for a mandatory injunction, like Plaintiffs seek here.  *Id.*

### 4.     <u>The County Did Not Create a Public or Private Nuisance</u>

Plaintiffs claim the Court can issue the requested injunction because Skid Row is a public and/or private nuisance, but concede the County cannot be held liable on those claims unless it created the nuisance.  (Mot. at 31:1-3, 33:3-4.)  Plaintiffs have no evidence of this.  Plaintiffs admit that the "containment" policy was a City policy.  (*Id.* at 8:16-17.)  In addition, Skid Row is within the incorporated area of the City of Los Angeles.  The City has authority over, and responsibility for, municipal affairs within its borders.  Cal. Const. art. XI, § 5(a); *Richeson v. Helal*, 158 Cal. App. 4th 268, 277 (2007) ("The state Constitution gives California cities broad and flexible power to promote the public welfare.").  Under the powers granted to it by the California Constitution and its charter, the City is responsible for the general safety and welfare of its residents within its territory.  Cal. Const. art. XI, §§ 5(a), 7.

The County's authority, meanwhile, is only in the *unincorporated* areas of the County.  *City of Dublin v. County of Alameda*, 14 Cal. App. 4th 264, 274-75 (1993) ("[T]he California Constitution specifies that the police power bestowed upon a county may be exercised 'within its limits,' i.e., only in the unincorporated area of the county." (citation omitted)); *Cty. Sanitation Dist. No. 2 v. County of Kern*, 127 Cal. App. 4th 1544, 1612 (2005) (cities "are necessarily outside the jurisdiction and authority of County; County's authority extends only to the unincorporated areas").  Skid Row is not within the unincorporated area of Los Angeles County.

Thus, there is no evidence that the County created the alleged nuisance.  In fact, Plaintiffs admit the County has made substantial efforts to provide services and housing to the homeless throughout the County and especially in Skid Row.  (Compl. ¶ 2 ("The City and the County combined spend over a billion dollars annually providing police, emergency, and support services to those living on the streets."); *id.* ¶ 18 (the County has "gone to great lengths in the last couple years to address this crisis"); *id.* ¶ 73 ("[T]he City and County have made efforts to address

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

27

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

this crisis."); *id*. ¶ 74 ("[T]he amount of effort and resources that have been devoted to addressing this issue is considerable and admirable.").)

Moreover, the County is immune from the nuisance claim. Plaintiffs assert that the County "created" the nuisance by "concentrating" services in Skid Row, but the County has discretion over how to provide services to the homeless population.[6] Government Code section 815.2 states that a government agency is immune from vicarious liability "where the employee is immune from liability." *Richards v. Dep't of Alcoholic Beverages Control*, 139 Cal. App. 4th 304, 317, 318 n.9 (2006) (citation omitted) ("[A] public entity is not vicariously liable if the employee is immune from liability."). Because County officials enjoy discretionary act immunity under Government Code section 820.2, the County is immune from Plaintiffs' vicarious liability claim. *Id.*

Here, the County officials responsible for implementing the County's response to the homeless crisis enjoy discretionary immunity under Government Code section 820.2. *Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995) (discretionary act immunity protects "*basic policy decisions*" that are committed to coordinate branches of government (citation omitted)); *see also Taylor v. Buff*, 172 Cal. App. 3d 384, 390 (1985); *Freeny v. City of San Buenaventura*, 216 Cal. App. 4th 1333, 1341 (2013).

## C.   The Requested Injunction Is Not Sound Policy

Plaintiffs are asking for extraordinary, mandatory relief. They want the Court to direct the County to upend implementation of its long-term plan to address homelessness, and instead focus all its efforts on Skid Row.

Specifically, Plaintiffs ask the Court to order the City and County to offer shelter or other alternative housing options to PEH who live in Skid Row within

---

[6] Funding, services, and other resources are distributed across Los Angeles County. These services are provided to all PEH, regardless of whether they live in Skid Row or another area. (Todoroff Decl. ¶¶ 24-25 & Exs. H, K.)

90 days.  Among other things, Plaintiffs also want the Court to order the City and County to: (i) ensure that housing is not concentrated in the "containment area;" (ii) adhere to certain requirements when contracting with private organizations to provide shelter or housing; (iii) provide support services (County) and operational services (County/City); (iv) fund audits of Proposition HHH, MHSA, Measure H, and LAHSA; and (v) submit to the jurisdiction of a Special Master, to be paid by the City/County.  Their 10-part plan also requires the City and County to identify land (at least 20 acres each) that they want the Court to consider for seizure.

Plaintiffs are not elected officials, and they are not policy experts.  Yet they ask the Court to trust their judgment and ignore the County's voter-endorsed, Board-approved initiatives.  The law does not allow the Court to do so.  (*See supra* ___.) Plaintiffs' proposal is also bad policy.  Instead of detailed plans tailored to permanent solutions, Plaintiffs want a quick fix: an order telling the City and County to move all PEH out of Skid Row—immediately.  As set forth in the Declaration of Cheri Todoroff, the head of the County's Homeless Initiative, implementation of the injunction would interfere with provisions of services and create harmful inequities for PEH.  The proposed injunction would make things worse, not better.

## D.  Plaintiffs Have Not Established Irreparable Harm

An injunction cannot issue unless there is a showing that irreparable harm will likely result without the injunction.  *Winter*, 555 U.S. at 22 (rejecting the Ninth Circuit's "possibility" standard as "too lenient"; holding that plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction").

Plaintiffs argue that there will be irreparable harm absent the injunction, but the Motion only references the harm suffered by PEH living in Skid Row.  (Mot. at 35:17-27.)  Plaintiffs are not PEH living in Skid Row.  Plaintiffs are largely business owners in Skid Row, with the exception of one Plaintiff who owns an auto-repair shop in Mar Vista.  (Compl. ¶¶ 77-106, 108, 112-22.)

Harm to third parties does not constitute irreparable harm.  *Winter*, 555 U.S.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he is likely* to suffer irreparable harm in the absence of preliminary relief . . . ." (emphasis added)); *Immigrant Legal Res. Ctr. v. City of McFarland*, 827 F. App'x 749, 751-52 (9th Cir. 2020) (mem.) (holding that the district court abused its discretion in finding a likelihood of irreparable harm because "the district court focused its irreparable harm analysis on the prospect of harm to third parties [but] [t]he standard for preliminary injunctions, however, requires irreparable harm to the plaintiffs themselves"). Thus, the harms suffered by PEH—who are third parties to this lawsuit—cannot be used as a basis for the requested injunction.

In fact, Plaintiffs are *adverse* to PEH, as they demand that the City resume enforcement of anti-vagrancy laws *against* PEH. Plaintiffs want all PEH out of Skid Row immediately, with no regard for where those individuals want to go or whether suitable supportive housing is available for them in the next 90 days. The County focuses on individual relationships and trust building. Plaintiffs' plan, in contrast, ignores the human aspect of the homeless crisis. Indeed, the proposed injunction is more likely to *cause* irreparable harm than avoid it.

**E.    Plaintiffs Make No Showing On The Remaining Elements**

When the government is the defendant, the final two *Winter* factors merge together. Here, Plaintiffs do not make any showing that the requested injunction is in the public interest. The County, in contrast, has explained why it would *not* be. (Todoroff Declaration ¶¶ 14-36.)

The interests of sheltered and unsheltered PEH living throughout Los Angeles County would be negatively impacted if the County focused exclusively on Skid Row. The County has implemented a regional approach to addressing the homeless crisis, with an emphasis on individualized outreach and a balance of interim and permanent housing solutions. These are proven strategies, developed with community stakeholders and homeless service providers, which would be undermined by the requested injunction.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

## V.    **CONCLUSION**

For the foregoing reasons, the County respectfully asks the Court to deny the Motion.

DATED:  April 19, 2021                    MILLER BARONDESS, LLP

By:    /s/ Louis R. Miller
LOUIS R. MILLER
Attorneys for Defendant
COUNTY OF LOS ANGELES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400