RODRIGO A. CASTRO-SILVA (SBN 185251), *County Counsel*
rcastro-silva@counsel.lacounty.gov
LAUREN M. BLACK (SBN 192302), *Assistant County Counsel*
AMIE S. PARK (SBN 273346), *Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1830 | Fax: (213) 626-7446

BYRON J. MCLAIN (SBN 257191)
bmclain@foley.com
FOLEY & LARDNER, LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Tel.: (310) 972-4500 | Fax: (213) 486-0065

LOUIS R. MILLER (SBN 54141)
smiller@millerbarondess.com
MIRA HASHMALL (SBN 216842)
EMILY A. RODRIGUEZ-SANCHIRICO (SBN 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | **CASE NO. 2:20-cv-02291 DOC-KES** <br><br> **DEFENDANT COUNTY OF LOS ANGELES' RESPONSE TO NAACP, ET AL.'S AMICUS BRIEF [DKT. 264]** <br><br> Date: May 10, 2021 <br> Time: 8:30 a.m. <br> Place: Courtroom 9D <br><br> Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## I.    INTRODUCTION

The County of Los Angeles ("County") agrees with NAACP-Compton, CORE-California and Committee for Save Havens (collectively, "Amici Curiae") that homelessness in Los Angeles is an immense challenge and that the racial aspect of this crisis cannot be ignored.  As set forth in the County's motion to dismiss [Dkt. 256] and opposition to Plaintiffs' motion for a preliminary injunction, the County is deploying massive resources through multiple County departments and partner agencies and is spending hundreds of millions of dollars annually to address these issues.

While the County respects and appreciates the input set forth in the Brief on Behalf of the Amici Curiae [Dkt. 264] (the "Amicus Brief"), the County disagrees with their suggestion that the County and the City of Los Angeles ("City") should place people experiencing homelessness ("PEH") in mass encampments.  The County does not quarrel with the emergent status and dire need for action, as set forth at pages 1-10 of the Amicus Brief.  But the County disagrees with the proposed Marshall Plan—putting 10,000-20,000 PEH in so-called Safe Havens. There is no legal or factual basis for this approach.

## II.    THERE IS NO LEGAL SUPPORT FOR THE "MARSHALL PLAN"

### A.    The County Did Not Violate Plaintiffs' Constitutional Rights

Amici Curiae contend that the Court's authority to act in this case aligns with the authority exercised by district courts in the school desegregation context.  [Dkt. 264 at 7:3-10:6.]  Those cases, which comprise bedrock equal protection law, do not apply here.  To support the level of judicial involvement required in the school desegregation cases, Plaintiffs must establish affirmative conduct to deprive plaintiffs of their constitutional rights.  *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). There is nothing like that here by the County.  Here, the County's actions have been directed at helping its residents, both sheltered and unsheltered.

Even Plaintiffs, in their motion for a preliminary injunction, acknowledge as

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

507653.3

Case No. 2:20-cv-02291 DOC-KES

DEFENDANT COUNTY OF LOS ANGELES' RESPONSE TO NAACP, ET AL.'S AMICUS BRIEF [DKT. 264]

much. [Dkt. 265 at 4:21-6:8.]  Plaintiffs' constitutional claim is that the City, not the County, implemented a discriminatory "containment" policy back in the 1970s and pushed PEH into Skid Row.  [*Id*.]  Their argument is that this City policy resulted in discrimination against African-American PEH.  [*Id*.]  There is no allegation, much less any evidence, that the County engaged in such conduct.

### B.     The Court Lacks Authority To Order The Marshall Plan

The Court previously noted that the contours of a federal court's equitable authority has come up in other contexts, including in *Brown v. Plata*, and in the aftermath of *Brown v. Board of Education*.  [Dkt. 205 at 4.]  The Court acknowledged, however, that those "constitutional violations were of a different sort." [*Id*.]  Nonetheless, the Court asked the parties to address these two cases in the context of a federal district court order.  [*Id*.]  Amici Curiae rely on the same cases. [Dkt. 264 at 7:3-8:19.]  The County summarizes its prior analysis [Dkt. 235], and addresses additional arguments made by Amicus Curiae, below.

### 1.     No Statutory Framework Authorizes the Requested Injunctive Relief

In *Brown v. Plata*, California prisoners filed class-action lawsuits alleging overcrowding and inadequate mental and medical care violated the Eighth Amendment's prohibition of cruel and unusual punishment.[1]  563 U.S. 493 at 500. After years of litigation, the State failed to comply with the district court's orders, and, as a result, the plaintiffs requested a three-judge district court under the Prison Litigation Reform Act of 1995 ("PLRA") to address the State's failure.  *Id.*; *see* 18 U.S.C. § 3626.  The Ninth Circuit convened the three-judge district court and

[1] The case was borne out of Eighth Amendment violations relating to the health and safety of inmates.  Here, the Eighth Amendment is not implicated, and is not a basis for injunctive relief against the County.  The County does not have ordinances that impose criminal sanctions against PEH.  To the contrary, the County has a "Care First" model and does not support enforcement as a solution to homelessness.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

consolidated the cases.  563 U.S. at 500.

The three-judge district court exercised its authority under the PLRA to issue a remedial order requiring California to reduce the inmate population to within 137.5% of the prisons' total design capacity.  563 U.S. at 501.  The Governor appealed.  *Id*. at 500.  The Supreme Court affirmed the three-judge district court's order, ruling that "the PLRA does authorize the relief afforded in this case and . . . the court-mandated population limit is necessary to remedy the violation of prisoners' constitutional rights."  *Id.* at 502.

This holding is specific to the PLRA.  The PLRA provides the federal courts with detailed guidelines for issuing injunctive relief.  563 U.S. at 511-12.  A three-judge district court can only issue a remedial order limiting the prison population when several conditions are met and the ordered relief is "narrowly drawn, extends no further than necessary …, and is the least intrusive means necessary to correct the violation."  *Id*. at 512 (citation omitted).  The PLRA provides a strict statutory framework to ensure that a federal district court only takes the extreme action of issuing an injunction against a State, like reducing a prison population, in limited circumstances and when procedural safeguards are satisfied.  *Id.* at 511-12.

At oral argument, Chief Justice Roberts expressed his concerns about federal district courts ordering governments to spend money in specified ways.  The Chief Justice questioned what would happen if one court told a particular governing body to spend $8 billion in one way, while another court told it to spend the same $8 billion a different way.  Those concerns are well founded.  Federal judges do not have inherent authority to make complex policy decisions about how to manage the public health, public safety, and financial implications of the homelessness crisis.  Here, unlike in *Brown v. Plata*, there is no statutory framework like the PLRA that authorizes extraordinary injunctive relief.

## 2. ***Brown v. Board of Education* Is Not Applicable Here**

In *Brown v. Board of Education of Topeka, Kan.*, 349 U.S. 294 (1955), the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Supreme Court confronted a facially discriminatory policy of segregation in public schools that had a devastating impact on the quality of education students received, solely because of their race. *Brown v. Board of Education* does not offer the correct roadmap to address the impact of homelessness on communities of color. In the school desegregation context, the Supreme Court directly admonished the district courts to carry out "judicial appraisal" of whether schools were taking appropriate action to implement the governing constitutional principles. 349 U.S. at 299.

District courts accepted that charge. In *Marks v. New Edinburg School District*, 259 F. Supp. 639, 645-46 (E.D. Ark. 1966), for example, the district court addressed the Supreme Court's admonishment and carried out the requisite "judicial appraisal." However, the same district court was unwilling to direct the school district to comply with specific guidelines to "completely disrupt the operation of the school," or to "invoke an impossible burden on the board and officers of the school district." *Id.* at 646. Even in the uniquely pressing context of segregation in public schools, which lingered for far too long after the Supreme Court's ruling in *Brown v. Board of Education*, district courts were still required to exercise restraint.

Here, the Supreme Court has not admonished district courts to perform a "judicial appraisal" of policymaking regarding homelessness. Nor has the Supreme Court articulated any constitutional principles that suggest the district courts should do so. Accordingly, both *Brown* and *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1 (1971), another case addressing school desegregation that Amicus Curiae rely on, are inapplicable in this context. Until "a right and a violation have been shown" the Court has no authority to fashion broad equitable remedies. *Swann*, 402 U.S. at 15.

Indeed, the Supreme Court distinguished *Swann* and reversed a district court's injunction because its order "constitute[d] an unwarranted federal judicial intrusion into the discretionary authority of petitioners to perform their official functions as prescribed by state and local law." *Rizzo v. Goode*, 423 U.S. 362, 380-81 (1976).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

The Supreme Court highlighted the distinction that is fatal to Amici Curiae's position here: "federal 'judicial powers may be exercised only on the basis of a constitutional violation.'" *Id*. at 377.

In *Swann*, the Supreme Court explained, the state authorities *implemented* the unconstitutional deprivation (segregation). *Id*. The Supreme Court held that the district court had exceeded its authority by issuing injunctive relief without finding that the responsible authorities had played an affirmative role in depriving plaintiffs of any constitutional rights. *Id*.

Here, as in *Rizzo*, the County has not affirmatively acted to deprive Plaintiffs of their constitutional rights. Instead, the County has dedicated hundreds of millions of dollars annually, along with other resources, to address homelessness. There is no constitutional violation, and thus no basis for an order directing the County to place its most vulnerable residents in mass encampments (which, as set forth below, could itself be a constitutional violation).

### 3. There Is No Title VI Claim Here

Amici Curiae also argue that the County and City may have violated Title VI of the Civil Rights Act of 1964. [Dkt. 264 at 8:20-21:9:27.] That claim, in addition to being baseless, is not in this lawsuit. [Dkt. 1.] It cannot be the basis for the remedy Amici Curiae advocate for here. *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 633 (9th Cir. 2015) ("A court's equitable power lies only over the merits of the case or controversy before it. When a plaintiff seeks injunctive relief based on claims not plead [sic] in the complaint, the court does not have the authority to issue an injunction.").

## III. THE "MARSHALL PLAN" IS BAD POLICY

Amici Curiae propose establishing "Safe Havens" of 10,000 to 20,000 PEH on "large parcels of unused public land available to the Safe Haven Program at a nominal cost or no cost." [Dkt. 11:10- 12:28.] They suggest using pre-fab, containers, or military-type barracks and/or tents. [*Id*.]

507653.3

5

Case No. 2:20-cv-02291 DOC-KES

DEFENDANT COUNTY OF LOS ANGELES' RESPONSE TO NAACP, ET AL.'S AMICUS BRIEF [DKT. 264]

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

The County is concerned that these Safe Havens would not be safe at all. Nor would they alleviate disparate impact and racial discrimination. Taking small groups of PEH and putting them in much larger groups—10,000-20,000—will magnify the issues facing PEH. Instead of a group of 200 PEH, many experiencing trauma, mental illness, substance abuse, and physical disability, there would be a much larger group with the same issues.

Amici Curiae say the Court is "walking on a tight rope" in assessing its equitable powers [Dkt. 264 at 9:3], but then propose a plan for mass displacement of unhoused individuals that would put the Court on perilous legal and policy ground. The United Way of Greater Los Angeles explains: "Mass encampments and the displacement of homeless individuals from their chosen locations denies them control over their lives, interferes with the gradual and individualized outreach process, and is deeply dehumanizing." (Declaration of Elise Buik, President and Chief Executive Officer of the United Way of Greater Los Angeles ¶ 6.)

The County has a compassionate, regional approach to address homelessness. Amicus Curiae's plan is not consistent with County policy and the best practices embraced by the County and its homeless services providers.

If the plan were adopted, PEH might be off the streets of Skid Row—but only because they would be somewhere remote, away from their established resources and supports, where such large numbers could be accommodated. But that is not how the County has decided, in its discretion, to address homelessness. The County's approach is not to place PEH in mass encampments far from their chosen locations, but to work with individuals to help them out of homelessness—permanently—and back into society.

To that end, the County engages each person, individually, to help them address their own issues. In the process, providers deliver services, offer treatment, and build the trust and relationships that allow them to bring PEH indoors—first to interim solutions, and then to permanent housing. It is a people-intensive endeavor

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

that requires compassion and time.  There is no one-size-fits-all solution.

## IV.    CONCLUSION

The County respectfully disagrees with Amici Curiae's proposed plan.

DATED:  April 19, 2021              MILLER BARONDESS, LLP


By:        /s/ Louis R. Miller
          LOUIS R. MILLER
          Attorneys for Defendant
          COUNTY OF LOS ANGELES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400