RODRIGO A. CASTRO-SILVA (SBN 185251), *County Counsel*
rcastro-silva@counsel.lacounty.gov
LAUREN M. BLACK (SBN 192302), *Assistant County Counsel*
AMIE S. PARK (SBN 273346), *Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1830 | Fax: (213) 626-7446

BYRON J. MCLAIN (SBN 257191)
bmclain@foley.com
FOLEY & LARDNER, LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Tel.: (310) 972-4500 | Fax: (213) 486-0065

LOUIS R. MILLER (SBN 54141)
smiller@millerbarondess.com
MIRA HASHMALL (SBN 216842)
EMILY A. RODRIGUEZ-SANCHIRICO (SBN 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., | **CASE NO. 2:20-cv-02291 DOC-KES** |
| Plaintiffs, | ***EX PARTE* APPLICATION TO STAY COURT'S APRIL 20, 2021 ORDER [DKT. 277] PENDING APPEAL** |
| v. | |
| CITY OF LOS ANGELES, et al., | Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |
| Defendants. | |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant County of Los Angeles ("County") hereby applies to the Court *ex parte* for an order staying the Court's April 20, 2021 Order issuing a preliminary injunction [Dkt. 277] while the County's appeal is pending.

Good cause supports this *ex parte* application.  Less than 24 hours after the County, City of Los Angeles ("City"), and Intervenors Cangress and Los Angeles Catholic Worker ("Intervenors") filed oppositions to Plaintiffs' motion for a preliminary injunction ("Motion"), and without a hearing, the Court issued a 110-page ruling ("Order") granting the Motion.  The Court ordered extraordinary relief which, if implemented, would interrupt the County's current efforts to address the homelessness crisis.  Among other things, the Order: (i) mandates the cessation of sales and transfers of any (not yet identified) County property that could be used for housing and sheltering people experiencing homelessness ("PEH"); (ii) orders the County to divert its resources from helping people across the County, and focus them on sheltering or housing for PEH living in Skid Row; and (iii) directs the County to audit all funds received from local, state, and federal entities, along with any funds committed to mental health and substance use disorder treatment. Deadlines start as early as this week.  The Order goes beyond what Plaintiffs requested in the Motion and what they alleged in their Complaint, and thus beyond what the County, City, and Intervenors had an opportunity to address.

**Notice of *Ex Parte* Application**

On April 22, 2021, the County provided notice, in accordance with Local Rule 7-19, to Plaintiffs LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Karyn Pinsky, Charles Malow, Charles Van Scoy, George Frem, Gary Whitter, and Leandro Suarez (collectively, "Plaintiffs"), along with Intervenors, of this *ex parte* application via email and voicemail.  (Declaration of Mira Hashmall

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

("Hashmall Decl.") ¶ 2.)  Intervenors stated that they did not oppose the application.  (*Id*. ¶ 4.)  Plaintiffs stated that they would oppose.  (*Id*. ¶ 5.)  The City is filing its own *ex parte* application.

Counsel for the parties in this case are as follows:

Matthew Donald Umhofer
Elizabeth A. Mitchell
SPERTUS, LANDES & UMHOFER,
LLP
617 West 7th Street, Suite 200
Los Angeles, CA 90017

Arlene Nancy Hoang
Scott D. Marcus
Jessica Mariani
LOS ANGELES CITY ATTORNEY'S
OFFICE
200 North Main Street
7th Floor, Room 675
Los Angeles, CA 90012

Brooke Alyson Weitzman
William R. Wise
ELDER LAW AND DISABILITY
RIGHTS CENTER
1535 East 17th Street, Suite 110
Santa Ana, CA 92705

Paul L. Hoffman
Catherine E. Sweetser
SCHONBRUN SEPLOW HARRIS &
HOFFMAN, LLP
11543 West Olympic Boulevard
Los Angeles, CA 90064

Carol A. Sobel
Weston C. Rowland
LAW OFFICE OF CAROL SOBEL
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401

3

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   Shayla R. Myers
2   LEGAL AID FOUNDATION OF
    LOS ANGELES
3   7000 South Broadway
    Los Angeles, CA 90003
4

5

6        This *Ex Parte* Application is based on the application, the Memorandum of

7   Points and Authorities, the supporting Declarations of Mira Hashmall, Cheri

8   Todoroff, Matt McGloin, and Vanessa Moody,  the pleadings and records on file in

9   this action, and any further evidence or argument received by the Court in

10  connection with the Motion.

11

12  DATED:  April 23, 2021          MILLER BARONDESS, LLP

13

14

15  By: _____

16        LOUIS R. MILLER
        Attorneys for Defendant
17        COUNTY OF LOS ANGELES

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1
2

**TABLE OF CONTENTS**

**PAGE**

I.     INTRODUCTION ................................................................................. 1

II.    PROCEDURAL HISTORY ................................................................. 2

III.   THE PRELIMINARY INJUNCTION ................................................ 3

IV.    LEGAL STANDARD ......................................................................... 5

V.     THE COURT SHOULD ISSUE A STAY PENDING APPEAL .................... 6

       A.    The County Is Likely To Succeed On The Merits ................................. 6

             1.    The Order Is Substantively Flawed and Procedurally
                   Improper ........................................................................... 6

             2.    Plaintiffs Lack Standing ............................................... 9

             3.    The Claims Against the County Fail as a Matter of Law .......... 12

             4.    Plaintiffs Did Not Establish Irreparable Harm ......................... 20

             5.    Plaintiffs Made No Showing on the Remaining Elements ........ 21

             6.    The Order Is Impermissibly Vague ............................................ 21

       B.    The County And The Public Will Be Irreparably Harmed Absent
             A Stay ............................................................................... 22

       C.    A Stay Will Not Substantially Injure Any Interested Parties .............. 23

       D.    The Public Interest Favors A Stay ............................................... 24

VI.    CONCLUSION ................................................................................. 25

19
20
21
22
23
24
25
26
27
28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>FEDERAL CASES</u>

*Albright v. Oliver,*
    510 U.S. 266 (1994) ...................................................................................17

*Allen v. Wright,*
    468 U.S. 737 (1984) ...................................................................................12

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.,*
    750 F.2d 1470 (9th Cir. 1985) .....................................................................8

*Anderson v. Davila,*
    125 F.3d 148 (3d Cir. 1997) .........................................................................6

*Ariz. Democratic Party v. Hobbs,*
    976 F.3d 1081 (9th Cir. 2020) ...................................................................24

*Armstrong v. Brown,*
    768 F.3d 975 (9th Cir. 2014) ..................................................................7, 8

*Checker Motors Corp. v. Chrysler Corp.,*
    405 F.2d 319 (2d Cir. 1969) .........................................................................8

*City of Los Angeles v. County of Kern,*
    581 F.3d 841 (9th Cir. 2009) .....................................................................12

*Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau,*
    847 F.2d 593 (9th Cir. 1988) .....................................................................13

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998) .............................................................................17, 18

*Culinary Studios, Inc. v. Newsom,*
    No. 1:20-CV-1340 AWI EPG, 2021 WL 427115 (E.D. Cal. Feb. 8, 2021) ...........................................................................................................14

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) .....................................................................................9

*Del Webb Communities, Inc. v. Partington,*
    652 F.3d 1145 (9th Cir. 2011) ...................................................................21

*Freeman v. City of Santa Ana,*
    68 F.3d 1180 (9th Cir. 1995) .....................................................................13

*Golden Gate Rest. Ass'n v. City & County of San Francisco,*
    512 F.3d 1112 (9th Cir. 2008) ..............................................................24, 25

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local*
   *No. 70 of Alameda Cty.,*
   415 U.S. 423 (1974) ................................................................ 6

*Halverson v. Skagit County,*
   42 F.3d 1257 (9th Cir. 1994) ................................................ 17

*Hodel v. Indiana,*
   452 U.S. 314 (1981) ............................................................ 14

*Horne v. Flores,*
   557 U.S. 433 (2009) ...................................................... 11, 12

*Immigrant Legal Res. Ctr. v. City of McFarland,*
   827 F. App'x 749 (9th Cir. 2020) (mem.) ............................ 20

*In re Tourism Assessment Fee Litig.,*
   No. 08cv1796-MMA(WMc), 2009 WL 10185458 (S.D. Cal. Feb. 19,
   2009) ................................................................................... 14

*Juliana v. United States,*
   947 F.3d 1159 (9th Cir. 2020) ................................... 9, 10, 11

*Kawaoka v. City of Arroyo Grande,*
   17 F.3d 1227 (9th Cir. 1994) ................................................ 17

*Kennedy v. City of Ridgefield,*
   439 F.3d 1055 (9th Cir. 2006) .............................................. 15

*L.W. v. Grubbs,*
   974 F.2d 119 (9th Cir. 1992) ................................................ 15

*Lair v. Bullock,*
   697 F.3d 1200 (9th Cir. 2012) ........................................ 23, 24

*Lewis v. Casey,*
   518 U.S. 343 (1996) ...................................................... 9, 11, 12

*Linda R.S. v. Richard D.,*
   410 U.S. 614 (1973) ....................................................... 9, 10

*Martin v. City of Boise,*
   920 F.3d 584 (9th Cir. 2019) ................................................ 14

*Maryland v. King,*
   567 U.S. 1301 (2012) ............................................................ 22

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ............................................................... 8

*Mi Familia Vota v. Hobbs,*
   977 F.3d 948 (9th Cir. 2020) .............................................. 5, 6

*Missouri v. Jenkins,*
   515 U.S. 70 (1995) ............................................................... 12

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

*Monell v. Dep't of Soc. Servs. of City of New York,*
    436 U.S. 658 (1978) ................................................................................ 16

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox. Co.,*
    434 U.S. 1345 (1977) .............................................................................. 22

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
    810 F.3d 631 (9th Cir. 2015) ....................................................... 7, 13, 15, 20

*Patel v. Kent Sch. Dist.,*
    648 F.3d 965 (9th Cir. 2011) ................................................................. 15

*Pauluk v. Savage,*
    836 F.3d 1117 (9th Cir. 2016) .............................................................. 15

*Qureshi v. United States,*
    600 F.3d 523 (5th Cir. 2010) ............................................................... 6, 7

*Rizzo v. Goode,*
    423 U.S. 362 (1976) ......................................................................... 11, 12

*Rucho v. Common Cause,*
    139 S. Ct. 2484 (2019) ...................................................................... 10, 11

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .................................................................................. 9

*Taylor v. List,*
    880 F.2d 1040 (9th Cir. 1989) ............................................................. 18

*United States v. Real Prop. & Improvements Located at 2366 San Pablo Ave., Berkeley, Cal.,*
    No. 13-cv-02027-JST, 2015 WL 525711 (N.D. Cal. Feb. 6, 2015) .............. 24

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982) ............................................................................ 16

*Village of Euclid, Ohio v. Ambler Realty Co.,*
    272 U.S. 365 (1926) ............................................................................ 17

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................. 9, 10, 12, 16

*Wash. Envtl. Council v. Bellon,*
    732 F.3d 1131 (9th Cir. 2013) ............................................................. 10

*Wayte v. United States,*
    470 U.S. 598 (1985) ............................................................................ 14

*Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.,*
    24 F.3d 56 (9th Cir. 1994) .................................................................. 17

*Weitzman v. Stein,*
    897 F.2d 653 (2d Cir. 1990) ................................................................ 6, 7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ........................................................................................ 20

## STATE CASES

*Haggis v. City of Los Angeles*,
    22 Cal. 4th 490 (2000) ................................................................................ 19

*Hunt v. Superior Court*,
    21 Cal. 4th 984 (1999) ................................................................................ 19

*Tailfeather v. Bd. of Supervisors*,
    48 Cal. App. 4th 1223 (1996) .............................................................. 19, 20

## FEDERAL STATUTES

42 U.S.C. § 1983 ................................................................................................. 16

Fed. R. Civ. P. 65(a)(1) ................................................................................... 6, 7

Fed. R. Civ. P. 65(d)(1) ..................................................................................... 21

## STATE STATUTES

Cal. Welf. & Inst. Code § 17000 ................................................................. 18, 20

Cal. Welf. & Inst. Code § 17001 ................................................................. 19, 20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Like the Court, the County of Los Angeles ("County") is committed to addressing and improving the lives of people experiencing homelessness ("PEH"). But the Court's April 20, 2021 preliminary injunction order ("Order") is not the way to do it.  The Order relies on inadmissible evidence, misstates critical facts, and grants relief far beyond what Plaintiffs requested in their motion ("Motion") and prayed for in their Complaint.

Worse, the Order usurps the role and function of elected municipal officials. It exceeds by a great deal the power and authority of the federal courts. And it will degrade, not improve, the plight of thousands of PEH outside of Skid Row.

Federal district courts are tasked with adjudicating disputes between litigants. Yet, by virtue of the Order, which relies on newspaper articles, editorials, and other inadmissible evidence, which was not provided to the County beforehand, the Court has effectively taken over the County's homeless services operations on Skid Row. This contravenes binding Supreme Court precedent.

Under the law, a stay of this Order is necessary and appropriate.

(1) The County is likely—we believe almost certain—to prevail on appeal. The Court has far exceeded its Article III power to adjudicate cases and controversies.  Federal courts are not supposed to usurp legislative functions and thereby violate separation of powers; and that is what the Court has done here.

(2) The County, the public, and the very PEH the Order purports to help, will be harmed absent a stay.  There are over 2,000 unhoused PEH in the Skid Row area the Order addresses (over 2,000 PEH in Skid Row are sheltered).  There are over 40,000 unhoused PEH elsewhere in the County.  The County's system is intentionally organized to equitably distribute resources throughout the region. Compliance with the Order would require the diversion of significant resources, which would deprive other PEH of critically needed services and care.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

(3) A stay will not harm anybody.  The County will continue delivering services to PEH throughout the region.  The status quo will not be interrupted.  And it is not at all clear the PEH on Skid Row would even accept forced relocation.

(4) The public interest supports—we think mandates—a stay.  In 2015, the County created its Homeless Initiative with 47 criteria and $100 million.  In 2016, it declared a fiscal emergency and set the stage for Measure H.  In 2017, Measure H was adopted by a vote of the people, generating over $350 million a year and dramatically increasing the services provided to PEH.  And in the ensuing years, as this very Court has acknowledged, the County has crafted policies and implemented services, through substantial stakeholder engagement and the coordination and cooperation of multiple County departments, which have vastly helped PEH.  The Order effectively puts these services under the supervision of the Court  and raises the specter of mass confusion and disruption.

The County understands, appreciates, and shares the Court's desire for additional housing on Skid Row.  But a judicial takeover, through an expansive and in many respects vague mandatory injunction, is not the way to do it.  This is a human problem on a massive scale.  There is no one size fits all solution.  Each person has their own unique issues.  Each person has to be met with humanity and compassion. That is exactly what the County is doing on a Countywide basis.

The County respectfully requests that the Court stay the Order pending appeal in all respects as to the County.

## II.    **PROCEDURAL HISTORY**

On March 10, 2020, Plaintiffs filed this action against the County and the City.  Plaintiffs LA Alliance for Human Rights ("LA Alliance"), Charles Van Scoy, Harry Achadjian, George Frem, Leandro Suarez, Joseph Burk, Gary Whitter, Karyn Pinsky, and Charles Malow (collectively, "Plaintiffs") are business owners and former PEH from the Skid Row area of Los Angeles.  (Compl. ¶¶ 76-122.)  The Complaint asserts federal constitutional and state law claims.

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 Avenue of The Stars, Suite 1000  Los Angeles, California 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

On March 19, 2020, the Court held an emergency status conference in light of COVID-19.  [Dkt. 90.]  At the conference, the parties agreed to stay the litigation in order to work with the Court to explore settlement.  [*Id.* at 116:19-117:22.]  Since that time, the parties have engaged in extensive settlement negotiations and have participated in a number of public status conferences at the Court's request.

On May 15, 2020, the Court issued a *sua sponte* preliminary injunction ordering the County and City to find housing or shelter for PEH living near freeways.  [Dkt. 108.]  On May 22, 2020, the Court issued a revised order directing the City and County to "humanely relocate" PEH near freeways "by no later than September 1, 2020."  [Dkt. 123.]  The Court subsequently vacated the order, without prejudice, when Defendants agreed to provide 6,700 beds and prioritize PEH near freeways.  [Dkt. 138.]  Mediations and public status conferences continued.

On March 5, 2021, Plaintiffs filed a notice of intent to file a motion for preliminary injunction.  [Dkt. 240.]  On March 29, 2021, the County filed a motion to dismiss.  [Dkt. 256-260.]  On April 12, 2021, Plaintiffs filed a motion for preliminary injunction ("Motion").  [Dkt. 265.]

On April 19, 2021, the County, City, and Intervenors each filed an opposition to the Motion.  [Dkt. 269-275.]

### III.    <u>THE PRELIMINARY INJUNCTION</u>

In the Motion, Plaintiffs asked for extraordinary, mandatory relief.  [Dkt. 265.]  They asked the Court to direct the County to upend implementation of its long-term plan to address homelessness throughout the region, and instead focus its efforts on clearing and "decompressing" Skid Row.  Specifically, Plaintiffs asked the Court to order the City and County to offer shelter or other alternative housing options to all PEH who live in Skid Row within 90 days, permitting the City to commence enforcement efforts thereafter.  Among other things, Plaintiffs asked the Court to order the City and County to: (i) ensure that housing is not concentrated in the "containment area"; (ii) adhere to certain requirements when contracting with

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

private organizations to provide shelter or housing; (iii) provide support services (County) and operational services (County/City); (iv) fund audits of Proposition HHH, MHSA, Measure H, and LAHSA; and (v) submit to the jurisdiction of a Special Master, to be paid by the City/County.  Their 10-part plan also required the City and County to identify land for the Court to consider for seizure.

The Court's Order goes far beyond the requested relief:

- By Tuesday, April 27, 2021 at 8:00 a.m. Supervisor Hilda Solis shall submit a report to the Court explaining why an emergency declaration has not issued.

- Within 30 days, the County shall conduct an audit of any funds committed to mental health (MH) and substance use disorder (SUD) treatment.

- Within 30 days, with regard to MH and SUD beds, the County shall report to the Court on the progress towards establishing the 1,508 new sub-acute beds to accommodate the needs of the non-jail population and an additional 1,418 new sub-acute beds to accommodate those with substance abuse disorders being diverted from the jails.

- Within 30 days, the City and County shall prepare a report on the status of Projects Homekey and Roomkey, with a specific focus on the geographic and racial distribution of project sites and beneficiaries.

- Within 90 days, conduct an audit of all funds received from local, state, and federal entities intended to aid the City and/or County in solving or alleviating the problem of homelessness.

- The cessation of sales, transfers by lease or covenant, of all land potentially available for housing and sheltering the homeless held by the County.

- Within no more than 90 days, the City and County must offer and, if accepted, provide shelter or housing immediately to all unaccompanied women and children living in Skid Row; within 120 days, to all families living in Skid Row; and within 180 days, to the general population living in Skid Row.

- The County shall, no later than within 90 days, offer and, if accepted, provide to all individuals within Skid Row who are in need of special placement through the Department of Mental Health or Department of Public Health

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

appropriate emergency, interim, or permanent housing and treatment services.  The County shall work with providers to build meaningful relationships with homeless individuals to ensure that these individuals are fully informed of their options for services, housing, and shelter.  Within 10 days, the County shall provide to the Court a list of providers who are already established in the area and who will be working with the County.

• The County shall provide, or fund third parties to provide, support services to all homeless residents who accept the offer of housing.  The County and City shall evenly split the cost of providing operational services.

• The City and County shall prepare a plan that ensures the uplifting and enhancement of Skid Row without involuntarily displacing current residents to other parts of the City or County.  Moving forward, the City and County are encouraged to develop a hyper-local approach with community-based organizations throughout each district, including the Skid Row Advisory Council.

• The Court will appoint a Special Monitor/Master, Michele Martinez, at the City and County's expense, to assist with the implementation of the Order and to resolve disputes among the parties or other interested parties.  The City and County shall meet and confer with the Special Monitor/Master within three days to agree upon her reasonable compensation.

• Within 10 days, the County and City shall meet with the Special Monitor/Master to receive her input regarding independent auditors and investigators.

On April 22, 2021, the Court "clarified" the scope of the Order.  [Dkt. 279.]

## IV.  **LEGAL STANDARD**

Courts consider four factors when evaluating whether to issue a stay pending appeal: (1) whether the stay applicant has made a showing that it is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Mi Familia Vota v. Hobbs*, 977 F.3d 948, 952 (9th Cir. 2020) (citation omitted) (granting stay pending appeal).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  A stay is necessary here.  The County is likely to succeed on the merits of its

2  appeal, the County and the public will be irreparably injured absent a stay, and

3  Plaintiffs will not be injured by the stay.

4  **V.**   **THE COURT SHOULD ISSUE A STAY PENDING APPEAL**

5  **A.**   **The County Is Likely To Succeed On The Merits**

6  Likelihood of success on the merits is the "most important" factor courts

7  consider when deciding whether to grant a stay.  *Mi Familia*, 977 F.3d at 952.  The

8  County is likely to prevail: (i) the Order is substantively flawed and procedurally

9  defective; (ii) Plaintiffs lack standing; (iii) the claims the Order relies on are not

10  pleaded in the Complaint and fail as a matter of law; (iv) Plaintiffs did not establish

11  irreparable harm and made no showing on the remaining elements; and (v) the Order

12  is impermissibly vague.

13  **1.**   **The Order Is Substantively Flawed and Procedurally**

14  **Improper**

15  **(a)**   **The County Did Not Have Adequate Notice**

16  A preliminary injunction may be issued "only on notice to the adverse party."

17  Fed. R. Civ. P. 65(a)(1).  This notice requirement "has constitutional as well as

18  procedural dimensions."  *Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir.

19  2010) (citation omitted); *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997) (the

20  notice requirement is "a fundamental aspect of procedural due process under the

21  Constitution").  The defendant must be "given a fair opportunity to oppose the

22  application and to prepare for such opposition," including time to marshal the

23  evidence.  *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*

24  *Local No. 70 of Alameda Cty.*, 415 U.S. 423, 432 n.7 (1974); *Weitzman v. Stein*, 897

25  F.2d 653, 657 (2d Cir. 1990) ("[T]he court must allow that party sufficient time to

26  marshal his evidence and present his arguments against the issuance of the

27  injunction.").

28  The Order goes well beyond the claims in the Complaint and the relief sought

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

in Plaintiffs' Motion. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) (court's authority limited to "case or controversy before it"). It mandates extraordinary relief on an extremely tight timeline, some of which Plaintiffs never asked for. As a result, the County did not have an opportunity to address: (i) the legal bases for the Order; (ii) the facts the Court relied on; or (iii) the relief ordered. This approach exceeds the Court's authority and violates Rule 65(a)(1). *See Qureshi*, 600 F.3d at 526 (vacating injunction for lack of notice); *Weitzman*, 897 F.2d at 657-58 (same).

### (b)   *Armstrong* **Does Not Apply**

The Court relies on *Armstrong v. Brown*, 768 F.3d 975 (9th Cir. 2014), for the proposition that it "may order injunctive relief on its own motion and is not restricted to ordering the relief requested by a party" [Dkt. 277 at 66], but that case involves circumstances not present here.

In *Armstrong*, the court *modified* a permanent injunction, and it did so in response to the plaintiffs' request for an order to show cause why the State should not be held in contempt for failing to comply with the injunction, which had been in place for five years. 768 F.3d at 978-79. The State opposed the request. *Id*. at 979. After considering the arguments and evidence submitted, the court found that the State had not complied with the injunction, but, "in an abundance of caution," concluded that the injunction "might not have stated these requirements clearly enough and, instead of holding the State in contempt, issued an injunction clarifying the State's . . . obligations." *Id*. The court gave the State "more than a month to prepare its written submission" responding to the proposed modification. *Id*. at 980.

Noting that "a district court may *sua sponte* order or modify injunctive relief," the Court of Appeals concluded that the district court was "not limited to ordering the relief requested by Plaintiffs and acted well within its authority in modifying its previous order." 768 F.3d at 980. In doing so, the Court of Appeals reasoned that "[a]ny unfairness that might have resulted from modifying the [injunction] in

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  response to the motion for contempt was cured when the court informed the State

2  that it was instead considering a modification and gave the State an opportunity to

3  respond in writing to the proposed changes." *Id*.

4      None of the circumstances that warranted the *sua sponte* modification in

5  *Armstrong* are present in this case.  The Court did not notify the parties that it was

6  going to exceed the bounds of the Motion or rely on claims not pleaded in the

7  Complaint.  Instead, the Court issued a 110-page order less than 24 hours after the

8  County, City, and Intervenors filed their oppositions.  [Dkt. 277.]  The Court did not

9  offer an opportunity for supplemental briefing, nor did it hold a hearing.  [*Id*.]

10              **(c)    <u>The Order Is Not Supported by Competent Evidence</u>**

11      A preliminary injunction is an extraordinary and drastic remedy and "should

12  not be granted unless the movant, *by a clear showing*, carries the burden of

13  persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted)

14  (noting "the requirement for substantial proof is much higher" for a preliminary

15  injunction than for summary judgment).  Each of the elements of a preliminary

16  injunction must be established by competent evidence.  *Id.* (reversing preliminary

17  injunction for "insufficient evidence" to establish a likelihood of prevailing on the

18  merits); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473

19  (9th Cir. 1985) (reversing preliminary injunction for insufficient evidence of

20  irreparable injury); *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 322 (2d

21  Cir. 1969) (affirming denial of a temporary restraining order where "[n]o evidence"

22  was offered to support plaintiff's claim).

23      Here, the Court states that the Order did not rely on the evidence Plaintiffs

24  cited in the Motion.  [Dkt. 277 at 66 n.411.]  Instead, the Order includes *65 pages of*

25  *background facts*.  [*Id*. at 1-65.]  It covers race, health and safety, and gender.  [*Id*.]

26  The historical context section stretches back to the early twentieth century.  [*Id*. at 4-

27  8.]  The Order attacks government policies dating back to 1910, with a focus on

28  highways, the City's containment zone, and housing inequities.  [*Id*. at 9-17, 20-31.]

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

The County did not have an opportunity to address any of these "facts" in its opposition.  Nowhere in the 65 pages of facts are any facts about *Plaintiffs*.  The County understands, and agrees, that the homelessness crisis is the result of complicated, historical factors.  But this case is not about how to solve homelessness.  It is about Plaintiffs' claims against the County and City.  There is no evidence in the record to support those claims, much less to conclude that Plaintiffs showed a likelihood of success on the merits to support a mandatory injunction against the County.

### 2.   Plaintiffs Lack Standing

Standing is an essential and unchanging part of the case-or-controversy requirement of Article III.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).  A plaintiff must establish standing throughout the litigation.  *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020) (affirming denial of preliminary injunction because plaintiffs lacked Article III standing).

To have Article III standing, a plaintiff must establish that (1) he or she suffered an "injury in fact"; (2) there is a fairly traceable connection to the alleged conduct of the defendant; and (3) the injury can be redressed by a federal court.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citation omitted).

### (a)   There Is No "Injury in Fact"

There is no "injury in fact."  Alleged injuries to third parties—here, PEH in Skid Row—cannot be used to support Article III standing.  *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (plaintiffs must "assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties"); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("If . . . a healthy inmate who had suffered no deprivation of needed medical treatment were able to claim violation of his constitutional right to medical care simply on the ground that the

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 Avenue of The Stars, Suite 1000   Los Angeles, California 90067
Tel: (310) 552-4400    Fax: (310) 552-8400

1  prison medical facilities were inadequate, the essential distinction between judge
2  and executive would have disappeared: it would have become the function of the
3  courts to assure adequate medical care in prisons." (citation omitted)).

4      Here, Plaintiffs are not PEH.  They are primarily Skid Row business owners
5  who want PEH off their streets.  Plaintiffs do not allege that they are members of a
6  race-based class, but that is the basis of the Court's order.  (Compl. ¶ 186; Dkt. 277
7  at 79-86.)  Plaintiffs do not have standing to bring those claims.

8      **(b)**   **Plaintiffs' Alleged Injuries Are Not Traceable to the**
9             **County**

10     Plaintiffs must establish that their injuries are "fairly traceable" to the
11  County's alleged misconduct.  *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141
12  (9th Cir. 2013) (citation omitted).  Plaintiffs claim they have suffered injuries as a
13  result of the increase of homeless encampments in Skid Row, but it is widely
14  recognized that a variety of factors contribute to homelessness.  Plaintiffs did not
15  show that the increase in homeless encampments on Skid Row was *caused by* the
16  County, nor does the Order.  *See Warth*, 422 U.S. at 508-10 (taxpayers lacked
17  standing to challenge zoning regulations as the link between their increased tax
18  burden to fund low-income housing in their own town was not sufficiently linked to
19  the alleged failure to support low-income housing in a neighboring town); *Linda*
20  *R.S.*, 410 U.S. at 617-18 (plaintiff lacked standing to challenge district attorney's
21  failure to prosecute fathers for delinquent child support because the link between
22  unpaid support and prosecutorial discretion was too attenuated).

23      **(c)**   **Plaintiffs Cannot Show Redressibility**

24     "To establish Article III redressibility, the plaintiffs must show that the relief
25  they seek is . . . within the district court's power to award." *Juliana*, 947 F.3d at
26  1170.  "As the Supreme Court recently explained, 'a constitutional directive or legal
27  standards' must guide the courts' exercise of equitable power." *Id.* at 1173 (quoting
28  *Rucho v. Common Cause*, 139 S. Ct. 2484, 2508 (2019)).  "Absent those standards,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   federal judicial power could be 'unlimited in scope and duration,' and would inject

2   'the unelected and politically unaccountable branch of the Federal Government

3   [into] assuming such an extraordinary and unprecedented role.'"  *Id.* (alteration in

4   original) (quoting *Rucho*, 139 S. Ct. at 2507).

5         Going back almost 50 years, the Supreme Court rejected this type of

6   interference with matters of local policy.  In *Rizzo v. Goode*, 423 U.S. 362 (1976),

7   the Supreme Court held that an injunction was "an unwarranted intrusion by the

8   federal judiciary into the discretionary authority committed to [city officials] by

9   state and local law to perform their official functions." 423 U.S. at 366.  "[F]ederal

10  courts must be constantly mindful of the 'special delicacy of the adjustment to be

11  preserved between federal equitable power and State administration of its own

12  law.'"  *Id*. at 378 (citation omitted).  Thus, a plaintiff seeking to enjoin a

13  government agency "must contend with 'the well-established rule that the

14  Government has traditionally been granted the widest latitude in the "dispatch of its

15  own internal affairs."'"  *Id*. at 378-79 (citations omitted).

16        The Supreme Court reaffirmed the limited scope of federal equity power in

17  *Lewis v. Casey*, 518 U.S. 343 (1996).  The Supreme Court held that the district

18  court's actions violated separation of powers,[1] explaining that "it is not the role of

19  courts, but that of the political branches, to shape the institutions of government in

20  such fashion as to comply with the laws and the Constitution."  518 U.S. at 349.

21        In *Horne v. Flores*, 557 U.S. 433 (2009), the district court issued an

22  injunction requiring the state to increase funding for certain programs, held the State

23  in civil contempt for failing to do so, and rejected the State's proposed legislation as

24  inadequate.  Arizona's Superintendent of Public Instruction and Arizona legislators

25  intervened, moved to purge the contempt order, and sought relief from the

26

27  [1] "[R]edressibility questions implicate the separation of powers."  *Juliana*, 947 F.3d

28  at 1173.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1  injunction.  The district court denied the requests, and the Court of Appeals

2  affirmed.

3      The Supreme Court reversed, cautioning against federal court decrees that

4  have the effect of dictating state or local budget priorities because "[s]tates and local

5  governments have limited funds."  557 U.S. at 448 (citing *Missouri v. Jenkins*, 515

6  U.S. 70, 131 (1995) ("A structural reform decree eviscerates a State's discretionary

7  authority over its own program and budgets and forces state officials to reallocate

8  state resources and funds.")).  It held that the lower court "improperly substituted its

9  own educational and budgetary policy judgments for those of the state and local

10 officials to whom such decisions are properly entrusted."  *Id*. at 455.

11     Here, the Court issued injunctive relief in contravention of the principles

12 established in *Rizzo*, *Lewis*, and *Horne*.

13           **(d)   Plaintiffs Lack Prudential Standing**

14     There exists a body of "judicially self-imposed limits on the exercise of

15 federal jurisdiction," *Allen v. Wright*, 468 U.S. 737, 751 (1984), "founded in

16 concern about the proper—and properly limited—role of the courts in a democratic

17 society," *Warth*, 422 U.S. at 498.  These concerns are commonly referred to as

18 "prudential" standing.  *City of Los Angeles v. County of Kern*, 581 F.3d 841, 845

19 (9th Cir. 2009) (citation omitted).

20     Plaintiffs' generalized grievances are not redressible in the courts.  *United*

21 *States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir. 2007.  Plaintiffs lack standing as

22 a "prudential" matter.

23           **3.   The Claims Against the County Fail as a Matter of Law**

24           **(a)   The Constitutional Claims Do Not Support the Order**

25     Plaintiffs' Motion lumped three constitutional claims together and argued, in

26 four very general paragraphs, that "Defendants have violated Due Process under the

27 Fifth and Fourteenth Amendment by adopting and implementing policies that have

28 created danger to Plaintiffs and PEH."  [Dkt. 265 at 28:28-29:2.]

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

The Order dedicates *19* pages to various constitutional grounds, many of which are not pleaded in the Complaint, and props them up as the basis for issuing an injunction against the County.  [Dkt. 277 at 67-86.]  It is invalid for that reason alone: "A court's equitable power lies only over the merits of the case or controversy before it."  *Pac. Radiation Oncology*, 810 F.3d at 633.  It is also procedurally defective.  The County did not have an opportunity to address these arguments, and there was no hearing or opportunity for supplemental briefing.

The constitutional claims also fail on the merits:

### (i)     The Equal Protection Claim Is Untenable

"The first step in equal protection analysis is to identify the [defendants'] classification of groups."  *Country Classic Dairies, Inc. v. State of Montana, Dep't of Commerce Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988).  This is because a plaintiff must "show that the law is applied in a discriminatory manner."  *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995).  The next step is to "determine the level of scrutiny."  *Country Classic Dairies*, 847 F.2d at 596.

Plaintiffs allege the County violated equal protection by "enforcing the law in some areas and declining to enforce the law in others," which allowed some homeless encampments to persist.  (Compl. ¶¶ 185-86.)  In the Order, the Court relies on "historical constitutional violations, a persisting legacy of racially disparate impacts."  [Dkt. 277 at 71, 76-86.]  This theory fails.

First, there is no allegation that *the County* engaged in any enforcement.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.").  The Complaint alleges that only *the City* failed to enforce its own anti-vagrancy laws in Skid Row.  (Compl. ¶ 30.)  The County does not enforce the City's anti-vagrancy laws, within Skid Row or elsewhere.

Second, Plaintiffs do not allege discrimination against a suspect class, nor do they allege that they themselves belong to a suspect class.  *Wayte v. United States*,

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

470 U.S. 598, 608 (1985) ("It is appropriate to judge selective prosecution claims according to ordinary equal protection standards.").  Plaintiffs complain that homeless encampments are permitted to remain in certain places in Los Angeles. But geographic location does not establish a suspect classification.  *Culinary Studios, Inc. v. Newsom*, No. 1:20-CV-1340 AWI EPG, 2021 WL 427115 (E.D. Cal. Feb. 8, 2021) (applying the rational basis test to equal protection challenge claiming that COVID-19 policies discriminate against businesses based on their physical location); *In re Tourism Assessment Fee Litig.*, No. 08cv1796-MMA(WMc), 2009 WL 10185458 (S.D. Cal. Feb. 19, 2009) (applying rational basis review to equal protection challenge to state program that granted favorable treatment to persons who rented cars at airports as opposed to other locations).  Plaintiffs do *not* allege that they are members of a race-based class.  Nonetheless, racial discrimination is the foundation of the Court's Order.  (Compl. ¶ 186; Dkt. 277 at 79-86.)

The rational basis test applies.  *Hodel v. Indiana*, 452 U.S. 314, 331 (1981) (laws that do not "employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose").  Under rational basis review, the presumption that governmental decision-making is rational "can only be overcome by a clear showing of arbitrariness and irrationality."  *Hodel*, 452 U.S. at 331-32.  Here, the Complaint alleges that *the City* is limited in its ability to enforce City anti-vagrancy laws due to the Ninth Circuit's decision in *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019).  (Compl. ¶ 31.)  Plaintiffs' equal protection theory is that the City's compliance with *Martin* is "irrational."

Third, Plaintiffs cannot show that the County discriminated against anyone. A plaintiff bringing an equal protection challenge must show "both that the . . . system had a discriminatory effect and that it was motivated by a discriminatory purpose." *Wayte*, 470 U.S. at 608-09.  Plaintiffs contend that the City did not enforce its anti-vagrancy laws in Skid Row.  The County has no enforcement

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

authority in the City and, in fact, has a "Care First" model that does not support enforcement as a solution to homelessness.  Thus, Plaintiffs have not alleged and cannot allege a discrimination claim against the County under section 1983.

Plaintiffs cannot allege discriminatory animus.  The County has made substantial efforts to serve the needs of PEH and reduce homelessness.  Plaintiffs concede this fact.  (Compl. ¶¶ 2,18, 73, 74.)  The Court's reference to "historical constitutional violations" cannot bolster Plaintiffs' claims (especially claims they have not even made against the County in the Complaint).  [Dkt. 277 at 71.[2]]

### (ii)   There Is No State-Created Danger

The Court also relies on the state-created danger doctrine.  [Dkt. 277 at 71-75.]  That doctrine is a theory of substantive due process liability.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-62 (9th Cir. 2006).  Generally, "members of the public have no constitutional right to sue [public] employees who fail to protect them against harm inflicted by third parties."  *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992).  The "state-created danger" doctrine is a narrow exception that permits a plaintiff to sue officers who fail "to protect a person's interest in his personal security or bodily integrity when the [officer] affirmatively and with deliberate indifference placed that person in danger."  *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016).

To assert a "state-created danger" claim, the plaintiff must prove that the officials (1) created an actual, particularized danger through their own affirmative conduct, and (2) acted with deliberate indifference to a known or obvious danger.  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011).  In addition, a municipal

---

[2] The Court theorizes that "state inaction has become state action that is strongly likely in violation of the Equal Protection Clause."  [Dkt. 277 at 78; *see also* 76-79.]  The Court "acknowledges that this conclusion advances equal protection jurisprudence."  [*Id*.]  This theory is also not pleaded in the Complaint or argued in the Motion, and therefore cannot serve as the basis for relief against the County here.  *Pac. Radiation Oncology*, 810 F.3d at 633.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

government, such as the County, cannot be vicariously liable under section 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978). To assert a "state-created danger" claim against the County, Plaintiffs must further allege that the County is directly responsible for the conduct of its employees through a recognized theory of municipal liability. *Id.*

Plaintiffs admit the County makes substantial efforts to serve the needs of PEH and reduce homelessness. (Compl. ¶¶ 2, 18, 73, 74.) Neither the Motion nor the Order identifies any actual, particularized danger the County *created* for Plaintiffs. Instead, the Order describes a general "history of structural racism, spanning over a century" as evidence of a "state-created disaster." [Dkt. 277 at 72.] These generalized averments, not tethered to Plaintiffs, their Complaint, or any actions taken by County officials, cannot support the extraordinary relief granted by the Court. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 474-75 (1982) ("[T]he Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." (quoting *Warth*, 422 U.S. at 499-500)). The state-created danger doctrine does not apply.[3]

### (iii)   The County Did Not Violate Plaintiffs' Substantive Due Process Rights

While Plaintiffs barely address substantive due process, the Order dedicates seven pages to that claim. [Dkt. 277 at 79-86.] The Order finds that the "practice of disrupting unhoused Black families' constitutional right to family integrity by compounding structural racism in present day policies is sufficient to find Plaintiffs have a likelihood of success on their due process claim." [*Id.* at 86.]

---

[3] The Court also includes the "special relationship" exception, which is not pleaded in the Complaint or argued in the Motion, but appears to apply it only to the City. [Dkt. 277 at 75-76.]

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

A substantive due process claim requires "the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 62 (9th Cir. 1994). Substantive due process usually applies to matters relating to marriage, family, procreation, and the right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994).

A substantive due process claim that does not involve fundamental rights requires proof that the government's conduct was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926); *County of Sacramento v. Lewis*, 523 U.S. 833, 845-49 (1998) (substantive due process prohibits arbitrary deprivation of individuals' liberty by government).

Here, Plaintiffs do not contend the County violated their fundamental rights. In fact, Plaintiffs do not even specify what constitutional rights underlie their claim. (*See* Compl. ¶¶ 185-86.) At best, Plaintiffs, who are business owners and residents, allege they suffered economic harms, such as lost business, increased costs, and lost property value as a result of encampments in Skid Row. (*Id.*) As these are not fundamental rights, Plaintiffs' theory is necessarily limited to a claim that the County violated their rights through arbitrary action. *County of Sacramento*, 523 U.S. at 845-49; *Village of Euclid*, 272 U.S. at 395.

Plaintiffs "shoulder a heavy burden." *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1994). They must allege that the County "*could* have had no legitimate reason for its decision." *Id.* (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994)). If the County's conduct was rationally related to a legitimate governmental interest, there is no due process violation. *Id.*

Plaintiffs have not alleged that the County acted irrationally or arbitrarily. Rather, the Complaint attacks decisions made *by the City* in response to federal court cases in which the County was not a party. (Compl. ¶ 186 (alleging that the City "had no rational basis" for entering into a settlement in the *Mitchell* case and

Miller Barondess, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   for relying on that settlement to not enforce anti-vagrancy laws in Skid Row).)

2   Plaintiffs cannot sue the County based on alleged irrational conduct by the City.

3   *Taylor*, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing

4   of personal participation by the defendant.").

5       Plaintiffs must also demonstrate that the County's conduct "shocks the

6   conscience." *County of Sacramento*, 523 U.S. at 846.  This requires a showing that

7   the County acted with an intent to injure.  *Id.* at 849.  There is no such intent here

8   and zero evidence of it.

9       Plaintiffs admit the County has taken substantial steps to combat the

10   homelessness crisis.  (Compl. ¶ 2 ("The City and the County combined spend over a

11   billion dollars annually providing police, emergency, and support services to those

12   living on the streets."); *id.* ¶ 18 (the County has "gone to great lengths in the last

13   couple years to address this crisis"); *id.* ¶ 73 ("[T]he City and County have made

14   efforts to address this crisis . . ."); *id.* ¶ 74 ("[T]he amount of effort and resources

15   that have been devoted to addressing this issue is considerable and admirable.").)

16   These admissions foreclose liability.  *County of Sacramento*, 523 U.S. at 845-49.

17       The Court's expansive reading of substantive due process is untethered to the

18   claims in this case or the Plaintiffs who brought them.

19   **(b)   Desegregation Case Law Does Not Apply**

20       The Court previously noted that the contours of a federal court's equitable

21   authority has come up in other contexts, including in *Brown v. Plata*, and in the

22   aftermath of *Brown v. Board of Education*.  [Dkt. 205 at 4.]  The Court

23   acknowledged, however, that those "constitutional violations were of a different

24   sort."  [*Id.*]  As directed by the Court, the County explained why those two cases do

25   not support equitable relief here.  [Dkt. 235.]  Yet, the Court relied on those cases in

26   issuing the Order.  [Dkt. 277 at 67-68, 78.]  They do not apply.

27   **(c)   The Mandatory Duty Claim Is Untenable**

28       The Order uses Welfare & Institutions Code section 17000 ("WIC § 17000")

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

as a hook for extraordinary injunctive relief against the County by repeating a soundbite from LAHSA Executive Director Heidi Marston's public comments that "housing is healthcare." [Dkt. 277 at 86-90.] That soundbite does not generate a viable legal claim.

To establish a claim for violation of a mandatory duty, a plaintiff must first prove that the statute at issue is "*obligatory*, rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken." *Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000). Further, it is not enough that the public entity has an obligation to perform a function if the function itself involves the exercise of discretion. *Id.*

Counties have two obligations: (1) to provide general assistance ("GA") to the indigent; and (2) to provide medically necessary care to "medically indigent persons." *Hunt v. Superior Court*, 21 Cal. 4th 984, 1002-03 (1999). Section 17001 leaves it to the Board of Supervisors to adopt the "standards of aid and care." Cal. Welf. & Inst. Code § 17001 ("The *board of supervisors of each county*, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county." (emphasis added)). Because the County has *discretion* to determine how to discharge its obligations, the mandatory duty claim fails. *Haggis*, 22 Cal. 4th at 498; *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1246 (1996) ("Achieving the mandated level of care requires the exercise of considerable discretion as the County chooses between a multitude of potential courses of action.").

The County has exercised its discretion and determined how to support its indigent residents. Plaintiffs acknowledge as much in the Complaint, describing "the significant percentage of County funds allocated to departments to address issues of homelessness, including those housed and treated in County jails, emergency treatment and transport, Department of Mental Health, LA County Fire

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1    Department, medical treatment through various hospitals and treatment centers, and

2    criminal prosecution and defense costs, not to mention funding General Relief and

3    other myriad social services."  (Compl. ¶ 64.)

4         Plaintiffs, and the Court, want the County to discharge its obligations in a

5    *different way*.  That is exactly what the law prohibits.  *Tailfeather*, 48 Cal. App. 4th

6    at 1246 (because counties have discretion to determine the type of relief they

7    provide under WIC sections 17000 and 17001, a court's role is limited to

8    determining "whether the County has abused or exceeded its discretion under the

9    governing statutes—not to dictate how that discretion must be exercised").

10        **(d)     The ADA Claims Do Not Apply to the County**

11        The Order lumps the County in with the City for its discussion of Plaintiffs'

12   ADA claims.  [Dkt. 277 at 90-91.]  Plaintiffs did not name the County in those

13   claims (the Eighth, Ninth, and Tenth Causes of Action).  (Compl. ¶¶ 167-183.)  Nor

14   did Plaintiffs include any ADA-related argument about the County in the Motion.

15   [Dkt. 265 at 33:11-35-14.]  The ADA claims cannot be the basis for relief against

16   the County.  *Pac. Radiation Oncology*, 810 F.3d at 633.

17        **4.     Plaintiffs Did Not Establish Irreparable Harm**

18        An injunction requires a showing that irreparable harm will likely result

19   without the injunction.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)

20   (rejecting the Ninth Circuit's "possibility" standard as "too lenient"; plaintiffs must

21   show that "irreparable injury is *likely* in the absence of an injunction").

22        Harm to third parties does not constitute irreparable harm.  *Winter*, 555 U.S.

23   at 20 ("A plaintiff seeking a preliminary injunction must establish . . . that *he is*

24   likely to suffer irreparable harm in the absence of preliminary relief . . . ." (emphasis

25   added)); *Immigrant Legal Res. Ctr. v. City of McFarland*, 827 F. App'x 749, 751-52

26   (9th Cir. 2020) (mem.) (holding that the district court abused its discretion in finding

27   a likelihood of irreparable harm because "the district court focused its irreparable

28   harm analysis on the prospect of harm to third parties [but] [t]he standard for

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1  preliminary injunctions, however, requires irreparable harm to the plaintiffs

2  themselves").

3      The Order states: "No harm could be more grave or irreparable than the loss

4  of life." [Dkt. 277 at 92.] But Plaintiffs are not PEH living in Skid Row, and they

5  are not at risk of dying. Plaintiffs are largely business owners in Skid Row, with the

6  exception of one Plaintiff who owns an auto-repair shop in Mar Vista. (Compl.

7  ¶¶ 77-106, 108, 112-22.) Thus, the harms suffered by PEH—who are third parties

8  to this lawsuit—cannot be used as a basis for the Order.

9      Plaintiffs are arguably *adverse* to PEH, as they demand the City enforce anti-

10 vagrancy laws *against* PEH. Plaintiffs want all PEH out of Skid Row immediately,

11 with no regard for where those individuals want to go or whether suitable supportive

12 housing is available in the next 90 days. The County's approach focuses on

13 individual relationships and trust building. The Order ignores this human aspect of

14 the homelessness crisis. It is more likely to *cause* irreparable harm than avoid it.

**5.    Plaintiffs Made No Showing on the Remaining Elements**

16     When the government is the defendant, the final two *Winter* factors (balance

17 of equities and public interest) merge together. Plaintiffs did not make any showing

18 that the injunction is in the public interest. The County, in contrast, explained why

19 it would *not* be (as did the City and Intervenors). The Order simply states that

20 Plaintiffs satisfied both factors because they "demonstrated the likelihood of a

21 deprivation of their constitutional rights." [Dkt. 277 at 92, 93.]

**6.    The Order Is Impermissibly Vague**

23     An injunction must "state its terms specifically" and "describe in reasonable

24 detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). A vague

25 injunction cannot be enforced. *Del Webb Communities, Inc. v. Partington*, 652 F.3d

26 1145, 1150 (9th Cir. 2011) (injunction prohibiting home inspections from using

27 "illegal, unlicensed and false practices" is "too vague to be enforceable"). The

28 vagueness of the Order here has already resulted in one "clarification." [Dkt. 279.]

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

### B.   <u>The County And The Public Will Be Irreparably Harmed Absent A Stay</u>

Courts find irreparable harm where injunctions interfere with government functions.  *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (finding irreparable harm where injunction interfered with the state's "law enforcement and public safety interests"); *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox. Co.*, 434 U.S. 1345, 1351 (1977) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

Here, the Court's injunction usurps the County's authority, substitutes its judgment for that of elected officials, and runs head-on into voter-endorsed, Board-approved policies, like Measure H, and state law, like the Mental Health Services Act.  It orders the County to dedicate funds and resources to conducting audits and investigations.  [Dkt. 277 at 106.]  It even goes so far as to propose *commandeering County property*, ordering "the cessation of sales, transfers by lease or covenant of . . . all similarly situated properties held by the County."  [*Id*. at 107.]

This intrusion into local affairs will irreparably harm the County and its constituents.  In its opposition to the Motion, the County explained why both the County and the public would be irreparably harmed if the Court were to grant the requested relief [Dkt. 270, 274], as did the City [Dkt. 269] and Intervenors [Dkt. 275-276].  As set forth in those papers and the concurrently filed declarations of Cheri Todoroff, Matt McGloin, and Vanessa Moody, irreparable harm is an even greater risk now that the Court has issued an Order that goes far beyond Plaintiffs' requested relief.  For example:

- Implementation would interfere with the provision of services, which are provided throughout the County (not just in Skid Row);
- To even attempt to comply with the terms of the requested injunction, the County would have to pull resources from other areas, which would mean disproportionately directing services with resulting inequities;

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

- Diverting resources to emergency, interim housing would only exacerbate the existing backlog of residents seeking permanent housing;

- Because the interim housing resources that exist are occupied, and because constructing 2,093 new beds in 90 days is simply not feasible, issuing the requested injunction would actually require the County to move current residents out of their housing resources to move the Skid Row population in;

- Forcing relocation undermines the County's goal of achieving long-term results by building relationships with PEH and helping them find permanent housing and services; and

- Mandating that the County cease sales and transfers of certain properties would impact properties designated to be used for other public purposes (including shelter/housing for PEH, schools, etc.).

The Court's Order threatens to upend local government and throw the County's homeless services delivery into chaos. Under these circumstances, the likelihood of severe irreparable harm to the County and the public weighs heavily in favor of a stay. *Lair v. Bullock*, 697 F.3d 1200, 1214-15 (9th Cir. 2012) (State of Montana demonstrated probability of irreparable harm where citizens had "a deep interest in fair elections," allowing injunction to remain in place pending appeal "could throw a previously stable system into chaos," and consequences from disrupting campaign contribution laws during an election would be "irreversible").

## C.     A Stay Will Not Substantially Injure Any Interested Parties

In contrast to the grave irreparable harm that the County and the public will suffer if the Order is not stayed, a stay will not injure Plaintiffs, Intervenors, or any other stakeholders. Plaintiffs, downtown business owners and residents, will not be harmed by pausing the County's directive to relocate all PEH in Skid Row. Even the individuals who the Order is intended for will not be injured by a stay. Because

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

1   they are not parties to this lawsuit, it is unclear if they would even support the

2   ordered relocation measures.  And the County does not intend to suspend its

3   ongoing efforts to serve PEH in Skid Row.  Under these circumstances, "the balance

4   of interests falls resoundingly in favor of the public interest."  *Lair*, 697 F.3d at

5   1215.

6         **D.**    **The Public Interest Favors A Stay**

7         The public has an interest in government policies that take into account all

8   potential ramifications and weigh the interests of all relevant stakeholders.  *Ariz.*

9   *Democratic Party v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020) (granting stay

10  pending appeal and holding that public interest served by preserving existing laws,

11  "rather than by sending the State scrambling to implement and to administer a new

12  procedure"); *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d

13  1112, 1127 (9th Cir. 2008) (granting stay pending appeal regarding

14  passage/implementation of City ordinance mandating minimum levels of health care

15  expenditures by private employers, where the City and County had a "probability,

16  even a strong likelihood, of success in their argument," and the public interest would

17  be served by the stay); *United States v. Real Prop. & Improvements Located at 2366*

18  *San Pablo Ave., Berkeley, Cal.*, No. 13-cv-02027-JST, 2015 WL 525711, at *4

19  (N.D. Cal. Feb. 6, 2015) (granting City of Berkeley's motion to stay, recognizing

20  the public interest in "properly enacted local ordinance").

21        The County explained why the injunction would not benefit PEH or the

22  public more generally, as did Intervenors.  [Dkt. 270, 275, 276.]  The United Way of

23  Greater Los Angeles also weighed in.  [Dkt. 253, 273.]  Intervenors submitted

24  declarations from third-party experts: a law professor and homeless advocate, the

25  president of a nonprofit urban research organization, a clinical-community

26  psychologist and founder of the Pathways Housing First Institute, and the Director

27  of Public Policy and Community Organizing at Community Housing Partnership.

28  [Dkt. 275, 276.]  The Court did not address any of these declarations in its Order.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Intervenors and their declarants, unlike Plaintiffs and the Court, are embedded in the community and more aptly able to weigh the public interest.  Intervenors explained: "Plaintiffs ask this Court to grant an incredibly broad, mandatory injunction that would require the City and County to radically reshift their priorities and practices away from a needs-based system of care and towards a location-based model of housing, and then deploy its police force to enforce an anti-camping ordinance against some of the most vulnerable members of the community."  [Dkt. 275 at 12:14-19.]  Intervenors argued, using expert declarations in support, that the requested relief "would have a significant negative impact not only on people living in Skid Row, but also to those people experiencing homelessness outside of Skid Row, and the community as a whole . . . it will elevate form over substance, offers of shelter over real housing solutions."  [*Id.* at 12:25-13:3.]  It would "undermine any progress currently being made towards actually finding housing solutions for people on Skid Row and throughout Los Angeles."  [*Id.* at 13:3-5.]

The County's policies are the product of community meetings, information gathering from relevant stakeholders, and expert analysis.  In contrast, the Court's mandatory injunction emerged in a vacuum with limited guidance from Plaintiffs— who are not elected officials, policy experts, or even PEH.  In these circumstances, the Court should defer to the County's consideration of the public interest.  *Golden Gate Rest. Ass'n*, 512 F.3d at 1126-27 ("Finally, our consideration of the public interest is constrained in this case, for the responsible public officials in San Francisco have already considered that interest.").

## VI.   **CONCLUSION**

The County respectfully requests that the Court grant the *ex parte* application and stay the April 20, 2021 preliminary injunction Order [Dkt. 277] pending appeal.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

1   DATED:  April 23, 2021            MILLER BARONDESS, LLP

2

3

4                                      By: _____

5                                           LOUIS R. MILLER
                                            Attorneys for Defendant
6                                           COUNTY OF LOS ANGELES

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## <u>CERTIFICATE OF SERVICE</u>

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067.

On April 23, 2021, I served true copies of the following document(s) described as:

**EX PARTE APPLICATION TO STAY COURT'S APRIL 20, 2021 ORDER [DKT. 277] PENDING APPEAL**

on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 23, 2021, at Los Angeles, California.

_____
Alexandria Alamango

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

**SERVICE LIST**

*LA Alliance for Human Rights, et al. v. City of Los Angeles, et al.*
**Case No. 2:20-cv-02291**

| | |
|---|---|
| Matthew Donald Umhofer<br>Elizabeth A. Mitchell<br>SPERTUS, LANDES & UMHOFER,<br>LLP<br>617 West 7th Street, Suite 200<br>Los Angeles, CA 90017 | Attorneys for Plaintiffs<br>*LA ALLIANCE FOR HUMAN RIGHTS,<br>JOSEPH BURK, HARRY TASHDJIAN,<br>KARYN PINSKY, CHARLES MALOW,<br>CHARLES VAN SCOY, GEORGE<br>FREM, GARY WHITTER, and<br>LEANDRO SUAREZ*<br><br>Telephone:  213-205-6520<br>Facsimile:  213-205-6521<br>Email: matthew@spertuslaw.com;<br>emitchell@spertuslaw.com |
| Rodrigo A. Castro-Silva<br>Amie S. Park<br>Thomas J. Faughnan<br>Lauren M. Black<br>OFFICE OF THE COUNTY COUNSEL<br>500 West Temple Street, Suite 468<br>Los Angeles, CA 90012 | Attorneys for Defendant<br>*COUNTY OF LOS ANGELES*<br><br>Telephone:  213-974-1830<br>Facsimile:  213-626-7446<br>Email: rcastro-<br>silva@counsel.lacounty.gov;<br>apark@counsel.lacounty.gov;<br>tfaughnan@counsel.lacounty.gov;<br>lblack@counsel.lacounty.gov |
| Brandon D. Young<br>MANATT, PHELPS & PHILLIPS, LLP<br>2049 Century Park East, Suite 1700<br>Los Angeles, CA 90067 | Attorneys for Defendant<br>*COUNTY OF LOS ANGELES*<br><br>Telephone:  310-312-4000<br>Facsimile:  310-312-4224<br>Email: bdyoung@manatt.com |
| Byron J. McLain<br>FOLEY & LARDNER, LLP<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071 | Attorneys for Defendant<br>*COUNTY OF LOS ANGELES*<br><br>Telephone:  310-972-4500<br>Facsimile:  213-486-0065<br>Email: bmclain@foley.com |

508463.3

28

Case No. 2:20-cv-02291 DOC-KES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

| | |
|---|---|
| Arlene Nancy Hoang | Attorneys for Defendant |
| Scott D. Marcus | *CITY OF LOS ANGELES* |
| Jessica Mariani | |
| LOS ANGELES CITY ATTORNEY'S | Telephone:   213-978-6952 |
| OFFICE | Facsimile:   213-978-7011 |
| 200 North Main Street | Email: arlene.hoang@lacity,org; |
| 7th Floor, Room 675 | scott.marcus@lacity.org; |
| Los Angeles, CA 90012 | jessica.mariani@lacity.org |
| | |
| Brooke Alyson Weitzman | Attorneys for Intervenor |
| William R. Wise | *ORANGE COUNTY CATHOLIC* |
| ELDER LAW AND DISABILITY | *WORKER* |
| RIGHTS CENTER | |
| 1535 East 17th Street, Suite 110 | Telephone:   714-617-5353 |
| Santa Ana, CA 92705 | Email: bweitzman@eldrcenter.org; |
| | bwise@eldrcenter.org |
| | |
| Paul L. Hoffman | Attorneys for Intervenors |
| Catherine E. Sweetser | *ORANGE COUNTY CATHOLIC* |
| SCHONBRUN SEPLOW HARRIS & | *WORKER, LOS ANGELES* |
| HOFFMAN, LLP | *COMMUNITY ACTION NETWORK,* |
| 11543 West Olympic Boulevard | *LOS ANGELES CATHOLIC WORKER,* |
| Los Angeles, CA 90064 | *and CANGRESS* |
| | |
| | Telephone:   310-396-0731 |
| | Facsimile:   310-399-7040 |
| | Email: hoffpaul@aol.com; |
| | csweetser@sshhlaw.com |
| | |
| Carol A. Sobel | Attorneys for Intervenors |
| Weston C. Rowland | *LOS ANGELES COMMUNITY ACTION* |
| LAW OFFICE OF CAROL SOBEL | *NETWORK, LOS ANGELES CATHOLIC* |
| 725 Arizona Avenue, Suite 300 | *WORKER, ORANGE COUNTY* |
| Santa Monica, CA 90401 | *CATHOLIC WORKER, and CANGRESS* |
| | |
| | Telephone:   310-393-3055 |
| | Facsimile:   310-451-3858 |
| | Email: carolsobellaw@gmail.com; |
| | rowland.weston@gmail.com |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

EX PARTE APPLICATION TO STAY COURT'S APRIL 20, 2021 ORDER PENDING APPEAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Shayla R. Myers
LEGAL AID FOUNDATION OF LOS ANGELES
7000 South Broadway
Los Angeles, CA 90003

Attorneys for Intervenors
*LOS ANGELES COMMUNITY ACTION NETWORK, LOS ANGELES CATHOLIC WORKER, and CANGRESS*

Telephone:   213-640-3983
Facsimile:    213-640-3988
Email: smyers@lafla.org

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS, SUITE 1000   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

508463.3

30

Case No. 2:20-cv-02291 DOC-KES

EX PARTE APPLICATION TO STAY COURT'S APRIL 20, 2021 ORDER PENDING APPEAL