UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-(KESx)　　　　　　　　　　　　Date: May 11, 2021

Title: LA ALLIANCE FOR HUMAN RIGHTS, et al., v. CITY OF LOS ANGELES, et al.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Kelly Davis | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):**　　**ORDER DENYING MOTION TO DISMISS [256]**

Before the Court is a Motion to Dismiss ("Motion") (Dkt. 256) brought by Defendant County of Los Angeles ("Defendant" or "County"). Having reviewed the moving papers submitted by the parties and heard the parties' arguments, the Court DENIES Defendant's Motion.

**I.　Background**

**a.　Facts**

Plaintiffs are members of a broad coalition of Los Angeles residents that includes a number of persons experiencing homelessness in Los Angeles. *See* Dkt 265-2, Declarations of Mary Brannon, Maria Diaz, Gregory Gibson, Javier Gonzales, Ann Jackson, Wenzial Jarrell, and Luis Zaldivar; Dkt. 268 at 2. Specifically, Plaintiffs assert that they "are current and formerly unhoused individuals, residents, community members, businesses, non-profit, and service providers all coming together to fight against what has become the accepted standard of death and despair in Los Angeles." Dkt. 285 at 3; Dkt. 265-2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                              Date: May 11, 2021

Page 2

Currently, five homeless individuals die each day on the streets of Los Angeles, and death rates and overall rates of homelessness are rising. Plaintiffs alleged in March 2020 that "the City's homeless population has nearly doubled in the last three years" and "[s]ome 75 percent of these are unsheltered persons who lack regular access to basic hygiene care such as toilets, running water to wash hands, showers, sinks, kitchen, laundry which has led to filthy (and unhealthy) conditions." Compl. ¶ 1. Plaintiffs allege that the City and the County have created the homelessness crisis in Los Angeles by repeatedly failing to meet the needs of the homeless community as required under the U.S. Constitution and California state law. According to Plaintiffs, "[t]he City and County combined spend over a billion dollars annually providing police, emergency, and support services to those living on the streets. And still, the tragedy unfolds." Compl. ¶ 2. Plaintiffs further aver that "[f]or decades, the City and County have failed to . . . build the infrastructure to support the significant numbers of unhoused persons." Compl. ¶ 17. "Steps could be taken to provide safe sleeping spaces for the entire homeless population for a fraction of the funds currently devoted the homelessness crisis." Compl. ¶ 13.

Plaintiffs bring constitutional claims under 42 U.S.C. § 1983 as well as claims under California state law, including both statutory and tort claims. In particular, Plaintiffs bring claims based on Cal. Welf. & Inst. Code § 17000; negligence; public and private nuisance; Due Process and Equal Protection rights under the Fifth and Fourteenth Amendments; state-created danger doctrine; and municipal liability for unconstitutional custom or policy.

    a.  **Procedural History**

On March 10, 2020, Plaintiff LA Alliance for Human Rights et al. filed their complaint (Dkt. 1). In the ensuing year, the Court conducted numerous hearings in which it heard evidence regarding the City and County of Los Angeles' action and inaction as it pertains to the homelessness crisis. On March 29, 2021, the County of Los Angeles filed the instant Motion to Dismiss ("Motion") (Dkt. 256). On April 19, 2021, Plaintiffs filed an opposition to Defendant County's Motion to Dismiss ("Opposition") (Dkt. 268). Defendant County replied on April 26, 2021 ("Reply") (Dkt. 291).

On April 20, 2021, the Court issued a preliminary injunction, finding that Plaintiffs were likely to succeed on the merits of many of their constitutional and statutory claims (Dkt. 277).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                        Date: May 11, 2021

Page 3

## II.     Subject Matter Jurisdiction

### a. Legal Standard

Dismissal under Rule 12(b)(1) is proper if the Court lacks subject matter jurisdiction to adjudicate claims asserted in a plaintiff's complaint. Fed. R. Civ. P. 12(b)(1). To satisfy the "'irreducible constitutional minimum' of standing," the party invoking federal jurisdiction must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A motion to dismiss under a Rule 12(b)(1) challenge to subject matter jurisdiction may be facial or factual. "A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### b. Discussion

The County asserts that Plaintiffs lack standing because "taxpayers [cannot] challeng[e] discretionary spending by a municipality on issues that impact the general welfare of its residents" and cannot allege injuries to third parties—homeless persons on Skid Row—to support Article III standing for themselves. Mot. at 15. Plaintiffs maintain that they possess Article III standing and support their claim with Declarations (Dkt. 265-2) that show there are homeless persons amongst the Plaintiffs. *See* Opp'n. at 7.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendant argues that Plaintiffs lack standing because they bring unviable "generalized grievances about local government" as taxpayers and lack prudential standing as litigants raising another person's legal rights given injury to homeless persons is the basis for the legal claims. Mot. at 15, 21. Plaintiffs assert that they "are current and formerly unhoused individuals, residents, community members, businesses, non-profit, and service providers all coming together to fight against what has become the accepted standard of death and despair in Los Angeles." Dkt. 285 at 3; Dkt. 265-2.

The Court finds that the Plaintiff has satisfied the injury-in-fact requirement. As shown in the Declarations attached to the Plaintiffs' motion for preliminary injunction, there are numerous homeless persons amongst the Plaintiffs, all of whom are members of LA Alliance and are currently experiencing homelessness in and around Skid Row. *See, e.g.* Dkt 265-2, Declarations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES											Date: May 11, 2021

Page 4

of Mary Brannon, Maria Diaz, Gregory Gibson, Javier Gonzales, Ann Jackson, Wenzial Jarrell, and Luis Zaldivar. Therefore, the parties seeking review are themselves among the injured. *See Sierra Club v. Morton*, 405 U.S. 727, 735 (1972) (requiring "that the party seeking review be himself among the injured"); *see also, e.g.* Dkt 265-2, Declarations of Gregory Gibson ("L.A.'s public services are not just inefficient—they are killing us . . . we fight for necessities like identification and housing."); Wenzial Jarrell ("service providers offer little to no substantive support for the people living in Skid Row."). Plaintiffs therefore have shown that they have suffered injury-in-fact.

     A causal connection between the injury and the conduct complained of requires that the injury be "'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976)).

     Defendant contends that "Plaintiffs have failed to allege causality between their alleged injuries (caused by [persons experiencing homelessness] in Skid Row) and the County" because Skid Row is within the incorporated territory of the City of Los Angeles, whereas the County's authority is in the unincorporated areas of the County. Mot. at 17. Plaintiffs respond that their injuries are traceable to the County because (1) "the County centralizes its services and otherwise incentivized homeless persons to relocate to areas of significant health and safety risk, causing harm to both those homeless persons and surrounding properties"; (2) the County is "failing in its duty to care for indigent persons, including providing for sufficient medical and mental health care under Welfare & Institutions Code section 17000"; (3) the County "continues to waste Measure H funds which are designed to reduce homelessness"; and (4) the County, with the City, "fund and direct LAHSA which is ineffective in several ways, including its failure to move people from emergency and bridge shelters into permanent housing, and failure to support successful solutions when they do not comport with LAHSA's ideological standards." Opp'n. at 8-9. Plaintiffs' enumerated actions by the County that cause the number of persons experiencing homelessness to increase or cause the conditions of homelessness to worsen demonstrate a direct and causal link to the asserted injury-in-fact. Accordingly, Plaintiffs have sufficiently alleged causality between their injuries and the County's conduct.

     Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

     Defendant argues that redressability is unattainable here because "Plaintiffs want this Court to dictate how the County addresses homelessness, how the County allocates its financial and human resources, and how the County prioritizes housing for PEH[,]" yet the "Court may

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                                             Date: May 11, 2021

Page 5

not usurp the County's discretionary authority" as elected officials. Mot. at 21. Plaintiffs respond that the Court "possesses the power to enjoin the County to prevent current or imminent statutory violations". Opp'n. at 5-6 (citing *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004); *Harris v. Bd. of Supervisors*, 366 F.3d 754, (9th Cir. 2004); *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1054 (C.D. Cal. 2008)).

"[T]he law and the Constitution demand recognition of certain [] rights . . . If government fails to fulfill [its] obligation, the courts have a responsibility to remedy the resulting [] violation." *Brown v. Plata*, 563 U.S. 493, 510-11 (2011); *see also Swann v. Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 1, 15 (1971) (when considering the affirmative acts of a government body "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies"); *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("In shaping equity decrees, the trial court is vested with broad discretionary power"). Accordingly, if the Court finds an ongoing constitutional violation, it is obligated to impose a remedy. Budgetary and capacity concerns can be adequately addressed by the Court by giving the party sufficient discretion in how to remedy the violation.

Therefore, Plaintiffs have shown that their injuries are likely to be redressed by a favorable judicial decision and have carried their burden of establishing standing at this stage of the litigation.

### III. Failure to State a Claim under 12(b)(6)

#### a. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court is not required to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES            Date: May 11, 2021

Page 6

### b. Discussion

#### i. Constitutional Claims Under 42 U.S.C. § 1983

#### 1. Substantive Due Process

Defendant argues that Plaintiffs have not met their burden to state a plausible claim based on substantive due process because first, "Plaintiffs do not contend the County violated their fundamental rights . . . at best, Plaintiffs allege that they suffered economic harms, such as lost business, increased costs and lost property value, as a result of encampments in Skid Row." Mot. at 22. Second, Defendant asserts that the Supreme Court has rejected theories based on ineffective use of taxpayer funds. *Id*. at 23. Finally, Defendant states that admissions by Plaintiffs that the County has made efforts to address the homelessness crisis "foreclose liability." *Id*.

First, Plaintiffs have brought a plausible substantive due process claim. The Fourteenth Amendment provides, in relevant part, that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause guarantees not only procedural protections, but also substantive rights, thereby "barring certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process accordingly "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 870 (9th Cir. 1988) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). The "shocks the conscience" standard is not subject to a rigid list of established elements. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998 ("Rules of due process are not . . . subject to mechanical application in unfamiliar territory.") On the contrary, "an investigation into substantive due process involves an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements." *Squadrito,* 152 F.3d 564, 570 (7th Cir. 1998).

As to whether substantive due process applies to the particular circumstances alleged, the "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n. 8. The "touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), and the "exercise of power without any reasonable justification in the service of a legitimate governmental objective," *Lewis*, 523, U.S. at 846. The due process guarantee bars governmental conduct that violates the "decencies of civilized conduct," *Rochin v. California*, 342 U.S. 165, 173 (1952) interferes with rights "'implicit in the concept of ordered liberty[,]'" *id*. at 169, 72 S.Ct. 205 (quoting *Palko v. State of*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES    Date: May 11, 2021

Page 7

*Conn.*, 302 U.S. 319, 325 (1937)), or is so "'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency[.]" *Breithaumpt v. Abram*, 352 U.S. 432, 435 (1957). Accordingly, substantive due process protects against government power arbitrarily and oppressively exercised. *Daniels*, 474 U.S. at 331.

Here, the question is whether the conduct attributed to the County violates unhoused families' substantive due process right to family integrity. It has long been settled that the liberty interest identified in the Fifth Amendment provides a right to family integrity or to familial association. *See* U.S. Const. amend. V (stating no person shall "be deprived of life, liberty, or property, without due process of law."); *Quilloin v. Walcott*, 434 U.S. 246, 255, (1978) (stating "the relationship between parent and child is constitutionally protected."). Indeed, "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by" the Court. *Troxel v. Granville*, 530 U.S. 57, 65, (2000); *see also Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to family integrity or to familial association is well established.").

The County's discriminatory conduct has threatened the family integrity of the Black unhoused. A disproportionate number of Black unhoused families directly stems from decades of systemic racism intended to segregate and disenfranchise the Black community. These allegations sufficiently describe government conduct that arbitrarily threatens the family integrity of the Black unhoused and represents the "exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective[.]" *Lewis*, 523 U.S. at 846, 118 S.Ct. 1708. Such conduct, if true, as assumed to be on the present motion, fails to comport with traditional notions of fair play and decency.

Second, Defendant's assertion that Plaintiffs bring their claims solely as taxpayers is improper, as there are numerous homeless persons amongst the Plaintiffs, all of whom are members of LA Alliance and are currently experiencing homelessness in and around Skid Row. *See, e.g.*, Dkt 265-2, Declarations of Mary Brannon, Maria Diaz, Gregory Gibson, Javier Gonzales, Ann Jackson, Wenzial Jarrell, and Luis Zaldivar.

Third, Plaintiffs' "admissions" that the County has made efforts to address the homeless crisis do not "foreclose liability." *See* Mot. at 23. Money alone, without delivery of necessary services and accountability for that delivery, does not foreclose liability. Accordingly, Defendant's motion to dismiss Plaintiffs' due process claim is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES Date: May 11, 2021

Page 8

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution proscribes state action that discriminates against a suspect class. The Supreme Court has instructed lower courts to examine state action on a case-by-case basis, "sifting facts and weighing circumstances [so that] the nonobvious involvement of the State…[can] be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961). The Supreme Court has held that "a State *does not discharge its constitutional obligations* until it eradicates policies and practices traceable to its prior *de jure* dual system that continue to foster segregation." *United States v. Fordice*, 505 U.S. 717, 727–28 (1992) (emphasis added). Defendants argue that "Plaintiffs cannot show that the County discriminated against anyone." Mot. at 25. By contrast, as just one example of the County's significant role in creating and perpetuating systemic racism, the County has recently undertaken efforts to return previously seized land to the descendants of Black property owners in Manhattan Beach. Dkt. 277 at 20. Los Angeles County Supervisor Janice Hahn recently stated: "There's no doubt that this was such an injustice that was inflicted — not just on [former Manhattan Beach property owners] Charles and Willa Bruce, but generations of their descendants who almost certainly would be millionaires had they been allowed to keep that beachfront property." Dkt. 277 at 20. Beyond this admission, the County's persistent inaction and inertia as it pertains to developing sustainable solutions to the homelessness crisis in the face of a disparate impact on Black homeless individuals further evinces an Equal Protection Violation. *See* Dkt. 277 at 76–79. The Court therefore DENIES the County's motion as to Plaintiffs' Equal Protection claim.

### 3. State-Created Danger Doctrine

While "the Fourteenth Amendment…generally does not confer any affirmative right to governmental aid," *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989*); Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011), the Supreme Court in *DeShaney* created an exception that imposes a duty to act when the government has created the dangerous conditions. *DeShaney*, 489 U.S. at 198–202. The Ninth Circuit has held that a state has a duty to act "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) (internal citation omitted). Defendant contends that Plaintiffs "do not allege that any County official committed an affirmative act that created an imminent risk of bodily harm." Mot. at 26. In contrast to Defendant's assertion, Plaintiffs' complaint specifically notes that "the City *and County* have failed to . . . build the infrastructure to support the significant numbers of unhoused persons" and that there are "significant health issues and inherent danger involved in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES					Date: May 11, 2021

Page 9

being unsheltered." Compl. § 4, 17 (emphasis added). Considering the extensive evidence that Defendant has mismanaged Los Angeles' homelessness crisis and created a system plagued by systemic racism that has led to disproportionate danger for communities of color, the Court cannot accept Defendant's argument that the County has not played a significant role in creating this crisis. Therefore, Defendant's motion to dismiss Plaintiffs' claim based on the state-created danger doctrine is DENIED.

### 4. Unlawful Policy, Custom, or Practice

Defendant asserts that Plaintiffs cannot sufficiently allege actions taken by County agents were made pursuant to official policy, procedure, or customs held by the County of Los Angeles. Mot. at 27. Specifically, Defendant argues that the allegations are conclusory and that liability cannot be "predicated on isolated or sporadic incidents because the alleged custom or practice must be so persistent and widespread that it constitutes a permanent and well settled policy". *Id*. at 27-8. Plaintiffs respond that they have "identified the specific policies alleged and acted upon throughout the complaint, which, taken together, entitle Plaintiffs to relief." Opp'n. at 13 (citing Compl. ¶¶ 25-26, 40-42, 58-59, 64-72, 137-141, 158-160, 188-190).

Identification of the precise actors and specific policies, procedures, or customs under *Monell* are a proper subject for discovery. *See Rosales v. Cty. of San Diego*, 2021 WL 37723, at *21-22 (S.D. Cal. Jan. 5, 2021) (denying motion to dismiss on basis of "threadbare" allegations because at early point in case "listing of informal or overarching deficient policies was adequate . . . particularly since information relating to the policies, customs, and practices of County Defendants . . . is likely to be easily available to them.") (internal quotations and citations omitted); *see also Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899-900 (N.D. Cal. 2013) (allegations identifying "the content of the policies, customs, or practices the execution of which [give] rise to [] constitutional injuries" is adequate to support a *Monell* claim at the motion to dismiss stage.). Here, Plaintiffs have identified sufficient constitutional injuries based on policies enacted by the County which show causality to the injury. Further specificity remains a proper subject for discovery. Therefore, Defendant's motion to dismiss Plaintiffs' fourteenth cause of action based on municipal liability is DENIED.

### ii. State Law Claims

### 1. Cal. Welf. & Inst. Code § 17000

The California Welfare and Institutions Code provides as follows:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES	Date: May 11, 2021

Page 10

> Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.

Cal. Welf. & Inst. Code § 17000 (West 2020). This provision is intended "to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed." *Id.* § 10000. Such aid and services shall be "provided promptly and humanely, with due regard for the preservation of family life," and on a non-discriminatory basis. *Id.* Courts have interpreted § 17000 as imposing requirements to both provide "general assistance" and "subsistence medical care to the indigent." *Hunt v. Super. Ct.*, 21 Cal 4th 984, 1011–13 (1999).

Defendant's primary argument is that § 17000 "does not create mandatory duties, but rather vests *discretion* to determine the type and form of 'care and aid' they provide." Mot. at 28. However, giving the County discretion over the "type and form" of services it provides does not mean the County has discretion over whether or not to carry out its duties under § 17000. While the Court agrees with the County's assertion that Defendants have discretion over how they discharge their duties under § 17000, the Court disagrees that § 17000 does not impose a mandatory duty for the County to act and care for its indigent constituents. Accordingly, the County's motion to dismiss Plaintiffs' claim under § 17000 is DENIED.

### 2.   Cal. Code of Civ. Pro. § 526a

Plaintiffs also bring a taxpayer waster claim under California Code of Civil Procedure § 526a. Defendant contends that "to obtain relief, the taxpayer must establish that the expenditure of public funds which he seeks to enjoin is illegal," and thus, Plaintiffs cannot state a claim for relief under § 526a because they have merely alleged that "the County could be making better use of its funds" rather than that current spending is illegal. Mot. at 30. However, as Plaintiffs point out, "Plaintiffs need not demonstrate an expenditure is 'illegal' to claim under section 526a…" Opp'n at 17. Rather, "[e]ven when done in the exercise of a lawful power, public spending may qualify as waste if it is completely unnecessary or useless or provides no public benefit." *Chiatello v. City & County of San Francisco*, 189 Cal. App. 4th 472, 482 (2010) (internal quotation marks and citations omitted). In their complaint, Plaintiffs properly alleged that taxpayer funds have been misused "in a way that makes it impossible for Measure H to achieve the ostensible goal for which it was passed." Compl. ¶¶ 58–72. Considering the billions

Case 2:20-cv-02291-DOC-KES   Document 300   Filed 05/11/21   Page 11 of 11   Page ID #:7939

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                              Date: May 11, 2021

Page 11

of dollars spent on homeless relief in recent years and the fact that homelessness rates and homeless deaths continue to grow exponentially in the face of such spending, there is little question that Plaintiffs have made an adequate showing that at least some degree of government spending has been "unnecessary or useless" in tackling the homelessness problem. Accordingly, the County's motion to dismiss Plaintiffs' claim under § 526a is DENIED.

### 3. California Tort Claims

Defendant asserts that under California Government Code section 820.2 and Government Code section 815.2, the County is immune from Plaintiffs' first, third, and fourth California tort causes of action. Mot. at 31-32.

Plaintiff responds, and the Court agrees, that discretionary immunity is inapplicable to claims seeking only equitable and injunctive relief, as is the case here. *See* Opp'n. at 18. California Government Code section 814, which governs all claims for immunities under Title 1, Division 3.6, Part 2, Chapter 1 (including Government Code sections 815.2 and 820.2, which Defendant cites and relies upon) specifically denotes that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."; *see also* Cal. Gov. Code § 814, Legislative Committee Comments—Senate ("The various provisions of this part determine only whether a public entity or public employee is liable for money or damages . . . . This section also declares that the provision of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief other than money or damages."). Thus, the County's claims of immunity under 820.2 and 815.2 are inapplicable to the present California tort causes of action. Accordingly, Defendant's motion to dismiss Plaintiffs' first, third and fourth causes of action is DENIED.

### IV. Disposition

For the reasons set forth above, the Court DENIES Defendant County's Motion to Dismiss.

The Clerk shall serve this minute order on the parties.