# MAY 22, 2020
# PRELIMINARY INJUNCTION [DKT. 123]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                    Date:  May 22, 2020

Title: LA ALLIANCE FOR HUMAN RIGHTS ET AL. v. CITY OF LOS ANGELES ET AL.

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

|  Kelly Davis  |  Not Present  |
| :---: | :---: |
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| :---: | :---: |
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):   PRELIMINARY INJUNCTION**

**I.      Background**

In response to the Court's Order re: Preliminary Injunction (Dkt. 108), at 6:58 p.m. on May 19, 2020, the Court was advised that a tentative agreement had been "signed off on by all parties and intervenors" and would be submitted to the Court momentarily. However, approximately thirty minutes later, the parties informed the Court that they were in fact unable to reach an agreement, and that the parties would be filing separate reports with the Court.[1]

In its Status Report (Dkt. 115) ("County Report"), filed jointly with Intervenors on May 20, 2020, the County of Los Angeles represents as follows:

> Following the issuance of the Court's injunction on May 15, 2020, the parties spent the last several days trying to reach an agreement regarding a joint filing. Regrettably, at approximately 7:30 p.m. the

---

[1] The Report (Dkt. 114) filed by the City of Los Angeles and Status Report (Dkt. 115) filed by the County of Los Angeles are attached to this Order as Exhibits A and B, respectively.

Case 2:20-cv-02291-DOC-KES   Document 123   Filed 05/22/20   Page 2 of 13   Page ID #:1942

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                    Date: May 22, 2020

Page 2

day the filing was due, the City declined to participate in a joint filing, stating that it could not agree out of a concern over the payment for "services" at City-owned interim shelters and similar sites. The County offered to develop a package of mainstream services for persons experiencing homelessness and residing in shelters within the City. These services would include health and behavioral health outreach, disability benefit advocacy services, and connections to social services benefits. The City rejected the County's offer.

The City would not agree to a shared funding arrangement as proposed by the County for operational costs (such as food, laundry, security, etc.) associated with the City's pilot programs. The City made a similar request for all City shelters proposed under the City's plan to address homelessness near freeways and for individuals currently occupying COVID-19 emergency beds in the City. These demands are inconsistent with past practice. In general, with the exception of Measure H funding administered by the County, the City funds operational costs for interim shelter sites in the City. The City is a major recipient of state and federal funds for homeless services, unlike other cities in the County (with the partial exception of Long Beach).

In an effort to move the parties forward, the County suggested a joint funding strategy with the City for certain pilot programs, leaving the issue of broader operational costs for another time (perhaps with the intervention of a mediator). The City rejected that offer too. The City has requested that the County dedicate additional Measure H or other County funds to the City. However, Measure H funds are disproportionately spent in the City. In addition, Measure H funds are already appropriated to support the City as well as other jurisdictions in the region addressing homelessness. Despite these developments, the County will continue to pursue partnerships with the City.

County Report at 10-11.

Case 2:20-cv-02291-DOC-KES     Document 313     Filed 05/26/21     Page 4 of 75   Page ID #:8065

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                        Date: May 22, 2020

                                                                                          Page 3

For its part, the City of Los Angeles, in its Report (Dkt. 114) ("City Report"), filed May 19, 2020, states:

> The City stands ready to provide the capital costs (subject to approval of the City Council) needed to implement a mix of shelter and housing solutions to serve a diverse homeless population, in partnership with the County of Los Angeles (County) and the Los Angeles Homeless Services Authority (LAHSA) to ensure those solutions include the services necessary to keep people off the streets.
>
> . . .
>
> In all, the City commits to creating 6,100 new shelter opportunities in the next 10 months.[2] The City's plan is contingent upon each shelter location receiving the appropriate levels of necessary County-funded support and operating services. Under the voter approved tax initiative Measure H, the County funds operating services for homeless facilities called for in the County Homeless Strategy. Operating services include specially trained staff dedicated to manage these facilities; case managers who work with clients in the facilities to access housing and other benefits; security services; and program enrollments/exits. These operating services are in addition to the "mainstream" systems of care (mental health, healthcare, substance abuse, etc.) provided by the County, which are also necessary—but not sufficient—to successfully operate the shelter opportunities the City is committed to creating.

City Report at 2-3.

These submissions to the Court, combined with the last-minute collapse of the signed tentative agreement, lead the Court to conclude that there are relatively few unresolved issues, and that the remaining issues are tied to the longstanding conflict between the City and County as to which entity is financially responsible for which

---

[2] On this record, the Court understands that this total of 6,100 shelter opportunities includes the approximately 2,200 hotel and motel rooms contracted under Project Roomkey and the approximately 1,000 shelter beds in recreational centers, and thus represents an increase of approximately 2,900 shelter opportunities.

Case 2:20-cv-02291-DOC-KES   Document 123   Filed 05/22/20   Page 4 of 13   Page ID #:1944

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                          Date: May 22, 2020

Page 4

homeless services. The Court reminds the City and County that these funds are not the property of the City and County, but have been allocated by the local taxpayers, the State of California, and the federal government as funds to provide shelter and services to persons experiencing homelessness. Moreover, the disagreement between the City and County over the relatively minor costs of this pilot program does not bode well for the future as the program is scaled up across the City and County. It is regrettable that this ongoing endeavor to develop humane and sustainable responses to the challenges of homelessness is beleaguered by a legacy of bureaucratic entanglement and gridlock.

The Court commends the efforts that have been undertaken to shelter vulnerable residents of the City and County of Los Angeles during the COVID-19 pandemic. Efforts to comply with the Court's preliminary injunction should broaden—not replace—these emergency public health efforts, and the two should run alongside each other, rather than sequentially. The City of Los Angeles and County of Los Angeles have the capacity and resources to comply with the injunction while maintaining their unprecedented efforts to protect vulnerable residents from COVID-19.

As the record has developed in this case, the Court has become increasingly concerned that a particular subset of persons experiencing homelessness—those who live near overpasses, underpasses, and ramps on all freeways and City and County streets—are exposed to severely heightened public health risks as a result of where they live. Indeed, all parties in this action agree that it is unreasonably dangerous for humans to live in areas that may, for example, be contaminated with lead or other carcinogenic substances, which have deleterious health impacts and can shorten a homeless person's life expectancy by decades.[3] These locations also increase the danger that a homeless person will be struck by a vehicle or injured in the event of an earthquake or crash.[4] Camps in these locations can also burden the general public—for example, by posing potential hazards to passing motorists, or by making sidewalks and other rights-of-way inaccessible to individuals with disabilities. However, as with many issues involving

---

[3] *See* California Department of Transportation, Hazardous Waste Assessment of Parcel for Air Space Lease for Homelessness Solutions Located at 16th Street and Maple Ave., Los Angeles (April 10, 2020) [hereinafter Assessment] at 3 ("However, based on the location of the parcel being directly under the heavily travelled I-10 Freeway and past use of leaded gasoline, there is a high probability that the unpaved soil areas on the parcel and around the perimeter of the parcel at the columns and fence will contain hazardous waste concentrations of lead."). The Assessment is available at Docket No. 103-1. *See also* Tr. of Apr. 13, 2020 Proceedings (Dkt. 94) at 75-76 (discussing danger of fumes to "people sleeping under freeways").

[4] *See* Tr. of Apr. 13, 2020 Proceedings at 75-76 (noting further danger of "the freeway collapsing in earthquakes").

Case 2:20-cv-02291-DOC-KES    Document 123    Filed 05/22/20    Page 5 of 13    Page ID #:1945

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                          Date: May 22, 2020

Page 5

individuals experiencing homelessness, no party appears to be addressing this problem with any urgency.

The Court finds that these combined risks constitute an emergency and that a response cannot wait until this case is resolved by settlement or trial, and hereby ORDERS that this subset of individuals experiencing homelessness be offered housing and subsequently humanely relocated away from overpasses, underpasses, and ramps on all freeways and City and County streets (collectively, "overpasses, underpasses, and ramps"). This preliminary relief is appropriate to remedy the emergency health hazards facing these individuals experiencing homelessness. The Court's preliminary injunction shall be implemented on an ongoing basis independent of the parties' continuing settlement negotiations. In addition to improving the health and living conditions of individuals experiencing homelessness, the Court anticipates that this preliminary injunction will make the greater Los Angeles area healthier, safer, and more accessible for the general public.

**II.      Legal Basis for Preliminary Relief**

**A.      Legal Standard**

A district court may order injunctive relief on its own motion and is not restricted to ordering the relief requested by a party. *Armstrong v. Brown*, 768 F.3d 975, 980 (9th Cir. 2014) (citing *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148, 1150 (9th Cir. 2004)). A preliminary injunction is an "extraordinary remedy," requiring courts to balance competing claims on a case-by-case basis, with "particular regard for the public consequences" of issuing an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

For a court to issue a preliminary injunction, it must find that (1) there is a likelihood of success on the merits; (2) absent preliminary relief, irreparable harm is likely; (3) the balance of equities tips in favor of preliminary relief; and (4) an injunction is in the public interest. *See Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). The Court has the authority to issue a mandatory injunction when the facts and law "clearly favor" issuance. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

Case 2:20-cv-02291-DOC-KES   Document 123   Filed 05/22/20   Page 6 of 13   Page ID #1946

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                    Date: May 22, 2020

                                                                    Page 6

**B.**      **Discussion**

         **1.      The Likelihood of Success on the Merits Supports Preliminary
                   Relief**

         ***State law grounds.*** The California Welfare and Institutions Code provides as
follows:

> Every county and every city and county shall relieve and support all
> incompetent, poor, indigent persons, and those incapacitated by age,
> disease, or accident, lawfully resident therein, when such persons are
> not supported and relieved by their relatives or friends, by their own
> means, or by state hospitals or other state or private institutions.

Cal. Welf. & Inst. Code § 17000 (West 2020). This provision is intended "to provide for
protection, care, and assistance to the people of the state in need thereof, and to promote
the welfare and happiness of all of the people of the state by providing appropriate aid
and services to all of its needy and distressed." *Id.* § 10000. Such aid and services shall be
"provided promptly and humanely, with due regard for the preservation of family life,"
and on a non-discriminatory basis. *Id.*

         The Court finds that, at this stage of the litigation, it is sufficiently clear that the
City of Los Angeles and County of Los Angeles have failed to meet these obligations
under California law. The City and County of Los Angeles argue that these provisions of
the Welfare and Institutions Code cannot serve as the basis of this injunction because
"there is no mandatory duty in Section 17000 requiring the County to provide shelter to
individuals experiencing homelessness." Resp. of County of Los Angeles (Dkt. 120) at
11; *see also* Resp. of City of Los Angeles (Dkt. 121) at 14 ("§ 17000 imposes no
obligations on the City"). However, the California Supreme Court has "authoritatively
interpreted" these provisions and held that "Section 17000 . . . *mandates* that medical
care be provided to indigents and section 10000 *requires* that such care be provided
promptly and humanely. . . . There is no discretion concerning whether to provide such
care." *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1245 (1996) (emphasis
added) (summarizing extensive preceding analysis of California case law). To the extent
the County and City argue that providing lifesaving housing to individuals experiencing
homelessness who live in areas near overpasses, underpasses, and ramps does not qualify
as "medical care," their insistence that a hazardous waste assessment be performed before
using one such location as a shelter—and the subsequent finding that the location could

Case 2:20-cv-02291-DOC-KES   Document 123   Filed 05/22/20   Page 7 of 13   Page ID #:1947

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                    Date: May 22, 2020

Page 7

not be used as shelter due to a high probability of containing "hazardous waste concentrations of lead"—contradicts that proposition. *See generally* Assessment.

**Constitutional grounds.** The Court also finds that the hazardous conditions of homeless camps near overpasses, underpasses, and ramps likely offend the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment provides, in relevant part, that no state[5] "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The vision of "liberty" enshrined in the Due Process Clause has been interpreted expansively to include rights "not mentioned explicitly in the Constitution." *Griswold v. Connecticut*, 381 U.S. 479, 486 & n.1 (Goldberg, J., concurring) (numerous citations omitted). Moreover, it has long been established that the Due Process Clause guarantees not only procedural protections, but also substantive rights, thereby "barring certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

Substantive due process accordingly "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 870 (9th Cir. 1988) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Although the government is generally "not liable for its omissions," *Martinez v. City of Clovis*, 943 F.3d 1260, 1270-71 (9th Cir. 2019), a government is required to act when it has "affirmatively place[d]" its citizens "in danger by acting with deliberate indifference to a known or obvious danger," *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971-72 (9th Cir. 2011) (citations omitted). Here, the City and County of Los Angeles have acted with deliberate indifference to individuals experiencing homelessness, whom they allow to reside near overpasses, underpasses, and ramps despite the inherent dangers—such as pollutants and contaminants—of which the City and County of Los Angeles have actual knowledge. *See, e.g.*, Assessment at 3 ("However, based on the location of the parcel being directly under the heavily travelled I-10 Freeway and past use of leaded gasoline, there is a high probability that the unpaved soil areas on the parcel and around the perimeter of the parcel at the columns and fence will contain hazardous waste concentrations of lead.").

Indeed, because these locations offer shelter from the elements, by failing to provide adequate shelter or alternative housing options, the City and County of Los

---

[5] Local governments, such as cities and counties, are "state actors" for purposes of the Fourteenth Amendment. *E.g.*, *Bd. of Trs. V. Garrett*, 531 U.S. 356, 369 (2001).

8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                    Date: May 22, 2020

Page 8

Angeles have essentially forced individuals experiencing homelessness to camp in these dangerously polluted locations. It is clear to the Court that the Due Process Clause does not allow this kind of governmental conduct. While the Court is not aware of any previous case finding this modest substantive due process right, the Court is confident that this limited right is "implicit in the concept of ordered liberty." *See Nunez*, 147 F.3d at 870. As the Supreme Court has held, rights arise not only from "ancient sources," but also "from a better informed understanding of how constitutional imperatives define a liberty that remains urgent in our own era." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2602 (2015). The severe health hazards attendant on living near overpasses, underpasses, and ramps—to say nothing of the public health risks illuminated by the ongoing COVID-19 pandemic—present just such an urgent crisis and better inform the constitutional understanding of ordered liberty.

The Ninth Circuit's recent decision in *Martin v. City of Boise*, 920 F.3d 584, further illuminates the constitutional values at stake in this litigation. In its analysis of the Eighth Amendment, the Ninth Circuit held that "the Cruel and Unusual Punishments Clause not only limits the types of punishment that may be imposed and prohibits the imposition of punishment grossly disproportionate to the severity of the crime, but also 'imposes substantive limits on what can be made criminal and punished as such.'" *Martin v. City of Boise*, 920 F.3d 584, 613 (9th Cir. 2019) (quoting *Ingraham v. Wright*, 430 U.S. 651, 667 (1977)). The Ninth Circuit concluded that the Cruel and Unusual Punishments Clause "bars a city from prosecuting people criminally for sleeping outside on public property when those people have no home or other shelter to go to." *Id.* at 603.

But if citing an individual experiencing homelessness for sleeping outside rises to the level of *cruel and unusual punishment*, then—a fortiori—it is likely also cruel and unusual to act with such indifference that an individual experiencing homelessness is forced to take shelter in an inherently hazardous location. That is, when there is such a dearth of available shelter that the best option for an individual experiencing homelessness is to camp in a dangerous location, this functionally constitutes a punishment for the crime of being homeless. Much like a formal criminal citation, the Court finds that it is cruel and unusual, in violation of the Eighth Amendment, to leave individuals experiencing homelessness no better option than to camp in hazardous areas when they have no other available shelter to enter.

Given these serious issues of state and federal law, the Court finds that the likelihood of success on the merits clearly favors issuing a preliminary injunction.

9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                              Date: May 22, 2020

Page 9

**2.       The Likelihood of Irreparable Harm Justifies Preliminary Relief**

Given the health hazards described above, the Court has no difficulty finding a grave risk of irreparable harm. When homeless individuals are exposed to such dangers as toxic fumes, "hazardous waste concentrations of lead," car crashes, and the potential collapse of an overpass in an earthquake, their health is threatened in a way that monetary damages cannot adequately compensate. Additionally, homeless persons living near overpasses, underpasses, and ramps need not suffer these harms at all—or, at least, need not suffer them any further—and this outcome could be achieved with a preliminary injunction.

Because of the public health risks inherent in living near overpasses, underpasses, and ramps, the Court finds that the homeless individuals that live in such locations clearly face a likelihood of irreparable harm, justifying a preliminary injunction.

**3.       The Balance of Equities Tips in Favor of Preliminary Relief**

As already discussed, the homeless individuals who live near overpasses, underpasses, and ramps face severe health hazards. By comparison, the City of Los Angeles and County of Los Angeles would only need to invest relatively modest financial and administrative resources to provide safe and healthy shelters to these individuals. As such, the Court finds that the balance of the equities clearly weighs in favor of an injunction.

**4.       A Preliminary Injunction Is in the Public Interest**

Finally, a humane relocation away from overpasses, underpasses, and ramps in support of public health will promote the public interest. A district court should look at the injunction's impact on non-parties in determining what is in the "public interest." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (quoting *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002)). The Court finds that this preliminary injunction will substantially benefit public health at large. Providing housing for individuals experiencing homelessness—and ensuring that appropriate CDC guidance is followed at the locations that will shelter those individuals—will not only help stop the spread of COVID-19 amongst the population impacted by this injunction, but will also reduce the likelihood that disease will spread throughout the greater Los Angeles community. Furthermore, the public has a right to have local ordinances enforced when City and County actors can legally do so. This injunction will allow the enforcement of anti-

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                            Date: May 22, 2020

                                                                                                      Page 10

camping ordinances at an appropriate time and in compliance with *Martin v. Boise*. Such enforcement is also in the public interest.

Therefore, the Court finds that this factor clearly favors an order of preliminary relief.

**III.     Provisions of Preliminary Injunction**

To protect the individuals experiencing homelessness camping near overpasses, underpasses, and ramps—and the general public—the Court hereby ORDERS that individuals experiencing homelessness camped within 500 feet of an overpass, underpass, or ramp must be offered housing as described below and subsequently humanely relocated at least 500 feet away from such areas by no later than September 1, 2020.[6] As part of this humane relocation effort, and to promote the underlying public health and safety goals, the City of Los Angeles and County of Los Angeles must provide shelter—or alternative housing options, such as government encampments following the existing Veterans Affairs model, safe parking sites, or hotel and motel rooms contracted following the Project Roomkey model—to individuals experiencing homelessness. In addition to the foregoing examples, the Court is open to receiving any other suggestions from the parties for reasonable alternative housing options.

As shelters are established and homeless camps are relocated away from overpasses, underpasses, and ramps, the following criteria, at a minimum, must be satisfied to ensure the process remains humane and serves the best interests of the affected individuals experiencing homelessness and the general public:

(1) All shelters and alternative housing options must be configured with adequate physical space to allow the sheltered individuals to maintain the minimum recommended social distance of six feet to mitigate the transmission of SARS-CoV-2.

---

[6] The requirement of 500 feet is taken from the City of Los Angeles Department of City Planning, which reports that "[a]ir pollution studies indicate a strong link between chronic exposure to vehicle exhaust and particulate matter from roads and freeways and elevated risk of adverse health impacts . . . . Areas located within 500 feet of a freeway are known to experience the greatest concentrations of fine and ultrafine particulate matter (PM), a pollutant implicated in asthma and other health conditions." City of Los Angeles Department of City Planning, Freeway Adjacent Advisory Notice, Zoning Information File No. 2427, at 1 (2018). This Advisory Notice is available at the following URL: http://zimas.lacity.org/documents/zoneinfo/ZI2427.pdf.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                    Date: May 22, 2020

                                                                   Page 11

(2) All shelters and alternative housing options must have adequate hygiene facilities, such as handwashing stations and showers.

(3) All shelters and alternative housing options must have qualified staff who, upon intake, can test each homeless individual for communicable diseases and other health conditions. The Court may consider revising this aspect of the preliminary injunction in the future, depending on the state of the COVID-19 pandemic.

(4) If any individual experiencing homelessness tests positive for COVID-19, that individual must be sheltered in a facility in which they can be individually isolated until they recover.

(5) All shelters and alternative housing options must be staffed by security as necessary to ensure the safety of the homeless persons sheltered therein.

(6) Before beginning the process of clearing overpasses, underpasses, and ramps, all homeless individuals living in the vicinity must be given advance notice of at least ten days; such notice shall include information about available shelters and alternative housing options in that council district or supervisorial district.

(7) At a minimum, in the interim period between notice and relocation, social workers, mental health workers, and LAHSA authorities shall reach out to noticed individuals experiencing homelessness to provide services and facilitate the transition to shelter. The Court also encourages such outreach to occur as early as possible, even before notice is given.

(8) The City and County of Los Angeles may not relocate individuals experiencing homelessness in a given council district or supervisorial district until after such notice is given, and after the City of Los Angeles and/or County of Los Angeles provide adequate alternative shelter for all individuals experiencing homelessness in that council district or supervisorial district. After these conditions are met, the City of Los Angeles and County of Los Angeles will be allowed to enforce anti-camping laws in that council district or supervisorial district within 500 feet of overpasses, underpasses, and ramps located. This process helps to ensure that these individuals are being moved to safer locations. To be clear, while an individual experiencing homelessness cannot be ordered to enter a shelter facility, they must be given that option, and if they decline, can then be ordered to relocate at least 500 feet away from an

Case 2:20-cv-02291-DOC-KES   Document 123   Filed 05/22/20   Page 12 of 13   Page ID
Case 2:20-cv-02291-DOC-KES   Document 123   Filed 05/26/21   Page 13 of 75   Page
ID #:8074

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                        Date: May 22, 2020

Page 12

overpass, underpass, or ramp. If, during the humane relocation process, a social worker, mental health worker, law enforcement officer, or other qualified personnel encounters an individual exhibiting COVID-19 symptoms, such individual should be referred to an individual testing and quarantine process, such as, but not limited to, Project Roomkey. If all of the above requirements are met, then relocation in these limited areas would be fully compliant with *Martin v. City of Boise*.[7]

As they begin efforts to comply with this preliminary injunction, the City of Los Angeles and County of Los Angeles are responsible for disentangling which entity has authority over the subject locations and the relevant funding mechanisms.

The Court is hopeful that this initial, limited action will assist the parties moving forward, as they work to overcome years of bureaucratic inertia and develop humane solutions in the best interests of both individuals experiencing homelessness and the general public. Indeed, the parties' efforts to provide emergency shelter and services since the onset of the COVID-19 crisis present a stark contrast to the characteristic inaction that has persisted for years with respect to homelessness in the greater Los Angeles area. The Court is concerned, however, that as the COVID-19 pandemic subsides, the present momentum will be lost to longstanding disputes over funding and jurisdictional authority. The most recent filings by the City and County of Los Angeles, quoted at length above, already demonstrate a resurgence of the quarreling and deadlock surrounding the issues of homelessness.

Notwithstanding the failure of the parties to reach an agreement on the terms and conditions of a settlement, the Court, based on input from both City and County elected officials, as well as Plaintiffs and Intervenors, finds these decision-makers are fully aware of the crises created by homelessness in our communities and are dedicated to formulating solutions that will not only improve the living conditions of our homeless population, but also enhance the opportunities for the general public to enjoy the benefits

---

[7] The Court hereby takes judicial notice of the Interim Guidance on People Experiencing Unsheltered Homelessness issued by the Centers for Disease Control and Prevention ("CDC") in response to the COVID-19 pandemic. The CDC recommends, inter alia: "If individual housing options are not available, allow people who are living unsheltered or in encampments to remain where they are. Clearing encampments can cause people to disperse throughout the community and break connections with service providers. This increases the potential for disease spread." The Court's preliminary injunction complies with the CDC's Interim Guidance, because providing shelter is a prerequisite to relocating individuals. The CDC's Interim Guidance is available at the following URL: https://www.cdc.gov/coronavirus/2019-ncov/community/homeless-shelters/unsheltered-homelessness.html.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC-KES                                Date: May 22, 2020

                                                                              Page 13

that will result from an enlightened approach in addressing these issues. All parties have the same goal in mind; their differences lie in the route to be followed in achieving that goal. The Court is confident a global solution to the homelessness crisis will be found while the parties take the initial step of remedying the emergency health hazards targeted by this injunction.

To facilitate the Court's monitoring of compliance with the terms of this preliminary injunction, the Court will require periodic status reports from the parties as to their progress. The first such report shall be filed with the Court no later than 12:00 noon on Friday, June 12, 2020. At minimum, this report shall detail a plan for establishing shelter and clearing overpasses, underpasses, and ramps in each council district or supervisorial district no later than September 1, 2020. The Court reserves the authority to advance the deadline of September 1, 2020 in the event that the interim status reports do not demonstrate satisfactory progress towards compliance with the preliminary injunction. Furthermore, the Court shall conduct additional hearings to monitor compliance as the Court finds necessary.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                        Initials of Deputy Clerk: kd

CIVIL-GEN

# AGREEMENT & BINDING TERM SHEET
## JUNE 16, 2020
## [DKT. 136]

LA 20-CV-02291-DOC



FILED
CLERK, U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
BY:____KD____DEPUTY

Confidential
Binding term sheet

LA Alliance for Human Rights v. City of Los Angeles

1.  City agrees to provide 6,700 beds within 18 months to house or shelter (i) PEH living within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles, and then to give priority to providing housing or shelter to (ii) PEH 65+ within the City of Los Angeles and (iii) other vulnerable PEH within the City of Los Angeles.

The schedule will be as follows:

New beds (not in existing agreements):  6000
5300 within 10 months (bonus of $8 million if 10 month target date met)
700 within 18 months

Beds in existing agreements
700 beds within 10 months

TOTAL:  6700 beds established within 18 months

5,300 of the 6,700 beds will be new beds and will be created within 10 months, and the 700 additional new beds created within 18 months, must be beds not previously captured in any agreement or plan between the City and County; 700 of the 6,000 beds created within 10 months may be beds previously captured in an agreement or plan between the City and County.

2.  To assist in funding services for the 6,000 new beds, County shall pay City up to $60 million per year for 5 years.  In the first year, County shall pay City $53 million: $17.66 million on 9/1/20; $17.67 million on 1/1/21; and $17.67 million on 4/1/21.  In the second through fifth years, County shall pay City $60 million on July 1; however, if 6,000 new beds have not been created by the July 1 payment date, County can prorate payment equal to $10,000 per new bed that exists or will open within 60 days of the payment date.

The funding under this agreement is exclusive and the County will continue to allocate Measure H funding by Service Planning Are (SPA) based on LAHSA's Homeless Count and, where applicable, the Homeless Population Estimate, consistent with Board policy.

3.  County will pay to City a one-time bonus of $8 million if the 5,300 new bed target is reached within 10 months from execution of agreement.

SDM
6-16-2020

MCW
6.16.2020

4.  County will take action to provide a package of mainstream services for PEH residing in facilities established by the City pursuant to this Agreement.

5.  Agreement subject to court approval, monitoring, and enforcement.

6.  Agreement subject to City and County approval.

7.  The parties will submit this term sheet to the Court.  Upon approval of this term sheet by the City and County, the parties will respectfully request the Court to entertain an oral motion coupled with a joint stipulation from the City and County that the Preliminary Injunction dated May 22, 2020 be vacated without prejudice, subject to the Court's later consideration of reinstatement of the Preliminary Injunction should the parties fail to comply with the terms identified above.

County Counsel Los Angeles County
Mary C. Wickham
6-16-2020

Senior Assistant City Attorney
6-16-2020

# CITY OF LOS ANGELES' QUARTERLY STATUS REPORT PURSUANT TO MOU [DKT. 267]

Case 2:20-cv-02291-DOC-KES   Document 267-1   Filed 04/15/21   Page 2 of 5   Page ID
Case 2:20-cv-02291-DOC-KES   Document 313   Filed 05/26/21   Page 19 of 75   Page
ID #:8080

| | | COVID-19 Homelessness Roadmap<br>City-County MOU<br>Interventions Open and Occupiable on April 16, 2021 | | | |
|---|---|---|---|---|---|
| No. | CD | Bed Category | Address / Location | No. of Beds | Open &<br>Occupiable |
| | | New Interventions | | | |
| 1 | 1 | Interim Housing | Echo Park Community Center<br>303 Patton Street | 27 | 4/1/2021 |
| 2 | 2 | Interim Housing | 13160 Raymer St. | 85 | 7/16/2020 |
| 3 | 2 | Interim Housing | 7700 Van Nuys Blvd. | 100 | 8/17/2020 |
| 4 | 2 | Interim Housing (Pallet) (7) | 11471 Chandler Blvd. | 75 | 2/1/2021 |
| 5 | 2 | Interim Housing (Pallet) (7) | 6099 Laurel Canyon Blvd. | 200 | 4/12/2021 |
| 6 | 4 | Interim Housing | 3428 Riverside Drive | 100 | 7/28/2020 |
| 7 | 4 | Interim Housing | Pan Pacific Park<br>7600 Beverly Blvd | 73 | 4/1/2021 |
| 8 | 4 | Interim Housing | 1701 Camino Palmero St. | 21 | 4/16/2021 |
| 9 | 5 | Interim Housing | 1479 S. La Cienega | 54 | 6/22/2020 |
| 10 | 6 | Interim Housing | 14333 Aetna St. | 70 | 8/10/2020 |
| 11 | 6 | Interim Housing | 6909 N Sepulveda Blvd. | 146 | 4/16/2021 |
| 12 | 7 | Interim Housing | Greater Missionary Church<br>11067 Norris Avenue | 57 | 4/1/2021 |
| 13 | 8 | Interim Housing | Home At Last Women's Shelter<br>8311 S. Western Avenue | 30 | 4/1/2021 |
| 14 | 8 | Interim Housing | Bryant Temple AME<br>2514 W. Vernon Ave. | 20 | 4/1/2021 |
| 15 | 8 | Interim Housing | 8501 1/2 S. Vermont Ave. | 25 | 4/16/2021 |
| 16 | 8 | Interim Housing | 5615 - 5749 South Western Ave. | 7 | 4/16/2021 |
| 17 | 9 | Interim Housing | Home At Last Men's Shelter<br>5171 S. Vermont Ave. | 20 | 4/1/2021 |
| 18 | 9 | Interim Housing | 5100 S. Central Ave. | 25 | 4/1/2021 |
| 19 | 9 | Interim Housing | 4601 Figueroa | 30 | 4/16/2021 |
| 20 | 9 | Interim Housing | 8501 S. Broadway | 150 | 4/16/2021 |
| 21 | 10 | Interim Housing | 1819 S. Western Avenue | 15 | 9/21/2020 |
| 22 | 10 | Interim Housing | 625 La Fayette Pl. | 70 | 3/1/2021 |
| 23 | 13 | Interim Housing | Shatto Park Recreation Center<br>3191 W. 4th St. | 48 | 4/1/2021 |
| 24 | 13 | Interim Housing | 5941 Hollywood Blvd. | 30 | 4/15/2021 |
| 25 | 14 | Interim Housing | 310 N. Main St. | 99 | 8/18/2020 |
| 26 | 14 | Interim Housing | 566 S. San Pedro | 60 | 2/1/2021 |
| 27 | 14 | Interim Housing | Scattered Sites - SRO Housing | 60 | 3/1/2021 |

1,697

**COVID-19 Homelessness Roadmap**
**City-County MOU**
Interventions Open and Occupiable on April 16, 2021

| No. | CD | Bed Category | Address / Location | No. of Beds | Open & Occupiable |
|---|---|---|---|---|---|
| 28 | 14 | Interim Housing | 1060 N Vignes St. | 232 | 4/1/2021 |
| 29 | 14 | Interim Housing | Weingart Center 566 S. San Pedro St. | 49 | 4/1/2021 |
| 30 | 14 | Interim Housing | 543 Crocker St. | 40 | 4/16/2021 |
| 31 | 15 | Interim Housing | 515 N. Beacon Street (2) | 38 | 7/7/2020 |
| 32 | 15 | Interim Housing | 828 Eubank Ave. | 100 | 7/7/2020 |
| 33 | N/A | Interim Housing | Various | 44 | 4/16/2021 |
| 34 | 1 | Permanent Supportive Housing | 1255 S Elden Ave. | 93 | 2/3/2021 |
| 35 | 5 | Permanent Supportive Housing | 8866 W Pico Blvd. | 48 | 8/7/2020 |
| 36 | 6 | Permanent Supportive Housing | 11050 W. Arminta St. | 110 | 2/23/2021 |
| 37 | 9 | Permanent Supportive Housing | 1036 E 35th St. | 74 | 3/24/2021 |
| 38 | 10 | Permanent Supportive Housing | 4018 S Buckingham Rd. | 103 | 11/23/2020 |
| 39 | 13 | Permanent Supportive Housing | 252 S. Rampart Blvd. | 23 | 11/9/2020 |
| 40 | 1 | Project Homekey/Interim Housing (1) | Solaire Hotel 1710 7th St. | 81 | 1/1/2021 |
| 41 | 3 | Project Homekey/Interim Housing (1) | Howard Johnson 7432 Reseda Blvd. | 62 | 1/1/2021 |
| 42 | 3 | Project Homekey/Interim Housing (1) | Super 8 Canoga Park 7631 Topanga Canyon | 46 | 1/1/2021 |
| 43 | 6 | Project Homekey/Interim Housing (1) | Econo Motor Inn 8647 N. Sepulveda Blvd. | 49 | 3/17/2021 |
| 44 | 8 | Project Homekey/Interim Housing (1) | EC Motel 3501 Western Ave. | 26 | 4/15/2021 |
| 45 | 10 | Project Homekey/Interim Housing (1) | Best Inn 4701 W Adams Blvd. | 21 | 3/23/2021 |
| 46 | 12 | Project Homekey/Interim Housing (1) | Travelodge 21603 Devonshire St. | 50 | 3/15/2021 |
| 47 | 13 | Project Homekey/Interim Housing (1) | The NEST 253 S. Hoover St. | 33 | 3/22/2021 |
| 48 | 14 | Project Homekey/Interim Housing (1) | Titta's Inn 5333 Huntington Dr. | 39 | 4/6/2021 |

2200
INTERIM

503

451
PERM

450
HOMEKEY

**1,464 ROOMKEY**

**644 RAPID RE**

**258 SAFE**

| | | COVID-19 Homelessness Roadmap<br>City-County MOU<br>Interventions Open and Occupiable on April 16, 2021 | | | |
|---|---|---|---|---|---|
| No. | CD | Bed Category | Address / Location | No. of Beds | Open & Occupiable |
| 49 | 14 | Project Homekey/Interim Housing (1) | Super 8 Alhambra<br>5350 S Huntington Dr. | 43 | 4/7/2021 |
| 50 | All | Project Roomkey/Interim Housing (3) | Sportsmen's Lodge Hotel<br>12825 Ventura Blvd. | 165 (6) | 11/1/2020 |
| 51 | All | Project Roomkey/Interim Housing (3) | The Mayfair Hotel<br>1256 W. 7th St. | 294 | 11/1/2020 |
| 52 | All | Project Roomkey/Interim Housing (3) | The L.A. Grand Hotel Downtown<br>333 S. Figueroa St. | 483 | 11/1/2020 |
| 53 | All | Project Roomkey/Interim Housing (3) | Vagabond Inn San Pedro<br>215 S Gaffey St. | 72 | 4/15/2021 |
| 54 | All | Project Roomkey/Interim Housing (3) | Airtel<br>7277 Valjean Ave. | 240 | 4/15/2021 |
| 55 | All | Project Roomkey/Interim Housing (3) | Shelter Hotels<br>457 S. Mariposa Ave. | 48 | 4/16/2021 |
| 56 | All | Project Roomkey/Interim Housing (3) | H Hotel<br>6151 W. Century Blvd. | 49 | 4/16/2021 |
| 57 | All | Project Roomkey/Interim Housing (3) | America's Best Value Inn<br>1123 W 7th St. | 61 | 4/16/2021 |
| 58 | All | Project Roomkey/Interim Housing (3) | Best Western Dragon's Gate Inn<br>818 N. Hill St. | 52 | 4/16/2021 |
| 59 | All | Rapid Rehousing / Shared Housing (4) | Various | 644 | In Process |
| 60 | 3 | Safe Parking | 7128 Jordan Ave. | 25 | 3/18/2021 |
| 61 | 9 | Safe Parking | 1201 S Figueroa St. | 30 | 11/2/2020 |
| 62 | 9 | Safe Parking | 4301 S Central Ave. | 10 | 3/8/2021 |
| 63 | 11 | Safe Parking | 11339 Iowa Ave. | 10 | 10/1/2020 |
| 64 | 11 | Safe Parking | 9100 Lincoln Blvd. | 20 | 10/6/2020 |
| 65 | 12 | Safe Parking | Metrolink Station - Northridge<br>8775 Wilbur Ave. | 20 | 4/7/2021 |
| 66 | 13 | Safe Parking | Cahuenga Branch Library<br>4591 Santa Monica Blvd. | 10 | 3/15/2021 |
| 67 | 13 | Safe Parking | 1033 Cole Ave. | 10 | 4/12/2021 |
| 68 | 15 | Safe Parking | 19610 S. Hamilton Ave. | 25 | 2/15/2021 |
| 69 | 15 | Safe Parking | 711 S. Beacon St. | 25 | 3/1/2021 |
| 70 | 13 | Safe Sleeping | 317 N Madison Ave (5) | 73 | 4/16/2021 |
| | | | Subtotal: | 5,467 | /5300 |

21

3

| | | | COVID-19 Homelessness Roadmap<br>City-County MOU<br>Interventions Open and Occupiable on April 16, 2021 | | |
|---|---|---|---|---|---|
| No. | CD | Bed Category | Address / Location | No. of Beds | Open &<br>Occupiable |
| | | | Interventions in Existing Agreements with the County | | |
| 71 | 3 | Interim Housing | 7621 Canoga Ave. | 81 | 2/1/2021 |
| 72 | 4 | Interim Housing | 3061 Riverside Dr. | 80 | 4/15/2021 |
| 73 | 7 | Interim Housing | Sylmar Armory<br>12860 Arroyo St. | 85 | 8/3/2020 |
| 74 | 14 | Interim Housing | 1426 Paloma St. | 120 | 12/21/2020 |
| 75 | 15 | Interim Housing | 515 N. Beacon Street (2) | 62 | 7/7/2020 |
| 76 | 1 | Permanent Support Housing | 1532 W. Cambria St. | 57 | 10/9/2020 |
| 77 | 7 | Permanent Support Housing | 13574 W. Foothill Blvd. | 48 | 3/15/2021 |
| 78 | 8 | Permanent Support Housing | 5501 S. Western Ave. | 33 | 3/31/2021 |
| 79 | 9 | Permanent Support Housing | 6901 S. Main St. | 50 | 11/17/2020 |
| 80 | 9 | Permanent Support Housing | 4050 S. Figueroa St. | 57 | 3/31/2021 |
| 81 | 14 | Permanent Support Housing | 649 S. Wall St. | 55 | 2/26/2021 |
| | | | Subtotal: | 728 | /700 |
| | | | Total Confirmed to be Open and Occupiable on April 16, 2021: | 6,195 | /6000 |

**428** INTERIM (rows 71–75)

**300** PERM (rows 76–81)

(1) The Project Homekey program is an interim housing program implemented through hotel rooms purchased by the City. Approximately 10% of Project Homekey interventions scheduled to open by April 16, 2021 will be under accessibility renovations, and will not be occupiable. These rooms will become occupiable by December 16, 2021.

(2) 515 Beacon Street is partially funded by the County, and the beds are split by funding source between those in an existing agreement

(3) Project Roomkey is an interim housing program implemented through hotel rooms leased by the City. Project Roomkey beds extended within City COVID-19 Homelessness Roadmap (Roadmap) because all beds were extended past their scheduled March 2021 end

(4) LAHSA is funded for 3,000 placements by December 16, 2021, and anticipates 644 people experiencing homelessness being placed

(5) 317 Madison Ave. was recently confirmed to be open and occupiable by April 16, 2021.

(6) Sportsmen's Lodge confirmed an additional 17 rooms are available for Project Roomkey, increasing the total rooms from 148 to 165 rooms.

(7) Pallet shelters are used to create Tiny Home Villages, an innovative interim housing mode.

4/14/2021

4

22

**COVID-19 Homelessness Roadmap**
**City-County MOU**
Interventions Open and Occupiable on April 16, 2021

| No. | CD | Bed Category | Address / Location | No. of Beds | Open & Occupiable |
|---|---|---|---|---|---|
| | | **New Interventions** | | | |
| 1 | 1 | Interim Housing | Echo Park Community Center 303 Patton Street | 27 | 4/1/2021 |
| 2 | 2 | Interim Housing | 13160 Raymer St. | 85 | 7/16/2020 |
| 3 | 2 | Interim Housing | 7700 Van Nuys Blvd. | 100 | 8/17/2020 |
| 4 | 2 | Interim Housing (Pallet) (7) | 11471 Chandler Blvd. | 75 | 2/1/2021 |
| 5 | 2 | Interim Housing (Pallet) (7) | 6099 Laurel Canyon Blvd. | 200 | 4/12/2021 |
| 6 | 4 | Interim Housing | 3428 Riverside Drive | 100 | 7/28/2020 |
| 7 | 4 | Interim Housing | Pan Pacific Park 7600 Beverly Blvd | 73 | 4/1/2021 |
| 8 | 4 | Interim Housing | 1701 Camino Palmero St. | 21 | 4/16/2021 |
| 9 | 5 | Interim Housing | 1479 S. La Cienega | 54 | 6/22/2020 |
| 10 | 6 | Interim Housing | 14333 Aetna St. | 70 | 8/10/2020 |
| 11 | 6 | Interim Housing | 6909 N Sepulveda Blvd. | 146 | 4/16/2021 |
| 12 | 7 | Interim Housing | Greater Missionary Church 11067 Norris Avenue | 57 | 4/1/2021 |
| 13 | 8 | Interim Housing | Home At Last Women's Shelter 8311 S. Western Avenue | 30 | 4/1/2021 |
| 14 | 8 | Interim Housing | Bryant Temple AME 2514 W. Vernon Ave. | 20 | 4/1/2021 |
| 15 | 8 | Interim Housing | 8501 1/2 S. Vermont Ave. | 25 | 4/16/2021 |
| 16 | 8 | Interim Housing | 5615 - 5749 South Western Ave. | 7 | 4/16/2021 |
| 17 | 9 | Interim Housing | Home At Last Men's Shelter 5171 S. Vermont Ave. | 20 | 4/1/2021 |
| 18 | 9 | Interim Housing | 5100 S. Central Ave. | 25 | 4/1/2021 |
| 19 | 9 | Interim Housing | 4601 Figueroa | 30 | 4/16/2021 |
| 20 | 9 | Interim Housing | 8501 S. Broadway | 150 | 4/16/2021 |
| 21 | 10 | Interim Housing | 1819 S. Western Avenue | 15 | 9/21/2020 |
| 22 | 10 | Interim Housing | 625 La Fayette Pl. | 70 | 3/1/2021 |
| 23 | 13 | Interim Housing | Shatto Park Recreation Center 3191 W. 4th St. | 48 | 4/1/2021 |
| 24 | 13 | Interim Housing | 5941 Hollywood Blvd. | 30 | 4/15/2021 |
| 25 | 14 | Interim Housing | 310 N. Main St. | 99 | 8/18/2020 |
| 26 | 14 | Interim Housing | 566 S. San Pedro | 60 | 2/1/2021 |
| 27 | 14 | Interim Housing | Scattered Sites - SRO Housing | 60 | 3/1/2021 |

**2200 INTERIM**

**COVID-19 Homelessness Roadmap**
**City-County MOU**
Interventions Open and Occupiable on April 16, 2021

| No. | CD | Bed Category | Address / Location | No. of Beds | Open & Occupiable |
|---|---|---|---|---|---|
| 28 | 14 | Interim Housing | 1060 N Vignes St. | 232 | 4/1/2021 |
| 29 | 14 | Interim Housing | Weingart Center 566 S. San Pedro St. | 49 | 4/1/2021 |
| 30 | 14 | Interim Housing | 543 Crocker St. | 40 | 4/16/2021 |
| 31 | 15 | Interim Housing | 515 N. Beacon Street (2) | 38 | 7/7/2020 |
| 32 | 15 | Interim Housing | 828 Eubank Ave. | 100 | 7/7/2020 |
| 33 | N/A | Interim Housing | Various | 44 | 4/16/2021 |
| 34 | 1 | Permanent Supportive Housing | 1255 S Elden Ave. | 93 | 2/3/2021 |
| 35 | 5 | Permanent Supportive Housing | 8866 W Pico Blvd. | 48 | 8/7/2020 |
| 36 | 6 | Permanent Supportive Housing | 11050 W. Arminta St. | 110 | 2/23/2021 |
| 37 | 9 | Permanent Supportive Housing | 1036 E 35th St. | 74 | 3/24/2021 |
| 38 | 10 | Permanent Supportive Housing | 4018 S Buckingham Rd. | 103 | 11/23/2020 |
| 39 | 13 | Permanent Supportive Housing | 252 S. Rampart Blvd. | 23 | 11/9/2020 |
| 40 | 1 | Project Homekey/Interim Housing (1) | Solaire Hotel 1710 7th St. | 81 | 1/1/2021 |
| 41 | 3 | Project Homekey/Interim Housing (1) | Howard Johnson 7432 Reseda Blvd. | 62 | 1/1/2021 |
| 42 | 3 | Project Homekey/Interim Housing (1) | Super 8 Canoga Park 7631 Topanga Canyon | 46 | 1/1/2021 |
| 43 | 6 | Project Homekey/Interim Housing (1) | Econo Motor Inn 8647 N. Sepulveda Blvd. | 49 | 3/17/2021 |
| 44 | 8 | Project Homekey/Interim Housing (1) | EC Motel 3501 Western Ave. | 26 | 4/15/2021 |
| 45 | 10 | Project Homekey/Interim Housing (1) | Best Inn 4701 W Adams Blvd. | 21 | 3/23/2021 |
| 46 | 12 | Project Homekey/Interim Housing (1) | Travelodge 21603 Devonshire St. | 50 | 3/15/2021 |
| 47 | 13 | Project Homekey/Interim Housing (1) | The NEST 253 S. Hoover St. | 33 | 3/22/2021 |
| 48 | 14 | Project Homekey/Interim Housing (1) | Titta's Inn 5333 Huntington Dr. | 39 | 4/6/2021 |

**451 PERM**

**450 HOMEKEY**

**COVID-19 Homelessness Roadmap**
**City-County MOU**
Interventions Open and Occupiable on April 16, 2021

| No. | CD | Bed Category | Address / Location | No. of Beds | Open & Occupiable |
|---|---|---|---|---|---|
| 49 | 14 | Project Homekey/Interim Housing (1) | Super 8 Alhambra 5350 S Huntington Dr. | 43 | 4/7/2021 |
| 50 | All | Project Roomkey/Interim Housing (3) | Sportsmen's Lodge Hotel 12825 Ventura Blvd. | 165 (6) | 11/1/2020 |
| 51 | All | Project Roomkey/Interim Housing (3) | The Mayfair Hotel 1256 W. 7th St. | 294 | 11/1/2020 |
| 52 | All | Project Roomkey/Interim Housing (3) | The L.A. Grand Hotel Downtown 333 S. Figueroa St. | 483 | 11/1/2020 |
| 53 | All | Project Roomkey/Interim Housing (3) | Vagabond Inn San Pedro 215 S Gaffey St. | 72 | 4/15/2021 |
| 54 | All | Project Roomkey/Interim Housing (3) | Airtel 7277 Valjean Ave. | 240 | 4/15/2021 |
| 55 | All | Project Roomkey/Interim Housing (3) | Shelter Hotels 457 S. Mariposa Ave. | 48 | 4/16/2021 |
| 56 | All | Project Roomkey/Interim Housing (3) | H Hotel 6151 W. Century Blvd. | 49 | 4/16/2021 |
| 57 | All | Project Roomkey/Interim Housing (3) | America's Best Value Inn 1123 W 7th St. | 61 | 4/16/2021 |
| 58 | All | Project Roomkey/Interim Housing (3) | Best Western Dragon's Gate Inn 818 N. Hill St. | 52 | 4/16/2021 |
| 59 | All | Rapid Rehousing / Shared Housing (4) | Various | 644 | In Process |
| 60 | 3 | Safe Parking | 7128 Jordan Ave. | 25 | 3/18/2021 |
| 61 | 9 | Safe Parking | 1201 S Figueroa St. | 30 | 11/2/2020 |
| 62 | 9 | Safe Parking | 4301 S Central Ave. | 10 | 3/8/2021 |
| 63 | 11 | Safe Parking | 11339 Iowa Ave. | 10 | 10/1/2020 |
| 64 | 11 | Safe Parking | 9100 Lincoln Blvd. | 20 | 10/6/2020 |
| 65 | 12 | Safe Parking | Metrolink Station - Northridge 8775 Wilbur Ave. | 20 | 4/7/2021 |
| 66 | 13 | Safe Parking | Cahuenga Branch Library 4591 Santa Monica Blvd. | 10 | 3/15/2021 |
| 67 | 13 | Safe Parking | 1033 Cole Ave. | 10 | 4/12/2021 |
| 68 | 15 | Safe Parking | 19610 S. Hamilton Ave. | 25 | 2/15/2021 |
| 69 | 15 | Safe Parking | 711 S. Beacon St. | 25 | 3/1/2021 |
| 70 | 13 | Safe Sleeping | 317 N Madison Ave (5) | 73 | 4/16/2021 |
| | | | Subtotal: | 5,467 | /5300 |

**1,464 ROOMKEY**

**644 → RAPID RE**

**258 SAFE**

**COVID-19 Homelessness Roadmap**
**City-County MOU**
Interventions Open and Occupiable on April 16, 2021

| No. | CD | Bed Category | Address / Location | No. of Beds | Open & Occupiable |
|---|---|---|---|---|---|
| | | **Interventions in Existing Agreements with the County** | | | |
| 71 | 3 | Interim Housing | 7621 Canoga Ave. | 81 | 2/1/2021 |
| 72 | 4 | Interim Housing | 3061 Riverside Dr. | 80 | 4/15/2021 |
| 73 | 7 | Interim Housing | Sylmar Armory 12860 Arroyo St. | 85 | 8/3/2020 |
| 74 | 14 | Interim Housing | 1426 Paloma St. | 120 | 12/21/2020 |
| 75 | 15 | Interim Housing | 515 N. Beacon Street (2) | 62 | 7/7/2020 |
| 76 | 1 | Permanent Support Housing | 1532 W. Cambria St. | 57 | 10/9/2020 |
| 77 | 7 | Permanent Support Housing | 13574 W. Foothill Blvd. | 48 | 3/15/2021 |
| 78 | 8 | Permanent Support Housing | 5501 S. Western Ave. | 33 | 3/31/2021 |
| 79 | 9 | Permanent Support Housing | 6901 S. Main St. | 50 | 11/17/2020 |
| 80 | 9 | Permanent Support Housing | 4050 S. Figueroa St. | 57 | 3/31/2021 |
| 81 | 14 | Permanent Support Housing | 649 S. Wall St. | 55 | 2/26/2021 |
| | | | Subtotal: | 728 | /700 |
| | | **Total Confirmed to be Open and Occupiable on April 16, 2021:** | | 6,195 | /6000 |

**428 INTERIM**

**300 PERM**

(1) The Project Homekey program is an interim housing program implemented through hotel rooms purchased by the City. Approximately 10% of Project Homekey interventions scheduled to open by April 16, 2021 will be under accessibility renovations, and will not be occupiable. These rooms will become occupiable by December 16, 2021.

(2) 515 Beacon Street is partially funded by the County, and the beds are split by funding source between those in an existing agreement and Project Roomkey.

(3) Project Roomkey is an interim housing program implemented through hotel rooms leased by the City. Project Roomkey beds extended within City COVID-19 Homelessness Roadmap (Roadmap) because all beds were extended past their scheduled March 2021 end

(4) LAHSA is funded for 3,000 placements by December 16, 2021, and anticipates 644 people experiencing homelessness being placed

(5) 317 Madison Ave. was recently confirmed to be open and occupiable by April 16, 2021.

(6) Sportsmen's Lodge confirmed an additional 17 rooms are available for Project Roomkey, increasing the total rooms from 148 to 165 rooms.

(7) Pallet shelters are used to create Tiny Home Villages, an innovative interim housing mode.

LA City Homelessness Roadmap
Quarterly Report
Quarter Ending March 31, 2021

Dkt. 267
Exhibit B
Page 1

| No. | CD | Project Type (1) | Address / Location | Beds* (3) | Status | Open & Occupiable Date | Individuals Served since June 16, 2020 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | PEH** within 500 ft (4)(5) (Individuals) | PEH 65 Years or Older (Individuals) | PEH Other Vulnerable (6) (Individuals) | Total PEH Served per the Agreement (Individuals) | Other PEH (Not Prioritized in Agreement) (Individuals) | Total PEH Served to Date (Individuals) |
| 1 | All | Rapid Rehousing / Shared Housing | Scattered Sites | 3000 | In Process | | 4 | 87 | 282 | 373 | 12 | 385 |
| 2 | All | Project Roomkey (9) | Sportsmen's Lodge | 165 | Open | 11/1/2020 | 6 | 33 | 225 | 264 | 16 | 280 |
| 3 | All | Project Roomkey (9) | Mayfair | 294 | Open | 11/1/2020 | 42 | 83 | 370 | 495 | 29 | 524 |
| 4 | All | Project Roomkey (9) | LA Grand | 483 | Open | 11/1/2020 | 224 | 123 | 585 | 932 | 69 | 1001 |
| 5 | All | Project Roomkey (10) | Shelter Hotel | 48 | In Process | | | | | | | |
| 6 | All | Project Roomkey (10) | H Hotel | 49 | In Process | | | | | | | |
| 7 | All | Project Roomkey (10) | America's Best Value | 61 | In Process | | | | | | | |
| 8 | All | Project Roomkey (10) | Best Western Dragon's Gate | 52 | In Process | | | | | | | |
| 9 | All | Project Roomkey (10) | Vagabond Inn San Pedro | 72 | In Process | | | | | | | |
| 10 | All | Project Roomkey (10) | Airtel | 240 | In Process | | | | | | | |
| 11 | All | Project Roomkey (10) | Royal Pagoda | 35 | In Process | | | | | | | |
| 12 | 1 | Interim Housing | Echo Park Community Center 303 Patton St. | 27 | In Process | | | | | | | |
| 13 | 1 | Permanent Supportive Housing | 1255 S Elden Ave. | 93 | Open | 2/3/2021 | 0 | 0 | 0 | 0 | 10 | 10 |
| 14 | 1 | Project Homekey | Solaire Hotel 1710 7th St | 91 | Open | 1/1/2021 | 3 | 20 | 63 | 86 | 1 | 87 |
| 15 | 2 | A Bridge Home | 13160 Raymer St. | 85 | Open | 7/16/2020 | 0 | 10 | 66 | 76 | 97 | 173 |
| 16 | 2 | A Bridge Home | 7700 Van Nuys Blvd. | 100 | Open | 8/17/2020 | 2 | 19 | 56 | 77 | 116 | 193 |
| 17 | 2 | Interim Housing (Pallet) | 11471 Chandler Blvd. | 75 | Open | 2/1/2021 | 0 | 0 | 15 | 15 | 45 | 60 |
| 18 | 2 | Interim Housing (Pallet) | 6099 Laurel Canyon Blvd. aka Alexandria Park | 200 | In Process | | | | | | | |
| 19 | 2 | Interim Housing (Pallet) | 12600 Saticoy St. | 150 | In Process | | | | | | | |
| 20 | 3 | Interim Housing (Pallet) | 19040 Vanowen St. | 101 | In Process | | | | | | | |
| 21 | 3 | Interim Housing (Pallet) | 6073 N Reseda Blvd. aka Topham | 148 | In Process | | | | | | | |
| 22 | 3 | Project Homekey | Howard Johnson 7432 Reseda Blvd. | 75 | Open | 1/1/2021 | 0 | 30 | 66 | 96 | 0 | 96 |
| 23 | 3 | Project Homekey | Super 8 Canoga Park 7631 Topanga Canyon | 46 | Open | 1/1/2021 | 1 | 9 | 37 | 47 | 2 | 49 |
| 24 | 3 | Safe Parking | 7128 Jordan Ave. | 25 | Open | 3/22/2021 | 0 | 0 | 0 | 0 | 0 | 0 |
| 25 | 4 | A Bridge Home | 3428 Riverside Dr. | 100 | Open | 7/28/2020 | 7 | 8 | 52 | 67 | 72 | 139 |
| 26 | 4 | Interim Housing | Pan Pacific Park 7600 Beverly Blvd. | 73 | In Process | | | | | | | |
| 27 | 4 | Interim Housing | 1701 Camino Palmero St. | 21 | In Process | | | | | | | |
| 28 | 4 | Safe Parking | 15380 Oxnard St. | 14 | In Process | | | | | | | |
| 29 | 5 | A Bridge Home | 1479 S. La Cienega | 54 | Open | 6/22/2020 | 0 | 0 | 0 | 0 | 53 | 53 |
| 30 | 5 | Interim Housing | 7253 Melrose Ave. | 60 | In Process | | | | | | | |
| 31 | 5 | Interim Housing | Coalition to Abolish Slavery and Human Trafficking (CAST) Shelter - Address Witheld | 19 | In Process | | | | | | | |
| 32 | 5 | Permanent Supportive Housing | 8866 W Pico Blvd. | 48 | Open | 8/7/2020 | 0 | 6 | 0 | 6 | 4 | 10 |
| 33 | 6 | A Bridge Home | 14333 Aetna St. | 70 | Open | 8/10/2020 | 0 | 12 | 31 | 43 | 79 | 122 |
| 34 | 6 | Interim Housing | 6909 N Sepulveda Blvd. | 146 | In Process | | | | | | | |
| 35 | 6 | Permanent Supportive Housing | 11050 W. Arminta St. | 110 | Open | 2/23/2021 | Pending data confirmation from the County Department of Health Services. | | | | | |

25

COVID-19 Homelessness Roadmap
Quarterly Report
Quarter Ending March 31, 2021

Dkt. 267
Exhibit B
Page 2

| No. | CD | Project Type (1) | Address / Location | Beds* (3) | Status | Open & Occupiable Date | Individuals Served since June 16, 2020 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | PEH** within 500 ft (4)(5) (Individuals) | PEH 65 Years or Older (Individuals) | PEH Other Vulnerable (6) (Individuals) | Total PEH Served per the Agreement (Individuals) | Other PEH (Not Prioritized in Agreement) (Individuals) | Total PEH Served to Date (Individuals) |
| 36 | 6 | Project Homekey | Woodman 9120 Woodman Ave. | 148 | In Process | | | | | | | |
| 37 | 6 | Project Homekey | Econo Motor Inn 8647 N. Sepulveda Blvd. | 59 | Open | 3/17/2021 | 0 | 4 | 20 | 24 | 7 | 31 |
| 38 | 6 | Project Homekey | Panorama Inn 8209 Sepulveda Blvd. | 74 | In Process | | | | | | | |
| 39 | 7 | Interim Housing | Greater Missionary Church 11067 Norris Ave. | 57 | In Process | | | | | | | |
| 40 | 7 | Project Homekey | The Good Nite Inn 12835 Encinitas Ave. | 87 | In Process | | | | | | | |
| 41 | 8 | Interim Housing | Home At Last Women's Shelter 8311 S. Western Ave. | 30 | In Process | | | | | | | |
| 42 | 8 | Interim Housing | Bryant Temple AME 2514 W. Vernon Ave. | 20 | In Process | | | | | | | |
| 43 | 8 | Interim Housing | 8501 1/2 S. Vermont Ave. | 25 | In Process | | | | | | | |
| 44 | 8 | Interim Housing | 5615 - 5749 South Western Ave. | 7 | In Process | | | | | | | |
| 45 | 8 | Project Homekey | EC Motel 3501 Western Ave. | 31 | In Process | | | | | | | |
| 46 | 9 | A Bridge Home | 4601 Figueroa St. | 30 | In Process | | | | | | | |
| 47 | 9 | Interim Housing | Home At Last Men's Shelter 5171 S. Vermont Ave. | 20 | In Process | | | | | | | |
| 48 | 9 | Interim Housing | 5100 S. Central Ave. | 25 | In Process | | | | | | | |
| 49 | 9 | Interim Housing | 8501 S. Broadway | 150 | In Process | | | | | | | |
| 50 | 9 | Permanent Supportive Housing | 1036 E 35th St. | 74 | Open | 3/31/2021 | Since site opened on 3/31/2021, leasing data will not be available until the next quarterly report. | | | | | |
| 51 | 9 | Permanent Supportive Housing | 5215 S. Figueroa St. | 40 | In Process | | | | | | | |
| 52 | 9 | Project Homekey | Slauson Villas 1300-1332 W Slauson Ave. | 100 | In Process | | | | | | | |
| 53 | 9 | Safe Parking | 1501 S Figueroa St. | 30 | Open | 11/2/2020 | 0 | 3 | 5 | 8 | 24 | 32 |
| 54 | 9 | Safe Parking | 4301 S Central Ave. | 10 | Open | 3/8/2021 | 0 | 1 | 1 | 2 | 5 | 7 |
| 55 | 10 | A Bridge Home | 1819 S. Western Avenue | 15 | Open | 9/21/2020 | 1 | 4 | 6 | 11 | 9 | 20 |
| 56 | 10 | A Bridge Home | 625 La Fayette Pl. | 70 | Open | 3/1/2021 | 17 | 3 | 21 | 41 | 19 | 60 |
| 57 | 10 | Permanent Supportive Housing | 4018 S Buckingham Rd. | 103 | Open | 11/23/2020 | 0 | 22 | 2 | 24 | 1 | 25 |
| 58 | 10 | Permanent Supportive Housing | 3317 W. Washington Blvd. | 17 | In Process | | | | | | | |
| 59 | 10 | Project Homekey | Best Inn 4701 W Adams Blvd. | 23 | Open | 3/23/2021 | 3 | 0 | 11 | 14 | 2 | 16 |
| 60 | 11 | Project Homekey | Super 8 LAX 9250 Airport Dr. | 44 | In Process | | | | | | | |
| 61 | 11 | Project Homekey | Ramada Inn 3130 Washington Blvd. | 33 | In Process | | | | | | | |
| 62 | 11 | Safe Parking | 11339 Iowa Ave. | 10 | Open | 10/1/2020 | 1 | 7 | 8 | 16 | 32 | 48 |
| 63 | 11 | Safe Parking | 9100 Lincoln Blvd. | 20 | Open | 10/6/2020 | 0 | 9 | 3 | 12 | 23 | 35 |
| 64 | 12 | Interim Housing | 18140 Parthenia St. | 107 | In Process | | | | | | | |
| 65 | 12 | Project Homekey | Travelodge 21603 Devonshire St. | 76 | Open | 3/15/2021 | 0 | 4 | 28 | 32 | 9 | 41 |
| 66 | 12 | Safe Parking | Metrolink Station - Northridge 8775 Wilbur Ave. | 20 | In Process | | | | | | | |

26

COVID-19 Homelessness Roadmap
Quarterly Report
Quarter Ending March 31, 2021

| No. | CD | Project Type (1) | Address / Location | Beds* (3) | Status | Open & Occupiable Date | PEH** within 500 ft (4)(5) (Individuals) | PEH 65 Years or Older (Individuals) | PEH Other Vulnerable (6) (Individuals) | Total PEH Served per the Agreement (Individuals) | Other PEH (Not Prioritized in Agreement) (Individuals) | Total PEH Served to Date (Individuals) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | Individuals Served since June 16, 2020 | | | |
| 67 | 13 | Interim Housing | Shatto Park Recreation Center 3191 W. 4th St. | 48 | In Process | | | | | | | |
| 68 | 13 | Interim Housing | 5941 Hollywood Blvd. | 30 | In Process | | | | | | | |
| 69 | 13 | Interim Housing | 1214 Lodi Pl. | 64 | In Process | | | | | | | |
| 70 | 13 | Interim Housing (Pallet) | 1455 N. Alvarado St. | 74 | In Process | | | | | | | |
| 71 | 13 | Permanent Supportive Housing | 252 S. Rampart Blvd. | 23 | Open | 11/9/2020 | 0 | 0 | 13 | 13 | 9 | 22 |
| 72 | 13 | Project Homekey | The NEST 253 S. Hoover St. | 41 | Open | 3/22/2021 | 10 | 1 | 0 | 11 | 11 | 22 |
| 73 | 13 | Safe Parking | Cahuenga Branch Library 4591 Santa Monica Blvd. | 10 | Open | 3/15/2021 | 0 | 0 | 0 | 0 | 3 | 3 |
| 74 | 13 | Safe Parking | 1033 Cole Ave. | 10 | In Process | | | | | | | |
| 75 | 13 | Safe Sleeping | 317 N Madison Ave. | 73 | In Process | | | | | | | |
| 76 | 14 | A Bridge Home | 310 N. Main St. | 99 | Open | 8/18/2020 | 17 | 14 | 68 | 99 | 56 | 155 |
| 77 | 14 | Interim Housing | Weingart Center 566 S. San Pedro St. | 60 | Open | 2/1/2021 | 12 | 22 | 41 | 75 | 135 | 210 |
| 78 | 14 | Interim Housing | Scattered Sites - SRO Housing Corporation | 60 | Open | 3/1/2021 | 1 | 8 | 21 | 30 | 24 | 54 |
| 79 | 14 | Interim Housing | 1060 N Vignes St. | 232 | In Process | | | | | | | |
| 80 | 14 | Interim Housing | Weingart Center 566 S. San Pedro St. | 49 | In Process | | | | | | | |
| 81 | 14 | Interim Housing | 543 Crocker St. | 40 | In Process | | | | | | | |
| 82 | 14 | Interim Housing | El Puente | 45 | In Process | | | | | | | |
| 83 | 14 | Interim Housing (Pallet) | Arroyo Drive at Ave 60 | 224 | In Process | | | | | | | |
| 84 | 14 | Project Homekey | Titta's Inn 5333 Huntington Dr. | 49 | In Process | | | | | | | |
| 85 | 14 | Project Homekey | Super 8 Alhambra 5350 S Huntington Dr. | 52 | In Process | | | | | | | |
| 86 | 15 | A Bridge Home | 515 N. Beacon St. (3) | 38 | Open | 7/7/2020 | 6 | 5 | 15 | 26 | 27 | 54 |
| 87 | 15 | A Bridge Home | 828 Eubank Ave. | 100 | Open | 7/7/2020 | 8 | 25 | 37 | 70 | 101 | 171 |
| 88 | 15 | Interim Housing (Pallet) | 1221 S. Figueroa Pl. | 80 | In Process | | | | | | | |
| 89 | 15 | Project Homekey | Travelodge 18600 Normandie Ave. | 40 | In Process | | | | | | | |
| 90 | 15 | Safe Parking | 19610 S. Hamilton Ave. | 25 | Open | 2/15/2021 | 0 | 0 | 0 | 0 | 11 | 11 |
| 91 | 15 | Safe Parking | 711 S. Beacon St. | 25 | Open | 3/1/2021 | 0 | 1 | 0 | 1 | 2 | 3 |
| | | | | | Other Beds (2) | | | | | | | |
| 92 | 1 | Permanent Supportive Housing - In Existing Agreement with County | 1532 W. Cambria St. | 57 | Open | 10/9/2020 | 0 | 1 | 0 | 1 | 54 | 55 |
| 93 | 3 | A Bridge Home - In Existing Agreement with County | 7621 Canoga Ave. | 81 | Open | 2/1/2021 | 1 | 7 | 24 | 32 | 28 | 60 |
| 94 | 4 | Permanent Supportive Housing - In Existing Agreement with County | 1119 N. McCadden Pl. | 26 | In Process | | | | | | | |
| 95 | 4 | A Bridge Home - In Existing Agreement with County | 3061 Riverside Dr. | 80 | In Process | | | | | | | |

27

Dkt. 267
Exhibit B
Page 4

**COVID-19 Homelessness Roadmap**
**Quarterly Report**
**Quarter Ending March 31, 2021**

| No. | CD | Project Type (1) | Address / Location | Beds* (3) | Status | Open & Occupiable Date | Individuals Served since June 16, 2020 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | PEH** within 500 ft (4)(5) (Individuals) | PEH 65 Years or Older (Individuals) | PEH Other Vulnerable (6) (Individuals) | Total PEH Served per the Agreement (Individuals) | Other PEH (Not Prioritized in Agreement) (Individuals) | Total PEH Served to Date (Individuals) |
| 96 | 7 | A Bridge Home - In Existing Agreement with County | Sylmar Armory 12860 Arroyo St. | 85 | Open | 8/3/2020 | 0 | 6 | 32 | 38 | 34 | 72 |
| 97 | 7 | Permanent Supportive Housing - In Existing Agreement with County | 13574 W. Foothill Blvd. | 48 | Open | 3/31/2021 | Since site opened on 3/31/2021, leasing data will not be available until the next quarterly report. | | | | | |
| 98 | 8 | Permanent Supportive Housing - In Existing Agreement with County | 5501 S. Western Ave. | 33 | In Process | | | | | | | |
| 99 | 9 | Permanent Supportive Housing - In Existing Agreement with County | 6901 S. Main St. | 50 | Open | 11/17/2020 | TBD | 2 | 5 | 7 | 42 | 49 |
| 100 | 9 | Permanent Supportive Housing - In Existing Agreement with County | 4050 S. Figueroa St. | 57 | In Process | | | | | | | |
| 101 | 14 | A Bridge Home - In Existing Agreement with County | 1426 Paloma St. | 120 | Open | 12/21/2020 | 18 | 3 | 22 | 43 | 23 | 66 |
| 102 | 14 | Permanent Supportive Housing - In Existing Agreement with County | 649 S. Wall St. | 55 | Open | 2/26/2021 | 2 | 0 | 6 | 8 | 2 | 10 |
| 103 | 15 | A Bridge Home - In Existing Agreement with County | 515 N. Beacon St. (3) | 62 | Open | 7/7/2020 | 10 | 9 | 24 | 43 | 45 | 87 |
| | | Total: | 10,330 | | | | 396 | 601 | 2,261 | 3,258 | 1,343 | 4,601 |

(1) The type of homeless intervention. Tiny Home Villages (or Pallet shelters) are listed as interim housing interventions.

(2) Interventions in existing agreements with the County of Los Angeles prior to June 16, 2020. Per the agreement, only 700 beds from existing agreements may be counted toward the Homelessness Roadmap.

(3) Total beds opened as of the Quarter ending date. Per Los Angeles County Department of Public Health COVID-19 restrictions, not all beds may be occupied in interim housing facilities.

(4) LAHSA provides the data for the number of PEH in the target population served. The target population for this effort includes:

    a. People experiencing homelessness and living in the City within 500 feet of freeway overpasses, underpasses and ramps;

    b. People experiencing homelessness within the City who are 65 years of age or older; and

    c. Other vulnerable people experiencing homelessness within the City of Los Angeles.

(5) The geographic location of encampments for "PEH within 500 ft" may be adjusted by LAHSA between quarterly report, resulting in data variations.

(6) The criteria for "PEH Other Vulnerable" are persons with preexisting medical conditions and vulnerable to COVID-19.

(7) Occupancy data for these sites was unavailable in the LAHSA Homeless Management Information System. The data will be provided in the next quarterly report.

\* Beds include all homeless Interventions in development: interim beds/units, safe parking, and permanent supportive housing units.

\*\* PEH: People Experiencing Homelessness

28

# DKT. 123, EXH. A, PAGE 2

The City of Los Angeles is committed to working with the Court and the parties and intervenors in this action to solve the crisis of homelessness. The City stands ready to provide the capital costs (subject to approval of the City Council) needed to implement a mix of shelter and housing solutions to serve a diverse homeless population, in partnership with the County of Los Angeles (County) and the Los Angeles Homeless Services Authority (LAHSA) to ensure those solutions include the services necessary to keep people off the streets.  While the City remains focused on developing and implementing a comprehensive plan to address homelessness, the City plans to immediately prioritize two subsets of the unsheltered population: 1) people experiencing homelessness currently residing in the City's COVID emergency shelters (recreation centers and City-funded Project Roomkey beds); and 2) people who have taken shelter under freeway overpasses and underpasses, and near freeway entrance and exit ramps. Each group is vulnerable in its own way, and each deserves urgent action.  And as was discussed at the May 13, 2020 Status Conference—which the Court agreed with—any plan to provide shelter to persons living under freeways must be within the larger context of the City's and County's response to the threat of COVID-19, which public health officials acknowledge presents a more immediate risk to persons experiencing homeless.

Therefore, the City proposes a two-phase plan (subject to change based on evolving guidance from local public health experts) by which the City will:

1) Identify and activate exits for the approximately 3,000 people brought into emergency City shelter settings (recreation centers and City-funded Project Roomkey hotels) over the course of 120 days; and

2) Create additional shelter beds and locations for the relocation of approximately 3,100 people who live under freeway overpasses and underpasses in the City of Los Angeles in the subsequent 180 days, while ensuring that the sheltering or housing of any such person does not supersede the placement of someone who is assessed by the public

CITY OF LOS ANGELES ALTERNATIVE PLAN

Case 2:20-cv-02291-DOC-KES   Document 123-1   Filed 05/22/20   Page 3 of 9   Page ID

Dkt. 123
Exhibit A
Page 3

health and/or homeless services professionals to be at higher risk and/or more in need of shelter.

In all, the City commits to creating 6,100 new shelter opportunities in the next 10 months. The City's plan is contingent upon each shelter location receiving the appropriate levels of necessary County-funded support and operating services. Under the voter approved tax initiative Measure H, the County funds operating services for homeless facilities called for in the County Homeless Strategy. Operating services include specially trained staff dedicated to manage these facilities; case managers who work with clients in the facilities to access housing and other benefits; security services; and program enrollments/exits. These operating services are in addition to the "mainstream" systems of care (mental health, healthcare, substance abuse, etc.) provided by the County, which are also necessary—but not sufficient—to successfully operate the shelter opportunities the City is committed to creating.

As the first and most immediate steps in providing additional shelter and services to persons experiencing homelessness, the City proposes the following three pilot projects:

1) Hygiene at 16th and Maple. The City will deploy hygiene facilities near 16th and Maple, where a group of people are living under a freeway. Delivery of portable toilets (with sinks) is expected on Wednesday, May 20, 2020, with a separate hand washing station to be delivered soon thereafter. Mobile shower services are already being provided twice a week (beginning last weekend).

2) Pallet shelters. The City will establish, and the County will support, a Pallet shelter community pilot program (Pallet shelters are state-certified modular housing units). The City will provide hygiene stations and toilets, mobile showers, and administration facilities. This pilot program will contain approximately 50 Pallet shelters,

3

CITY OF LOS ANGELES ALTERNATIVE PLAN

# CURREN PRICE DISTRICT

City of Los Angeles

FILED
CLERK, U.S. DISTRICT COURT
APR - 2 2021
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LACV 20-2291 DOC

March 22, 2021

Dear Judge Carter,

Thank you for taking the time to meet with my staff and I so many times over the last year. We appreciate your hands on approach to this case and your willingness to come to our district to see first hand the struggles and challenges facing our community.

Our homeless neighbors are suffering. And while we are doing our best to build as many beds as possible as quickly as possible, we still have much work ahead of us. To solve this crisis we need not only the City, but the County, LAHSA, our service providers, and the State to play their part.

I am writing this letter in particular to the State's role, specifically CalTrans. As you know, there is a large population of homeless individuals living near the freeways, and as is sometimes the case in my district, on the freeways. I am attaching some photos to illustrate my concern. These individuals are facing an immediate threat to their health and safety, as well as the safety of those around them. We need the cooperation of CalTrans to ensure we can make contact with these individuals and move them to a safer location.

It would be helpful for the City to have an agreement with CalTrans in regards to how we can coordinate our outreach efforts and provide cleaning to an area once an individual has been moved into a housing solution.

I welcome your feedback and assistance in this matter.

Sincerely,

Curren D. Price, Jr.
Councilmember, 9th District

Case 2:20-cv-02291-DOC-KES   Document 261   Filed 04/02/21   Page 6 of 6   Page ID #:5527



Case 2:20-cv-02291-DOC-KES   Document 261   Filed 04/02/21   Page 4 of 6   Page ID #:5525



36

Case 2:20-cv-02291-DOC-KES   Document 261   Filed 04/02/21   Page 2 of 6   Page ID #:5523









41





43









49



# FREEWAY OVERPASSES CLEARED FOR THE ACADEMY AWARDS



52





# ADJACENT OVERPASSES NOT USED FOR ROUTE TO THE ACADEMY AWARDS







61



# 405 FREEWAY/VENICE BLVD







# ADDITIONAL FREEWAY PHOTOS

68





70



ENTRANCE TO DOWNTOWN FREEWAY





