

Re: Homeless Shelters on the Beach

Dear Judge Carter:

The Pacific Palisades Residents Association ("PPRA") having reviewed this court's Orders of April 20 and 26, 2021, contacted the attorneys for the plaintiff seeking permission to address the court on the issues under consideration. We are informed that the court is receptive to input from the public in letter form rather than by way of intervention, hence we present this submittal letter through the plaintiffs' attorneys. We wish to focus attention on a current proposal by City Councilman Mike Bonin to place a homeless encampment on the parking lot at Will Rogers State Beach.

OUR BACKGROUND

PPRA is an all-volunteer 501c3 corporation whose mission (as stated in its Articles of Incorporation) is to protect and preserve the neighborhoods and the coastal and mountain environment of Pacific Palisades and surrounding areas as well as to educate its members, the community, and elected officials on issues that affect the environment and quality of life in Pacific Palisades and Los Angeles. We have actively represented the community for over 60 years in defending against dangerous developments and projects that negatively impact the quality of life of the community, including the ill-considered attempt by Occidental Petroleum Corporation to place an oil-drilling facility at Will Rogers State Beach in the 1970s.  That project was the subject of litigation for decades, including a Supreme Court decision requiring compliance with CEQA, and finally ended in 1988 when the voters of Los Angeles passed a special initiative, "Proposition O" prohibiting oil drilling citywide within 1000 yards of the mean high tide line. This ban was passed by the voters despite a "competing" measure written and funded with massive monetary infusions by Occidental, labeled "Proposition P", that Occidental Petroleum promised would raise funds from oil drilling to support police and other public services. Occidental's defeat after a decades-long and awfully expensive battle highlights the fact that the residents of Los Angeles have fought and will fight tooth and nail to protect California's most precious public recreational resource, its renowned coastline. Despite being backed by powerful allies in city hall, including then-Mayor Tom Bradley and a majority of the City Council members, Occidental and its Chairman, Armand Hammer, failed to gauge the extent of opposition this plan would draw from residents from all over the city. Eventually Occidental Petroleum's Board of Directors realized the folly of their chairman's proposal and voted to donate the land to the city. It is with this background in mind that we request your permission to address our opposition to the current proposal by L.A. City Councilman Mike Bonin to place homeless shelters on that same beach front area at Will Rogers State Beach, this time in the parking lot.



WHAT WE ENDORSE

We strongly oppose Councilman Bonin's motion (No. 21-0350) to create emergency shelters at Will Rogers Beach. We will support a proposal by Raphael J. Sonenshein of the Pat Brown Institute for Public Affairs to create   comprehensive, strategic, dignified solutions for people experiencing homelessness that include addressing individual needs, establishing clear trajectories that give individuals who regain their mental health the opportunity to succeed not only in being housed but also in actively participating in society and receiving the benefits from that participation.


THE MOTION BY COUNCILMAN BONIN IS UNPRODUCTIVE

The first Saturday of April 2021 residents all over City District 11 received an email from Councilman Mike Bonin introducing motion 21-0350 calling for a feasibility study to create single-occupancy tiny homes and safe camping/parking on the county-owned parking lot at Will Rogers State Beach in Pacific Palisades. It was seconded by Mark Ridley-Thomas.
On May 13, 2021, despite an overwhelming opposition from the entire district with the majority of Neighborhood Councils opposing the motion and 4 growing petitions of over 20,000 signatures, the City Poverty and Homelessness Committee voted to approve the motion 4-1. Councilmen Ridley-Thomas, De Leon, Rodriguez, and Raman voted in favor and Councilman Buscaino voted in opposition, Buscaino's stance being that beaches and parks are sacred spaces to be protected for the use of all Angelenos.

The motion was brought to the City Council on May 26, 2021.  In preparation for the meeting, a growing grassroots coalition from all over the district united to demand that the City Council allow all Neighborhood Councils to speak during public comment. In addition, the coalition demanded that the motion be amended to remove beaches and parks as locations to be studied for feasibility of use in emergency sheltering of the homeless. The coalition flooded City Council President Martinez and Mayor Garcetti's staff phones and emails with these requests.  By Wednesday morning, City Council President Martinez acknowledged the public requests, granted an additional 30 minutes for public comment, authorized item #16 (motion 21-0350) for public comment even though it had previously been addressed in a subcommittee and asked Councilman Bonin to create an additional special study to address the impact of use of homeless shelters in parks which Bonin agreed to.  All Neighborhood Councils were given the opportunity to call in and speak first. Public comment proved that not only was there still a majority of opposition at the level of Neighborhood Councils and the WRAC but also the petitions had now grown by an additional fifteen thousand signatures totaling approximately 35,000 signatures.

The main argument by proponents on the City Council was that the motion was "just a feasibility study" and that the sites would require a study to know whether the locations were best suited for emergency sheltering. Councilman Bonin reminded the public that this emergency sheltering would be "temporary" (*three years* granted by law!) and that the opposition was wrong for pushing back against a motion that was just a study. He agreed that beaches and parks were far from ideal and not his favorite choice, but he was clear that he believed he had no other solution available to him within his authority. He even asked Councilman Buscaino if he would consider taking some of CD 11's unhoused populace, since Buscaino was so adamant about beaches and parks not being



considered as locations for emergency sheltering. The motion passed 13-1, with Councilman Lee absent and Councilman Buscaino opposing the motion.

WHY WE OPPOSE THE MOTION

In under two months, Motion 21-0350 has gained a lot of local, national and international media attention. Images of City's failed solutions and promises were on everyone's radar, from the dangerous Brentwood VA program with inappropriate boundaries that engendered 2 murders, to the mass take-over and rise in crime of Westchester Park caused by a failed Safe Parking Program, not to mention daily gut-wrenching news coverage from Venice of gangs, prostitution, violent crimes, zombie like wandering substance abusers, the chronically mentally ill and fires in and around Venice Boardwalk. I am attaching a link here to a video interview with a former meth addict who lived at Venice beach and attests to the nature of the homeless population's attitude, demeanor, behavior, and proclivities. It is a dangerous population, as only an insider can attest. PPRA Inteviews Mel Wingfield Every neighborhood of CD 11 has been negatively impacted by the growing homeless population, lack of proper leadership in the City demonstrated by failed programs and continued lawlessness, failing to protect residents and the unhoused.

PPRA is terribly concerned about the homeless crisis in Los Angeles and opposes motion 21-0350 first and foremost because it violates the right of all citizens to have access to beaches and parks and other public spaces for recreational purposes.  More importantly, Los Angeles is a high-density city with an abnormally low acreage of parks compared to other cities in America. Fortunately, we do have the wide-open space of the Pacific Ocean at our back door to provide relief from congestion. It is imperative that while the city continues to densify, it also protects this sacred space required to give residents an opportunity to nurture themselves and increase their quality of life.  For all neighborhoods of Los Angeles, not just the Palisades and Venice, this access is critical for the wellbeing of their residents.

As early as 2014, the Pacific Palisades noticed an increase in people experiencing homelessness making their way into the community.  In a matter of months, the entire stretch of Will Rogers beach had a row of over a mile of tents lined up from one end of the beach all the way to Santa Monica.  Every morning volunteers would find needles, trash and feces strewn around the bike path, beach and parking lot. That is what led to the volunteer based Pacific Palisades Task Force on Homelessness (PPTFH). Eventually, with the assistance of the LAPD and People Concern of Santa Monica, PPTFH addressed all those living in tents at the beach, in our hillsides and on our streets, offering them shelter and assistance.  The PPTFH continues to actively protect our public spaces and provide support to the unhoused who make their way to our community.  This compassionate program has had tremendous success in fully rehabilitating 99 unhoused and getting over 141 unhoused off the streets since 2016, and tirelessly strives to help more find a path to well-being and active participation in society.

Having a lot of experience with homelessness and witnessing failed City programs around CD 11, it is no surprise that an overwhelming majority of Palisadians oppose Mr. Bonin's motion.  The City's programs are lacking in follow through, structure, mental health assistance, boundaries, and accountability for participants to heal enough to move to the next stage of housing and rehabilitation.  Motion 21-0350 fails to consider the conditions that contribute to the symptom of



homelessness. The cycle of homelessness gets perpetuated when someone is unable, either medically, through trauma, addiction, or simple resistance, to trust in the value of making different choices for their life.  It is the very lack of relationship-building and protecting the dignity of someone's life that contributes to the growth of the homeless population year after year. If we continue to create undignified dehumanizing programs for the homeless who are willing to get help, we are only delaying their eventual return to the streets where they feel a stronger sense of value. Being on display at the beach in front of thousands of Angelenos behind a chained fence is not a dignified solution that is conducive to their recovery.

        Emergency shelter participants will be at their most vulnerable state.  They will have had to make a choice to participate and try something new.  Given that vulnerability, they should be protected not only inside the shelter but also on the outside of the shelter.  Outside the shelter they will be exposed to criminals who want to take advantage of their vulnerabilities to either sell them drugs, prostitute them or convince them to participate in criminal activities in the surrounding areas. Also, Angelenos wanting to participate in the most accessed and popular beach in LA will be put at additional risk participating in beach activities alongside people experiencing homelessness who are either still highly addicted to meth, heroin, fentanyl, marijuana, alcohol, or all of the aforementioned, or are severely chronically mentally ill. This manufactured environment, that the city is currently investigating as a "feasibility study", is nothing less than a destined crime against humanity.

        There are many environmental factors to be considered when looking at Will Rogers parking lot as a safe place for emergency shelters.  The parking lot is located along the stretch of Highway 1 with 4 lanes of traffic going in each direction.  Accidents are common at the intersection of Temescal and PCH as well as nearby Chautauqua and PCH. Most of the accidents are homeless related.  The unhoused do not want to walk the extra mile it takes to find a crosswalk, and they cause accidents while trying to cross 8 lanes of high-speed traffic. This also demonstrates that this location is not helpful to participants wanting to get off their feet and access supportive services for mental health, job training and job opportunities.  LAFD recently released reports demonstrating that a majority of fires in Southern California are homeless related.  The Pacific Palisades is nestled up along the Santa Monica Mountains in a high fire severity zone.  In the month of May over a thousand acres of land burned in two different areas of the Palisades due to homeless related incidents. Homeless related fires are sadly common in our community and increasing the number of people experiencing homelessness in our environment only increases the fire risk.

        Lastly, the current status of the laws, which protect the homeless population while simultaneously providing no effective legal recourse (due to "exemptions"
from applicable environmental laws) for residents of the Palisades to protect their families and homes, makes the concept of building emergency shelters in a small, quiet, residential neighborhood like the Pacific Palisades a disastrous proposition.

THE SONENSHEIN REPORT MAKES THE MOST SENSE

        We endorse enthusiastically the proposal set forth in the report by Raphael
J. Sonenshein, Executive Director of the Pat Brown Institute at Cal State L.A, on behalf of
the Committee for Greater L.A., to create a central agency with a strong CEO to set proper goals and implement them through coordination of the many disparate, fragmented entities currently



working on homelessness. The full report by Dr. Sonenshein, which we believe to be the most comprehensive and workable plan for homeless solutions, is found at:

https://calstatela.patbrowninstitute.org/wp-content/uploads/2021/05/PBI_LACity_Homelessness_PUBLIC.pdf.

We think that Dr. Sonenshein, who conducted a thorough study of homeless problems and solutions in cities around the world, hit the nail on the head in his report when his study revealed:

"The lack of a centering mechanism or entity has contributed to the amassing of data without coherence, the scattering of leadership, the lack of a sense of how money is shaping outcomes, and informal coordinating workarounds. Anything short of creating a new, impactful center to the system will only mean more spinning of wheels and more frustration."
(Sonenshein Report, p.24)

"Given the urgency of the situation, I recommend that the Center launch as a nonprofit organization with philanthropic support. This would also provide maximum flexibility for early design. External evaluations would assess the initial structure and provide appropriate recommendations for future organizational structures."
(*Id*, p.41).

The current "feasibility" motion by Councilman Bonin, while well-intended, is another example of wasteful governmental dissipation of available taxpayer funds needed to solve the problems in earnest. We fully endorse this court's order to implement a monitor on all budgeted homeless expenditures in order to stem the tide of taxpayers' money going straight down the drain -- with no positive effects. The Bonin proposal is doomed to failure, a mere attempt to give the appearance of working on solutions while going nowhere.

PPRA is eager to be part of the process being created by this court, seeking lasting, compassionate solutions to prevent and manage the trauma of homelessness in Los Angeles, and laws that protect the safety and well-being of all residents of Los Angeles.

Sincerely,

Jessica Rogers
Pacific Palisades Residents Association - President
Palisadesresidents.com

Cc: Steve Cron, Barbara Kohn, Sarah Conner, John Murdock