**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LA ALLIANCE FOR HUMAN RIGHTS,
an unincorporated association;
JOSEPH BURK; HARRY TASHDJIAN;
KARYN PINSKY; CHARLES MALOW;
CHARLES VAN SCOY; GEORGE FREM;
GARY WHITTER; LEANDRO SUAREZ,
        *Plaintiffs-Appellees*,

LATINO COALITION OF LOS ANGELES;
JOSUE TIGUILA,
        *Intervenor-Plaintiffs-Appellees*,

        v.

COUNTY OF LOS ANGELES, a
municipal entity,
        *Defendant-Appellant*,

        and

CITY OF LOS ANGELES, a municipal
entity,
        *Defendant.*

No. 21-55395

D.C. No.
2:20-cv-02291-
DOC-KES

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, an unincorporated association; JOSEPH BURK; HARRY TASHDJIAN; KARYN PINSKY; CHARLES MALOW; CHARLES VAN SCOY; GEORGE FREM; GARY WHITTER; LEANDRO SUAREZ, *Plaintiffs-Appellees*, | No. 21-55404 D.C. No. 2:20-cv-02291-DOC-KES |
| LATINO COALITION OF LOS ANGELES; JOSUE TIGUILA, *Intervenor-Plaintiffs-Appellees*, | |
| v. | |
| CITY OF LOS ANGELES, a municipal entity, *Defendant-Appellant*, | |
| and | |
| COUNTY OF LOS ANGELES, a municipal entity, *Defendant*. | |

LA ALLIANCE FOR HUMAN RIGHTS,
an unincorporated association;
JOSEPH BURK; HARRY TASHDJIAN;
KARYN PINSKY; CHARLES MALOW;
CHARLES VAN SCOY; GEORGE FREM;
GARY WHITTER; LEANDRO SUAREZ,
    *Plaintiffs-Appellees*,

LATINO COALITION OF LOS ANGELES;
JOSUE TIGUILA,
  *Intervenor-Plaintiffs-Appellees*,

v.

CANGRESS, DBA Los Angeles
Community Action Network (LA
CAN),
    *Intervenor-Appellant*,

COUNTY OF LOS ANGELES, a
municipal entity; CITY OF LOS
ANGELES, a municipal entity,
    *Defendants.*

No. 21-55408

D.C. No.
2:20-cv-02291-
DOC-KES

OPINION

On Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted July 7, 2021
Honolulu, Hawai'i

Filed September 23, 2021

4    LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA

Before: Jacqueline H. Nguyen, John B. Owens, and
Michelle T. Friedland, Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[*]

### Civil Rights

The panel vacated the district court's preliminary injunction order and remanded for further proceedings in an action brought by LA Alliance for Human Rights and eight individual Plaintiffs against the County and City of Los Angeles for harms stemming from the proliferation of encampments in the Skid Row area.

LA Alliance is a coalition of Los Angeles residents whose members include business and property owners, landlords, housed residents of the Skid Row area, formerly homeless residents of a Skid Row-area mission, and a real estate professional with an interest in the downtown area. Plaintiffs' complaint generally alleged that County and City policies and inaction have created a dangerous environment in the Skid Row area and that the situation is deteriorating.

After extensive negotiations failed to produce a settlement, Plaintiffs filed a Motion for Preliminary Injunction seeking a court order requiring the County and City to offer shelter to all unhoused individuals in Skid Row,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

clear all Skid Row encampments, prohibit camping there, and more.  The Motion was grounded in the legal theories alleged in the complaint, including: a claim that the County violated its mandatory duty to provide medically necessary care under California Welfare and Institutions Code section 17000 by failing to provide shelter to unhoused individuals; a claim that the County and City have facilitated public nuisance violations by failing to clear encampments; several claims that the City violated state and federal disability access laws by failing to clear sidewalks of encampments; and claims that the County and City violated Plaintiffs' constitutional rights by providing disparate services to those living and working within the Skid Row area and by enacting policies regarding Skid Row that have resulted in a state-created danger to Skid Row-area residents and businesses.

The district court issued a sweeping preliminary injunction against the County and City of Los Angeles and ordered, among other relief:  the escrow of $1 billion to address the homelessness crisis, offers of shelter or housing to all unhoused individuals in Skid Row within 180 days, and numerous audits and reports.  The district court's order was premised on its finding that structural racism—in the form of discriminatory lending, real estate covenants, redlining, freeway construction, eminent domain, exclusionary zoning, and unequal access to shelter and affordable housing—was the driving force behind Los Angeles's homelessness crisis and its disproportionate impact on the Black community.  The district court found that Plaintiffs had shown a likelihood of success on the merits of six claims: violations of due process rights under the state-created danger and special relationship doctrines; violation of equal protection on the basis of race; violation of the substantive due process rights of Black families to family integrity;  violation of California Welfare and

Institutions Code section 17000; and violation of the
Americans with Disabilities Act ("ADA").

The panel held that, as the claims were articulated by the
district court, Plaintiffs lacked standing on all but their ADA
claim.  The panel stated that none of Plaintiffs' claims were
based on racial discrimination and the district court's order
was largely based on unpled claims and theories.   The
district court therefore abused its discretion because it only
had equitable power to grant relief on the merits of the case
or controversy before it and did not have the authority to
issue an injunction based on claims not pled in the
complaint.  Moreover, because plaintiffs did not bring most
of the claims upon which relief was granted, they failed to
put forth evidence to establish standing.  To fill the gap, the
district court impermissibly resorted to independent research
and extra-record evidence.  The panel noted that the district
court had cited material not subject to judicial notice and
relied on facts contained in various publications that were
subject to reasonable dispute.  To the extent the district court
premised the injunctive relief on improperly noticed facts
necessary to confer standing, the district court abused its
discretion.

Turning to the six claims upon which relief was granted,
the panel noted that Plaintiffs brought no race-based claims,
and they did not allege or present any evidence that any
individual Plaintiff or LA Alliance member was Black—
much less Black and unhoused, a parent, or at risk of losing
their children.  Nor had plaintiffs alleged or argued that there
was a special relationship between the City and unhoused
residents of Skid Row or that they experienced restraints of
personal liberty sufficient to create an affirmative duty for
the City to protect their rights.   The panel concluded that
Plaintiffs had not made a clear showing that any individual

LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA   7

Plaintiff had standing for the race-based claims, including the substantive due process, equal protection, and state-created danger claims. With respect to the section 17000 claim, plaintiffs lacked standing because they failed to allege that an individual Plaintiff was deprived of medically necessary care or general assistance.

The panel held that the two individual Plaintiffs who require wheelchairs for daily activities and cannot traverse sidewalks within Skid Row because of homeless encampments had standing to bring ADA claims against the City. Their claim failed, however, because they had not shown a likelihood of success at this stage; Plaintiffs did not offer sufficient evidence that they were denied the benefits of the City's sidewalks or were otherwise discriminated against by the City and that such denial of benefits or discrimination was by reason of their disabilities. Moreover, the district court abused its discretion by relying on extra-record evidence to find success on the merits and by ordering overly broad relief.

The panel rejected the argument that LA Alliance had associational standing to seek relief under all the claims upon which the injunction was based. The panel held that, like the individual Plaintiffs, no other member of LA Alliance had alleged injuries sufficient for standing to bring the substantive due process, state-created danger, special relationship, equal protection, or section 17000 claims upon which relief was granted.

## COUNSEL

Mira Hashmall (argued), Louis R. Miller, and Emily A. Rodriguez-Sanchirico, Miller Barondess LLP, Los Angeles, California; Rodrigo A. Castro-Silva, Lauren M. Black and Amie S. Park, Office of County Counsel, Los Angeles, California; for Defendant-Appellant County of Los Angeles.

Michael M. Walsh (argued), Deputy City Attorney; Blithe S. Bock, Assistant City Attorney; Scott Marcus, Senior Assistant City Attorney; Kathleen A. Kenealy, Chief Deputy City Attorney; Michael N. Feuer, City Attorney; Office of the City Attorney, Los Angeles, California; for Defendant-Appellant City of Los Angeles.

Shayla R. Myers (argued), Legal Aid Foundation of Los Angeles, Los Angeles, California; Carol A. Sobel and Weston C. Rowland, Law Office of Carol Sobel, Santa Monica, California; Paul L. Hoffman and Catherine E. Sweetser, Schonbrun Seplow Harris Hoffman & Zeldes LLP, Culver City, California; for Intervenor-Appellant.

Matthew Donald Umhofer (argued) and Elizabeth A. Mitchell, Spertus Landes & Umhofer LLP, Los Angeles, California, for Plaintiffs-Appellees.

Judy M. Lam, Maynard Cooper & Gale LLP, Los Angeles, California; John C. Neiman Jr. and Calbe C. Wolanek, Maynard Cooper & Gale P.C., Birmingham, Alabama; for Amici Curiae International Municipal Lawyers Association, California State Association of Counties, League of Oregon Cities, Association of Washington Cities, Washington State Association of Municipal Attorneys, and Association of Idaho Cities.

George F. Schaefer, Assistant City Attorney; Elizabeth L. Atkins, Deputy City Attorney; Office of the City Attorney, San Diego, California; for Amicus Curiae League of California Cities.

Faizah Malik, Public Counsel, Los Angeles, California; Benjamin B. Au, Allyson R. Bennett, Durie Tangri LLP, Los Angeles, California; for Amici Curiae SCANPH, CSH, and Non Profit Affordable Housing Developers.

Akeeb Dami Animashaun, New York, New York, for Amicus Curiae Women in Skid Row.

Stephen J. Kaufman and George M. Yin, Kaufman Legal Group APC, Los Angeles, California, for Amicus Curiae United Way of Greater Los Angeles.

Timothy T. Coates and Nadia A. Sarkis, Greines Martin Stein & Richland LLP, Los Angeles, California, for Amicus Curiae Los Angeles Homeless Services Authority.

Jonathan A. Ruybalid, Schmitt Schneck Even & Williams, Phoenix, Arizona; Robert Henneke, Texas Public Policy Foundation, Austin, Texas; for Amici Curiae Citygate Network and Texas Public Policy Foundation.

John K. Ly and Jason L. Liang, Liang Ly LLP, Los Angeles, California, for Amicus Curiae Hope Street Coalition.

## OPINION

NGUYEN, Circuit Judge:

Nearly one in four unhoused people in this country live in Los Angeles County, and the crisis is worsening.  In 2020, over 66,000 individuals were unhoused in the County, a 13% increase over the previous year.  Perhaps nowhere is the emergency more apparent than on Los Angeles's Skid Row, which encompasses more than 50 blocks of downtown.  Skid Row has become symbolic of the City's homelessness crisis due to its history as an area with a high concentration of unhoused individuals, its extreme density of tent encampments on public sidewalks, and its frequent incidents of violence and disease.  In Skid Row and elsewhere in the County, the conditions of street living, lack of sufficient services, and lack of pathways to permanent housing have had a devastating impact on the health and safety of unhoused Angelenos and the communities in which they live.  These conditions, and local governments' approach to the issue, have repeatedly been the subject of litigation.

Plaintiff LA Alliance for Human Rights and eight individual plaintiffs sued the County and City of Los Angeles for harms stemming from the proliferation of encampments in the Skid Row area.  They allege that County and City policies and inaction have created a dangerous environment in Skid Row, to the detriment of local businesses and residents.  The litigation was stayed for nearly a year while the district court devoted an extraordinary amount of time and effort to understanding the parties' positions and encouraging settlement.  After extensive negotiations failed to produce a settlement, the district court issued a sweeping preliminary injunction against the County and City of Los Angeles and ordered, among other relief: the escrow of $1 billion to address the

homelessness crisis, offers of shelter or housing to all unhoused individuals in Skid Row within 180 days, and numerous audits and reports.

The district court's order is premised on its finding that structural racism—in the form of discriminatory lending, real estate covenants, redlining, freeway construction, eminent domain, exclusionary zoning, and unequal access to shelter and affordable housing—is the driving force behind Los Angeles's homelessness crisis and its disproportionate impact on the Black community. Faulting the County and City for being "unable or unwilling to devise effective solutions to L.A.'s homelessness crisis," the district court determined it was compelled to act because the "ever-worsening public health and safety emergency demands immediate, life-saving action."

The parties take no issue with the district court's conclusion that structural racism has played a significant role in the current homelessness crisis in the Los Angeles area. But none of Plaintiffs' claims is based on racial discrimination, and the district court's order is largely based on unpled claims and theories. On appeal, Plaintiffs embrace the entirety of the district court's order, but because they did not bring most of the claims upon which relief was granted, they failed to put forth evidence to establish standing. To fill the gap, the district court impermissibly resorted to independent research and extra-record evidence. For these reasons, we vacate the preliminary injunction and remand for further proceedings.

I

A

LA Alliance is a coalition of Los Angeles residents. Members include business and property owners, landlords, housed residents of the Skid Row area, formerly homeless residents of a Skid Row-area mission, and a real estate professional with an interest in the downtown area.  Six of the nine individuals alleged to be representative of LA Alliance's membership own property or have business or organizational interests in and around homeless encampments.  Five of the eight LA Alliance members who are individual Plaintiffs, including two who use wheelchairs, live in or near Skid Row.

In 2019, LA Alliance unsuccessfully attempted to intervene in and object to the settlement of *Mitchell v. City of Los Angeles*, No. 2:16-cv-01750 (C.D. Cal. filed Mar. 14, 2016).  The *Mitchell* settlement, which applies for three years to certain blocks in the Skid Row area, limits the City's ability to clear or destroy the property of unhoused people and requires notice of any cleanups.  However, it allows the City to move property without notice to permit access required by the Americans with Disabilities Act ("ADA").[1]

Denied intervenor status in *Mitchell*, LA Alliance and eight of its individual members filed this suit against the County and City on March 10, 2020.  On March 17 and 18,

---

[1] LA Alliance contends that the *Mitchell* settlement "has led to a sharp decline in health and safety."  LA Alliance also takes issue with our holding in *Martin v. City of Boise* that municipalities cannot "prosecut[e] people criminally for sleeping outside on public property when those people have no home or other shelter to go to."  920 F.3d 584, 603 (9th Cir. 2019).

LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA   13

2020, the district court granted some of the *Mitchell*
plaintiffs' applications to intervene as of right to protect their
interest in the *Mitchell* settlement.  One of those intervenors,
Cangress, dba Los Angeles Community Action Network
("Cangress"), is also a party to this appeal.

B

The Complaint asserts fourteen causes of action under
state and federal law.  In general, the Complaint alleges that
County and City policies and inaction have created a
dangerous environment in the Skid Row area and that the
situation is only deteriorating.  Specifically, Plaintiffs allege
that the County and City's failures to curb rising
homelessness, combined with various settlements and court
orders protecting the rights of homeless individuals, have
resulted in violent crime, the deterioration of public order,
unsanitary conditions, needless death, the usurpation of
public sidewalks, and damage to the natural environment.
Plaintiffs also allege that this crisis has negatively affected
property values in downtown and Skid Row, harming
Plaintiffs' ability to sell, rent, and operate their properties.
Various Plaintiffs also allege that they cannot safely traverse
Skid Row sidewalks, have experienced property damage due
to the proliferation of encampments, and are exposed to
violence and human suffering daily.

C

For over a year, the district court and the parties,
including Intervenor Cangress, engaged in almost a dozen
settlement and status conferences.  At various times the
district court heard from non-party community members
(housed and unhoused), clergy, City Council members,
County Commissioners, the Mayor of Los Angeles, and
representatives from state and federal agencies.  The district

court devoted an extraordinary amount of effort toward understanding and encouraging the parties to implement solutions that would improve the lives of unhoused Angelenos.

With no settlement forthcoming, on January 31, 2021, the district court issued an "order to appear and show cause." The order sought inventories of County and City properties, financial disclosures, and briefing on the "outer limit of the Court's structural equitable remedy power" and "all equitable remedies available to the Court that would require the City . . . to take action to provide relief to the homeless community."

Plaintiffs responded by filing a Motion for Preliminary Injunction seeking a court order that required the County and City to offer shelter to all unhoused individuals in Skid Row, clear all Skid Row encampments, prohibit camping there, and more.  The Motion was grounded in the legal theories alleged in the Complaint and based on eight of Plaintiffs' fourteen claims, including: a claim that the County violated its mandatory duty to provide medically necessary care under California Welfare and Institutions Code section 17000 by failing to provide shelter to unhoused individuals; a claim that the County and City have facilitated public nuisance violations by failing to clear encampments; several claims that the City violated state and federal disability access laws by failing to clear sidewalks of encampments; and claims that the County and City violated Plaintiffs' constitutional rights by providing disparate services to those living and working within the Skid Row area and by enacting policies regarding Skid Row that have resulted in a state-created danger to Skid Row-area residents and businesses.

Although none of these claims alleged racial discrimination, Plaintiffs' Motion included a short section

LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA   15

highlighting statements made at status conferences and a
report acknowledging the impact systemic racism has had on
homelessness.  During status conferences, the district court
had engaged in numerous colloquies regarding the
disproportionate number of unhoused Black and Latino
Angelenos and had expressed interest in the relationship
between systemic racism and homelessness.

D

Shortly after the County and City filed their oppositions
to Plaintiffs' Motion, the district court issued an order
granting a preliminary injunction ("Order").  The Order
detailed, over sixty-three single-spaced pages, the County
and City's "historical constitutional violations" stemming
from structural racism.  Beginning with Los Angeles's
approach to poor residents living in unpermitted wooden
structures during the first half of the twentieth century, the
district court described the impact of the "racially segmented
economy" during the Great Depression, the rise of "state-
enforced racially-restrictive [real estate] covenants," and the
segregated homelessness-services systems of the 1920s and
1930s.  Drawing from academic and media sources, the
district court explained this country's history of redlining,
which created a "cycle of disinvestment" and "a lasting
[racial] wealth gap."  The district court explored the impact
and history of "Los Angeles's 'urban renewal'" efforts,
including the use of eminent domain and highway
construction to "displac[e] Black families on a large scale."

The district court then found that the City's 1976
adoption of a Containment Policy was aimed at
"'contain[ing]' homeless people" within a 55-block zone "to
maintain the pristineness of the business district."  The court
found that this policy "demarcate[d] Skid Row as a
concentration for rehabilitation services," facilitating an

"ensuing cycle of incarceration and homelessness—
disproportionately targeting Black communities."

The district court recounted shortcomings of affordable
housing efforts in and around Los Angeles, and the disparate
impact of COVID-19 on Black renters.  It criticized the
City's leaders for failing to effectively use their emergency
powers and blasted corruption and misappropriation of
taxpayer-allocated funds, missed deadlines, and the lack of
a plan to solve the crisis.  The district court compellingly
described the ill effects of the growing crisis: fires; rising
deaths of unhoused Angelenos; unhoused Angelenos living
near pollution-heavy roadways; unaddressed mental health
disorders, particularly among unhoused Angelenos of color;
and the spread of uncommon diseases due to lack of
sanitation.  Finally, the district court highlighted the "unique
impact that homelessness has on women," noting that
"women of color" are significantly overrepresented in the
homeless population and in the population of those who die
on the streets.

Based on these extensive findings, the district court
found a likelihood of success on the merits of six claims
against both the County and City:

> 1) Violation of due process rights under the
>    state-created danger doctrine, based on
>    actions that created danger to the "Black
>    community" by "creat[ing] or
>    worsen[ing] the discriminatory
>    homelessness regime that plagues Los
>    Angeles today," as well as actions that
>    created a danger to those living in
>    encampments, most notably a high rate of
>    preventable deaths.

LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA  17

2) Violation of due process rights under the special relationship doctrine based on the County and City's "lengthy history of discriminatory policies, . . . [which] restrain[] the personal liberty of L.A.'s homeless population to such an extent as to trigger the state's affirmative duty to act."

3) Violation of equal protection on the basis of race. The court found that the disproportionate death rates of Black people compared to "their white counterparts . . . can be directly traced to a history of structural racism and discrimination."

4) Violation of the substantive due process right of Black families to family integrity, caused by "decades of systemic racism" and "City and County policies enacted against Black communities."

5) Violation of California Welfare and Institutions Code section 17000, which imposes a mandatory duty of care on the County. The court expanded section 17000's application to the City.

6) Violation of the ADA by both the County and City.

Of these six claims, Plaintiffs had not asserted or moved for injunctive relief on the first four and had asserted the fifth against only the County and the sixth against only the City. The district court's explanation for why these claims had a

likelihood of success on the merits also relied on legal
theories that Plaintiffs did not plead or argue, including the
race-based discrimination theories underpinning the state-
created danger, equal protection, and substantive due
process claims.  In addition, the district court relied almost
exclusively on extra-record evidence, and expressly did not
rely on Plaintiffs' preliminary injunction evidence.

The district court ordered extensive relief.[2]  The Order
requires numerous independent audits, investigations, and
reports related to the County and City's funds, properties,
and contractual relationships with developers; the cessation
of land and property transfers County- and City-wide; offers
of shelter to all unhoused individuals on Skid Row within
180 days; the creation of a "plan that ensures the uplifting
and enhancement of Skid Row without involuntarily
displacing current residents;" and the escrow of $1 billion to
address homelessness.

E

On April 28 and 29, 2021, the County and City filed
emergency motions with this court to stay the preliminary
injunction pending appeal.  A motions panel granted an

---

[2] The Order tracks some of the relief requested by Plaintiffs but
differs in key respects.  For example, Plaintiffs did not request that any
funds be escrowed but sought to have all homeless individuals within
Skid Row offered shelter in 90 days.  The difference between Plaintiffs'
request and the ordered relief is not in itself problematic.  *See Kirola v.
City & County of San Francisco*, 860 F.3d 1164, 1176 (9th Cir. 2017)
("The district court is not bound by [movant's] proposal, and may enter
any injunction it deems appropriate, so long as the injunction is 'no more
burdensome to the defendant than necessary to provide complete relief
to the plaintiffs.'" (quoting *United States v. AMC Ent., Inc.*, 549 F.3d
760, 775 (9th Cir. 2008))).

administrative stay to preserve the status quo pending a May 27, 2021 hearing in the district court, which the district court scheduled to "receive evidence as to what properties are available for homelessness relief" and "receive testimony from the City and County" on its structural racism findings.[3] On June 10, 2021, we extended the administrative stay pending further order of the court.

## II

We may reverse the district court's grant of a preliminary injunction "only where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Does 1–5 v. Chandler*, 83 F.3d 1150, 1152 (9th Cir. 1996). We review de novo issues of law underlying the preliminary injunction, including questions of jurisdiction over Plaintiffs' claims. *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1138 (9th Cir. 2013); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1234 (9th Cir. 1999).

To warrant injunctive relief, Plaintiffs must establish that they are "likely to succeed on the merits," that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Because Plaintiffs seek a mandatory injunction, they "must establish that the law and facts *clearly favor* [their] position, not

---

[3] Plaintiffs request that we take judicial notice of a variety of documents filed with the district court concerning the May 27, 2021 hearing, including letters from various non-parties and the transcript of the hearing. We grant the motion.

20   LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA

simply that [they are] likely to succeed." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc).

Standing is a threshold matter of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). We must assure ourselves that Plaintiffs have standing and that jurisdiction otherwise exists before we review the merits of the district court's preliminary injunction decision, whether or not the issue was raised below. *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1405 (9th Cir. 1991).

To have standing, Plaintiffs must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). At the preliminary injunction stage, the plaintiffs "must make a clear showing of each element of standing," *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (per curiam) (quoting *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013)), relying on the allegations in their complaint "and whatever other evidence they submitted in support of their [preliminary-injunction] motion to meet their burden." *City & County of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) (alteration in original) (quoting *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (per curiam)). The plaintiffs "must demonstrate standing separately for each form of relief sought," *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000), and the "remedy must be tailored to redress [their] particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018).

III

The district court found that Plaintiffs have shown a likelihood of success on the merits of six claims. We conclude that, as the claims were articulated by the district court, Plaintiffs lack standing on all but one claim. Plaintiffs cannot prevail on that claim, however, without further development of the factual record and tailoring of the relief to Plaintiffs' injuries.

A

As we discussed, the district court granted relief based on claims that Plaintiffs did not allege, supported by novel legal theories that Plaintiffs did not argue, or against Defendants against whom the claim was not pled. In doing so, the district court abused its discretion because it only had equitable power to grant relief on "the merits of the case or controversy before it," and "does not have the authority to issue an injunction" "based on claims not pled in the complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015).

The mismatch between the six claims underlying the Order and Plaintiffs' own claims explains a second overarching problem: the district court's almost exclusive reliance on extra-record evidence. Although our review of the district court's factual findings is deferential, the district court abuses its discretion if its conclusions are "without support in inferences that may be drawn from the facts in the record." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (quoting *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012) (per curiam)). Plaintiffs submitted some preliminary injunction evidence, but the County objected to most of it and the district court expressly did not rely on any of the objected-to evidence. Instead, the

district court relied on its own independent research and cited material not subject to judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (courts may not "[take] judicial notice of the truth of disputed factual matters"); *accord* Fed. R. Evid. 201. The district court relied on hundreds of facts contained in various publications for their truth,[4] and a significant number of facts directly underlying the injunctive relief are subject to reasonable dispute. For instance, experts extensively debate the history, purpose, and effect of the Containment Policy, which the district court found resulted in the "incarceration and homelessness" of Black Angelenos. To the extent the district court premised the injunctive relief on improperly noticed facts necessary to confer standing, the district court abused its discretion. *Cf. Lee*, 250 F.3d at 690 (holding that the district court erred in granting a motion to dismiss "by relying on extrinsic evidence and by taking judicial notice of disputed matters of fact to support its ruling").

B

We now turn to Plaintiffs' standing to bring the six claims upon which relief was granted.[5] To begin with, because Plaintiffs brought no race-based claims, they did not allege or present any evidence that any individual Plaintiff or LA Alliance member is Black—much less Black and

---

[4] Only 22 of the 411 footnotes supporting the district court's factual findings included a citation to the record.

[5] We do not address whether Plaintiffs have standing to bring any claims that they asserted but the district court did not address.

LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA  23

unhoused, a parent,[6] or at risk of losing their children.  Thus, Plaintiffs have not made a clear showing that any individual Plaintiff has standing for the race-based claims, including the substantive due process, equal protection, and state-created danger claims.

Plaintiffs also have not clearly shown that any individual Plaintiff has standing to bring the state-created danger claim that the district court fashioned.  The district court grounded its state-created danger claim in a risk of premature death of those living in encampments.  Only Plaintiff Whitter may have suffered a relevant injury-in-fact because he has been chronically unhoused and is merely temporarily sheltered at a Skid Row mission.  However, neither Plaintiffs nor the district court have explained how the relief ordered would help Whitter.  For example, the Order requires that the County and City offer "shelter or housing" to unhoused individuals in Skid Row within 180 days, but Whitter is already in a shelter and nothing in the record suggests he will lose his shelter in time to receive an offer.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (observing it must be likely, not merely speculative, that the injury will be redressed by a favorable decision).  Thus, Plaintiffs have not made the required "clear showing" that any individual Plaintiff has standing to bring the district court's version of the state-created danger claim.  *Yazzie*, 977 F.3d at 966.

---

[6] Plaintiffs submitted declarations from parents who are business owners and one housed individual who lives in an unspecified area of downtown, but none state the declarant's race or recount any risk of separation from their children or loss of housing.  Plaintiffs did not bring any race- or family-based claims, so they had no reason to discuss these identifiers.

24  LA ALLIANCE FOR HUMAN RIGHTS v. COUNTY OF LA

Similarly, Plaintiffs did not allege or argue that there is a special relationship between the City and unhoused residents of Skid Row, or that any individual Plaintiff experiences "restraints of personal liberty" sufficient to create an affirmative duty for the City to act to protect their rights. Plaintiffs have therefore not clearly shown that they themselves were injured by any failure to protect anyone with whom the City does have a special relationship. Such allegations would be required for Plaintiffs to have standing under *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 198–202 (1989).

With respect to the section 17000 claim, Plaintiffs have not shown that any individual Plaintiff has standing to bring this claim because Plaintiffs nowhere allege that an individual Plaintiff was deprived of medically necessary care or general assistance, even under Plaintiffs' and the district court's theory that shelter may be required care under the statute. Plaintiffs have therefore not asserted that they themselves were injured by any failure to comply with section 17000's requirement to provide for support when an indigent person is "not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." As a result, Plaintiffs lack standing for this claim—and because they asserted this claim only against the County, the district court did not have authority to grant relief against the City, anyway. *See Pac. Radiation*, 810 F.3d at 633.

By contrast, two individual Plaintiffs have standing to bring the ADA claim against the City.[7]   The record

---

[7] The district court did not have authority to grant relief against the County under the ADA claim, because Plaintiffs only asserted the claim against the City. *Pac. Radiation*, 810 F.3d at 633.

demonstrates that Charles Van Scoy and Leandro Suarez
require wheelchairs for their daily activities, *see* 42 U.S.C.
§ 12102(1)(A) (defining disability to include "a physical . . .
impairment that substantially limits one or more major life
activities"), and cannot traverse sidewalks within Skid Row
because of homeless encampments.  This injury is traceable
to the City, because Skid Row area sidewalks are a service,
program, or activity of the City within the meaning of Title
II of the ADA.  *See* 42 U.S.C. § 12132; *Barden v. City of
Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002).  To the
extent the City is liable for the obstructions, clearing the
sidewalks is also likely to redress Van Scoy and Suarez's
injuries.

C

Plaintiffs argue that LA Alliance has associational
standing to seek relief under all the claims upon which the
injunction is based.  Associational standing exists if "[the
organization's] members would otherwise have standing to
sue in their own right, the interests at stake are germane to
the organization's purpose, and neither the claim asserted
nor the relief requested requires the participation of
individual members in the lawsuit."  *Laidlaw*, 528 U.S. at
181.  Because only a single plaintiff with standing is needed
to assert a claim, we need only consider whether LA
Alliance has standing to assert the claims for which the
individual Plaintiffs lack standing.  *See Nat'l Ass'n of
Optometrists & Opticians LensCrafters, Inc. v. Brown*,
567 F.3d 521, 523 (9th Cir. 2009).

Like the individual Plaintiffs, no other member of LA
Alliance has alleged injuries sufficient for standing to bring
the substantive due process, state-created danger, special
relationship, equal protection, or section 17000 claims upon
which relief was granted.  *See Summers v. Earth Island Inst.*,

26   LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA

555 U.S. 488, 499 (2009) (explaining that to establish a member's injury for associational standing, an organization must submit "individual affidavits" from "members who have suffered the requisite harm"). Plaintiffs allege that LA Alliance consists of "a broad coalition of Los Angeles stakeholders . . . working towards solutions to address the [homelessness] crisis." There is no evidence that LA Alliance's non-Plaintiff members—including those described in supplemental affidavits filed with Plaintiff's Motion—are Black,[8] risk disruption of their family integrity, have a special relationship with the City, are confined to Skid Row, or were deprived of the type of assistance required by section 17000. Plaintiffs' supplemental declarations included some from unhoused members, but none state that these members were members at the time of filing.[9] At oral argument, Plaintiffs' counsel acknowledged this gap in the supplemented record. Because LA Alliance has not shown that its members would otherwise have standing to sue in their own right, it lacks associational

---

[8] On appeal, Plaintiffs assert that LA Alliance has Black members, but none of the listed members identify themselves as Black (or anything else).

[9] The fact that LA Alliance may have broadened its membership after filing this action to include currently unhoused individuals—even ones who were unhoused at the time of the Complaint—does not factor into the standing calculus. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1381 (9th Cir. 1988) ("[W]e must examine the . . . original complaint to determine whether . . . the district court had jurisdiction. If [not], then the court's various orders, including that granting leave to amend the complaint, were nullities."). Declarations can remedy "defective *allegations*" of jurisdiction but "[do] not provide a remedy for defective jurisdiction itself." *Id.* at 1380 n.3 (quoting *Field v. Volkswagenwerk AG*, 626 F.2d 293, 306 (3d Cir. 1980)).

standing for these five claims, and we need not reach the
other elements of the associational standing test.

## D

Finally, we consider the merits of Plaintiffs' ADA claim
against the City. Although this claim survives our
jurisdictional analysis, it suffers from other flaws. The ADA
claim fails on the first *Winter* factor, because Plaintiffs have
not shown a likelihood of success at this stage. 555 U.S. at
20. And the district court abused its discretion by relying on
extra-record evidence to find success on the merits and by
ordering overly broad relief.

Plaintiffs failed to "establish that the law and facts
*clearly favor* [their] position." *Garcia*, 786 F.3d at 740.
Plaintiffs had to show that Van Scoy and Suarez were denied
the benefits of the City's sidewalks or were otherwise
discriminated against by the City and that such denial of
benefits or discrimination was by reason of their disabilities.
*Weinreich v. L.A. Cnty. Metro. Transp. Auth.*, 114 F.3d 976,
978 (9th Cir. 1997); *see also* 42 U.S.C. § 12132. Public
sidewalk and architectural obstruction ADA claims are fact-
intensive claims with specific requirements and evidentiary
burdens. *See, e.g.*, *Kirola v. City & County of San
Francisco*, 860 F.3d 1164, 1183 (9th Cir. 2017) (discussing
evidentiary burden of demonstrating sidewalk
"inaccessibility at a programmatic level"); *Chapman v.
Pier 1 Imports (U.S.) Inc.*, 779 F.3d 1001, 1008, 1010
(9th Cir. 2015) (observing that movable or temporary
obstructions are typically not architectural barriers, although
frequent barriers "must be viewed systemically"). But
Plaintiffs' allegations centered on the fact that blocked
sidewalks "[p]ut [e]veryone at [r]isk," and they did not offer
sufficient evidence to make the required showing for Van
Scoy and Suarez to succeed on this claim at this stage.

Plaintiffs also failed to suggest a specific, reasonable accommodation.  Instead, they seek the wholesale clearing of 50-plus blocks followed by criminal enforcement of anti-camping and related ordinances.  This may be significantly broader remedy than required for Van Scoy and Suarez to safely navigate sidewalks to complete daily activities.  *See Pac. Radiation*, 810 F.3d at 636 (holding that the plaintiff must "establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint" (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam))).

Adopting Plaintiffs' approach, the district court found a likelihood of success on the merits of the ADA claim due to the "[h]undreds of city sidewalks, not only in Skid Row but across the City and County of Los Angeles, [that] fail to meet the minimum requirements of the ADA due to the creation of homeless encampments."  But the Order failed to explain how the record supports Van Scoy and Suarez's claim in particular, or how the relief ordered (*e.g.*, offering every person in Skid Row shelter within 180 days) is tailored to their injuries (*e.g.*, encountering blocked sidewalks while running errands).  The district court failed to analyze Van Scoy and Suarez's injuries or the requirements of their ADA claim and abused its discretion by finding a likelihood of success on the merits.  The ADA claim is therefore unable to support the sweeping relief ordered in the preliminary injunction.  *Disney Enters., Inc.*, 869 F.3d at 856.

IV

The district court undoubtedly has broad equitable power to remedy legal violations that have contributed to the complex problem of homelessness in Los Angeles.  But that power must be exercised consistent with its discretionary authority and Article III.  Because the district court did not

LA ALLIANCE FOR HUMAN RIGHTS V. COUNTY OF LA  29

do so, we VACATE the preliminary injunction order and
REMAND for proceedings consistent with this opinion.

**VACATED and REMANDED.**