MICHAEL N. FEUER, City Attorney (SBN 111529)
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
ARLENE N. HOANG, Deputy City Attorney (SBN 193395)
JESSICA MARIANI, Deputy City Attorney (SBN 280748)
RYAN SALSIG, Deputy City Attorney (SBN 250830)
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone: 213-978-7508
Facsimile: 213-978-7011
Email:  Arlene.Hoang@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | Case No. CV 20-02291 DOC (KES)<br><br>**DEFENDANT CITY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT [ECF 361] [FRCP 8, 12(b)(1) and 12(b)(6)]**<br><br>Date:  January 24, 2022<br>Time:  8:30 a.m.<br>Courtroom:  9D<br><br>**Hon. David O. Carter**<br>**United States District Judge** |

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................1

II.     SUMMARY OF PLAINTIFFS' NEW ALLEGATIONS ..........................1

III.    MOTION TO DISMISS STANDARDS .................................................3

IV.     DISMISSAL PURSUANT TO RULE 12(b)(1) IS APPROPRIATE .....................3

        A. Plaintiffs have not met their burden to establish standing. ...........3

        B. The FASC violates separation of powers and federalism principles ..............6

V.      PLAINTIFFS FAIL TO STATE ANY VIABLE CLAIMS...................................7

        A. Plaintiffs' Section 1983 claims for relief are not viable................7

               1.   The FASC Fails To Allege Equal Protection Claims. ...........8

               2.   Plaintiffs' Other Due Process Claim Fails................11

                    a) The State Created Danger Doctrine Does Not Apply ........11

                    b) The Special Relationship Doctrine Does Not Apply ........13

               3.   Plaintiffs have not alleged a taking under federal or state law..............14

               4.   Plaintiffs' *Monell* (Thirteenth) claim cannot be established ..................16

        B. Plaintiffs' Federal Disability-Related Claims Fail ..........................16

               1.   Plaintiffs still fail to sufficiently allege discrimination by reason of their disabilities ..................17

               2.   The temporary obstructions about which Plaintiffs complain do not constitute violations of the disability access laws ................17

               3.   The City's sidewalks are accessible when viewed in their entirety .......18

        C. Plaintiffs' California Disabled Persons Act Claim Fails..............19

VI.     PLAINTIFFS' OTHER STATE LAW CLAIMS SHOULD BE DISMISSED......19

        A. The Court should decline to assert supplemental jurisdiction over Plaintiffs' other state law claims ................19

        B. Plaintiffs have not alleged a claim for common law negligence...................20

               1.   The City cannot be negligent for failing to clean up homeless encampments in all unidentified public spaces ...................21

i

    2. Plaintiffs cannot ask this Court to tell the City how and when to enforce laws or spend its funds ..................................................................................21

C. Plaintiffs fail to state a public or private nuisance claim ...............................21

    1. Plaintiffs' nuisance claims are barred by discretionary immunity and separation of powers ........................................................................22

    2. Plaintiffs cannot allege the requisite nuisance elements ........................22

    3. Plaintiffs have not stated a public nuisance claim where no harm was specially injurious to them..................................................................23

D. Plaintiffs' Claim for Violation of Section 526a Fails....................................24

VII. CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbot v. Perez,*
   585 U.S. __, 138 S.Ct. 2305 (2018)...............................................................8

*Air Pegasus v. United States,*
   424 F.3d 1206 (Fed. Cir. 2005) ...................................................................15

*Albright v. Oliver,*
   510 U.S. 266 (1994)......................................................................................7

*Allen v. Wright,*
   468 U.S. 737 (1984)......................................................................................6

*ASARCO, Inc. v. Kadish,*
   490 U.S. 605 (1989)......................................................................................6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2008)......................................................................................3

*Barbian v. Panagis,*
   694 F.2d 476 (7th Cir. 1982) ......................................................................16

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)......................................................................................3

*Blackwell v. City & Cty. of San Francisco,*
   506 Fed. Appx. 585 (9th Cir. 2013)............................................................18

*Bottini v. City of San Diego,*
   27 Cal. App. 5th 281 (2018) .......................................................................14

*Brass v. Cnty. of Los Angeles,*
   328 F.3d 1192 (9th Cir. 2003) ....................................................................16

*Campbell v. State Dep't of Soc. & Health Servs.,*
   671 F.3d 837 (9th Cir. 2011) .................................................................13, 14

*Cantrell v. City of Long Beach,*
   241 F.3d 674 (9th Cir. 2001) ......................................................................24

*Carter v. City of Los Angeles*,
    224 Cal. App. 4th 808 (2014) ...................................................................................19

*Casa De Cambio Comdiv S.A. de C.V. v. United States*,
    48 Fed. Cl. 137 (Fed. Cl. 2000) ...............................................................................14

*Citizens for Odor Nuisance Abatement v. City of San Diego*,
    8 Cal. App. 5th 350 (2017) ................................................................................22, 23

*City of Stockton v. Superior Court*,
    212 Cal.4th 730 (2007) .............................................................................................20

*Cobine v. City of Eureka*,
    250 F. Supp. 3d 423 (N.D. Cal. 2017)......................................................................11

*Contreras v. Anderson*,
    59 Cal. App. 4th 188 (1997) .....................................................................................21

*County of Santa Clara v. Superior Court*,
    50 Cal.4th 35 (2010) .................................................................................................24

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)....................................................................................................3

*Dunn v. City of Los Angeles*,
    2017 U.S. Dist. LEXIS 220742 (C.D. Cal. Apr. 26, 2017) ......................................19

*El Escorial Owners' Assn. v. DLC Plastering, Inc.*,
    154 Cal. App. 4th 1337 (2007) .................................................................................22

*Engquist v. Oregon Dep't of Agric.*,
    478 F.3d 985 (9th Cir. 2007) ....................................................................................15

*Equity Lifestyle Props., Inc. v. County of San Luis Obispo*,
    548 F.3d 1184 (9th Cir. 2007) ....................................................................................3

*In re Firearm Cases*,
    126 Cal. App. 4th 959 (2005) ...................................................................................23

*Fox v. County of Fresno*,
    170 Cal. App. 3d 1238 (1985) ..................................................................................20

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

*Friends of H St. v. City of Sacramento*,
  20 Cal. App. 4th 152 (1993) ...................................................................................22

*Gallinger v. Becerra*,
  898 F.3d 1012 (9th Cir. 2018) ............................................................................9, 10

*Hernandez v. City of San Jose*,
  897 F.3d 1125 (9th Cir. 2018) ...........................................................................12, 13

*Herzberg v. County of Plumas*,
  133 Cal. App. 4th 1 (2005) .....................................................................................25

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013) ..................................................................................................5

*Horne v. Flores*,
  557 U.S. 433 (2009) ..................................................................................................7

*HSH, Inc. v. City of El Cajon*,
  44 F.Supp.3d 996 (S.D. Cal. 2014) ..........................................................................9

*Humane Soc'y of the United States v. State Bd. of Equalization*,
  152 Cal. App. 4th 349 (2007) .................................................................................25

*Johnson v. City of Seattle*,
  474 F.3d 634 (9th Cir. 2007) ..................................................................................13

*Jones v. City of L.A.*,
  444 F.3d 1118 (9th Cir. 2006) ..............................................................................6, 7

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) ..................................................................................4

*Kokkonen v. Guardian Life Ins. Co. of America*,
  511 U.S. 375 (1994) ..................................................................................................3

*Koll-Irvine Ctr. Prop. Owners Ass'n v. Cty. of Orange*,
  24 Cal. App. 4th 1036 (1994) .................................................................................24

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) ..................................................................................10

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

*Leer v. Murphy*,
844 F.2d 628 (9th Cir. 1988) ................................................................................................7

*Lewis v. Casey*,
518 U.S. 343 (1996) .............................................................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) .............................................................................................................5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................................................4

*Lyons v. Santa Barbara Cty. Sheriff's Office*,
231 Cal. App. 4th 1499 (2014) ...........................................................................................25

*M.S. v. Brown*,
902 F.3d 1076 (9th Cir. 2018) .............................................................................................4

*Mattson v. City of L.A.*,
2008 U.S. Dist. LEXIS 129931 (C.D. Cal. Dec. 23, 2008) ................................................8

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .............................................................................................4

*Michenfelder v. City of Torrance*,
28 Cal.App.3d 202 (1972) ..................................................................................................21

*Midgett v. Tri-Ct. Metro. Transp. Dist. of Oregon*,
254 F.3d 846 (9th Cir. 2001) ..........................................................................................6, 18

*Moden v. United States*,
404 F.3d 1335 (Fed. Cir. 2005) .....................................................................................14, 15

*Momox-Caselis v. Donohue*,
987 F.3d 835 (9th Cir. 2021) .............................................................................................11

*Monell v. Dep't of Soc. Servs.*,
436 U.S. 658 (1978) .........................................................................................................7, 16

*Montoya v. City of San Diego*,
2021 U.S. Dist. LEXIS 52340 (S.D. Cal. Mar. 19, 2021) ...............................................17, 19

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

*Morongo Band of Mission Indians v. California State Bd. of Equalization*,
   858 F.2d 1376 (1988)..........................................................................................5

*Moua v. City of Chico*,
   324 F.Supp.2d 1132 (E.D. Cal. 2004) ................................................................8

*Munger v. City of Glasgow Police Dept.*,
   227 F.3d 1082 (9th Cir. 2000) ....................................................................12, 13

*Navajo Nation v. United States*,
   631 F.3d 1268 (Fed. Cir. 2011) .......................................................................14

*Olson v. California*,
   2020 U.S. Dist. LEXIS 207347 (C.D. Cal. Sept. 18, 2020) ............................9

*Omnia Comm. Co. v. United States*,
   261 U.S. 502 (1923).........................................................................................16

*Outdoor Media Group, Inc. v. City of Beaumont*,
   506 F.3d 895 (9th Cir. 2007) .............................................................................8

*Patel v. Kent Sch. Dist.*,
   648 F.3d 837 (9th Cir. 2011) ......................................................................11, 14

*Rizzo v. Goode*,
   423 U.S. 362 (1976)...........................................................................................6

*San Diego Gas & Elec. Co. v. Superior Court*,
   13 Cal.4th 893 (1996) ......................................................................................23

*San Mateo Union High Sch. Dist. v. County of San Mateo*,
   213 Cal. App. 4th 418 (2013) ..........................................................................21

*Sarfaty v. City of Los Angeles*,
   765 Fed. Appx. 280 (9th Cir. 2019)..................................................................17

*Searcy v. Hemet Unified Sch. Dist.*,
   177 Cal. App. 3d 792 (1986) ...........................................................................20

*Simon v. E. Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976).............................................................................................4

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

*Soto v. Los Angeles Cty. Flood Control Dist.*,
2016 U.S. Dist. LEXIS 197210 (C.D. Cal. May 24, 2016)...........................................18

*Spokeo, Inc. v. Robins*,
__ U.S. __, 136 S.Ct. 1540 (2016)...................................................................................4

*State Dep't of State Hospitals v. Superior Court*,
61 Cal.4th 339 (2015) ...................................................................................................20

*State of Calif. Dept. of Social Services v. Thompson*,
321 F.3d 835 (9th Cir. 2003) ...........................................................................................2

*Steinle v. City & County of San Francisco*,
919 F.3d 1154 (9th Cir. 2019) .......................................................................................22

*Sumner Peck Ranch, Inc. v. Bureau of Reclamation*,
823 F. Supp. 715 (E.D. Cal. 1993) ................................................................................22

*Sundance v. Municipal Court*,
42 Cal. 3d 1101 (1986) ..................................................................................................25

*Taliaferro v. Locke*,
182 Cal. App. 2d 752 (1960) ..........................................................................................15

*Taylor v. Buff*,
172 Cal. App. 3d 384 (1985) ..........................................................................................21

*United States v. Lazarenko*,
476 F.3d 642 (9th Cir. 2007) ...........................................................................................5

*Valley Forge Christian College v. Americans United for Separation of Church & State,
Inc.*, 454 U.S. 464 (1982)................................................................................................4

*Vargas v. Chelan County Reg'l Justice Ctr.*,
2010 U.S. Dist. LEXIS 15029 (E.D. Wash. Feb. 22, 2010)............................................9

*Venuto v. Owens-Corning Fiberglas Corp.*,
22 Cal. App. 3d 116 (1971) ............................................................................................24

*Wade v. Regional Credit Ass'n*,
87 F.3d 1098 (9th Cir. 1996) ..........................................................................................19

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

*Wash. Envtl. Council v. Bellon*,
 732 F.3d 1131 (9th Cir. 2013) ................................................................4

*Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*,
 114 F. 3d 976 (9th Cir. 1997) ...............................................................17

*Zelig v. County of Los Angeles*,
 27 Cal.4th 1112 (2002) .........................................................................21


**State Statutes**

Cal. Civ. Code § 54(c) ..............................................................................19

Cal. Civ. Code § 54.3 ................................................................................19

Cal. Civ. Code § 3493 ...............................................................................23

Cal. Civ. Proc. Code § 526a..................................................................24, 25

Cal. Const., art. I, §19 ...............................................................................14

Cal. Gov. Code § 815(a) ............................................................................20

Cal. Gov. Code §818.2................................................................................21

Cal. Gov. Code §§ 820.2, 815.2(b)........................................................21, 22

Cal. Wel. & Inst. Code § 17000 .................................................................20


**Federal Authorities**

28 C.F.R. 35.150(a).....................................................................................18

Americans with Disabilities Act ..............................................16, 17, 18, 19

Fed. R. Civ. P. 8 ..................................................................................1, 3, 20

Fed. R. Civ. P. 12(b) ...............................................................................1, 3

Fed. R. Civ. P. 15 .........................................................................................5

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

Fed. R. Civ. P. 21 ...................................................................................................5

Rehabilitation Act § 504 ...............................................................................16, 17

U.S. Const., 5th Amend. Article I..................................................................14, 16

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

## I.   **INTRODUCTION**

Homelessness is among the greatest challenges facing our region.  As Plaintiffs acknowledge, Defendant City of Los Angeles ("the City") has devoted great efforts, money, and resources to address homelessness, which the City continues to increase in recent years.  *See* ECF 361, Plaintiff's First Amended and Supplemental Complaint ("FASC"), ¶¶ 8, 94.  For example, the City approved nearly $1 billion to be used towards homeless relief in Fiscal Year 2020-2021, a 500% increase in funding over the prior year.  FASC, ¶ 72.  The City does what it can on its own, and works with Defendant County of Los Angeles and other state and federal partners to provide more housing, services, and resources to Angelenos experiencing homelessness.  It will take all of us working together to bring this crisis under control.  Which is why Plaintiffs' efforts to address it through this lawsuit are misguided.

First, Plaintiffs lack standing, and ask the Court to ignore fundamental principles of federalism and separation of powers to intrude into the City's handling of complex policy issues that should be addressed by the elected City leaders, not a court.  Second, *even if* Plaintiffs had standing and asserted alleged harms that could be appropriately redressed by the judicial branch, Plaintiffs' complaint is still not viable because Plaintiffs have again failed to state claims that entitle them to relief, and their nominal additions do not state judicially cognizable claims for relief.  Thus, dismissal of Plaintiffs' FASC against the City pursuant to Rules 12(b)(1), 12(b)(6) and 8 of the Federal Rules of Civil Procedure ("FRCP") is warranted.

## II.   **SUMMARY OF PLAINTIFFS' NEW ALLEGATIONS**

Plaintiffs filed their FASC on November 1, 2021, after the Ninth Circuit vacated this Court's April 20, 2021 preliminary injunction.  FASC ¶ 23 n. 49.  Despite recognizing Defendants "spend over a billion dollars annually providing police, emergency, and support services to those living on the streets" [FASC, ¶ 8] and the City's "effort and resources devoted to addressing this issue is significant" [*Id.*, ¶ 94], Plaintiffs lament the homelessness crisis has not been solved in the manner Plaintiffs wish.

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiffs continue to complain about the "accumulation of piles of personal property on the streets," crime, fires, and public health concerns that have allegedly impacted their businesses and property values. *See, e.g., Id.,* ¶¶ 10, 46-69, 129.  In addition, the FASC attempts to adopt the theories advanced in the preliminary injunction issued by this Court, which was vacated by the Ninth Circuit.[1]  However, while Plaintiffs claim they "have supplemented their Equal Protection, Due Process allegations and 17000 claims to address the Ninth Circuit's concerns" [*Id.*, ¶ 23 n. 49], the new allegations do not save the FASC from dismissal.

First, Plaintiffs' attempt to "supplement" their Equal Protection claim amounts to the addition of allegations regarding the impact of historic racism on Skid Row, mostly achieved through purported incorporation by reference to the Court's preliminary injunction order [*Id.*, ¶ 45, Ex. A] without any factual allegations of a causal link between any conduct by the City and the conclusion that "[t]he homelessness crisis indisputably has a disparate impact on Black and Brown communities" [*Id.*, ¶ 214].  Next, Plaintiffs' attempt to "supplement" their Due Process claim consists of: a conclusory allegation that "the City and County have an affirmative duty to act under the Special Relationship Doctrine due to the restraint on personal liberty exercised to draw in and contain homeless individuals in and near Skid Row" [*Id.,* ¶ 218]; an allegation that Defendants' discretionary policy choice to focus on permanent housing has somehow caused a state-created danger [*Id.*, ¶ 217]; and an allegation that the City continues to engage in a "Containment Policy" in Skid Row through the DTLA2040 proposal to permit only homeless housing developments in Skid Row[2], which the FASC acknowledges has only

---

[1] Plaintiffs attached to their FASC and purportedly incorporated by reference the Court's preliminary injunction order.  FASC, ¶ 45, Ex. A.  But the reversal annuls the preliminary injunction order for all purposes. *State of Calif. Dept. of Social Services v. Thompson*, 321 F.3d 835, 847 (9th Cir. 2003).

[2] Plaintiffs allege the plan received "significant advocacy and support from groups like Los Angeles Community Action Network (LACAN)", an intervenor in this matter. FASC ¶ 40.

2

been recommended to (but not adopted by) City Council [*Id.*, ¶40].  Finally, Plaintiffs add an individual plaintiff, Wenzial Jarrell, who is alleged to be an unsheltered black man living in Skid Row, and "a number of named Alliance members who are also unsheltered and persons of color" [*Id.*, ¶ 23 n. 49, ¶¶ 96 (a)-(d), (h)-(i), 115-123].  None of these new allegations are sufficient to cure the fundamental flaws in Plaintiffs' prior pleading—which were addressed in the oppositions to, and appeals of, the preliminary injunction, and relied upon by the Ninth Circuit.

## III.   MOTION TO DISMISS STANDARDS

As discussed in Sections IV(A) and VI(A), below, Plaintiffs lack standing to assert any of their claims, requiring dismissal under FRCP 12(b)(1).  In addition, dismissal is also warranted under FRCP 12(b)(6) because, under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), while detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal* at 678, *citing Twombly* at 555.  A complaint that fails to meet the dictates of Rule 8, which requires fair notice to a defendant of the claims against it and the grounds on which those claims rest, is subject to dismissal under Rule 12(b)(6).  *Twombly* at 555.

## IV.   DISMISSAL PURSUANT TO RULE 12(b)(1) IS APPROPRIATE

### A.   Plaintiffs have not met their burden to establish standing.

As "courts of limited jurisdiction," federal courts are presumed to lack jurisdiction unless the plaintiffs affirmatively establish their standing to pursue each claim and each form of relief they seek.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006).  As a jurisdictional question, standing precedes, and does not require, analysis of the merits of Plaintiffs' claims.  *Equity Lifestyle Props., Inc. v. County of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2007).  Plaintiffs do not meet their burden.

To establish Article III standing, Plaintiffs must establish, as the "irreducible constitutional minimum," all the following: (1) they suffered an injury in fact that is

3

(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that it is likely as opposed to merely speculative the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly… allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S.Ct. 1540, 1547 (2016). A plaintiff cannot rely on a bare legal conclusion to assert injury-in-fact, "or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

Plaintiffs have not established standing for each claim for relief they seek – nor can they – because there is no causal connection or redressability. A causal connection requires Plaintiffs to establish that their injuries are "fairly traced" to the City's actions, rather than result from independent action of a third party not before the Court. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013). Plaintiffs cannot establish redressability because the Court lacks power to issue the relief requested in the FASC. *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) ("[e]ven where a plaintiff requests relief that would redress her claimed injury, there is no redressability if a federal court lacks the power to issue such relief."); *see also Juliana v. United States*, 947 F.3d 1159, 1172, 1175 (9th Cir. 2020) (directing dismissal on redressability grounds where plaintiffs sought relief to address climate change by compelling executive and legislative branches to reduce fossil fuel emissions because such relief was not within the power of an Art. III court).

Indeed, "even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Article III, the court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 474-475 (1982). The Supreme Court confirmed that

4

such cases do not present "cases" or "controversies" under Article III and are barred. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127, n.3 (2014).

To try and address the standing problems raised by the Ninth Circuit Court of Appeals [ECF 352], Plaintiffs improperly[3] added one individual Plaintiff (Jarrell) and six alleged members of Plaintiff LA Alliance (Diaz, Evans, Owsley, Roper, Smith and Albarron).  But these additions do not assist Plaintiffs.  Federal court jurisdiction must exist as of the time the action is commenced, and therefore, the Court is required to look at the original, rather than to the amended complaint, to determine jurisdiction.  *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376, 1380-81 (1988).  The original Complaint did not allege that any individually-named plaintiff, or any member of LA Alliance, was an unsheltered Angeleno or a member of a minority community.  Rather, all Plaintiffs were claimed to be residents or business owners in the City, and such Plaintiffs do not have standing.  ECF 1, ¶¶ 76-122.  Plaintiffs do not even allege Diaz, Evans, Owsley, Roper, Smith, or Albarran were members of LA Alliance at the time Plaintiffs' lawsuit was filed.  FASC, ¶ 96 (a)-(d), (h) & (i).  While defective allegations may be amended, Plaintiffs have not done so, and no remedy exists for defective jurisdiction itself.  *Morongo,* 858 F.2d at 1380, fn. 3.

Furthermore, Plaintiffs cannot meet the prudential standing requirements.  "A litigant 'raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.'"  *Hollingsworth v. Perry*, 570 U.S. 693, 705-06 (2013); *see also United States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir. 2007).  The FASC is premised on generalized grievances that the City is not doing enough—or, more specifically, not doing what Plaintiffs want the City to do—to address

---

[3] Plaintiffs did not move for leave to add Jarrell as a party (Rule 21); Plaintiffs' motion to file an amended and supplemental complaint was solely brought pursuant to Rule 15. ECF 358.

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

homelessness, cleanup homeless encampments, and enforce public right-of-way ordinances.  But Article III precludes the Court from dictating how the City exercises its discretion.  *Allen v. Wright*, 468 U.S. 737, 760 (1984) ("'[a] federal court . . . is not the proper forum to press' general complaints about the way in which government goes about its business"); *see also ASARCO, Inc. v. Kadish*, 490 U.S. 605, 616 (1989) (rejecting injuries based on "observation of conduct with which one disagrees" as sufficient to confer standing). While Plaintiffs may disagree with the City's discretionary decisions, they lack standing to challenge them in the courts; their remedy lies at the polling places and legislatures.

**B.       The FASC violates separation of powers and federalism principles**

Plaintiffs seek to usurp the discretionary authority of elected local officials and to have the Court step into their shoes to address the homelessness crisis in the way Plaintiffs see fit.  This effort is a flagrant violation of the longstanding doctrines of federalism and separation of powers, which limit the role of the federal judiciary.  *See Lewis v. Casey*, 518 U.S. 343, 385 (1996) ("[p]rinciples of federalism and separation of powers impose stringent limitations on the equitable power of federal courts) (Thomas, J., concurring).

Both the Ninth Circuit and Supreme Court have recognized consistently that "a federal court must exercise restraint when a plaintiff seeks to enjoin any non-federal government agency, be it local or state." *Midgett v. Tri-Ct. Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 851 (9th Cir. 2001); *see also Rizzo v. Goode*, 423 U.S. 362, 380 (1976) (noting that "principles of federalism…have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments").  Government has traditionally been afforded the "widest latitude in the dispatch of its own internal affairs" and, accordingly, politically-accountable local officials are owed significant deference in shaping policies to deal with complex social issues.  *Rizzo*, 423 U.S. 362 at 380.  The City has the right to dispatch its own internal, municipal affairs and the Court cannot encroach upon City Council's and Mayor's discretion and functions.  *Jones v. City*

6

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

*of L.A.*, 444 F.3d 1118, 1138 (9th Cir. 2006), *vacated by settlement*, *Jones v. City of L.A.*, 505 F.3d 1006 (9th Cir. 2007).  The Ninth Circuit has specifically advised on the boundaries of the federal courts' power to address the homelessness crisis, noting that while federal courts have the power to prevent enforcement of unconstitutional ordinances (which Plaintiffs **do not** allege here), federal courts cannot dictate the precise way the City should address homelessness.  *Id.*

These doctrines arguably apply with even greater force here, where Plaintiffs admit there is no single cause of the current homelessness crisis, nor a single action, agency, or official that can be ordered to fix it.  By asking the Court to insert itself into the political branch's daily running of the City's affairs, Plaintiffs ignore the sound limitations placed on a federal court's authority, and instead ask the Court to substitute its judgment for that of local officials to address homelessness in the precise way Plaintiffs see fit, without regard for competing opinions or for other crises that draw on local resources.  *See Horne v. Flores*, 557 U.S. 433, 448 (2009) ("[f]ederalism concerns are heightened when…a federal-court decree has the effect of dictating state or local budget priorities").  In short, what Plaintiffs seek to achieve through this lawsuit cannot be accomplished without violating federalism and separation of powers principles.

## V.   PLAINTIFFS FAIL TO STATE ANY VIABLE CLAIMS

### A.   Plaintiffs' Section 1983 claims for relief are not viable

Plaintiffs' tenth, eleventh, and thirteenth constitutional claims under 42 U.S.C. Section 1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) lack merit.  "Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988).  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Monell*, 436 U.S. at 691.  Thus, "Section 1983 imposes

7

liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker*, 443 U.S. at 146.  Plaintiffs have not and cannot demonstrate the City has deprived them of any constitutional interest.

### 1.     The FASC Fails To Allege Equal Protection Claims.

A plaintiff must plead four elements to state a claim for an equal protection violation: "(1) the municipal defendants treated [the plaintiffs] differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the municipal defendants acted with discriminatory intent in applying this classification; and (4) plaintiffs suffered injury as a result of the discriminatory classification." *Moua v. City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D. Cal. 2004). Plaintiffs must show 'that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Mattson v. City of L.A.*, 2008 U.S. Dist. LEXIS 129931, *25 (C.D. Cal. Dec. 23, 2008), *quoting Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001).

As a threshold matter, Plaintiffs fail to allege any specific and currently operative legislation, ordinance, or City policy they contend discriminates against any person in an impermissible manner.[4]  Accordingly, neither the City nor the Court is able to evaluate

---

[4] To the extent that Plaintiffs rely on the DTLA2040 Plan (FASC, ¶40) as the allegedly discriminatory ordinance, Plaintiffs admit this is only *proposed* legislation that has been "recommended" to the City Council, but do not allege that it is yet operative.  A challenge to proposed legislation is not ripe at this time.  Further, Plaintiffs admit that the "Containment Policy" was formally renounced in 2016, making their challenge moot. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007).  Otherwise, Plaintiffs rely on decades-old policies. *See, e.g.,*  FASC, ¶41 ("as far back as the Great Depression, services…segregated by race"); *Id.* ("[a] 1970 report…suggests that race-specific barriers to quality housing were producing disparate outcomes…."); ¶42 ("[a] government map…from 1939…shows how our government blocked black communities…from home ownership"); ¶43 ("the 1970s Containment Policy specifically acknowledged Skid Row was that the time 'experiencing a very rapid increase in its Black population'").  However, "past discrimination cannot, in the manner of an original sin, condemn governmental action that is not itself unlawful." *Abbot v. Perez*, 585 U.S. __, 138 S.Ct. 2305, 2324 (2018) (quotation omitted).

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

what specific conduct Plaintiffs allege violates Equal Protection or whether Plaintiffs' challenge is a "facial" and/or "as applied" Equal Protection challenge. As best as can be discerned from the FASC, Plaintiffs allege the City has, by "enforcing the law in some areas and declining to enforce the law in others," "discriminate[d] based upon geography" against "some persons, communities, and businesses…." FASC, ¶212. In paragraph 213, Plaintiffs allege "on information and belief" the City has instructed persons experiencing homelessness that encampments are allowed to exist and persist in certain City areas, and the City has no rational basis for its instruction. It is hard to imagine a more vague, conclusory, and insufficiently plead allegation as to the specific action of the City and the persons suffering discriminatory effect.

Regardless, "geographic location is not a protected category," meaning "geographic discrimination does not violate equal protection unless there is no rational basis for the distinction." *Vargas v. Chelan County Reg'l Justice Ctr.*, 2010 U.S. Dist. LEXIS 15029, *10 (E.D. Wash. Feb. 22, 2010). "[A]t the pleading stage, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Olson v. California*, 2020 U.S. Dist. LEXIS 207347, at *11 (C.D. Cal. Sept. 18, 2020); *HSH, Inc. v. City of El Cajon*, 44 F.Supp.3d 996, 1008 (S.D. Cal. 2014). Plaintiffs' naked legal conclusion that the "City has no rational basis for doing so" [FASC, ¶ 213] is insufficient as a matter of law. Obvious rational bases for notifying unsheltered people where encampments may persist include: providing unsheltered Angelenos predictability about where they may reside and for the efficient administration of services, as well as obtaining economies of scale in placing resources such as hygiene and medical facilities close to unsheltered communities. Plaintiffs' claim of racial discrimination is deficient in at least two respects. First, Plaintiffs fail to allege the City treats or has treated any black person experiencing homelessness any differently than it has treated any non-black unsheltered person. The first step in analyzing Equal Protection claims "is to identify the state's classification of groups." *Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018). Once the classified group is

9

identified, "we look for a control group [citation], composed of individuals who are similarly situated to those in the classified group in respects that are relevant to the state's challenged policy." *Id.* "If the two groups are similarly situated, we determine the appropriate level of scrutiny and then apply it." *Id.* The FASC simply does not allege that the City treats black unsheltered Angelenos differently from similarly-situated persons, i.e., non-black persons experiencing homelessness.

Second, Plaintiffs fail to allege any current City policy exists or was enacted "***because of***" its adverse effects on one particular race. "The mere fact that defendants' facially neutral policies had a foreseeably disproportionate impact on an identifiable group does not mean they violated the Equal Protection Clause." *Lee,* 250 F.3d at 687. "'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part ***because of***, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (alterations omitted, emphasis supplied). Here, Plaintiffs allege that the City has made choices "knowing…the disproportionate impact on Black Angelenos" [FASC, ¶44] and enacted unspecified policies "knowing the result would have a continued and intensified disparate impact" [*Id.*, ¶214]. However, Plaintiffs fail to identify any specific policy or law that was enacted ***because of*** a discriminatory purpose. Knowledge of disparate impact is insufficient as a matter of law. Indeed, by basing their claims on the "homelessness crisis" at large, rather than challenging any specific City policy, Plaintiffs have failed to even allege a City policy or ordinance has a disparate impact on any particular class of persons.

Finally, Plaintiffs allege the "homelessness crisis," <u>not</u> some statute, ordinance, or policy, "has a disparate impact on Black and Brown communities," and that the City has "made affirmative decisions and adopted policies and laws" that have furthered the disparate impact "knowing the result would have a continued and intensified disparate impact." FASC, ¶ 214. Here again, Plaintiffs do not identify the "policies and laws" they challenge, and the homelessness crisis is not a City policy.

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

## 2. Plaintiffs' Other Due Process Claim Fails

Plaintiffs' eleventh claim for violation of the Due Process Clause based on the state-created danger and special relationship doctrines fails as a matter of law because neither doctrine applies to the allegations here. Both doctrines are limited exceptions to the well-established rule that a public entity's omission or failure to protect a plaintiff against bodily harm inflicted by third parties generally does not violate the guarantee of due process. *See Patel v. Kent Sch. Dist.*, 648 F.3d 837, 971-72 (9th Cir. 2011); *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021) (neither the "special relationship" or "state-created danger" exception applied "to overcome the hurdle that the Due Process clause does not confer an affirmative right to governmental aid or impose a duty on the state to protect individuals from third parties.").

### a) The State Created Danger Doctrine Does Not Apply

The state-created danger exception narrowly applies only where: (1) "there is 'affirmative conduct on the part of the state in placing the plaintiff in danger'" and (2) "the state acts with 'deliberate indifference' to a 'known or obvious danger.'" *Patel*, 648 F.3d at 974 (citations omitted). To meet the first prong, a plaintiff must allege state conduct that "'affirmatively place[s] the plaintiff in a position of danger,' that is, where the state action creates or exposes an individual to a danger which he or she would not have otherwise faced." *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 432 (N.D. Cal. 2017) (dismissing state-created danger claim where plaintiffs' allegations "[did] not confirm that the state action was the impetus that put Plaintiffs in an inherently dangerous situation."). The "deliberate indifference" standard is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Cobine,* 250 F. Supp. at 432-33; *see also Patel*, 648 F.3d at 974-76 ("mere negligence–or even gross negligence–is not enough for deliberate indifference.").

None of Plaintiffs' new allegations point to any affirmative conduct by the City that affirmatively placed them in danger, or even that required Plaintiffs to live or work in Skid Row where they allege such danger exists. First, Plaintiffs rely on vague and

11

conclusory allegations "[t]he City and County created danger to [Plaintiffs] and others like them by adopting and maintaining various policies and laws coalescing in a strategy to contain homeless people in Skid Row which specifically endangered Plaintiffs, and were deliberately indifferent thereto."  FASC, ¶217.  Not only are such conclusory allegations insufficient, but the factual allegations Plaintiffs do assert belie this theory.  Plaintiffs affirmatively acknowledge that the alleged "containment policy" was formally denounced by the City in 2016 [*Id.*, ¶31], and their effort to allege the policy informally continues to exist today fails to support application of the state-created danger doctrine.  Instead of alleging affirmative conduct *requiring* Plaintiffs to live in Skid Row – much less affirmatively placing them in danger – Plaintiffs merely allege "[a]ffordable housing and services needed by PEH are still heavily concentrated in Skid Row" [*Id.*, ¶39] – where those services are most needed – and certain unhoused individuals, including Plaintiffs, have voluntarily moved to Skid Row for that reason.  *Id.*, ¶¶96(a)-(d), (h)-(i), 116.  Plaintiffs also allege that the City Planning Commission recommended DTLA4040 to Council to allegedly permit "*only* homeless housing developments" [*Id.*, ¶40], but Plaintiffs' effort to allege some ongoing "containment policy" by way of this zoning *recommendation* from the Planning Commission, misses the mark.  Setting aside that discretionary land use and zoning policy decisions are not the type of affirmative conduct on which a state-created danger or special relationship exception has been applied[5], it is implausible that such a decision – designed to encourage building more homeless housing developments that Plaintiffs claim the City needs – could place Plaintiffs in

_____

[5] *See e.g., Hernandez v. City of San Jose*, 897 F.3d 1125, 1135 (9th Cir. 2018) (Trump supporters stated claim of state-created danger when police allowed them to exit rally in only one direction towards counter-protesters the police knew were violent, and did not allow the supporters any other direction of travel by which they could have protected themselves); *Munger v. City of Glasgow Police Dept.*, 227 F.3d 1082, 1087 (9th Cir. 2000) (when police ejected intoxicated man in only t-shirt and jeans from a bar at night in subfreezing temperature, refused to let him get into his car, and went looking for him afterwards, it was indisputable that the officers placed him "in a more dangerous position than the one in which they found him").

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

danger.  To the extent these allegations regarding housing and resources in Skid Row are true, they collectively demonstrate an effort by the City to help persons experiencing homelessness by ensuring their access to housing and services where they live, not deliberate indifference to their safety.

Second, Plaintiffs allege Defendants have focused "nearly exclusively on so-called permanent housing options without balancing interim and emergency needs" which allegedly "caused more people to remain unsheltered…." *Id.*, ¶217.  Even if this allegation were true – which it is not – exercising legislative discretion to focus on building permanent supportive housing to help individuals experiencing homelessness get off the streets and become permanently housed cannot plausibly be characterized as affirmative conduct to place any Plaintiff in danger, much less with deliberate indifference to their safety, even if Plaintiffs philosophically disagree with the policy. *See Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007) (rejecting state-created danger claim even though city's crowd control plan for Mardi Gras event may have "proved not the most effective" because the plan did not constitute affirmative conduct that placed the plaintiffs in a worse position than if the police had not devised a plan at all).  This is far from the type of affirmative placement in danger, with deliberate indifference to individuals' safety, necessary to meet the "stringent standard of fault" to invoke the state-created danger doctrine. *See e.g., Hernandez v. City of San Jose*, 897 F.3d at 1135; *Munger v. City of Glasgow Police Dept.*, 227 F.3d at 1087.  Indeed, Plaintiffs recognize that the City devotes "significant" effort and resources to the homelessness crisis [FASC, ¶ 94], negating any deliberate indifference on the City's part; Plaintiffs simply cannot transform their disagreement with the City's policies into a state-created danger.

**b)      The Special Relationship Doctrine Does Not Apply**

The special relationship doctrine is another narrow exception that applies only where "the State takes a person into its custody and holds him there *against his will*." *Campbell v. State Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 (9th Cir. 2011)

13

(italics by the court).  The "special-relationship exception does not apply when a state fails to protect a person who is not in custody." *Patel*, 648 F.3d at 972-74.  Plaintiffs do not allege any plaintiff was in custody or held against his or her will, precluding the claim as a matter of law.  Plaintiffs' allegation that the City placed a "restraint on personal liberty exercised to draw in and contain homeless individuals in and near Skid Row" [FASC, ¶218] fails to plausibly allege that Plaintiffs are or were ever in custody, and Plaintiffs' assertions regarding a past policy of "containment" do not equate with "custody" necessary for the special relationship doctrine to apply.  *See Patel*, 648 F.3d at 972-74 (mandatory attendance at school not akin to incarceration or institutionalization); *Campbell*, 671 F.3d at 842 (no special relationship even where individual was in state custody because she voluntarily resided in the facility and was not in custody against her will).  Since neither the state-created danger nor special relationship doctrines apply, Plaintiffs' Due Process claim fails as a matter of law.

### 3. Plaintiffs have not alleged a taking under federal or state law

State and federal law prohibit the government from taking private property without just compensation.  U.S. Const., 5th Amend. Article I; Cal. Const., art. I, §19. [6]  To state a regulatory-takings (or inverse-condemnation) cause of action, a plaintiff must allege, among other things, that their injuries are the "direct, natural, or probable result" and not an incidental or consequential injury inflicted by governmental activity.  *Moden v. United States*, 404 F.3d 1335 at 14-15 (Fed. Cir. 2005).  Thus, a takings claim must be predicated on actions undertaken by the government, and not on actions of third parties.  *See e.g. Navajo Nation v. United States*, 631 F.3d 1268, 1274 & 1276 (Fed. Cir. 2011) (rejecting takings claim due to lack of credible evidence government directed or encouraged third parties' conduct); *Casa De Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137, 142-43 (Fed. Cl. 2000) (takings claim cannot lie, even if government knows its actions will pave the way for another to lose property at the hands

---

[6] Aside from a difference not relevant here, the federal and California state clauses are construed congruently. *Bottini v. City of San Diego,* 27 Cal.App.5th 281, 312 (2018).

14

of a third party).

Plaintiffs here cannot state a takings or inverse condemnation claim because they do not allege their property injuries are the direct results of any identified City action. Plaintiffs instead allege the contrary: a history of ongoing intervening acts breaking any direct cause of injury to their property, including more than a century of polices, some detrimental and others beneficial [FASC, ¶¶ 8, 15-18, 30-45, 94], and illegal conduct by non-parties (including some unsheltered Angelenos) including illegal camping and property accumulation, wire tampering, makeshift heaters and open air fires, public prostitution, drug dealing, assaults, and crime. *Id.*, ¶¶ 7-14, 46-51.

Even assuming *arguendo* that takings law is appropriate here, the gravamen of Plaintiffs' takings claims is that Plaintiffs' property suffered in value because the City failed to enforce prohibitions in the Municipal Code against unsheltered individuals. FASC, ¶ 34. But such discretionary enforcement is insufficient to support the existence of a property interest owned by Plaintiffs necessary to state a takings claim. *See Taliaferro v. Locke*, 182 Cal.App.2d 752 (1960) (District Attorney had no mandatory obligation to investigate or prosecute persons where plaintiff complained about garbage and refuse in the immediate proximity of their properties constituting a public nuisance.) Plaintiffs' takings claims must still be dismissed because Plaintiffs do not and cannot allege facts to establish that the subject matter is "property" within the meaning of the takings clauses. *See Moden*, 404 F.3d 1335 at 14; *see also Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1002-04 (9th Cir. 2007) (If an interest is "speculative" or "discretionary," then the government's removal of the interest cannot constitute a constitutional taking of property).

Furthermore, because Plaintiffs' allegations are limited to derivative injury caused by actions or inaction directed towards property not owned by Plaintiffs—specifically, sidewalks and other public rights of way—their alleged injuries are not compensable. *See Air Pegasus v. United States*, 424 F.3d 1206, 1215, 1217 (Fed. Cir. 2005) (no takings of heliport after government shut down commercial airspace because plaintiff did not

15

actually own or operate any helicopters. No takings of right to access to navigable airspace from heliport because navigable airspace is public property not subject to private ownership.); *see also Omnia Comm. Co. v. United States,* 261 U.S. 502, 510-13 (1923) (government's requisition of steel producer's entire output which prevented plaintiff from exercising contractual purchase rights with the producer was a "consequential loss or injury" because the government action had not taken plaintiff's property but merely frustrated its performance and thus no compensation was due.) Furthermore, takings jurisprudence does not permit compensation for damages resulting from antagonistic uses of property by private actors which result from policy efforts by local government to accommodate conflicting interests prevalent in large urban communities. *Barbian v. Panagis*, 694 F.2d 476, 486 (7th Cir. 1982) (no takings where city rezoned a strip of land adjacent to plaintiffs' home to accommodate access by a trucking company and approved a variance allowing the company to exceed local noise ordinance limitations. "The Fifth Amendment does not insulate homeowners from bearing the cost of urban change …"). For all these reasons, Plaintiffs' fifth and twelfth claims must be dismissed.

### 4. Plaintiffs' *Monell* (Thirteenth) claim cannot be established

Plaintiffs seek to impose liability against the City pursuant to 42 U.S.C. § 1983 under *Monell*, a theory of liability that is not a standalone claim. Because the FASC is devoid of factual allegations regarding (a) any Constitutional violation and (b) any current municipal policy or custom – which are required elements for *Monell* liability – Plaintiffs have not and cannot establish their Thirteenth claim, and it should be dismissed without leave to amend. *See e.g., Brass v. Cnty. of Los Angeles*, 328 F.3d 1192, 1199-1200 (9th Cir. 2003) (the plaintiff did not state a valid claim for *Monell* liability because the "policy or custom" at issue did not violate plaintiff's constitutional rights).

### B. Plaintiffs' Federal Disability-Related Claims Fail

Plaintiffs' eighth and ninth claims for violation of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act both fail.

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

### 1. Plaintiffs still fail to sufficiently allege discrimination by reason of their disabilities

To state a claim under Title II of the ADA and Section 504 of the Rehabilitation Act, Plaintiffs must establish they are qualified individuals with disabilities who were excluded from participation in or denied a benefit, or were discriminated against by the City solely by reason of their disability. *See* 42 U.S.C. § 12132; *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F. 3d 976, 978-79 (9th Cir. 1997). Yet Plaintiffs still fail to allege the City has discriminated against them solely by reason of their disabilities. Instead, Plaintiffs concludingly assert "the harm felt by all members of society is not identical," despite simultaneously asserting "that public sidewalks exist for the benefit of all–and blocked sidewalks harm everyone who needs to use them and cannot." FASC, ¶ 58. Plaintiffs' factual allegations continue to assert – as they did in the prior complaint –the sidewalks are *equally* blocked for *all* residents. *See e.g., Id.*, ¶ 7 ("Large items obstruct the free passage and use of the streets and sidewalks."); ¶ 11 ("The massive build-up of property and tents has made the sidewalks unpassable" and further noting that a non-disabled plaintiff "Karyn Pinsky must walk with her young son in a stroller in the middle of traffic. The Inner-City Arts Center must hire security to walk with students and staff to and from campus."). Plaintiffs' allegations, therefore, do not state a viable ADA or Rehabilitation Act claim.

### 2. The temporary obstructions about which Plaintiffs complain do not constitute violations of the disability access laws

The temporary obstructions about which Plaintiffs complain, including human beings and their personal property, are not the type of fixed architectural barriers addressable as ADA accessibility violations.[7] *See Montoya v. City of San Diego*, 2021

---

[7] Moreover, if temporary obstructions from persons experiencing homelessness and their belongings were the type of barriers to which the ADA applies, then the *Willits* settlement would preclude Plaintiffs' claim for injunctive relief because it is based on the same set of facts. *See Sarfaty v. City of Los Angeles*, 765 Fed. Appx. 280, 281 (9th Cir. 2019).

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

U.S. Dist. LEXIS 52340, at *24 (S.D. Cal. Mar. 19, 2021) (denying preliminary injunction based on alleged sidewalk obstructions from dockless scooters and bikes in part because plaintiffs did not demonstrate that "dockless vehicles can be considered architectural barriers of the kind the ADA and its companion state statutes are meant to target."). Indeed, the regulatory language Plaintiffs cite indicates public entities are required to "maintain in operable working condition ***those features of facilities and equipment*** that are required to be readily accessible to and usable by persons with disabilities by the Act or this part." FASC, ¶201, *citing* 28 C.F.R. §35.133(a)(2011)) (emphasis added)].

### 3.    The City's sidewalks are accessible when viewed in their entirety

A public entity is required to maintain existing facilities, including sidewalks built before January 26, 1992, in a way that ensures they are readily accessible to, and usable by, individuals with disabilities *when viewed in their entirety*. *See* 28 C.F.R. 35.150(a); *see also Soto v. Los Angeles Cty. Flood Control Dist.*, 2016 U.S. Dist. LEXIS 197210, at *13 (C.D. Cal. May 24, 2016) ("a public entity is only required to operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."); *Blackwell v. City & Cty. of San Francisco*, 506 Fed. Appx. 585, 586 (9th Cir. 2013) (affirming summary judgment for San Francisco related to sidewalks built before January 26, 1992).

Here, Plaintiffs do not allege the City's sidewalks were built after January 1992 such that they are not "existing facilities." Nor do they plausibly allege the sidewalks are inaccessible when viewed in their entirety. Without such allegations, Plaintiffs have failed to state a claim for an ADA violation. *See e.g., Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d at 849 ("[t]he regulations implementing the ADA do not contemplate perfect service…"); *Soto,* 2016 U.S. Dist. LEXIS 197210, at *13 (noting "the relevant question [was] not whether <u>each</u> Bike Path entry point is accessible, but whether, <u>viewed in its entirety</u>, the Bike Path can be entered and used by persons with disabilities. Therefore, the Bike Path could, in theory, comply with Title II even if certain

18

entry points were inaccessible.") (emphasis by the court); *Montoya,* 2021 U.S. Dist. LEXIS 52340, at *24-25 ("the court [was] not convinced that Plaintiffs have demonstrated that they will succeed in showing that they have been denied meaningful access to the City's sidewalks when it considers the 5,000 miles of sidewalks the City has to maintain in relation to the number of Plaintiffs' 'documented obstructions'"). For all these reasons, Plaintiffs' ADA and Rehabilitation Act claims fail.

### C.    Plaintiffs' California Disabled Persons Act Claim Fails

Plaintiffs' seventh claim for violation of the California Disabled Persons Act ("CDPA"), which is based on the same conduct as the ADA and Rehabilitation Act claims, fails for the same reasons as the federal claims. *See* Cal. Civ. Code § 54(c) (a violation of the ADA is a violation under California's Disabled Persons Act). In addition, the CDPA does not apply to the City. "Civil Code § 54.3 expressly limits its application to a 'person or persons, firm or corporation,' and does not define 'person or persons' or 'corporation' to include the City." *See Dunn v. City of Los Angeles*, 2017 U.S. Dist. LEXIS 220742, at *7 (C.D. Cal. Apr. 26, 2017) (granting motion to dismiss "because the City is not a 'person or persons, firm or corporation' within the meaning of Cal. Civ. Code. § 54.3"); *Carter v. City of Los Angeles*, 224 Cal.App.4th 808, 825 (2014) (opining "no California court" would likely hold a city liable for damages under the CDPA), *vacated in part by Wilkins-Jones*, 2012 U.S. Dist. LEXIS 107127 (N.D. Cal. Jul. 31, 2012). Thus, Plaintiffs' seventh claim for relief fails and should be dismissed.

## VI.    PLAINTIFFS' OTHER STATE LAW CLAIMS SHOULD BE DISMISSED

### A.    The Court should decline to assert supplemental jurisdiction over Plaintiffs' other state law claims

"Where a district court dismisses a federal claim, leaving only state claims for resolution, it should decline jurisdiction over the state claims and dismiss them without prejudice." *Wade v. Regional Credit Ass'n,* 87 F.3d 1098, 1101 (9th Cir. 1996). Accordingly, the Court should decline to exercise supplemental jurisdiction and dismiss Plaintiffs' state law claims.

19

Alternatively, the Court should dismiss the First, Third, Fourth, and Sixth cause of action with prejudice and without leave to amend because they are insufficiently pled and not legally plausible.[8]

### B. Plaintiffs have not alleged a claim for common law negligence

Plaintiffs' common law negligence claim is futile and violates Rule 8. Plaintiffs vaguely and concludingly contend Defendants City and County – lumped together and without specificity– (a) failed to maintain unidentified public spaces, including parks, sidewalks, public buildings, "and certain undeveloped areas such as alongside freeways and other transportation routes" in a clean and safe condition and (b) failed to enforce laws. FASC, ¶161. Plaintiffs also allege the City breached unspecified duties regarding the passage of Proposition HHH by voters. *Id.*, ¶¶ 163, 165.

Tort liability against a municipality cannot arise out of common law, but rather, must be based on a specific statute declaring the entity to be liable, or at least creating some specific duty of care, and cannot be based solely on general common law tort provisions. Cal. Gov. Code § 815(a); *see also Fox v. County of Fresno*, 170 Cal.App.3d 1238, 1241 (1985) ("In California, governmental tort liability must be based on statute."). Duty cannot be alleged simply by stating that the defendant had a duty under the law; that is a legal conclusion and not a factual allegation. *Searcy v. Hemet Unified Sch. Dist.,* 177 Cal.App.3d 792, 802 (1986). Further, even when a duty exists, applicable immunity statutes prevail over liability provisions. *State Dep't of State Hospitals v. Superior Court*, 61 Cal.4th 339, 348 (2015). Because Plaintiffs fail to plead any statute that imposes a specific duty on the City, because the City's law enforcement decisions are discretionary, and because the City is immune, Plaintiff's negligence claim fails. And any claim for monetary damages is barred because Plaintiffs failed to timely submit a Government Claim to the City. *City of Stockton v. Superior Court,* 212 Cal.4th 730, 738 & 743 (2007).

---

[8] Plaintiffs' Second Cause of Action for Breach of the Mandatory Duty imposed by Cal. Wel. & Inst. Code § 17000 is brought against Defendant County of Los Angeles only.

20

**1.    The City cannot be negligent for failing to clean up homeless encampments in all unidentified public spaces**

Plaintiffs' negligence claim is defective because Plaintiffs fail to plead facts specifying the public properties that are the subject of the FASC, or that the City owned, possessed or controlled all the properties to which Plaintiffs allegations apply.  *See Contreras v. Anderson*, 59 Cal.App.4th 188, 197 (1997) (generally a defendant cannot be liable for the defective condition of property it does not own, possess or control).

**2.    Plaintiffs cannot ask this Court to tell the City how and when to enforce laws or spend its funds**

Plaintiffs cannot state a legally viable claim based on the City's alleged failure to enforce its laws.  Plaintiffs do not have a legal right to dictate which laws are enforced, nor can the City be compelled to enforce laws in a particular manner *or at all*.  Decisions regarding whether to enforce laws are a matter of discretion.  *See* Gov. Code §818.2 ("[a] public entity is not liable for an injury caused by…failing to enforce any law"); *Michenfelder v. City of Torrance,* 28 Cal.App.3d 202, 207 (1972) (officer's decision whether to enforce law "is an exercise of discretion"); *Zelig v. County of Los Angeles,* 27 Cal.4th 1112, 1132 (2002) (no liability for failing to protect individuals from crime).[9] Likewise, the City's decisions as to allocation of Proposition HHH funds are discretionary such that no liability can lie against it.  *See Taylor v. Buff*, 172 Cal. App. 3d 384, 390 (1985) ("[a] decision involving the allocation of limited funds is a purely discretionary one"); *San Mateo Union High Sch. Dist. v. County of San Mateo,* 213 Cal. App. 4th 418, 434 (2013) (treasurer who exercised discretion in investment decisions immune from liability).  Plaintiffs' first cause of action for negligence necessarily fails.

**C.    Plaintiffs fail to state a public or private nuisance claim**

Plaintiffs' Third and Fourth causes of action for public and private nuisance both fail.

---

[9] Furthermore, the City is immune from liability.  *See* Gov. Code §§ 820.2, 815.2(b).

21

## 1. Plaintiffs' nuisance claims are barred by discretionary immunity and separation of powers

Plaintiffs' state-law nuisance claims fail as a matter of law because the City's policy decisions to address the homelessness crisis – including whether, where, and when to enforce anti-lodging laws and perform cleanups, and how the City's budget should be allocated – are discretionary decisions, which are immune from liability under state law. Cal. Gov. Code §§ 820.2, 815.2(b); *see also Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1162 (9th Cir. 2019); *Sumner Peck Ranch, Inc. v. Bureau of Reclamation*, 823 F. Supp. 715, 726 (E.D. Cal. 1993) (dismissing nuisance claim with prejudice on discretionary immunity ground). Since the City cannot be compelled to exercise its discretion in any particular manner, Plaintiffs' nuisance claims fail as a matter of law.

The statutory immunity for discretionary governmental decisions is grounded in the separation of powers doctrine, which bars Plaintiffs' nuisance claims. *See Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 366 (2017) (court could not compel city to use its discretion in a particular manner); *Friends of H St. v. City of Sacramento*, 20 Cal. App. 4th 152, 159 (1993) (affirming denial of injunction to abate alleged public nuisance causing noise, decreased property values, and litter because it necessarily involved "a legislative function beyond [court's] power to control"). There is no actionable nuisance claim against the City here; instead, as the court explained in *Citizens for Odor Nuisance Abatement*, "any resolution likely lies in the political sphere…courts are comparatively ill situated to solve this type of problem." *Id.* at 366.

## 2. Plaintiffs cannot allege the requisite nuisance elements

Even if Plaintiffs' nuisance claims were not barred by discretionary immunity and the separation of powers doctrine, Plaintiffs cannot allege the elements of such claims. Plaintiffs contend the City is negligent in its handling of the homelessness crisis. But a negligence claim presented in the garb of a nuisance claim cannot be considered apart from the negligence allegations, which should also be dismissed. *See El Escorial Owners' Assn. v. DLC Plastering, Inc.*, 154 Cal.App.4th 1337, 1348-49 (2007) (where

22

DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT

negligence and nuisance causes of action rely on the same facts about lack of due care, the nuisance claim is a negligence claim).

In addition, to prevail on a public or private nuisance theory, the City's conduct must be a substantial factor causing Plaintiffs' claimed harm. *Citizens*, 8 Cal. App. 5th at 361-66; *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal.4th 893, 938 (1996) (defendant's private nuisance must have caused plaintiffs to suffer substantial and unreasonable actual damage). To the extent Plaintiffs' nuisance claims could be characterized as relying on any current conduct (as opposed to an alleged past policy of "containment"), it is that the City allegedly allows homeless encampments to exist in Skid Row in breach of an alleged "obligation to keep sidewalks clear for use by the public." FASC, ¶ 57. However, a general "obligation" to maintain sidewalks does not equate to "a duty to take a positive action to prevent or abate the interference" which must exist before a defendant may be liable in the nuisance context for an alleged "failure to act." *See In re Firearm Cases*, 126 Cal. App. 4th 959, 988 (2005). Moreover, even assuming the City has a duty to clear streets and sidewalks, Plaintiffs acknowledge that the City spends substantial money and resources to fulfill that duty by clearing sidewalks pursuant to LAMC 56.11. FASC, ¶¶ 8, 15. The City cannot be held liable for a public nuisance where the City has taken reasonable efforts to address encampments blocking sidewalks, even if the City has not been entirely successful in keeping its vast sidewalk system consistently clear of any obstructions. *Citizens*, 8 Cal. App. 5th at 364-65 (plaintiffs could not establish public nuisance based on city's failure to act, where city had made efforts to address alleged nuisance from sea lion waste odor, even though city's efforts were not entirely successful and plaintiffs pointed to more effective alternative methods). Plaintiffs have failed to state a nuisance cause of action.

### 3. Plaintiffs have not stated a public nuisance claim where no harm was specially injurious to them

In order to prevail on a public nuisance theory, Plaintiffs must show that the alleged nuisance was "specially injurious" to them, which they cannot do. Cal. Civ. Code

23

§ 3493; *see also County of Santa Clara v. Superior Court*, 50 Cal.4th 35, 55 (2010). In order to meet the "specially injurious" requirement, "[t]he damage suffered must be different in kind and not merely in degree from that suffered by other members of the public." *Koll-Irvine Ctr. Prop. Owners Ass'n v. Cty. of Orange*, 24 Cal. App. 4th 1036, 1040 (1994); *see also Venuto v. Owens-Corning Fiberglas Corp.*, 22 Cal. App. 3d 116, 125 (1971) (holding there was no public nuisance where plaintiffs' harm was of a different kind, but not degree, than that suffered by the general public). Plaintiffs cannot make the requisite showing of a special injury to them different in kind because this contradicts the entire thrust of the FASC, which is that the same kind of alleged nuisance conditions, including crime, health, and fire risks, affect *everyone* in Skid Row (and indeed, throughout the County), including both housed and unhoused residents, business owners, and those who only work in the area. FASC, ¶¶58-59. For these reasons, Plaintiffs' claims for public and private nuisance fail as a matter of law.

**D.      Plaintiffs' Claim for Violation of Section 526a Fails**

Plaintiffs' claim for violation of California Code of Civil Procedure section 526a should be dismissed. First, Plaintiffs have not established Article III standing to assert a section 526a claim in federal court. While the mere status of being a taxpayer may be sufficient to confer standing under the permissive state court statute, that does not automatically confer Article III standing. *See Cantrell v. City of Long Beach*, 241 F.3d 674, 683-84 (9th Cir. 2001) ("California's lenient taxpayer standing requirements do not relieve the [plaintiffs] of the obligation to establish a direct injury under the more stringent federal requirements for state and municipal taxpayer standing."). Instead, "[t]o establish standing in a state or municipal taxpayer suit under Article III, a plaintiff must allege a direct injury caused by the expenditure of tax dollars; the pleadings of a valid taxpayer suit must set forth the relationship between taxpayer, tax dollars, and the allegedly illegal government activity." *Id.* at 683. Here, Plaintiffs merely allege they "pay income tax, sales tax, property tax, and/or business license taxes and therefore have standing to bring an action under section 526a" [FASC, ¶ 189] and "the City and the

24

County have spent enormous amounts of public funds on the homelessness crisis in ways that have had little or no effect on the crisis" [*Id.* ¶ 192], yet Plaintiffs have not alleged the type of "direct pocketbook injury" necessary to establish Article III standing.

Second, even if Plaintiffs had standing to assert the claim, California courts have consistently refused to apply Section 526a to principally "political" issues and maintain that section 526a "should not be used to invade, supersede, or even intrude upon the discretion invested in the legislative and executive branches of government." *Humane Soc'y of the United States v. State Bd. of Equalization*, 152 Cal. App. 4th 349, 356 (2007). Cognizant of this limitation arising from separation of powers concerns, courts hold "[i]n order to obtain injunctive relief in an action brought under Code of Civil Procedure section 526a, the taxpayer must establish that the expenditure of public funds which he seeks to enjoin is *illegal.*" *Herzberg v. County of Plumas*, 133 Cal. App. 4th 1, 23-24 (2005) (emphasis added); *Lyons v. Santa Barbara Cty. Sheriff's Office*, 231 Cal. App. 4th 1499, 1503 (2014) ("[t]he trial court correctly ruled that a taxpayer's action may not be maintained where the challenged government conduct is legal.").

Plaintiffs cannot meet the high bar to show that any expenditure of HHH funds is illegal; rather, at most, Plaintiffs complain that, in their opinion, the funds should be used in a different way. FASC, ¶¶ 189-92. This is a quintessential example of a discretionary (and voter-approved) expenditure that cannot support a 526a claim. *See Sundance v. Municipal Court*, 42 Cal. 3d 1101, 1139 (1986) ("courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which does not meet with a taxpayer's approval.").

## VII.  CONCLUSION

For the foregoing reasons, and for any reasons that may arise at the hearing, the City respectfully requests that Plaintiffs' FASC be dismissed without leave to amend.

DATED:  December 3, 2021      By: /s/ _____

Arlene N. Hoang, Deputy City Attorney
Counsel for Defendant City of Los Angeles

25