# EXHIBIT 36

Exhibit 36
Page 1531

## MILLER BARONDESS, LLP

ATTORNEYS AT LAW
1999 AVENUE OF THE STARS
SUITE 1000
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400
FAX: (310) 552-8400
WWW.MILLERBARONDESS.COM

November 18, 2021

**MIRA HASHMALL**
DIRECT DIAL: (310) 552-7560
MHASHMALL@MILLERBARONDESS.COM

*VIA ELECTRONIC MAIL ONLY*

Matthew Umhofer
Elizabeth Mitchell
Email: matthew@spertuslaw.com;
emitchell@spertuslaw.com

Re:  *L.A. Alliance, et al. v. City of Los Angeles, et al.* (CDCA Case No. 2:20-cv-02291)

Counsel:

In accordance with Local Rule 7-3, we are writing to set forth the grounds for the County of Los Angeles' ("County") anticipated motion to dismiss the First Amended Complaint ("FAC") under Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.  The Ninth Circuit's September 23, 2021 opinion confirmed that Plaintiffs' causes of action are legally dubious.  The FAC fails to correct the deficiencies, and Plaintiffs cannot meet their pleading burden by incorporating the vacated preliminary injunction order.  (*See* FAC ¶ 45.)

The County has engaged in good-faith negotiations with the parties to this lawsuit and remains committed to working to combat the homelessness crisis.  Plaintiffs' claims against the County, however, remain untenable.

## I.    Plaintiffs' Claims Are Not Justiciable

Plaintiffs still have a standing problem, individually and collectively.

Other than Plaintiffs' disability discrimination claims, the FAC purports to state all claims against the County on behalf of undifferentiated "Plaintiffs."  But not every Plaintiff has standing to pursue each claim.  For example, Plaintiffs include prominent real estate developers and land owners who do not allege they are indigent or African-American, and thus cannot pursue claims under California Welfare and Institutions Code ("WIC") section 17000 or for race-based discrimination.  The majority of Plaintiffs' claims suffer from a similar deficiency—at least some of the Plaintiffs simply have not suffered the injury alleged.  Plaintiffs cannot rely on their state-law claim for "taxpayer waste" to circumvent Article III standing.  *Cantrell v. Cty. of Long Beach*, 241 F.3d 674, 683-84 (9th Cir. 2001).

543833.3

**Exhibit 36**
**Page 1532**

MILLER BARONDESS, LLP

Matthew Umhofer
Elizabeth Mitchell
November 18, 2021
Page 2

Plaintiffs also lack standing because their injuries are not constitutionally cognizable, traceable to the County, or redressable. *See California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (under Article III, each Plaintiff asserting a claim must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief").

The gravamen of the FAC, like the Complaint, is that there is a significant homelessness crisis and Plaintiffs disagree with the County's efforts to address it. Such "injuries" go well beyond what are "traditionally thought to be capable of resolution through the judicial process." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Plaintiffs raise the quintessential kind of generalized grievance that does not constitute an injury-in-fact sufficient to confer standing.

The links in the causal chain are also far too numerous and speculative to support standing. *See, e.g., Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) (plaintiffs lacked standing to challenge a new IRS rule for tax-exempt status for charitable hospitals where it was speculative that a change in policy would result in greater access to private hospitals). Plaintiffs have failed to allege a nexus between their injuries and the largely unspecified County actions that they challenge. The FAC focuses on conduct by the City of Los Angeles ("City"), and on court orders and settlements reached in litigation to which the County was not a party. (*See, e.g.,* FAC ¶¶ 36-37.) Moreover, to the extent Plaintiffs' injuries are allegedly caused by the growth of the homeless population in Skid Row, there are multitudinous contributions to homelessness that are well recognized and Plaintiffs cannot allege the requisite causal link between their alleged harm and the County's efforts to address homelessness.

Finally, while the County shares Plaintiffs' desire to house persons experiencing homelessness ("PEH"), the complex issue of homelessness is simply not capable of being redressed by a federal court order that dictates County and City policy and mandates that they spend hundreds of millions of dollars in a specific manner. Separation of powers and the constitutional rights of PEH bar the relief that Plaintiffs seek. As the Ninth Circuit recently held, "it is beyond the power of an Article III court to order, design, supervise, or implement [a] requested remedial plan … [that] would necessarily require a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches." *See Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) (court could not order the adoption of a comprehensive climate-change scheme even though there was "much to recommend" it and it concerned "a matter of national survival"); *see also M.S. v. Brown*, 902 F.3d 1076, 1090 (9th Cir. 2018) (plaintiffs lacked standing to seek injunction requiring state to issue drivers' licenses since such "intrusive affirmative relief" would be "incompatible with democratic principles" and "violate principles of federalism").

543833.3

**Exhibit 36
Page 1533**

MILLER BARONDESS, LLP

Matthew Umhofer
Elizabeth Mitchell
November 18, 2021
Page 3

## II.     The Claims Against The County Fail As A Matter Of Law

### A.     Plaintiffs' Section 1983 Claims Fail

To state a claim under section 1983, Plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) a municipal policy; (3) the policy amounts to deliberate indifference to their constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Dougherty v. Cty. of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted); *accord Monell v. Dep't of Soc. Servs. of Cty. of New York*, 436 U.S. 658, 694 (1978).

Government entities like the County are liable under section 1983 only for "their *own*" constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted).

### 1.     Plaintiffs Have Not Stated An Equal Protection Claim

Plaintiffs allege two equal protection violations: (1) geographic discrimination against people near "homeless encampments" (FAC ¶ 212); and (2) racial discrimination against African-Americans (*id.* ¶ 214).

Plaintiffs' "geography" classification based on the allegedly disparate enforcement of City anti-vagrancy laws against homeless encampments fails. Geographic location is not a protected class and Plaintiffs cannot plausibly allege the City's enforcement actions are not "rationally related to legitimate legislative goals." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). The City's decision to comply with *Martin* cannot be deemed "irrational."

The FAC also fails to allege how discretionary enforcement of City laws equates to an intent by *the County* to treat Plaintiffs differently than other businesses and citizens throughout Los Angeles. *See id.* (the defendant must have "acted with an intent or purpose to discriminate against the plaintiff"). Similarly, the *City*'s enforcement of the *City*'s law is not—and cannot be—an unconstitutional *County* policy.

Further, the FAC does not allege that Plaintiffs are members of any protected class that was intentionally targeted by government action. Plaintiffs' proposed "class" is comprised of businesses and housed individuals who were incidentally affected by allegedly selective enforcement against third parties—not Plaintiffs. *Lee*, 250 F.3d at 686 (purported discrimination must be "*based upon membership* in a protected class").

Plaintiffs' race-based equal protection claim fares no better. Membership in a protected class, alone, does not demonstrate an equal protection violation. The FAC fails to allege any facts showing *the County* treated Plaintiffs differently, let alone intentionally *and* because of

543833.3

**Exhibit 36**
**Page 1534**

MILLER BARONDESS, LLP

Matthew Umhofer
Elizabeth Mitchell
November 18, 2021
Page 4

race.  Plaintiffs do not identify any County program or benefit to which they were excluded, or any County policy that classifies people by race or has been applied differently based on race. (*See* FAC ¶¶ 41, 43 (referencing "redlining policies" of "the City" and unnamed "federal, state, and local policies . . . in post-war Los Angeles")).  Moreover, all of the contemporary evidence regarding the County cited in the FAC, such as statements by the executive director of LAHSA, indicate both an awareness and desire to "dismantle" any "legacies of systemic racism"—the opposite of discriminatory intent.  (*See, e.g.*, FAC ¶ 42).  No County policy or custom was the "moving force" behind Plaintiffs' alleged injuries.

### 2.    Plaintiffs Have Not Alleged a Due Process Violation

To the extent Plaintiffs seek to assert a procedural due process claim based on "allowing encampments in some areas and not others without review, public comment, vote, or other appropriate process" (FAC ¶ 213), this claim fails because Plaintiffs have not alleged any "substantive property interest entitled to constitutional protection." *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008).  Plaintiffs had no constitutionally cognizable right to weigh in on discretionary enforcement of municipal laws or the City's litigation settlements.  Moreover, the FAC again identifies conduct by the City alone, which cannot amount to a violation of due process by *the County* under *Monell*.

Nor have Plaintiffs stated a substantive due-process violation under the "state-created danger" or "special relationship" exceptions to the general rule that the Constitution "confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 195-96 (1989).

First, Ninth Circuit decisions recognizing the state-created danger theory have applied it to conduct by individual defendants, not government "policies." *See, e.g., Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007).  Moreover, for the state-created danger exception to apply, Plaintiffs must allege that the County took "affirmative actions" that "created or exposed [them] to an actual, particularized danger [they] would not otherwise have faced." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019).  Plaintiffs cannot state a claim against the County for any City policy with respect to Skid Row, which is within City limits and under the City's exclusive jurisdiction.

Second, Plaintiffs admit the County has devoted "significant" effort and resources to the homelessness crisis.  (FAC ¶ 94.)  And the County's prioritization of permanent housing rather than emergency shelters is not a state-created danger.  *See Johnson*, 474 F.3d at 1061 (decision to abandon a more "effective[]" plan did not constitute "affirmative conduct that placed the [plaintiffs] in danger").  Nor do Plaintiffs' allegations of systemic racism satisfy the "affirmative

543833.3

**Exhibit 36
Page 1535**

MILLER BARONDESS, LLP

Matthew Umhofer
Elizabeth Mitchell
November 18, 2021
Page 5

action" required for liability because they do not allege the kind of obvious, immediate, and "particularized danger" to a specific individual that gives rise to a duty of care, or that systemic racism by the County was the proximate cause of their injuries. *Martinez*, 943 F.3d at 1271.

Finally, the "special relationship" exception does not apply here. The *only* relationship that gives rise to this exception is a custodial one in which the state involuntarily restrained the plaintiff's movement. *Campbell v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 (9th Cir. 2011). There are no allegations that Plaintiffs were taken into custody or restrained in any way by the County.

### 3.      Plaintiffs' Municipal Liability Claim  Necessarily Fails

The claim for "Municipal Liability" is conclusory and redundant. An unconstitutional custom or policy is a required element of Plaintiffs' other section 1983 claims against the County. Thus, because the Eleventh and Twelfth Causes of Action fail to state a cognizable constitutional claim, the Thirteenth Cause of Action fails too. *Dougherty*, 654 F.3d at 900.

### B.      Plaintiffs Have Failed To State A Claim For Disability Discrimination

Plaintiffs have added the County to their disability discrimination claims, but the FAC alleges no new facts showing that any of the challenged sidewalk obstruction occurred on County property. Plaintiffs Suarez and Van Scoy allege they have encountered encampments near their homes in Downtown Los Angeles. (FAC ¶¶ 133-38, 151-53). These are City sidewalks over which the County has no jurisdiction, duty, or control. This is confirmed by the allegations in the FAC, which attribute responsibility for the obstructed sidewalks to the City. (*See* FAC ¶¶ 59, 60, 196, 204.)

The federal claims also fail for the independent reason that Plaintiffs Van Scoy and Suarez have not alleged that they were prevented from using sidewalks "by reason of their disabilities." As the Ninth Circuit correctly held, the FAC's allegations that "blocked sidewalks harm everyone who needs to use them and cannot," (FAC ¶ 58), dooms this claim. *See LA All. for Hum. Rts. v. Cty. of Los Angeles*, 14 F.4th 947, 960 (9th Cir. 2021) (Plaintiffs not likely to prove denial of benefits was "by reason of their disabilities" where "allegations centered on the fact that blocked sidewalks '[p]ut [e]veryone at [r]isk'").

### C.      The State Law Claims Are Statutorily Barred And Likewise Fail

Under California law, public entities have absolute immunity unless "otherwise provided by statute." Cal. Gov. Code § 815. The relief Plaintiffs seek does not change the immunity analysis. *See Schooler v. California*, 85 Cal. App. 4th 1004, 1013-14 (2000) (rejecting plaintiff's

543833.3

**Exhibit 36**
**Page 1536**

# MILLER BARONDESS, LLP

Matthew Umhofer
Elizabeth Mitchell
November 18, 2021
Page 6

argument that immunity was unavailable because the complaint sought only injunctive relief). The mandatory injunctive relief Plaintiffs seek would impose financial burdens on the County as real as money damages, and would conflict with the policy behind governmental immunity, which "recognizes that the wisdom of legislative or quasi-legislative action . . . should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained." Cal. Gov. Code, § 818.2 (Law Revision Commission Comments).

Plaintiffs' state law claims fail for additional reasons:

California Code of Civil Procedure § 526a. A claim "under section 526a will not lie where the challenged governmental conduct is legal." *Coshow v. Cty. of Escondido*, 132 Cal. App. 4th 687, 714 (2005). The County's expenditures to help PEH is unquestionably legal. *See San Bernardino Cty. v. Superior Court*, 239 Cal. App. 4th 679, 686 (2015) ("A claim under [526a] does not lie to attack exercises of administrative discretion and may not be employed to interfere with policymaking.").

WIC § 17000. WIC confers broad discretion on counties to determine the form and structure of relief they provide. *Scates v. Rydingsword*, 229 Cal. App. 3d 1085, 1101 (1991). Nothing in the statutory scheme mandates any particular form of assistance, such as the provision of shelter. Nor have Plaintiffs alleged that an individual Plaintiff sought and was deprived of medically necessary care or general assistance. Thus, Plaintiffs have not alleged they were injured by any failure to comply with section 17000's requirement to provide for support when an indigent person is "not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

Negligence. The County's liability can only be based on a statute giving rise to a specific duty, and the statute "claimed to establish the duty must at the very least be identified" in the pleading. *Searcy v. Hemet Unified Sch. Dist.*, 177 Cal. App. 3d 792, 802 (1986); Cal. Gov. Code § 815(a). The FAC alleges the County has an obligation to "control, maintain, and keep safe and clean the public and public-right-of-way areas," "make and enforce" health and safety laws, and "address[] and alleviate" harmful or offensive "condition[s]." (*See* FAC ¶ 161.) However, Plaintiffs identify no statute from which these obligations arise. Even if Measure H could be interpreted as imposing a "duty of care" (and it cannot), the FAC admits that the County has raised sales taxes and has used, in Plaintiffs' own words, "hundreds of millions of dollars" in Measure H funds to aid PEH. (FAC ¶¶ 83-84.) Further, Plaintiffs have not, and cannot, plead a causal relationship between their disparate alleged injuries and any specific statutory duty.

Plaintiffs' attempt to circumvent these deficiencies by characterizing their theory of liability as *respondeat superior* goes nowhere. (FAC ¶ 161.) The FAC does not allege any

543833.3

**Exhibit 36
Page 1537**

MILLER BARONDESS, LLP

Matthew Umhofer
Elizabeth Mitchell
November 18, 2021
Page 7

conduct by an agent or employee, let alone a duty breached by such conduct or a causal relationship between that breach and Plaintiffs' claimed injuries.

_Nuisance_.  Causation is an essential element of public and private nuisance claims.  The FAC alleges that third-party PEH are breaking the law and that their waste, trash, and encampments are harming Plaintiffs' "property values," as well as "health and welfare."  (FAC ¶¶ 177, 179, 182.)  But there is no allegation that the County has participated in creating the nuisance—the County did not cause the waste, fires, or crime complained of.  Nuisance liability cannot extend "to damage suffered as a proximate result of the independent intervening acts of others."  _Martinez v. Pacific Bell_, 225 Cal. App. 3d 1557, 1565 (1990).  And none of the alleged nuisances caused by PEH occurred in the County's jurisdiction; the locations of the alleged nuisances are entirely within the incorporated boundaries of the City.  Moreover, the County cannot be held liable because Plaintiffs admit that the County has made significant efforts to abate the issues.  _See Citizens for Odor_, 8 Cal. App. 5th at 364 (rejecting nuisance claim against city relating to odors from animal droppings because the fact that city "might have considered alternative approaches did not" show "the City caused the alleged nuisance by _failing to act_").

\*      \*      \*

Pursuant to Rule 7-3, we hope to narrow the areas of dispute to lessen the burden on the Court in addressing the County's Rule 12 motion to dismiss.  Please let us know your availability on November 22, 23 or 24, 2021 to discuss these issues.

Sincerely,

Mira Hashmall

cc:    Scott Marcus, Senior Assistant City Attorney
        Carol Sobel, Counsel for Intervenors
        Shayla Myers, Counsel for Intervenor CANGRESS

543833.3

Exhibit 36
Page 1538