SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
617 W. 7th Street, Suite 200
Los Angeles, California 90017
Telephone: (213) 205-6520
Facsimile: (213) 205-6521
mumhofer@spertuslaw.com
emitchell@spertuslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>Defendants. | CASE NO. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT**<br><br>FASC Filed:       November 1, 2021<br>Complaint Filed:  March 10, 2020<br><br>Hearing:<br>Date:       January 24, 2022<br>Time:       8:30 a.m.<br>Location:  Courtroom 9D<br>            411 West Fourth St.<br>            Santa Ana, CA 92701 |

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# **TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ........................................................................ 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 1

    A.    Procedural History .......................................................... 1

III.    LEGAL STANDARD .................................................................. 2

IV.    PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST
THE COUNTY AND THIS COURT HAS THE POWER TO ORDER
THE RELIEF SOUGHT ............................................................... 3

    A.    This Court Enjoys Broad Equitable Powers ........................... 3

    B.    Plaintiffs Have Article III Standing to Bring This Case ............. 5

V.    PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT
THEIR CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983 .............. 7

    A.    Substantive Due Process Claim .......................................... 7

        1.    State Created Danger ............................................ 7

        2.    Special Relationship Doctrine ................................. 11

    B.    Procedural Due Process .................................................. 11

    C.    Equal Protection .......................................................... 13

        1.    Geographic Discrimination ..................................... 13

        2.    Racial Discrimination ........................................... 14

    D.    Municipal Liability ....................................................... 15

VI.    PLAINTIFFS HAVE ALLEGED SUFFFICIENT FACTS TO
SUPPORT THEIR DISABILITY-RELATED CLAIMS ........................... 15

VII.    PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO
SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW ...................... 19

    A.    Cal. Civ. Code §§ 3490; 3501 ........................................... 19

    B.    Negligence ................................................................. 23

    C.    Taxpayer Waste Claim (CCP Section 526a) ........................... 23

    D.    Statutory Immunity is Inapplicable to Claims for Equitable and
Injunctive Relief .......................................................... 24

VIII.    CONCLUSION ........................................................................ 25

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO THE CITY OF LOS ANGELES' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**CASES** PAGE(S)

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...................................................................................3

*Benetatos v. City of Los Angeles,*
  235 Cal. App. 4th 1270 (2015) ................................................................21

*Birke v. Oakwood Worldwide,*
  169 Cal. App. 4th 1540 (2009) ........................................................20, 22

*Brown v. Plata,*
  563 U.S. 493 (2011) ...................................................................................4

*Cedar Point Nursery v. Hassid,*
  141 S. Ct. 2063 (2021) ........................................................................12, 13

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
  631 F.3d 939 (9th Cir. 2011) ..................................................................16

*Chiatello v. City & County of San Francisco,*
  189 Cal. App. 4th 472 (2010) .................................................................24

*City of Los Angeles v. Superior Court,*
  194 Cal. App. 4th 210 (2011) .................................................................13

*Cohen v. City of Culver City,*
  754 F.3d 690 (9th Cir. 2014) ................................................17, 18, 19

*Crowder v. Kitagawa,*
  81 F.3d 1480 (9th Cir. 1996) ...........................................................16, 17

*Department of Fish & Game v. Superior Court,*
  197 Cal. App. 4th 1323 ...........................................................................23

*DeShaney v. Winnebago County Department of Social Services,*
  489 U.S. 189 (1989) .................................................................................11

*Fry v. Napoleon Community Schools,*
  137 S. Ct. 743 (2017) ...............................................................................16

*Gomillion v. Lightfoot,*
  364 U.S. 339 (1960) .................................................................................14

*Harnett v. Sacramento County,*
  195 Cal. 676 (1925) .................................................................................24

*Harris v. Board of Supervisors,*
  366 F.3d 754 (9th Cir. 2004) ....................................................................4

*Hason v. Medical Board of California,*
  279 F.3d 1167 (9th Cir. 2002) ................................................................19

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

iii

*Hernandez v. City of San Jose*,
    897 F.3d 1125 (9th Cir. 2018) .................................................................. 8

*Huezo v. Los Angeles Community College District*,
    672 F. Supp. 2d 1045 (C.D. Cal. 2008) .................................................. 4

*Johnson v. Riverside Healthcare System, LP*,
    534 F.3d 1116 (9th Cir. 2008) .................................................................. 3

*Kennedy v. City of Ridgefield*,
    439 F.3d 1055 (9th Cir. 2006) .................................................................. 8

*Kentuck Department of Corrections v. Thompson*,
    490 U.S. 454 (1989) ................................................................................ 11

*LA Alliance for Human Rights v. County of Los Angeles*,
    14 F.4th 947 (9th Cir. 2021) .................................................................... 4

*Lonberg v. City of Riverside*,
    300 F. Supp. 2d 942 (C.D. Cal. 2004) .................................................. 15

*Los Altos Property Owners Ass'n v. Hutcheon*,
    69 Cal. App. 3d 22 (1977) ...................................................................... 24

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................. 5

*McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*,
    298 U.S. 178 (1936) .................................................................................. 3

*Montoya v. City of San Diego*,
    Case No. 19-CV-0054,
    2021 WL 1056594 (S.D. Cal. Mar 19, 2021) ................................... 17, 18

*Morales v. City of Los Angeles*,
    214 F.3d 1151 (9th Cir. 2000) .................................................................. 3

*Northstar Financial Advisors Inc. v. Schwab Investments*,
    779 F.3d 1036 (9th Cir. 2015) .................................................................. 7

*Ocean Advocates v. U.S. Army Corps of Engineers*,
    402 F.3d 846 (9th Cir. 2005) .................................................................... 5

*Pauluk v. Savage*,
    836 F.3d 1117 (9th Cir. 2016) .................................................................. 8

*People v. ConAgra Grocery Products Co.*,
    17 Cal. App. 5th 51 (2017) ...................................................................... 20

*Rodde v. Bonta*,
    357 F.3d 988 (9th Cir. 2004) .................................................................... 4

*Rogers v. Lodge*,
    458 U.S. 613 (1982) ................................................................................ 14

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

iv

*Rosales v. County of San Diego,*
    511 F. Supp. 3d 1070 (S.D. Cal. Jan. 5, 2021) ..................................... 15

*San Diego Gas & Electric Co. v. Superior Ct.,*
    13 Cal. 4th 893 (1996) ............................................................................ 20

*Santa Cruz Homeless v. Bernal,*
    514 F. Supp. 3d 1136 (N.D. Cal. Jan. 20, 2021), *order modified,*
    Case No. 20-cv-09425,
    2021 WL 1256888 (N.D. Cal. Apr. 1, 2021) ........................................... 8

*Sausalito/Marin County Chapter of the California Homeless Union v. City of Sausalito,*
    522 F. Supp. 3d 648 (N.D. Cal. Mar. 1, 2021), *modified in par*t,
    Case No. 21-cv-01143,
    2021 WL 2141323 (N.D. Cal. May 26, 2021) .......................................... 9

*Schneider v. State,*
    308 U.S. 147 (1939) ........................................................................... 21, 22

*Schooler v. State,*
    85 Cal. App. 4th 1004 (2000) ................................................................. 25

*Silvas v. E*Trade Mortgage Corp.,*
    514 F.3d 1001 (9th Cir. 2008) .................................................................. 3

*Smith v. Corp. of Washington,*
    61 U.S. (20 How.) 135 (1858) ................................................................ 21

*Solid Waste Agency of North Cook County v. U.S. Army Corps of Engineers,*
    101 F.3d 503 (7th Cir. 1996) .................................................................. 20

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ................................................................ 15

*Swann v. Charlotte-Mecklenburg Board of Education,*
    402 U.S. 1 (1971) ...................................................................................... 4

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) .................................................................................. 3

*Tyler v. Cuomo,*
    236 F.3d 1124 (9th Cir. 2000) .................................................................. 5

*United States v. James Daniel Good Real Property,*
    510 U.S. 43 (1993) .................................................................................. 11

*Vanderhurst* v. *Tholcke,*
    113 Cal. 147 (1896) ................................................................................ 21

*Whisnant v. United States,*
    400 F.3d 1177 (9th Cir. 2009) .................................................................. 3

*Willits v. City of Los Angeles,*
    925 F. Supp. 2d 1089 (C. D. Cal. 2013) ........................................... 16, 18

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO THE CITY OF LOS ANGELES' MOTION TO DISMISS

*Wood v. Ostrander*,
  879 F.2d 583 (9th Cir. 1989) .................................................................. 8

*Yick v. Hopkins*,
  118 U.S. 356 (1886) ............................................................................. 14

**STATUTES**

42 U.S.C. § 1983 ............................................................................... ii, 7

42 U.S.C. § 12182(a) ............................................................................ 16

California Civil Code § 54(c) ................................................................. 15

California Civil Code § 54.3 .................................................................. 15

California Civil Code § 3479 ................................................................. 20

California Civil Code § 3490 ................................................................. 19

California Civil Code § 3501 ................................................................. 19

California Government Code § 815.2(a) .................................................. 23

California Code of Civil Procedure § 526a ...................................... 23, 24

California Government Code § 814 .................................................... 24, 25

California Government Code § 815.2 ...................................................... 24

California Government Code § 818.2 ...................................................... 24

California Government Code § 820.2 ...................................................... 24

California Welfare & Institutions Code § 17000 .................................. 2, 4

**RULES**

Federal Rule of Civil Procedure 15(d) .................................................... 7

Federal Rule of Civil Procedure 12(b)(1) ............................................... 2

Federal Rule of Civil Procedure 12(b)(6) ............................................... 3

**REGULATIONS**

28 C.F.R. § 35.130(b)(7) (2016) ............................................................ 16

28 C.F.R. § 35.150 ............................................................................... 18

28 C.F.R. § 35.151 ............................................................................... 18

28 C.F.R. § 35.151(b) .......................................................................... 18

36 C.F.R. § 1191, app. D, § 403.5.1 (2014) ........................................... 16

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO THE CITY OF LOS ANGELES' MOTION TO DISMISS

**OTHER AUTHORITIES**

Judicial Council of California, Civil Jury Instructions, CACI No. 2020 (2008) ........20

Judicial Council of California, Civil Jury Instructions, CACI No. 2021 (2011) ........23

Restatement (Second) of Torts § 821C (1979)...............................................................22

Restatement (Second) of Torts § 838 (1979).................................................................21

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO THE CITY OF LOS ANGELES' MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Largely because of this lawsuit and the Court's focus on these issues, the City has made some progress in the last 21 months bringing a modest number of new shelter beds online.  Still, the City has no comprehensive plan to address homelessness, even as more people perish and encampments proliferate.

The City and County squabble over audits while increasing numbers of unsheltered individuals suffer from crime, fires, violence, mental illness, and drug overdoses.  Residents of this city—both housed and unhoused—are desperate for relief.

Instead of marshalling its resources to solve the crisis, the City of Los Angeles seeks dismissal of this well-founded suit.  But the City's actions and omissions have directly led to the catastrophe on the streets, and the City must be held accountable therefor.  Plaintiffs have alleged sufficient facts to support its causes of action, and the motion should be denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Procedural History

Plaintiffs are a broad coalition of diverse interests—residents (housed and unhoused), community members, small business owners, non-profits, and service providers—all of whom are fed up with the utter failure of the City and County to address the homelessness crisis.  Plaintiffs filed this case at the start of the pandemic, on March 10, 2020.  Nine days later, all parties agreed to stay litigation to explore settlement intended to urgently resolve the homelessness crisis for the benefit of all parties and the Los Angeles community as a whole.  Less than three months later, the City and County officially voted to enter into global settlement negotiations.  The City and County, despite many differences, and as a result of an injunction by this Court, agreed to produce 5,300 new beds to serve persons experiencing homelessness

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

within nine months, and another 1,400 beds with other conditions.  Significant progress was made.

The County chose not to engage and settlement discussions went nowhere. The County filed a motion to dismiss the first complaint on March 29, 2021, and Plaintiffs filed a motion for preliminary injunction on April 12, 2021.  On April 20, 2021, this Court granted Plaintiffs' motion and issued an injunction against the City and County finding Plaintiffs were likely to succeed on theories of Equal Protection, State-Created Danger, Special Relationship, Substantive Due Process, violation of the County's duty under Welfare and Institutions Code section 17000, and the Americans with Disabilities Act.  The City and County immediately appealed.  On May 11, 2021, this Court denied the County's motion to dismiss the first complaint.  On September 25, 2021, the ninth circuit vacated this Court's order largely on standing grounds.  Plaintiffs filed their amended and supplemental complaint after the Ninth Circuit vacated this Court's April 20, 2021 preliminary injunction. Specifically the Ninth Circuit noted a delta between the Court's order and Plaintiffs' allegations and facts: Plaintiffs had not demonstrated evidence that Plaintiffs and members of the Alliance are Black because Plaintiffs had not moved on any issues that were based on race, had no unsheltered homeless individuals named in the original complaint, had not alleged existence of a Special Relationship or shown they are confined to Skid Row, or were deprived of medically necessary care. Plaintiffs have amended and supplemented their complaint to add Wenzial Jarrell, an unsheltered Black man living in Skid Row, as a Plaintiff, and added a number of named Alliance members who are also unsheltered and persons of color. Plaintiffs have supplemented their Equal Protection, Due Process allegations and 17000 claims to address the Ninth Circuit's concerns.

## III.    LEGAL STANDARD

To prevail on a motion brought under Federal Rule of Civil Procedure 12(b)(1), Plaintiffs need only demonstrate that they meet the jurisdictional

requirements to be before this Court through competent allegations. *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). When considering a facial attack on subject matter jurisdiction under 12(b)(1), this Court should consider all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2009) (relying on factual allegations in complaint where 12(b)(1) motion to dismiss challenged legal question).

Similarly, when a motion to dismiss is brought under Federal Rule of Civil Procedure 12(b)(6), complaints need only contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This is not an onerous burden." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). The Court "must consider the complaint in its entirety," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), accept as true "[a]ll allegations of material fact . . . in the light most favorable to the nonmoving party[,]" *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008), and "draw all reasonable inferences in favor of the non-moving party." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). Indeed, "[a] complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Silvas*, 514 F.3d at 1003-04.

## IV.    PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE COUNTY AND THIS COURT HAS THE POWER TO ORDER THE RELIEF SOUGHT

### A.    This Court Enjoys Broad Equitable Powers

As this Court has already recognized, and the Ninth Circuit has confirmed, district courts have broad power to order equitable relief when a constitutional or statutory right has been violated. (*See* Order Den. County's Mot. to Dismiss ("Order re County MTD") at 5, ECF No. 300 ("[I]f the Court finds an ongoing constitutional

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

violation, it is obligated to impose a remedy.  Budgetary and capacity concerns can be adequately addressed by the Court by giving the party sufficient discretion in how to remedy the violation.")); *see also LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 961 (9th Cir. 2021) ("The district court undoubtedly has broad equitable power to remedy legal violations that have contributed to the complex problem of homelessness in Los Angeles.").

"[T]he law and the Constitution demand recognition of certain [] rights. . . . If government fails to fulfill [its] obligation, the courts have a responsibility to remedy the resulting [] violation." *Brown v. Plata*, 563 U.S. 493, 511 (2011) ("*Plata*"); (*see also* Pls.' Resp. to Ct. Req. for Br'g. at 13-19, ECF No. 239, incorporated herein by reference.)  The City argues, incorrectly, that this Court lacks the authority to issue the injunctive relief requested by Plaintiffs. (City Motion to Dismiss ("City MTD") at 6-7, ECF No. 369-1); *cf. Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)(when considering the affirmative acts of a government body "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies").

This Court also possesses the power to enjoin the City to prevent current or imminent statutory violations.  *See*, *e.g.*, *Rodde v. Bonta*, 357 F.3d 988, 999 (9th Cir. 2004); *Harris v. Bd. of Supervisors*, 366 F.3d 754, 759 (9th Cir. 2004); *Huezo v. L.A. Cmty. Coll. Dist.*, 672 F. Supp. 2d 1045, 1054 (C.D. Cal. 2008).  In *Rodde*, Los Angeles County was considering closing a hospital which provided services to plaintiffs and other special needs patients receiving care through Medi-Cal.  *Id.* at 990.  The district court found that the county would be unable to fill its statutory obligations under Welfare and Institutions Code section 17000 if it closed the hospital, which would have led to significant harm to the plaintiffs.  *Id.* at 993-94. The district court imposed—and the court of appeals upheld—an injunction

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

4

obligating the county to keep the hospital open which required it to spend upwards of $50 million per year to provide services.  *Id.* at 999-1000.

Here Plaintiffs do not seek to have this Court "dictate the precise way the City should address homelessness," (City MTD at 7) but seek injunctive relief tailored to the tragic problem at issue: death and disarray on the streets of Los Angeles resulting from the City and County's failed policies and practices and billions of dollars in wasted funds.

### B.      Plaintiffs Have Article III Standing to Bring This Case

Plaintiffs possess Article III standing because they each have alleged that they (1) suffered an "injury in fact" which is (2) "fairly traceable" to actions by the City, and (3) it is "likely" that the injury will be redressed by a favorable decision by this Court.  *See Tyler v. Cuomo*, 236 F.3d 1124, 1131-32 (9th Cir. 2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

An injury is "fairly traceable" to a defendant's conduct when a causal connection is shown between the injury alleged and the conduct of the defendant. *Tyler*, 236 F.3d at 1132.  In *Tyler*, the court found that a group of Plaintiffs suing the City of San Francisco alleged conduct that was "fairly traceable" to the City because the City refused to hold meetings to hear the complaints of the homeowners, despite possibility that the meetings would lead to no substantive change.  *Id.* (reasoning that the action was sufficient as it was not "the result of the independent action of some third party not before the court.").  Importantly, at early stages of litigation, the traceability requirement of standing is a low bar to clear—as one court put it, "the causal connection . . . need not be so airtight at this stage of litigation as to demonstrate that the plaintiffs would succeed on the merits."  *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (citation omitted) (affirming denial of summary judgment on standing grounds, while noting that while other factors may impact a plaintiff's harm, the injury may still be sufficiently traceable).  Here, at the early stages of this litigation, and indeed before this litigation

Spertus, Landes & Umhofer, LLP

1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

has even begun in earnest, Plaintiffs' allegations clear this low bar. Plaintiffs allege that the City, by and through its officials and employees:

- For decades has instituted an explicit and implicit policy of "Containment" which relocates unhoused individuals to the Skid Row area and then seeks to keep them there where they and others are deluged with crime, violence, fire risk, and unsanitary conditions (FASC ¶¶ 30-45, ECF No. 361);

- Has focused nearly exclusively on building permanent supportive housing, contrary to the voters' direction, which helps too few, is too expensive, and takes too long to ever make a meaningful dent in this crisis. Meanwhile more die and decay in the streets while developers get wealthy (FASC ¶¶ 5, 17, 72-81; 85-93);

- Fails to balance its obligations to the unhoused and housed individuals by allowing tremendous amounts of refuse, rotten food, human waste, and personal property to occupy sidewalks, streets, and parks otherwise meant for public use, resulting in deplorable conditions for the entire community and blocked sidewalks for the disabled (FASC ¶¶ 57-66);

- Permits rampant drug use and sales, violent crime, and fire risk on its property which puts other property owners and unhoused residents both at risk (FASC ¶¶ 46-51);

- Has failed for years to meet its state-required housing goals, resulting in skyrocketing prices and more people without basic shelter (FASC ¶ 44);

- With a history of racist policies, directly leading to the discrimination of Black people and the prevention of Black family wealth accumulation, continuing to maintain policies knowing said policies and procedures would have a discriminatory effect and lead to the disproportionate representation of Black people experiencing homelessness (FASC ¶ 43); and

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

- Tragically wasting funds that could and should go to resolving this crisis. (FASC ¶¶ 72-81; 85-92.)

The City is mistaken in its contention that *Morongo Band of Mission Indians v. California State Bd. of Equalization* mandates that the original complaint must be evaluated to support standing, because *Morongo* does not apply to supplemental pleadings. *Northstar Fin. Advisors Inc. v. Schwab Invs.,* 779 F.3d 1036, 1044 (9th Cir. 2015) ("[P]arties may cure standing deficiencies through supplemental pleadings.") (citation omitted). *Northstar* specifically distinguishes *Morongo*:

> While *Morongo* does contain the broad statement that "subject matter jurisdiction must exist as of the time the action is commenced" and that a lack of subject-matter jurisdiction at the outset cannot be cured subsequently, it is now clear, if it was not then, that this rule is more nuanced than the inflexibility suggested by its language—both as it relates to curing jurisdictional defects through supplemental pleadings [ ] and other circumstances in which defects in subject-matter jurisdiction were cured by the substitution, addition, or elimination of a party. . . . [T]he rule as stated in *Morongo* does not extend to supplemental pleadings filed pursuant to Fed.R.Civ.P. 15(d)."

*Id*. at 1046 (citations omitted). The rationale behind permitting supplemental pleadings to correct a defective complaint is to "circumvent[] 'the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief.'" *Id*. at 1044 (citations omitted). There is no sense in dismissing this action simply to force the Plaintiffs to file a new action with the same allegations.

# V.    PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983

## A.    Substantive Due Process Claim

### 1.    *State Created Danger*

Plaintiffs have properly alleged Defendant City has placed its homeless and housed constituents in danger by adopting and maintaining policies and laws, including (i) corralling and containing unhoused people in an area without sufficient shelter, support, sanitation, or police assistance resulting in massively unhealthy and

7

dangerous conditions (FASC ¶¶ 30-40), (ii) a long history of implementing and repeating racist policies and practices (FASC ¶¶ 41-45),  and (iii) misusing voter-approved funds to focus exclusively on a solution which is no solution at all (FASC ¶¶ 72-92) all of which /has caused or exacerbated homelessness, and continues to do so, and have done so with deliberate indifference to the health and safety of its constituents. (FASC ¶ 217.)

The Ninth Circuit has recognized the constitutional right, under the Due Process clause, to be free from state-created danger.  *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-62 (9th Cir. 2006).  When a state or local official acts to place a person in a situation of known danger, with deliberate ignorance towards their person or physical safety, the state violates due process.  *Id.*; *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1137 (9th Cir. 2018) (police officers affirmatively placed political rally attendees in danger by requiring attendees to exit the rally into a crowd of known violent protestors); *Kennedy*, 439 F.3d at 1067 (officer knew an aggressor was violent and told aggressor of the victim's allegations against him after promising the victim to alert her before doing so); *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (officer arrested and impounded the car of an intoxicated driver, leaving the passenger alone in the middle of the night in a high crime area where she was later assaulted while trying to get home); *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016) ("[S]tate actor can be held liable when that state actor did 'play a part' in the creation of a danger.") (citation omitted).

Courts have recently recognized that a municipality's policy that places homeless individuals in danger can violate due process and merit injunctive relief.  In *Santa Cruz Homeless v. Bernal*, the court took judicial notice of the COVID-19 pandemic and granted homeless plaintiffs' preliminary injunction to halt the closure of two parks where the plaintiffs were camping.  514 F. Supp. 3d 1136, 1138 (N.D. Cal. Jan. 20, 2021), *order modified*, Case No. 20-cv-09425, 2021 WL 1256888 (N.D. Cal. Apr. 1, 2021)  The court held that by closing the parks without an alternate

shelter, the State would place residents in a more vulnerable situation and in greater danger. *Santa Cruz Homeless Union*, 514 F. Supp. 3d at 1142. Similarly, in *Sausalito/Marin County Chapter of the California Homeless Union v. City of Sausalito*, 522 F. Supp. 3d 648, 650-51 (N.D. Cal. Mar. 1, 2021), *modified in part*, Case No. 21-cv-01143, 2021 WL 2141323 (N.D. Cal. May 26, 2021), a court enjoined a City Counsel from enforcing resolutions to move a camping population to a different location, and from prohibiting all day camping, again due to the risks associated with the COVID-19 virus. The court held that those actions would increase rather than decrease health risks to campers and the surrounding community and place the homeless population in imminent danger. *Sausalito/Marin Cnty.*, 522 F. Supp. 3d at 659-60. Here the facts are much more compelling because Defendants' policies have already created incredible danger for those living on the streets. (FASC ¶¶ 46-56.) Defendant City provides two arguments why Plaintiffs' state-created danger claim should be dismissed, neither of which hold water.

*First,* Defendant City argues that the Containment Policy was denounced in 2016 and that the DTLA2040 plan is only a recommendation and not official policy (yet), therefore there is no current containment plan on which to base such a claim. (City MTD at 12.) But Defendants ignore the allegations (which must be accepted as true at this stage) that regardless of official denunciation of the Policy, it unofficially continues today through a concentration of housing and services only available in Skid Row (as *evidenced* by, *inter alia*, the DTLA2040 plan recommendation), consistent encouragement and often requirement of relocation to the Skid Row area, and discouragement of leaving. (FASC ¶¶ 31-40.) And by engaging in this conduct without providing sufficient services such as sanitation, police, and fire prevention, the City and County together have created a clear and present danger to which they are deliberately indifferent. (FASC ¶¶ 46-61.)

*Second*, the City argues that its decision to dedicate nearly all Proposition HHH funds to permanent supportive housing (PSH) cannot be considered a state-created

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

danger because it is better than not doing anything at all. (City MTD at 13.)  But the City uses the wrong standard.  The *voters* passed Proposition HHH, which gave the City an independent revenue stream (i.e. not general fund money) and a clear directive on how to the use the funds.[1]  So the relevant query is not whether the City has put Plaintiffs in a worse position by focusing exclusively on PSH rather than doing nothing *because the City has the money regardless*: the decision to do nothing was not possible.  Instead, the relevant query is whether the City has put Plaintiffs in a worse position by using the money to focus exclusively on PSH instead of the balanced approach the voters approved.  And Plaintiffs have properly alleged facts supporting that the City has, in fact, put Plaintiffs in a worse position as a result of that choice.  (FASC ¶ 217 ("The City and County created a further danger by focusing nearly exclusively on s0-called permanent housing options without balancing interim and emergency needs, which could not ever meet the ostensible

---

[1] The Proposition HHH ballot asked the following question:

> To provide safe, clean affordable housing for the homeless and for those in danger of becoming homeless, such as battered women and their children, veterans, seniors, foster youth, and the disabled; and provide facilities to increase access to mental health care, drug and alcohol treatment, and other services; shall the City of Los Angeles issue $1,200,000,000 in general obligation bonds, with citizen oversight and annual financial audits?

Included in the ballot was the following summary of the proposal:

> The City would issue up to $1,200,000,000 in general obligation bonds to buy, build, or remodel facilities to provide
> - Supportive housing for homeless individuals and families where services such as health care, mental health and substance abuse treatment, education, and job training may be provided
> - Temporary shelters and facilities, such as storage and showers;
> - Affordable housing (up to 20% of bond funds), including veterans housing for individuals and families with low incomes; and
> - Related infrastructure.

https://ballotpedia.org/Los_Angeles,_California,_Homelessness_Reduction_and_Prevention_Housing,_and_Facilities_Bond_Issue,_Measure_HHH_(November_2016); http://clkrep.lacity.org/election/final%20homelessness%20hhh%20for%20web.pdf.

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

1  goal, and caused more people to remain unsheltered exacerbatingor causing

2  significant mental and physical decline at such a rate).

3  **2.    *Special Relationship Doctrine***

4  Plaintiffs have properly alleged the City's explicit and implicit Containment

5  Policy compels unhoused individuals into a controlled and restricted area—one it

6  knows to be life-threatening—and fails to provide for their protection.  *DeShaney v.*

7  *Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 200 (1989) ("[I]t is the State's

8  affirmative act of restraining the individual's freedom to act on his own behalf—

9  through incarceration, institutionalization, *or other similar restraint of personal*

10  *liberty*—which is the 'deprivation of liberty' triggering the protections of the Due

11  Process Clause") (emphasis added) (citation omitted).  For example, Wenzial Jarrell

12  "came to Skid Row after the death of his first wife because he was told he could find

13  housing and services there" (FASC ¶ 116) and Christopher Roper "made his way to

14  Skid Row because he knew resources for those experiencing homelessness were

15  supposed to be available there." (FASC ¶ 96(d)).  True, no Plaintiff is physically

16  behind bars.  But they are effectively brought to Skid Row without volition and

17  prevented from leaving because there is no other place for them to go. (FASC ¶ 30-

18  40; 72-92.) As a result, they are trapped in the area subject to significant danger and

19  health hazards.  Plaintiffs have, at minimum, alleged sufficient facts for pleading at

20  this stage.

21  **B.    Procedural Due Process**

22  Plaintiffs have also properly alleged the City has violated procedural due

23  process under the Fifth and Fourteenth Amendments by infringing on the interests of

24  residents without due process.  Under the doctrine of procedural due process,

25  Defendants may not interfere with a liberty or property interest without following

26  constitutionally sufficient procedures.  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454,

27  460 (1989).  Such procedures require at a minimum "notice and an opportunity to be

28  heard before the Government deprives them of property."  *United States v. James*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

11

*Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

Here, Plaintiffs have properly alleged that for over 40 years, Defendant City has repeatedly taken actions which concentrate homeless individuals in unsafe areas, particularly in Skid Row. (FASC ¶¶ 30-45.)  The City and County were both complicit in this policy.  (*Id*.)  This policy has been implemented without proper procedures for the people affected by it, thus depriving them of their property. (FASC ¶¶ 186, 212-213.)  For example, Joseph Burk cannot find tenants or otherwise use or sell his property due to the dangerous conditions in the Containment area. (FASC ¶¶ 100-101.)  Used needles and fecal matter fill gutters and accumulate on Mark Shinbane's property.  He routinely spends hundreds of thousands of dollars a year attempting to keep some semblance of sanitation only for the waste to invariably return.  (FASC ¶ 96(k).)  Harry Tashdjian has been forced to routinely repair parts of his building which are affected by out-of-control fires, urination and feces, and frequent graffiti.  (FASC ¶¶ 140-146.)  Forcing residents to pay for basic municipal services, after depreciating their property values through City and County policy of containment, is economically equivalent to exacting a taking upon these residents without due process and without just compensation.  Even if Plaintiffs' claims did not involve fundamental rights—which they do—the City cannot justify any "rational basis" for these policies in light of the clear harm being inflicted on Plaintiffs daily.

The City argues that a Taking cannot lie based on third party actions, but recent Supreme Court authority begs to differ.  In *Cedar Point Nursery v. Hassid*, the Supreme Court confirmed that regulatory action by the government which permits third party intrusion can be considered a "taking" under the Fifth Amendment. 141 S. Ct. 2063, 2080 (2021) ("The access regulation grants labor organizations a right to invade the growers' property.  It therefore constitutes a *per se* physical taking."). While *Cedar Point Nursery* discussed a physical invasion of property, it also reviewed the history of the Court's recognition of a "regulatory taking" which "applies to use restrictions as varied as zoning ordinances, [ ] orders barring the

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

12

mining of gold, [ ] and regulations prohibiting the sale of eagle feathers." *Id.* at 2072 (citations omitted).  To determine whether government action which does not physically invade the property nonetheless constitutes a taking, courts "balanc[e] factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id.* These are known as the Penn Central factors.  *Id.* at 2076.  The question is whether the government has "restricted a property owner's ability to use his own property." *Id.* at 2072.[2]   Here, Plaintiffs have properly alleged significant impact of the practices and policies of the City and County,[3] substantial interference with investment-backed expectations, and unreasonable government action. (FASC, *passim*; *see also* FASC ¶¶ 97-114.)

### C.   Equal Protection

#### 1.   *Geographic Discrimination*

Because the City's arguments mirror the County's, Plaintiffs incorporate herein the arguments set forth in their Opposition to Defendant County of Los Angeles' Motion to Dismiss, filed concurrently with this opposition.

The City, unlike the County, at least attempts to articulate a "rational basis" for its geographic discrimination.  (City MTD at 9.)  Yet nothing in the City's brief explains why particular locations (Skid Row, Venice/405 underpass) were chosen over other locations, particularly when those locations are some of the most dangerous in America.  There is no rational, non-discriminatory purpose for corralling the destitute and sick into a 50-square block area (or under a freeway) and then effectively abandoning them without the assistance they so desperately need.

---

[2] California Inverse Condemnation law evaluates these factors, in addition to permitting "mere damage to property" to constitute a taking.  *City of Los Angeles v. Superior Ct.*, 194 Cal. App. 4th 210, 220 (2011) (citation omitted).

[3] The City also cites cases which stand for the proposition that frustration of contracts is insufficient to constitute a "taking".  (*See* City MTD at 15-16.)  Plaintiffs are not alleging frustration of commercial contracts, but a regulatory taking of property.  These cases are inapplicable.

13

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Keeping homeless people—particularly the most sick, desperate individuals—in one geographic area to placate other constituents, is not "rational."

2.    *Racial Discrimination*

The FASC alleges the City and County, together with other state actors, have engaged in discriminatory actions, and set discriminatory policies, which have resulted in a disproportionate representation of Black people experiencing homelessness.  (FASC ¶¶ 41-45, 214.)

The City argues that Plaintiffs fail to identify a discriminatory policy or practice that was enacted "because of" its discriminatory effect. (City MTD at 10 (emphasis omitted)). But the Supreme Court has historically found laws which were "fair on its face" could still constitute violations of the Equal Protection clause where the discrimination is so clear that the only conclusion that could be drawn was that the animating force behind the action was "hostility to the race and nationality to which the petitioners belong, and which, in the eye of the law, is not justified." *Yick v. Hopkins*, 118 U.S. 356, 373-74 (1886); *see also Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960) (City of Tuskegee was liable for redistricting where it redrew the city limits from a square into an oddly formed "twenty-eight-sided figure," the act of which was neutral on its face but the effect of which was "to remove from the city all save four or five of its 400 Negro voters while not removing a single white voter or resident."); *Rogers v. Lodge*, 458 U.S. 613, 618 (1982) ("[D]iscriminatory intent need not be proved by direct evidence. 'Necessarily an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another.'" (citation omitted)). The acute overrepresentation of Black people in the homeless community (40 percent), compared to the population of Los Angeles in general (9 percent), undisputed actions of historical discrimination which has caused that overrepresentation, and continued affirmative choices to continue a path which the

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

City *knows* will continue to cause a disproportionate impact on black people, all support Plaintiffs' claim.

### D.    Municipal Liability

The City's arguments concerning municipal liability also echo the County's, and in response, Plaintiffs incorporate Plaintiffs' Opposition to Defendant County of Los Angeles' Motion to Dismiss.  Plaintiffs properly allege all actions were taken by City agents pursuant to official "policy, procedure, or customs held by the City and County of Los Angeles" (FASC ¶ 224) with "deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff[s]." (*Id.*) Because Plaintiffs have identified clear constitutional injuries and policies of Defendant City which were the moving force behind those injuries, Plaintiffs have exceeded the standard required under *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Beyond listing generally the policies and practices, identification of the specific actors and specific policies, procedures, or customs under *Monell* are a proper subject for discovery.  *See Rosales v. County of San Diego*, 511 F. Supp. 3d 1070, 1103-04 (S.D. Cal. Jan. 5, 2021) (denying motion to dismiss on basis of allegedly threadbare allegations because at early point in case "listing of informal or overarching deficient policies was adequate . . . 'particularly since information relating to the policies, customs, and practices of County Defendants . . . is likely to be easily available to them.'") (citations omitted).

## VI.    PLAINTIFFS HAVE ALLEGED SUFFFICIENT FACTS TO SUPPORT THEIR DISABILITY-RELATED CLAIMS[4]

Sidewalks throughout Skid Row and elsewhere in Los Angeles are

---

[4] All three disability-related claims—the ADA, Rehabilitation Act, and California Disabled Persons Act—are based on the same conduct and largely involve the same analysis.  *See* Cal. Civ. Code § 54(c).  The City claims that the CDPA does not apply to the City because Civil Code section 54.3 limits application to "person or persons, firm or corporation."  Cal. Civ. Code § 54.3. But section 54.3 deals with

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

completely blocked and impassible, requiring individuals restricted to wheelchairs (including two named plaintiffs) to dangerously traverse the middle of the road. (FASC ¶¶ 11, 59, 96(j), 152.) The Americans with Disability Act (ADA) requires individuals with disabilities be afforded "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . [.]" 42 U.S.C. § 12182(a). The ADA's "antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.'" *Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 945 (9th Cir. 2011) (citation omitted). Title II therefore "requires a public entity to make 'reasonable modifications' to its 'policies, practices, or procedures' when necessary to avoid such discrimination." *Fry v. Napoleon Cmty. Schs*., 137 S. Ct. 743, 749 (2017) (quoting 28 C.F.R. § 35.130(b)(7) (2016)).  To satisfy the ADA, public sidewalks must have at least "36 inches . . . minimum" clearance, or passable sidewalk. 36 C.F.R. § 1191.1, app. D, § 403.5.1 (2014).  The sidewalks in Skid Row and surrounding area are not accessible due to the accumulation of personal property and piles of hazardous waste as a direct result of the City and County's actions and failures which leave thousands on the street to build their homes on public sidewalks. (FASC ¶¶ 57-61.)  And the City is responsible for maintain the sidewalks in a manner that meets its obligations under the ADA. 36 C.F.R. § 1191, app. D, § 403.5.1 (2014); *Willits v. City of Los Angeles*, 925 F. Supp. 2d 1089, 1093 (C. D. Cal. 2013). Defendant City makes a number of arguments in support its motion to dismiss Plaintiffs' disability-related clams; Plaintiffs take each in turn.

*First,* Defendant City argues it should not be liable because "the sidewalks are *equally* blocked for *all* residents." (City MTD at 17.)  This contention defies common

_____

damages liability; Plaintiffs sue only for equitable relief and therefore section 54.3 is inapplicable.  Additionally, other courts in this district who have evaluated the issue have come to the opposite conclusion. *See Lonberg v. City of Riverside,* 300 F. Supp. 2d 942, 946-49 (C.D. Cal. 2004) (reviewing caselaw in detail and concluding "Section 54.3 encompasses liability by public entities, including City."); Order Den. Def.'s Mot. for J. on the Pleadings at 21, Ruben v. City of Los Angeles, Case No. 15-cv-2378 (C.D. Cal. Feb. 24, 2017), ECF No. 56.

16

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

sense: by analogy, stairs provide "equal access" to all, but the impact and ability to use them is far different for individuals who use mobility devices.  Plaintiffs properly allege that Suarez and Van Scoy are burdened "in a manner different and greater than [sidewalk blockages] burden[] others." *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996).  In *Crowder*, the ninth circuit held that Hawaii's quarantine requirement for animals coming into the state for a period of 120 days was a "policy, practice or procedure which discriminates against visually-impaired individuals" even though the law technically burdened non-disabled individuals as well.  *Id.* at 1481-82, 1485.  The court noted that congress intended the ADA not only to address "outright intentional exclusion" but also some "disparate impact cases of discrimination, for [many] barriers to full participation . . . are facially neutral but may work to effectuate discrimination against disabled persons." *Id.* at 1483.  Likewise, though blocked sidewalks impact everyone, individuals using mobility devices are uniquely burdened insofar as they cannot simply step around or walk through the street to the other side of the blockage.  Instead, they must turn around and go all the way back to the other side of the street, unless that is blocked as well (as it is on 5th and San Pedro, where Van Scoy lives) in which case they cannot traverse the sidewalk at all but must walk in the street at risk of life and limb.  And for Suarez, who uses an electric wheelchair, this process runs the risk of draining his wheelchair battery and leaving him stranded in a dangerous and unhealthy area. The blocked sidewalks pose a unique and amplified danger not present to other individuals. *See e.g. Cohen v. City of Culver City*, 754 F.3d 690, 700 (9th Cir. 2014) ("Obstructed sidewalks exclude disabled persons from ordinary communal life and force them to risk serious injury to undertake daily activities.  This is precisely the sort of 'subtle' discrimination stemming from 'thoughtlessness and indifference' that the ADA aims to abolish.") (citation omitted).

*Second*, Defendant City cites to *Montoya v. City of San Diego*, Case No. 19-CV-0054, 2021 WL 1056594, at *7 (S.D. Cal. Mar 19, 2021) to support its argument

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

17

that the ADA only applies to fixed "architectural barriers" on sidewalks which does not include dwellings.  But the *Montoya* case's "barriers" were quite literally on wheels ("[T]he dockless vehicles are constantly moving objects and their presence in one location is not fixed."), whereas Plaintiffs have alleged the encampments are "virtually permanent" including a years-long encampment under the 405 freeway, and by explicit agreement in the *Mitchell* settlement. (FASC ¶ 60.)  The encampments outside Charles Van Scoy's home on San Pedro Street are so permanent he is unable to use the sidewalks and therefore is effectively trapped in his home. (FASC ¶ 152.) These are far different than the scooters on wheels addressed by *Montoya*.[5]  Moreover, the *Montoya* court did not find even that the wheeled scooters *could not be* "barriers" only that it "is *not obvious* . . . whether the dockless vehicles can be considered architectural barriers" in the context of a preliminary injunction. 2021 WL 1056594, at *7 (emphasis added).

*Third*, the City claims that Plaintiffs either had to allege the sidewalks were built before 1992 or that the City's sidewalks were not passable when "viewed in their entirety."  (City MTD at 18-19.)  In fact, Plaintiffs were only required to plead the sidewalks were "altered" thus triggering 28 C.F.R. § 35.151 as the controlling statute.  28 C.F.R. § 35.151(b). 28 C.F.R. § 35.151 does not require the service to be "viewed in its entirety."  *See Cohen*, 754 F.3d at 694-95 (finding the City's failure to regulate a private vendor's display to ensure that sidewalk ramps were not blocked, was more likely to fall under 28 C.F.R. § 35.151 (which regulates "[n]ew construction and alterations" and does not have language requiring a service to be viewed "in its entirety") than 28 C.F.R. § 35.150 (which regulates "[e]xisting facilities" built before 1992)).

> The City chose to alter the existing arrangement of the public
> sidewalk by allowing private vendors to set up displays for the

---

[5] The City's argument that settlement in *Willits v. City of Los Angeles* prevents Plaintiffs' claim goes nowhere.  *Willits* did not involve blocked sidewalks, but the failure to properly maintain sidewalks and city-placed obstacles thereon.  *Willits v. City of Los Angeles*, 925 F. Supp. 2d 1089, 1091 (C.D. Cal. 2013)

18

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

> purpose of holding a car show. The vendors' presence was entirely
> unrelated to the goal of making the City's programs or services
> accessible to disabled persons. It would not have imposed an
> additional burden on the City for it to require the vendors to locate
> their booths a few feet in either direction to avoid blocking disabled
> ramps.

*Cohen*, 754 F.3d at 699.  The City of Los Angeles, like Culver City, has not only allowed third parties to set up tents and other make-shift shelters thus "alter[ing] the existing arrangement of the public sidewalk," it has recently updated nearly all the sidewalks in the Skid Row area to (ironically) create cutouts for sidewalk access. (FASC ¶ 60.)  The sidewalks have all recently been altered and therefore no "entirety" requirement is applicable.

And, even if the "entirety" requirement was applicable, it is irrelevant to Plaintiffs allegations which focus on the areas around Skid Row.  If the statutory requirement was to look at all 9,000 miles of sidewalk in the entire City, the very purpose of the ADA statute (to provide equal access to disabled individuals) would be frustrated.  In a place as large as Los Angeles, providing a passable sidewalk twenty miles away from the disabled person's place of residence does not affect the intent of Title II which should be "construe[d] . . . broadly to advance its remedial purpose."  *Cohen*, 754 F.3d at 695 (citing *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167, 1172 (9th Cir. 2002)).  Rather than looking at 9,000 miles of sidewalk in the sprawling metropolis of Los Angeles, it is the 25 miles of sidewalk in Skid Row and nearby that should be evaluated, which are largely blocked and prohibit disabled individuals from equally accessing the sidewalks.

## VII.   PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW

### A.   Cal. Civ. Code §§ 3490; 3501

Defendant City is undoubtedly maintaining a public nuisance by permitting property under its control—most egregiously in the Skid Row area—to attract and support severe health and safety threats.  California has defined nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale

19

of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of . . . any public park, square, street, or highway."  Cal. Civ. Code § 3479.

To prevail on a public nuisance claim at this stage, Plaintiffs need only allege facts that show (i) the City and County have created a condition that is harmful to Plaintiffs, so as to interfere with their comfortable enjoyment of life or property; (ii) the condition has affected a substantial number of people at the same time; (iii) an ordinary person would be reasonably annoyed or disturbed by the condition; (iv) the seriousness of the harm outweighs the social utility of the City or County's conduct; (v) Plaintiffs never consented to this conduct; (vi) Plaintiffs suffered harm that was different from the type of harm suffered by the general public; and (vii) the City and County's conduct was a substantial factor in causing Plaintiffs' harm.  *See Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548 (2009) (citing Judicial Council of California, Civil Jury Instructions, CACI No. 2020 (2008)).

A nuisance cause of action "is plainly aimed at protecting the public from the hazards created by public nuisances*." People v. ConAgra Grocery Prods. Co*., 17 Cal. App. 5th 51, 136 (2017), *review denied* (Dec. 6, 2017).  In addition to health and safety hazards, "[a] reduction in property values caused by activities on a . . . piece of land, and an assault on the senses by noise, dust, and odors, are just the kinds of harm that commonlaw suits to abate a nuisance are designed to redress*." Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 505 (7th Cir. 1996). A public nuisance is the substantial and unreasonable interference with a public right. *San Diego Gas & Elec. Co. v. Superior Ct.*, 13 Cal. 4th 893, 938-39

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

(1996). The City's actions have led to the buildup of encampments.  And the City, which has the obligation to keep its sidewalks passable,[6] is failing to do so.

*First,* these encampments are obviously harmful to health and indecent and offensive to the senses of both the housed and unhoused Plaintiffs and members of the Alliance, are interfering with their comfortable enjoyment of life or property, and are obstructing the free passage of public sidewalks, and are a fire hazard to Plaintiffs' personal and real property. (FASC ¶¶ 96-155.)  "A property owner who fails to take reasonable actions to prevent criminal activity on the owner's property may be subject to nuisance liability if that criminal activity harms the surrounding community." *Benetatos v. City of Los Angeles*, 235 Cal. App. 4th 1270, 1282-83 (2015); *see also* Restatement (Second) of Torts § 838 (1979) ("A possessor of land upon which a third person carries on an activity that causes a nuisance is subject to liability for the nuisance if it is otherwise actionable, and (a) the possessor knows or has reason to know that the activity is being carried on and that it is causing or will involve an unreasonable risk of causing the nuisance, and (b) he consents to the activity or *fails to exercise reasonable care to prevent the nuisance*.") (emphasis added).

Further the situation on the streets is impacting a substantial number of people (FASC ¶ 70), any ordinary person would be reasonably annoyed or disturbed by the

---

[6] The City itself recognized it has an obligation to keep sidewalks clear for public use in its Motion to Dismiss filed in the ongoing litigation in *Garcia v. City of Los Angeles*:

As courts have long recognized, "[t]he public is entitled to the free and unobstructed use of the entire streets and sidewalks . . . " *Vanderhurst* v. *Tholcke*, 113 Cal. 147, 152 (1896). To balance among the many, often competing uses, cities have been designated as trustees of these public spaces. In this capacity, they have not only the power but "the *duty* to keep their communities' streets open and available for movement of people and property." *Schneider v. State*, 308 U.S. 147, 160-61 (1939) (emphasis added); *see also Smith v. Corp. of Wash.*, 61 U.S. (20 How.) 135, 146 (1858).

(Def. City of Los Angeles' Mot. to Dismiss Suppl. Compl. at 2, Garcia v. City of Los Angeles, Case No. 19-cv-6182 (C.D. Cal. Oct. 21, 2019), ECF No. 22.)

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS

conditions (FASC, *passim*), there is zero utility gained from abandoning people on the streets to provide their own makeshift shelters which block sidewalks and risk lives, and Plaintiffs never consented to such conditions. (FASC ¶ 180.)

To the sixth element, Plaintiffs' harm resulting from encampments "is normally different in kind from that suffered by other members of the public." *Birke*, 169 Cal. App. 4th at 1550 (citing Restatement (Second) of Torts § 821C, com. d, p. 96 (1979)). Plaintiffs have suffered increased health risks (FASC ¶¶ 52-56), a reduction in property value (FASC ¶¶ 97-109), increased insurance costs due to the fire risks associated with encampments (*Id.*; FASC ¶ 96(m)), and significant health and safety risks of being unhoused subject to encampments. (FASC, *passim*.) Additionally, the property owner plaintiffs need not show special injury where their property is also impacted. *Birke*, 169 Cal. App. 4th at 1551 ("[W]ith respect to the special injury requirement . . . when the nuisance is a private as well as a public one, there is no requirement the plaintiff suffer damage different in kind from that suffered by the general public. [ ] That is, the plaintiff 'does not lose his rights as a landowner merely because others suffer damage of the same kind, or even of the same degree.'") (citations omitted).

Finally, the seventh element – whether the City and County's conduct was a substantial factor in causing the harm – is well-documented and acknowledged by Defendants themselves. Moreover, the "substantial factor" test for nuisance may be met by a *failure to act* when the defendant has a duty to take a positive action to prevent or abate the interference. *See Birke,* Cal. App. 4th at 1552-53 (finding that as the plaintiff's landlord, defendant had a duty to maintain its premises in a reasonably safe condition and failure to do so was a nuisance). Here, putting aside their intentional conduct through the Containment Policy, the City and County had "a duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated." *Schneider v. State*, 308 U.S. 147, 160-61 (1939).

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

To establish a private nuisance, Plaintiffs must show the following three elements in addition to those of a public nuisance: (1) Plaintiffs owned, leased, occupied or controlled real property; (2) that defendants' conduct interfered with Plaintiffs' use of their property; and that (3) Plaintiffs were harmed. *See Dep't of Fish & Game v. Superior Ct.*, 197 Cal. App. 4th 1323, 1352 (citing Judicial Council of California, Civil Jury Instructions, CACI No. 2021 (2011)). All three additional elements are easily met. Several Plaintiffs own property in the impacted areas, the Containment Policy interfered with their use of property, and they suffered harm. (FASC ¶¶ 96-114.)

### B. Negligence

Defendants argue that "[t]ort liability against a municipality cannot arise out of common law" which is true and also immaterial because Plaintiffs do not allege direct negligence against the City of Los Angeles, but instead base their claim for negligence only on a theory of *respondeat superior*. (City MTD at 20.) *See* Cal. Gov't Code § 815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to the cause of action against that employee or his personal representative."). Defendants' second argument, that discretionary immunity prevents negligence claims, is also immaterial because statutory immunity is inapplicable to claims for equitable relief only. *See* VII(D), *infra*.

### C. Taxpayer Waste Claim (CCP Section 526a)

The City has wasted valuable funds that were directed, by the voters through Proposition HHH, to be spent to alleviate the homeless crisis. Instead of using the money in a way that would actually achieve the ostensible goal of ending homelessness, the City is spending its funds exclusively on PSH projects that take far too long to build and leave too many on the streets to get sicker; many of whom ultimately perish.

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

23

Plaintiffs through the FASC have alleged direct financial injuries that affords them Article III standing.  (FASC ¶¶ 96-114.).

Contrary to the City's claim, Plaintiffs need not demonstrate an expenditure is "illegal" to constitute a claim under section 526a; "waste" may also be shown where the government conduct is:

> "[A] useless expenditure of public funds" that is incapable of achieving the ostensible goal. [ ] Certainly it reaches outright fraud, corruption, or collusion. [ ] Even when "done in the exercise of a lawful power," public spending may qualify as waste if it is "completely unnecessary" or "useless" or "provides no public benefit." [ ] Waste is money that is squandered, or money that is left uncollected, and thus is a constitutionally prohibited gift of public resources. [ ] Waste can exist even when there is no net loss, as when "illegal procedures actually permit a saving of tax funds."

*Chiatello v. City & County of San Francisco*, 189 Cal. App. 4th 472, 482 (2010) (citations omitted), *review denied* (Jan. 26, 2011).  For example, in *Los Altos Property Owners Ass'n v. Hutcheon*, plaintiffs' allegations were sufficient to support a finding of waste under section 526a where they alleged defendant school district "will be expending public funds on a consolidation plan that costs a great deal more than alternative plans considered, without a finding of any additional public benefit." 69 Cal. App. 3d 22, 30 (1977).  Similarly in *Harnett v. Sacramento County*, the California Supreme Court found that holding an election which could not achieve the stated goal would be a "useless expenditure and waste of public funds."  195 Cal. 676, 682-83 (1925).  Likewise, Plaintiffs have properly alleged that taxpayer funds have been misused in a way that makes it impossible for Proposition HHH to achieve the ostensible goal for which it was passed.  (FASC ¶ 190.)

**D.     Statutory Immunity is Inapplicable to Claims for Equitable and Injunctive Relief**

California Government Code section 814, which governs all claims for immunities under Title 1, Division 3.6, Part 2, Chapter 1 (inclusive of Government Code sections 815.2, 818.2, and 820.2, cited by Defendant City), states: "Nothing in this part affects liability based on contract or the right to obtain relief other than

24

money or damages against a public entity or public employee." Cal. Gov't Code § 814 (emphasis added); *see also* Cal. Gov't Code § 814, Legislative Committee Comments—Senate ("The various provisions of this part determine only whether a public entity or public employee is liable for money or damages . . . .  This section also declares that the provision of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief other than money or damages.") (emphasis added.); *Schooler v. State*, 85 Cal. App. 4th 1004, 1013 (2000) ("[U]nder section 814, Government Code immunities extend only to tort actions that seek money damages.").

Plaintiffs seek only equitable and injunctive relief for their California Tort causes of action (*see* Prayer for Relief No. 2 ("As to the federal claims and claims under the California constitution only, compensatory damages and other special, general and consequential damages according to proof."), and therefore statutory immunities do not apply.

## VIII.   CONCLUSION

For the foregoing reasons, and for those set forth in the concurrently filed Opposition to Defendant County of Los Angeles' Motion to Dismiss, Plaintiffs respectfully request the Court DENY Defendant City of Los Angeles' Motion to Dismiss in its entirety.  Alternatively, if the Court is inclined to grant Defendant's Motion to Dismiss, Plaintiffs request the opportunity to amend the complaint to overcome any legal insufficiencies the Court may identify.

Dated: December 23, 2021

*/s/ Elizabeth A. Mitchell*
SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)

*Attorneys for Plaintiffs*

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

PLAINTIFFS' OPPOSITION TO CITY OF LOS ANGELES' MOTION TO DISMISS