SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
617 W. 7th Street, Suite 200
Los Angeles, California 90017
Telephone: (213) 205-6520
Facsimile: (213) 205-6521
mumhofer@spertuslaw.com
emitchell@spertuslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,

　　　　　Plaintiffs,

　　v.

CITY OF LOS ANGELES, *et al.*,

　　　　　Defendants.

CASE NO. 2:20-CV-02291-DOC-KES

Assigned to Judge David O. Carter

**PLAINTIFFS' OPPOSITION TO DEFENDANT COUNTY OF LOS ANGELES' MOTION TO DISMISS PLAINTIFFS' AMENDED AND SUPPLEMENTAL COMPLAINT**

FASC Filed:　　November 1, 2021
Complaint Filed:　March 10, 2020

Hearing:
Date:　　　January 24, 2022
Time:　　　8:30 a.m.
Location:　Courtroom 9D
　　　　　411 West Fourth St.
　　　　　Santa Ana, CA 92701

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# TABLE OF CONTENTS

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

**PAGE**

I.   INTRODUCTION ........................................................................ 1

II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 2

III. LEGAL STANDARD ................................................................. 2

    A.   12(b)(1) Standards ........................................................ 2

    B.   The 12(b)(6) Standard .................................................. 3

IV.  PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE COUNTY AND THIS COURT HAS THE POWER TO ORDER THE RELIEF SOUGHT ................................................................. 4

    A.   This Court Enjoys Broad Equitable Powers .......................... 4

    B.   Plaintiffs Have Article III Standing to Bring This Case ............ 5

V.   PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983 ........... 7

    A.   Plaintiffs Have Alleged Sufficient Facts to Support a Substantive Due Process Claim .......................................... 7

        1.   State Created Danger ............................................. 7

        2.   Special Relationship Doctrine ................................... 9

    B.   Plaintiffs Have Alleged Sufficient Facts to State a Claim for Procedural Due Process ................................................. 10

    C.   Plaintiffs Have Alleged Sufficient Facts to State an Equal Protection Claim ......................................................... 11

        1.   Geographic Discrimination ..................................... 11

        2.   Racial Discrimination ........................................... 13

    D.   Municipal Liability ...................................................... 14

VI.  PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR DISABILITY-RELATED CLAIMS .................................... 15

VII. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW ............................... 17

    A.   Plaintiffs Have Alleged Sufficient Facts to State a Claim for Violation of Welf. & Inst. Code Section 17000 Under Both Negligence and Mandatory Duty Theory ............................ 17

1

      B.    Plaintiffs Have Alleged Sufficient Facts to Support a Taxpayer
Waste Claim under California Code of Civil Procedure
Section 526a .................................................................................... 20

2

      C.    Statutory Immunity is Inapplicable to Claims for Equitable and
Injunctive Relief .............................................................................. 20

3

4

      D.    Plaintiffs Have Properly Plead Facts to Support Their Nuisance
Claim ................................................................................................ 22

5

6

VIII.  CONCLUSION .......................................................................................... 25

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

# TABLE OF AUTHORITIES

**CASES**                                                                                    **PAGE(S)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................3

*Birke v. Oakwood Worldwide*,
  169 Cal. App. 4th 1540......................................................................................22, 23

*Brenneman v. State of California*,
  208 Cal. App. 3d 812 (1989), *review denied* (May 23, 1989)....................................17

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) .......................................................................................15

*Chiatello v. City & County of San Francisco*,
  189 Cal. App. 4th 472 (2010) ......................................................................................20

*City & County of San Francisco v. Superior Court*,
  57 Cal. App. 3d 44 (1976) ...........................................................................................19

*Clinton v. Cody*,
  HO44030,
  2019 WL 2004842 (Cal. Ct. App. May 7, 2019), *review denied*
  (July 17, 2019)..............................................................................................................18

*Cooke v. Superior Court*,
  213 Cal. App. 3d 401 (1989) .......................................................................................19

*County of Alameda v. State Board of Control*,
  14 Cal. App. 4th 1096 (1993) ......................................................................................18

*Crowder v. Kitagawa*,
  81 F.3d 1480 (9th Cir. 1996) .......................................................................................16

*Department of Fish & Game v. Superior Court*,
  197 Cal. App. 4th 1323................................................................................................24

*DeShaney v. Winnebago County Department of Social Services*,
  489 U.S. 189 (1989)......................................................................................................10

*Enquist v. Oregon Department of Agriculture*,
  553 U.S. 591 (2008)......................................................................................................12

*Estate of Amos ex rel. Amos v. City of Page, Arizona*,
  257 F.3d 1086 (9th Cir. 2001) .....................................................................................10

*Fry v. Napoleon Community Schools*,
  137 S. Ct. 743 (2017)....................................................................................................15

*Gomillion v. Lightfoot*,
  364 U.S. 339 (1960)......................................................................................................13

*Harnett v. Sacramento County*,
  195 Cal. 676 (1925) .....................................................................................................20

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO THE COUNTY OF LOS ANGELES' MOTION TO DISMISS

*Harris v. Board of Supervisors*,
366 F.3d 754 (9th Cir. 2004) .............................................................. 19

*Hernandez v. City of San Jose*,
897 F.3d 1125 (9th Cir. 2018) ............................................................. 8

*Hunt v. Superior Court*,
21 Cal. 4th 984 (1999) ................................................................. 17, 18

*Johnson v. Riverside Healthcare System, LP*,
534 F.3d 1116 (9th Cir. 2008) ............................................................ 3

*Kennedy v. City of Ridgefield*,
439 F.3d 1055 (9th Cir. 2006) ......................................................... 7, 8

*Kentucky Department of Corrections v. Thompson*,
490 U.S. 454 (1989) ........................................................................... 11

*LA Alliance for Human Rights v. County of Los Angeles*,
14 F.4th 947 (9th Cir. 2021) ............................................................... 4

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............................................................ 3

*Lindsey v. Normet*,
405 U.S. 56 (1972) .............................................................................. 8

*Los Altos Property Owners Ass'n v. Hutcheon*,
69 Cal. App. 3d 22 (1977) ................................................................ 20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................ 5

*Mateos-Sandoval v. County of Sonoma*,
942 F. Supp. 2d 890 (N.D. Cal. 2013) .............................................. 15

*McNutt v. General Motors Acceptance Corp. of Indiana,
Inc.*, 298 U.S. 178 (1936) ................................................................... 2

*Morales v. City of Los Angeles*,
214 F.3d 1151 (9th Cir. 2000) ............................................................ 3

*Ocean Advocates v. U.S. Army Corps of Engineers*,
402 F.3d 846 (9th Cir. 2005) ............................................................. 6

*Pauluk v. Savage*,
836 F.3d 1117 (9th Cir. 2016) ............................................................ 8

*Pierce v. County of Orange*,
Case No. SA CV 01-981,
2004 WL 7340113 (C.D. Cal. June 4, 2004) ..................................... 21

*Rogers v. Lodge*,
458 U.S. 613 (1982) .......................................................................... 14

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

v

PLAINTIFFS' OPPOSITION TO THE COUNTY OF LOS ANGELES' MOTION TO DISMISS

*Rosales v. County of San Diego,*
  511 F. Supp. 3d 1070 (S.D. Cal. Jan. 5, 2021) ........................................14

*Santa Cruz Homeless v. Bernal,*
  514 F. Supp. 3d 1136 (N.D. Cal. Jan. 20, 2021), *order modified,*
  Case No. 20-cv-09425,
  2021 WL 1256888 (N.D. Cal. Apr. 1, 2021)...........................................8

*Sausalito/Marin County Chapter of the California Homeless Union v. City of Sausalito,*
  522 F. Supp. 3d 648 (N.D. Cal. Mar. 1, 2021), *modified in par*t,
  Case No. 21-cv-01143,
  2021 WL 2141323 (N.D. Cal. May 26, 2021)........................................8, 9

*Scates v. Rydingsword,*
  29 Cal. App. 3d 1085 (1991), *reh'g denied and op. modified* (May 31, 1991) ......19

*Schneider v. State,*
  308 U.S. 147 (1939)........................................................................24

*Schooler v. State,*
  85 Cal. App. 4th 1004 (2000)..........................................................21

*Silvas v. E\*Trade Mortgage Corp.,*
  514 F.3d 1001 (9th Cir. 2008)........................................................3, 4

*Sioux City Bridge Co. v. Dakota County,*
  260 U.S. 441 (1923)........................................................................12

*Starr v. Baca,*
  652 F.3d 1202 (9th Cir. 2011) ........................................................14

*Tailfeather v. Board of Supervisors,*
  48 Cal. App. 4th 1223 (1996) ........................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007)........................................................................3

*Tyler v. Cuomo,*
  236 F.3d 1124 (9th Cir. 2000) ........................................................5

*United States v. James Daniel Good Real Property,*
  510 U.S. 43 (1993)........................................................................11

*Village of Willowbrook v. Grace Olech,*
  528 U.S. 562 (2000)........................................................................12

*Warth v. Seldin,*
  422 U.S. 490 (1975)........................................................................5

*Wood v. Ostrander,*
  879 F.2d 583 (9th Cir. 1989) ........................................................8

*Yick v. Hopkins,*
  118 U.S. 356 (1886)........................................................................13

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

vi

**STATUTES**

42 U.S.C. § 1983 ............................................................................................. 7

42 U.S.C. § 12182(a) ..................................................................................... 15

California Civil Code § 3479 ........................................................................ 22

California Code of Civil Procedure § 526a .................................................. 20

California Evidence Code § 669 .................................................................... 17

California Government Code § 814 .......................................................... 20, 21

California Government Code § 815.2 ........................................................... 20

California Government Code § 815.6 ....................................................... 17, 19

California Government Code § 820.2 ........................................................... 20

California Welfare and Institutes Code § 10000 .................................... 17, 18

California Welfare and Institutes Code § 14059.5(a) ................................... 18

California Welfare and Institutes Code § 17000 ................................... *passim*

**RULES**

California Rule of Court 8.1115 .................................................................... 18

**REGULATIONS**

28 C.F.R. § 35.130(b)(7) (2016) ................................................................... 15

36 C.F.R. § 1191.1, app. D, § 403.5.1 (2014) ............................................. 15

**OTHER AUTHORITIES**

Judicial Council of California Civil Jury Instructions, CACI No. 2020 (2008) ......... 22

Judicial Council of California Civil Jury Instructions, CACI No. 2021 (2011) ......... 24

Restatement (Second) of Torts § 821C (1979) ............................................. 23

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

vii

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Today, 21 months into this litigation, rain falls and temperatures plummet, politicians congratulate themselves on small-scale initiatives, the numbers of unsheltered individuals continue to climb, and homelessness remains a scourge on the soul of this City and County.  Despite this Court's tireless efforts to break the logjam of municipal distrust and dysfunction on homelessness, the County has made little effort to embrace the opportunity presented by this lawsuit, and instead appears content to squabble over audits and file meritless motions to dismiss.  Meanwhile, more people in Los Angeles will die on the streets this winter from hypothermia than in New York City and San Francisco combined.[1]

The County champions its 47 strategies and $527 million spent per year as if somehow strategies and spending could sweep away its spectacular failure to assist those most in need.  In fact, the more "strategies" the County proclaims and the more spending it does, the more its colossal failures and rampant waste become apparent.

The County, most certainly, has not done *enough*—indeed, it has fallen so far short of enough that it has violated its statutory and constitutional obligations to the County's unsheltered citizens.  The County's actions and omissions, and deliberate indifference to the danger to which it has subjected its constituents, including Plaintiffs, demand the relief sought in this case.  Plaintiffs have alleged more than sufficient facts to support claims under the first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, twelfth, and thirteenth causes of action, and the motion should be denied.

---

[1]  Gale Holland, *L.A. has great weather, yet more homeless die of the cold here than in New York*, Los Angeles Times (Feb. 17, 2019, 8:30 AM), https://www.latimes.com/local/lanow/la-me-homeless-hypothermia-20190217-story.html.

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed this case at the start of the pandemic, on March 10, 2020.  Nine days later, all parties agreed to stay litigation to explore settlement intended to urgently resolve the homelessness crisis for the benefit of all parties and the Los Angeles community as a whole.  Less than three months later, the City and County officially voted to enter into global settlement negotiations.  The City and County, despite many differences, and as a result of an injunction by this Court, agreed to produce 5,300 new beds to serve persons experiencing homelessness within nine months, and another 1,400 beds with other conditions.  Significant progress was made.

Yet ultimately the County remained largely unengaged and settlement discussions went nowhere.  The County filed a motion to dismiss the first complaint on March 29, 2021 and Plaintiffs filed a motion for preliminary injunction on April 12, 2021.  On April 20, 2021 this Court granted Plaintiffs' motion and issued an injunction against the City and County finding Plaintiffs were likely to succeed on theories of Equal Protection, State-Created Danger, Special Relationship, Substantive Due Process, violation of the County's duty under Welfare and Institutions Code section 17000, and the Americans with Disabilities Act.  The City and County immediately appealed. On May 11, 2021 this Court denied the County's motion to dismiss the first complaint.  On September 25, 2021 the ninth circuit vacated this Court's order largely on standing grounds.  The issues identified by the ninth circuit have been correct in Plaintiffs First Amended and Supplemental Complaint ("FASC").

## III.    LEGAL STANDARD

### A.    12(b)(1) Standards

To prevail under a 12(b)(1) motion, Plaintiffs need only demonstrate that they meet the jurisdictional requirements to be before this Court through competent allegations.  *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178,

2

189 (1936).  When considering a facial attack on subject matter jurisdiction under 12(b)(1), this Court should consider all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("The district court resolves a facial attack as it would amotion to dismiss under Rule 12(b)(6: Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor.")

The County contends that a court "is not confined by the facts" of the complaint and "need *not* assume the truthfulness of the complaint" in a motion under 12(b)(1). (County's Memo. ISO Mot. to Dismiss ("MTD") at 12-13, ECF No. 370-1 (emphasis in original ) (citation omitted).)  However, this is only true where the movant introduces new substantive facts to dispute the subject matter jurisdiction claims made in the Complaint.  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (summarizing prevailing case law on "factual" vs "facial" 12(b)(1) motions).

Here, the County claims that the allegations by the LA Alliance for Human Rights are insufficient but neglects to challenge the accuracy of any material factual allegations as it pertains to lack of subject-matter jurisdiction.  Thus, as in *Whisnant*, the County's challenge is a "facial" challenge, meaning the factual allegations must be deemed true during this Court's review.  *Id*. The County's additional "facts" are irrelevant, cannot be considered, and should be disregarded.

**B.    The 12(b)(6) Standard**

Complaints need only contain sufficient factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "This is not an onerous burden."  *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).  The Court "must consider the complaint in its entirety," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), accept as true "[a]ll allegations of material fact . . . in the light most favorable to the nonmoving party[,]" *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008), and "draw all reasonable inferences in favor of the non-moving party."  *Morales v. City of Los*

*Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). Indeed, "[a] complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Silvas*, 514 F.3d at 1003-04.

## IV.   PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE COUNTY AND THIS COURT HAS THE POWER TO ORDER THE RELIEF SOUGHT

### A.   This Court Enjoys Broad Equitable Powers

As this Court has already recognized, and the Ninth Circuit has confirmed, district courts have broad power to order equitable relief when a constitutional or statutory right has been violated. (*See* Order Den. County's Mot. to Dismiss ("Order re County MTD") at 5, ECF No. 300 ("[I]f the Court finds an ongoing constitutional violation, it is obligated to impose a remedy. Budgetary and capacity concerns can be adequately addressed by the Court by giving the party sufficient discretion in how to remedy the violation.")); *see also LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 961 (9th Cir. 2021) ("The district court undoubtedly has broad equitable power to remedy legal violations that have contributed to the complex problem of homelessness in Los Angeles.").

The County's motion ignores these holdings instead asks this Court to reconsider its prior rulings concerning its equitable power, despite the absence of any meaningful change in the facts or the law. Rather than re-hash these issues, Plaintiff relies upon and incorporates by reference the prior briefing and this Court's orders rejecting the County's contentions. (*See* Pls.' Resp. to Req. for Br'g, ECF No. 239; Pls.' Prelim. Inj. Mot., ECF No. 265; Pls.' Opp'n to County's MTD, ECF No. 268; Order Granting Prelim. Inj. Mot., ECF No. 277; and Order re County MTD, ECF No. 300.) Plaintiffs' claims are undoubtedly judiciable.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

## B.    Plaintiffs Have Article III Standing to Bring This Case

The County's standing arguments suffer the same fate.  This Court already recognized that "there are numerous homeless persons amongst the Plaintiffs, all of whom are members of LA Alliance and are currently experiencing homelessness in and around Skid Row. . . . Plaintiffs therefore have shown that they have suffered injury-in-fact." (Order re MTD at 3.)  And the housed Plaintiffs[2] possess Article III standing because they each have alleged that they (1) suffered an "injury in fact" which is (2) "fairly traceable" to actions by the County, and (3) it is "likely" that the injury will be redressed by a favorable decision by this Court.  *See Tyler v. Cuomo*, 236 F.3d 1124, 1131-32 (9th Cir. 2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The County argues the injuries suffered by Plaintiffs are not sufficiently connected to the County's conduct.  (MTD at 14-15.)  The Court has already addressed this issue as well.  (*See* Order re MTD at 4 ("Plaintiffs' enumerated actions by the County that cause the number of persons experiencing homelessness to increase or cause the conditions of homelessness to worsen demonstrate a direct and causal link to the asserted injury-in-fact.").)  As previously explained, an injury is "fairly traceable" to a defendant's conduct when a causal connection is shown between the injury alleged and the conduct of the defendant.  *Tyler*, 236 F.3d at 1132. In *Tyler*, the court distinguished *Warth v. Seldin*, 422 U.S. 490 (1975)—a case cited by Defendant County—reasoning that the *Warth* Court held the alleged harm was traceable only to factors other than the Defendants' conduct.  *Id*.  In contrast, the *Tyler* court found that a group of Plaintiffs suing the City of San Francisco alleged conduct that was "fairly traceable" to the City because the City refused to hold meetings to hear the complaints of the homeowners, despite possibility that the meetings would lead to no substantive change.  *Id.* (reasoning that the action was

---

[2] None of the plaintiffs are "prominent real estate developers" as Defendant County continues to allege, but many (but not all) do own property in and around Skid Row.

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

sufficient as it was not "the result of the independent action of some third party not before the court." (citation omitted)).  Importantly, at early stages of litigation, the traceability requirement of standing is a low bar to clear—as one court put it, "the causal connection . . . need not be so airtight at this stage of litigation as to demonstrate that the plaintiffs would succeed on the merits."  *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (citation omitted) (noting that while other factors may impact a plaintiff's harm, the injury may still be sufficiently traceable and affirming denial of summary judgment on standing grounds).  Here, at the early stages of this litigation, and indeed before this litigation has even begun in earnest, Plaintiffs' allegations clear this low bar.  Plaintiffs have properly alleged their injuries are traceable to the following County actions (or inactions):

- failure to provide shelter beds as part of its obligation under WIC 17000 (First Amended and Supplemental Complaint (hereinafter "FASC") ¶¶ 167-174, ECF No. 361);

- failure to provide necessary mental health and drug rehabilitation services (FASC ¶¶ 4, 53, 55, 83-84, 89-90, 92);

- focus on permanent housing to the exclusion and detriment of interim solutions (except for those required by this case and separately paid for by the state and federal governments) (FASC ¶¶ 83, 88, 217);

- concentration of services which draws and keeps unhoused individuals in the most unsafe and unhealthy location in the country (FASC ¶¶ 30-39);

- complicity and participation in the long history of institutional racism that led to the disproportionate representation of black people experiencing homelessness (FASC ¶ 40-45);

- waste of Measure H funds which are designed to reduce homelessness (yet homelessness has only increased since Measure H was passed) (FASC ¶¶ 83-92); and

- together with the City, fund and direct LAHSA which is ineffective in several ways, including its failure to move people from emergency and bridge shelters into permanent housing, and failure to support successful solutions when they do not comport with LAHSA's ideological standards. (FASC ¶ 92.)

Each of these actions by the County are either causing the number of persons experiencing homelessness to increase or causing the conditions in which they live to worsen, both of which directly affect each Plaintiff for all the reasons described in the Complaint.

## V.    PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CONSTITUTIONAL CLAIMS UNDER 42 U.S.C. § 1983

### A.    Plaintiffs Have Alleged Sufficient Facts to Support a Substantive Due Process Claim

#### 1.    *State Created Danger*

Plaintiffs have properly alleged Defendant County has placed its homeless and housed constituents in danger by adopting and maintaining policies and laws, including (i) a long history of implementing and repeating racist policies and practices (FASC ¶¶ 40-45), (ii) needlessly centralizing services in the Skid Row area (FASC ¶¶ 30-39),  (iii) failing in its obligation to "relieve and support" the poor (again, most notably in Skid Row) (FASC ¶ 89), (iv) misusing voter-approved sales tax funds (FASC ¶¶ 84-91), and (iv) focusing heavily on so-called permanent housing (with little to show for it) to the near exclusion of emergency and interim solutions (FASC ¶¶ 83, 88, 217), all of which is "exacerbating or causing significant mental and physical decline at such a rate that outpaces the building and provision of such units" (FASC ¶ 217) and have done so with deliberate indifference to the health and safety of its constituents.

The Ninth Circuit has recognized the constitutional right, under the Due Process clause, to be free from state-created danger. *Kennedy v. City of Ridgefield*,

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

7

439 F.3d 1055, 1061-62 (9th Cir. 2006).  When a state or local official acts to place a person in a situation of known danger, with deliberate ignorance towards their person or physical safety, the state violates due process.  *Id.*; *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1137 (9th Cir. 2018) (police officers affirmatively placed political rally attendees in danger by requiring attendees to exit the rally into a crowd of known violent protestors); *Kennedy*, 439 F.3d at 1067 (officer knew an aggressor was violent and told aggressor of the victim's allegations against him after promising the victim to alert her before doing so); *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (officer arrested and impounded the car of an intoxicated driver, leaving the passenger alone in the middle of the night in a high crime area where she was later assaulted while trying to get home); *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016) ("[S]tate actor can be held liable when that state actor did 'play a part' in the creation of a danger.") (citation omitted).[3]

Courts have recently recognized that a municipality's policy that places homeless individuals in danger can violate due process and merit injunctive relief.  In *Santa Cruz Homeless v. Bernal*, the court took judicial notice of the COVID-19 pandemic and granted homeless plaintiffs' preliminary injunction to halt the closure of two parks where the plaintiffs were camping.  514 F. Supp. 3d 1136, 1138 (N.D. Cal. Jan. 20, 2021), *order modified*, Case No. 20-cv-09425, 2021 WL 1256888 (N.D. Cal. Apr. 1, 2021).  The court held that by closing the parks without an alternate shelter, the State would place residents in a more vulnerable situation and in greater danger.  *Santa Cruz Homeless Union*, 514 F. Supp. 3d at 1142.  Similarly, in *Sausalito/Marin County Chapter of the California Homeless Union v. City of*

---

[3] Defendants claim "[t]here is no fundamental right to housing[,]" citing *Lindsey v. Normet*, 405 U.S. 56, 74 (1972). (MTD at 20.)  But *Lindsey* deals not with the right to housing or right to shelter but "assurance of *adequate* housing" particularly in the context of private property rights and "landlord-tenant relationships." *Lindsey*, 405 U.S. at 74 (emphasis added). Specifically, *Lindsey* held that a tenant who has no other housing available still may not occupy a private apartment owned by another. *Id.*  The issue of whether a basic constitutional right to shelter exists separate from private property rights has not been addressed by the Supreme Court.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

*Sausalito*, 522 F. Supp. 3d 648, 650-51 (N.D. Cal. Mar. 1, 2021), *modified in part*, Case No. 21-cv-01143, 2021 WL 2141323 (N.D. Cal. May 26, 2021), a court enjoined a City Council from enforcing resolutions to move a camping population to a different location, and from prohibiting all day camping, again due to the risks associated with the COVID-19 virus. The court held that those actions would increase rather than decrease health risks to campers and the surrounding community and place the camping population in imminent danger. *Sausalito/Marin Cnty.*, 522 F. Supp. 3d at 659-60. Here the facts are much more compelling because Defendants' policies have already created incredible danger for those living on the streets. (FASC, *passim*.)

Defendant County argues the state created danger doctrine only applies to individual conduct, not government policies, yet none of the cases cited stand for that proposition, likely because such a case doesn't exist. (MTD at 21.) The County also contends that its nearly exclusive focus on permanent housing does not put the unhoused plaintiffs in "greater danger than they would face if . . . offered only temporary, emergency shelter." (MTD at 21-22.) Yet this is the very point: but-for wasteful spending of the hundreds of millions of dollars that flow through County coffers every year, unhoused Plaintiffs, members of the Alliance, and others would be offered the "temporary, emergency shelter" the County speaks of and thus not be subject to the trauma and danger they experience in the streets daily. (FASC, *passim*.) It is the very policies of the County that are causing and exacerbating not only unsheltered homelessness but also the massive spike in serious mental illness and substance use disorder on the streets which are themselves caused and exacerbated by unsheltered homelessness.

2.   *Special Relationship Doctrine*

Plaintiffs have properly alleged the County's policy of supporting containment through centralizing services compels unhoused individuals into a controlled and restricted area—one it knows to be life-threatening—and fails to provide for their

9

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

protection. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs*., 489 U.S. 189, 200 (1989) ("[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, *or other similar restraint of personal liberty*—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause") (emphasis added) (citation omitted).  For example, Wenzial Jarrell "came to Skid Row after the death of his first wife because he was told he could find housing and services there" (FASC ¶ 116) and Christopher Roper "made his way to Skid Row because he knew resources for those experiencing homelessness were supposed to be available there." (FASC ¶ 96(d)).  This is entirely different from the facts in *Estate of Amos ex rel. Amos v. City of Page, Arizona*, 257 F.3d 1086, 1089-90 (9th Cir. 2001), cited by Defendant County, where a driver crashed his car and then police conducted a search for him but ultimately could not locate him (the driver's body was found almost year later at the bottom of a canyon). The Ninth Circuit rejected the concept of "geographic control" as a state created danger because the state itself did not cause the driver to crash in the first place.  *Id*. at 1090-91.  Here, the County draws desperate people from all over the region to the Skid Row area—an area it knows to be deadly—with the largely illusory promise of housing and services.  Those desperate people, including several plaintiffs, are compelled to stay because there is nowhere else for them to go with a better chance of help.  Yet help never comes.  True, they are not physically behind bars but they effectively have no choice in the matter, and no meaningful option to leave.  As a result, they are trapped in an area teeming with danger and health hazards.  Plaintiffs have, at minimum, alleged sufficient facts for pleading at this stage.

## B.    Plaintiffs Have Alleged Sufficient Facts to State a Claim for Procedural Due Process

Plaintiffs have also properly alleged the County has violated procedural due process under the Fifth and Fourteenth Amendments by infringing on the interests of residents and property owners without due process.  Under the doctrine of procedural

due process, Defendants may not interfere with a liberty or property interest without following constitutionally sufficient procedures. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Such procedures require at a minimum "notice and an opportunity to be heard before the Government deprives them of property." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).

Here, Plaintiffs have properly alleged that for over 40 years, Defendant County has repeatedly taken actions which concentrate homeless individuals in unsafe areas, particularly in Skid Row. (FASC ¶ 30-45) The City and County were both complicit in this policy. (*Id.*) This policy has been implemented without proper procedures for the people affected by it, thus depriving them of their property. (FASC ¶ 213.) For example, Joseph Burk cannot find tenants or otherwise use or sell his property due to the dangerous conditions in the Containment area. (FASC ¶¶ 100-101.) Used needles and fecal matter fill gutters and accumulate on Mark Shinbane's property. He routinely spends hundreds of thousands of dollars a year attempting to keep some semblance of sanitation only for the waste to invariably return. (FASC ¶ 96(k).) Harry Tashdjian has been forced to routinely repair parts of his building which are affected by out-of-control fires, urination and feces, and frequent graffiti. (FASC ¶ 142.) Forcing residents to pay for basic municipal services, after depreciating their property values through City and County policy of containment, is economically equivalent to exacting a taking upon these residents without due process and without just compensation. Even if Plaintiffs' claims did not involve fundamental rights— which they do—the County cannot justify any "rational basis" for these policies in light of the clear harm being inflicted on Plaintiffs daily.

## C.  Plaintiffs Have Alleged Sufficient Facts to State an Equal Protection Claim

### 1.  *Geographic Discrimination*

For decades Defendants have been arbitrarily determining where unhoused individuals must and must not reside. That was the very purpose of the Containment

policy: to require people experiencing homelessness to remain in a particular location of downtown Los Angeles (and not leave). (FASC ¶¶ 30-39, 212-213.)  This affects not only housed plaintiffs but also unhoused, who are faced daily with increased crime, refuse, disease, and fire risks directly because of Defendants' actions. (FASC, *passim.*) George Frem is not located in the Containment area but experiences the same discrimination when City and County (and City/County through LAHSA) officials direct individuals to camp under the adjacent freeway, directly impacting his business.  (FASC ¶¶ 110-114.)

> The "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."

*Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923) (citation omitted). "It is well settled that the Equal Protection Clause 'protect[s] persons, not groups,' and that the Clause's protections apply to administrative as well as legislative acts." *Enquist v. Or. Dep't of Agric.,* 553 U.S. 591, 597 (2008) (citations omitted). Plaintiffs need not allege membership in a protected class so long as they can identify disparate treatment from others similarly situated.  *Id.* at 601 (Plaintiffs satisfy their pleading burden if they properly allege they have "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.") (citing *Vill. of Willowbrook v. Grace Olech*, 528 U.S. 562, 564 (2000).

There is no rational, non-discriminatory purpose for corralling the destitute and sick into a 50-square block area (or under a freeway) and then effectively abandoning them without the assistance they so desperately need.  Keeping homeless people—particularly the most sick, desperate individuals—in one geographic area to placate other constituents is not "rational."  The County does not even attempt to identify a rational basis, instead continuing to blame the City for its concomitant role.

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

2.    *Racial Discrimination*

The FASC alleges the City and County, together with other state actors, have engaged in discriminatory actions, and set discriminatory policies, which have resulted in a disproportionate representation of Black people experiencing homelessness.  (FASC ¶¶ 41 (concentrating services in Skid Row, segregating by race); 42 (identifying institutional and structural racism in, *inter alia*, criminal justice, housing, and health care (county obligations); 43 (concentration of County services in Skid Row); 44 (County failure to meet housing obligations which has disproportionately affected Black Angelenos); 45 (referencing the Court's detailed identification of many levels of governments' racist actions, in which the County was complicit); 214 ("The City and County have repeatedly made affirmative decisions and adopted policies and laws which has furthered this disparate treatment, knowing the result would have a continued and intensified disparate impact. Here the discrimination is so blatant and invidious as to infer improper discriminatory intent by race.")

Defendant County complains that disproportionate impact alone is insufficient to state an equal protection claim but in fact, there is Supreme Court jurisprudence on point to the contrary. In *Yick v. Hopkins*, the petitioner, who was Chinese, had been denied a permit to operate a laundry in a wooden facility along with two hundred other Chinese nationals, while eighty non-Chinese laundry operators were granted a permit. 118 U.S. 356, 374 (1886). The law itself was "fair on its face." *Id*. at 373. Still, the Supreme Court found the facts "admitted" and the discrimination so clear that the only conclusion that could be drawn was that the animating force behind the action was "hostility to the race and nationality to which the petitioners belong, and which, in the eye of the law, is not justified." *Id*. at 374; *see also Gomillion v. Lightfoot*, 364 U.S. 339, 341 (1960) (City of Tuskegee was liable for redistricting where it redrew the city limits from a square into an oddly formed "twenty-eight-sided figure," the act of which was neutral on its face but the effect of which was "to

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

13

remove from the city all save four or five of its 400 Negro voters while not removing a single white voter or resident."); *Rogers v. Lodge*, 458 U.S. 613, 618 (1982) ("[D]iscriminatory intent need not be proved by direct evidence. 'Necessarily an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another.'" (citation omitted)). The acute overrepresentation of Black people in the homeless community (40 percent), compared to the population of Los Angeles in general (9 percent), undisputed actions of historical discrimination which has caused that overrepresentation, and continued affirmative choices to continue a path which the County *knows* will continue to cause a disproportionate impact on black people, all support Plaintiffs' claim.

### D.    Municipal Liability

Plaintiffs properly allege all actions were taken by County agents pursuant to official "policy, procedure, or customs held by the . . . County of Los Angeles" (FASC ¶ 224) with "deliberate indifference, and conscious and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff[s]." (*Id*.) Under *Starr v. Baca*, (1) the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and (2) "the factual allegations . . . must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  652 F.3d 1202, 1216 (9th Cir. 2011). Plaintiffs have identified the specific policies alleged and acted upon throughout the complaint, which, taken together, entitle Plaintiffs to relief. (FASC, *passim*.)  Beyond listing generally the policies and practices, identification of the specific actors and specific policies, procedures, or customs under *Monell* are a proper subject for discovery.  *See Rosales v. County of San Diego*, 511 F. Supp. 3d 1070, 1103-04 (S.D. Cal. Jan. 5, 2021) (denying motion to dismiss on basis of allegedly threadbare allegations because at early point in case "listing of informal or overarching deficient

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

14

policies was adequate . . . 'particularly since information relating to the policies, customs, and practices of County Defendants . . . is likely to be easily available to them.'") (citations omitted); *see also Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899-900 (N.D. Cal. 2013) (allegations identifying "the content of the policies, customs, or practices the execution of which [give] rise to [] Constitutional injuries" is sufficient to support a *Monell* claim.). Because Plaintiffs have identified clear constitutional injuries and policies of Defendant County which were the moving force behind those injuries, Plaintiffs have exceeded the standard required under *Starr.*

## VI. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR DISABILITY-RELATED CLAIMS

Sidewalks throughout Skid Row and elsewhere in Los Angeles are completely blocked and impassible, requiring individuals restricted to wheelchairs (including two named plaintiffs) to dangerously traverse the middle of the road. (FASC ¶¶ 11, 59, 96(j), 152.) The Americans with Disability Act (ADA) requires individuals with disabilities be afforded "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . [.]" 42 U.S.C. § 12182(a). The ADA's "antidiscrimination mandate requires that facilities be 'readily accessible to and usable by individuals with disabilities.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (citation omitted). Title II therefore "requires a public entity to make 'reasonable modifications' to its 'policies, practices, or procedures' when necessary to avoid such discrimination." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 749 (2017) (quoting 28 C.F.R. § 35.130(b)(7) (2016)).

To satisfy the ADA, public sidewalks must have at least "36 inches . . . minimum" clearance, or passable sidewalk. 36 C.F.R. § 1191.1, app. D, § 403.5.1 (2014). While the City is responsible for ensuring sidewalks within its jurisdiction are passable for all its residents to meet the requirements of the ADA, the County is

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

equally liable for causing the obstruction in the first place. The sidewalks in Skid Row are not accessible due to the accumulation of personal property and piles of hazardous waste as a direct result of the City and County's actions and failures which leave thousands on the street to build their homes on public sidewalks. (FASC ¶¶ 57-61.)

Plaintiffs Suarez and Van Scoy are prevented from using the sidewalks "'by reason' of their disabilities" (MTD at 26-27): while blocked sidewalks are inconvenient or dangerous for those who do not use mobility devices, blocked sidewalks for Suarez and Van Scoy, who cannot simply step down and around an encampment, pose a vastly different and greater danger.  Plaintiffs properly allege that Suarez and Van Scoy are burdened "in a manner different and greater than [sidewalk blockages] burden[] others." *Crowder v. Kitagawa*, 81 F.3d 1480, 1484 (9th Cir. 1996).  In *Crowder*, the ninth circuit held that Hawaii's quarantine requirement for animals coming into the state for a period of 120 days was a "policy, practice or procedure which discriminates against visually-impaired individuals" even though the law technically burdened non-disabled individuals as well.  *Id*. at 1481-82, 1485.  The court noted that congress intended the ADA not only to address "outright intentional exclusion" but also some "disparate impact cases of discrimination, for [many] barriers to full participation . . . are facially neutral but may work to effectuate discrimination against disabled persons." *Id*. at 1483.

Though blocked sidewalks impact everyone, individuals using mobility devices are uniquely burdened insofar as they cannot simply step around or walk through the street to the other side.  Instead they must turn around and go all the way back to the other side of the street, which may be blocked as well (as it is on 5th and San Pedro, where Van Scoy lives), leaving them unable to traverse the street at all.  And for Suarez, who uses an electric wheelchair, this process runs the risk of draining his wheelchair battery and leaving him stranded in a dangerous and unhealthy area. The

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

blocked sidewalks pose a unique and amplified danger not present to other individuals.

## VII.   PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW

### A.   Plaintiffs Have Alleged Sufficient Facts to State a Claim for Violation of Welf. & Inst. Code Section 17000 Under Both Negligence[4] and Mandatory Duty Theory

Plaintiffs have alleged facts sufficient to support their claim that the County is in violation of California Government Code section 815.6 and Welfare & Institutions Code section 17000 ("Section 17000") by failing to provide medically necessary care to unhoused individuals in Los Angeles.  Section 17000 mandates that counties provide support to "all incompetent, poor, indigent persons and those incapacitated by age, disease, or accident" when such persons are not otherwise supported.  Cal. Welf. & Inst. Code § 17000.  The purpose of this section is "to provide for protection, care, and assistance to the people of the state in need thereof," and to provide "appropriate aid and services to all of its needy and distressed . . . promptly and humanely . . . as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society."  Cal. Welf. & Inst. Code § 10000.  Courts have clarified that Section 17000 creates two separate obligations: (a) provision of "general assistance" in terms of financial or in-kind relief and (b) provision of subsistence medical care to the indigent.  *Hunt v. Superior Ct.,* 21 Cal. 4th 984, 1011-13 (1999).

The County argues that because section 17000 permits counties to act with

---

[4] Because Plaintiffs have properly alleged Defendant County—through its personnel—has violated a mandatory duty, its negligence claim must survive as well. *Brenneman v. State of California*, 208 Cal. App. 3d 812, 817 n.2 (1989) ("Government Code section 815.6 applies to public entities the familiar rule of tort law that violation of a legislatively prescribed standard of care creates a rebuttable presumption of negligence. [ ] This rule is codified in Evidence Code section 669, subdivision (a). Discussions of whether a mandatory duty exists under Government Code section 815.6 and whether a standard of care has been legislatively prescribed under Evidence Code section 669 are therefore interchangeable.") (citations omitted), *review denied* (May 23, 1989).

discretion in determining the "form and structure of relief" they provide, 17000 "does not mandate particular forms of assistance." (MTD at 30.)[5]  In fact, while a County has some manner of discretion in *how* it provides relief, the County is still obligated to actually provide relief that comports with the statute.  *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1245 (1996), *modified on denial of reh'g* (Sept. 18, 1996) ("Section 17000 . . . mandates that medical care be provided to indigents and section 10000 requires that such care be provided promptly and humanely. The duty is mandated by statute. There is no discretion concerning whether to provide such care.") and 1237 ("[C]ounties have a great deal of discretion in setting standards for eligibility and levels of aid.  'Nonetheless, the [county's] discretion can be exercised only within fixed boundaries and consistent with the underlying purpose of the statutes which impose the duty.'") (citation omitted); *see also Hunt*, 21 Cal. 4th at 991 ("Although this provision confers upon a county broad discretion to determine eligibility for—and the types of—indigent relief, this discretion must be exercised in a manner that is consistent with—and that furthers the objectives of—state statutes.").

Under *Tailfeather,* "counties must, at a minimum, provide 'medical care, not just emergency care,' and provide it at a level which 'remedies [] pain and infection . . . ." 48 Cal. 4th at 1236.  That care must be provided "at a level which does not lead to unnecessary suffering or endanger life and health . . . ." *Id.* at 1240.  This mandate includes subsistence medical services and medically necessary services which are defined as those "reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain."  Cal. Welf. & Inst. Code § 14059.5(a); *see also County of Alameda v. State Bd. of Control*, 14 Cal. App. 4th 1096, 1108 n.8 (1993).

---

[5] *Clinton v. Cody*, HO44030, 2019 WL 2004842 (Cal. Ct. App. May 7, 2019), *review denied* (July 17, 2019) is unpublished and therefore noncitable under California Rule of Court 8.1115, and is in any case non-binding authority with a vastly different procedural posture and facts.

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1        If the County fails to meet this obligation, a court "must intervene to enforce

2   compliance." *City & County of San Francisco v. Superior Ct.*, 57 Cal. App. 3d 44,

3   50 (1976).  For example, in *Cooke v. Superior Court*, the court found that the County

4   of San Diego was required to provide indigent residents with dental care sufficient to

5   remedy substantial pain and infection.  213 Cal. App. 3d 401, 413-14 (1989).  In

6   *Harris v. Board of Supervisors*, the Ninth Circuit affirmed the district court's grant of

7   a preliminary injunction under Section 17000 requiring Los Angeles County to

8   continue to provide beds at two hospitals where the county had intended to reduce

9   capacity, finding that eliminating the beds would violate Section 17000.  366 F.3d

10  754, 765 (9th Cir. 2004); *see also San Francisco*, 57 Cal. App. 3d at 50.

11       The County's reliance on *Scates v. Rydingsword*, is misplaced because that

12  case rests upon the County's obligation for general relief and does not address the

13  County's obligation to provide health care—two distinct obligations under Section

14  17000.  229 Cal. App. 3d 1085, 1113 (1991), *reh'g denied and op. modified* (May 31,

15  1991).  And while the *Scates* court noted that the Welfare Code gave municipalities

16  discretion in what services to provide homeless individuals and permitted cuts in

17  services, there were no allegations that government policy encouraged and helped

18  create the dangerous and unhealthy conditions that exist in LA County, particularly

19  Skid Row.

20       Defendant County has a duty to provide "subsistence" medical care, and

21  Plaintiffs have alleged sufficient facts to support the conclusion that "subsistence"

22  medical care includes basic shelter.  (FAC ¶¶ 167-172.)  Additionally, several

23  Plaintiffs have properly alleged mental health care —required by statute to be

24  provided to them as indigent residents of the County—has been withheld from them.

25  (FAC ¶¶ 96(b), 96(c), 96(d), 96(f), 96(h), 96(i), 116.)  Thus, Plaintiffs have alleged

26  sufficient facts to support causes of action against the County under both California

27  Government Code section 815.6 and common law negligence theory.

28

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

19

**B.     Plaintiffs Have Alleged Sufficient Facts to Support a Taxpayer Waste Claim under California Code of Civil Procedure Section 526a**

Contrary to the County's argument, Plaintiffs need not demonstrate an expenditure is "illegal" to constitute a claim under section 526a; "waste" may also be shown where the government conduct is:

> "[A] useless expenditure of public funds" that is incapable of achieving the ostensible goal. [ ] Certainly it reaches outright fraud, corruption, or collusion. [ ] Even when "done in the exercise of a lawful power," public spending may qualify as waste if it is "completely unnecessary" or "useless" or "provides no public benefit." [ ] Waste is money that is squandered, or money that is left uncollected, and thus is a constitutionally prohibited gift of public resources. [ ] Waste can exist even when there is no net loss, as when "illegal procedures actually permit a saving of tax funds."

*Chiatello v. City & County of San Francisco*, 189 Cal. App. 4th 472, 482 (2010) (citations omitted), *review denied* (Jan. 26, 2011).  For example, in *Los Altos Property Owners Ass'n v. Hutcheon*, plaintiffs' allegations were sufficient to support a finding of waste under section 526a where they alleged defendant school district "will be expending public funds on a consolidation plan that costs a great deal more than alternative plans considered, without a finding of any additional public benefit." 69 Cal. App. 3d 22, 30 (1977).  Similarly in *Harnett v. Sacramento County*, the California Supreme Court found that holding an election which could not achieve the stated goal would be a "useless expenditure and waste of public funds."  195 Cal. 676, 682-83 (1925).  Likewise, Plaintiffs have properly alleged that taxpayer funds have been misused in a way that makes it impossible for Measure H to achieve the ostensible goal for which it was passed.  (FASC ¶¶ 83-92.)

**C.     Statutory Immunity is Inapplicable to Claims for Equitable and Injunctive Relief**

California Government Code section 814, which governs all claims for immunities under Title 1, Division 3.6, Part 2, Chapter 1 (inclusive of Government Code sections 815.2 and 820.2, cited by Defendant County), states: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

1 | <u>damages</u> against a public entity or public employee." Cal. Gov't Code § 814

2 | (emphasis added); *see also* Cal. Gov't Code § 814, Legislative Committee

3 | Comments—Senate ("The various provisions of this part determine only whether a

4 | public entity or public employee is liable <u>for money or damages</u> . . . .  This section

5 | also declares that the provision of this statute relating to liability of public entities and

6 | public employees have no effect upon whatever right a person may have to obtain

7 | relief <u>other than money or damages</u>.") (emphasis added.); *Schooler v. State*, 85 Cal.

8 | App. 4th 1004, 1013 (2000) ("[U]nder section 814, Government Code immunities

9 | extend only to tort actions that seek money damages.").

10 |  Plaintiffs seek only equitable and injunctive relief for their California Tort

11 | causes of action (*see* Prayer for Relief No. 2 ("As to the federal claims and claims

12 | under the California constitution only, compensatory damages and other special,

13 | general and consequential damages according to proof."). Defendant County's

14 | argument that the injunctive relief sought by Plaintiffs would "impose financial

15 | burdens" on the County and therefore immunity is still applicable under *Schooler*

16 | fails because Plaintiffs are not seeking to impose additional financial burdens the

17 | County would not already have, had it properly fulfilled its constitutional and

18 | statutory obligations.  *See Pierce v. County of Orange*, Case No. SA CV 01-981,

19 | 2004 WL 7340113, at *2 (C.D. Cal. June 4, 2004) ("Unlike *Schooler* where the

20 | plaintiff sought to use equitable and injunctive relief to impose a duty to maintain a

21 | property the state did not otherwise have a duty to maintain, Plaintiffs here seek to

22 | enforce compliance with mandatory state jail regulations, the California Disabled

23 | Persons Act, and the due process and equal protection clauses of the California

24 | Constitution.  Plaintiffs are not seeking to expose the County to financial burdens it

25 | would not otherwise have incurred, as Defendant is already under the duty to comply

26 | with these laws.")  In fact, one of the central points of the complaint is the

27 | extraordinary amounts of money that the County has expended allegedly to end

28 | homelessness, when a fraction of those funds could mitigate this crisis directly by

21

providing shelter and services for every unhoused individual in the streets of Los Angeles.  (FASC ¶¶ 18-23; 83-92.)  Plaintiffs seek to compel the County to use only existing funds, not impose additional financial burdens.

### D.   Plaintiffs Have Properly Plead Facts to Support Their Nuisance Claim

California has defined nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of . . . any public park, square, street, or highway."  Cal. Civ. Code § 3479.

To prevail on a public nuisance claim at this stage, Plaintiffs must properly allege facts which support that (1) the City and County have created a condition that is harmful Plaintiffs, so as to interfere with their comfortable enjoyment of life or property; (2) the condition has affected a substantial number of people at the same time; (3) an ordinary person would be reasonably annoyed or disturbed by the condition; (4) the seriousness of the harm outweighs the social utility of the City or County's conduct; (5) Plaintiffs never consented to this conduct; (6) Plaintiffs suffered harm that was different from the type of harm suffered by the general public; and (7) the City and County's conduct was a substantial factor in causing LA Alliance's harm.  *See Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1548 (citing Judicial Council of California Civil Jury Instructions, CACI No. 2020 (2008)).

The City and County's actions have led to the buildup of encampments (resulting from Defendants' failures) which are harmful to health and indecent and offensive to the senses of both the housed and unhoused Plaintiffs, are interfering with their comfortable enjoyment of life or property, are obstructing the free passage of public sidewalks, and are a fire hazard to Plaintiffs' personal and real property. (FASC, *passim*.)  These encampments are impacting a substantial number of people

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

22

throughout all affected areas. (FASC ¶¶ 70-71.) *Third*, any ordinary person would be reasonably annoyed or disturbed by the conditions. Elements four and five are easily met because there is zero utility gained from having encampments obstructing sidewalks throughout Skid Row and other areas and Plaintiffs never consented to such conditions.

*Sixth*, Plaintiffs' harm resulting from encampments "is normally different in kind from that suffered by other members of the public." *Birke*, 169 Cal. App. 4th at 1550 (citing Restatement (Second) of Torts § 821C, com. d, p. 96 (1979)). Indeed, Plaintiffs have suffered, among other things: (1) increased health risks; (2) a reduction in property value in the Designated Areas; (3) increased insurance costs due to the fire risks associated with encampments; (4) additional cleanup costs associated with the encampments, and (5) significant health and safety risks of being unhoused subject to encampments. (FASC, *passim*.) Additionally, the property owner plaintiffs need not show special injury where their property is also impacted. *Birke* at 1551 ("[W]ith respect to the special injury requirement . . . when the nuisance is a private as well as a public one, there is no requirement the plaintiff suffer damage different in kind from that suffered by the general public. [ ] That is, the plaintiff 'does not lose his rights as a landowner merely because others suffer damage of the same kind, or even of the same degree.'") (citations omitted).

Finally, the seventh element – whether the City and County's conduct was a substantial factor in causing the harm – is well documented and acknowledged by Defendants themselves. Further, the "substantial factor" test for nuisance may be met by a *failure to act* when the defendant has a duty to take a positive action to prevent or abate the interference. *See Birke*, 169 Cal. App. 4th at 1548,1552-53 (finding that as the plaintiff's landlord, defendant had a duty to maintain its premises in a reasonably safe condition). Here, putting aside their intentional conduct through the Containment Policy, the City and County had "a duty to keep their communities'

23

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

streets open and available for movement of people and property, the primary purpose to which the streets are dedicated." *Schneider v. State*, 308 U.S. 147, 160-61 (1939).

To establish a private nuisance, Plaintiffs must show the following three elements in addition to those of a public nuisance: (1) Plaintiffs owned, leased, occupied or controlled real property; (2) that defendants' conduct interfered with Plaintiffs' use of their property; and that (3) Plaintiffs were harmed. *See Dep't of Fish & Game v. Superior Ct.*, 197 Cal. App. 4th 1323, 1352 (citing Judicial Council of California Civil Jury Instructions, CACI No. 2021 (2011)). All three additional elements are easily met. Several Plaintiffs own property in the Skid Row area, the Containment Policy interfered with their use of property and they suffered harm. (FASC ¶¶ 96-146.)

To be clear, Plaintiffs do not allege "[persons experiencing homelessness] are themselves an actionable, area-wide nuisance" and in fact several unhoused individuals are members of the Alliance. Rather, the blame lays squarely at the City and County's feet for causing and exacerbating this crisis. When large numbers of people are forced to live on the street without basic access to hygiene and sanitary facilities like bathrooms and kitchens, it is no surprise that there is a massive health crisis on those streets. Nor is it a surprise when those same people—desperate and vulnerable—become prey for the criminal element. Contrary to Defendants' representations, the Ninth Circuit has not "repeatedly affirmed" that homeless individuals "have rights to exist in the streets with their personal property" (MTD at 34), but merely that when they have nowhere else to go—because their local government has failed them—sleeping and maintaining property in public spaces is the inevitable result.

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court DENY Defendant County of Los Angeles' Motion to Dismiss in its entirety.  Alternatively, if the Court is inclined to grant Defendant's Motion to Dismiss, Plaintiffs request the opportunity to amend the complaint to overcome any legal insufficiencies the Court may have found.


Dated: December 23, 2021                    _/s/ Elizabeth A. Mitchell_
                                            SPERTUS, LANDES & UMHOFER, LLP
                                            Matthew Donald Umhofer (SBN 206607)
                                            Elizabeth A. Mitchell (SBN 251139)

                                            *Attorneys for Plaintiffs*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA 90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

PLAINTIFFS' OPPOSITION TO COUNTY OF LOS ANGELES' MOTION TO DISMISS