MICHAEL N. FEUER, City Attorney (SBN 111529)
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
ARLENE N. HOANG, Deputy City Attorney (SBN 193395)
JESSICA MARIANI, Deputy City Attorney (SBN 280748)
RYAN SALSIG, Deputy City Attorney (SBN 250830)
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone: 213-978-7508
Facsimile: 213-978-7011
Email: Ryan.Salsig@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | Case No. CV 20-02291 DOC (KES) <br><br> **CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT** <br><br> Date: January 24, 2022 <br> Time: 8:30 a.m. <br> Courtroom: 9D <br><br> **Hon. David O. Carter** <br> **United States District Judge** |

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     ARGUMENT ........................................................................................................1

    A. Plaintiffs Have Not Established Article III Standing. .....................................1

        1. Plaintiffs have not demonstrated an injury-in-fact, causation, or redressability For each claim they assert against the City. ..........................1

        2. The Court's equitable powers are not unlimited. .........................................4

        3. Plaintiffs admit that the prudential standing requirements cannot be established thereby mandating dismissal of the FASC. ................................5

        4. LA Alliance must be dismissed from any claim seeking damages. .............5

    B. Plaintiffs Have Not Alleged A Due Process Claim Based On The Special-Relationship Or State-Created Danger Doctrines. ...........................................6

        1. No Plaintiff has alleged any custodial relationship between the City and any Plaintiff, precluding application of the special-relationship doctrine. .6

        2. Plaintiffs have alleged generalized dangers faced by all residents of Los Angeles, precluding application of the state-created danger doctrine as a matter of law. ..............................................................................................8

    C. Plaintiffs' Equal Protection Claim Remains Fatally Defective. ....................12

        1. Plaintiffs have not pleaded facts to overcome the presumption of rationality applicable to a classification based on geography...................12

        2. Plaintiffs have failed to allege any specific racially discriminatory decision by the City, and have failed to allege evidence the unspecified decision was taken with discriminatory intent. .........................................13

    D. State Law Claims. ........................................................................................17

        1. Plaintiffs do not allege any actionable tort by a City employee for which the City could be vicariously liable........................................................17

i

2.  Plaintiffs lack Article III standing to assert a Code of Civil Procedure section 526a claim, and have not articulated the kind of waste based on illegality required............................................................................19

III.    CONCLUSION.................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

## Federal Cases

*ABC Servs. Corp. v. Health Net of Cal., Inc.*,
No. CV 19-00243-DOC-DFM, 2020 U.S. Dist. LEXIS 78397 (C.D. Cal. May 4, 2020) ................................................................................... 5, 6, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 12

*Associated Gen. Contractors of America, San Diego Chapter, Inc. v. California Dept. of Transp.*,
713 F.3d 1187 (9th Cir. 2013) ................................................................ 3

*Bologna v. City & County of San Francisco*,
No. C 09-2272 SI, 2009 U.S. Dist. LEXIS 69985 (N.D. Cal. Aug. 11, 2009) ...... 9

*Brown v. Bd. of Educ.*,
347 U.S. 483 (1954) .............................................................................. 14

*Brown v. Plata*,
563 U.S. 493 (2011) ................................................................................ 4

*Campbell v. State Dep't of Soc. & Health Servs.*,
671 F.3d 837 (9th Cir. 2011) .................................................................. 7

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ................................................................ 19

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
657 F.3d 936 (9th Cir. 2011) (en banc) ................................................... 2

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .......................................................................... 1, 19

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
140 S. Ct. 1891 (2020) .......................................................................... 15

*Deshaney v. Winnebago County Dep't of Social Servs.*,
489 U.S. 189 (1989) ............................................................................ 7, 8

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

*F.C.C. v. Beach Communications*,
   508 U.S. 307 (1993) ................................................................................. 12, 13

*Flemming v. Nestor*,
   363 U.S. 603 (1960) ...................................................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................................ 2

*Friends of Park v. City of Fresno*,
   848 F.Supp.2d 1152 (E.D. Cal. Jan. 31, 2012) ............................................. 20

*Gomillion v. Lightfoot*,
   364 U.S. 339 (1960) ...................................................................................... 16

*Heller v. Doe*,
   509 U.S. 312 (1993) ...................................................................................... 13

*Hunt v. Washington State Apple Advertising Commission*,
   432 U.S. 333 (1977) ........................................................................................ 5

*Kahawaiolaa v. Norton*,
   386 F.3d 1271 (9th Cir. 2004) ...................................................................... 12

*Ketchum v. County of Alameda*,
   811 F.2d 1243 (9th Cir. 1987) ........................................................................ 8

*Kokkonen v. Guardian Life Ins. Co. of America*,
   511 U.S. 375 (1994) ........................................................................................ 1

*L.W. v. Grubbs*,
   974 F.2d 119 (9th Cir. 1992) .......................................................................... 7

*Lawrence v. Texas*,
   539 U.S. 558 (2003) ...................................................................................... 14

*Lee v. City of Los Angeles*,
   250 F.3d 668 (9th Cir. 2001) ........................................................................ 15

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................ 1

iv

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

*McLaughlin v. Florida*,
   379 U.S. 184 (1964)......................................................................................... 14

*Momox-Caselis v. Donohue*,
   987 F.3d 835 (9th Cir. 2021) ........................................................................... 7

*Morongo Band of Mission Indians v. California State Board of Equalization*,
   858 F.2d 1376 (1988).......................................................................................... 3

*Munger v. City of Glasgow Police Dep't*,
   227 F.3d 1082 (9th Cir. 2000) ......................................................................... 9

*Northstar Financial Advisors, Inc. v. Schwab Investments*,
   779 F.3d 1036 (9th Cir. 2015) ......................................................................... 3

*Olson v. California*,
   No. CV 19-10956-DMG, 2020 U.S. Dist. LEXIS 207347 (C.D. Cal. Sept. 18,
   2020) ............................................................................................................... 12

*Patel v. Kent Sch. Dist.*,
   648 F.3d 965 (9th Cir. 2011) ........................................................................... 7

*Pendia v. City of Huntington Park*,
   115 F.3d 707 (9th Cir. 1997) ........................................................................... 9

*Romer v. Evans*,
   517 U.S. 620 (1996)........................................................................................ 14

*Steinle v. City & County of San Francisco*,
   230 F.Supp.3d 994 (N.D. Cal. 2017)...................................................... 9, 10, 11

*Summers v. Earth Island Institute*,
   555 U.S. 488 (2009)........................................................................................... 3

*Swann v. Charlotte-Mecklenburg Bd. of Ed.*,
   402 U.S. 1 (1971)............................................................................................... 4

*United Union of Roofers, etc. No. 40 v. Insurance Corp. of America*,
   919 F.2d 1398 (9th Cir. 1990) ......................................................................... 5

*Vargas v. Chelan County Reg'l Justice Ctr.*,
   No. CV-09-39-EFS, 2010 U.S. Dist. LEXIS 15029 (E.D. Wash. Feb. 22, 2010) 12

v

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977) ................................................................................ 16

*Wood v. Ostrander*,
   879 F.3d 583 (9th Cir. 1989) .......................................................... 8, 9, 10

*Yick Wo v. Hopkins*,
   118 U.S. 356 (1886) ................................................................................ 16

## State Cases

*Cal. DUI Lawyers Assn. v. Cal. Dept. of Motor Vehicles*,
   20 Cal.App.5th 1247 (2018) ................................................................... 20

*Cavey v. Tualla*,
   69 Cal.App.5th 310 (2021) ................................................................ 17, 18

*Chiatello v. City and County of San Francisco*,
   189 Cal.App.4th 472 (2010) ................................................................... 20

*Contreas v. Anderson*,
   59 Cal.App.4th 188 (1997) ..................................................................... 18

*Harnett v. Sacramento County*,
   195 Cal. 676 (1925) ................................................................................ 21

*Humane Soc. of the U.S. v. St Bd. of Equalization*,
   152 Cal.App.4th 349 (2007) ................................................................... 20

*Koll-Irvine Center Property Owners Assn. v. County of Orange*,
   24 Cal.App.4th 1036 (1994) ................................................................... 12

*Lloyd v. County of Los Angeles*,
   172 Cal.App.4th 320 (2009) ................................................................... 17

*Lopez v. City of Los Angeles*,
   55 Cal.App.5th 244 (2020) ..................................................................... 18

*San Bernardino Cty. v. Superior Court*,
   239 Cal.App.4th 679 (2015) ................................................................... 20

*Sundance v. Municipal Court*,
   42 Cal.3d 1101 (1986) ............................................................................ 20

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND
SUPPLEMENTAL COMPLAINT

*Vasquez v. Residential Investments, Inc.*,
118 Cal.App.4th 269 (2004) ................................................................. 18

**State Statutes**

California Government Code § 815 .......................................................... 17

California Government Code § 820 .......................................................... 17

California Code of Civil Procedure § 526a ................................... 19, 20, 21

Florida Statutes § 798.05 ...................................................................... 14

Texas Penal Code § 21.06(a) .................................................................. 14

**Other Authorities**

Colorado Constitution Amendment 2 ...................................................... 14

Central District of California, Local Rule 11-6 ........................................ 12

Federal Rules of Civil Procedure, Rule 8 ............................................... 1, 5

Federal Rules of Civil Procedure, Rule 12(b)(1) ......................................... 2

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

## I. **INTRODUCTION**

There is broad agreement that the homelessness crisis is the greatest challenge facing the Los Angeles region; there is less consensus about how best to solve that crisis, with its multitude of causes, impacts, and complexities.  Plaintiffs seek to use the equitable power of the federal courts to impose their preferences for addressing homelessness, overruling the legislative policy decisions made by elected officials, and by the voters themselves.  However, as Defendant City of Los Angeles made clear in its Motion to Dismiss, Plaintiffs do not identify a single unconstitutional practice or policy being enforced by the City, and do not allege valid causes of action against the City for redressable injuries suffered by specific plaintiffs.  Moreover, the long-established doctrines of separation of powers, federalism, and standing dictate that Plaintiffs cannot achieve their desired goal through this lawsuit.  And, as the deficiencies of the pleadings have now been pointed out twice by the defendants—and once by the Ninth Circuit Court of Appeals— but Plaintiffs still have not and cannot state valid claims, the First Amended and Supplemental Complaint ("FASC") case should be dismissed with prejudice and without leave to amend.

## II. **ARGUMENT**

### A. **Plaintiffs Have Not Established Article III Standing.**

**1.   Plaintiffs have not demonstrated an injury-in-fact, causation, or redressability for each claim they assert against the City.**

It is undisputed that Plaintiffs must affirmatively establish standing for each claim they assert against the City. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342, 352 (2006). Plaintiffs have not done so.  The FASC and Opposition fail to demonstrate how each plaintiff has suffered (1) an injury-in-fact, (2) caused by the City (3) which is likely to be redressed.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Indeed, despite their burden and in violation of Rule 8, except for claims 5, 7, 8, 9 and 12, Plaintiffs have failed to specifically identify which Plaintiff is asserting what precise claim against

1

the City.  But even with claims 5 and 12 (inverse condemnation and takings), there is no identification concerning which of the LA Alliance members the claims are brought on behalf of except for individual Plaintiffs Burk and Frem who are also alleged to be LA Alliance members. [FASC, ¶ 96.]  Plaintiffs admit they consist of "a broad coalition of diverse interests—residents (housed and unhoused), community members, small business owners, non-profits, and service providers…." [ECF 379, 1:18-20].  Such a diverse "coalition" is fatal to Plaintiffs' standing.

Plaintiffs fail to meet their burden to establish standing for each of the individual Plaintiffs, and for LA Alliance.  For instance, the Plaintiff business owners and housed residents are not alleged to be members of the black or brown communities or unsheltered Angelenos, and therefore they do not have standing to assert a Due Process or Equal Protection claim against the City.  Similarly, while Plaintiffs assert public and private nuisance claims, there is no allegation any unhoused individual Plaintiff or unhoused Alliance member is an owner, lessor or occupier of property that purportedly suffered injury caused by the City's conduct.  Plaintiff Frem, a Mar Vista luxury auto shop owner [FASC, ¶110], does not have standing to assert claims related to the City's purported conduct in the Skid Row area.  And because multiple interacting causes resulted in the current homelessness crises, including conduct not alleged against the City [*see e.g.,* FASC, ¶ 89], the City could not have "caused" Plaintiffs' alleged injuries.  Because Plaintiffs have not met their threshold requirement, dismissal under Rules 8 and 12(b)(1) is appropriate for all claims except 5, 7, 8, 9 and 12.

An organization can only establish Article III standing under two theories: (1) in a representative capacity, where there has been an injury to one or more of its members, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000); or (2) on its own behalf, where there has been an injury to the organization itself, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943 (9th Cir. 2011) (en banc).  The FASC purports to seeks representational standing by LA Alliance, but the FASC is devoid of any factual allegations which would establish

2

such standing.

To prove representational standing, LA Alliance must show all of the following: (a) Its members would have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Summers v. Earth Island Institute*, 555 U.S. 488, 493-494 (2009).  The pleading needs to identify the member or members of the association who have suffered, or will suffer, harm and would be entitled to sue in their own right.  *Associated Gen. Contractors of America, San Diego Chapter, Inc. v. California Dept. of Transp.,* 713 F.3d 1187, 1194-1195 (9th Cir. 2013) (no standing found where the plaintiff failed to identify any affected members by name or to submit declarations by members attesting to their harm.) Plaintiffs do not include such allegations in the FASC.  Indeed, as discussed above, with a limited exception for claims 5 and 12, Plaintiff LA Alliance does not identify any affected members of their organization they are suing on behalf of.  And even as to claims 5 and 7, the only identified members of LA Alliance are individual Plaintiffs Burk and Frem.  Furthermore, besides the individual Plaintiffs, LA Alliance does not identify any of its members; it merely provides names of individuals who are "representative of the members."  [FASC, ¶ 96.]

Furthermore, Plaintiffs rely erroneously on *Northstar Financial Advisors, Inc. v. Schwab Investments,* 779 F.3d 1036 (9th Cir. 2015) to try to circumvent the lack of jurisdiction at the time this action was initially filed, as required by *Morongo Band of Mission Indians v. California State Board of Equalization*, 858 F.2d 1376, 1380-81 (1988).  Unlike the factual scenario in *Northstar*, Plaintiffs do not raise any allegations specific to newly added Alliance "representatives" Diaz, Evans, Owsley, Roper, Smith, Albarran or individual Plaintiff Jarrell that arose after the commencement of this action. To the contrary, Plaintiffs' FASC is based on the same allegations of the City's purported conduct that existed for decades and caused the alleged harm prior to the filing of the original complaint in March of 2020.  [ECF 379, p. 6:2-7:2].  Thus, the lack of

3

jurisdiction at the time the original complaint was filed requires dismissal.

### 2. The Court's equitable powers are not unlimited.

Plaintiffs' contentions concerning the Court's broad equitable powers are insufficient.  Merely because the Court may exercise broad equitable powers, these powers are not limitless.  Importantly, the Court does not have the authority to assume control over the City's municipal functions, and principles of federalism and separation of powers are violated by Plaintiffs' request the Court assert control over key municipal functions and substitute its judgment regarding policy priorities.  These powers and decision-making authority belong to the elected public officials, and Plaintiffs' remedy, if any, lies at the polling places, not in the Court.

Plaintiffs cannot properly challenge these settled principles.  The conclusion that policy decisions belong to elected public officials is supported even by the two cases upon which Plaintiffs predominantly rely: *Brown v. Plata*, 563 U.S. 493, 507-08 and 537-38 (2011) and *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971). In *Brown,* the Court provided state officials with repeated opportunities to address and design the response to the proven serious constitutional violations, while steadily pushing for continued progress in doing so.  Only when it became clear that the state was unable to remedy the constitutional violation did the Court take more direct action, but even then, the Court left it to the state to determine how to achieve the result. Indeed, the Court noted "[c]ourts should presume that state officials are in a better position to gauge how best to preserve public safety and balance competing correctional and law enforcement concerns.  The decision to leave details of implementation to the State's discretion protected public safety by leaving sensitive policy decisions to responsible and competent state officials."  *Brown* at 538; *see also Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 16 (1971) ("[r]emedial judicial authority does not put judges automatically in the shoes of [local] authorities whose powers are plenary. Judicial authority enters only when local authority defaults").

Notably, as these decisions and those cited by the City in its moving papers

4

establish, ultimately, under the principles of federalism, separation of powers, and Article III standing, even if a constitutional violation exists within the homelessness crisis, it is the local authorities role, not the Court's, to decide how best to address that violation, and to allocate and deploy City resources to do so.

### 3. Plaintiffs admit that the prudential standing requirements cannot be established, thereby mandating dismissal of the FASC.

The City argued that even if Article III standing exists (which it does not), Plaintiffs cannot meet the prudential standing requirements because they allege only generalized grievances. [ECF 369-1, p. 5-6]. Plaintiffs do not dispute that the prudential standing requirements are not met. Plaintiffs therefore concede the merit of that argument. *ABC Servs. Corp. v. Health Net of Cal., Inc.*, No. CV 19-00243-DOC-DFM, 2020 U.S. Dist. LEXIS 78397, *18-19 (C.D. Cal. May 4, 2020) ("failure to address an argument in opposition briefing constitutes a concession of that argument").

### 4. LA Alliance must be dismissed from any claim seeking damages.

LA Alliance seeks damages on all its "federal claims" and "claims under the California constitution." [FASC, p. 112, Prayer 2]. Though it is generally unclear which Plaintiff(s) assert which claim(s) against the City, it appears the Alliance seeks damages minimally with respect to claims 5, 10, 11, 12, and 13.[1] Associations lack standing to seek monetary relief because this would "necessarily involve individualized proof and thus the participation of association members" [*United Union of Roofers, etc. No. 40 v. Insurance Corp. of America*, 919 F.2d 1398, 1400 (9th Cir. 1990)], which runs afoul of the standing requirement that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit" as articulated in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 342-343 (1977). Thus,

---

[1] It is unclear because some claims are asserted by "All Plaintiffs against All Defendants" [*e.g.*, FASC, p. 110 (11th claim)], but others are simply asserted "Against All Defendants" [*e.g., Id.*, p. 112 (13th claim)]. This failure to make clear which plaintiffs assert which claims, itself, violates Rule 8.

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiff LA Alliance must be dismissed from any claim in which it seeks monetary damages.

**B. Plaintiffs Have Not Alleged A Due Process Claim Based On The Special-Relationship Or State-Created Danger Doctrines.**

   **1. No Plaintiff has alleged any custodial relationship between the City and any Plaintiff, precluding application of the special-relationship doctrine.**

"All Plaintiffs," including the Alliance, Burk, Frem, Jarrell, Malow, Pinksy, Suarez, Tashdjian, Van Scoy, and Whitter, allege the Due Process claim against the City under the state-created danger and special-relationship doctrines. [FASC, ¶216]. No Plaintiff other than Jarrell and, perhaps, Roper who is "representative" of the Alliance membership, opposes the City's grounds for dismissing the special-relationship claim.[2] Under this Court's reasoning in *ABC Servs. Corp.*, 2020 U.S. Dist. LEXIS 78397 at *18-19, the failure of all Plaintiffs, except Jarrell, to address the City's grounds for dismissal "constitutes a concession of that argument." Moreover, no Plaintiff alleges that he or she is in the City's custody, or has suffered any injury while in the City's custody in the past, which precludes application of the special-relationship doctrine as a matter of law.

Jarrell's only opposition is to contend "he was told he could find housing and services" in Skid Row. [ECF 379, p. 11]. Although it is irrelevant as a matter of law, Jarrell does not even allege that it was a City official who told him this. Nowhere in the nine paragraphs of the FASC devoted to Mr. Jarrell does he allege *that he has ever been in the City's custody*. [FASC, ¶115-123]. Roper's argument follows this pattern. He argues only that he "knew resources for those experiencing homelessness were supposed to be available [in Skid Row]." [ECF 379, p. 11]. He does not allege *that he has ever been in the City's custody.* [FASC, ¶ 96(d)].

---

[2] Plaintiffs argue facts regarding Christopher Roper contained in the FASC, but do not identify Roper as a plaintiff in the caption of the FASC, never refer to him as a plaintiff, and allege his only relationship to the case is him being "representative of the membership" of the Alliance [FASC, ¶96], though it is never alleged that Mr. Roper is actually a member of the Alliance. Accordingly, the relevance of the facts regarding Roper is questionable.

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiffs *argue* in the Opposition that both "are effectively brought to Skid Row without volition," though there is no *allegation* that any City official ever detained, coerced, or transported either individual anywhere.  Both argue that they are "prevented from leaving [Skid Row]," not because they are in the City's custody or because any City official has restricted their liberty or freedom of movement, but because they believe "there is no other place for them to go."  [ECF 379, p. 11].  This argument, of course, is belied by Plaintiffs' own allegations that there are homeless encampments "throughout the city and County" [FASC, ¶7].

Applying *Deshaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200 (1989), the Ninth Circuit held "[t]he special-relationship exception does not apply when a state fails to protect a person who is not in custody."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011); *see also L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) ("custody or involuntary hospitalization" create special relationship); *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021) (special relationship exception "applies when there is a custodial relationship between the plaintiff and the State"); *Campbell v. State Dep't of Soc. & Health Servs.*, 671 F.3d 837, 842 (9th Cir. 2011) (special relationship exception is created when "the State takes a person into its custody and holds him there *against his will*") (italics by the court).  Because no Plaintiff alleges he or she is in the City's custody, or is held by the City against their will, the "special-relationship exception" does not exist here as a matter of law.

Jarrell and Roper's implicit argument is that a special relationship was created because: (1) they were "told" by unidentified persons that there were services for them in Skid Row or (2) because they "knew" resources for the homeless were "supposed to be there."  This implicit argument - that a special relationship is created by the promise of support or services – legally fails because the special-relationship doctrine is premised entirely on the state's deprivation of a person's liberty to care for himself, which Plaintiffs do not allege.  It is not premised in any fashion on a promise or commitment to provide services.  *Deshaney* at 199-200 ("[t]he affirmative duty to protect arises ***not***

7

from the State's knowledge of the individual's predicament, **or from its expressions of intent to help him**, but from the limitation [that the State] has imposed on his freedom to act on his own behalf") (bold and italics supplied).  Thus, even if Jarrell and Roper had alleged that a specific City official made specific promises regarding specific services available in Skid Row, which they have not alleged, a special relationship would still not have been created because no Plaintiff has alleged the requisite custodial limitation on his or her freedom to act on his or her own behalf.

### 2. Plaintiffs have alleged generalized dangers faced by all residents of Los Angeles, precluding application of the state-created danger doctrine as a matter of law.

Plaintiffs' rebuttal to the City's state-created danger argument is essentially (1) the state-created danger doctrine exists [ECF 379, p. 8:07] and (2) the doctrine has been applied to persons experiencing homelessness [*Id.*, p. 8:22].  However, as a matter of law, the doctrine applies *only* in circumstances in which the *danger* alleged to have been created by the government "distinguishes [the plaintiff] from the general public…" [*Wood v. Ostrander*, 879 F.3d 583, 590 (9th Cir. 1989)] *i.e.,* only when the state affirmatively places the plaintiff in a position of danger distinct from any generalized danger to the public at large.

Substantive Due Process does not create a "constitutional right to be protected by the state from attack by private third parties, absent some special relationship between the state and the victim or the criminal and the victim that distinguishes the victim from the general public." *Ketchum v. County of Alameda*, 811 F.2d 1243, 1247 (9th Cir. 1987); *see also DeShaney*, 489 U.S. at 195-196.  The state-created-danger doctrine is simply a means of creating a special relationship.

In the Ninth Circuit, the state-created-danger doctrine originated in *Wood*, 879 F.3d at 583, a case in which a police officer removed  a woman from the car in which she was travelling and left her to walk home in the middle of the night in the "highest aggravated crime rate" county outside Tacoma, Washington. *Id.* at 586.  The woman was picked up by a driver who raped her. *Id.*  The court held that the woman raised a

8

triable issue as to whether the officer had "affirmatively placed the plaintiff in a position of danger." *Id.* at 590. In reaching this conclusion, the court reasoned that "[t]he fact that [the state trooper] arrested [the driver], impounded his car, and apparently stranded [the plaintiff] in a high-crime area at 2:30 a.m. distinguishes [the plaintiff] from the general public and triggers a duty of the officer to afford her some measure of peace and safety." *Id.* Thus, the genesis of the government's duty and potential liability was the creation of a danger that was particularized to the plaintiff, not just the creation of a background level of danger applicable to the public that happened to injure this particular plaintiff.[3]

Essential to this reasoning is the converse rule that "the state-created doctrine does not encompass claims that policy decisions increased danger to the public as a whole, rather than to specific individuals or groups." *Steinle v. City & County of San Francisco*, 230 F.Supp.3d 994, 1023 (N.D. Cal. 2017), *citing Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2017) ("affirmative act must have exposed the plaintiff to 'an actual *particularized* danger'"); *see also Bologna v. City & County of San Francisco*, No. C 09-2272 SI, 2009 U.S. Dist. LEXIS 69985, *16-17 (N.D. Cal. Aug. 11, 2009) (state-created danger doctrine "is implicated when a state actor creates a risk that *is specific to an individual or small group of individuals*, rather than to the general public"); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086-1087 (9th Cir. 2000) (doctrine applied where intoxicated bar patron died of hypothermia after police officers ordered him to leave a bar and not drive a vehicle on sub-zero night in Montana); *Pendia v. City*

---

[3] The importance of the distinction between an individualized danger created for a particular individual or small group and generalized policies that enhance the level of danger for the population at large is well illustrated by the fact pattern in *Wood*. Liability in *Wood* was <u>not</u> based on the fact that the government had implemented policies that created the "highest aggravated crime" location, or that a lack of law enforcement allowed the high-crime area to persist and threaten any member of the public living there or coming into contact with it. Liability was found because the officer removed the plaintiff from safety and left her in a largely helpless state in the "highest aggravated crime" location.

*of Huntington Park*, 115 F.3d 707, 710 (9th Cir. 1997) (applying doctrine where officers responding to 911 call dragged individual in need of medical care to an empty house, locked the door, and left him there alone).

In each of these cases, the danger that the defendants created was unique to identifiable individuals or small groups, and thus "distinguishe[d] [the plaintiff] from the general public and trigger[d] a duty of the police to afford [the plaintiff] some measure of peace and safety." In contrast, the defendants in *Steinle* could not be held liable on a theory of state-created danger because "nothing in this case distinguishes [the plaintiff] from the general public…." *Steinle* at 1024. The plaintiffs in *Steinle* alleged that the victim of a homicide had been placed in danger by the City and County of San Francisco's policy of not informing Immigration and Customs Enforcement of the release of potentially dangerous immigrants. *Id*. at 1004.

As noted in *Steinle*, there is no authority for the proposition that "a policy decision that increases danger to the public as a whole can give rise to a due process claim based on the state-created danger doctrine." *Steinle* at 1024. "Such a rule, which is not supported by the reasoning of *Wood*, would result in a significant expansion of the doctrine and would subject nearly any decision by policymakers in the field of public safety, who often must weigh known risks to public safety on either side of a decision, to post-hoc second guessing."[4] *Id.*

Here, Plaintiffs have alleged nothing more than a danger to the public as a whole. They characterize their state-create-danger claim as a generalized danger, arguing "Plaintiffs have properly alleged Defendant City has placed its homeless and housed constituents in danger by adopting and maintaining policies and laws…with deliberate indifference to the health and safety of its constituents." [ECF 379, p. 7-8]. The sum of the City's housed and unhoused constituents is all of the residents of the City, making

---

[4] Proposition HHH, discussed on pages 9 and 10 of the Opposition, and specifically the allocation of funds between temporary and permanent housing, is exactly the type of decision by policymakers to which the state-created doctrine does not apply.

10

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

Plaintiffs' allegation of state-created danger the creation of a danger to *all* of the City's residents, not a particularized danger that is specific to these Plaintiffs.

In addition to arguing a general danger, Plaintiffs have pleaded extensively that the alleged danger created by the City's unspecified policies is borne by the public at large. "Homeless encampments are entrenched throughout the City and County." [FASC, ¶7 ]. "The multiplication of makeshift structures, garbage, human waste, and other detritus has created circumstances throughout the City that are crippling for local businesses, unlivable for residents, and deadly for those on the streets" [*Id.*, ¶8 ], and "blocked sidewalks negatively affect the entire community…" [*Id.*, ¶11]. "Encampments throughout the City and County block sidewalks and public right-of-way." [*Id.*, ¶59]. "[T]he ranks of the desperate and downtrodden have grown exponentially in Skid Row and throughout the City and County, and quality-of-life laws are left unenforced, public order has deteriorated." [*Id.*, ¶47]. "53.87 percent of all fires in the City of Los Angeles are homeless-related; nearly 20 percent of all fires in the City of Los Angeles are homeless-related arson fires." [*Id.*, ¶50]. Undifferentiated "[b]usinesses are being dropped by insurance companies because of the fire risks due to the homeless living on their sidewalks." [*Id.*]. "Fire hydrants are being repurposed by homeless…putting an untold number of lives and structures at greater risk in the event of fire." [*Id.*]. "Both business owners and residents of the area are thus subject to substantial and unreasonable interference with their enjoyment of their property. Indeed, the streets and sidewalks of Skid Row have been rendered unusable because of human waste, garbage and encampments…." [*Id.*, ¶61]. "Businesses throughout Los Angeles...have customers declining to utilize their services due to nearby encampments."[5] [*Id.*, ¶67].

_____

[5] These allegations describing the generalized nature of harm applicable to all residents and businesses in Los Angeles also preclude Plaintiffs from pleading their third claim for public nuisance because Plaintiffs have admitted that they have not suffered a harm that is "specially injurious to himself, but not otherwise" or different in kind, not merely

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

At the end of the day, Plaintiffs have alleged generalized dangers faced by all residents of the City and County of Los Angeles.  They have not alleged that the City has created any individualized danger that is specific to any individual or small group.

### C. Plaintiffs' Equal Protection Claim Remains Fatally Defective.

**1. Plaintiffs have not pleaded facts to overcome the presumption of rationality applicable to a classification based on geography.**

Plaintiffs allege that the City has, by "enforcing the law in some areas and declining to enforce the law in others," "discriminate[d] based upon geography" against "some persons, communities, and businesses."[6]  [FASC, ¶212].  The City established in its Motion: (1) that geographic classification is subject to rational-basis review [*Vargas v. Chelan County Reg'l Justice Ctr.*, No. CV-09-39-EFS, 2010 U.S. Dist. LEXIS 15029, *10 (E.D. Wash. Feb. 22, 2010)] and (2) that, at the pleading stage, "a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications" [*Olson v. California*, No. CV 19-10956-DMG (RAOx), 2020 U.S. Dist. LEXIS 207347, *11 (C.D. Cal. Sept. 18, 2020); *see also F.C.C. v. Beach Communications*, 508 U.S. 307, 315 (1993) ("those attacking the rationality of the legislative classification have the burden to negate every conceivable basis which might support it")].  There is no burden on the government to justify that its policies are rational.  *Kahawaiolaa v. Norton*, 386 F.3d 1271, 1279-1280 (9th Cir. 2004) ("the government has no obligation…to sustain the rationality of a statutory classification; rather the burden is on the one attacking the legislative arrangement to negative every

---

in degree, from that suffered by other members of the public.  *Koll-Irvine Center Property Owners Assn. v. County of Orange*, 24 Cal.App.4th 1036, 1040 (1994).
[6] There is no more "[t]hreadbare recital[] of the elements of a cause of action" [*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)] than that the City enforced "some" laws that discriminated against "some" people "based upon geography."  Moreover, Plaintiffs attempt to incorporate by reference "the arguments set forth in their Opposition" to the County's motion to dismiss.  [ECF 379, pp. 13:14, 15:05].  The City objects to Plaintiffs' effort to violate Local Rule 11-6 by expanding the number of pages in their brief by incorporation.

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

conceivable basis which might support it") (internal quotations omitted), *quoting Heller v. Doe*, 509 U.S. 312, 319-320 (1993).  Further, a rational basis need not be the one that actually motivated the legislature [*Flemming v. Nestor*, 363 U.S. 603, 612 (1960) ("constitutionally irrelevant" whether proffered rationale actually underlays legislation)], and exists whenever there is "any reasonably conceivable state of facts that could provide a rational basis for the classification" [*F.C.C.* at 313], regardless of whether "the basis has a foundation in the record" [*Heller* at 320-321].  In other words, where there are "plausible reasons" for the government's actions, the "inquiry is at an end."  *F.C.C.* at 313-314.

Plaintiffs do not dispute that geographic classification is subject to rational-basis review, nor do they allege or argue why the City's geography-based actions fail that review.  Rather, Plaintiffs simply assert—without providing any authority—that the City and County must demonstrate their policies are rational.  [ECF 379, p. 13:17 (City "at least attempts to articulate a 'rational basis,'" "unlike the County")].

Moreover, even though it is not necessary to secure dismissal of Plaintiffs' poorly-pleaded claim, the City has shown there are objectively plausible rationales for providing services in certain geographic locations, including providing unsheltered Angelenos with predictability about where services are physically located and obtaining economies of scale in placing services such as hygiene and medical facilities close to unsheltered communities.  Plaintiffs have not addressed these specific objectively plausible and rational explanations proffered by the City, and therefore have not met their burden to "allege facts sufficient to overcome the presumption of rationality."

**2. Plaintiffs have failed to allege any specific racially discriminatory decision by the City, and have failed to allege evidence the unspecified decision was taken with discriminatory intent.**

Unspecified "Plaintiffs" contend the City violated their Equal Protection rights by discriminating against black homeless persons.  [FASC, ¶214].  However, the only Plaintiff who is alleged to be black is Wenzial Jarrell.  [FASC, ¶115].  Thus, dismissal of all other Plaintiffs is proper because they are not alleged to be members of a protected

13

class or that they were discriminated against based on their race.

The City argued in its Motion that the Equal Protection claim fails for three reasons: (1) that Plaintiffs failed to allege that they had been treated any differently than any other homeless person, (2) that Plaintiffs had failed to allege that any City policy or law was enacted because of its expected adverse effects on a particular race, and (3) that Plaintiffs had failed to identify any specific statute, ordinance, or policy that has a discriminatory impact. [ECF 369-1, p. 9-10]. Yet Plaintiffs fail to respond to arguments 1 and 3, thereby conceding their merit. *ABC Servs. Corp.*, 2020 U.S. Dist. LEXIS 78397 at *18-19.

The necessary predicate of pleading a valid Equal Protection claim is identifying the specific government action that the plaintiff contends was taken with discriminatory motivation, whether it be a law or other government action.[7] *See, e.g., Brown v. Bd. of Educ.*, 347 U.S. 483, 488 (1954) (challenged "laws requiring or permitting segregation according to race"); *McLaughlin v. Florida*, 379 U.S. 184, 184 (1964) (challenging Florida Statutes § 798.05, criminalizing a "negro man and white woman" or "white man and negro woman" occupying the same room at nighttime); *Romer v. Evans*, 517 U.S. 620, 623 (1996) (challenging Amendment 2 to the Colorado Constitution); *Lawrence v. Texas*, 539 U.S. 558, 563 (2003) (challenging Texas Penal Code § 21.06(a)). Indeed, in their own briefing, Plaintiffs argue about "laws" that violate Equal Protection. [ECF 379, 14:10; 14:23], but do not identify the specific laws they rely on.

Although the City highlighted this deficiency in its Motion [ECF 369-1, p. 10:27], Plaintiffs did not specify any current law or decision that they contend violates the Equal Protection Clause in their Opposition. Instead, they argue, as concludingly as they alleged in paragraph 214 of the FASC that "the City and County, together with other state actors, have engaged in discriminatory actions, and set discriminatory policies,

---

[7] It does not appear that Plaintiffs assert any City action or law was discriminatory on its face, but it is impossible to confirm this because Plaintiffs do not specify the "affirmative decisions and adopted policies" [FASC, ¶214] they challenge.

14

which have resulted in a" disparate impact on black homeless people, and cite paragraphs 41-45 of the FASC.  [ECF 379, p. 14].

Paragraph 41 alleges: (1) that homeless services in Los Angeles were segregated by race 80 years ago, but does not allege any current City action that segregates services; (2) that institutional and structural racism contribute to homelessness, but do not allege any current City action that is racist; (3) that Los Angeles County is segregated by race because of the "vestiges" of redlining and exclusionary zoning, but does not allege that the City currently redlines or has any exclusionary zoning law, nor do Plaintiffs identify a statute or policy that codifies redlining or exclusionary zoning.  Paragraph 42 alleges that in 1939 the City blocked black communities from home ownership, but does not allege any current City ordinance or policy does so.

Paragraph 43 alleges a 1970s Containment Policy and that "Defendants have continued to adopt those same policies," but does not identify any specific policy or law that they contend was adopted.  Paragraph 44 alleges that the City declared a housing emergency in 2015, but has failed to permit sufficient low-income housing units.  Again they identify no specific policy, no specific zoning decision, nor any specific project that was denied permits based on a discriminatory motive.  And in Paragraph 45, Plaintiffs allege that the impact of "the City and County's housing policies…have contributed to the" homelessness crisis, but again do not identify any specific policy they contend violates Equal Protection.

Plaintiffs' failure to identify any specific decision or action by the City that they allege violates Equal Protection is compounded, and also revealed further, when it comes to the requirement that Plaintiffs establish that the City took the allegedly discriminatory action "with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 140 S. Ct. 1891, 1915 (2020) ("[t]o plead animus, a plaintiff must raise a plausible inference that an invidious discriminatory purpose was a motivating factor in the relevant

15

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

decision") (internal quotations omitted). "Absent a pattern as stark as that in *Gomillion* or *Yick Wo*, impact alone is not determinative" of the actor's discriminatory intent, "and the Court must look to other evidence."[8] *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Under *Arlington Heights*, the "other evidence" to which a court must look includes: (1) "[t]he historical background of the decision," (2) "[t]he specific sequence of events leading up to the challenged decision," (3) procedural and substantive departures by the decision-making body from the normal procedural sequences used to make such a decision, particularly "if the factors usually considered important by the decisionmaker strongly favor a decision to the contrary of the one reached," and (4) "[t]he legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Id.* at 267.

All of the evidence to which the Court must look is necessarily tied to a specific governmental decision. Plaintiffs have alleged no such decision here, nor have they alleged any facts in the FASC that, if true, would demonstrate discriminatory intent. Plaintiffs solely allege the City has "repeatedly made affirmative decisions and adopted policies and laws which has [*sic*] furthered this disparate treatment…" [FASC, ¶214], but do not tell the Defendants, or the Court, what decisions or policies they are challenging. This makes it impossible to determine (1) what historical background is relevant to the decision, (2) what the sequence of events is leads up to the decision, (3) what procedures are relevant to evaluating the decision, and (4) what legislative history might be examined to infer the intent of the decision-makers.

---

[8] *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886) challenged a San Francisco ordinance regarding operating a laundry that resulted in all Chinese applicants being denied a permit, whereas eighty others, not Chinese, were allowed to operate. *Gomillion v. Lightfoot*, 364 U.S. 339, 340 (1960) involved a challenge to a redistricting ordinance that allegedly resulted in a twenty-eight-sided map that removed all but four black voters from the City of Tuskegee. From the strength of these facts alone, the Court could conclude that "the legislation is solely concerned with segregating white and colored voters…." *Id.* at 341.

CITY OF LOS ANGELES' REPLY TO OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

**D. State Law Claims.**

    **1. Plaintiffs do not allege any actionable tort by a City employee for which the City could be vicariously liable.**

Plaintiffs concede they "do not allege direct negligence against the City…," and that City liability "cannot arise out of the common law…. " [ECF 379, p. 23] Government Code section 815 "*abolishes all common law or judicially declared forms of liability for public entities*…." *Lloyd v. County of Los Angeles*, 172 Cal.App.4th 320, 329 (2009) (italics by the court). Instead, Plaintiffs "base their claim for negligence only on a theory of *respondeat superior*," and specifically, on California Government Code section 815.2(a). [ECF 379, p. 23]. However, Plaintiffs' "*respondeat superior*" is legally flawed.

Government Code section 815.2(a) provides that a public entity is liable for "injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would*, apart from this section,* have given rise to a cause of action against that employee…." Government Code section 820, entitled "Co-extensiveness with liability of private person," makes "a public employee…liable for injury caused by his act or omission to the same extent as a private person." Accordingly, contrary to Plaintiffs' argument, no duty of care beyond those that any person in the society bears is imposed on a public employee simply by virtue of that person being a public employee. *See Cavey v. Tualla*, 69 Cal.App.5th 310, 327 (2021) ("[t]ogether, these statutory provisions establish the general rule that an employee of a public entity is liable for his torts to the same extent as a private person…").

Plaintiffs allege that "Defendants, by and through their agents and employees and under a theory of *respondeat superior*" have the duty to:

> control, maintain, and keep safe and clean the public and public-right-of-way areas in the City…, including parks, sidewalks, streets, public buildings, and certain undeveloped areas such as alongside freeways and other transportation routes, and to make and enforce laws assuring the public health and safety thereof….

[FASC, ¶161]. They continue:

> Defendants have a duty to maintain these areas in a manner which

17

> does not unreasonably interfere with the free passage or use by plaintiffs, and which addresses and alleviates conditions which are harmful to health, or indecent or offensive to the senses, and which create a fire hazard or permit crime to occur unabated including the illegal sale of controlled substances.

[*Id.*].  And conclude: "Defendants and their agents have breached their duty to its citizens…, and each plaintiff and Alliance member has suffered damages as a result…" and "the basis of this cause of action is the conduct, acts, and omissions of the individual responsible officials, including Does 1-150, inclusive, based on the theory of *respondeat superior.*"  [FASC, ¶165].

Plaintiffs' negligence claim necessarily stands or falls solely on whether City employees (Does 1-150) personally have the duties of care alleged in the FASC, which is a question of law.  *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278 (2004).

Plaintiffs have not identified any authority for the proposition that a private person has a legal duty to "maintain, and keep safe and clean the public and public-right-of-way areas in the City," the "parks, sidewalks, streets, public buildings, and certain undeveloped areas such as alongside freeways and other transportation routes" or to "make and enforce laws assuring the public health and safety thereof…."  To the contrary, "[o]rdinarily, '[a] defendant cannot be held liable for the defective or dangerous condition of property which it [does] not own, possess or control.'  [Citations.]: *Contreas v. Anderson*, 59 Cal.App.4th 188, 197 (1997).  Indeed, even if Plaintiffs had alleged that the Doe Defendants owned property in the City, which they don't, "for more than 150 years, the 'general rule' has been that in the absence of a statute, a landowner is under no duty to maintain in a safe condition a public street or sidewalk abutting upon his property."  *Lopez v. City of Los Angeles*, 55 Cal.App.5th 244, 255 (2020) (internal alterations omitted). Thus, the legal insufficiency of the negligence claim against the Doe Defendants precludes any potential vicarious liability for the City, requiring dismissal of the claim.

18

**2. Plaintiffs lack Article III standing to assert a Code of Civil Procedure section 526a claim, and have not articulated the kind of waste based on illegality required.**

In its Motion, the City argued that: (1) Plaintiffs have not alleged Article III standing to assert their Code of Civil Procedure section 526a claim in federal court; (2) that a section 526a action does not lie to invade discretion vested in the legislative and executive branches; (3) that a taxpayer action may not be maintained where the challenged governmental action is legal; and (4) that plaintiffs have failed to allege any illegal or wasteful expenditure. [ECF 369-1, p. 24-25].

Plaintiffs do not dispute that a party seeking to commence suit in federal court must meet the stricter federal standing requirements of Article III, regardless of any looser taxpayer standing created by state law. *Cantrell v. City of Long Beach*, 241 F.3d 674, 683 (9th Cir. 2001). Under *DaimlerChrysler Corp.*, 547 U.S. at 346, "state taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers." Yet the only allegation Plaintiffs have made to attempt to establish Article III standing to bring a taxpayer suit under Code of Civil Procedure 526a is that they pay taxes.

Plaintiffs allege that Proposition HHH funds are being wasted. They argue that somewhere in paragraphs 96-114 of the FASC they have "alleged direct financial injuries that affords them Article III standing," but do not attempt to narrow down where they alleged something more than that they are taxpayers in those 18 paragraphs. Notably, Proposition HHH is not mentioned a single time in paragraphs 96-114. In paragraph 96, LA Alliance alleges that each of its members is a resident of the City or County and that each "pays municipal taxes…." The remaining 24 pages of paragraph 96 [FASC, p. 59-73] allege nothing about Proposition HHH, any funds expended under it, any projects funded by it, any relationship between any Plaintiff and Proposition HHH, or any injury that is allegedly caused by Proposition HHH. Paragraphs 97 through 109 allege various facts about Joseph Burk, including that he "pays property taxes" [FASC, ¶97], but says nothing about Proposition HHH or any injury caused to

19

Mr. Burk by the expenditure of Proposition HHH funds.  Paragraphs 110-114 discuss George Frem, but again, do not mention Proposition HHH, and do not even allege he pays taxes.

Plaintiffs still have not explained how any of their allegations regarding Proposition HHH demonstrate unlawful waste.  Plaintiffs make no allegation that any expenditure of Proposition HHH funds is not authorized by the enactment.  Mere observations of the costs of implementing Proposition HHH fail to state a plausible claim for illegal waste, and Plaintiffs admit that the City is building affordable units, just as the Proposition requires.  *See, Friends of Park v. City of Fresno*, 848 F.Supp.2d 1152, 1164-1165 (E.D. Cal. Jan. 31, 2012) (failure to identify expenditure that is unauthorized by specific provision of enactment requires dismissal of Code of Civil Procedure section 526a claim).  Indeed, Plaintiffs have pleaded nothing more than disagreements over the allocation of Proposition HHH funds.

Plaintiffs do not address the City's argument that a section 526a action does not lie to invade discretion vested in the legislative and executive branch, nor can they.  *See Sundance v. Municipal Court*, 42 Cal.3d 1101, 1138 (1986) (acts that provide public benefit are not waste even if "bad judgment"); *Chiatello v. City and County of San Francisco*, 189 Cal.App.4th 472, 482-483 (2010) (discretionary expenditures are not waste); *Humane Soc. of the U.S. v. St Bd. of Equalization*, 152 Cal.App.4th 349, 356 (2007) ("unwise" expenditures are bad judgment, not waste); *Cal. DUI Lawyers Assn. v. Cal. Dept. of Motor Vehicles*, 20 Cal.App.5th 1247, 1258 (2018) ("disagreement with the manner in which government has chosen to address a problem" does not make an expenditure waste); *San Bernardino Cty. v. Superior Court*, 239 Cal.App.4th 679, 686-687 (2015) (when county had legal discretion not to pursue claim, failure to do so was not waste).

Instead, Plaintiffs argue that Code of Civil Procedure section 526a allows a taxpayer suit any time a subjective argument can be made that there is a "useless expenditure and waste of public funds" by quoting *Harnett v. Sacramento County*, 195

20

Cal. 676, 682-683 (1925) out of context. But *Harnett* is inapposite to the facts Plaintiffs have alleged here. In *Harnett*, Sacramento County wanted to submit a ballot measure to the voters to change the boundaries of the supervisorial districts of the county. *Id.* at 679. A court enjoined a ballot measure in a Section 526a action because the "contemplated election would be a waste of public money…and an improper and illegal expenditure" because "even if the initiative proposition…were adopted by the electors, it would be a nullity because it would constitute a violation of section 4029 of the Political Code…." *Id.* at 679. Thus, "useless" and "wasteful," in the context of *Harnett* was referring to wasting money holding an election to decide whether to pass an unlawful law. As described above, "wasteful" or "useless" does not mean expenditures with which a plaintiff has subjective disagreements.

### III.  <u>CONCLUSION</u>

Based on the foregoing, the arguments raised by the City in its moving papers, and any arguments that may arise at the hearing in this matter, the City respectfully requests its Motion to Dismiss be granted in its entirety and without leave to amend.

DATED:  January 10, 2022

By: /s/_Ryan Salsig_____
Ryan Salsig, Deputy City Attorney
Counsel for Defendant City of Los Angeles

21