RODRIGO A. CASTRO-SILVA (SBN 185251), *County Counsel*
rcastro-silva@counsel.lacounty.gov
LAUREN M. BLACK (SBN 192302), *Assistant County Counsel*
ANA WAI-KWAN LAI (State Bar No. 257931), *Senior Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1830 | Fax: (213) 626-7446

BYRON J. MCLAIN (SBN 257191)
bmclain@foley.com
FOLEY & LARDNER, LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Tel.: (310) 972-4500 | Fax: (213) 486-0065

LOUIS R. MILLER (SBN 54141)
smiller@millerbarondess.com
MIRA HASHMALL (SBN 216842)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>            Defendants. | **CASE NO. 2:20-cv-02291 DOC-KES**<br><br>**DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Hearing:    January 24, 2022<br>Time:      8:30 a.m.<br>Place:     Courtroom: 9D<br><br>Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................... 7

II.   PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE ........................................ 8

    A.   Standing Is Not Satisfied For Every Claim ............................................ 9

    B.   Plaintiffs' Alleged Injuries Are Not Traceable To The County ............. 9

    C.   Plaintiffs Have Not Pleaded Redressability ........................................ 11

III.  PLAINTIFFS DO NOT PLEAD A CONSTITUTIONAL VIOLATION ...... 12

    A.   Plaintiffs Have Not Stated A Substantive Due Process Claim ............. 12

        1.   There Was No State-Created Danger ........................................ 12

        2.   Plaintiffs Have No Special Relationship to the County ............. 15

    B.   Plaintiffs Have Not Stated A Procedural Due Process Violation ......... 16

    C.   Plaintiffs Have Not Stated An Equal Protection Claim ....................... 17

        1.   Plaintiffs Fail to Allege the County Discriminated Against Them Because of Geography ........................................ 17

        2.   Plaintiffs Do Not Allege Racial Discrimination by the County ................................................................................. 18

    D.   Plaintiffs' Conclusory "Municipal Liability" Claim Fails .................... 19

IV.   PLAINTIFFS DO NOT PLEAD DISABILITY DISCRIMINATION ........... 19

V.    THE REMAINING STATE-LAW CLAIMS ARE FATALLY FLAWED ...................................................................................... 20

    A.   Plaintiffs Cannot Plead Around Governmental Immunity ................... 20

    B.   Plaintiffs Fail To Allege The Existence Of A State-Law Duty To Provide Emergency Shelters To All PEH ........................................ 23

        1.   Plaintiffs Fail to State a Section 17000 Claim ........................... 23

        2.   Plaintiffs Fail to State a Negligence Claim ............................... 24

        3.   Plaintiffs Fail to State a Nuisance Claim .................................. 25

    C.   Plaintiffs Fail To State A Waste Claim ............................................... 26

VI.   CONCLUSION ................................................................................... 26

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................19

*BAM Historic Dist. Ass'n v. Koch*,
723 F.2d 233 (2d Cir. 1983) ..........................................................................16

*Bennett v. Spear*,
520 U.S. 154 (1997) ..........................................................................................9

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ........................................................................................12

*Crowder v. Kitagawa*,
81 F.3d 1480 (9th Cir. 1996) .....................................................................19, 20

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) .....................................................................................9, 11

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) ..............................................................................12, 15, 16

*Engquist v. Or. Dep't of Agric.*,
553 U.S. 591 (2008) ........................................................................................17

*Excel Fitness Fair Oaks, LLC v. Newsom*,
2021 WL 795670 (E.D. Cal. Mar. 2, 2021) .............................................17, 24

*Gomillion v. Lightfoot*,
364 U.S. 339 (1960) ........................................................................................18

*Halverson v. Skagit County*,
42 F.3d 1257 (9th Cir. 1994) ..........................................................................16

*Heraldez v. Bayview Loan Servicing, LLC*,
2016 WL 10834101 (C.D. Cal. Dec. 15, 2016),
*aff'd*, 719 F. App'x 663 (9th Cir. 2018) (mem.) ..................................9, 17, 24

*Hernandez v. City of San Jose*,
897 F.3d 1125 (9th Cir. 2018) ........................................................................14

*Horne v. Flores*,
557 U.S. 433 (2009) ........................................................................................11

*Huffman v. County of Los Angeles*,
147 F.3d 1054 (9th Cir. 1998) ........................................................................14

*Johnson v. City of Seattle*,
474 F.3d 634 (9th Cir. 2007) ..........................................................................13

3

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020)...................................................................11, 15

*Kennedy v. City of Ridgefield*,
  439 F.3d 1055 (9th Cir. 2006).........................................................................14

*LA All. for Human Rights v. County of Los Angeles*,
  14 F.4th 947 (9th Cir. 2021).............................................................................8

*Lewis v. Casey*,
  518 U.S. 343 (1996) ....................................................................................9, 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ..........................................................................................9

*M.S. v. Brown*,
  902 F.3d 1076 (9th Cir. 2018).........................................................................11

*Martinez v. City of Clovis*,
  943 F.3d 1260 (9th Cir. 2019)...................................................................13, 14

*Mateos-Sandoval v. County of Sonoma*,
  942 F. Supp. 2d 890 (N.D. Cal. 2013) ............................................................19

*McCleskey v. Kemp*,
  481 U.S. 279 (1987) ........................................................................................18

*Patel v. Kent Sch. Dist.*,
  648 F.3d 965 (9th Cir. 2011)......................................................................14, 15

*Pauluk v. Savage*,
  836 F.3d 1117 (9th Cir. 2016).........................................................................12

*Pierce v. County of Orange*,
  2004 WL 7340113 (C.D. Cal. June 4, 2004) .............................................22, 23

*Rizzo v. Goode*,
  423 U.S. 362 (1976) ........................................................................................11

*Rogers v. Lodge*,
  458 U.S. 613 (1982) ........................................................................................18

*Santa Cruz Homeless Union v. Bernal*,
  514 F. Supp. 3d 1136 (N.D. Cal. 2021) ..........................................................15

*Sausalito/Marin Cty. Chapter of Cal. Homeless Union v. City of Sausalito*,
  2021 WL 2141323 (N.D. Cal. May 26, 2021) ..................................................15

*Schneider v. Cal. Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998)..........................................................................16

*Schneider v. State of New Jersey, Town of Irvington*,
  308 U.S. 147 (1939)...................................................................................25, 26

4

*Snowden v. Hughes*,
321 U.S. 1 (1944) ...................................................................................................18

*Tyler v. Cuomo*,
236 F.3d 1124 (9th Cir. 2000) ...........................................................................9, 10

*United States v. Lazarenko*,
476 F.3d 642 (9th Cir. 2007) ................................................................................11

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ...............................................................................................18

*Warth v. Seldin*,
422 U.S. 490 (1975) .................................................................................................9

*Wood v. Ostrander*,
879 F.2d 583 (9th Cir. 1989) .................................................................................14

*Yick v. Hopkins*,
118 U.S. 356 (1886) ...............................................................................................18

*Young v. City of Visalia*,
687 F. Supp. 2d 1141 (E.D. Cal. 2009) .................................................................19

## **<u>STATE CASES</u>**

*Brenneman v. State*,
208 Cal. App. 3d 812 (1989) .................................................................................25

*Connelly v. State*,
3 Cal. App. 3d 744 (1970) ................................................................................21, 22

*Haggis v. City of Los Angeles*,
22 Cal. 4th 490 (2000) ...........................................................................................25

*Hunt v. Superior Court*,
21 Cal. 4th 984 (1999) ......................................................................................23, 24

*Lucas v. Santa Maria Pub. Airport Dist.*,
39 Cal. App. 4th 1017 (1995) ................................................................................22

*Masters v. San Bernardino Cty. Emps. Ret. Ass'n*,
32 Cal. App. 4th 30 (1995) ....................................................................................21

*Schooler v. State*,
85 Cal. App. 4th 1004 (2000) .....................................................................20, 21, 22

*Sundance v. Municipal Court*,
42 Cal. 3d 1101 (1986) ..........................................................................................26

*Tailfeather v. Bd. of Supervisors*,
48 Cal. App. 4th 1223 (1996) ................................................................................24

5

*Thompson v. City of Petaluma*,
231 Cal. App. 4th 101 (2014)........................................................................22


**STATE STATUTES**

Cal. Civ. Proc. Code § 526a ....................................................................26

Cal. Gov't Code § 814 ...........................................................................21

Cal. Gov't Code § 815 ...........................................................................20

Cal. Gov't Code § 815.2 .........................................................................21

Cal. Gov't Code § 815.2(b) .....................................................................21

Cal. Gov't Code § 818.2 .........................................................................23

Cal. Gov't Code § 820.2 ..............................................................21, 22, 23

Cal. Gov't Code § 831.25 ........................................................................21

Cal. Welf. & Inst. Code § 17000 ......................................................23, 24, 25

Cal. Welf. & Inst. Code § 17001 ................................................................24


**OTHER AUTHORITIES**

U.S. Const. amend. XIV .........................................................................15

U.S. Const. art. III...............................................................................8, 9

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

## I.   **INTRODUCTION**

Plaintiffs' Opposition is more notable for what it omits than what it says.  As a matter of law, the County cannot be liable for Plaintiffs' injuries caused by PEH in Skid Row because Skid Row is located entirely within the incorporated territory of the City of Los Angeles—outside of the County's jurisdiction or control.[1]  Plaintiffs allege discrimination and violations of due process, but the FAC fails to allege any unequal treatment by the County, or any specific, affirmative conduct by the County that placed Plaintiffs in harm's way.  Plaintiffs plead their state law claims in only conclusory terms, and do not identify an express statutory duty that was breached.

In their Opposition, Plaintiffs do not respond to any of these arguments.  This alone constitutes a waiver of the issues and warrants dismissal.  All they really do is attach the Court's preliminary injunction order and rely on it.  But this obvious pandering to the Court doesn't work—the preliminary injunction order was overturned by the Court of Appeals and is no longer in effect.

Plaintiffs' claims fail for another reason: the gravamen of the FAC is that "[t]he County . . . has not done *enough*" to end homelessness.  (Opp. at 1.)  This "theory" is neither judicially cognizable nor a plausible ground for relief.

In effect, Plaintiffs argue the County violated the law by spending hundreds of millions of dollars to prioritize permanent housing solutions instead.  This theory of municipal liability is dead on arrival.  As the Motion makes clear, citizens cannot sue their local government in federal court to commandeer the government's discretionary spending and re-direct taxpayer funds according to their individual prerogatives.  Yet that is exactly what Plaintiffs attempt here.

Although they acknowledge—repeatedly—that the County provides significant social services and aid to PEH, Plaintiffs insist that such aid affirmatively infringed on their rights.  Remarkably, Plaintiffs now argue that the County *violated*

---

[1] The Reply uses the same defined terms as in the County's Motion.

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

*the Constitution* by offering aid to PEH because it allegedly drew people from all over the world, who fell into homelessness for any number of reasons, into the City, where they disturbed Plaintiffs. They ask the Court to usurp the County's lawful authority by mandating that the County reallocate millions of taxpayer dollars to implement Plaintiffs' policy agenda. Such a drastic and unprecedented remedy far exceed the limits of the Court's Article III power.

In reversing the prior preliminary injunction, the Ninth Circuit noted that the Court has "equitable power to remedy *legal violations* that have contributed to the complex problem of homelessness in Los Angeles." *LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 961 (9th Cir. 2021) (emphasis added). The FAC fails to identify any such violations of law.

Of course, the County shares the goal of providing shelter to all PEH and is admittedly doing a great deal to that end. But Plaintiffs' policy disagreements with how the County is working to achieve that goal are not a basis for judicial intrusion into local affairs. It is simply not the Court's role to dictate local policy and budget priorities by usurping the County's discretionary decisions.

## II.   PLAINTIFFS' CLAIMS ARE NOT JUSTICIABLE

Plaintiffs agree that, to survive the County's Motion, they must establish the triad of standing requirements: (1) an "injury in fact" (2) that is "fairly traceable" to the County, and (3) that a favorable court decision is "likely" to redress that injury. (Opp. at 5; Mot. at 13.) Plaintiffs have not done so.

Plaintiffs' FAC suffers from a fatal flaw: Plaintiffs lack standing because they fail to allege a concrete, particularized harm that is traceable to the County or capable of being redressed by the injunctive relief they seek. (Mot. at 13-15.) In the Opposition, Plaintiffs (1) stress district courts' "broad power to order equitable relief"; (2) cloak themselves in the Court's prior order; (3) downplay standing as a "low bar"; and (4) regurgitate their legal claims in boilerplate terms. (Opp. at 4-7.)

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

## A.   Standing Is Not Satisfied For Every Claim

Standing is claim-specific.  (Mot. at 13; *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("a plaintiff must demonstrate standing for each claim he seeks to press" and "for each form of relief sought" (citation omitted)).)  Plaintiffs have not established standing where they allege claims against the County on behalf of undifferentiated "Plaintiffs" because they have not shown that each has suffered each alleged injury.  (Mot. at 13.)  Plaintiffs do not respond to the County's argument.  This alone "constitutes a waiver or abandonment of the issue." *Heraldez v. Bayview Loan Servicing, LLC*, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016), *aff'd*, 719 F. App'x 663 (9th Cir. 2018) (mem.).

Standing "is not dispensed in gross," and pleading standing as a collective— as Plaintiffs do—violates Article III. *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see Warth v. Seldin*, 422 U.S. 490, 501 (1975) (complaint must show that each plaintiff suffered "a distinct and palpable injury to himself").  Other than Plaintiffs' disability claims, this requirement is not met. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (court must be able to determine "that the injury" conferring standing "affect[ed] [each] plaintiff in a personal and individual way").

## B.   Plaintiffs' Alleged Injuries Are Not Traceable To The County

Plaintiffs' alleged injuries are traceable, if at all, to the City, which has exclusive jurisdiction over Skid Row, and to recent federal court orders in litigation that did not involve the County.  (Mot. at 13-14.)  Standing is not satisfied where "the injury complained of" is only "th[e] result [of] the *independent* action of some third party." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (alterations in original) (citation omitted).

Plaintiffs' reliance on *Tyler v. Cuomo*, 236 F.3d 1124 (9th Cir. 2000), is misplaced.  (Opp. at 5.)  There, the plaintiff homeowners sued the City of San Francisco, the U.S. Department of Housing and Urban Development ("HUD"), and a developer for approving a low-income housing project over their objections. *Id*. at

9

1128. The Ninth Circuit ruled they had standing as to the City because it was bound by an agreement to consult with the plaintiffs. *See id*. at 1133-35. But the court held the plaintiffs lacked standing to sue the other defendants because they had no duty to respond to their objections and, thus, there was no causal connection between the challenged conduct and plaintiffs' alleged injury. *Id.* at 1136-37.

The County is in the same position as the dismissed defendants in *Tyler*. Plaintiffs allege they have suffered economic injuries because of the lack of enforcement in Skid Row, but the County has no authority over PEH there. (Mot. at 14-15.) As in *Tyler*, there is no causal link between the claimed injuries and the County's conduct.

There is also no causation because Plaintiffs' theory of liability involves numerous third parties whose independent decisions, collectively, have led to Plaintiffs' claimed injuries. (*See* Mot. at 14.) The County actions that Plaintiffs challenge include allegedly focusing on "permanent housing" over "interim" options and "complicity . . . in . . . institutional racism." (FAC ¶ 217; *see* Opp. at 6-7.) Plaintiffs assert that in combination with, *inter alia*, mental health affliction, drug addiction, litigation settlements, federal welfare cuts, arson fires, pressure from homeless advocates, limits on federal expenditures, "redlining" policies of the City, and more, there are now a significant number of PEH in the County and more trash and waste from tent encampments, causing Plaintiffs to have higher insurance premiums, employee retention issues, and misdelivered mail. (FAC ¶¶ 9, 10, 12, 50, 69, 90, 92.) This kind of diffuse causal chain is insufficient. (Mot. at 14.)

Plaintiffs cannot overcome these standing deficiencies with conclusory and circular allegations of fault. (Opp. at 6-7.) Plaintiffs assert that they "have properly alleged their injuries are traceable to the . . . County" and that the County is "either causing the number of persons experiencing homelessness to increase or causing the conditions in which they live to worsen." (*Id.*) But as for *how*, the Opposition is mum on details. Plaintiffs do not even cite to the FAC in arguing they have met the

10

traceability element, because this element is *not alleged in the FAC*.

Plaintiffs argue the County has "waste[d] . . . Measure H funds" and helps fund and direct LAHSA, which Plaintiffs believe is "ineffective in several ways." (Opp. at 6.)  These conclusory assertions do not establish that Plaintiffs suffered cognizable harm.  The remaining "actions"—focusing on permanent housing, concentrating services in Skid Row, and being "complicit[]" "in the long history of institutional racism"—are similarly unsupported, vague and lack a causal nexus to Plaintiffs' injuries.  Plaintiffs' generalized grievances against the County are not actionable.  *United States v. Lazarenko*, 476 F.3d 642, 649-50 (9th Cir. 2007).

## C.    **Plaintiffs Have Not Pleaded Redressability**

Plaintiffs' focus on courts' equitable power to fashion injunctive relief puts the cart before the horse.  (*See* Opp. at 4-5.)  Standing is a prerequisite to *any* relief.  Plaintiffs must demonstrate that the requested injunction would redress alleged injuries attributable to the County, not just that the Court (obviously) has the power to grant injunctions.  *DaimlerChrysler*, 547 U.S. at 352.

The Court's equitable powers do *not* include the intrusive intervention into legislative prerogatives.  Plaintiffs seek an order requiring the County to spend hundreds of millions of taxpayer dollars on emergency housing for all PEH in Skid Row.  (*See, e.g*., FAC ¶ 23 ("The *only* way to address this crisis" is "providing immediate shelter for all").)

There are multiple U.S. Supreme Court and Ninth Circuit decisions that prohibit this type of legislation from the bench.  (Mot. at 14-15 (citing *Rizzo v. Goode*, 423 U.S. 362 (1976); *Lewis v. Casey*, 518 U.S. 343 (1996); *Horne v. Flores*, 557 U.S. 433 (2009); *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020).)  These cases hold that the Court's equitable powers have limits.  *See M.S. v. Brown*, 902 F.3d 1076, 1090 (9th Cir. 2018) (plaintiffs lacked standing for injunction requiring state to issue drivers' licenses since such "intrusive affirmative relief" would be "incompatible with democratic principles" and violates federalism

11

principles).  Plaintiffs fail to acknowledge these cases, let alone distinguish them.

## III.    PLAINTIFFS DO NOT PLEAD A CONSTITUTIONAL VIOLATION

### A.    Plaintiffs Have Not Stated A Substantive Due Process Claim

The "state-created danger" and "special relationship" doctrines are narrow exceptions to the rule that the Constitution "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests."  *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).  Conduct is actionable only if it was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

Plaintiffs do not—and cannot—state a claim under these circumstances.  Per the materials in the RJN (Dkt. 370-2), the County is doing a lot—spending hundreds of millions of dollars annually—to address homelessness.  To say that this is "outrageous" or that it "shocks the conscious" is ridiculous.

### 1.    There Was No State-Created Danger

Plaintiffs argue the County has "adopt[ed] and maintain[ed] policies and laws" that have "placed its homeless and housed constituents in danger."  (Opp. at 7.)  None of the County's "policies and laws" constitute a state-created danger.

Plaintiffs criticize the County for "centralizing services in the Skid Row area" and "focusing heavily" on permanent housing rather than "emergency and interim" shelters.[2]  (Opp. at 7.)  This is nonsensical.  Providing services and permanent housing is not a state-created danger; it is not a danger at all.

Plaintiffs must allege that the County "placed [them] in a 'worse position'" than they "would have been had [it] not acted at all."  *Pauluk v. Savage*, 836 F.3d 1117, 1124-25 (9th Cir. 2016) (citation omitted).  Plaintiffs cannot plausibly claim

---

[2] Plaintiffs say the County "misus[ed] . . . tax funds" (Opp. 7), but they admit the County used Measure H funds "on a host of programs" that have had a "positive" effect on the difficult problem of homelessness.  (*See* FAC ¶ 88.)

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

that they are in a worse position than they would be if the County provided no services or housing.  Plaintiffs cannot mask their policy disagreements as constitutional violations.

Plaintiffs also cannot establish a state-created danger by alleging that the County is "failing in its obligation to 'relieve and support' the poor."  (*See* Opp. at 7.)  First, Plaintiffs have not identified any obligation the County is failing to satisfy.  Indeed, the County has dedicated hundreds of millions of dollars annually to housing, shelter, services, and other resources for PEH.  (*E.g.*, Hashmall Decl. Ex. 13 [Homeless Initiative Quarterly Report No. 18] at 3, Dkt. 371; *id.* Ex. 16 [July 13, 2021 Press Release announcing the Homeless Initiative Budget for Fiscal Year 2021-2022].)  Plaintiffs admit this.[3]  (*See, e.g.,* FAC ¶¶ 88, 93-94.)

Moreover, Plaintiffs must allege *affirmative conduct* by the County because the state-created danger doctrine is an exception to "[t]he general rule" that "a state is not liable for its omissions."  *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (citation omitted).  Plaintiffs cannot state a due process claim based on their belief that the County "has not done *enough*."  (Opp. at 1; Mot. at 20-21.)  *See Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) (failure to protect someone from unsafe environment cannot give rise to liability under the state-created danger doctrine).

Plaintiffs' allegation that the County has a "long history" of "racist policies and practices" similarly fails.  (*See* Opp. at 7.)  Plaintiffs do not specify any alleged racist County policy that resulted in a state-created danger.  Instead, they cite

---

[3] Plaintiffs' legal standard argument is a red herring.  (*See* Opp. at 3.)  The County's Motion is both facial and factual.  The County submitted an RJN detailing its extensive work to shelter PEH and address homelessness (Dkt. 370-2), which confirms why the Court lacks jurisdiction to direct the County's legislative actions.  Plaintiffs cannot satisfy their pleading burden by simply ignoring the facts.  Whether the County's Motion is viewed as a facial or factual challenge, Plaintiffs' claims are untenable.

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

allegations in the FAC about the *City's* historical containment policy and its zoning designations under its DTLA2040 plan. (*See id*. (citing FAC ¶¶ 40-45).) Plaintiffs' conclusory allegation of unspecified historical racist policies cannot satisfy their burden to plead that the County's affirmative conduct placed them in "an actual, particularized danger." *Martinez*, 943 F.3d at 1271.

Plaintiffs do not identify *any* "actual, particularized danger." Instead, they argue the County is "exacerbating or causing significant mental and physical decline" of its constituents. (*See* Opp. at 7 (citing FAC ¶ 217).) But conclusory allegations about the generalized risks attendant to being homeless do not satisfy the state-created danger doctrine. *See Huffman v. County of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998); *Patel v. Kent Sch. Dist*., 648 F.3d 965, 974 (9th Cir. 2011) (plaintiffs must identify a "known, immediate" threat of harm).

Plaintiffs cite cases that are inapposite. In *Kennedy v. City of Ridgefield*, the Ninth Circuit affirmed the denial of qualified immunity to a police officer who had informed the plaintiff's neighbor—an individual with known violent tendencies and against whom the plaintiff had made allegations of child abuse—that he was being investigated for molesting the plaintiff's daughter. 439 F.3d 1055, 1057, 1067 (9th Cir. 2006). The officer had promised, but failed, to warn the plaintiff before approaching her neighbor, who later broke into the plaintiff's house and shot and wounded plaintiff and shot and killed her husband. *Id*. at 1058.

In *Hernandez v. City of San Jose*, police officers "actively prevented" attendees of a political protest from exiting a rally, forcing them into contact with known violent counter-protesters who attacked them. 897 F.3d 1125, 1133 (9th Cir. 2018). And in *Wood v. Ostrander*, the Court denied qualified immunity to an officer who impounded a vehicle, stranding the female passenger in a high-crime area at 2:30 a.m. where she was subsequently assaulted. 879 F.2d 583, 586, 596 (9th Cir. 1989). These cases share common elements notably absent from the FAC: an acute danger to the plaintiff known to municipal officers, temporal closeness

14

between the challenged action and the injury, and a direct line of causation between the conduct and the injury.

Plaintiffs' COVID cases further undercut their arguments.  (Opp. at 8-9 (citing *Santa Cruz Homeless Union v. Bernal*, 514 F. Supp. 3d 1136 (N.D. Cal. 2021), and *Sausalito/Marin Cty. Chapter of Cal. Homeless Union v. City of Sausalito*, 2021 WL 2141323 (N.D. Cal. May 26, 2021).)  There, courts enjoined the forced relocation of PEH out of public encampments because of the particularized risk that doing so would increase their exposure to COVID-19.  Thus, those cases held that the exact relief Plaintiffs seek here was likely unconstitutional.

Plaintiffs also fail to show the County acted with "deliberate indifference" to their health and safety.  *Patel*, 648 F.3d at 974.  Plaintiffs *do not* allege the County's deliberate indifference in the FAC.  To the contrary, Plaintiffs concede the County provides services to PEH throughout the County.  The efficacy of the County's policy decisions is an issue for the political process—not a federal lawsuit.  *Juliana*, 947 F.3d at 1175.

### 2.     <u>Plaintiffs Have No Special Relationship to the County</u>

Plaintiffs concede they were "not physically behind bars" when their alleged injuries occurred.  (Opp. at 10.)  This is fatal to Plaintiffs' claim—as a matter of law, "[t]he special-relationship exception does not apply when a state fails to protect a person who is not in custody."  *Patel*, 648 F.3d at 972.

Plaintiffs cannot establish a constitutional violation by arguing that "there is nowhere else for [PEH] to go with a better chance of help."  (Opp. at 10.)  There is no support for this theory.  *DeShaney* affirmed that the Fourteenth Amendment "confer[s] no affirmative right to governmental aid" nor "minimal levels of safety and security," even if "necessary to secure life, liberty, or property interests."  489 U.S. at 195-96.  If it is not a constitutional violation for the government to provide *no* aid to PEH, then it is certainly not a constitutional violation to provide some aid as here.  (*See* Mot. at 23-24.)

15

Plaintiffs' attempt to equate the County's provision of services to "incarceration" or "institutionalization" is nonsensical.  (Opp. at 10 (quoting *DeShaney*, 489 U.S. at 200).)  Plaintiffs cannot allege deliberate indifference.  They admit the County spends hundreds of millions of dollars each year on housing, shelter, services, and other resources for PEH.  Their own admissions defeat their claim.

### B.      Plaintiffs Have Not Stated A Procedural Due Process Violation

Plaintiffs argue they were denied procedural due process based on an alleged Skid Row "containment" policy.  (Opp. at 11.)  This argument fails.

First, Skid Row is within the City and under its jurisdiction.  Plaintiffs cannot maintain a constitutional claim against the County based on an alleged *City* policy.  (*See* Mot. at 19-20.)  Second, Plaintiffs have no individual procedural due process right to weigh in on the City's policy.  (*See id*.)  *See also Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994) ("[G]overnmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient.").

Instead, Plaintiffs claim the County "exact[ed] a taking . . . without justification."  (Opp. at 11.)  But Plaintiffs have not alleged a taking claim against the County; and they cannot raise a new, unpleaded claim in opposition to a motion to dismiss.  *Schneider v. Cal. Dep't of Corr*., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).  Moreover, any such taking claim would fail.  *See*, *e.g.*, *BAM Historic Dist. Ass'n v. Koch*, 723 F.2d 233, 237 (2d Cir. 1983) ("plaintiffs have no cognizable liberty interest in preventing the location of a shelter for the homeless in their neighborhood" because the rights protected by the Due Process Clause "do[] not include the maintenance of transient levels of the quality of neighborhood life").

## C. Plaintiffs Have Not Stated An Equal Protection Claim

### 1. Plaintiffs Fail to Allege the County Discriminated Against Them Because of Geography

The County identified several fatal flaws in Plaintiffs' equal protection claim, including that the FAC is devoid of any allegation that the County intentionally discriminated against Plaintiffs because of their geographic location, let alone for an impermissible reason. Plaintiffs do not respond to any of the County's arguments, which is a concession that their claim fails. *Heraldez*, 2016 WL 10834101, at *2; *Excel Fitness Fair Oaks, LLC v. Newsom*, 2021 WL 795670, at *4 (E.D. Cal. Mar. 2, 2021) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument." (citation omitted)).

Instead, Plaintiffs again point to the *City's* alleged containment policy and its unequal enforcement of its own ordinances in Skid Row and under one freeway overpass near Mar Vista. (Opp. at 11-12; *see also* FAC ¶¶ 30-39 (alleging the City has a containment policy in Skid Row); FAC ¶ 111 ("Mr. Frem . . . was admonished by *the City*" (emphasis added)); *id.* ¶ 114 ("*The City's* homelessness policies have caused serious economic damage to Mr. Frem's business . . . ." (emphasis added)).) As a matter of law, the City's conduct cannot support an equal protection claim against the *County*. (*See* Mot. at 16.) The FAC alleges only that the County is providing aid to PEH, not engaging in intentional discrimination against Mr. Frem. (*Id*.)

Plaintiffs also offer no support for their "class-of-one" selective enforcement argument. (*See* Opp. at 12.) Plaintiffs cite to *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008), but, as the County explained, that case supports dismissal. (*See* Mot. at 16.) All of the allegations in the FAC "involve discretionary decisionmaking based on a vast array of subjective, individualized assessments" that cannot support a selective enforcement claim as a matter of law. *Engquist*, 553 U.S. at 603.

17

### 2.    Plaintiffs Do Not Allege Racial Discrimination by the County

The County pointed out that Plaintiffs do not plead any alleged injuries caused by invidious discrimination by the County.  (Mot. at 18-19.)  Plaintiffs respond that facially neutral laws can still be discriminatory.  (Opp. at 13.)  But this argument does not save Plaintiffs' claim because the FAC does not allege that the County is actually enforcing a race-neutral law in a discriminatory way.  Thus, all of Plaintiffs' cases are distinguishable.  Unlike the permitting scheme in *Yick v. Hopkins*, 118 U.S. 356 (1886), the redistricting of electoral districts in *Gomillion v. Lightfoot*, 364 U.S. 339 (1960), or the at-large voting system in *Rogers v. Lodge*, 458 U.S. 613 (1982), Plaintiffs do not identify *any* specific County law that has a disparate impact on people of color.

Moreover, these cases do not alter the rule that unequal application of a facially neutral law "is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."  *Snowden v. Hughes*, 321 U.S. 1, 8 (1944) (distinguishing *Yick*); *see Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977) (same).[4]

Plaintiffs contend the alleged discrimination "is so blatant and invidious as to infer improper discriminatory intent by race," and that "[t]he City and County" have "made affirmative decisions and adopted policies and laws which has furthered th[e] disparate treatment, knowing the result would have a continued and intensified disparate impact."  (FAC ¶ 214.)  These vague, conclusory allegations fail as a matter of law.  *Snowden*, 321 U.S. at 10 (purposeful discrimination requires more

---

[4] The Supreme Court has cautioned that discriminatory intent cannot be inferred from statistical proof of disparate impact except in "rare" situations that require "a pattern as stark as that in Gomillion," where a city was re-shaped into a 28-sided figure that removed 4/5 of Black voters from a district—"or Yick Wo," where all but one Chinese business was denied a permit. *Arlington Heights*, 429 U.S. at 266; *accord McCleskey v. Kemp*, 481 U.S. 279, 293-94, 293 n.12 (1987).

18

than "epithets" like "'willful' and 'malicious'" or "characterizing [a] failure as an unequal, unjust, and oppressive administration of the laws").

### D. Plaintiffs' Conclusory "Municipal Liability" Claim Fails

Plaintiffs must "specify the content of the policies, customs, or practices" that "gave rise to [their] Constitutional injuries." *Mateos-Sandoval v. County of Sonoma*, 942 F. Supp. 2d 890, 899 (N.D. Cal. 2013). They have failed to do so. (*See* Mot. at 24-25.)

In their Opposition, Plaintiffs say they "properly allege all actions were taken by County agents pursuant to official 'policy, procedure, or customs held by the . . . County.'" (Opp. at 14 (citing FAC ¶ 224).) But these are boilerplate allegations that cannot survive dismissal. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-83 (2009) (affirming dismissal because plaintiff relied only on conclusory allegations that federal officials purposefully adopted an unconstitutional policy of arresting detainees after September 11, 2001 because of race, religion or national origin); *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149 (E.D. Cal. 2009) (holding that, in "light of *Iqbal*," the Ninth Circuit's "pleading standard for *Monell* claims (i.e. 'bare allegations') is no longer viable").

Plaintiffs insist that somewhere in the FAC's 226 unspecified paragraphs, "Plaintiffs have identified the specific policies alleged and acted upon . . . which, taken together, entitle Plaintiffs to relief." (Opp. at 14.) This is plainly insufficient.

### IV. PLAINTIFFS DO NOT PLEAD DISABILITY DISCRIMINATION

Plaintiffs admit "the City is responsible for ensuring sidewalks within its jurisdiction . . . meet the requirements of the ADA," and do not dispute that the sidewalks of Skid Row are under the City's jurisdiction. (Opp. at 15.) This alone requires dismissal of their new disability discrimination claims against the County.

But the claims fail on the merits too. Plaintiffs rely on *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996), to argue that Suarez and Van Scoy are prevented from using the sidewalks "'by reason' of their disabilities." (Opp. at 16.) But *Crowder*

19

supports the County's argument.  There, the visually impaired plaintiffs claimed that Hawaii's quarantine on dogs entering the state discriminated against them on the basis of their disability because they relied on guide dogs to "negotiat[e] public streets and us[e] transportation systems."  81 F.3d at 1482.  The Ninth Circuit held the quarantine violated the ADA because, due to their "unique dependence" on guide dogs, it denied plaintiffs access to state services, while those services "*remain[ed] open and easily accessible by others*."  *Id.* 1484 (emphasis added).

Here, by contrast, Plaintiffs claim the "[s]idewalks . . . are completely blocked and impassible."  (Opp. at 15.)  They do not allege the sidewalks are "open and easily accessible" to anyone.  Instead, Plaintiffs argue that the burden on Suarez and Van Scoy is greater because they cannot "simply step down and around an encampment."  (*Id.* at 16.)  But *Crowder* did not establish a blanket rule that a "different or greater" burden on disabled individuals is sufficient to state an ADA claim.  That Suarez and Van Scoy "must turn around" to go "back to the other side of the street," instead of "walk[ing] through the street to the other side" does not constitute unequal access to the sidewalks "because of" their disability.  (*See id.*)

## V.   THE REMAINING STATE-LAW CLAIMS ARE FATALLY FLAWED

### A.   Plaintiffs Cannot Plead Around Governmental Immunity

Under California law, public entities have absolute immunity unless "otherwise provided by statute."  Cal. Gov't Code § 815.  Plaintiffs argue that governmental immunity does not bar their claims for injunctive relief.  (Opp. at 20-22.)  Their attempt to circumvent the County's statutory immunity fails as a matter of law.  (*See* Mot. at 28-30.)

Plaintiffs quote *Schooler v. State*, 85 Cal. App. 4th 1004, 1013 (2000), for the proposition that "[u]nder section 814, Government Code immunities extend only to tort actions that seek money damages."  (Opp. at 21.)  But Plaintiffs omit the key holding in *Schooler*.  There, plaintiff's home was on top of a state-owned bluff that was adjacent to a state-owned beach.  The plaintiff sought an injunction against the

20

state in connection with structural damage to his home caused by erosion of the bluff, and relied on section 814 to argue that immunity did not bar his claim for injunctive relief. 85 Cal. App. 4th at 1013.

The court rejected this argument because Government Code section 831.25 "*relieves public entities of the responsibility*" to protect adjacent property from land failures caused by natural conditions (85 Cal. App. 4th at 1012 (emphasis added)), and the injunctive relief plaintiff sought was merely an end-run around immunity and undermined the legislative intent to reduce the state's financial burden for injuries from natural conditions on public land (*id.* at 1012-14). Section 814 "cannot be applied in such a way as to circumvent either its own underlying legislative policy or that of another section in the Tort Claims Act," and "*any 'relief' allowed under section 814 cannot create duties that immunity provisions guard against.*" *Id.* at 1013-14 (emphasis added). The same is true here.

Government Code section 815.2 provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b). And section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." *Id.* § 820.2.

Under section 820.2, public employees cannot be held liable for basic policy or planning decisions. *Masters v. San Bernardino Cty. Emps. Ret. Ass'n*, 32 Cal. App. 4th 30, 45-46 (1995). A fundamental purpose of discretionary immunity is the need to fix duties and attain finality of governmental decisions. *Connelly v. State*, 3 Cal. App. 3d 744, 766 (1970). If a trier of fact "is permitted to redetermine what [a public employee] should have done under a given set of circumstances where he had judgment and discretion, the ultimate power of decision is transferred to those not responsible," and the result of each suit would become a redefinition of his duty. *Id.* The County's decisions about how to allocate funds for the purpose of

21

addressing homelessness is a legislative policy decision and quintessential discretionary act.  Since a fundamental purpose of discretionary immunity is the need to fix responsibilities and to attain finality of [governmental] decision[s]," allowing "a court-imposed duty would be inconsistent with the legislative intent" underlying section 820.2 that public employees cannot be held liable for basic policy or planning decisions.  *See Connelly*, 3 Cal. App. 3d at 766; *Schooler*, 85 Cal. App. 4th at 1011; *see also Pierce v. County of Orange*, 2004 WL 7340113, at *2 (C.D. Cal. June 4, 2004) ("[A] plaintiff cannot use a claim for equitable and injunctive relief to circumvent the financial protections immunity provides a governmental entity."); *Thompson v. City of Petaluma*, 231 Cal. App. 4th 101, 106 (2014) ("Courts should not interfere with a local government's legislative judgment on the ground that its funds could be spent more efficiently."); *Lucas v. Santa Maria Pub. Airport Dist.*, 39 Cal. App. 4th 1017, 1026 (1995) ("Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which does not meet with a taxpayer's approval.").

Plaintiffs rely on a single unpublished district court case, *Pierce v. County of Orange*, to argue that immunity does not apply because they "are not seeking to impose additional financial burdens the County would not already have, had it properly fulfilled its constitutional and statutory obligations."  (Opp. at 21).  *Pierce* is distinguishable.  There, the court recognized that *Schooler* precludes a plaintiff from "us[ing] equitable and injunctive relief to impose a duty . . . the state did not otherwise have a duty to maintain," but held that governmental immunities did not apply because the plaintiffs sought to enjoin the county's operation of its jails *in an unlawful manner*, such as depriving pre-trial detainees the ability to practice religion, or denying disabled inmates access to programs and services.  *Pierce*, 2004 WL 7340113, at *2.  The court reasoned that the county was already under the legal obligation to comply with the Constitution and ADA, and had failed to do so, so an

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT

injunction compelling compliance imposed no new burdens on the county that would be barred by governmental immunity. *Id.*

*Pierce* stands for the unremarkable principle that where a party has the legal right to specifically enforce an obligation, governmental immunity does not bar the claim. But that is not the issue here. Rather, Plaintiffs do not identify any legal right (under WIC section 17000 or otherwise) to require the County to build emergency shelters or expend funds based on Plaintiffs' policy preferences. (Mot. at 28-29.) Thus, an injunction requiring the County to redirect funds allocated for services or housing to build emergency shelters *would* impose a new duty on the County, with new fiscal burdens not contemplated by California law. This would directly conflict with the legislative intent behind the immunity statutes relieving public entities of responsibility for "adopting or failing to adopt an enactment," "failing to enforce any law," and "exercis[ing] . . . discretion." (Mot. at 28 (citing Cal. Gov't Code §§ 818.2, 820.2).) *See also Schooler*, 85 Cal. App. 4th at 1013-15.

**B.    Plaintiffs Fail To Allege The Existence Of A State-Law Duty To Provide Emergency Shelters To All PEH**

Plaintiffs' remaining claims all require Plaintiffs to allege a statutory duty that the County breached, causing Plaintiffs' injuries. They have not done so.

**1.    Plaintiffs Fail to State a Section 17000 Claim**

Plaintiffs contend that, under WIC section 17000, the County owes a mandatory duty to provide housing to the unhoused because "'subsistence' medical care includes basic shelter." (Opp. at 19.) Plaintiffs misrepresent what section 17000 requires. The County embraces its obligations under the statute: (i) to provide general assistance to the indigent, and (ii) to provide medically necessary care to "medically indigent persons." *Hunt v. Superior Court*, 21 Cal. 4th 984, 1002-03 (1999).

Even assuming, *arguendo*, that provision of beds could constitute medical care of some kind, such aid would not constitute subsistence medical care mandated

23

by section 17000. The medical care obligation "neither requires the County to satisfy all unmet needs, nor mandates universal health care." *Hunt*, 21 Cal. 4th at 1014. Moreover, nothing in the plain language of section 17000 requires the County to provide care in the form of temporary emergency shelters or otherwise dictates its "cho[ice] between a multitude of potential courses of action," as Plaintiffs demand. *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1246 (1996). To the contrary, section 17000 "give[s] the counties a great deal of discretion in determining how best to meet the medical needs of indigent residents in light of the limited resources available," *id.* at 1245-46, and it is up to the County to define the "standards of aid and care," Cal. Welf. & Inst. Code § 17001.

The County has exercised its discretion and determined how to support its indigent residents. Plaintiffs acknowledge as much in the FAC. (*E.g.*, FAC ¶¶ 83, 171.) Thus, Plaintiffs *cannot allege* the County has failed to discharge a mandatory obligation. Instead, they argue the County was required to discharge its obligations in a *different way*. (*Id.* ¶¶ 171-72.) The Court's inquiry can end there. The County has discharged its mandatory duty by exercising its discretion. *Tailfeather*, 48 Cal. App. 4th at 1246 (because counties have discretion to determine the type of relief they provide under WIC sections 17000 and 17001, a court's role is limited to determining "whether the County has abused or exceeded its discretion under the governing statutes—not to dictate how that discretion must be exercised"). Plaintiffs' own allegations defeat their claim.

## 2. Plaintiffs Fail to State a Negligence Claim

Plaintiffs do not respond to the County's arguments for why their negligence claim fails. (*See* Mot. at 31-33.) Again, this alone is grounds for dismissal. *Heraldez*, 2016 WL 10834101, at *2; *Excel Fitness*, 2021 WL 795670, at *4. Instead, they argue in a footnote that their negligence claim must survive because it is predicated on a breach of section 17000. (Opp. at 17 n.4.)

Plaintiffs' attempt to tie their negligence claim to section 17000 contradicts

24

the FAC, which alleges the County breached a duty to maintain public rights of way, abate harmful or offensive conditions, and implement Measure H.  (*See* FAC ¶¶ 161-64; Mot. at 31-32.)  It is also inconsistent with Plaintiffs' new *respondeat superior* theory of liability.  (*See* FAC ¶¶ 161, 165.)

In any event, it does not work because section 17000 does not impose a duty to provide temporary shelter.  The County cannot be liable in negligence for breaching a duty that does not exist.[5]

### 3.    Plaintiffs Fail to State a Nuisance Claim

Plaintiffs fail to identify a statute giving rise to a duty by *the County* to affirmatively act to prevent the alleged waste, fires and crime caused by PEH in *the City*.  This dooms their public and private nuisance claims.  (*See* Mot. at 33-34.)  Indeed, Plaintiffs do not dispute this is required to state a claim.  (*See* Opp. at 23 ("[T]he "substantial factor" test for nuisance may be met by a *failure to act* when the defendant has a duty to take a positive action to prevent or abate the interference.").)

*Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147 (1939), is inapposite.  (*See* Opp. at 23-24.)  There, the Supreme Court struck down a municipal ordinance that banned the distribution of leaflets on certain city land on First Amendment grounds.  308 U.S. at 165.  The Supreme Court noted that while municipalities "may lawfully regulate the conduct of those using the streets," such

---

[5] Plaintiffs contend that, under *Brenneman v. State*, governmental entities may be liable under a negligence *per se* theory for breaching a statute that creates a "legislatively prescribed standard of care."  (Opp. at 17 n.4 (citing 208 Cal. App. 3d 812, 817 n.2 (1989)).)  But that case affirmed the dismissal of a complaint for failure to plead the breach of *any* recognized duty.  Moreover, section 17000 confers discretion on counties, and therefore *cannot* support a negligence claim.  *See Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 498 (2000) ("[T]he enactment at issue [must] be *obligatory*, rather than merely discretionary or permissive, in its directions to the public entity . . . .").

25

as enacting and enforcing "traffic regulations," "the public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution." *Id.* at 160-61, 163. *Schneider* does not support Plaintiffs' argument that the County owes a legal duty to remove PEH from City streets near Plaintiffs' private property.

### C.    Plaintiffs Fail To State A Waste Claim

Plaintiffs' theory of liability under section 526a is that the County negligently spent taxpayer money. (Opp. at 20.) That does not work. *Sundance v. Municipal Court*, 42 Cal. 3d 1101, 1138-39 (1986) ("[T]he term 'waste' as used in section 526a means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative form of government at the local level." (alteration in original) (citation omitted)). The waste claim must be dismissed.

## VI.    CONCLUSION

Plaintiffs' Opposition is heavy on rhetoric and critiques, but devoid of any legal basis to allow their claims against the County to proceed. Each claim fails under Plaintiffs' own admissions and well-settled law. The County respectfully requests that the Court dismiss it from this lawsuit.

DATED:  January 10, 2021          MILLER BARONDESS, LLP

By:      /s/ Mira Hashmall
         MIRA HASHMALL
         Attorneys for Defendant
         COUNTY OF LOS ANGELES

26

DEFENDANT COUNTY OF LOS ANGELES' REPLY IN SUPPORT OF
ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT