RODRIGO A. CASTRO-SILVA (SBN 185251), *County Counsel*
rcastro-silva@counsel.lacounty.gov
LAUREN M. BLACK (SBN 192302), *Assistant County Counsel*
ANA WAI-KWAN LAI (State Bar No. 257931), *Senior Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, California 90012
Tel.: (213) 974-1830 | Fax: (213) 626-7446

LOUIS R. MILLER (SBN 54141)
smiller@millerbarondess.com
MIRA HASHMALL (SBN 216842)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400

BYRON J. MCLAIN (SBN 257191)
bmclain@foley.com
FOLEY & LARDNER, LLP
555 South Flower Street, Suite 3300
Los Angeles, California 90071
Tel.: (310) 972-4500 | Fax: (213) 486-0065

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | **CASE NO. 2:20-cv-02291 DOC-KES** <br><br> **DEFENDANTS COUNTY OF LOS ANGELES AND CITY OF LOS ANGELES' STATUS REPORT REGARDING AUDIT PROGRESS** <br><br> Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

556976.7

JOINT STATUS REPORT REGARDING AUDIT PROGRESS

On December 21, 2021, the Court requested that Defendants City of Los Angeles ("City") and County of Los Angeles ("County" and, together with City, "Defendants") carry out and submit an audit of their efforts pursuant to the June 16, 2020 Binding Term Sheet (Dkt. 136) and associated Memorandum of Understanding (the "MOU," Dkt. 185-1).  (*See* Dkt. 378.)  Defendants submit this joint status report of their audit progress pursuant to the Court's March 2, 2022 Order.  (Dkt. 399.)

## I.    BACKGROUND

On May 22, 2020, the Court issued a Preliminary Injunction directing Defendants to offer housing to people experiencing homelessness ("PEH") camped within 500 feet of freeway overpasses, underpasses, or ramps and subsequently humanely relocate this subset of PEH at least 500 feet away from such areas by no later than September 1, 2020.  (Dkt. 123.)  In response, Defendants jointly requested a referral for mediation (Dkt. 124), which the Court granted (Dkt. 125).  Defendants participated in a mediation with the Honorable André Birotte Jr. on June 11 and 12, 2020, at which Defendants agreed to a Binding Term Sheet.

Under that agreement, the City agreed to provide a total of 6,700 beds/shelter opportunities within 18 months to house and shelter eligible PEH in the City of Los Angeles.  (Dkt. 136 at 1.)  The County agreed to allocate funds towards the creation of the new beds/shelter opportunities, and pay the City a one-time bonus of $ 8 million if the City provided 5,300 new beds by April 16, 2021.  (*Id.* at 2.)  The County also agreed to make available a package of mainstream services for PEH residing in certain facilities established by the City pursuant to the Binding Term Sheet.  (*Id.*)

Defendants memorialized the terms of the Binding Term Sheet in a written MOU executed on October 9, 2020.  (*See* Dkt. 185-1.)  The Binding Term Sheet and MOU are subject to enforcement by the Court.  (Dkt. 136 at 2; Dkt. 185-1 at 11.)

Under the MOU, Defendants are required to submit written quarterly status

reports to each other and the Court, in addition to other detailed reporting obligations.  The City files quarterly reports on, *inter alia*, its progress in providing the 6,700 new beds.  (Dkt. 185-1 at 10.)  The County files quarterly reports on its provision of mainstream services for PEH in facilities established by the City.  (*Id.* at 11.)  There are also audit controls in place to evaluate Defendants' compliance with the terms of the MOU on an ongoing basis.  (*Id.* at 9.)

The City filed a status report for the Quarter ending September 30, 2021, in which it summarized the type of interventions being developed in each Council District, the number of beds at each, the status of each project, and the number of PEH from the target populations that had already been given housing/shelter under those interventions.  (Dkt. 356.)  The City reported that over 6,300 new beds were open and occupiable as of September 30, 2021, and over 8,700 new beds were open or in the process of being opened.  (Dkt. 356-1 at 4.)

The County also filed a status report for the Quarter ending September 30, 2021 that included a description of the mainstream services County had provided under the MOU in the preceding quarter at City projects developed under the MOU, including on-site outreach and engagement, benefits assistance, as well as mental health and substance abuse services.  (Dkt. 364.)  As of the end of 2021, County has provided $113 million to the City in connection with the MOU.

On December 14, 2021, Defendants filed a joint status report at the Court's request regarding their progress to date under the MOU.  (Dkt. 373; *see* Dkt. 372 (requesting report).)  Defendants' report contained updated statistics regarding City and County's efforts pursuant to the MOU, and also discussed an audit that had been conducted by the County Auditor-Controller to determine the City's eligibility for the $ 8 million incentive bonus, which Defendants agreed the City would receive if it created 5,300 new, open, and occupiable beds by April 16, 2021.  (Dkt. 373 at 4.)

The City was not eligible for the bonus.  (*Id.*)[1]

On December 16, 2021, the Court held a status conference on Defendants' report and progress under the MOU.  (*See* Dkts. 372, 377.)  After the conference, the Court entered a minute order setting another conference to hear testimony from all Parties regarding Defendants' completion of the terms of the MOU.  (Dkt. 378.)  In its minute order, the Court also ordered Defendants, as follows:

- The County shall carry out and submit to the Court a full audit that will attempt to verify the existence of all beds created by the City pursuant to the Binding Term Sheet;

- The City shall carry out and submit to the Court an audit of the County's provision of mainstream services for homeless people residing in facilities established by the City pursuant to the Binding Term Sheet; and

- The City and County shall file a joint report detailing the procedures used to document new beds and how those procedures address the County auditor's previous concerns.

(*Id.* at 3.)

Defendants submitted a stipulation requesting that the Court extend the audit and reporting deadlines set forth in the December 21, 2021 minute order to allow Defendants adequate time to complete their audits in light of the significant labor and logistical efforts required, in addition to administrative challenges attendant to the surge in COVID-19 cases in Los Angeles in late 2021 and early 2022.  (Dkt. 398.)  The Court granted Defendants' requested extension in part, and ordered Defendants to submit this joint status report detailing their progress towards completing the audits by March 21, 2022.  (Dkt. 399.)

---

[1] The City disputes this characterization by the County.  The County's Auditor-Controller did not conclude the City was not eligible for the bonus.  Rather, the audit report disputed the City's assertion that more than 5,300 new beds were open and occupiable on April 16, 2021.  The City maintains that it created more than 5,300 new open and occupiable beds as of April 16, 2021.

4556976.7

4

## II.      THE COUNTY'S STATEMENT RE AUDIT PROGRESS

In response to the Court's December 16, 2021 order, the County developed an audit methodology that (a) defined the scope of the audit required by the Court's order, (b) outlined an audit process the County believes fulfills the requirements of the Court's order, and (c) articulated a workable timeline that would allow Defendants time to complete the audit as well as draft and finalize the required report.  The County and City collaborated to develop an audit methodology to accommodate various logistical considerations determined to be integral to the audits' success.  These considerations included identifying all relevant documents that needed to be gathered and shared to ensure the successful completion of an accurate audit by both parties, evaluating the County's ability to access City projects consistent with public-health guidelines related to COVID-19, and reserving sufficient time for the County and City to prepare the requested joint report.

The City creates and provides beds/shelter opportunities under the MOU on an ongoing basis.  To balance the desire for accuracy and completeness with the need for clearly defined parameters, the County and City agreed the County's audit will verify the City's accounting of beds provided by the City pursuant to the MOU as of the end of December 31, 2021.  For purposes of the audit, and consistent with the terms of the MOU, the County's audit counts a bed towards the City's 6,700 obligation if it (1) was not previously planned for under any agreement between the City and County before the date of the MOU, and (2) opened on or after June 16, 2020 (i.e., the date of the Binding Term Sheet).

The County developed three audit tools to document the results of its audit in a consistent and accurate manner.  The new beds the City has created for PEH in the MOU's target population comprise a combination of interim housing and permanent supportive housing.  Interim housing sites include motel/hotel rooms purchased and/or leased by the City through Project Roomkey and Homekey, sprung structures or tents, safe parking sites, safe sleeping sites, transitional housing shelters like

5556976.7

5

JOINT STATUS REPORT REGARDING AUDIT PROGRESS

A Bridge Home, and other innovative modes of shelter.  The City has also developed a number of permanent supportive housing projects that count towards the City's 6,700 bed goal, including scattered-site housing and rapid-rehousing (such as purchased and/or leased motel/hotel rooms, housing vouchers, and other rental or move-in cash assistance).

To verify the existence of all interim housing beds the City has reported, the County is in the process of conducting site visits and documenting open and occupiable beds using a standardized data collection tool it created for purposes of this audit.  According to City records, there are 71 interim housing sites, and, to date, the County has completed 70 site visits.  The County's progress in auditing the City's interim housing sites was impeded in January and early February 2022 by the rapid spread of the Omicron variant of the COVID-19 virus.  The remaining interim housing site closed after December 31, 2021, and the County intends to conduct an audit of the beds created at that site through a document review process.  The County expects to be completed with that document review by March 25, 2022.

The County is engaging in a two-fold process to verify all permanent housing beds the City has reported.  The City has two types of permanent housing projects: permanent supportive housing projects and rapid rehousing projects.

For the permanent supportive housing projects, the County is in the process of conducting site visits and documenting open and occupiable beds using a standardized data collection tool it created for purposes of this audit.  The County is in the process of visiting 13 sites in total.  The County expects to be completed with its site visits by March 25, 2022. As explained above, the County's progress in conducting in-person site visits was impeded by the rapid spread of the Omicron variant of the COVID-19 virus earlier this year.

For the rapid rehousing projects, the County is documenting the existence of open and occupiable beds through an administrative document review of the City's records using a standardized data collection tool it created for purposes of this audit.

6556976.7

6

In light of the nature of the rapid rehousing projects, the approximately 1,500 bed sites are dispersed across over 1,400 unique locations.  The County is employing a sampling methodology of 10 percent of reported rapid rehousing sites, and then manually matching client program enrollment information with receipts of payments for motel/hotel rooms or verified lease information.  The County is in the process of auditing 157 clients of the County's rapid rehousing projects, and expects to be completed with its audit by March 25, 2022.

In addition to its audit, the County has been cooperating with the City on providing the documentation necessary for the City to complete its reciprocal audit, including documents needing to be obtained from LAHSA.  The County has complied with its document production to the City.  It is the County's understanding that the outstanding documents from LAHSA are not pivotal to the City's audit or its initiation of its audit.

## III.    THE CITY'S STATEMENT RE AUDIT PROGRESS

The City prepared an audit tool to conduct the audit ordered by the Court. (Exhibit 1.)  Under the audit tool, the City: (a) prepared a lengthy list of necessary documents associated with the County's provision of mainstream services, as described in the Mainstream Service Integration Guide developed by the County (Exhibit 2) for all City interventions created under the MOU; (b) requested the necessary documents on the list from the County; and (c) established processes and procedures to review and analyze the documents.  The County's provision of mainstream services includes the monthly coordination meetings between the County and LAHSA to manage and monitor the roll out of services to the interventions created by the City under the MOU.

As an initial measure, the auditing process first requires the City to evaluate the mainstream services data with monthly census and demographic data for the interventions created under the MOU.  While the City has now received most of the documents it requested to conduct the audit, the City only recently received the

7

JOINT STATUS REPORT REGARDING AUDIT PROGRESS

monthly census and demographic information.

In addition, there remain data insufficiencies the City is working with the County and LAHSA to resolve, which contrary to the County's position above, are necessary to the City being able to complete its audit.  The City will be able to complete the audit once all the necessary data are received.  Once all the data is provided by the County and processed, the City will require time to confer with the County regarding the results of the audit and to make appropriate adjustments and corrections.  It is unlikely this process will be complete by April 4, 2022.

DATED:  March 21, 2022          MILLER BARONDESS, LLP


By: _____
        MIRA HASHMALL
        Attorneys for Defendant
        COUNTY OF LOS ANGELES


DATED:  March 21, 2022          LOS ANGELES CITY ATTORNEY'S
                                OFFICE


By:   /s/ Arlene N. Hoang
        SCOTT MARCUS
        ARLENE N. HOANG
        RYAN SALSIG
        Attorneys for Defendant
        CITY OF LOS ANGELES

**ATTORNEY ATTESTATION**

I attest that concurrence in the filing of this document has been obtained from each of the other signatories who are listed on the signature pages.

DATED:  March 21, 2022          MILLER BARONDESS, LLP

By: _____

MIRA HASHMALL
Attorneys for Defendant
COUNTY OF LOS ANGELES

9556976.7

9

JOINT STATUS REPORT REGARDING AUDIT PROGRESS

# EXHIBIT 1

# Mainstream Services Checklist

Address: _____

Auditor/Date: _____

| | Document | Action |
|---|---|---|
| ☐ | **LAHSA Communication to County on IH List** | Is location on list? If so, attach; if not, request and document in comments. |
| ☐ | **Monthly Census and Demographic Information** | Was this received? If so, attach; if not document in comments and request. |
| ☐ | **80% Occupancy** | Based on monthly census, did it meet threshold? If no, audit complete. If yes, complete rest of process. |
| ☐ | **Email Introduction from LAHSA** | Was this received? If so, attach; if not, note in comments and request. |
| ☐ | **Communications from County Depts to Site Provider** | Was this received for all Agencies? If so, attach. Document in comments anything missing and request. |
| ☐ | **Verification of current site enrollments** | Was this received? If so, attach and review/validate that this occurred per the guidance. If not document in comments and request. |
| ☐ | **Date of Service Integration/Site Visit** | Enter date of site visit. If no document to support, request. |
| | **Summary of information from LAHSA Mainstream Svcs Integration Report:** | |
| ☐ | **Service Integration Validation** | Review documents to support validation and attach. If not received, note in comments and request. |
| ☐ | **How many clients received services and for how long** | Validate information and provide summary. If no documentation, request and note in comments. |
| ☐ | **How many clients did not receive services and reasons?** | Validate information and provide summary |
| ☐ | Reports Under Section IIIa | Were there received? Review for verification of service provision. |
| | | |
| ☐ | **Post Integration continuation of services** | Validate information and provide summary |
| ☐ | **Safe Parking Training** | Validate documentation that this occurred. If not, request clarification on reasons not provided and note in comments. |
| ☐ | **Safe Parking Report on pre/post flyer services** | Review report on numbers of clients served pre/post flyer. |
| ☐ | **Copies of Documents of monthly LAHSA/County meeting** | Were these received? If so, attach. Review for verification of provision of services |

| ☐ | **Success Stories (Section IIIb)** | Were these received? If so, attach |
|---|---|---|
| ☐ | **Implementation Delays** | Were there delays? If so, document reason and revised timeline to implement. Was revised time met? |
| ☐ | **HMIS Data** | Received? If so attach. Does this support ongoing implementation of services? |
| ☐ | **Other** | If additional documents requested beyond those discussed above, detail below, including reason for document and attach. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

## ADDITIONAL COMMENTS/FINDINGS:

**CITY REQUEST FOR DATA FOR MAINSTREAM SERVICES AUDIT**

| City Data Request | County Response | Data Source |
|---|---|---|
| 1. All communications from LAHSA to the County regarding the City's list of interim housing, safe parking and Tiny Home Villages, Project Homekey and other sites to receive County mainstream services. | Able to provide. | LAHSA emails |
| 2. Any documentation in support of determining that a particular type of Interim Housing was ineligible for Mainstream Services This can include a statement from the County outlining their rationale. | Able to provide. | |
| 3. Monthly census and demographic data for each location under Item 1. | Able to provide. | LAHSA's reports |
| 4. All email introductions from LAHSA to site provider and participating County Departments regarding site having reached 80% occupancy to begin mainstream services. | Able to provide. | LAHSA's emails |
| 5. All communications from County Departments to Site provider and assigned Client and Navigation Services provider | Able to provide. | County Department (Dept.) emails |
| 6. Documentation to support that DPSS, DMH CBEST, DMH and DMH SAPC completed verification of current site enrollments under Section Ic. of the guidance. | Able to provide data elements per Guide, Section III: Reporting. | LAHSA's client roster and LAHSA's Mainstream Services Integration at City of LA Roadmap Interim Housing Sites Report |
| 7. Documentation to support scheduling of DPSS, DMH and DMH SAPD site visit. | Able to provide. | County Dept. emails |
| 8. Documentation to support service integration as delineated in Section II of the Guide for each agency. | Able to provide data elements per Guide, Section III: Reporting. | LAHSA's Mainstream Services Integration at City of LA Roadmap Interim Housing Sites Report |
| 9. Documentation to support provision of services at each location brought online including: | | |
| 9a. How many clients received services they were identified for and for how long | Able to provide data elements per Guide, Section III: Reporting. | LAHSA's Mainstream Services Integration at City of LA Roadmap Interim Housing Sites Report |

**Page 14 of 25**

**CITY REQUEST FOR DATA FOR MAINSTREAM SERVICES AUDIT (continued)**

| City Data Request | County Response | Data Source |
|---|---|---|
| 9b. How many clients did not receive services and the reason identified for not receiving services | Able to provide data elements per Guide, Section III: Reporting. | LAHSA's Mainstream Services Integration at City of LA Roadmap Interim Housing Sites Report |
| 9c. How County ensured that clients entering the facility after service integration and site visits were assess for service needs and services provided | May be able to partially provide; is not included in the Guide. | County departments to provide any documents that are responsive to this request. |
| 10. For Safe Parking, documentation on training provided and copies of flyers handed out at each site as outlined under Section IIe. | <mark>TBD. County is checking with LAHSA.</mark> | |
| 11. For Safe Parking, report on those participants at each location that were receiving services before given flyer and those that signed up after receiving flyer as outlined under Section IIe. | <mark>TBD. County is checking with LAHSA.</mark> | |
| 12. Copies of all reports generated under Section IIIa. | Able to provide data elements per Guide, Section III: Reporting. | LAHSA's Mainstream Services Integration at City of LA Roadmap Interim Housing Sites Report |
| 13. Copies of meeting agendas, meeting minutes from monthly meeting between LAHSA/County on implementation/integrations of mainstream services. | This information is not referenced in the Guide and is not specific to the audit. | |
| 14. Any success stories developed as a result of service integration under Section IIIb. | No success stories developed to date. | |
| 15. Documentation in support of any implementation delays, such as COVID outbreak, etc. and subsequent rescheduling of integration of mainstream services. | Able to provide. | Emails between LAHSA, Depts. and providers |
| 16. Data from HMIS that supports the provision of mainstream services at locations. | HMIS does not capture data on the provision of mainstream services but County is able to provide data elements per Guide, Section III: Reporting | LAHSA's Mainstream Services Integration at City of LA Roadmap Interim Housing Sites Report |

# EXHIBIT 2

**Guide for Los Angeles County Mainstream Service Integration at City of Los Angeles Roadmap Sites**

*04.05.2021*

I.   <u>**Pre-Mainstream Service Integration – Planning and Data Sharing**</u>
   a. The **City of Los Angeles City Administrator Office (CAO)** sends LAHSA updated lists weekly with the Interim Housing, Safe Parking, and Tiny Home Village (Pallet Shelter), Project Homekey and other sites to receive County mainstream services (as defined in the MOU between the City and the County dated October 9, 2020) on site. The **Los Angeles Homeless Services Authority** (LAHSA) provides the participating County departments with updated lists including site addresses, opening dates (if known), and other pertinent site information such as the provider (if known), the number of beds/units/spaces, and the population type.
   b. When the site reaches 80 % capacity enrollment, **LAHSA** sends an e-mail introduction to the site and participating County department staff. The introduction includes information about the timeline for service integration and expectations for the Site Provider as it relates to coordination with, and integration of, participating mainstream services on site.
      i. Within 5 business days of receipt of LAHSA e-mail introduction with a Site Provider, **Public Health Substance Abuse and Control** (DPH SAPC) sends a subsequent e-mail introduction to the Site Provider and the assigned Client and Navigation Services (CENS) provider.
   c. When the site reaches 80% capacity enrollment, **LAHSA** sends a list of current enrollments to primary representatives from the Los Angeles County Departments of Public Social Services (DPSS), Mental Health (DMH), Health Services Countywide Benefits Enrollment Services Team (DHS CBEST) unit, and DPH SAPC unit. The enrollment list should include each participant's Homeless Management Information System (HMIS) ID, name, date of birth, and social security number.
      i. DPSS Crosswalk and Site Visit
         1. Upon receipt of a site's enrollment list from LAHSA and within 5 business days, **DPSS** verifies which of the site participants currently receive or previously received General Relief (GR), CalFresh, and Medi-Cal, and Supplemental Security Income (SSI) or Social Security Disability Insurance (SSDI).
         2. **DPSS** sends the site enrollment list with confirmation of which participants currently receive SSI or SSDI to AB 210-trained LAHSA and DHS CBEST staff.
         3. Upon receipt of a site's enrollment list from LAHSA and in advance of a site's target date for mainstream service integration, **DPSS** coordinates a site visit with the Site Provider.
      ii. DHS CBEST Site Visit
         1. Upon receipt of the list of a site's participants currently receiving SSI or SSDI from DPSS, **DHS CBEST** coordinates a site visit with the Site

**Page 17 of 25**

Provider so **DHS CBEST** staff can complete the CBEST Referral with site participants that do not currently receive SSI or SSDI.

    iii. DMH Crosswalk and Referrals

        1. Upon receipt of a site's enrollment list from LAHSA and within 5 business days, **DMH** verifies in IBHIS which participants currently are or previously were linked to DMH services.

        2. Upon verifying current or former DMH service recipients at a site, **DMH** introduces its services to the Site Provider and coordinates with them to identify referrals. The **Site Provider** sends referrals to Ramona Casupong in a secure e-mail.

    iv. DPH SAPC Crosswalk and Referrals

        1. Upon receipt of a site's enrollment list from LAHSA and within 5 business days, **DPH SAPC** verifies which participants currently are or previously were linked to DPH SAPC services. **DPH SAPC** sends a list of a site's participants identified as current or prior DPH SAPC participants to the assigned CENS provider.

        2. Upon receipt of the list of current or previous DPH SAPC participants from DPH SAPC, the assigned **CENS provider** for a site introduces its services to the Site Provider and coordinates with them to identify referrals for services. The **Site Provider** identifies referrals based on observation, HMIS intake questions related to substance use, or other relevant participant information.

II. **Service integration**

    a. DPSS

        i. Upon completion of a site visit and verification of a site's participants current receipt of GR, CalFRESH, Medi-Cal, and/or SSI/SSDI, **DPSS** confirms the number of Eligibility Worker and co-location date(s) with the Site Provider. **DPSS** will give the Site Provider at least 2 business days of advance notice prior to Eligibility Worker(s) co-locating.

        *ii.* As needed and on a day to day basis, **DPSS** adjusts the length of time during which Emergency Workers remain co-located at the site to ensure all participants are provided a reasonable opportunity to connect with the mainstream benefits for which they're eligible.

    b. DHS CBEST

        i. Upon receipt of the CBEST Pre-Screen results, **DHS CBEST** coordinates with the Site Provider to schedule and carry out CBEST intakes on one or multiple days.

        ii. Upon completing enrollments at a site, **DHS CBEST** conducts additional on site appointments with enrolled participants on an ad hoc basis in coordination with the Site Provider.

    c. DMH

        i. Upon receipt of a referral list from a Site Provider, **DMH** coordinates a series of dates with the provider on which Homeless Outreach Mobile Engagement (HOME) staff co-locate and make attempts to engage the referred participants.

**Page 18 of 25**

      ii. Where appropriate and possible, **DMH** enrolls referred participants into HOME services.

  d. DPH SAPC

      i. Upon receipt of a referral list from a Site Provider, **DPH SAPC** coordinates a series of dates with the provider on which HOME staff co-locate and make attempts to engage the referred participants.

      ii. Where appropriate and possible, **DPH SAPC** refers engaged participants to substance use services.

  e. <u>**Service integration at Safe Parking**</u>

      i. Upon the opening of a Safe Parking Roadmap Site, LAHSA provides the site operators with appropriate training and flyers for each of the following programs

          1. DPSS: Connection to mainstream services, including but not limited to General Relief, MediCal, CalFresh, and GROW. Flyer will include call center information.

          2. DHS: CBEST program overview and hotline for self-referring to the program.

          3. DMH: Access Line Flier

          4. DPH SAPC: Substance Abuse Service (SASH) Hotline

      ii. Site operators will engage clients in a conversation about these resources and provide flyers to participants at these sites.

      **iii. During a specific week, Site Providers will track which participants receive the fliers and send a list of HMIS IDs for those participants to LAHSA.**

      iv. 30 days after providing fliers to the participants, LAHSA will share the HMIS ID, name, date of birth and social security number for the participants who received the fliers with County Departments and have them do a crosswalk data look up for those participants, to see which of them were receiving services before they were given the fliers, and which signed up for services after being given the fliers. (Refer to Items I.c.i-iv above for specific steps and timeframes)

      v. DPSS, DHS, DMH, and DPH will return data to LAHSA and the County CEOs office within 30 days of receiving HMIS IDs

**III.**   <u>**Reporting**</u>

  a. Between 2 weeks and 4 weeks after services have been integrated at a site, **DPSS**, **DMH**, **DPH SAPC**, and **DHS CBEST** report a set of standard deidentified data elements reflecting service outputs at the site to LAHSA. Upon receipt of a site's service output data from DPSS, DMH, DPH SAPC, and DHS CBEST, **LAHSA** compiles these data elements into a standard reporting template and reports this data to the County Chief Executive Office (CEO), County Chief Information Office (CIO), and CAO.

      i. DPH-SAPC will report on the following data elements:

          1. Number of Individuals assessed/engaged

          2. Number of Individuals receiving GR prior to service integration

3. Percentage of Individuals receiving GR prior to service integration
4. Number of Individuals receiving CF prior to service integration
5. Percentage of Individuals receiving CF prior to service integration
6. Number of Individuals receiving MC prior to service integration
7. Percentage of Individuals receiving MC prior to service integration
8. Number of applicants during service integration
9. Number of EBT issuances during service integration
10. Number of Medi-Cal BIC issuances during service integration
11. Number of verification of benefits provided during service integration
12. Number of DMV fee waivers issued during service integration
13. Number of general inquiries provided during service integration

ii. DHS CBEST will report on the following data elements:
1. Number of individuals receiving SSI/SSDI prior to service integration
2. Number of individuals encountered and/or engaged
3. Number of CBEST Intakes Completed
4. Number of Cases Recommended to File

iii. DMH will report on the following data elements: (DMH has indicated that these may change in March)
1. Number of individuals enrolled in mental health services prior to service integration
2. Number of individuals assessed for mental health needs
3. Number of individuals referred to clinic-based outpatient services
4. Number of individuals referred to Homeless FSP
5. Number of individuals referred to FSP
6. Number of individuals referred to HOME
7. Number of individuals referred to WPC
8. Number of individuals referred to interim housing to (for PRK Only)
9. Number of individuals referred to PSH
10. Number of individuals referred to other temporary housing (sober living, motel, other congregate living)
11. Number of individuals referred to other structured housing (skilled nursing facility, board and care , etc. )
12. Number individuals enrolled in mental health program?
13. Number of individuals referred to emergent mental health services (PMRT, MET, SMART, urgent care)

iv. DPSS will report on the following data elements:
1. Number of individuals enrolled in substance use services prior to service integration
2. Number of individuals encountered and/or engaged
3. Number of individuals referred to SUD education (SUD overview and treatment and early intervention workshops)
4. Number of individuals referred to Syringe Exchange Program (SEP)
5. Number of individuals referred to Medications for Addiction Treatment (MAT)

**Page 20 of 25**

6. Number of individuals referred to Outpatient Treatment
7. Number of individuals referred to Residential Treatment
8. Number of individuals referred to ancillary services (physical health, mental health, perinatal, Veteran, legal)
9. Number of individuals referred to Recovery Bridge Housing (RBH)
10. Number of successful linkages to education, SUD services, ancillary services, and/or RBH

b. Upon receipt of service output data for a site from DPSS, DMH, DPH SAPC, and DHS CBEST, **LAHSA** will coordinate with the Site Provider to develop a success story from a participant that was engaged by and/or linked to one or multiple mainstream services.

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of . My business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067.

On March 21, 2022, I served true copies of the following document(s) described as:

**DEFENDANTS COUNTY OF LOS ANGELES AND CITY OF LOS ANGELES' STATUS REPORT REGARDING AUDIT PROGRESS**

on the interested parties in this action as follows:

## SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 21, 2022, at Los Angeles, California.

_____
Brian Binns

10556976.7

22

JOINT STATUS REPORT REGARDING AUDIT PROGRESS

**SERVICE LIST**

*LA Alliance for Human Rights, et al. v. City of Los Angeles, et al.*
**Case No. 2:20-cv-02291**

| | |
|---|---|
| Matthew Donald Umhofer<br>Elizabeth A. Mitchell<br>SPERTUS, LANDES & UMHOFER, LLP<br>617 West 7th Street, Suite 200<br>Los Angeles, CA 90017 | Attorneys for Plaintiffs<br>*LA ALLIANCE FOR HUMAN RIGHTS, JOSEPH BURK, HARRY TASHDJIAN, KARYN PINSKY, CHARLES MALOW, CHARLES VAN SCOY, GEORGE FREM, GARY WHITTER, and LEANDRO SUAREZ*<br><br>Telephone:  213-205-6520<br>Facsimile:   213-205-6521<br>Email: matthew@spertuslaw.com;<br>emitchell@spertuslaw.com;<br>jon@spertuslaw.com;<br>calendaring@spertuslaw.com |
| Rodrigo A. Castro-Silva, County Counsel<br>Lauren M. Black, Assistant County Counsel<br>Ana Wai-Kwan Lai, Senior Deputy County Counsel<br>OFFICE OF COUNTY COUNSEL<br>500 West Temple Street, Suite 468<br>Los Angeles, CA 90012 | Attorneys for Defendant<br>*COUNTY OF LOS ANGELES*<br><br>Telephone:  213-974-1830<br>Facsimile:   213-626-7446<br>Email:<br>rcastro-silva@counsel.lacounty.gov;<br>lblack@counsel.lacounty.gov;<br>alai@counsel.lacounty.gov |
| Byron J. McLain<br>FOLEY & LARDNER, LLP<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071 | Attorneys for Defendant<br>*COUNTY OF LOS ANGELES*<br><br>Telephone:  310-972-4500<br>Facsimile:   213-486-0065<br>Email: bmclain@foley.com |

11556976.7

Scott D. Marcus, Senior Assistant City Attorney
Arlene N. Hoang, Deputy City Attorney
Jessica Mariani, Deputy City Attorney
Ryan Salsig, Deputy City Attorney
LOS ANGELES CITY ATTORNEY'S OFFICE
200 North Main Street, City Hall East, 6th Floor
Los Angeles, CA 90012

Attorneys for Defendant
*CITY OF LOS ANGELES*

Telephone:  213-978-6952
Facsimile:   213-978-7011
Email: scott.marcus@lacity.org;
arlene.hoang@lacity.org;
jessica.mariani@lacity.org;
ryan.salsig@lacity.org

Brooke Alyson Weitzman
William R. Wise
ELDER LAW AND DISABILITY RIGHTS CENTER
1535 East 17th Street, Suite 110
Santa Ana, CA 92705

Attorneys for Intervenor
*ORANGE COUNTY CATHOLIC WORKER*

Telephone:  714-617-5353
Email: bweitzman@eldrcenter.org;
bwise@eldrcenter.org

Paul L. Hoffman
Catherine E. Sweetser
SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP
11543 West Olympic Boulevard
Los Angeles, CA 90064

Attorneys for Intervenors
*ORANGE COUNTY CATHOLIC WORKER, LOS ANGELES COMMUNITY ACTION NETWORK, LOS ANGELES CATHOLIC WORKER, and CANGRESS*

Telephone:  310-396-0731
Facsimile:   310-399-7040
Email: hoffpaul@aol.com;
csweetser@sshhlaw.com

12556976.7

24

JOINT STATUS REPORT REGARDING AUDIT PROGRESS

Carol A. Sobel
Weston C. Rowland
LAW OFFICE OF CAROL SOBEL
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401

Attorneys for Intervenors
*LOS ANGELES COMMUNITY ACTION NETWORK, LOS ANGELES CATHOLIC WORKER, ORANGE COUNTY CATHOLIC WORKER, and CANGRESS*

Telephone:   310-393-3055
Facsimile:    310-451-3858
Email: carolsobellaw@gmail.com;
rowland.weston@gmail.com

Shayla R. Myers
LEGAL AID FOUNDATION OF LOS ANGELES
7000 South Broadway
Los Angeles, CA 90003

Attorneys for Intervenors
*LOS ANGELES COMMUNITY ACTION NETWORK, LOS ANGELES CATHOLIC WORKER, and CANGRESS*

Telephone:   213-640-3983
Facsimile:    213-640-3988
Email: smyers@lafla.org

13556976.7

25