LA ALLIANCE v. CITY OF LA, ET AL
Case No. 20-CV-02291 DOC (KES) SETTLEMENT PROPOSAL TERM SHEET

The purpose of this Agreement between the LA Alliance and the City of Los Angeles is to substantially increase the number of housing and shelter opportunities in the City of Los Angeles, and to address the needs of everyone who shares public spaces and right of ways in Los Angeles, including both housed and unhoused Angelenos.

## SETTLEMENT TERMS

1.  Time Period
    5 years (renewable upon joint request)

2.  Housing and Shelter for City Shelter Appropriate
    City will create sufficient shelter and/or housing to accommodate 60% of unsheltered persons experiencing homelessness within the City ("PEH") (based on LAHSA's 2022 Point In Time Count) who can reasonably be assisted by the City, meaning they do not have a serious mental illness, and are not chronically homeless and have a substance use disorder or chronic physical illness or disability requiring the need for professional medical care and support (typically individuals and households with low- or medium-acuity needs) ("City Shelter Appropriate").[1]  PEH or households who have a serious mental illness, are chronically homeless and have a substance use disorder or chronic physical illness or disability requiring the need for professional medical care and support, or whom the City cannot reasonably assist (typically those with medium- or high-acuity needs) will be referred to the County, including, but not limited to, the County Department of Mental Health (DMH), County Department of Health Services (DHS), County Department of Public Social Services (DPSS), or County Department of Public Health (DPH), for intervention, services, and housing, as appropriate.

    City may choose, at its sole discretion, any housing or shelter solution, including but not limited to tiny homes; shared housing; purchased or master leased apartments, hotels/motels, or other buildings; congregate shelters; permanent supportive housing; rental assistance/rapid rehousing; family reunification; sprung structures or tents; safe parking; safe sleeping/camping; interim housing, including A Bridge Home beds; etc. The interventions may be government- or privately-funded as long as each offer is adequate for the individual.

---

[1] The parties recognize that the 2022 Point in Time (PIT) Count is still in progress, and agree to calculate the 60% number as information from the 2022 PIT Count is released and confirmed by the Los Angeles Homeless Services Authority (LAHSA).  Acuity will be determined according to accepted industry standards, including through the use of an assessment tool, such as the Vulnerability Index - Service Prioritization Decision Assistance Tool (VI-SPDAT, or other similar assessment tool such as the CES Survey Packet or Next Step Tool), by qualified outreach or clinical staff.

LA ALLIANCE v. CITY OF LA, ET AL
Case No. 20-CV-02291 DOC (KES) SETTLEMENT PROPOSAL TERM SHEET

City agrees to pursue an approach of equitably distributing housing and shelter facilities for PEH within the City.

City may provide incentives and/or benefits for Council Districts that create more housing or shelter opportunities than needed to accommodate 60% of City Shelter Appropriate unsheltered PEH in their districts.

3.   Street Engagement
City will offer shelter or housing to persons experiencing homelessness in alignment with its Street Engagement Strategy and consistent with public regulation ordinances and constitutional precedents.  No enforcement action shall be taken against any individual unless that individual has first been offered an opportunity for shelter or to relocate consistent with applicable statutes.  City reserves the right, in its sole discretion, to revise or amend its Street Engagement Strategy, LAMC 41.18, or any similar ordinance, regulation, or protocol consistent with applicable constitutional precedents.

Council District-wide Engagement
Once there are sufficient opportunities to accommodate 60% of City Shelter Appropriate unsheltered PEH in a Council District, the City may provide notice that it intends to implement public regulation ordinances within that entire District as to individuals who decline an offer of shelter or decline to move to an alternative location. If a party files a written objection with the Court within five days of the notice, the Court shall schedule a status conference to take place within two days, or as soon as is practicable, to resolve the objection.  If no objection is filed, or if the Court resolves the objection in favor of the City, City may apply public regulation ordinances within that District consistent with this Agreement.  Even after the City creates adequate and appropriate housing and shelter opportunities for 60% of City Shelter Appropriate PEH in a Council District, no enforcement action shall be taken against any individual suspected of violating a public regulation ordinance unless that individual has first been offered adequate and appropriate shelter or housing or to relocate consistent with applicable statutes, except for time/manner/place regulations (such as LAMC 41.18 or similar ordinances) which may be enforced at any time.

City-wide Engagement
Once the City has sufficient opportunities to accommodate 60% of City Shelter Appropriate unsheltered PEH in the City, the City may provide notice that it intends to implement public regulation ordinances throughout the City as to individuals who decline an offer of shelter or decline to move to an alternative location.  If any party files a written objection with the Court within five days of the notice, the Court shall schedule

LA ALLIANCE v. CITY OF LA, ET AL
Case No. 20-CV-02291 DOC (KES) SETTLEMENT PROPOSAL TERM SHEET

a status conference to take place within two days, or as soon as is practicable, to resolve the objection. If no objection is filed, or if the Court resolves the objection in favor of City, City may implement public regulation ordinances within City, consistent with this Agreement. Even after the City creates adequate and appropriate housing and shelter opportunities for 60% of the number of City Shelter Appropriate PEH within the City, no enforcement action shall be taken against any individual suspected of violating a public regulation ordinance unless that individual has first been offered adequate and appropriate shelter or housing or to relocate consistent with applicable statutes, except for time/manner/place regulations (such as LAMC 41.18 or similar ordinances) which may be enforced at any time.

4. Milestones

The City will develop deadlines and targets for the City's creation of shelter and/or housing, and encampment reduction, and will provide those deadlines and targets to Plaintiffs. The parties will work to resolve any concerns about those deadlines and targets, and will consult with the Court for resolution, if necessary. The City will make its best efforts to comply with established deadlines and targets.

5. Jurisdiction

The Court will retain jurisdiction to monitor the parties' compliance with and enforce the terms of this Agreement.

6. Dispute Resolution Process

The parties agree to design a dispute resolution process that will allow a person experiencing homelessness to submit a complaint to the Court or special master concerning an offer of shelter or notice provided under this Agreement.

7. Status Updates

The City will provide regular status updates to the Court (at least quarterly) regarding its progress with this Agreement. In addition, the parties agree to engage a mutually agreed-upon third party to provide data collection and analysis and regular public reports on the City's compliance with the terms of this Agreement.

8. Funding

Funding of housing and shelter opportunities created by City shall be at City's sole discretion. City agrees to:
- Petition county, state, and federal government for additional funding,
- Consider expediting public/private partnerships that utilize private capital and which require no up-front costs to City, and

- Consider other possible funding mechanisms to pay for future housing, facilities, and services for PEH.

9. County Obligations

The parties agree to cooperate in ensuring County meets its obligations to provide services to persons experiencing homelessness within the City, and to fostering County-developed or County-funded housing and treatment services for PEH, including medium- and high-acuity need PEH suffering from illness, physical, mental or behavioral health issues, substance use disorder, and/or other factors used to determine acuity. These County responsibilities include, but are not limited to:

- Funding and providing wrap-around and supportive services for PEH in housing or shelter established by City. Supportive services funded and provided by the County will include, but not be limited to, DMH, DHS, DPH, and DPSS, for intervention, services, and housing, as appropriate;
- Providing housing and treatment services for all unsheltered PEH who are not City Shelter Appropriate;
- Providing and funding the Intensive Case Management Services (ICMS) and integrated health services to ensure an individual's connection to appropriate medical, mental health, substance use, and other supportive services for permanent supportive units financed by City;
- Ensuring permanent supportive housing (PSH) placements into units within City limits will prioritize PEH that are homeless in the City first (consistent with applicable laws), even in units funded and operated by the County if they are within City limits;
- Increasing to 34 (from 22; numbers based on what is currently required and could be subject to change) the number of Multi-Disciplinary Teams (MDTs) dedicated to conducting outreach exclusively in the City, allocating at least 1 team per Council District, coordinated by the City's outreach staff in the Office of the City Administrative Officer (CAO) and/or the Unified Homelessness Response Center (UHRC);
- Increasing to 10 (from 5.5; numbers based on what is currently required and could be subject to change) the number of Homeless Outreach and Mobile Engagement (HOME)) teams dedicated to conducting outreach exclusively in the City, allocating at least 1 team per two Council Districts, coordinated by the CAO and/or UHRC;
- Ensuring outreach teams (including the increased number of teams referenced above) have access to sufficient County-funded licensed and unlicensed high service need beds as needed to provide housing and treatment services for PEH in the City, and that these beds will either be exclusively for use by, or prioritize, PEH in the City. In order to effectuate this

access, the County will, in collaboration with LAHSA, County departments, and other relevant partners, establish a centralized, County-wide bed management system that is inclusive of all types of shelter, housing, and care beds, that will identify specific, available, and appropriate high service need beds for PEH in the City;
- Requiring a minimum of 50 mental health beds per 100,000 people in the County, or more as needed to ensure access to inpatient treatment for PEH in the City and to prevent mentally ill individuals from falling into homelessness due to lack of available inpatient treatment;
- Increasing the number of high acuity public health (SUD/detox/drug rehabilitation) beds to specified level, and access for PEH regardless of insurance coverage;
- Providing City-directed outreach teams with direct access to DMH, DHS, DPSS, and DPH during outreach and other Street Engagement Strategy activities;
- Make available County-owned land to other County jurisdictions, including City, for homeless housing on a $1 per year lease and allowing by right development; and
- Broader County commitment to prevention of inflow of new PEH in the City of Los Angeles, including commitment to registering individuals for SSI and Social Security, and other local (e.g., General Relief), state, and federal entitlement programs.

10. <u>Affordable Housing</u>

The parties agree to cooperate to identify and reduce barriers to building more affordable housing.

11. <u>Settlement and Dismissal</u>

The parties agree to cooperate in drafting agreements, stipulations, proposed orders, and other necessary documents to fully and finally resolve this litigation between the LA Alliance and the City.