1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3

4  LA ALLIANCE FOR HUMAN RIGHTS, ) Case No. LA CV 20-02291-DOC
   et al.,                      )                    (KESx)
5                               )
              Plaintiff,        ) Los Angeles, California
6                               )
   vs.                          ) Friday, May 20, 2022
7                               )
   CITY OF LOS ANGELES, et al., ) (9:41 a.m. to 10:01 a.m.)
8                               )
              Defendants.       )
9  _____)

10

11        TRANSCRIPT OF PRESENTATION OF FINAL SETTLEMENT/
                    SCHEDULING CONFERENCE
12          BEFORE THE HONORABLE DAVID O. CARTER
                 UNITED STATES DISTRICT JUDGE
13

14

   Appearances:                 See next page.
15
   Court Reporter:              Recorded; CourtSmart
16
   Courtroom Deputy:            Karlen Dubon
17
   Transcribed by:              Jordan Keilty
18                              Echo Reporting, Inc.
                                9711 Cactus Street, Suite B
19                              Lakeside, California 92040
                                (858) 453-7590
20

21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

2

```
 1  APPEARANCES:

 2  For the Plaintiffs:          ELIZABETH A. MITCHELL, ESQ.
                                 Spertus, Landes & Umhofer, LLP
 3                               617 West 7th Street, Suite 200
                                 Los Angeles, California 90017
 4                               (213) 205-6520

 5                               MATTHEW D. UMHOFER, ESQ.
                                 Spertus, Landes & Umhofer, LLP
 6                               1990 South Bundy Drive
                                 Suite 705
 7                               Los Angeles, California 90025
                                 (310) 826-4722
 8
    For the City of Los Angeles: SCOTT D. MARCUS, ESQ.
 9                               Los Angeles City Attorney's
                                    Office
10                               200 North Main Street
                                 7th Floor, Room 675
11                               Los Angeles, California 90012
                                 (213) 978-8216
12
    For the County of Los        LOUIS "SKIP" MILLER, ESQ.
13    Angeles:                   Miller Barondess, LLP
                                 1999 Avenue of the Stars
14                               Suite 1000
                                 Los Angeles, California 90067
15                               (310) 552-8400

16                               ANA WAI-KWAN LAI, ESQ.
                                 Los Angeles County Counsel
17                                  Office
                                 350 South Figueroa Street
18                               Suite 601
                                 Los Angeles, California 90071
19                               (213) 974-0061

20  For the Intervenors Los      SHAYLA R. MYERS, ESQ.
      Angeles Community Action   Legal Aid Foundation of
21    Network & Los Angeles         Los Angeles
      Catholic Worker:           7000 South Broadway
22                               Los Angeles, California 90003
                                 (213) 640-3983
23

24

25
```

3

APPEARANCES:  (Cont'd.)

For the Intervenors Orange        CAROL A. SOBEL, ESQ.
  County Catholic Worker,         1158 26th Street, Suite 552
  Los Angeles Catholic            Santa Monica, California 90403
  Worker & the County of          (310) 393-3055
  Los Angeles:

4

1    Los Angeles, California; Friday, May 20, 2022 9:41 a.m.

2                           --o0o--

3                       (Call to Order)

4            THE COURT:  Well, first of all, good morning.

5  We're on the record in LA Alliance versus the City and

6  County.

7            Counsel, would you make your appearances, please?

8            MR. MARCUS:  Scott Marcus for the City of Los

9  Angeles.

10            THE COURT:  Thank you.

11            MR. MILLER:  Good morning, your Honor.  Skip

12  Miller and Ana Lai for the County of Los Angeles.

13            THE COURT:  Thank you.

14            MS. MITCHELL:  Good morning, your Honor.

15  Elizabeth Mitchell and Matt Umhofer on behalf of Plaintiffs.

16            THE COURT:  Okay, thank you.

17            MS. MYERS:  Good morning, your Honor.  Shayla

18  Myers on behalf of Intervenors Los Angeles Community Action

19  Network and Los Angeles Catholic Worker.

20            THE COURT:  All right.

21            MS. SOBEL:  And Carol Sobel on behalf of

22  Intervenors Orange County Catholic Worker and the Los

23  Angeles Catholic Worker and L.A. County.

24            THE COURT:  All right.  Thank you very much.

25            Last evening the Court received, about 10:00 p.m.,

5

1  a notice of settlement that was filed on the docket; did

2  Counsel have any comments?  Otherwise I propose to set the

3  following dates, and that is a filing of objections or

4  concerns on the date of May 31st, responses on June 3rd,

5  hearing scheduled for June 9th.

6          The mediators and I have not had a thoughtful

7  discussion about this, because it was received last evening,

8  with no criticism of the Court, but I've read it twice now,

9  but we need to have a more meaningful discussion amongst us.

10          All right.  Those will be the dates set then; any

11  comments by the Plaintiffs at this time?

12          MS. MITCHELL:  No, your Honor.  I'm just checking

13  the dates real quick on my calendar, but it should be fine.

14          MR. MILLER:  Your Honor, I haven't had a chance to

15  read it -- read it through.  I just looked at it briefly.

16  It looked, procedurally, improper.  This looks like a

17  consent decree with court supervision over a period of five

18  years.  It obviously affects the public interest and it's

19  filed as a Rule 41 dismissal.  I think they have to make a

20  motion and it has to come before your Honor, like any other

21  consent decree.

22          THE COURT:  Uh-huh.  And it may on the date that

23  I've sent on June 9th, Counsel.  Thank you.

24          Those will be the dates then.  Oppositions and

25  concerns May 31st, responses June 3rd, hearing on June 9th.

6

1          MR. MILLER:  Okay.

2          THE COURT:  All right.  Now, first of all, I want

3 to recognize (indiscernible), thank you for being here.

4 Thank you for your courtesy.

5          If there's nothing further concern -- discussion

6 about the settlement, I'd like to turn to the overpasses and

7 underpasses for just a moment.  And for our memory, the

8 Court initially brought forth an injunctive relief

9 concerning the underpasses and overpasses.

10          The city and county then entered into an agreement

11 with the Plaintiffs.  It was somewhat convoluted because it

12 started with 6000 but there's 5700, I think, that were to be

13 created in another 10 months, approximately, and then

14 another 800 or so, approximately.

15          I was concerned at my last hearing that there was

16 supposed to be a bonus paid by the county to the city.  I

17 believe it was $10,000,000, and my concern at that time was,

18 if that bonus wasn't paid, whether these were, in fact,

19 created.  And I did not have a monitor at that time to

20 independently checked, but I received information in the

21 representation of Mr. Marcus that they had been created.

22          I received a concern by the county, and I'd like

23 to know where that stands.  Have these, in fact, been

24 created?  Have they been verified?  And, has that bonus been

25 paid?  Because if not, then I'm wondering why.

7

1          So we'll begin with the Plaintiffs or Mr. Marcus
2 on behalf of the city.
3          MR. MARCUS:  Thank you, your Honor.
4          As was submitted to the Court some time ago, in
5 response to the Court's order, the city and the county
6 jointly did an audit of the 6700 beds that were required
7 under the MOU.
8          THE COURT:  Yeah, I read that.
9          MR. MARCUS:  And that was determined to -- all of
10 the 6700 beds, actually more, have been created.
11          As to whether or not the 5300 new beds were
12 created in time for the bonus, --
13          THE COURT:  I see.
14          MR. MARCUS:  -- that issue is still in dispute.
15          THE COURT:  Let me repeat that back so I
16 understand.  It's not in dispute that the 5300, plus the
17 6700, were actually created.  It's the timeliness of the
18 creation of the first 5700 that's causing the dispute
19 between the two of you?
20          MR. MARCUS:  The first 5300.
21          THE COURT:  Okay.
22          MR. MARCUS:  Yes, that's correct.
23          THE COURT:  So therefore the Court should not be
24 concerned with whether those were actually created.
25          MR. MARCUS:  Correct.  The issue is whether they

8

1  were open and occupiable by the date --

2          THE COURT:  Okay.

3          MR. MARCUS:  -- by which the bonus was due.

4          THE COURT:  All right.  Then that's a private

5  matter between the two of you.

6          MR. MILLER:  (Indiscernible).

7          THE COURT:  You agree also?

8          MR. MILLER:  Yes, we agree.

9          THE COURT:  Then that's a private matter between

10  the two of you.

11          MR. MILLER:  Yes.

12          THE COURT:   That dispute over the $10,000,000.

13  As long as there's a creation of those beds.  But before,

14  the Intervenors had some questions about that, the

15  Plaintiffs had some questions about that, and the Court

16  raised this concern because when I didn't see the

17  transference, I didn't know if, in fact, that had been

18  created.

19          So, on behalf of the Plaintiffs, do you have any

20  further questions?

21          MS. MITCHELL:  The questions that the Plaintiffs

22  raise were -- were specifically related to the freeway

23  program.

24          The intention -- it was Plaintiff's understanding,

25  the intention of this agreement was so that those beds were

9

specifically to be available for folks in encampments and
around freeway encampments, and we did not see that they
were largely offered those.  It looked like those were
offered to folks that were outside of that 500 -- 500-feet
radius.

So that was our large question, but I defer to the
Court and the parties, because we actually were not largely
involved in that agreement.

THE COURT:  Let me turn to the Intervenors.  You
had some initial questions about whether they had been
created.

MS. MYERS:  Likewise, your Honor, obviously we do
not share the Plaintiff's concerns about the freeways, but
we do share the county's concerns about the creation of the
initial beds.

Based on our understanding of the way in which the
city calculated the beds, relative to the 5300, we shared
many of the county's concerns that they're (indiscernible)
that we found through our independent research.  We have not
seen anything from the city that has addressed those issues.
So we share the concerns, although obviously we are not a
party to that agreement.  That had to do with the city's
representation.

Whether it had met the agreement by your Honor's
date, we don't believe that they had, because we believe

10

1   that the numbers that they represented were inaccurate.  But

2   those are the issues that the county raised, and I know the

3   county is addressing that.

4          THE COURT:  Okay.  Just a moment.

5      (Court conferring with clerk.)

6          THE COURT:  And before Judge Birotte leaves, he

7   has another hearing, I want to think the mediators,

8   regardless of whether the Court eventually approves or

9   disapproves the settlement, I know how hard they've worked,

10  along with the parties in numerous sessions.  So Judge

11  Birotte, just my personal appreciation for your hard work

12  and to Michelle Martinez for the many hours.

13     (Court conferring with clerk.)

14         THE COURT:  A couple of questions I'm going to be

15  asking the mediators later in the settlement discussion, so

16  I'm transparent with you, is whether these numbers based on

17  the new count have any double counting with the 6000 beds

18  created and the new beds proposed in the settlement

19  agreement.  Those funds were separately set forth to the

20  6000 -- let's say 6800 beds -- money was exchanged.  Those

21  should be separate and apart from whatever the settlement

22  agreement is.

23         And so therefore, we've had an issue in the past

24  that was raised, over a year and half ago, with LACA

25  (phonetic), in terms of my concern with double counting.

11

1        And so I put all of you on notice that when you

2   respond to the Court -- have a seat, Mr. Marcus, we'll give

3   you plenty of time -- when you respond to the Court, make

4   certain that there's no double counting between those 6000.

5   Those are separate and apart.  (Indiscernible) funds and if

6   there are going to be units moved in HHH over to this county

7   or not.

8        So those are just some -- the two questions I'd be

9   raising and I want to alert you to that, so I know what the

10  actual numbers are.  Beyond that, I have no further comment.

11        Now, Mr. Marcus, I'm sorry.

12        MR. MARCUS:  Your Honor, I was -- I can address

13  the first issue here --

14        THE COURT:  You can, or you can wait until the

15  response.  It's up to you.  If you'd like to now, that's

16  fine.

17        MR. MARCUS:  Let me do it now.

18        THE COURT:  Sure.

19        MR. MARCUS:  And we can do it in the written

20  response, but the Court is correct that the 6700 beds,

21  created under the MOU, are separate and apart from the new

22  beds to be created under the settlement agreement between

23  the city and the Alliance.

24        THE COURT:  Thank you.  And I've only read over

25  this twice, once last evening and once this morning, so I

*Echo Reporting, Inc.*

12

1  appreciate that.

2      I want to put you on notice that there are two

3  other hearings.  First of all, I want to say to you that

4  these cases are partially the result of the federal court's

5  concerns and our scattering of these cases.  I've explained

6  to you a number of times how difficult it must be for

7  litigants to have four or five different federal judges

8  involved, where's your baseline of comparison, whether you

9  approve of it or not.

10      At least in Orange County when we went to the

11  different colleagues, there was one colleague selected, I

12  was that colleague, but it could have gone to another

13  colleague at the time.  But we had one baseline of

14  comparison.  When we came to Los Angeles, I think we had six

15  federal courts involved.  So compared to Judge Fischer,

16  Judge Klausner, Judge Carter, Judge Weltzan (phonetic),

17  Judge Otero, our presiding judge was involved, Philip

18  Gutierrez, so you can imagine six different courts involved

19  in how do you get a baseline of comparison.

20      These cases seemingly now are coming into one

21  court, most of the cases anyway.  The Brooke Adams

22  (phonetic) case is still with Judge Fischer, but Judge

23  Klausner has transferred over, Judge Wilson has transferred

24  over to the court.

25      I want to inform you that this afternoon, it may

13

1  be of particular interest to all of you, you're not

2  required, but I want to put you on notice that there are

3  other lawsuits coming into this court.  One involves

4  recreational vehicles issued (indiscernible), which may be

5  of concern or interest to each of you.  That's brought by

6  another party, another litigant.  In fact, there's four

7  cases.  I brought that into court the same day, as a

8  convenience, if you want to attend.  It may have no input,

9  but it involves recreational vehicles down in

10  (indiscernible), your ordinances, visibility, what your safe

11  parking looks like.  So you're invited to attend, if you'd

12  like to.

13          The second involves the Santa Barbara cases and I

14  wanted to hold court up in Santa Barbara, but because we

15  were here today, for efficiency, they're coming here.  That

16  is a separate and completely different lawsuit involving Los

17  Angeles, so it has no effect on you, but it does involve

18  arguments concerning their ordinance, which may or may not

19  be similar to some of your ordinances, and you might be

20  interested in hearing those arguments or not.  So you're

21  invited, not required.

22          Beyond that, I have no further comment until the

23  dates when I hear your prospective positions.  So let me

24  turn towards the Plaintiffs, please.

25          MS. MITCHELL:  Nothing, your Honor.  The other

14

1 issue that we had raised that I had forgotten to mention

2 just a few minutes ago was the issue about the $10,000,000.

3          When I reviewed the reports, and obviously the

4 Court has its own obligation to review the reports, the idea

5 that the city isn't getting the $10,000,000 bonus, when it

6 was in particular the -- they were relying on the county's

7 representations that these beds were available in the

8 county's own project, really seems absurd to the Plaintiffs.

9 And we're looking at it, again, from an outside perspective

10 because we were not part of this.  So we just wanted to re-

11 comment on that issue.

12          The dates work fine for us.  We have no objection

13 to those dates that the Court has put forward and we will be

14 here for the hearings on the other cases, just for the --

15 our own edification.

16          THE COURT:  Okay.

17          MS. MITCHELL:  So thank you, your Honor.

18          THE COURT:  And those are the dates,

19 unfortunately, or fortunately, that I'm available with my

20 calendar.

21          Now, I'll hear from the city next.

22          MR. MILLER:  First of all --

23          THE COURT:  Just a moment, Counsel, the city next,

24 please.

25          MR. MILLER:  Sorry.

*Echo Reporting, Inc.*

15

1          MR. MARCUS:  Thank you, your Honor.  Nothing
2 further from the city.
3          THE COURT:  All right.  Now the county, please.
4          MR. MILLER:  Thank you, your Honor.
5          First of all, the bonus is not $10,000,000, it's
6 $8,000,000.
7          THE COURT:  Thank you, $8,000,000.
8          MR. MILLER:  $8,000,000.  And there was an
9 extensive --
10          THE COURT:  There's a 20-percent -- I'm just
11 joking.
12          MR. MILLER:  There was an extensive report, which
13 we've given the city, why they didn't meet the timing
14 requirements, so -- and that's an issue between the county
15 and the city and we're dealing with it.
16          THE COURT:  Uh-huh.  Yeah.
17          MR. MILLER:  So I wanted to say that.
18          The only thing that I have, your Honor, is we're
19 not part of the settlement.  We're still open to settling,
20 but we're not part of the settlement between the Plaintiffs
21 and the city.
22          We need to get the case going.  We'd like your
23 Honor to set, you know, to start the Rule 26 process.
24          THE COURT:  Uh-huh.
25          MR. MILLER:  We filed something to that effect.

16

1          THE COURT:  I was going to have that for you in

2   just a moment, if you want to comment.

3          All right.  The Intervenors?

4          MS. SOBEL:  I wanted to address one thing, your

5   Honor.

6          THE COURT:  Use the microphone and be seated so I

7   can hear you.

8          MS. SOBEL:  Sorry.  I just wanted to address one

9   thing, which is the towing cases.

10          I've read the cases that Mr. Radman (phonetic)

11   brought, but I want the Court to know that there have been

12   settlements in three -- there have been settlements in two

13   towing cases and also -- which resulted in orders issued to

14   reduce towing in many situations, particularly for -- I'm

15   watching Mr. Marcus -- in situations where there is not a

16   significant community care issue about the vehicle.

17          The third case, the -- the city issued an

18   expansive order about towing for five tickets in a case

19   brought by Donald Cook after Judge Bernal denied the city's

20   motion to dismiss.

21          So while I understand what the issues are in Mr.

22   Radman's case and that they are somewhat different, in terms

23   of more parking signs and no parking areas, I think that

24   this -- it would be important for the Court to have before

25   the orders that have issued by the city in the other cases.

*Echo Reporting, Inc.*

17

1        THE COURT:  I appreciate you bringing that to my

2   attention, because we've tried to bring all of those cases

3   in today.  Mr. (indiscernible) has been filing profusely.

4   So we've brought all of those cases in front of us at 1:30

5   to sort them out and if there has been settlements, I'd like

6   to know about that.

7        MS. SOBEL:  If I can add one thing, your Honor?

8   The -- Mr. Cook's case is ongoing.  The other two cases,

9   (indiscernible) in which was Myers was counsel with the ACLU

10  and Shellenberg (phonetic) in which my office was counsel,

11  are completed.

12       THE COURT:  I'd appreciate your attendance then at

13  1:30.  It's not ordered, but it would be helpful, because

14  right now we have a plethora of cases out there and in light

15  of what your position is, you might want to be a party to

16  that at 1:30.

17       MS. MYERS:  Your Honor, if I can just -- just add

18  one point of clarification, as well.

19       I know you characterized the case in front of

20  Judge Fischer as the bulky item case.  Obviously that case

21  preceded this litigation.  The bulky item issues are -- have

22  largely been resolved by the Ninth Circuit.

23       THE COURT:  That's right.

24       MS. MYERS:  The case is significantly broader than

25  that and actually challenges the city's unconstitutional

18

1 practices of seizing and destroying people's property, not

2 just bulky items.  I just want to make sure that the record

3 is clear.  I think there has been some work by -- in parties

4 of this case to limit the issues that are at stake in that

5 case, but obviously it's significantly broader.  That case

6 is, as I said, filed much previous to this case and has been

7 fairly substantially litigated by the City of Los Angeles.

8 There are a number of pending motions in that case, so --

9         THE COURT:  And obviously, that's not within the

10 Court's jurisdiction and my record is that I haven't

11 requested or brought that case into my purview.

12         MS. MYERS:  In light that the parties raised that

13 that was a related case when they filed this case.

14         THE COURT:  Okay.  Now, in response to the county.

15 If I won't approve the settlement, then the cases remain in

16 its present position, we'll decide the present motions to

17 dismiss and I will put you on a fast track at that time,

18 which (indiscernible) expect.

19         If the settlement is approved, then the Plaintiff

20 has brought a motion for relief to amend, which in all

21 likelihood, I will grant, which will narrow the issues and

22 focus on the county.

23         Then there will be a scheduling conference,

24 because those motions then remain in abeyance.  Of course

25 there will be an answer by the county, but once again, I

19

1 will put you on a fast track much quicker than all of you

2 expect.

3          So this case will move expeditiously, but what I

4 don't want is, if the settlement is not approved, what I

5 don't want is a split in the cases at this point.  If the

6 settlement is approved, then of course you have by right the

7 ability to amend, and if so that will narrow the issues with

8 the county.  The answer would be filed, scheduling

9 conference for trial, motions for dismiss.  You'll be fast

10 tracked, trust me.  In fact, you'll learn to appreciate how

11 fast you'll be in trial.

12          MS. MITCHELL:  Thank you, your Honor.

13          THE COURT:  All right.  Now --

14          MS. SOBEL:  Your Honor --

15          MR. MILLER:  One more question.

16          THE COURT:  Now we have a whole participation

17 group going.  Here we go.  I'm going to turn to the

18 Plaintiffs first.

19          MS. MITCHELL:  That's exactly what we're looking

20 for, your Honor.  Thank you.

21          THE COURT:  Oh believe me, you'll be surprised.

22          Mr. Marcus?

23          MR. MARCUS:  Nothing from the city.

24          THE COURT:  Mr. Miller?

25          MR. MILLER:  What time on the 9th?

20

1          THE COURT:  I like to start at 7:00, but people

2    have a heart attack over that, so how about 9:00 o'clock;

3    does that work for everybody?

4          MR. MILLER:  Sure.

5          THE COURT:  9:00 o'clock, is that comfortable?  I

6    know Ms. Sobel has been coming to Los -- or Orange County at

7    9:00 o'clock, so I appreciate it.

8          Ms. Myers, comfortable?

9          MS. MYERS:  That's fine, your Honor.

10          THE COURT:  All right.  9:00 o'clock.

11          And once again, we assume we have this department,

12    but I never know until two days before.  And so we saw the

13    MIS problems today and I want to thank MIS for getting that

14    resolved.

15          If there's nothing further --

16          MS. MYERS:  I have one issue with the scheduling

17    order, your Honor.

18          I understand the county has (indiscernible)

19    discovery that LA Alliance has been unwilling to respond to

20    and I would just say, we would ask for relief to -- for the

21    parties who are interested in doing so, to be able to

22    conduct limited discovery on a question of standing.

23    Obviously, that was raised by the parties in -- the motions

24    that are still pending.  It raised by the Ninth Circuit.

25    It's certainly an issue, in terms of your Honor's approval

*Echo Reporting, Inc.*

21

1   of the consent decree.  There hasn't been any opportunity to

2   do any discovery related to standing that's obviously at

3   issue for a case where the parties are seeking

4   (indiscernible) rules of continuing jurisdiction by the

5   court to enforce that order.

6           THE COURT:  You can brief on that, but those are

7   the dates I've set for the present time.

8           All right.  Is there anything further?

9       (No response.)

10          THE COURT:  All right.  You're invited then at

11  1:30.  We're in recess.  Thank you for your courtesy.

12          (Proceedings concluded.)

13

14

15

16

17

18

19

20

21

22

23

24

25

22

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5    /s/Jordan Keilty                    5/20/2022
     Transcriber                          Date

6
     FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:
7

8
     /s/L.L. Francisco
9    L.L. Francisco, President
     Echo Reporting, Inc.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Echo Reporting, Inc.*