SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
617 W. 7th Street, Suite 200
Los Angeles, California 90017
Telephone: (213) 205-6520
Facsimile: (213) 205-6521
mumhofer@spertuslaw.com
emitchell@spertuslaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*, | CASE NO. 2:20-CV-02291-DOC-KES |
| Plaintiffs, | Assigned to Judge David O. Carter |
| v. | **PLAINTIFF LA ALLIANCE FOR HUMAN RIGHTS, ET AL.'S REPLY IN SUPPORT OF CITY-PLAINTIFF SETTLEMENT AGREEMENT** |
| CITY OF LOS ANGELES, *et al.*, | |
| Defendants. | |

**I.    This Court has Article III Jurisdiction to Approve the Agreement**

This Agreement should be lauded by Intervenors,[1] at least one of whom (Orange County Catholic Worker) was a party to the original agreement on which this one is based, and which involved three of the four law firms representing Intervenors who filed this objection. (*See* Objection to Stip. Order of Dismissal at 4, ECF No. 434) ("[T]he agreement mirrors the settlement agreements in the Orange County Litigation.").) This Agreement provides abundant protections for individuals experiencing homelessness—many of whom are plaintiffs or members of the Alliance—and balanced solutions for the entire community which has seen great success in other jurisdictions.[2]  But because of this balanced approach which enables enforcement in certain circumstances—the same circumstances previously agreed to and celebrated—Intervenors refused to further participate in settlement discussions. Now they object on baseless grounds which needlessly sling mud on the Agreement and at the other parties.

The settlement agreement[3] reached by Plaintiffs and the City is lawful and

---

[1] It is unclear at this point what standing Intervenors have in this lawsuit, why they are still participants in this case, or what right they have to object to this Agreement other than offering opinions as Amici.  Intervenors were granted permission to intervene under Federal Rule of Civil Procedure 24 early in the litigation, but none of the intervenors have ever filed a "pleading that sets out the claim or defense for which intervention is sought" under Section (c). Fed. R. Civ. P. 24(c). They have never filed a separate complaint or responsive pleading to the complaint.  At no point have they even attempted to "step into the shoes" of any party to either defend or prosecute the case. *See, e.g. Arizonans for Official English v. Arizona*, 520 U.S. 43, 65 (1997).  Instead, they act as Amici, offering opinions and objections as they see fit.  This is not what Rule 24 anticipated and should not be permitted.

[2] Orange County appears to be the only County in the entire state that is reporting decrease in numbers of people experiencing homelessness, while every other jurisdiction in California has seen an increase. Ethan Ward, *Orange County Count Results Show Decrease In Number of Unhoused People*, LAist (May 11, 2022, 2:49 PM), https://laist.com/news/housing-homelessness/orange-county-count-results-show-decrease-in-number-of-unhoused-people.

[3] This Agreement is not a consent decree but rather a settlement agreement and stipulated dismissal.  It is Plaintiffs' understanding that Defendant City of Los Angeles is filing a separate brief on this issue, and therefore Plaintiffs do not address the distinction herein.  Plaintiffs address the objections made notwithstanding the clear distinction, and in the alternative, out of an abundance of caution.

PLAINTIFFS' REPLY ISO PLAINTIFF-CITY SETTLEMENT AGREEMENT

within the Court's jurisdiction because it furthers the objectives described in the complaint, only permits enforcement of ordinances under certain conditions and subject to "existing laws" and judicial review, and addresses the harm caused by the City on Plaintiffs.

As Intervenors correctly note, such an agreement "must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction." *Local No. 93, Int'l Ass'n of Firefighters, AL-CIO C.L.C. v. City of Cleveland,* 478 U.S. 501, 525 (1986). But the obligations do not stop there: it must also be "within the general scope of the case made by the pleadings" and "further[s] the objectives of the law upon which the complaint was based[.]" *Id.* Finally, "a federal court is not necessarily barred from [approving an agreement] merely because the [agreement] provides broader relief than the court could have awarded after a trial." *Id*.

In Plaintiffs' First Amended and Supplemental Complaint ("FASC") Plaintiffs summarize the relief sought thus:

> While this is not a natural disaster, it is a disaster nonetheless, and it should be treated that way. The *only* way to address this crisis with the urgency it deserves is an emergency response—providing immediate shelter for all, increasing necessary outreach, services, and treatment, and abating the degradation of our cities and communities, for the good of everyone.

(FASC ¶ 23, ECF No. 361.)

Other than "services and treatment" (on which the County is horrifically failing), this agreement achieves the exact goal Plaintiffs have been seeking: providing immediate shelter or housing, and addressing the severe health and safety threats which result from unsheltered homelessness that face unhoused and housed people alike. And like *Local No. 93*, nothing in this agreement conflicts with statutory or constitutional law, provisions for which are made throughout the agreement. (*Id*. ¶¶ 3.2, 4.1, 4.2, 4.3, 12.)

Intervenors misapprehend the standards and requirements for standing when it comes to this case and this Agreement. Plaintiffs—including the Alliance's

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

2

PLAINTIFFS' REPLY ISO PLAINTIFF-CITY SETTLEMENT AGREEMENT

unhoused members—have suffered tremendously by the lack of adequate and appropriate housing and shelter, and by the relentless, dangerous conditions on the streets because of the City and County's actions and failures to act. *See generally* FASC (ECF No. 361) and Oppositions to City and County Motions to Dismiss (ECF Nos. 379, 380.)  By agreeing to deadlines and milestones for the provision of shelter and housing and for encampment reduction, the goals of this lawsuit are largely achieved. (Agreement ¶¶ 3, 4, 5.)  *See Local No. 93*, 478 U.S. at 525; *see also, Jeff D. v. Kempthorne*, 365 F.3d 844, 852 (9th Cir. 2004) (Finding the District Court had Article III jurisdiction to approve the agreement because "[t]he [agreement that the District Court] entered, while extensive, came within the general scope of the pleadings and furthered the objectives upon which the complaint was based."). And by agreeing to limit enforcement to those who have been offered shelter or housing or an opportunity to move, and a dispute resolution process, the unhoused members are protected.  (Agreement ¶¶ 4, 6.)

And contrary to Intervenors' argument, this Agreement does not preemptively approve some as-of-yet unwritten ordinances, it provides that one of the ways the City may address its obligations to address the health and safety threats prevalent in encampments is by enforcing public regulation ordinances only after specific conditions are met (i.e. enough shelter/housing has been created, each person is offered adequate and appropriate housing or shelter), and only "consistent with applicable laws." (Agreement ¶¶ 4.1-4.3, ECF No. 429-1.) In fact, Section 12 specifically provides for the possibility of a finding that a particular ordinance is unconstitutional or otherwise unlawful, and the affect such a finding might have on the Agreement.  (*Id*. ¶ 12.)

The true objection Intervenors make is that they simply don't like the agreement, or maybe they have changed their mind since the OC agreement was entered into.  But that is not a sufficient legal basis.  Intervenors cannot "block the [Agreement] between [Plaintiffs and Defendant] simply because they disagree with

its terms. . . . [O]therwise, one party could hold the other parties hostage in ongoing litigation, and a global settlement or judgment would be the only option." *Sierra Club v. North Dakota*, 868 F.3d 1062, 1066 (9th Cir. 2017).

## II. Whether Settlement Agreement Narrows Claims Against the County

One issue raised by the County is the impact the Agreement will have on the County given that Gary Whitter, one of the plaintiffs, did not participate in the City Agreement. While that issue has no bearing on whether the Plaintiff-City Agreement should be approved by this Court, it does raise valid issues regarding the yet-to-be-filed second amended complaint against the County.

For reasons Plaintiffs' counsel will share with the Court on an *ex parte* basis if needed, Plaintiffs request an additional three weeks to address this issue. Upon clarification of this singular issue, and should the Court approve this settlement agreement, Plaintiffs intend to file the amended complaint against the County upon counsel's return to the country, no later than July 11, 2022. Plaintiffs intend to file a second motion for preliminary injunction three weeks thereafter, no later than August 1, 2022.

## III. Conclusion

For the reasons described herein, Plaintiffs enjoy clear standing not only to bring the case but to enter into this Agreement, and the Court maintains Article III jurisdiction to approve it.

Respectfully submitted,

Dated: June 3, 2022

/s/ Elizabeth A. Mitchell
SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)

*Attorneys for Plaintiffs*

PLAINTIFFS' REPLY ISO PLAINTIFF-CITY SETTLEMENT AGREEMENT

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711