MICHAEL N. FEUER, City Attorney (SBN 111529)
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
ARLENE N. HOANG, Deputy City Attorney (SBN 193395)
JESSICA MARIANI, Deputy City Attorney (SBN 280748)
RYAN SALSIG, Deputy City Attorney (SBN 250830)
200 North Main Street, City Hall East, 7th Floor
Los Angeles, California 90012
Telephone: 213-978-4681
Facsimile: 213-978-7011
Email:  Scott.Marcus@lacity.org

Attorneys for Defendant CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a Municipal entity, et al.,<br><br>              Defendants. | Case No. CV 20-02291 DOC (KES)<br><br>**DEFENDANT CITY OF LOS ANGELES' REPLY TO OBJECTIONS TO ITS SETTLEMENT AGREEMENT WITH PLAINTIFFS**<br><br>Date:         June 9, 2022<br>Time:         9:00 a.m.<br>Courtroom:   5B<br><br>Assigned to the Hon. David O. Carter |

Pursuant to the Court's May 20, 2022 Order [ECF No. 423], Defendant City of Los Angeles ("the City") submits this reply to the Response to the Settlement Agreement between the City and Plaintiffs filed by the County of Los Angeles [ECF No. 432], the Objections filed by Intervenors Orange County Catholic Worker, Los Angeles Community Action Network and Los Angeles Catholic Worker [ECF No. 434], and the Opposition filed by Non-Party AIDS Healthcare Foundation [ECF No. 428].

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   THE PROCEDURAL HISTORY OF THIS CASE SUPPORTS
      APPROVING THE ARMS-LENGTH SETTLEMENT AGREEMENT ................ 1

III.  BECAUSE SETTLEMENTS ARE FAVORED AND ENCOURAGED,
      THE CITY AND PLAINTIFFS' SETTLEMENT AGREEMENT
      SHOULD BE APPROVED ................................................................................ 3

IV.   NONE OF THE OBJECTIONS WARRANT REJECTING THE
      SETTLEMENT AGREEMENT OR REFUSING TO DISMISS THE CITY ......... 6

      A. The County's Response Is Procedurally And Substantively Improper .............. 6

      B. Similarly, The Intervenors' Objections Lack Merit ........................................ 7

          1.  The Settlement Agreement Does Not Allow Discrimination On The
              Basis Of Disability ................................................................................ 7

          2.  This Settlement Agreement Achieves A Result That Benefits
              The Parties and Both Housed And Unhoused Angelenos ........................ 9

              a. The Required Number of Beds Is Reasonable and Not Vague ............... 9

              b. The Settlement is Not Limited to Any One Type of Housing
                 or Shelter ........................................................................................ 11

          3.  The Settlement Agreement Does Not Infringe On The Intervenors'
              Or Third Parties' Rights ........................................................................ 12

      C. The AIDS Healthcare Foundation Opposition Must Be Rejected .............. 12

V.    CONCLUSION ................................................................................................ 14

DEFENDANT CITY OF LOS ANGELES' REPLY TO OBJECTIONS TO THE SETTLEMENT
AGREEMENT WITH PLAINTIFFS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahern v. Cent. Pac. Freight Lines*,
846 F.2d 47 (9th Cir. 1988) .................................................................................. 3

*Franklin v. Kaypro Corp.*,
884 F.2d 1222 (9th Cir. 1989) .............................................................................. 3

*Gerritsen v. De La Madrid Hurtado*,
819 F.2d 1511 (9th Cir. 1987) ............................................................................ 13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .............................................................................. 4

*Local No. 93, Int'l Asso. of Firefighters, etc. v. Cleveland*,
478 U.S. 501 (1986)................................................................................................ 7

*Mitchell, et. al. v. City of Los Angeles, et. al.*,
16-CV-01750 ........................................................................................................... 5

*Rodriguez, et al. v. City of Los Angeles, et. al.*,
11-CV-01135 ........................................................................................................... 5

*Salazar v. Sysco Cent. Cal., Inc.*,
No. 15-cv-01758-DAD, 2017 U.S. Dist. LEXIS 14971 (E.D. Cal. Feb. 2, 2017)...... 4

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
59 F. Supp. 2d 1021 (N.D. Cal. 1999)................................................................. 13

*Sierra Club v. McCarthy*,
No. 13-cv-03953-SI, 2015 U.S. Dist. LEXIS 24953 (N.D. Cal. Mar. 2, 2015).......... 4

*Speed Shore Corp. v. Denda*,
605 F.2d 469 (9th Cir.1979) ................................................................................. 3

*United States v. McInnes*,
556 F.2d 436 (9th Cir.1977) ................................................................................. 3

*United States v. Oregon*,
913 F.2d 576 (9th Cir. 1990) ................................................................................ 4

DEFENDANT CITY OF LOS ANGELES' REPLY TO OBJECTIONS TO THE SETTLEMENT AGREEMENT WITH PLAINTIFFS

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .................................................................................. 4

*Waller v. Fin. Corp. of Am.*,
    828 F.2d 579 (9th Cir. 1987) .................................................................................. 6

*Westlands Water Dist. v. United States*,
    100 F.3d 94 (9th Cir. 1996) .................................................................................. 7

**Statutes**

Americans with Disabilities Act ...................................................................................... 8

California Government Code section 11135(b) ............................................................... 9


**Federal Statutes**

Fed. R. Civ. P. 23(e)(2) .................................................................................................. 4

Rule 23 ........................................................................................................................ 4, 13


**Other Authorities**

*LAHSA Homeless Services System Analysis*, available at:
    https://www.lahsa.org/documents?id=4311-homeless-services-system-analysis-
    envisioning-an-optimal-system-in-los-angeles.pdf (last accessed 6/2/2022) ............ 11

Webster's Dictionary, https://www.merriam-webster.com/dictionary/create .................. 9

DEFENDANT CITY OF LOS ANGELES' REPLY TO OBJECTIONS TO THE SETTLEMENT AGREEMENT WITH PLAINTIFFS

## I.   INTRODUCTION

The City has entered into a settlement agreement with Plaintiffs in order to resolve this case in a manner that it feels will best benefit not only the parties to this litigation, but unhoused Angelenos and everyone in the City who shares our public spaces.

The Settlement Agreement reached between the Plaintiffs and the City is fair, adequate, reasonable, and in good faith.  The City is committing to build a sufficient number of beds to house thousands of currently unsheltered people experiencing homelessness in the City, and is agreeing to use the Los Angeles Homeless Services Authority's (LAHSA) yet-to-be released 2022 Point In Time Count as the basis for its commitment.  The City entered into this Settlement Agreement after two years of litigation, two injunctions, and numerous status conferences and hearings, to secure the certainty of an agreement over the risks and uncertainty of future litigation, because settlement is in the best interest of the City.

The City recognizes that the Settlement itself will not solve the homelessness crisis; more needs to be done.  The City is doing more outside of, and independent of, this Settlement, and nothing in the Settlement will impede the City from continuing to do so.

## II.   THE PROCEDURAL HISTORY OF THIS CASE SUPPORTS APPROVING THE ARMS-LENGTH SETTLEMENT AGREEMENT

The procedural history of this case evidences the Settlement Agreement between Plaintiffs and the City was the result of arms-length negotiations made in good faith to resolve an active case and controversy, following two years of status conferences, hearings, and several court-ordered mediation and/or settlement conference sessions. The Settlement Agreement is proper and the City should be dismissed with prejudice as requested by the Plaintiffs.

Plaintiffs filed an initial Complaint in March 2020, naming the City and the County of Los Angeles ("the County") as co-defendants in fourteen separate federal and

1

state law claims including three that alleged violations of 42 U.S.C. § 1983.  ECF No. 1. Orange County Catholic Worker, Los Angeles Community Action Network and Los Angeles Catholic Worker (collectively "the Intervenors") were granted leave to intervene almost immediately after the Complaint was filed, yet no Complaint-in-intervention (or Answer-in-intervention) has been filed.  ECF Nos. 18 and 29; *see* docket.  Pursuant to Court Order, the parties engaged in multiple, early settlement discussions that were unsuccessful.  *See e.g.*, ECF Nos. 89, 99, 126 and 127.

Thereafter, the City filed a Motion to Dismiss the Complaint, denying all claims alleged in the Complaint and further denying the City or any of its officers, employees, or agents violated any laws or committed any wrongful acts or omissions against the Plaintiffs as alleged in the Complaint. ECF No. 336.  The City's Motion to Dismiss was vacated by stipulation and never ruled on or heard.  ECF Nos. 343, 344.

On April 20, 2021, the District Court granted Plaintiffs' motion for a preliminary injunction against the City and County, ordering, among other things, the City to escrow $1 billion from its budget, prepare numerous audits and reports, cease any sales, transfers, or leases of City-owned properties, and to shelter all residents of Skid Row. ECF Nos. 277, 279.  On October 15, 2021, the United States Court of Appeals for the Ninth Circuit vacated the injunction issued by the District Court.  ECF Nos. 352, 355.

On November 1, 2021, Plaintiffs filed a First Amended and Supplemental Complaint (ECF No. 361), the allegations and claims within which the City also expressly denied, and filed a motion to dismiss them.  ECF No. 369.  The Court heard the City and County's separately filed motions to dismiss on January 24, 2022, took the motions under submission, and ordered the parties to engage in mediation with Hon. Andre Birotte, Jr. on February 15, 2022.  ECF Nos. 388, 391.

The parties thereafter participated in multiple mediation and mandatory settlement conference sessions with Judge Birotte and Special Master Michelle Martinez.  The mediated settlement discussions proceeded on February 15 (ECF Nos. 388, 391),

DEFENDANT CITY OF LOS ANGELES' REPLY TO OBJECTIONS TO THE SETTLEMENT AGREEMENT WITH PLAINTIFFS

February 16 (ECF No. 394), February 22 (ECF No. 395, 396), March 1 (ECF No. 397) and March 29, 2022 (ECF Nos. 401, 402).  Following, and as a result of, these multiple sessions, Plaintiffs and the City reached a settlement to resolve the claims asserted by Plaintiffs against the City in this litigation.  A Notice of Preliminary Settlement Agreement and Stipulation to Stay the Litigation as to the City only was filed on April 1, 2022, along with the settlement term sheet.  ECF No. 408.

Subsequently, on May 19, 2022, Plaintiffs and the City lodged a proposed stipulated order of dismissal which attached a copy of the Settlement Agreement (ECF No. 421), and the fully executed Settlement Agreement was lodged on May 24, 2022. ECF No. 429.  An Opposition, response and objections to the Settlement Agreement were filed respectively by non-party AIDS Healthcare Foundation ("AHF") [ECF No. 428], the County [ECF No. 432] and the Intervenors [ECF No. 434].

III.    **BECAUSE SETTLEMENTS ARE FAVORED AND ENCOURAGED, THE CITY AND PLAINTIFFS' SETTLEMENT AGREEMENT SHOULD BE APPROVED**

The settlement reached by Plaintiffs and the City is appropriate.  The objections filed by AHF, the County, and the Intervenors lack merit procedurally and substantively, and do not warrant undermining the strong judicial policy favoring settlements.

It is the policy and duty of federal courts to facilitate settlement when possible. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989) (citing Fed. R. Civ. P. 16(c) advisory committee note and Fed. R. Evid. 408 advisory committee note), *cert. denied*, 498 U.S. 890, 112 L. Ed. 2d 192, 111 S. Ct. 232 (1990).  "The Ninth Circuit is firmly 'committed to the rule that the law favors and encourages compromise settlements.' *United States v. McInnes,* 556 F.2d 436, 441 (9th Cir.1977)…. 'It is well recognized that settlement agreements are judicially favored as a matter of sound public policy. Settlement agreements conserve judicial time and limit expensive litigation.' *Speed Shore Corp. v. Denda,* 605 F.2d 469, 473 (9th Cir.1979)." *Ahern v.*

3

*Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988).  "There is an overriding public interest in settling and quieting litigation."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

The "fundamentally fair, adequate and reasonable" standard of approval articulated in *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990), cited by the County and Intervenors, applies to class action settlements.  This case is not a class action, so the standard does not apply directly.  Nevertheless, this standard is sometimes applied outside the class action context when a court evaluates and approves a settlement agreement.  *See, e.g.,* Fed. R. Civ. P. 23(e)(2) (class action settlement may be approved only if "fair, reasonable, and adequate"); *Salazar v. Sysco Cent. Cal., Inc.*, No. 15-cv-01758-DAD-SKO, 2017 U.S. Dist. LEXIS 14971, at *6 (E.D. Cal. Feb. 2, 2017) (generally applying class-action approval standard to non-class California PAGA claims).

Even if the Court were to apply the "fair, adequate and reasonable" standard (which the City does not concede it should), "courts examine both procedural and substantive fairness."  *Sierra Club v. McCarthy*, No. 13-cv-03953-SI, 2015 U.S. Dist. LEXIS 24953, at *18 (N.D. Cal. Mar. 2, 2015), citing *United States v. Cannons Engineering Corp.*, 899 F.2d 76, 89 (1st Cir. 1990).  "With regard to procedural fairness, courts determine whether the negotiation process was 'fair and full of adversarial vigor.'"  *Id.*, citing *United States v. Telluride Co.*, 849 F.Supp. 1400, 1402 (D. Colo 1994).  Significantly, the issue is not whether Plaintiffs' and the City's settlement could have been better.  Although entering a better agreement is arguably a possibility, "this possibility does not mean the settlement presented was not fair, reasonable or adequate.  Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998) (involving a class action settlement under Rule 23).

4

The City reached the settlement with Plaintiffs after two years of protracted litigation, recognizing the desirability of avoiding the ongoing risks and burdens of continuing to litigate this matter.  The settlement provides both Plaintiffs and the City with certainty as to their obligations and benefits over the next five years.  It allows the City to focus its resources on addressing homelessness rather than continuing to litigate this case.

Notably, the City agreed to enter into this Settlement with the intention of resolving this case with Plaintiffs through a Settlement Agreement with fixed terms. The City intended to have certainty in its obligations and to have the Court retain jurisdiction exclusively for the purpose of ensuring that the parties are held accountable for meeting those obligations.[1]

This Court should reject the County's and Intervenors' misguided attempts to undermine the Settlement Agreement by, among other things, mischaracterizing it as a consent decree.  Nothing in the Settlement Agreement harms the County or Intervenors or requires any action from them.

If the proposed Stipulated Order of Dismissal requires clarification, this Court could amend the language (or the parties could lodge an amended Order) to underscore that the Court is retaining jurisdiction exclusively for the purposes of enforcing the terms of the Settlement Agreement to which the settling parties have agreed, and to clarify that

---

[1] This Settlement Agreement is no different than other settlement agreements entered into by the City and approved by courts, where those courts maintained jurisdiction to enforce the settlement agreement.  For example, the City entered into a settlement agreement in *Rodriguez, et al. v. City of Los Angeles, et. al.*, 11-CV-01135 DMG, in which the court retained jurisdiction "for purposes of implementing and enforcing this Judgment and Order of Final Approval and the Settlement," and, as here, the settlement agreement included a dispute resolution mechanism which included the court's participation.  [ECF 380-1 (settlement agreement), 403 (order).]  Similarly, the court retained jurisdiction to enforce the recently expired settlement agreement in *Carl Mitchell, et. al. v. City of Los Angeles, et. al.*, 16-CV-01750 SJO.  In neither case did anyone suggest the settlement agreements were "consent decrees."

5

nothing in the Court's order affects any rights of the County or the Intervenors. However, if, for any reason, this Court were to determine that the Settlement Agreement is a consent decree, the City respectfully requests that, before any order is entered, this Court grant the settling parties the opportunity to confer to determine whether they would agree to resolve this case through such a decree (as such an agreement has not been reached at this time).

## IV.   NONE OF THE OBJECTIONS WARRANT REJECTING THE SETTLEMENT AGREEMENT OR REFUSING TO DISMISS THE CITY

### A.   The County's Response Is Procedurally And Substantively Improper

The County's response to the Settlement Agreement [ECF No. 432] lacks merit procedurally and substantially.  The Ninth Circuit recognizes an exception to the general principle barring objections to an order of dismissal by non-settling defendants only where the non-settling defendant can demonstrate it will sustain plain legal prejudice as a result of the settlement. *Waller v. Fin. Corp. of Am.,* 828 F.2d 579, 582-84 (9th Cir. 1987).

> "This standard strikes a balance between the desire to promote settlements and the interests of justice. It also maintains consistency with Fed. R. Civ. P. 41(a)(2) which governs voluntary dismissals of lawsuits. In this circuit, as elsewhere, a district court should grant a motion for voluntary dismissal unless a defendant can show that it will suffer some plain legal prejudice as a result. *Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982). It would, as the Seventh Circuit has pointed out, 'be incongruous for a non-settling defendant to have any less of a burden in attempting to prevent such a voluntary dismissal than he would if he were the party being dismissed.' *Id.,* at 583, *citing Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230, 1233 (7th Cir. 1983).

The Ninth Circuit has defined "plain legal prejudice" as "prejudice to some legal interest, some legal claim, some legal argument." *Westlands Water Dist. v. United States,* 100 F.3d 94, 96 (9th Cir. 1996). "Uncertainty because a dispute remains unresolved is *not* legal prejudice." *Id.*

Here, the County has not demonstrated any plain legal prejudice arising from the settlement or City's dismissal. Rather, the County appears to object that Plaintiffs and the City have expressed agreement (at ECF No. 429-1 at § 9, pp. 10-12) of what they *believe* the County is obligated to provide for people experiencing homelessness, and agree to *cooperate* to try and ensure the County meets these obligations. These agreements are nothing more than Plaintiffs and the City's expressions of (a) their beliefs concerning the County, and (b) their intent to cooperate regarding their opined County's obligations. Nothing in the Settlement Agreement is intended to, or legally can, bind the County in anyway, nor does it waive or otherwise remove any argument or defense the County can assert against Plaintiffs' claims. *Local No. 93, Int'l Asso. of Firefighters, etc. v. Cleveland*, 478 U.S. 501, 529 (1986) (settling parties may not impose duties or obligations on a third party without that party's agreement.) The County will not suffer any legal prejudice from the Plaintiffs' and City's Settlement.

**B.      Similarly, The Intervenors' Objections Lack Merit**

The Intervenors' objections are baseless for multiple reasons. [ECF No. 434].

**1.      The Settlement Agreement Does Not Allow Discrimination On The Basis Of Disability**

The Settlement Agreement does not, as the Intervenors contend, allow discrimination on the basis of disability.

First, the Intervenors' concern with the definition of "City Shelter Appropriate" is misplaced. ECF No. 434 at 17-18. The definition of "City Shelter Appropriate" is relevant only to calculating the number of beds the City is committing to build in the Settlement Agreement. It does not limit the number of beds the City may create beyond its obligation in the Settlement. It in no way limits the City's obligations to individuals

7

experiencing homelessness, nor does it limit an outreach worker from offering a bed to any individual—whether they fall within the definition of City Shelter Appropriate or not—if there is an available bed that the outreach worker believes will be appropriate for that individual.  ECF No. 429-1, Ex. 1 at § 1.4.  Indeed, the definition of "City Shelter Appropriate" explicitly states that "the fact that an individual meets the criteria of 'high acuity' according to accepted industry standards, has a severe mental illness, substance use disorder, chronic physical illness or disability, or otherwise is not included in the definition of City Shelter Appropriate, ***will not preclude*** the City from making an offer of shelter or housing to that individual if the City can reasonably assist that individual."  ECF No. 429-1, Ex. 1 at § 1.4(B) (emphasis added).  Nothing in the Settlement Agreement does, or is intended in any way to, change how homeless outreach is conducted or how offers of shelter and housing are given in accordance with state and federal laws.

Similarly, by stating that an individual who does not fall within the definition of "City Shelter Appropriate" will not be precluded from receiving an offer of shelter or housing from the City "if the City can reasonably assist that individual," the parties intended only to reflect the on-the-ground reality of outreach and engagement.  For example, an outreach worker may determine that an offer of shelter in an ADA-compliant A Bridge Home site would not reasonably assist an individual needing specialized treatment at an in-patient County facility.  This language was included in the Settlement Agreement to make clear that nothing in the Settlement alters how outreach workers do their work in accordance with federal and state regulations and that offers of housing would not be limited by the definition of "City Shelter Appropriate."

Second, the Intervenors assert that the Settlement Agreement specifically calls out that "accommodations shall be made for those who qualify as disabled under the Americans with Disabilities Act" but omits reference to state disability law.  ECF No. 434 at 19.  Again, this concern is misplaced since the parties in no way intended for the

8

Settlement Agreement to limit the City's obligation to comply with state laws, including California Government Code section 11135(b).

In sum, the Settlement Agreement does not, and is not intended to, diminish the City's obligations under federal and state disability laws; should the Court determine that the current language of the Settlement Agreement is not sufficiently clear in this respect, the parties can revise the Settlement Agreement.

**2.    This Settlement Agreement Achieves A Result That Benefits The Parties and Both Housed And Unhoused Angelenos**

a.    <u>The Required Number of Beds Is Reasonable and Not Vague</u>

Contrary to the Intervenors' assertions, the City's obligation to "create" a Required Number of beds is neither vague nor unreasonable.

First, pursuant to Section 3.1 of the Settlement Agreement, City is required to "create a Required Number of housing or shelter solutions, which is equal to, but (in the City's discretion) may be greater than, the shelter and/or housing capacity needed to accommodate sixty percent (60%) of unsheltered City Shelter Appropriate PEH within the City based on LAHSA's 2022 Point in Time count."  The word "create" indicates that the City will create *new* beds that are not already in existence.  *See*, *e.g.*, Webster's Dictionary, https://www.merriam-webster.com/dictionary/create ("create" means "to bring into existence" and "to produce or bring about by a course of action or behavior"; Black's Law Dictionary, 6th Ed. 1990 ("create" means "to bring into being; to cause to exist; to produce").  Therefore, the Intervenors' concern "that the City could count existing shelter beds or housing units towards the number of shelter beds needed to reach the 60% threshold" (ECF No. 434 at 22) is wrong.

The parties did not, however, intend to preclude the City from counting beds that may already be planned (*i.e.* that are in the "pipeline") but that do not exist as of the date of the Settlement Agreement.  For example, the City currently has 9,410 permanent housing units and 1,383 interim housing beds which have received City approval and are in various stages of development.  If these beds are created after the date of the

9

Settlement, they may be counted towards the City's commitment to create the Required Number of beds. And while the Intervenors are correct that the Settlement does not contractually prevent the City from closing beds that are already in existence, the absence of a clause preventing this[2] should not be of concern because the City has demonstrated its commitment to continue building new beds. Indeed, earlier in this case, the City agreed to build 6,700 beds through the Memorandum of Understanding ("MOU") with the County. *See* ECF No. 185-1. All of the beds the City is committing to build in this Settlement Agreement are in addition to the beds being built pursuant to the MOU. Tr. of May 20, 2022 Hr'g at 11:19–23. There will be no double-counting of beds between this Settlement Agreement and the MOU.

The Intervenors also attack the Required Number because they argue that "the number of PEH has gone up almost every year for the past decade" and that "[a] fixed Required Number will not take into account any increases in homelessness that will occur in the next five years."[3] This is true. The parties recognize that homelessness has unfortunately been increasing, and they also recognize that the number of people experiencing homelessness in the City may continue to rise over the term of the Settlement Agreement, despite the City's efforts to prevent that. This potential increase in the number of Angelenos experiencing homelessness is an unfortunate but foreseeable

---

[2] Indeed, the Settlement Agreement also does not expressly require the City to continue, or prevent the City from discontinuing, all of the other various services and programs the City provides both to help those experiencing homelessness and to prevent Angelenos from falling into homelessness, including rental assistance, employment assistance services, and sanitation services, such as portable toilets, showers, and hand-washing stations. If settlement agreements were to be rejected for all of the things it could require but did not, no agreement would ever be approved.

[3] The Intervenors also hypothesize that the City's and County's eviction moratoria may prove to have been successful at lowering the number of people entering homelessness in 2022, thereby making the 2022 PIT count lower than future years may be. ECF No. 434 at 23-24. Such speculation cannot make the Settlement Agreement, which is designed to provide for the creation of many new beds for unhoused Angelenos (but does not purport to solve the homelessness crisis), unreasonable.

10

DEFENDANT CITY OF LOS ANGELES' REPLY TO OBJECTIONS TO THE SETTLEMENT AGREEMENT WITH PLAINTIFFS

circumstance that the parties recognize.  Ultimately, the Settlement Agreement is designed to provide for the creation of many new beds for unhoused Angelenos, but does not purport to solve the homelessness crisis.  It should, however, also be recognized that the Required Number in the Settlement Agreement is a floor, not a ceiling, and the City can create beds above and beyond that number in response to the continuing homelessness crisis or other changed circumstances.

>              b.      The Settlement is Not Limited to Any One Type of Housing or Shelter

The Settlement Agreement contemplates that the City can fulfill its obligation to build the Required Number of beds, subject to Constitutional requirements and legal mandates, through "any housing or shelter solution, including but not limited to tiny homes, shared housing, purchased or master-leased apartments, hotels/motels, or other buildings, congregate shelters, permanent supportive housing, rental assistance/rapid rehousing, family reunification, sprung structures or tents, safe parking, safe sleeping/camping, affordable housing, and interim housing (including A Bridge Home beds)".  ECF No. 429-1 at § 3.2.  Rather than committing to either solely permanent housing or solely interim housing options, the Settlement provides for a mix of both.  This is in keeping with the City's current practice of building both permanent supportive housing, including with HHH funds, and temporary interim housing, such as tiny homes, A Bridge Homes, and safe parking.  *See, e.g.,* City's Quarterly Reports re MOU (reflecting new beds being built by the City in both permanent and interim housing) at ECF. Nos. 186, 204, 267, 342, 383, 414.  This approach is also in keeping with research indicating that *both* permanent housing and interim shelters are necessary to address both the immediate and long-term needs for housing.[4]

---

[4] *See, e.g., LAHSA Homeless Services System Analysis*, available at: https://www.lahsa.org/documents?id=4311-homeless-services-system-analysis-envisioning-an-optimal-system-in-los-angeles.pdf (last accessed 6/2/2022).

11

The fact that some of these housing and shelter solutions created by the City may receive private funding was not intended by the parties to preclude those solutions from counting toward the Required Number in the Settlement Agreement. The Intervenors complain that this makes the term "create" overly vague, but there is no basis for this argument. Regardless of the source of funding, the City is committing to create the Required Number of beds. It is only by leveraging dollars from multiple sources, including local, state and federal dollars, as well as private investments and loans, that the City is able to build more beds.

For these reasons, the parties believe that the City's commitment to build a substantial number of beds to house unhoused Angelenos is a step in the right direction.

### 3. The Settlement Agreement Does Not Infringe On The Intervenors' Or Third Parties' Rights

Finally, the Intervenors' objection that the Settlement Agreement impermissibly infringes on their rights or the rights of other third parties is baseless. On its face, and as a pure legal matter, there is nothing in the Settlement Agreement that prohibits any intervenor or third-party from challenging the legality of any future City ordinance. The Intervenors admit this settled legal principle. "To be sure, under current Ninth Circuit and Supreme Court precedent, this agreement cannot be used to preclude individuals, including Intervenors, from challenging any ordinances or enforcement regimes the City attempts to implement pursuant to this agreement." ECF No. 434, 14:8-11.

The Intervenors therefore readily admit that their rights are not being infringed. Moreover, contrary to their representation, the "proverbial fox" is not the only one "guarding the henhouse." ECF No. 434, 16:15-20. There is an entire judicial system, including this Court. Hence, the Intervenors have not demonstrated any legal prejudice, and their objection does not support a finding of unreasonableness or unfairness.

### C. The AIDS Healthcare Foundation Opposition Must Be Rejected

Finally, AHF's Opposition [ECF No. 428] should not be considered. AHF did not petition the court for leave to intervene or participate as amicus curie, nor is it a party to

the case.  Thus, as a non-party, AHF does not have standing to object to the settlement. *See e.g. San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (in the context of Rule 23, non-class members have no standing to object and allowing non-parties to inject their concerns at the settlement stage "frustrates th[e] goal" of encouraging settlements.[5]  Notwithstanding, and without waiving this issue, substantively, AHF's opposition lacks merit.

First, its objection that the settlement relies too much on temporary shelters must be rejected.  Contrary to AHF's unsubstantiated conclusions, there is nothing in the settlement that precludes the City from developing permanent supportive housing.  The City has the absolute right to develop policies, including building interventions to shelter people experiencing homelessness until such time they can be placed in permanent housing.  And as previously mentioned, the City is actively building both permanent housing and interim housing.  *See*, *e.g.*, City's Quarterly Reports re MOU at ECF. Nos. 186, 204, 267, 342, 383, 414.

Significantly, AHF defeats its own argument because AHF concedes the interventions the City agrees to build are appropriate and important.  ECF No. 428 at fn. 1 ("AHF does not oppose and, indeed, supports, many or most of these listed solutions, in appropriate circumstances") and fn. 2 ("AHF acknowledges the importance for people experiencing homelessness of temporary shelters- to be deployed on the way to providing permanent housing.")

AHF's second argument – the City needs to agree to create housing for all people experiencing homelessness in the City – is similarly misplaced.  Under AHF's arguments, a settlement can only be reached if it completely resolves homelessness in Los Angeles.  That argument contradicts the very nature of settlements.

---

[5] The City understands the court has broad discretion to allow or reject the appearance of amicus curiae, and can exercise discretion to consider non-parties' objections.  Cf. *Gerritsen v. De La Madrid Hurtado*, 819 F.2d 1511, 1514 n.3 (9th Cir. 1987).

13

As noted above, the Settlement Agreement was reached following multiple court-ordered mediation and settlement conference sessions. While the City recognizes more needs to be done to solve the homelessness crisis, the City is obligated through the settlement to create thousands of new interventions to house unsheltered Angelenos. The City and Plaintiffs agreed to the Required Number as part of an arms-length negotiation and as a *compromise* to resolve this contested, costly litigation.

## V.    CONCLUSION

Based on the foregoing, and for any reasons that may arise at the hearing on this matter, the City respectfully requests the Court reject the objections to the Settlement Agreement entered into between Plaintiffs and the City, approve the Settlement as reasonable and fair, and dismiss the City with prejudice.

DATED:  June 3, 2022            MICHAEL N. FEUER, City Attorney
                               SCOTT MARCUS, Chief Assistant City Attorney
                               ARLENE N. HOANG, Deputy City Attorney
                               JESSICA MARIANI, Deputy City Attorney
                               RYAN SALSIG, Deputy City Attorney


                               By: /s/__*Scott Marcus*_____
                               Scott Marcus
                               Counsel for Defendant
                               CITY OF LOS ANGELES

DEFENDANT CITY OF LOS ANGELES' REPLY TO OBJECTIONS TO THE SETTLEMENT AGREEMENT WITH PLAINTIFFS