UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | | |
|---|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., | ) | Case No. LA CV 20-02291-DOC-(KESx) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Los Angeles, California |
| | ) | |
| CITY OF LOS ANGELES, et al., | ) | Friday, October 7, 2022 |
| | ) | |
| Defendant. | ) | (10:17 a.m. to 10:34 a.m.) |
| | ) | |

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE DAVID O. CARTER
UNITED STATES DISTRICT JUDGE

Appearances:                    See next page.

Court Reporter:                 Recorded; CourtSmart

Courtroom Deputy:               Karlen Dubon

Transcribed by:                 Jordan Keilty
                                Echo Reporting, Inc.
                                9711 Cactus Street, Suite B
                                Lakeside, California 92040
                                (858) 453-7590

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

2

APPEARANCES:

For the Plaintiffs:                    ELIZABETH A.  MITCHELL, ESQ.
                                       Spertus Landes & Umhofer, LLP
                                       617 West 7th Street, Suite 200
                                       Los Angeles, California 90017
                                       (213) 205-6520

                                       MATTHEW D. UMHOFER, ESQ.
                                       Spertus, Landes & Umhofer, LLP
                                       1990 South Bundy Drive
                                       Suite 705
                                       Los Angeles, California 90025
                                       (310) 826-4700

For the Defendants:                    SCOTT D. MARCUS, ESQ.
                                       Los Angeles City Attorney's
                                         Office
                                       200 North Main Street
                                       7th Floor, Room 675
                                       Los Angeles, California 90012
                                       (213) 978-7558

For the Intervenor:                    BROOKE A. WEITZMAN, ESQ.
                                       Elder Law And Disability
                                         Rights Center
                                       1535 East 17th Street
                                       Suite 104
                                       Santa Ana, California 92705
                                       (714) 617-5353

3

Los Angeles, California; Friday, October 7, 2022 10:17 a.m.

--o0o--

(Call to Order)

THE COURT:  All right.  Then we're on CourtSmart, for the record.  And this, of course, is the First Alliance matter, 20-02291.

Counsel, if you'd like, just remain seated, but could we begin with Mr. Umhofer, please.

MR. UMHOFER:  Good morning, your Honor.  Matthew Umhofer on behalf of Plaintiffs.  My co-counsel, Ms. Mitchell, is (indiscernible) if we need her.

THE COURT:  All right.  Thank you.

And then, Scott, please.

MR. MARCUS:  Good morning, your Honor.  Scott Marcus on behalf of the City of Los Angeles.

THE COURT:  All right.  Brooke, you're on behalf of the Intervenors?  Why don't you have a seat.

(No response.)

THE COURT:  This may have been resolved this morning, but 7.1 of the agreement provides for quarterly status updates, and this has been pending since early June. I had not received a quarterly update, and the clerk informed me that that quarterly update was filed a few months ago.

THE CLERK:  Judge, it looks like the status update

4

was filed by the County of Los Angeles.

THE COURT:  By the County of Los Angeles.  Okay.  Has the City filed one?

MR. MARCUS:  Not yet, your Honor.  We intend to file one indicating that the required number has been both calculated and shared with the Plaintiffs as is required under paragraph five of the agreement.

THE COURT:  Okay.  What is that number?

MR. MARCUS:  It is 12,904.

THE COURT:  All right.  One of my concerns is -- first of all, let's go working together if we can.  I think that this could be successful, but I'm not certain if all the parties are aware of parallel litigation involving Mr. Yagman, and in that litigation, the Court has written a number of orders -- and would one of you just come up informally.  Let me give this to you.  So, Brooke, why don't you come up for a second if you could help me -- because I'm not certain since we've gotten calls from Kevin de Leon, who's the Poverty Committee, et cetera, and there's been contact with Mary Martinez, there seems to be a lack of information being exchanged back and forth, and the City Council doesn't appear to be aware of some of the opinions that the Court's writing in parallel litigation.

So, I want to start with hopefully heading off future litigation concerning the due process issues that

5

were raised in 21-06003. And there this is litigation, Mr. Umhofer, that you and Elizabeth Mitchell aren't involved in brought by Mr. Yagman.

Ms. Weitzman, I don't know if you're aware of this parallel litigation with Mr. Yagman. Are you?

MS. WEITZMAN: I'm aware (indiscernible).

THE COURT: Okay. And are you aware of this particular order?

MS. WEITZMAN: (Indiscernible.)

THE COURT: Okay. And, Mr. Marcus, you're aware of this particular order?

MR. MARCUS: I'm not aware of this particular order, your Honor. I'm not the lead attorney on the Yagman cases --

THE COURT: Great.

MR. MARCUS: -- but I am aware of the litigation being --

THE COURT: That --

MR. MARCUS: -- conducted by our office.

THE COURT: Then it's a good thing that we're getting together so we have some kind of central information being dispersed, because I can see that some of the issues before the Court in this other litigation can affect the litigation in front of me. So, take a moment and just read the due process section on page 10 and 11. It's a very

6

short read.  In fact, I've underlined it in yellow for you this morning.

(Pause.)

THE COURT:  Now, that's a quick read, but in your discussions today, this might be relevant.  Ms. Weitzman's aware of this in Orange County, but in the 1400 or so people in the riverbed five or six years ago, the County of Orange at that time had arranged for storage actually in Lake Forest about 18 miles away, and in doing so, they had purchased homeless persons on the river a one-way bus ticket down to Lake Forest to get their belongings.  They hadn't informed Lake Forest City Council of that depository for homeless goods, and there was no bus ticket back, which simply brought the homeless into a community with a one-way bus ticket.

And it was injunctive relief that the Court signed at that time.  And, so, we know that there's a precedence of the Court's concern that if in this case you have a storage facility in Skid Row, when Mr. Yagman brought this to the Court's attention, there's some language and a concern, and hopefully you folks can work together and head off litigation in the future, because his concern was to transport him to a storage on Skid Row over 30 miles away from the Plaintiffs who lived in Venice, and you can imagine the trek across town, Skid Row, once again, being inundated

7

with homeless from other areas on that force migration, also burdening one council district, which is of great concern to your Homeless and Poverty Committee Chair, Kevin de Leon, because that's his district.

I leave that to your discretion, but every time we can head off the litigation, I think we all want to work together and do that.  So, that might be a topic concerning policies and procedures.

The second might be the Special Master has been out to a number of districts, but one in particular caused input back to the Court, and that is that the signage seems to be non-uniform.  And I'm wondering through the City Attorney's Office if there's an ability on your part to work with the Council in terms of coming up with some uniform signage, because if each district brings their own signage without your guidance, your overall supervision of what you believe is appropriate constitutionally and gives due process and fair notice, we could get signage that meets with everyone's consent and is not a concern or we can get injunctive relief flowing in which sends a horrific message from the City's standpoint where the Court ends up having to grant an injunction.

So, I'm just asking you to thoughtfully think about centralizing that amongst all your council districts so they don't have councilperson A and councilperson B

8

coming up with different signage, and I think the signage that you worked with out in Bob --

MS. WEITZMAN:  Bloomingfield.

THE COURT:  I can't hear you.

MS. WEITZMAN:  Bloomingfield.

THE COURT:  Yeah, Bloomingfield.  I think that was pretty good notice, but take a look at that and try to see if you can centralize that to stop the litigation, and that way if there's a complaint by the intervenors, at least we're litigating that in one place instead of, you know, different signage in different locations.

UNIDENTIFIED SPEAKER:  Judge Carter?

THE COURT:  Pardon me?

UNIDENTIFIED SPEAKER:  If I just clarify something?

THE COURT:  Yeah.

UNIDENTIFIED SPEAKER:  It's not the City's signage of 4118.  It's the discrepancy of the schools with the -- now with the 500 being put --

THE COURT:  Oh, I see.

UNIDENTIFIED SPEAKER:  It's the safe school zone. Some of them have the city signage on the fence, and then they have this safe school zone signing as well, which creates a lot of --

THE COURT:  Confusion?

9

UNIDENTIFIED SPEAKER:  -- confusion, correct.

THE COURT:  So, what I don't want to see is unnecessary injunctive relief requests being made because of a lack of uniformity, and if this is the school district, perhaps the City Attorney's Offices, once again, can coordinate with the school district because apparently they're putting up signage that may meet with due process and may not, but it seemed to be rather inconsistent.

MR. MARCUS:  And we can certainly do that, your Honor.  But, just as a reminder, the school district is a separate entity.  We can cooperate and cajole as best we can, but they are not subject to my direction.

THE COURT:  I totally understand that, and we can do this.  But right now I'm not seeing a central authority, and I do understand that you don't have jurisdiction over the school district.  So, I understand that's not your responsibility, but you can imagine when injunctive relief flows, if it's well taken, how chilling that is.  I mean, the mass majority of the public's not going to sort out whether it's a school district or the City or everybody else.  It just is going to put a stop to these efforts to clear up the area around the schools.

But I leave that to you.  I'm just tossing ideas out there for you.  You conduct the way you want to.  I'm the Court, and it will come to me or not eventually in

10

litigation.

The third thing is that in this point count, there's supposed to be a point count based upon the 60 percent number, and in some place, it floated through the Court that there was some talk about some of these numbers and some of these units coming over from Triple H, and I'd like to have a discussion because Judge Birotte, Michelle Martinez, who are involved, all of us had believed that these were new units based upon the point and time count, that this wasn't a shift of already approved Triple H funds where 5,000 units would be transferred over.

So, I'd like to get a little bit more clarity today.  We can talk about that privately.  That may be a false concern on my part, but I want to be absolutely clear that these are new units.

The third is -- or fourth is that there's some kind of concern by the City Council concerning whether this point and time count is valid or not, whether there's an undercount, Mr. Marcus.  I'd like to be apprised through you of your best estimate about how that's going to proceed because, well, the point and time count is the 12 thousand some at the present time.  I know the Council apparently is concerned that there's maybe an undercount as to the Plaintiffs.  So, nothing to respond to right now.

The last general discussion, and I'll send you

11

into a settlement situation in just a moment, is 4118.  When this was put before the Court, the Court had a specific statute.  If there are modifications being made to that statute, then I need to know about that because those modifications are going to change in 4118 and the agreement and approval by the Court.  Not that you're not free to modify that.  You are.  But I have to be aware of that because if I'm going to uphold or not uphold this agreement or find fault or lend my support to it, I need to make certain that when the counsel is changing this, that the Court's aware of those changes, and I need that to be a formal notification to the Court.

And, lastly, I want to work out whatever process and procedure is acceptable to both of you for the Special Master and compensation.  One is that this could be treated as the normal special master where it comes to the Court first for my approval, then back to the City for your approval.  There was a side agreement apparently struck between you and the Special Master, but I don't want to get involved in that.  I want the Special Master and you to talk about that today and work that out so you're both satisfied, but I want this to take place quickly.

And, honestly, we received a couple of calls from Anna and Mary Martinez's office through the Special Master, and I expect that any -- any communication between the

12

Special Master and my Court is not subject to either of you knowing the content about. That Special Master is the Court's Special Master.

And, second, I expect the Special Master to meaningfully monitor this, and that is I expect her on occasion to be out in different districts trying to head off litigation or call to all of our attention those concerns, especially the signage that came to my attention, because of the school district, et cetera, and try to coordinate that so this goes smoothly.

I'd like to have the two of you together. This is on the phone. You can have Scott, anybody join you that you'd like on the phone today, but I'd like to mention about half an hour and 45 minutes. And, Michelle, I'd like you to be involved and Brooke also as the Special Master, but let the City and the Plaintiffs talk first. Let them bring you then into the conversation if they choose to.

Now, Judge Birotte's also standing by, but he's in litigation, and I was in litigation until yesterday, not knowing when the jury would return. So, I wasn't able to travel to Los Angeles, and I'm not asking him to travel down here today.

So, can I mention about a half an hour or 45 minutes for a moment and have the two of you talk back in chambers for a minute? Okay. All right. Why don't you

13

come with me then.

And, Brooke, I'm going to bring you with me and Michelle also, and let's see if we can participate a little bit more meaningfully in the settlement negotiations, which I wasn't privy to.  So, I'll stand by.  And if at any time I need to wall off, I'll get Judge Birotte on the phone.  That's fine.  Come on with me for a moment.

(Proceedings concluded.)

14

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/Jordan Keilty                    11/4/2022
Transcriber                         Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:


/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.