# FROM THE KINGDOM OF 'daredeemer '

## By Proclamation And Decree Under Da Blood Of Yeshua Da Messiah...

ADRIAN D. MOON
955 NORTH LAKE AVE
PASADENA CA 91104
CELL: (626) 360-9896
EMAIL: adriandaredeemer@gmail.com

*original*

2022 NOV 14 AM 9: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY ___

EES

Attorney For Cross-Petitioner-Respondent-Plaintiff-Defendant Intervenor-Victim-Appellant,

*U.S. CENTRAL DISTRICT COURT-WESTERN DIVISION*

COURT OF APPEAL IN THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT , DIVISION _p_
IN THE COUNTY OF LOS ANGELES-C.C.B. INC.

*L.A. HUEMAN ALLIANCE ET. AL*
ADRIAN DAMICO MOON,

By Authority of The Almighty Creator,

Cross-Petitioner-Respondent-Plaintiff-
Defendant Intervenor-Victim-Appellant,

vs.

*CITY OF LOS ANGELES;*
COUNTY OF LOS ANGELES-BOARD OF
SUPERVISORS ET. AL.,

At the Behest of Satan The Devil,

Cross-Respondents-Petitioners-Defendants-
Appellees,

" JUDGEMENT IS COMING "

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

*Case No. 2: 20-cv-02291-DOC(RES)*

Case No.   **B324374**

**C.O.A. Identical Pending Lead Related Cases;**
B324101; B323793 ; B323704 ; B323702 ;
B323697 ; B323696 ; B323672 ; B323427 ;
B323424 ; B323322 ; B323123 ; B323122 ;
B322780 ; B321983 ; B319943 ; B319557 ;
B316615 ; BV33634 ; ET. AL.
**U.S. DISTRICT COURT:** Identical Pending
*AND* Lead Related Case: 2:20-cv-02291-DOC (res)
**Superior Court Pending Related Cases:**
BA332095 ; BA362256 ; BD481244 ;
22STRO03447 ; 22STCP00120 ; 22STRO03521;
21PDUD00319 ; 21STRO04719 ; 22STRO00624 ;
22CHRO00727 ; 22PDRO01285 ; 20STCV28426
; 20STCP04250 ; 22PDRO01259 ET. AL.
*SUPPLEMENTAL IN SUPPORT OF*
**NOTICE TO "DAMNED FOOLS" RECUSED
DEFENDANTS ELWOOD LUI AND
FRANCES ROTHSCHILD ET. AL. OF THE
STIPULATION SETTLEMENT
AGREEMENT BETWEEN THE PARTIES
TO PAY 'daredeemer' THE LUMP SUM OF
SEVEN (7) BILLIONS DOLLARS ET. AL.
( Proposed ) ORDER THEREON**

**DATE: NOVEMBER 4, 2022**
**TIME: 8:30 a.m. or soon after to be heard**
**DIVISION:** P *and 110 A or 9 C*
**LOC. : 300 S. SPRING ST. 2ND FL. L.A. 90013**
*411 W. 4th Street, S.A. L.A. CA 90012*
*355 Temple St. 8th fl. L.A CA 90012*
**COVID-19: HOST, HOST, OR HOLY SPIRIT**

I AM ADRIAN D. MOON, ( hereinafter , 'daredeemer' ) Cross-Petitioner-Respondent-Plaintiff-
Defendant Intervenor-Victim and Appellant, hereby submits , Notice of Stipulation Settlement
Agreement , *Motions A (3) pages Motion B (20) pages incorporated by reference*
DATED: November 6, 2022 *Motion C, Motion*
*Motion D (21) pages*

*ADRIAN D. MOON*

_____
ADRIAN D. MOON, Attorney In Pro Se

*page 2*

# FROM THE KINGDOM OF 'daredeemer'

## By Proclamation And Decree Under Da Blood Of Yeshua Da Messiah...

ADRIAN D. MOON
955 NORTH LAKE AVE
PASADENA CA 91104
CELL: (626) 360-9896
EMAIL: adriandaredeemer@gmail.com

Attorney For Writ Petitioner-Victim

### UNITED STATES SUPREME COURT

ADRIAN DAMICO MOON,

    Petitioner-Victim

    vs.

SATAN THE DEVIL ET. AL.,

    Respondents-Defendants,

)
)
)
)
)
)
)
)
)
)
)

NEW CASE NO. _____

**FORMAL CRIMINAL COMPLAINT AGAINST UNITED STATES SUPREME COURT CLERK'S ; JUSTICES AND POLICE DEPARTMENT PENAL CODE SECTION 182 ( a-c) ET. SEQ.**

### FORMAL CRIMINAL COMPLAINT

I AM ADRIAN D. MOON , (hereinafter , 'daredeemer' ) Petitoner-Victim , chosen one, begotten Son of the Almighty Creator , "EL ELYON" in the Mighty Name of Yeshua Jesus Christ the Messiah... paragon , with integrity and veracity , proclaim and decree as follows,

1. On August 15, 2022, the U.S. Supreme Court Clerks Office receive the attached Writ of Certiorari and a Request to Proceed in Forma Pauperis ! 'daredeemer' has not received any correspondence for the Justices of the case no. or any deficiency letter !

2. Since August 15, 2022, 'daredeemer' has placed three times a week voice-messages to the following numbers (202) 479-3011, (202) 479-3022, (202) 479-3263, Clerks Harris, Atkins and Barnes; (202) 479-3139, (202) 479-3341, (202) 479-3369, (202) 479-2369 , (202) 479-3211, to Chief Jeffery Smith and his underlings !

3. These Defendants have in the recent passed held the New case number from 'daredeemer' in Case entitled Moon v. Satan the Devil et. al. , 20-1457 whereby 'daredeemer' did not receive the case no. until April 15, 2021...

PLEASE INVESTIGATE THESE CRIMES FOR INDICTMENT AND PROSECUTION, AND PROVIDE 'daredeemer' WITH THE NEW CASE NO. EXPEDITIOUSLY BY EMAIL , WEBSITE OR VOICE-MESSAGES !!! AMEN AND AMEN

DATED: October 29, 2022

-------------------------------------------
ADRIAN D. MOON, PETITIONER-VICTIM

FORMAL CRIMINAL COMPLAINT AGAINST THE U.S. SUPREMEN COURT CLERKS, JUSTICES AND POLICE DEPARTMENT ET. SEQ. - 1

Motion A (3) pages pages

# FROM THE KINGDOM OF 'daredeemer'

## Supreme Court no. _____

### SUPREME COURT OF UNITED STATES OF AMERICA

ADRIAN DAMICO MOON ,

Petitioner,

Vs.

SATAN THE DEVIL ET. AL .

Respondents,

On Petition for Writ of Certiorari

To the California Supreme Court and

To the United States Court of Appeal for the

Ninth Circuit Court of Appeal

## PETITION FOR WRIT OF CERTIORARI

ADRIAN DAMICO MOON, COUNSEL OF RECORD

955 NORTH LAKE AVE

PASADENA CA 91104

CELL: (626) 360-9896 EMAIL: adriandaredeemer@gmail.com

page 4

# FROM THE KINGDOM OF 'daredeemer'

## Supreme Court no. _____

_____

## SUPREME COURT OF UNITED STATES OF AMERICA

_____

**ADRIAN DAMICO MOON** ,

**Petitioner,**

Vs.

**SATAN THE DEVIL ET. AL** .

**Respondents,**

_____

**On Petition for Writ of Certiorari**

### PROOF OF SERVICE

I AM ADRIAN DAMICO MOON, 'daredeemer' do decree that on this date of August 10, 2022 as required by Supreme Court Rule 29, I have served the enclosed Petition for Writ of Certiorari on each party to the above proceeding or that party's counsel , and on every other person required to be served , by depositing an envelope containing the above documents in the United States mail properly addressed to each of them and with first-class postage prepaid or by delivery to a third-party commercial carrier for delivery within 3 calendar days.

U.S. DEPT. OF JUSTICE          U.S. DEPT OF JUSTICE

ATTN: MERRICK GARLAND       ATTN: ROB BONTA/ LANCE WINTERS

930 Pennsylvania ave NW        300 South Spring St. #1702

Washington , D.C. 20530        Los Angeles, CA 90013

We decree under the penalty of Sin that the foregoing is true and correct so help me GOD !

Executed on August 10, 2022          _____

                                    Declarant

page 5

**SUBP-002**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>ADRIAN DAMICO MOON<br>955 NORTH LAKE AVE<br>PASADENA CA 91104<br><br>TELEPHONE NO.: (626) 360-9896   FAX NO.:<br>E-MAIL ADDRESS: adriandaredeemer@gmail.com<br>ATTORNEY FOR *(Name):* Defendant and Cross-Plaintiff In Pro Se | FOR COURT USE ONLY |

NAME OF COURT: **SUPERIOR COURT OF CALIFORNIA**
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES CA 90012
BRANCH NAME: CENTRAL ( C.C.B. INC.)

PLAINTIFF/ PETITIONER: LEAH WHETSTONE

DEFENDANT/ RESPONDENT: ADRIAN D. MOON

| **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION** | CASE NUMBER:<br>21PDUD00319<br>EVICTION CASE |
|---|---|

THE PEOPLE OF THE STATE OF CALIFORNIA, TO *(name, address, and telephone number of witness, if known):*
C.S.S./ Custodian of Grievance Records   211 WEST TEMPLE STREET L.A. CA 90012   (213) 473-6100

1.  YOU ARE ORDERED TO APPEAR AS A WITNESS in this action at the date, time, and place shown in the box below UNLESS your appearance is excused as indicated in box 3b below or you make an agreement with the person named in item 4 below.   *ADM*

   a.  Date: JULY 27 2021   Time: 1:30 P.M.   [x] Dept.: 93   [ ] Div.:   [ ] Room:

   b.  Address: 111 NORTH HILL STREET L.A. CA 90012

2.  IF YOU HAVE BEEN SERVED WITH THIS SUBPOENA AS A CUSTODIAN OF CONSUMER OR EMPLOYEE RECORDS UNDER CODE OF CIVIL PROCEDURE SECTION 1985.3 OR 1985.6 AND A MOTION TO QUASH OR AN OBJECTION HAS BEEN SERVED ON YOU, A COURT ORDER OR AGREEMENT OF THE PARTIES, WITNESSES, *AND* CONSUMER OR EMPLOYEE AFFECTED MUST BE OBTAINED BEFORE YOU ARE REQUIRED TO PRODUCE CONSUMER OR EMPLOYEE RECORDS.

3.  YOU ARE *(item a or b must be checked):*

   a.  [ ]  Ordered to appear in person and to produce the records described in the declaration on page two or the attached declaration or affidavit. The personal attendance of the custodian or other qualified witness and the production of the original records are required by this subpoena. The procedure authorized by Evidence Code sections 1560(b), 1561, and 1562 will not be deemed sufficient compliance with this subpoena.

   b.  [x]  Not required to appear in person if you produce (i) the records described in the declaration on page two or the attached declaration or affidavit and (ii) a completed declaration of custodian of records in compliance with Evidence Code sections 1560, 1561, 1562, and 1271. (1) Place a copy of the records in an envelope (or other wrapper). Enclose the original declaration of the custodian with the records. Seal the envelope. (2) Attach a copy of this subpoena to the envelope or write on the envelope the case name and number; your name; and the date, time, and place from item 1 in the box above. (3) Place this first envelope in an outer envelope, seal it, and mail it to the clerk of the court at the address in item 1. (4) Mail a copy of your declaration to the attorney or party listed at the top of this form. *or give to Adrian D. Moon*

4.  IF YOU HAVE ANY QUESTIONS ABOUT THE TIME OR DATE YOU ARE TO APPEAR, OR IF YOU WANT TO BE CERTAIN THAT YOUR PRESENCE IS REQUIRED, CONTACT THE FOLLOWING PERSON BEFORE THE DATE ON WHICH YOU ARE TO APPEAR:

   a.  Name of subpoenaing party or attorney: ADRIAN D. MOON   b.  Telephone number: (626) 360-9896

5.  Witness Fees: You are entitled to witness fees and mileage actually traveled both ways, as provided by law, if you request them at the time of service. You may request them before your scheduled appearance from the person named in item 4.

DISOBEDIENCE OF THIS SUBPOENA MAY BE PUNISHED AS CONTEMPT BY THIS COURT. YOU WILL ALSO BE LIABLE FOR THE SUM OF FIVE HUNDRED DOLLARS AND ALL DAMAGES RESULTING FROM YOUR FAILURE TO OBEY.

Date issued: JUL 06 2021

KARLA BLUMENBERG
*(TYPE OR PRINT NAME)*

▶ _Karla Blumenberg_
*(SIGNATURE OF PERSON ISSUING SUBPOENA)*
_CSA II_
*(TITLE)*

(Declaration in support of subpoena on reverse)

Page 1 of 3

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUBP-002 [Rev January 1, 2012] **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION** Code of Civil Procedure,<br>§ 1985 et seq.<br>www.courts.ca.gov

Motion B (26) pages   page 6



SUBP-002

| PLAINTIFF/PETITIONER: | WHETSTONE | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | Moon | 2180VD00319 |

The production of the documents, electronically stored information, or other things sought by the subpoena on page one is supported by *(check one)*:

[ ] the attached affidavit or   [ ] the following declaration:

**DECLARATION IN SUPPORT OF CIVIL SUBPOENA (DUCES TECUM) FOR PERSONAL APPEARANCE AND PRODUCTION OF DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND THINGS AT TRIAL OR HEARING**
*(Code Civ. Proc., §§ 1985,1987.5)*

1. I, the undersigned, declare I am the  [ ] plaintiff  [x] defendant  [ ] petitioner  [ ] respondent
   [x] attorney for *(specify):* ADRIAN D. MOON       [x] other *(specify):* CROSS-PLAINTIFF
   in the above-entitled action.

2. The witness has possession or control of the documents, electronically stored information, or other things listed below, and shall produce them at the time and place specified in the Civil Subpoena for Personal Appearance and Production of Records at Trial or Hearing on page one of this form *(specify the exact documents or other things to be produce; if electronically stored information is demanded, the form or forms in which each type of information is to be produced may be specified):*

   COPY OF GREIVANCE FILED ON OR ABOUT FEBRUARY 17, 2020 AT THE SOUTH FACILITY WHILE INCARCERATED UNDER BOOKING NUMBER 5832140

   [x] Continued on Attachment 2.

3. Good cause exists for the production of the documents, electronically stored information, or other things described in paragraph 2 for the following reasons:
   MATERIAL EVIDENCE TO PROVE-UP THE CASE OF FALSE IMPRISONMENT AND KIDNAP FOR RANSOM

   [x] Continued on Attachment 3.

4. The documents, electronically stored information, or other things described in paragraph 2 are material to the issues involved in this case for the following reasons:

   [ ] Continued on Attachment 4.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: JULY 6, 2021

ADRIAN D. MOON
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF [x] SUBPOENAING PARTY  [x] ATTORNEY FOR SUBPOENAING PARTY)

---



**Requests for Accommodations**
Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least 5 days before the date on which you are to appear. Contact the clerk's office or go to *www.courtinfo.ca.gov/forms* for *Request for Accommodations by Persons With Disabilities and Order* (form MC-410). (Civil Code, § 54.8.)

---

*(Proof of service on page 3)*

SUBP-002 [Rev. January 1, 2012]     **CIVIL SUBPOENA (DUCES TECUM) for Personal Appearance and Production of Documents, Electronically Stored Information, and Things at Trial or Hearing and DECLARATION**     **Page 2 of 3**

page 7


**Sheriff's Department**    *Welcome to Inmate Information Center*

(The information was current as of: 07/06/2021 10:16 PST)

*Feb 18, 2020*
*19,*

*CRIMINAL CASE PEOPLE V MOON, Case NO OPR000351*

Search For Another Inmate       Back To The Search Result

*South Facility (661) 295-8840*

Booking No.: **5832140**    Last Name: **MOON**    First Name: **ADRIAN**    Middle Name:

Sex: **M**    Race: **B**    Date Of Birth: **06/01/1960**    Age: **59**    Hair: **BLK**    Eyes: **HAZ**    Height: **603**    Weight: **230**

Charge Level: **F   (Felony)**

### ARREST

Arrest Date: **01/10/2020**    Arrest Time: **1606**    Arrest Agency: **1953**    Agency Description: **PASADENA PD**

Date Booked: **01/10/2020**    Time Booked: **1627**    Booking Location: **1953**    Location Description: **PD - PASADENA**

### BAIL

Total Bail Amount: **0**    Total Hold Bail Amount: **0.00**    Grand Total: **0.00**

### HOUSING LOCATION

Housing Location: -

Permanent Housing Assigned Date: **02/19/2020**    Assigned Time: **0823**

Facility:
Address:      City:

### Schedule A Visit

*For County facility visiting hours, Please call (213) 473-6100 at Inmate Information Center.*

### COURT

Next Court Code: **M80**    Next Court Date: **03/18/2020**    Next Court Time: **0830**    Next Court Case: **0PR0035101**

Court Name: **LOS ANGELES MUNI CT DIV 80**
Court Address: **429 BAUCHET STREET**    Court City: **LOS ANGELESUPT**

### RELEASE

Actual Release Date: **02/19/2020**    Release Time: **1058**

Release Reason: **CUST**    Reason Description: **CUSTODY RELEASE**

Release Agency: **PROB**    Agency Description:

### CASE INFORMATION

| Case No. | Court Name | Court Address | Court City | Bail Amt. | Fine Amt. | Court Date | Sent. Date | Sent. Day(s) | Disp Code |
|---|---|---|---|---|---|---|---|---|---|
| | LOS ANGELES MUNI CT DIV 80 | 429 BAUCHET STREET | LOS ANGELESUPT | 0 | .00 | 03/18/2020 | 02/14/2020 | 0 | OR |
| | | | | 0 | .00 | | | 0 | |

Click on specific Case No. for detailed information.

*Attachment 2*

*page 5*

**COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT**

## INMATE GRIEVANCE FORM

See the back copy for instructions.
All grievances must be filed within 15 calendar days.
Grievances will be responded to within 15 calendar days
Appeals must be filed within 15 calendar days.

**Only one grievance per form.**
Solamente una queja por forma.

Is this grievance an emergency?
¿Es ésta que la una emergencia?

**NO**

If this is a medical or mental health emergency or you are aware of a specific and immediate threat to your life/safety, notify custody personnel immediately

Si ésta es una emergencia médica o de salud mental, o si tiene conocimiento de una amenaza específica e inmediata contra su vida/seguridad, notifique a un alguacil de inmediato.

| NAME NOMBRE | BOOKING NUMBER SU NÚMERO DE PRESO | FACILITY FACILIDAD | HOUSING LOC. LUGAR DE VIVIENDA | DATE FECHA |
|---|---|---|---|---|
| Adrian Moon | 5832140 | South | 46-28 | 2-18-20 |

### I HAVE A GRIEVANCE ABOUT THE FOLLOWING:

**GENERAL SERVICES**
- ☐ Living conditions
- ☐ Food
- ☐ Showers
- ☐ Property
- ☐ Mail
- ☐ Commissary/Account Balance
- ☐ Clothing/Linen/Bedding
- ☐ Educational/Vocational Programs
- ☐ Other (explain below)
- ☐ Classification
- ☐ Telephone
- ☐ Visiting

**MEDICAL/MENTAL**
- ☐ Medical Services (Place in envelope)
- ☐ Mental Health (Place in envelope)
- ☐ Dental (Place in envelope)
- ☐ Americans with Disabilities Act (ADA)
- ☐ Other (explain below)

**STAFF**
- ☑ Custody Personnel  ALEX
- ☐ Medical Staff  Villanueva
- ☐ Mental Health Staff  SHERIFF
- ☐ Other (explain below)

Optional (check only if applicable):
- ☐ Use of force
- ☐ Retaliation
- ☐ Harassment
- ☐ Racial or identity profiling
  Specify the type(s) in your explanation (please refer to the reverse side of the pink copy for more information)

### PLEASE EXPLAIN THE SPECIFIC ISSUE OR DATE OF INCIDENT, AND THE ACTION REQUESTED:

DATE, TIME, DAY OF OCCURRENCE   2-18-20  8:30 AM  TUES.

FACILITY OF OCCURRENCE   NCCF / SOUTH

LOCATION OF OCCURRENCE   NCCF / SOUTH

REQUEST FOR MONETARY DAMAGES OF SEVEN (7) Billion dollars and $1.00 nominal damages; In Violation of the Freedom Reform Act Anti-terrorist Act R.I.C.O.Act Supremacy Clause and Separation of Powers Clause

☐ In the event I am released prior to the disposition of this grievance, I waive my right to receive a mailed notification of the resolution
☑ In the event I am released prior to the disposition of this grievance, I would like to receive a mailed notification of the resolution

Mailing address 50 N. Honolulu St City LAS VEGAS State NV ZIP 89110 Phone 626 360 9896

Attention: Conflict Resolution may be available and is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and determining a finding to resolve the grievance

Inmate's Signature
X   Adrian Moon

----- FOR DEPARTMENT USE ONLY – DO NOT WRITE BELOW THIS LINE -----

| Employee Receiving Grievance | Employee # | Date and Time of Collection and Review |
|---|---|---|
| SGT B. WALSH 486603 | | FEB 18 PM 4:14 |

**EMERGENCY GRIEVANCES ONLY**

Watch commander notified of emergency grievance  BRUCE CANTLEY  280626  02/18/20, 1412

This grievance ☐ was ☑ was not handled as an emergency. If not, please explain below.
Note: Any aspect of an emergency grievance determined to be non-divergent will be processed within the standard time frame

If a disposition was rendered, please complete:

**BRIEF SUMMARY OF ACTIONS TAKEN**
NOT EMERGENT.

| FINDINGS | RELIEF |
|---|---|
| ☐ SUSTAINED | ☐ GRANTED |
| ☐ SUSTAINED IN PART | ☐ GRANTED IN PART |
| ☐ NOT SUSTAINED | ☐ DENIED |
| ☐ INCONCLUSIVE | ☐ RELIEF UNAVAILABLE |

Full disposition shall be entered in the Custody Automated Report Tracking System (CARTS)

Inmate was notified of disposition/status/modification by: _____ (Supervisor), on _____ (Date/Time)

| Supervising Nurse Receiving Grievance | Employee # | Date and Time of Review |
|---|---|---|
| | | THIS STAMP HERE |

FRONT PART 1 (WHITE COPY)

SH-J-420 Rev 05/16    White - Facility    Yellow – Inmate copy at time of disposition for an emergency grievance    Pink – Inmate copy at time of submission

**See ALL filed grievances since February 1, 2009 to present especially Ref # 5640-2019-11316-283**

page 8

| LAST NAME | FIRST NAME | MIDDLE NAME | | RELEASE DATE | REFERENCE NUMBER |
|---|---|---|---|---|---|
| | | | | | |

**CONTINUED EXPLANATION OF THE ISSUE, INCIDENT, AND ACTION REQUESTED BY THE INMATE:**

Alex Villanueva Sheriff and others have at the behest of SATAN THE DEVIL engaged in an on-going heinous criminal conspiracy through Domestic Terrorism to keep me held hostage, Kidnapped For Ransom, Falsely accused until my Blood and flesh Death. Pslam 2 N.K.J.V. Decree, 1611. By order of Kevin S. Rosenberg, Judge, Dept.80 Bauchet Courthouse on February 14, 2020 in case People v. Moon, case no. OPRO0351 at 11:00AM "It's hereby ordered that Petitioner Adrian Moon be released by court release, on his own Recognizance immediately." Since this order I've been transferred Four times, Filed Four Emergency grievances and at the behest of SATAN the Devil, I AM still being held hostage against MY WILL, Amen Love You

--- FOR DEPARTMENT USE ONLY – DO NOT WRITE BELOW THIS LINE ---

**BRIEF SUMMARY OF INITIAL ACTIONS TAKEN:**

(S610-2020-0205-289) PER CA WYN722# 520346 AT NCCF, I/m MOON HAS NUMEROUS GRIEVANCES FILED INDICATING THE SAME COMPLAINTS LISTED ON THIS ONE. FORWARD TO NCCF TO BE GROUPED WITH OTHERS (DUPLICATES). IN REGARDS TO O.R. CLAIM, I CONTACTED IRC WHO WILL SEND A TELETYPE FOR HIS TRANSPORT TO IRC FOR RELEASE. IN REGARDS TO "USE OF FORCE." I/m MOON SAID IT WAS VIA AUTHORITY AND NO PHYSICAL CONTACT. NO USE of FORCE OCCURRED AND NO USE of FORCE INVESTIGATION NEEDED. HAVE VIDEO INTERVIEW IF NEEDED.

If an emergency disposition is not rendered at this time, please indicate an interim status below.

| INTERIM STATUS | |
|---|---|
| FORCE INVESTIGATION  REF# _____ | REFERRED – COURT SERVICES |
| | REFERRED – MEDICAL SERVICES |
| I.A.B INVESTIGATION | REFERRED – DMH |
| I.C.I.B INVESTIGATION | REFERRED – OTHER |
| LATE INVESTIGATION - ONGOING | REFERRED – OTHER AGENCY / ENTITY / STATION |
| REFERRED – CHAPLAIN | UNIT LEVEL INVESTIGATION |

*Full disposition or interim status shall be entered in the Custody Automated Report Tracking System (CARTS)

| APPROVED – WATCH COMMANDER | DATE | UNIT INMATE GRIEVANCE COORDINATOR REVIEW | DATE |
|---|---|---|---|
| | | | |

Grievances marked as an "emergency" shall be approved by the watch commander and reviewed by the unit inmate grievance coordinator.

Unit Commander Notification Made? ☐ YES OR ☐ NO
(Notification Only As Needed Per CDM 8-03/010.00)

**BACK PART 1 (WHITE COPY)**

SH-J-420 Rev 05/16    White - Facility    Yellow – Inmate copy at time of disposition for an emergency grievance    Pink – Inmate copy at time of submission

page 10

## COUNTY OF LOS ANGELES SHERIFF'S DEPARTMENT
## NOTIFICATION OF DISPOSITON

**REFERENCE #: 5610-2020-0219-224**

### INFORMATION:

☐ **Handle as an emergent.**

| Booking | Last | First | Middle |
|---|---|---|---|
| 5832140 | MOON | ADRIAN | |
| Facility | Housing Location | Date of Collection | |
| IRC | IRIC | 02/18/2020 | |
| Requesting to Speak With | Requesting for Service | Grievance | |
| | | Living conditions | |

Request or Grievance Details:

Inmate is stating that he is falsely imprisoned and being held against his will.

### DISPOSITION:

Complaint Type

Miscellaneous

Findings

⌄

Disposition

Resolved

Relief

⌄

**Comments**

This is a duplicate of 5640-2019-1126-283

### REVIEWED BY:

Inmate Rights Regarding the Appeal Process:

- Inmates may only submit one (1) appeal per grievance.
- An appeal shall be submitted on the appropriate appeal form, which will be provided to the inmate by custody personnel when delivering the notification of the disposition of a grievance or appeal.
- Inmates who are unable to fill out the appeal form may ask personnel for assistance.
- An appeal by an inmate must be submitted within fifteen (15) calendar days of receiving a written disposition regarding the grievance, or the appeal will be denied.
- Inmates will be advised in writing by a supervisor the result of an appeal within **15** calendar days of the appeal submission.

New issues raised by an inmate on an appeal form will not be addressed, and any decision rendered will pertain only to the present appeal issue.

**REFERENCE #: 5610-2020-0219-224**

| Conflict Resolution may be available and is voluntary for both the inmate and the involved personnel to address a grievance instead of the Department conducting a personnel investigation and determining a finding to resolve the grievance. | | |
|---|---|---|
| Inmate's Signature: | Booking #:<br>5832140 | Date: |

SH-J-420

5610-2020-0219-224

page 11

# DECLARATION OF CUSTODIAN OF RECORDS

California Evidence Code Section 1560

I, the undersigned, declare:

I am employed by the **LA COUNTY SHERIFF'S DEPARTMENT**, and am the Pitchess Detention Center South Facility designee, by the duly authorized custodian of records of the **LA COUNTY SHERIFF'S DEPARTMENT** and have the authority to certify all South Facility records pertaining to:

**MOON, ADRIAN   Booking # 5832140**

I certify that the accompanying records are true and complete copies of records maintained in the regular course and scope of business of my employer and were prepared by authorized personnel at or near the time of the acts, conditions or events which they intend to convey. No documents, records or other materials have been withheld except as noted below.

I certify that I have made a diligent, thorough and complete search of all available sources including the computer databases for both open and closed files and for all types of treatment and for all types of litigation whether in a storage facility or any other location under the control of PDC South Facility for any and all items to be produced on the attached subpoena duces tecum or authorizations for the person(s) named above.

## CERTIFICATE OF RECORDS

☒ Pursuant to Evidence Code Section 1560(e), the original records described in the Subpoena Duces Tecum/Deposition Subpoena or authorization were delivered to the requesting party.

☒ The copy is a true copy of all records described in the Subpoena Duces Tecum/Deposition Subpoena or authorization.

## CERTIFICATE OF NO RECORDS

A thorough search of files carried out under my direction and control revealed no documents, records or other materials called for in the subpoena or authorization.

REASON UNABLE TO COMPLY WITH REQUEST:

☐ This office has **never** had a File/Chart/Films on this person.

☐ This person was **never** housed/treated/employed here.

☐ Records are **lost/misplaced**.

☐ Records are **destroyed**.

☐ Other explanation below:

I declare under the penalty of perjury that the foregoing is true and correct.

_____          7-20-21
Deputy B. Gardner #473615, PDC South Facility          Date

page 12

People v Mood, case no. OPRO 00351
case no. 21PDUD 00319

**[Revised]**

## RESOLUTION OF THE BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES FURTHER AMENDING AND RESTATING THE EXECUTIVE ORDER FOR AN EVICTION MORATORIUM DURING THE EXISTENCE OF A LOCAL HEALTH EMERGENCY REGARDING NOVEL CORONAVIRUS (COVID-19)

### February 23, 2021

**WHEREAS,** on March 4, 2020, the Chair of the Los Angeles County Board of Supervisors ("Board") proclaimed, pursuant to Chapter 2.68 of the Los Angeles County Code, and the Board ratified that same day, the existence of a local emergency because the County of Los Angeles ("County") is affected by a public calamity due to conditions of disaster or extreme peril to the safety of persons and property arising as a result of the introduction of the novel coronavirus ("COVID-19") in Los Angeles County;

**WHEREAS,** also on March 4, 2020, the County Health Officer determined that there is an imminent and proximate threat to the public health from the introduction of COVID-19 in Los Angeles County, and concurrently declared a Local Health Emergency;

**WHEREAS,** ensuring that all people in the County continue to have access to running water during this public health crisis will enable compliance with public health guidelines advising people to regularly wash their hands, maintain access to clean drinking water, help prevent the spread of COVID-19, and prevent or alleviate illness or death due to the virus;

**WHEREAS,** ensuring that all customers in the County that receive power services from Southern California Edison and Southern California Gas Company (collectively, "Public Utilities") continue to have access to electricity so they are able to receive important COVID-19 information, keep critical medical equipment functioning, and utilize power, as needed, will help to prevent the spread of COVID-19 and prevent or alleviate illness or death due to the virus;

**WHEREAS,** on March 13, 2020, the Public Utilities announced that they will be suspending service disconnections for nonpayment and waiving late fees, effective immediately, for residential and business customers impacted by the COVID-19 emergency;

**WHEREAS,** on March 16, 2020, Governor Newsom issued Executive Order N-28-20 that authorizes local governments to halt evictions of renters, encourages financial institutions to slow foreclosures, and protects renters and homeowners against utility shutoffs for Californians affected by COVID-19;

**WHEREAS,** on March 19, 2020, the Chair of the Board issued an Executive Order ("Executive Order") that imposed a temporary moratorium on evictions for non-payment

HOA 103152318.1

1

page 13

of rent by residential or commercial tenants impacted by COVID-19 ("Moratorium"), commencing March 4, 2020, through May 31, 2020 ("Moratorium Period");

**WHEREAS,** on March 21, 2020, due to the continued rapid spread of COVID-19 and the need to protect the community, the County Health Officer issued a revised Safer at Home Order for Control of COVID-19 ("Safer at Home Order") prohibiting all events and gatherings and closing non-essential businesses and areas until April 19, 2020;

**WHEREAS,** on March 27, 2020, Governor Newsom issued Executive Order N-37-20 extending the period for response by tenants to unlawful detainer actions and prohibiting evictions of tenants who satisfy the requirements of Executive Order N-37-20;

**WHEREAS,** on March 31, 2020, the Board ratified the Chair's Executive Order and amended the ratified Executive Order to include a ban on rent increases in the unincorporated County to the extent permitted by State law and consistent with Chapter 8.52 of the Los Angeles County Code ("Code");

**WHEREAS,** on April 6, 2020, the California Judicial Council, the policymaking body of the California courts, issued eleven temporary emergency measures, of which Rules 1 and 2 effectively provided for a moratorium on all evictions and judicial foreclosures;

**WHEREAS,** on April 14, 2020, the Board further amended the Executive Order to: expand the County's Executive Order to include all incorporated cities with the County; include a temporary moratorium on eviction for non-payment of space rent on mobilehome owners who rent space in mobilehome parks; include a ban on rent increases in the unincorporated County to the extent permitted by State law and consistent with Chapters 8.52 and 8.57 of the County Code; and enact additional policies and make additional modifications to the Executive Order;

**WHEREAS,** COVID-19 is causing, and is expected to continue to cause, serious financial impacts to Los Angeles County residents and businesses, including the substantial loss of income due to illness, business closures, loss of employment, or reduced hours, thus impeding their ability to pay rent;

**WHEREAS,** displacing residential and commercial tenants who are unable to pay rent due to such financial impacts will worsen the present crisis by making it difficult for them to comply with the Safer at Home Order, thereby placing tenants and many others at great risk;

**WHEREAS,** while it is the County's public policy and intent to close certain businesses to protect public health, safety and welfare, the County recognizes that the interruption of any business will cause loss of, and damage to, the business. Therefore, the County finds and declares that the closure of these businesses is mandated for the public health, safety and welfare; the physical loss of, and damage to, businesses is resulting from the shutdown; and these businesses have lost the use of their property and are not functioning as intended;

page 14

WHEREAS, because homelessness and instability can exacerbate vulnerability to, and the spread of, COVID-19, the County must take measures to preserve and increase housing security and stability for Los Angeles County residents to protect public health;

WHEREAS, a County-wide approach to restricting displacement is necessary to accomplish the public health goals of limiting the spread of COVID-19 as set forth in the Safer at Home Order;

WHEREAS, based on the County's authority during a state of emergency, pursuant to Government Code section 8630 et seq. and Chapter 2.68 of the County Code, the County may issue orders to all incorporated cities within the County to provide for the protection of life and property, where necessary to preserve the public health, order, and safety;

WHEREAS, due to the continued, rapid spread of COVID-19 and the need to preserve life and property, the County has determined that continued evictions in the County and all of its incorporated cities during this COVID-19 crisis would severely impact the health, safety and welfare of County residents;

WHEREAS, loss of income as a result of COVID-19 may hinder County residents and businesses from fulfilling their financial obligations, including paying rent and making public utility payments, such as water and sewer charges;

WHEREAS, on May 12, 2020, the Board approved, and delegated authority to the Chair to execute, an Amended and Restated Executive Order that extended the Moratorium Period through June 30, 2020, unless further extended or repealed by the Board, and incorporated additional provisions;

WHEREAS, on May 12, 2020, the Board determined to reevaluate the Moratorium every thirty (30) days to consider further extensions;

WHEREAS, on June 23, 2020, the Board extended the Moratorium Period through July 31, 2020;

WHEREAS, on June 30, 2020, Governor Newsom issued Executive Order N-71-20, extending the timeframe for the protections set forth in Executive Order N-28-20, that authorized local governments to halt evictions for renters impacted by the COVID-19 pandemic through September 30, 2020;

WHEREAS, on September 1, 2020, Governor Newsom signed Assembly Bill ("AB") 3088 into law to provide immediate protections and financial relief to residential tenants, homeowners, and small landlords impacted by COVID-19, as follows:

1. Residential tenants, which includes mobilehome space renters, who are unable to pay rent between March 1, 2020, and January 31, 2021, due to financial distress related to COVID-19, including but not limited to increased childcare or

page 15

elderly care costs and health care costs, are protected from eviction as described below;

2. A landlord who serves notice on a residential tenant from March 1, 2020, through January 31, 2021, demanding payment of rent must also: (a) provide the tenant with an unsigned copy of a declaration of COVID-19-related financial distress; and (b) advise the tenant that eviction will not occur for failure to comply with the notice if the tenant provides such declaration, and additional documentation if the tenant is a high-income tenant, within fifteen (15) days;

3. A landlord may initiate an unlawful detainer action beginning October 5, 2020, if a residential tenant is unable to deliver the required declaration within the statutory time period;

4. Until February 1, 2021, a landlord is liable for damages between $1,000 and $2,500 for violation of the certain requirements if the residential tenant has provided the landlord with the required declaration of COVID-19-related financial distress;

5. A residential tenant who has provided the landlord with a signed declaration must, by January 31, 2021, pay at least 25 percent of rent owed for the months of October 2020, through January 2021, inclusive; and

6. Actions adopted by local governments between August 19, 2020, and January 31, 2021, to protect residential tenants from eviction due to financial hardship related to COVID-19 are temporarily preempted, where such actions will not become effective until February 1, 2021;

**WHEREAS**, on January 29, 2021, Governor Newsom signed Senate Bill ("SB") 91 into law, which extends through June 30, 2021, eviction protections under AB 3088, as well as the temporary preemption of a local jurisdiction's ability to enact new or amend existing eviction protections for nonpayment of rent due to financial distress related to COVID-19;

**WHEREAS**, on September 1, 2020, the Board extended the Moratorium Period through October 31, 2020, and established the County's eviction protections as the baseline for all incorporated cities within Los Angeles County, including cities that have their own local eviction moratoria, to the extent the city's moratorium does not include the same or greater tenant protections as the County's Moratorium;

**WHEREAS**, on September 4, 2020, the Centers for Disease Control and Prevention issued a nationwide eviction moratorium order providing additional protections and financial relief for residential tenants and landlords who are experiencing financial hardships, regardless of whether the hardship is related to the COVID-19 pandemic, through December 31, 2020, which has been further extended through March 31, 2021, ("CDC Order"), as follows:

HOA 103152318.1

4

page 16

1. Actions adopted by State or local governments are not preempted if they provide equal or greater tenant protections;

2. A residential tenant, which includes a mobilehome space renter, who qualifies under the CDC Order, must submit a declaration to the landlord before December 31, 2020, that the residential tenant has used best efforts to obtain all government assistance for rent or housing, is income qualified, is using best efforts to make timely partial payments to the extent feasible, and would likely end up homeless or be forced into a shared living situation if evicted, because the individual has no other available housing options.

3. Landlords violating the CDC Order may be subject to civil and/or criminal fines and penalties. Criminal penalties for violations include a fine of no more than $100,000, or $250,000 if the violation results in death, or one year in jail, or both. If the landlord is an organization, criminal penalties for violations include a fine of no more than $200,000, or $500,000 if the violation results in death, or as otherwise provided by law. The United States Department of Justice may initiate court proceedings to seek imposition of such criminal penalties.

**WHEREAS**, on September 23, 2020, Governor Newsom issued Executive Order N-80-20, further extending the timeframe for the protections set forth in Executive Order N-28-20, authorizing local governments to halt evictions of commercial renters impacted by the COVID-19 pandemic, through March 31, 2021;

**WHEREAS**, the County's Moratorium protects residential tenants and mobilehome space renters who are unable to pay rent due to financial impacts related to COVID-19 for the period of March 1, 2020, through September 30, 2020, and rent not paid during that period must be repaid by August 31, 2021 under SB 91;

**WHEREAS**, in addition to other tenant protections, the County's Moratorium protects residential tenants and mobilehome space renters from eviction for nuisance, or for unauthorized occupants or pets whose presence is necessitated by or related to the COVID-19 emergency, and commercial tenants from eviction who are unable to pay rent due to the COVID-19 pandemic, except where such occupancy is a threat to the public health or safety, as determined by a court of law;

**WHEREAS,** on January 5, 2021, the Board extended the Moratorium and its tenant protections, where not preempted, through February 28, 2021, provided greater clarity to tenants and landlords regarding their rights and responsibilities under the Moratorium, such as harassment and retaliation protections, and added new protections to the Moratorium that would have become effective February 1, 2021; however, some of these actions are now preempted by the extension of AB 3088 pursuant to SB 91;

**WHEREAS**, due to the extension of AB 3088 pursuant to SB 91, the following residential tenant protections have been removed due to preemption, previously included in the Moratorium that were to be effective February 1, 2021: (1) protection against eviction for nonpayment of rent; (2) protection against eviction for the failure to pay back

page 17

rent by the end of the repayment period under the Moratorium; (3) protection against eviction for the failure to pay back owed rent under the terms of a payment plan; (4) protection from a landlord applying monthly rental payments in a manner contrary to the tenant's wishes; and (5) extending the Moratorium to tenants who remain in possession where the unlawful detainer lawsuit has not been adjudicated;

**WHEREAS**, the Board desires to extend the Moratorium and its tenant protections, where not preempted, through June 30, 2021, authorize administrative fines and civil penalties pursuant to Chapters 8.52, and 8.57 of the County Code, and temporarily increase administrative fines and civil penalties during the Moratorium Period, and provide aggrieved tenants a private right of action for violations of the Moratorium; and

**WHEREAS**, in the interest of public health and safety, as affected by the emergency caused by the spread of COVID-19, it is necessary for the Board to adopt this Resolution Further Amending and Restating the Executive Order for an Eviction Moratorium ("Resolution") related to the protection of life and property.

**NOW, THEREFORE,** THE BOARD OF SUPERVISORS OF THE COUNTY OF LOS ANGELES DOES HEREBY PROCLAIM, RESOLVE, DETERMINE AND ORDER AS FOLLOWS:

I.    **Amendment and Restatement**.   This Resolution incorporates all aspects, restrictions, and requirements of the Moratorium adopted by the Board, as ratified and amended on March 31, 2020, April 14, 2020, May 12, 2020, June 23, 2020, July 21, 2020, September 1, 2020, October 13, 2020, November 10, 2020, January 5, 2021 and February 23, 2021.

II.   **Moratorium Period.** The Moratorium Period is hereby extended through June 30, 2021.  The Board will reevaluate the need for further extensions to or repeal of the Moratorium Period every thirty (30) days.

III.  **Definitions.**  For purposes of this Moratorium, the following terms are defined as follows:

A.    [Intentionally Left Blank]

B.    "Financial Impacts" means any of the following:

1.    Substantial loss of household income caused by the COVID-19 pandemic;

2.    Loss of revenue or business by Tenants due to business closure;

3.    Increased costs;

4.    Reduced revenues or other similar reasons impacting a Tenant's ability to pay rent due;

HOA 103152318.1                                    6

page 18

5. Loss of compensable hours of work or wages, layoffs; or

6. Extraordinary out-of-pocket medical expenses.

C. "Landlord" includes all of the following or an agent of any of the following:

1. An owner of real property. for residential and/or commercial rental purposes ("rental unit" or "unit").

2. An owner of a mobilehome park.

3. An owner of a mobilehome park space.

D. "Moratorium Period" means the time period commencing March 4, 2020, through June 30, 2021, unless further extended or repealed by the Board.

E. "Protected Time Period" means the time period of March 4, 2020, through September 30, 2020, during which a residential tenant or a mobilehome space renter was unable to pay rent.

F. "Related to COVID-19" means related to any of the following:

1. A suspected or confirmed case of COVID-19, or caring for a household or family member who has a suspected or confirmed case of COVID-19;

2. Lay-off, loss of compensable work hours, or other reduction or loss of income or revenue resulting from a business closure or other economic or employer impacts related to COVID-19;

3. Compliance with an order or recommendation of the County's Health Officer to stay at home, self-quarantine, or avoid congregating with others during the state of emergency;

4. Extraordinary out-of-pocket medical expenses related to the diagnosis of, testing for, and/or treatment of COVID-19; or

5. Child care needs arising from school closures in response to COVID-19.

G. "Residential Tenant" means a residential tenant or a mobilehome space renter.

H. "Tenant" includes all of the following:

1. Tenants of a rental unit.

2. Tenants who rent space or a lot in a mobilehome park.



3.      Tenants of commercial property, as defined in subdivision (c) of Section 1162 of the Civil Code, including, but not limited to, a commercial tenant using a property as a storage facility for commercial purposes. The following tenants of commercial property are excluded from the protections of this Moratorium:

   a.      Effective June 1, 2020, commercial tenants that are multi-national, publicly-traded, or have more than 100 employees.

   b.      Effective September 1, 2020, commercial tenants of space or property located at airports.

## IV.    General Applicability of Moratorium.

A.      Application.

Consistent with the provisions of Paragraph V, VI, VII, and VIII, this Moratorium applies to nonpayment eviction notices, no-fault eviction notices, rent increase notices, and unlawful detainer actions served and/or filed on or after March 4, 2020.

B.      Jurisdiction.

1.      Unincorporated County.    This Moratorium applies to all unincorporated areas of the County.

2.      Incorporated Cities within County. Effective September 1, 2020, this Moratorium applies to incorporated cities within the County of Los Angeles pursuant to Government Code section 8630, et seq. and Chapter 2.68 of the County Code.

   a.      It is the intent of the County, in enacting this Moratorium, to provide uniform, minimum standards protecting Tenants during this local emergency.

   b.      Nothing in this Moratorium shall be construed to preclude any incorporated city within the County from imposing, or continuing to impose, greater local protections than are imposed by this Moratorium if the protections are not inconsistent with this Moratorium and are not preempted by State or federal regulations.

   c.      Examples of greater local protections include, but are not limited to, granting additional time for commercial Tenants to notify a Landlord of an inability to pay rent, removing a requirement that a commercial Tenant notify a Landlord of an inability to pay, removing a requirement for a commercial Tenant to provide a certification or evidence of an inability to

HOA 103152318.1

8

page 20

pay rent, and expanding the prohibition on evictions of Tenants to include additional prohibited grounds for eviction.



**V.    Moratorium.** A temporary moratorium on evictions of Tenants, impacted by the COVID-19 crisis is imposed as follows:

A.    No Landlord shall evict a Tenant as follows:

1.    Nonpayment of Rent. A Tenant shall not be evicted for nonpayment of rent, late charges, interest, or any other fees accrued if the Tenant demonstrates an inability to pay rent and/or such related charges due to Financial Impacts Related to COVID-19, the state of emergency regarding COVID-19, or following government-recommended COVID-19 precautions, and the Tenant has provided notice to the Landlord within seven (7) days after the date that rent and/or such related charges were due, unless extenuating circumstances exist, that the Tenant is unable to pay.

a.    Moratorium Period. Commercial Tenants who are unable to pay rent incurred during the Moratorium Period are protected from eviction under this Moratorium, so long as the reason for nonpayment is Financial Impacts Related to COVID-19, and the commercial Tenant provides notice to the Landlord to this effect within the time-frame specified in this Paragraph V.

b.    Protected Time Period. Residential Tenants who were unable to pay rent incurred during the Protected Time Period are protected from eviction under this Moratorium so long as the reason for nonpayment was Financial Impacts Related to COVID-19, and the Residential Tenant has provided notice to the Landlord to this effect within the time-frame specified in this Paragraph V.

2.    No-Fault Termination of Tenancy or Occupancy. A Tenant shall not be evicted where grounds for terminating the tenancy or occupancy is not based on any alleged fault by the Tenant, including, but not limited to, those stated in Code of Civil Procedure section 1161 et seq., and Chapters 8.52 and 8.57 of the County Code. No-Fault termination of tenancy or occupancy also includes the intent to demolish or to substantially remodel the real property.

3.    Nuisance or Unauthorized Occupants or Pets. A Residential Tenant shall not be evicted for nuisance or for unauthorized occupants or pets whose presence is necessitated by or related to the COVID-19 emergency.

page 21

4.    Denial of Entry.  A Residential Tenant shall not be evicted on the ground that such tenant denied entry by the Landlord into the rental unit, subject to the following:

a.    The following circumstances permit entry into the Residential Tenant's unit:

i.    Remedying a condition that substantially endangers or impairs the health or safety of a Residential Tenant or other persons in, or in the vicinity of, the rental unit, or

ii.    Residential Tenant is causing or threatening to cause substantial damage to the rental unit.

b.    If a Landlord seeks entry pursuant to subdivision (a) above, the Landlord must:

i.    Not permit entry by any person who is, or who the Landlord has good cause to believe is, a carrier of COVID-19.

ii.    Ensure that appropriate social distancing, cleaning, and sanitation measures are taken to protect the Residential Tenant and members of the household from risk of transmitting COVID-19 as a result of entry into the rental unit. Such measures must account for: the Residential Tenant notifying Landlord that the Residential Tenant, or a member of the household, has or believes in good faith to have been recently exposed to COVID-19; or the Residential Tenant notifying Landlord that the Residential Tenant, or a member of the household, is at a higher risk for more serious complications from COVID-19.

iii.    A Landlord who enters the rental unit shall promptly leave the rental unit if the Residential Tenant revokes permission to enter because of the Landlord's failure to observe appropriate social distancing, cleaning, and sanitization measures.

HOA 103152318.1

10

*page 22*

c.   For purposes of this subsection only, "Landlord" includes, but is not limited to, any person authorized by the Landlord to enter the rental unit, such as maintenance personnel, a prospective buyer, or a prospective tenant.

5.   Notwithstanding (1) through (4), above, or any other provision of this Moratorium, this Moratorium shall not apply where the eviction is necessary to maintain compliance with the requirements of Civil Code section 1941.1, Health and Safety Code sections 17920.3 or 17920.10, or any other applicable law governing the habitability of rental units, or where the Tenant's occupancy is otherwise a threat to the public health or safety as determined by a court of law.

B.   <u>Tenant Certification</u>.

1.   <u>Residential Tenants</u>.   Residential Tenants, during the Protection Time Period, may provide, and Landlords must accept, a self-certification of inability to pay rent, and are required to provide notice to the Landlord to this effect within the time-frame specified in this Paragraph V.

2.   <u>Commercial Tenants</u>.

a.   Commercial Tenants with nine (9) employees or fewer, may provide, and Landlords must accept, a self-certification of inability to pay rent, and are required to provide notice to the Landlord to this effect within the time-frame specified in this Paragraph V.

b.   Commercial Tenants with ten (10) or more, but fewer than 100, employees must provide written documentation demonstrating financial hardship, along with notice of inability to pay rent, to the Landlord within the time-frame specified in this Paragraph V.

C.   <u>Repayment of Rent</u>. Rent unpaid during the Moratorium Period in accordance with this Moratorium shall be repaid pursuant to the following:

1.   <u>Repayment for Residential Tenants</u>.   Subject to state law requirements, Residential Tenants shall have up to twelve (12) months from the expiration of the Protected Time Period to repay unpaid rent incurred during the Protected Time Period.   Effective January 29, 2021, SB 91 requires repayment of such rental debt to be completed by no later than August 31, 2021.

page 23

2.   <u>Repayment for Commercial Tenants</u>.   Commercial Tenants must adhere to the following repayment schedule at the end of the Moratorium Period:

a.   Commercial Tenants with nine (9) employees or fewer shall have twelve (12) months from the expiration of the Moratorium Period to repay unpaid rent.

b.   Commercial Tenants with ten (10) or more, but fewer than 100, employees, shall have six (6) months from the expiration of the Moratorium Period to repay unpaid rent, in equal installments, unless the commercial Tenant and Landlord agree to an alternate payment arrangement.

3.   <u>Partial Payments</u>.   Tenants and Landlords are encouraged to agree on a payment plan during this Moratorium Period, and nothing herein shall be construed to prevent a Landlord from requesting and accepting partial rent payments, or a Tenant from making such payments, if the Tenant is financially able to do so.

VI.   **Rent Increases in Unincorporated County Prohibited.**   Landlords shall not increase rents for Residential Tenants in the unincorporated County during the Moratorium Period, to the extent otherwise permitted under State law and consistent with Chapters 8.52 and 8.57 of the County Code.   **<u>Nothing in this Moratorium shall be construed to apply this limitation of rent increases in incorporated cities within the County.</u>**

VII.   **Pass-Throughs or Other Fees Prohibited.**   Landlords shall not impose any pass-throughs otherwise permitted under Chapters 8.52 and 8.57 of the County Code, or charge interest or late fees on unpaid rent or other amounts otherwise owed, during the Moratorium Period.   Landlords are prohibited from retroactively imposing or collecting any such amounts following the termination or expiration of the Moratorium.

VIII.   **Harassment and Retaliation Protections.**   Landlords, and those acting on their behalf or direction, are prohibited from harassing, intimidating, or retaliating against Tenants for acts or omissions by Tenants permitted under this Moratorium, and such acts by Landlord or Landlord's agent will be deemed to be violations of the Retaliatory Eviction and Harassment provisions as set forth in County Code Sections 8.52.130 and 8.57.100 and as expanded herein.   Harassing, intimidating, or retaliatory acts by Landlords, and those acting on their behalf or direction, include, but are not limited to:

A.   Interrupting, terminating, or failing to provide all services required to be provided by the Landlord related to the use or occupancy of a rental unit ("Housing Services") under the terms of a lease agreement or under federal,

page 24

State, County, or local housing, health, or safety laws unless such Housing Services are closed due to Health Officer Orders;

B.   Failing to perform repairs and maintenance required by a rental agreement or by federal, State or local housing, health, or safety laws;

C.   Failing to exercise due diligence in completing repairs and maintenance once undertaken or failing to follow appropriate industry repair, containment or remediation protocols designed to minimize exposure to noise, dust, lead, paint, mold, asbestos, or other building materials with potentially harmful health impacts;

D.   Abusing the Landlord's right of access into a rental unit. This includes entries, and attempted entries, for inspections that are not related to necessary repairs or services; that are excessive in number; that improperly target certain Residential Tenants; that are used to collect evidence against the occupant; or that are otherwise beyond the scope of a lawful entry;

E.   Abusing a Tenant with words that are offensive and inherently likely to provoke an immediate violent reaction. This includes words used during in-person conversations, through social media postings or messages, or other communications;

F.   Influencing or attempting to influence a Tenant to vacate a rental unit through fraud, intimidation or coercion, which shall include threatening to report a Tenant to the United States Department of Homeland Security or any other governmental or law enforcement agency;

G.   Threatening a Tenant, by word, gesture, or with physical harm;

H.   Violating any law which prohibits discrimination based on race, gender, sexual preference, sexual orientation, ethnic background, nationality, religion, age, parenthood, marriage, pregnancy, disability, human immunodeficiency virus (HIV)/acquired immune deficiency syndrome (AIDS), occupancy by a minor child, or source of income;

I.   Taking action to terminate any tenancy including service of any notice to quit or notice to bring any action to recover possession of a rental unit based upon facts which the Landlord has no reasonable cause to believe to be true or upon a legal theory which is untenable under the facts known to the Landlord. No Landlord shall be liable under this subsection for bringing an action to recover possession unless and until the Tenant has obtained a favorable termination of that action;

J.   Removing from the rental unit personal property, furnishings, or any other items without the prior written consent of a Tenant, except when done pursuant to enforcement of a legal termination of tenancy or as otherwise authorized by law;

HOA 103152318.1                                    13

PAGE 25

K. Offering payments to a Tenant to vacate more than once in six (6) months, after the Tenant has notified the Landlord in writing that the Tenant does not desire to receive further offers of payments to vacate;

L. Attempting to coerce a Tenant to vacate with offers of payment to vacate which are accompanied with threats or intimidation. This shall not include settlement offers made in good faith and not accompanied by threats or intimidation in pending eviction actions;

M. Refusing to acknowledge receipt of a Tenant's lawful rent payment;

N. Refusing to cash a rent check for over thirty (30) days;

O. Requesting information that violates a Tenant's right to privacy including, but not limited to, residence or citizenship status, protected class status, or social security number, except as required by law or in the case of a social security number, for the purpose of obtaining information to determine qualification for tenancy, or releasing such information except as required or authorized by law;

P. Interfering with a Residential Tenant's right to privacy including, but not limited to, entering or photographing portions of a rental unit that are beyond the scope of a lawful entry or inspection;

Q. Interfering with a Residential Tenant's right to quiet use and enjoyment of a rental unit as that right is defined by State law;

R. Other repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace, or quiet of any person lawfully entitled to occupancy of such rental unit and that cause, are likely to cause, or are intended to cause any person lawfully entitled to occupancy of a rental unit to vacate such rental unit or to surrender or waive any rights in relation to such occupancy;

S. Removing a Housing Service for the purpose of causing a Residential Tenant to vacate the residential unit or mobilehome.  For example, taking away a parking space knowing that a Residential Tenant cannot find alternative parking and must therefore move; and

T. Interfering with the right of a Residential Tenant to: organize and engage in concerted activities with other tenants for the purpose of mutual aid and protection; provide property access to tenant organizers, advocates, or representatives working with or on behalf of tenants living at a property; convene tenant or tenant organization meetings in an appropriate space accessible to tenants under the terms of their rental agreement; or distribute and post literature informing other tenants of their rights and of opportunities to involve themselves in their project in common areas, including lobby areas and bulletin boards.

page 26

**IX.    Administrative Fines**. A Landlord, who is determined by the Department of Consumer and Business Affairs ("DCBA"), to have violated Paragraphs V, VI, VII or VIII of this Resolution, including those relating to the harassment protections enumerated above, shall be subject to administrative fines pursuant to Sections 8.52.160 and 8.57.130 of the County Code. The maximum administrative fine for violations of Paragraph VIII of this Resolution is temporarily increased for the duration of this Moratorium from $1,000 to up to $5,000 per violation for each day the violation continues, and if the aggrieved Tenant is disabled or sixty-five (65) years of age or older, an additional fine of up to $5,000 per violation per day may be assessed.

**X.    Remedies.**

   A.    Civil Liability. Any Tenant, or any other person or entity acting on behalf of the Tenant who will fairly and adequately represent the Tenant's interests, including the County, may enforce the provisions of Paragraphs V, VI, VII or VIII of this Resolution by means of a civil action seeking civil remedies and/or equitable relief. Landlords shall be subject to civil penalties pursuant to Sections 8.52.170 and 8.57.140 of the County Code. The maximum civil penalty for violation of Paragraph VIII of this Resolution is increased from $1,000 to up to $5,000 per violation for each day the violation continues, and if the aggrieved Tenant is disabled or sixty-five (65) years of age or older, the court may award an additional penalty of up to $5,000 per violation per day. No administrative remedy need be exhausted prior to filing suit to enforce this Moratorium.

   B.    Criminal Liability. Violation of Paragraphs V, VI, VII or VIII of this Resolution shall be punishable as set forth in Section 2.68.320 of the County Code.

   C.    Affirmative Defense. Non-compliance with any provision of this Moratorium shall constitute an affirmative defense for a Tenant in any unlawful detainer action brought pursuant to California Code of Civil Procedure section 1161, as amended. Said affirmative defenses shall survive the termination or expiration of this Moratorium.

   D.    Nonexclusive Remedies and Penalties. The remedies provided in this Moratorium are not exclusive, and nothing in this Moratorium shall preclude Tenant from seeking any other remedies or penalties available at law or in equity.

**XI.**    This Moratorium addresses the County's public policy and intent to close certain businesses to protect public health, safety and welfare, and the County recognizes that the interruption of any business will cause loss of, and damage to, the business. Therefore, the County finds and declares that the closure of certain businesses is mandated for the public health, safety and welfare, the physical loss of, and damage to, businesses is resulting from the shutdown, and these businesses have lost the use of their property and are not functioning as intended.

HOA 103152318.1                    15

page 27

XII.    Grocery stores, gas stations, pharmacies and other retailers are requested to institute measures to prevent panic buying and hoarding essential goods, including, but not limited to, placing limits on the number of essential items a person can buy at one time, controlling entry to stores, and ensuring those at heightened risk of serious complications from COVID-19 are able to purchase necessities.

XIII.   **Guidelines and Board Delegations**.

A.    The Director of the DCBA, or his designee, shall issue guidelines to aid in the implementation of the Moratorium, including, but not limited to, guidance regarding the ways in which Tenants can certify they are entitled to protection under the Moratorium, appropriate supporting documentation for Tenants not entitled to self-certify under the Moratorium, notice requirements, and procedures for utilizing dispute resolution services offered by DCBA, among other clarifications.

B.    The Los Angeles County Development Authority ("LACDA"), acting in its capacity as a local housing authority for the County, shall extend deadlines for housing assistance recipients and applicants to deliver records or documents related to their eligibility for programs, to the extent those deadlines are within the discretion of the LACDA.

C.    The Director of DCBA, in collaboration with the Chief Executive Office ("CEO"), shall offer assistance to the State Department of Business Oversight to engage financial institutions to identify tools to be used to afford County residents relief from the threat of residential foreclosure and displacement, and to promote housing security and stability during this state of emergency.

D.    The Director of DCBA, in collaboration with the CEO and the Acting Director of Workforce Development, Aging, and Community Services ("WDACS"), shall convene representatives of utility and other service providers to seek a commitment from the providers to waive any late fees and forgo service disconnections for Tenants and small businesses who are suffering economic loss and hardship as a result of the COVID-19 pandemic.

E.    The Director of DCBA, the Acting Director of WDACS, and the Executive Director of LACDA shall jointly establish an emergency office dedicated to assisting businesses and employees facing economic instability as a result of the COVID-19 pandemic. The joint emergency office shall be provided all of the necessary resources by DCBA and WDACS, and should include opening a dedicated hotline to assist businesses and employees, web-based and text-based consultations, and multilingual services. The County shall provide technical assistance to businesses and employees seeking to access available programs and insurance, and shall work directly with

page 28

representatives from the State and federal governments to expedite, to the extent possible, applications and claims filed by County residents.

F.  The Director of DCBA and the Executive Director of LACDA shall assist small businesses in the unincorporated areas in applying for U.S. Small Business Administration ("SBA") loans that the President announced on March 12, 2020.  SBA's Economic Injury Disaster Loans offer up to $2 million in assistance for a small business.  These SBA loans can provide vital economic support to small businesses to help overcome the temporary loss of revenue they are experiencing.

G.  The Executive Director of LACDA, or his designee, is hereby delegated authority to amend existing guidelines for any of its existing federal, State or County funded small business loan programs, including the Community Development Block Grant ("CDBG") matching funds, and to execute all related documents to best meet the needs of small businesses being impacted by COVID- 19, consistent with guidance provided by the U.S. Economic Development Administration in a memorandum dated March 16, 2020, to Revolving Loan Fund ("RLF") Grantees for the purpose of COVID-19 and temporary deviations to RLF Administrative Plans, following approvals as to form by County Counsel.

H.  The Acting Director of WDACS shall work with the State of California, Employment Development Department, to identify additional funding and technical assistance for dislocated workers and at-risk businesses suffering economic hardship as a result of the COVID-19 pandemic.  Technical assistance shall include, but not necessarily be limited to:  assistance for affected workers in applying for unemployment insurance, disability insurance and paid family leave; additional business assistance for lay-off aversion and rapid response; and additional assistance to mitigate worker hardship as a result of reduced work hours or job loss due to the COVID-19 pandemic.

I.  The Director of DCBA and the Acting Director of WDACS, in collaboration with the CEO and the Executive Director of LACDA, shall create a digital toolkit for small businesses and employees to assist them in accessing available resources, including, but not limited to, disaster loans, unemployment insurance, paid family leave, disability insurance, and layoff aversion programs.

J.  The CEO's Center for Strategic Partnerships, in collaboration with the DCBA and its Office of Immigrant Affairs, and the Acting Director of WDACS, shall convene philanthropic partners to identify opportunities to enhance resources available to all small business owners and employees who may be unable or fearful to access federal and State disaster resources, including immigrants.

HOA 103152318.1                                    17

page 29

K.   The Executive Director of the Office of Immigrant Affairs, the CEO's Women + Girls Initiative, and the Department of Public Health's Center for Health Equity shall consult on the above directives to provide an immigration, gender, and health equity lens to inform the delivery of services and outreach.

L.   The Director of DCBA, the Acting Director of WDACS, and the Executive Director of LACDA, or their respective designees, shall have the authority to enter into agreements with partner agencies and municipalities and hire and execute contracts for consultants, contractors, and other services, as needed, to provide consumer, tenant, and worker protections and support small businesses during the stated emergency to accomplish the above directives.

XIV.   This Resolution shall take effect immediately upon its passage. Except as otherwise indicated, all provisions stated herein shall apply commencing March 4, 2020, and shall remain in effect until June 30, 2021, unless extended or repealed by the Board of Supervisors. This Resolution supersedes all previously issued resolutions and executive orders concerning an eviction moratorium or rent freeze within the County. It shall be superseded only by a duly enacted ordinance or resolution of the Board or a further executive order issued pursuant to Section 2.68.150 of the County Code.

XV.   **Severability.** If any provision of this Resolution or the application thereof to any person, property, or circumstance, is held invalid, such invalidity shall not affect other provisions or applications of this Resolution that can be given effect without the invalid provision(s) or application, and to this end, the provisions of this Resolution are declared to be severable.

XVI.   **Waiver Prohibited.** Any waiver of rights under this Moratorium shall be void as contrary to public policy.

HOA 103152318.1                                    18

*page 30*

The foregoing Resolution Further Amending and Restating the Executive Order for an Eviction Moratorium was adopted on the 23ᴿᴰ day of February 2021, by the Board of Supervisors of the County of Los Angeles.



Board of Supervisors of the
County of Los Angeles

By ___Hilda L. Solis___
         Chair

APPROVED AS TO FORM:

RODRIGO A. CASTRO-SILVA
County Counsel

By: _____ FOR NAZIE TASHAKORIAN
         Deputy

ATTEST: CELIA ZAVALA
EXECUTIVE OFFICER
CLERK OF THE BOARD OF SUPERVISORS

By_____ , Deputy

HOA 103152318.1

19

*page 31*

11/12/22, 2:18 PM Gmail - COVID-19: HOST, HOAX, OR HOLY SPIRIT : MOON ( 'daredeemer' ) vs. SATAN THE DEVIL ET. AL. 2: 20-cv- 02292-D...

Case 2:20-cv-02291-DOC-KES Document 497 Filed 11/14/22 Page 31 of 250 Page ID #:14930

 **Gmail**

Adrian Moon <adriandaredeemer@gmail.com>

## COVID-19: HOST, HOAX, OR HOLY SPIRIT : MOON ( 'daredeemer' ) vs. SATAN THE DEVIL ET. AL. 2: 20-cv- 02292-DOC ( res) U.S. CASD ; " Roe vs Wade" B324374 , 2nd App. Ct. " O.S.C. Why County of L.A. - Board of Supervisors Should Not Be Found In Contempt of Court Orders "

1 message

**Adrian Moon** <adriandaredeemer@gmail.com>                    Thu, Nov 10, 2022 at 9:23 PM
To: DOCCChambers <DOC_Chambers@cacd.uscourts.gov>, karlen_Dubon@cacd.uscourts.gov, docketinglaawt@doj.ca.gov, anna.barsegyan@doj.ca.gov, jw@pr.judicialwatch.org, "GC Info@DGS" <gcinfo@dgs.ca.gov>, dharrison@counsel.lacounty.gov, RCastro-Silva@counsel.lacounty.gov, Kent Sommer <ksommer@counsel.lacounty.gov>, emontelongo@counsel.lacounty.gov, emitchell@spertuslaw.com, smiller@millerbarondess.com, brian.wesley@doj.ca.gov, govlegalunit@gov.ca.gov, nick.hanna@usdoj.gov, Ross at Podcast Insights <ross@podcastinsights.com>, jlehman@counsel.lacounty.gov, jmoon@counsel.lacounty.gov, jlangton@counsel.lacounty.gov, sean.kennedy@lls.edu, priscilla.ocen@lls.edu, rivie@imwlaw.com, Michael.Vachon@soros.com, "pmccabe.estrada@supremecourt.gov afrank@supremecourt.gov asaunders@supremecourt.gov" <asaunders@supremecourt.gov>, "pmccabe.estrada@supremecourt.gov afrank@supremecourt.gov asaunders@supremecourt.gov" <afrank@supremecourt.gov>, "pmccabe.estrada@supremecourt.gov afrank@supremecourt.gov asaunders@supremecourt.gov" <pio@supremecourt.gov>, "pmccabe.estrada@supremecourt.gov afrank@supremecourt.gov asaunders@supremecourt.gov" <pmccabe.estrada@supremecourt.gov>, akoehn@judicialwatch.org, Alma Estevez <aestevez@foothilletc.org>
Cc: fox11news@foxtv.com, appsupport@eentertainment.com, Alene.tehekmedyia@latimes.com, lisa.bartley@abc.com, sid.garcia@abc.com, julie.sone@abc.com, Cora Jackson Fossett <cora@lasentinel.net>, Stephen Scauzillo <sscauzillo@scng.com>, legalsmart@ktla.com, Loyola Law School- Innocent Project <laurie.levenson@lls.edu>, ktla@ktla.com, KTVU2Investigates@foxtv.com, action9@wsoc-tv.com, Dana.ali@doj.ca.gov, alai@counsel.lacounty.gov, "Tiffiny T. Blacknell" <tblacknell@da.lacounty.gov>, news.tips@abc.com, tips@nbcla.com, lsavitt@brgslaw.com, harv@anandlawgroup.com
Bcc: mr.geraldburleson@gmail.com, andremoon288@gmail.com, otcolesr38@gmail.com, Leonard Medina <papabear102360@gmail.com>, Phillip Morehouse <pmorehouse@gmail.com>, k <kbleemin@aol.com>, kerwin.lee@bereanchristianchurch.org

Bondservants , Saints, and Disciples : Practicing Believers OR NOT of the Faith in the Spirit of TRUTH ... All Praises and Glory To the Almighty Creator in the Mighty Name of Yeshua Jesus Christ the Messiah... Can someone see to it that 'daredeemer' gets a case number for his Writ of Certiorari being held hostage by the U. S. Supreme Court Justices by Monday , November 14, 2022 @ 9:00 a.m. 411 W. 4th Street , Dept. 10A Santa Ana CA 92701 prior to the hearing " O.S.C. Why County Of L.A.- Board of Supervisor Should Not Be Found In Contempt of Court Orders ! " their Co-Defendant Alex Villanueva's contempt of court hearing is on December 12, 2022 ! in case Moon vs. Villanueva , case no. 22STCP00120 ; 22STRO03447 , Superior Court , see also Court of Appeals case Moon vs. County of L.A.-B.O.S. , case no. B324374 ! AMEN AND AMEN WE've Loved You All Through Eternity ❤️🧎‍♂️🫶😀🏃‍♂️🐵🙉🙊🔥😊🌙📟✴️

---

**2 attachments**

 **image.pdf**
652K

 **7bi.pdf**
120K

*Motion C*

*page 32*

FL-300

| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: 335140 | FOR COURT USE ONLY |
|---|---|---|
| NAME: LAWRENCE B. MCKINNEY | | |
| FIRM NAME: LAW OFFICE OF L.B. MCKINNEY | | |
| STREET ADDRESS: 6709 LA TIJERA BLVD #339 | | |
| CITY: LOS ANGELES   STATE: CA   ZIP CODE: 90045 | | |
| TELEPHONE NO.: (213) 590-6363   FAX NO.: | | |
| E-MAIL ADDRESS: lawrencemck10@gmail.com | | |
| ATTORNEY FOR (name): Respondent-Victim | | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 NORTH HILL STREET
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES CA 90012
BRANCH NAME: CENTRAL - C.C.B. INC.

PETITIONER: FELICIA TULIKKA CLAYTON
RESPONDENT: ADRIAN DAMICO MOON
OTHER PARENT/PARTY:

| REQUEST FOR ORDER  [ x ] CHANGE  [ x ] TEMPORARY EMERGENCY ORDERS | CASE NUMBER: |
|---|---|
| [ ] Child Custody  [ ] Visitation (Parenting Time)  [ ] Spousal or Partner Support | 22STRO03521 |
| [ ] Child Support  [ ] Domestic Violence Order  [ ] Attorney's Fees and Costs | *L.A. City Attorneys Ofici* |
| [ ] Property Control  [ ] Other (specify): TERMINATE R.O. AFTER HEARING 8-17-22  *(Proposed) ORDER THEREON* | *#2212-17625; 2212-22195* |

## NOTICE OF HEARING

1. TO (name(s)): FELICIA TULILLA CLAYTON
   [ x ] Petitioner  [ ] Respondent  [ ] Other Parent/Party  [ x ] Other (specify): DEFENDANT

2. **A COURT HEARING WILL BE HELD AS FOLLOWS:**

   | a. Date: **NOVEMBER 16, 2022**   Time: **8:30 a.m.**   [ x ] Dept.: **7**   [ ] Room.: |
   |---|
   | b. Address of court  [ x ] same as noted above  [ ] other (specify): |

3. **WARNING to the person served with the *Request for Order*:** The court may make the requested orders without you if you do not file a *Responsive Declaration to Request for Order* (form FL-320), serve a copy on the other parties at least nine court days before the hearing (unless the court has ordered a shorter period of time), and appear at the hearing. (See form FL-320-INFO for more information.)

   (Forms FL-300-INFO and DV-400-INFO provide information about completing this form.)

*(Proposed)* **COURT ORDER**

**It is ordered that:**

4. [ ] Time  [ ] for service  [ ] until the hearing  is shortened. Service must be on or before (date):

5. [ ] A *Responsive Declaration to Request for Order* (form FL-320) must be served on or before (date):

6. [ ] The parties must attend an appointment for child custody mediation or child custody recommending counseling as follows (specify date, time, and location):

7. [ ] The orders in *Temporary Emergency (Ex Parte) Orders* (form FL-305) apply to this proceeding and must be personally served with all documents filed with this *Request for Order*.

8. [ x ] Other (specify): ORDER TO TEMINATE RESTRAINING ORDER AFTER HEARING OF AUGUST 17, 2022 AGAINST RESPONDENT- VICTIM ADRIAN DAMICO MOON, FORTHWITH !

Date: _____

_____
JUDICIAL OFFICER

Page 1 of 4

Form Adopted for Mandatory Use
Judicial Council of California
FL-300 [Rev. July 1, 2016]

**REQUEST FOR ORDER**

Family Code, §§ 2045, 2107, 6224,
6226, 6320–6326, 6380–6383;
Government Code, § 26826
Cal. Rules of Court, rule 5.92
www.courts.ca.gov

*Motion D (7) pages*

FL-300

| | |
|---|---|
| PETITIONER: FELICIA TULIKKA CLAYTON<br>RESPONDENT: ADRIAN D. MOON<br>OTHER PARENT/PARTY: | CASE NUMBER:<br>22STRO3521 |

## REQUEST FOR ORDER

**Note**: Place a mark ☒ in front of the box that applies to your case or to your request. If you need more space, mark the box for "Attachment." For example, mark "Attachment 2a" to indicate that the list of children's names and birth dates continues on a paper attached to this form. Then, on a sheet of paper, list each attachment number followed by your request. At the top of the paper, write your name, case number, and "FL-300" as a title. (You may use *Attached Declaration* (form MC-031) for this purpose.)

1. ☒ **RESTRAINING ORDER INFORMATION**
   One or more domestic violence restraining/protective orders are now in effect between *(specify)*:
   ☒ Petitioner ☒ Respondent ☐ Other Parent/Party *(Attach a copy of the orders if you have one.)*
   The orders are from the following court or courts *(specify county and state)*:
   a. ☑ Criminal: County/state *(specify)*:  LOS ANGELES          Case No. *(if known)*: 2212-17625/ 2212-22195
   b. ☐ Family: County/state *(specify)*:                        Case No. *(if known)*:
   c. ☐ Juvenile: County/state *(specify)*:                      Case No. *(if known)*:
   d. ☐ Other: County/state *(specify)*:                         Case No. *(if known)*:

2. ☐ **CHILD CUSTODY**                                    ☐ I request temporary emergency orders
   ☐ **VISITATION (PARENTING TIME)**
   a. I request that the court make orders about the following children *(specify)*:

   | Child's Name | Date of Birth | ☐ Legal Custody to *(person who decides: health, education, etc)*: | ☐ Physical Custody to *(person with whom child lives)*: |
   |---|---|---|---|

                                                                        ☐ Attachment 2a.

   b. ☐ The orders I request for ☐ child custody ☐ visitation (parenting time) are:
      (1) ☐ Specified in the attached forms:
           ☐ Form FL-305   ☐ Form FL-311   ☐ Form FL-312   ☐ Form FL-341(C)
           ☐ Form FL-341(D)  ☐ Form FL-341(E)  ☐ Other *(specify)*:
      (2) ☐ As follows *(specify)*:                                      ☐ Attachment 2b.

   c. The orders that I request are in the best interest of the children because *(specify)*:   ☐ Attachment 2c.

   d. ☐ This is a change from the current order for ☐ child custody ☐ visitation (parenting time).
      (1) ☐ The order for legal or physical custody was filed on *(date)*:          . The court ordered *(specify)*:

      (2) ☐ The visitation (parenting time) order was filed on *(date)*:          . The court ordered *(specify)*:

                                                                        ☐ Attachment 2d.

FL-300

| PETITIONER: Felicia Thtikka Claytow | CASE NUMBER: |
| RESPONDENT: Admai D. Moon | 22STRO03521 |
| OTHER PARENT/PARTY: | |

3. ☐ CHILD SUPPORT
   (Note: An earnings assignment may be issued. See *Income Withholding for Support* (form FL-195)
   a.  I request that the court order child support as follows:

   <u>Child's name and age</u>    ☐ I request support for each child    <u>Monthly amount ($) requested</u>
                        based on the child support guideline. (if not by guideline)

   ☐ Attachment 3a.

   b. ☐ I want to change a current court order for child support filed on *(date):*
      The court ordered child support as follows *(specify):*

   c.  I have completed and filed with this *Request for Order* a current *Income and Expense Declaration* (form FL-150) or I filed
       a current *Financial Statement (Simplified)* (form FL-155) because I meet the requirements to file form FL-155.
   d.  The court should make or change the support orders because *(specify):*    ☐ Attachment 3d.

4. ☐ SPOUSAL OR DOMESTIC PARTNER SUPPORT
   (Note: An *Earnings Assignment Order For Spousal or Partner Support* (form FL-435) may be issued.)
   a. ☐ Amount requested *(monthly):* $
   b. ☐ I want the court to ☐ change ☐ end   the current support order filed on *(date):*
      The court ordered $         per month for support.
   c. ☐ This request is to modify (change) spousal or partner support after entry of a judgment.
      I have completed and attached *Spousal or Partner Support Declaration Attachment* (form FL-157) or a declaration
      that addresses the same factors covered in form FL-157.
   d.  I have completed and filed a current *Income and Expense Declaration* (form FL-150) in support of my request.
   e.  The court should should make, change, or end the support orders because *(specify):*    ☐ Attachment 4e.

5. ☐ PROPERTY CONTROL                          ☐ I request temporary emergency orders
   a.  The ☐ petitioner ☐ respondent ☐ other parent/party   be given exclusive temporary use, possession, and
       control of the following property that we ☐ own or are buying ☐ lease or rent *(specify):*

   b.  The ☐ petitioner ☐ respondent ☐ other parent/party   be ordered to make the following payments on debts
       and liens coming due while the order is in effect:
       Pay to: _____ For: _____ Amount: $ _____ Due date:_____
       Pay to: _____ For: _____ Amount: $ _____ Due date:_____
       Pay to: _____ For: _____ Amount: $ _____ Due date:_____
       Pay to: _____ For: _____ Amount: $ _____ Due date:_____

   c. ☐ This is a change from the current order for property control filed on *(date):*
   d.  Specify in <u>Attachment 5d</u> the reasons why the court should make or change the property control orders.

FL-300 [Rev. July 1, 2016]                **REQUEST FOR ORDER**                          Page 3 of 4

**FL-300**

| PETITIONER: Felicia Tulikka Clayton | CASE NUMBER: |
|---|---|
| RESPONDENT: Adrian Damico Moon | 22 STRU 03521 |
| OTHER PARENT/PARTY: | |

6. ☐ ATTORNEY'S FEES AND COSTS

I request attorney's fees and costs, which total (specify amount): $_____. I filed the following to support my request:

a. A current Income and Expense Declaration (form FL-150).

b. A Request for Attorney's Fees and Costs Attachment (form FL-319) or a declaration that addresses the factors covered in that form.

c. A Supporting Declaration for Attorney's Fees and Costs Attachment (form FL-158) or a declaration that addresses the factors covered in that form.

7. ☒ DOMESTIC VIOLENCE ORDER

- Do not use this form to ask for domestic violence restraining orders! Read form DV-505-INFO, How Do I Ask for a Temporary Restraining Order, for forms and information you need to ask for domestic violence restraining orders.
- Read form DV-400-INFO, How to Change or End a Domestic Violence Restraining Order for more information.

a. The Restraining Order After Hearing (form DV-130) was filed on (date):  AUGUST 17, 2022

b. I request that the court ☐ change ☒ end  the personal conduct, stay-away, move-out orders, or other protective orders made in Restraining Order After Hearing (form DV-130). (If you want to change the orders, complete 7c.)

c. ☒ I request that the court make the following changes to the restraining orders (specify):  ☒ Attachment 7c.
TERMINATE VACATE , SET-ASIDE AND STRIKE FROM ALL PUBLIC RECORDS PURSUANT TO STIPULATION AGREEMENT FILED ON  NOVEMBER 4, AND NOVEMBER 8, 2022

d. I want the court to change or end the orders because (specify):  ☒ Attachment 7d.
FELICIA TULIKKA CLAYTON is currently under several criminal investigations regarding , Illegal Evidtion, Trespassing, Burglarly, Slander, Perjury, Fraud, Treason, Obstruction of Justice and Attempted Murder !

8. ☐ OTHER ORDERS REQUESTED (specify):  ☐ Attachment 8.

9. ☒ TIME FOR SERVICE / TIME UNTIL HEARING   I urgently need:

a. ☒ To serve the Request for Order no less than (number):  1  court days before the hearing.

b. ☒ The hearing date and service of the the Request for Order to be sooner.

c. I need the order because (specify):  ☒ Attachment 9c.
'daredeemer' is currently Homeless !

10. ☒ FACTS TO SUPPORT the orders I request are listed below. The facts that I write in support and attach to this request cannot be longer than 10 pages, unless the court gives me permission.   ☒ Attachment 10.
'daredeemer' has wrongfully been denied due process as an Respondent-Victim under the Vexatious Litigation Statute to which does not apply .   see Civil Case: Clayton v. Moon, case no. 20STCV28426, Criminal Complaint lodged and filed on November 3, 2022 and Probate Case: Moon v. Clayton et. al. , case no.  22STPB08696 !!!

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date:  NOVEMBER 11, 2022

ADRIAN DAMICO MOON
(TYPE OR PRINT NAME)

(SIGNATURE OF APPLICANT)

**Requests for Accommodations**

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to www.courts.ca.gov/forms for Request for Accommodations by Persons With Disabilities and Response (form MC-410). (Civ. Code, § 54.8.)

| FL-300 [Rev. July 1, 2016] | **REQUEST FOR ORDER** | Page 4 of 4 |
|---|---|---|

For your protection and privacy, please press the Clear

11:45 pm
Received from
Court Clerk

Copy

NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY
ADRIAN D. MOON
955 N LAKE AVE
Pasadena CA 91104

STATE BAR NUMBER
Chosen One

ATTORNEY FOR (Name) Petitioner - Plaintiff - Defendant Intervenor

Reserved for Clerk's File Stamp

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 10 2022

Sherri R. Carter, Executive Officer/Clerk
By: Jasmine Orozco, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS: Stanley Mosk Courthouse

PLAINTIFF/PETITIONER: Adrian Moon

DEFENDANT/RESPONDENT: Estate or Jon Clayton

**PEREMPTORY CHALLENGE TO JUDICIAL OFFICER**
(Code Civ. Proc., § 170.6) = Penal Code 182

CASE NUMBER 22STPB08696
Lead Related 22STRO03
20STCV29

DATE: NOV 10, 2022    TIME: 8:30 AM or soon thereafter

| Name of Judicial Officer: (PRINT) | Dept. Number: |
|---|---|
| DANIEL JUAREZ, LC.& INC. | 67 |
| ☒ Judge    ☐ Commissioner    ☐ Referee | |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer. or has conspired with Brenda Penny, Deborah Christian, mel b. lacuna - Alexander Giza to steal kill and destroy Javedeener's Inheritance and maintain R.O. in Case 22STR00035

## DECLARATION

I declare under penalty of perjury, under the laws of the State of California, that the information entered on this form is true and correct.

Filed on behalf of: Adrian D. Moon
Name of Party

☒ Plaintiff/Petitioner    ☐ Cross Complainant
☒ Defendant/Respondent    ☐ Cross Defendant
☒ Other: Creditor - Plaintiff -
          Defendant - Inter

Dated: NOV 10, 2022

Signature of Declarant
Adrian D. Moon

Printed Name
Adrian D. Moon

1. TO STRIKE (Proposed) ORDER of case no. 22STPB04061
2. TO TERMINATE R.O. After hear of Aug 17, 2022 with Case no. 22STR003521 For the with
3. Release evidentiary Hearing on 11-10-22 and set asc 11-14-

LACIV 015 (Rev. 12-14)
LASC Approved 04-04
For Optional Use

**PEREMPTORY CHALLENGE TO JUDICIAL OFFICER**
(Code Civ. Proc., § 170.6)

Code Civ. Proc., § 170.6

ATTACHMENT 7c, 7d, 9c, 10

# FROM THE KINGDOM OF 'daredeemer'

## By Proclamation And Decree Under Da Blood Of Yeshua Da Messiah...

ADRIAN D. MOON
955 NORTH LAKE AVE
PASADENA CA 91104
CELL: (626) 360-9896
EMAIL: adriandaredeemer@gmail.com

Attorney For Respondent-Victim

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FAMILY LAW DIVISION- RESTRAINING ORDER

### IN THE COUNTY OF LOS ANGELES- C.C.B. INC.

| | |
|---|---|
| FELICIA TULIKKA CLAYTON, <br><br> **At the Behest of Satan the Devil,** <br><br> Petitioner-Defendant, <br><br> VS. <br><br><br> **ADRIAN D. MOON,** <br><br> **By Authority of the Almighty Creator,** <br><br> Respondent-Victim, <br><br><br> **" JUDGEMENT IS COMING "** | Case No. ___**22STRO03521**___ <br><br> Identical Pending Lead Related Case no. 20STCV28426 ; 22STPB08696; 22PDRO01285 <br><br> **STIPULATION AGREEMENT BETWEEN THE PARTIES TO TERMINATE THE RESTRAINING ORDER AFTER HEARING OF AUGUST 17, 2022 WITH PREJUDICE ET. SEQ.** <br><br> **DATE: NOVEMBER 8, 2022** <br> **TIME: 8:30 a.m. or soon thereafter to be heard** <br> **DEPT.:         7** <br> **LOC.:  111 N. HILL STREET L.A. CA 90012** <br><br> **DISHONORABLE RECUSED DEFENDANT ALEXANDER C.D. GIZA, JUDGE, presiding** <br><br> **COVID-19: HOST, HOAX, OR HOLY SPIRIT** |

### STIPULATION AGREEMENT

**Parties:**

1. **ADRIAN D. MOON, (hereinafter, 'daredeemer')** Respondent-Victim , being represented by and through his attorney of record, Adrian D. Moon in Pro Se.

2. **FELICIA TULIKKA CLAYTON , ( hereinafter, 'tulikka' )** Petitioner-Defendant  being Self-Represented in Pro Per

**Statement of Undisputed Facts:**

3.    On June 18, 2022, 'tulikka' vicariously  under the  guise and masquerading as an Angel of Light,

---

STIPULATION AGREEMENT BETWEEN THE PARTIES 'daredeemer' vs. 'Tulikka ' TO TERMINATE RESTRAINING ORDER AFTER HEARING OF AUGUST 17, 2022 WITH PREJUDICE ET. SEQ.  - 1

# FROM THE KINGDOM OF 'daredeemer'

## By Proclamation And Decree Under Da Blood Of Yeshua Da Messiah...

read 2 Corinthians 11:14 N.K.J.V. decree of 1611... sinfully criminally conspired [ ( Penal Code section 182 (a-c) )]  to illegally remove 'daredeemer' from his primary residence located at  1717 West 57th street , L.A. CA 90062 , hence "DAMNED FOOL" Recused Defendant Alexander C.D. Giza , Judge has actively participated , aided and abetted in these crimes to date !!! see, read, and understand attached Motion A ( 9) Pages incorporated by this reference.

**IT IS HEREBY AGREED AND STIPULATED BETWEEN THE PARTIES FELICIA TULIKKA CLAYTON, 'tulikka' AND ADRIAN D. MOON, 'daredeemer' THAT THE RESTRAINING ORDER AFTER HEARING OF AUGUST 17, SHALL BE DISMISSED WITH PREJUDICE !!!**

Parties Can Sign And File This Stipulation Separately To The Court, AMEN

///

DATED: November 5, 2022            by : _____

**ADRIAN D. MOON**, ('daredeemer') Respondent-Victim being represented by and through his attorney of record, Adrian D. Moon, 955 North Lake ave, Pasadena Ca 91104 , Cell (626) 360-9896, adriandaredeemer@gmail.com

DATED: November    , 2022            by: _____

**FELICIA TULIKKA CLAYTON, (**'tulikka' ) Petitioner-Defendant being Self-Represented in Pro Per, 5022 West 58th Place, L.A. CA 90056; 3553 Westlawn #114, L.A. CA 90066, Cell ( 213) 797-2630;(213) 479-2547, drisctrust22@yahoo.com ; vkm777@yahoo.com

## <u>ORDER</u>

**FOR GOOD CAUSE SHOWING AND BY STIPULATION OF THE PARTIES OR ON THE COURTS OWN MOTION, IT IS SO ORDERED,**

**THAT:  1.  RESTRAINING ORDER AFTER HEARING OF AUGUST 17, 2022 IS HEREBY TERMINATED DISMISSED WITH PREJUDICE , FORTHWITH !!!**

**DATED: NOVEMBER 8, 2022**

_____
**HONORABLE ALEXANDER C.D. GIZA, JUDGE
SUPERIOR COURT STATE OF CALIFORNIA**

---

STIPULATION AGREEMENT BETWEEN THE PARTIES 'daredeemer' vs. 'Tulikka ' TO TERMINATE RESTRAINING ORDER AFTER HEARING OF AUGUST 17, 2022 WITH PREJUDICE ET. SEQ.  - 2

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 92                         HON. DOUGLAS W. STERN, JUDGE

LEAH WHETSTONE,                        )
                                       )
            PLAINTIFF,                 )
                                       )
        VS.                            )  NO. 21PDUD00319
                                       )
ADRIAN MOON,                           )
                                       )
            DEFENDANT.                 )
_____)

-oOo-

TRANSCRIPT OF PROCEEDINGS

NOVEMBER 1, 2021

APPEARANCES:

FOR THE PLAINTIFF:        LAW OFFICE OF THEODORE THEODOSIADIS
                          BY:  THEODORE THEODOSIADIS, ESQ.
                          333 SOUTH GRAND AVENUE
                          SUITE 3310
                          LOS ANGELES, CALIFORNIA 90071

FOR THE DEFENDANT:        IN PRO SE

VOLUME 1 OF 3
PAGES 1 - 100

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING. TRANSCRIPT
PRODUCED BY CARYN HOBBIS, CSR NO. 9432



Motion E (211) pages

2

M A S T E R   I N D E X

NOVEMBER 1, 2021; VOLUME 1


SESSIONS


MONDAY, NOVEMBER 1, 2021                                    PAGE

        A.M.  SESSION                                         3

        P.M.  SESSION                                        39

CASE NUMBER:                21PDUD00319

CASE NAME:                  LEAH WHETSTONE VS. ADRIAN MOON

LOS ANGELES, CA             MONDAY, NOVEMBER 1, 2021

DEPARTMENT 92               HON. DOUGLAS W. STERN, JUDGE

TRANSCRIBER:                CARYN HOBBIS, CSR NO. 9432

TIME:                       A.M. SESSION

APPEARANCES:  DEFENDANT ADRIAN MOON IN PRO SE (APPEARING VIA

LA COURTCONNECT); PLAINTIFF LEAH WHETSTONE, PRESENT WITH

COUNSEL, THEODORE THEODOSIADIS, ESQ.


        THE COURT:  ALL RIGHT.  AT THIS TIME I'M CALLING THE

MATTER OF LEAH WHETSTONE VERSUS ADRIAN MOON, CASE

NO. 21PDUD00319.  PLEASE COME FORWARD.

        ALL RIGHT.  STARTING WITH PLAINTIFF, PLEASE MAKE

YOUR APPEARANCES.

        MR. THEODOSIADIS:  GOOD MORNING, YOUR HONOR.

THEODORE THEODOSIADIS ON BEHALF OF MS. WHETSTONE.

        THE COURT:  THANK YOU.  WELCOME.

        AND ON THE -- ON LA COURTCONNECT WHO DO I HAVE?

        (PAUSE.)

        THE COURT:  DO I HAVE ANYONE ON THE REMOTE

APPEARANCE?

        THE CLERK:  LOOKS LIKE HE'S LOGGED OUT.

(INDISCERNIBLE.)

        THE COURT:  PREVIOUSLY MR. MOON HAD LOGGED ON; IS

THAT CORRECT?

        THE CLERK:  THAT'S CORRECT, YOUR HONOR.

        THE COURT:  ALL RIGHT.  WELL, LET'S SEE IF WE CAN

GET HIM BACK ON THE LINE.

THE CLERK:  I'LL CALL HIM.

(PAUSE IN THE PROCEEDINGS WHILE THE JUDICIAL ASSISTANT CONTACTED MR. MOON.)

THE CLERK:  HE'S ON RIGHT NOW, YOUR HONOR.

THE COURT:  ALL RIGHT.  AGAIN CALLING LEAH WHETSTONE VERSUS ADRIAN MOON, CASE NO. 21PDUD00319.  IN THE COURTROOM, PLEASE MAKE YOUR APPEARANCE.

MR. THEODOSIADIS:  THEODORE THEODOSIADIS ON BEHALF OF MS. WHETSTONE.

THE COURT:  THANK YOU.

AND ON THE COURTCONNECT, PLEASE?

MR. MOON:  ALL PRAISE AND GLORY TO THE ALMIGHTY CREATOR IN THE MIGHTY NAME OF YESHUA THE MESSIAH.  DEFENDANT, VICTIM AND CROSS-PLAINTIFF ADRIAN D. MOON PURSUANT TO PENAL CODE SECTION 837, ET SEQUEL.

DOUGLAS W. STERN, I AM PLACING YOU UNDER ARREST FOR THE CHARGES OF OBSTRUCTION OF JUSTICE, CRIMINAL CONSPIRACY, TREASON AND ATTEMPTED MURDER.  YOU HAVE THE RIGHT TO REMAIN SILENT.  ANYTHING YOU SAY OR DO SHALL BE USED AGAINST YOU --

THE COURT:  THANK YOU, SIR.  I SIMPLY ASKED YOU -- SIR, SIR, SIR.  YOU NEED TO LISTEN TO ME.

(INDISCERNIBLE CROSS-TALK.)

THE COURT:  SIR?  MR. MOON?  I SIMPLY ASKED FOR YOUR APPEARANCE.

MR. MOON:  WELL, I DO --

THE COURT:  SIR.

(INDISCERNIBLE CROSS-TALK.)

MR. MOON:  A PUBLIC DEFENDER SHALL BE APPOINTED TO YOU.  YOU HAVE THE RIGHT TO IMMEDIATELY TURN YOURSELF OVER --

THE COURT:  MR. MOON?

MR. MOON:  -- TO THE L.A. COUNTY SHERIFF ALEX VILLANUEVA.

THE COURT:  MR. MOON.

MR. MOON:  DO YOU UNDERSTAND THESE RIGHTS?

THE COURT:  MR. MOON.  MR. MOON.  MR. MOON, AS I EXPLAINED TO YOU ON THURSDAY, WHEN I SPEAK YOU ARE TO BE SILENT.  IF YOU TRY TO SPEAK OVER ME AND DO NOT HEAR, THAT WILL BE A TREMENDOUS DISADVANTAGE FOR YOU.

NOW, WHETHER YOU LIKE IT OR NOT, WE'RE GOING TO GIVE YOU A VERY GOOD, FAIR TRIAL.  BUT I WANT YOU TO KNOW THAT IT'S VERY IMPORTANT THAT WE HAVE ORDER AT ALL TIMES.

NOW, WE'RE HERE FOR THE TRIAL.  THE COURT ALSO HAS RECEIVED SOME EX PARTE MATTERS.  LET ME --

MR. MOON:  YES.

THE COURT:  LET ME GIVE YOU THE RULINGS ON THOSE.  ALL RIGHT.  THE --

MR. MOON:  CAN I -- THERE SHOULD BE --

THE COURT:  SIR, SIR.  DO NOT --

MR. MOON:  THERE SHOULD BE SIX, YOUR HONOR.

THE COURT:  THE COURT, I BELIEVE HAS -

THE CLERK:  FOUR.

THE COURT:  FOUR.  IN ANY EVENT, LET ME GIVE YOU THE RULINGS.  THE COURT HAS REVIEWED ALL THE PAPERS.

WITH REGARD TO YOUR EX PARTE REGARDING THE MEDIA, THE MEDIA, OF COURSE, IS WELCOME AS ARE THE MEMBERS OF THE

PUBLIC TO ATTEND THIS PUBLIC TRIAL.  TO THE EXTENT THAT YOU BELIEVE THAT SOMEONE IS ENTITLED TO HAVE CAMERAS OR OTHER RECORDING DEVICES, UNDER RULE 1.150, YOU ARE NOT A PROPER PARTY FOR THAT.  IT HAS NOT BEEN PROPERLY PRESENTED.

HOWEVER, AT THIS TIME WITHOUT PREJUDICE TO A PROPER PARTY MAKING SUCH A REQUEST, IT IS DENIED.  YOUR REQUEST FOR MEDIA IS DENIED.

WITH REGARD TO THE EX PARTE THAT CLAIMS UNDER CCP SECTION 170.3 THAT THE COURT IS DISQUALIFIED, THAT HAS NOT BEEN PROPERLY PRESENTED PROCEDURALLY.  THERE'S BEEN NO SERVICE ON MYSELF.  NONETHELESS, THE COURT WILL RESPOND PURSUANT TO THAT CODE SECTION.  THAT IS NOT A PROPER EX PARTE.  THERE WILL BE A RESPONSE DENYING IT, BUT THE PAPERWORK WILL FOLLOW.

WITH REGARD TO THE EX PARTE FOR CHANGE OF VENUE, THAT IS DENIED.

IN THE EX PARTE, IT SAYS -- THEY ALL SAY "SUPREMACY CLAUSE."  I'M NOT SURE EXACTLY WHAT THIS IS.  YOU ASKED FOR A TRO AGAINST WHETSTONE.  THAT IS DENIED.  THE COURT HAS DENIED ALL OF YOUR EX PARTE MATTERS.

NOW, WE ARE READY TO MOVE ON TO --

MR. MOON:  THERE'S ONE MORE.  THERE'S ONE MORE.  THE MOTION IN LIMIN (SIC).  A MOTION, EX PARTE MOTION IN LIMIN. AND I JUST THOUGHT THAT THERE'S MORE, SO WE NEED TO WAIT FOR THAT ONE SO YOU CAN ADDRESS THAT ONE BEFORE WE START THIS JURY TRIAL.

THE COURT:  WHEN THE MOTION IN LIMINE IS PRESENTED TO THE COURT, THE COURT WILL REVIEW IT.  WE'RE NOT GOING TO WAIT FOR PAPERS THAT ARE NOT YET HERE.

MR. MOON:  WELL, I --

THE COURT:  SIR, SIR.

MR. MOON:  IT'S A PRETRIAL -- IT'S A PRETRIAL -- IT'S A PRETRIAL MOTION, AND IT HAS TO BE HEARD PRIOR TO THE FIRST JUROR BEING -- AS A MATTER OF FACT, YOUR MOTION FOR YOUR PREEMPTORY (SIC) CHALLENGE IS SUPPOSED TO BE RULED ON, AND I NEED TO GET THE RULING BECAUSE I NEED TO FILE A RESPONSE TO THAT.  AND YOU CAN'T CONTINUE AS THE JUDGE IN THIS CASE UNTIL YOUR --

THE COURT:  SIR --

MR. MOON:  -- QUALIFICATION IS DETERMINED WHETHER OR NOT WHATEVER YOU DID IN YOUR DENIAL TO THE PREEMPTORY CHALLENGE, SO I'M --

THE COURT:  SIR, I HAVE --

MR. MOON:  I'M REQUESTING TO NOT GO FORWARD --

THE COURT:  MR. MOON.  MR. MOON.

MR. MOON:  -- UNTIL YOU HEAR THE MOTION.  I'M TALKING.  I'M TALKING.

THE COURT:  NO.  SIR.

MR. MOON:  CAN YOU WAIT TILL I FINISH?

THE COURT:  THE EX PARTE THAT PURPORTS TO DISQUALIFY JUDGE STERNS IS DENIED.  THAT IS THE COURT'S RULING. PAPERWORK TO FOLLOW.

ALL RIGHT.  AS I SAID --

MR. MOON:  RIGHT.

THE COURT:  -- WE ARE HERE FOR TRIAL.  THE COURT --

MR. MOON:  THE QUESTION OF DETERMINING YOUR DISQUALIFICATION HAS NOT BEEN RULED ON BY ANOTHER JUDGE.  NOW,

IF YOU WANT TO SEND THIS CASE ALONG TO ANOTHER JUDGE SO THEY CAN RULE ON YOUR DETERMINATION OF YOUR DISQUALIFICATION, THEN I FEEL THAT -- LET'S SEE.  I WANT WILLIAMS -- MICHELLE WILLIAMS' COURT TO RULE ON DETERMINATION OF YOUR DISQUALIFICATION.

SO, THEODORE, DO YOU AGREE TO ALLOW JUDGE --

THE COURT:  SIR.  SIR.

MR. MOON:  -- COURT TO DETERMINE --

THE COURT:  SIR.

MR. MOON:  I'M TALKING.

THE COURT:  YOU DO NOT --

MR. MOON:  I'M NOT FINISHED.

THE COURT:  YOU DO NOT ADDRESS OPPOSING COUNSEL. ALL YOUR COMMENTS ARE ADDRESSED TO ME.

MR. MOON:  OKAY.  WELL --

THE COURT:  I AM CUTTING YOU OFF AT THIS POINT.

MR. MOON:  -- CAN YOU ASK OPPOSING COUNSEL -- CAN YOU ASK OPPOSING COUNSEL WOULD HE AGREE TO LET -- ALLOW JUDGE COURT TO DETERMINE WHETHER OR NOT YOU'RE DISQUALIFIED OR NOT, WHICH IS PROCEDURAL.

THE COURT:  ALL RIGHT.  WE ARE HERE FOR THE TRIAL.

MR. MOON:  CAN YOU ASK OPPOSING COUNSEL --

THE COURT:  DO I HAVE TRIAL DOCUMENTS --

MR. MOON:  CAN YOU ASK OPPOSING COUNSEL --

THE COURT:  -- FROM PLAINTIFF?

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  THE ANSWER IS, NO, I DON'T --

MR. MOON:  WELL, I DON'T HAVE ANY DOCUMENTS FROM

PLAINTIFF.

THE COURT:  -- ISN'T IT?

MR. MOON:  WHAT?

MR. THEODOSIADIS:  YOUR HONOR, I --

THE COURT:  DO YOU HAVE -- WHAT DO YOU HAVE?

MR. THEODOSIADIS:  I HAVE TRIAL BINDERS PREPARED.

THE COURT:  AND WHAT IS IN THEM?

MR. THEODOSIADIS:  I HAVE THE OPERATIVE PLEADINGS. THEN I HAVE --

THE COURT:  YOU HAVE THE OPERATIVE COMPLAINT, THE OPERATIVE ANSWER.

MR. THEODOSIADIS:  I DON'T HAVE THE OPERATIVE ANSWER.  I WAS NEVER SERVED WITH AN ANSWER.  I HAVE THE STATEMENT OF THE CASE.  I HAVE THE WITNESS LIST.

THE COURT:  DID YOU TRY TO GET A COPY OF THE ANSWER FROM THE COURT SO THAT YOU COULD PREPARE THIS BINDER?

MR. THEODOSIADIS:  NO, I DID NOT, YOUR HONOR.

THE COURT:  ALL RIGHT.

MR. THEODOSIADIS:  I WAS NOT SERVED WITH IT.

THE COURT:  CONTINUE.

MR. THEODOSIADIS:  I HAVE MY EXHIBITS.  I HAVE THE JURY INSTRUCTIONS, PROPOSED JURY INSTRUCTIONS AND THE VERDICT FORM.

THE COURT:  AND YOU HAVE A SHORT STATEMENT OF THE CASE?

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  COULD I SEE A COPY OF THAT? DID YOU SEND A COPY TO OPPOSING PARTY?

MR. THEODOSIADIS:  I ATTEMPTED TO SPEAK WITH OPPOSING PARTY ABOUT THIS MATTER SEVERAL TIMES.  HE HAS NOT BEEN RESPONSIVE.  INSTEAD OF WORKING WITH ME --

THE COURT:  COUNSEL.

MR. THEODOSIADIS:  NO, YOUR HONOR, I DID NOT.

THE COURT:  LET ME SUGGEST --

MR. MOON:  WE --

THE COURT:  -- TO YOU THE U.S. MAIL SERVICE OR A DELIVERY SERVICE.  WHEN YOU ARE REQUIRED TO PROVIDE DOCUMENTS, WHETHER OR NOT HE COOPERATES DOES NOT PREVENT YOU FROM SUPPLYING THOSE.  YOU ARE ORDERED TO GET HIM A COPY SOMETIME BY CLOSE OF BUSINESS TODAY.  CAN YOU DO THAT?

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  THANK YOU.

ALL RIGHT.  DOES DEFENDANT HAVE ANY OF THE TRIAL DOCUMENTS?  THAT WOULD BE THE EXHIBITS, EXHIBIT LIST, WITNESS LIST, THE PROPOSED JURY INSTRUCTIONS, THE DEFENDANT'S SPECIAL VERDICT FORM OR VERDICT FORM AND A SHORT STATEMENT OF THE CASE.  MR. MOON, DO YOU HAVE THOSE?

MR. MOON:  WELL, ON THE EXHIBITS I ORDERED THE COMPLETE FILE, SO THEY SAID THAT I WON'T HAVE THAT UNTIL PROBABLY THURSDAY.

ON THE WITNESS LIST, I FILED THAT AND SERVED IT ON OPPOSING COUNSEL ON THE --

THE COURT:  WHEN DID YOU DO THAT -- WHEN DID YOU DO THAT, SIR?

MR. MOON:  THURSDAY, THE SAME DAY THAT YOU ORDERED THAT HE WAS SUPPOSED TO GIVE ME ALL THAT STUFF BUT HE ONLY

GAVE ME ONE DOCUMENT AT 4:30 ON FRIDAY.

THE COURT: HOW DID YOU SERVE HIM? HOW DID YOU SERVE HIM? CAN YOU TELL ME?

MR. MOON: WELL, I SENT IT IN THE U.S. MAIL AND ALSO I EMAILED IT TO HIM.

THE COURT: ALL RIGHT. DID COUNSEL RECEIVE THAT?

MR. MOON: AND I FILED IT WITH THE COURT AND -- PARDON?

THE COURT: DID COUNSEL RECEIVE IT?

MR. THEODOSIADIS: I RECEIVED SEVERAL EMAILS FROM HIM. I'M NOT SURE IF THAT WAS IN THERE, YOUR HONOR.

THE COURT: DID YOU LOOK?

MR. THEODOSIADIS: I HAVE IT TODAY. I SAW IT TODAY.

THE COURT: DO YOU HAVE A COPY THAT YOU CAN GIVE THE COURT SO THE COURT HAS A COPY OF THE DEFENDANT'S FILINGS?

MR. THEODOSIADIS: OF HIS WITNESS LIST? THE COURT ALREADY HAS A COPY.

THE COURT: YOU NEED TO LISTEN TO ME. THE COURT IS NOT GOING TO BE HAPPY IF YOU STUMBLE CONSTANTLY.

WITNESS LIST, EXHIBIT LIST, PROPOSED JURY INSTRUCTIONS, PROPOSED VERDICT FORM, SHORT STATEMENT OF THE CASE, DO YOU HAVE ANY OF THOSE THAT DEFENDANT -- DID YOU GET ANYTHING?

MR. THEODOSIADIS: THE ONLY THING I HAVE FROM DEFENDANT IS THE WITNESS LIST.

THE COURT: ALL RIGHT. MAY I SEE IT?

LET ME ASK DEFENDANT. DID YOU SEND AN EXHIBIT LIST TO THE PLAINTIFF'S COUNSEL? MR. MOON?

MR. MOON:  NO BECAUSE, LIKE I SAID, I ORDERED THE COMPLETE FILE -- AND --

THE COURT:  I HEARD THAT, SIR.

MR. MOON:  -- THEY SAID IT WOULDN'T BE READY UNTIL THURSDAY.

THE COURT:  SIR?  MR. MOON, NO NEED TO REPEAT YOURSELF.  I UNDERSTOOD WHAT YOU SAID ABOUT YOUR EXHIBITS. THE --

MR. MOON:  OKAY.

THE COURT:  -- PLAINTIFF'S COUNSEL HAS SUPPLIED ME A COPY OF THE DEFENDANT'S WITNESS LIST, AND I SEE THAT THERE ARE 25 WITNESSES.

NOW, DID DEFENDANT PREPARE PROPOSED JURY INSTRUCTIONS?  MR. MOON?

MR. MOON:  NO, I HAVE NOT.

THE COURT:  IS THERE A REASON YOU HAVE NOT?

MR. MOON:  BECAUSE LIKE I TOLD YOU ON, I GUESS IT WAS WEDNESDAY, THAT I WAS -- I HAD PREVIOUS ENGAGEMENTS OVER THE WEEKEND AND ALSO TODAY AND I WANTED TO CONTINUE TILL, YOU KNOW, AT LEAST FIVE DAYS OUT SO WE CAN -- I COULD HAVE ALL THIS STUFF PREPARED.

NOW, THE ONLY THING I WAS ABLE TO DO WAS THIS WITNESS LIST BECAUSE I KNEW THAT WAS SOMETHING THAT'S IMPORTANT AND THE 13 QUESTIONS TO THE JURORS, POTENTIAL JURORS WHICH WAS FILED AND SENT TO OPPOSED COUNSEL.

BUT EVERYTHING ELSE, LIKE I SAID, THE EXHIBITS, THEY SAID ALL THAT WON'T BE READY AND SO I COULDN'T PREPARE AN EXHIBIT LIST.  AND LIKE I SAID, I DIDN'T EVEN HAVE ENOUGH TIME

TO DO ALL THE OTHER STUFF.

BUT LIKE I SAID, IF I'M TO GET A FAIR TRIAL, THEN I HAVE TO BE PROPERLY -- GIVEN TIME TO BE PROPERLY PREPARED. THIS JUST CAME ON ME LIKE ON TUESDAY WITHOUT ANY, YOU KNOW, PRIOR NOTICE THAT, YOU KNOW, THIS WAS GOING TO TAKE PLACE.

SO, AGAIN, I'LL ASK THAT, YOU KNOW, ALLOW, YOU KNOW, THREE OR FOUR DAYS FOR US TO PREPARE PROPERLY ALL THE DOCUMENTS TO CONDUCT THE JURY TRIAL.

THE COURT:  ALL RIGHT, MR. MOON.

MR. MOON:  IF WE COULD GO TO FRIDAY --

THE COURT:  MR. MOON?  ORDINARILY --

MR. MOON:  YES?

THE COURT:  -- AT THIS POINT YOU HAVING FAILED TO SUBMIT JURY INSTRUCTIONS AND A PROPOSED VERDICT, THE COURT WOULD RULE THAT YOU HAVE WAIVED THAT; HOWEVER, I AM GOING TO ALLOW YOU TO SUBMIT IT AS SOON AS YOU POSSIBLY CAN DEPENDING -- IF YOU CAN GET IT IN BY TOMORROW, THE COURT WILL ACCEPT IT FOR CONSIDERATION.  ANYTHING AFTER THAT THE COURT WILL DETERMINE BASED UPON THE CIRCUMSTANCES.  SO I URGE YOU TO SUBMIT JURY INSTRUCTIONS AND A SPECIAL VERDICT FORM IF YOU DESIRE.

NOW, WE'VE TALKED ABOUT THE EXHIBIT LISTS, THE WITNESS LISTS, THE JURY INSTRUCTIONS, THE SPECIAL VERDICT. YOU TOLD ME YOU HAVE A MOTION IN LIMINE.  WHEN IT IS PRESENTED, THE COURT WILL REVIEW IT AND MAKE A RULING ON IT IF IT IS APPROPRIATE.

ALL RIGHT.  NOW, LET ME EXPLAIN HOW THIS TRIAL WILL BE PROCEEDING.  WE HAVE OUR JURY --

DID WE ORDER THE JURY FOR 10:00 OR 10:30, MARCUS? EXCUSE ME.  OKAY.  MARCUS?  WHAT TIME DID WE ORDER THE JURY? 10:00 OR 10:30?

THE CLERK:  IT WAS 10:00, YOUR HONOR.

THE COURT:  10:00.  SO WE HAVE THE JURY COMING IN IN ABOUT TEN MINUTES.  OBVIOUSLY --

THE CLERK:  11:00.  11:00.  IT SAYS 11:00.

THE COURT:  11:00?  OKAY.

LET ME EXPLAIN, AND THIS IS FOR THE BENEFIT OF BOTH PARTIES SO THEY UNDERSTAND HOW WE WILL BE PROCEEDING.  AND AGAIN, I WANT TO MAKE VERY CLEAR WE WANT TO HAVE A GOOD, FAIR TRIAL FOR THE BENEFIT OF BOTH PARTIES, SO HOPEFULLY THIS WILL HELP YOU HELP ME MAKE THAT HAPPEN.

I WOULD GUESS THAT I HAVE A LOT MORE EXPERIENCE IN THIS THAN EITHER OF YOU AND, THEREFORE, IF YOU WILL FOLLOW MY LEAD, YOU WILL PROBABLY HELP YOURSELF, SO LET ME EXPLAIN THE WAY THIS WILL UNFOLD.

WE WILL BEGIN WHEN THE JURY GETS HERE.  WE WILL CHECK THEM IN AND BRING THEM INTO THE COURTROOM.  AS COUNSEL CAN SEE LOOKING AROUND THE COURTROOM, WE SPACE THE JURORS OUT ESSENTIALLY EVERY OTHER SEAT.  THERE ARE NUMBERS ON THE SEATS FOR THE JURORS.  WE WILL BE PUTTING EIGHT JURORS INTO THE JURY BOX.  THE BALANCE OF THE JURORS WILL BE SEATED IN THE PUBLIC SECTION.

WE WILL BEGIN -- AFTER I GIVE AN INTRODUCTION TO THE JURY, WE WILL BEGIN VOIR DIRE.  AS I EXPLAINED WHEN HE HAD OUR CONFERENCE CALL LAST THURSDAY, THE JURY WILL BE GIVEN A QUESTIONNAIRE, ONE PAGE, AND THEY WILL PROVIDE BOTH OF YOU

THEIR DEMOGRAPHIC INFORMATION, THEIR NAME, WHERE THEY LIVE, OCCUPATION, THAT SORT OF THING.  THEY THEN WILL BE TELLING US TO THE 13 QUESTIONS ON THE BALANCE OF THAT PAGE, THEY WILL BE TELLING US WHICH ONES THEY WOULD ANSWER YES TO.  AND I WILL THEN ALLOW -- WE WILL TAKE THE FIRST 12, AND THEY WILL PROVIDE THAT INFORMATION.

I THEN ALLOW THE ATTORNEYS AND PARTIES TO INQUIRE OF THE JURY.  PLAINTIFF WILL GO FIRST, THEN DEFENDANT.  ONCE YOU HAVE COMPLETED THAT -- WE WILL ALSO ADDRESS HARDSHIP AND WHETHER THERE ARE ANY CHALLENGES FOR CAUSE.  ONCE WE HAVE MOVED THROUGH THAT, THE PARTIES MAY BEGIN TO EXERCISE THEIR PEREMPTORIES.  EACH SIDE HAS SIX PEREMPTORIES AGAINST THE PANEL.  SIX.

WE BEGIN WITH THE PLAINTIFF AND ALTERNATE BACK AND FORTH.  WHEN SOMEONE IS STRUCK WHETHER IT'S FOR CAUSE OR BY PEREMPTORY, WE THEN GO TO THE NEXT PERSON.  SO IF, FOR INSTANCE, ONE OF THE 12 IS STRICKEN, THE NEXT PERSON WILL BE NO. 13, AND YOU MAY INQUIRE OF NO. 13.  AND WE CONTINUE, THEN, WITH THE PEREMPTORIES UNTIL FILLING ANY VACANT SEATS.

ONCE WE HAVE OUR 12 JURORS, THEN WE WILL SELECT PROBABLY ONE ALTERNATE.  I THINK THAT'S ALL WE NEED, ONE ALTERNATE.  AND WE DO THE SAME PROCESS WITH THE ALTERNATES.  WITH ALTERNATES EACH SIDE WILL BE GIVEN ONE STRIKE.  IF THERE'S ONE ALTERNATE, ONE PEREMPTORY PER SIDE.  IF FOR SOME REASON WE WERE DOING (INDISCERNIBLE) IT WOULD BE THE NUMBER, SO IF THERE WERE TWO ALTERNATES THERE WOULD BE TWO PEREMPTORIES.

AS SOON AS WE HAVE OUR JURY SEATED, WE WILL THEN

COMMENCE WITH THE OPENING STATEMENT.  ACTUALLY WHAT I WILL DO -- LET ME STOP.  I WILL READ THE INTRODUCTORY JURY INSTRUCTIONS.  THOSE ARE THE NO. 100 SET AND THEN A FEW OF THE 200'S.  AT PRESENT, I HAVE THOSE FROM THE PLAINTIFF.  IF DEFENDANT GETS ME SOME PROPOSALS THEN THEY WILL BE CONSIDERED.  IF THERE ARE OBJECTIONS TO ANY OF THESE INSTRUCTIONS, YOU MAY BRING THEM TO MY ATTENTION.

I WILL TELL YOU IT APPEARS THAT PLAINTIFF'S COUNSEL IS JUST USING THE STANDARD FORM INSTRUCTIONS AND SO THEY USUALLY ARE NOT OF ANY CONTROVERSY.  I DON'T KNOW THAT I'VE EVER HAD ANYONE OBJECT TO THE STANDARD SET 100 AND 200 NUMBER OBJECTIONS.

ONCE WE'RE DONE WITH THAT, WE THEN GET TO THE OPENING STATEMENTS.  NOW, I WANT TO SPEND A LITTLE MORE TIME EXPLAINING THAT.  EACH SIDE HAS THE RIGHT TO MAKE AN OPENING STATEMENT.  THE PLAINTIFF FIRST, THEN DEFENDANT.  IF DEFENDANT WISHES, DEFENDANT MAY RESERVE THAT AND DO AN OPENING WHEN DEFENDANT OPENS THE DEFENSE CASE.

THAT'S UP TO YOU, MR. MOON.  IT'S ENTIRELY YOUR CALL.  YOU CAN RESERVE YOUR OPENING IF YOU WISH.  THESE ARE OPENING STATEMENTS.  THEY'RE NOT ARGUMENT, ALL RIGHT?  THAT WILL BE PRESENTED TO THE JURY.

AS SOON AS WE'RE DONE WITH THAT, WE GET TO THE EVIDENTIARY PART OF THE CASE, AND I WANT TO EXPLAIN THIS AGAIN BECAUSE I WANT EVERYONE TO HAVE A GOOD TRIAL, GOOD, FAIR TRIAL, SO LET ME EXPLAIN THE BASIC PROCESS WE USE.

PLAINTIFF HAS THE BURDEN OF PROOF.  PLAINTIFF GOES FIRST PRESENTING PLAINTIFF'S CASE.  PLAINTIFF WILL CALL A

WITNESS.  PLAINTIFF'S ATTORNEY MAY THEN QUESTION THAT WITNESS.

WHEN PLAINTIFF IS DONE QUESTIONING THE WITNESS, YOU, MR. MOON, HAVE THE RIGHT TO CROSS-EXAMINE EACH AND EVERY WITNESS.  SO PLAINTIFF WILL ASK QUESTIONS.  WHEN HE'S DONE, IT WILL GO TO YOU, MR. MOON, AND YOU MAY INQUIRE OF THE WITNESS.

WHEN YOU ARE DONE CROSS-EXAMINING THE WITNESS, IT WILL RETURN TO PLAINTIFF WHO MAY ASK SOME FOLLOW-UP QUESTIONS BASED ON WHAT MR. MOON ASKED IN CROSS-EXAMINATION. IF PLAINTIFF'S COUNSEL DOES ASK QUESTIONS OF THE WITNESS AT THAT POINT, THEN MR. MOON HAS THE RIGHT WHEN PLAINTIFF'S COUNSEL IS DONE TO DO FURTHER CROSS-EXAMINATION LIMITED TO THE SCOPE OF WHAT PLAINTIFF'S COUNSEL INQUIRED ABOUT.  SO THAT'S THE BASIC TECHNIQUE THAT TAKES PLACE FOR EVERY SINGLE WITNESS.

SO PLAINTIFF STARTS, THEN CROSS BY MR. MOON, BACK TO PLAINTIFF'S COUNSEL, THEN MORE CROSS BY MR. MOON IF PLAINTIFF'S COUNSEL ASKED ANY QUESTIONS IN THAT SECOND ROUND.

WHEN WE'RE DONE WITH THAT WITNESS, PLAINTIFF WILL THEN CALL ANOTHER WITNESS AND WE WILL DO THE VERY SAME PROCESS OVER AND OVER AGAIN UNTIL SUCH TIME AS PLAINTIFF'S COUNSEL ADVISED THAT PLAINTIFF RESTS, THAT PLAINTIFF HAS CALLED ALL OF THE WITNESSES THAT PLAINTIFF WISHES TO CALL AS PART OF ITS DIRECT CASE.

AT THAT POINT IN TIME, THE CASE SHIFTS TO MR. MOON AS DEFENDANT.  MR. MOON, YOU THEN HAVE THE RIGHT TO CALL YOUR WITNESSES, AND WE DO THE SAME BASIC PROCESS; THAT IS, MR. MOON WILL ASK QUESTIONS OF HIS WITNESS.  WHEN MR. MOON HAS CONCLUDED WITH THE WITNESS, IT GOES TO PLAINTIFF'S COUNSEL WHO MAY CROSS-EXAMINE THE WITNESS.  IF HE DOES SO, WHEN HE'S DONE

IT WILL RETURN TO MR. MOON WITH THAT WITNESS FOR FURTHER EXAMINATION, AGAIN, LIMITED TO WHAT THE PLAINTIFF'S COUNSEL COVERED IN CROSS-EXAMINATION.  AND IF YOU ASK ANY QUESTIONS IN THAT ROUND, MR. MOON, THEN PLAINTIFF'S COUNSEL WHEN YOU'RE DONE HAS THE RIGHT TO FOLLOW UP ON THAT.  SO WE DO THAT WITH EACH AND EVERY WITNESS THAT THE DEFENDANT CALLS.

NOW, MR. MOON, SINCE YOU ARE REPRESENTING YOURSELF, I WANT TO EXPLAIN TO YOU HOW WE WILL HANDLE A SITUATION IF YOU CHOOSE TO TESTIFY, AND THAT, OF COURSE, IS ENTIRELY UP TO YOU.

IF YOU CHOOSE TO TESTIFY, YOU WILL DO IT AS PART OF YOUR CASE, AND WHAT YOU NEED TO ADVISE ME IS THAT YOU ARE NOW GOING TO TESTIFY IN YOUR OWN BEHALF.  AND WHAT I WOULD ASK YOU TO DO IS SIMPLY TELL US WHAT IT IS YOU WANT TO TESTIFY TO; THAT IS, YOU WILL GIVE YOUR TESTIMONY BY SIMPLY STATING WHAT YOU WANT TO STATE.

WHEN YOU ARE DONE TESTIFYING, IT GOES TO PLAINTIFF'S COUNSEL WHO MAY CROSS-EXAMINE YOU JUST LIKE ANY OTHER WITNESS. IF HE DOES SO, THEN WHEN HE IS DONE CROSS-EXAMINING, YOU, MR. MOON, HAVE THE RIGHT TO PROVIDE ADDITIONAL TESTIMONY LIMITED TO THE AREAS THAT PLAINTIFF'S COUNSEL CROSS-EXAMINED YOU ABOUT.  IF YOU DO PROVIDE ANY ADDITIONAL INFORMATION, WHEN YOU'RE DONE, PLAINTIFF'S COUNSEL CAN AGAIN CROSS-EXAMINE YOU ON THAT.

SO THAT'S HOW WE DO THE PLAINTIFF'S CASE AND THEN THE DEFENDANT'S CASE.  WHEN MR. MOON IS DONE PRESENTING HIS CASE, IT RETURNS TO PLAINTIFF'S COUNSEL FOR WHAT'S KNOWN AS REBUTTAL CASE.  THE REBUTTAL CASE IS WHERE PLAINTIFF IS GIVEN THE OPPORTUNITY TO AGAIN CALL WITNESSES BUT SIMPLY TO TRY TO

REBUT EVIDENCE THAT MR. MOON PRESENTED IN HIS DEFENSE.

AND WE USE THE SAME PROCESS; THAT IS, PLAINTIFF'S COUNSEL WILL CALL THE WITNESS, ASK QUESTIONS. WHEN HE'S DONE, MR. MOON MAY CROSS-EXAMINE. WHEN MR. MOON IS DONE, IT GOES BACK TO PLAINTIFF'S COUNSEL IF HE WISHES TO FOLLOW UP ON WHAT MR. MOON EXAMINED ABOUT. IF HE DOES SO, THEN IT GOES BACK TO MR. MOON WITH THAT WITNESS TO FOLLOW UP ON THAT. WE DO THAT UNTIL PLAINTIFF IS DONE WITH PLAINTIFF'S REBUTTAL CASE.

IF PLAINTIFF DOES ANY REBUTTAL CASE THEN MR. MOON HAS THE RIGHT TO PUT ON A REBUTTAL CASE. AND, AGAIN, SAME EXACT PROCESS. MR. MOON WILL INQUIRE OF HIS WITNESS. WHEN HE'S DONE, CROSS-EXAMINATION BY PLAINTIFF'S COUNSEL, BACK TO MR. MOON FOR POSSIBLE FOLLOW UP, BACK TO PLAINTIFF'S COUNSEL FOR FOLLOW UP.

SO IT'S A VERY SIMPLE PROCESS, FOUR BASIC STEPS. FIRST BY PLAINTIFF THEN BY DEFENDANT THEN REBUTTAL BY PLAINTIFF THEN REBUTTAL BY DEFENDANT.

THAT IS THE WAY WE WILL BE PROCEEDING. IT'S A VERY ORDERLY PROCESS. I AM TAKING THE TIME TO EXPLAIN THIS SO THAT HOPEFULLY IT WILL HELP EVERYONE KNOW WHERE WE ARE, WHAT WE'RE DOING AND KEEP IT VERY ORDERLY.

PLEASE REMEMBER, YOU HAVE A JURY. THIS JURY DOESN'T KNOW A THING ABOUT THE CASE. DON'T MAKE IT HARD FOR THEM BY INTERRUPTING EACH OTHER OR NOT FOLLOWING THIS BASIC OUTLINE THAT I JUST GAVE YOU. IF YOU FOLLOW THAT BASIC OUTLINE, WE WILL HAVE A VERY ORDERLY TRIAL. EVERYONE WILL BE ABLE TO PUT IN THE EVIDENCE THEY WISH TO PUT IN ASSUMING IT'S ADMISSIBLE AND SO ON, OKAY?

WHEN WE ARE DONE WITH THE EVIDENCE, THEN WE WILL GIVE THE JURY THE FURTHER INSTRUCTIONS.  I WILL READ THEM THE INSTRUCTIONS, AND THEN AFTER I HAVE READ THE JURY INSTRUCTIONS TO THEM, EACH SIDE WILL BE ALLOWED TO GIVE THEIR CLOSING ARGUMENT.  PLAINTIFF WILL GO FIRST.  WHEN HE IS DONE, MR. MOON WILL PRESENT HIS CLOSING ARGUMENT, AND THEN IF PLAINTIFF WISHES REBUTTAL, PLAINTIFF MAY THEN GIVE REBUTTAL CLOSING ARGUMENT.  AFTER THAT, THE JURY TAKES THE CASE FOR DELIBERATION.  SO THAT'S THE BASIC WAY WE WILL PROCEED.

NOW, ALL RIGHT.  THE COURT HAS A COPY IN THE MATERIALS THAT PLAINTIFF'S COUNSEL BROUGHT, A COPY OF THE COMPLAINT FILED APRIL 16TH, 2021.  THE COURT HAS, NOT AS PART OF THAT BOOK, BUT THE COURT HAS AN ANSWER FILED BY MR. MOON OCTOBER 25TH, 2021.  THOSE ARE, I BELIEVE, THE OPERATIVE PLEADINGS THAT DEFINE THE ISSUES TO BE TRIED TO THIS JURY.

THE COURT HAS BEEN GIVEN A SHORT STATEMENT OF THE CASE BY PLAINTIFF'S COUNSEL.  I'M GOING TO READ IT OUT LOUD NOW.  IT APPEARS TO BE VERY SIMPLE, VERY SHORT, VERY NONARGUMENTATIVE AS IT SHOULD BE.  I'M GOING TO PREVIEW IT FOR MR. MOON.

HERE'S WHAT IT SAYS, AND THIS IS WHAT THE COURT WOULD READ TO THE JURY TO LET THEM KNOW WHAT KIND OF CASE IT IS.  QUOTE, "THIS IS AN ACTION FOR UNLAWFUL DETAINER.  LEAH WHETSTONE, THE LANDLORD, CLAIMS THAT ADRIAN D. MOON IS HER TENANT UNDER A SHORT-TIME MONTH-TO-MONTH RENTAL AGREEMENT AND THAT MR. MOON NO LONGER HAS THE RIGHT TO OCCUPY THE PROPERTY.

"MS. WHETSTONE SEEKS TO RECOVER POSSESSION OF THE PROPERTY FROM MR. MOON.  MR. MOON CLAIMS THAT HE STILL HAS THE

RIGHT TO OCCUPY THE PROPERTY.  THE PROPERTY INVOLVED IN THIS CASE IS A HOUSE LOCATED IN ALTADENA, CALIFORNIA, AT 784 MOUNTAIN VIEW."  THAT IS THE TOTAL STATEMENT OF THE CASE.

MR. MOON, DID YOU FIND ANYTHING ABOUT THAT THAT YOU OBJECT TO?

MR. MOON:  NO, YOUR HONOR.

THE COURT:  VERY GOOD.  THE COURT WILL GIVE THAT, READ THAT TO THE JURY.

ALL RIGHT.  IS THERE ANYTHING FURTHER THAT ANYONE BELIEVES WE NEED TO ADDRESS AT THIS POINT BEING OUTSIDE THE PRESENCE OF THE JURY?  I WILL START WITH PLAINTIFF'S COUNSEL.

MR. THEODOSIADIS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. MOON?

MR. MOON:  YES.  I HAVE A QUESTION REGARDING THE 13 QUESTIONS.  IS THAT SOMETHING THAT WE PROVIDE OR IS THAT SOMETHING THAT THE COURT PROVIDES?

THE COURT:  IT'S A QUESTIONNAIRE -- IT IS A QUESTIONNAIRE THAT THE COURT PROVIDED.  IF YOU HAVE AN EMAIL ADDRESS WE MAY BE ABLE TO SEND YOU A COPY.  WOULD YOU LIKE THAT?

MR. MOON:  YES.

THE COURT:  ALL RIGHT.

MR. MOON:  AND LET ME --

THE COURT:  PLEASE GIVE US THE --

MR. MOON:  THE OTHER THING I WOULD LIKE TO -- WELL, IT'S ON -- MY EMAIL ADDRESS IS ON THE PLEADINGS.

BUT ANOTHER THING I WOULD LIKE TO ADDRESS IS THE MOTION IN LIMINE.  IT WAS, LIKE I SAID, FILED EX PARTE.  I

FIGURED THEY -- YOU KNOW, THEY WOULD HAVE IT TO YOU.  THEY SUPPOSED TO HAVE IT TO YOU BY 8:30 SO I DON'T KNOW WHY YOU DON'T HAVE IT YET.  AND THEN I --

THE COURT:  WHY DON'T YOU TELL ME WHAT IT IS?  WHAT ARE YOU ASKING THE COURT TO DO IN THE IN LIMINE MOTION?

MR. MOON:  UNTIL YOU HAVE IT BEFORE YOU, I CAN GIVE YOU THE ISSUE.  I'M SAYING THAT PURSUANT TO THE DOCTRINE OF RES JUDICATA AND COLLATERAL ESTOPPEL, THE PLAINTIFF HAS ALREADY ADDRESSED THESE ISSUES ON MAY 11TH IN A TRO SHE TRIED TO FILE AGAINST ME, HER AND HER MOM, IN WHETSTONE WORKS VERSUS MOON.  CASE WAS 21TDRO0037 AND 0039.  NO, EXCUSE ME.  00337 AND 0339 WHERE SHE ADDRESSED EVERYTHING THAT THE PLAINTIFF'S COUNSEL SAYS THAT THEY'RE GOING TO ADDRESS IN THIS JURY TRIAL, SO I'M OBJECTING TO HER TO EVEN BEING A WITNESS.

AND THEN THEY STATE THAT THE THREE EXHIBITS, EVIDENCE THAT THEY'RE GOING TO PRESENT HAS ALREADY BEEN PRESENTED.  IT ACTUALLY WAS FABRICATED BECAUSE WE DON'T HAVE A QUIT NOTICE.  WE DON'T HAVE A, OH, A HOUSE RULES AND A LEASE AGREEMENT, SO I'M ASKING FOR THOSE TO BE STRICKEN AND ASKING THAT PLAINTIFFS NOT EVEN BE ALLOWED TO TESTIFY BECAUSE -- BECAUSE OF RES JUDICATA AND BECAUSE OF COLLATERAL ESTOPPEL. SHE DID THAT ON MAY 11TH AND SHOULD HAVE DISMISSED THIS CASE THEREAFTER BUT HASN'T.

SO I NEED -- AND THEN THE OTHER THING IS I WANT TO ADDRESS THE CCP -- THE PREEMPTORY CHALLENGE WAS PROPERLY SERVED ON YOU BECAUSE I SERVED IT AS AN EX PARTE, BUT I IMPLEMENTED IT AS AN ATTACHMENT.  SO YOU WERE SERVED, AND YOU WERE SERVED PROPERLY BECAUSE THE PREEMPTORY CHALLENGE IS

SEPARATE. IT'S A MOTION. IT'S A -- AND YOU GOT IT PROPERLY. IT WAS SERVED ON YOU BECAUSE YOU SAID YOU RULED ON IT.

SO I WANT TO ADDRESS THAT BEFORE THE JURORS COME BECAUSE I BELIEVE THAT THIS CASE CANNOT GO FORWARD UNTIL YOUR -- THE QUESTION OF YOUR DISQUALIFICATION IS DETERMINED BY A JUDGE AGREED UPON BY THE PARTIES. AND IF AFTER FIVE DAYS THAT'S NOT DONE, THEN WE HAVE THE JUDICIAL COUNCIL TO APPOINT A JUDGE TO DETERMINE YOUR DISQUALIFICATION AS WELL AS DEFENDANTS VIRAMONTES, THE PREVIOUS JUDGE, AND JOEL L. LOFTON.

AND I DON'T BELIEVE THAT I CAN HAVE A FAIR TRIAL IN -- JURY TRIAL IN THE CENTRAL -- WELL, STANLEY MOSK COURTHOUSE BECAUSE OF THE EGREGIOUS MATTERS OF MALFEASANCE OF THE CLERK'S OFFICE, THE JUDICIAL OFFICERS, THE SHERIFF'S DEPARTMENT, SO I DON'T WANT TO HAVE ANY KIND OF JURY TRIAL IN STANLEY MOSK COURT, SO I BELIEVE THAT MY MOTION FOR CHANGE OF VENUE IS WARRANTED. AND AS A MATTER OF FACT I THINK, YOU KNOW, I QUALIFY BASED ON CIRCUMSTANCES.

AND THEN THERE WAS A DEFAULT THAT WAS FILED ON, I THINK, WEDNESDAY OF LAST WEEK WHICH I BELIEVE THERE HASN'T BEEN ANY RENDERING OF IT YET, WHETHER OR NOT IT'S BEEN REJECTED OR ACCEPTED. AND IF IT'S BEEN ACCEPTED, THEN I HAVE CURRENT DEFAULTS AGAINST WHETSTONE AND A CLERK'S JUDGMENT AGAINST WHETSTONE.

AND SO, I BELIEVE, AGAIN, LIKE I SAID, WE SHOULD CONTINUE THIS AT LEAST TWO DAYS OUT TO DETERMINE ALL THAT AND RECONSIDERATION ON THE CHANGE OF VENUE BECAUSE, LIKE I SAID, I BELIEVE IT'S WARRANTED BASED ON ALL THAT INFORMATION.

AND I DON'T BELIEVE WE CAN PROCEED YOU AS THE JUDGE

BECAUSE, LIKE I SAID, YOUR DISQUALIFICATION IS IN QUESTION AND SO 170 -- CCP 170.4(D), THEN YOU CAN'T PRESIDE OVER THIS UNLESS YOU'RE WILLING TO RECUSE YOURSELF AND THEN SEND IT TO ANOTHER COURTROOM, THEN, YOU KNOW, THAT WOULD BE THE MOST APPROPRIATE THING TO DO UNDER THE GUISE OF TRYING TO HAVE A FAIR TRIAL, JURY TRIAL IN THIS CASE.

LIKE I SAID, I DON'T -- I KNOW THAT I CANNOT HAVE A FAIR JURY TRIAL AT STANLEY MOSK COURTHOUSE OR IN LOS ANGELES COUNTY FOR THAT MATTER.

SO THOSE ARE THE THINGS, YOU KNOW.  I DON'T THINK -- LIKE I SAID, I THINK IF YOU'RE WILLING TO BE NOBLE ENOUGH TO GO AHEAD AND RECUSE YOURSELF AND THEN GRANT MY MOTION TO CHANGE OF VENUE TO SAN BERNARDINO, I THINK THAT WOULD BE THE MOST APPROPRIATE AND NOBLE THING TO DO AT THIS TIME.

THE COURT:  THANK YOU, SIR.  ALL RIGHT.  I'VE ALREADY RULED WITH REGARD TO THE DISQUALIFICATION REQUEST. JUST SO YOU KNOW, SIR, I KNOW NOTHING ABOUT YOU OR THIS CASE. I READ WHAT YOU PUT IN THE PAPERS.  NONE OF IT IS TRUE.  NONE OF IT IS A BASIS FOR DISQUALIFICATION.  SO NOTHING YOU'VE SAID IS GOING TO CHANGE THE RULING I'VE ALREADY GIVEN YOU.

WITH REGARD TO THE TEMPORARY RESTRAINING ORDER, THERE IS NOTHING THAT YOU HAVE SAID THAT WOULD SUGGEST THAT ANY RULING ON THAT COULD BE RELATED TO THE EVICTION PROCEEDING, SO WHILE I CERTAINLY WILL READ THE PAPERS, I WILL TELL YOU I AM DISINCLINED TO GRANT THAT SIMPLY BECAUSE TOTALLY DIFFERENT ISSUE.

WITH REGARD TO ANY ISSUES OF EVIDENCE, THE COURT HAS NOTHING YET TO KNOW WHETHER THERE WERE ANY NOTICES, LEASES,

RULES, SO THE COURT CERTAINLY WILL RULE ON EVIDENCE WHEN THE ISSUE IS PRESENTED, BUT THERE'S BEEN NOTHING PRESENTED TO ME THAT WOULD ALLOW ME AT THIS POINT TO RULE ON WHETHER EVIDENCE IS ADMISSIBLE.

WITH REGARD TO THE DEFAULT, I BELIEVE YOU'RE SPEAKING OF A DEFAULT ON YOUR CROSS-COMPLAINT.  AM I CORRECT?

MR. MOON:  YES.

THE COURT:  CROSS-COMPLAINTS ARE NOT ALLOWED IN UNLAWFUL DETAINERS.  THE FACT THAT PLAINTIFF'S COUNSEL CHOSE NOT TO FILE A MOTION TO STRIKE DOESN'T ALLOW YOU TO ASSERT A CROSS-COMPLAINT.  THEY'RE NOT PROPER IN UNLAWFUL DETAINERS.

IN ANY EVENT, DEFAULT IS HANDLED IN THE CLERK'S OFFICE, SO I HAVE NO IDEA WHAT THAT STATUS IS.  AGAIN, THERE IS NO RULING FOR ME TO MAKE AT THIS TIME.

ALL RIGHT.  WE WILL --

MR. MOON:  WHAT ABOUT THE PREEMPTORY CHALLENGE?

THE COURT:  I RULED ON THAT, SIR.

MR. MOON:  THAT HAS TO BE ADDRESSED BEFORE --

THE COURT:  SIR, I'VE RULED ON IT NUMEROUS TIMES.

MR. MOON:  WELL, THEN, THAT -- YOU RULED ON IT BUT WE HAVEN'T -- WE HAVEN'T ARGUED.  YOU HAVEN'T ALLOWED ME TO ARGUE IT.  YOU RULED ON SOMETHING THAT I DON'T HAVE A RULING ON, AND THIS TRIAL CANNOT COMMENCE UNTIL THAT'S DETERMINED WHAT YOUR RULING IS AND WHAT THE NEXT STEP IS.

LIKE I SAID, IF YOU DENYING IT BASED ON IT WASN'T PROPERLY SERVED OR TIMELY, THAT'S NOT TRUE, SO -- AND THEN IF I FILED THAT BEFORE THE FIRST JUROR IS SELECTED, THEN BY LAW, YOU'RE SUPPOSED TO RECUSE YOURSELF.  SO CAN YOU ADDRESS THAT?

UNTIL YOUR DETERMINATION OF -- THE QUESTION OF THE DETERMINATION OF YOUR DISQUALIFICATION IS HAD BY ANOTHER JUDGE, YOU CANNOT -- YOU CANNOT DO ANYTHING IN THIS CASE, AND THAT'S PURSUANT TO CCP SECTION 170.4(D) REGARDLESS OF WHAT YOU DO.  EVEN IF YOU STRIKE THE ANSWER AND ALL THIS OTHER STUFF, YOU CANNOT DO ANYTHING UNTIL THE QUESTION OF THE DETERMINATION OF YOUR DISQUALIFICATION IS HAD BY A DIFFERENT JUDGE.  AM I CORRECT WHEN I SAY THAT?

THE COURT:  YOU'RE NOT CORRECT, SIR.

MR. MOON:  YOUR HONOR, AM I CORRECT WHEN I --

THE COURT:  ALL RIGHT.  WE WILL BE IN RECESS.  WE WILL BE IN RECESS.  THE JURY HAS BEEN ORDERED FOR 11:00.  WHEN THEY GET HERE MY JUDICIAL ASSISTANT WILL CHECK THEM IN.  WE WILL BRING THEM INTO THE COURTROOM.

WHEN WE ARE READY TO BRING THEM IN THE COURTROOM BUT BEFORE THEY ARE BROUGHT IN, MR. MOON, YOU NEED TO BE ON THE LINE, SO PLEASE -- YOU'RE WELCOME TO STAY ON THE LINE NOW IF YOU LIKE, OR YOU CAN DIAL IN NO LATER THAN 11:00 A.M.  WE'RE JUST GOING TO TAKE A SHORT RECESS UNTIL THEN.  AGAIN, MR. MOON, YOU'RE WELCOME TO STAY ON THE LINE SO THAT WHEN WE START UP AGAIN YOU DON'T HAVE TO REDIAL IN.

WE ARE IN RECESS.

MR. THEODOSIADIS:  THANK YOU.

(A RECESS WAS TAKEN.)

THE COURT:  WE ARE CONTINUING IN THE MATTER OF LEAH WHETSTONE VERSUS ADRIAN MOON, CASE NO. 21PDUD00319.

THE COURT AS I PROMISED WHEN I ADVISED EVERYONE EARLIER THIS MORNING THAT I HAD DENIED THE PEREMPTORY

CHALLENGE FILED BY MR. MOON AGAINST ME, I HAVE PREPARED, SIGNED AND FILED -- THE CLERK HAS FILED THE ORDER THAT THE COURT ISSUED IN WRITING DENYING THAT AS WELL AS THE VERIFIED ANSWER THAT I HAVE FILED DENYING THE VALIDITY OF THE CHALLENGE, SO THERE IS NO NEED FOR US TO DELAY THESE PROCEEDINGS SINCE THE COURT HAS RESPONDED IN WRITING AND IT IS NOW ON FILE WITH THE CLERK OF THE COURT.

I HAVE DIRECTED MY JUDICIAL ASSISTANT TO SCAN A COPY WHICH HE IS DOING RIGHT AS WE SPEAK AND TO EMAIL IT TO MR. MOON. SO THAT WILL BE COMING TO MR. MOON WITHIN ABOUT TWO OR THREE MINUTES.

ALL RIGHT. WE ARE NOW PREPARED TO BRING IN THE JURY. SO WHAT I WANT TO DO, AGAIN, I WANT TO REMIND EVERYONE THE JURY WILL BE FILING INTO THE COURTROOM IN JUST A MOMENT, AND WE WILL BEGIN THE SELECTION PROCESS. AS I'VE SAID A NUMBER OF TIMES AND WILL AGAIN SAY, IT IS MY DESIRE TO MAKE SURE THAT EVERYONE HAS A FAIR TRIAL, SO I REMIND YOU THE JURY WILL BE PRESENT. THEY WILL BE SEEING AND HEARING WHAT TAKES PLACE IN THIS COURTROOM, SO I STRONGLY URGE PEOPLE TO MAKE THEIR BEST GOOD DECISIONS AS TO HOW THEY CONDUCT THEMSELVES IN FRONT OF THE JURY.

AT THIS TIME BEFORE I BRING IN THE JURY, IS THERE ANYTHING PLAINTIFF BELIEVES I MUST ADDRESS AT THIS MOMENT?

MR. THEODOSIADIS: NO, YOUR HONOR.

THE COURT: AND, MR. MOON, ANYTHING FURTHER BEFORE THE JURY COMES IN?

MR. MOON: YES. DID YOU RECEIVE THE EX PARTE FOR MOTION IN LIMINE?

THE COURT:  THE MOTION IN LIMINE I -- BECAUSE OF THE WAY IN WHICH YOU FILE THINGS, I CAN'T TELL.  WHAT DID YOU LABEL IT?  I DID SEE PAPERS THAT MADE REFERENCE TO THE TEMPORARY RESTRAINING ORDER AND SO ON.  WHAT DID YOU CALL YOUR DOCUMENT?

MR. MOON:  I JUST FILED IT -- THAT WOULD BE EX PARTE APPLICATION EMERGENCY MOTION UNDER RULE 5.151 ET. SEQUEL (SIC) AND THE SUPREMACY CLAUSE OF ARTICLE VI OF CALIFORNIA MOTION FOR LIMINE NO. 1 TO NOT ALLOW -- TO NOT ALLOW PLAINTIFF, LEAH WHETSTONE, TO GIVE TESTIMONY AT THE JURY TRIAL AND TO NOT ALLOW FRAUDULENT DOCUMENTS:  THE LEASE AGREEMENT, THE -- WHAT WAS THE OTHER TWO?  THE HOUSE RULES, AND WHAT WAS THE THIRD ONE?  WELL, THAT'S WHAT IT SAYS.  SO HAVE YOU RECEIVED IT?  I JUST FILED IT THIS MORNING SO --

THE COURT:  YOU ARE -- SIR, I HAVE NOT YET RECEIVED IT.  AS I SAID, WHEN I GET IT I WILL REVIEW IT AND WE WILL MAKE A RULING.  THERE'S NO NEED FOR ME TO MAKE A RULING ON THAT AT THIS EXACT MOVEMENT.  THE PLAINTIFF HAS NOT ASKED TO TESTIFY, NOR HAS SHE ASKED TO ADMIT ANY EXHIBITS, SO WE WILL TAKE IT UP WHEN THE PAPERWORK GETS HERE.  I ALREADY TOLD YOU SOMETHING ABOUT THAT.

BUT LET US NOW BRING IN OUR JURY SO THAT WE CAN BEGIN THE JURY SELECTION.  THE CLERK WILL PLEASE BRING IN OUR JURORS AND SEAT THEM IN THE NUMBERED SEATS.

THE CLERK:  COUPLE THINGS, YOUR HONOR.  I NEED COPIES OF THE BINDERS WITH EXHIBITS, ONE FOR THE WITNESS STAND AND ONE FOR ME.  AND IF YOU COULD CHECK WITH MR. MOON TO SEE IF HIS COPY OF THE ORDER -- I JUST EMAILED IT TO HIM.  YOU

WANT TO ASK HIM OR -- DO YOU HAVE A COPY?

THE COURT:  I HAVE A COPY.

THE CLERK:  OKAY.

THE COURT:  I HAVE A COPY.

THE CLERK:  YOU WANT TO ASK MR. MOON IF HE --

MR. MOON:  EXCUSE ME.  I CAN'T HEAR.

THE COURT:  WELL, WE'RE --

MR. MOON:  I CAN'T HEAR.

THE COURT:  OKAY.  WE WILL CORRECT THAT.  ALL THE CLERK WAS DOING WAS HANDING OUT OR PICKING UP THE BINDERS, SO THERE WAS NOTHING TO HEAR.

ALL RIGHT.  IF WE COULD --

MR. MOON:  SO IS HE GOING TO EMAIL ME THE BINDER TOO OR WHAT?

THE CLERK:  NO.

THE COURT:  WE WILL --

MR. MOON:  OR DO WE HAVE TIME FOR THAT?

THE COURT:  COUNSEL, WOULD YOU LIKE TO RESPOND?

MR. THEODOSIADIS:  I JUST EMAILED -- ABOUT TEN MINUTES AGO I EMAILED MR. MOON MY ONE EXHIBIT.  I CAN EMAIL HIM RIGHT NOW.

THE COURT:  THE ONE EXHIBIT YOU HAVE IS WHAT?

MR. THEODOSIADIS:  IT'S A 30-DAY NOTICE.

THE COURT:  THE 30-DAY NOTICE TO TERMINATE TENANCY, A COPY OF WHICH I BELIEVE, MR. MOON, YOU HAVE ATTACHED TO YOUR PAPERS.  OKAY.  SOME OF THE FILINGS THAT I SAW THIS MORNING HAVE, I BELIEVE, A COPY OF THAT DOCUMENT.  IS THERE ANY OTHER EXHIBIT THAT PLAINTIFF AT PRESENT INTENDS TO USE?  THAT IS THE

ONLY ONE I BELIEVE I SEE IN THE NOTEBOOK.

MR. THEODOSIADIS:  THAT IS THE ONLY ONE, YOUR HONOR.

THE COURT:  MR. MOON, DID YOU GET THE EMAIL?

MR. MOON:  LET'S SEE.  AND HIS WITNESS LIST -- AND HIS WITNESS LIST IS ONLY LEAH WHETSTONE?

THE COURT:  THAT IS CORRECT.

MR. MOON:  NOW, AM I SUPPOSED TO HAVE THIS STUFF BEFORE WE START THE ENGAGEMENT OF SELECTING JURORS?

THE COURT:  SIR, YES.  THAT'S WHY THEY SENT IT TO YOU.  THE ONLY EXHIBIT, AND I'M LOOKING THROUGH YOUR MATERIALS BECAUSE I SAW THAT YOU HAVE A COPY OF THE ONE EXHIBIT THAT PLAINTIFF HAS IDENTIFIED.  LET ME TELL YOU WHERE IT IS IN YOUR OWN MOTION.  IT IS --

MR. MOON:  OKAY.

THE COURT:  IT IS ON --

MR. MOON:  WELL, MY --

THE COURT:  YOUR FILING THAT RELATES TO THE TRO AND THE EMERGENCY REQUEST FOR CIVIL HARASSMENT RESTRAINING ORDER THAT YOU FILED OCTOBER 29, YOU IDENTIFIED IT AND ATTACHED A COPY AS EXHIBIT 2, WHAT IS CALLED CALIFORNIA 30-DAY NOTICE TO TERMINATE TENANCY.  WOULD PLAINTIFF VERIFY THE --

MR. MOON:  SO MY QUESTION IS, ARE WE SUPPOSED TO HAVE THE WITNESS LIST AND THE EXHIBITS PRIOR TO COMMENCING THE VOIR DIRE?

THE COURT:  THAT IS CORRECT.  THE WITNESS LIST --

MR. MOON:  OKAY.  SO --

THE COURT:  THE WITNESS LIST FROM PLAINTIFF IDENTIFIES LEAH WHETSTONE AS HIS ONLY WITNESS, SO YOU HAVE

THAT INFORMATION.  YOU HAVE THE EXHIBIT.

MR. MOON:  AND HIS EXHIBIT, ONLY EXHIBIT IS THE 30-DAY NOTICE.

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  THAT IS CORRECT.

MR. MOON:  OKAY.  NOW, MY THING IS I FILED A WITNESS LIST --

THE COURT:  WE HAVE THAT, SIR.

MR. MOON:  -- MY WITNESSES.

THE COURT:  I HAVE YOUR WITNESS LIST.

MR. MOON:  OKAY.

THE CLERK:  I ALSO EMAILED THIS TO HIM AS WELL AS THE ORDER YOU JUST GAVE ME.

MR. MOON:  THEN SECONDLY, I'D LIKE TO SUBMIT AS MY EXHIBITS ALL THE EX PARTE APPLICATIONS THAT WERE FILED FOR TODAY AND HEARD AND THE ORDERS.

THE COURT:  WE CAN TAKE THAT UP A LITTLE BIT LATER.

PLEASE BRING IN THE JURY.  PLEASE BRING IN THE POTENTIAL JURORS.

WE ARE ABOUT TO BEGIN, SO I WANT YOU TO BE AWARE OF THAT, MR. MOON.

MR. MOON:  I DIDN'T GET THE QUESTIONNAIRE.  I DIDN'T GET THE QUESTIONNAIRE THING FOR THE JURORS.

THE COURT:  WE EMAILED -- WE EMAILED THAT TO YOU. CHECK YOUR SPAM FOLDER, SIR.  THAT WAS EMAILED OVER AN HOUR AGO.

MR. MOON:  OKAY.  I GOT -- I GOT OPPOSING COUNSEL'S EMAIL BUT I HAVEN'T RECEIVE THE COURT'S EMAIL OF THE

INSTRUCTIONS FOR THE JURORS.

THE COURT:  WOULD YOU LIKE US TO SEND YOU ANOTHER COPY?  WOULD YOU LIKE US --

MR. MOON:  YEAH, IN EMAIL.  I'D LIKE TO SEE WHAT IT IS THEY'RE LOOKING AT.

THE COURT:  ALL RIGHT.  WE WILL EMAIL YOU ANOTHER COPY.

MR. MOON:  OKAY.  CAN I SEE -- DO YOU HAVE THE CORRECT EMAIL ADDRESS?

THE COURT:  SIR, THE JURY IS FILING IN.  YOU MAY WISH TO SUSPEND CONVERSATION.

(THE FOLLOWING PROCEEDINGS WERE HELD IN THE PRESENCE OF THE POTENTIAL JURORS.)

THE COURT:  COME ON IN.  THIS WON'T TAKE LONG AND WE'LL GET YOU OUT OF HERE.

OKAY.  I APOLOGIZE TO EVERYONE FOR THE LATE START.  ALL RIGHT.  WE HAVE A VERY FULL COURTROOM NOW.

WELCOME, LADIES AND GENTLEMEN.  LET ME GIVE YOU A VERY BRIEF INTRODUCTION, THEN WE'RE GOING TO BREAK FOR LUNCH.  BUT LET ME WELCOME YOU.  MY NAME IS DOUGLAS STERN.  I'M OBVIOUSLY THE JUDGE.  YOU ARE IN DEPARTMENT 92 OF THE STANLEY MOSK COURTHOUSE.  THERE IS OUR PHONE NUMBER, (213) 633-1092.  I GIVE THAT TO YOU.  IT'S ALSO -- IT'S ON A BOARD UP HERE.  IF YOU END UP ON THE JURY AND AT ANY POINT NEED TO REACH US, THAT NUMBER WILL GET YOU RIGHT INTO US.  DON'T WORRY ABOUT IT JUST NOW.  WE'LL GO OVER IT AGAIN.

I WANT TO GIVE YOU A VERY BRIEF INTRODUCTION ABOUT JURY SERVICE.  THERE ARE REALLY ONLY TWO TIMES WHEN WE AS

CITIZENS ARE CALLED ON TO DO SERVICE INVOLUNTARILY.  ONE IS YOU MIGHT BE DRAFTED, THE MILITARY SERVICE.  THE SECOND? SECOND IS WHAT YOU'RE DOING NOW:  SUMMONED TO DO JURY DUTY. THOSE REALLY ARE THE ONLY TWO THINGS.  THE ONLY TWO TIMES.

JURY IS SOMEWHAT UNIQUE TO OUR AMERICAN SYSTEM OF JUSTICE.  AND I WANT TO EXPLAIN IT TO YOU VERY BRIEFLY SO YOU REALLY DO SEE HOW IT WORKS IN AS PART OF DEMOCRACY, AS PART OF THE PEOPLE TRULY BEING THE SOVEREIGN.

SO IN OUR SYSTEM, WE HAVE THREE BRANCHES OF GOVERNMENT:  THE LEGISLATIVE, THE EXECUTIVE, AND THE JUDICIAL. OF COURSE, THE LEGISLATURE AT THE FEDERAL LEVEL YOU HAVE CONGRESS.  THEY'RE THE ONES WHO MAKE THE LAW.

WE HAVE THE SAME IN CALIFORNIA.  WE HAVE OUR STATE SENATE AND ASSEMBLY.  THEY MAKE THE LAWS.  WE HAVE THE PRESIDENT OR THE GOVERNOR, THE CHIEF EXECUTIVE WHO IS SUPPOSED TO EXECUTE THOSE LAWS.

AND THEN WE HAVE THE JUDICIARY.  THIS, OF COURSE, IS THE JUDICIAL BRANCH.  AND HERE IN THE PICTURE, THAT'S THE SUPREME COURT OF THE UNITED STATES.  WE ALSO HAVE A SUPREME COURT THAT OVERSEES CALIFORNIA LAW.  SO THOSE ARE THE THREE BRANCHES THAT MAKE UP OUR DEMOCRACY.

OUR CALIFORNIA CONSTITUTION PROVIDES THAT YOU HAVE THE RIGHT TO A JURY TRIAL IN MANY CASES.  IT'S PART OF OUR CONSTITUTION.  AGAIN, THE PEOPLE ARE SOVEREIGN.  IT'S A VERY IMPORTANT PART OF OUR CHECKS AND BALANCE SYSTEM.  THE LEGISLATURE MAY MAKE THE LAW, BUT YOU THE PEOPLE GET TO DECIDE WHETHER THE FACTS AND LAW JUSTIFY A PARTICULAR OUTCOME.

NOW, WE'RE ALSO ALL KEENLY AWARE OF COVID-19.  THE

PANDEMIC CONTINUES AND, THEREFORE, I WANT TO ASSURE YOU THAT THE COURT SYSTEM IS WELL AWARE OF THE CONSEQUENCES, AND WE HAVE WORKED VERY CAREFULLY WITH THE PUBLIC HEALTH AGENCIES SO THAT WE CAN BOTH BALANCE THE RIGHT TO A JURY TRIAL AS WELL AS THE SAFETY OF EVERYONE INVOLVED, YOURSELVES IN PARTICULAR.

AS YOU CAN TELL, EVEN THOUGH THE PUBLIC HEALTH AGENCIES NO LONGER REQUIRE US TO SOCIALLY DISTANCE, WE HAVE SPACED YOU OUT A BIT TO GIVE YOU A LITTLE EXTRA ROOM.

WE ARE STILL REQUIRING EVERYONE TO WEAR A MASK, SO THANK YOU FOR WEARING YOUR MASK.  AND THROUGHOUT THE TRIAL WE WILL ALL BE WEARING OUR MASKS.  AND OF COURSE BY NOW WE ALL KNOW HOW TO WEAR A MASK OVER YOUR MOUTH AND NOSE.

OKAY.  SOMETIMES, OBVIOUSLY, THAT MAY IMPACT US A LITTLE BIT.  SOMETIMES IT MAY BE A LITTLE HARD TO HEAR.  WE HAVE TO SLOW THINGS DOWN.  PLEASE BE MINDFUL OF THAT AS WE MOVE FORWARD.  WE WILL DO OUR BEST TO MINIMIZE ANY IMPACT THAT THE MASK HAS, BUT WE WANT TO KEEP EVERYONE SAFE AND HEALTHY.  THAT'S IMPORTANT.

THE DURATION OF THIS TRIAL.  I DON'T HAVE A REAL DEFINITIVE ANSWER TO THAT.  IT IS MY BELIEF THAT THE TRIAL MIGHT TAKE FOUR TO FIVE DAYS, SO BASICALLY I EXPECT THIS TO BE DONE THIS WEEK.  I CAN'T MAKE A HARD AND FAST PROMISE, BUT THAT IS MY EXPECTATION.

THE SCHEDULE WE ARE GOING TO USE.  MOST DAYS, MONDAY THROUGH FRIDAY WE WILL START AT 9:00 A.M. AND GO TILL 4:30 P.M.  WE WILL TAKE A BREAK IN THE MORNING, USUALLY ABOUT 10:30.  MIGHT BE 10:15, WHEREVER IT'S CONVENIENT, BUT ROUGHLY HALFWAY THROUGH THE MORNING.  WE WILL TAKE A LUNCH BREAK FROM

NOON TO 1:30.  WE MIGHT MAKE IT A LITTLE LONGER BECAUSE ON OCCASION THERE'S SOME THINGS I HAVE TO DO IN THE AFTERNOON THAT WE NEED TO SQUEEZE IN SO IT MIGHT GO NOON UNTIL 2:00 ON OCCASION.  AND THEN WE WILL TAKE AN AFTERNOON BREAK AGAIN ABOUT 3:15, 3:30.  THAT IS THE SCHEDULE WE FOLLOW EVERY DAY, OKAY?

I TELL YOU THAT BECAUSE WHEN WE GET BACK FROM LUNCH, I AM GOING TO ASK YOU WHETHER ANY OF YOU HAVE SUCH AN EXTREME HARDSHIP THAT YOU BELIEVE THAT YOU COULD NOT SIT ON A JURY FOR, IN ESSENCE, THIS WEEK WITH THAT TIME SCHEDULE.  SUCH AN EXTREME HARDSHIP.

I WILL TELL YOU WE ALL KNOW THAT MANY OF YOU WOULD PREFER TO BE ELSEWHERE.  YOU MAY HAVE JOBS.  YOU MAY HAVE COMMITMENTS.  THOSE ARE NOT GENERALLY EXTREME HARDSHIP, ALL RIGHT?

NOW, THAT REALLY SORT OF WINDS UP THE INTRODUCTORY COMMENTS I WANT TO MAKE TO YOU.  WHAT WE ARE GOING TO DO NOW IS WE'RE GOING TO BREAK FOR LUNCH.  I REALIZE WE HAVEN'T ACHIEVED MUCH WITH YOU PRESENT, BUT WE'RE GOING TO BREAK FOR LUNCH AND ASK YOU TO COME BACK TODAY AT 2:00, 2:00.  SO I'M GIVING YOU A LONG LUNCH BECAUSE I HAVE SOME OTHER THINGS I NEED TO ADDRESS BEFORE WE CAN RECONVENE.

NOW, WHEN WE COME BACK, I'M GOING TO LET THE PARTIES INTRODUCE THEMSELVES TO YOU AND I WILL BE TELLING YOU A VERY LITTLE BIT, TRULY A LITTLE BIT ABOUT THE CASE THAT YOU MAY BE HEARING, ALL RIGHT?

ARE THERE ANY QUESTIONS OF ANY OF THE JURORS THAT I NEED TO ANSWER BEFORE I LET YOU GO?  YES, SIR.

AN UNIDENTIFIED POTENTIAL JUROR:  WHEN WE COME BACK AT 2:00 DO WE TAKE OUR SEATS?

THE COURT:  COME AND WAIT UNTIL WE BRING YOU IN, BUT YOU WILL TAKE THE SAME SEATS, YES.  THANKS FOR ASKING.  WE'RE GOING TO PUT YOU IN THE SAME SEATS, SO TRY TO MAKE A NOTE.  MOST OF YOU HAVE NUMBERS ON YOUR SEAT SO YOU CAN JUST WRITE THEM DOWN.  TAKE THE SAME SEATS.  BUT DON'T ENTER UNTIL WE BRING YOU IN AS A GROUP.

OKAY.  NOW, I WANT TO TELL YOU SOMETHING.  YOU KNOW NOTHING ABOUT THIS CASE, NOT YET.  SO THERE'S NOTHING FOR YOU TO TALK ABOUT THIS CASE.  DON'T EVEN SPECULATE WHAT IT'S ABOUT.  YOU'RE WELCOME TO EAT TOGETHER, CHAT TOGETHER.  DON'T MENTION A THING ABOUT THIS CASE, OKAY?  NOT EVEN QUESTIONS LIKE WHAT KIND OF CASE IS THIS GOING TO BE?  DON'T EVEN SPECULATE, OKAY?  JUST RELAX AND WE'LL SEE YOU AT 2:00, OKAY?

THANK YOU VERY MUCH.  THANK YOU FOR COMING OUT.  WE REALLY APPRECIATE IT.

YES, MA'AM?  WHEN I GET TO THE HARDSHIP ISSUE, MA'AM, TELL ME AT THAT TIME, OKAY?

UNIDENTIFIED SPEAKER:  MA'AM, YOU CAN'T JUST GO UP TO THE JUDGE LIKE THAT.

THE COURT:  NO.  MA'AM, WHEN WE DO THAT, JUST RAISE YOUR HAND AND SAY YOU'D LIKE TO SPEAK TO US PRIVATELY, OKAY?

VERY GOOD.  HAVE A NICE LUNCH, MA'AM.

SIR?

AN UNIDENTIFIED PROSPECTIVE JUROR:  THIS MIGHT -- I DON'T SPEAK ENGLISH.  I DON'T KNOW --

THE COURT:  ALL RIGHT.  AFTER LUNCH YOU CAN POINT

THAT OUT TO ME WHEN EVERYONE'S PRESENT, OKAY?

AN UNIDENTIFIED PROSPECTIVE JUROR:  OKAY.

(THE FOLLOWING PROCEEDINGS WERE HELD

OUT OF THE PRESENCE OF THE PROSPECTIVE JURORS:)

THE COURT:  ALL RIGHT.  WE ARE OUTSIDE THE HEARING OF THE JURY.  THEY HAVE ALL EXITED.

I WILL ASK MY J.A., MR. MOON CLAIMED THAT HE DID NOT GET THE JURY -- THE ONE-PAGE JURY QUESTIONNAIRE.  COULD YOU EMAIL HIM AGAIN?

THE CLERK:  MR. MOON, CAN YOU CHECK YOUR SPAM FOLDER BECAUSE IT MIGHT HAVE JUST BEEN SENT --

MR. MOON:  OKAY.  HOLD ON.

THE CLERK:  OKAY.  IT'S SENT AS --

MR. MOON:  SOMETIMES I DO HAVE --

THE CLERK:  IT'S SENT AS AN ATTACHMENT TO AN EMAIL. IT SHOULD SAY "SMDPC."

THE COURT:  DID YOU FIND IT, MR. MOON?

MR. MOON:  NO.  CAN YOU HEAR ME?

THE CLERK:  YES.

THE COURT:  WE'LL SEND IT TO YOU AGAIN, MR. MOON.

ALL RIGHT.  WE WILL SEE EVERYONE AT --

MR. MOON:  I GREATLY APPRECIATE IT.

THE COURT:  I'M SORRY?

MR. MOON:  NO.  I SAID I'LL GREATLY APPRECIATE IT IF YOU SEND IT AGAIN.

THE COURT:  ALL RIGHT.  WE'LL SEE EVERYONE AT 2:00.

MR. MOON:  I'LL ALSO -- OKAY THEN.

THE COURT:  MAKE SURE YOU GET A SET OF YOUR

MATERIALS OUT TO HIM IMMEDIATELY.

MR. THEODOSIADIS:  YES.

THE COURT:  IT'S SOMETHING YOU SHOULD HAVE THOUGHT OF AND DONE.  I DON'T KNOW WHY YOU'RE MAKING --

(THE AUDIO OF THE PROCEEDINGS STOPPED AT 12:03 P.M.

(THE NOON RECESS WAS TAKEN UNTIL 2:00 P.M.

OF THE SAME DAY.)

CASE NUMBER:                    21PDUD00319

CASE NAME:                      LEAH WHETSTONE VS. ADRIAN MOON

LOS ANGELES, CA                 MONDAY, NOVEMBER 1, 2021

DEPARTMENT 92                   HON. DOUGLAS W. STERN, JUDGE

TRANSCRIBER:                    CARYN HOBBIS, CSR NO. 9432

TIME:                           P.M. SESSION

APPEARANCES:  DEFENDANT ADRIAN MOON IN PRO SE (APPEARING VIA LA COURTCONNECT); PLAINTIFF LEAH WHETSTONE, PRESENT WITH COUNSEL, THEODORE THEODOSIADIS, ESQ.

          THE COURT:  DID YOU RECEIVE THOSE IN YOUR EMAIL?

          MR. MOON:  HOLD ON.  LET ME LOOK.

          THE COURT:  CERTAINLY.

          MR. MOON:  ALSO -- ALSO I'D LIKE TO RENEW MY MOTION FOR EMERGENCY TRO AND INITIAL HEALTH EXAMINATION.  DURING THE BREAK I WAS ACCOSTED BY PLAINTIFF LEAH WHETSTONE WHO IS STALKING ME AND THEN TAKING PICTURES OF ME --

          THE COURT:  SIR?

          MR. MOON:  -- AS I WAS OVER THERE ON --

          THE COURT:  SIR?  ALL RIGHT.  THAT IS DENIED.

          ALL RIGHT.  SIR --

          MR. MOON:  OKAY.

          THE COURT:  -- AS I HAVE CAUTIONED YOU BEFORE, YOU NEED TO FOCUS BECAUSE I WANT TO MAKE SURE THAT YOU UNDERSTAND EVERYTHING.  DID YOU GET THOSE DOCUMENTS THAT WERE EMAILED TO YOU AT 12:30?

          MR. MOON:  HOLD ON.  I DIDN'T LOOK AT THEM YET BECAUSE I WAS EFFECTUATING THE SUBPOENAS ON --

THE COURT:  SIR, SIR, LOOK AT IT.  I'M NOT LISTENING TO EXCUSES.  JUST LOOK AND TELL ME DO YOU HAVE THE DOCUMENTS THAT WERE SENT TO YOU?

MR. MOON:  HOLD ON.  LET ME LOOK.  I MEAN, TWO HOURS WAS, LIKE, SHORT.  LORD HAVE MERCY.

OKAY.  WHAT I GOT IS AN ORDER.  COURT REVIEWED (INDISCERNIBLE) EX PARTES --

THE COURT:  DON'T READ THE ORDER.  TELL ME WHETHER YOU GOT THOSE OTHER DOCUMENTS I LISTED.  PLEASE BE RESPONSIVE TO THE COURT'S QUESTIONS.

MR. MOON:  OKAY.  WELL, THE COURT HAS TO BE PATIENT BECAUSE THERE'S A LOT GOING ON RIGHT NOW AND BECAUSE OPPOSING COUNSEL DIDN'T PROVIDE ALL THE STUFF LAST WEEK.

ALL RIGHT.  LET ME SEE.  THAT WAS THE FIRST DOCUMENT.  ALL I FOUND WAS AN ORDER.  ALL I GOT WAS AN ORDER.  LET'S SEE.  THE ORDER -- THAT'S ALL I GOT WAS AN ORDER.  LET'S SEE.  IT'S AN ORDER FOR -- IT SAYS SOMETHING ABOUT NOT SHOWING -- OKAY.  ALL I GOT WAS AN ORDER.  I'M TRYING TO SEE WHICH ORDER IT IS.  "DENY EX PARTE APPLICATION FILED ON NOVEMBER 1ST," WHICH I FILED SIX OF THEM.  SO, YEAH, ALL I HAVE IS AN ORDER.  THAT'S ALL.

AND THEN I JUST EMAILED BACK, SO IF HE GOT SOMETHING BACK FROM ME, THE THREE SUBPOENAS, THEN I'D KNOW.  HE DIDN'T FAX IT.  I MEAN HE DIDN'T EMAIL IT.  ALL I GOT WAS ONE ORDER.  LET ME DOUBLE-CHECK.  I DON'T WANT TO BE INCORRECT HERE.  JUST BEAR WITH ME.

ALL RIGHT.  LET'S SEE.  ALL EMAILS.  LET ME GO TO ALL EMAILS.  NO, I JUST GOT ONE ORDER.  ONE DENIAL OF ONE OF

THE EX PARTE APPLICATIONS.

THE COURT:  THE COURT IS AWARE OF THE FACT THAT IT SENT YOU BY EMAIL AT 12:26 A COPY OF THE PLAINTIFF'S STATEMENT OF THE CASE.  IT SENT YOU AT 12:28 THE PLAINTIFF'S WITNESS LIST.  WE ALREADY TOLD YOU IT WAS JUST ONE WITNESS, THE PLAINTIFF.  THE COURT IS AWARE THAT AT 12:29 THERE WAS -- I'M SORRY?  SAY IT AGAIN?

MR. MOON:  CAN I -- CAN I ASK THE COURT, DID THEY GET AN EMAIL FROM ME?  BECAUSE ALL I HAVE IS ONE ORDER, ONE SCANNED ORDER.  AND I'VE LOOKED THROUGH ALL MY EMAILS.  I'VE ONLY RECEIVED ONE EMAIL FROM THE COURT, AND IT'S ONLY ONE ORDER, AND IT'S A NOVEMBER 1ST ORDER SAYING THAT, I GUESS, (INDISCERNIBLE) ONE OF THE EX PARTE APPLICATIONS DIDN'T SHOW IRREPARABLE HARM, BLAH, BLAH, BLAH.  AND THAT'S ALL I HAVE.  I DON'T HAVE ANYTHING ELSE.

THE COURT:  ALL RIGHT.  THE COURT IS AWARE THAT IT --

MR. MOON:  AND THEN I JUST SENT AN EMAIL WITH THREE SUBPOENAS SHOWING THAT I FILED THREE SUBPOENAS, SO IF YOU GUYS -- IF THE COURT HAS THAT --

THE COURT:  OKAY.

MR. MOON:  -- THEN I DIDN'T GET IT.

THE COURT:  ALL RIGHT.  MR. MOON, MR. MOON, I HAVE A QUESTION.  WHEN I BRING THE JURY IN, WHICH I WILL DO IN ABOUT 30 SECONDS, I INTEND TO IDENTIFY FOR THEM THE WITNESSES THAT THE PARTIES ANTICIPATE CALLING.  SO I WILL BE READING YOUR LIST OF 25 WITNESSES AS WELL AS THE PLAINTIFF'S.  YOU UNDERSTAND THAT, CORRECT?

MR. MOON:  YES.

THE COURT:  OKAY.  VERY GOOD.  LET US BRING IN OUR JURORS, PLEASE.

MR. MOON:  (INDISCERNIBLE).

THE COURT:  THE JURORS ARE FILING IN.  WILL YOU PLEASE BE SILENT FOR A MOMENT.

(THE FOLLOWING PROCEEDINGS WERE HELD IN

THE PRESENCE OF THE PROSPECTIVE JURORS:)

THE COURT:  OKAY.  LADIES AND GENTLEMEN, THANK YOU. AGAIN, I APOLOGIZE THAT WE WEREN'T PARTICULARLY PROMPT.

ALL RIGHT.  AT THIS TIME WHAT I'D LIKE TO DO IS SIMPLY GIVE YOU A VERY SHORT STATEMENT OF THIS CASE.  I'M NOT GOING TO TELL YOU MUCH ABOUT THE DETAIL.  IN FACT, I JUST SPENT MORE TIME TELLING YOU THAT I'M GOING TO TELL YOU SOMETHING THAN I WILL TELLING IT TO YOU.

"THIS IS AN ACTION FOR UNLAWFUL DETAINER.  LEAH WHETSTONE, THE LANDLORD, CLAIMS THAT ADRIAN D. MOON IS HER TENANT UNDER A SHORT-TERM MONTH-TO-MONTH RENTAL AGREEMENT AND THAT MR. MOON NO LONGER HAS THE RIGHT TO OCCUPY THE PROPERTY. MS. WHETSTONE SEEKS TO RECOVER POSSESSION OF THE PROPERTY FROM MR. MOON.  MR. MOON CLAIMS THAT HE STILL HAS THE RIGHT TO OCCUPY THE PROPERTY.  THE PROPERTY INVOLVED IN THIS CASE IS A HOUSE LOCATED IN ALTADENA, CALIFORNIA, AT 784 MOUNTAIN VIEW."

NOW, AT THIS TIME, I WOULD LIKE TO ALLOW THE PARTIES TO INTRODUCE THEMSELVES.  I WILL BEGIN WITH PLAINTIFF'S COUNSEL WHO I WOULD ASK PLEASE INTRODUCE YOURSELF TO THE POTENTIAL JURORS AS WELL AS YOUR CLIENT.

MR. THEODOSIADIS:  MY NAME IS THEODORE THEODOSIADIS.

I'M THE ATTORNEY FOR MS. WHETSTONE.  SHE'S PRESENT IN COURT.

THE COURT:  THANK YOU.

MR. MOON, WOULD YOU PLEASE INTRODUCE YOURSELF?

MR. MOON:  YES.  I'M ADRIAN D. MOON, DEFENDANT, VICTIM AND CROSS-PLAINTIFF IN PRO SE.

THE COURT:  THANK YOU VERY MUCH.

MR. MOON HAS ELECTED TO PARTICIPATE, AT LEAST IN PART, TELEPHONICALLY.  YOU SHOULD DRAW NO CONCLUSION FOR HIM OR AGAINST HIM BECAUSE HE'S ELECTED TO DO THAT.  WE ARE ALLOWING PARTIES TO PARTICIPATE REMOTELY DURING THIS PERIOD. SO DRAW NO CONCLUSION ONE WAY OR THE OTHER.  HE'S ENTITLED TO PARTICIPATE AS HE HAS.

NOW, AT THIS TIME WHAT I'D LIKE TO DO IS READ TO YOU A LIST OF POTENTIAL WITNESSES.  THESE ARE PEOPLE THAT MAY COME TO TESTIFY.  THEY MAY NOT, BUT THE PURPOSE OF THIS IS SIMPLY SO THAT WE CAN LEARN WHETHER ANY OF YOU KNOW ANY OF THESE WITNESSES OR POTENTIAL WITNESSES.  IF YOU BELIEVE YOU KNOW THE PERSON, SIMPLY RAISE YOUR HAND, OKAY?

ALL RIGHT.  THE PLAINTIFF, LEAH WHETSTONE.  I SEE NO HANDS.  DOROTHEA L. BROOKS; NO HANDS.  KELLY WHITFIELD; NO HANDS.  THEODORE --

AND, SIR, SINCE I WILL BUTCHER YOUR NAME, SAY YOUR OWN NAME AGAIN.

MR. THEODOSIADIS:  THEODOSIADIS.

THE COURT:  THANK YOU.

MR. THEODOSIADIS:  THANK YOU.

THE COURT:  I SEE NO HANDS.

JOEL L. LOFTON.  I SEE NO HANDS.  SAMANTHA HOLMAN;

NO HANDS.  DAVID JULIAN COWAN; NO HANDS.  JEANMARIE K. WARREN; NO HANDS.  SHERIFF DETECTIVE DEREK H. TAYLOR; NO HANDS. ANDREA POTT; NO HANDS.  VICTOR G. VIRAMONTES; NO HANDS. KATHRYN BARGER-LIEBRICH; NO HANDS.  FESIA DAVENPORT; NO HANDS. MARY M. MURPHY; NO HANDS.  CHRISTOPHER ALLEN DARDEN; NO HANDS. RUDOLPH DIAZ; NO HANDS.  MICHAEL JOHNSON; NO HANDS.  GAVIN NEWSOM.  OKAY.  I SEE A COUPLE HANDS.  DOES ANYONE KNOW HIM OTHER THAN BY THE FACT THAT HE IS GOVERNOR OF THIS STATE? ANYONE OTHERWISE ACQUAINTED WITH HIM?  VERY GOOD.

LEAH GERSHON; NO HANDS.  CLAUDETTE JERSEY; NO HANDS. CATHY MORALES; NO HANDS.  REGINALD NEAL; NO HANDS.  LAURA D. COHEN; NO HANDS.  EVE A. WILLIAMS; NO HANDS.  ALL RIGHT. THANK YOU.

ALL RIGHT.  I'VE ALREADY TOLD YOU BRIEFLY THE ESTIMATE THAT I HAVE FOR HOW LONG THIS CASE MAY TAKE.  LET ME ASK NOW.  I'M GOING TO ASK ANYONE WHO BELIEVES THEY WOULD HAVE SUCH AN EXTREME HARDSHIP SUCH THAT THEY SHOULD NOT BE REQUIRED TO ATTEND THE TRIAL ESTIMATED MAYBE FOUR TO FIVE DAYS HERE IN THIS COURTROOM, AND I GAVE YOU THE SCHEDULE OF THE TIMES WE WORK.  IS THERE ANYONE WHO BELIEVES THEY HAVE SUCH AN EXTREME HARDSHIP?

ALL RIGHT.  YES, MA'AM.  WOULD YOU PLEASE STAND UP, AND WHAT I'D LIKE TO DO, IF WE COULD, COULD I MEET WITH COUNSEL OVER HERE?  AND, MA'AM, IF YOU COULD COME AROUND.

(THE FOLLOWING PROCEEDINGS WERE HELD AT SIDEBAR:)

THE COURT:  COULD WE GET YOUR NAME, PLEASE?

PROSPECTIVE JUROR JAMES:  GLENDA (INDISCERNIBLE) JAMES.

THE COURT:  WHERE IS IT?

PROSPECTIVE JUROR JAMES:  RIGHT HERE.

THE COURT:  YEAH.  ALL RIGHT.  CAN YOU JUST TELL US BRIEFLY?

PROSPECTIVE JUROR JAMES:  I JUST (INDISCERNIBLE) CANCER (INDISCERNIBLE).  I HAVE MY TREATMENT EACH THURSDAY AT 9:00.

THE COURT:  9:00 A.M.?

PROSPECTIVE JUROR JAMES:  YES.  I HAVE MY TREATMENTS --

THE COURT:  NO.  I BELIEVE YOU.  ALL RIGHT.  THANK YOU.

(THE COURT AND THE CLERK CONFER SOTTO VOCE.)

THE CLERK:  EXCUSE FOR HARDSHIP?

MR. THEODOSIADIS:  YES.

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:)

THE COURT:  ALL RIGHT.  THANK YOU.  MS. JAMES, I'M GOING TO EXCUSE YOU FOR HARDSHIP.  THANK YOU.  YOU ARE EXCUSED.  YOU ARE NOW TO GO DOWN TO THE JURY ASSEMBLY ROOM ON THE SECOND FLOOR.  THEY WILL FINISH PROCESSING YOU.  IF YOU GO DOWN THE ELEVATOR, GO TO TWO, SECOND FLOOR, AND IT WILL BE ALMOST IN FRONT OF YOU.  JUST A LITTLE OFF THE RIGHT DOWN THE LITTLE HALL THERE'S A SIGN THAT SAYS "JURY ROOM" THAT POINTS YOU THERE.  THANK YOU.

ALL RIGHT.  OKAY.  AT THIS TIME, WHAT I'D LIKE TO DO, WE'RE GOING TO START THE PROCESS THAT I EXPLAINED BEFORE BY WHICH WE GET SOME INFORMATION ABOUT YOU.  LET ME EXPLAIN HOW IT WORKS AND WHAT THIS IS DESIGNED TO DO.

AS I ALREADY EXPLAINED, PEOPLE ARE ENTITLED TO HAVE A JURY TRIAL.  WHAT WE'RE ABOUT TO EMBARK ON IS THE PROCESS BY WHICH A FAIR AND UNBIASED NEUTRAL JURY CAN BE SELECTED.  SO TO DO THAT, WE NEED TO GET SOME BASIC INFORMATION ABOUT YOU SIMPLY BECAUSE EVERYONE WANTS TO MAKE SURE THAT WE HAVE A FAIR, UNBIASED GROUP OF JURORS.

ALL RIGHT.  THE PROCESS INVOLVES SOME QUESTIONS. LET ME ASSURE YOU NO ONE IS INTENDING TO PRY INTO ANYTHING PERSONAL OR PRIVATE, AND I WOULD ASK YOU IF YOU DO GET ASKED A QUESTION THAT YOU FEEL A LITTLE UNCOMFORTABLE WITH, SIMPLY TELL ME YOU WOULD LIKE TO TAKE IT UP WITH ME PRIVATELY, ALL RIGHT?

I WILL TELL YOU I HAVEN'T YET HAD ANY JUROR NEED TO DO THAT.  NOW, THERE'S ALWAYS A FIRST, BUT BASICALLY THIS PROCESS DOESN'T GET INTO THE KINDS OF THINGS THAT SHOULD BOTHER ANY OF YOU I THINK.  BUT, AGAIN, DON'T BE SHY.  IF YOU'RE ASKED SOMETHING THAT YOU DO WANT TO TAKE UP PRIVATELY, PLEASE LET ME KNOW AND WE WILL ACCOMMODATE YOU.  I TRULY DON'T THINK IT WILL HAPPEN, OKAY?

NOW, I PUT ON THE SCREEN --

DID WE HAND OUT THE QUESTIONNAIRE TO EVERYONE?  WE DID.

THE CLERK:  EVERYONE RECEIVED THE ONE-PAGE QUESTIONNAIRE, RIGHT?

THE COURT:  OKAY.  LET ME EXPLAIN HOW THIS GOES, AND THIS IS DESIGNED TO MAKE IT GO FAIRLY QUICKLY AND YET GIVE THE PARTIES SOME BASIC BACKGROUND ABOUT YOU THAT WILL HELP THEM IF THEY WANT TO ASK ANY FOLLOW-UP QUESTIONS.

YOU'LL SEE ON THE SCREEN AND ON THE TOP OF THE PAGE YOU HAVE, THERE ARE EIGHT QUESTIONS AT THE TOP.  THOSE ARE WHAT I MIGHT CALL THE BACKGROUND QUESTIONS:  YOUR NAME, WHERE YOU LIVE, THINGS LIKE THAT.

WHAT I WANT YOU TO DO, AND WE'RE GOING TO START WITH JUROR NO. 1 THEN JUROR NO. 2, 3, 4.  WE'RE ONLY GOING TO DO THE FIRST 12, THE FIRST 12 INITIALLY, AND I WOULD ASK YOU TO TELL US THE INFORMATION IN QUESTIONS 1 THROUGH 8.

OH, I FORGOT TO SWEAR THEM IN, DIDN'T I?  CAN WE PLEASE SWEAR IN OUR POTENTIAL PANEL.  I APOLOGIZE.

THE CLERK:  WILL YOU ALL PLEASE STAND UP, RAISE YOUR RIGHT HANDS TO BE SWORN IN.  LISTEN CLEARLY.

DO YOU AND EACH OF YOU UNDERSTAND AND AGREE THAT YOU WILL ACCURATELY AND TRUTHFULLY ANSWER UNDER PENALTY OF PERJURY ALL QUESTIONS PROPOUNDED TO YOU CONCERNING YOUR QUALIFICATIONS AND COMPETENCY TO SERVE AS A TRIAL JUROR IN THE MATTER PENDING BEFORE THIS COURT, AND THAT FAILURE TO DO SO MAY SUBJECT YOU TO CRIMINAL PROSECUTION.

IF YOU UNDERSTAND AND AGREE, PLEASE ANSWER BY SAYING "I DO."

(THE PROSPECTIVE JURORS RESPONDED IN
 THE AFFIRMATIVE.)

THE CLERK:  THANK YOU.  PLEASE BE SEATED.

THE COURT:  ALL RIGHT.  LET'S MOVE PEOPLE OVER ONE TO FILL IN.

THE CLERK:  CAN I HAVE JUROR NO. 7 SIT IN 6'S SPOT; NO. 8 SIT IN 7'S AND --

THE COURT:  YOU, SIR?  NO. 9, CAN YOU COME FORWARD

IN SEAT 8.

THE CLERK:  IN 8.  WE ONLY NEED TO DO THE FIRST 12.

THE CLERK:  NO. 10, CAN YOU SIT IN NO. 9'S SPOT AGAINST THE WALL?  NO. 11 IN 10'S SPOT.  AND 12 JUST NEEDS TO SIT IN THE FRONT ROW.

THE COURT:  OKAY.  WE'RE NOT GOING TO MOVE THE REST OF YOU FOR NOW.

THE CLERK:  FOURTEEN AT THE END, YOU SIT BACK IN YOUR SEAT.

THE COURT:  OKAY.  SO AS I WAS SAYING, WE WANT YOU TO GIVE US THE INFORMATION IN THE TOP EIGHT.  SO IF IT WERE ME I WOULD SAY MY NAME IS DOUGLAS STERN.  I LIVE IN LONG BEACH. I'M A JUDGE.  I'M MARRIED.  SO YOU JUST GO RIGHT THROUGH THOSE.

THE NEXT BOTTOM HALF OR TWO-THIRDS HAS 13 QUESTIONS. HERE'S HOW WE HANDLE THAT TO MAKE IT GO --

(THE COURT AND THE CLERK CONFER SOTTO VOCE.)

THE COURT:  OKAY.  THE NEXT 13 QUESTIONS, THE WAY TO ANSWER THEM IS AS FOLLOWS:  READ THEM WELL IN ADVANCE, AND ALL WE WANT YOU TO DO IS TELL US WHICH ONES WOULD YOU ANSWER YES TO.

SO FOR INSTANCE, IF I WERE IN SEAT 1, AFTER I GAVE YOU MY NAME AND SO ON, I MIGHT SAY I WOULD ANSWER YES TO ONLY NO. 2.  NO. 2 ASKS HAVE YOU EVER BEEN A TENANT IN RENTAL PROPERTY?  IF I OWNED RENTAL PROPERTY I MIGHT SAY I WOULD ANSWER YES TO NO. 1 AND NO. 2.  WE JUST WANT TO KNOW WHICH ONES YOU'D ANSWER YES TO.  THAT WAY WE GET SOME PRETTY FAST INFORMATION ABOUT YOU, AND WE ALLOW THE PARTIES TO THEN FOLLOW

UP IF THEY FEEL THE NEED TO ASK YOU ANY QUESTIONS ABOUT THAT, OKAY?  AND IT GOES FAIRLY QUICKLY THAT WAY SO THAT HOPEFULLY WE CAN GET THROUGH THIS RELATIVELY QUICKLY.

NOW, WE'RE ONLY GOING TO BE ASKING RIGHT NOW 1 THROUGH 12.  THAT'S BECAUSE A JURY PANEL IS 12 PEOPLE, AND THEN WE MAY HAVE AN ALTERNATE, OKAY?

SO WITH THAT, IF I COULD ASK YOU TO PLEASE GIVE US THAT INFORMATION.  GO AHEAD, MA'AM.

PROSPECTIVE JUROR YUN:  OKAY.  MY NAME IS EUN YUN (PHONETIC).  I LIVE IN LA CANADA.  MY OCCUPATION IS PHYSICIAN. I'M MARRIED, AND MY HUSBAND IS A PHYSICIAN TOO.  AND MY ADULT CHILDREN -- I HAVE THREE KIDS.  ONE DENTIST, ONE (INDISCERNIBLE) AND ONE IS A MEDICAL DOCTOR.  AND I HAD IN CRIMINAL CASE.  THERE WAS A VERDICT.  AND DO YOU WANT ME TO SAY THIS ONE?

THE COURT:  YES.

PROSPECTIVE JUROR YUN:  SO I OWNED RENTAL PROPERTY. OKAY.

THE COURT:  SO IT WOULD BE YES TO NO. 1?

PROSPECTIVE JUROR YUN:  ONE, YEAH.

THE COURT:  AND THAT'S IT.  EXCELLENT.  THANK YOU.

ALL RIGHT.  JUROR NO. 2.

PROSPECTIVE JUROR CRAWDY:  MY NAME IS JASON CRAWDY (PHONETIC).  I LIVE IN INGLEWOOD.  I'M AN ADVERTISING EXECUTIVE.  I'M MARRIED.  MY WIFE IS AN ELEMENTARY SCHOOL TEACHER.  I DO NOT HAVE ANY ADULT CHILDREN.  I HAVE NEVER BEEN ON A JURY BEFORE.  AND I'M NOT ACQUAINTED WITH ANYONE INVOLVED IN THIS CASE.  I WOULD ANSWER YES TO NO. 2 AND POTENTIALLY

NO. 6.

THE COURT:  THANK YOU.

ALL RIGHT.  JUROR NO. 3.  YES, PLEASE.  THANK YOU.

PROSPECTIVE JUROR CASALINO:  MY NAME IS TASLA CASALINO (PHONETIC).  I LIVE IN GLENDALE.  I'M AN INTERIOR DESIGNER.  I'M MARRIED.  MY HUSBAND DESIGNS VIDEO GAMES.  I HAVE TWO LITTLE KIDS.  NO TO 7 AND 8, AND NO TO ALL THOSE 13 QUESTIONS.

THE COURT:  ALL RIGHT.  THANK YOU.

YES, MA'AM.

PROSPECTIVE JUROR PENA:  MY NAME IS MYRNA PENA (PHONETIC).  I LIVE IN SUN VALLEY.  I'M HOUSEKEEPING.  I'M SINGLE.  AND I DON'T HAVE EXPERIENCE IN THE COURT.  I DON'T SPEAK ENGLISH VERY WELL.  SORRY.

THE COURT:  ALL RIGHT.  YOU'RE DOING FINE.  OKAY.

ALL RIGHT.  MA'AM?

PROSPECTIVE JUROR VO:  DO I HAVE TO STAND UP?

THE COURT:  NO, YOU DON'T HAVE TO STAND UP.  WHATEVER YOU'RE COMFORTABLE WITH.

PROSPECTIVE JUROR VO:  OKAY.  JOCQUE VO.  LOS ANGELES.  NOT WORKING.  SINGLE.  NO CHILDREN.  PRIOR JURY EXPERIENCE, CRIMINAL.

THE COURT:  AND TO THE BOTTOM 13, WOULD YOU ANSWER YES TO ANY OF THEM?

PROSPECTIVE JUROR NO. VO:  YES TO 2 AND POSSIBLY 6.

THE COURT:  VERY GOOD.  THANK YOU.

ALL RIGHT.  MA'AM?

PROSPECTIVE JUROR LEE:  MY NAME IS ANNIE LEE.  I

LIVE IN L.A.  I'M A (INDISCERNIBLE) REPRESENTATIVE.  I'M SINGLE, AND I HAVE CRIMINAL JURY EXPERIENCE AND ALSO (INDISCERNIBLE).  AND A POSSIBLE YES TO NO. 6.

THE COURT:  ALL RIGHT.  THANK YOU.

ALL RIGHT.  SIR?

PROSPECTIVE JUROR DURAN:  MY NAME IS JASON DURAN.  I LIVE IN WEST COVINA.  I'M CURRENTLY UNEMPLOYED.  AND NO TO 4 THROUGH 8.  AND NO FOR EVERYTHING ELSE.

THE COURT:  NO TO EVERYTHING ELSE.  THANK YOU.

PROSPECTIVE JUROR SOLIS:  MY NAME IS ALBERTO SOLIS. I LIVE IN TORRANCE.  I'M A DRIVER, (INDISCERNIBLE) DRIVER. I'M MARRIED.  MY WIFE IS A (INDISCERNIBLE).

THE COURT:  ALL RIGHT.  THANK YOU.

OKAY.  JUROR NO. 9.

PROSPECTIVE JUROR RICHARDSON:  MY NAME IS DANIEL RICHARDSON.  I LIVE IN VAN NUYS.  I'M NOT EMPLOYED.  I'M RETIRED.  I'M MARRIED.  MY SPOUSE IS A PRESCHOOL TEACHER.  MY ADULT CHILDREN ARE PART-TIME TEACHERS, AND ONE HAS HIS OWN BUSINESS WITH CLOUD MIGRATION, COMPUTERS, THINGS LIKE THAT. NO PRIOR JURY EXPERIENCE.

I HAD A QUESTION IF I MAY.

THE COURT:  YES.  GO AHEAD.

PROSPECTIVE JUROR RICHARDSON:  QUESTIONS 2, 3 AND 4, HAVE YOU EVER BEEN.

THE COURT:  CORRECT.

PROSPECTIVE JUROR RICHARDSON:  QUESTION 1 IS PRESENT TENSE.  DO YOU OWN ANY RENTAL PROPERTY?  I DON'T CURRENTLY.

THE COURT:  OKAY.

PROSPECTIVE JUROR RICHARDSON:  SO I GUESS THAT'S NO. HAVE I BEEN A TENANT?  YES.  FOUR YEARS AGO.  HAVE I BEEN INVOLVED IN AN UNLAWFUL DETAINER?  YES.  HAVE I BEEN EMPLOYED AS A PROPERTY MANAGER?  NOT EMPLOYED BUT I WAS HANDS ON WHEN I OWNED PROPERTIES.  SIX IS A YES.  TEN IS A YES.  AND 13 COULD BE A YES.

THE COURT:  OKAY.  THANK YOU.  I APPRECIATE ALL YOUR INFORMATION.

ALL RIGHT.  SIR?

PROSPECTIVE JUROR LEE:  HI.  MY NAME IS KIM LEE.  I LIVE IN MONTEREY PARK.  MY OCCUPATION IS A PROPERTY MANAGER. MARITAL STATUS:  I AM MARRIED.  MY WIFE'S A SCHOOL TEACHER. MY DAUGHTER WORKS FOR A MARKETING FIRM DOING TREND ANALYSIS FOR (INDISCERNIBLE).  PRIOR JURY EXPERIENCE:  I'VE HAD CRIMINAL AND CIVIL AND, YES, THERE WAS A VERDICT IN BOTH.

THE COURT:  ALL RIGHT.

PROSPECTIVE JUROR LEE:  I HAVE TO ANSWER -- OH, 8? NO.  THE FOLLOWING 13 I HAVE TO ANSWER YES TO 1, 4 AND 6.

THE COURT:  ALL RIGHT.  THANK YOU.

ALL RIGHT.  SIR?

PROSPECTIVE JUROR CIBRIAN:  MY NAME IS CHRISTIAN CIBRIAN (PHONETIC).  I LIVE IN SUNLAND.  I'M A GOALKEEPER. I'M NOT MARRIED.  I DON'T HAVE ANY CHILDREN.  I DON'T HAVE ANY JURY EXPERIENCE.  AND NO ON 8.  POSSIBLY 13.  I DID HEAR THE NAME OF A DEPUTY AND (INDISCERNIBLE) PROPERTY.  IT WAS AN EVICTION -- (INDISCERNIBLE) EVICTION DIVISION.  AND I DID HEAR THAT THIS PROPERTY HAS TO DO WITH ALTADENA, AND I WAS A VOLUNTEER AT THE ALTADENA SHERIFF'S STATION FOR LIKE A YEAR.

THE COURT: OKAY. THANK YOU.

ALL RIGHT. AT THIS TIME, I WILL ALLOW PLAINTIFF'S COUNSEL TO INQUIRE IF YOU HAVE ANY QUESTIONS OF THE GROUP.

MR. THEODOSIADIS: YOUR HONOR, IF YOU MAY SCROLL UP SO I CAN SEE 2 AND 6 AT THE SAME TIME? THANK YOU. THANK YOU.

JURORS -- I'LL START WITH JUROR NO. 2. YOU STATED YES TO NO. 6. MAY I ASK WHAT IT IS THAT MAY AFFECT YOUR ABILITY TO BE A COMPLETELY FAIR AND IMPARTIAL JUROR IN THIS CASE?

PROSPECTIVE JUROR CRAWDY: I WOULD SAY POTENTIALLY A BIAS TOWARDS LANDLORDS BECAUSE UNTIL I PURCHASED A HOME I LIVED IN A WHOLE BUNCH OF DIFFERENT RENTAL PROPERTIES, AND MY GENERAL EXPERIENCE IS THAT EVERY LANDLORD (INDISCERNIBLE) GET MORE MONEY OUT OF ME IF THEY COULD OR DO EVERYTHING THEY COULD TO MAKE MY LIFE NOT FANTASTIC. SO I DO THINK INTENTIONALLY BE IMPARTIAL, BUT (INDISCERNIBLE).

MR. THEODOSIADIS: SO YOU BELIEVE YOU WOULD BE IMPARTIAL TOWARDS --

PROSPECTIVE JUROR CRAWDY: I WOULD TRY MY BEST, YEAH.

MR. THEODOSIADIS: BUT YOU WOULD -- ASSUMING YOU WERE PARTIAL, YOU'D BE PARTIAL TOWARDS THE TENANT.

PROSPECTIVE JUROR CRAWDY: CORRECT.

MR. THEODOSIADIS: OKAY. JUROR NO. 5, THE SAME QUESTION?

PROSPECTIVE JUROR VO: NO. 6?

MR. THEODOSIADIS: YEAH, NO. 6.

PROSPECTIVE JUROR VO: MY PARENTS WERE LANDLORDS

IN -- I DON'T KNOW.  MY PARENTS ALWAYS HAD HOMES AND TENANTS.  AND AS A TENANT, I ALWAYS PAY ON TIME AND (INDISCERNIBLE) MY LEAD AND WHATNOT, SO I JUST WANTED TO (INDISCERNIBLE).

MR. THEODOSIADIS:  JUROR NO. 6, SAME QUESTION.

PROSPECTIVE JUROR LEE:  I HAVE (INDISCERNIBLE) AND BELIEFS THAT ARE FOR AND AGAINST, FOR BOTH LANDLORDS AND TENANTS, THEN, DEPENDING ON HOW THIS CASE (INDISCERNIBLE).

MR. THEODOSIADIS:  SUCH AS?

PROSPECTIVE JUROR LEE:  SO THERE'S THE LAWS THAT I DON'T -- THAT I SEE THAT ARE -- THAT MORE LEAN TOWARDS ONE SIDE, AND THERE ARE ALSO SOME -- AND ADULTS THAT I FEEL LIKE THEY'RE ONE SIDE OF THE PARTY COULD SEE, I GUESS, (INDISCERNIBLE) OR AMBITIOUS AND ATROCIOUS TOWARDS THE OTHER PARTY AND (INDISCERNIBLE).  IT DEPENDS ON HOW THIS CASE GOES.

MR. THEODOSIADIS:  AND NO. 9?  YOU SAID YOU WERE INVOLVED IN A U.D. MATTER.  WHAT EXACTLY WAS THAT MATTER?

PROSPECTIVE JUROR RICHARDSON:  I'M SORRY?

MR. THEODOSIADIS:  YOU WERE INVOLVED IN AN UNLAWFUL DETAINER MATTER YOU SAID.

PROSPECTIVE JUROR RICHARDSON:  YES.  I HAD -- I ACTUALLY HAD TWO PROPERTIES IN BAKERSFIELD, AND ONE OF THEM WAS FINE.  THE OTHER ONE WAS A NIGHTMARE.  I HAD THREE TENANTS IN FIVE YEARS, AND THE LAST TENANT MADE A MESS OF THINGS.  DIDN'T PAY.

EVENTUALLY I HAD TO GO THROUGH THE COURT PROCESS.  WE HAD HIM EVICTED.  I HAD TO SUE HIM IN COURT.  WE WENT TO MEDIATION.  I EVEN REDUCED THE AMOUNT THAT I WAS SEEKING IF HE WOULD MEDIATE WITH ME AND DO A PAYMENT PLAN WHICH HE DECIDED

TO DO.  BUT THEN HE VIOLATED THE PAYMENT PLAN AFTER TWO MONTHS, SO I HAD TO GO BACK TO COURT AND GET THE ORIGINAL JUDGMENT REINSTATED.  ONCE I DID THAT, HE TOLD ME TO GO POUND SAND.

AND HIS WIFE WHO WAS ON THE LEASE BUT I NEVER DEALT WITH HER BECAUSE SHE ALWAYS HAD HIM SPEAK FOR HER, SHE WORKED AT THE BAKERSFIELD GENERAL HOSPITAL UP THERE, AND SO WE DECIDED TO GET A COLLECTION AGENCY AND WE ATTACHED -- OR SUBMITTED PAPERS TO ATTACH HER WAGES, AND WITHIN TWO WEEKS I HAD MY CHECK.

MR. THEODOSIADIS:  THANK YOU SO MUCH.  THANK YOU.

JUROR NO. 10?  YOU SAID 1, 4 AND 6.  SO YOU OWN RENTAL PROPERTY.  YOU'RE A PROPERTY MANAGER.  I HEARD THAT PART.  WITH RESPECT TO NO. 6?

PROSPECTIVE JUROR LEE:  OH, CURRENTLY THE PROPERTY THAT IS FAMILY OWNED IS IN THE CITY OF LOS ANGELES.  AND RIGHT NOW WITH ALL THE MANDATES WE DO HAVE A TENANT WHO HAS NOT PAID IN SEVERAL MONTHS AND HAS NO INTENTION OF PAYING.

MR. THEODOSIADIS:  AND IF I MAY GO BACK TO JURORS NOS. 2 AND 6.  IF I TOLD YOU THIS CASE HAD ABSOLUTELY NOTHING TO DO WITH MONEY, WOULD YOU FEEL ANY BIAS AT THAT POINT?

PROSPECTIVE JUROR CRAWDY:  IT DOESN'T CHANGE ANYTHING.

MR. THEODOSIADIS:  DOESN'T CHANGE.  IF THIS CASE HAS NOTHING TO DO WITH MONEY AT ALL, YOU WOULD STILL HAVE, YOU BELIEVE, MAY HAVE A BIAS TOWARDS THE TENANT.

PROSPECTIVE JUROR LEE:  FOR ME IT WOULD REALLY DEPEND ON HOW THE CASE WOULD GO.  AND AS A JUROR, I GUESS, I

WANT TO STAY AS NONBIASED AS POSSIBLE, BUT THERE'S JUST CERTAIN THINGS THAT I KNOW THAT MADE ME NOT KEEP TO ONE SIDE OR THE OTHER.

MR. THEODOSIADIS:  AND THEN JUROR NO. 8, YOU HAD STATED THAT YOUR ENGLISH IS NOT TOO WELL.  DO YOU THINK THAT WILL PROHIBIT YOU FROM BEING ABLE TO UNDERSTAND THE CASE ITSELF AND BEING ABLE TO RULE -- OR TO MAKE A DECISION ONE WAY OR THE OTHER?

PROSPECTIVE JUROR SOLIS:  NO.  I DON'T UNDERSTAND.

MR. THEODOSIADIS:  YOU DON'T.

JUROR NO. 4 TOO, OKAY.  SO JUROR NO. 4 AND JUROR NO. 8.  I UNDERSTAND.

THANK YOU, YOUR HONOR.  THAT'S ALL I HAVE.

THE COURT:  ALL RIGHT.  MR. MOON, YOU MAY INQUIRE OF THE JURORS IF YOU LIKE.

MR. MOON:  YES, YOUR HONOR.  FIRST I HAVE A QUESTION.  I SUBMITTED 13 QUESTIONS.  IS THAT BEFORE THE JURORS --

THE COURT:  THE --

MR. MOON:  -- OR NOT?

THE COURT:  THE JURORS WERE GIVEN A COPY OF THE ONE-PAGE QUESTIONNAIRE THAT HAS THE 13 QUESTIONS.

MR. MOON:  MY 13 QUESTIONS?

THE COURT:  NO, NO, NO.  THE ONES THAT WE SENT YOU A COPY OF.  WOULD YOU LIKE ME TO READ THE QUESTIONS?

MR. MOON:  YES, PLEASE.

THE COURT:  ALL RIGHT.

"QUESTION NO. 1, DO YOU OWN ANY RENTAL PROPERTY?

"QUESTION 2, HAVE YOU EVER BEEN A TENANT IN RENTAL PROPERTY?

"QUESTION 3, HAVE YOU EVER BEEN INVOLVED IN AN UNLAWFUL DETAINER LAWSUIT AGAINST A TENANT OR LANDLORD?

"QUESTION 4, HAVE YOU EVER BEEN EMPLOYED AS A PROPERTY MANAGER?

"QUESTION 5, DO YOU KNOW ANYTHING ABOUT THIS CASE OTHER THAN WHAT YOU HAVE HEARD IN COURT?

"QUESTION 6, DO ANY OF YOU HAVE ANY BELIEFS OR FEELINGS FOR OR AGAINST LANDLORDS OR TENANTS THAT MIGHT AFFECT YOUR ABILITY TO BE COMPLETELY FAIR AND IMPARTIAL JURORS IN THIS CASE?

"QUESTION 7, DO ANY OF YOU HAVE ANY RELIGIOUS OR PHILOSOPHICAL BELIEF THAT WOULD MAKE IT DIFFICULT OR IMPOSSIBLE FOR YOU TO RENDER A VERDICT OR A JUDGMENT REGARDING THE ACTIONS OF ANOTHER PERSON OR A COMPANY?

"QUESTION 8, YOU MUST FOLLOW MY INSTRUCTIONS AND RULINGS ON THE LAW EVEN IF YOU MAY PERSONALLY DISAGREE OR DISAPPROVE OF THE LAW.  IS THERE ANYONE WHO WOULD NOT FOLLOW MY INSTRUCTIONS AND RULINGS ON THE LAW?

"QUESTION 9, YOU MUST JUDGE THE TESTIMONY OF ALL WITNESSES BY THE SAME STANDARDS FOR DETERMINING BELIEVABILITY. WHILE YOU MUST APPLY THE SAME STANDARDS TO EACH WITNESS, YOU MAY GET DIFFERENT RESULTS AS TO EACH WITNESS.  IS THERE ANYONE WHAT COULD NOT APPLY THE SAME STANDARD FOR EACH WITNESS?

"QUESTION 10, THE TRIAL TAKES PLACE OVER A PERIOD OF TIME AND IS STRUCTURED SO THAT ONE SIDE GOES FIRST AND THEN THE OTHER SIDE HAS THE OPPORTUNITY TO PRESENT EVIDENCE.  IT IS

IMPORTANT TO KEEP AN OPEN MIND UNTIL ALL THE EVIDENCE IS PRESENTED AND UNTIL I HAVE INSTRUCTED YOU ON THE APPLICABLE LAW.  DO ANY OF YOU BELIEVE THAT YOU WOULD NOT BE ABLE TO KEEP AN OPEN MIND FOR SUCH A PERIOD?

"ELEVEN, A PARTY OR A WITNESS THAT UTILIZED THE SERVICES OF AN INTERPRETER, WOULD THAT FACT ALONE INFLUENCE YOUR DECISION IN THIS CASE OR THE WEIGHT OR BELIEVABILITY YOU WOULD GIVE THE TESTIMONY OF A PERSON WHO UTILIZES AN INTERPRETER?

"TWELVE, PREJUDICE FOR OR AGAINST EITHER PARTY.  PUBLIC OPINION, THE NEWSPAPER AND MEDIA REPORTS ARE NOT TO BE CONSIDERED BY YOU IN ARRIVING AT YOUR VERDICT.  IS THERE ANYONE WHO CANNOT DECIDE THE CASE ON THE EVIDENCE PRESENTED IN THIS TRIAL AND THE LAW AS INSTRUCTED BY THE COURT?

"AND 13, IS THERE ANY REASON YOU COULD NOT SERVE AS A FAIR AND IMPARTIAL JUROR IN THIS CASE?"

THOSE ARE THE 13 QUESTIONS.  YOU MAY INQUIRE.

MR. MOON:  OKAY.  CAN YOU PLEASE GIVE ME NO. 3 AGAIN?

THE COURT:  CERTAINLY.  QUESTION NO. 3:  "HAVE YOU EVER BEEN INVOLVED IN AN UNLAWFUL DETAINER LAWSUIT AGAINST A TENANT OR A LANDLORD?"

MR. MOON:  I MISSED ONE OKAY.  ALL RIGHT.

ALL RIGHT.  JUROR NO. 1, I THINK I HEARD THAT YOU WERE MARRIED.  I DON'T KNOW IF YOU ANSWERED YES OR NO TO QUESTION NO. 1.  DO YOU OWN ANY RENTAL PROPERTY?

PROSPECTIVE JUROR YUN:  YEAH.  I OWN THE PROPERTY AND THEN I HAVE TO SAY YES ON -- NO, I AM NOT EMPLOYED AS

PROPERTY MANAGER BECAUSE I OWN THE PROPERTY.

AND THEN I HAVE YES FOR 6 TOO.

MR. MOON: OKAY. THEN I'M TRYING TO GET THIS QUESTION AS CONTAINED. I'M GOING TO ASK THE QUESTION AND THEN I DON'T KNOW IF I'M ALLOWED TO BUT I'LL POSE THE QUESTION. HAVE YOU EVICTED ANYONE DURING THE COVID PERIOD, AND I WOULD SAY FROM DECEMBER 2019 TO THE PRESENT DAY?

PROSPECTIVE JUROR YUN: NO. I DIDN'T EVICT ANYBODY.

MR. MOON: WAS THAT A YES?

THE COURT: HER ANSWER WAS, NO, I DID NOT EVICT ANYONE. CORRECT?

PROSPECTIVE JUROR YUN: YES.

MR. MOON: OKAY. WELL, I HAVE ANOTHER QUESTION. ARE YOU FAMILIAR WITH THE L.A. COUNTY EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

PROSPECTIVE JUROR YUN: NO.

MR. MOON: OKAY. OKAY. NO. 2, JUROR NO. 2 I HAVE THE SAME AS NO. 1 BECAUSE, LIKE I SAID, I DIDN'T -- I COULDN'T HEAR ANYBODY, BUT THOSE WERE JUST CERTAIN QUESTIONS. DO YOU OWN ANY REAL PROPERTIES?

PROSPECTIVE JUROR CRAWDY: NO, I DO NOT.

MR. MOON: WELL --

THE COURT: HE ANSWERED NO.

MR. MOON: WHAT ABOUT THE LOCAL -- OKAY. HAVE YOU EVER BEEN INVOLVED IN AN UNLAWFUL DETAINER, QUESTION NO. 3?

PROSPECTIVE JUROR CRAWDY: NO.

MR. MOON: ACTION?

PROSPECTIVE JUROR CRAWDY: NO.

MR. MOON:  SO YOU'VE NEVER BEEN EVICTED.  HAVE YOU EVER ACTED AS A LANDLORD OR A TENANT IN AN AGREEMENT?

PROSPECTIVE JUROR CRAWDY:  NO.

MR. MOON:  HAVE YOU EVER BEEN A PART -- WHAT WAS THE QUESTION?  I MEAN WHAT WAS THE ANSWER?

PROSPECTIVE JUROR CRAWDY:  NO.

THE COURT:  THE ANSWER WAS NO.

MR. MOON:  NO?  ALL RIGHT.  NO. 3, WITNESS -- I MEAN JUROR NO. 3, THE SAME QUESTION NO. 1.  DO YOU OWN ANY REAL PROPERTY?

PROSPECTIVE JUROR CASALINO:  NO, I DON'T.

MR. MOON:  HAVE YOU EVER BEEN A PART OF AN EVICTION ACTION AS A LANDLORD OR A TENANT?

PROSPECTIVE JUROR CASALINO:  NO.

MR. MOON:  NO?

PROSPECTIVE JUROR CASALINO:  NO.

MR. MOON:  ARE YOU FAMILIAR WITH ANY OF THE CALIFORNIA MORATORIUM ORDERS THAT ARE IN PLACE?

PROSPECTIVE JUROR CASALINO:  NOT AT ALL, NO.

MR. MOON:  NOT AT ALL.  SHE WANTS TO LEAVE.

PROSPECTIVE JUROR CASALINO:  I'M BEING HONEST.

MR. MOON:  JUROR NO. 5 -- PARDON ME?

THE COURT:  SHE SAID SHE WAS BEING HONEST.

MR. MOON:  JUROR NO. 5 --

THE COURT:  YES.  GO AHEAD.  I'M SORRY.

MR. MOON:  JUROR NO. 5, DO YOU OWN ANY REAL PROPERTY?

THE CLERK:  ONE MORE TIME, MR. MOON?  MR. MOON, CAN

YOU HEAR US?

PROSPECTIVE JUROR CASALINO:  I DO (INDISCERNIBLE), THOUGH, APPRECIATE HOW HE TALKS TO ME.  IT'S (INDISCERNIBLE).

THE COURT:  OKAY.  THANK YOU.  IT'S NOTED.

MR. MOON:  OKAY.  NOW I CAN.  IT FADED OUT.

UNIDENTIFIED PROSPECTIVE JUROR:  I AGREE.

(INDISCERNIBLE CROSS-TALK.)

MR. MOON:  PROBABLY BE BEFORE A VIDEO ON TOMORROW, BUT RIGHT NOW I HAVE TO STORM THROUGH THIS THE WAY WE HAVE IT BECAUSE OF REASONS I'LL ADDRESS LATER.

SO JUROR NO. 5, YOU SAID -- HAVE YOU EVER OWNED ANY REAL PROPERTY?

PROSPECTIVE JUROR NO. 5:  NO.

MR. MOON:  YES?

PROSPECTIVE JUROR NO. 5:  NO.

THE COURT:  THE ANSWER IS NO.

MR. MOON:  NO?  OKAY.  AND HAVE YOU EVER BEEN A TENANT?

PROSPECTIVE JUROR NO. 5:  YES.

THE COURT:  ANSWER YES.

MR. MOON:  HAVE YOU EVER BEEN -- RIGHT.  HAVE YOU EVER BEEN INVOLVED IN AN EVICTION ACTION?

PROSPECTIVE JUROR NO. 5:  NO.

MR. MOON:  ARE YOU FAMILIAR WITH ANY OF THE CALIFORNIA EVICTION MORATORIUMS, ESPECIALLY THE L.A. COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

PROSPECTIVE JUROR NO. 5:  NO.

MR. MOON:  NO?

PROSPECTIVE JUROR NO. 5:  NO.  I ALWAYS PAY ON TIME, AND SO I DON'T SEE A REASON TO.

MR. MOON:  OKAY.  YOU ANSWERED -- HOW DID YOU ANSWER QUESTION NO. 7?

PROSPECTIVE JUROR NO. 5:  RELIGIOUS AND PHILOSOPHICAL REASONS?

MR. MOON:  I THINK THAT'S THE RELIGIOUS BELIEFS AND RENDER A VERDICT PURSUANT TO THE LAW?

PROSPECTIVE JUROR NO. 5:  I'M NOT QUITE CLEAR.  I'M NOT COMFORTABLE MENTIONING MY RELIGIOUS BELIEFS, SO I'M NOT QUITE SURE WHAT YOU'RE ASKING.

THE COURT:  ALL RIGHT.  YOU DON'T NEED TO ANSWER ABOUT SPECIFIC RELIGIOUS BELIEFS.  THE QUESTION SIMPLY IS -- I'LL READ IT AGAIN AND GIVE SOME GUIDANCE.  "DO ANY OF YOU HAVE ANY RELIGIOUS OR PHILOSOPHICAL BELIEFS THAT WOULD MAKE IT DIFFICULT OR IMPOSSIBLE FOR YOU TO RENDER A VERDICT OR A JUDGMENT REGARDING THE ACTIONS OF ANOTHER PERSON OR A COMPANY?"

SO IF YOU FELT -- SOME RELIGIONS MIGHT TEACH THAT YOU SHOULD NOT JUDGE AND YOU WOULD NOT FEEL COMFORTABLE SIMPLY BEING A JUROR BECAUSE OF THAT.  THAT'S WHAT IT'S REALLY GETTING AT.  AND YOU DON'T NEED TO TELL US ANYTHING MORE ABOUT YOUR BELIEFS.  IT REALLY GOES TO CAN YOU JUST PERFORM THE ROLE OF BEING A JUDGE AS A JUROR?

PROSPECTIVE JUROR NO. 5:  OH, OKAY.  YES.

THE COURT:  OKAY.  THANK YOU.

PROSPECTIVE JUROR NO. 5:  YOU'RE WELCOME.

MR. MOON:  ALL RIGHT.  JUROR NO. 6, ARE YOU AN OWNER OF RENTAL PROPERTY?

PROSPECTIVE JUROR LEE:  NO.

MR. MOON:  HAVE YOU EVER BEEN A LANDLORD OR A TENANT?

PROSPECTIVE JUROR LEE:  NO.

MR. MOON:  NO?

PROSPECTIVE JUROR LEE:  NO.

MR. MOON:  SO I'M ASSUMING YOU'VE NEVER BEEN INVOLVED IN AN UNLAWFUL DETAINER ACTION.

PROSPECTIVE JUROR LEE:  YOU'RE CORRECT.

MR. MOON:  ALL RIGHT.  JUROR NO. 7, ARE YOU AN OWNER OF RENTAL PROPERTY?

PROSPECTIVE JUROR DURAN:  NO.

MR. MOON:  HAVE YOU EVER BEEN A TENANT?

PROSPECTIVE JUROR DURAN:  NO.

MR. MOON:  OKAY.  ARE YOU FAMILIAR WITH THE EVICTION MORATORIUMS IN THE STATE OF CALIFORNIA, SENATE BILL 91 AND THE L.A. COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

PROSPECTIVE JUROR DURAN:  NO.

MR. MOON:  OKAY.  JUROR NO. 8, ARE YOU AN OWNER OF RENTAL PROPERTY?

PROSPECTIVE JUROR SOLIS:  NO.

MR. MOON:  NO?  HAVE YOU EVER BEEN A TENANT?

PROSPECTIVE JUROR SOLIS:  NO.

MR. MOON:  ARE YOU FAMILIAR WITH THE SENATE BILL EVICTION MORATORIUM 91 AND THE L.A. COUNTY BOARD OF

SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23, 2021?

PROSPECTIVE JUROR SOLIS:  NO.

MR. MOON:  NO?

PROSPECTIVE JUROR SOLIS:  NO.

MR. MOON:  OKAY.  JUROR NO. 9, DO YOU OWN RENTAL PROPERTY?

PROSPECTIVE JUROR RICHARDSON:  CURRENTLY NO.

MR. MOON:  HAVE YOU EVER BEEN A TENANT?

PROSPECTIVE JUROR RICHARDSON:  FORTY YEARS AGO.

MR. MOON:  HAVE YOU EVER BEEN INVOLVED IN AN EVICTION ACTION?

PROSPECTIVE JUROR RICHARDSON:  YES.

MR. MOON:  WHETHER AS A LANDLORD OR A TENANT?

PROSPECTIVE JUROR RICHARDSON:  AS A LANDLORD, YES.

MR. MOON:  AS A LANDLORD?

PROSPECTIVE JUROR RICHARDSON:  LANDLORD, YES.

MR. MOON:  WAS THAT RECENT?

PROSPECTIVE JUROR RICHARDSON:  IT WAS IN 2014.

MR. MOON:  WAS THAT DURING THE -- 2014.

OKAY.  JUROR NO. 10, ARE YOU AN OWNER OF RENTAL PROPERTY?

PROSPECTIVE JUROR LEE:  YES.

MR. MOON:  HAVE YOU EVICTED OR TRIED TO EVICT A TENANT BETWEEN THE PERIOD DECEMBER OF 2019 TO THE PRESENT DAY?

PROSPECTIVE JUROR LEE:  UP UNTIL THIS POINT, NO.

MR. MOON:  NO?  ARE YOU FAMILIAR WITH SENATE BILL 91 AND THE L.A. COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23, 2021?

PROSPECTIVE JUROR LEE:  FAMILIAR IN THE GENERALATIES BUT NOT IN SPECIFIC DETAIL.

MR. MOON:  PARDON ME?

PROSPECTIVE JUROR LEE:  I'M FAMILIAR IN THE GENERALATIES BUT NOT IN SPECIFIC DETAILS.

MR. MOON:  OKAY.  (INDISCERNIBLE.)

LET'S GO WITH NO. 11.  JUROR NO. 11, DO YOU OWN ANY RENTAL PROPERTIES?

PROSPECTIVE JUROR CIBRIAN:  NO, I DON'T.

MR. MOON:  NO?

PROSPECTIVE JUROR CIBRIAN:  NO.

MR. MOON:  HAVE YOU EVER BEEN A TENANT?

PROSPECTIVE JUROR CIBRIAN:  NO.

MR. MOON:  ARE YOU FAMILIAR WITH THE CALIFORNIA SENATE BILL EVICTION MORATORIUM 91?

PROSPECTIVE JUROR CIBRIAN:  I JUST KNOW THAT LIKE, I GUESS, DURING COVID TIME PEOPLE WEREN'T BEING EVICTED AND THEY'RE TAKING ADVANTAGE OF THE SITUATION AND NOT PAYING RENT. THAT'S ALL I KNOW.  I DON'T KNOW EXACTLY (INDISCERNIBLE).

MR. MOON:  BUT IF YOU RECEIVED A COPY OF THE LOS ANGELES BOARD OF SUPERVISOR EVICTION MORATORIUM ORDER FEBRUARY 23RD, 2021, WOULD YOU BE ABLE TO READ AND UNDERSTAND IT?

PROSPECTIVE JUROR CIBRIAN:  YES.

MR. MOON:  OKAY.  OKAY.  OKAY.  JUROR NO. 12, ARE YOU AN OWNER OF RENTAL PROPERTY?

PROSPECTIVE JUROR QUACH:  NO.

MR. MOON:  ARE YOU A TENANT?

PROSPECTIVE JUROR QUACH:  NO.

MR. MOON:  EVER BEEN A TENANT?

PROSPECTIVE JUROR QUACH:  NO.

MR. MOON:  NO?  ARE YOU FAMILIAR WITH THE CALIFORNIA SENATE BILL EVICTION MORATORIUM 91?

PROSPECTIVE JUROR QUACH:  NO.

MR. MOON:  THE LOS ANGELES BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

PROSPECTIVE JUROR QUACH:  NO.

MR. MOON:  OKAY.  OKAY.  THAT'S GOOD.

NOW, YOUR HONOR, AT THIS TIME AM -- OR DO I WAIT -- DO WE WAIT TO DO THE PREEMPTORY CHALLENGES OR -- I'M NOT FAMILIAR.

THE COURT:  WE WAIT A MOMENT.  ALL RIGHT.  WHAT I'M GOING TO DO --

MR. MOON:  OKAY.

THE COURT:  -- NOW, WE'LL TAKE OUR AFTERNOON BREAK FOR ABOUT 15 MINUTES, OKAY?

MR. MOON:  OKAY.

THE COURT:  AND THAT WAY I CAN CONFER WITH THE ATTORNEYS PRIVATELY AND THE PARTY, AND SO PLEASE BE BACK IN 15 MINUTES AND WE'LL GET UNDER WAY THEN.  THANK YOU.

(THE FOLLOWING PROCEEDINGS WERE HELD

OUT OF THE PRESENCE OF THE PROSPECTIVE JURORS:)

THE COURT:  ALL RIGHT.  WE ARE OUTSIDE THE PRESENCE OF THE JURY.  THE ONLY ONES IN THE COURTROOM NOW ARE MYSELF, MY STAFF, PLAINTIFF AND PLAINTIFF'S ATTORNEY AND OF COURSE MR. MOON ON THE PHONE CALL.

AT THIS POINT, THE COURT WOULD ASK WHETHER THERE ARE ANY CHALLENGES FOR CAUSE, AND I BEGIN WITH DEFENDANT. MR. MOON, DID YOU WANT TO CHALLENGE ANY OF THE 12 FOR CAUSE?

MR. MOON:  WELL, WHY WOULD YOU START WITH THE DEFENDANT?  ISN'T THIS IS THE PLAINTIFF'S ACTION?  IS THAT NOT NORMAL, THAT YOU START WITH THE DEFENDANT, NOT THE PLAINTIFF?

THE COURT:  IT IS MY UNDERSTANDING THAT THE LAW PROVIDES THAT FOR HARDSHIP WE BEGIN WITH THE DEFENDANT.  I'M NOT SINGLING YOU OUT IN ANY RESPECT.  I ALWAYS BEGIN WITH THE DEFENDANT BECAUSE I BELIEVE, AND I DON'T HAVE THE STATUTE IN MY HEAD AT THE MOMENT, BUT I BELIEVE THAT'S WHAT IT SAYS I AM TO DO.  SO --

MR. MOON:  OKAY.  WELL, AT THIS POINT, I WOULD MAKE THE CHALLENGE TO JUROR 6.

THE COURT:  JUROR NO. 6?

MR. MOON:  SEVEN AND EIGHT.

THE COURT:  SIX, SEVEN AND EIGHT.  OKAY.  LET ME MAKE SURE I KNOW.  SIX IS JUROR ANNIE LEE.

MR. MOON:  YES.

THE COURT:  AND SEVEN IS JUROR JASON DURAN.  AND EIGHT IS JUROR ALBERTO SOLIS.

MR. MOON:  AND 12, YOUR HONOR.

THE COURT:  AND 12.  ALL RIGHT.  LET ME -- THAT IS JUROR NUMBER -- THAT IS CHRISTIAN CIBRIAN I BELIEVE IS HIS NAME.

THE CLERK:  TWELVE I HAVE AS SKYLER QUACH.

THE COURT:  I'M SORRY.  SKYLER QUACH, YES.  SKYLER QUACH.  OKAY.

ALL RIGHT.  LET'S GO TO NO. 6.  TELL ME WHY YOU THINK THAT JUROR SHOULD BE EXCUSED FOR CAUSE.

MR. MOON:  BASICALLY IT SEEMS LIKE -- I THINK IT'S THE FEMALE SINGLE PERSON THAT HAS NO INKLING ABOUT ANYTHING TO DO WITH UNLAWFUL DETAINER ACTION AS A LANDLORD OR TENANT OR ANYTHING ELSE.  SHE MENTIONED SHE ANSWERS NO TO ALL THE QUESTIONS, SO --

THE COURT:  OKAY.

MR. MOON:  -- YOU KNOW, I INFORMED HER -- FORM A JUROR THAT AT LEAST KNOWS WHAT'S GOING ON IN TODAY'S SOCIETY AND KIND OF UPDATE WITH THE INFORMATION NEWS AND THE LAWS, AND SHE -- APPARENTLY SHE'S -- LIKE SHE'S OBLIVIOUS TO ANY OF THEM.

THE COURT:  ALL RIGHT.  WHAT IS THE VIEW OF PLAINTIFF WITH REGARD TO NO. 6?

MR. THEODOSIADIS:  NO. 6, YOUR HONOR, I AM FINE WITH.  I'M OKAY WITH RELIEVING NO. 6.

THE COURT:  IN OTHER WORDS, YOU OBJECT TO HIS FOR CAUSE CHALLENGE.  IS THAT THE --

MR. THEODOSIADIS:  I DO NOT OBJECT TO HIS CHALLENGE, YOUR HONOR.

THE COURT:  OKAY.  WELL, I'M DENYING IT NONETHELESS. I DON'T THINK THAT -- OKAY.  THE FACT THAT SHE ISN'T CONVERSANT IN ANY OF THE PRESENT LANDLORD TENANT DOES NOT MAKE HER -- THAT'S NOT A VALID CAUSE REASON.

ALL RIGHT.  NO. 7.

MR. MOON:  YOUR HONOR, MAY I ASK, ARE YOU GOING TO BE PREJUDICIAL TO ALL MY CHALLENGES?

THE COURT:  WE WILL MOVE ON TO JUROR NO. 7.  CAN YOU TELL ME WHY YOU BELIEVE CAUSE EXISTS TO DISMISS -- THAT I BELIEVE IS -- IS THAT MR. DURAN?

THE CLERK:  YES, YOUR HONOR.

THE COURT:  JASON DURAN.

MR. MOON:  SAME AS JUROR 6.

THE COURT:  THAT HE DOES NOT SEEM CONVERSANT WITH UNLAWFUL DETAINER?

MR. MOON:  LET ME SEE.  DID HE SAY THAT HE WAS A -- BECAUSE, LIKE I SAID, I COULD BARELY HEAR, SO I'M GOING TO TRY HOPEFULLY TOMORROW TO BE ON VIDEO.  THAT WAY I CAN SEE THEIR MOUTHS AND I CAN UNDERSTAND IT BETTER, BUT DID HE SAY HE WAS THE OWNER OF A RENTAL?

THE COURT:  NO.  HE SAID HE DOESN'T OWN.  HE'S NOT A TENANT.  HE'S NOT FAMILIAR WITH ANY OF THE EVICTION MORATORIUM.  SO WHAT --

MR. MOON:  LIKE I SAID, HE'S OBLIVIOUS TO ANYTHING CONCERNING EVICTION, BEING A LANDLORD, BEING A TENANT.  HE MUST HAVE A LOT OF MONEY AND A BIG HOUSE, SO, YOU KNOW, HE --

THE COURT:  WHAT IS THE PLAINTIFF'S VIEW ON NO. 7, MR. DURAN?

MR. THEODOSIADIS:  I DO OBJECT TO DEFENDANT'S CHALLENGE.

THE COURT:  ALL RIGHT.  I AM DENYING THAT.  I DON'T BELIEVE THAT THAT IS A VALID FOR-CAUSE BASIS.

THE NEXT PERSON WAS NO. 8, CORRECT?  AND THAT WOULD BE ALBERTO SOLIS.  TELL ME WHY YOU BELIEVE THERE IS CAUSE TO DISMISS HIM, MR. MOON.

MR. MOON: WELL, THE SAME THING AS 6 AND 7.  HE SAID HE DOESN'T OWN ANY RENTAL.  HE'S NEVER BEEN A LANDLORD.  HE'S NEVER BEEN A TENANT.  HE'S NEVER BEEN IN AN EVICTION PROCESS, SO HE DOESN'T KNOW ANYTHING ABOUT THE EVICTION MORATORIUMS. AND, FINALLY, HE DOESN'T KNOW COVID EXISTS.

THE COURT: ALL RIGHT.  THAT WILL BE DENIED ON THE FOR-CAUSE CHALLENGE.  I DO NOT BELIEVE YOU'VE STATED GOOD REASON FOR CAUSE.  AND I THINK THE LAST ONE --

MR. MOON: DID YOU ASK --

THE COURT: I'M SORRY?

MR. MOON: DID YOU ASK THE PLAINTIFF IF THEY OBJECT? DID YOU ASK THE PLAINTIFF IF THEY OBJECT?

THE COURT: NO, I DID NOT.

MR. MOON: WE'VE GOT TO KEEP IT ORDERLY LIKE YOU SAID.

THE COURT: OKAY.  THE NEXT ONE YOU INDICATED YOU CHALLENGED FOR CAUSE WAS SKYLER QUACH.  AND WHAT WAS THE REASON?

MR. MOON: WHICH JUROR IS THAT?

THE COURT: SKYLER QUACH.  NO. 12?

MR. MOON: NO. 12.  LET'S SEE.  I THINK HE SAID HE DIDN'T HAVE -- DIDN'T OWN ANY RENTAL AND THAT HE WAS NEVER A LANDLORD OR TENANT.  HE'S NOT AWARE THAT COVID EXISTS, AND HE'S NOT AWARE OF ANY MORATORIUMS.  SO THAT'S THE REASON WHY.

THE COURT: ALL RIGHT.  I'M DENYING THAT AS A FOR-CAUSE CHALLENGE.

DID THE PLAINTIFF HAVE ANY FOR CAUSE?

MR. THEODOSIADIS: YES, YOUR HONOR.  TWO FOR CAUSE:

JUROR NO. 4 AND NO. 8.  THEY STATED THAT THEIR ENGLISH IS NOT GOOD ENOUGH TO ALLOW THEM TO UNDERSTAND THE TRIAL ITSELF. NO. 2 AND NO. 6 STATED THAT THEY HAD A BIAS.  SO I WOULD -- FOR CAUSE I WOULD --

THE COURT:  ALL RIGHT.  LET'S START WITH NO. 4, THE FIRST ONE YOU GAVE ME.  THAT JUROR DID INDICATE THAT SHE HAD DIFFICULTY UNDERSTANDING ENGLISH, AND THE COURT WOULD NOTE THAT SHE CAME UP TO THE JUDICIAL ASSISTANT WHEN WE BEGAN THE BREAK AND MADE SIMILAR COMMENTS, CORRECT?

THE CLERK:  YES, YOUR HONOR.  CORRECT.

THE COURT:  ALL RIGHT.  MR. MOON, WHAT IS YOUR VIEW WITH REGARD TO JUROR NO. 4?  THAT WOULD BE --

MR. MOON:  AS FAR AS BEING REMOVED AS A CHALLENGE?

THE COURT:  CORRECT.  FOR CAUSE.  SHE CLAIMS DIFFICULTY WITH ENGLISH.

MR. MOON:  YEAH.  I MEAN, I'M IN AGREEMENT WITH YOU AND PLAINTIFF'S COUNSEL.

THE COURT:  ALL RIGHT.  THAT WILL BE GRANTED.

JUROR NO. 4, MYRNA MONTEROSSA, WILL BE EXCUSED FOR CAUSE.

ALL RIGHT.  AND THEN JUROR NO. 8 WAS MR. SOLIS. WHAT IS YOUR REASON FOR THAT?

MR. THEODOSIADIS:  YOUR HONOR, SAME REASON.  HE STATED THAT HE HAD TROUBLE UNDERSTANDING ENGLISH AND THAT HE WOULD HAVE DIFFICULTY GETTING THROUGH THE TRIAL, UNDERSTANDING THE TRIAL

THE COURT:  ALL RIGHT.  WHAT IS YOUR VIEW, MR. MOON, WITH REGARD TO MR. SOLIS, JUROR NO. 8?

MR. MOON:  I'M IN TOTAL AGREEMENT WITH THE JUDGE AND PLAINTIFF'S COUNSEL.

THE COURT:  ALL RIGHT.  THAT WILL BE GRANTED FOR CAUSE AS HE EXHIBITED DIFFICULTY WITH ENGLISH.  SO ALBERTO SOLIS WILL BE DISMISSED FOR CAUSE.

ALL RIGHT.  THEN WHICH OTHER YOU SAID?  TWO?

MR. THEODOSIADIS:  TWO AND SIX, YOUR HONOR.

THE COURT:  LET'S TAKE THEM ONE AT A TIME.

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  JUROR NO. 2 IS JASON CRAWDY.  AND WHAT IS THE BASIS?

MR. THEODOSIADIS:  MR. CRAWDY ANSWERED YES TO QUESTION NO. 6, THAT HE WOULD HAVE A BIAS TOWARDS THE TENANT EVEN IF THE CASE HAD NOTHING TO DO WITH MONEY.

THE COURT:  MR. MOON, WHAT IS YOUR VIEW WITH REGARD TO MR. CRAWDY?

MR. MOON:  WELL, YEAH, I AGREE WITH THE JUDGE AND PLAINTIFF'S COUNSEL.  BUT THE OTHER THING IS, I GUESS THAT MIGHT BE PARTIALLY MY FAULT, BUT WHEN THEY WERE QUERIED ABOUT THE QUESTIONS, I COULDN'T HEAR THEM.  BUT, YEAH, I WOULD AGREE THAT HE SAID HE HAD SOME BIAS, THAT HE SHOULD BE REMOVED OR CHALLENGED, SO --

THE COURT:  ALL RIGHT.  I AGREE.  JASON CRAWDY WILL BE DISMISSED FOR CAUSE.

AND THE LAST ONE THAT PLAINTIFF'S COUNSEL MENTIONED IS NO. 6.  THAT WAS ANNIE LEE, CORRECT?

THE CLERK:  NO. 6 IS ANNIE LEE, YES, YOUR HONOR.

THE COURT:  ALL RIGHT.

MR. THEODOSIADIS:  SAME BASIS, YOUR HONOR.

THE COURT:  SAME BASIS.  ENGLISH?

MR. THEODOSIADIS:  NO.  AS JUROR NO. 2.

THE COURT:  OH.

MR. THEODOSIADIS:  SHE STATES A BIAS.  A BIAS.

THE COURT:  MR. MOON, WHAT IS YOUR VIEW WITH REGARD TO ANNIE LEE?

MR. MOON:  I'M IN AGREEMENT WITH JUDGE STERN AND PLAINTIFF'S COUNSEL AND HAVING HER REMOVED FOR CAUSE.

THE COURT:  ALL RIGHT.  I AGREE.  ANNIE LEE WILL BE DISMISSED FOR CAUSE.  ALL RIGHT.

MR. MOON:  SO THAT'S FOUR JURORS.

THE COURT:  OKAY.  THAT CONCLUDES OUR CHALLENGES FOR CAUSE.

WHAT WE WILL DO WHEN THE JURORS COME BACK IN IN A FEW MINUTES IS WE WILL THEN BEGIN AGAIN WITH THE ADDITIONAL NEW, WHAT, FOUR JURORS.  AND SO WE'LL JUST BE TAKING THEM IN ORDER THERE.

THE CLERK:  I'LL PICK THEM OUT OF THE AUDIENCE.

MR. MOON:  TWO, FOUR, SIX AND EIGHT?  PLEASE, IF YOU COULD TURN THE VOLUME UP OR HAVE THEM SPEAK A LITTLE LOUDER I WOULD GREATLY APPRECIATE IT FOR TODAY.  TOMORROW I'LL --

THE COURT:  OKAY.  WE'LL SEE WHAT WE CAN DO, MR. MOON.  OKAY.

THE CLERK:  THERE'S A MICROPHONE THERE.

MR. MOON:  YEAH.  THAT'S WHAT I JUST ASKED.  I REQUESTED THAT HUMBLY.

CAN I ASK A QUESTION BEFORE THE JURORS COME IN?

THE COURT: YES, YOU MAY, SIR. GO AHEAD.

MR. MOON: DID YOU EVER RECEIVE THE EX PARTE APPLICATION, A MOTION IN LIMINE NO. 1?

THE COURT: I HAVE NOT LOOKED FOR IT. I HAVE NOT LOOKED FOR IT YET. I WILL CHECK AGAIN. AGAIN, WE'RE NOT -- I WILL TAKE IT UP BEFORE WE GET TO ANY EVIDENCE, OKAY? OKAY?

MR. MOON: OKAY.

THE COURT: ALL RIGHT. I THINK --

MR. MOON: TESTIMONY AND EVIDENCE?

THE COURT: BEFORE WE HEAR ANY TESTIMONY I'LL MAKE SURE I HAVE YOUR IN LIMINE MOTION, OKAY?

MR. MOON: OKAY.

THE COURT: ALL RIGHT. WE'RE IN RECESS IN THIS MATTER FOR A FEW MORE MINUTES WHILE THE JURY'S OUT. I'M GOING TO TAKE A COUPLE OTHER MATTERS I HAVE.

(PROCEEDINGS HELD ON UNRELATED MATTERS.)

(A RECESS WAS TAKEN.)

THE COURT: DID PLAINTIFF'S COUNSEL HAVE SOMETHING TO TAKE UP WITH THE COURT?

MR. THEODOSIADIS: YES, YOUR HONOR.

THE COURT: MR. MOON, ARE YOU ABLE TO LISTEN AND PARTICIPATE? THERE'S NO JURORS PRESENT.

MR. MOON: YEAH. I CAN HEAR -- IT'S ON MUTE BUT I CAN HEAR.

THE COURT: OKAY. VERY GOOD.

MR. THEODOSIADIS: I'M JUST A LITTLE CONFUSED, YOUR HONOR, AS TO EACH INDIVIDUAL BY NAME. THEY'RE NOT IN ORDER FROM WHAT I'VE SEEN.

THE CLERK: RIGHT. WE DISORDERED THEM WHEN WE EXCUSED THE FIRST JUROR, GLENDA JAMES, AND SO WE MOVED EVERYONE TO THE LEFT A BIT, BUT I HAVE THE ORDER RIGHT HERE IF YOU'RE READY TO LISTEN.

MR. THEODOSIADIS: GIVE ME ONE SECOND. YES, I'M READY.

THE CLERK: JUROR NO. 1 IS EUN YUN. NO. 2 IS JASON CRAWDY. NO. 3 IS ASHLEY SOLANO. NO. 4 IS MYRNA MONTEROSSA. NO. 5 IS JOCQUE VO. NO. 6 IS ANNIE LEE. NO. 7 IS JASON DURAN. NO. 8 IS ALBERTO SOLIS. NO. 9 IS DANIEL RICHARDSON. NO. 10 IS KIM LEE. NO. 11 IS CHRISTIAN CIBRIAN. NO. 12 IS SKYLAR QUACH.

MR. THEODOSIADIS: WHO WAS NO. 10 AGAIN? I'M SORRY.

THE COURT: NO. 10 IS KIM LEE.

MR. THEODOSIADIS: THANK YOU.

THE CLERK: YOU'RE WELCOME.

(PAUSE.)

MR. MOON: OKAY. I'M READY.

THE COURT: ALL RIGHT. WE ARE BRINGING IN THE JURORS NOW.

(THE FOLLOWING PROCEEDINGS WERE HELD IN
THE PRESENCE OF THE PROSPECTIVE JURORS:)

THE COURT: ALL RIGHT. WE ARE NOW BACK IN THE PRESENCE OF THE PARTIES PRESENT ON THE PHONE AND IN COURT AS WELL AS ALL THE JURORS.

ALL RIGHT, LADIES AND GENTLEMEN, IF I CALL YOUR NAME, WE ARE EXCUSING YOU. PLEASE DO NOT READ ANYTHING INTO IT. DON'T THINK IT MEANS YOU'RE SOMEHOW NOT QUALIFIED OR

ANYTHING. THERE ARE A LOT OF DIFFERENT REASONS WHY THESE HAPPEN. DON'T BE OFFENDED. I'VE BEEN THROWN OFF EVERY JURY I WAS EVER CALLED FOR, OKAY? SO, YOU KNOW -- AND I DON'T TAKE IT PERSONALLY.

ALL RIGHT. JUROR NO. 2, JASON CRAWDY. I'D LIKE TO THANK AND EXCUSE YOU. YOU SHOULD GO DOWN -- ALL OF YOU THAT I CALL, GO DOWN TO THE JURY ROOM ON THE SECOND FLOOR, 253 I THINK IS THE -- ANYWAY, YOU GO OUT THE ELEVATOR, SECOND FLOOR. SHOULD BE JUST DOWN THE HALLWAY A LITTLE BIT TO THE SIDE.

ALL RIGHT. JUROR NO. 4, MYRNA MONTEROSSA. THANK YOU VERY MUCH FOR YOUR SERVICE. PLEASE GO DOWN TO THE JURY ROOM. JUROR NO. 6, ANNIE LEE, THANK YOU VERY MUCH FOR YOUR SERVICE. GO TO THE JURY ROOM. JUROR NO. 8, MR. SOLIS, THANK YOU FOR YOUR SERVICE. PLEASE REPORT TO THE JURY ROOM.

ALL RIGHT. NOW, WE NEED -- I THINK WE JUST --

THE CLERK: CAN I HAVE NUMBER -- ADRIAN SANDOVAL, YOU'RE GOING TO BE NO. 2, SO PLEASE GO INTO THE JURY BOX.

PROSPECTIVE JUROR SANDOVAL: SANDOVAL.

THE CLERK: SANDOVAL?

PROSPECTIVE JUROR SANDOVAL: YOUR HONOR? OKAY. THIS IS SILLY, I KNOW. I BROKE MY PINKY TOE THIS WEEKEND, AND I'VE NEVER GONE TO THE DOCTOR, AND SO, LIKE, I'VE BEEN WALKING ON IT TODAY AND IT'S, LIKE, I KNOW IT'S (INDISCERNIBLE), SO I DON'T KNOW IF, LIKE, I'LL BE ABLE TO DEAL WITH IT ALL WEEK, LIKE --

THE COURT: ALL RIGHT.

PROSPECTIVE JUROR SANDOVAL: I HAVE A DOCTOR APPOINTMENT AT WEDNESDAY AT 3:00 TOO, SO --

THE COURT: DOES EITHER PLAINTIFF OR DEFENDANT OBJECT TO ME EXCUSING MS. SANDOVAL? ANY OBJECTION?

MR. THEODOSIADIS: NO, YOUR HONOR.

THE COURT: ANY OBJECTION, MR. MOON?

MR. MOON: WHICH ONE IS HE?

THE COURT: MS. SANDOVAL.

UNIDENTIFIED SPEAKER: SHE HASN'T BEEN QUESTIONED YET.

MR. MOON: SHE'S A NEW NO. 2?

THE COURT: THAT IS CORRECT.

MR. MOON: YEAH, I DON'T HAVE ANY OBJECTION. YEAH, I WANT HER TO GO HOME AND RELAX.

THE COURT: OKAY. THANK YOU. YOU'RE EXCUSED. PLEASE TAKE CARE OF YOURSELF. SO

THE CLERK: SO MARICEL PORTUGAL (PHONETIC), YOU'RE OUR NEW NO. 2. MARICEL PORTUGAL.

PROSPECTIVE JUROR PORTUGAL: PORTUGAL.

THE CLERK: PORTUGAL?

THE COURT: COULD YOU PLEASE COME AND TAKE SEAT NO. 2.

THE CLERK: TIPON TAN, YOU'RE OUR NEW NO. 4. TIPON TAN IN SEAT NO. 4. I HAVE JOHN THOMPSON, YOU'RE OUR NEW NO. 6. JOHN THOMPSON IN NO. 6. AND ALISA MONTENEGRO, OUR NEW NO. 8.

UNIDENTIFIED SPEAKER: I DON'T THINK SHE APPEARED.

THE CLERK: SHE DIDN'T APPEAR? I HAVE HER DOWN AS SHE APPEARED.

THE COURT: DO WE HAVE MS. MONTENEGRO?

THE CLERK: OKAY. MONICA HERSKOWITZ IS OUR NEW NO. 8. MONICA HERSKOWITZ.

THE COURT: ALL RIGHT. AT THIS TIME, NOW WE SORT OF REPEAT WHAT WE DID BUT IN A MUCH MORE LIMITED BASIS.

BEGINNING WITH NEW JUROR NO. 2, MS. PORTUGAL. COULD YOU PLEASE GIVE US THE INFORMATION RELATING TO YOU. AND IF YOU COULD SPEAK UP SO MR. MOON CAN HEAR YOU. WE'LL DO THE BEST WE CAN. THANK YOU.

PROSPECTIVE JUROR PORTUGAL: I'M MARICEL PORTUGAL AND I LIVE IN LOS ANGELES. (INDISCERNIBLE.) I'M SINGLE AND NO TO QUESTIONS 5 AND 8. AND THEN A YES ON NO. 2 AND A PROBABLE YES ON NO. 10.

THE COURT: TWO AND TEN. THANK YOU VERY MUCH.

ALL RIGHT. NEXT -- I'M SORRY. YES. YOUR NAME, PLEASE?

PROSPECTIVE JUROR TAN: TIPON TAN. I LIVE IN SAN GABRIEL. I'M A SENIOR OPERATION MANAGER. I'M MARRIED. MY HUSBAND HAS HIS OWN BUSINESS. NO ADULT CHILDREN. I WAS A JUROR FOR BOTH A CRIMINAL AND CIVIL AND, YES, THERE WERE VERDICTS ON BOTH CASES.

NO TO NO. 8. AND I WAS -- FOR THE 13 QUESTIONS I WOULD SAY YES TO NO. 2.

THE COURT: VERY GOOD. THANK YOU, MS. TAN. AND I APOLOGIZE.

ALL RIGHT. JUROR NO. 6, MR. THOMPSON?

PROSPECTIVE JUROR THOMPSON: I DON'T HAVE A HARD COPY, YOUR HONOR. COULD YOU SCROLL TO THE TOP OF YOUR --

THE COURT: CERTAINLY. I APOLOGIZE. IS THAT

HELPFUL?

PROSPECTIVE JUROR THOMPSON:  YEP.  MY NAME IS JOHN THOMPSON.  I LIVE IN PASADENA, CALIFORNIA.  I'M A TV DIRECTOR. I'M MARRIED.  MY WIFE IS A TV PRODUCER.  I DO NOT HAVE ANY ADULT CHILDREN.  I HAVE NO PRIOR JURY EXPERIENCE.  I AM NOT ACQUAINTED WITH ANY OF THE COURT STAFF, THE PARTIES.  AND THE ONLY ANSWER I WOULD GIVE A YES TO IS NO. 2.

THE COURT:  VERY GOOD.  THANK YOU.

AND NO. 8, MS. HERSKOWITZ?

PROSPECTIVE JUROR HERSKOWITZ:  MY NAME IS MONICA HERSKOWITZ.  I LIVE IN BURBANK.  I AM A MANAGER FOR HUMAN RESOURCES.  I'M MARRIED.  MY HUSBAND IS A SYSTEMS ARCHITECT. MY TWO ADULT CHILDREN, ONE IS A SMART HOUSE WIRE PERSON AND THE OTHER IS A RETAIL/FOOD SERVICE PERSON.  I HAD A CIVIL CASE AND, YES, THERE WAS A VERDICT.

NO TO NO. 8 AND YES TO NO. 2.

THE COURT:  ALL RIGHT.  VERY GOOD.  AT THIS TIME, PLAINTIFF'S COUNSEL MAY INQUIRE OF OUR NEW JURORS.

MR. THEODOSIADIS:  STARTING WITH NO. 2, WOULD YOU CONSIDER YOURSELF AS HAVING A BIAS EITHER WAY TOWARDS THE LANDLORD OR TENANT IN THIS MATTER?

PROSPECTIVE JUROR PORTUGAL:  (INDISCERNIBLE) REASONS?

MR. THEODOSIADIS:  YES.

PROSPECTIVE JUROR PORTUGAL:  MOSTLY (INDISCERNIBLE) BASED ON EXPERIENCE.

MR. THEODOSIADIS:  WHAT EXPERIENCE WOULD --

PROSPECTIVE JUROR PORTUGAL:  I'M STILL RENTING RIGHT

NOW, AND CURRENTLY THE SITUATION, I DON'T HAVE A CAR BECAUSE I DON'T DRIVE, BUT SOMEBODY'S PARKED IN MY PARKING SPACE THE NIGHT BEFORE AND ALWAYS -- THE LANDLORD COULD REMOVE THE CAR BUT THEY'RE NOT DOING IT.

MR. THEODOSIADIS:  OKAY.  SAME QUESTION.

PROSPECTIVE JUROR TAN:  NO, I DON'T THINK I'M BIASED EITHER FOR THE PLAINTIFF OR THE DEFENDANT.

MR. THEODOSIADIS:  MR. THOMPSON?

PROSPECTIVE JUROR THOMPSON:  NO BIAS.

MR. THEODOSIADIS:  MS. HERSKOWITZ?

PROSPECTIVE JUROR HERSKOWITZ:  YES.  NO BIAS.

MR. THEODOSIADIS:  NO BIAS.  THAT'S ALL, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. MOON, YOU MAY INQUIRE OF THE NEW JURORS.

MR. MOON:  TWO, FOUR, SIX AND EIGHT, RIGHT?

THE COURT:  YES.

MR. MOON:  JUROR NO. 2, JUROR NO. 2, DID YOU ANSWER YES TO ANY OF THE 12 QUESTIONS?

PROSPECTIVE JUROR PORTUGAL:  YES.  I SAID NO. 2 AND NO. 10 ARE YES.

MR. MOON:  NO. 10?

PROSPECTIVE JUROR PORTUGAL:  YES.

MR. MOON:  OKAY.  JUROR NO. 6, DID YOU ANSWER YES TO ANY OF THE 12 QUESTIONS?

PROSPECTIVE JUROR THOMPSON:  I ANSWERED YES TO NO. 2.

MR. MOON:  NO. 2.  YOU'VE BEEN A TENANT.  CAN I ASK YOU, ARE YOU FAMILIAR WITH THE CALIFORNIA SENATE BILL 91 AND

THE LOS ANGELES BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23, 2021, BOTH THE CALIFORNIA AND THE COUNTY BOARD EVICTION MORATORIUMS?

PROSPECTIVE JUROR THOMPSON:  I'M AWARE THEY EXIST BUT I DO NOT KNOW THE DETAILS.

MR. MOON:  OKAY.  JUROR NO. 6, IS THAT RIGHT?  DID YOU ANSWER YES TO ANY OF THE 12 QUESTIONS?

THE COURT:  THAT'S WHO YOU WERE JUST QUESTIONING.  MR. THOMPSON IS NO. 6.

MR. MOON:  OKAY.  SO I DID 2 AND 4 ALREADY?  ALL RIGHT.  JUROR NUMBER -- DID I DO 2 AND 4 ALREADY?

THE COURT:  YOU DID NOT ASK ANY QUESTIONS OF JUROR NO. 4.

MR. MOON:  OKAY.  JUROR NO. 4, DID YOU ANSWER YES TO ANY OF THE 12 QUESTIONS?

PROSPECTIVE JUROR TAN:  I DID ANSWER YES TO NO. 2 OF THE 13 QUESTIONS.

MR. MOON:  NO. 2 AND 10?

THE COURT:  JUST NO. 2.

PROSPECTIVE JUROR TAN:  JUST NO. 2.

MR. MOON:  JUST NO. 2.  OKAY.  ALL RIGHT.

JUROR NO. 8, DID YOU ANSWER YES TO ANY OF THE 12 QUESTIONS?

PROSPECTIVE JUROR HERSKOWITZ:  ONLY NO. 2.

MR. MOON:  ONLY NO. 2.  YES, YOU'VE BEEN A TENANT.

ARE YOU FAMILIAR WITH THE CALIFORNIA SENATE BILL 91 EVICTION MORATORIUM AND THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

PROSPECTIVE JUROR HERSKOWITZ:  VAGUELY.  I KNOW IT EXISTS BUT I DON'T KNOW ANY DETAIL.

MR. MOON:  ARE YOU CURRENTLY A TENANT?

PROSPECTIVE JUROR HERSKOWITZ:  NO.  I AM A HOMEOWNER.

MR. MOON:  HOMEOWNER.  SO YOU'VE BEEN A TENANT IN PREVIOUS TIMES, RIGHT?

PROSPECTIVE JUROR HERSKOWITZ:  OH, YES.

MR. MOON:  BUT NOT NOW.

PROSPECTIVE JUROR HERSKOWITZ:  NO.

MR. MOON:  OKAY.  HAVE YOU EVER BEEN THROUGH AN EVICTION ACTION?

PROSPECTIVE JUROR HERSKOWITZ:  NO.

MR. MOON:  ALL RIGHT.  THAT'S GOOD.

THE COURT:  ALL RIGHT.

MR. MOON:  SO THOSE ARE THE ONLY FOUR WE HAVE TO INQUIRE TO RIGHT NOW, RIGHT?

THE COURT:  CORRECT.

MR. MOON:  TWO, FOUR, SIX AND EIGHT.  OKAY.

THE COURT:  ALL RIGHT.  DO THE PARTIES PASS FOR CAUSE?

MR. THEODOSIADIS:  FOR CAUSE I WOULD ASK TO STRIKE NO. 2, YOUR HONOR.  SHE SAID THAT SHE HAS A BIAS.

THE COURT:  OKAY.  WAIT A MINUTE.

ALL RIGHT.  DENIED.

MR. MOON, DO YOU PASS FOR CAUSE?

MR. MOON:  NO. 2, NO. 6 AND NO. 8.  TWO -- WELL, LET ME SEE.  TWO, FOUR, SIX AND EIGHT.

THE COURT:  I'M SORRY.  I'M NOT UNDERSTANDING YOU.

MR. MOON:  WHAT WAS THE QUESTION SO WE CAN UNDERSTAND EACH OTHER?

THE COURT:  ARE YOU CHALLENGING ANY OF THE FOUR PEOPLE FOR CAUSE?

MR. MOON:  TWO AND FOUR.

THE COURT:  DID YOU WANT TO STATE IT ON THE RECORD?  THE JURORS ARE PRESENT.  DID YOU WANT TO DO IT PRIVATELY?

MR. MOON:  YES.  I MEAN, I WAS WONDERING WHY YOU WERE DOING IT WITH THEM PRESENT.  NORMALLY DON'T WE DO IT WHEN THEY'RE NOT PRESENT?

THE COURT:  ALL RIGHT.  GIVE ME A MOMENT.  IF I COULD SEE COUNSEL.

MR. MOON:  AM I CORRECT ON THAT?

THE COURT:  CAN YOU TRANSFER THAT INTO MY CHAMBERS?

THE CLERK:  NO.  YOU CAN --

THE COURT:  DO WE HAVE A NUMBER TO CALL HIM?

THE CLERK:  NO.  I THINK YOU WOULD HAVE TO LOG ON THROUGH YOUR ACCOUNT (INDISCERNIBLE) AND THEN PUT YOU IN A SEPARATE ROOM.

THE COURT:  YOU KNOW WHAT?  GET A PHONE NUMBER FOR HIM.  WE'RE GOING TO CALL HIM FROM CHAMBERS AND HE'LL HAVE TO DIAL BACK IN.

THE CLERK:  OKAY.

THE COURT:  OKAY.  IF YOU COULD BRING THAT TO ME IN A MOMENT.

THE CLERK:  MR. MOON, WE'RE GOING TO CALL YOU FROM CHAMBERS, HAVE YOU DISCONNECT FROM THIS LINE AND THEN

RECONNECT, OKAY?  SO THAT YOU CAN SPEAK TO THE JUDGE IN CHAMBERS.

MR. MOON:  OKAY.  SAY THAT AGAIN.  YOU'RE GOING TO CALL ME FROM CHAMBERS.

THE CLERK:  RIGHT.

MR. MOON:  WHAT ELSE?

THE CLERK:  WE'RE GOING TO CALL YOU FROM CHAMBERS, SO I NEED YOU TO DISCONNECT FROM THIS LINE BECAUSE I'LL CALL YOU LIKE I DID EARLIER FROM CHAMBERS AND YOU'LL BE ABLE TO SPEAK WITH THE JUDGE AND OPPOSING COUNSEL IN PRIVATE, OKAY?

MR. MOON:  OKAY.

THE CLERK:  OKAY.  SO DISCONNECT.  I HAVE YOUR PHONE NUMBER ENDING IN 9896, RIGHT?

MR. MOON:  THAT'S CORRECT.

THE CLERK:  OKAY.  SO JUST DISCONNECT FROM THIS LINE AND THEN YOU'LL RECONNECT WHEN YOU'RE DONE SPEAKING WITH THE JUDGE IN CHAMBERS, OKAY?

MR. MOON:  SOUNDS FAIR.

THE CLERK:  OKAY.  THANK YOU.

MR. MOON:  ALL RIGHT.  I'M DISCONNECTING NOW.

THE CLERK:  GOT IT.

(IN-CHAMBERS CONFERENCE HELD OFF THE RECORD.)

(THE FOLLOWING PROCEEDINGS WERE HELD
 IN OPEN COURT:)

THE CLERK:  JUROR NO. 12 WAS NEVER QUESTIONED, YOUR HONOR.  NO. 12 IS SKYLER QUACH?  HE WAS NEVER TALKED TO.

THE COURT:  OKAY.  WELL, WE DIDN'T -- OKAY.  ALL RIGHT.  WE WILL THEN QUESTION BOTH JUROR 12 AND JUROR 2.  ALL

RIGHT.  LET'S START WITH JUROR NO. 2.  SIR, IF COULD YOU GIVE US THE INFORMATION.

PROSPECTIVE JUROR ACOSTA:  MY NAME'S JERRY ACOSTA. I LIVE IN NORTH HOLLYWOOD.  I'M A MUSICIAN.  I'M MARRIED.  MY SPOUSE IS ALSO A MUSICIAN.  MY SON IS A MUSICIAN.  PRIOR JURY EXPERIENCE, I WAS A PROSPECTIVE JUROR AND (INDISCERNIBLE).  I DID OWN RENTAL PROPERTY, SO YES TO NO. 1 AND YES TO NO. 2.

THE COURT:  ALL RIGHT.  THANK YOU.

AND JUROR NO. 12, YOUR NAME, PLEASE?

PROSPECTIVE JUROR QUACH:  MY NAME IS SKYLER QUACH. I LIVE IN WHITTIER.  I'M A STUDENT.  I'M NOT MARRIED.  NO TO NOS. 5 THROUGH 8.  AND YES TO NO. 6.

THE COURT:  THANK YOU.

ALL RIGHT.  AT THIS TIME, COUNSEL MAY INQUIRE BEGINNING WITH PLAINTIFF.

MR. THEODOSIADIS:  JUROR NO. 12, WITH RESPECT TO YOUR ANSWER TO QUESTION NO. 6, COULD YOU ELABORATE ON THAT, PLEASE?

PROSPECTIVE JUROR QUACH:  I HAD BAD (INDISCERNIBLE) EXPERIENCES WITH LANDLORDS TRYING TO KICK MY FAMILY OUT BECAUSE THEY DIDN'T SPEAK ENGLISH AND EVEN THOUGH THEY PAID RENT ON TIME.  SO I HAD TO BE A TRANSLATOR, AND USUALLY I WAS (INDISCERNIBLE) THE LANDLORDS BECAUSE I WAS JUST A BABY, SO I MIGHT HAVE AN UNFAIR BIAS TOWARDS THE LANDLORD.  BUT I ALSO (INDISCERNIBLE).

MR. THEODOSIADIS:  OKAY.  HOW LONG AGO WERE THESE ISSUES?

PROSPECTIVE JUROR QUACH:  THEY WERE PRESENT WHEN I

WAS, LIKE, THREE PROBABLY AND THEN ALL THE WAY UNTIL I WAS LIKE (INDISCERNIBLE).

MR. THEODOSIADIS:  SO THERE WERE NO (INDISCERNIBLE).

PROSPECTIVE JUROR QUACH:  WELL, THEY WERE NEVER EVICTED.  THERE WAS ALWAYS SHOUTING AND -- FROM THE LANDLORDS TRYING TO FORCE US OUT.  AND ONE OF THE REASONS FOR ONE OF THE LANDLORDS WAS BECAUSE THEY WANTED TO KICK US OUT SO THEY COULD HAVE THEIR CHILDREN MOVE INTO THAT PLACE, SO.

MR. THEODOSIADIS:  YOU HAD MENTIONED THAT THEY PAID ON TIME ALWAYS AND THAT WAS NEVER THE ISSUE.

PROSPECTIVE JUROR QUACH:  (INDISCERNIBLE).

MR. THEODOSIADIS:  THANK YOU.

THAT'S IT, YOUR HONOR.

THE COURT:  ALL RIGHT.

ALL RIGHT, MR. MOON.  YOU MAY INQUIRE OF JUROR NO. 2 AND JUROR NO. 12.

MR. MOON:  OKAY.  JUROR NO. 2, (INDISCERNIBLE), BUT DID YOU ANSWER YES TO ANY OF THE 12 QUESTIONS?

PROSPECTIVE JUROR ACOSTA:  YES.  ONE AND TWO.

THE COURT:  ONE AND TWO.

MR. MOON:  ONE AND TWO?  ONE AND TWO.  OKAY.  ARE YOU FAMILIAR WITH THE CALIFORNIA SENATE BILL 91 EVICTION MORATORIUM?

PROSPECTIVE JUROR ACOSTA:  NOT THE DETAILS.

THE COURT:  HE SAID NOT IN DETAIL.  NOT IN DETAIL WAS HIS ANSWER.

MR. MOON:  NOT IN DETAIL.  OKAY.  WHAT ABOUT THE LOS ANGELES COUNTY EVICTION MORATORIUM ORDER OF FEBRUARY 23RD,

2021?

PROSPECTIVE JUROR ACOSTA:  NO.

MR. MOON:  HAVE YOU EVICTED ANYONE BETWEEN THE PERIOD OF DECEMBER 1, 2019, TO THE PRESENT DAY?

PROSPECTIVE JUROR ACOSTA:  NO.

MR. MOON:  OKAY.  JUROR NO. 12, HAVE YOU ANSWERED --

PROSPECTIVE JUROR QUACH:  YES.

MR. MOON:  LET ME GO BACK TO JUROR NO. 2.  HAVE YOU EVER BEEN IN AN EVICTION PROCESS AS A TENANT?

PROSPECTIVE JUROR ACOSTA:  NO.

MR. MOON:  OKAY.  ALL RIGHT.  I'LL MOVE ON TO JUROR NO. 12.  JUROR NO. 12, HAVE YOU -- DID YOU ANSWER YES TO ANY OF THE 12 QUESTIONS?

PROSPECTIVE JUROR QUACH:  YES.

MR. MOON:  CAN I ASK YOU WHICH ONES?

PROSPECTIVE JUROR QUACH:  NO. 6.

MR. MOON:  OH, NO. 6.  OKAY, NO. 6.  LET'S SEE.  I GUESS THAT'S THE BIAS AND THE -- WHY DO YOU BELIEVE THAT YOU COULD BE IMPARTIAL?  I THINK THAT'S THE QUESTION.

PROSPECTIVE JUROR QUACH:  BAD CHILDHOOD EXPERIENCE.

MR. MOON:  SAY THAT ONE MORE TIME, PLEASE?

THE COURT:  HE SAID BAD CHILDHOOD EXPERIENCE.

MR. MOON:  OKAY.  I'M GOING TO HAVE TO ASK THE COURT THE QUESTION NO. 6 AGAIN BECAUSE, LIKE I SAID, YOU RATTLED THEM OFF SO QUICK SO I KIND OF JUST ABBREVIATED THEM ALL.

THE COURT:  I WILL READ --

MR. MOON:  NO. 6.

THE COURT:  YES.  I'M GOING TO READ IT TO YOU AGAIN.

"SIX, DO ANY OF YOU HAVE ANY BELIEFS OR FEELINGS FOR OR AGAINST LANDLORDS OR TENANTS THAT MIGHT AFFECT YOUR ABILITY TO BE COMPLETELY FAIR AND IMPARTIAL JURORS IN THIS CASE?"

MR. MOON:  OKAY.  JUROR NO. 12, IS YOUR IMPARTIALITY OR YOUR PARTIALITY, IS IT AGAINST LANDLORDS?

THE COURT:  HE ASKED IF YOUR IMPARTIALITY IS AGAINST LANDLORDS.

PROSPECTIVE JUROR QUACH:  YES.

THE COURT:  ANSWER YES.

MR. MOON:  AND AGAINST TENANTS.

THE COURT:  IS IT AGAINST TENANTS?

PROSPECTIVE JUROR QUACH:  NO.

THE COURT:  NO.

MR. MOON:  NO.  OKAY.  OKAY.  I'M GOOD.  NO MORE QUESTIONS FOR NO. 12.

THE COURT:  ALL RIGHT.  DO I NEED TO MEET SEPARATELY WITH THE ATTORNEY AND PARTY AGAIN?

MR. MOON:  YES.

THE COURT:  ALL RIGHT.  WE ARE --

MR. MOON:  (INDISCERNIBLE).

THE COURT:  OKAY.  WE'RE GOING TO BREAK FOR THE DAY, LADIES AND GENTLEMEN.  I'M GOING TO LET YOU GO HOME AT THIS POINT.  ALL RIGHT.

PLEASE RETURN TOMORROW AT 9:00.  AT 9:00 WE WILL CONTINUE THIS, ALL RIGHT?  I'M SORRY THAT IT TAKES THIS LONG, BUT IT REALLY IS IMPORTANT.  THINK ABOUT IT.  YOU WOULD WANT TO MAKE SURE YOU HAVE A FAIR JURY IF YOU EVER WERE IN COURT.

AN UNIDENTIFIED PROSPECTIVE JUROR:  WHAT IF WE

ALREADY KNOW WE'RE GOING TO BE IMPARTIAL?

THE COURT:  PLEASE, PLEASE, 9:00 TOMORROW.

NOW, DO NOT DISCUSS ANYTHING ABOUT THIS CASE.  YOU HAVEN'T HEARD ANY EVIDENCE.  YOU DON'T REALLY KNOW WHAT IT'S ABOUT, SO DON'T TALK WITH ANYONE ABOUT IT.  YOU LET THEM KNOW THAT YOU'RE A POTENTIAL JUROR, AND THAT'S IT.

PLEASE, ALSO DON'T TRY TO DO ANY RESEARCH ON YOUR OWN.  DON'T TALK WITH ANYONE ABOUT THE CASE.  DON'T GO ON THE INTERNET OR USE ANY, YOU KNOW, CHAT ROOM, BLOGS, RESEARCH ON THE INTERNET TO TRY TO FIGURE OUT ANYTHING BECAUSE IT'S VERY IMPORTANT THAT YOU GET THE INFORMATION ONLY HERE ONLY WHEN EVERYONE IS PRESENT SO WE ALL HAVE THE SAME THING AND THAT'S HOW THE JURY CAN BE FAIR TO EVERYONE.

SO HAVE A NICE EVENING.  WE WILL SEE YOU AT 9:00. WHEN YOU GET HERE JUST WAIT OUTSIDE AS WE HAD YOU DO SO FAR.

(THE FOLLOWING PROCEEDINGS WERE HELD

OUT OF THE PRESENCE OF THE PROSPECTIVE JURORS:)

THE CLERK:  YOU WANT NO. 3?

THE COURT:  PLEASE.

ALL RIGHT.  WE ARE PRESENT IN THE COURTROOM. PLAINTIFF'S COUNSEL, PLAINTIFF IS PRESENT.  I HAVE MR. MOON ON THE LINE.  ALSO MY STAFF.  WE ALSO HAVE JUROR NO. 3, CORRECT? JUROR NO. 3 IS MS. MERZASIKA?  I APOLOGIZE FOR --

PROSPECTIVE JUROR CASALINO:  CASALINO (INDISCERNIBLE).

THE COURT:  ALL RIGHT.  WOULD YOU COME FORWARD FOR A MOMENT.  YOU CAN STAND THERE.  I WANT TO MAKE SURE MR. MOON IS ABLE TO HEAR.

THE CLERK:  WHAT?  AGAIN?

PROSPECTIVE JUROR CASALINO:  HUH?

THE CLERK:  CAN I HAVE YOUR NAME ONE MORE TIME?

PROSPECTIVE JUROR CASALINO:  IT'S WRONG IN THE THING.  (INDISCERNIBLE) CASALINO.

THE CLERK:  OKAY.  THANK YOU.

THE COURT:  YEAH.  WE APOLOGIZE.

PROSPECTIVE JUROR CASALINO:  NO PROBLEM.

THE COURT:  ALL RIGHT.  WHILE I WAS IN CHAMBERS TALKING WITH THE PARTIES, I BELIEVE YOU PROVIDED SOME INFORMATION TO MY STAFF.  COULD YOU REPEAT THAT?

PROSPECTIVE JUROR CASALINO:  YES.  MAY I?

THE COURT:  PLEASE.

PROSPECTIVE JUROR CASALINO:  I WAS SO EXCITED TO BE HERE TODAY.  THIS IS MY FIRST JURY DUTY.  I SAID NO TO ALL OF THOSE THINGS BECAUSE I REALLY WANTED TO HELP TODAY.

BUT THE WAY THE GENTLEMAN TREATED ME IN FRONT OF EVERYBODY -- NO. 3, SHE DOESN'T WANT TO BE HERE -- WASN'T RIGHT FOR ME.  I AM ALREADY FAVORING THIS LADY HERE, SO I WANT TO BE EXCUSED IF YOU LET ME.  I DON'T KNOW THE RULES.  IF I CAN.

THE COURT:  I VERY MUCH APPRECIATE YOUR HONESTY AND YOUR INTEGRITY.  THAT COUNTS A LOT.  AND I APOLOGIZE FOR WHAT HAS TRANSPIRED.

BUT LET ME ASK.  IT APPEARS TO THE COURT THAT THIS IS AN APPROPRIATE SITUATION TO DISMISS JUROR NO. 3.  IS THERE ANY OBJECTION BY EITHER OF THE PARTIES?  PLAINTIFF?

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  YOU OBJECT.

MR. THEODOSIADIS:  I OBJECT.

THE COURT:  ALL RIGHT.  PLEASE INFORM ME OF THE OBJECTION.

MR. THEODOSIADIS:  I BELIEVE THAT -- I BELIEVE THAT THE JUROR CAN BE UNBIASED DURING THE COURSE OF THE TRIAL WHEN SHE HEARS THE INFORMATION AND TESTIMONY PROVIDED TO HER.  SHE SEEMS REASONABLE.  I DON'T BELIEVE THAT THE BIAS WOULD AFFECT HER DECISION AFTER HEARING THE EVIDENCE.

THE COURT:  MR. MOON, DID YOU WISH TO BE HEARD?

MR. MOON:  YES, YOUR HONOR.  I DIDN'T HEAR WHAT SHE SAID, THE REASON WHY SHE WANTS TO BE EXCUSED.

PROSPECTIVE JUROR CASALINO:  I'M SORRY.  I'M HAVING (INDISCERNIBLE).

MR. MOON:  CAN YOU HEAR ME?

THE COURT:  YES.  YES.  OKAY.  MA'AM, IF YOU --

PROSPECTIVE JUROR CASALINO:  YEAH.  I'M THE PERSON YOU SAID, "OH, SHE DOESN'T WANT TO BE HERE TODAY" IN FRONT OF EVERYBODY.  AND I WAS TELLING THE JUDGE THAT I WAS VERY EXCITED TO BE HERE TODAY.  BUT YOU RUINED IT FOR ME.  I JUST DON'T APPRECIATE THE WAY YOU TALKED TO ME.  I'M HERE TO HELP.

MR. MOON:  OKAY.  IF I -- I APOLOGIZE IF I'LL --

PROSPECTIVE JUROR CASALINO:  I TAKE OFF FROM WORK.

MR. MOON:  IF I APOLOGIZE IF I OFFENDED YOU.  I REPENT OF THAT SIN AND ASK FOR YOU BEG MY PARDON.  BUT BECAUSE OF THE SITUATION THAT I AM IN, I COULDN'T SEE SO I CAN'T HEAR, SO, YOU KNOW, IF I CAN -- YOU SEEM LIKE A GOOD JUROR NOW.

IF I APOLOGIZE AND YOU'RE WILLING TO STAY, THEN THAT'S FINE.  AND I EVEN GO ON RECORD IN FRONT OF EVERYBODY AND APOLOGIZE TO YOU BECAUSE I DON'T WANT TO OFFEND ANYONE. THAT'S MY DUTY TO THE ALMIGHTY CREATOR THAT I OFFEND NO ONE.

SO IF YOU ACCEPT MY APOLOGY AND MY REPENTANCE AND YOU STILL WISH TO BE EXCITED TO BE IN THIS PROCESS, THEN I WOULD OBJECT TOO.  BUT IF YOU STILL WANT TO BE REMOVED, THEN YOUR WISH IS MY COMMAND.  IN JESUS NAME.

PROSPECTIVE JUROR CASALINO:  WHATEVER YOU GUYS LIKE ME TO DO.  I'M BEING HONEST AND THIS GENTLEMAN IS NOT --

THE COURT:  WELL, FROM THE COURT'S PERSPECTIVE --

MR. MOON:  IF YOU WON'T FORGIVE ME --

THE COURT:  OKAY.  MR. MOON, LET ME SPEAK FOR A MOMENT.  I TRULY --

MR. MOON:  OKAY.

THE COURT:  -- APPRECIATE YOUR HONESTY AND INTEGRITY.  IT TAKES A LOT TO DO WHAT YOU'RE DOING.

MY QUESTION TO YOU IS, NOW THAT YOU'VE HEARD FROM BOTH PARTIES, COULD YOU STILL BE FAIR, MAKE YOUR DECISION BASED SOLELY ON THE EVIDENCE AND THE LAW THAT I WILL GIVE TO YOU?

PROSPECTIVE JUROR CASALINO:  I CAN'T SAY YES; I CAN'T NO.  I DON'T KNOW.  I'M BEING HONEST AGAIN.  I DON'T KNOW.

THE COURT:  ALL RIGHT.  THANK YOU.  MA'AM, I'M GOING TO EXCUSE YOU, AND I SINCERELY APOLOGIZE BECAUSE I DO APPRECIATE THE FACT THAT YOU WERE EXCITED TO DO THIS. TRUTHFULLY, I WISH I COULD SERVE AS A JUROR.  I ALWAYS GET

BOOTED. I THINK IT'S A WONDERFUL THING THAT YOU ARE SO WILLING TO DO IT, BUT I ALSO KNOW YOUR INTEGRITY IS IMPORTANT TO ME.

AND SO I'M GOING TO EXCUSE YOU BECAUSE I THINK THAT IT PROBABLY IS IN THE INTEREST OF MAKING SURE THAT WE HAVE A VERY IMPARTIAL JURY. AND I APOLOGIZE THAT THIS HAPPENED, BUT YOU ARE EXCUSED. SO YOU CAN GO DOWN TO THE SECOND FLOOR, THE JURY ROOM. YOU SHOULD GO QUICKLY. THEY'RE OPEN A FEW MORE MINUTES, AND THEY WILL CHECK YOU OUT. AND I APOLOGIZE, MA'AM.

PROSPECTIVE JUROR CASALINO: THANK YOU.

AN UNIDENTIFIED SPEAKER: I HAVE TWO JURORS THAT HAVE ISSUES WITH HARDSHIP.

THE COURT: OKAY. BRING THEM IN ONE AT A TIME, PLEASE.

ALL RIGHT. GOOD AFTERNOON, MA'AM. YOU ARE JUROR NO. 1, YUN, CORRECT?

PROSPECTIVE JUROR YUN: YES.

THE COURT: ALL RIGHT. WE ARE IN THE PRESENCE ONLY OF THAT ONE JUROR AS WELL AS THE PARTIES AND STAFF.

COULD YOU TELL US WHAT THE ISSUE IS, MA'AM?

PROSPECTIVE JUROR YUN: WELL, I HAVE MY PRIVATE CLINIC BY MYSELF, SO I COULD SERVE LIKE COUPLE OF DAYS, BUT IF IT'S FOR FOUR OR FIVE DAYS, I DON'T KNOW WHO'S GOING TO COVER ALL THE PATIENTS. I SEE ALL THE SICK PATIENTS BECAUSE I HAVE A CLINIC (INDISCERNIBLE), AND ALL THE SICK KIDS AND PATIENTS IS COMING, SO I DON'T KNOW WHO'S GOING TO COVER ME BECAUSE OF THE -- I DON'T HAVE, YOU KNOW, THE SECOND DOCTOR. I'M THE ONLY ONE. AND THEN IT'S LIKE WALK-IN BASIS AND THEN, SO I

DON'T KNOW. I CAME IN BECAUSE I WANT TO SERVE, BUT FOUR OR FIVE DAYS I'M NOT SURE I CAN DO IT.

THE COURT: OKAY. LET ME ASK THIS. I KNOW THAT -- WELL, COULD I ASK YOU TO STEP OUTSIDE FOR JUST ONE MOMENT. JUST WAIT OUTSIDE THE DOOR. WE'LL COME GET YOU IN A MOMENT.

(PROSPECTIVE JUROR YUN EXITED THE COURTROOM.)

AN UNIDENTIFIED SPEAKER: DO YOU WANT THE SECOND HARDSHIP?

THE COURT: NO. I WANT TO TALK TO COUNSEL AND MR. MOON.

WHAT IS YOUR BEST ESTIMATE OF THE TRIAL LENGTH AT THIS POINT IN TIME? ASKING PLAINTIFF FIRST.

MR. THEODOSIADIS: THREE HOURS, YOUR HONOR.

THE COURT: THREE HOURS?

MR. THEODOSIADIS: I HAVE ONE WITNESS. I DON'T KNOW IF ANY OF THE WITNESSES OF MR. MOON'S ARE ACTUALLY GOING TO BE HERE.

THE COURT: RIGHT.

MR. MOON, WHAT IS YOUR PRESENT TRIAL ESTIMATE?

MR. MOON: PROBABLY FOUR DAYS. I HAVE 25 WITNESSES. FOUR OF THEM ARE UNDER THE AUSPICES OF OPPOSING COUNSEL. HE'S BEEN PLAYING GAMES WITH THAT, SO THAT'S HOSTILE, BUT I DON'T KNOW IF HE NEEDS ME TO SUBPOENA THEM. BUT LEAH WHETSTONE, DOROTHEA BROOKS AND THEN MS. KELLY WHETSTONE AND HIMSELF.

AND THEN I JUST SERVED SUBPOENAS ON VIRAMONTES, KATHRYN BARGER AND (INDISCERNIBLE).

AND THEN I THINK WHAT I'M GOING TO DO TOMORROW, AND I THINK IT'S PROPER AND APPROPRIATE, IS TO ASK THE COURT TO --

FOR THE HOSTILE WITNESSES THAT WON'T SHOW UP UNLESS THEY'RE SUBPOENAED --

THE COURT:  OKAY.  THANK YOU.

MR. MOON:  -- TO MAKE AN ORDER.

THE COURT:  OKAY.  THANK YOU.

MR. MOON:  SO ABOUT FOUR OR FIVE DAYS.

THE COURT:  WOULD YOU BRING THAT PERSON BACK.  I'M GOING TO EXCUSE HER.

(PROSPECTIVE JUROR YUN ENTERED THE COURTROOM.)

THE COURT:  ALL RIGHT, MA'AM.  THANK YOU FOR BRINGING YOUR SITUATION TO MY ATTENTION.  I AM GOING TO EXCUSE YOU FOR HARDSHIP.

PROSPECTIVE JUROR YUN:  OH, THANK YOU SO MUCH.

THE COURT:  OKAY.  GOOD LUCK TO YOU, MA'AM.  THANK YOU.

PROSPECTIVE JUROR YUN:  THANK YOU.

THE COURT:  BRING IN THE NEXT ONE.

THE CLERK:  FOR FINANCIAL HARDSHIP, YOUR HONOR?

THE COURT:  YES.  HEALTH HARDSHIP.  TAKING CARE OF ALL THE PATIENTS.

(PROSPECTIVE JUROR CIBRIAN ENTERED THE COURTROOM.)

THE COURT:  ALL RIGHT, SIR.  COULD YOU COME FORWARD AND JUST STAND AT THE -- ALL THE WAY FORWARD.  COULD YOU GIVE US YOUR NAME, PLEASE.

PROSPECTIVE JUROR CIBRIAN:  MY NAME IS CHRISTIAN CIBRIAN.

THE COURT:  RIGHT.

PROSPECTIVE JUROR CIBRIAN:  AND I'M JUROR NO. 11.

THE COURT:  YES.  WHAT'S THE SITUATION?

PROSPECTIVE JUROR CIBRIAN:  YOUR HONOR, I JUST -- I JUST -- I HAVE A HARDSHIP GOING ON, A FINANCIAL ONE.  EARLIER I FELT A LITTLE (INDISCERNIBLE) BECAUSE I DIDN'T STEP UP TO SPEAK UP AND ALSO BECAUSE IT'S A LITTLE EMBARRASSING.

SO I -- I ONLY HAVE VERY LITTLE MONEY IN MY BANK ACCOUNT, MY CASH.  THAT'S IT.  AND I HAVE PROOF OF IT, AND I BROUGHT IT IN TO SHOW YOU.

I HAVE ALMOST 300 BUCKS.  AND THEN I CAN'T PUT MY EXPENSES ON MY CREDIT CARD BECAUSE I ONLY HAVE LIKE A HUNDRED DOLLAR CREDIT LIMIT, AND I'M ALMOST THERE ALREADY.  SO --

THE COURT:  ARE YOU WORKING?

PROSPECTIVE JUROR CIBRIAN:  YES.  YES, I AM WORKING. I JUST STARTED.  I ONLY HAVE, LIKE, TWO MONTHS -- ABOUT TWO MONTHS IN.

THE COURT:  DO YOU GET PAID FOR JURY DUTY DO YOU KNOW?

PROSPECTIVE JUROR CIBRIAN:  I'M PART TIME THERE.  I BROUGHT IT UP TO MY SUPERVISOR, AND NO.

THE COURT:  SO YOU DO NOT GET PAID WHEN YOU'RE HERE IN COURT.

PROSPECTIVE JUROR CIBRIAN:  NO.  NO.  AND SO FOR ME TO SERVE AND TAKE FIVE DAYS OFF FROM WORK, I MEAN --

THE COURT:  ALL RIGHT.

PROSPECTIVE JUROR CIBRIAN:  I DON'T HAVE IT.

THE COURT:  DID EITHER PLAINTIFF OR MR. MOON WISH TO BE HEARD?  OKAY.  COULD YOU JUST STEP OUTSIDE FOR JUST A QUICK MOMENT.  WE'LL COME GET YOU.

(PROSPECTIVE JUROR CIBRIAN EXITED THE COURTROOM.)

THE COURT:  ALL RIGHT.  WE ARE OUTSIDE THE PRESENCE OF THE JURY.

MR. MOON:  THAT'S AN ORIGINAL.  THAT'S AN ORIGINAL. THAT'S A COPY.

THE COURT:  MR. MOON, YOU WISH TO SPEAK?

MR. MOON:  CAN YOU HEAR ME?

THE COURT:  YES.

MR. MOON:  IF HE WANTS TO BE -- IF HE WANTS TO BE -- THIS CLERK IS GIVING ME A HARD TIME.  NO, IF HE WISHES TO BE EXCUSED, I DON'T HAVE A PROBLEM WITH THAT.

THE COURT:  WHAT IS THE PLAINTIFF'S VIEW?

MR. THEODOSIADIS:  YOUR HONOR, MR. MOON SAID HE COULDN'T BE IN COURT TODAY BECAUSE OF COVID.  HE'S IN COURT. HE'S IN THE CLERK'S --

THE COURT:  WHAT DO YOU MEAN HE'S IN COURT?

MR. THEODOSIADIS:  HE SAID THE CLERK IS GIVING HIM A HARD TIME.

AN UNIDENTIFIED SPEAKER:  HE'S AT THE CLERK'S OFFICE.

MR. MOON:  THAT'S AN ORIGINAL.

MR. THEODOSIADIS:  NO, I DON'T NEED TO BE HEARD ON THAT, YOUR HONOR.

THE COURT:  ALL RIGHT.  I'M GOING TO EXCUSE MR. CIBRIAN FOR HARDSHIP.  COULD YOU BRING HIM BACK IN, PLEASE.

AN UNIDENTIFIED SPEAKER:  YES.

(PROSPECTIVE JUROR CIBRIAN ENTERED THE COURTROOM.)

THE COURT:  ALL RIGHT.  MR. CIBRIAN, THANK YOU FOR YOUR SERVICE.  I'M EXCUSING YOU FOR HARDSHIP.  PLEASE GO DOWN TO THE JURY ROOM IMMEDIATELY.  THEY'LL TAKE CARE OF IT.

PROSPECTIVE JUROR CIBRIAN:  THANK YOU VERY MUCH, YOUR HONOR.

THE COURT:  OKAY.  GOOD LUCK TO YOU, SIR.

(PROSPECTIVE JUROR CIBRIAN EXITED THE COURTROOM.)

THE COURT:  ALL RIGHT.  OKAY.  WE ARE BACK -- MR. MOON, MR. MOON, WE'RE ON THE RECORD, MR. MOON.  WE ARE OUTSIDE THE PRESENCE OF ANY JURORS.  JUST PLAINTIFF AND PLAINTIFF'S COUNSEL, STAFF AND YOU, MR. MOON.

ALL RIGHT.  LET ME POINT OUT SOMETHING THAT HAS BECOME VERY OBVIOUS.  AND THAT IS, MR. MOON, YOU NEED TO BE MINDFUL OF THE FACT THAT YOU HAVE JURORS SITTING IN THIS COURTROOM HEARING WHAT YOU SAY AND HOW YOU BEHAVE.

I TOLD YOU LAST THURSDAY, I TOLD YOU AGAIN BEFORE WE BEGAN, YOU NEED TO DO WHAT YOU CAN, ALL RIGHT?  IT IS YOUR CASE, BUT I WANT EVERYONE TO RECOGNIZE THAT THE JURORS SEE AND HEAR WHEN THEY ARE IN SESSION AND, THEREFORE, YOU MAY WISH TO CONSIDER WHETHER OR NOT YOUR BEHAVIOR IS HARMFUL TO YOURSELF.

HAVE WE TAKEN CARE OF EVERYTHING WE NEED TO DO TODAY?

MR. MOON:  I'M GIVING NOTICE THAT I'M GOING TO RENEW MY MOTION TO CHANGE OF VENUE BECAUSE I'M HAVING ISSUES WITH THE CLERK'S OFFICE AT THE STANLEY MOSK COURTHOUSE.

THE COURT:  ALL RIGHT.  WE'LL SEE EVERYONE AT 9:00 TOMORROW.  THANK YOU.  HAVE A NICE EVENING.

MR. MOON:  SO I'M GIVING YOU NOTICE EX PARTE -- I

KNOW IT'S LATE -- BUT TO RENEW MY MOTION FOR CHANGE OF VENUE.

THE CLERK:  9:30, YOUR HONOR.

THE COURT:  9:30?

THE CLERK:  WE HAVE IT SCHEDULED FOR 9:30.

AN UNIDENTIFIED SPEAKER:  WE HAVE IT SCHEDULED ALL WEEK FOR 9:30.

THE COURT:  OH, THAT'S FINE.  I TOLD THE JURY 9:00.

MR. MOON:  YEAH, YOU DID TELL THE JURY 9:00.

THE COURT:  OKAY.  9:30.  9:30.  IN ANY EVENT, BE HERE.  WE'RE GOING TO HAVE THE JURY, SO IF YOU CAN BE HERE BY 9:00, PLEASE DO.  OTHERWISE YOU KNOW WHAT THE JURY IS SEEING. YOU KNOW WHAT THEY'RE HEARING.  YOU BOTH CAN BLOW THEM UP IF YOU WISH OR YOU CAN TREAT THEM WITH KID GLOVES.  IT'S UP TO YOU TO LEARN HOW TO BEHAVE.

GO AHEAD.  HAVE A NICE EVENING.

MR. THEODOSIADIS:  THANK YOU, YOUR HONOR.

(AT 4:33 P.M. THE PROCEEDINGS WERE ADJOURNED UNTIL 9:00 A.M. THE FOLLOWING DAY.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 92                    HON. DOUGLAS W. STERN, JUDGE

LEAH WHETSTONE,                    )
                                   )
                PLAINTIFF,         )
                                   )
         VS.                       ) NO. 21PDUD00319
                                   )
ADRIAN MOON,                       )
                                   ) TRANSCRIBER'S
                DEFENDANT.         ) CERTIFICATE
_____)

        I, CARYN HOBBIS, CERTIFIED SHORTHAND REPORTER OF THE
STATE OF CALIFORNIA, DO HEREBY CERTIFY THAT THE FOREGOING
PAGES 1 THROUGH 99, INCLUSIVE, ARE A TRUE AND ACCURATE
TRANSCRIPTION OF THE PROCEEDINGS HELD ON NOVEMBER 1, 2021,
TRANSCRIBED FROM A DIGITAL RECORDING TO THE BEST OF MY
ABILITY, IN THE ABOVE-ENTITLED CAUSE.
        DATED THIS 6TH DAY OF SEPTEMBER, 2022.

*Caryn Hobbis*
_____
CARYN HOBBIS, CSR NO. 9432
CERTIFIED SHORTHAND REPORTER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 92                      HON. DOUGLAS W. STERN, JUDGE


LEAH WHETSTONE,                    )
                                   )
                PLAINTIFF,         )
                                   )
          VS.                      ) NO. 21PDUD00319
                                   )
ADRIAN MOON,                       )
                                   )
                DEFENDANT.         )
_____)


-oOo-

TRANSCRIPT OF PROCEEDINGS

NOVEMBER 2, 2021


APPEARANCES:

FOR THE PLAINTIFF:        LAW OFFICE OF THEODORE THEODOSIADIS
                          BY:  THEODORE THEODOSIADIS, ESQ.
                          333 SOUTH GRAND AVENUE
                          SUITE 3310
                          LOS ANGELES, CALIFORNIA 90071

FOR THE DEFENDANT:        IN PRO SE


VOLUME 2 OF 3
PAGES 101 - 205

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING. TRANSCRIPT
PRODUCED BY CARYN HOBBIS, CSR NO. 9432

102

M A S T E R   I N D E X

NOVEMBER 2, 2021; VOLUME 2


SESSIONS


TUESDAY, NOVEMBER 2, 2021                                        PAGE

    A.M. SESSION                                              106

    P.M. SESSION                                              189

103

M A S T E R   I N D E X

NOVEMBER 2, 2021; VOLUME 2

SESSIONS

PAGE

TUESDAY, NOVEMBER 2, 2021
    A.M. SESSION                                          106
    P.M. SESSION                                          189

CHRONOLOGICAL INDEX OF WITNESSES

WHETSTONE, LEAH, CALLED BY THE PLAINTIFF          PAGE
  DIRECT EXAMINATION BY MR. THEODOSIADIS            162
  CROSS-EXAMINATION BY MR. MOON                     169

MASTER INDEX

NOVEMBER 2, 2021; VOLUME 2


SESSIONS

PAGE

TUESDAY, NOVEMBER 2, 2021
      A.M. SESSION                                      106
      P.M. SESSION                                      189


ALPHABETICAL INDEX OF WITNESSES


WHETSTONE, LEAH, CALLED BY THE PLAINTIFF            PAGE
   DIRECT EXAMINATION BY MR. THEODOSIADIS              162
   CROSS-EXAMINATION BY MR. MOON                       169

M A S T E R   I N D E X

VOLUME 2; NOVEMBER 2, 2021

EXHIBITS

| PLAINTIFF'S EXHIBITS | DESCRIPTION | FOR I.D. | IN EVD. | WITHDRAWN OR REJECTED |
|---|---|---|---|---|
| 1 | 30-DAY NOTICE | -- | 166 | |

| DEFENDANT'S EXHIBITS | DESCRIPTION | FOR I.D. | IN EVD. | WITHDRAWN OR REJECTED |
|---|---|---|---|---|
| (NONE OFFERED) | | | | |

CASE NUMBER:                    21PDUD00319

CASE NAME:                      LEAH WHETSTONE VS. ADRIAN MOON

LOS ANGELES, CA                 TUESDAY, NOVEMBER 2, 2021

DEPARTMENT 92                   HON. DOUGLAS W. STERN, JUDGE

TRANSCRIBER:                    CARYN HOBBIS, CSR NO. 9432

TIME:                           A.M. SESSION

APPEARANCES:  DEFENDANT ADRIAN MOON IN PRO SE (APPEARING VIA LA COURTCONNECT, ALTHOUGH NOT PRESENT AT THIS TIME); PLAINTIFF LEAH WHETSTONE, PRESENT WITH COUNSEL, THEODORE THEODOSIADIS, ESQ.

             (THE FOLLOWING PROCEEDINGS WERE HELD OUT
              OF THE PRESENCE OF THE PROSPECTIVE JURORS:)

             THE COURT:  GOOD MORNING.  IT IS, ACCORDING TO THE COMPUTER TIME, 9:01.  AT THIS TIME, WE'RE BACK IN SESSION ON THE MATTER OF WHETSTONE VERSUS MOON.  CAN I GET APPEARANCES, PLEASE, STARTING WITH PLAINTIFF IN THE COURTROOM.

             MR. THEODOSIADIS:  GOOD MORNING, YOUR HONOR. THEODORE THEODOSIADIS ON BEHALF OF MS. WHETSTONE.

             THE CLERK:  NO APPEARANCES FROM THE DEFENSE, YOUR HONOR.

             THE COURT:  MR. MOON, ARE YOU ON THE LINE?

             THE CLERK:  DID YOU TRY TO CALL HIM ON HIS PERSONAL --

             AN UNIDENTIFIED SPEAKER:  NO.

             THE CLERK:  NO?

             AN UNIDENTIFIED SPEAKER:  DID HE CALL IN?

             THE CLERK:  NO.

THE COURT: HAS MR. MOON -- LET ME ASK THE CLERK. HAVE YOU SEEN ANY INDICATION THAT HE HAS LOGGED ONTO THE REMOTE ACCESS?

THE CLERK: NO, YOUR HONOR.

AN UNIDENTIFIED SPEAKER: I'LL GO CHECK OUTSIDE.

(PAUSE.)

AN UNIDENTIFIED SPEAKER: NO CHECK-INS. NO APPEARANCES.

THE COURT: ALL RIGHT. WE'LL GIVE HIM A FEW MINUTES. WE'VE NOT RECEIVED ANY COMMUNICATION FROM HIM SUGGESTING HE'S HAVING ANY DIFFICULTY, HAVE WE?

THE CLERK: NO, YOUR HONOR.

THE COURT: AND LET ME ASK, HAS HE IN THE PAST BEEN CAPABLE OF CALLING IN DIRECTLY TO THE JUDICIAL ASSISTANT TO COMMUNICATE IF HE'S HAVING TROUBLE WITH OUR REMOTE SYSTEM?

THE CLERK: HE CALLS TO OUR UNLAWFUL DETAINER CLERK'S OFFICE ALL THE TIME.

THE COURT: ALL RIGHT.

(SHORT BREAK IN THE PROCEEDINGS.)

THE COURT: MR. MOON, HAVE YOU SIGNED ON? ARE YOU ON THE PHONE?

(SHORT BREAK IN THE PROCEEDINGS.)

THE CLERK: STILL MISSING ONE OR TWO JURORS, YOUR HONOR.

THE COURT: YOU WANT TO REDIAL INTO THE SYSTEM AND SEE WHETHER MR. MOON -- I MEAN, WE'RE IN THE SYSTEM BUT LET'S START IT OVER AGAIN TO SEE WHERE MR. MOON IS.

THE CLERK: OKAY. I'M ALREADY LOGGED ONTO

DEPARTMENT 92'S CONFERENCE. YOU WANT ME TO LOG ONTO 93'S TO SEE IF HE LOGGED ON THERE IN ERROR OR SOMETHING?

THE COURT: WHY DON'T YOU.

AN UNIDENTIFIED SPEAKER: WELL, SEE IF HE REGISTERED FOR -- AT ALL FOR TODAY.

MR. THEODOSIADIS: THERE WAS A DISCREPANCY YESTERDAY WITH THE TIME. IT WAS BETWEEN 9:00 AND 9:30. WE WENT BACK AND FORTH. MAYBE THAT'S THE ISSUE?

THE COURT: OH, WILL YOU CHANGE THAT SO IT SHOWS 9:00 EVERY TIME WITH THAT?

THE CLERK: I CAN DO THAT, YOUR HONOR.

THE COURT: I AM SHOWING A TELEPHONIC SIGNED UP FOR TODAY, ONE PARTICIPANT.

AN UNIDENTIFIED SPEAKER: DOES IT SAY WHAT TIME?

THE COURT: WELL, IT DOESN'T ON MINE.

AN UNIDENTIFIED SPEAKER: COULD I LOOK REAL QUICK?

THE COURT: SURE.

(THE COURT AND AN UNIDENTIFIED SPEAKER
   CONFER SOTTO VOCE.)

AN UNIDENTIFIED SPEAKER: SO ADRIAN MOON DID REGISTER. IT IS FOR --

THE CLERK: 9:30.

THE COURT: CHANGE THAT, PLEASE, SO THAT IT'S 9:00. WE TOLD HIM 9:00 BUT IF THIS SAYS 9:30 IT'S POSSIBLE THAT HE'S GOING TO BE WAITING.

WOULD YOU CALL HIM IF YOU HAVE HIS DIRECT NUMBER? SEE IF YOU CAN REACH HIM?

THE CLERK: YES.

THE COURT:  WE WANT TO GIVE HIM THE OPPORTUNITY TO PARTICIPATE.

(PAUSE WHILE THE CLERK CONTACTS MR. MOON.)

THE CLERK:  HELLO.  GOOD MORNING, MR. MOON.

MR. MOON:  YES.

THE CLERK:  THIS IS THE CLERK IN DEPARTMENT 92. WE'RE CALLING TO CHECK WHY YOU'RE NOT SCHEDULED OR SIGNED UP FOR COURTCONNECT FOR YOUR HEARING AT 9:00.

MR. MOON:  WELL, BECAUSE IT SAYS 9:30.  I'M LOOKING AT IT RIGHT NOW.

THE CLERK:  OKAY.

MR. MOON:  IT'S 9:00?

THE COURT:  TELL HIM TO LOG ON NOW.  WE'LL START.

THE CLERK:  IF YOU CAN LOG ON NOW WE'LL START, OKAY?

THE COURT:  THE JURORS ARE ALL HERE.  THEY'RE WAITING.

MR. MOON:  OKAY.  HOLD ON.  OKAY.  IT SAYS 9:30, SO I'M GOING TO LOG ON NOW.  IF YOU DON'T HEAR ME THEN I'M GOING TO CALL BACK, BUT I THINK THAT'S THE RIGHT ONE BECAUSE IT COMES UP TO REMIND YOU --

THE CLERK:  OKAY.

MR. MOON:  -- WHICH (INDISCERNIBLE) YOU HAVE.  ALL RIGHT.  I'LL CALL RIGHT BACK.

THE CLERK:  GOT IT.  THANK YOU.

MR. MOON:  NO PROBLEM.

(PAUSE.)

THE COURT:  MR. MOON, ARE YOU ON YET?

THE CLERK:  HE DISCONNECTED FROM THE COURTROOM PHONE

NUMBER SO THAT HE CAN CONNECT TO COURTCONNECT USING THAT SAME PHONE NUMBER, THE SAME PHONE.

ALL OF THE JURY (INDISCERNIBLE) ARE NOW SCHEDULED FOR 9:00 A.M., YOUR HONOR.

THE COURT:  THANK YOU.

(PAUSE.)

THE COURT:  WHY ARE PROPOSED JURY INSTRUCTIONS FROM MR. MOON WAITING FOR SCAN?

THE CLERK:  HE PROBABLY SUBMITTED THEM LATE YESTERDAY, AND SO IT TAKES A COUPLE OF HOURS FOR THEM TO BE ABLE TO DO IT THROUGH THE SCANNER.

THE COURT:  ALL RIGHT.

(PAUSE.)

THE COURT:  DOES IT NORMALLY TAKE THIS LONG TO SIGN IN ON A PHONE CALL?

THE CLERK:  I DON'T KNOW WHAT HE'S DOING.  I MEAN, I SIGN IN AND IT TAKES ME ABOUT 20, 30 SECONDS.  HE MENTIONED THAT HE WOULD CALL RIGHT BACK IF HE WAS HAVING ANY ISSUES.

THE COURT:  OKAY.

THE CLERK:  THERE HE IS.

MR. MOON, CAN YOU HEAR US?

MR. MOON:  YES.  GOOD MORNING.

THE COURT:  ALL RIGHT.  ON THE RECORD.  WELL, WE'VE BEEN ON THE RECORD THE WHOLE TIME, BUT AGAIN, THIS IS WHETSTONE VERSUS MOON.  LET ME GET APPEARANCES IN THE COURTROOM STARTING WITH PLAINTIFF'S COUNSEL.

MR. THEODOSIADIS:  THEODORE THEODOSIADIS ON BEHALF OF MS. WHETSTONE.

111

THE COURT: AND SHE IS PRESENT AS WELL.

ON THE PHONE.

MR. MOON: ALL PRAISE AND GLORY TO THE ALMIGHTY CREATOR IN THE MIGHTY NAME OF YESHUA THE MESSIAH. ADRIAN D. MOON, DEFENDANT, VICTIM AND CROSS-PLAINTIFFS.

THE COURT: ALL RIGHT. THANK YOU.

THE COURT WILL NOTE LOOKING AT THE ELECTRONIC DOCKET, I SEE THAT MR. MOON FILED A STATEMENT OF THE CASE. IT'S OUT FOR SCANNING. AN EXHIBIT LIST, PROPOSED JURY INSTRUCTIONS AND VERDICT FORM. AM I CORRECT, MR. MOON?

MR. MOON: YES.

THE COURT: ALL RIGHT.

MR. MOON: I EMAILED IT BECAUSE I WAS JUST GETTING READY TO DO THAT.

THE COURT: OKAY. THE COURT HAS NOT YET SEEN THAT. I ASSUME IT WILL GET INTO THE DOCKET. WHEN DID YOU FILE THAT? CAN I ASK?

MR. MOON: THIS MORNING. I HAD SOMEONE FILE IT FOR ME.

THE COURT: OKAY. BECAUSE IT'S SHOWING TODAY AS, YES, NOVEMBER 2ND AS FILED.

MR. MOON: IF YOU LIKE, I'M GOING TO EMAIL IT TO YOU GUYS.

THE COURT: THAT IS FINE. YOU CAN SEND IT TO THE DEPARTMENT 92 EMAIL ADDRESS. ALL RIGHT.

MR. MOON: OKAY.

THE COURT: NOW, LET ME INQUIRE. DID PLAINTIFF -- WELL, THE COURT HAD INDICATED YESTERDAY THAT A COPY OF THE

VARIOUS FILINGS, PROPOSED JURY INSTRUCTIONS, ET CETERA, HAD BEEN EMAILED BY THE COURT TO MR. MOON.  DID PLAINTIFF ALSO SERVE A COPY AS DIRECTED?

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  AND DID YOU FILE A PROOF OF SERVICE TO THAT EFFECT?

MR. THEODOSIADIS:  NO, I DID NOT, YOUR HONOR.

THE COURT:  YOU WILL OF COURSE.

MR. THEODOSIADIS:  I WILL OF COURSE.

THE COURT:  ABSOLUTELY.  PLEASE.  WHEN YOU SERVE SOMETHING YOU FILE YOUR PROOF OF SERVICE, OKAY?

ALL RIGHT.  IS THERE ANYTHING THAT NEEDS TO BE BROUGHT TO THE COURT'S ATTENTION?  THE JURY HAS BEEN WAITING VERY PATIENTLY.  WE TOLD THEM TO BE HERE AT 9:00.  I THINK EVERYONE HEARD ME TELL EVERYONE TO BE HERE AT 9:00, SO THEY'RE PATIENTLY WAITING.  IS THERE ANYTHING FURTHER?  I HOPE NOT.

MR. THEODOSIADIS:  NO, YOUR HONOR.

THE COURT:  PLAINTIFF SAYS NO.

MR. MOON?

MR. MOON:  DID YOU EVER RECEIVE THE EX PARTE APPLICATION FOR MOTION IN LIMINE NO. 1?

THE COURT:  NO, THE COURT HAS NOT SEEN THAT.  ALL RIGHT.

MR. MOON:  IT'S CRAZY.  I FILED IT, LIKE, TWO DAYS AGO.  I MEAN, SHOULD I --

THE COURT:  THE CLERK HAS JUST HANDED ME AN EX PARTE.  IT'S TITLE "EX PARTE APPLICATION EMERGENCY MOTION UNDER RULE 5.151 ET. SEQ. AND SUPREMACY CLAUSE," ET CETERA,

"TO BAR WITNESS PLAINTIFF, CRIMINAL CROSS-DEFENDANT LEAH WHETSTONE FROM TESTIFYING AT JURY TRIAL."  IS THAT IT?  IS THAT WHAT YOU'RE REFERRING TO?

MR. MOON:  YEAH, THAT DOES IT.

THE COURT:  OKAY.  IRONICALLY IT MAKES NO REFERENCE TO IN LIMINE MOTION.  YOU MIGHT LEARN TO GIVE --

MR. MOON:  IT DOES.

THE COURT:  YOU TEND TO USE --

MR. MOON:  IT SAYS "MOTION IN -- MOTION IN LIMINE" --

THE COURT:  ALL RIGHT.  THE COURT --

MR. MOON:  -- "NO. 1."

THE COURT:  THE COURT WILL REVIEW IT DURING THE BREAK.  LET'S BRING OUR JURY IN AND GET UNDER WAY.  I'M SURE THEY ARE ANXIOUS TO COME BACK IN.  SO PLEASE BRING THEM IN AT THIS TIME.

MR. MOON, BE AWARE THE JURY WILL BE IN THE ROOM IN JUST ABOUT 20 SECONDS, SO PLEASE BE AWARE OF YOUR PRESENCE.

MR. MOON:  MY WHO?

THE COURT:  BE AWARE OF THEY'RE PRESENCE.

MR. MOON:  OH, OKAY.  (INDISCERNIBLE).

(THE FOLLOWING PROCEEDINGS WERE HELD IN THE PRESENCE OF THE PROSPECTIVE JURORS:)

THE COURT:  ALL RIGHT.  WELCOME BACK, LADIES AND GENTLEMEN.

AT THIS TIME, IF I COULD ASK THE CLERK TO CALL SOME PEOPLE FORWARD.

THE CLERK:  YES, YOUR HONOR.  WE HAVE TAMMY TRAN

WILL BE OUR NEW NO. 1 JUROR.  AND SANDEEP SACCONE (PHONETIC) WILL BE OUR NEW NO. 3 WITH PETER BISHAY (PHONETIC) BEING OUR NEW NO. 11.

THAT'S IT, YOUR HONOR.

THE COURT:  ALL RIGHT.  OKAY.  AS WE DID YESTERDAY, WE ARE GOING TO ASK THAT EACH PERSON PROVIDE -- THE NEW PEOPLE PROVIDE THE INFORMATION.  SO MS. TRAN, I BELIEVE?

PROSPECTIVE JUROR TRAN:  MY NAME IS TAMMY.  I'M (INDISCERNIBLE).  I'M UNEMPLOYED.  I'M SINGLE (INDISCERNIBLE). AND NO FOR ALL INFORMATION.

THE COURT:  THANK YOU VERY MUCH.

ALL RIGHT.  MR. SAHON?  IS THAT HOW IT'S PRONOUNCED?

PROSPECTIVE JUROR SACCONE:  GOOD MORNING, EVERYONE. I AM SANDEEP SACCONE.  I AM FROM SHERMAN OAKS AND I AM A COO. I AM MARRIED.  MY WIFE IS A DENTIST.  I DO NOT HAVE ANY ADULT CHILDREN.  I DO NOT HAVE ANY PRIOR EXPERIENCE WITH A JURY. NO, I'M NOT (INDISCERNIBLE) WITH ANYONE.

FROM QUESTION 1 THROUGH 13, I WOULD SAY YES TO 1, 2 AND 3.

THE COURT:  THANK YOU.

ALL RIGHT.  AND MR. BISHAY?

PROSPECTIVE JUROR BISHAY:  YES, SIR.  PETER BISHAY. WEST COVINA.  PROJECT COORDINATOR.  MARRIED.  SHE'S A CONSULTANT (INDISCERNIBLE).  NO ADULT CHILDREN.  NO PRIOR JURY EXPERIENCE.  NO TO NO. 8.

THE COURT:  I'M SORRY.  YES TO NO. 8?

PROSPECTIVE JUROR BISHAY:  NO TO NO. 8.  AND THEN YES TO NO. 1.  YES TO NO. 2.  PROBABLY YES TO NO. 3.

THE COURT:  OKAY.

PROSPECTIVE JUROR BISHAY:  AND BECAUSE I'M A PROPERTY OWNER, PROBABLY YES TO NO. 4 AS WELL.  AND THEN YES TO NO. 6.

THE COURT:  ALL RIGHT.  THANK YOU.

PLAINTIFF MAY INQUIRE OF THE NEW POTENTIAL JURORS.

MR. THEODOSIADIS:  NOT AT THIS TIME, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. MOON, YOU MAY INQUIRE.  MR. MOON?  HELLO, MR. MOON?  MR. MOON?

MR. MOON:  CAN YOU HEAR ME?

THE COURT:  YES, WE CAN HERE YOU NOW.  THANK YOU.  SIR, YOU MAY INQUIRE OF THE NEW POTENTIAL JURORS.

MR. MOON:  OKAY.  OF THE 12 QUESTIONS, WHICH ANSWERS -- WHICH QUESTIONS DID YOU ANSWER TO YES, AS YES?

THE COURT:  ALL RIGHT.  SIR, JUROR SEATED IN --

MR. MOON:  CAN YOU HEAR ME?

THE COURT:  YES.  JUROR SEATED IN SEAT NO. 1, TAMMY TRAN, INDICATED NO TO EVERYTHING.  AM I CORRECT, MS. TRAN?

PROSPECTIVE JUROR TRAN:  YES.

THE COURT:  ALL RIGHT.  JUROR SEATED IN NO. 3, MR. SACCONE, AND I APOLOGIZE FOR MISPRONOUNCING, INDICATED YES TO 1, 2 AND 3.  HE IS NODDING YES.

AND JUROR NO. 11, PETER BISHAY, INDICATED YES TO 1, 2, 3, 4 AND 6.

MR. MOON:  OKAY.  JUROR NO. 1, YOU SAID NO TO EVERYTHING, SO I DON'T NEED HIM.

JUROR NO. 3; IS THAT CORRECT?

PROSPECTIVE JUROR SACCONE:  YES.

MR. MOON:  YOU SAID YES TO -- JUROR NO. 3, WHAT QUESTIONS -- OF THE 12 QUESTIONS WHICH QUESTIONS DID YOU ANSWER YES TO?

PROSPECTIVE JUROR SACCONE:  ONE, TWO AND THREE.

MR. MOON:  SO YOU HAVE (INDISCERNIBLE).  HAVE YOU EVICTED A TENANT BETWEEN DECEMBER 2019 TO CURRENT DATE?

PROSPECTIVE JUROR SACCONE:  YES, I HAVE.

MR. MOON:  CAN I ASK WHAT WAS THE EVICTION FOR?

PROSPECTIVE JUROR SACCONE:  NONPAYMENT OF RENT.

MR. MOON:  PARDON ME?

PROSPECTIVE JUROR SACCONE:  NONPAYMENT OF RENT.

MR. MOON:  OKAY.  ARE YOU FAMILIAR WITH THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23, 2021?

PROSPECTIVE JUROR SACCONE:  YES, I AM.

MR. MOON:  AND YOU WERE ABLE TO EVICT HIM.  THAT'S CRAZY.

PROSPECTIVE JUROR SACCONE:  THIS WAS A DIFFERENT COUNTY.

MR. MOON:  OH.  I THINK IT'S EFFECTIVE IN ALL COUNTIES.  ACTUALLY THE STATE OF CALIFORNIA.  ARE YOU FAMILIAR WITH THE SENATE BILL 91 EVICTION MORATORIUM?

PROSPECTIVE JUROR SACCONE:  VAGUELY.

MR. MOON:  ARE YOU FAMILIAR WITH THE FEDERAL CARES ACT?

PROSPECTIVE JUROR SACCONE:  YES, I AM.

MR. MOON:  OKAY.  AND YOU WERE ABLE TO EVICT HIM. THAT'S CRAZY.  OKAY.  THAT'S NO. 3.

AND THE NEXT ONE IS NO. 13?  NO, (INDISCERNIBLE) 13. WHAT'S THE NEXT JUROR THAT'S IN QUESTION?

THE COURT:  JUROR NO. 11, MR. BISHAY.

MR. MOON:  OKAY.  MR. BISHAY, WHAT -- OUT OF THE 12 QUESTIONS, WHAT QUESTIONS DID YOU ANSWER YES TO?

PROSPECTIVE JUROR BISHAY:  ONE, TWO, THREE AND SIX.

MR. MOON:  AND SIX?

PROSPECTIVE JUROR BISHAY:  YEAH.

MR. MOON:  HAVE YOU EVICTED A TENANT BETWEEN DECEMBER 2019 AND TO PRESENT DAY?

PROSPECTIVE JUROR BISHAY:  NO.

MR. MOON:  NO?

PROSPECTIVE JUROR BISHAY:  NO.

MR. MOON:  OKAY.  HAVE YOU EVER BEEN A TENANT?

PROSPECTIVE JUROR BISHAY:  YES.

MR. MOON:  HAVE YOU EVER BEEN THROUGH AN EVICTION PROCESS?

PROSPECTIVE JUROR BISHAY:  I HIRED A LAWYER BUT HE NEVER WENT TO COURT.  THE TENANT ENDED UP PAYING THE LAWYER.

MR. MOON:  OKAY.  WAS THAT BETWEEN DECEMBER 2019 TO PRESENT DAY?

PROSPECTIVE JUROR BISHAY:  NO.

MR. MOON:  YOU ANSWERED YES TO NO. 6, RIGHT?

PROSPECTIVE JUROR BISHAY:  YES.

MR. MOON:  OKAY.  CAN I INQUIRE TO YOUR BIAS? (INDISCERNIBLE).

PROSPECTIVE JUROR BISHAY:  WELL, I OWN A RENTAL PROPERTY AND ONE OF MY TENANTS DID NOT PAY, SO I HAVE TO HIRE

A LAWYER AND I WENT THROUGH THAT PROCESS, SO I'M OBVIOUSLY BIASED TOWARDS LANDLORDS.

MR. MOON: WAS THAT BETWEEN DECEMBER 2019 AND TO PRESENT DAY?

PROSPECTIVE JUROR BISHAY: NO.

MR. MOON: NO. OKAY. THAT'S ALL (INDISCERNIBLE).

THE COURT: ALL RIGHT.

MR. MOON: OKAY. THAT'S ALL, YOUR HONOR.

THE COURT: THANK YOU. THE COURT WILL INQUIRE FIRST OF PLAINTIFF'S COUNSEL. ARE YOU PASSING FOR CAUSE?

MR. THEODOSIADIS: YES, YOUR HONOR.

THE COURT: ALL RIGHT. MR. MOON, DO YOU PASS FOR CAUSE?

MR. MOON: TO NO. 1?

THE COURT: TO THE THREE WHO WERE JUST RECENTLY SEATED. ALL I'D LIKE TO KNOW IS WHETHER YOU WISH TO CHALLENGE ANY OF THOSE THREE FOR CAUSE. IF SO, TELL ME, YES, I'D LIKE TO CHALLENGE AND THEN WE WILL FIGURE OUT THE NEXT STEP.

MR. MOON: CHALLENGE 1 AND 8.

THE COURT: ALL RIGHT. WE WILL CONVENE PRIVATELY FOR A MOMENT.

THE CLERK: DO YOU STILL HAVE HIS PHONE NUMBER?

THE COURT: YES. I'LL NEED HIS PHONE NUMBER AGAIN. GIVE ME A MOMENT, PLEASE.

MR. MOON, THE NUMBER YOU GAVE? NO. 1 AND?

MR. MOON: SO ACTUALLY IT WAS 1, 3 AND 8, RIGHT?

THE COURT: ONE, THREE AND ELEVEN.

MR. MOON: ONE, THREE AND ELEVEN. OKAY.

THE COURT: JUST GIVE ME THE NUMBERS AND THEN WE'LL CONVENE PRIVATELY.

MR. MOON: OKAY. ONE AND ELEVEN I THINK IT WAS.

THE COURT: ALL RIGHT. ONE AND ELEVEN. OKAY. IF I COULD SEE COUNSEL.

THE CLERK: YOU WANT ME TO TELL HIM TO DISCONNECT AND RECONNECT?

THE COURT: YEAH, AND I'LL BE CALLING HIM.

THE CLERK: MR. MOON, PLEASE DISCONNECT FROM COURTCONNECT. THE COURT IS GOING TO CALL YOU FROM CHAMBERS SO YOU CAN SPEAK PRIVATELY.

MR. MOON: OKAY.

(A CONFERENCE WAS HELD IN CHAMBERS OFF THE RECORD.)

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:

THE CLERK: WAITING FOR MR. MOON TO CONNECT.

THE COURT: CAN YOU TELL WHEN HE'S ON?

THE CLERK: HE SHOULD BE ON, YOUR HONOR.

MR. MOON, CAN YOU HEAR US? MR. MOON? THERE WE GO.

MR. MOON: HELLO?

THE COURT: ALL RIGHT, MR. MOON. ALL RIGHT. THE COURT'S RULING, IT WAS WITHDRAWN AS TO JUROR NO. 1. DENIED AS TO 3. GRANT AS TO NO. 11.

MR. BISHAY, THANK YOU FOR YOUR SERVICE. YOU ARE EXCUSED. PLEASE GO DOWN TO THE JURY ROOM, SECOND FLOOR.

PROSPECTIVE JUROR BISHAY: THANK YOU.

THE COURT: ALL RIGHT.

THE CLERK: LIM GRACE IS OUR NEW NO. 11.

THE COURT: GRACE LIM, I BELIEVE.

THE CLERK:  GRACE LIM IS OUR NEW NO. 11

THE COURT:  ALL RIGHT.  MS. LIM, WELCOME.  IF YOU COULD GIVE US THE INFORMATION ON THAT QUESTIONNAIRE IT WOULD BE APPRECIATED.  THANK YOU.

PROSPECTIVE JUROR LIM:  MY NAME'S GRACE LIM.  I LIVE IN PLAYA DEL REY.  I WORK IN INTERIOR DESIGN.  I'M SINGLE.  NO ADULT CHILDREN.  NO AND NO.  FOR THE 1 THROUGH 13, YES TO 2. I HAVE BEEN A TENANT IN A RENTAL PROPERTY.  AND I COULD BE SOMEWHAT PARTIALLY NO. 6.

THE COURT:  ALL RIGHT.  THANK YOU.

ALL RIGHT.  PLAINTIFF MAY INQUIRE.

MR. THEODOSIADIS:  JUST WITH RESPECT TO THE NO. 6, PARTIAL (INDISCERNIBLE).

PROSPECTIVE JUROR LIM:  AS A TENANT HAVING RENTED DIFFERENT PROPERTIES AND MY EXPERIENCE WITH LANDLORDS BEING SOMETIMES DIFFICULT EVEN THOUGH I'VE ALWAYS CONSISTENTLY BEEN A PERSON WHO PAYS RENT ON TIME, SO.

MR. THEODOSIADIS:  DIFFICULT HOW?

PROSPECTIVE JUROR LIM:  IN MY MOST RECENT SITUATION, THEY ACTUALLY FORCED ME TO LEAVE EVEN THOUGH I'VE BEEN PAYING ON TIME AND THERE WERE NO PROBLEMS.  IT'S BECAUSE THEY'VE BEEN TRYING TO RAISE THE RENT HIGHER THAN THE ALLOWED AMOUNT AND, YEAH, IT WAS JUST VERY FRUSTRATING.

MR. THEODOSIADIS:  THANK YOU.

THE COURT:  ALL RIGHT.  MR. MOON, YOU MAY INQUIRE.

MR. MOON:  JUROR NO. 11, OF THE 12 QUESTIONS, WHAT QUESTIONS DID YOU ANSWER YES TO?

PROSPECTIVE JUROR LIM:  NO. 2 AND 6.

MR. MOON:  SO IS THAT -- YOU OWN RENTAL PROPERTY? YOU HAD TENANTS?

PROSPECTIVE JUROR LIM:  I DO NOT OWN.  I HAVE BEEN A TENANT IN RENTAL PROPERTY.

MR. MOON:  CAN YOU REPEAT THAT AGAIN BUT SPEAK LOUDER?

PROSPECTIVE JUROR LIM:  YES TO NO. 2 AND NO. 6.

MR. MOON:  I CAN'T HEAR ANYTHING.

THE COURT:  SHE SAID YES TO NO. 2 AND NO. 6.  SHE HAS RENTED PROPERTY.

THE CLERK:  THEY'RE MOVING THE MICROPHONE, YOUR HONOR.

THE COURT:  ALL RIGHT.

MR. MOON:  HAVE YOU EVICTED A TENANT BETWEEN DECEMBER 2019 AND TO PRESENT DAY?

PROSPECTIVE JUROR LIM:  I'VE NEVER BEEN AN OWNER. I'VE RENTED.  NO TO 1; YES TO 2.

MR. MOON:  ARE YOU FAMILIAR WITH THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23, 2021?

PROSPECTIVE JUROR LIM:  I'M FAMILIAR, NOT ACQUAINTED.

MR. MOON:  OR THE SENATE BILL -- CALIFORNIA SENATE BILL 91?

PROSPECTIVE JUROR LIM:  NO.

MR. MOON:  YOU SAID YES TO NO. 6.  WHAT IS YOUR BIAS?  TO THE LANDLORDS OR TO THE TENANTS?

PROSPECTIVE JUROR LIM:  AS A TENANT AGAINST

LANDLORDS.

MR. MOON: AS A TENANT AGAINST LANDLORDS?

PROSPECTIVE JUROR LIM: YES.

MR. MOON: OKAY. OKAY. THAT'S ALL.

THE COURT: ALL RIGHT. PASS FOR CAUSE, PLAINTIFF?

MR. THEODOSIADIS: PASS, YOUR HONOR.

THE COURT: PASS.

PASS FOR CAUSE, MR. MOON?

MR. MOON: PASS.

THE COURT: ALL RIGHT. THE PEREMPTORIES ARE WITH THE DEFENDANT.

MR. MOON: THE WHAT?

THE COURT: YOU HAVE A PEREMPTORY CHALLENGE IF YOU WISH TO EXERCISE IT. DO YOU WISH TO EXERCISE ANY PEREMPTORY CHALLENGE TO ANY OF THE 12 POTENTIAL JURORS THAT HAVE BEEN QUESTIONED?

MR. MOON: YEAH. I BELIEVE TO -- WAS IT NO. 3?

THE COURT: YOU -- ALL RIGHT. MR. SACCONE? THANK YOU VERY MUCH. YOU ARE EXCUSED. PLEASE GO DOWN TO THE JURY ROOM ON THE SECOND FLOOR. AND, AGAIN, I REMIND EVERYONE, THIS IS NOT A REFLECTION ON ANYONE AT ALL.

ALL RIGHT. IF WE CAN CALL THE NEXT.

THE CLERK: JOSE DELATORRE IS OUR NEW NO. 3. JOSE DELATORRE.

THE COURT: ALL RIGHT, SIR. ONCE YOU'RE COMFORTABLE, IF YOU COULD GIVE US THE INFORMATION ON THE SHEET.

PROSPECTIVE JUROR DELATORRE: YES. MY NAME'S JOSE

DELATORRE.  MY AREA OF RESIDENCE IS HACIENDA HEIGHTS.  MY OCCUPATION IS A COOK.  MY MARITAL STATUS IS SINGLE.  AND NO TO ALL 13.

THE COURT:  ALL RIGHT.  PLAINTIFF MAY INQUIRE.

MR. THEODOSIADIS:  NOT AT THIS TIME, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. MOON, YOU MAY ASK QUESTIONS.

MR. MOON:  OF THE 12 QUESTIONS, WHICH QUESTIONS DID YOU ANSWER YES TO BECAUSE I CAN'T HEAR.

THE COURT:  THE ANSWER WAS NO TO EVERYTHING, SIR.

MR. MOON:  HE ANSWERED NO TO ALL OF THEM.

THE COURT:  THAT IS CORRECT.

MR. MOON:  OKAY.  HAVE YOU EVER BEEN A TENANT?

PROSPECTIVE JUROR DELATORRE:  NO TO ALL OF THEM.

THE COURT:  HE SAID NO TO ALL OF THEM AGAIN.

MR. MOON:  ARE YOU FAMILIAR WITH THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021, EXTENDED TO JANUARY 2022?

PROSPECTIVE JUROR DELATORRE:  NO.

MR. MOON:  OKAY.  ALL RIGHT.  THAT'S ALL.

THE COURT:  ALL RIGHT.  PASS FOR CAUSE?  PLAINTIFF?

MR. THEODOSIADIS:  PASS, YOUR HONOR.

THE COURT:  MR. MOON, PASS FOR CAUSE?

MR. MOON:  NO.  I'D LIKE TO CITE HIM FOR CAUSE.

THE COURT:  ALL RIGHT.  WE WILL CONVENE QUICKLY.  I WILL CALL YOU IN JUST ONE MOMENT, MR. MOON.

(A CONFERENCE WAS HELD IN CHAMBERS OFF THE RECORD.)

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT:)

MR. MOON: YES.

THE COURT: ALL RIGHT. YOU'RE BACK ON THE LINE. THANK YOU, MR. MOON. THAT WAS DENIED.

ALL RIGHT. PEREMPTORIES ARE WITH THE PLAINTIFF.

MR. THEODOSIADIS: NONE, YOUR HONOR.

THE COURT: ALL RIGHT. PASS.

MR. MOON, PEREMPTORIES ARE WITH YOU.

MR. MOON: NO. 3. IS THAT THE ONE I JUST --

THE COURT: MR. DELATORRE? DELATORRE?

PROSPECTIVE JUROR DELATORRE: OKAY.

THE COURT: ALL RIGHT. THANK YOU, SIR. YOU ARE EXCUSED. PLEASE REPORT TO THE JURY ROOM.

ALL RIGHT. IF WE COULD FILL SEAT NO. 3.

THE CLERK: VANESSA KECHICHIAN IS OUR NEW NO. 3. VANESSA KECHICHIAN.

THE COURT: ALL RIGHT. ONCE YOU'RE COMFORTABLE, IF YOU COULD GIVE US THAT INFORMATION OFF THE QUESTIONNAIRE, THAT WOULD BE APPRECIATED.

PROSPECTIVE JUROR KECHICHIAN: MY NAME IS VANESSA KECHICHIAN. I LIVE IN DUARTE, CALIFORNIA. I AM A NEW BUSINESS EXECUTIVE AND A PROPERTY MANAGER. I'M MARRIED. I DON'T HAVE ANY ADULT CHILDREN. MY HUSBAND IS AN ELECTRICAL ENGINEER AND ALSO A PROPERTY MANAGER. I DON'T HAVE ANY PRIOR JURY EXPERIENCE, NOR AM I (INDISCERNIBLE).

AND FOR QUESTIONS 1 THROUGH 13, I WOULD ANSWER YES TO 1, 2, 4 AND 6.

THE COURT: ALL RIGHT. THANK YOU.

PLAINTIFF MAY INQUIRE.

MR. THEODOSIADIS: NOT AT THIS TIME, YOUR HONOR.

THE COURT: ALL RIGHT. MR. MOON, YOU MAY INQUIRE.

MR. MOON: HAVE YOU EVICTED A TENANT BETWEEN DECEMBER 2019 TO PRESENT DAY?

PROSPECTIVE JUROR KECHICHIAN: NO.

MR. MOON: ARE YOU FAMILIAR WITH THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021, EXTENDED TO JANUARY 2022?

PROSPECTIVE JUROR KECHICHIAN: YES.

MR. MOON: OH. ARE YOU FAMILIAR WITH THE CALIFORNIA SENATE BILL 91 --

PROSPECTIVE JUROR KECHICHIAN: VAGUELY.

MR. MOON: -- EVICTION MORATORIUM?

PROSPECTIVE JUROR KECHICHIAN: VAGUELY.

MR. MOON: VAGUELY. OKAY. AND THEN TO 6. YOU SAID YES TO 6?

PROSPECTIVE JUROR KECHICHIAN: YES.

MR. MOON: YOUR BIASES -- PARDON ME?

PROSPECTIVE JUROR KECHICHIAN: I WAS JUST SAYING YES.

MR. MOON: YOUR BIAS IS TO WHAT? THE LANDLORD OR TO THE TENANT?

PROSPECTIVE JUROR KECHICHIAN: AS A LANDLORD IT WOULD BE TOWARDS LANDLORDS. I'M SORRY. I WOULD BE PARTIAL TO LANDLORDS AND BIASED TOWARDS TENANTS.

MR. MOON: OKAY. BUT YOU SAID YOU'RE VERY FAMILIAR WITH THE BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23, 2021.

PROSPECTIVE JUROR KECHICHIAN:  CORRECT.

MR. MOON:  OKAY.  THAT'S IT.

THE COURT:  ALL RIGHT.  PLAINTIFF PASS FOR CAUSE?

MR. THEODOSIADIS:  PASS, YOUR HONOR.

THE COURT:  MR. MOON, PASS FOR CAUSE?

MR. MOON:  PASS.

THE COURT:  ALL RIGHT.  PEREMPTORIES ARE BACK TO THE PLAINTIFF.

MR. THEODOSIADIS:  NONE, YOUR HONOR.

THE COURT:  THANK YOU.

MR. MOON, PEREMPTORIES ARE WITH YOU.

MR. MOON:  I'LL PASS.

THE COURT:  ALL RIGHT.  WE HAVE A JURY.  COULD WE SWEAR IN OUR FIRST 12 JURORS.

THE CLERK:  OKAY.  CAN I HAVE 1 THROUGH 12 PLEASE STAND UP, RAISE YOUR RIGHT HAND AND BE SWORN IN.

AN UNIDENTIFIED PROSPECTIVE JUROR:  CAN I ASK A QUESTION NOW ABOUT THE TIME?

THE CLERK:  YES.

AN UNIDENTIFIED PROSPECTIVE JUROR:  OKAY.  I'M ONLY PAID FIVE DAYS AND WITH THE AMOUNT OF STOPPING, ARE WE GOING TO BE DONE BY THE END OF THE WEEK DO YOU THINK?

THE COURT:  I BELIEVE WE WILL BE DONE BY THE END OF THE WEEK.  LET ME ASK PLAINTIFF COUNSEL.

YOU CONCUR?

MR. THEODOSIADIS:  I DO.

THE COURT:  AND MR. MOON?

MR. MOON:  NO, I DON'T AT THIS TIME.  I FILED --

Case 2:20-cv-02291-DOC-KES   Document 497   Filed 11/14/22   Page 165 of 250   Page ID #:15064

127

WELL, NO.  AT THIS TIME I DON'T BELIEVE WE'LL BE --

THE COURT:  MR. MOON, MR. MOON, PLEASE, PLEASE.

MR. MOON:  FOUR TO FIVE DAYS.  FOUR TO FIVE DAYS.

THE COURT:  I BELIEVE WE WILL BE DONE THIS WEEK.  I HAVE EVERY REASON BASED ON MY EXPERIENCE TO BELIEVE THAT.

AN UNIDENTIFIED PROSPECTIVE JUROR:  OKAY.  THANK YOU.

THE COURT:  OKAY.  PLEASE SWEAR IN OUR JURORS.

THE CLERK:  OKAY.  PLEASE RAISE YOUR RIGHT HANDS.

DO YOU AND EACH OF YOU UNDERSTAND AND AGREE THAT YOU WILL WELL AND TRULY TRY THE CAUSE NOW PENDING BEFORE THIS COURT AND A TRUE VERDICT RENDER ACCORDING ONLY TO THE EVIDENCE PRESENTED TO YOU AND TO THE INSTRUCTIONS OF THE COURT?  IF YOU UNDERSTAND AND AGREE, PLEASE ANSWER BY SAYING "I DO."

(THE JURORS ANSWERED IN THE AFFIRMATIVE.)

THE CLERK:  THANK YOU.  PLEASE BE SEATED.

THE COURT:  ALL RIGHT.  AT THIS TIME WE WILL BE SELECTING ONE ALTERNATE.  WOULD YOU PLEASE CALL THE NEXT IN ORDER AS ALTERNATE NO. 1.

THE CLERK:  ALTERNATE NO. 1 WILL BE DANIEL LIPSHUTZ (PHONETIC).

PROSPECTIVE JUROR LIPSHUTZ:  WHERE DO I STAND?

THE COURT:  YOU CAN STAY RIGHT WHERE YOU ARE.

PROSPECTIVE JUROR LIPSHUTZ:  ALL RIGHT.

THE COURT:  OKAY.

PROSPECTIVE JUROR LIPSHUTZ:  I'LL SPEAK LOUDLY.

THE COURT:  THANK YOU.

PROSPECTIVE JUROR LIPSHUTZ:  SO MR. MOON CAN HEAR

ME.

THE COURT: ALL RIGHT IF YOU COULD GIVE US THE INFORMATION ON THE QUESTIONNAIRE.

PROSPECTIVE JUROR LIPSHUTZ: YES. MY NAME IS DANIEL LIPSHUTZ. I LIVE IN BRENTWOOD. I'M A REAL ESTATE AGENT. I'M SINGLE. NO KIDS. I'VE NEVER BEEN IN THE COURT. HAVE BEEN CALLED IN FOR JURY DUTY BUT I NEVER GOT SELECTED. QUESTIONS 1 THROUGH 13: YES TO NO. 2. YES TO NO. 6. POTENTIALLY TO NO. 8. YES TO 9. YES TO 10. YES TO 12. 100 PERCENT YES TO 13.

THE COURT: I THINK YOU WIN. I THINK YOU HAD THE MOST YES ANSWERS I'VE EVER HEARD.

PROSPECTIVE JUROR LIPSHUTZ: I'M JUST FINDING YESES AS THIS HAS GONE ON.

THE COURT: ALL RIGHT.

PROSPECTIVE JUROR LIPSHUTZ: I'M BEING HONEST.

THE COURT: THANK YOU. I KNOW.

PLAINTIFF MAY INQUIRE.

MR. THEODOSIADIS: NOT AT THIS TIME, YOUR HONOR.

THE COURT: ALL RIGHT. MR. MOON, YOU MAY INQUIRE.

MR. MOON: YES TO NO. 2. HAVE YOU EVICTED A TENANT --

PROSPECTIVE JUROR LIPSHUTZ: MR. MOON, I'M NOT --

MR. MOON: -- SINCE DECEMBER 2019?

PROSPECTIVE JUROR LIPSHUTZ: I'M NOT A PROPERTY OWNER. I AM -- I DON'T OWN ANY PROPERTY, OKAY? I'M A REAL ESTATE AGENT.

AND I'M GOING TO BE QUITE HONEST WITH YOU. I AM NOT

HAPPY WITH HOW THIS IS GOING, SO TO BE HONEST FOR NO. 13, I'VE ALREADY MADE UP MY DECISION.

MR. MOON:  OKAY.  WELL, IF YOU DON'T WANT TO BE HERE, I DON'T HAVE A PROBLEM WITH IT.  WE GOING TO GET YOU FOR CAUSE THEN.

I'D LIKE TO CITE HIM FOR CAUSE, YOUR HONOR.

THE COURT:  ARE YOU FINISHED?  ARE YOU FINISHED WITH YOUR --

MR. MOON:  I MEAN --

THE COURT:  MR. MOON?  ALL RIGHT.  OKAY.

MR. MOON:  WELL, HE SAID --

THE COURT:  ANYTHING FURTHER?  ANYTHING FURTHER?

MR. MOON:  HE SAID --

MR. THEODOSIADIS:  NO.

MR. MOON:  HE SAID YES TO NO. 6.  I NEED TO KNOW WHAT HIS BIAS IS.  IT IS TOWARDS THE LANDLORD OR TOWARDS THE TENANT?

THE COURT:  MR. LIPSHUTZ, I'M GOING TO EXCUSE YOU FOR CAUSE.  THANK YOU.  THANK YOU FOR BEING HONEST.

PROSPECTIVE JUROR LIPSHUTZ:  THANK YOU.

THE COURT:  IT'S GREATLY APPRECIATED.

PROSPECTIVE JUROR LIPSHUTZ:  WHERE AM I GOING?

THE COURT:  SECOND FLOOR JURY ROOM.  WHEN YOU GO DOWN THE ELEVATOR IT WILL BE JUST ALMOST IN FRONT OF YOU BUT A LITTLE OFF TO THE RIGHT.

PROSPECTIVE JUROR LIPSHUTZ:  THANK YOU.

THE COURT:  THANK YOU, SIR.

PROSPECTIVE JUROR LIPSHUTZ:  GOOD LUCK.

THE CLERK: JOSHUA OZIMA (PHONETIC) IS OUR NEW ALTERNATE NO. 1.

PROSPECTIVE JUROR OZIMA: ALL RIGHT. JOSHUA OZIMA'S THE NAME. I LIVE IN TORRANCE. PROGRAM MANAGER. SINGLE. LET'S SEE. NO ADULT CHILDREN. I HAVE CRIMINAL AND CIVIL EXPERIENCE. THERE WAS A VERDICT. NO TO 8. YES TO 2 AND YES TO 13.

THE COURT: ALL RIGHT. THANK YOU.

PLAINTIFF MAY INQUIRE.

MR. THEODOSIADIS: NOT AT THIS TIME, YOUR HONOR.

THE COURT: ALL RIGHT. MR. MOON, YOU MAY INQUIRE.

MR. MOON: HE SAID YES TO 2. THAT MEANS HE OWNS RENTAL PROPERTY, RIGHT?

THE COURT: NO, SIR. THE QUESTION NO. 2 IS HAVE YOU EVER BEEN A TENANT IN RENTAL PROPERTY?

MR. MOON: YES. HAVE YOU EVER PLACED AN EVICTION --

PROSPECTIVE JUROR OZIMA: I'VE ONLY BEEN A TENANT.

MR. MOON: -- ACTION?

THE COURT: HE SAID --

MR. MOON: PARDON ME?

THE COURT: -- HE'S ONLY BEEN A TENANT, SIR.

MR. MOON: OKAY. AND NEVER BEEN INVOLVED IN AN EVICTION CASE.

PROSPECTIVE JUROR OZIMA: NO.

THE COURT: HIS ANSWER WAS NO.

MR. MOON: SO OKAY. AND ARE YOU FAMILIAR WITH THE BOARD OF - L.A. COUNTY'S BOARD OF SUPERVISORS EVICTION

MORATORIUM ORDER OF FEBRUARY 23, 2021, EXTENDED TO JANUARY 2022?

PROSPECTIVE JUROR OZIMA: NO.

MR. MOON: NO. OKAY. THAT'S IT.

THE COURT: ALL RIGHT. PASS FOR CAUSE, PLAINTIFF?

MR. THEODOSIADIS: PASS, YOUR HONOR.

THE COURT: PASS FOR CAUSE, MR. MOON?

MR. MOON: I'LL PASS.

THE COURT: ALL RIGHT. PEREMPTORIES ARE WITH THE PLAINTIFF. EACH SIDE HAS ONE AS TO AN ALTERNATE.

MR. THEODOSIADIS: PASS, YOUR HONOR.

THE COURT: ALL RIGHT, MR. MOON. PEREMPTORIES ARE WITH YOU.

MR. MOON: I WILL USE IT ON, I GUESS, THIS GUY RIGHT -- JUROR NO. 3. I MEAN, LET'S SEE. THE ALTERNATE. I'LL USE IT.

THE COURT: MR. OZIMA? ALL RIGHT. THANK YOU, SIR. YOU ARE EXCUSED. PLEASE GO TO THE JURY ROOM.

IF WE COULD GET OUR NEXT.

THE CLERK: LUCINI NAZARIAN (PHONETIC) IS OUR NEW POTENTIAL ALTERNATE NO. 1.

MR. THEODOSIADIS: I'M SORRY. WHAT WAS THE NAME?

THE CLERK: LUCINI NAZARIAN.

PROSPECTIVE JUROR NAZARIAN: YEAH. RIGHT HERE.

MY NAME IS LUCINE NAZARIAN. I WAS A TEACHER. NOW I'M A HOMEMAKER. I AM MARRIED. MY HUSBAND'S OCCUPATION IS HE JUST RETIRED, BUT HE WAS A BUILDING OFFICIAL OF OUR CITY. I LIVE IN PASADENA FOR 22 YEARS. I DO HAVE TWO ADULT SONS, AND

THEY OWN THEIR OWN BUSINESS HERE IN DEVELOPMENT AND CONSTRUCTION.  I'VE NEVER HAD THE JURY EXPERIENCE, AND I DON'T KNOW ANYONE HERE.  I'M NOT FAMILIAR WITH ANYONE THAT'S ON THE LIST.

SO MY ANSWER IS YES TO NO. 1.  YES TO NO. 2.  YES TO NO. 3.  YES TO NO. 6.  YES TO NO. 10 AND 13.

THE COURT:  THANK YOU.  PLAINTIFF MAY INQUIRE.

MR. THEODOSIADIS:  NOT AT THIS TIME, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. MOON, YOU MAY INQUIRE.

MR. MOON:  AS A TENANT HAVE YOU EVER FACED AN EVICTION ACTION?

PROSPECTIVE JUROR NAZARIAN:  AS A LANDLORD OR AS A TENANT?

MR. MOON:  AS A LANDLORD FIRST.

PROSPECTIVE JUROR NAZARIAN:  YES.

MR. MOON:  DID YOU DO AN EVICTION BETWEEN DECEMBER 1ST, 2019 AND --

PROSPECTIVE JUROR NAZARIAN:  NO.

MR. MOON:  AND PRESENT DAY?

PROSPECTIVE JUROR NAZARIAN:  NO.

MR. MOON:  ARE YOU FAMILIAR WITH THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM --

PROSPECTIVE JUROR NAZARIAN:  VAGUELY.

MR. MOON:  -- ORDER OF FEBRUARY 23RD?

THE COURT:  HER RESPONSE --

MR. MOON:  ARE YOU FAMILIAR WITH -- PARDON ME?

THE COURT:  HER RESPONSE WAS "VAGUELY."  YES, THANK YOU.

MR. MOON:  ARE YOU FAMILIAR WITH THE CALIFORNIA SENATE BILL 91 EVICTION MORATORIUM?

PROSPECTIVE JUROR NAZARIAN:  YES.  VAGUELY.

MR. MOON:  YES?  AS A TENANT, HAVE YOU EVER FACED AN EVICTION ACTION?

PROSPECTIVE JUROR NAZARIAN:  NO.

MR. MOON:  OKAY.  THAT'S IT.  ALL RIGHT.  NO. 6, YOU STATED A BIAS?  IS IT TOWARDS THE LANDLORD OR --

PROSPECTIVE JUROR NAZARIAN:  YEAH, AS A LANDLORD.

MR. MOON:  YOU SAID YES ON -- YOU'RE BIASED TO THE LANDLORD OR AGAINST THE LANDLORD?

PROSPECTIVE JUROR NAZARIAN:  I'M ON THE LANDLORD'S SIDE.

MR. MOON:  OKAY.  EVEN THROUGH COVID TIMES?

PROSPECTIVE JUROR NAZARIAN:  WHAT DID HE SAY?

THE COURT:  EVEN IN COVID TIMES IS WHAT I HEARD.

PROSPECTIVE JUROR NAZARIAN:  YES.  YES.

MR. MOON:  OKAY.  THAT'S IT.

THE COURT:  ALL RIGHT.  PLAINTIFF PASS FOR CAUSE?

MR. THEODOSIADIS:  PASS, YOUR HONOR.

THE COURT:  MR. MOON?

MR. MOON:  YEAH, I'D LIKE TO CHALLENGE FOR CAUSE.

THE COURT:  ALL RIGHT.  I'D LIKE TO CONVENE IN CHAMBERS, SO WE'LL GO OFF THE RECORD IN THE COURTROOM FOR A MOMENT.

(A CONFERENCE WAS HELD IN CHAMBERS OFF THE RECORD.)

(THE FOLLOWING PROCEEDINGS WERE HELD IN THE PRESENCE OF THE JURY:)

THE COURT: ALL RIGHT. THANK YOU, MS. NAZARIAN. I'M GOING TO EXCUSE YOU. PLEASE REPORT DOWNSTAIRS TO THE JURY ROOM.

WE WILL CALL THE NEXT.

THE CLERK: ANGEL ORTIZ IS OUR NEW POTENTIAL ALTERNATE NO. 1.

PROSPECTIVE JUROR ORTIZ: GOOD MORNING. I'M ANGEL ORTIZ. I LIVE IN NORTH HILLS. I'M A RETAIL EMPLOYEE. RETAIL FOOD CLERK. MARRIED. I HAVE CHILDREN, MINORS. WIFE STAY AT HOME. I'VE HAD PRIOR JURY EXPERIENCE, CRIMINAL AND CIVIL (INDISCERNIBLE) AND VERDICTS WERE. I'M NOT ACQUAINTED WITH ANYBODY ON THE LIST IN THIS CASE. I HAVE YES ANSWERS TO NO. 2 AS A TENANT. I HAVE YES ANSWERS TO NO. 3. AND THAT'S ALL. OH, NO ANSWERS ON THE REST. SORRY.

THE COURT: THANK YOU. VERY GOOD. THANK YOU, SIR.

PLAINTIFF MAY INQUIRE.

MR. THEODOSIADIS: WITH RESPECT TO NO. 3, YOU WERE INVOLVED IN AN UNLAWFUL DETAINER ACTION. HOW LONG AGO WAS THAT?

PROSPECTIVE JUROR ORTIZ: ALL THESE UNLAWFUL DETAINER LAWSUITS HAPPENED WHILE I WAS A MINOR, UNDERAGE. UNDER 18.

MANY TIMES GROWING UP WE MOVED A LOT OF TIMES AND HAD TO HAVE EXPERIENCES IN COURT AND ALL THE PROCEEDINGS. WHEN I WAS SMALL, I WOULDN'T UNDERSTAND MUCH, BUT I'M FAMILIAR WITH IT AS THE YEARS WENT BY.

MR. THEODOSIADIS: DO YOU REMEMBER WHAT THE BASIS OF THE UNLAWFUL DETAINER ACTIONS WERE?

PROSPECTIVE JUROR ORTIZ:  THEY WOULD BE LACK OF PAYING RENT.  MY MOM WAS A SINGLE PARENT.  SHE TRIED AS HARD AS SHE COULD TO MAINTAIN, YOU KNOW, A HOUSEHOLD, BUT IT WAS VERY HARD.  IT WOULD ALWAYS END UP IN COURT IN SOME MANNER.

NOTHING NEGATIVE CAME OUT OF THOSE EXPERIENCES. JUST I FEEL YOU'RE ACQUAINTED WITH THE PROCESSES AND ALL THAT STUFF, AND ALSO YOU SEE THE HUMANITY OF, SAY, THE JUDGES, THE LAWYERS AND EVERYBODY INVOLVED.  SO YOU GET A SENSE OF THEIR VARIOUS GOOD -- YOU KNOW, THERE IS GOOD OUT OF THAT PROCESS EVEN THOUGH THE LAW HAS TO BE FOLLOWED.

THE VERDICT WOULD END UP IN EVICTIONS, OF COURSE, AND WE'D HAVE TO MOVE OUT BUT -- YES.

MR. THEODOSIADIS:  FROM WHAT I UNDERSTAND YOU'RE SAYING THAT THIS HASN'T CAUSED A BIAS IN ANY WAY.

PROSPECTIVE JUROR ORTIZ:  SO THIS IS THE FIRST EXPERIENCE THAT I HAVE WITH THE CASE WHERE THE CASE INVOLVES A PROPERTY AND RENTAL AND TENANTS, PROPERTY OWNERS AND TENANT, AND IT JUST BROUGHT BACK FEELINGS.  IT BROUGHT BACK THOSE -- THE SADNESS OF HAVING TO MOVE AND STUFF LIKE THAT.  NEVER HAVING A SET PLACE GROWING UP.

ON THE OTHER HAND, YOU UNDERSTAND ALSO THE SIDE OF THE PROPERTY OWNERS.  IT'S THEIR RIGHT, OF COURSE, AND IT'S THEIR MONEY.

GROWING UP, ONCE I BECAME A TENANT WHERE THE RENT CAME OUT OF MY POCKET, I'VE BEEN ON TIME ALL THE TIME.  THE RESPONSIBILITY AS A TENANT HAS ALWAYS BEEN THERE FOLLOWING, SAY, THE GUIDELINES OF THE RENTAL AGREEMENT AND FOLLOWING THE -- FOLLOWING THE ORDERS OR WHATEVER THAT ARE IN THE

AGREEMENT TO BE A GOOD TENANT.

BUT MAINLY I PERSONALLY PAY MY RENT AT LEAST 15 DAYS BEFORE THE DEADLINE JUST TO SHOW THAT OUT OF SOMETHING NEGATIVE SOMETHING POSITIVE CAN COME BACK.  AND THERE'S THAT VALUES.  DEFINE THE VALUES IN LIFE.

MR. THEODOSIADIS:  OKAY.  THANK YOU.

THE COURT:  ALL RIGHT.  MR. MOON, YOU MAY INQUIRE.

MR. MOON:  OF THE 13 QUESTIONS, WHICH QUESTIONS DID YOU ANSWER YES TO?

PROSPECTIVE JUROR ORTIZ:  NO. 2 AS A TENANT AND NO. 3 AS BEING INVOLVED IN AN UNLAWFUL DETAINER LAWSUIT.

MR. MOON:  AS A TENANT OR AS A DEFENDANT?  I MEAN AS A LANDLORD.

PROSPECTIVE JUROR ORTIZ:  AS A TENANT.

MR. MOON:  OH.  WAS IT BETWEEN DECEMBER 1ST, 2019, AND PRESENT DAY?

PROSPECTIVE JUROR ORTIZ:  NO, SIR.

MR. MOON:  OKAY.  NO OTHER QUESTIONS.

THE COURT:  ALL RIGHT.  THANK YOU.

PLAINTIFF, PASS FOR CAUSE?

MR. THEODOSIADIS:  PASS, YOUR HONOR.

THE COURT:  THANK YOU.  MR. MOON, DO YOU PASS FOR CAUSE?

MR. MOON:  PASS.

THE COURT:  ALL RIGHT.

MR. THEODOSIADIS:  THERE'S ONE PEREMPTORY, RIGHT?

THE COURT:  YES.  PLAINTIFF HAS THE PEREMPTORIES.

MR. THEODOSIADIS:  NONE.

THE COURT: ALL RIGHT. SIR, WE HAVE AN ALTERNATE. WOULD YOU PLEASE BE SWORN IN?

THE CLERK: DO YOU UNDERSTAND AND AGREE THAT YOU WILL WELL AND TRULY TRY THE CAUSE NOW PENDING BEFORE THIS COURT AS AN ALTERNATE JUROR AND A TRUE VERDICT RENDER ACCORDING ONLY TO THE EVIDENCE PRESENTED TO YOU AND TO THE INSTRUCTIONS OF THE COURT?

ALTERNATE JUROR ORTIZ: I DO AGREE.

THE CLERK: THANK YOU. PLEASE BE SEATED.

THE COURT: ALL RIGHT, LADIES AND GENTLEMEN, WE NOW HAVE OUR 12 JURORS AND 1 ALTERNATE. WHAT THAT MEANS IS THOSE OF YOU REMAINING, YOU ARE NOW EXCUSED. THANK YOU FOR YOUR SERVICE. I'M SURE YOU'RE DISAPPOINTED THAT YOU DIDN'T MAKE IT ALL THE WAY UP.

IN ANY EVENT, PLEASE GO TO THE JURY ROOM, SECOND FLOOR. THEY WILL TAKE CARE OF YOUR CHECKOUT AND SO ON. AND THANK YOU AGAIN. EVEN THOUGH YOU'RE NOT GOING TO DECIDE ANYTHING, YOU DID SERVE, AND WE APPRECIATE IT.

ALL RIGHT.

THE CLERK: THANK YOU.

THE COURT: OKAY. LADIES AND GENTLEMEN, RIGHT ON TIME. IT'S 10:15 SO WE ARE GOING TO TAKE OUR MORNING BREAK. FIFTEEN MINUTES. COME BACK -- ACTUALLY IT'S LIKE 10:13. COME BACK AT 10:30. GIVE YOU A COUPLE EXTRA MINUTES.

WHEN YOU COME BACK, WE WILL BE STARTING SORT OF INTO THE MEAT OF THE CASE. I WILL GIVE YOU SOME INSTRUCTIONS ON HOW YOU GO ABOUT BEING JURORS, AND THEN YOU WILL START HEARING FROM THE ATTORNEYS AND THE PARTIES ABOUT THE CASE.

SO PLEASE RELAX.  REMEMBER DON'T DISCUSS ANYTHING ABOUT THIS CASE.  YOU HAVEN'T HEARD ANY EVIDENCE.  I DON'T WANT YOU TO FORM ANY OPINIONS YET.  BUT JUST RELAX FOR A FEW MINUTES.  THANK YOU.

(THE FOLLOWING PROCEEDINGS WERE HELD

OUT OF THE PRESENCE OF THE JURY:)

THE COURT:  THE ONLY PEOPLE IN THE COURT: PLAINTIFF, PLAINTIFF'S COUNSEL, MYSELF AND STAFF.

IS THERE ANYTHING THAT THE PARTIES NEED TO BRING TO MY ATTENTION THAT WE NEED TO ADDRESS AT THIS POINT?  MR. -- I'M SORRY.  PLAINTIFF?

MR. THEODOSIADIS:  NOT THAT I'M AWARE OF, YOUR HONOR.

THE COURT:  OKAY.  MR. MOON?

MR. MOON:  YES, YOUR HONOR.  THE MOTION IN LIMINE?

THE COURT:  YES, YOU ARE CORRECT.

MR. MOON:  OKAY.  ALSO I FILED SOME DOCUMENTS, AND I'M TRYING TO -- WELL, I'M TRYING TO FIND YOUR EMAIL SO I CAN SEND THEM TO YOU.  I'VE ALREADY SENT THEM TO OPPOSING COUNSEL.

AND THEN THE OTHER THING REGARDING THIS ME BEING PRESENT IN COURT, I'M TRYING TO FIND OUT IF THERE IS A WARRANT GENERATED FOR MY ARREST, BUT CAN WE ISSUE AN ORDER THAT I CAN'T BE ARRESTED IF I COME INTO YOUR COURTROOM FOR THIS JURY TRIAL?

THE COURT:  THE ANSWER TO THAT QUESTION IS NO.  I WILL NOT INTERFERE.  THIS COURT HAS NO KNOWLEDGE ONE WAY OR THE OTHER AS TO WHETHER THERE ARE ARREST WARRANTS FOR YOU. THIS IS NOT A CRIMINAL COURT.  I HAVE NO INVOLVEMENT ON THAT

ASPECT OF THE LAW. BUT, NO, THIS COURT CANNOT ISSUE AN ORDER THAT WOULD PREVENT THE LAWFUL EXERCISE OF AN ARREST WARRANT IF ONE EXISTS. AND I HAVE NOTHING, I HAVE NO INFORMATION ONE WAY OR THE OTHER.

AS FAR AS THIS COURT IS CONCERNED, I'VE MADE IT CLEAR YOU'RE CERTAINLY WELCOME TO COME TO COURT AND PARTICIPATE. YOU MADE THE REQUEST TO PARTICIPATE REMOTELY WHICH I GRANTED.

MR. MOON: OKAY. NOW, THE OTHER THING THAT I WANT TO ADDRESS IS, LIKE, I'VE INQUIRED, MY EXHIBIT LIST IS ENTIRE CASES, ACTUALLY FIVE -- SIX CASES WHICH I'VE ASKED THE CLERK'S OFFICE TO GENERATE THOSE DOCUMENTS. I HAVE A FEE WAIVER SO IT DOESN'T COST ME ANYTHING.

BUT, LIKE I SAID, I SUBPOENAED ABOUT 27 PEOPLE. AND I WANT AN ORDER BECAUSE I WANT TO TREAT THEM AS HOSTILE WITNESSES BECAUSE (INDISCERNIBLE) THEY HAVE NOT CONFORMED OR HAVE BEEN IN CONTEMPT OF THE SUBPOENAS TO BE PRESENT --

THE COURT: MR. MOON?

MR. MOON: -- AND --

THE COURT: MR. MOON, WE WILL TAKE THAT UP, AND I WILL BE HAPPY, BUT THE VIEW OF THIS COURT IS THAT WITH RESPECT TO ANY WITNESS THAT YOU CALLED THAT IS NOT PRESENT, THIS COURT WILL BE DEMANDING THAT YOU MAKE AN OFFER OF PROOF AS TO WHAT RELEVANT AND ADMISSIBLE EVIDENCE THEY HAVE SUCH THAT THE COURT SHOULD ALLOW YOU TO CALL THEM AS A WITNESS.

I WILL BE QUITE CANDID. YOUR LIST DID NOT MAKE SENSE TO THIS COURT. IT IS UNLIKELY THAT THE WITNESSES YOU HAVE LISTED HAVE KNOWLEDGE RELEVANT TO THIS CASE. BUT AS I

SAID, AND I'M GIVING YOU WARNING NOW, PLEASE BE PREPARED TO --

MR. MOON:  WELL --

THE COURT:  -- EXPLAIN TO THE COURT WHAT RELEVANT ADMISSIBLE EVIDENCE YOU BELIEVE THEY WILL HAVE.

MR. MOON:  WELL, CAN WE DO A PRETRIAL JURY TRIAL MOTION SO I CAN GET THAT STRAIGHT SO WE WON'T HAVE TO WORRY ABOUT --

THE COURT:  WE WILL TAKE IT UP AT THE NEXT BREAK, OKAY?  UNLESS IF YOU'RE PREPARED TO GO THROUGH THE WITNESSES NOW, WE CAN DO IT NOW, BUT I WANT TO GET TO YOUR IN LIMINE MOTION.

THE MOTION THAT -- I'M TRYING TO FIND A UNIQUE PART OF THE TITLE.  OKAY.  IT'S MOTION IN LIMINE NO. 1 --

MR. MOON:  IT'S A MOTION IN --

THE COURT:  PLEASE BE QUIET FOR A MOMENT, SIR.

MOTION IN LIMINE NO. 1 FOR ORDERS TO BAR WITNESS, PLAINTIFF, CRIMINAL AND CROSS-DEFENDANT LEAH WHETSTONE FROM TESTIFYING AT JURY TRIAL AND SUBMITTING FRAUDULENT EVIDENCE PURSUANT TO THE DOCTRINE OF COLLATERAL ESTOPPEL AND PRINCIPLE OF RES JUDICATA.  THAT IS DENIED.

ALL RIGHT.  MR. MOON, DID YOU WANT AT THIS TIME TO GO THROUGH YOUR WITNESS LIST AND TELL ME THE BASIS FOR CALLING -- BELIEVING THESE PEOPLE HAVE ADMISSIBLE EVIDENCE? IF YOU'RE PREPARED TO DO IT NOW WE CAN BEGIN TO DO IT AT THIS POINT IN TIME.

MR. MOON:  OKAY.  ARE WE ON THE RECORD?

THE COURT:  YES, WE'RE ON THE RECORD BUT NO JURORS ARE PRESENT.

MR. MOON: OKAY. OKAY. WELL, THEN I'D LIKE TO MAKE ANOTHER REQUEST TO STAY THE JURY TRIAL BASED ON THE FACT THAT WE HAVEN'T COMPLETED DISCOVERY AND THE DETERMINATION OF YOUR DISQUALIFICATION. DEFENDANT VICTOR G. VIRAMONTES AND JOEL L. LOFTON'S DISQUALIFICATION HAS NOT BEEN DETERMINED BY ANOTHER JUDGE WHICH IS SET TO BE HEARD ON NOVEMBER 23RD.

AND THEN THERE'S ALSO A DISCOVERY MOTION THAT'S BEEN SET TO BE HEARD ON MAY -- NOVEMBER 25TH.

THE COURT: ALL RIGHT. SIR, THE MOTION -- THE MOTION TO STAY AND CONTINUE THE TRIAL IS DENIED.

NOW, DID YOU WANT TO GO THROUGH YOUR WITNESSES NOW AND MAKE AN OFFER OF PROOF AS TO WHAT RELEVANCE TO THE CASE THEY WOULD TESTIFY TO?

MR. MOON: LET'S START OFF WITH THE FIRST PLAINTIFF --

THE COURT: YOU DON'T NEED TO -- SHE'S HERE. SHE'S GOING TO TESTIFY, SO DON'T WASTE YOUR TIME TELLING ME ON THAT BECAUSE I WON'T NEED TO RULE.

WHO'S THE NEXT ONE? DOROTHEA BROOKS?

MR. MOON: PLAINTIFF (INDISCERNIBLE).

THE COURT: SHE IS GOING TO TESTIFY.

MR. MOON: COURT ORDER -- WHO?

THE COURT: MS. WHETSTONE.

MR. MOON: WHO?

THE COURT: MS. WHETSTONE.

MR. MOON: OKAY. WHAT ABOUT BROOKS? IS BROOKS -- I JUST SENT A SUBPOENA TO THE ATTORNEY --

THE COURT: ALL RIGHT. MR. MOON? MR. MOON, PLEASE,

LISTEN AND BE RESPONSIVE.  WITH REGARD TO DOROTHEA BROOKS, WHY IS SHE A WITNESS THAT WOULD PROVIDE ADMISSIBLE RELEVANT EVIDENCE?

MR. MOON:  BECAUSE, NUMBER ONE, SHE STATES THAT SHE DOESN'T WANT ME TO MOVE BECAUSE HER DAUGHTER -- SHE'S CO-OWNER OF THE PROPERTY -- BECAUSE HER DAUGHTER WANTS TO EVICT ME BECAUSE I WON'T HAVE SEXUAL RELATIONSHIPS WITH HER.  AND THEN ALSO, LIKE I SAID, SHE'S IN AGREEMENT THAT I SHOULDN'T HAVE BEEN EVICTED OR AN EVICTION PLACE --

THE COURT:  WHO IS MS. BROOKS?  WHO IS MS. BROOKS?

MR. MOON:  MS. LEAH WHETSTONE'S MOTHER AND CO-OWNER OF THE PROPERTY IN QUESTION.

THE COURT:  SO SHE WOULD TESTIFY TO THE THINGS YOU JUST TOLD ME ABOUT?  IS THAT WHAT YOU'RE SAYING?

MR. MOON:  YEAH, THAT, YOU KNOW, THERE ARE A MULTITUDE AND PERJURY OF HER DAUGHTER, LEAH WHETSTONE, PLAINTIFFS.

THE COURT:  ALL RIGHT.  LET ME ASK PLAINTIFF.  SHE IS YOUR MOTHER?

MS. WHETSTONE:  YES.

THE COURT:  HAS SHE BEEN SUBPOENAED?

MS. WHETSTONE:  NO.

THE COURT:  SHE HAS NOT BEEN SERVED?

MS. WHETSTONE:  NO.

THE COURT:  ALL RIGHT.  WELL, WE'LL HAVE TO CROSS THAT BRIDGE IF AND WHEN WE GET THERE, MR. MOON.  OBVIOUSLY --

MR. MOON:  SHE WAS SERVED, AND THEODORE WILL PROBABLY RECEIVE AS SOON AS -- I GUESS AT LUNCHTIME SO THEN I

CAN GO AND SCAN EVERYTHING TO HIM, BUT IT IS FILED WITH THE COURT SO --

THE COURT:  MR. MOON?  MR. MOON, HAVE YOU ALREADY SERVED DOROTHEA BROOKS WITH A SUBPOENA TO COME TESTIFY?

MR. MOON:  I WILL AS SOON AS I GET TO A -- I WILL DO IT AT 12:00.  BECAUSE SHE HAS A RESTRAINING ORDER ON ME, I HAVE TO GO THROUGH HER ATTORNEY WHICH IS THEODORE HERE.  SO I WILL EMAIL HIM AND SEND IT IN THE MAIL BUT --

THE COURT:  OKAY.  ALL RIGHT.

MR. MOON:  I WILL SEND IT --

THE COURT:  OKAY.  LET'S MOVE ON.  LET'S MOVE ON. KELLY WHITFIELD.  CAN YOU TELL ME --

MR. MOON:  KELLY WHITFIELD IS THE GRANDDAUGHTER OF MS. BROOKS, AND SHE CAN ATTEST TO THE SAME THING AND REGARDING SOME RESTRAINING ORDERS THAT THEY FRIVOLOUSLY AND FRAUDULENTLY FILED, AND SHE WISHES THAT I NOT BE REMOVED FROM HER GRANDMOTHER'S --

THE COURT:  HAS KELLY WHITFIELD BEEN SERVED A SUBPOENA TO COME TESTIFY?

MR. MOON:  SHE WILL BE SERVED TO HER ATTORNEY THEODORE THEODOSIADIS BY 12:00, BUT IT HAS BEEN FILED BECAUSE, YOU KNOW --

THE COURT:  ALL RIGHT.  THAT'S FINE.  THANK YOU, SIR.

MR. MOON:  -- THE EMAIL, BOTH OF THEM, I WILL --

THE COURT:  OKAY.  THANK YOU.  THE NEXT ONE IS PLAINTIFF'S COUNSEL.  CAN YOU TELL ME WHAT RELEVANT AND ADMISSIBLE EVIDENCE YOU BELIEVE HE WILL PROVIDE?  HE IS IN

COURT, AND I ASSUME HE INTENDS TO REMAIN IN COURT.  BUT THE LAW GENERALLY -- THE LAW FROWNS ON TRYING TO TURN YOUR OPPONENT'S ATTORNEY INTO A WITNESS AGAINST THE CLIENT.  SO WHAT IS IT YOU BELIEVE HE WILL TESTIFY TO THAT IS NOT PRIVILEGED AND IS OTHERWISE RELEVANT AND ADMISSIBLE?

MR. MOON:  THAT THIS CASE SHOULD HAVE BEEN DISMISSED BY WAY OF MOTION (INDISCERNIBLE), BY MOTION OF DISMISSAL.

THE COURT:  OKAY.

MR. MOON:  BY VIOLATIONS OF THE LOS ANGELES COUNTY BOARD OF SUPERVISORS MORATORIUM ORDER OF FEBRUARY 23RD, 2021, EXTENDED TO --

THE COURT:  ALL RIGHT.  THANK YOU.

MR. MOON:  -- JANUARY 2022.

THE COURT:  OKAY.  THANK YOU.  HAS HE BEEN SERVED WITH A SUBPOENA?

MR. MOON:  HE WILL BE BY 12:00 VIA EMAIL AND MAIL.

THE COURT:  OKAY.  NEXT WITNESS IS JOEL LOFTON.  I ASSUME THAT IS JUDGE LOFTON, CORRECT?

MR. MOON:  JUDICIAL OFFICER.

THE COURT:  YES.

MR. MOON:  AND CROSS-DEFENDANT, YES.

THE COURT:  OKAY.  NEXT ONE, SAMANTHA HOLMAN.  IS THAT THE COURT CLERK?

MR. MOON:  YES.  SHE'S THE JUDICIAL ASSISTANT WHO, LIKE I SAID, MAINTAINED THIS FRIVOLOUS UNLIMITED UNLAWFUL DETAINER --

THE COURT:  ALL RIGHT.  THANK YOU.

MR. MOON:  -- IN VIOLATION OF --

THE COURT:  AND WAS SHE SERVED A SUBPOENA?

MR. MOON:  YES.  SHE WAS SERVED ON COURT COUNSEL WHICH (INDISCERNIBLE) COURT COUNSEL ON THE 5TH FLOOR THAT IF YOU HAVE ANY, YOU KNOW, LITIGATION AGAINST ANY EMPLOYEE OF THE COURTHOUSE THAT ALL YOU HAVE TO DO IS SERVE IT ON THEM, AND THEN THEY WILL INQUIRE TO THE INDIVIDUAL WHETHER OR NOT THEY WANT COURT COUNSEL TO REPRESENT THEM --

THE COURT:  BUT YOU HAVE SERVED HER BECAUSE OF HER ROLE AS THE JUDICIAL ASSISTANT IN THE COURTROOM OF JUDGE LOFTON?  AM I CORRECT ON THAT?  AND THAT'S WHERE HER KNOWLEDGE COMES?

MR. MOON:  WELL, LIKE I SAID, THEY PARTICIPATED CRIMINALLY, AND SHE CAN ATTEST TO THAT BECAUSE, YOU KNOW, THEY LEFT ON NOT-SO-GOOD TERMS BECAUSE APPARENTLY THEY WERE HAVING A RELATIONSHIP, SEXUAL RELATIONSHIP IN THE COURTROOM AND SO --

THE COURT:  ALL RIGHT.  AND THE NEXT WITNESS, SIR, IS DAVID JULIAN COWAN.  IS THAT JUDGE COWAN IN THIS COURTHOUSE?

MR. MOON:  YEAH.  THAT'S --

THE COURT:  OKAY.  ALL RIGHT.  WE'RE GOING TO STOP THERE.  LET'S BRING IN OUR JURY.  IT IS 12:30 (SIC).  I DON'T WANT TO DELAY THEM AT ALL.

ACTUALLY GIVE ME ONE SECOND.  I NEED TO HOLD ON. MAKE SURE I GOT THE DOCUMENT HERE.  OKAY.  YOU CAN BRING THEM IN.

(THE FOLLOWING PROCEEDINGS WERE HELD IN
 THE PRESENCE OF THE JURY:)

THE COURT:  ALL RIGHT.  THANK YOU.  WELCOME BACK.

WE ARE IN THE PRESENCE OF THE SWORN JURY AND THE ALTERNATE AS WELL AS PLAINTIFF, PLAINTIFF'S COUNSEL.  AND MR. MOON IS PRESENT ON THE PHONE STILL, CORRECT?

MR. MOON:  YES.

THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN OF THE JURY, AT THIS TIME I'M GOING TO BE GIVING YOU SOME INITIAL JURY INSTRUCTIONS.  THESE BASICALLY EXPLAIN HOW YOU ARE TO GO ABOUT YOUR DUTIES.  I'VE PLACED THEM ON THE BOARD.  HOPEFULLY IF YOU NEED TO YOU CAN READ ALONG.

ALL RIGHT.  "YOU HAVE NOW BEEN SWORN AS JURORS IN THIS CASE.  I WANT TO IMPRESS ON YOU THE SERIOUSNESS AND IMPORTANCE OF SERVING ON A JURY.  TRIAL BY JURY IS A FUNDAMENTAL RIGHT IN CALIFORNIA.  THE PARTIES HAVE A RIGHT TO A JURY THAT IS SELECTED FAIRLY, THAT COMES TO THE CASE WITHOUT BIAS AND THAT WILL ATTEMPT TO REACH A VERDICT BASED ON THE EVIDENCE PRESENTED.  BEFORE WE BEGIN, I NEED TO EXPLAIN HOW YOU MUST CONDUCT YOURSELVES DURING THE TRIAL.

"DO NOT ALLOW ANYTHING THAT HAPPENS OUTSIDE OF THIS COURTROOM TO AFFECT YOUR DECISION.  DURING THE TRIAL, DO NOT TALK ABOUT THIS CASE OR THE PEOPLE INVOLVED IN IT WITH ANYONE, INCLUDING FAMILY AND PERSONS LIVING IN YOUR HOUSEHOLD, FRIENDS AND COWORKERS, SPIRITUAL LEADERS, ADVISORS OR THERAPISTS.

"YOU MAY SAY THAT YOU ARE ON A JURY AND HOW LONG THE TRIAL MAY TAKE, BUT THAT IS ALL.  YOU MUST NOT EVEN TALK ABOUT THE CASE WITH THE OTHER JURORS UNTIL AFTER I TELL YOU THAT IT IS TIME FOR YOU TO DECIDE THE CASE.

"THIS PROHIBITION IS NOT LIMITED TO FACE-TO-FACE CONVERSATIONS.  IT ALSO EXTENDS TO ALL FORMS OF ELECTRONIC

COMMUNICATIONS.  DO NOT USE ANY ELECTRONIC DEVICE OR MEDIA SUCH AS A CELL PHONE OR SMART PHONE, PDA, COMPUTER, THE INTERNET, ANY INTERNET SERVICE, ANY TEXT OR INSTANT MESSAGING SERVICE, ANY INTERNET CHAT ROOM, BLOG OR WEBSITE, INCLUDING SOCIAL NETWORKING WEBSITES OR ONLINE DIARIES TO SEND OR RECEIVE ANY INFORMATION TO OR FROM ANYONE ABOUT THIS CASE OR YOUR EXPERIENCE AS A JUROR UNTIL AFTER YOU HAVE BEEN DISCHARGED FROM YOUR JURY DUTY.

"DURING THE TRIAL, YOU MUST NOT LISTEN TO ANYBODY ELSE TALK ABOUT THE CASE OR THE PEOPLE INVOLVED IN THE CASE. YOU MUST AVOID ANY CONTACT WITH THE PARTIES, THE LAWYERS, THE WITNESSES AND ANYONE ELSE WHO MAY HAVE A CONNECTION TO THE CASE.  IF ANYONE TRIES TO TALK TO YOU ABOUT THIS CASE, TELL THAT PERSON -- TELL THAT PERSON THAT YOU CANNOT DISCUSS IT BECAUSE YOU ARE A JUROR.  IF THAT PERSON KEEPS TALKING TO YOU, SIMPLY WALK AWAY AND REPORT THE INCIDENT TO THE COURTROOM ATTENDANT AS SOON AS YOU CAN."  THAT WOULD BE MY ASSISTANT RIGHT HERE.

"AFTER THE TRIAL IS OVER AND I HAVE RELEASED YOU FROM JURY DUTY, YOU MAY DISCUSS THE CASE WITH ANYONE BUT YOU'RE NOT REQUIRED TO DO SO.

"DURING THE TRIAL DO NOT READ, LISTEN TO OR WATCH ANY NEWS REPORTS ABOUT THE CASE.  I HAVE NO INFORMATION THAT THERE WILL BE NEWS REPORTS CONCERNING THIS CASE.  THIS PROHIBITION EXTENDS TO THE USE OF THE INTERNET IN ANY WAY, INCLUDING READING ANY BLOG ABOUT THE CASE OR ABOUT ANYONE INVOLVED WITH IT.  IF YOU RECEIVE ANY INFORMATION ABOUT THIS CASE FROM ANY SOURCE OUTSIDE THE COURTROOM, PROMPTLY REPORT IT

TO THE COURT ATTENDANT.  IT IS IMPORTANT THAT ALL JURORS SEE AND HEAR THE SAME EVIDENCE AT THE SAME TIME.

"DO NOT DO ANY RESEARCH ON YOUR OWN OR AS A GROUP. DO NOT USE DICTIONARIES, THE INTERNET OR OTHER REFERENCE MATERIALS.  DO NOT INVESTIGATE THE CASE OR CONDUCT ANY EXPERIMENTS.  DO NOT CONTACT ANYONE TO ASSIST YOU SUCH AS A FAMILY ACCOUNTANT, DOCTOR OR LAWYER.  DO NOT VISIT OR VIEW THE SCENE OF ANY EVENT INVOLVED IN THIS CASE OR USE ANY INTERNET MAPS OR MAPPING PROGRAMS OR ANY OTHER PROGRAM OR DEVICE TO SEARCH FOR OR TO VIEW ANY PLACE DISCUSSED IN THE TESTIMONY.

"IF YOU HAPPEN TO PASS BY THE SCENE, DO NOT STOP OR INVESTIGATE.  IF YOU DO NEED TO VIEW THE SCENE DURING THE TRIAL, YOU WILL BE TAKEN THERE AS A GROUP UNDER PROPER SUPERVISION."  THAT IS NOT LIKELY TO HAPPEN.

"IF YOU VIOLATE ANY OF THESE PROHIBITIONS ON COMMUNICATIONS AND RESEARCH INCLUDING THE PROHIBITIONS ON ELECTRONIC COMMUNICATIONS AND RESEARCH, YOU MAY BE HELD IN CONTEMPT OF COURT OR FACE OTHER SANCTIONS.  THAT MEANS THAT YOU MAY HAVE TO SERVE TIME IN JAIL, PAY A FINE OR FACE OTHER PUNISHMENT FOR THAT VIOLATION.

"IT IS IMPORTANT THAT YOU KEEP AN OPEN MIND THROUGHOUT THIS TRIAL.  EVIDENCE CAN ONLY BE PRESENTED A PIECE AT A TIME.  DO NOT FORM OR EXPRESS AN OPINION ABOUT THIS CASE WHILE THE TRIAL IS GOING ON.  YOU MUST NOT DECIDE ON A VERDICT UNTIL AFTER YOU HAVE HEARD ALL THE EVIDENCE AND HAVE DISCUSSED IT THOROUGHLY WITH YOUR FELLOW JURORS IN YOUR DELIBERATIONS.

"DO NOT CONCERN YOURSELF WITH THE REASONS FOR THE RULINGS I WILL MAKE DURING THE COURSE OF THE TRIAL.  DO NOT

GUESS WHAT I MAY THINK YOUR VERDICT SHOULD BE FROM ANYTHING I MIGHT SAY OR DO.

"WHEN YOU BEGIN YOUR DELIBERATIONS, YOU MAY DISCUSS THE CASE ONLY IN THE JURY ROOM AND ONLY WHEN ALL JURORS ARE PRESENT. YOU MUST DECIDE WHAT THE FACTS ARE IN THIS CASE. DO NOT LET, BIAS, SYMPATHY, PREJUDICE OR PUBLIC OPINION INFLUENCE YOUR VERDICT.

"AT THE END OF THE TRIAL, I WILL EXPLAIN THE LAW THAT YOU MUST FOLLOW TO REACH YOUR VERDICT. YOU MUST FOLLOW THE LAW AS I EXPLAIN IT TO YOU EVEN IF YOU DO NOT AGREE WITH THE LAW.

"TO ASSIST YOU IN YOUR TASK AS JURORS, I WILL NOW EXPLAIN HOW THE TRIAL WILL PROCEED. I WILL BEGIN BY IDENTIFYING THE PARTIES TO THE CASE. LEAH WHETSTONE FILED THIS LAWSUIT. SHE IS CALLED A PLAINTIFF. SHE SEEKS TO RECOVER POSSESSION OF HER PROPERTY FROM ADRIAN D. MOON WHO IS CALLED A DEFENDANT.

"LEAH WHETSTONE CLAIMS THAT MR. MOON IS NO LONGER ENTITLED TO LIVE ON HER PROPERTY LOCATED AT 794 MOUNTAIN VIEW, ALTADENA, CALIFORNIA, 91001. MR. MOON DENIES THOSE CLAIMS.

"FIRST, EACH SIDE MAY MAKE AN OPENING STATEMENT, BUT NEITHER SIDE IS REQUIRED TO DO SO. AN OPENING STATEMENT IS NOT EVIDENCE. IT IS SIMPLY AN OUTLINE TO HELP YOU UNDERSTAND WHAT THE PARTY EXPECTS THE EVIDENCE WILL SHOW. ALSO BECAUSE IT IS OFTEN DIFFICULT TO GIVE YOU THE EVIDENCE IN THE ORDER WE WOULD PREFER, THE OPENING STATEMENT ALLOWS YOU TO KEEP AN OVERVIEW OF THE CASE IN MIND DURING THE PRESENTATION OF THE EVIDENCE.

"NEXT THE JURY WILL HEAR THE EVIDENCE. MS. WHETSTONE WILL PRESENT EVIDENCE FIRST. WHEN MS. WHETSTONE IS FINISHED, MR. MOON WILL HAVE AN OPPORTUNITY TO PRESENT EVIDENCE. EACH WITNESS WILL FIRST BE QUESTIONED BY THE SIDE THAT ASKED THE WITNESS TO TESTIFY. THIS IS CALLED DIRECT EXAMINATION. THEN THE OTHER SIDE IS PERMITTED TO QUESTION THE WITNESS. THIS IS CALLED CROSS-EXAMINATION.

"DOCUMENTS OR OBJECTS REFERRED TO DURING THE TRIAL ARE CALLED EXHIBITS. EXHIBITS ARE GIVEN A NUMBER SO THAT THEY MAY BE CLEARLY IDENTIFIED. EXHIBITS ARE NOT EVIDENCE UNTIL I ADMIT THEM INTO EVIDENCE. DURING YOUR DELIBERATIONS, YOU WILL BE ABLE TO LOOK AT ALL EXHIBITS ADMITTED INTO EVIDENCE.

"THERE ARE MANY RULES THAT GOVERN WHETHER SOMETHING WILL BE ADMITTED INTO EVIDENCE. AS ONE SIDE PRESENTS THE EVIDENCE THE OTHER SIDE HAS THE RIGHT TO OBJECT AND TO ASK ME TO DECIDE IF THE EVIDENCE IS PERMITTED BY THE RULES. USUALLY I WILL DECIDE IMMEDIATELY, BUT SOMETIMES I MAY HAVE TO HEAR ARGUMENT OUTSIDE OF YOUR PRESENCE.

"AFTER THE EVIDENCE HAS BEEN PRESENTED, I WILL INSTRUCT YOU ON THE LAW THAT APPLIES TO THE CASE, AND THE ATTORNEYS WILL MAKE CLOSING ARGUMENTS. WHAT THE PARTIES SAY IN CLOSING ARGUMENT IS NOT EVIDENCE. THE ARGUMENTS ARE OFFERED TO HELP YOU UNDERSTAND THE EVIDENCE AND HOW THE LAW APPLIES TO IT."

DID WE GIVE NOTEBOOKS? DID WE GIVE YOU NOTEBOOKS? OKAY. WE WILL.

"YOU WILL BE GIVEN NOTEBOOKS AND MAY TAKE NOTES DURING THE TRIAL." BY THE WAY, YOU'RE GOING TO GET A COPY OF

THESE PRINTED INSTRUCTIONS SO YOU'RE GOING TO HAVE THEM WHEN YOU DELIBERATE SO YOU DON'T NEED TO TAKE NOTES ON THESE.

"YOU WILL BE GIVEN NOTEBOOKS AND MAY TAKE NOTES DURING THE TRIAL.  DO NOT TAKE THE NOTEBOOKS OUT OF THE COURTROOM OR JURY ROOM AT ANY TIME DURING THE TRIAL.  YOU MAY TAKE YOUR NOTES INTO THE JURY ROOM DURING DELIBERATIONS.  YOU SHOULD USE YOUR NOTES ONLY TO REMIND YOURSELF OF WHAT HAPPENED DURING THE TRIAL.

"DO NOT LET YOUR NOTETAKING INTERFERE WITH YOUR ABILITY TO LISTEN CAREFULLY TO ALL THE TESTIMONY AND TO WATCH THE WITNESSES AS THEY TESTIFY.  NOR SHOULD YOU ALLOW YOUR IMPRESSION OF A WITNESS OR OTHER EVIDENCE TO BE INFLUENCED BY WHETHER OR NOT OTHER JURORS ARE TAKING NOTES.

"YOUR INDEPENDENT RECOLLECTION OF THE EVIDENCE SHOULD GOVERN YOUR VERDICT, AND YOU SHOULD NOT ALLOW YOURSELF TO BE INFLUENCED BY NOTES OF OTHER JURORS IF THOSE NOTES DIFFER FROM WHAT YOU REMEMBER."

WE DO NOT HAVE A COURT REPORTER SO I WILL NOT READ THAT.

"AT THE END OF THE TRIAL YOUR NOTES WILL BE COLLECTED AND DESTROYED.

"YOU MUST DECIDE WHAT THE FACTS ARE IN THIS CASE ONLY FROM THE EVIDENCE YOU SEE AND HEAR DURING THE TRIAL.  SWORN TESTIMONY, DOCUMENTS OR ANYTHING ELSE MAY BE ADMITTED INTO EVIDENCE.  YOU MAY NOT CONSIDER AS EVIDENCE ANYTHING THAT YOU SEE OR HEAR WHEN COURT IS NOT IN SESSION, EVEN SOMETHING DONE OR SAID BY ONE OF THE PARTIES, ATTORNEYS OR WITNESSES.

"WHAT THE ATTORNEYS SAY DURING THE TRIAL IS NOT

EVIDENCE.    IN THEIR OPENING STATEMENT AND CLOSING ARGUMENTS THE ATTORNEYS WILL TALK TO YOU ABOUT THE LAW AND THE EVIDENCE. WHAT THE LAWYERS SAY MAY HELP YOU UNDERSTAND THE LAW AND THE EVIDENCE, BUT THEIR STATEMENTS AND ARGUMENTS ARE NOT EVIDENCE."

EXCUSE ME.    I'M GOING TO GRAB SOME WATER.    I APOLOGIZE.

(PAUSE.)

THE COURT:    "THE ATTORNEYS' QUESTIONS ARE NOT EVIDENCE.    ONLY THE WITNESSES' ANSWERS ARE EVIDENCE.    YOU SHOULD NOT THINK THAT SOMETHING IS TRUE JUST BECAUSE AN ATTORNEY'S QUESTION SUGGESTS THAT IT IS TRUE; HOWEVER, THE ATTORNEYS FOR BOTH SIDES CAN AGREE THAT CERTAIN FACTS ARE TRUE.    THIS AGREEMENT IS CALLED A STIPULATION.    NO OTHER PROOF IS NEEDED, AND YOU MUST ACCEPT THOSE FACTS AS TRUE IN THIS TRIAL.    IF THERE IS A STIPULATION I WILL BE STATING THAT THE PARTIES HAVE STIPULATED TO WHATEVER IT IS SO IT WILL BE VERY CLEAR TO YOU.

"EACH SIDE HAS THE RIGHT TO OBJECT TO EVIDENCE OFFERED BY THE OTHER SIDE.    IF I DO NOT AGREE WITH THE OBJECTION I WILL SAY IT IS OVERRULED.    IF I OVERRULE AN OBJECTION, THE WITNESS WILL ANSWER AND YOU MAY CONSIDER THE EVIDENCE.    IF I AGREE WITH AN OBJECTION I WILL SAY IT IS SUSTAINED.    IF I SUSTAIN AN OBJECTION, YOU MUST IGNORE THE QUESTION.

"IF THE WITNESS DID NOT ANSWER, YOU MUST NOT GUESS WHAT THAT WITNESS MIGHT HAVE SAID OR WHY I SUSTAINED THE OBJECTION.    IF THE WITNESS HAS ALREADY ANSWERED, YOU MUST

IGNORE THE ANSWER.

"AN ATTORNEY MAY MAKE A MOTION TO STRIKE TESTIMONY THAT YOU'VE HEARD.  IF I GRANT THE MOTION, YOU MUST TOTALLY DISREGARD THE TESTIMONY.  YOU MUST TREAT IT AS THOUGH IT DID NOT EXIST.

"A WITNESS IS A PERSON WHO HAS KNOWLEDGE RELATED TO THIS CASE.  YOU WILL HAVE TO DECIDE WHETHER YOU BELIEVE EACH WITNESS AND HOW IMPORTANT EACH WITNESS' TESTIMONY IS TO THE CASE.  YOU MAY BELIEVE ALL, PART OR NONE OF A WITNESS' TESTIMONY.

"IN DECIDING WHETHER TO BELIEVE A WITNESS' TESTIMONY, YOU MAY CONSIDER AMONG OTHER FACTORS THE FOLLOWING:

"A, HOW WELL DID THE WITNESS SEE, HEAR OR OTHERWISE SENSE WHAT THE WITNESS DESCRIBED IN COURT?

"B, HOW WELL DID THE WITNESS REMEMBER AND DESCRIBE WHAT HAPPENED?

"C, HOW DID THE WITNESS LOOK, ACT AND SPEAK WHILE TESTIFYING?

"D, DID THE WITNESS HAVE ANY REASON TO SAY SOMETHING THAT WAS NOT TRUE?  FOR EXAMPLE, DID THE WITNESS SHOW ANY BIAS OR PREJUDICE OR HAVE A PERSONAL RELATIONSHIP WITH ANY OF THE PARTIES INVOLVED IN THE CASE OR HAVE A PERSONAL STAKE IN HOW THIS CASE IS DECIDED?

"E, WHAT WAS THE WITNESS' ATTITUDE TOWARD THIS CASE OR ABOUT GIVING TESTIMONY?

"SOMETIMES A WITNESS MAY SAY SOMETHING THAT IS NOT CONSISTENT WITH SOMETHING ELSE THAT THE WITNESS SAID.  SOMETIMES DIFFERENT WITNESSES WILL GIVE DIFFERENT VERSIONS OF

WHAT HAPPENED.  PEOPLE OFTEN FORGET THINGS OR MAKE MISTAKES IN WHAT THEY REMEMBER.  ALSO, TWO PEOPLE MAY SEE THE SAME EVENT BUT REMEMBER IT DIFFERENTLY.  YOU MAY CONSIDER THESE DIFFERENCES BUT DO NOT DECIDE THE TESTIMONY IS UNTRUE JUST BECAUSE IT DIFFERS FROM OTHER TESTIMONY.

"HOWEVER, IF YOU DECIDE THAT A WITNESS DID NOT TELL THE TRUTH ABOUT SOMETHING IMPORTANT, YOU MAY CHOOSE NOT TO BELIEVE ANYTHING THE WITNESS SAID.  ON THE OTHER HAND, IF YOU THINK THE WITNESS DID NOT TELL THE TRUTH ABOUT SOME THINGS BUT TOLD THE TRUTH ABOUT OTHERS, YOU MAY ACCEPT THE PART YOU THINK IS TRUE AND IGNORE THE REST.

"DO NOT MAKE ANY DECISIONS SIMPLY BECAUSE THERE WERE MORE WITNESSES ON ONE SIDE THAN ON THE OTHER.  IF YOU BELIEVE IT IS TRUE, THE TESTIMONY OF A SINGLE WITNESS IS ENOUGH TO PROVE A FACT.

"THE PARTIES MUST PERSUADE YOU BY THE EVIDENCE PRESENTED IN COURT THAT WHAT THEY'RE REQUIRED TO PROVE IS MORE LIKELY TO BE TRUE THAN NOT TRUE.  THIS IS CALLED -- THIS IS REFERRED TO AS THE BURDEN OF PROOF.  AFTER WEIGHING ALL THE EVIDENCE, IF YOU CANNOT DECIDE THAT SOMETHING IS MORE LIKELY TO BE TRUE THAN NOT TRUE, YOU MUST CONCLUDE THAT THE PARTY DID NOT PROVE IT.  YOU SHOULD CONSIDER ALL THE EVIDENCE NO MATTER WHICH PARTY PRODUCED THE EVIDENCE.

"IN CRIMINAL TRIALS THE PROSECUTION MUST PROVE THAT THE DEFENDANT IS GUILTY BEYOND A REASONABLE DOUBT, BUT IN CIVIL TRIALS SUCH AS THIS ONE, THE PARTY WHO IS REQUIRED TO PROVE SOMETHING NEED PROVE ONLY THAT IT IS MORE LIKELY TO BE TRUE THAN NOT TRUE.

"YOU MAY CONSIDER THE ABILITY OF EACH PARTY TO PROVIDE EVIDENCE.  IF A PARTY PROVIDED WEAKER EVIDENCE WHEN IT COULD HAVE PROVIDED STRONGER EVIDENCE, YOU MAY DISTRUST THE WEAKER EVIDENCE.  YOU MAY CONSIDER WHETHER ONE PARTY INTENTIONALLY CONCEALED OR DESTROYED EVIDENCE.  IF YOU DECIDE THAT A PARTY DID SO, YOU MAY DECIDE THAT THE EVIDENCE WOULD HAVE BEEN UNFAVORABLE TO THAT PARTY.

"IF A PARTY FAILED TO EXPLAIN OR DENY EVIDENCE AGAINST THEM WHEN THEY COULD REASONABLY BE EXPECTED TO HAVE DONE SO BASED ON WHAT THEY KNEW, YOU MAY CONSIDER THEIR FAILURE TO EXPLAIN OR DENY IN EVALUATING THE EVIDENCE.  IT IS UP TO YOU TO DECIDE THE MEANING AND IMPORTANCE OF THE FAILURE TO EXPLAIN OR DENY EVIDENCE AGAINST THE PARTY.

"DURING THE TRIAL, CERTAIN EVIDENCE MIGHT BE ADMITTED FOR A LIMITED PURPOSE.  YOU MAY CONSIDER THAT EVIDENCE ONLY FOR THAT PURPOSE AND FOR NO OTHER.  WHEN I DO THAT, I WILL STATE, AGAIN, VERY DIRECTLY THAT IT IS ADMITTED ONLY FOR THE FOLLOWING LIMITED PURPOSE."

I'M NOT GIVING 211.

212.  "A PARTY MAY OFFER INTO EVIDENCE ANY ORAL OR WRITTEN STATEMENT MADE BY AN OPPOSING PARTY OUTSIDE THE COURT.  WHEN YOU EVALUATE EVIDENCE OF SUCH A STATEMENT, YOU MUST CONSIDER THESE QUESTIONS:

"ONE, DO YOU BELIEVE THAT THE PARTY ACTUALLY MADE THE STATEMENT?  IF YOU DO NOT BELIEVE THAT THE PARTY MADE THE STATEMENT, YOU MAY NOT CONSIDER THE STATEMENT AT ALL.  IF YOU BELIEVE THE STATEMENT WAS MADE, DO YOU BELIEVE THAT IT WAS RECORDED ACCURATELY?  YOU SHOULD VIEW TESTIMONY ABOUT AN ORAL

156

STATEMENT MADE BY A PARTY OUTSIDE THE COURT -- COURTROOM WITH CAUTION.

"A WITNESS WHO IS NOT TESTIFYING AS AN EXPERT MAY GIVE AN OPINION DURING THE TRIAL.  YOU MAY BUT YOU ARE NOT REQUIRED TO ACCEPT THAT OPINION.  YOU MAY GIVE THE OPINION WHATEVER WEIGHT YOU THINK IS APPROPRIATE.  CONSIDER THE EXTENT OF THE WITNESS' OPPORTUNITY TO PERCEIVE THE MATTERS ON WHICH THE OPINION IS BASED, THE REASONS THE WITNESS GAVE FOR THE OPINION, AND THE FACTS OR INFORMATION ON WHICH THE WITNESS RELIED IN FORMING THAT OPINION.  YOU MUST DECIDE WHETHER THE INFORMATION ON WHICH THE WITNESS RELIED WAS TRUE AND ACCURATE.  YOU MAY DISREGARD ALL OR ANY PART OF AN OPINION THAT YOU FIND UNBELIEVABLE, UNREASONABLE OR UNSUPPORTED BY THE EVIDENCE."

THAT CONCLUDES OUR INITIAL INSTRUCTIONS.  AT THIS TIME NOW, WE WILL BEGIN BY HEARING THE OPENING STATEMENTS.  PLAINTIFF MAY PRESENT PLAINTIFF'S OPENING STATEMENT, AND TAKE WHATEVER TIME YOU NEED TO GET SET UP.

MR. THEODOSIADIS:  THANK YOU, YOUR HONOR.

THE COURT:  AND PLEASE REMAIN EITHER AT COUNSEL TABLE, OR IF YOU WISH TO USE THE PODIUM WE CAN BRING THAT OVER.  VERY GOOD.

MR. THEODOSIADIS:  GOOD MORNING.  AS YOU KNOW, I'M THEODORE THEODOSIADIS, AND I APPRECIATE YOU SERVING ON THIS JURY FOR WHAT I BELIEVE IS A VERY SIMPLE, AND IT SHOULD BE A VERY QUICK MATTER TO RESOLVE AS WELL.

AND I DON'T SAY THAT LIGHTLY.  I BELIEVE IT'S A VERY SIMPLE MATTER BECAUSE I BELIEVE THE LAW IN QUESTION IS VERY SIMPLE, AND THE FACTS OF THE CASE ARE VERY SIMPLE.

MS. WHETSTONE, THE EVIDENCE WILL SHOW, OWNS A PROPERTY LOCATED IN ALTADENA.  MS. WHETSTONE RENTS THAT PROPERTY ON A MONTH-TO-MONTH BASIS TO VARIOUS PEOPLE AT VARIOUS TIMES.

MS. WHETSTONE, AS WE'LL SHOW, RENTED THAT PROPERTY, A ROOM IN HER PROPERTY, TO MR. MOON.  THAT TENANCY WAS TO BE FOR A FEW MONTHS.  MR. MOON HAD EXPRESSED AS MS. WHETSTONE WILL EXPLAIN THAT HE WAS IN TRANSITION TO MOVE TO A DIFFERENT STATE AND THAT HE ONLY NEEDED THE PROPERTY FOR A FEW MONTHS.

MS. WHETSTONE ON THAT BASIS RENTED THE PROPERTY TO MR. MOON.  MR. MOON REFUSED TO LEAVE WHEN THE TIME OF HIS MONTH-TO-MONTH TENANCY WAS TO COME TO AN END.  MS. WHETSTONE ASKED HIM TO DO SO.  HE REFUSED.  MS. WHETSTONE INITIATED THIS PROCEEDING.

THE LAW REQUIRES MS. WHETSTONE TO SHOW FOUR THINGS. ONLY FOUR THINGS.  ONE, THAT SHE OWNS THE PROPERTY AT ISSUE. TWO, THAT SHE ENTERED AN AGREEMENT WITH MR. MOON FOR A MONTH-TO-MONTH TENANCY.  THREE, THAT SHE SERVED MR. MOON WITH PROPER NOTICE TO VACATE THE PROPERTY.  AND FOUR, THAT MR. MOON IS STILL IN POSSESSION OF THE PROPERTY.  ALL FOUR OF THOSE QUESTIONS ARE ANSWERED IN THE AFFIRMATIVE AS THE EVIDENCE WILL SHOW.  THAT'S IT.  THAT'S WHAT THIS CASE IS ABOUT.

IT'S NOT ABOUT COVID.  IT'S NOT ABOUT MONEY.  IT'S ABOUT MR. MOON -- MS. WHETSTONE SLEEPING IN HER GARAGE CURRENTLY.  THAT'S WHAT THIS CASE IS ABOUT.  ABOUT MR. MOON HOLDING HER HOME HOSTAGE, DEMANDING MONEY.

MS. WHETSTONE IS NOT HERE FOR MONEY.  MS. WHETSTONE IS HERE FOR HER HOME.  AND THAT'S ALL.

THANK YOU.

THE COURT: ALL RIGHT. LET ME ASK ALTERNATE NO. 1, I'M HAPPY TO ALLOW YOU TO SIT OVER THERE IF THAT'S WHERE YOU'RE COMFORTABLE. IF YOU'D RATHER COME TO ANOTHER SEAT. IT'S UP TO YOU. I ASSUME THAT'S --

ALTERNATE JUROR ORTIZ: NO, NOT AT ALL, YOUR HONOR.

THE COURT: ALL RIGHT. MR. MOON, AT THIS TIME, YOU MAY GIVE YOUR OPENING IF YOU WOULD LIKE. MR. MOON?

DOES THE SYSTEM SHOW HIM STILL ON?

THE CLERK: YES, HE'S ON, YOUR HONOR.

MR. MOON: OKAY. OKAY. CAN YOU HEAR ME NOW?

THE COURT: YES, WE CAN HEAR YOU. THANK YOU, MR. MOON. WHENEVER YOU'RE READY YOU MAY PRESENT.

MR. MOON: ALL PRAISE AND GLORY TO THE ALMIGHTY CREATOR IN THE MIGHTY NAME OF YESHUA JESUS CHRIST THE MESSIAH.

THIS ACTION IS OF A CRIMINAL AND MALFEASANCE OF THE LAST 15 YEARS OF FALSE IMPRISONMENT, GRAND THEFT AND ATTEMPTED MURDER. A FAIR AND IMPARTIAL JURY TRIAL CAN'T BE HAD UNTIL DISCOVERY IS COMPLETED AND THE DETERMINATION OF THE QUESTION OF THE DISQUALIFICATION OF CROSS-DEFENDANTS DOUGLAS W. STERN, VICTOR G. VIRAMONTES AND JOEL L. LOFTON IS RULED ON.

I AM REQUESTING THAT THIS -- THAT THE JURY TRIAL BE STAYED UNTIL THAT HAPPENS. THERE'S TWO MOTIONS THAT ARE PENDING THAT ARE DISCOVERY MOTIONS ON NOVEMBER 23RD REGARDING THE QUESTION OF THE DISQUALIFICATION OF YOURS TRULY DOUGLAS W. STERN; VICTOR G. VIRAMONTES, A PRIOR JUDICIAL OFFICER; AND JOEL L. LOFTON.

THIS CASE, SPECIFICALLY THE FRIVOLOUS UNLAWFUL

DETAINER CASE WAS BROUGHT BECAUSE LEAH WHETSTONE WANTED TO HAVE A SEXUAL RELATIONSHIP WITH ME AND PAY ATTENTION TO HER, AND I SAID, "WHAT IS YOUR PROBLEM?  THIS IS PROFESSIONAL. THIS IS NOT, YOU KNOW, SOME SEX HOUSE."  SO SHE FILED THIS FRIVOLOUS UNLAWFUL DETAINER BASED SOLELY ON THAT.  SHE SAID I WASN'T A GOOD FIT AND THAT I HAD TO MOVE.  AND I TOLD HER, I SAID, THAT'S NOT THE CASE.

MR. THEODOSIADIS:  OBJECTION, YOUR HONOR.

MR. MOON:  I SAID IT'S COVID --

MR. THEODOSIADIS:  HE'S TESTIFYING.

THE COURT:  I'M SORRY?

MR. THEODOSIADIS:  HE'S TESTIFYING.

THE COURT:  EXCUSE ME.  HOLD UP A MOMENT, MR. MOON.

MR. MOON:  I'M GIVING AN OPENING STATEMENT.  I'M GIVING AN OPENING STATEMENT.

THE COURT:  OKAY.

MR. THEODOSIADIS:  HE'S STATING CERTAIN THINGS AS FACTS.

MR. MOON:  I'M GIVING AN OPENING STATEMENT.

THE COURT:  OVERRULED.  ON THAT BASIS OVERRULED. CONTINUE, MR. MOON.

MR. MOON:  AND THEN AFTER, YOU KNOW, I GIVE MS. WHETSTONE AND HER MOTHER, CO-OWNER OF THE PROPERTY, THE LOS ANGELES COUNTY EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021, CONTINUED TO JANUARY 1ST, 2022, AND HER ATTORNEY OF RECORD WHO I ALLOWED THEM TO READ AND CONSIDER THAT EVICTION MORATORIUM ORDER THAT ALLOWS ME TO COME AFTER HER CIVILLY AND CRIMINALLY.  AND THIS JURY PREEMPTORILY WILL GET A COPY OF

THAT. IT'S ACTUALLY ATTACHED TO MY ANSWER.

SO THIS IS ABOUT JEALOUSY, SEXUAL HARASSMENT, DISCRIMINATION BECAUSE THERE'S OTHER PEOPLE IN THE HOUSE THAT THEY DIDN'T GET ANY UNWARRANTED 30-DAY NOTICE TO MOVE BECAUSE THEY WOULDN'T HAVE SEX WITH LEAH WHETSTONE.

SO ALSO I'M PUTTING THE COURT ON NOTICE BECAUSE THIS JURY TRIAL IS NOT READY TO GO FORWARD WITH THE OUTSTANDING DISCOVERY MOTION THAT NEEDS TO BE RENDERED BEFORE I CAN GET A FAIR AND PARTIAL JURY TRIAL.

AND THE OTHER THING IS THE REASON WHY I'M ON AUDIO AND NOT PRESENT IN THE COURT BECAUSE I'VE BEEN TERRORIST THREATENED THAT IF I COME INTO THE COURTROOM THAT I WILL BE ARRESTED BECAUSE MOST OF THE WITNESSES THAT YOU HAVEN'T NOTICED, I WOULD SAY A MAJORITY OF THEM, ARE SITTING JUDICIAL OFFICERS, ROGUE AND CRIMINAL AT THAT.

SO I'M GIVING THIS COURT A NOTICE THAT I WILL BE FILING A NOTICE OF APPEAL FOR STAY AND THAT, DOUGLAS STERN, YOU ARE ONE OF THE WITNESSES THAT WAS SUBPOENAED THROUGH COURT COUNSEL TODAY. SO YOU CAN -- YOU CAN'T PROCEED AS THE JUDICIAL OFFICER OF THIS CASE ANYWAY, ESPECIALLY WITH YOUR DETERMINATION OF YOUR DISQUALIFICATION NOT BEING RULED ON BY ANOTHER INDEPENDENT JUDGE.

SO LIKE I SAID, THIS FRIVOLOUS UNLAWFUL DETAINER ACTION DOESN'T HAVE ANYTHING TO DO WITH I DID ANYTHING WRONG OR I DISOBEYED ANY LAWS. IT'S BECAUSE I WOULDN'T HAVE A SEXUAL RELATIONSHIP WITH LEAH WHETSTONE. SHE SAID I WASN'T A GOOD FIT, AND THAT'S WHEN IT COMMENCED, THIS SEXUAL HARASSMENT FROM DECEMBER 1ST TO THE PRESENT.

I'VE SUBMITTED MOTIONS FOR SUMMARY JUDGMENT BECAUSE THEY HAVE NO -- NO -- NO OPPOSITION OR NO REASON, LAWFUL REASON WHY THIS EVICTION SHOULD HAVE BEEN MAINTAINED FOR THIS LENGTH OF TIME.  AND ALSO -- I LOST MY THOUGHT.

AND ALSO -- WELL, I'LL REST WITH THAT.  BUT LIKE I SAID, IF THIS JURY TRIAL IS TO COMMENCE, I WILL BE FILING A NOTICE OF APPEAL TODAY AT THE COURT TO BE STAYED AND THEN WE'LL JUST GO FROM THERE, BUT TO GOD BE THE GLORY.

THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH, MR. MOON.

ALL RIGHT.  PLAINTIFF MAY CALL PLAINTIFF'S FIRST WITNESS.  WHO IS THAT TO BE, PLEASE?

MR. THEODOSIADIS:  YOUR HONOR, PLAINTIFF CALLS HERSELF.  MS. LEAH WHETSTONE.

THE COURT:  ALL RIGHT.  MA'AM, IF YOU WOULD COME AND STAND IN FRONT OF THIS MIDDLE CHAIR AND BE SWORN.  THAT'S FINE RIGHT THERE.  STOP.  BE SWORN.


LEAH WHETSTONE,

THE PLAINTIFF HEREIN, CALLED AS A WITNESS ON HER OWN BEHALF, WAS SWORN AND TESTIFIED AS FOLLOWS:

THE CLERK:  DO YOU SOLEMNLY STATE THAT THE TESTIMONY YOU MAY GIVE IN THE CAUSE NOW PENDING BEFORE THIS COURT SHALL BE THE TRUTH, THE WHOLE TRUTH AND NOTHING BUT THE TRUTH, SO HELP YOU GOD?

THE WITNESS:  I DO.

THE CLERK:  THANK YOU.

THE COURT:  COME AROUND TO THE WITNESS STAND.  WATCH

YOUR STEP AS YOU COME UP.  MAKE YOURSELF COMFORTABLE, PLEASE. ONCE YOU'RE COMFORTABLE IF YOU COULD STATE YOUR NAME SLOWLY AND SPELL IT EVEN MORE SLOWLY.

THE WITNESS:  MY NAME IS LEAH WHETSTONE.  THAT'S L-E-A-H.  LAST NAME'S W-H-E-T-S-T-O-N-E.

THE COURT:  THANK YOU.

COUNSEL, YOU MAY PROCEED.


DIRECT EXAMINATION

BY MR. THEODOSIADIS:

Q    GOOD MORNING, MS. WHETSTONE.

A    GOOD MORNING.

Q    HOW ARE YOU TODAY?  GET RIGHT INTO IT.  DO YOU OWN PROPERTY?

A    YES, I DO.

Q    WHERE IS THAT PROPERTY LOCATED?

A    794 MOUNTAIN VIEW, CITY OF ALTADENA.

Q    HOW LONG HAVE YOU OWNED THAT PROPERTY?

A    APPROXIMATELY 16 YEARS.

Q    AND DURING THE TIME YOU'VE OWNED IT, DO YOU RENT OUT THE PROPERTY?

A    YES.

Q    AND CURRENTLY YOU HAVE SEVERAL TENANTS; IS THAT CORRECT?

A    YES.

Q    HOW MANY TENANTS DO YOU CURRENTLY HAVE?

A    THREE.

Q    THREE.  IS MR. MOON ONE OF THOSE TENANTS?

A   YES.

Q   AND HOW DID YOU MEET MR. MOON?

A   HE WAS REFERRED TO ME BY ANOTHER PERSON.   I'M SO SORRY.

Q   SO MR. MOON WAS REFERRED TO YOU BY SOMEONE ELSE TO BE A TENANT IN YOUR PROPERTY; IS THAT CORRECT?

A   YES.

Q   AND WHEN YOU FIRST SPOKE TO MR. MOON, ABOUT -- WHEN WAS THE FIRST TIME YOU SPOKE TO MR. MOON HIMSELF?

A   WHEN WAS THE FIRST TIME I SPOKE WITH HIM?

Q   YES.

A   OVER A YEAR AGO I SPOKE WITH HIM TELEPHONICALLY, OVER THE TELEPHONE.

Q   OKAY.   AND WHAT WAS THE SUBJECT OF THAT CONVERSATION?

A   CONCERNING HIM RENTING OUT A ROOM.

Q   AND DID YOU COME TO AN AGREEMENT DURING THAT CONVERSATION?

A   WE TALKED BACK AND FORTH.   HE WANTED TO SEE THE ROOM.   I WAS OUT OF TOWN WORKING UP IN NORTHERN CALIFORNIA AT THE TIME.

Q   AND AT SOME POINT, THOUGH, YOU DID --

A   HAVE AN AGREEMENT.

Q   YOU CAME TO AN AGREEMENT.   AND THAT AGREEMENT WAS WRITTEN OR --

A   IT WAS VERBAL.

Q   WHAT WERE THE TERMS OF THE AGREEMENT?

A   IT WAS A MONTH-TO MONTH RENTAL.   HE SAID HE JUST

NEEDED TO STAY FOR A FEW MONTHS.  HE WAS IN TRANSITION TO MOVING TO ATLANTA, GEORGIA.

Q    OKAY.  AND WHAT WOULD BE THE START DATE OF THAT TENANCY?

A    JULY 1ST OF 2020.

Q    '20.  SO DURING COVID.

A    YES, DURING COVID.

Q    OKAY.  DID MR. MOON EVER HAVE A PAYMENT ISSUE? EVER?

A    NO.

Q    SO AT WHAT POINT OR --

A    EXCUSE ME.  AT THE BEGINNING HE DID NOT.  I NEVER HAD A PAYMENT ISSUE WITH HIM UNTIL WE STARTED THESE COURT PROCEEDINGS.

Q    OKAY. UNDERSTOOD.  SO WHEN THE TENANCY BEGAN JULY 1ST, WHEN DID YOU EXPECT THE TENANCY TO END?

A    I EXPECTED IT TO END, LIKE, ABOUT OCTOBER.  A COUPLE OF MONTHS.

Q    AND THAT WAS THE UNDERSTANDING YOU HAD WITH MR. MOON?

A    YES.  HE SAID HE MAY EVEN BE MOVING BEFORE THEN.

Q    AND AT SOME POINT -- WHEN DID YOU REALIZE THE TENANCY WAS NOT ENDING WHEN YOU THOUGHT IT WOULD?

A    I SPOKE TO HIM IN -- IT WAS TOWARDS THE END OF OCTOBER.  AND THEN I SPOKE WITH HIM AGAIN IN NOVEMBER, AND I JUST REALIZED HE WASN'T GOING TO GO (INDISCERNIBLE) I SERVED HIM THE EVICTION NOTICE IN DECEMBER.

Q    IF YOU WOULD IN THE BINDER TURN TO THE EXHIBIT TAB.

THE COURT:  THERE IS THE OVERHEAD IF COUNSEL WISHES TO USE IT.

MR. THEODOSIADIS:  THANK YOU.

THE COURT:  YOU KNOW HOW TO PULL THAT UP?

MR. MOON:  YOUR HONOR, I'D LIKE TO OBJECT.

THE COURT:  ALL RIGHT.

MR. MOON:  THERE SHOULD BE ONLY ONE EXHIBIT.

THE COURT:  OKAY.

MR. MOON:  IS THERE ONLY ONE EXHIBIT?

THE COURT:  WHICH EXHIBIT DID YOU WISH TO USE, SIR?

MR. THEODOSIADIS:  IT'S THE ONLY EXHIBIT I HAVE, YOUR HONOR.

THE COURT:  USE THE NUMBER.

MR. THEODOSIADIS:  EXHIBIT 1.

THE COURT:  EXHIBIT 1.  IS THERE AN OBJECTION TO HIM USING EXHIBIT 1?

MR. MOON:  WHAT IS EXHIBIT 1 BECAUSE HE'S NEVER GIVEN ME THE BINDER.

THE COURT:  MR. MOON, IT'S --

MR. MOON:  (INDISCERNIBLE.)

THE COURT:  IT IS THE 30-DAY NOTICE.

MR. MOON:  OKAY.  IS THAT THE ONLY EXHIBIT IN THE BINDER?

MR. THEODOSIADIS:  YES.

THE COURT:  THAT IS CORRECT.

MR. MOON:  ARE THERE OTHER EXHIBITS IN THE BINDER? PARDON ME?

THE COURT:  NO.  IT'S THE ONLY ONE, MR. MOON.

DON'T SHOW IT YET UNTIL IT'S ADMITTED INTO EVIDENCE.

ALL RIGHT. OKAY.  THAT OBJECTION IS OVERRULED. COUNSEL MAY PROCEED.

Q    BY MR. THEODOSIADIS:  MS. WHETSTONE, DO YOU RECOGNIZE THE DOCUMENT IN FRONT OF YOU?

A    YES, I DO.

Q    WHAT DO YOU RECOGNIZE THAT DOCUMENT TO BE?

A    THE CALIFORNIA 30-DAY NOTICE TO TERMINATE TENANCY.

Q    AND DID YOU FILL OUT THAT DOCUMENT?

A    YES, I DID.

Q    TURN THE PAGE.  IS THAT YOUR SIGNATURE ON THE BOTTOM OF THE SECOND PAGE?

A    YES, IT IS.

MR. THEODOSIADIS:  YOUR HONOR, IF WE MAY ENTER AS EXHIBIT 1 CALIFORNIA 30-DAY NOTICE TO TERMINATE TENANCY?

THE COURT:  ALL RIGHT.  MR. MOON, IS THERE AN OBJECTION TO EXHIBIT 1, THE CALIFORNIA 30-DAY NOTICE TO TERMINATE TENANCY?

MR. MOON:  NO.

THE COURT:  ALL RIGHT.

MR. MOON:  THAT'S ADMITTED.

THE COURT:  I'M SORRY?  IT IS ADMITTED.

(RECEIVED IN EVIDENCE, PLAINTIFF'S EXHIBIT 1, 30-DAY NOTICE TO TERMINATE TENANCY.)

MR. MOON:  YES, I NEED THAT IN ORDER TO --

THE COURT:  ALL RIGHT.

MR. MOON:  -- VIOLATION OF THE MORATORIUM ORDER.

THE COURT:  EXHIBIT 1 IS ADMITTED.

THERE'S A WHEEL ON THAT.  THERE YOU GO.

Q    BY MR. THEODOSIADIS:  MS. WHETSTONE, DID YOU SERVE THIS DOCUMENT ON MR. MOON?

A    YES, I DID.

Q    AND WHEN DID YOU SERVE THIS DOCUMENT?

A    I GAVE IT TO HIM IN DECEMBER, THE 1ST.

Q    IN DECEMBER OF?

A    2021.  I MEAN 2020.

Q    2020.  OKAY.  AND WHAT, IF ANY, RESPONSE DID MR. MOON HAVE WHEN HE WAS SERVED WITH THIS DOCUMENT?

A    HE HAD ASKED ME IF I COULD GIVE HIM AN EXTENSION. HE HAD ALSO ASKED ME WHY.

Q    AND WHAT WAS YOUR RESPONSE TO THAT REQUEST?

A    I TOLD HIM THAT HE HAD SAID WHEN HE FIRST CAME THAT HE ONLY WANTED TO STAY HERE IN MY HOME FOR A FEW MONTHS AND THAT I HAD GAVE HIM OVER THE FEW MONTHS THAT HE HAD COMMITTED TO IN THE FIRST PLACE.

AND HE WASN'T, YOU KNOW, FOLLOWING THE HOUSE RULES AS WELL, SO THERE WAS OTHERS WHO WERE UNCOMFORTABLE THERE.  WE WERE IN THE MIDDLE OF COVID.  HE WAS NOT CLEANING OR ANYTHING, SO.

Q    AND SO YOU SAID THIS DOCUMENT WAS SERVED IN THE MIDDLE OF DECEMBER.

A    YES.

Q    A 30-DAY NOTICE TO TERMINATE TENANCY WAS SERVED IN DECEMBER, BUT YOU DIDN'T -- WHEN DID YOU FILE THE UNLAWFUL DETAINER ACTION?

A    NOT UNTIL, I BELIEVE, MARCH OR APRIL OF THE

FOLLOWING YEAR, 2021.

Q   SO FROM DECEMBER -- FROM MID-DECEMBER UNTIL MARCH OR APRIL THE FOLLOWING YEAR, YOU ALLOWED MR. MOON TO STAY AT YOUR HOME.

A   CORRECT.  HE EVEN ASKED ME FOR AN EXTENSION, SO I TRIED TO WORK WITH HIM.  HE SAID BECAUSE OF THE HOLIDAYS COULD I GIVE HIM UNTIL THE 1ST OF FEBRUARY, AND I DID.  THAT'S WHY IT'S MARKED HERE.  I CROSSED IT OUT FROM JANUARY, AND THEN I GAVE HIM UNTIL FEBRUARY.

Q   UNDERSTOOD.  AND MR. MOON IS STILL IN POSSESSION OF THE PROPERTY?

A   YES, HE IS.

MR. THEODOSIADIS:  THANK YOU.

NO FURTHER QUESTIONS.

THE COURT:  ALL RIGHT.  THANK YOU.

MR. MOON, YOU MAY CROSS-EXAMINE THE WITNESS.

MR. MOON:  YOUR HONOR, I'D LIKE TO RECESS UNTIL TOMORROW BECAUSE MY EVIDENCE EXHIBITS ARE NOT YET PREPARED BECAUSE I ORDERED IT FROM THE COURT CLERK AND THEY SAID IT WOULDN'T BE READY.  AS I INFORMED YOU SEVERAL DAYS AGO, IT WOULDN'T BE READY UNTIL THURSDAY OR FRIDAY.

SO BUT WHAT I'LL DO IS JUST GET MAYBE FIVE OR SIX EXHIBITS.  THAT SHOULD DO IT.  AND IF WE CAN, LIKE I SAY, RECESS UNTIL TOMORROW, I'LL HAVE THOSE AND I'LL PROBABLY BE PRESENT IN COURT AFTER I FIND OUT IF I DON'T HAVE A FELONIOUS BENCH WARRANT AGAINST ME.

SO IF WE CAN, CAN WE RECESS UNTIL TOMORROW AND THEN I'LL HAVE MY EXHIBITS, AND IT WON'T BE MANY, AND THEN I CAN

CROSS-EXAMINE HER PROPERLY?

THE COURT:  DENIED.  YOU MAY PROCEED, MR. MOON.

MR. MOON:  OH, MY GOSH.  ALL RIGHT.

CROSS-EXAMINATION

BY MR. MOON:

Q    MS. WHETSTONE, DO YOU SOLELY OWN THE PROPERTY AT 794 MOUNTAIN VIEW STREET?

A    NO, I DO NOT.

Q    WHO ELSE CO-OWNS THE PROPERTY WITH YOU?

A    MY MOTHER, DOROTHEA BROOKS.

Q    DOROTHEA L. WHETSTONE.  OKAY.  WHEN YOU GAVE ME THE 30-DAY NOTICE, WERE THERE OTHER PARTIES OR RENTERS IN THE HOUSE?

A    YES.

Q    OKAY.  AND THE HOUSE IS A THREE-BEDROOM, A BATH-AND-A-HALF RESIDENTIAL DWELLING; IS THAT CORRECT?

A    CORRECT.

Q    OKAY.  AND THEN YOU RENT OUT THE THREE ROOMS, AND THEN YOU COME AND GO IN THE ILLEGAL GARAGE AREA THAT WAS CITED JUST RECENTLY --

MR. THEODOSIADIS:  OBJECTION.  ASSUMES FACTS NOT IN EVIDENCE.

Q    BY MR. MOON:  -- BY THE BUILDING AND SAFETY DEPARTMENT.

THE COURT:  SUSTAINED.

Q    BY MR. MOON:  OH, SO THERE WAS THREE -- WELL, THERE'S THREE RENTERS IN THE HOUSE.  DID YOU GIVE THEM ALSO A

30-DAY NOTICE?

MR. THEODOSIADIS:  OBJECTION.  RELEVANCE.

THE COURT:  SUSTAINED.

Q   BY MR. MOON:  DO YOU LIVE IN THE GARAGE AREA OF THE DWELLING?

A   NO, I DO NOT.

Q   AND WHERE DO YOU LIVE?

A   IN THE FAMILY ROOM AREA.

Q   WHERE?

A   IN THE FAMILY ROOM AREA.

Q   THE FAMILY ROOM AREA.  AND WHERE IS THAT LOCATED IN THE HOUSE?

A   IT'S IN THE BACK OF THE HOUSE.

Q   IT'S IN THE BACK.  IS IT BETWEEN THE BACK DOOR AND THE BREEZEWAY AND THE GARAGE AREA?

A   CORRECT.

Q   PARDON ME?

A   CORRECT.

Q   AND WAS THAT RECENTLY CITED AS UNINHABITABLE?

MR. THEODOSIADIS:  OBJECTION.  RELEVANCE.

THE WITNESS:  DUE TO YOU, YES.

THE COURT:  SUSTAINED.

MA'AM, WHEN YOU HEAR AN OBJECTION, DO NOT ANSWER --

THE WITNESS:  OKAY.

THE COURT:  -- UNTIL I RULE.  THANK YOU.

Q   BY MR. MOON:  WHEN YOU GAVE ME THE PROPER 30-DAY NOTICE, DID YOU STATE THAT BECAUSE I WASN'T PAYING ATTENTION TO YOU AND I WASN'T A GOOD FIT I HAD TO MOVE?

MR. THEODOSIADIS:  OBJECTION.  ARGUMENTATIVE.

THE COURT:  OVERRULED.  YOU MAY ANSWER WHEN I SAY OVERRULED.

THE WITNESS:  CAN YOU REPEAT THE QUESTION?

THE COURT:  MR. MOON, CAN YOU REPEAT THE QUESTION, PLEASE?

Q    BY MR. MOON:  WHEN YOU GAVE ME THE 30-DAY NOTICE ON DECEMBER 1ST, DID YOU STICK YOUR FINGER OUT AND SAY, "BECAUSE YOU HAVEN'T BEEN PAYING ATTENTION TO ME AND YOU'RE NOT A GOOD FIT, YOU HAVE TO MOVE"?

A    NO.

Q    WHAT WAS THE ANSWER?

A    NO.

Q    DO YOU KNOW WHAT REQUESTS FOR ADMISSIONS ARE?

A    NO.

Q    NO?  ON, I THINK IT WAS JUNE 29TH, 2021, CROSS-DEFENDANT JOEL L. LOFTON DEEMED REQUESTS FOR ADMISSIONS SET 1 AS ADMITTED.

MR. THEODOSIADIS:  OBJECTION.  FACTS NOT IN EVIDENCE.

THE COURT:  WERE THERE ADMISSIONS DEEMED ADMITTED?

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  AND MR. MOON, ARE YOU -- WHAT ARE YOU INTENDING TO DO?  SIMPLY READ A FACT THAT HAS BEEN DEEMED AS ADMITTED?

MR. MOON:  WELL, I NEED TO SUBMIT IT IN EVIDENCE BUT YOU DENY ME A RECESS TO DO THAT.  BUT THERE IS A RECORD WHICH I REQUESTED --

THE COURT: WE WILL TAKE UP THE ISSUE OF ADMISSIONS OUTSIDE THE HEARING OF THE JURY DURING A BREAK. SO WHY DON'T YOU ASK A DIFFERENT LINE OF QUESTIONS. REMIND ME THAT WE NEED TO ADDRESS THIS.

MR. MOON: OKAY. WELL, I CAN SAY ON THE RECORD THE REASON WHY I'M ADDRESSING IT IS BECAUSE --

THE COURT: MR. MOON?

MR. MOON: -- IT GOES TO PERJURY.

THE COURT: MR. MOON, WHY DON'T WE TAKE IT UP. IF YOU HAVE MORE QUESTIONS OF THE WITNESS, YOU MAY INQUIRE OF THIS WITNESS.

MR. MOON: OKAY.

Q    BY MR. MOON: DID YOU FILE A TEMPORARY RESTRAINING ORDER AGAINST ME ABOUT APRIL 14TH, 2021?

MR. THEODOSIADIS: OBJECTION. RELEVANCE.

THE COURT: SUSTAINED.

THE WITNESS: YES.

Q    BY MR. MOON: DID YOU FILE -- SHE SAID YES. DID YOU FILE A EVICTION -- A LIMITED UNLAWFUL EVICTION ACTION IN VIOLATION OF THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

A    NOT THAT I'M AWARE OF.

Q    DID YOU AND YOUR ATTORNEY OF RECORD AND YOUR MOM, DOROTHEA L. BROOKS, HAVE CAUSE TO READ, UNDERSTAND THE L.A. COUNTY BOARD OF SUPERVISORS --

MR. THEODOSIADIS: OBJECTION. CALLS FOR SPECULATION.

Q    BY MR. MOON: -- EVICTION MORATORIUM OF FEBRUARY --

THE COURT:  I'M SORRY.  WHAT'S THE OBJECTION?

MR. THEODOSIADIS:  CALLS FOR SPECULATION.  HE'S ASKING MS. WHETSTONE TO TESTIFY AS TO WHAT OTHER PEOPLE SHOULD OR SHOULDN'T BE DOING OR WHETHER THEY HAVE KNOWLEDGE.

THE COURT:  WOULD YOU RESTATE THE QUESTION?  I'M NOT CLEAR ON WHAT THE QUESTION WAS.

MR. MOON:  OKAY.  LET'S DO IT EASIER.

Q    BY MR. MOON:  LEAH WHETSTONE, WERE YOU GIVEN A COPY OF THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

MR. THEODOSIADIS:  OBJECTION.  RELEVANCE.

THE COURT:  OVERRULED.

THE WITNESS:  NO, I WASN'T.

Q    BY MR. MOON:  WAS YOUR ATTORNEY, THEODORE THEODOSIADIS, GIVEN A COPY OF THE LOS ANGELES COUNTY BOARD OF --

MR. THEODOSIADIS:  OBJECTION.  CALLS FOR SPECULATION.

Q    BY MR. MOON:  -- BOARD OF SUPERVISORS -- I'M NOT FINISHED ASKING THE QUESTION.

MR. THEODOSIADIS:  UNDERSTOOD.

THE COURT:  ON THAT BASIS, OBVIOUSLY DON'T SPECULATE, BUT IF YOU KNOW THE ANSWER YOU MAY ANSWER.

THE WITNESS:  CAN YOU REPEAT THE QUESTION?

MR. MOON:  OKAY.  WELL, I DIDN'T FINISH ASKING THE QUESTION.

THE COURT:  SIR, WOULD YOU PLEASE REPEAT IT FOR HER SO SHE CAN ANSWER.

MR. MOON:  OKAY.

Q    BY MR. MOON:  DID YOU AND YOUR ATTORNEY OF RECORD, THEODORE THEODOSIADIS, BY WAY OF REQUEST FOR ADMISSIONS SET 3 GIVEN A COPY OF THE LOS ANGELES COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM ORDER OF OCTOBER -- I MEAN, EXCUSE ME, FEBRUARY 23RD, 2021?

A    SO I ALREADY ANSWERED THAT I DID NOT RECEIVE ONE, AND I CANNOT ANSWER FOR MY ATTORNEY.  NOT THAT I'M AWARE OF.

Q    I SAID DID -- OKAY.

MR. MOON:  CAN SHE BE ALLOWED TO ASK HER ATTORNEY --

THE COURT:  NO.

MR. MOON:  -- IF THEY RECEIVED THE --

THE COURT:  NO.  YOU MAY INQUIRE FURTHER OF THIS WITNESS.  DID YOU HAVE OTHER QUESTIONS?

MR. MOON:  YEAH, I HAVE PLENTY OF QUESTIONS.

Q    BY MR. MOON:  AT THE HEARING ON -- WELL, IN THE TEMPORARY RESTRAINING ORDER CASE WHETSTONE VERSUS MOON, CASE NO. 21PD -- NO.  PDRO00339, DID YOU ON THE RECORD STATE THAT YOU WERE AWARE OF THE LOS ANGELES COUNTY EVICTION MORATORIUM ORDER OF OCTOBER -- I MEAN, EXCUSE ME, FEBRUARY 23RD, 2021?

MR. THEODOSIADIS:  OBJECTION.  RELEVANCE.

THE COURT:  SUSTAINED.

THE WITNESS:  NO.

Q    BY MR. MOON:  WHEN YOU GAVE ME THE 30-DAY NOTICE, WAS MY RENT CURRENT?

A    YES.

Q    AND WHY DID YOU GIVE ME THE 30-DAY NOTICE?

A    I'VE ALREADY EXPLAINED EARLIER.

Q    PARDON ME?

A    I ALREADY EXPLAINED THAT.

Q    WHEN YOU GAVE ME THE 30-DAY NOTICE, WHY DID YOU GIVE ME THE 30-DAY NOTICE?

A    I ALREADY EXPLAINED THAT, MOE.

Q    OKAY.  WHEN YOU GAVE ME THE 30-DAY NOTICE, WAS I SELLING DRUGS OUT OF YOUR HOUSE?

MR. THEODOSIADIS:  OBJECTION.  RELEVANCE.

THE COURT:  OVERRULED.

YOU CAN ANSWER.

THE WITNESS:  NOT THAT I'M AWARE OF.

Q    BY MR. MOON:  WHEN YOU GAVE ME THE 30-DAY NOTICE, WAS THERE A HEALTH AND SAFETY ISSUE REGARDING MY MONTH-TO-MONTH RENTAL AGREEMENT?

A    YES.

Q    AND WHAT WAS THAT?

A    NOT FOLLOWING THE HOUSE RULES OF SANITATION.

Q    OKAY.  AND WAS THERE LIKE A HOUSE RULES LIST THAT WAS POSTED SOMEWHERE AND THEN -- THAT'S THE QUESTION.

A    EXCUSE ME?

Q    WAS THERE A HOUSE RULES LIST POSTED SOMEWHERE WHERE WE WOULD UNDERSTAND THAT THERE'S HOUSE RULES?

A    NO, THERE'S NOTHING POSTED.

Q    OKAY.  NOW, WHEN YOU GAVE ME THE 30-DAY NOTICE, WERE YOU AWARE THAT THERE WERE EVICTION MORATORIUMS IN PLACE THAT DIDN'T ALLOW YOU TO GIVE ME A 30-DAY NOTICE?

MR. THEODOSIADIS:  OBJECTION.  ASSUMES FACTS NOT IN EVIDENCE.

THE COURT: OVERRULED. I'LL ALLOW HER TO ANSWER IF SHE KNOWS OF ANYTHING, BUT WE'LL TAKE IT ONE STEP AT A TIME.

THE WITNESS: SO NOT UNDER YOUR CIRCUMSTANCES.

MR. MOON: WHAT? OH, YOUR HONOR, CAN YOU READ ME BACK MY QUESTION BECAUSE SHE (INDISCERNIBLE) ON THAT ONE.

THE COURT: NO. WE DON'T HAVE A COURT REPORTER, SIR.

Q    BY MR. MOON: OKAY. WHEN YOU GAVE ME THE 30-DAY NOTICE, DID YOU KNOW THAT THERE WERE SEVERAL MORATORIUMS -- EVICTION MORATORIUMS IN PLACE IN THE STATE OF CALIFORNIA?

A    SEVERAL? NO. I WAS UNAWARE OF THAT.

Q    HOW MANY?

A    I ONLY KNOW --

Q    HOW MANY DID YOU KNOW OF?

A    ONE.

Q    AND WHICH ONE WAS THAT?

A    I DON'T KNOW THE CODE FOR THAT PARTICULAR MORATORIUM.

Q    WAS IT THE LOS ANGELES COUNTY EVICTION MORATORIUM ORDER OF FEBRUARY 23RD, 2021?

A    I BELIEVE SO.

Q    OKAY. NOW, AFTER READING THAT AND UNDERSTANDING THAT EVICTION -- L.A. COUNTY BOARD OF SUPERVISORS EVICTION MORATORIUM OF FEBRUARY 23RD, 2021, IS IT YOUR UNDERSTANDING THAT I COULD COME AFTER YOU BOTH CIVILLY AND CRIMINALLY?

A    BASED ON WHAT?

Q    BASED ON YOUR READING OF THAT EVICTION MORATORIUM ORDER.

A    THE EVICTION MORATORIUM ORDER THAT I HAD WOULD NOT APPLY TO YOU.

Q    IT DIDN'T APPLY TO ME.  IS THAT YOUR ANSWER?

A    YES, IT IS.

Q    OKAY.  NOW, IS IT YOUR UNDERSTANDING THAT AN EVICTION MORATORIUM APPLIES TO A TENANT?

A    YES.

Q    IS IT YOUR UNDERSTANDING THAT AN EVICTION MORATORIUM APPLIES TO A LANDLORD?

A    YES.

Q    IS IT YOUR UNDERSTANDING THAT CALIFORNIA EVICTION MORATORIUM ORDERS, ALL SEVEN OR EIGHT OF THEM, APPLIES TO MORTGAGE LENDERS?

A    APPLY TO WHAT?

Q    MORTGAGE LENDERS.  LIKE, YOU KNOW, THEY CAN -- THEY NOT SUPPOSED TO -- YOU DON'T HAVE TO PAY YOUR MORTGAGE IF YOU DON'T HAVE TO DURING COVID TIME BETWEEN DECEMBER 1ST, 2019, TO THE PRESENT DATE.  SO IS IT YOUR UNDERSTANDING THAT ALSO APPLIES TO MORTGAGE LENDERS?  YOU DIDN'T HAVE TO PAY YOUR MORTGAGE BECAUSE --

MR. THEODOSIADIS:  OBJECTION.  RELEVANCE.

Q    BY MR. MOON:  -- OF THE EVICTION MORATORIUM.

THE COURT:  SUSTAINED.  SUSTAINED.

Q    BY MR. MOON:  OKAY.  NOW, IF YOU UNDERSTAND THAT -- DO YOU KNOW WHAT MORATORIUM MEANS?

A    NO.

Q    WOULD YOU LIKE FOR ME TO TELL YOU?

A    YES.  PLEASE.

Q    IT MEANS STAY.  THAT MEANS YOU CAN'T DO ANYTHING. THAT MEANS, LIKE, WHAT I'M TRYING TO DO WITH THIS JURY TRIAL. IT MEANS YOU CAN'T DO ANYTHING.  DO YOU UNDERSTAND THAT DURING COVID TIMES THAT THE REASON FOR THE MORATORIUM WAS THAT PEOPLE WOULD BE IN ONE PLACE AND NOT, YOU KNOW, CONTACT COVID BY MOVING AROUND?

MR. THEODOSIADIS:  OBJECTION.  OBJECTION.

THE COURT:  SUSTAINED.

Q    BY MR. MOON:  DO YOU UNDERSTAND THAT BETWEEN THE PERIOD OF DECEMBER 1ST, 2019 -- NO.  2000 WHEN YOU GAVE ME THE 30-DAY NOTICE THAT COVID INFECTIONS WERE AT AN ALL-TIME HIGH?

MR. THEODOSIADIS:  OBJECTION.

THE COURT:  SUSTAINED.

Q    BY MR. MOON:  OKAY.  HAVE YOU CONTACTED COVID-19?

MR. THEODOSIADIS:  OBJECTION.

THE COURT:  SUSTAINED.

Q    BY MR. MOON:  IN YOUR -- YOUR AMENDED COMPLAINT, DID YOU STATE THAT POSSESSION OF THE PROPERTY WAS NO LONGER AN ISSUE?

A    CAN YOU REPEAT THAT, PLEASE?

Q    WHEN YOU FILED YOUR AMENDED COMPLAINT TO THIS ACTION, DID YOU STATE THAT THE POSSESSION OF THE PREMISES WAS NO LONGER AT ISSUE?

A    NO.

Q    DID YOU SIGN THE DOCUMENT?

A    SIGN THE DOCUMENT OF WHAT?

Q    DID YOU SIGN THE UNLAWFUL DETAINER ACTION DOCUMENT?

A    YES.

Q     WHEN YOU FILED IT?

A     YES.

Q     PARDON ME?

A     YES.

Q     DO YOU UNDERSTAND THAT YOU SIGNED IT UNDER THE PENALTY OF PERJURY?

A     NO.

Q     SO YOU DON'T RECALL WHEN YOU SIGNED THE DOCUMENT THAT YOU WERE SIGNING UNDER THE PENALTY OF PERJURY.

A     YES.  I -- WHEN I PUT THE -- ARE YOU REFERRING TO YOUR RESTRAINING ORDER?

Q     I'M REFERRING TO THIS UNLAWFUL DETAINER ACTION.

A     OKAY.

Q     THIS FRIVOLOUS UNLAWFUL DETAINER ACTION.

A     OKAY.

Q     DO YOU UNDERSTAND THAT WHEN YOU SIGN ANYTHING UNDER THE PENALTY OF PERJURY AND YOU LIE THAT YOU COULD -- YOU COULD GO TO JAIL FOR THE PENALTY OF PERJURY, PENAL CODE SECTION 1118 (SIC)?

A     YES.

Q     NOW, DO YOU ALSO UNDERSTAND IF YOU ANSWER A QUESTION UNDER THE PENALTY OF PERJURY THAT YOU CANNOT GIVE TWO DIFFERENT ANSWERS, LIKE ONE TIME YOU ANSWER YES AND THEN THE SECOND TIME YOU ANSWER NO, ONE OF THOSE ANSWERS IS PERJURY?

MR. THEODOSIADIS:  OBJECTION, YOUR HONOR.

THE COURT:  SUSTAINED.

Q     BY MR. MOON:  DO YOU UNDERSTAND THAT PENALTY OF PERJURY IS WHEN YOU LIE?

MR. THEODOSIADIS:  OBJECTION, YOUR HONOR.

THE COURT:  SUSTAINED.

MR. MOON:  OKAY.  LET ME SEE WHAT ELSE I GOT.

Q    BY MR. MOON:  IN YOUR REQUEST FOR ADMISSIONS SET 1 THAT WERE DEEMED ADMITTED, DID YOU ADMIT THAT THE REASON WHY YOU FILED THIS EVICTION IS BECAUSE I WOULDN'T HAVE SEX WITH YOU AND I WAS NOT A PERFECT FIT?

MR. THEODOSIADIS:  OBJECTION, YOUR HONOR.

THE COURT:  SUSTAINED.

MR. MOON:  LET'S SEE.  WHAT ELSE?  YOUR HONOR, AT THIS TIME BECAUSE I DON'T HAVE EVIDENCE BEFORE ME BECAUSE, LIKE I SAID, YOU WOULDN'T ALLOW ME TO RECESS TOMORROW, I RESERVE THE RIGHTS TO REQUEST TO REEXAMINE -- WHAT DO YOU CALL IT?  REEXAMINE, I'LL USE THAT, THIS WITNESS AT A FURTHER TIME WHEN I CAN PRESENT THE EXHIBITS AND THE EVIDENCE TO ASK THE QUESTIONS THAT ARE MATERIAL TO THIS CASE.

THE COURT:  I HEARD YOUR WORDS.  HAVE YOU OTHERWISE FINISHED EXAMINING THIS WITNESS?

MR. MOON:  AT THIS POINT, LIKE I SAID, UNLESS I HAVE THE EVIDENCE AND THE EXHIBITS --

THE COURT:  VERY GOOD.

MR. MOON:  -- THAT ARE BEFORE THE COURT, I CAN'T, SO I'M RESERVING THE RIGHT TO REEXAMINE HER AT A LATER TIME.

THE COURT:  ALL RIGHT.

COUNSEL, ANY REDIRECT EXAMINATION?

MR. THEODOSIADIS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  THANK YOU, MA'AM.  YOU MAY STEP DOWN FOR NOW.  JUST LEAVE IT THERE, PLEASE.

ALL RIGHT.  DOES PLAINTIFF HAVE ANY OTHER WITNESSES THAT PLAINTIFF INTENDS TO CALL?

MR. THEODOSIADIS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO PLAINTIFF RESTS ON PLAINTIFF'S DIRECT CASE, CORRECT?

MR. THEODOSIADIS:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  MR. MOON, AT THIS TIME, YOU MAY PRESENT WITNESSES, PRESENT TESTIMONY.  HOW WOULD YOU LIKE TO PROCEED, SIR?

MR. MOON:  LIKE I MENTIONED EARLIER, I WOULD LIKE TO RECESS UNTIL TOMORROW.  THAT WAY I CAN PRESENT MY EVIDENCE AND BE PRESENT IN THE COURTROOM.

AND, LIKE I SAID, MOST OF MY WITNESSES ARE HOSTILE WITNESSES WHERE THEY DON'T COME TO THE COURT EVEN WHEN THEY'RE SUBPOENAED, BUT I DO HAVE THEODORE THEODOSIADIS AS A WITNESS, AND -- BUT LIKE I SAID, I WOULD LIKE TO WAIT UNTIL -- OR RECESS UNTIL TOMORROW IF THE COURT PERMITS, AND THAT WAY I WILL BE PREPARED TO (INDISCERNIBLE) MY WITNESSES AND THEN REDIRECT MY WITNESS, ACTUALLY, LEAH WHETSTONE.

THE COURT:  ALL RIGHT.  THAT REQUEST FOR RECESS IS DENIED.  SIR, YOU MAY PROCEED WITH CALLING YOUR FIRST WITNESS.

MR. MOON:  OKAY.  THEO THEODOSIADIS.

MR. THEODOSIADIS:  OBJECTION, YOUR HONOR.

THE COURT:  OBJECTION IS SUSTAINED.

MR. MOON:  WELL, HE WAS SUBPOENAED, YOUR HONOR, AND WE ADDRESSED THAT EARLIER AT BREAK.

THE COURT:  CORRECT.

MR. MOON:  I HAVE THE SUBPOENA, AND IT'S ACTUALLY --

IT'S ON THE RECORD.  HE'S ACTUALLY BEEN FILED AND SERVED, SO, YOU KNOW, HE'S OBJECTING.  I WOULD LIKE TO PUT HIM IN CONTEMPT OF THE SUBPOENA.

THE COURT:  I SUSTAINED THE OBJECTION.  DID YOU WISH TO CALL ANOTHER WITNESS, SIR?

MR. MOON:  LIKE I SAID, MY WITNESSES ARE NOT PRESENT IN COURT.  IS DOROTHEA L. BROOKS IN THE COURTROOM?

THE COURT:  IS DOROTHEA L. BROOKS IN THE COURTROOM?

NO, SIR, SHE'S NOT.

MR. MOON:  OH, I GUESS WHAT I COULD DO IS LET ME CALL DOUGLAS W. STERN AS A WITNESS THAT WAS SUBPOENAED AND SERVED ON YOUR COUNSEL, COURT COUNSEL FREDERICK BENNETT, YESTERDAY.  I DON'T KNOW IF HE'S TALKED TO YOU, BUT DO YOU WISH TO PROCEED WITHOUT YOUR ATTORNEY OF RECORD OR DO YOU WANT --

THE COURT:  THE COURT WILL INTERPOSE ITS OWN OBJECTION AND NOT ALLOW THIS BENCH OFFICER TO BE CALLED AS A WITNESS IN THIS TRIAL.

DID YOU HAVE ANYONE ELSE YOU WISH TO CALL, SIR?

MR. MOON:  IS VICTOR G. VIRAMONTES NEXT DOOR IN HIS COURTROOM, 93?

THE COURT:  HE IS NOT PRESENT IN THIS COURTROOM.  WAS A SUBPOENA SERVED ON HIM?

MR. MOON:  YES, YOUR HONOR.  EVERYBODY I WILL MENTION --

THE COURT:  THE COURT WILL --

MR. MOON:  -- SUBPOENAS WAS SERVED.

THE COURT:  THE COURT WILL INTERPOSE THE COURT'S OWN

OBJECTION AND NOT ALLOW THE TESTIMONY OF A FELLOW JUDGE.

MR. MOON:  A DISQUALIFIED JUDGE.  HE'S A CROSS-DEFENDANT.

WHAT ABOUT CHRISTOPHER ALLEN DARDEN OF THE O.J. DARDEN?  IS HE IN THE COURT?  HE WAS SUBPOENAED TOO TO BE PRESENT, ACTUALLY, YESTERDAY.  IS HE PRESENT IN THE COURT?

THE COURT:  THE COURT DOES NOT BELIEVE HE'S PRESENT.

LET ME INQUIRE OF PLAINTIFF'S COUNSEL.  HAVE YOU SEEN MR. DARDEN?

MR. THEODOSIADIS:  NOT RECENTLY, YOUR HONOR.

THE COURT:  NO, SIR, HE IS NOT PRESENT.  I DON'T BELIEVE HE WAS ON YOUR LIST BUT I COULD BE MISTAKEN.  IN ANY EVENT, HE IS NOT PRESENT.

MR. MOON:  NO.  YEAH, HE IS ON THE LIST.

THE COURT:  YES, HE IS.

MR. MOON:  WHAT ABOUT THE SHERIFF DETECTIVE DEREK H. TAYLOR?  IS HE PRESENT IN THE COURT?

THE COURT:  IT DOES NOT APPEAR SO, NO.

MR. MOON:  OKAY.  IS GAVIN NEWSOM PRESENT IN THE COURT?  HE WAS SUBPOENAED THROUGH HIS LEGAL DEPARTMENT TO BE PRESENT, SO HE'S AWARE OF THIS CASE.  ACTUALLY BEEN AWARE OF IT.

THE COURT:  NO, SIR, HE IS NOT PRESENT.

MR. MOON:  OKAY.  CAN WE CALL THESE PEOPLE TO SEE WHERE THEY ARE AND IF THEY'RE GOING TO BE PRESENT TODAY IN THE COURTROOM?

THE COURT:  SIR, I HAVE NO EVIDENCE THAT ANY OF THEM HAVE BEEN SERVED A LAWFUL SUBPOENA.  DO YOU HAVE A WITNESS WHO

YOU WISH TO TESTIFY WHO YOU BELIEVE YOU HAVE ACTUALLY SUBPOENAED AND IS EITHER IN THE COURTROOM OR AVAILABLE TO TESTIFY?

MR. MOON: WELL, YEAH. I SAID DOUGLAS W. STERN AND THEO THEODOSIADIS, WHICH BOTH WERE PROPERLY SERVED THROUGH YOUR -- WELL, THEODORE PROBABLY DOESN'T -- HE'S IN PRO SE, BUT YOU HAVE COURT COUNSEL. AND ACTUALLY COURT COUNSEL SET UP BECAUSE OF ME BECAUSE WHEN I FILE SUBPOENAS AGAINST COURTHOUSE EMPLOYEES, IT GOES TO THEM, THEY CALL YOU AND ASK YOU IF YOU WANT THEM TO REPRESENT YOU OR DO YOU WANT TO GET PRIVATE COUNSEL.

SO HAS FREDERICK BENNETT OF THE COURT COUNSEL CONTACTED YOU ABOUT THE SUBPOENA THAT HE RECEIVED YESTERDAY THAT WAS FILED THIS MORNING THAT SHOULD SHOW -- YOU SAW THE OTHER STUFF I FILED THIS MORNING, SO YOU SHOULD BE ABLE TO SEE THE SUBPOENAS TOO WITH THE PROOF OF SERVICES. SO THESE ARE ACTUAL LEGAL ISSUANCE OF SUBPOENAS THAT WERE PROPERLY SERVED.

BUT YOU'RE TELLING ME THAT BECAUSE THESE PEOPLE ARE IN CONTEMPT OF THESE SUBPOENAS THAT, YOU KNOW -- THEN, YOU KNOW, THAT GOES TO PREJUDICE ME AS THE DEFENDANT, VICTIM AND A CROSS-PLAINTIFF, AND THAT'S THE REASON WHY I REQUESTED THAT THIS CASE BE STAYED UPON APPEAL.

BECAUSE, LIKE I SAID, YOUR QUESTION OF YOUR DISQUALIFICATION IS -- HAS NOT BEEN DETERMINED, SO YOU CAN'T PROCEED -- WELL, I BELIEVE YOU THINK YOU CAN BUT LEGALLY YOU CAN'T, SO I WOULD REENTER THAT REQUEST THAT THIS BE STAYED SO I'LL FILE A NOTICE OF APPEAL AND LET THEM DECIDE WHAT TO DO FROM THERE.

OR YOU ALLOW ME TO GET MY WITNESSES TOGETHER, CALL THEM UP, TELL THEM THEY'VE BEEN PROPERLY SUBPOENAED, YOU AS WELL, AND TO BE PRESENT IN THE COURTROOM TOMORROW.

THE COURT:  THE COURT IS NOT AWARE OF ANY VALID PROOF OF SERVICE ON ANY OF YOUR WITNESSES.  I WILL ASK ONE LAST TIME.  MR. MOON --

MR. MOON:  IF YOU DON'T -- IF YOU GO TO THE -- YOUR COMPUTER THERE IN FRONT OF YOU AND LOOK AT THE DOCUMENTS THAT HAVE BEEN FILED, YOU WILL SEE THAT THIS MORNING I FILED ABOUT 28 SUBPOENAS THAT HAVE BEEN PROPERLY SERVED.

IS KATHRYN BARGER-LIEBRICH IN THE COURTROOM?

THE COURT:  NO, SIR, SHE IS NOT.

MR. MOON:  IS FESIA DAVENPORT IN THE COURTROOM?

THE COURT:  I DO NOT BELIEVE SO.  NO.

MR. MOON:  IS EVE A. WILLIAMS IN THE COURTROOM?

THE COURT:  NO.

MR. MOON:  IS LEAH GERSHON IN THE COURTROOM?

THE COURT:  NO.

MR. MOON:  LET'S SEE.  SHERRI CARTER, THE CLERK OF -- COURT OF THE CLERK?

THE COURT:  NO.

MR. MOON:  CLERK COURT?

THE COURT:  NO, SHE IS NOT.

MR. MOON:  OKAY.  SO I'M REQUESTING THAT THE SUBPOENAS -- BENCH WARRANTS BE ISSUED, GET THESE HOSTILE WITNESSES FOR CONTEMPT OF THE SUBPOENA AND WITHOUT OBJECTION. THEY HAVEN'T EVEN FILED OBJECTIONS TO A (INDISCERNIBLE).  AND ACTUALLY EARLIER DURING THE BREAK WE WENT OVER THE REASONS WHY

THESE EXPERT WITNESSES WERE NECESSARY TO -- FOR MY DEFENSE.

THE COURT: ALL RIGHT. LADIES AND GENTLEMEN OF THE JURY, WE'RE GOING TO TAKE OUR LUNCH BREAK A BIT EARLY TODAY. PLEASE BE BACK. I'M GOING TO GIVE YOU UNTIL 2:15. I REALIZE THAT'S A LONG TIME, BUT WE WILL RECONVENE AT 2:15. AGAIN, PLEASE COME OUTSIDE THE DOOR. WE'LL BRING YOU IN AS A GROUP.

I WANT TO REMIND YOU, PLEASE DON'T DISCUSS ANYTHING ABOUT THE CASE EVEN AMONGST YOURSELVES. JUST RELAX, ENJOY YOUR LONG LUNCH. TAKE A NICE WALK, WHATEVER. BUT THANK YOU. WE WILL SEE YOU AT 2:15.

AN UNIDENTIFIED JUROR: YOUR HONOR?

THE COURT: YES. DID YOU HAVE A QUESTION? YES, LEAVE YOUR BOOKS HERE. DO NOT TAKE THEM OUT. WE ARE GOING TO COLLECT THE ONES THAT ARE IN THE PUBLIC AREA JUST SO THAT WE HAVE BETTER CONTROL OVER THEM AND WE'LL BRING THEM BACK TO YOU. YEAH, IF YOU WANT TO BRING THEM FORWARD AND SET THEM ON THAT SEAT, THAT'S FINE.

ALL RIGHT. DID ANYONE ELSE HAVE ANY QUESTIONS? ALL RIGHT. PLEASE ENJOY YOUR LUNCH. DON'T DISCUSS ANYTHING. DON'T DO RESEARCH. JUST RELAX.

(THE FOLLOWING PROCEEDINGS WERE HELD

OUT OF THE PRESENCE OF THE JURY:)

THE COURT: ALL RIGHT. WE ARE OUT OF THE PRESENCE OF THE JURY. THEY HAVE ALL EXITED. WE ARE IN THE COURTROOM. PLAINTIFF'S COUNSEL, PLAINTIFF PRESENT, MYSELF, COURT STAFF, MR. MOON ON THE PHONE.

MR. MOON, I HAD INDICATED TO YOU BEFORE WE HAD BROUGHT THE JURY IN PREVIOUSLY THAT WE COULD GO THROUGH AND

HEAR YOUR OFFER OF PROOF WITH RESPECT TO THESE VARIOUS WITNESSES. WE DID SO ON A FEW OF THEM BEFORE WE BROUGHT THE JURY IN, AND I INTEND TO CONTINUE DOING THAT NOW.

WITH RESPECT TO ANY OF THE PEOPLE THAT YOU HAVE JUST INDICATED IN THE LAST 10 OR 15 MINUTES WHEN YOU WENT THROUGH THE LIST, AS I HAVE STATED ALREADY, I HAVE NO RECORD OF A VALID PROOF OF SERVICE HAVING BEEN SERVED ON ANY OF THOSE PEOPLE.

THE COURT HAS LOOKED AT THE ELECTRONIC DOCKET WHICH IS AVAILABLE TO IT. THE COURT DOES NOTE THAT THERE WERE A VERY SUBSTANTIAL NUMBER OF DOCUMENTS THAT YOU FILED TODAY, NOVEMBER 2ND; HOWEVER, BECAUSE THEY WERE JUST FILED THIS MORNING THEY ARE NOT YET SCANNED INTO THE SYSTEM SO I DON'T HAVE THE ABILITY TO ACTUALLY PULL UP A COPY IN THE SYSTEM, NOR DID YOU SUPPLY EITHER A COURTESY COPY OR A CONFORMED COPY SO THAT I WOULD HAVE IT IN THE COURTROOM.

I WANT TO CONTINUE. I BELIEVE THE LAST WITNESS WE COVERED WHEN WE WERE OUTSIDE THE PRESENCE OF THE JURY THAT YOU WISH TO CALL WAS DAVID JULIAN COWAN. THAT IS JUDGE COWAN OF THIS COURT, CORRECT?

MR. MOON: WELL, THERE'S TWO THINGS I NEED TO ADDRESS. WE'RE ON THE RECORD, RIGHT?

THE COURT: WE ARE ON THE RECORD, YES, SIR.

MR. MOON: OKAY. THE FIRST THING IS I SUBMITTED A JURY INSTRUCTION AND A PROPOSED -- WHAT IS IT CALLED? HOLD ON A SECOND. THE JURY INSTRUCTIONS AND THE -- OH. YEAH, WHAT'S IT CALLED? OH, THE JURY VERDICT STATEMENT, AND IT DOES NOT COMPLY TO OUR JOINT AGREEMENT OF WHAT -- THAT WAS PRESENTED TO

THIS JURY.

AND THE SECOND THING IS BY 2:00 I WOULD HAVE FILED A NOTICE OF APPEAL AND A STAY.  SO I DON'T WISH TO PROCEED WITH YOU ANYMORE BECAUSE, LIKE I SAID, YOU'RE BIASED, PREJUDICED, AND THIS THING IS NOT GOING AS ORDERLY AS YOU STATED WITH ME. SO AT THIS TIME I'LL JUST ACKNOWLEDGE.

AND THEN ALSO I'LL BE -- SEND YOU A COPY OF -- BEFORE THEY -- WE COME BACK IN BY 2:00, I WOULD HAVE ALREADY FILED A NOTICE OF APPEAL AND A STAY.

SO THAT -- THAT WILL, YOU KNOW, I'M OFF THE RECORD.

THE COURT:  NO, YOU'RE ON THE RECORD.  THIS IS ON THE RECORD, SIR.  ALL RIGHT.  MR. MOON, CONTINUING ON.  WHO IS JEANMARIE WARREN, AND WAS SHE SERVED?  IF SO, WHEN?  AND GIVE ME AN OFFER OF PROOF AS TO WHAT SHE WOULD TESTIFY TO.

MR. MOON?  DID HE HANG UP?

THE CLERK:  HE DID.

THE COURT:  HE HUNG UP?

THE CLERK:  HE DID.

THE COURT:  ALL RIGHT.  THE COURT NOTES WE'RE STILL IN SESSION.  ACCORDING TO THE COMPUTER AND THE CLOCK IN THE COURTROOM, IT'S 11:52.  I DID NOT INDICATE THAT WE WERE NO LONGER IN SESSION, ON RECESS OR ADJOURNED, AND I DON'T KNOW WHY MR. MOON CHOSE TO HANG UP.

IN ANY EVENT, ALL RIGHT.  WE WILL RECONVENE AT 2:15. PLEASE BE HERE A BIT BEFORE THAT IN CASE THERE ARE ANY OTHER MATTERS WE NEED TO ADDRESS.

(THE NOON RECESS WAS TAKEN UNTIL 2:15 P.M.

OF THE SAME DAY.)

CASE NUMBER:                21PDUD00319

CASE NAME:                  LEAH WHETSTONE VS. ADRIAN MOON

LOS ANGELES, CA             TUESDAY, NOVEMBER 2, 2021

DEPARTMENT 92               HON. DOUGLAS W. STERN, JUDGE

TRANSCRIBER:                CARYN HOBBIS, CSR NO. 9432

TIME:                       P.M. SESSION

APPEARANCES:  NO APPEARANCE BY DEFENDANT ADRIAN MOON IN PRO SE; PLAINTIFF LEAH WHETSTONE, PRESENT WITH COUNSEL, THEODORE THEODOSIADIS, ESQ.

             (THE FOLLOWING PROCEEDINGS WERE HELD
                OUT OF THE PRESENCE OF THE JURY:)

THE COURT:  ALL RIGHT.  IT IS 2:36 P.M.  THE JUDICIAL ASSISTANT HAS OPERATED THE L.A. COURTCONNECT, AND THAT HAS BEEN PROPERLY OPERATED AND WE'VE CONNECTED, CORRECT?

THE CLERK:  CORRECT, YOUR HONOR.

THE COURT:  AND MR. MOON DID NOT LOG ON.  AM I CORRECT?

THE CLERK:  CORRECT.

THE COURT:  AND THEN I DIRECTED YOU TO TELEPHONE HIM SO THAT WE REACHED OUT TO HIM AT THE PHONE NUMBER HE GAVE US, CORRECT?

THE CLERK:  YES.

THE COURT:  YOU WANT TO RECITE THE NUMBER YOU USED?

THE CLERK:  THE PHONE NUMBER WE HAVE ON FILE IS (626) 360-9896.

THE COURT:  AND NO RESPONSE AT THAT NUMBER?

THE CLERK:  NO RESPONSE, YOUR HONOR.

THE COURT:  ALL RIGHT.  DIAL IT ONE MORE TIME.

THE CLERK:  I'LL PUT IT ON SPEAKER.

THE COURT:  HE WAS ORDERED TO RETURN AT 2:30 THIS AFTERNOON.  I'M SORRY.  2:15.  2:15.

(PAUSE.)

THE COURT:  ALL RIGHT.  WELL, OKAY.  WE JUST GOT HIS VOICEMAIL.  ALL RIGHT.  THE JURY IS NOT YET PRESENT.

LET ME INQUIRE OF PLAINTIFF.  WHAT IS YOUR VIEW AS TO HOW WE SHOULD PROCEED?

MR. THEODOSIADIS:  MOVE FOR A DIRECTED VERDICT, YOUR HONOR.  I DON'T BELIEVE THE EVIDENCE IS CLOSED YET.  I DON'T SEE MR. MOON PUTTING ON ANY EVIDENCE.  THE WITNESSES HE HAS LISTED, I DON'T BELIEVE ANY OF THEM WILL SHOW TO MY KNOWLEDGE. AT THIS POINT I DON'T KNOW HOW ELSE TO PROCEED.

THE COURT:  WHY DON'T WE BRING THE JURY IN.  WE WILL PROCEED.  YOU CAN MAKE YOUR CLOSING ARGUMENT.  I WILL LET IT GO TO THE JURY.

THE SYSTEM REMAINS ON?

THE CLERK:  YES, YOUR HONOR.

THE COURT:  SO HE CAN DIAL?

THE CLERK:  HE CAN ENTER.

THE COURT:  HE CAN DIAL IN.

THE CLERK:  HE CAN DIAL IN AT ANY MOMENT.

THE COURT:  ALL RIGHT.

(THE FOLLOWING PROCEEDINGS WERE HELD IN

THE PRESENCE OF THE JURY:)

THE COURT:  ALL RIGHT, LADIES AND GENTLEMEN.  AT THIS POINT, I AM GOING TO READ TO YOU THE CONCLUDING

INSTRUCTIONS.

"THIS IS AN ACTION FOR WHAT IS CALLED UNLAWFUL DETAINER.  LEAH WHETSTONE, THE LANDLORD, CLAIMS THAT ADRIAN D. MOON IS HER TENANT UNDER A SHORT-TERM RENTAL AGREEMENT AND THAT MR. MOON NO LONGER HAS THE RIGHT TO OCCUPY THE PROPERTY. MS. WHETSTONE SEEKS TO RECOVER POSSESSION OF THE PROPERTY FROM MR. MOON.  MR. MOON CLAIMS THAT HE STILL HAS THE RIGHT TO OCCUPY THE PROPERTY.  THE PROPERTY INVOLVED IN THIS CASE IS A HOUSE LOCATED IN ALTADENA, CALIFORNIA, AT 784 MOUNTAIN VIEW."

THE CLERK:  I'M SORRY, YOUR HONOR, TO INTERRUPT. IT'S 794.  THAT'S A TYPO.  I APOLOGIZE.

THE COURT:  ALL RIGHT.  THANK YOU.

"LEAH WHETSTONE CLAIMS THAT ADRIAN D. MOON NO LONGER HAS THE RIGHT TO OCCUPY THE PROPERTY BECAUSE THE RENTAL AGREEMENT HAS ENDED.  TO ESTABLISH THIS CLAIM, MS. WHETSTONE MUST PROVE ALL OF THE FOLLOWING:

"ONE, THAT LEAH WHETSTONE OWNS THE PROPERTY.

"TWO, THAT MS. WHETSTONE LEASED THE PROPERTY TO ADRIAN D. MOON UNTIL FEBRUARY 1, 2021.

"THREE, THAT MS. WHETSTONE DID NOT GIVE MR. MOON PERMISSION TO CONTINUE OCCUPYING THE PROPERTY AFTER THE LEASE ENDED.

"AND FOUR, THAT MR. MOON IS STILL OCCUPYING THE PROPERTY.

"LEAH WHETSTONE CLAIMS THAT ADRIAN D. MOON NO LONGER HAS THE RIGHT TO OCCUPY THE" -- OH, THIS IS THE SAME, ISN'T IT?  OKAY.  I'LL READ IT.

4306.  "LEAH WHETSTONE CLAIMS THAT ADRIAN D. MOON NO

LONGER HAS THE RIGHT TO OCCUPY THE PROPERTY BECAUSE THE TENANCY HAS ENDED.  TO ESTABLISH THIS CLAIM, MS. WHETSTONE MUST PROVE ALL OF THE FOLLOWING:

"ONE, THAT MS. WHETSTONE OWNS THE PROPERTY.

"TWO, THAT MS. WHETSTONE RENTED THE PROPERTY TO ADRIAN D. MOON UNDER A MONTH-TO-MONTH LEASE.

"THREE, THAT MS. WHETSTONE GAVE MR. MOON PROPER 30 DAYS' NOTICE THAT THE TENANCY WAS ENDED.

"AND FOUR, THAT MR. MOON IS STILL OCCUPYING THE PROPERTY.

"MEMBERS OF THE JURY, YOU HAVE NOW HEARD ALL THE EVIDENCE, AND THE CLOSING ARGUMENTS WILL BE PRESENTED IN A MOMENT.  BUT BEFORE THEY DO, IT IS MY DUTY TO INSTRUCT YOU ON THE LAW THAT APPLIES TO THIS CASE.  YOU MUST FOLLOW THESE INSTRUCTIONS AS WELL AS THOSE THAT I PREVIOUSLY GAVE YOU.  YOU WILL HAVE A COPY OF MY INSTRUCTIONS WITH YOU WHEN YOU GO TO THE JURY ROOM TO DELIBERATE.

"YOU MUST DECIDE WHAT THE FACTS ARE.  YOU MUST CONSIDER ALL THE EVIDENCE AND THEN DECIDE WHAT YOU THINK HAPPENED.  YOU MUST DECIDE THE FACTS BASED ON THE EVIDENCE ADMITTED IN THIS TRIAL.

"DO NOT ALLOW ANYTHING THAT HAPPENS OUTSIDE THIS COURTROOM TO AFFECT YOUR DECISION.  DO NOT TALK ABOUT THIS CASE OR THE PEOPLE INVOLVED IN IT WITH ANYONE, INCLUDING FAMILY AND PERSONS LIVING IN YOUR HOUSEHOLD, FRIENDS AND COWORKERS, SPIRITUAL LEADERS, ADVISORS OR THERAPISTS.  DO NOT DO ANY RESEARCH ON YOUR OWN OR AS A GROUP.  DO NOT USE DICTIONARIES OR OTHER REFERENCE MATERIALS.

"THESE PROHIBITIONS ON COMMUNICATIONS AND RESEARCH EXTEND TO ALL FORMS OF ELECTRONIC COMMUNICATIONS.  DO NOT USE ANY ELECTRONIC DEVICES OR MEDIA SUCH AS A CELL PHONE OR SMART PHONE, PDA, COMPUTER, TABLET DEVICE, THE INTERNET AND THE INTERNET SERVICE, ANY TEXT OR INSTANT MESSAGING SERVICE, ANY INTERNET CHAT ROOM, BLOG OR WEBSITE, INCLUDING SOCIAL NETWORKING WEBSITES OR ONLINE DIARIES TO SEND OR RECEIVE ANY INFORMATION TO OR FROM ANYONE ABOUT THIS CASE OR YOUR EXPERIENCE AS A JUROR UNTIL AFTER YOU HAVE BEEN DISCHARGED FROM YOUR JURY DUTY.

"DO NOT INVESTIGATE THE CASE OR CONDUCT ANY EXPERIMENTS.  DO NOT CONTACT ANYONE TO ASSIST YOU SUCH AS A FAMILY ACCOUNTANT, DOCTOR OR LAWYER.  DO NOT VISIT OR VIEW THE SCENE OF ANY EVENT INVOLVED IN THIS CASE.  IF YOU HAPPEN TO PASS BY THE SCENE, DO NOT STOP OR INVESTIGATE.  ALL JURORS MUST SEE AND HEAR THE SAME EVIDENCE AT THE SAME TIME.

"YOU MUST NOT LET BIAS, SYMPATHY, PREJUDICE OR PUBLIC OPINION INFLUENCE YOUR DECISION.

"I WILL NOW TELL YOU THE LAW THAT YOU MUST FOLLOW TO REACH YOUR VERDICT.  YOU MUST FOLLOW THE LAW EXACTLY AS I GIVE IT TO YOU EVEN IF YOU DISAGREE WITH IT.  IF THE ATTORNEYS HAVE SAID ANYTHING DIFFERENT ABOUT WHAT THE LAW MEANS, YOU MUST FOLLOW WHAT I SAY."  I DID THAT A BIT OUT OF ORDER.  I ALREADY GAVE YOU THE LAW.

"IN REACHING YOUR VERDICT, DO NOT GUESS WHAT I THINK YOUR VERDICT SHOULD BE FROM SOMETHING I MAY HAVE SAID OR DONE.

"PAY CAREFUL ATTENTION TO ALL THE INSTRUCTIONS I GIVE YOU.  ALL THE INSTRUCTIONS ARE IMPORTANT BECAUSE TOGETHER

THEY STATE THE LAW THAT YOU WILL USE IN THIS CASE.  YOU MUST CONSIDER ALL OF THE INSTRUCTIONS TOGETHER.

"AFTER YOU HAVE DECIDED WHAT THE FACTS ARE, YOU MAY FIND THAT SOME OF THE INSTRUCTIONS DO NOT APPLY.  IN THAT CASE, FOLLOW THE INSTRUCTIONS THAT DO APPLY AND USE THEM TOGETHER WITH THE FACTS TO REACH YOUR VERDICT.

"IF I REPEAT ANY IDEAS OR RULES OF LAW DURING MY INSTRUCTIONS," WHICH I OBVIOUSLY HAVE, "THAT DOES NOT MEAN THAT THESE IDEAS OR RULES ARE MORE IMPORTANT THAN THE OTHERS.  IN ADDITION, THE ORDER IN WHICH THE INSTRUCTIONS ARE GIVEN DOES NOT MAKE ANY DIFFERENCE.

"MOST OF THE INSTRUCTIONS ARE TYPED."  ALL OF THEM ARE TYPED.  THEY ALL LOOK LIKE THIS SO I'M NOT GOING TO READ THE BALANCE.

"WHEN YOU GO TO THE JURY ROOM THE FIRST THING YOU SHOULD DO IS CHOOSE A PRESIDING JUROR.  THE PRESIDING JUROR SHOULD SEE TO IT THAT YOUR DISCUSSIONS ARE ORDERLY AND THAT EVERYONE HAS A FAIR CHANCE TO BE HEARD.

"IT IS YOUR DUTY TO TALK WITH ONE ANOTHER IN THE JURY ROOM AND TO CONSIDER THE VIEWS OF ALL THE JURORS.  EACH OF YOU MUST DECIDE THE CASE FOR YOURSELF BUT ONLY AFTER YOU HAVE CONSIDERED THE EVIDENCE WITH THE OTHER MEMBERS OF THE JURY.

"FEEL FREE TO CHANGE YOUR MIND IF YOU ARE CONVINCED THAT YOUR POSITION SHOULD BE DIFFERENT.  YOU SHOULD ALL TRY TO AGREE, BUT DO NOT GIVE UP YOUR HONEST BELIEFS JUST BECAUSE THE OTHERS THINK DIFFERENTLY.

"PLEASE DO NOT STATE YOUR OPINIONS TOO STRONGLY AT

THE BEGINNING OF YOUR DELIBERATIONS OR IMMEDIATELY ANNOUNCE HOW YOU PLAN TO VOTE AS IT MAY INTERFERE WITH AN OPEN DISCUSSION.  KEEP AN OPEN MIND SO THAT YOU AND YOUR FELLOW JURORS CAN EASILY SHARE IDEAS ABOUT THE CASE.

"YOU SHOULD USE YOUR COMMON SENSE AND EXPERIENCE IN DECIDING WHETHER TESTIMONY IS TRUE AND ACCURATE; HOWEVER, DURING YOUR DELIBERATIONS DO NOT MAKE ANY STATEMENTS OR PROVIDE ANY INFORMATION TO OTHER JURORS BASED ON ANY SPECIAL TRAINING OR UNIQUE PERSONAL EXPERIENCES THAT YOU MAY HAVE HAD RELATED TO MATTERS INVOLVED IN THIS CASE.  WHAT YOU MAY KNOW OR HAVE LEARNED THROUGH YOUR TRAINING OR EXPERIENCE IS NOT PART OF THE EVIDENCE RECEIVED IN THIS CASE.

"SOMETIMES JURORS DISAGREE OR HAVE QUESTIONS ABOUT THE EVIDENCE OR ABOUT WHAT THE WITNESSES SAID IN THEIR TESTIMONY.  IF THAT HAPPENS" -- WELL, YOU CAN'T ASK TO HAVE IT RE-READ.  WE DON'T HAVE A COURT REPORTER.  "YOU CAN AND YOU WILL GET THE EXHIBITS ADMITTED INTO EVIDENCE.  THEY WILL BE PROVIDED TO YOU.

"ALSO THE JURORS MAY NEED FURTHER EXPLANATION ABOUT THE LAWS THAT APPLY TO THE CASE.  IF THIS HAPPENS DURING YOUR DISCUSSIONS, WRITE DOWN YOUR QUESTIONS AND GIVE THEM TO MY ASSISTANT.  I WILL TALK WITH THE ATTORNEYS AND PARTY BEFORE I ANSWER, SO IT MAY TAKE SOME TIME.  YOU SHOULD CONTINUE YOUR DELIBERATIONS WHILE YOU WAIT FOR MY ANSWER.  I WILL DO MY BEST TO ANSWER YOUR QUESTIONS.

"WHEN YOU WRITE ME A NOTE, DO NOT TELL ME HOW YOU VOTED ON AN ISSUE UNTIL I ASK FOR THIS INFORMATION IN OPEN COURT.

"YOUR DECISION MUST BE BASED ON YOUR PERSONAL EVALUATION OF THE EVIDENCE PRESENTED IN THE CASE.  EACH OF YOU MAY BE ASKED IN OPEN COURT HOW YOU VOTED ON EACH QUESTION.  WHILE I KNOW THAT YOU WOULD NOT DO THIS, I'M REQUIRED TO ADVISE YOU THAT YOU MUST NOT BASE YOUR DECISION ON CHANCE SUCH AS A FLIP OF A COIN.

"IF YOU DECIDE TO AWARD DAMAGES" -- DAMAGES WERE NOT SOUGHT.  I WILL SKIP THAT.

"YOU MAY TAKE BREAKS BUT DO NOT DISCUSS THIS CASE WITH ANYONE, INCLUDING EACH OTHER, UNTIL ALL OF YOU ARE BACK IN THE JURY ROOM.

"IF YOU HAVE TAKEN NOTES DURING THE TRIAL, YOU MAY TAKE YOUR NOTEBOOKS WITH YOU INTO THE JURY ROOM.  YOU MAY USE YOUR NOTES ONLY TO HELP YOU REMEMBER WHAT HAPPENED DURING THE TRIAL.  YOUR INDEPENDENT RECOLLECTION OF EVIDENCE SHOULD GOVERN YOUR VERDICT.  YOU SHOULD NOT ALLOW YOURSELF TO BE INFLUENCED BY THE NOTES OF OTHER JURORS IF THOSE NOTES DIFFER FROM WHAT YOU REMEMBER.  AT THE END OF THE TRIAL YOUR NOTES WILL BE COLLECTED AND DESTROYED.

"I WILL GIVE YOU A VERDICT FORM WITH QUESTIONS YOU MUST ANSWER.  I HAVE ALREADY INSTRUCTED YOU ON THE LAW THAT YOU ARE TO USE IN ANSWERING THESE QUESTIONS.  YOU MUST FOLLOW MY INSTRUCTIONS AND THE FORM CAREFULLY.  YOU MUST CONSIDER EACH QUESTION SEPARATELY.  ALTHOUGH YOU MAY DISCUSS THE EVIDENCE AND THE ISSUES TO BE DECIDED IN ANY ORDER, YOU MUST ANSWER THE QUESTIONS ON THE VERDICT FORM IN THE ORDER THEY APPEAR.  AFTER YOU ANSWER A QUESTION, THE FORM TELLS YOU WHAT TO DO NEXT.

"AT LEAST NINE OF YOU MUST AGREE ON AN ANSWER BEFORE YOU CAN MOVE ONTO THE NEXT QUESTION; HOWEVER, THE SAME NINE OR MORE PEOPLE DO NOT HAVE TO AGREE ON EACH ANSWER.

"ALL 12 OF YOU MUST DELIBERATE ON THE ANSWER AND ANSWER EACH QUESTION REGARDLESS OF HOW YOU VOTED ON ANY EARLIER QUESTION.  UNLESS THE VERDICT FORM TELLS ALL 12 JURORS TO STOP AND ANSWER NO FURTHER QUESTIONS, EACH JUROR MUST DELIBERATE AND VOTE ON ALL OF THE REMAINING QUESTIONS.

"WHEN YOU HAVE FINISHED FILLING OUT THE FORM, YOUR PRESIDING JUROR MUST WRITE THE DATE AND SIGN IT AT THE BOTTOM AND THEN NOTIFY THE JUDICIAL ASSISTANT THAT YOU ARE READY TO PRESENT YOUR VERDICT IN THE COURTROOM."

I BELIEVE THAT FINISHES OUR EXPLANATION.  HERE IS A SET OF THE INSTRUCTIONS I HAVE GIVEN.

ALL RIGHT.  AT THIS TIME, WE WILL HEAR CLOSING ARGUMENT.

MR. THEODOSIADIS:  THANK YOU, YOUR HONOR.

THANK YOU AGAIN FOR SERVING ON THE JURY TODAY, YESTERDAY.  I APPRECIATE IT.

AT THE BEGINNING OF THE TRIAL I TOLD YOU THERE WERE ONLY FOUR QUESTIONS TO ANSWER.  THE JUDGE HAS EXPLAINED THEM DURING THE JURY INSTRUCTIONS.  THERE ARE ONLY FOUR QUESTIONS TO BE ANSWERED.

THE FIRST ONE IS WHETHER OR NOT MS. WHETSTONE OWNS THE PROPERTY AT ISSUE.  THE SECOND ONE IS WHETHER OR NOT SHE LEASED PROPERTY TO MR. MOON.  THIRD IS WHETHER OR NOT SHE SERVED PROPER 30-DAY NOTICE.  AND FOURTH, WHETHER MR. MOON IS STILL IN POSSESSION.

ALL THE QUESTIONS WERE ANSWERED HERE.  NOTHING HAS BEEN LEFT TO ANYBODY'S IMAGINATION.  MR. MOON STATED SEVERAL TIMES IN HIS QUESTIONING OF MS. WHETSTONE, HE STATED, QUOTE, "WHEN YOU SERVED ME THE 30-DAY NOTICE," UNQUOTE.  HE SAID THAT SEVERAL TIMES.

SO SERVICE OF THE 30-DAY NOTICE IS NOT AN ISSUE.  IF THERE WAS AN ISSUE IN THIS CASE, IT MIGHT HAVE BEEN THAT.  BUT IT'S NOT AN ISSUE.  MR. MOON WAS SERVED PROPERLY BY MS. WHETSTONE ON DECEMBER 15TH.  HE HAS ADMITTED AS MUCH.  HE IS STILL IN POSSESSION OF THE PROPERTY.

HIS TESTIMONY OR HIS QUESTIONING SHOWS THAT THERE IS A TENANCY, THAT THERE WAS A MONTH-TO-MONTH LEASE AT ISSUE, AND HE NEVER CONTROVERTED THE FACT THAT MS. WHETSTONE OWNS PROPERTY.  ALL FOUR QUESTIONS ARE ANSWERED.

THANK YOU FOR YOUR TIME.  AND I HOPE YOU HAVE A GREAT REST OF YOUR DAY.

THANK YOU.

THE COURT:  THANK YOU VERY MUCH.

ALL RIGHT, LADIES AND GENTLEMEN OF THE JURY --

I NEED TO SWEAR YOU IN.  ALL RIGHT.  WOULD YOU RAISE YOUR RIGHT ARM, PLEASE.

DO YOU SOLEMNLY SWEAR THAT YOU WILL TAKE CHARGE OF THE JURY AND KEEP THEM TOGETHER, THAT YOU WILL NOT COMMUNICATE WITH THEM YOURSELF NOR ALLOW ANYONE ELSE TO COMMUNICATE WITH THEM UPON MATTERS CONNECTED WITH THE CASE EXCEPT ON ORDER OF THE COURT, AND WHEN THEY HAVE AGREED UPON A VERDICT YOU WILL RETURN THEM INTO THE COURT, SO HELP YOU GOD?

THE CLERK:  I DO.

THE COURT:  ALL RIGHT.  WOULD YOU PLEASE TAKE CHARGE OF OUR JURY.  YOU WILL GIVE THEM THE VERDICT FORM AND THE JURY INSTRUCTIONS.

THE CLERK:  YES.

THE COURT:  THANK YOU, LADIES AND GENTLEMEN.

THE CLERK:  CAN I HAVE THE 12 JURORS STAND UP AND COME WITH ME INSIDE THIS ROOM.

THE ALTERNATE JUROR, YOU'RE GOING TO STAND OUT IN THE HALL, OKAY?

(THE JURY COMMENCED THEIR DELIBERATIONS AT
     2:56 P.M.)

(THE FOLLOWING PROCEEDINGS WERE HELD IN OPEN COURT
     IN THE PRESENCE OF THE ALTERNATE JUROR:)

THE COURT:  WE NEED TO TAKE HIS BOOK.  HE CAN JUST REMAIN IN THE HALLWAY, OKAY?

I OBVIOUSLY DON'T NOW HOW QUICKLY THIS WILL GO, BUT IF YOU REMAIN IN THE HALLWAY OUT THERE, WE CAN GET YOU BACK IN HERE QUICKLY.  IF FOR SOME REASON YOU NEED TO GO SOMEWHERE, COME IN AND TELL US SO WE'LL GIVE PERMISSION AND KNOW HOW TO REACH YOU.

ALTERNATE JUROR ORTIZ:  THANK YOU.

THE COURT:  OKAY.  THANK YOU, SIR.

(THE ALTERNATE JUROR LEFT THE COURTROOM.)

THE COURT:  ALL RIGHT.  THE JURY IS IN THE JURY ROOM DELIBERATING.  THE ALTERNATE IS OUTSIDE AS WELL.  WE ARE STILL IN SESSION.

IS THERE ANYTHING THAT WE NEED TO ADDRESS?

MR. THEODOSIADIS:  NO, YOUR HONOR.  I DON'T BELIEVE

SO.

THE COURT:  ALL RIGHT.  THEN WE ARE IN RECESS. YOU'RE WELCOME TO GO OUT IN THE HALL BUT DON'T WANDER FAR AWAY BECAUSE IF WE GET ANY QUESTIONS OR HAVE ANY ISSUES WE NEED TO BE ABLE TO GET YOU BACK IMMEDIATELY.  IF YOU DO NEED TO GO FURTHER THAN A FEW STEPS, LET MY ASSISTANT KNOW SO THAT WE KNOW EXACTLY WHERE YOU ARE AND HOW TO REACH YOU.

MR. THEODOSIADIS:  ARE WE ALLOWED TO STAY?

THE COURT:  YOU CAN STAY IN THE COURT, YES.  YOU'RE WELCOME TO REMAIN IN THE COURTROOM.  I THINK WE'RE DONE FOR THE DAY IN TERMS OF VARIOUS MATTERS.  ALL RIGHT.  THANK YOU.

(THE FOLLOWING PROCEEDINGS WERE HELD IN

THE PRESENCE OF THE JURY:)

THE COURT:  IS HE ON THE PHONE?

THE CLERK:  WHAT WAS THAT?

THE COURT:  IS HE ON THE PHONE?

THE CLERK:  NO CHECK-INS, YOUR HONOR.

THE COURT:  ALL RIGHT.  LADIES AND GENTLEMEN OF THE JURY, WE ARE IN THE PRESENCE OF THE JURY AND ALTERNATE, PLAINTIFF, PLAINTIFF'S COUNSEL.

ALL RIGHT, WOULD THE FOREPERSON PLEASE STATE HIS OR HER NAME FOR THE RECORD?

JUROR THOMPSON:  JOHN RICHARD THOMPSON.

THE COURT:  ALL RIGHT.  THANK YOU.  MR. FOREPERSON, HAS THE JURY REACHED A VERDICT?

JUROR THOMPSON:  YES, WE HAVE.

THE COURT:  WOULD YOU PLEASE HAND THE VERDICT TO MY ASSISTANT WHO WILL THEN HAND IT TO ME.  HE'LL COME OVER AND

GET IT.

JUROR THOMPSON:  I THOUGHT IT WAS A MEET-IN-THE-MIDDLE KIND OF THING.

THE COURT:  ALL RIGHT.  I'M HANDING THIS TO MY JUDICIAL ASSISTANT.

WOULD THE CLERK PLEASE READ THE JURY'S VERDICT.

THE CLERK:  "WE ANSWERED THE QUESTIONS SUBMITTED TO US AS FOLLOWS:

"NO. 1, DOES LEAH WHETSTONE OWN THE PROPERTY LOCATED AT 784 MOUNTAIN VIEW, ALTADENA, CALIFORNIA?  YES.

"NO. 2, DID LEAH WHETSTONE RENT THE PROPERTY TO ADRIAN MOON UNDER A MONTH-TO-MONTH OR FIXED-TERM LEASE?  YES.

"NO. 3, DID MS. WHETSTONE GIVE PROPER 30 DAYS' WRITTEN NOTICE TO ADRIAN D. MOON THE TENANCY WAS ENDING?  YES.

"NO. 4, DOES ADRIAN D. MOON STILL OCCUPY THE PROPERTY?  YES."

THAT'S IT, YOUR HONOR.

THE COURT:  ALL RIGHT.  DO EITHER OF THE PARTIES WISH FOR THE JURORS TO BE POLLED?

MR. THEODOSIADIS:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  THE CLERK IS DIRECTED TO ENTER THE VERDICT.

BEFORE I DISCHARGE THE JURORS, IS THERE ANY OTHER MATTER THAT WE NEED TO ADDRESS?

THE CLERK:  WE NEED TO COLLECT THE VERDICT FORMS.

THE COURT:  THE VERDICT FORM?

THE CLERK:  YES.  I GAVE THEM COPIES OF THE VERDICT FORM.

THE COURT: OKAY. WE'LL COLLECT THEM. WHY DON'T WE DO THAT NOW.

ALL RIGHT. LADIES AND GENTLEMEN OF THE JURY, ONE MORE MOMENT BEFORE I FORMALLY DISCHARGE YOU. I WANT TO THANK EACH OF YOU. YOU'VE BEEN ATTENTIVE. IT HASN'T BEEN THE EASIEST OF CIRCUMSTANCES, BUT I APPRECIATE THE DEDICATION YOU MADE TO THIS PROCESS.

AS I EXPLAINED IN THE POWER POINT PRESENTATION AT THE VERY BEGINNING, THE RIGHT TO A TRIAL BY JURY IS PART OF OUR SYSTEM SO THAT PEOPLE HAVE A GROUP OF FELLOW CITIZENS DECIDE THE FACTS OF A CASE AND APPLY THE LAW. YOU HAVE DONE YOUR DUTY, AND I'M GRATEFUL FOR THAT. I WANT TO THANK YOU.

NOW, THROUGHOUT THE TRIAL I HAVE TOLD YOU YOU CAN'T DISCUSS THIS EXCEPT WHEN YOU DELIBERATE. WHEN I DISCHARGE YOU, THAT'S OVER. YOU CAN DO WHATEVER THE HECK YOU WANT, OKAY? YOU CAN TALK ABOUT IT. YOU CAN CHOOSE NOT TO TALK ABOUT IT. YOU CAN DO WHATEVER YOU WANT. THERE IS NO RESTRAINT UPON YOU.

HOWEVER, AND I WILL TELL YOU, AS AN ATTORNEY I OFTEN WOULD TRY TO TALK WITH JURORS AFTERWARDS BECAUSE WE LEARN FROM YOUR RESPONSES. HOW'D WE DO? WHAT CLICKED? WHAT DIDN'T? SO THE LAWYERS OFTEN WILL ENJOY IF THEY CAN TALK TO YOU. IT IS ENTIRELY UP TO YOU.

IF SOMEONE CONTACTS YOU, YOU SIMPLY CAN SAY NO THANK YOU. IF ANYONE CONTACTS YOU AND YOU DO NOT WISH THEM TO AND THEY DO NOT CEASE, PLEASE NOTIFY US. I TRULY DOUBT IT WILL HAPPEN, BUT NO ONE SHOULD BE CONTACTING YOU IF YOU INDICATE TO THEM THAT YOU DO NOT WISH TO TALK ABOUT THE CASE. AGAIN, IT'S

ENTIRELY UP TO YOU, OKAY?

AND WITH THAT, DOES ANYONE HAVE ANY QUESTIONS BEFORE I FORMALLY DISCHARGE YOU?  YES, SIR?

AN UNIDENTIFIED JUROR:  STRICTLY AS CURIOSITY, DOES THIS MEAN MR. MOON WILL BE REMOVED FROM THE HOUSE?

THE COURT:  ACTUALLY I'M NOT GOING TO ANSWER THAT QUESTION FOR YOU.

AN UNIDENTIFIED JUROR:  I HAVE ANOTHER QUESTION. WILL MR. MOON GET OUR INFORMATION AS WELL SINCE HE'S DEFENDING HIMSELF?  CAN HE CALL US AND ASK FOR OUR INFORMATION LIKE THE ATTORNEY CAN?

THE COURT:  HE DOES NOT GET ANY INFORMATION OTHER THAN WHAT YOU HEARD HERE; THAT IS, EACH OF YOU GAVE YOUR NAMES.

THE CLERK:  NORMALLY WHEN THE JUDGE SAYS THE ATTORNEYS CAN ASK YOU GUYS QUESTIONS, THAT MEANS OUT IN THE HALL.  THEY DON'T HAVE YOUR PHONE NUMBER.

AN UNIDENTIFIED JUROR:  THEY DON'T CALL YOUR HOME.

THE CLERK:  NO.

THE COURT:  RIGHT.  ALL RIGHT.  AGAIN, THANK YOU VERY MUCH.  YOU ARE FORMALLY DISCHARGED.  SO WE GOT IT DONE IN LESS THAN A WEEK.

YES, SIR?

AN UNIDENTIFIED JUROR:  DO WE HAVE TO CHECK OUT DOWNSTAIRS?

THE CLERK:  YES.

THE COURT:  YEAH.  I'M SORRY, YES.  SECOND FLOOR JURY ROOM JUST A LITTLE OFF TO THE RIGHT FROM THE ELEVATORS.

IF YOU GO DOWN THE ESCALATOR IT'S RIGHT -- HARD LEFT AT THE VERY SECOND FLOOR LANDING.

THANK YOU VERY MUCH, LADIES AND GENTLEMEN.

(THE FOLLOWING PROCEEDINGS WERE HELD OUT OF THE PRESENCE OF THE JURY:)

THE COURT:  ALL RIGHT.  THE ONLY ONES PRESENT IN COURT NOW ARE PLAINTIFF, PLAINTIFF'S COUNSEL AND MYSELF AND STAFF.

ANYTHING ELSE BEFORE WE'RE DONE?

MR. THEODOSIADIS:  I DON'T BELIEVE SO, YOUR HONOR.

THE COURT:  ALL RIGHT.  THANK YOU VERY MUCH.  HAVE A NICE EVENING.

MR. THEODOSIADIS:  SAME TO YOU.  THANK YOU.

THE COURT:  OH, DID THEY STIPULATE TO TAKE THEIR OWN MATERIALS BACK?

THE CLERK:  THEY DID NOT, YOUR HONOR.

THE COURT:  OKAY.  THEN WE'LL HAVE TO HOLD ONTO THE EXHIBITS.

THE CLERK:  I COULDN'T GET A SIGNATURE.

THE COURT:  YEAH.  THAT'S FINE.  OKAY.

(THE PROCEEDINGS WERE CONCLUDED.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 92                        HON. DOUGLAS W. STERN, JUDGE


LEAH WHETSTONE,                        )
                                       )
                 PLAINTIFF,            )
                                       )
           VS.                         )  NO. 21PDUD00319
                                       )
ADRIAN MOON,                           )
                                       )  TRANSCRIBER'S
                 DEFENDANT.            )  CERTIFICATE
_____)


           I, CARYN HOBBIS, CERTIFIED SHORTHAND REPORTER OF THE
STATE OF CALIFORNIA, DO HEREBY CERTIFY THAT THE FOREGOING
PAGES 101 THROUGH 204, INCLUSIVE, ARE A TRUE AND ACCURATE
TRANSCRIPTION OF THE PROCEEDINGS HELD ON NOVEMBER 2, 2021,
TRANSCRIBED FROM A DIGITAL RECORDING TO THE BEST OF MY
ABILITY, IN THE ABOVE-ENTITLED CAUSE.
           DATED THIS 6TH DAY OF SEPTEMBER, 2022.




                              _____
                              CARYN HOBBIS, CSR NO. 9432
                              CERTIFIED SHORTHAND REPORTER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 93                    HON. VICTOR G. VIRAMONTES, JUDGE


LEAH WHETSTONE,                          )
                                         )
                    PLAINTIFF,           )
                                         )
          VS.                            )  NO. 21PDUD00319
                                         )
ADRIAN MOON,                             )
                                         )
                    DEFENDANT.           )
_____)

-oOo-

TRANSCRIPT OF PROCEEDINGS

MARCH 1, 2022


APPEARANCES:

FOR THE PLAINTIFF:        NO APPEARANCE


FOR THE DEFENDANT:        IN PRO SE












VOLUME 3 OF 3
PAGES 206 - 211

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING. TRANSCRIPT
PRODUCED BY CARYN HOBBIS, CSR NO. 9432

M A S T E R   I N D E X

MARCH 1, 2022; VOLUME 3


SESSIONS


TUESDAY, MARCH 1, 2022                                    PAGE

P.M. SESSION                                             208

CASE NUMBER:                 21PDUD00319

CASE NAME:                   LEAH WHETSTONE VS ADRIAN MOON

LOS ANGELES, CA              TUESDAY, MARCH 1, 2022

DEPARTMENT 93                HON. VICTOR G. VIRAMONTES, JUDGE

TRANSCRIBER:                 CARYN HOBBIS, CSR NO. 9432

TIME:                        P.M. SESSION

APPEARANCES:  DEFENDANT ADRIAN MOON IN PRO SE (APPEARING VIA LA COURTCONNECT); NO APPEARANCE FOR PLAINTIFF.

        THE COURT:  OKAY.  THE COURT CALLS MATTER 8, LEAH WHETSTONE VERSUS ADRIAN MOON, 21PDUD00319.  CAN I HAVE APPEARANCES, PLEASE?

        MR. MOON:  YES.  ALL PRAISE AND GLORY TO THE ALMIGHTY CREATOR IN THE MIGHTY NAME OF YESHUA JESUS CHRIST THE MESSIAH.  ADRIAN MOON DEFENDANT AND CROSS-PLAINTIFF.

        WE HAVE A TENTATIVE ON MY MOTION?

        THE COURT:  YES, I DO.

        DO WE HAVE ANY OTHER APPEARANCES, MR. VILLICANA?

        THE CLERK:  NO, YOUR HONOR.

        THE COURT:  OKAY.  MR. MOON, MY TENTATIVE IS TO DENY YOUR REQUEST FOR DISCOVERY.  THE TRIAL HAS ALREADY HAPPENED, SO I DON'T SEE THE NEED FOR FURTHER DISCOVERY.

        IN ADDITION, THERE'S NO EVIDENCE THAT YOU SERVED THE PLAINTIFF AND THAT YOU'RE ALSO TRYING TO GET A REQUEST FOR ADMISSIONS FROM NONPARTIES.  SO FOR THOSE REASONS MY TENTATIVE IS TO DENY THE MOTION.

        SO AT THIS POINT I'LL HEAR FROM YOU, MR. MOON.

        MR. MOON:  YEAH.  BASICALLY THE CASE IS ON APPEAL,

NUMBER ONE, AND I'M ENTITLED TO DISCOVERY WHILE IT IS ON APPEAL.  AND ALL THE PARTIES THAT I'M ASKING THAT THEIR REQUESTS BE DEEMED ADMITTED ARE PARTIES TO THE CASE IN ONE STATE, FORM OR FASHION.

I THINK -- I DON'T KNOW -- WHO AM I -- WHO AM I SPEAKING WITH?  WHO'S THE BENCH -- WHO ARE YOU?  THE BENCH OFFICER OF THE DAY?

THE COURT:  YES.  THIS IS JUDGE VICTOR VIRAMONTES. I AM THE BENCH OFFICER IN DEPARTMENT 93.

MR. MOON:  OKAY.  THIS IS VICTOR, RIGHT?

THE COURT:  JUDGE VIRAMONTES.

MR. MOON:  HUH?

THE COURT:  JUDGE VIRAMONTES.

MR. MOON:  I CAN'T HEAR YOU.  OKAY.  WELL, VICTOR, YOU -- YOU'RE -- I THINK I SERVED YOU WITH A REQUEST FOR ADMISSIONS SET 1, SET 2 PRIOR TO THE JURY TRIAL FOR WHATEVER THAT WAS WORTH, AND IT WAS DUE PRIOR TO THE JURY TRIAL.

SO, I MEAN, YOU KNOW, I THINK I'M ENTITLED TO THAT BECAUSE THOSE ARE RECORDS THAT ARE, YOU KNOW -- WILL BE ON APPEAL AND THAT WOULD BE SOME OF THE THINGS THAT -- THE ISSUES THAT I WOULD ARGUE ON APPEAL TO REVERSE ALL THE ORDERS BECAUSE I THINK I SERVED -- I DID A PRIVATE CITIZEN'S ARREST ON YOU AND THE TRIAL TRIED YOU UNDER A PREMPTORY (SIC) CHALLENGE.

DO YOU REMEMBER THAT?

THE COURT:  I --

MR. MOON:  HELLO?

THE COURT:  YES, MR. MOON, I DO REMEMBER THE PROCEDURAL POSTURE HERE.  IS THERE ANYTHING ELSE YOU'D LIKE ME

TO CONSIDER?

MR. MOON:  YEAH.  I WANT -- I WANT YOU TO ACTUALLY CONTINUE THIS AND WE'LL DO AN ORDER TO SHOW CAUSE WHY A CRIMINAL COMPLAINT SHOULDN'T BE FILED AGAINST YOU AND THE OTHER PARTIES, THAT I WOULD ASK THAT THEIR REQUESTS FOR ADMISSIONS BE DEEMED ADMITTED AND THE MANDATORY MONETARY SANCTIONS I'M REQUESTING.

THE COURT:  OKAY.  THANK YOU, MR. MOON.  MY TENTATIVE --

MR. MOON:  WELL, YOU DIDN'T -- YOU DIDN'T RULE ON MY ORAL MOTION I JUST DID.  I SAID I REQUEST THAT THIS BE CONTINUED IN ORDER TO SHOW CAUSE WHY YOU, VICTOR VIRAMONTES, AND ALL THE OTHER PEOPLE THAT I'M ASKING FOR THEIR REQUESTS FOR ADMISSIONS TO BE DEEMED ADMITTED AND FOR MONETARY SANCTIONS.  SO IS THAT SOMETHING THAT YOU DENIED OR YOU GOING TO GRANT OR YOU GOING TO CONSIDER OR WHAT?

THE COURT:  SO WHAT I'M DOING, I'M ADOPTING MY TENTATIVE RULING AS MY FINAL RULING, SO YOUR REQUEST IS DENIED.  YOUR REQUEST TO CONTINUE THE HEARING IS ALSO DENIED, AND THAT COMPLETES YOUR MATTER.

MR. MOON:  OKAY.  WELL, YOU HAVE A GREAT DAY, AND GOD BLESS YOU, YOUNG MAN.

(THE PROCEEDINGS WERE CONCLUDED.)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

DEPARTMENT 93                    HON. VICTOR G. VIRAMONTES, JUDGE


LEAH WHETSTONE,                        )
                                       )
                  PLAINTIFF,           )
                                       )
          VS.                          )  NO. 21PDUD00319
                                       )
ADRIAN MOON,                           )
                                       )  TRANSCRIBER'S
                  DEFENDANT.           )  CERTIFICATE
_____)


          I, CARYN HOBBIS, CERTIFIED SHORTHAND REPORTER OF THE STATE OF CALIFORNIA, DO HEREBY CERTIFY THAT THE FOREGOING PAGES 206 THROUGH 210, INCLUSIVE, ARE A TRUE AND ACCURATE TRANSCRIPTION OF THE PROCEEDINGS HELD ON MARCH 1, 2022, TRANSCRIBED FROM A DIGITAL RECORDING TO THE BEST OF MY ABILITY, IN THE ABOVE-ENTITLED CAUSE.

          DATED THIS 6TH DAY OF SEPTEMBER, 2022.


*Caryn Hobbis*

CARYN HOBBIS, CSR NO. 9432
CERTIFIED SHORTHAND REPORTER

*APP-009E, Item 4*

**APP-009E**

**PROOF OF ELECTRONIC SERVICE** (~~Court of Appeal~~)
*U.S. Central District Court*

**Notice:** This form may be used to provide proof that a document has been served in a proceeding in the Court of Appeal. Please read *Information Sheet for Proof of Service (Court of Appeal)* (form APP-009-INFO) before completing this form.

Case Name: MOON V. COUNTY OF L.A. *ET. AL.*

Court of Appeal Case Number: B324374 *; 22-*

Superior Court Case Number: 22STRO03447/BA332095 *; 2:20-cv-02291-DOC*

1. At the time of service I was at least 18 years of age.

2. a. My [ ] residence [x] business   address is *(specify)*:
   955 NORTH LAKE AVE PASADENA CA 91104

   b. My electronic service address is *(specify)*: adriandaredeemer@gmail.com

3. I electronically served the following documents *(exact titles)*:
   Notice of stipulation agreeement *- supplemental To Support! Nov. 14, 2022*

4. I electronically served the documents listed in 3. as follows:

   a. Name of person served: kent sommer. esq. */ Elizabeth Mitchell, matthew Umhofer, Louis Miller*
      On behalf of *(name or names of parties represented, if person served is an attorney)*:
      county of l.a. board of supervisors et. al. */ city of Los Angeles et al.*

   b. Electronic service address of person served: ksommers@counsel.lacounty.gov *, dharrison@counsel.lacounty.gov*
      *amontelongo@counsel.lacounty.gov*
   c. On *(date)*: november 6, 2022

   [x] The documents listed in 3. were served electronically on the persons and in the manner described in an attachment *(write "APP-009E, Item 4" at the top of the page)* *; smith ref@gmail.com, myschelm@yahoo.com, Emitchell@spertuslaw.com, matthew@spertuslaw.com, arlene.hoang@lacity.org, scott.marcus@lacity.org, Jessica.mariani@lacity.org, Gita.O'Neil@lacity.org, mhashmall@millerbarondess.com, apark@24howfit.com, bdyoung@mane#com, brnclain@foley.com, lblack@counsel.lacounty.gov, Emily.Rodriguez-Shanch wie@redbull.am s/u , smither@millerbarondess.com*

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: november 6, 2022

TOMMIE LONG
(TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)

(SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
APP-009E [New January 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
(Court of Appeal)

www.courts.ca.gov

*page 33*

For your protection and privacy, please press the Clear
This Form button after you have printed the form