DAWYN R. HARRISON, *County Counsel* (State Bar No. 173855)
dharrison@counsel.lacounty.gov
JENNIFER A.D. LEHMAN, *Assistant County Counsel* (State Bar No. 191477)
jlehman@counsel.lacounty.gov
ANA WAI-KWAN LAI, *Senior Deputy County Counsel* (State Bar No. 257931)
alai@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone:   (213) 974-1830
Facsimile:   (213) 626-7446

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | **CASE NO. 2:20-cv-02291 DOC (KES)**<br><br>**DEFENDANT COUNTY OF LOS ANGELES' MOTION FOR CERTIFICATION OF THIS COURT'S APRIL 20, 2023 ORDER PURSUANT TO 28 U.S.C. § 1292(b)**<br><br>Date:   June 5, 2023<br>Time:   8:30 a.m.<br>Place:   Courtroom 10A<br><br>Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

611761.4

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. § 1292(b), Defendant County of Los Angeles (the "County") hereby moves the Court for an order certifying its April 20, 2023 Minute Order (the "April 20 Order") for interlocutory appeal.  This Motion is set for hearing on June 5, 2023, at 8:30 a.m. in Courtroom 10A at the Ronald Reagan Federal Building and United States Courthouse, located at 411 West Fourth Street, Santa Ana, California 92701-4516, the Honorable David O. Carter presiding.

The April 20 Order rejected the Plaintiffs' and the County's joint stipulation to voluntarily dismiss this action in its entirety with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), and presents three controlling questions of law that merit review under Section 1292(b):  (1) the scope of a district court's discretion to disapprove a stipulated dismissal with prejudice pursuant to Rule 41(a)(2), following the parties' execution of a binding private settlement agreement disposing of all claims between them; (2) whether a district court may condition approval of a Rule 41(a)(2) dismissal on the addition of new settlement terms that are neither agreed to by the parties, nor requested by any party or intervenor; and (3) whether there remains a justiciable case or controversy between the parties, considering they have settled all claims between them.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3.  (Declaration of Mira Hashmall ("Hashmall Decl." ¶ 21 & Ex. T.) Counsel for Plaintiffs indicated they had yet to take a position on the County's Motion.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Mira Hashmall and exhibits attached thereto, the pleadings and records on file in this action, and any further evidence or argument in connection with the Motion.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

611761.4

2

DEFENDANT COUNTY OF LOS ANGELES' MOTION FOR CERTIFICATION OF COURT'S
APRIL 20, 2023 ORDER PURSUANT TO 28 U.S.C. § 1292(b)

DATED:  April 28, 2023                  MILLER BARONDESS, LLP


                                        By:      /s/ Mira Hashmall
                                              MIRA HASHMALL
                                              Attorneys for Defendant
                                              COUNTY OF LOS ANGELES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

611761.4

3

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................. 8

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............... 9

    A.    The City/Plaintiffs Settlement Agreement ............................................. 10

    B.    The County/Plaintiffs Settlement Agreement ........................................ 11

    C.    Plaintiffs And The County Jointly Seek Dismissal With Prejudice Of All Claims Against The County Under Rule 41(a)(2) ............................................................................................................. 12

III.    THE APRIL 20, 2023 STATUS CONFERENCE AND THE COURT'S RULING ............................................................................................ 13

IV.    THE ORDER SHOULD BE CERTIFIED FOR IMMEDIATE APPELLATE REVIEW ..................................................................................... 16

    A.    The Order Involves Controlling Questions Of Law ............................... 17

    B.    An Immediate Appeal Will Likely Resolve The Litigation .................. 19

    C.    This Court's Assertion Of Authority To Deny The Parties' Joint Stipulated Dismissal With Prejudice Is Unprecedented ....................... 20

V.    CONCLUSION .................................................................................................... 24

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

611761.4

4

DEFENDANT COUNTY OF LOS ANGELES' MOTION FOR CERTIFICATION OF COURT'S
APRIL 20, 2023 ORDER PURSUANT TO 28 U.S.C. § 1292(b)

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011) ...................................................................................22

*B.R. v. F.C.S.B.*,
17 F.4th 485 (4th Cir. 2021).....................................................................18

*Bais Yaakov of Spring Valley v. ACT, Inc.*,
798 F.3d 46 (1st Cir. 2015) .......................................................................18

*Balintulo v. Daimler AG*,
727 F.3d 174 (2d Cir. 2013) ......................................................................16

*Blackman v. Hadron, Inc.*,
450 F.2d 781 (2d Cir. 1971).......................................................................18

*Bridgeport Music, Inc. v. London Music, U.K.*,
345 F. Supp. 2d 836 (M.D. Tenn. 2004) ...................................................21

*Carbotrade SpA v. Bureau Veritas*,
1993 WL 60567 (S.D.N.Y. Mar. 2, 1992) ................................................20

*Century Mfg. Co., Inc. v. Cent. Transp. Int'l, Inc.*,
209 F.R.D. 647 (D. Mass. 2002) ...............................................................21

*Coal. For Equity & Excellence In Md. Higher Educ. v. Md. Higher Educ. Comm'n*,
2015 WL 4040425 (D. Md. June 29, 2015) ..............................................20

*Core Optical Techs., LLC v. Juniper Networks Inc.*,
2021 WL 5978761 (N.D. Cal. Dec. 17, 2021) ..........................................19

*Frew ex rel. Frew v. Hawkins*,
540 U.S. 431 (2004) ...................................................................................24

*Gardiner v. A.H. Robins Co., Inc.*,
747 F.2d 1180 (8th Cir. 1984).....................................................................24

*Hamilton v. Firestone Tire & Rubber Co., Inc.*,
679 F.2d 143 (9th Cir. 1982)................................................................22, 23

*Hawaii ex rel. Louie v. JP Morgan Chase & Co.*,
921 F. Supp. 2d 1059 (D. Haw. 2013) ......................................................19

DEFENDANT COUNTY OF LOS ANGELES' MOTION FOR CERTIFICATION OF COURT'S
APRIL 20, 2023 ORDER PURSUANT TO 28 U.S.C. § 1292(b)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

*Horne v. Flores*,
    557 U.S. 433 (2009) ........................................................................................24

*In re Cement Antitrust Litig.*,
    673 F.2d 1020 (9th Cir. 1981) .................................................... 16, 17, 19

*In re Smith*,
    926 F.2d 1027 (11th Cir. 1991) ....................................................................24

*In re Text Messaging Antitrust Litig.*,
    630 F.3d 622 (7th Cir. 2010) ........................................................................18

*ITV Direct, Inc. v. Health Sols., LLC*,
    445 F.3d 66 (1st Cir. 2006) ..........................................................................21

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974) .........................................................................18

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) ...........................................................................17

*Kuehner v. Dickinson & Co.*,
    84 F.3d 316 (9th Cir. 1996) ..........................................................................17

*LA All. for Human Rights v. County of Los Angeles*,
    14 F.4th 947 (9th Cir. 2021) ...................................................................8, 23

*LeCompte v. Mr. Chip, Inc.*,
    528 F.2d 601 (5th Cir. 1976) ........................................................................23

*McFarlin v. Conseco Servs., LLC*,
    381 F.3d 1251 (11th Cir. 2004) ....................................................................20

*McLaughlin v. Cheshire*,
    676 F.2d 855 (D.C. Cir. 1982) .....................................................................23

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) .....................................................................................16

*Philipp v. Federal Republic of Germany*,
    253 F. Supp. 3d 84 (D.D.C. 2017) ..............................................................18

*Primavera Familienstifung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001) .........................................................16

*Puello v. Citifinancial Servs., Inc.*,
    2010 WL 1541503 (D. Mass. Apr. 16, 2010) ..............................................22

*Rodrigues v. CNP of Sanctuary, LLC*,
    2012 WL 12895255 (S.D. Fla. May 9, 2012) ..............................................19

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

611761.4

6

*Smoot v. Fox*,
340 F.2d 301 (6th Cir. 1964) ................................................................21

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .........................................................................23

*United States v. Sineneng-Smith*,
140 S. Ct 1575 (2020) ..........................................................................23

**STATUTES**

28 U.S.C. § 1292(b) ......................................................................passim

**RULES**

Fed. R. Civ. P. 41(a)(2) ................................................................passim

Fed. R. Civ. P. 68 .................................................................................18

**OTHER AUTHORITIES**

16 Edward H. Cooper, *Federal Practice and Procedure* § 3930 (3d ed. Apr. 2023 Update) ...........................................................................17, 20

S.Rep. No. 2434, 85th Cong., 2d Sess. (1958), *reprinted in* [1985] U.S.C.C.A.N. 5255, 5257) ...............................................................20

U.S. Const. art. III ......................................................................passim

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

611761.4

7

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

The County's binding settlement agreement with Plaintiffs pledges more than $850.5 million in new resources to dramatically expand the number of beds, supportive housing units, shelter capacity, and medical and social services in Los Angeles for persons experiencing homelessness.  These new resources are in addition to the $293 million in new funding the County committed earlier in the lawsuit to provide 6,700 beds for people experiencing homelessness near freeways and for unhoused seniors.  The County is committed to providing these urgently needed resources, which represent significant progress towards saving and improving the lives of the unhoused.

The County also does not want its time and resources diverted to litigation. Plaintiffs and the County support the terms of this agreement, and they have urged this Court to grant the joint stipulation to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  At the April 20, 2023 hearing, the City of Los Angeles and Intervenors[1] did not object to the settlement or the joint stipulation of dismissal, nor did any third parties to this litigation.

With its April 20 Order, this Court refused to dismiss the case, concluding the "County's settlement terms are improper and against the public interest" because they do not give the Court its preferred "oversight and enforcement powers." (Hashmall Decl. Ex. Q; *id*. Ex. P at 51-53.)  This was clear error and exceeds the Court's legal and equitable powers under Article III of the Constitution—which the Ninth Circuit has already admonished this Court must not do.  *LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 961 (9th Cir. 2021) (the district court's "equitable power to remedy legal violations that have contributed to the

---

[1] Intervenors are Los Angeles Community Action Network, Los Angeles Catholic Worker, and Orange County Catholic Worker, nonprofit community organizations that advocate for the rights of the unhoused.

611761.4

8

complex problem of homelessness in Los Angeles" "must be exercised consistent with its discretionary authority and Article III").

The April 20 Order presents controlling questions of law that merit review under 28 U.S.C. § 1292(b): (1) the scope of a district court's discretion to disapprove a stipulated dismissal with prejudice pursuant to Rule 41(a)(2), following the parties' execution of a binding private settlement agreement disposing of all claims between them; (2) whether a district court may condition approval of a Rule 41(a)(2) dismissal on the addition of new settlement terms that are neither agreed to by the parties, nor requested by any other party or intervenor; and (3) whether there remains a justiciable case or controversy between the parties, considering they have settled all claims between them.

Under Section 1292(b), the Court may allow an interlocutory appeal of an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" if an "immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The controlling questions of law raised in the Order meet these criteria.

To the County's knowledge, this Court is the first and only federal court to construe its Article III jurisdiction to condition a stipulated dismissal pursuant to Rule 41(a)(2) on the rewriting of a fully-agreed private settlement agreement to give the Court additional powers of enforcement. Such an unprecedented approach, particularly where, as here, the stakes of protracted litigation are so high, warrants immediate interlocutory review.

This Court should amend its April 20 Order and certify it for interlocutory appeal.

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Because the Court has repeatedly referenced the City of Los Angeles's settlement agreement with Plaintiffs and demanded that the County's agreement include the same terms, this Background section describes both agreements.

611761.4

9

## A.   The City/Plaintiffs Settlement Agreement

Plaintiffs settled with the City of Los Angeles in May 2022.  The City's agreement excluded from its definition of "City Shelter Appropriate" any person experiencing homelessness (PEH) who had a "severe mental illness," "substance use disorder," or "chronic physical illness or disability requiring the need for professional medical care and support," taking the position it was the County's obligation to meet these individuals' needs.  (Hashmall Decl. Ex. A at 8.)  The agreement provides, "the Court shall have continuing jurisdiction to oversee and enforce this Settlement Agreement," and permits the Court to "appoint one or more Special Masters" to assist "in overseeing and enforcing this Agreement."  (*Id.* at 9.)

The City's settlement "agrees" to impose significant obligations on the County—spanning two-and-a-half pages of the agreement—but the County is not a party to, and had no role in negotiating, the City's agreement.  (*Id.* at 17.)  The County filed an objection to the City's settlement agreement.  (*Id.* Ex. B at 4 [To define the "County's 'obligations' under the guise of entering a consent decree between other parties" is "entirely improper, and an egregious violation of the due process of law"].)  So did Intervenors.  (*Id.* Ex. C.)  At the hearing on the City's settlement agreement, Intervenors' counsel objected to the agreement's enforcement provisions, stated the agreement was inadequate to "address the homelessness crisis," and asserted the City was not "committing to do more than is already in the pipeline."  (*Id.* Ex. D at 7-20.)

This Court nonetheless approved the City's settlement agreement as "fair, reasonable, and adequate" because, while "not a solution for homelessness, it is a concrete step toward improving the lives of our neighbors who are currently suffering on the streets."  (*Id.* Ex. E.)  The Court appointed "Special Master Michele Martinez" as the "Monitor of the Settlement Agreement" to assist with oversight and enforcement.  (*Id.*)  The June 14, 2022 Order approving the City's settlement

Miller Barondess, LLP
Attorneys at Law
2121 Avenue of the Stars, Suite 2600  Los Angeles, California 90067
Tel: (310) 552-4400   Fax: (310) 552-8400

611761.4

10

agreement states the agreement does not affect "any rights" or impose any "responsibilities" on the County. (*Id.*)

Intervenors have appealed the June 14 Order. (Dkt. 451.)

## B.    The County/Plaintiffs Settlement Agreement

The County's historic settlement agreement—which was fully executed more than six months ago in October 2022—ends more than three years of litigation and provides much-needed additional resources within the City and County of Los Angeles to increase beds, services, outreach, and interim housing for the most vulnerable people experiencing homelessness. (Hashmall Decl. Exs. K, O.) The settlement builds on the County's massive response to homelessness outside the lawsuit.

Over the last five-and-a-half years, the County has placed more than 90,000 people in permanent housing, provided nearly 124,000 with temporary shelter, and prevented 22,000 others from falling into homelessness. The Board of Supervisors also declared a local emergency on homelessness in January 2023 and is fast-tracking encampment resolutions countywide, as well as housing and mental health and substance use disorder services.

As detailed in Section II.C., *post*, the Court demanded the parties change the following terms in the County settlement agreement:

- Section D.3, which provides that by the end of fiscal year 2023/2024, the County "shall develop 300 additional substance use and mental health beds according to the greatest need as solely determined by the County." (*Id.* Ex. G at 4.)

- Section D.9, governing the County's reporting obligations, which provides, "The County shall file reports regarding its progress in meeting its obligations under this Agreement quarterly. Each status report shall be provided within 30 days of the end of the County's fiscal quarter." (*Id.* at 5.)

- Section P.1.ii, which governs judicial enforcement if the dispute resolution and right to cure process outlined in the agreement does not resolve an alleged breach of the agreement. (*Id.* at 9.) The "Claiming Party may file a notice of

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

breach and request judicial enforcement in the District Court to remedy such alleged breach." (*Id.*)  The "only relief" available under the agreement for breach is "an order compelling specific performance of the Agreement." (*Id.*)  No party may seek monetary damages.  (*Id.*)

On April 18, 2023, the parties executed an addendum to the agreement modifying, among other things, the terms of Section D.3.  In the settlement agreement as modified by the addendum, the County is providing 1,000 new mental health and substance use disorder beds for the unhoused, as well as 450 subsidies to provide individuals at risk of homelessness with Enriched Residential Care in Adult Residential Facilities and Residential Care Facilities for the Elderly, commonly called "Board and Care" beds, throughout the County.  (*Id.* Ex. O.)

### C.  Plaintiffs And The County Jointly Seek Dismissal With Prejudice Of All Claims Against The County Under Rule 41(a)(2)

In September 2022, Plaintiffs and the County notified the Court that they had reached a settlement agreement that would result in the parties jointly seeking a dismissal with prejudice under Rule 41(a)(2).  (Hashmall Decl. Ex. F.)  A few weeks later, the parties submitted their executed settlement agreement and filed a stipulation for voluntary dismissal of this action in its entirety with prejudice.  (*Id.* Ex. G.)  The stipulation requests that the Court retain jurisdiction to enforce the agreement until the end of fiscal year 2026/2027 (i.e., June 30, 2027).  (*Id.*)

The Court invited "any party and the public to submit comments or objections" to the County settlement agreement and set a hearing for November 14, 2022.  (Dkt. 473.)  Intervenors filed a statement of non-opposition to the County settlement agreement.  (Hashmall Decl. Ex. H.)  No other comments or objections were filed.  At the November hearing, the City expressed "no objections."  (*Id*. Ex. I at 7.)  The Intervenors likewise did not object to "any of the substance" of the agreement.  (*Id.* at 8.)  But the Court refused "to endorse" the agreement based on its belief "that we can do much better," though it acknowledged its "unorthodox"

611761.4

12

approach is "rightfully subject to debate and criticism." (*Id.* at 12.)  The Court then put the agreement "on hold," pending the installation of newly elected officials.  (*Id.* at 18.)

The Court requested the presence of Mayor Karen Bass, Los Angeles City Council President Paul Krekorian, and Los Angeles County Supervisor Holly Mitchell at the second hearing on the County settlement agreement, held on January 17, 2023.  (*Id.* Ex. J.)  During this hearing, the Court criticized the agreement's reporting provision as inadequate and demanded different terms that would provide greater "judicial supervision" over the settlement.  (*Id.* Ex. L at 20-24.)  In the Court's words, the settlement agreement "without monitoring and accountability to the Court" was "dead on arrival.  That's my bottom line." (*Id.* at 24, 37-38 ["I want monitoring, and I want accountability, and I want it to the Court"]; *id.* Ex. M [acknowledging the "County Settlement Agreement—as it's written now—is a private settlement"].)

The Court also admonished the County to include more new subacute beds in a revised agreement, suggesting at least 3,200 to 4,250 additional beds were needed, on top of the 8,600 existing beds.  (*Id.* Ex. L at 13-15, 32; *id.* Ex. M at 8 ["(T)he County's offer falls short. . . . How can 300 beds accommodate the need for . . . those suffering from severe mental illness?"].)

The parties agreed to negotiate further, which resulted in the Addendum to the settlement agreement, providing 1,000 new mental health and substance use disorder beds, among other terms.  (*Id.* Ex. O.)  On April 18, 2023, Plaintiffs and the County resubmitted their Stipulation for Voluntary Dismissal, along with their fully-executed Addendum to Settlement Agreement.  (*Id.*)

## III.    THE APRIL 20, 2023 STATUS CONFERENCE AND THE COURT'S RULING

The Court held a status conference on April 20 regarding the parties' joint stipulation for voluntary dismissal, again demanding the presence of the Mayor,

611761.4

13

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

City Council president, and Los Angeles County Supervisor Janice Hahn. (Hashmall Decl. Ex. N.)  No party or Intervenor advocated for the Court to disapprove the parties' stipulation during the hearing:

- City Council President and Acting Mayor Paul Krekorian stated that the City was satisfied with the "monumental change" in its relationship with the County and the "significant progress" that the County's settlement agreement reflects.  (*Id*. Ex. P at 9, 36.)  Though the County settlement agreement is not sufficient, in and of itself, to solve the problem of homelessness, Mr. Krekorian was "absolutely confident" in the County's and its Board of Supervisors' commitment to working with the City.  (*Id.* at 10-11.)

- Counsel for Intervenors, Los Angeles Community Action Network and Los Angeles Catholic Worker ("LA Intervenors"), said "[y]ou cannot solve homelessness through litigation," but that "the County's commitment matches the City of Los Angeles's commitment" and is a "reasonable response under the circumstances to the need."  (*Id.* at 12-13.)  LA Intervenors' counsel stated it was inappropriate to "hold the County responsible for a different standard than the City was held" to in its settlement.[2]  (*Id*.)

- Plaintiffs stated their lawsuit was not about "solving homelessness," but the need to divert resources to "immediate crisis control."  (*Id.* at 16.)  They emphasized the delay in approving the dismissal and settlement agreement was impeding progress.  (*Id.* at 20.)  Plaintiffs characterized the agreement's "judicial enforcement provision" as providing an "extended period of enforcing this agreement with full transparency."  (*Id.* at 37-39, 41-42.)

- The County's counsel reiterated that the settlement agreement reflects only "a small piece" of the County's ongoing work to address homelessness.  (*Id.* at 43, 46.)  The County clarified the settlement agreement was already fully approved and executed[3] and underscored that its reporting and enforcement provisions provided the necessary accountability.

---

[2] Other counsel for Intervenors criticized the City settlement agreement and its focus on criminalization of homelessness.  (Hashmall Decl. Ex. P at 15.)

[3] The Court suggested that the settlement agreement was somehow not final because of a provision requiring County approval.  That is incorrect.  The parties to the agreement, the County and the Plaintiffs, *have* signed off on the agreement.  The County's counsel also confirmed that the settlement terms were approved by the Board and duly executed on behalf of the County.  (Hashmall Decl. Ex. P at 45.)

611761.4

14

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

The Court criticized the settlement agreement and demanded that the parties change its terms. The Court advised the County that members of the Board of Supervisors, rather than County Counsel, should be signatories to the agreement (although it made no such demand related to the City settlement agreement). (*Id.* at 22, 38.) It decreed the addition of 1,500 beds was insufficient and expressed the view that approving the parties' stipulated dismissal should not turn on whether the County had made "progress" in increasing the number of beds, but on whether the total number was "enough," suggesting several thousand more were required. (*Id.* at 28-29, 51.)

Most emphatically, the Court demanded additional oversight and enforcement powers, again calling the settlement agreement "dead on arrival" because it did not provide for the same "judicial oversight" as the City's agreement with Plaintiffs. (*Id.* at 23-25 ["You give me absolutely no oversight, and you give me no enforcement. . . . I'm giving you the credibility of the federal court . . . ."], 28 ["(Y)ou are asking the Court to put my approval on this."], 32 ["I have to have accountability" "[b]ecause while I may trust you implicitly, Chairwoman Hahn, . . . I don't know who your successor is. And I don't trust that [political] process."], 37 ["(J)ust restate the exact provisions in the City agreement . . . ."], 42 ["You get me that same paragraph that the City had, oversight and enforcement, let's talk. But until then, I said it before, and I'm not bargaining with you, I meant it."].)

The Court also expressed "grave concerns" that its signature on the dismissal would be used as an endorsement of the County agreement, because it could be used to support "new bond money" and a vote for "increased taxes"; made specific suggestions about how the County should better allocate its budget; and introduced extra-record evidence, including pictures of people experiencing homelessness. (*Id.* at 32-35 ["(D)on't throw the lack of money at me from the County's perspective," commenting on the salary of the director of Los Angeles Homeless Services Authority as "twice as much as a federal court judge," and concluding "I think the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

county has, with a $43.5 billion budget, a lot more potentially that you could contribute"]; *id.* at 38, 49-50.)

The April 20 Order denied the Plaintiffs' and the County's stipulation to voluntarily dismiss this action with prejudice under Rule 41(a)(2) for the "reasons stated on the record." (*Id.* Ex. Q.)

## IV. THE ORDER SHOULD BE CERTIFIED FOR IMMEDIATE APPELLATE REVIEW

The Court may certify an order for interlocutory appeal if it involves "[1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). The Supreme Court has underscored that discretionary review mechanisms, including Section 1292(b), are "useful 'safety valve[s]' for promptly correcting serious errors" and instructed that district courts "should not hesitate to certify an interlocutory appeal" when a decision "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009) (alteration in original) (citation omitted); *Balintulo v. Daimler AG*, 727 F.3d 174, 186 n.17 (2d Cir. 2013) (permissive interlocutory appeal serves to reduce "the need to develop extraordinary-writ practice to fill the inevitable gaps in provisions for appeal as a matter of right" (citation omitted)).

"The institutional efficiency of the federal court system is among the chief concerns underlying Section 1292(b)." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001). "The advantages of immediate appeal increase with the probabilities of prompt reversal, the length of the district court proceedings saved by reversal of an erroneous ruling, and the substantiality of the burdens imposed on the parties by a wrong ruling." 16 Edward H. Cooper, *Federal Practice*

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

*and Procedure* § 3930 (3d ed. Apr. 2023 Update).  As explained below, this Court's April 20 Order meets all three elements for Section 1292(b) certification.

### A.    The Order Involves Controlling Questions Of Law

The April 20 Order presents three controlling questions of law, the resolution of which will materially advance the termination of this case:  (1) the scope of a district court's discretion to disapprove a stipulated dismissal with prejudice pursuant to Rule 41(a)(2), following the parties' execution of a binding private settlement agreement disposing of all claims between them; (2) whether a district court may condition approval of a Rule 41(a)(2) dismissal on the addition of new settlement terms that are neither agreed to by the parties, nor requested by any other party or intervenor; and (3) whether there remains a justiciable case or controversy between the parties, considering they have settled all claims between them.

A "controlling" question of law is one which, if decided incorrectly and appealed immediately, would bring an end to the action.  *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990) ("[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action"); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (controlling question of law where delaying resolution "could cause the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter").  Indeed, "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

That a question of law concerns the scope of a district court's discretion is not an impediment to Section 1292(b) review.  "The key consideration is not whether the order involves the exercise of discretion, but whether it truly implicates the policies favoring interlocutory appeal," including "the avoidance of harm" from a "possibly erroneous interlocutory order and the avoidance of possibly wasted trial time and litigation expense." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 756 (3d

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

611761.4

17

Cir. 1974); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 626 (7th Cir. 2010) ("Decisions holding that the application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous.").

Questions of justiciability are controlling questions of law and regularly subject to certification under Section 1292(b). *Blackman v. Hadron, Inc.*, 450 F.2d 781, 782 (2d Cir. 1971) ("[t]he question certified to this court is, in essence, whether there remains a justiciable controversy" between the parties); *Philipp v. Federal Republic of Germany*, 253 F. Supp. 3d 84, 87 (D.D.C. 2017) (certifying for interlocutory appeal "whether Plaintiffs' claims are non-justiciable due to international comity"); *B.R. v. F.C.S.B.*, 17 F.4th 485, 491 (4th Cir. 2021) (certifying whether pseudonymous complaint invokes Article III case-or-controversy jurisdiction); *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 47 (1st Cir. 2015) (certifying whether unaccepted offer of judgment under Rule 68 moots Plaintiff's entire action).

It is similarly straightforward that (1) the scope of the Court's discretion under Rule 41(a)(2) to reject the parties' stipulated dismissal, and (2) whether the Court has the power to condition that approval on the addition of new settlement terms the Court (but no one else) wants are "controlling" questions of law. They can be decided quickly and cleanly as a matter of law and should bring an end to the action. There is no need to delve into a factual record to decide them. And as a practical matter, there is an exceedingly high cost to delaying review. The parties will be forced to litigate a case they have already fully resolved and in a way that actively harms the public interest.

The County wants to focus its resources and energy on carrying out its commitments, both under the settlement agreement, and more broadly, to ameliorate the homelessness crisis. It should not be forced to divert resources to litigation because this Court (1) wants powers of judicial involvement the parties deem unnecessary; (2) believes the settlement agreement should reflect a more

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

comprehensive solution for homelessness; and (3) thinks the County's Board of Supervisors should sign the settlement agreement.  As highlighted by Plaintiffs' counsel, delaying the parties' settlement agreement will only impede the City's and County's progress.  (Hashmall Decl. Ex. P at 19-20 ["(W)e continue to push for [this settlement], saying not only is this a good agreement for what it is, but it needed to have been done eight months ago.  It needed to have been done six months ago.  And here we are in April, watching these projects flounder."]; *see also id.* Ex. R (Intervenors: "[T]he instability caused by this litigation" "is not in the public interest").

### B.    An Immediate Appeal Will Likely Resolve The Litigation

Interlocutory review will also materially advance the ultimate resolution of this litigation.  *In re Cement Antitrust Litig.*, 673 F.2d at 1026 (certification materially advances the ultimate termination of litigation when "allowing an interlocutory appeal would avoid protracted and expensive litigation"); *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1067-68 (D. Haw. 2013) (material advancement criteria "is directed to the very purpose of §1292(b)—to 'facilitate disposition of the action by getting a final decision on a controlling legal issue sooner'" (citation omitted)).

Interlocutory review should end this extraordinarily large and complex litigation altogether, which strongly militates in favor of interlocutory review.  *Core Optical Techs., LLC v. Juniper Networks Inc.*, 2021 WL 5978761, at *1 (N.D. Cal. Dec. 17, 2021) (granting immediate appeal would materially advance the litigation where reversal was "likely (if not certain)" to terminate the litigation); *Rodrigues v. CNP of Sanctuary, LLC*, 2012 WL 12895255, at *3 (S.D. Fla. May 9, 2012) (granting interlocutory appeal to resolve whether confidentiality clause in FLSA settlement curtailed the public's and the parties' First Amendment rights, noting the "lawsuit will likely end sooner with an interlocutory ruling, than if the case is not settled and the litigation is continued").

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

## C.     This Court's Assertion Of Authority To Deny The Parties' Joint Stipulated Dismissal With Prejudice Is Unprecedented

Because the Court's actions here are so unprecedented, there is a dearth of precedent within the Ninth Circuit on when (1) a district court has authority to disapprove litigants' joint stipulation to dismiss under Rule 41(a)(2), in the absence of any objection by members of the public or intervenors; (2) whether it is *ever* appropriate to condition such a dismissal on the addition of settlement terms that the Court—but not the parties—want included; and (3) whether there even remains a justiciable controversy in the circumstances presented. The April 20 Order is clearly erroneous and exceeds the Court's Article III powers, heightening the need for immediate appellate review.

Indeed, discretionary review mechanisms are intended for just these circumstances. The legislative history of Section 1292(b) "indicates that the statutory prerequisite of 'substantial ground for difference of opinion' is satisfied only when there is '"substantial doubt" that the district court's order was correct.'" *Carbotrade SpA v. Bureau Veritas*, 1993 WL 60567, at *1 (S.D.N.Y. Mar. 2, 1992) (citing S.Rep. No. 2434, 85th Cong., 2d Sess. (1958), *reprinted in* [1985] U.S.C.C.A.N. 5255, 5257); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (interlocutory review is appropriate where there is a "substantial dispute about the correctness of any of the pure law premises the district court actually applied in its reasoning leading to the order sought to be appealed"). "The level of uncertainty required to find a substantial ground for difference of opinion" is also "adjusted to meet the importance of the question in the context of the specific case." Cooper, *supra*, § 3930; *see, e.g.*, *Coal. For Equity & Excellence In Md. Higher Educ. v. Md. Higher Educ. Comm'n*, 2015 WL 4040425, at *6 (D. Md. June 29, 2015) (granting Section 1292(b) certification in the "context of this extraordinarily important case" where state believed the court misinterpreted governing precedent and the other criteria for interlocutory appeal were satisfied).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

611761.4

20

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

The April 20 Order meets the standard for interlocutory review in this important case. It is the County's view that the April 20 Order is clearly erroneous and that an appellate court could draw no other conclusion.

***Dismissal is mandatory.*** Ample authority holds that where, as here, the stipulated dismissal of a case is with prejudice and does not injure the rights of third-party intervenors, voluntary dismissal under Rule 41(a)(2) is mandatory. *See Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964) (granting petition for writ of mandamus, directing district court to grant plaintiff's Rule 41(a)(2) motion for dismissal with prejudice); *Century Mfg. Co., Inc. v. Cent. Transp. Int'l, Inc.*, 209 F.R.D. 647, 648 (D. Mass. 2002) (where parties have moved to dismiss third-party complaint with prejudice under Rule 41(a)(2), "courts have found that they are without discretion, and must grant the motion"); *Bridgeport Music, Inc. v. London Music, U.K.*, 345 F. Supp. 2d 836, 841 (M.D. Tenn. 2004) (abuse of discretion to refuse to grant Rule 41(a)(2) dismissal with prejudice).

At the April 20 hearing, no party, Intervenor, or member of the public has objected to the County settlement agreement or the parties' joint request for dismissal. *Cf. ITV Direct, Inc. v. Health Sols., LLC*, 445 F.3d 66, 69-71 (1st Cir. 2006) (affirming withdrawal of approval of dismissal where intervenors—who obtained a preliminary injunction against cross-plaintiff—had not consented to judgment). To the contrary, Intervenors' counsel has urged this Court to approve the settlement and asserted the delay in doing so is causing harm.[4] Plaintiffs' counsel likewise urged dismissal, stating "We cannot keep waiting and letting the perfect be the enemy of the good." (Hashmall Decl. Ex. P at 20.) There is simply no precedent for a district court denying a request for stipulated dismissal with prejudice under these circumstances.

---

[4] The opposite is true for the City settlement agreement. Intervenors *have* objected to that settlement agreement as prejudicial to their interests. (Hashmall Decl. Ex. C.)

611761.4

21

There are at least three justifications that dismissal is mandatory under these circumstances. First, the "'principle [sic] consideration' for a court considering whether to dismiss a case under Rule 41(a)(2) 'is whether dismissal would prejudice the defendant,'" and so "the fact that dismissal with prejudice secures the defendant's interests weighs heavily in support of allowing such a motion." *Puello v. Citifinancial Servs., Inc.*, 2010 WL 1541503, at *3 (D. Mass. Apr. 16, 2010) (citation omitted); *accord Hamilton v. Firestone Tire & Rubber Co., Inc.*, 679 F.2d 143, 145 (9th Cir. 1982) (a district court's discretion is typically limited to evaluating "whether the *defendant* will suffer some plain legal prejudice as a result of the dismissal" (emphasis added)). Here, there is no suggestion that the County will be prejudiced by dismissal. Thus, in denying dismissal under Rule 41(a)(2), the Court's concerns—focused on its own desired powers of monitoring—address a different, procedurally improper consideration.

The second is "based on concerns of practicality and logistics." *Puello*, 2010 WL 1541503, at *3. If a court denies a plaintiff's request to dismiss a case with prejudice: "Could the Court force the plaintiff to continue discovery, or offer evidence? Can or should the Court require plaintiff to litigate a claim" when the plaintiff "has attempted to dismiss it?" *Id.* (citation omitted). The parties should not be forced to litigate after they've settled.

Third, a case that is fully settled is no longer justiciable because there is no case or controversy between the parties. Under Article III of the Constitution, the federal judiciary is only vested with power to decide "Cases" or "Controversies" through an adversary process. *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132-33 (2011) ("Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary").

This is core to the separation of powers doctrine. "Federal courts do not possess a roving commission to publicly opine on every legal question," nor do they

611761.4

22

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600 LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400 FAX: (310) 552-8400

"exercise general legal oversight of the Legislative and Executive Branches, or of private entities." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." (citation omitted)); *United States v. Sineneng-Smith*, 140 S. Ct 1575, 1579 (2020) ("our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief'"; courts "do not, or should not, sally forth each day looking for wrongs to right" (alteration in original) (citations omitted)).

As the Ninth Circuit has already instructed, this Court only has "equitable power to grant relief" on the "case or controversy before it." *LA All.*, 14 F.4th at 957 (citation omitted). That controversy has now been resolved (twice), and the case *must* be dismissed.

***This Court improperly conditioned approval of the parties' stipulated dismissal on changing the terms of their settlement agreement.*** This Court's limited power under Rule 41(a)(2) does not permit the Court to rewrite the settlement agreement or condition dismissal on giving the Court additional powers of judicial oversight that are not agreed to by the parties. Case law *only* supports the imposition of terms "to prevent prejudice to the defendant." *Hamilton*, 679 F.2d at 146; *McCall-Bey v. Franzen*, 777 F.2d 1178, 1184 (7th Cir. 1985) ("it has been uniformly assumed" that "the terms and conditions must be for the defendant's benefit"); *McLaughlin v. Cheshire*, 676 F.2d 855, 856 (D.C. Cir. 1982) (the discretion that a court has in imposing terms and conditions in a Rule 41(a)(2) dismissal is "limited to imposing conditions that will alleviate harm (other than tactical disadvantage) that the defendant will suffer if the motion is granted."); *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 604-05 (5th Cir. 1976) (in ruling on motions for voluntary dismissals, the court "should impose only those conditions

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

611761.4

23

which will alleviate the harm caused to the defendant"; reversing district court's conditions on Rule 41(a)(2) dismissal where there was no indication "how defendants would be prejudiced by an unconditional dismissal").

This Court has acknowledged "this is not a class action settlement." (Hashmall Decl. Ex. P at 50.)  No precedent allows the Court to impose new terms and conditions in the "public interest" in this context, particularly where, as here, the Intervenors have urged the Court to approve the settlement agreement and dismiss the litigation.  *See In re Smith*, 926 F.2d 1027, 1029-30 (11th Cir. 1991) (granting writ of mandamus, directing district court to vacate order disapproving settlement agreement "based on the 'unrepresented interests' of Florida taxpayers"); *Gardiner v. A.H. Robins Co., Inc.*, 747 F.2d 1180, 1185-88 (8th Cir. 1984) (district court had no authority to approve settlement agreement underlying stipulated dismissal).

The parties chose a judicial enforcement mechanism that carefully balances the parties' desire for accountability and effective enforcement, while avoiding the type of expansive judicial supervision that raises "sensitive federalism concerns" (*Horne v. Flores*, 557 U.S. 433, 448 (2009)) and risks improperly depriving state officeholders of "their designated legislative and executive powers."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 441 (2004).  The Court's conduct here, attempting to dictate the County's budget priorities and policy choices beyond the purview of this fully-settled litigation, proves the County's concerns are well-founded.

## V.    CONCLUSION

For these reasons, the County respectfully requests that the Court amend its April 20 Order to certify it for interlocutory appeal under 28 U.S.C. § 1292(b).

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

DATED:  April 28, 2023          MILLER BARONDESS, LLP


By:  /s/ Mira Hashmall
_____
MIRA HASHMALL
Attorneys for Defendant
COUNTY OF LOS ANGELES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

611761.4

DEFENDANT COUNTY OF LOS ANGELES' MOTION FOR CERTIFICATION OF COURT'S
APRIL 20, 2023 ORDER PURSUANT TO 28 U.S.C. § 1292(b)