# EXHIBIT R

**No. 21-55408**

**(Consolidated with Nos. 21-55404 and 21-55395)**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

LA ALLIANCE FOR HUMAN RIGHTS, et al.

*Plaintiffs-Appellees,*

v.

CITY OF LOS ANGELES, et al.

*Defendants-Appellants.*

CANGRESS,

*Intervenor-Appellant.*

_____

Appeal From The United States District Court,
Central District of California, Case No. 2:20-cv-02291
Hon. David O. Carter

_____

**INTERVENOR'S SUPPLEMENTAL BRIEF RE: STAY**

_____

Shayla R. Myers
LEGAL AID
FOUNDATION
OF LOS ANGELES
7000 S. Broadway
Los Angeles, CA
90003
Tel: (213) 640 3983
Fax: (213) 640 3988

Carol A. Sobel
Weston C. Rowland
LAW OFFICE OF
CAROL SOBEL
725 Arizona Ave.
Suite 300
Santa Monica, CA
90401
Tel.: (310) 393-3055
Fax: (310) 451-3858

Paul L. Hoffman
Catherine E. Sweetser
SCHONBRUN SEPLOW
HARRIS HOFFMAN &
ZELDES LLP
9415 Culver Blvd., #115
Culver City, CA 90232
Tel: (310) 396-0731
Fax: (310) 399-7040

**EXHIBIT R - Page 417**

## I.   <u>INTRODUCTION</u>

In response to Appellants City and County's application to this Court for a stay pending appeal, the Court requested supplemental briefing regarding the potential impacts of any further proceedings at the district court.  The Court also invited Appellant-Intervenor CANGRESS dba Los Angeles Community Action Network (LA CAN), which had not independently sought a stay, to file a brief addressing its view on a stay. LA CAN joins the supplemental brief filed by the City and County regarding the impact of the further district court proceedings but write separately to express reasosn for supporting the stay.

## II.   <u>PROCEDURAL HISTORY</u>

On March 10, 2020, eight individuals and an organizational plaintiff sued the City and the County over the effects of homelessness on downtown business owners and residents.  Complaint, Dkt. 11-7 at 160-251.  Shortly after the case was filed, the Court granted LA CAN's motion to intervene, along with the Los Angeles and Orange County Catholic Workers.  11 ER 2774. LA CAN is a grassroots, member-driven organization that has operated in Skid Row for more than two decades.  11 ER 2775 (Order granting Motion to Intervene).  More than 800 low-income residents of Skid Row are involved with LA CAN, including a significant number of unhoused members who are unsheltered in Skid Row. In granting the motion to intervene as a matter of right, the district court noted that

1

intervenors are "the only party that represent the interests of unhoused persons," 11 ER 2778; *see also* 11 ER 2777 n. 1 ("Courts have recognized these as sufficient interests to support intervention, particularly where, as here, there is no other representation of unsheltered homeless people in Los Angeles, who are most likely to be impacted by any proposed remedies in this and noting that LA CAN members have a "protectable interest to be free from increased enforcement"). Shortly thereafter, the parties agreed to stay litigation while the parties discussed a potential resolution of the litigation.

In April 2021, Plaintiffs unilaterally ended the year-long stay and filed a motion for a sweeping preliminary injunction, seeking a court order to clear Skid Row in 90 days. Plaintiffs' Notice of Motion and Motion for Preliminary Injunction; Memorandum of Points and Authorities, Dkt. 11-9. In support of its motion, Plaintiffs put forth no evidence or even any argument why such a sweeping court order would be in the public interest, even though mandatory injunctions are "particularly disfavored," *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009), and courts are instructed to "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

2

Intervenors and the City and County filed briefs and significant evidence in opposition to the motion.  Among the filings were declarations from experts who uniformly opined that the proposed order would have a negative impact not only people in Skid Row, but also throughout the County. All of the evidence in the record demonstrated why this injunction was simply not in the public interest.  *See e.g.*, Dkt. 11-24 at 1427, ¶¶ 17-22.

Less than 24 hours after this evidence was filed, the District Court granted the preliminary injunction at issue in this appeal.  Order Granting Injunction, Dkt. 11-3.  The Court issued a 110-page order that walks the parties through the history of redlining, eminent domain, and other racist policies in Los Angeles, which have unquestionably contributed to the massive overrepresentation of Black people experiencing homelessness in Los Angeles. *Id.* at 18-35.  Then, instead of addressing the structural racism highlighted in the Court's order, the Court issued an injunction requiring, *inter alia*, the City to put a billion dollars of City funds earmarked for homeless services into escrow with the Court for the City and County to offer, and if accepted, provide shelter or housing to everyone in Skid Row within 180 days. *Id.* at 121, 123.

In support of the order, the Court includes citations to and quotations from countless politicians, organizers, and homelessness advocates.  Dkt. 11-3.  But the order does not even refer to any of the evidence filed by Intervenors or the City

3

**EXHIBIT R - Page 420**

and the County in opposition to the motion.  The order fails to address any of the arguments regarding the public interest at stake in the case; it sidesteps the issue completely, resting entirely on its determination that the public interest would be served by the vindication of Plaintiffs' constitutional rights.  *See* Dkt. 11-3 at 107-109.

## III.   A STAY IS IN THE PUBLIC INTEREST

Putting aside legal errors, which the City and County have thoroughly briefed, Intervenors write separately to address the significant harm to the public interest if the stay is lifted and the order is allowed to go into effect during the pendency of the appeal.

First, flooding Skid Row with offers of shelter and housing in the unilateral timeframe set by the Court may seem advisable, but there is ample evidence in the record that this will not only be unlikely to result in a significant reduction in the number of people living on the streets, and even on the streets of Skid Row, but will also cause harm to the community. *See* Dkt. 11-25 at 1448, ¶¶ 13-14;  Dkt. 11-14 at 679, ¶ 27.  As explained by Intervenors' experts, offers of shelter that are not calculated to meet a person's unique needs are not helpful and are unlikely to lead to permanent housing placements.

Even worse, court-mandated "offers of shelter or housing" can perpetuate a harmful "churn effect," in which unhoused people move in and out of shelters,

4

with no path to permanence and stability. Few people move from these short-term placements to permanent shelter, and not for a lack of desire by the participant to move into housing. *Id.* at 1448, ¶ 15. Instead, there is currently far too little permanent housing available to meet the need. Without a permanent placement available, unhoused residents will leave the shelter because the temporary program runs its course, *id.* at 1448, ¶¶ 12-13, or they become frustrated or unable to cope with the experiences in the shelter. Even if a person accepts a shelter bed the first time it is offered, exiting a program without an option for permanent housing can be incredibly disruptive, and it can become harder for that person to move back into shelter the next time. Dkt. 11-26 at 1688, Exh. 24; id. at 1460, ¶ 18. This cycle of street to shelter and back onto the street can have negative long-term consequences, particularly if the the "offers of shelter" include threats of law enforcement or displacement. Dkt. 11-25 at 1448, ¶ 11. This cycle often leads to "persistent homelessness," which is the largest driver of the increase in homelessness in Los Angeles. Dkt. 11-26 at 1688, Exh. 24, and for which the only solution is permanent housing. *Id.*

Second, the County put forth significant evidence that, if they were required to meet a deadline like the one proposed by Plaintiffs and ordered by the Court, they would be unable to do so without drawing on resources that have already been allocated county-wide, which would now have to be diverted to Skid Row to fulfill

5

this order.  Dkt. 11-14 at 678-679, ¶¶ 25-28 (explaining the carefully developed regional distribution of funding and services throughout the County, and how pulling resources from other areas to focus on Skid Row "would mean disproportionately directing services with resulting inequities").  At best, the result of the order is not that more people will be housed, but instead, that different people may be housed.  At worst, experts who submitted declarations in the record raised concerns that this diversion of resources could actually cause an increase in the number of people living on the streets, since the resources would have to be diverted away from interventions that were proven to work for people experiencing homelessness.  Dkt. 11-24 at 1427-1428, ¶¶ 17-19, 21 (creating a "vast temporary shelter system" would continue to increase homelessness without addressing structural economic issues and would displace people in Skid Row); Dkt. 11-14 at 678-679 & 1207-1221, ¶¶ 25-28 & Exh. 12.

The District Court's order presumes that people are not currently being housed and moved into shelter every day and that the order will result in more people being sheltered.  But in reality, thousands of people move into housing and shelter every month in Los Angeles, through systems that have been built and refined for years in Los Angeles.  Dkt. 11-14 at 900 (stating that as of February 2020, "[a] total of 19,767 individuals and family members have been permanently housed because of Measure H strategies since July 2017");  Dkt. 11-26 at 1649,

6

Exh. 24 (crediting the countywide Homeless Initiative with 30,900 permanent housing placements over four years).

In Los Angeles County, resources are largely allocated based on need, which is used to match people with the type of resources that are available at any given time. *Id.* at 1689, Exh. 24 ("[T]he Coordinated Entry System targets the vulnerable households for different types of placements and service prioritization using VI-SPDAT scores"); Dkt. 11-14 at 1208-1221, Exh. 12 (describing a panoply of county programs serving people experiencing homelessness which are tailored to individual needs). These systems are predicated on addressing the needs of people who are unhoused and being able to match them with available resources, which leads to higher rates of housing stability. The ability to engage in this kind of thoughtful, people-centered strategy will be significantly undermined if the District Court order remains in effect, and the City and County must shift their focus from need to geography. Dkt. 11-14 at 678-679, ¶¶ 25-28; Dkt. 11-24 at 1427-1429, ¶¶ 17, 19. The District Court's order takes away any chance at meaningful consideration of how to deploy resources to best serve the community at any given time; instead, it will force the prioritization of resources based on the district court's assessment of how to allocate those resources. Dkt. 11-14 at 679, ¶ 27 ("The requested injunctions asks the County to prioritize Skid Row relocation

7

efforts above all else.  This would upend the County's Board-approved, voter-endorsed process").

As the District Court outlined, Los Angeles has a significant legacy of racism that continues to impact every aspect of life in this city and county, and the City and County's homeless services systems are no exception.  Dkt. 11-3 at 2-4. There are corrections and improvements that must be made to the systems currently being deployed in Los Angeles County, in order to better remedy the institutional racism and anti-Blackness that has shaped City and County's housing policies for centuries.  *Id.* at 19.[1]  But work on that front is under way as well, *id.,* and that work would also be disrupted by the order. Dkt. 11-14 at 981, 1037.  This would ironically mean that a court order that speaks forcefully about the inequalities in Los Angeles would reinscribe those inequalities by disrupting work at the community level to undo these structural harms.

Finally, it cannot be overstated that, over the next few months, the City and County will likely go through another seismic shift related to housing and homelessness--the reopening of the economy, which threatens to restart eviction proceedings in Los Angeles.  This will by all accounts lead to a dramatic increase

---

[1] The Order cites the Recommendations of the Ad Hoc Committee on Black People Experiencing Homelessness at 7, December 2018, available at https://www.lahsa.org/documents?id=2823-report-and-recommendations-of-the-ad-hoc-committee-on-black-people-experiencing-homelessness.

8

in evictions, which inevitably leads to an increase in homelessness. *See* Dkt. 11-22 at 1394-1395. Each time the homeless services delivery system in Los Angeles must pivot to address external forces, it impacts the system's ability to effectively move people into housing. *Id.,* ¶ 16 ("The injunction...would force the City and the County to divert resources desperately needed to keep families housed [in this time of rampant evictions] in order to force people currently in encampments into shelters"). And this in turn impacts the people whose lives depend on those systems.

Assuming there is another dramatic shift on the horizon, the public interest is not served by allowing the mandatory preliminary injunction to go into effect now, when it is likely that it could all be undone in a few months after the appeal is heard, when the system is already struggling to address the COVID-19 pandemic and the ensuing eviction crisis.

## IV. THE APPEAL RAISES SERIOUS LEGAL ISSUES WHICH SHOULD BE RESOLVED BEFORE THE MANDATORY INJUNCTION TAKES EFFECT

As the City and County laid out in their briefs in support of the stay, there are serious legal questions with the district court's order. In an ordinary case, "courts are essentially passive instruments of government. They do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them and when cases arise, courts normally decide only

9

questions presented by the parties." *U.S. v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020) (internal citations omitted). The reason for that is simple: "[the court] rel[ies] on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.; see also Greenlaw v. U.S., 554* U.S. 237 (2008).

In response to this motion however, the district court chose to rely on its own legal arguments, evidence, and opinions about what is best for unhoused residents in Los Angeles. When a district court does that, it abdicates its role as "the neutral arbiter." *Id.* The district court's mandatory injunction will, if it goes into effect, result in a radical restructuring of the City and County's delivery of homeless services, which will unquestionably impact unhoused people most of all. See 11 ER 2777, n. 1. The parties, the unhoused residents of Skid Row and throughout Los Angeles, and the public in general, are entitled to a neutral assessment of the legal issues and the evidence by this Court, before homeless services throughout the County are upended yet again, as a result of this case.

## V.   **CONCLUSION**

In addition to the arguments put forth by Appellants City and County, Intervenor-Appellant submits that the public interest demands that the stay remain in place during the pendency of the appeal.

10

DATED:  June 3, 2021          LEGAL AID FOUNDATION OF LOS ANGELES

By:    s/ Shayla Myers
       SHAYLA MYERS
       Attorneys for Intervenor and Appellant CANGRESS

DATED:  June 3, 2021          LAW OFFICES OF CAROL SOBEL

By:    s/ Carol Sobel
       CAROL SOBEL
       Attorneys for Intervenor and Appellant CANGRESS

11

## CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 1999 Avenue of the Stars, Suite 1000, Los Angeles, CA 90067.

On June 3, 2021, I served true copies of the following document(s) described as:

### INTERVENOR'S SUPPLEMENTAL BRIEF RE: STAY

on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 3, 2021, at Los Angeles, California.

_____
William Hoffmn

Service List Report for Case 21-55408

https://ecf.ca9.uscourts.gov/n/beam/servlet/TransportRoom?servlet=Serv...

**Return to Service List Page**

**Service List for Case:** 21-55408 LA Alliance for Human Rights et al v. Cangress et al

**Current Associated Cases:** 21-55404 LA Alliance for Human Rights et al v. City of Los Angeles et al, 21-55395 LA Alliance for Human Rights et al v. County of Los Angeles et al

**CAUTION:** If the word *Active* is in the **ECF Filing Status** column, then your electronic filing will constitute service to the party.
If *Not Registered*, *Exempt*, *Exemption Expired*, *Pending*, *Rejected*, or *Suspended* appears in the **ECF Filing Status** column (or it is blank), then you must serve this party by US Mail.

| Contact Info | Case Number/s | Service Preference | ECF Filing Status |
|---|---|---|---|
| Lauren Michelle Black<br>6th Floor<br>648 Kenneth Hahn Hall of Administration<br>500 West Temple Street<br>Los Angeles, CA 90012-2713<br>Email: lblack@counsel.lacounty.gov | 21-55395 | Email | Active |
| Christian Contreras<br>Guizar, Henderson & Carrazco, LLP<br>3500 W. Beverly Blvd.<br>Montebello, CA 90640<br>Email: ccontreras@ghclegal.com | 21-55395<br>21-55404<br>21-55408 | Email | Active |
| Jennifer Mira Hashmall<br>Miller Barondess, LLP<br>1999 Avenue of the Stars<br>Suite 1000<br>Los Angeles, CA 90067<br>Email: mhashmall@millerbarondess.com | 21-55395 | Email | Active |
| Arlene Nancy Hoang<br>Office of the Los Angeles City Attorney<br>Room 675<br>200 North Spring Street<br>Los Angeles, CA 90012<br>Email: arlene.hoang@lacity.org | 21-55404 | Email | Active |
| Scott D. Marcus<br>Los Angeles City Attorney's Office<br>7th Floor<br>200 North Main Street<br>Los Angeles, CA 90012<br>Email: scott.marcus@lacity.org | 21-55404 | Email | Active |
| Jessica Mariani<br>Los Angeles City Attorney's Office<br>Room 675<br>200 North Main Street<br>Los Angeles, CA 90012<br>Email: jessica.mariani@lacity.org | 21-55404 | Email | Active |
| Byron Jesse McLain<br>Foley & Lardner LLP<br>555 S. Flower Street<br>Suite 3300<br>Los Angeles, CA 90071-2418<br>Email: bmclain@foley.com | 21-55395 | Email | Active |
| Louis R. Miller<br>Miller Barondess, LLP<br>1999 Avenue of the Stars | 21-55395 | Email | Active |

**EXHIBIT R - Page 430**

Service List Report for Case 21-55408

https://ecf.ca9.uscourts.gov/n/beam/servlet/TransportRoom?servlet=Serv...

Case: 21-55408, 06/03/2021, ID: 12133402, DktEntry: 16, Page 15 of 15

| Contact Info | Case Number/s | Service Preference | ECF Filing Status |
|---|---|---|---|
| Suite 1000<br>Los Angeles, CA 90067<br>Email: smiller@millerbarondess.com | | | |
| Elizabeth A. Mitchell<br>Spertus, Landes & Umhofer, LLP<br>617 West 7th Street<br>Suite 200<br>Los Angeles, CA 90017<br>Email: emitchell@spertuslaw.com | 21-55395<br>21-55404<br>21-55408 | Email | Active |
| Shayla Renee Myers<br>Legal Aid Foundation of Los Angeles<br>7000 South Broadway<br>Los Angeles, CA 90003<br>Email: smyers@lafla.org | 21-55408 | Email | Active |
| Amie Park<br>Los Angeles County Counsel<br>Sixth Floor<br>500 West Temple Street<br>Los Angeles, CA 90012<br>Email: apark@counsel.lacounty.gov | 21-55395 | Email | Active |
| Emily A. Rodriguez-Sanchirico<br>Miller Barondess, LLP<br>1999 Avenue of the Stars<br>Suite 1000<br>Los Angeles, CA 90067<br>Email: esanchirico@millerbarondess.com | 21-55395 | Email | Active |
| Carol A. Sobel<br>Law Office of Carol A. Sobel<br>1158 26th Street<br>Suite 552<br>Santa Monica, CA 90403<br>Email: carolsobel@aol.com | 21-55408 | Email | Active |
| Catherine Sweetser<br>Schonbrun Seplow Harris Hoffman & Zeldes LLP<br>9415 Culver Boulevard<br>Suite 115<br>Culver City, CA 90232<br>Email: csweetser@sshhzlaw.com | 21-55408 | Email | Active |
| Matthew Umhofer<br>Spertus, Landes & Umhofer, LLP<br>1990 South Bundy Drive<br>Suite 705<br>Los Angeles, CA 90025<br>Email: matthew@spertuslaw.com | 21-55395<br>21-55404<br>21-55408 | Email | Active |
| Michael Martin Walsh<br>Los Angeles City Attorney's Office<br>7th Floor<br>200 North Main Street<br>Los Angeles, CA 90012<br>Email: michael.walsh@lacity.org | 21-55404 | Email | Active |

6/3/2021, 10:32 PM

**EXHIBIT R - Page 431**