# EXHIBIT B

SPERTUS, LANDES & UMHOFER, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
617 W. 7th Street, Suite 200
Los Angeles, California 90017
Telephone: (213) 205-6520
Facsimile: (213) 205-6521
mumhofer@spertuslaw.com
emitchell@spertuslaw.com

*Attorneys for Plaintiffs*


DAWYN R. HARRISON, Acting County Counsel (SBN 173855)
dharrison@counsel.lacounty.gov
JENNIFER A.D. LEHMAN, Assistant County Counsel (SBN 191477)
jlehman@counsel.lacounty.gov
ANA WAI-KWAN LAI, Senior Deputy County Counsel (SBN 257931)
alai@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
500 West Temple Street, Suite 468
Los Angeles, California 90012
Telephone: (213) 974-1830
Facsimile: (213) 626-7446

[*Additional counsel continued on following page.*]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>Defendants. | CASE NO. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**STIPULATION FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)** |

STIPULATION FOR VOLUNTARY DISMISSAL WITH PREJUDICE
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)

EXHIBIT  B- Page 15

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705
LOS ANGELES, CA  90025
TELEPHONE 310-826-4700; FACSIMILE 310-826-4711

Louis R. Miller (SBN 54141)
Mira Hashmall (SBN 216842)
MILLER | BARONDESS LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-7560
Fax: 310-552-8400
mhashmall@millerbarondess.com

*Attorneys for Defendant*
COUNTY OF LOS ANGELES

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles. CA. 90025
Telephone 310-826-4700; Facsimile 310-826-4711

STIPULATION FOR VOLUNTARY DISMISSAL WITH PREJUDICE
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)

**TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiffs LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karen Pinsky, Charles Malow, and George Frem ("Plaintiffs") and Defendant County of Los Angeles ("County") have reached a settlement in the above-captioned case. Pursuant to Federal Rule of Civil Procedure 41(a)(2), Plaintiffs hereby request an order dismissing this action against the County with regard to all claims in their entirety, with prejudice, and request this Court retain jurisdiction for purposes of enforcing their agreement until the end of fiscal year 2026/2027 (*i.e.*, June 30, 2027). A copy of the settlement agreement is attached hereto as **Exhibit 1**.

Rule 41(a)(2) permits a plaintiff to seek a voluntary dismissal by court order if dismissal is no longer available as of right under Rule 41(a)(1)(A)(i). Because the County has served an answer [Dkt. 320], a court order is required for Plaintiffs to dismiss their claims against the County. *See* Fed. R. Civ. P. 41(a)(1) (a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer" or "a stipulation of dismissal signed by all parties who have appeared").[1] A request for voluntary dismissal should be denied only when the defendant will suffer "plain legal prejudice." *Waller v. Financial Corp. of Am*., 828 F.2d 579, 583 (9th Cir. 1987). The County will suffer no legal prejudice because the County consents to Plaintiffs' request for dismissal, which is submitted by Plaintiffs as a condition of the settlement reached between the County and Plaintiffs.

Rule 41(a)(2) provides that the trial court may impose terms and conditions on an order of voluntary dismissal. Fed. R. Civ. P. 41(a)(2). The purpose of this rule is

[1] The parties are also unable to obtain consent to a stipulated dismissal from Gary Whitter, who has been incommunicable for months, as explained in Plaintiffs' counsel's July 11, 2022 *Ex Parte* Application to Withdraw as Counsel. [Dkt. 450.]

Spertus, Landes & Umhofer, LLP
1990 South Bundy Dr., Suite 705
Los Angeles, CA 90025
Telephone 310-826-4700; Facsimile 310-826-4711

1

STIPULATION FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)

to protect the defendant from prejudice. *See Cross v. Westchester Dev. Corp. V Chiulli*, 887 F.2d 431, 432 (2nd Cir. 1989); *McCall-Bey v. Franzen*, 777 F.2d 1178, 1183-84 (7th Cir. 1985). Because the County will not be prejudiced in any way by the requested order, there is no need to impose any conditions to the order granting dismissal. Moreover, the parties' settlement agreement provides for the allocation of costs and attorneys' fees.

## CONCLUSION

For the foregoing reasons, Plaintiffs and the County respectfully request that the Court enter an order dismissing Plaintiffs' claims against the County with prejudice and retaining jurisdiction for purposes of enforcing their agreement until the end of fiscal year 2026/2027 (*i.e.*, June 30, 2027).

Dated: October 17, 2022             Respectfully submitted,

                                    */s/ Elizabeth A. Mitchell*
                                    SPERTUS, LANDES & UMHOFER, LLP
                                    Elizabeth A. Mitchell

                                    *Attorneys for Plaintiffs*

                                    *The other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.*

Dated: October 17, 2022             */s/ Louis R. Miller*
                                    MILLER | BARONDESS LLP
                                    Mira Hashmall

                                    *Attorneys for Defendant County of Los Angeles*

Spertus, Landes & Umhofer, LLP
1990 SOUTH BUNDY DR., SUITE 705

2

STIPULATION FOR VOLUNTARY DISMISSAL WITH PREJUDICE
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(2)

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into in connection with the action *LA Alliance for Human Rights et al. v. City of Los Angeles et al.*, U.S. District Court for the Central District of California, Case No. 2:20-cv-02291 (the "Action") by and between the County of Los Angeles ("County"); LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karyn Pinsky, Charles Malow, and George Frem (collectively, "Plaintiffs"); and Spertus, Landes, & Umhofer, LLP ("Plaintiffs' Counsel"), solely with respect to Section B.5 of this Agreement.  Each of the County and Plaintiffs is referred to individually as a "Party" and collectively as the "Parties."

In and through this landmark Agreement, the Parties desire to end the Action and also address the needs of People Experiencing Homelessness ("PEH") by supporting the development of housing units and the provision of a comprehensive and targeted array of supportive services designed to prevent and end homelessness, and by strengthening existing agreements and partnerships between and among relevant stakeholders such as the Parties and the City of Los Angeles ("City").  This Agreement follows over two years of contested litigation involving significant motion practice and an appeal, and months of arduous mediation attended by the Parties and the City.  All Parties have found and determined that this Agreement is entered into for good consideration following a lengthy negotiation and revision process.

## RECITALS

WHEREAS, Plaintiff LA Alliance for Human Rights ("Alliance") is an incorporated non-profit membership association in Los Angeles, California;

WHEREAS, Alliance's members include Plaintiffs Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karyn Pinsky, Charles Malow, George Frem, Charles Van Scoy, Leonard Suarez, all other individual plaintiffs that appeared in the Action, and current and/or former homeless individuals, non-profit organizations, community leaders, employees, residents, business owners, service providers, and community members residing and/or working in the County and/or the City;

WHEREAS, on March 10, 2020, Plaintiffs initiated the Action against the City and the County in the District Court for the Central District of California, where it was assigned to the Honorable David O. Carter ("District Court");

WHEREAS, on April 20, 2021, the District Court entered a preliminary injunction against the City and County, ordering the County to, *inter alia,* cease any sales, transfers or leases of County-owned properties, shelter and provide treatment services to all residents of Skid Row, and prepare numerous audits and reports (ECF No. 277);

WHEREAS, on October 15, 2021, the United States Court of Appeals for the Ninth Circuit vacated the injunction issued by the District Court and remanded the Action to the District Court;

WHEREAS, on November 1, 2021, Plaintiffs filed a First Amended and Supplemental Complaint ("FASC") against the City and the County (ECF No. 361);

WHEREAS, the County denied all claims in the FASC and filed a motion to dismiss the FASC, which was taken under submission by the District Court following a hearing on January 24, 2022 (ECF No. 370);

Page 1 of 11

EXHIBIT  B- Page 19

WHEREAS, while the County's motion to dismiss was pending, Plaintiffs and the City entered into a settlement agreement to which the County is not a party (the "City Settlement"), and also filed a stipulated order of dismissal as to Plaintiffs' claims against the City (ECF Nos. 426-1, 429-1);

WHEREAS, on June 14, 2022, the District Court entered an order approving the settlement agreement between Plaintiffs and the City, and dismissing with prejudice Plaintiffs' claims against the City as alleged in the FASC (ECF No. 445) but retained jurisdiction for purposes of enforcement;

WHEREAS, on July 15, 2022, Plaintiffs filed a Second Amended and Supplemental Complaint ("SASC") against the County (ECF No. 454);

WHEREAS, the County expressly denies all claims alleged in the SASC;

WHEREAS, the Parties have participated in multiple mediation sessions before neutral third parties at which all Parties were represented by sophisticated counsel of their choosing and engaged in arms-length negotiations that resulted in this Agreement;

WHEREAS, Plaintiffs and the County now desire to fully and finally compromise and settle all claims arising out of or relating to all matters alleged or that could have been alleged in the Action with respect to the Parties, without any admission of fault, liability, or wrongdoing, in the interests of avoiding the additional expense and the inherent uncertainties of protracted litigation upon the terms and conditions set forth in this Agreement; and

NOW THEREFORE, in consideration of the promises, covenants, warranties, representations, and conditions contained herein, for good and valuable consideration given hereunder, and with the intent to be legally bound, the Parties hereby agree as follows:

## TERMS

**A.    Effective Date and Duration**:

1.    Subject to the requirements of Sections A.2 and E, this Agreement shall become effective and operative on the date that the District Court enters an Order dismissing, with prejudice, the Action, subject to the court's continuing enforcement in accordance with Section P of this Agreement.

2.    The effectiveness of this Agreement is expressly subject to and contingent upon approval by the County's approval of settlements process, including by the Los Angeles County Claims Board and/or the County Board of Supervisors, and by approval of the individual Plaintiffs.

3.    The County's obligations in Section D.1–9 of this Agreement shall terminate at the end of fiscal year 2026/2027 (*i.e.*, June 30, 2027).

**B.    Representations, Warranties, and Acknowledgements**:

1.    Plaintiffs represent and warrant that they have not assigned, transferred, granted, or purported to assign, transfer, or grant, any of the claims, demands, and causes of action disposed of by this Agreement.

Page **2** of **11**

2.      Each Party represents and warrants that he, she, or it has read this Agreement in its entirety, understands its contents, and is signing this Agreement freely and voluntarily, without duress or undue influence from any other Party.

3.      Each Party represents and warrants that he, she, or it has been represented by independent counsel of his, her, or its own choosing and that, before their execution of this Agreement, each has had an adequate opportunity to conduct an independent investigation of all the facts and circumstances with respect to all matters that are the subject of this Agreement. Each Party further warrants and represents that he, she, or it executes this Agreement freely, knowingly, and voluntarily, that any representative executing this Agreement on behalf of any Party has the full authority of that Party to do so and thereby bind the Party represented, and that each Party is fully aware of and understands the content and effect of this Agreement.

4.      Each Party represents and warrants that he, she, or it is not relying on any statement of fact or opinion made by any Party, or by anyone acting on behalf of any Party, to induce execution of this Agreement, other than those expressly set forth in this Agreement.

5.      Plaintiffs and Plaintiffs' Counsel represent and warrant that they are not aware of any potential plaintiff other than Plaintiffs, or any attorney other than Plaintiffs' Counsel, who intends to make demands or bring litigation against the County relating to the allegations in the Action. Plaintiffs' Counsel represents and warrants that it does not represent any clients, or have knowledge of any potential clients, with claims or potential claims against County relating to those alleged in the Action aside from Plaintiffs.

6.      Each Party acknowledges and agrees that the representations and warranties set forth in this Section are material inducements to the other Party's entering into this Agreement.

C.      **Settlement Payment and Attorney's Fees**:

1.      In addition to the County's obligations set forth in Section D below, and further valuable consideration for the promises, representations, warranties, acknowledgements, and releases herein, the County shall pay the sum of $2 million (the "Payment") to the Spertus, Landes, & Umhofer, LLP attorney-client trust account, which shall be inclusive of all claims for attorneys' fees and costs claimed by Plaintiffs in the Action. Plaintiffs' Counsel may enter into a separate distribution agreement at their discretion. The County shall not be responsible for the allocation or payment of any sum between and among any of Plaintiffs, Plaintiffs' counsel, and any of their affiliates, representatives, members, agents, and assigns. Except for the Payment, each Party shall be responsible for and bear its own attorneys' fees and costs incurred in the Action including in connection with the negotiation and execution of this Agreement.

2.      Plaintiffs and Plaintiffs' Counsel acknowledge that no representations have been made by the County regarding the taxability of all or any portion of this Agreement, and that they have had the opportunity to seek independent advice regarding the tax consequences of this Agreement and accept each responsibility for satisfaction of their own tax obligation(s) and/or liabilities, if any, that may result from this Agreement.

D.   **County's Obligations**:

1.   **Support for Plaintiffs' Settlement with the City**:

i.   From fiscal year 2022/2023 through fiscal year 2026/2027, the County shall fund and provide supportive services for interim housing and permanent supportive housing units financed by the City as part of the City Settlement, as units are developed by the City and become occupiable, in an amount to be determined solely by County and City in their respective discretion.  These supportive services shall include, but shall not be limited to, "mainstream" services including public assistance programs, mental health services, substance use disorder services, and benefits advocacy services to clients who meet eligibility criteria for these services.

ii.   The County shall provide City-funded outreach teams with access to Department of Mental Health ("DMH"), Department of Health Services ("DHS"), Department of Public Social Services ("DPSS"), and Department of Public Health ("DPH") services directly and through coordination with Multi-Disciplinary Teams ("MDTs") and Homeless Outreach & Mobile Engagement ("HOME") teams assigned within the City.

iii.   The Parties acknowledge that the County does not support the enforcement component of the City's street engagement strategy and no funding or services from the County or any County department or affiliated agency committed herein will be used to support the City's street engagement strategy.

2.   **Beds Available to County Outreach Teams**: Throughout the term of this Agreement, the County shall make reasonable best efforts to ensure County outreach teams (including the increased MDT and HOME teams referenced above) have access to County Homeless Initiative-funded high service need interim housing beds for PEH in the City, and that those beds shall either be exclusively for use by, or prioritize, PEH in the City.

3.   **Mental Health/Substance Use Disorder Beds**: By the end of fiscal year 2023/2024 (*i.e.*, June 30, 2024), the County shall develop 300 additional substance use and mental health beds according to the greatest need as solely determined by the County.

4.   **Multi-Disciplinary Teams (MDTs)**: The County shall increase to 34 from 22 (numbers based on what is currently required and could be subject to change based on the latest point-in-time count) the number of MDTs dedicated to conducting outreach exclusively in the City, allocating at least 1 team per Council District and remaining teams assigned where there is the greatest need as informed by the Point-In-Time Count.  The County shall increase the number of MDTs from 22 to a minimum of 28 by the end of fiscal year 2022/2023 (*i.e.*, June 30, 2023) and to a minimum of 34 by the end of fiscal year 2023/2024 (*i.e.*, June 30, 2024).

5.   **Homeless Outreach and Mobile Engagement (HOME) Teams**: The County shall increase to 10 from 5.5 (numbers based on what is currently required and could be subject to change based on the latest point-in-time count) the number of HOME teams dedicated to conducting outreach exclusively in the City.  The County shall increase the number of HOME teams from 5.5 to a minimum of 8 by the end of fiscal year 2022/2023 (*i.e.*, June 30, 2023) and to a minimum of 10 by the end of fiscal year 2023/2024 (*i.e.*, June 30, 2024).

EXHIBIT  B- Page 22

6.      **Partnership on City- and County-Owned Land**: Throughout the term of this Agreement, the County shall continue to work with the City in making available to each other appropriate City- and/or County-owned land, located within the City's jurisdiction, to create new interim or permanent housing units as mutually agreed by County and City.

7.      **PEH with Serious Mental Illness or Substance Use Disorders**:  The County acknowledges it has responsibilities under State and federal law to provide services, including but not limited to clinical treatment, to eligible County residents suffering from serious mental illness and/or substance use disorders, including PEH in the City.  Throughout the term of this Agreement, County shall work with the City to advocate and apply for additional state and federal funding for this purpose as mutually agreed to by County and City.

8.      **New Funding**:  If the County or City obtains significant new funding from City ballot initiative United to House L.A. or County Measure H extension for the housing and/or services outlined in this Agreement, the County shall consider and may propose potential amendments to this Agreement to enhance housing and services City-wide or County-wide. Such amendments may include (but not be limited to) continuation of operations and supportive services for the permanent and interim units beyond the term of the Agreement, or redeployment of resources to address homelessness in other cities or unincorporated County jurisdictions.

9.      **Reporting**:  The County shall file reports regarding its progress in meeting its obligations under this Agreement quarterly.  Each status report shall be provided within 30 days of the end of the County's fiscal quarter.  Reports shall include the following:

i.      **Support for Plaintiffs' Settlement with the City**:

(1)      Upon receiving information from City at least 30 days before a quarterly report is due, County shall include a status regarding support services for interim and permanent supportive housing units: what units are being supported, what services have been provided, and numbers of PEH accessing services.  County shall have no responsibility to confirm or otherwise verify the accuracy or completeness of the information provided to it by City or on behalf of City;

(2)      Upon receiving information from City at least 30 days before a quarterly report is due, County shall include the number of contacts or service support requests by City Outreach worker, and the result of those contacts and/or service support requests, including (a) type or types of service requests, (b) agency or organization to provide/which provided services, (c) number of requests per individual, and (d) location where request was made.  County shall have no responsibility to confirm or otherwise verify the accuracy or completeness of the information provided to it by City or on behalf of City.

ii.      **Beds Available to County Outreach Teams**:

(1)      The number of referrals to Homeless Initiative-funded high service need interim housing beds, the type of team making the referral, the disposition of the referral, and an explanation for any referrals that are not approved (if any).

Page **5** of **11**

    iii.        **Mental Health/Substance Use Disorder Beds**:

    (1)      The number of beds that have been developed (or status thereon) under this agreement, what said beds are being used for, and basis for determining greatest need.

    iv.        **Multi-Disciplinary Teams**:

    (1)      The number of MDTs deployed under this agreement, where, and how the greatest need has been evaluated (or re-evaluated).

    v.        **Homeless Outreach and Mobile Engagement Teams**:

    (1)      The number of HOME teams deployed under this agreement, where, and how the greatest need has been evaluated (or re-evaluated).

    vi.        **Partnership on City- and County-Owned Land**:

    (1)      A status of City/County's land partnership.

    vii.        **PEH with Serious Mental Illness or Substance Use Disorders**:

    (1)      Status regarding any advocacy or applications for additional state or federal funding for PEH with serious mental illness or substance use disorders.

**E.**    <u>**Releases:**</u>

**1.**    Plaintiffs, including each of their heirs, spouses, trustees, successors, assigns, agents, representatives, attorneys, employees, officers, directors, shareholders, members, managers, principals, partners, insurers, and predecessors (collectively, the "Releasing Parties"), hereby absolutely and forever release and discharge the County, including all of its boards, bureaus, departments, elected and appointed officials, representatives, attorneys, administrators, officers, agents, employees, and all persons that acted on behalf of the County, and each of their predecessors, successors, agents, and assigns (the "County Released Parties"), from any and all claims, including claims for damages, damages, demands, actions, causes of action, suits, covenants, settlements, contracts, agreements, and liabilities for personal injuries, property damage, loss, cost or expense of every nature whatsoever, whether known or unknown, contingent or otherwise, at law or in equity, and whether or not expected to exist which the undersigned Plaintiffs to this Agreement had, have, or may have against the County Released Parties, and each of them, that arise out of or are related to the Action, and any allegations, events, transactions or occurrences that were alleged or that could have been alleged therein ("Claims").

**2.**    The Releasing Parties acknowledge that they are aware that statutes exist that render null and void releases and discharges of any claims, rights, demands, liabilities, actions and causes of action that are unknown to the releasing or discharging parties at the time of execution of those releases and discharges. The Releasing Parties expressly waive, surrender, and agree to forego any protection to which they would otherwise be entitled by virtue of the

Page **6** of **11**

existence of any statute in any jurisdiction, including California.  Plaintiffs acknowledge that they are familiar with section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

It is understood and agreed that all rights under section 1542 of the California Civil Code are expressly waived by the Releasing Parties, to the full extent allowed by law.  The Releasing Parties agree that this Agreement extends and applies to all unknown, unsuspected and unanticipated claims, demands, injuries, or damages within the scope of this Agreement and the releases herein.  The Releasing Parties waive any equivalent provision of any statute of the United States or any other state or jurisdiction with respect to such claims, demands, injuries, or damages within the scope of this Agreement.

The Releasing Parties recognize and acknowledge that factors which have induced each of them to enter into this agreement may turn out to be incorrect or to be different from what they had previously anticipated, and they hereby expressly assume any and all of the risks thereof and further expressly assumes the risks of waiving the rights provided by California Civil Code section 1542.

3.      Releasing Party does not waive future claims, subject to corresponding statute of limitations, after the term of the Agreement ends.  The Releasing Parties agree that the Payment and the County's obligations set forth in Section D, pursuant to, and in accordance with this Agreement, is valuable consideration for the releases in this Section and every other benefit conferred upon them directly or indirectly under this Agreement.

4.      The Releasing Parties acknowledge that their execution and delivery of the releases in this Section is a condition of the County's obligations under this Agreement and that the County is relying on this release in carrying out its obligations under this Agreement.

F.      **Dismissal With Prejudice**:  Within five (5) days of the execution of this Agreement by all Parties, Plaintiffs shall file a Joint Stipulation For Voluntary Dismissal With Prejudice Pursuant to F.R.C.P. 41(a)(2) (the "Stipulation").  In the event that the District Court enters an order granting the Stipulation upon terms and conditions not agreed to by the Parties in this Agreement, the Parties may withdraw their consent to this Agreement and continue the Action if the Agreement and its terms never existed.

G.      **No Prevailing Party**:  The Parties agree that no Party to this Agreement is a prevailing party under any applicable law, including 42 U.S.C. § 1988 or similar fee-shifting statutes.

H.      **No Admission of Liability**:  This Agreement is the result of a compromise and for the purpose of settling disputed claims, and shall not at any time for any purpose constitute or be considered or deemed any admission of liability on the part of any Party hereto. Each Party expressly denies any wrongdoing or liability in connection with any action or omission relating

EXHIBIT  B- Page 25

to one another.  This Agreement and any document related to this settlement, and the negotiations leading thereto, shall be inadmissible in evidence and shall not be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, implement, or enforce the Agreement.

**I.**      **Entire Agreement**:  This Agreement contains all of the terms and conditions agreed upon by the Parties regarding the subject matter of this Agreement, and supersedes all prior and contemporaneous oral and written agreements and discussions between Plaintiffs and County.

**J.**      **Construction**:  The Parties have collaborated with each other in drafting and preparing this Agreement.  No Party to this Agreement, or any Party's respective counsel, shall be deemed to have drafted this Agreement, and this Agreement shall not be construed as against any Party on such grounds.

**K.**      **No Oral Modifications:**  This Agreement constitutes the entire agreement between Parties hereto, and no oral understanding not incorporated herein shall be binding on any Party. This Agreement may only be modified, altered or revised, as necessary, by mutual consent of the parties hereto by the issuance of a written amendment, signed and dated by the Parties.

**L.**      **Successors**:  The provisions of this Agreement shall be deemed to extend to and inure to the benefit of the Parties' respective transferees, grantees, assigns, successors, heirs, trustees, executors, administrators, and any other person or entity claiming by or through them, and to extend to and obligate the Parties' respective transferees, grantees, assigns, heirs, trustees, executors, and administrators.

**M.**      **No Third Party Beneficiaries:**  Notwithstanding anything in this Agreement to the contrary, there are no intended third-party beneficiaries that may assert rights or defenses under this Agreement, except the Parties to this Agreement and their Counsel.

**N.**      **Severability**:  Should any part of this Agreement be declared invalid, void or unenforceable, all remaining parts shall remain in full force and effect and shall in no way be invalidated or affected.

**O.**      **Choice of Law**:  This Agreement in all respects shall be interpreted, enforced, and governed by and under the laws of the State of California applicable to instruments, persons, and transactions that have legal contracts and relationships solely within the State of California.

**P.**      **Dispute Resolution**:

    **1.**      The Parties agree that the procedures contained in this Section are the required and exclusive steps for resolving any dispute between the Parties arising out of or relating to this Agreement or any Party's rights or obligations hereunder ("Dispute").

        **i.**      Dispute Initiation/Right to Cure:  In the event of any dispute between the Parties arising out of or relating to this Agreement or any Party's rights or obligations hereunder, a Party wishing to raise a claim, demand, or cause of action (the "Claiming Party") against any other Party (the "Responding Party") shall, before taking any other action concerning the dispute, provide to the Responding Party written notice setting out in reasonable detail the nature

Page **8** of **11**

**EXHIBIT  B- Page 26**

of the dispute and the relief sought ("Notice of Dispute").  The Parties shall meet and confer within a reasonable time in a good-faith effort to resolve the dispute through informal negotiations.  Any Party that is alleged in a Notice of Dispute to be in breach of this Agreement, and who, after meeting and conferring, requests an opportunity to cure, shall have up to one hundred twenty (120) days after receipt of the Notice of Dispute to cure such alleged breach, unless otherwise agreed ("Cure Period").  No Party will be considered in breach of this Agreement unless it is alleged that such Party has failed to substantially perform its obligations under this Agreement ("Breach").

   **ii.** <u>Judicial Enforcement</u>:  If, after exhausting the dispute resolution procedures described in Section (P)(1)(i), the Claiming Party still alleges the Responding Party is in breach of this Agreement, the Claiming Party may file a notice of breach and request for judicial enforcement in the District Court to remedy such alleged breach.  The District Court retains jurisdiction, at its discretion, for purposes of enforcing this Agreement until the end of fiscal year 2026/2027 (*i.e.*, June 30, 2027).  The only relief that any Party may seek in the event of an alleged Breach of this Agreement will be an order compelling specific performance of the Agreement.  No Party may seek monetary damages of any kind as a result of an alleged Breach.

  **2.** Each Party shall bear his, her, or its own costs and fees in connection with any of the dispute resolution processes under this Section.

**Q.** <u>Notices.</u>  All notices to be sent under this Agreement shall be delivered as follows and shall reference the Action in the subject line of the notice:

  **1.** *For Plaintiffs*:
   Spertus Landes & Umhofer LLP
   617 W. 7th Street, Suite 200
   Los Angeles, CA 90017
   Attention: Matthew Donald Umhofer, Elizabeth Mitchell
   matthew@spertuslaw.com, emitchell@spertuslaw.com
  **2.** *For the County*:
   Office of County Counsel
   500 West Temple Street, Suite 648
   Los Angeles, California 90012
   Attention: Ana Lai; Jennifer Lehman
   alai@counsel.lacounty.gov; jlehman@counsel.lacounty.gov

  Any Party may change its notice recipient or address for providing notice to it by notifying the other Party(ies) in writing setting forth such new notice recipient or address.

**R.** <u>Force Majeure</u>: No Party to this Agreement shall be deemed in violation if it is prevented or delayed from performing any of the obligations hereunder by reason of boycotts, labor disputes, embargoes, shortage of material, act of God, strikes, lockouts, inability to procure labor or materials, fire, accident, laws or regulations of general applicability, act of superior governmental authority, weather conditions, sabotage, or any other cause or circumstances for which it is not responsible and beyond its control (financial inability excepted).  A Party that is delayed from performing its obligations hereunder shall make reasonable best efforts to perform

Page **9** of **11**

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

S.    **Execution in Counterparts and Email/Fax Signatures**: This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement. The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

By: ANA LAI
Title: SENIOR DEPUTY COUNTY COUNSEL

Dated:   OCTOBER 11, 2022

**LA ALLIANCE FOR HUMAN RIGHTS**

By:   Don Steier
Title:   Chair

Dated:   October 10, 2022

**JOSEPH BURK**

Dated: _____

**GEORGE FREM**

Dated: _____

**WENZIAL JARRELL**

Dated: _____

**CHARLES MALOW**

Dated: _____

**KARYN PINSKY**

Dated:   10/10/22

Page **10** of **11**

EXHIBIT  B- Page 28

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

S.      **Execution in Counterparts and Email/Fax Signatures**:  This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement.  The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

_____          Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____          Dated: _____
By:
Title:

**JOSEPH BURK**

_____          Dated: _____10/10/2022_____

**GEORGE FREM**

_____          Dated: _____

**WENZIAL JARRELL**

_____          Dated: _____

**CHARLES MALOW**

_____          Dated: _____

**KARYN PINSKY**

_____          Dated: _____

Page **10** of **11**

EXHIBIT  B- Page 29

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

S.    **Execution in Counterparts and Email/Fax Signatures**: This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement. The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

_____        Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____        Dated: _____
By:
Title:

**JOSEPH BURK**

_____        Dated: _____

**GEORGE FREM**

_____        Dated: ___10/10/2022___

**WENZIAL JARRELL**

_____        Dated: _____

**CHARLES MALOW**

_____        Dated: _____

**KARYN PINSKY**

_____        Dated: _____

Page **10** of 11

**EXHIBIT B- Page 30**

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

S.      **Execution in Counterparts and Email/Fax Signatures**: This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement. The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

_____     Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____     Dated: _____
By:
Title:

**JOSEPH BURK**

_____     Dated: _____

**GEORGE FREM**

_____     Dated: _____

**WENZIAL JARRELL**

_____     Dated: 10 - 10 - 22

**CHARLES MALOW**

_____     Dated: 10 - 10 - 22

**KARYN PINSKY**

_____     Dated: _____

Page **10** of **11**

HARRY TASHDJIAN

Dated: 10-10-22

Plaintiffs' Counsel agrees to be bound by Section B.5 of the Agreement.

Spertus, Landes, & Umhofer, LLP

Dated: October 10, 2022

By:    Elizabeth A. Mitchell
Title:  Attorney for Plaintiffs

Page 11 of 11

**EXHIBIT  B- Page 32**