DAWYN R. HARRISON (State Bar No. 173855)
*County Counsel*
KATHERINE M. BOWSER (State Bar No. 230626)
*Acting Assistant County Counsel*
ANA WAI-KWAN LAI (State Bar No. 257931)
*Senior Deputy County Counsel*
alai@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
500 West Temple Street, Suite 648
Los Angeles, California 90012
Telephone:   (213) 974-1830
Facsimile:   (213) 626-7446

LOUIS R. MILLER (State Bar No. 54141)
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:   (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>             Plaintiffs,<br><br>    v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>             Defendants. | **CASE NO. 2:20-cv-02291 DOC (KES)**<br><br>**DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:    June 5, 2023<br>Time:    8:30 a.m.<br>Place:   Courtroom 10A<br><br>Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

613203.4

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION    9

II.  FACTS    10

III.  LEGAL STANDARDS    13

IV.  THE COURT SHOULD DISMISS THE SAC IN ITS ENTIRETY    13

    A.  Plaintiffs' Claims Are Not Justiciable    13

        1.  There Is No Case or Controversy    13

        2.  Plaintiffs Lack Standing    15

    B.  Plaintiffs' Constitutional Claims Fail As A Matter Of Law    17

        1.  Plaintiffs Have Not Stated a Section 1983 Claim    17

        2.  Plaintiffs Do Not State a Claim Under the "State-Created Danger" Doctrine    20

        3.  Plaintiffs Have Not Stated a Takings Claim    23

    C.  Plaintiffs' Remaining State Law Claims Fail As A Matter Of Law    25

        1.  Plaintiffs Fail to Identify a Mandatory Duty    25

        2.  Plaintiffs Have Not Stated a Claim for Nuisance    26

        3.  Plaintiffs Fail to State a Claim for Waste of Public Resources    27

        4.  Statutory Immunity Bars Plaintiffs' Claims    28

V.  CONCLUSION    29

613203.4

2

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Air Pegasus of D.C., Inc. v. United States*,
424 F.3d 1206 (Fed. Cir. 2005) ................................................................24, 25

*Ariz. Christian Sch. Tuition Org. v. Winn*,
563 U.S. 125 (2011) .......................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................14

*California v. Texas*,
141 S. Ct. 2104 (2021) ..............................................................................16, 29

*Campbell v. State of Wash. Dep't of Soc. & Health Servs.*,
671 F.3d 837 (9th Cir. 2011) ..........................................................................22

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ..........................................................................28

*Casa de Cambio Comdiv S.A. de C.V. v. United States*,
48 Fed. Cl. 137 (Fed. Cl. 2000),
*aff'd*, 291 F.3d 1356 (Fed. Cir. 2002) ............................................................25

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) ...................................................................................26

*City of Oakland v. Lynch*,
798 F.3d 1159 (9th Cir. 2015) ........................................................................14

*Connick v. Thompson*,
563 U.S. 51 (2011) .........................................................................................18

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998) ..................................................................................19, 24

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989) ..................................................................................19, 21

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) ..........................................................................18

*Engquist v. Or. Dep't of Agric.*,
478 F.3d 985 (9th Cir. 2007) ..........................................................................24

613203.4

3

*Gator.com Corp. v. L.L. Bean, Inc.*,
 398 F.3d 1125 (9th Cir. 2005)................................................................15

*Herman Family Revocable Tr. v. Teddy Bear*,
 254 F.3d 802 (9th Cir. 2001)..................................................................26

*Hollingsworth v. Perry*,
 570 U.S. 693 (2013) ...............................................................................15

*Horne v. Flores*,
 557 U.S. 433 (2009) ...............................................................................17

*Johnson v. City of Seattle*,
 474 F.3d 634 (9th Cir. 2007)..................................................................23

*Jones v. City of Los Angeles*,
 444 F.3d 1118 (9th Cir. 2006),
 *vacated following settlement by* 505 F.3d 1006 (9th Cir. 2007).....................28

*Juliana v. United States*,
 947 F.3d 1159 (9th Cir. 2020)................................................................18

*LA All. for Human Rights v. County of Los Angeles*,
 14 F.4th 947 (9th Cir. 2021)...............................................................13, 17, 27

*Lavan v. City of Los Angeles*,
 693 F.3d 1022 (9th Cir. 2012)................................................................28

*Lawrence v. United States*,
 340 F.3d 952 (9th Cir. 2003)..................................................................23

*Lewis v. Casey*,
 518 U.S. 343 (1996) ...............................................................................18

*Lindsey v. Normet*,
 405 U.S. 56 (1972) .................................................................................19

*Lingle v. Chevron U.S.A. Inc.*,
 544 U.S. 528 (2005) ...............................................................................25

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992) ...............................................................................17

*Marsh v. County of San Diego*,
 680 F.3d 1148 (9th Cir. 2012)................................................................19

*Martinez v. City of Clovis*,
 943 F.3d 1260 (9th Cir. 2019).......................................................21, 22, 23

613203.4

4

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Mendoza v. Blodgett*,
  960 F.2d 1425 (9th Cir. 1992) .................................................................................19

*Navajo Nation v. United States*,
  631 F.3d 1268 (Fed. Cir. 2011) ...............................................................................25

*Pa. Coal Co. v. Mahon*,
  260 U.S. 393 (1922) .................................................................................................24

*Raines v. Byrd*,
  521 U.S. 811 (1997) .................................................................................................17

*Ridge Line, Inc. v. United States*,
  346 F.3d 1346 (Fed. Cir. 2003) ...............................................................................25

*Rizzo v. Goode*,
  423 U.S. 362 (1976) .................................................................................................18

*Schweiker v. Wilson*,
  450 U.S. 221 (1981) .................................................................................................19

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ...................................................................................................17

*Sinclair v. City of Seattle*,
  61 F.4th 674 (9th Cir. 2023) ..............................................................................22, 23

*Skilstaf, Inc. v. CVS Caremark Corp.*,
  669 F.3d 1005 (9th Cir. 2012) .................................................................................14

*Smith v. Noonan*,
  992 F.2d 987 (9th Cir. 1993) ...................................................................................20

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) .................................................................................14

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .............................................................................................15

*United States v. Sineneng-Smith*,
  140 S. Ct. 1575 (2020) .............................................................................................16

*Wash. Envtl. Council v. Bellon*,
  732 F.3d 1131 (9th Cir. 2013) .................................................................................17

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .................................................................................14

*Wilkinson v. Austin*,
  545 U.S. 209 (2005) .................................................................................................19

613203.4

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

**STATE CASES**

*Bd. of Supervisors v. Superior Court,*
207 Cal. App. 3d 552 (1989)................................................................21

*Citizens for Odor Nuisance Abatement v. City of San Diego,*
8 Cal. App. 5th 350 (2017)................................................................28

*City of Dublin v. County of Alameda,*
14 Cal. App. 4th 264 (1993)..........................................................14, 17

*Clinton v. Cody,*
2019 WL 2004842 (Cal. Ct. App. May 7, 2019) ..............................26

*Coshow v. City of Escondido,*
132 Cal. App. 4th 687 (2005)...........................................................29

*County of San Diego v. State,*
15 Cal. 4th 68 (1997)......................................................................26

*Cty. Sanitation Dist. No. 2 v. County of Kern,*
127 Cal. App. 4th 1544 (2005).....................................................25, 28

*Freeny v. City of San Buenaventura,*
216 Cal. App. 4th 1333 (2013)...........................................................30

*HFH, Ltd. v. Superior Court,*
15 Cal. 3d 508 (1975).......................................................................29

*Hunt v. Superior Court,*
21 Cal. 4th 984 (1999)..................................................................20, 26

*Marquez v. State Dep't of Health Care Servs.,*
240 Cal. App. 4th 87 (2015)..............................................................27

*Martinez v. Pac. Bell,*
225 Cal. App. 3d 1557 (1990)............................................................28

*Resolution Tr. Corp. v. Rossmoor Corp.,*
34 Cal. App. 4th 93 (1995)................................................................28

*San Diego Gas & Elec. Co. v. Superior Court,*
13 Cal. 4th 893 (1996).....................................................................27

*San Remo Hotel L.P. v. City And County of San Francisco,*
27 Cal. 4th 643 (2002).....................................................................24

*Scates v. Rydingsword,*
229 Cal. App. 3d 1085 (1991)............................................................26

613203.4

6

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Schmid v. City & County of San Francisco*,
  60 Cal. App. 5th 470 (2021)................................................................................29

*Schooler v. State*,
  85 Cal. App. 4th 1004 (2000)..............................................................................30

*Tailfeather v. Bd. of Supervisors*,
  48 Cal. App. 4th 1223 (1996)..............................................................................20

*Taylor v. Buff*,
  172 Cal. App. 3d 384 (1985)..........................................................................29, 30

**FEDERAL STATUTES**

28 U.S.C. § 1367(a) ................................................................................................26

42 U.S.C. § 1983 .....................................................................................................18

**STATE STATUTES**

Cal. Civ. Code § 3479.............................................................................................27

Cal. Civ. Code § 3480.............................................................................................27

Cal. Civ. Code § 3481.............................................................................................27

Cal. Civ. Proc. Code § 526a .............................................................................28, 29

Cal. Gov't Code § 814.............................................................................................30

Cal. Gov't Code § 815.............................................................................................29

Cal. Gov't Code § 818.2.....................................................................................29, 30

Cal. Gov't Code § 820.2.........................................................................................29

Cal. Welf. & Inst. Code §§ 5600 *et seq.*......................................................11, 20, 27

Cal. Welf. & Inst. Code § 10000 ...........................................................................26

Cal. Welf. & Inst. Code § 13000 .....................................................................11, 27

Cal. Welf. & Inst. Code §§ 14000 *et seq.*......................................................11, 20, 27

Cal. Welf. & Inst. Code § 17000 .....................................................................passim

Cal. Welf. & Inst. Code § 17001 ...........................................................................20

613203.4

7

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 14

Fed. R. Civ. P. 12(b)(6) ................................................................................. 14, 22

**OTHER AUTHORITIES**

U.S. Const. amend. V ........................................................................................ 18

U.S. Const. amend. XIV ....................................................................................20

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

## I.    INTRODUCTION

This motion to dismiss should be uncontroversial, and its resolution simple. Because Plaintiffs and the County of Los Angeles have reached a comprehensive settlement agreement—completely resolving *all* the claims in the Second Amended Complaint ("SAC")—and asked the Court to dismiss this case with prejudice, there is no longer a "case or controversy" to resolve.  In refusing to dismiss the case as the parties have urged because it disagrees with the parties' terms, the Court exceeds its Article III powers.  The Court is forcing the parties to endure unwanted litigation and issuing advisory opinions on a hypothetical, nonexistent dispute—unlawfully intruding into areas squarely committed to other branches of government.

Even if this Court could move past the lack of any justiciable claim, the SAC fails at every turn.  Plaintiffs lack standing to bring any of their claims.  And the claims in the SAC rest on the erroneous premise that the County has somehow violated the Constitution and other law by not allocating its limited fiscal resources to house and support all People Experiencing Homelessness ("PEH") with mental illness or substance use disorders.  The County has no constitutional or statutory obligation to provide universal mental health services.  At bottom, Plaintiffs' lawsuit unlawfully seeks to commandeer the County's discretionary spending.

These are problems that cannot be fixed by amendment.  Plaintiffs have already repeatedly amended their pleadings, but the critical defects cannot be cured.

Despite the fatal defects that have plagued Plaintiffs' claims from the outset, the County has demonstrated its commitment to addressing homelessness, including by *settling this action* and dedicating up to an estimated $850.5 million in new resources to dramatically expand the number of beds, interim and permanent housing, and medical and social services in Los Angeles.  This is in addition to the $293 million in new funding that the County provided earlier in the lawsuit for PEH near freeways and for unhoused seniors.

The Court should dismiss the SAC with prejudice.

## II.    FACTS

In June 2022, following the City of Los Angeles's settlement and dismissal from the case, this Court granted Plaintiffs leave to file a Second Amended Complaint.  The SAC alleges seven claims against the County: (1) Violation of Mandatory Duty; (2) Nuisance; (3) Inverse Condemnation; (4) Waste of Public Funds and Resources; (5) Violation of "Statutorily-Created Liberty Interest"; (6) Violation of Due Process Clause (State-Created Danger Doctrine); and (7) Uncompensated Taking.  Compared with the prior complaint, the SAC removes Plaintiffs' allegations regarding racism and scales back complaints about sidewalk encampments.  The SAC also entirely omits the disability discrimination and negligence claims.

Instead, the SAC focuses on the County's alleged failure to provide purportedly "statutorily required" mental health services.  Plaintiffs allege that state law mandates that the County provide comprehensive mental health and substance use disorder treatment and services to all PEH.  (SAC ¶ 150.)  In addition to Welfare and Institutions Code ("WIC") section 17000, the SAC references the Bronzan-McCorquodale Act (WIC §§ 5600 *et seq.*) and other provisions regarding the administration of federal funding and Medi-Cal (WIC §§ 13000, 14000 *et seq.*).

The SAC is silent as to what the County's obligations are or what specific duties the County purportedly breached.  That is because these statutes do not require the County to house or treat all mentally ill persons.  Instead, Plaintiffs allege (1) the County is "wasting" Measure H funds by spending a majority of it on permanent and interim housing and not mental health services (SAC ¶ 59); (2) only 0.1 percent of the County's general budget is dedicated to the Department of Public Health (*id.*); and (3) there are only 22.7 mental health beds per 100,000 residents, rather than 50 beds, which Plaintiffs allege is the minimum (*id.* ¶ 64).

None of the individual Plaintiffs claim to reside or to have been injured in unincorporated areas of the County.  Seven of the individual Plaintiffs are not

613203.4

10

indigent.  Rather, they are real estate developers and property owners in Skid Row.  No Plaintiff alleges they needed and were denied services by the County.

Plaintiffs demand that the County make different policy choices about how it allocates resources on the homelessness crisis.  Plaintiffs repeatedly allege "[t]he actions and inactions of the County of Los Angeles were known or should have been known to the policy makers"; and according to the SAC, the County should have made different policy choices.  (*See, e.g.*, ¶¶ 155, 161, 167.)

The SAC directly contradicts indisputable evidence, as detailed in the County's Request for Judicial notice filed concurrently with this Motion, demonstrating the County's commitment to addressing homelessness:

(1) The County's homeless services system has placed more than 90,000 people in permanent housing and 124,000 people in interim housing since the implementation of Measure H-funded strategies in July 2017, including 18,444 individuals with complex medical and behavioral health conditions.  (Declaration of Mira Hashmall ("Hashmall Decl.") Ex. 46, p. 5.)

(2) The County is providing 1,000 new mental health and substance use disorder beds for the unhoused and 450 new subsidies for enriched residential care at board and care facilities to help individuals at risk of homelessness.  (*Id.* Ex. 44.)

(3) The County has allocated $182.1 million for interim housing and $270.2 million for permanent housing for this fiscal year, on top of $25.5 million for local jurisdictions, more than doubling last year's amount.

(4) The County engaged subject matter experts with its Blue Ribbon Commission on Homelessness to analyze and provide feedback on the most relevant effective models to address homelessness, which resulted in a comprehensive Governance Report highlighting key concerns and identifying the most urgent needs.  (Hashmall Decl. Exs. 36-37.)

(5) The County funds programs for housing and social services to individuals experiencing homelessness, formerly homeless, or at-risk of homelessness through

613203.4

11

10 different County departments. These programs target myriad factors that contribute to homelessness and provide a variety of services, including Multidisciplinary Teams (MDTs) and Homeless Outreach & Mobile Engagement (HOME) teams. (*Id.* Ex. 1.)

(6) The County committed $293 million to finance the City and County's Freeway Plan, providing 6,700 beds and other resources for PEH living near freeways and those who are 65 years and older and other vulnerable populations. (*Id.* Exs. 21-24.)

(7) The County has provided transparency on its allocation of resources and its use of Mental Health Services Act (MHSA) funds. (*Id.* Exs. 33-34).

(8) The County declared a local emergency on homelessness in January 2023, accelerating streamlined creation of housing and expanded services, including health and substance use disorder services to PEH. (*Id.* Exs. 39-41).

And perhaps most relevant here is (9): Through its October 2022 settlement agreement with Plaintiffs and the April 2023 addendum, the County pledged an additional estimated $850.5 million in new resources to dramatically expand housing, medical, and social services to PEH. (*Id.* Exs. 38, 44.)

The SAC also fails to resolve pervasive standing issues that the County raised in its appeal of the Court's preliminary injunction order. *LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 958-59 (9th Cir. 2021). Indeed, the Ninth Circuit concluded in relevant part that (1) Plaintiffs had not suffered any "relevant injury-in-fact" for purposes of the state-created danger claim; (2) there was no allegation of a "special relationship" between the County and unhoused residents of Skid Row "sufficient to create an affirmative duty" to act; and (3) Plaintiffs had no standing to bring a section 17000 claim because there were no allegations "that an individual Plaintiff was deprived of medically necessary care or general assistance." The SAC does not—and cannot—solve any of these problems.

There is another fundamental problem that affects nearly all of Plaintiffs'

claims.  None of the individual Plaintiffs claims to reside or to have been injured in unincorporated areas of the County, which the County's authority is limited to.  *City of Dublin v. County of Alameda*, 14 Cal. App. 4th 264, 274-75 (1993).  Plaintiffs have added the County to their condemnation and takings claims, but the SAC simply substitutes the County in name alone and fails to demonstrate why this claim now applies to the County.  (SAC ¶¶ 163-65.)

## III.   LEGAL STANDARDS

A court lacks subject matter jurisdiction under Article III where there is no justiciable "case or controversy" or where the plaintiff lacks standing to bring the claim.  *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015).  A challenge based on lack of subject matter jurisdiction is properly challenged in a motion to dismiss under Rule 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A court should dismiss a claim under Rule 12(b)(6) when the pleading lacks "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In ruling on a motion to dismiss under Rules 12(b)(1) and 12(b)(6), the Court properly considers matters subject to judicial notice.  *White*, 227 F.3d at 1242; *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

## IV.   THE COURT SHOULD DISMISS THE SAC IN ITS ENTIRETY

### A.   Plaintiffs' Claims Are Not Justiciable

#### 1.   There Is No Case or Controversy

Article III vests federal courts with "the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'"  *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011); *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution.").  Strict adherence to this requirement ensures that federal courts do

not intrude into areas committed to the other branches of government:  "Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021); *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013) ("This is an essential limit on our power: It ensures that we act *as judges*, and do not engage in policymaking properly left to elected representatives.").

Here, the parties have entered into a binding settlement agreement in which the County pledges up to an estimated $850.5 million in new resources to dramatically expand housing, medical, and social services to PEH.  (Hashmall Decl. Exs. 38, 44.)  Plaintiffs, the County, and Intervenors all requested that the Court dismiss the action at the April 20, 2023 hearing.  In that hearing, Plaintiffs urged the Court to dismiss, noting that the agreement's terms—including the scope of the Court's oversight authority to "enforc[e] this agreement with full transparency"— achieve *Plaintiffs'* focused goals *in this case*.  (*Id*. Ex. 45, at 19-20 ("(W)e continue to push for [this settlement], saying not only is this a good agreement for what it is, but it needed to have been done eight months ago.  It needed to have been done six months ago.  And here we are in April, watching these projects flounder"], 39, 41 [Plaintiffs are "satisfied" with the "Judicial Enforcement Provision" which gives the court "the extended period of enforcing this agreement with full transparency"].) Thus, there is no justiciable "case" or "controversy" and the Court lacks jurisdiction. *Gator.com Corp. v. L.L. Bean, Inc*., 398 F.3d 1125, 1132 (9th Cir. 2005) (no case or controversy where parties' settlement has resolved their dispute).

In denying the parties' joint request for dismissal, the Court acknowledges that this is a private settlement agreement and that dismissal is *not* subject to the Court's approval.  (Hashmall Decl., Ex. 47, at 4 & n.2.)  Yet the Court still refuses to dismiss the case as *all* parties have urged, rationalizing that its discretion to refuse ancillary jurisdiction empowers it to impose unwanted terms on the parties.  (*Id*.)

613203.4

14

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

As Plaintiffs recently pointed out, in so doing, the Court is forcing unnecessary, costly, and time-consuming litigation—contradicting the parties' interests and diverting critical, urgently-needed resources from PEH. (*Id.*, Ex. 45, at 16, 20.)

In sum, that the Court disagrees with the terms of the agreement because it will not singularly resolve the homelessness crisis or because it does not give the Court its preferred oversight power does not change that there is no longer a justiciable dispute *among the parties* and, thus, that the Court lacks power to opine on the issues implicated in this nonexistent dispute. In fact, Article III *prohibits* courts from disregarding parties' request to dismiss a case and from forcing the parties to litigate a nonexistent dispute. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief'"; "'[C]ourts are essentially passive instruments of government.' They 'do not, or should not, sally forth each day looking for wrongs to right.'" (citations omitted)).

### 2.    Plaintiffs Lack Standing

Article III requires that each Plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (citation omitted). Pervasive standing defects require the SAC be dismissed.

*First*, other than Plaintiffs' Inverse Condemnation and Taking claims, the SAC purports to state all claims against the County on behalf of undifferentiated "Plaintiffs." But not every Plaintiff has standing to pursue each claim. For instance, Shinbane, Bastian, Rich, Burk, Frem, Pinsky, and Tashdjian do not allege they are indigent—most are real estate developers and property owners in Skid Row. Thus, they cannot assert a claim under WIC section 17000. Frem alleges injuries to his Mar Vista business miles from Skid Row and thus has no standing to challenge policies or alleged nuisances there. The SAC's nuisance allegations are based on

alleged harm to "Plaintiffs who own or rent property"—necessarily excluding all unhoused Plaintiffs or Alliance members. (SAC ¶ 136.) Moreover, the named Plaintiffs do not allege that they needed and were denied mental health and substance use disorder treatment and services, so they cannot allege any violation based on the purported denial of such services. These deficiencies remain despite the Ninth Circuit's decision identifying them. *LA Alli.*, 14 F.4th at 958-59.

*Second*, Plaintiffs' alleged injuries are not traceable to the County. No Plaintiff or representative members reside in unincorporated parts of Los Angeles County, which the County's authority is limited to. *City of Dublin*, 14 Cal. App. 4th at 274-75. And Plaintiffs have failed to allege a nexus between their injuries and the County's conduct on which their claims are based. *Wash. Envtl. Council v. Bellon*, 732 F.3d 1131, 1141-42 (9th Cir. 2013); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44-46 (1976) (speculative or removed links in a causal chain cannot support standing). To the extent Plaintiffs' injuries are due to increased PEH in Skid Row, it is beyond dispute that countless factors lead to homelessness. Plaintiffs cannot link their alleged harm and the County's substantial efforts to combat homelessness.

*Third*, and most significantly, Plaintiffs' alleged injuries are not redressable. The thrust of the SAC is that Plaintiffs disagree with the County's strategy to address the homelessness crisis. Such "injuries" are not "capable of resolution through the judicial process." *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (citation omitted). At most, Plaintiffs raise generalized grievances, not any injury sufficient to confer standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (it must be likely, not merely speculative, that the injury will be redressed by a favorable decision).

The Court's Article III power does not permit intervention into legislative prerogatives about how to spend limited resources to serve the public. *Horne v. Flores*, 557 U.S. 433, 472 (2009) (regardless of how "vitally important" a goal, a district court could not require state to increase funding in one geographic area);

613203.4

16

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Lewis v. Casey*, 518 U.S. 343, 361-62 (1996) (overturning "inordinately—indeed, wildly—intrusive" order mandating changes to state prisons that "failed to accord adequate deference to the judgment" of local officials); *Rizzo v. Goode*, 423 U.S. 362, 366 (1976) (court order that police department implement program to handle grievances constituted "an unwarranted intrusion by the federal judiciary into the discretionary authority committed to [the city officials] by state and local law to perform their official functions"); *Juliana v. United States*, 947 F.3d 1159, 1171-72 (9th Cir. 2020) ("[I]t is beyond the power of an Article III court to order, design, supervise, or implement [a] requested remedial plan . . . [that] would necessarily require a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches.").

In sum, the law is clear: there is no justiciable controversy, the complex issue of homelessness that exists beyond this action cannot be redressed here, and the Court may not engage in policymaking properly left to elected representatives.

**B.     Plaintiffs' Constitutional Claims Fail As A Matter Of Law**

**1.     Plaintiffs Have Not Stated a Section 1983 Claim**

The County may be liable under 42 U.S.C. section 1983 only for its *own* constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To state a section 1983 claim, Plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) the County has a municipal policy; (3) the policy amounts to deliberate indifference to their constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Plaintiffs allege that the County violated the Due Process Clause of the U.S. Constitution by (1) "depriving Plaintiffs of their liberty interest in mandatory care" (SAC ¶ 153)[1] and (2) "affirmatively creat[ing] and/or increas[ing] the risk that

---

[1] Plaintiffs' Fifth Cause of Action cites the Fifth Amendment in passing, but the due

613203.4

17

Plaintiffs would be exposed to dangerous conditions" by "contain[ing] homeless people in Skid Row . . . [and] focusing nearly exclusively on so-called permanent housing options" (*id.* ¶ 158). These claims violate the fundamental tenet of constitutional law: private citizens do not have any due-process right to demand specific actions by their government. *See DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196-97 (1989) ("[T]he State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."). Moreover, to amount to a *constitutional* violation, government conduct is actionable only if it was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Plaintiffs do not and cannot allege any such conduct by the County.

The Constitution does not confer a fundamental right to housing, *Lindsey v. Normet*, 405 U.S. 56, 74 (1972), nor to any "governmental aid," *DeShaney*, 489 U.S. at 196. Unable to point to any federal rights to the housing and services claimed, Plaintiffs rely exclusively on state law. Although a liberty interest may arise from an "expectation or interest created by state laws or policies," *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Mendoza v. Blodgett*, 960 F.2d 1425, 1428 (9th Cir. 1992), state law can create a liberty interest "only if the state law contains '(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met,'" *Marsh v. County of San Diego*, 680 F.3d 1148, 1155-56 (9th Cir. 2012) (citation omitted). Demonstrating a mandatory state-law duty is extremely difficult. Even use of words such as "shall" or "will" is insufficient; rather, the "mandatory language [must] expressly require[] the decisionmaker to apply certain substantive predicates." *Mendoza*, 960 F.2d at 1429 (citation omitted);

process and equal protection components thereof only apply to the federal government. *Schweiker v. Wilson*, 450 U.S. 221, 226 n.6 (1981).

613203.4

18

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*see also Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993) (use of the word "may" cannot create a liberty interest).

Plaintiffs do not identify any state-law "rights" to universal housing or comprehensive mental health treatment, let alone any allegation that the County violated such rights in a way that is actionable under the Fourteenth Amendment. Plaintiffs also misstate the state law on which they rely.  For example, the California Supreme Court has made clear that WIC section 17000 "neither requires the County to satisfy all unmet needs, nor mandates universal health care."  *Hunt v. Superior Court*, 21 Cal. 4th 984, 1014 (1999).  Section 17000 does not require the County to provide any specific type of care or otherwise dictate its "cho[ice] between a multitude of potential courses of action," as Plaintiffs demand.  *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1246 (1996).  To the contrary, section 17000 "give[s] the counties a great deal of discretion in determining how best to meet the medical needs of indigent residents in light of the limited resources available," *id*. at 1245-46, and the *County* defines the "standards of aid and care," WIC § 17001.

Plaintiffs' reliance on the remaining statutes is also misplaced.  *E.g.*, WIC §§ 5600.2 ("*To the extent resources are available*, public mental health services in this state *should be* provided …"), 5600.3 ("*To the extent resources are available*, the primary goal of the use of funds deposited in the mental health account … *should be* to serve the target populations …"), 5600.4 ("Community mental health services *should be* organized to provide an array of treatment options …, *to the extent resources are available*."), 14000 ("The intent of the Legislature is to provide, *to the extent practicable*, … for health care for those aged and other persons …")[2] (emphasis added).  These provisions do not create a liberty interest because none specifies any service that must be provided.

---

[2] Effective January 1, 2023, WIC section 14000, setting forth the purpose of the Medi-Cal statutory scheme, was amended with changes not material here.

613203.4

19

Plaintiffs' allegation that the County has failed to meet its obligation to provide mental health services also fails. The SAC points to third-party research about ideal standards of care, but not to any *mandatory* statutory duty. (SAC ¶ 64.) Section 17000 does not impose an obligation to provide mental health services as Plaintiffs allege, *Bd. of Supervisors v. Superior Court*, 207 Cal. App. 3d 552, 561-62 (1989); and Plaintiffs do not allege they qualified for and were denied any specific services required by law.

Moreover, Plaintiffs do not allege that the County violated any of the state laws from which their supposed "liberty interest" derives. Rather, the County has met its minimal obligations under state law, but not in a way Plaintiffs find to be "meaningful." (*See* SAC ¶ 124.) This does not meet the stringent test for a due-process violation and confirms that Plaintiffs' complaints are merely political.

Finally, Plaintiffs cannot show that the County's compliance with state law caused them any harm—let alone lost business and insurance opportunities, arson, and "trash and human waste" in "our oceans." (SAC ¶¶ 14–16.)

### 2. Plaintiffs Do Not State a Claim Under the "State-Created Danger" Doctrine

Plaintiffs' substantive due-process claim under the "state-created danger" doctrine fares no better. The SAC includes no new allegations that overcome the deficiencies identified in the County's last motion to dismiss. Nor could it.

The Due Process Clause limits state action; it is not a "guarantee of certain minimal levels of safety and security." *DeShaney*, 489 U.S. at 195. "Simply failing to prevent acts of a private party is insufficient to establish liability." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). The "state-created danger" doctrine is a narrow exception to the rule that the Constitution "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *DeShaney*, at 196. To satisfy the state-created danger exception, Plaintiffs must allege (1) "affirmative actions" that

613203.4

20

"created or exposed [them] to an actual, particularized danger that [they] would not otherwise have faced"; (2) their injuries were "foreseeable"; and (3) deliberate indifference "to the known danger." *Martinez*, at 1271. Plaintiffs' allegations, again, fall far short.

Plaintiffs do not allege that the County created a *particularized* danger specifically directed at any particular plaintiff. *Sinclair v. City of Seattle*, 61 F.4th 674, 682 (9th Cir. 2023) ("A danger is 'particularized' if it is directed at a specific victim."). At most, the SAC alleges *generalized* dangers that purportedly exposed all Plaintiffs, generally and equally, to risks and dangerous conditions on Skid Row. (*See* SAC ¶ 158.) This is not enough: "A 'particularized' danger, naturally, contrasts with a general one." *Sinclair*, at 682. Where, as here, the dangers that plaintiffs purportedly face as the result of government action are the same as anyone else in the affected area, a claim under the state-created danger doctrine fails as a matter of law. *Id.* at 682-83; *id.* at 684 (where the City created an actual danger of increased crime in Seattle's "CHOP" zone but not one specific to the plaintiffs, no viable claim; affirming dismissal under Rule 12(b)(6)).

Nor do Plaintiffs' allegations satisfy the "affirmative act" requirement. Plaintiffs challenge two policies: (1) "a strategy to contain homeless people in Skid Row," and (2) the County's purported "focus[] nearly exclusively on so-called permanent housing options." (SAC ¶ 158.)

First, Plaintiffs cannot hold the County liable for *a City policy* regarding Skid Row. (*See supra* §IV.A.2.) The alleged Skid Row containment "policy" also pre-dates Plaintiffs' injuries by several decades. Thus, Plaintiffs cannot show that any actions by the County "create[d] or expose[d] [them] to a danger which [they] would not have otherwise faced." *Campbell v. State of Wash. Dep't of Soc. & Health Servs.*, 671 F.3d 837, 845 (9th Cir. 2011) (citation omitted).

Second, the County's efforts to break the cycle of homelessness by prioritizing permanent housing solutions for PEH, as opposed to focusing on

613203.4

21

"emergency" shelters, do not come close to a state-created danger.  Plaintiffs simply disagree with the County's discretionary policy decisions.  *See Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007) (decision to abandon a more "effective[]" plan did not constitute "affirmative conduct that placed the [plaintiffs] in danger").  Moreover, Plaintiffs cannot tie the County's focus on achieving the right proportion of interim housing and permanent housing to greater danger than they would face if PEH were offered only temporary, emergency shelter.  (*See*, *e.g.*, SAC ¶ 12 (alleging that there is "inherent danger involved in being unsheltered").)

Nor do Plaintiffs' allegations based on housing priorities satisfy the "affirmative action[]" requirement.  The allegations are missing the obvious, immediate, and "particularized danger" to a specific individual that gives rise to a duty of care.  *Martinez*, 943 F.3d at 1271.  And Plaintiffs cannot allege that County policies caused their litany of diffuse injuries.  *Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003) ("[I]n each of the cases in which we have applied the danger-creation exception, ultimate injury to the plaintiff was foreseeable.").

The SAC also fails to allege facts establishing the County acted with deliberate indifference.  *Sinclair*, 61 F.4th at 680-81 (deliberate indifference is a "'stringent standard of fault.'  The defendant 'must "recognize[] the unreasonable risk and actually intend[] to expose the plaintiff to such risks without regard to the consequences to the plaintiff"'" (citations omitted); *id.* ("'[O]nly official conduct that "shocks the conscience" is cognizable as a due process violation.'").  To the contrary, as Plaintiffs' acknowledge, the County devotes significant effort and resources to the homelessness crisis.  *Cf. id.* at 681 (deliberate indifference where City officials "knowingly exposed the public to a danger against which the officials *did almost nothing* to protect against" (emphasis added)); *see* SAC ¶ 10 ("Together the City and County spend over a billion dollars annually providing police, emergency, and support services to those living on the streets.").  At most, Plaintiffs allege the County's policy decisions and use of taxpayer funds have not adequately

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

addressed the homelessness crisis.  (*See* SAC ¶¶ 157-61.)  The Supreme Court has rejected this as a basis for a due process challenge.  *See County of Sacramento*, 523 U.S. at 848-49 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

### 3.    Plaintiffs Have Not Stated a Takings Claim

With respect to the uncompensated taking and inverse condemnation[3] claims, the SAC substitutes the County for the City in name alone and makes no other amendments.  (SAC ¶¶ 163-65.)  This shows how meritless Plaintiffs' claims are.  In any event, the County's discretionary spending decisions cannot be deemed a taking.  *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922) ("Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.").

Moreover, to state a taking or inverse condemnation claim, a plaintiff must allege both that (1) the plaintiff has a property interest; and (2) the government has taken that property for which compensation is due.  *See Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007).  Plaintiffs' claims fail on both parts.

*First*, "'only persons with a valid property interest at the time of the taking are entitled to compensation.'"  *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212 (Fed. Cir. 2005) (citation omitted).  To qualify, a private property interest cannot be "speculative," "uncertain," or "discretionary."  *Engquist*, 478 F.3d at 1003.  But the SAC alleges that PEH are located "on the sidewalks, beaches, and under overpasses" and acknowledges that these locations are *not* on the Plaintiffs' private property.  (*See*, *e.g.*, SAC ¶¶ 2, 9, 81(i), 83-87, 89-90, 111, 113, 115.) Plaintiffs cannot have a private property interest in public locations.  *See Air*

---

[3] Save for a difference not relevant here, the California Supreme Court has held that takings claims under California and U.S. Constitutions are "construed … congruently."  *San Remo Hotel L.P. v. City And County of San Francisco*, 27 Cal. 4th 643, 663-64 (2002).

613203.4

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Pegasus*, at 1217-18 (plaintiff has no private property interest in the navigable airspace because it is considered public property).

    *Second*, even if Plaintiffs could establish the requisite private property interest, their claims still fail.  "[A] property loss compensable as a taking only results when the government intends to invade a protected property interest or the asserted invasion is the 'direct, natural, or probable result of an authorized activity and not the incidental or consequential injury inflicted by the action.'"  *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355-56 (Fed. Cir. 2003) (citation omitted).  Thus, a takings claim must be predicated on actions by government, not third parties.  *See*, *e.g.*, *Navajo Nation v. United States*, 631 F.3d 1268, 1274, 1276 (Fed. Cir. 2011) (rejecting takings claim because no credible evidence showed the government directed or encouraged third parties' conduct, so it could not support a takings claim); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) ("The paradigmatic taking requiring just compensation is a direct *government* appropriation … of private property." (emphasis added)).  Even where a government agency engages in action it knows "will pave the way for another to lose property at the hands of a third party," "a taking claim will not lie."  *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137, 142 (Fed. Cl. 2000), *aff'd*, 291 F.3d 1356 (Fed. Cir. 2002).  Plaintiffs' claims allege only injury caused by third parties—the PEH on public property near Plaintiffs' properties.  This is not "direct, natural, or probable" action by *the County*.

    Even if both elements are met (they are not), the claims still fail.  For one thing, all of the Plaintiffs and LA Alliance members identified in the SAC own property in the *City of Los Angeles*—outside of the County's jurisdiction.  *See Cty. Sanitation Dist. No. 2 v. County of Kern*, 127 Cal. App. 4th 1544, 1612 (2005) (cities "are necessarily outside the jurisdiction and authority of County; County's authority extends only to the unincorporated areas").  For another, "[i]solated physical invasions, not undertaken pursuant to a granted right of access, are properly

613203.4

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

assessed as individual torts rather than appropriations of a property right." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2078 (2021). Thus, to the extent PEH have physically "invaded" Plaintiffs' properties, Plaintiffs' claims lie in tort against those individuals, not the County.

### C. Plaintiffs' Remaining State Law Claims Fail As A Matter Of Law

Plaintiffs' federal claims are flawed, so the Court should decline supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a). Indeed, because Plaintiffs lack Article III standing, the Court *cannot* adjudicate the state law claims. *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001).

In any event, as explained below, the state law claims are untenable.

### 1. Plaintiffs Fail to Identify a Mandatory Duty

The SAC alleges the County violated a "mandatory duty" under WIC section 17000, which provides that a county "shall relieve and support" indigent residents. (SAC ¶¶ 122-32.) Section 17000 does not require counties to cover "all unmet needs," *Hunt*, 21 Cal. 4th at 1014, only to provide "last resort" financial assistance and "medically necessary care," *County of San Diego v. State*, 15 Cal. 4th 68, 92, 104-05 (1997) (citations omitted).

Section 17000 forecloses Plaintiffs' theory that "beds themselves are medically necessary." (SAC ¶ 130.) WIC confers broad discretion on counties to determine the form and structure of relief they provide. *Scates v. Rydingsword*, 229 Cal. App. 3d 1085, 1089 (1991). The statute does not mandate particular forms of assistance, such as provision of beds for those not requiring acute inpatient care.[4]

Plaintiffs cite to WIC section 10000 (SAC ¶ 127), which is a "general statement of policy" that "aid shall be administered and services provided promptly

---

[4] A state appellate court rejected the argument that counties have a mandatory duty under section 17000 to provide shelter for every homeless person. *See Clinton v. Cody*, 2019 WL 2004842, at *9 (Cal. Ct. App. May 7, 2019).

613203.4

25

and humanely." *Marquez v. State Dep't of Health Care Servs.*, 240 Cal. App. 4th 87, 120 (2015) (citations omitted).  This provision "does not set forth any specific duty or course of conduct an agency must take, but leaves to the agency's discretion how to pursue the policy goal."  *Id.*

As discussed above, none of the other WIC provisions give rise to a mandatory duty for the County.  (*See supra*, at 19.)  Section 5600 describes only objectives the County "should" try to meet "to the extent resources are available." *See* WIC §§ 5600.3, 5600.4, 5600.6.  Section 14000 provides for limited services "to the extent practicable."  *Id*. § 14000; *see id.* § 14005.36(d) ("This section shall be implemented *only to the extent* that federal financial participation … is available." (emphasis added)).

Likewise, with the exception of funding adult protective services (which Plaintiffs do not claim are at issue), WIC section 13000 merely sets forth goals that the County "may expend" funds to meet.  Thus, while the County is working hard to address the homelessness crisis, it is not subject to any mandatory statutory duty.

Moreover, section 17000 only applies when an indigent person is "not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."  § 17000.  No Plaintiff alleges they are indigent and deprived of medically necessary care or general assistance.  Thus, as the Ninth Circuit already held, Plaintiffs lack standing.  *LA All.*, 14 F.4th at 958-59.  The SAC fails to cure this fatal deficiency.  (*See* SAC ¶¶ 122-32.)

**2.    Plaintiffs Have Not Stated a Claim for Nuisance**

A nuisance is a non-trespassory invasion of a person's interest in the private use and enjoyment of land.  Cal. Civ. Code § 3479; *San Diego Gas & Elec. Co. v. Superior Court*, 13 Cal. 4th 893, 937 (1996).  A public nuisance is "one which affects at the same time an entire community or neighborhood, or any considerable number of persons."  Cal. Civ. Code § 3480.  A private nuisance is any nuisance not otherwise defined as a public nuisance.  *Id.* § 3481.

613203.4

26

Claims for public and private nuisance must establish causation. "[T]he critical question is *whether the defendant created or assisted in the creation of the nuisance.*" *See Citizens for Odor Nuisance Abatement v. City of San Diego*, 8 Cal. App. 5th 350, 359 (2017) (citation omitted); *Resolution Tr. Corp. v. Rossmoor Corp.*, 34 Cal. App. 4th 93, 99 (1995) (defendant must be an "active participant" in the nuisance). Causation requires (a) an act, or (b) a failure to act where the actor is under a duty to take positive action to prevent or abate the nuisance. *Citizens for Odor*, at 359.

The SAC alleges that third-party PEH are breaking the law and that their waste, trash, and encampments are harming Plaintiffs' "health and welfare." (SAC ¶ 136.) But the County did not create the alleged nuisance—the waste, disease, fires, or crime. Nuisance liability cannot extend "to damage suffered as a proximate result of the independent intervening acts of others." *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990). Moreover, the alleged nuisances caused by PEH entirely within the incorporated boundaries of the City are outside of County jurisdiction. *See Cty. Sanitation Dist. No. 2*, 127 Cal. App. 4th at 1612.

Plaintiffs' theory that PEH are themselves an actionable, area-wide nuisance is baseless: The Ninth Circuit has repeatedly affirmed that PEH have rights to exist in the streets with their personal property. *E.g.*, *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012); *Jones v. City of Los Angeles*, 444 F.3d 1118, 1132-37 (9th Cir. 2006), *vacated following settlement by* 505 F.3d 1006 (9th Cir. 2007).

**3.      Plaintiffs Fail to State a Claim for Waste of Public Resources**

Plaintiffs lack standing to assert their Sixth Cause of Action under Code of Civil Procedure section 526a for "taxpayer waste." Section 526a does not automatically confer Article III standing. *Cantrell v. City of Long Beach*, 241 Cal. 674, 683-84 (9th Cir. 2001). Plaintiffs' theory is that, *if* the County had made better use of its funds, it could have constructed enough homeless shelters such that, *if* the City enforced its anti-vagrancy laws, Skid Row encampments would be eliminated.

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

This tenuous, speculative claim is not a legitimate "pocketbook" injury traceable to the County or redressable by the Court.  *California*, 141 S. Ct. at 2114.

Moreover, "[a] cause of action under Code of Civil Procedure section 526a will not lie where the challenged governmental conduct is legal." *Coshow v. City of Escondido*, 132 Cal. App. 4th 687, 714 (2005).  The County's expenditures to help PEH are undeniably legal.  Plaintiffs attempt to obtain sweeping injunctive relief based on their belief that the County has "misused and wasted" taxpayer funds on addressing homelessness.  (SAC ¶ 145.)  Yet, Plaintiffs admit the County's budget allocates $466 million in Measure H funds for combatting homelessness through housing and supportive services.  (*Id*. ¶ 59.)  Plaintiffs have no viable waste claim.

Plaintiffs' allegation that "alternative available measures" would be more "effective in addressing the crisis" is merely a policy disagreement.  (SAC ¶ 145.) Section 526a is not a tool for private citizens to dictate public policy.  *See Coshow*, 132 Cal. App. 4th at 714 ("[A] taxpayer is not entitled to injunctive relief . . . where the real issue is a disagreement with [how] government has chosen to address a problem"); *Schmid v. City & County of San Francisco*, 60 Cal. App. 5th 470, 495-96 (2021) ("A claim under [526a] does not lie to attack exercises of administrative discretion and may not be employed to interfere with policymaking.").

### 4.    Statutory Immunity Bars Plaintiffs' Claims

Under California law, public entities have absolute immunity unless "otherwise provided by statute."  Cal. Gov't Code § 815.  Governmental immunity shields public entities from claims based on "adopting or failing to adopt an enactment" or "failing to enforce any law," *id.* § 818.2, and "exercise[s] of . . . discretion . . ., whether or not such discretion be abused," *id.* § 820.2.  *See Taylor v. Buff*, 172 Cal. App. 3d 384, 390 (1985) (budgetary and fiscal policy, allocation of finite resources, and choices between competing policy objectives are "discretionary" activities protected by governmental immunity); *HFH, Ltd. v. Superior Court*, 15 Cal. 3d 508, 519 (1975) ("basic policy decisions" immune from

613203.4

28

"governmental tort liability" (citation omitted)).

Plaintiffs' request for injunctive relief does not change the immunity analysis. *See Schooler v. State*, 85 Cal. App. 4th 1004, 1013-15 (2000) (rejecting plaintiff's argument that injunctive relief claims were not subject to immunity). Although Government Code section 814 states that immunity does not affect "the right to obtain relief other than money or damages," this provision does not "circumvent either its own underlying legislative policy or that of another section in the Tort Claims Act." *Id.* at 1013. The mandatory injunctive relief Plaintiffs seek would impose substantial financial burdens—hundreds of millions of dollars—on the County as real as money damages; it is thus barred. *See id.* at 1014-15.

Moreover, section 818.2 "recognizes that the wisdom of legislative or quasi-legislative action . . . should not be subject to review" by the courts. Cal. Gov't Code § 818.2 (Law Revision Comm'n Comments). The County dedicates tremendous resources to addressing the complex homelessness crisis—which requires that it weigh policy options and carefully allocate limited resources. These basic policy decisions regarding law enforcement and municipal services are the crux of the immunity doctrine. *Freeny v. City of San Buenaventura*, 216 Cal. App. 4th 1333, 1341 (2013); *see also Taylor*, 172 Cal. App. 3d at 390 ("A decision involving the allocation of limited funds is a purely discretionary one . . . 'and thus immune from liability.'" (citation omitted)).

The SAC asks the Court to substitute its judgment for these fundamental County policy choices. But it is not the Court's role to dictate local policy and budget priorities by usurping the County's discretionary decisions. Immunity bars Plaintiffs' claims. *See Schooler*, 85 Cal. App. 4th at 1014 ("[A]ny 'relief' allowed under section 814 cannot create duties that immunity provisions guard against.").

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the County respectfully requests that the Court grant the Motion in its entirety.

613203.4

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DATED:  May 3, 2023                    MILLER BARONDESS, LLP


                                       By:    /s/ Mira Hashmall
                                              MIRA HASHMALL
                                              Attorneys for Defendant
                                              COUNTY OF LOS ANGELES

DEFENDANT COUNTY OF LOS ANGELES' MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT