# EXHIBIT 20

**EXHIBIT 20 - Page 953**

MARY C. WICKHAM (Bar No. 145664)
*County Counsel*
RODRIGO A. CASTRO-SILVA (Bar No. 185251)
*Acting Chief Deputy County Counsel*
LAUREN M. BLACK (Bar No. 192302)
*Assistant County Counsel*
AMIE S. PARK (Bar No. 273346)
*Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, CA 90012
Tel: 213.974.1830  Fax: 213.626.7446
Email: apark@counsel.lacounty.gov

BYRON J. MCLAIN (Bar No. 257191)
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Tel:  213.972.4500  Fax:  213.486.0065
Email: bmclain@foley.com

Attorneys for Defendant
COUNTY OF LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | Case No. 2:20-cv-02291 DOC-KES <br><br> **JOINT NOTICE TO THE COURT REGARDING MEMORANDUM OF UNDERSTANDING FOR 6,700 BED PLAN FROM CITY OF LOS ANGELES AND COUNTY OF LOS ANGELES** |

JOINT NOTICE TO COURT REGARDING MEMORANDUM OF
UNDERSTANDING
Case No. 2:20-cv-02291 DOC-KES

EXHIBIT 20 - Page 954

LOUIS R. MILLER (SBN 54141)
MIRA HASHMALL (SBN 216842)
EMILY A. SANCHIRICO (SBN 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400
Email: esanchirico@millerbarondess.com

Attorneys for Defendant
COUNTY OF LOS ANGELES

MICHAEL N. FEUER, Bar No. 111529
City Attorney
KATHLEEN A. KENEALY, Bar No. 212289
Chief Assistant City Attorney
SCOTT MARCUS, Bar No. 184980
  scott.marcus@lacity.org
Senior Assistant City Attorney
200 N. Main St., City Hall East, 7th Floor
Los Angeles, CA 90012
Tel:  213.978.4681  Fax:  213.978.7011

Attorneys for Defendant
CITY OF LOS ANGELES

JOINT NOTICE TO COURT REGARDING MEMORANDUM OF UNDERSTANDING
-2-   Case No. 2:20-cv-02291 DOC-KES

EXHIBIT 20 - Page 955

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 9, 2020, the City of Los Angeles ("City") and the County of Los Angeles ("County") reached an agreement on a Memorandum of Understanding ("MOU"). This MOU clarifies the historic agreement between the City and County to provide a total of 6,700 beds and services for people experiencing homelessness (PEH") in the City of Los Angeles within 18 months. (*See* Dkt. 136, Binding Term Sheet at ¶ 1.)

Attached hereto is the MOU with its associated Binding Term Sheet as Exhibit 1.

DATED: October 12, 2020      FOLEY & LARDNER LLP
Byron J. McLain

_/s/ Byron J. McLain_
Byron J. McLain
Attorneys for Defendant
COUNTY OF LOS ANGELES

DATED: October 12, 2020      MICHAEL N. FEUER, City Attorney

_/s/ Scott Marcus_
Scott Marcus
Senior Assistant City Attorney
CITY OF LOS ANGELES

EXHIBIT 20 - Page 956

MEMORANDUM OF UNDERSTANDING
BETWEEN
THE COUNTY OF LOS ANGELES and
THE CITY OF LOS ANGELES

This Memorandum of Understanding ("MOU") is entered into this 9th day of October 2020 by and between the County of Los Angeles, a subdivision of the State of California ("COUNTY"), and the City of Los Angeles, a municipal corporation ("CITY"), for purposes of establishing roles, responsibilities, and financial relationships necessary to create housing or shelter for (i) people experiencing homelessness ("PEH") living within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles, (ii) PEH age 65 and over within the City of Los Angeles, and (iii) other vulnerable PEH within the City of Los Angeles. COUNTY and CITY will be referred to herein individually as "PARTY" and together as "PARTIES."

PARTIES agree to the following for purposes of this MOU only:

I.      TERM OF MOU

The term of this MOU will begin on the date of signature of PARTIES, and will end on June 30, 2025, unless extended upon mutual agreement of PARTIES.

II.     RECITALS

      A.     COUNTY

            1.     The County has long recognized that a comprehensive crisis response is required to counteract the myriad causes of homelessness and has taken several constructive steps towards meeting this challenge.

            2.     On August 17, 2015, the Los Angeles County Board of Supervisors ("Board") launched the Homeless Initiative to combat the homeless crisis that pervades our communities. The primary initial objective of the Homeless Initiative was to develop a coordinated set of recommended strategies. To achieve this objective, the Homeless Initiative convened 18 policy summits on nine topics from October 1 to December 3, 2015, which brought together County departments, cities and other public agencies, and a wide range of community partners and stakeholders.

            3.     On February 9, 2016, the Board approved 47 strategies that reach across government and community boundaries to forge effective partnerships and get results. On the same day, the Los Angeles City Council approved the first-ever Los Angeles City Comprehensive Homeless Strategy which was developed in collaboration with the County.

            4.     In March 2017, voters resoundingly approved Measure H, the landmark ¼ percent increase to the County's sales tax to provide an ongoing revenue stream – an estimated $355 million per year for ten years – to fund

HOA.103025439.1                                    1

EXHIBIT 20 - Page 957

services, rental subsidies and housing.  It is designed to fund a comprehensive regional approach encompassing 21 interconnected strategies in six areas to combat homelessness: (i) prevent homelessness; (ii) subsidize housing; (iii) increase income; (iv) provide case management and services; (v) create a coordinated system; and (vi) increase affordable/homeless housing.

5.  The County began efforts to alleviate homelessness even before passage of Measure H by infusing $100 million to launch these strategies in 2016.

6.  On January 21, 2020, the Board approved a motion proposed by Supervisors Mark Ridley-Thomas and Janice Hahn entitled "Establishing a Comprehensive Homelessness Crisis Response Strategy in Los Angeles," with a goal of establishing an accountability framework for providing shelter or housing for PEH in Los Angeles County.

7.  On April 14, 2020, the Board unanimously approved a motion entitled "Piloting a Comprehensive Crisis Response to Ensure Post-COVID-19 Housing for Homeless Older Adults in Los Angeles County," directing its Chief Executive Officer ("CEO") to develop a pilot program to provide long-term housing options and services to PEH who are aged 65 years or older including those who were provided emergency housing in response to the COVID-19 public health crisis.  The motion further directed all County departments to take appropriate action to implement 16 recommendations for changes in state law or policy to achieve three goals: (i) addressing and preventing street homelessness; (ii) reducing barriers to building more housing; and (iii) getting more people into treatment.

B.  CITY

1.  The City has taken unprecedented action to end street homelessness in Los Angeles, and continues to act to address both the crisis of homelessness in the city and the increased risk that COVID-19 creates for persons experiencing homelessness in Los Angeles.

2.  In February 2016, the Mayor and City Council adopted the City's Comprehensive Homeless Strategy.  It is meant to be a comprehensive approach to address short- and long-term homelessness issues and is adopted in tandem with the Homeless Initiative approved concurrently by the County of Los Angeles Board of Supervisors.  The City Council also adopted 14 Guiding Principles which are incorporated in the Comprehensive Homeless Strategy.

3.  In November 2016, Los Angelenos overwhelmingly approved Proposition HHH.  Proposition HHH authorized the City to issue up to $1.2 billion in general obligation bonds to partially subsidize the development of up to 10,000 supportive housing units for individuals and families who are experiencing homelessness or are at risk of becoming homeless.  As of

HOA.103025439.1

2

EXHIBIT 20 - Page 958

September 30, 2019, the City has allocated nearly the entire amount authorized by the Proposition HHH ballot measure, on its way to securing the development of up to 10,000 supportive housing units. City and County also entered into a memorandum of understanding securing County's provision of services to tenants of City-created permanent supportive housing opportunities, including intensive case management, integrated health services, and rental assistance.

4.  In April 2018, the Mayor and the City Council declared an emergency shelter crisis and took advantage of a new state law that enables cities to construct bridge housing more quickly on land owned or leased by the City. The A Bridge Home (ABH) shelter program seeks to create 100 shelter beds in each of the City's 15 Council Districts.

5.  In April 2018, the City also formed the Unified Homelessness Response Center ("UHRC") in the City's Emergency Operations Center, bringing City Departments and partners under one roof to respond to the crisis together and deliver every possible resource to help Angelenos experiencing homelessness get the help they need to move indoors.

6.  On March 19, 2020, the City declared a state of emergency and issued the Safer at Home orders in response to the coronavirus pandemic. The City took several emergency measures to help protect homeless Angelenos and slow the spread of COVID-19, including opening more than 20 emergency shelters at City recreation centers to provide emergency shelter for over 1,000 people. The City also worked with the County and the State to provide shelter through Project Roomkey. These emergency shelters are temporary, however, and persons experiencing homelessness who were brought inside these shelters must be relocated to longer term interim or permanent housing solutions.

7.  The City continues to make addressing homelessness a top priority, even during the financial crisis caused by COVID-19. In Fiscal Year 2020-2021, the City has committed over $460 million in supportive housing, bridge housing, services, and facilities to help homeless Angelenos find their way off the streets.

C.   THE COURT

1.  COUNTY and CITY are parties to *LA Alliance for Human Rights, et al. v. City of Los Angeles, et al.*, Civil Action No. 2:20-cv-02291 (the "Action"), in the United States District Court for the Central District of California, Judge David O. Carter presiding (the "Court").

2.  In addition to individuals over 65, those with preexisting medical conditions, and those otherwise vulnerable to coronavirus, the Court has expressed concerns about the health and safety of people experiencing homelessness living within 500 feet of freeway overpasses, underpasses

HOA.103025439.1

3

**EXHIBIT 20 - Page 959**

and ramps.  On June 18, 2020, the Parties submitted a binding term sheet in the Action to address the Court's concerns (Dkt. 136) ("Binding Term Sheet").

III.   PARTIES' RESPONSIBILITIES

PARTIES agree to the following responsibilities in connection with this MOU.  This MOU does not arise from a legal obligation, does not resolve the Action or any other litigation, and further defines and incorporates the PARTIES' Binding Term Sheet, attached as Exhibit 1 to this MOU.

A.   During the term of this MOU, the CITY will provide a total of 6,000 New Beds, and 700 Other Beds, for housing or shelter for (i) PEH within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles, and then give priority to (ii) PEH who are aged 65 years or older within the City of Los Angeles and (iii) other vulnerable PEH within the City of Los Angeles.  CITY will provide 5,300 New Beds within ten (10) months of June 16, 2020, and an additional 700 New Beds within eighteen (18) months of June 16, 2020 ("6,000 New Beds").  CITY will provide 700 Other Beds within ten (10) months of June 16, 2020 ("700 Other Beds").

1.   "New Beds" provided under this MOU shall be defined as beds (i) not previously captured in any agreement or plan between the PARTIES, and (ii) opened on or after the date of the Binding Term Sheet (i.e., June 16, 2020).  New Beds may include any combination of the following: (i) purchased and/or leased motel/hotel rooms by the City; (ii) rental assistance, including rapid rehousing, but only for the duration of the assistance; (iii) sprung structures or tents; (iv) safe parking; (v) safe sleeping; (vi) scattered site or permanent supportive housing; (vii) ABH beds; and (viii) other innovative modes of housing or shelter.  Family reunification is not included as a New Bed under this MOU.

2.   "Other Beds" provided under this MOU may be beds previously captured in an agreement or plan between CITY and COUNTY.

B.   To assist CITY with funding services for the 6,000 New Beds, COUNTY shall contribute up to $53 million for the first year and up to $60 million for years two through five, as set forth in more detail below:

1.   For the period from execution of this MOU until June 30, 2021 ("Year One"), COUNTY shall pay to CITY the amount of (i) $17.66 million on September 1, 2020; (ii) $17.67 million on January 1, 2021; and (iii) $17.67 million on April 1, 2021.

2.   For the period from July 1, 2021 to June 30, 2022 ("Year Two"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2021; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2021, COUNTY may prorate payment equal to $10,000 per new bed that exists or will be open and occupiable within 60 days of the Year Two payment date.

EXHIBIT 20 - Page 960

3.  For the period from July 1, 2022 to June 30, 2023 ("Year Three"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2022; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2022, COUNTY may prorate payment equal to $10,000 per new bed that exists or will be open and occupiable within 60 days of the Year Three payment date.

4.  For the period from July 1, 2023 to June 30, 2024 ("Year Four"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2023; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2023, COUNTY may prorate payment equal to $10,000 per new bed that exists or be will open and occupiable within 60 days of the Year Four payment date.

5.  For the period from July 1, 2024 to June 30, 2025 ("Year Five"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2024; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2024, COUNTY may prorate payment equal to $10,000 per new bed that exists or will be open and occupiable within 60 days of the Year Five payment date.

C.  COUNTY will pay to CITY a one-time bonus of $8 million if 5,300 New Beds are open and occupiable within ten months from June 16, 2020.

D.  The Los Angeles Homeless Services Authority ("LAHSA") facilitates the coordination and management of resources and services in order to efficiently and effectively connect PEH in the community to available housing and supportive services equitably.  To leverage resources and efficiency, services provided to PEH who are sheltered or housed under this MOU may be facilitated and supported by LAHSA in coordination with relevant community-based providers, but City may, in its sole discretion, contract with service providers directly, and such services may be consistent with LAHSA's service standards.  City may also utilize its own staff to deliver certain services (i.e. maintenance, sanitation, supplies, etc.) where appropriate.

E.  Except as otherwise stated in this MOU, or to the extent COUNTY is responsible for costs in an agreement or plan between the PARTIES other than this MOU, CITY is responsible for all costs, including capital costs, operating costs, and/or other expenses associated with the 6,000 New Beds and 700 Other Beds described herein.

F.  The precise mix and location of New Beds and Other Beds will be determined at CITY's sole discretion.  CITY will use all reasonable efforts to utilize, on an ongoing and regular basis, all the New Beds for PEH in the City of Los Angeles for which COUNTY is contributing a portion of the funding for services.

G.  The funding obligation of COUNTY under this MOU is exclusive.  COUNTY will continue to allocate Measure H funding by Service Planning Area (SPA) based on the Homeless Count conducted by LAHSA and, where applicable, the Homeless Population Estimate, consistent with Board policy.

HOA.103025439.1                                           5

EXHIBIT 20 - Page 961

H.    COUNTY will take action to provide a package of the following mainstream services to PEH residing in facilities established by CITY pursuant to this MOU at the scale and availability deemed appropriate by the County: mental health and substance-use disorder outreach and disability benefit advocacy services through COUNTY's Departments of Health Services, Mental Health, and Public Health; and assistance to apply for and obtain public assistance, including Electronic Benefits Transfer ("EBT") benefits to purchase food, temporary financial assistance and employment-focused services for families with minor children, Medi-Cal enrollment, and general relief (i.e., temporary financial assistance for indigent adults who are otherwise ineligible for state- or federally-funded benefits) through COUNTY's Department of Public Social Services. In addition, the County will continue to provide these mainstream services at its County Department offices and other locations, as applicable, to all eligible PEH in the City of Los Angeles, including to PEH assisted through family reunification.

IV.    COMPLIANCE AND REPORTING

PARTIES agree to the following reporting requirements; provided, however, if the Court requires different and more extensive reporting than what is set forth below, then the PARTIES agree to provide reporting as required by the Court and not in this MOU.  PARTIES agree that:

CITY shall submit to COUNTY and the Court the following:

A.    BED PLAN.

1.    By August 1, 2020, CITY shall provide each Council District's current plan describing how CITY will establish New Beds and Other Beds specified herein ("Bed Plan"). The CITY's Bed Plan shall include, at a minimum, the following information:

a)    Identification of New Beds and Other Beds in development to be provided under this MOU, categorized by type, number, and location (if not tenant-based), and the expected opening dates for each intervention;  and

b)    Identification of additional New Beds and Other Beds being considered or proposed for development, categorized by type, number, and location (if not tenant-based), and the status of the proposed intervention.

HOA.103025439.1                                       6

EXHIBIT 20 - Page 962

B.     STATUS REPORTS.

1.     Quarterly Reports.  During the term of this MOU, CITY shall provide written quarterly status reports, starting at least by October 15, 2020, to report on CITY's progress in providing New Beds, Other Beds, and services pursuant to this MOU ("Status Report").  Each Status Report shall include information for the most recent three-month period, and will be provided within 30 days of the end of the quarter, and shall include at least the following:

a)     Updates to the Bed Plan;

b)     Number and location of New Beds and Other Beds then existing, as well as the current status of beds being created, and additional interventions being considered pursuant to this MOU; and

c)     Number of PEH provided New Beds and Other Beds, identified by the three target PEH populations: (i) PEH within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles; (ii) PEH who are aged 65 years or older within the City of Los Angeles; and (iii) other vulnerable PEH within the City of Los Angeles.

2.     Bed Count.  At least 90 days prior to the annual payment date for Years Two through Five, CITY shall provide information regarding the number of existing beds and the number of beds that will be open within 60 days of the payment date.

3.     Annual Report.  At least annually, City shall report the cumulative amount of City funding provided to fund services during the preceding fiscal year for New Beds established under this MOU.  The City's and County's contribution are each expected to cover 50% of the average cost of providing services to PEH in New Beds established by the City under this MOU.

COUNTY shall submit to CITY and the Court the following:

C.     STATUS REPORTS.

1.     Payment Report.  COUNTY shall report the amounts paid to CITY in Year One pursuant to this MOU by September 30, 2020, January 31, 2021, and April 30, 2021, and shall thereafter report the amounts paid to CITY in Years Two through Five on or before September 30 of each respective Year (or earlier if requested by the Court).

HOA.103025439.1                                    7

EXHIBIT 20 - Page 963

2.      Payment After City Reporting.  COUNTY's scheduled payments to the CITY as identified in this MOU shall occur (i) as identified in Section III.B.1 or (ii) within 30 days after the CITY has met its reporting obligations (i.e., Status Reports) immediately preceding that payment as specified in this Compliance and Reporting section (whichever date is latest).

3.      Mainstream Services.  During the term of this MOU, COUNTY shall provide written quarterly status reports on COUNTY's provision of mainstream services for PEH in facilities established by CITY pursuant to this MOU.  Each Status Report will be provided within 30 days of the end of the fiscal quarter.

## V.      MODIFICATIONS AND REVISIONS

This MOU constitutes the entire agreement between PARTIES hereto, and no oral understanding not incorporated herein will be binding on any PARTY.  This MOU may only be modified, altered or revised, as necessary, by mutual consent of PARTIES hereto by the issuance of a written amendment, signed and dated by PARTIES.

## VI.     DISPUTE RESOLUTION

PARTIES agree to implement good faith efforts and promptly meet and confer to resolve disputes arising from this MOU.  If, after such efforts, the PARTIES cannot resolve disputes, the PARTIES shall seek resolution from the Court.

## VII.    COURT ENFORCEMENT

This MOU is subject to enforcement by the Court.  Promptly upon execution, PARTIES agree to submit this MOU to the Court.

## VIII.   PRESS RELEASES AND COMMUNICATIONS

To the extent feasible, both PARTIES shall be invited to participate when communicating with the press, television, radio or any other form of media regarding duties or performance under this MOU.  Participation of each PARTY in press/media presentations will be determined by each PARTY's public relations policies.  Unless a PARTY directs otherwise, each PARTY shall make specific reference to both PARTIES in all communications regarding this MOU.

## IX.     INDEMNIFICATION

Pursuant to the provisions of Section 895.4 of the California Government Code, PARTIES agree to indemnify and hold the other PARTY harmless from all liability for damage, actual or alleged, to person or property arising out of or resulting from indemnifying PARTY's acts or omissions in the performance of this MOU.  In the event of third-party loss caused by negligence, wrongful act or omission of PARTIES, each PARTY shall bear financial responsibility in proportion to its percentage of fault as may be mutually agreed or judicially determined.  The provisions of California Civil Code Section 2778 regarding interpretation of indemnity agreements are hereby incorporated.

HOA.103025439.1                                    8

EXHIBIT 20 - Page 964

X.    MISCELLANEOUS PROVISIONS

This MOU is governed by and shall be interpreted in accordance with the laws of the State of California, excluding its conflict of law rules. PARTIES agree that any action relating to any dispute, claim, or controversy regarding the validity, enforcement, interpretation, or breach of this MOU shall only be commenced in and maintained in, and PARTIES hereby stipulate to the jurisdiction only of, the United States District Court for the Central District of California.

If any part of this MOU is found to be illegal, invalid, or unenforceable by a court of competent jurisdiction, the legality, validity, and enforceability of the remaining parts, terms, or provisions of this MOU shall not be affected thereby, and shall remain in full force and effect. The illegal, unenforceable, or invalid part, term, or provision shall no longer be deemed to be part of this MOU. It is the desire and intent of the PARTIES that the provisions of this MOU be enforced to the fullest extent permissible under applicable laws.

This MOU may be executed in counterparts, each of which so executed will be deemed to be an original and will together constitute one and the same agreement. Manual signatures may be provided by facsimile, or digitally scanned and provided by electronic mail.

Each PARTY shall be responsible for and bear its own attorneys' fees and costs incurred in connection with this MOU.

The City of Los Angeles

By: _____
      Richard H. Llewellyn, Jr
      City Administrative Officer                    Date____October 9, 2020____

The County of Los Angeles

By:_____
      Fesia Davenport
      Acting Chief Executive Officer                 Date: 10/12/2020

HOA.103025439.1                                      9

EXHIBIT 20 - Page 965

# EXHIBIT 1

**EXHIBIT 1**

**EXHIBIT 20 - Page 966**

LA 20-CV-02291-DOC



FILED
CLERK, U.S. DISTRICT COURT

June 18, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY:___KD___ DEPUTY

Confidential
Binding term sheet

LA Alliance for Human Rights v. City of Los Angeles

1.  City agrees to provide 6,700 beds within 18 months to house or shelter (i) PEH living within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles, and then to give priority to providing housing or shelter to (ii) PEH 65+ within the City of Los Angeles and (iii) other vulnerable PEH within the City of Los Angeles.

The schedule will be as follows:

New beds (not in existing agreements):  6000
5300 within 10 months (bonus of $8 million if 10 month target date met)
700 within 18 months

Beds in existing agreements
700 beds within 10 months

TOTAL:  6700 beds established within 18 months

5,300 of the 6,700 beds will be new beds and will be created within 10 months, and the 700 additional new beds created within 18 months, must be beds not previously captured in any agreement or plan between the City and County; 700 of the 6,000 beds created within 10 months may be beds previously captured in an agreement or plan between the City and County.

2.  To assist in funding services for the 6,000 new beds, County shall pay City up to $60 million per year for 5 years.  In the first year, County shall pay City $53 million: $17.66 million on 9/1/20; $17.67 million on 1/1/21; and $17.67 million on 4/1/21.  In the second through fifth years, County shall pay City $60 million on July 1; however, if 6,000 new beds have not been created by the July 1 payment date, County can prorate payment equal to $10,000 per new bed that exists or will open within 60 days of the payment date.

The funding under this agreement is exclusive and the County will continue to allocate Measure H funding by Service Planning Are (SPA) based on LAHSA's Homeless Count and, where applicable, the Homeless Population Estimate, consistent with Board policy.

3.  County will pay to City a one-time bonus of $8 million if the 5,300 new bed target is reached within 10 months from execution of agreement.

SDM
6-16-2020

MCW
6-16-2020

EXHIBIT 20 - Page 967

4.  County will take action to provide a package of mainstream services for PEH residing in facilities established by the City pursuant to this Agreement.

5.  Agreement subject to court approval, monitoring, and enforcement.

6.  Agreement subject to City and County approval.

7.  The parties will submit this term sheet to the Court.  Upon approval of this term sheet by the City and County, the parties will respectfully request the Court to entertain an oral motion coupled with a joint stipulation from the City and County that the Preliminary Injunction dated May 22, 2020 be vacated without prejudice, subject to the Court's later consideration of reinstatement of the Preliminary Injunction should the parties fail to comply with the terms identified above.

County Counsel Los Angeles County
Mary C. Wickham
6-16-2020

Senior Assistant City Attorney
6-16-2020

EXHIBIT 20 - Page 968