# EXHIBIT 49

EXHIBIT 49 - Page 1968

| From: | Mira Hashmall |
|---|---|
| Sent: | Tuesday, April 25, 2023 6:48 PM |
| To: | 'Elizabeth Mitchell'; Skip Miller |
| Cc: | Matthew Umhofer; Ana Lai; Jennifer Lehman; 'Shayla R. Myers'; Carol Sobel (carolsobel@aol.com); Nadia A. Sarkis; Danielle Novelly |
| Subject: | RE: LA Alliance - Rule 26 Meet and Confer |
| Attachments: | 9.23.22 Letter from Mira Hashmall.pdf |

Hi Liz,

The parties have a binding settlement agreement that resolves this litigation and would bring much-needed additional resources to people experiencing homelessness.  Accordingly, this matter should have been voluntarily dismissed to allow the parties to move forward with their agreed-upon plans to expand the County's existing aid and support.  In light of Judge Carter's denial of the parties' stipulation, the County intends to file a Motion for Certification of Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b).  In conjunction with this motion, the County will file an *Ex Parte* Application requesting an immediate stay and expedited scheduling of the Certification for Interlocutory Appeal.  In accordance with the C.D. Cal. Local Rules and Judge Carter's Rules, we will provide you with formal notice prior to filing the *Ex Parte* Application.  Please let us know if you will oppose the requested relief.

If Judge Carter denies the *Ex Parte* Application, the County will file its Rule 12 Motion to Dismiss the Second Amended Complaint on or before May 3.  Attached please find the County's meet and confer letter regarding its arguments for dismissal that was sent back in September 2022.  It is the County's position that those defects still persist.  Moreover, because the parties reached a binding settlement, there is no justiciable controversy to be resolved by the Court.  Under Article III of the Constitution, the federal judiciary is only vested with power to decide "Cases" or "Controversies" through an adversary process.  *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 132-33 (2011) ("Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary").  Please let me know your availability to discuss these issues in accordance with Local Rule 7-3.

Finally, we are not going to engage in a belated Rule 26(f) Conference.  Pursuant to Rule 26(f), the parties should have conferred at least 21 days before the May 9 Scheduling Conference—i.e., on or before April 18.  This would have allowed the parties seven days to prepare the Rule 26(f) Report for filing today.  As you may recall, in 2022, we tried to diligently conduct a Rule 26 conference and commence discovery and you declined to engage with us.  Now, a Rule 26(f) Conference and Report are not appropriate or practicable at this time.  We have an executed settlement agreement and have jointly requested dismissal.  The Court denied the request and set the May 9 scheduling conference, but the pleadings are not closed, and the parties have not conducted a Rule 26 Conference.  Accordingly, these proceedings should not go forward before the County is able to seek appellate review of the Court's denial of the Rule 41 dismissal request.

Please feel free to call me if you have any questions.  I have some meetings tomorrow, but I will move things around to accommodate our meet and confer discussions.

Thank you,
Mira

**Mira Hashmall**
M I L L E R  |  B A R O N D E S S LLP

1

**EXHIBIT 49 - Page 1969**

2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-7560
Fax: 310-552-8400
mhashmall@millerbarondess.com
www.millerbarondess.com
Biography

 Please consider the environment – do you really need to print this email?

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Tuesday, April 25, 2023 10:14 AM
**To:** Mira Hashmall <mhashmall@Millerbarondess.com>; Skip Miller <smiller@Millerbarondess.com>
**Cc:** Matthew Umhofer <matthew@umklaw.com>; Ana Lai <ALai@counsel.lacounty.gov>; Jennifer Lehman <jlehman@counsel.lacounty.gov>
**Subject:** LA Alliance - Rule 26 Meet and Confer

Folks:

By our calculation the Rule 26 report is due today, which we clearly cannot meet given that we have not met and conferred nor circulated drafts.  I suggest we agree to and file a stipulation noting that we will meet and confer ASAP and will file a Rule 26 report prior to the scheduling conference.  Please let me know if you are amenable to this approach and we will send around a draft stipulation and suggest some dates for a meet and confer.

Thanks,
Liz



**ELIZABETH A. MITCHELL**
*Partner*

elizabeth@umklaw.com
Office: (213) 394-7979
www.umklaw.com

Nothing in this communication is intended to convey tax-related advice.  This message may contain confidential and privileged information.  If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.  Thank you.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

2

**EXHIBIT 49 - Page 1970**

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
1999 AVENUE OF THE STARS
SUITE 1000
LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400
FAX: (310) 552-8400
WWW.MILLERBARONDESS.COM

September 23, 2022

**MIRA HASHMALL**
DIRECT DIAL: (310) 552-7560
MHASHMALL@MILLERBARONDESS.COM

*VIA ELECTRONIC MAIL ONLY*

Matthew Umhofer
Elizabeth Mitchell
Email: matthew@spertuslaw.com;
emitchell@spertuslaw.com

Re:     *L.A. Alliance, et al. v. City of Los Angeles, et al.* (CDCA Case No. 2:20-cv-02291)

Counsel:

As you know, the Court denied the stipulation to extend time for the County of Los Angeles (the "County") to respond to Plaintiffs' Second Amended and Supplemental Complaint ("SAC"). [Dkt. 468.] As such, in accordance with Local Rule 7-3, we are writing to set forth the grounds the County's motion to dismiss the SAC under Rule 12 of the Federal Rules of Civil Procedure. Notwithstanding that the Parties have reached a tentative settlement agreement, the County maintains that Plaintiffs' claims remain legally untenable.

## I.     **Plaintiffs' Claims Are Not Justiciable**

Plaintiffs still have a standing problem, individually and collectively.

Other than Plaintiffs' Inverse Condemnation and Taking claims, the SAC purports to state all claims against the County on behalf of undifferentiated "Plaintiffs." But not every Plaintiff has standing to pursue each claim. For example, Plaintiffs include prominent real estate developers and land owners who do not allege they are indigent and thus cannot pursue claims under California Welfare and Institutions Code ("WIC") section 17000. Named Plaintiffs and representative Alliance members likewise do not allege they needed and were denied mental health and substance abuse services. Thus, they cannot allege any violation of a statutorily-created liberty interest based on the denial of such services. The majority of Plaintiffs' claims suffer from a similar deficiency—at least some of the Plaintiffs simply have not suffered the injury alleged. Plaintiffs cannot rely on their state-law claim for "taxpayer waste" to circumvent Article III standing. *Cantrell v. Cty. of Long Beach*, 241 F.3d 674, 683-84 (9th Cir. 2001).

Plaintiffs also lack standing because their injuries are not constitutionally cognizable, traceable to the County, nor redressable. *See California v. Texas*, 141 S. Ct. 2104, 2113 (2021)

578392 1

EXHIBIT 49 - Page 1971

MILLER BARONDESS, LLP

Matthew Umhofer
September 23, 2022
Page 2

(under Article III, each Plaintiff asserting a claim must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief").

The gravamen of the SAC, like Plaintiffs' prior pleadings, is that there is a significant homelessness crisis and Plaintiffs disagree with the County's efforts to address it. Such "injuries" go well beyond what are "traditionally thought to be capable of resolution through the judicial process." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Plaintiffs raise the quintessential kind of generalized grievance that does not constitute an injury-in-fact sufficient to confer standing.

The links in the causal chain are also far too numerous and speculative to support standing. *See*, *e.g.*, *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26 (1976) (plaintiffs lacked standing to challenge a new IRS rule for tax-exempt status for charitable hospitals where it was speculative that a change in policy would result in greater access to private hospitals). Plaintiffs have failed to allege a nexus between their injuries and the largely unspecified County actions that they challenge. Moreover, to the extent Plaintiffs' injuries are allegedly caused by the growth of the homeless population in Skid Row, there are multitudinous contributions to homelessness that are well recognized and Plaintiffs cannot allege the requisite causal link between their alleged harm and the County's efforts to address homelessness.

Finally, while the County shares Plaintiffs' desire to aid persons experiencing homelessness ("PEH"), the complex, intersectional issues of mental health, substance use, and homelessness are simply not capable of being redressed by a federal court order that dictates County policy and mandates that they spend hundreds of millions of dollars in a specific manner. Separation of powers and the constitutional rights of PEH bar the relief that Plaintiffs seek. As the Ninth Circuit recently held, "it is beyond the power of an Article III court to order, design, supervise, or implement [a] requested remedial plan … [that] would necessarily require a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches." *See Juliana v. United States*, 947 F.3d 1159, 1169 (9th Cir. 2020) (court could not order the adoption of a comprehensive climate-change scheme even though there was "much to recommend" it and it concerned "a matter of national survival").

Plaintiffs' new allegations regarding mental health and substance use services to the SAC do not resolve these issues. At best, these raise yet another issue properly resigned to the legislative and executive branches to resolve.

## II.  **Plaintiffs' Claims Against The County Fail As A Matter Of Law**

### 1.  **Plaintiffs Have Not Stated A §1983 Claim**

Government entities like the County are liable under section 1983 only for "their *own*" constitutional violations. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citation omitted). To

578392 1

**EXHIBIT 49 - Page 1972**

# MILLER BARONDESS, LLP

Matthew Umhofer
September 23, 2022
Page 3

state a § 1983 claim, Plaintiffs must allege that: (1) they were deprived of a constitutional right; (2) a municipal policy; (3) the policy amounts to deliberate indifference to their constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Dougherty v. Cty. of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citation omitted); *accord Monell v. Dep't of Soc. Servs. of Cty. of New York*, 436 U.S. 658, 694 (1978).

Plaintiffs' first §1983 claim is predicated on the purported violation of a statutorily-created liberty interest.

Although a liberty interest may arise from an "expectation or interest created by state laws or policies," *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Mendoza v. Blodgett*, 960 F.2d 1425, 1428 (9th Cir. 1992), state law can create a liberty interest "only if the state law contains '(1) substantive predicates governing official decisionmaking, and (2) explicitly mandatory language specifying the outcome that must be reached if the substantive predicates have been met,'" *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1155 (9th Cir. 2012); *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989). These requirements are stringent. Even the use of words such as "shall" or "will" is insufficient; rather, the "mandatory language [must] expressly require[] the decisionmaker to apply certain substantive predicates…". *Mendoza*, 960 F.2d at 1429; *see also Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993) (use of the word "may" is permissive, not mandatory, and therefore cannot create a liberty interest).

Plaintiffs do not identify any property "rights" to universal housing or comprehensive mental health treatment under state law that are actionable under the Fourteenth Amendment. Rather, WIC gives counties a great deal of discretion in determining how best to meet the medical needs of indigent residents in light of the limited resources available. *Tailfeather v. Bd. of Supervisors*, 48 Cal. App. 4th 1223, 1245-46 (1996). The SAC does not point to any *mandatory* duty. Plaintiffs cannot show the County has not met its minimal obligations by alleging that the County has spent funds, just not in a way Plaintiffs find "meaningful." (SAC ¶ 124.)

Plaintiffs' claim based on the state-created danger doctrine fares no better. (SAC ¶¶ 157-162.) The "state-created danger" doctrine is a narrow exception to the rule that the Constitution "confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests." *DeShaney*, 489 U.S. at 196. To satisfy the state-created danger exception, Plaintiffs must allege (1) "affirmative actions" that "created or exposed [them] to an actual, particularized danger that [they] would not otherwise have faced"; (2) their injuries were "foreseeable"; and (3) deliberate indifference "to the known danger." *Id.*

First, Ninth Circuit decisions recognizing the state-created danger theory have applied it to conduct by individual defendants, not government "policies." *See*, *e.g.*, *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). Moreover, for the state-created danger exception to apply, Plaintiffs must allege that the County took "affirmative actions" that "created or exposed

578392 1

**EXHIBIT 49 - Page 1973**

MILLER BARONDESS, LLP

Matthew Umhofer
September 23, 2022
Page 4

[them] to an actual, particularized danger [they] would not otherwise have faced." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019). Plaintiffs cannot state a claim against the County for any City policy with respect to Skid Row, which is within City limits and under the City's exclusive jurisdiction.

Second, Plaintiffs admit the County has devoted significant effort and resources to the homelessness crisis. (*See* SAC ¶ 10 ("Together the City and County spend over a billion dollars annually providing police, emergency, and support services to those living on the streets.").) And the County's prioritization of permanent housing rather than emergency shelters is not a state-created danger. *See Johnson*, 474 F.3d at 1061 (decision to abandon a more "effective[]" plan did not constitute "affirmative conduct that placed the [plaintiffs] in danger"). Nor do Plaintiffs' allegations of systemic racism satisfy the "affirmative action" required for liability because they do not allege the kind of obvious, immediate, and "particularized danger" to a specific individual that gives rise to a duty of care, or that systemic racism by the County was the proximate cause of their injuries. *Martinez*, 943 F.3d at 1271.

At most, Plaintiffs allege the County's use of taxpayer funds has not adequately addressed the homelessness crisis. But the Supreme Court has rejected this as a viable basis for a due process challenge. *See County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

### 3.     Plaintiffs Have Not Stated A Claim For An Uncompensated Taking

With respect to the uncompensated taking and inverse condemnation claims, the SAC simply substitutes the County in name alone and makes no other amendments demonstrating why this claim now applies to the County. (SAC ¶¶ 163-65.) This alone shows how meritless Plaintiffs' claims are.

Moreover, to state a taking or inverse condemnation claim, a plaintiff must allege both that (1) the plaintiff has a property interest; and (2) the government has taken that property for which compensation is due. *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 1002 (9th Cir. 2007); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212-13 (Fed. Cir. 2005). First, Plaintiffs cannot have a private property interest in public locations and thus the allegations fail on the first prong. *See Air Pegasus*, 424 F.3d at 1217-18 (plaintiff did not have a private property interest in the navigable airspace because it is considered public property). Second, even if Plaintiffs could establish a property interest in public property, Plaintiffs' claims fail because they are not predicated on actions undertaken by the County, but rather third parties. *See*, *e.g.*, *Navajo Nation v. United States*, 631 F.3d 1268, 1274 & 1276 (Fed. Cir. 2011) (rejecting takings claim because there was no credible evidence the federal government directed, or even encouraged, the third parties' conduct. Thus, the disputed conduct of the third parties could not be attributed to the government for a takings claim); *Lingle v. Chevron U.S.A. Inc.*, 544

578392 1

**EXHIBIT 49 - Page 1974**

## MILLER BARONDESS, LLP

Matthew Umhofer
September 23, 2022
Page 5

U.S. 528, 536 (2005) ("The paradigmatic taking requiring just compensation is a direct *government* appropriation … of private property." (emphasis added)).

Even if these elements were met, Plaintiffs' takings claims still fail because their claims lie in tort against the PEH purportedly "invading" their property, not the County, *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2078 (2021), and because the Plaintiffs and LA Alliance members identified in the SAC own property in *City of Los Angeles,* which is outside of the County's jurisdiction, *See Cty. Sanitation Dist. No. 2 v. County of Kern*, 127 Cal. App. 4th 1544, 1612 (2005) (cities "are necessarily outside the jurisdiction and authority of County; County's authority extends only to the unincorporated areas").

### 4.      Plaintiffs' Remaining State Law Claims Fail As A Matter Of Law

Under California law, public entities have absolute immunity unless "otherwise provided by statute." Cal. Gov. Code § 815. The relief Plaintiffs seek does not change the immunity analysis. *See Schooler v. California*, 85 Cal. App. 4th 1004, 1013-14 (2000) (rejecting plaintiff's argument that immunity was unavailable because the complaint sought only injunctive relief). The mandatory injunctive relief Plaintiffs seek would impose financial burdens on the County as real as money damages, and would conflict with the policy behind governmental immunity, which "recognizes that the wisdom of legislative or quasi-legislative action . . . should not be subject to review in tort suits for damages if political responsibility for these decisions is to be retained." Cal. Gov. Code, § 818.2 (Law Revision Commission Comments).

Plaintiffs' state law claims fail for additional reasons:

Mandatory Duty. Counties are not required to cover "all unmet needs" under section 17000, *Hunt v. Superior Court*, 21 Cal. 4th 984, 1014 (1999), only to provide "last resort" financial assistance and "medically necessary care," *County of San Diego v. State*, 15 Cal. 4th 68, 92, 104-05 (1997) (citations omitted). WIC also confers broad discretion on counties to determine the form and structure of relief they provide. *Scates v. Rydingsword*, 229 Cal. App. 3d 1085, 1101 (1991). Nothing in the statutory scheme mandates any particular form of assistance, such as the provision of shelter.

Plaintiffs new citations do not save this claims. The WIC sections cited by Plaintiffs expressly use words and phrases such as "may," "should," or "to the extent resources are available," and therefore do not contain sufficient mandatory language on which to base a claim. *See*, *e.g.*, WIC §§ 5600, *et seq.*; *id.* § 13000, *et seq.*; *id.* § 14000, *et seq.*

Nor have Plaintiffs alleged that an individual Plaintiff sought and was deprived of medically necessary care or general assistance. Thus, Plaintiffs have not alleged they were injured by any failure to comply with section 17000's requirement to provide for support when

578392 1

EXHIBIT 49 - Page 1975

## MILLER BARONDESS, LLP

Matthew Umhofer
September 23, 2022
Page 6

an indigent person is "not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

<u>Nuisance</u>.  Causation is an essential element of public and private nuisance claims.  The SAC alleges that third-party PEH are breaking the law and that their waste, trash, and encampments are harming Plaintiffs' "health and welfare." (SAC ¶ 136.)  But the County did not create the alleged nuisance.  Nuisance liability cannot extend "to damage suffered as a proximate result of the independent intervening acts of others." *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557, 1565 (1990).  And none of the alleged nuisances caused by PEH occurred in the County's jurisdiction; the locations of the alleged nuisances are entirely within the incorporated boundaries of the City.  Moreover, Plaintiffs' theory that PEH are themselves an actionable, area-wide nuisance is baseless.   The Ninth Circuit has repeatedly affirmed that PEH have rights to exist in the streets with their personal property.  *E.g.*, *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1032 (9th Cir. 2012); *Jones v. City of Los Angeles,* 444 F.3d 1118, 1132-37 (9th Cir. 2006), *vacated following settlement by* 505 F.3d 1006 (9th Cir. 2007).

<u>California Code of Civil Procedure § 526a</u>.  A claim "under section 526a will not lie where the challenged governmental conduct is legal." *Coshow v. Cty. of Escondido*, 132 Cal. App. 4th 687, 714 (2005).  The County's expenditures to help PEH is unquestionably legal and Plaintiffs' attempt to obtain sweeping injunctive relief based on their belief that the City and County have "misused and wasted" taxpayer funds on addressing homelessness (SAC ¶ 145) does not work.  Section 526a "should not be applied to principally 'political' issues or issues involving the exercise of the discretion of either the legislative or executive branches of government." *Schmid v. City & County of San Francisco*, 60 Cal. App. 5th 470, 495-96 (2021) (citation omitted); *Chiatello v. City & County of San Francisco*, 189 Cal. App. 4th 472, 483 (2010) (courts should not enjoin every expenditure that does not meet with a taxpayer's approval).

*       *       *

Please let us know your availability to discuss these issues.

Sincerely,

Mira Hashmall

**EXHIBIT 49 - Page 1976**

| From: | Mira Hashmall |
|---|---|
| Sent: | Thursday, April 27, 2023 3:34 PM |
| To: | 'Elizabeth Mitchell'; Skip Miller |
| Cc: | Matthew Umhofer; Ana Lai; Jennifer Lehman; 'Shayla R. Myers'; Carol Sobel (carolsobel@aol.com); Nadia A. Sarkis; Danielle Novelly |
| Subject: | RE: LA Alliance - Rule 26 Meet and Confer |

Hi Liz,

We plan to move forward with our call at 4:30pm today.  We are putting the ex parte papers together for filing tomorrow, Friday, April 28, so it would be helpful to know sooner rather than later whether Plaintiffs intend to oppose our request for ex parte relief set forth in my April 25th email.

Thank you,
Mira

**Mira Hashmall**
MILLER | BARONDESS LLP
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-7560
Fax: 310-552-8400
mhashmall@millerbarondess.com
www.millerbarondess.com
Biography

Please consider the environment – do you really need to print this email?

From: Elizabeth Mitchell <elizabeth@umklaw.com>
Sent: Thursday, April 27, 2023 6:52 AM
To: Mira Hashmall <mhashmall@Millerbarondess.com>; Skip Miller <smiller@Millerbarondess.com>
Cc: Matthew Umhofer <matthew@umklaw.com>; Ana Lai <ALai@counsel.lacounty.gov>; Jennifer Lehman <jlehman@counsel.lacounty.gov>; 'Shayla R. Myers' <SMyers@lafla.org>; Carol Sobel (carolsobel@aol.com) <carolsobel@aol.com>; Nadia A. Sarkis <nsarkis@millerbarondess.com>; Danielle Novelly <dnovelly@millerbarondess.com>
Subject: RE: LA Alliance - Rule 26 Meet and Confer

Hi Mira,

Unfortunately I was in back-to-backs yesterday.  I can talk today at 4:30pm, or we can move it to tomorrow—I'm available 8-9am or 10:30am-12:30pm.  I'll take a look at these cases and let you know where we are at.

Shayla, if you'll be participating and intend to file your own motion to dismiss, can you please send over the bases for your motion and authority supporting those bases so we can meaningfully meet and confer?

1

EXHIBIT 49 - Page 1977

Thanks,
Liz

**From:** Mira Hashmall <mhashmall@Millerbarondess.com>
**Sent:** Wednesday, April 26, 2023 11:08 AM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Skip Miller <smiller@Millerbarondess.com>
**Cc:** Matthew Umhofer <matthew@umklaw.com>; Ana Lai <ALai@counsel.lacounty.gov>; Jennifer Lehman <jlehman@counsel.lacounty.gov>; 'Shayla R. Myers' <SMyers@lafla.org>; Carol Sobel (carolsobel@aol.com) <carolsobel@aol.com>; Nadia A. Sarkis <nsarkis@millerbarondess.com>; Danielle Novelly <dnovelly@millerbarondess.com>
**Subject:** RE: LA Alliance - Rule 26 Meet and Confer

Liz,

I'm in a deposition tomorrow.  I should be done and able to talk between 4:30-5pm.  However, as you know, depositions can be unpredictable.  It would be my preference to talk today if you and Matt can make the time.

Ample authority holds that where, as here, the stipulated dismissal of a case is with prejudice and does not injure the rights of third-party intervenors, voluntary dismissal under Rule 41(a)(2) is mandatory.  *See e.g. Smoot v. Fox*, 340 F.2d 301, 303 (6th Cir. 1964) (granting petition for writ of mandamus, directing district court to grant plaintiff's Rule 41(a)(2) motion for dismissal with prejudice); *Century Mfg. Co., Inc. v. Cent. Transp. Int'l, Inc.*, 209 F.R.D. 647, 648 (D. Mass. 2002) (where parties have moved to dismiss third-party complaint with prejudice under Rule 41(a)(2), "courts have found that they are without discretion, and must grant the motion"); *Bridgeport Music, Inc. v. London Music, U.K.*, 345 F. Supp. 2d 836, 841 (M.D. Tenn. 2004) (abuse of discretion to refuse to grant Rule 41(a)(2) dismissal with prejudice).

No precedent allows a federal district to impose new terms and conditions in the "public interest."  Indeed, cases hold the opposite.  *In re Smith*, 926 F.2d 1027, 1029-30 (11th Cir. 1991) (granting writ of mandamus, directing district court to vacate order disapproving settlement agreement "based on the 'unrepresented interests' of Florida taxpayers"); *see also Gardiner v. A.H. Robins Co., Inc.*, 747 F.2d 1180, 1185-88 (8th Cir. 1984); *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989).

This should be stating the obvious, but a case that is fully settled is also no longer justiciable because there is no case or controversy between the parties.  Under Article III of the Constitution, the federal judiciary is only vested with power to decide "Cases" or "Controversies" through an adversary process.  *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 132-33 (2011) ("Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary").  This is core to the separation of powers doctrine.  "Federal courts do not possess a roving commission to publicly opine on every legal question," nor do they "exercise general legal oversight of the Legislative and Executive Branches, or of private entities."  *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2203 (2021) ("'Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions."); *United States v. Sineneng-Smith*, 140 S.Ct 1575, 1579 (2020) ("our system 'is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief'; courts '"do not, or should not, sally forth each day looking for wrongs to right"').

Plaintiffs signed a binding settlement agreement, and then an addendum that reaffirms the settlement agreement, and submitted them to the Court, along with a stipulated request for dismissal with prejudice.  Having done so, I do not see how Plaintiffs could continue to prosecute any claims against the County.

EXHIBIT 49 - Page 1978

Thank you,
Mira

**Mira Hashmall**

M I L L E R | B A R O N D E S S LLP

2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-7560
Fax: 310-552-8400
mhashmall@millerbarondess.com
www.millerbarondess.com
Biography

🌲 Please consider the environment – do you really need to print this email?

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Tuesday, April 25, 2023 9:29 PM
**To:** Mira Hashmall <mhashmall@Millerbarondess.com>; Skip Miller <smiller@Millerbarondess.com>
**Cc:** Matthew Umhofer <matthew@umklaw.com>; Ana Lai <ALai@counsel.lacounty.gov>; Jennifer Lehman <jlehman@counsel.lacounty.gov>; 'Shayla R. Myers' <SMyers@lafla.org>; Carol Sobel (carolsobel@aol.com) <carolsobel@aol.com>; Nadia A. Sarkis <nsarkis@millerbarondess.com>; Danielle Novelly <dnovelly@millerbarondess.com>
**Subject:** RE: LA Alliance - Rule 26 Meet and Confer

Hi Mira,

We're open Thursday afternoon between 1-5pm to discuss these issues. Can you send me whatever caselaw you have regarding the binding settlement agreement and the district court's lack of authority to deny the parties' stipulation? It would help to evaluate the law before we know what position we'll be taking on the ex parte application and any subsequent appeal.

Thanks,
Liz

**From:** Mira Hashmall <mhashmall@Millerbarondess.com>
**Sent:** Tuesday, April 25, 2023 6:48 PM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Skip Miller <smiller@Millerbarondess.com>
**Cc:** Matthew Umhofer <matthew@umklaw.com>; Ana Lai <ALai@counsel.lacounty.gov>; Jennifer Lehman <jlehman@counsel.lacounty.gov>; 'Shayla R. Myers' <SMyers@lafla.org>; Carol Sobel (carolsobel@aol.com) <carolsobel@aol.com>; Nadia A. Sarkis <nsarkis@millerbarondess.com>; Danielle Novelly <dnovelly@millerbarondess.com>
**Subject:** RE: LA Alliance - Rule 26 Meet and Confer

Hi Liz,

The parties have a binding settlement agreement that resolves this litigation and would bring much-needed additional resources to people experiencing homelessness. Accordingly, this matter should have been voluntarily dismissed to allow the parties to move forward with their agreed-upon plans to expand the County's existing aid and support. In light of Judge Carter's denial of the parties' stipulation, the County intends to file a Motion for Certification of Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b). In conjunction with this motion, the County will file an *Ex Parte* Application

3

**EXHIBIT 49 - Page 1979**

requesting an immediate stay and expedited scheduling of the Certification for Interlocutory Appeal.  In accordance with the C.D. Cal. Local Rules and Judge Carter's Rules, we will provide you with formal notice prior to filing the *Ex Parte* Application.  Please let us know if you will oppose the requested relief.

If Judge Carter denies the *Ex Parte* Application, the County will file its Rule 12 Motion to Dismiss the Second Amended Complaint on or before May 3.  Attached please find the County's meet and confer letter regarding its arguments for dismissal that was sent back in September 2022.  It is the County's position that those defects still persist.  Moreover, because the parties reached a binding settlement, there is no justiciable controversy to be resolved by the Court.  Under Article III of the Constitution, the federal judiciary is only vested with power to decide "Cases" or "Controversies" through an adversary process.  *Arizona Christian School Tuition Organization v. Winn*, 563 U.S. 125, 132-33 (2011) ("Continued adherence to the case-or-controversy requirement of Article III maintains the public's confidence in an unelected but restrained Federal Judiciary").  Please let me know your availability to discuss these issues in accordance with Local Rule 7-3.

Finally, we are not going to engage in a belated Rule 26(f) Conference.  Pursuant to Rule 26(f), the parties should have conferred at least 21 days before the May 9 Scheduling Conference—i.e., on or before April 18.  This would have allowed the parties seven days to prepare the Rule 26(f) Report for filing today.  As you may recall, in 2022, we tried to diligently conduct a Rule 26 conference and commence discovery and you declined to engage with us.  Now, a Rule 26(f) Conference and Report are not appropriate or practicable at this time.  We have an executed settlement agreement and have jointly requested dismissal.  The Court denied the request and set the May 9 scheduling conference, but the pleadings are not closed, and the parties have not conducted a Rule 26 Conference.  Accordingly, these proceedings should not go forward before the County is able to seek appellate review of the Court's denial of the Rule 41 dismissal request.

Please feel free to call me if you have any questions.  I have some meetings tomorrow, but I will move things around to accommodate our meet and confer discussions.

Thank you,
Mira

**Mira Hashmall**
M I L L E R  |  B A R O N D E S S LLP
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067
Main: 310-552-4400
Direct: 310-552-7560
Fax: 310-552-8400
mhashmall@millerbarondess.com
www.millerbarondess.com
Biography

 Please consider the environment – do you really need to print this email?

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Tuesday, April 25, 2023 10:14 AM
**To:** Mira Hashmall <mhashmall@Millerbarondess.com>; Skip Miller <smiller@Millerbarondess.com>
**Cc:** Matthew Umhofer <matthew@umklaw.com>; Ana Lai <ALai@counsel.lacounty.gov>; Jennifer Lehman <jlehman@counsel.lacounty.gov>
**Subject:** LA Alliance - Rule 26 Meet and Confer

Folks:

4

**EXHIBIT 49 - Page 1980**

By our calculation the Rule 26 report is due today, which we clearly cannot meet given that we have not met and conferred nor circulated drafts. I suggest we agree to and file a stipulation noting that we will meet and confer ASAP and will file a Rule 26 report prior to the scheduling conference. Please let me know if you are amenable to this approach and we will send around a draft stipulation and suggest some dates for a meet and confer.

Thanks,
Liz



**ELIZABETH A. MITCHELL**
*Partner*

elizabeth@umklaw.com
Office: (213) 394-7979
www.umklaw.com

Nothing in this communication is intended to convey tax-related advice. This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message. Thank you.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

CAUTION: This email originated from outside of Miller Barondess. Do not click on any links or open any attachments unless you recognize the sender, verified the email address and know the content is safe.

**EXHIBIT 49 - Page 1981**