UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 270
Los Angeles, CA 90021
Telephone: 213-394-7979
Facsimile: 213-529-1027
Email: matthew@umklaw.com
Email: elizabeth@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, *et al.*, <br><br> Defendants. | CASE NO. 2:20-CV-02291-DOC-KES <br><br> Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** <br><br> Hearing: <br> Date: June 5, 2023 <br> Time: 8:30 a.m. <br> Location: Courtroom 10A <br><br> FASC Filed: November 1, 2021 <br> Complaint Filed: March 10, 2020 |

*PLAINTIFFS' OPPOSITION TO THE COUNTY OF LOS ANGELES' MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................... 1

III.   LEGAL STANDARD .................................................................................. 3

    A.   12(b)(1) Standards ............................................................................. 3

    B.   The 12(b)(6) Standard ....................................................................... 3

IV.   PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE COUNTY AND THIS COURT HAS THE POWER TO ORDER THE RELIEF SOUGHT ...................................................................................... 4

    A.   The Rejected Settlement Agreement Did Not Resolve the Dispute ........... 4

    B.   This Court Enjoys Broad Equitable Powers. ............................................. 4

V.   Plaintiffs Have Alleged Sufficient Facts to Support Their Constitutional Claims ....................................................................................................... 8

    A.   Plaintiffs have Properly Alleged a Statutorily-Created  Interest ............... 8

    B.   Plaintiffs have Properly Alleged a State-Created Danger ....................... 12

    C.   Plaintiffs Have Alleged Sufficient Facts to State a Takings Claim .......... 15

VI.   PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW ............................................ 16

    A.   Plaintiffs Have Alleged Sufficient Facts to State a Claim Under The Mandatory Duty Theory .................................................................. 16

    B.   Plaintiffs Have Alleged Sufficient Facts to Support a Taxpayer Waste Claim under California Code of Civil Procedure Section 526a ................ 17

    A.   Statutory Immunity is Inapplicable to Claims for Equitable and Injunctive Relief .............................................................................. 18

    B.   Plaintiffs Have Properly Pled Facts to Support Their Nuisance Claim   19

VII.   CONCLUSION ........................................................................................ 21

## TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................3

*Birke v. Oakwood Worldwide*,
169 Cal. App. 4th 1540 (2009) ............................................................19

*Brass Smith, LLC v. RPI Industries, Inc.*,
827 F. Supp. 2d 377 (2011) ...................................................................4

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021)...................................................................15, 16

*Chiatello v. City & County of San Francisco*,
189 Cal. App. 4th 472 (2010) ..............................................................17

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998)............................................................................8, 9

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) .................................................................8

*Harnett v. Sacramento County*,
195 Cal. 676 (1925)..............................................................................17

*Hernandez v. City of San Jose*,
897 F.3d 1125 (9th Cir. 2018) .......................................................12, 14

*Johnson v. Riverside Healthcare System, LP*,
534 F.3d 1116 (9th Cir. 2008) ...............................................................3

*Kennedy v. City of Ridgefield*,
439 F.3d 1055 (9th Cir. 2006) .............................................................12

*LA Alliance for Human Rights v. County of Los Angeles*,
14 F.4th 947 (9th Cir. 2021) ..................................................................5

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ...............................................................3

*Lindsey v. Normet*,
405 U.S. 56 (1972)................................................................................13

*Los Altos Property Owners Ass'n v. Hutcheon*,
69 Cal. App. 3d 22 (1977) ...................................................................17

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)................................................................................5

*McNutt v. General Motors Acceptance Corp. of Indiana, Inc.*,
298 U.S. 178 (1936)................................................................................3

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

*Morales v. City of Los Angeles*,
214 F.3d 1151 (9th Cir. 2000) ..................................................................................3

*Ocean Advocates v. U.S. Army Corps of Engineers*,
402 F.3d 846 (9th Cir. 2005) ................................................................................6, 7

*Pauluk v. Savage*,
836 F.3d 1117 (9th Cir. 2016) .............................................................................12, 13

*Pierce v. County of Orange*,
Case No. SA CV 01-981, 2004 WL 7340113 (C.D. Cal. June 4, 2004) ...................18

*Santa Cruz Homeless v. Bernal*,
514 F. Supp. 3d 1136 (N.D. Cal. Jan. 20, 2021) ......................................................13

*Sausalito/Marin County Chapter of California Homeless Union v. City of Sausalito*,
522 F. Supp. 3d 648 (N.D. Cal. Mar. 1, 2021) ........................................................13

*Schooler v. State*,
85 Cal. App. 4th 1004 (2000) ..................................................................................18

*Silvas v. E\*Trade Mortgage Corp.*,
514 F.3d 1001 (9th Cir. 2008) ..................................................................................3

*Sinclair v. City of Seattle*,
61 F.4th 674 (9th Cir. 2023) .....................................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)...................................................................................................3

*Tyler v. Cuomo*,
236 F.3d 1124 (9th Cir. 2000) ...............................................................................5, 6

*Wood v. Ostrander*,
879 F.2d 583 (9th Cir. 1989) ...................................................................................12

**STATUTES**

California Civil Code § 3479...............................................................................................19

California Code of Civil Procedure § 526a ...............................................................16, 17

California Government Code § 814..................................................................................17, 18

California Government Code § 815.2 .................................................................................17

California Government Code § 815.6................................................................................16

California Government Code § 820.2.................................................................................17

California Welfare and Institutions Code § 5600................................................................11

California Welfare and Institutions Code § 5600.1..............................................................9

California Welfare and Institutions Code § 5600.3..............................................................9

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

California Welfare and Institutions Code § 5892(a)(5) .......................................................... 11

California Welfare and Institutions Code § 10000 .................................................................. 11

California Welfare and Institutions Code § 13000 .................................................................. 11

California Welfare and Institutions Code § 14000 .................................................................. 11

California Welfare and Institutions Code § 14184.100 ............................................................. 9

California Welfare and Institutions Code § 14184.402 ........................................................... 10

California Welfare and Institutions Code § 17000 ............................................................... 2, 11

**REGULATIONS**

Cal. Code Regs. tit. 9, § 3420 ............................................................................................... 11

Cal. Code Regs. tit. 9, § 3620 ............................................................................................... 11

Cal. Code Regs. tit. 9, § 1810.345 ........................................................................................ 10

Cal. Code Regs. tit. 9, § 1810.247 ........................................................................................ 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

While claiming it lacks resources to address the homelessness crisis, the County expends a considerable amount of time and effort recycling previously rejected arguments about the pleadings in this case.  This misguided motion must be denied, and this case must move forward.

The County's only new argument targets the Due Process claim, which arises out of the County's unconstitutional failure to use available funds to treat the mentally ill homeless population.  By its own admission, the County has insufficient mental health and substance use disorder beds despite a statutory obligation to provide them and a federal reimbursement program that will pay for them, yet it still refuses to build or procure more.  (Section V.A *infra*.)  The County leaves hundreds of millions of dollars in its Mental Health Services Account each year (*Id*.), and last fiscal year misappropriated $289,155,815.25 which by law was designated to treat the unhoused mentally ill population.  (*Id*.)  These facts demonstrate that the County has violated Due Process by failing to do what it is obligated to for those suffering from mental health and substance use challenges.

The County has failed on homelessness and treatment for decades.  Rather than make amends and meet the moment of this crisis, the County has fired off a fusillade of meritless motions and petitions in hopes of derailing this case.  This motion misses the mark by a wide margin and must be denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case is well known to the Court, and a detailed procedural recitation is not necessary.  But because much of Defendant County's argument is repetitive of what has been previously argued and ruled upon, a cursory overview of the substantive orders is called for here.

The County filed a motion to dismiss the first complaint ("MTD") on March 29, 2021 (ECF No. 256) which the Court denied May 11, 2021.  (ECF No. 300.)  Plaintiffs

1

filed a motion for preliminary injunction on April 12, 2021 (ECF No. 265) which the Court granted on April 20, 2021 finding Plaintiffs were likely to succeed on theories at issue in the present motion, such as State-Created Danger, Substantive Due Process, and violation of the County's duty under Welfare and Institutions Code section 17000 (ECF No. 277.)  The City and County immediately appealed.  On September 25, 2021, the ninth circuit vacated this Court's order largely on standing grounds (ECF No. 352) which were quickly addressed in Plaintiffs' First Amended and Supplemental Complaint. ("FASC") (FASC, Nov. 1, 2021, ECF No. 361.)

Defendant City of Los Angeles ("City") and Plaintiffs settled the case on April 1, 2022 (ECF 408); thereafter Plaintiffs filed this Second Amended and Supplemental Complaint ("SASC") focusing exclusively on Defendant County of Los Angeles ("County") which is the target of this motion.  (ECF No. 454.)  On October 10, 2022, the Parties entered into a voluntary settlement agreement, and on October 17, 2022, Plaintiffs filed a joint stipulation and request for an order to dismiss the case with prejudice under Rule 41(a)(2).  (ECF No. 533-1.)  That settlement agreement provided, among other things, "[T]his Agreement shall become effective and operative on the date that the District Court enters an Order dismissing, with prejudice, the Action, subject to the court's continuing enforcement in accordance with Section P of this agreement." (*Id*.)  On April 20, 2023, the Court declined to retain jurisdiction, and accordingly, denied the parties' joint stipulation reinstating the proceedings.  (ECF No. 534.)  Eight days later, the County moved to certify the April 20, 2023 order for interlocutory appeal (ECF No. 544) which this Court denied on May 2, 2023.  (ECF No. 551.)  On May 5, 2023, the County filed its Motion to Dismiss Second Amended and Supplemental Complaint ("MTD SASC") (ECF No. 552) and Intervenors filed a notice of Joinder (ECF No. 556.)

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

## III.   LEGAL STANDARD

### A.   12(b)(1) Standards

To prevail under a 12(b)(1) motion, Plaintiffs need only demonstrate they meet the jurisdictional requirements to be before this Court through competent allegations. *McNutt v. Gen. Motors Acceptance Corp. of Ind., Inc.*, 298 U.S. 178, 189 (1936). When considering a facial attack on subject matter jurisdiction under 12(b)(1), this Court should consider all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor . . . [.]")

### B.   The 12(b)(6) Standard

Complaints need only contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This is not an onerous burden." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008). The Court "must consider the complaint in its entirety," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), accept as true "[a]ll allegations of material fact . . . in the light most favorable to the nonmoving party[,]" *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008), and "draw all reasonable inferences in favor of the non-moving party." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000). Indeed, "[a] complaint must not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Silvas*, 514 F.3d at 1003-04.

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

## IV.   PLAINTIFFS HAVE STANDING TO BRING THIS ACTION AGAINST THE COUNTY AND THIS COURT HAS THE POWER TO ORDER THE RELIEF SOUGHT

### A.   The Rejected Settlement Agreement Did Not Resolve the Dispute.

As this Court has already held, its decision to deny the joint stipulation to dismiss after declining to continue jurisdiction over the proposed settlement agreement "does not materially affect the outcome of the case, as the parties can still stipulate to dismissal without requesting the Court retain jurisdiction." (*See* Order Den. County's Mot. to Certify & App. to Stay at 3, May 2, 2023, ECF No. 551.)  Moreover, "the County expressly agreed that the Settlement Agreement would not become binding unless the Court (i) dismissed the case <u>and</u> (ii) agreed to 'continuing enforcement,'" neither of which the Court did.  (*Id.* at 3; Pls.' Opp'n to County's MTC at 1, Apr. 29, 2023, ECF No. 549.)  "[A] court is under no obligation to retain jurisdiction over a settlement agreement, but may do so if it chooses." *Brass Smith, LLC v. RPI Indus., Inc.*, 827 F. Supp. 2d 377, 381 (2011).  And, without the Court's consent to "continuing enforcement," there is no resolution yet, and thus a live case or controversy still exists.  (*See* Order at 4, ECF No. 551.)  The County's silence on the condition precedent in the Settlement Agreement speaks volumes and operates as a concession that the County has no answer to the problem the condition poses to its argument.  The irony here is that the County insists that the Settlement Agreement is binding but then refuses to be bound by the part of the agreement that conditioned the deal on court approval.  Because the express court-approval condition precedent in the Settlement Agreement was not met, the Settlement Agreement is not binding and cannot be enforced.

### B.   This Court Enjoys Broad Equitable Powers

As has been well established in this case, district courts have broad power to order equitable relief when a constitutional or statutory right has been violated. (*See* Order Den. County's Mot. to Dismiss (Order re County MTD at 5, May 11, 2021, ECF

No. 300 ("[I]f the Court finds an ongoing constitutional violation, it is obligated to impose a remedy.  Budgetary and capacity concerns can be adequately addressed by the Court by giving the party sufficient discretion in how to remedy the violation.".)); *see also LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 961 (9th Cir. 2021) ("The district court undoubtedly has broad equitable power to remedy legal violations that have contributed to the complex problem of homelessness in Los Angeles.").

The County's motion ignores these holdings and instead improperly asks this Court to reconsider its prior rulings concerning its equitable power, despite the absence of any meaningful change in the facts or the law.  Rather than re-hash these issues, Plaintiffs rely upon and incorporate by reference the prior briefing and this Court's orders rejecting the County's contentions.  (*See* Pls.' Resp. to Req. for Br'g, ECF No. 239; Pls.' Prelim. Inj. Mot., ECF No. 265; Pls.' Opp'n to County's MTD, ECF No. 268; Order Granting Prelim. Inj. Mot., ECF No. 277; and Order re County MTD, ECF No. 300.) Plaintiffs' claims are undoubtedly judiciable.

**C.     Plaintiffs Have Article III Standing[1]**

This Court has also already recognized that "there are numerous homeless persons amongst the Plaintiffs, all of whom are members of LA Alliance and are currently experiencing homelessness in and around Skid Row. . . . Plaintiffs therefore have shown that they have suffered injury-in-fact."  (Order re MTD at 3-4, ECF No. 300.)  And the housed Plaintiffs[2] possess Article III standing because they each have alleged that they (1) suffered an "injury in fact" which is (2) "fairly traceable" to

---

[1] Plaintiffs object to Intervenors' joinder in the County's Motion to Dismiss on this basis and all others.  Plaintiffs also object to further participation by the Intervenors LA Catholic Worker and LACAN as parties to this lawsuit.  Intervenors' basis for intervention is moot and they have failed to participate in pleadings prior hereto.  Intervenors are neither defendants nor plaintiffs and should not be permitted to litter this case with unnecessary and inappropriate participation as parties.   Plaintiffs intend to file a motion on this issue separately.

[2] None of the plaintiffs are "real estate developers" as Defendant County continues to allege, but many (not all) do own property in and around Skid Row.

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

actions by the County, and (3) it is "likely" that the injury will be redressed by a favorable decision by this Court. *See Tyler v. Cuomo*, 236 F.3d 1124, 1131-32 (9th Cir. 2000) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

The County's contention that Plaintiffs fail to allege personal injuries due to the County's failure to adequately address the homelessness crisis is easily disregarded from a review of the SASC. For instance, several of the Alliance members and named Plaintiff Wenzial Jarrell are unhoused and in need of mental health and substance use disorder treatment, yet they have not been able to obtain it or were cut-off from it. (SASC ¶¶ 81(b)-(f), (j), 94). Moreover, given the significant link between untreated mental health and substance use disorders and the unhealthy and unsafe conditions on the street, the lack of treatment and services has directly led to all plaintiffs' harms, including, but not limited to nuisance, property damage and loss of business. (SASC ¶¶ 81(g)-(i); 82; 89; 112.) The County argues the injuries suffered by Plaintiffs are not sufficiently connected to the County's conduct. (MTD SASC at 16.) The Court has already addressed this issue as well. (*See* Order re MTD at 4, May 11, 2021 ("Plaintiffs' enumerated actions by the County that cause the number of persons experiencing homelessness to increase or cause the conditions of homelessness to worsen demonstrate a direct and causal link to the asserted injury-in-fact.").)

In *Tyler*, the court found that a group of Plaintiffs suing the City of San Francisco alleged conduct that was "fairly traceable" to the City because the City refused to hold meetings to hear the complaints of the homeowners, despite the possibility that the meetings would lead to no substantive change. 236 F.3d at 1131-32. Importantly, at early stages of litigation, the traceability requirement of standing is a low bar to clear—as one court put it, "the causal connection . . . need not be so airtight at this stage of litigation as to demonstrate that the plaintiffs would succeed on the merits." *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 860 (9th Cir. 2005) (citation omitted) (noting that while other factors may impact a plaintiff's harm, the injury may still be sufficiently traceable and affirming denial of summary

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

judgment on standing grounds). Here, at the early stages of this litigation, and indeed before this litigation has even begun in earnest despite over three years since the commencement thereof, Plaintiffs' allegations easily clear this low bar. Plaintiffs have properly alleged their injuries are traceable to the following County actions (or inactions):

- failure to provide necessary mental health and drug rehabilitation services as statutorily required (SASC ¶¶ 5, 46, 48, 59-61, 63-68, 70, 124-126);

- failure to provide medically necessary care, including basic shelter, as part of its obligation under WIC 17000 (SASC ¶¶ 122-132);

- focus on permanent housing to the exclusion and detriment of critical interim solutions (except for those required by agreements made as part of this case and separately paid for by the state and federal governments) (SASC ¶¶ 59, 158);

- concentration of services which draws and keeps unhoused individuals in the most unsafe and unhealthy location in the country (SASC ¶¶ 28-37);

- waste of Measure H and Mental Health Services Account ("MHSA") funds which are designed to reduce homelessness or directly assist homeless mentally ill individuals (SASC ¶¶ 59-62; 143-148); and

- together with the City, fund and direct LAHSA which is ineffective in several ways, including its failure to move people from emergency and bridge shelters into permanent housing, and failure to support successful solutions when they do not comport with LAHSA's ideological standards. (SASC ¶ 70.)

Each of these actions by the County are either causing the number of persons experiencing homelessness to increase or causing the conditions in which they live to worsen, both of which directly affect each Plaintiff for all the reasons described in the Complaint.

7

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

## V. Plaintiffs Have Alleged Sufficient Facts to Support Their Constitutional Claims

### A. Plaintiffs have Properly Alleged a Statutorily-Created [3] Interest

Fundamentally, Plaintiffs allege that through the statutory scheme created by the State of California and to some extent the Federal Government through Medicare waiver contracts, the state has created an entitlement to certain benefits, including substantive mental healthcare, substance use disorder treatment, and basic shelter to the extent it is "medically necessary." The County has been tasked with delivering those benefits but is wholly failing to do so *and* has failed to provide any process by which impacted individuals may challenge that failure.

The County correctly notes that to succeed under this claim, Plaintiffs must properly allege: "(1) they were deprived of a constitutional right; (2) the County has a municipal policy; (3) the policy amounts to deliberate indifference to their constitutional right; and (4) the policy was the moving force behind the constitutional violation." (MTD SASC at 17 (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).) In arguing that Plaintiffs have failed to state a claim, the County focuses only on elements (1)—arguing there are no state-created rights to shelter, mental health, or substance use disorder treatment (MTD SASC at 19-20)—and (3)— arguing that their actions did not reflect "deliberate indifference" (MTD SASC at 22).[4] Defendant is wrong on both counts.

*First,* addressing the third element, Defendant misapprehends the standard for "deliberate indifference" articulated in *County of Sacramento v. Lewis* which holds that the higher "shocks the conscience" standard is used only in emergency situations

---

[3] In their SASC, Plaintiffs inadvertently referred to a "liberty interest" in the Fifth Cause of Action rather than a "property interest." Regardless, the analysis Defendant County undertakes—whether Plaintiffs have articulated a sufficient state-created interest—is identical. To the extent the Court is unwilling to recognize the scrivener's error as just that, Plaintiffs request an opportunity to amend to correct this error. (SASC ¶¶ 149-153.)

[4] Because Defendant County fails to address elements (2) and (4), those elements are treated as admitted for purposes of this motion. (MTD SASC at 17-20.)

8

such as "high-speed chases with no intent to harm" or "prison officials facing a riot" whereas the lower standard of "deliberate indifference" is used where officials have "the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." 523 U.S. 833, 853 (1998).  Yet regardless of the standard that is used, there can be no doubt that government officials, when faced with state-imposed obligations to provide the very care that is desperately needed by tens of thousands of individuals suffering on the street AND the resources to do so, refuse to provide that care despite "having time to make unhurried judgments," those actions not only demonstrate deliberate indifference but indeed shock the conscience of any reasonable person. (SASC ¶¶ 58-80.)

*Second,* as to the first element and the meat of the argument, the County both fails to recognize the significance of the rights that have been created and either intentionally or carelessly entirely leaves out massive obligations it has due to its participation in the CalAIM/Medicare Waiver program (Cal. Welf. & Inst. Code § 14184.100 *et seq*. ("California Advancing and Innovating Med-Cal Act").

Plaintiffs allege in detail the County's statutory obligations to provide mental health and substance use disorder treatment, including subacute and acute residential treatment, in Paragraphs 124 and 125 of the SASC.  According to California Welfare and Institutions Code section 5600.1, the "mission of California's mental health system **shall be** to enable persons experiencing severe and disabling mental illnesses . . . to access services and programs that assist them to access services and programs that assist them, in a manner tailored to each individual, to better control their illness, to achieve their personal goals, and to develop skills and supports leading to their living the most constructive and satisfying lives possible in the least restrictive available settings." Cal. Welf. & Inst. Code § 5600.1 (emphasis added). Counties have an obligation to use their funds "to the extent resources are available" to treat "[h]omeless persons who are mentally ill." *Id*. § 5600.3(b)(4)(A). (*See* also SASC ¶¶ 59-62, 68,

9

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT

detailing the significant resources the County has available.)  Paragraphs 126-128 also lay out the considerable legal obligations on counties to provide medical care to the poor "at a level which does not lead to unnecessary suffering or endanger life and health" (SASC ¶ 128) which has already been litigated on and ruled on by this court. (*See also* Order on MTD at 9-10, ECF No. 300.)  These statutes alone and taken together create a reasonable expectation of benefits the County has failed to provide.

What the County completely avoids addressing is something that further solidifies that reasonable expectation of benefits: the obligations the County has as a contracting county with the federal government under the CalAIM program referenced in paragraphs 58, 63, 78 and 125.  CalAIM mandates that "a county mental health plan **<u>shall provide</u> covered specialty mental health services**"[5] for beneficiaries who have a "[s]ignificant impairment" in "social, occupational, or other important activities[]" or "[a] reasonable probability of significant deterioration in an important area of life functioning[]" and a diagnosed or suspected "mental health disorder."  Cal. Welf & Inst. Code § 14184.402(c).  "Specialty mental health services" include not only outpatient treatment but various levels of residential treatment, including adult residential treatment services, crisis residential treatment services, psychiatric health facility services, and psychiatric inpatient hospital services.[6]  Not only have Plaintiffs properly alleged that such services are not being provided to them (SASC ¶¶ 81(b)-(f), (j), 94-102)), but the County itself admits that it is failing to provide the necessary residential care.  (SASC ¶¶ 65-66.)

---

[5] Services are "covered" when they are medically necessary.  Cal. Code Regs. tit. 9, § 1810.345(a).

[6] "Specialty mental health services" include "(a) Rehabilitative Mental Health Services, including:(1) Mental health services;(2) Medication support services;(3) Day treatment intensive;(4) Day rehabilitation;(5) Crisis intervention;(6) Crisis stabilization;(7) Adult residential treatment services;(8) Crisis residential treatment services;(9) Psychiatric health facility services;(b) Psychiatric Inpatient Hospital Services;(c) Targeted Case Management;(d) Psychiatrist Services;(e) Psychologist Services;(f) EPSDT Supplemental Specialty Mental Health Services; and(g) Psychiatric Nursing Facility Services." Cal. Code Regs. tit. 9, § 1810.247.

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

The County is also in direct violation of its obligations to provide mental health treatment for homeless individuals under the Mental Health Services Act, as alleged in the Complaint.  (SASC ¶ 68.)  Seventy-six percent of County MHSA funding by law must go towards "Community Services and Supports ('CSS')" (Cal. Welf. & Inst. Code § 5892(a)(5); Cal. Code Regs. tit. 9, § 3420) and the majority of those funds must go towards Full Service Partnerships (FSPs) which are designed to specifically provide treatment, including residential and subacute beds, to people experiencing homelessness with a significant mental illness. Cal. Code Regs. tit. 9, § 3620(c) & 3620.05.   Taken together, this means that at **minimum 51%** of LA County's CSS funds from its MHSA account are required to fund FSPs for persons experiencing homelessness or near thereto.  However, **LA County only uses 25%** of its CSS funds for FSPs—failing to use **$289,155,815.25** for its statutory purpose of providing treatment to mentally ill homelessness individuals.[7]

Taking as a whole (i) the County's obligations under California Welfare & Institutions Codes sections 5600 *et seq.*, 10000, *et seq.*, 13000, *et seq.*, 14000 *et seq.* and 17000, (ii) the County's obligations under the Mental Health Service Act, and (iii) the County's participation in mental health and substance use programs funded by the State of California and the Federal Government, the County has clearly created a reasonable expectation of receipt of benefits for mental health care, including residential treatment across the spectrum, for unhoused individuals with a serious mental illness, such as Robert P.  (SASC ¶ 81(j)) and Wenzial Jarrell (SASC ¶¶ 94-102.)  Because the County has created these reasonable expectations but fulsomely fails to meet them— as properly alleged throughout the SASC— and fails to provide any reasonable process by which an individual may challenge or address that failure,

---

[7] Department of Mental Health Final Adopted Budget Summary for Fiscal Year 2021-2022, https://file.lacounty.gov/SDSInter/dmh/1120140_FY2021-22FinalAdoptedBudgetSummary.pdf. (Incorporated by reference into the Complaint; (*see* SASC ¶ 61).  Alternatively, Plaintiffs request the Court take judicial notice of this publicly available document under Federal Rule of Evidence 201(b).

11

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

the County is liable and must be held accountable. (SASC ¶¶ 63-68, 81(b)-(f), (j), 94-102.)

**B.      Plaintiffs have Properly Alleged a State-Created Danger**

Plaintiffs have properly alleged Defendant County has placed its homeless and housed constituents in danger by adopting and maintaining policies and laws, including:

(i) needlessly centralizing services in the Skid Row area (SASC ¶¶ 28-37);

(ii) failing in its obligation to "relieve and support" the poor (again, most notably in Skid Row) (SASC ¶¶ 63-67);

(iii) failing to provide mental health and SUD treatment as statutorily and contractually required (SASC ¶¶ 5, 46, 48, 59-61, 63-68, 70, 124-126);

(iv) misusing voter-approved sales tax funds (SASC ¶¶ 62-68);

(v) misusing or failing to use MHSA dollars specifically appropriated for mentally ill homeless individuals (SASC ¶ 68); and

(vi) focusing heavily on so-called permanent housing (with little to show for it) to the near exclusion of emergency and interim solutions (SASC ¶¶ 59, 158).
All of this is "exacerbating or causing significant mental and physical decline at such a rate that outpaces the building and provision of such units" (SASC ¶ 158) and has been carried out with deliberate indifference to the health and safety of it's the County's constituents.

The Ninth Circuit has recognized the constitutional right, under the Due Process clause, to be free from state-created danger. *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061-62 (9th Cir. 2006).  When a state or local official acts to place a person in a situation of known danger, with deliberate ignorance towards their person or physical safety, the state violates due process. *Id.*; *see also Hernandez v. City of San Jose*, 897 F.3d 1125, 1137 (9th Cir. 2018) (police officers affirmatively placed political rally attendees in danger by requiring attendees to exit the rally into a crowd of known violent protestors); *Kennedy*, 439 F.3d at 1067 (officer knew an aggressor was violent

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

and told aggressor of the victim's allegations against him after promising the victim to alert her before doing so); *Wood v. Ostrander*, 879 F.2d 583, 590 (9th Cir. 1989) (officer arrested and impounded the car of an intoxicated driver, leaving the passenger alone in the middle of the night in a high crime area where she was later assaulted while trying to get home); *Pauluk v. Savage*, 836 F.3d 1117, 1122 (9th Cir. 2016) ("[S]tate actor can be held liable when that state actor did 'play a part' in the creation of a danger." (citation omitted)).[8]

Courts have also recognized that a municipality's policy that places homeless individuals in danger can violate due process and merit injunctive relief. In *Santa Cruz Homeless v. Bernal*, the court took judicial notice of the COVID-19 pandemic and granted homeless plaintiffs' preliminary injunction to halt the closure of two parks where the plaintiffs were camping. 514 F. Supp. 3d 1136, 1138 (N.D. Cal. Jan. 20, 2021), *order modified*, Case No. 20-cv-09425, 2021 WL 1256888 (N.D. Cal. Apr. 1, 2021). The court held that by closing the parks without an alternate shelter, the State would place residents in a more vulnerable situation and in greater danger. *Santa Cruz Homeless*, 514 F. Supp. 3d at 1142; *see also Sausalito/Marin Cnty. Chapter of Cal. Homeless Union v. City of Sausalito*, 522 F. Supp. 3d 648, 650-51 (N.D. Cal. Mar. 1, 2021), *modified in part*, Case No. 21-cv-01143, 2021 WL 2141323 (N.D. Cal. May 26, 2021) (enjoining enforcement of a resolution to move a camping population to a different location, and from prohibiting all day camping, due to the COVID-19 virus). Here the facts are much more compelling because Defendants' policies have already created incredible danger for those living on the streets and have forced those already living and working in the area to endure horrific conditions. (SASC, *passim*.)

---

[8] Defendants claim "[t]here is no fundamental right to housing[,]" citing *Lindsey v. Normet*, 405 U.S. 56, 74 (1972). (MTD SASC at 18.) But *Lindsey* deals not with the right to housing or right to shelter but "assurance of *adequate* housing" particularly in the context of private property rights and "landlord-tenant relationships." *Lindsey*, 405 U.S. at 74 (emphasis added). Specifically, *Lindsey* held that a tenant who has no other housing available still may not occupy a private apartment owned by another. *Id*. The issue of whether a basic constitutional right to shelter exists separate from private property rights has not been addressed by the Supreme Court.

13

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

The County contends that Plaintiffs did not allege a *particularized* danger specifically directed at a particular plaintiff, a requirement under the state-created danger doctrine, citing *Sinclair v. City of Seattle*, 61 F.4th 674 (9th Cir. 2023).  (MTD SASC at 21.)  But unlike *Sinclair*—where the Court held that Plaintiff's claim failed due to the particularized danger element because the alleged danger was "experienced by all members of the public who chose to visit the CHOP zone," 61 F.4th at 684— Plaintiffs here aren't "choosing" to place themselves in any situation.  The unhoused plaintiffs and members of the Alliance have become homeless (did not "choose" to be so) and are trapped both in homelessness and in the area because of policies instituted and continued by the County in conjunction with other government actors. (SASC ¶¶ 81(b)-(f), (j), 94-102, 158-161.)  Nor did the housed Plaintiffs "choose" to place themselves in any situation because they owned businesses or homes that pre-date the recent explosion of chaos and are now surrounded by  unhealthy, and violent conditions.  (SASC ¶¶ 81(g)-(i), 82-88, 89-93, 103-118.)  Further, the "particularized" danger requirement does not only apply to a danger that a single Plaintiff is exposed to, as the County tends to suggest, but it can also apply to a group of plaintiffs experiencing the same state-created dangers.  *See,* e.g., *Hernandez*, 897 F.3d at 1137 (holding plaintiffs, a group of political rally attendees, sufficiently alleged a due process violation pursuant to the state-created danger doctrine).

Defendant County also argues the state-created danger doctrine cannot apply to government policies, yet none of the cases cited stand for that proposition, and Plaintiffs have found no case that supports it.  (MTD SASC at 21.)

Finally, the County's contention that it could not possibly have caused this crisis because of the billions of dollars it spends proves the point: but for wasteful spending of the billions of dollars that flow through County coffers every year, unhoused Plaintiffs, members of the Alliance, and others would have access to immediate shelter and necessary treatment and thus not be subject to the trauma and danger they experience in the streets daily. (SASC, *passim*.)  It is the very policies of the County

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

that are causing and exacerbating not only unsheltered homelessness but also the massive spike in serious mental illness and substance use disorder on the streets which are themselves caused and exacerbated by unsheltered homelessness.

### C. Plaintiffs Have Alleged Sufficient Facts to State a Takings Claim

Plaintiffs have properly pled that for over 40 years, the County has repeatedly taken actions which concentrate homeless individuals in unsafe areas, particularly in Skid Row. (SASC ¶¶ 28-39.)  The City and County were both complicit in this policy. (*Id.*)  This policy has been implemented without proper procedures for the people affected by it, which unconstitutionally deprives Plaintiffs of their property.  (SASC ¶ 140.)  For example, Joseph Burk cannot find tenants or otherwise use or sell his property due to the extraordinarily dangerous and unhealthy conditions in the Containment area.  (SASC ¶ 56.)  Used needles and fecal matter fill gutters and accumulate on Mark Shinbane's property.  He routinely spends hundreds of thousands of dollars a year attempting to keep some semblance of sanitation only for the waste to invariably return.  (SASC ¶ 81(g).)  Harry Tashdjian has been forced to routinely repair parts of his building which are affected by out-of-control fires, urination and feces, and frequent graffiti.  (SASC ¶ 57.)  Forcing residents to pay for basic municipal services, after depreciating their property values through City and County policy of containment, is economically equivalent to exacting a taking upon these residents without due process and without just compensation.  Even if Plaintiffs' claims did not involve fundamental rights—which they do—the County cannot justify any "rational basis" for these policies considering the clear harm being inflicted on Plaintiffs daily.

The County argues that a Taking cannot lie based on third party actions, but the Supreme Court begs to differ.  In *Cedar Point Nursery v. Hassid*, the Supreme Court confirmed that regulatory action by the government which permits third party intrusion can be considered a "taking" under the Fifth Amendment.  141 S. Ct. 2063, 2079-80 (2021) ("The access regulation grants labor organizations a right to invade the growers' property.  It therefore constitutes a *per se* physical taking.").  While *Cedar*

15

*Point Nursery* discussed a physical invasion of property, it also reviewed the history of the Court's recognition of a "regulatory taking" which "applies to use restrictions as varied as zoning ordinances, [ ] orders barring the mining of gold, [ ] and regulations prohibiting the sale of eagle feathers." *Id*. at 2072 (citations omitted).  To determine whether government action that does not physically invade the property nonetheless constitutes a taking, courts "balanc[e] factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id*.  The question is whether the government has "restricted a property owner's ability to use his own property." *Id*. at 2072.  Here, Plaintiffs have properly alleged significant impact of the practices and policies of the County, substantial interference with investment-backed expectations, and unreasonable government action. (SASC, *passim*; *see also* SASC ¶¶ 82-93.)  Further, it is inconsequential whether Plaintiffs own property within the County's jurisdiction or the City's jurisdiction because the County's practices and policies amounted to a Taking by the County regardless of where it is located.

## VI. PLAINTIFFS HAVE ALLEGED SUFFICIENT FACTS TO SUPPORT THEIR CLAIMS UNDER CALIFORNIA LAW

### A. Plaintiffs Have Alleged Sufficient Facts to State a Claim Under The Mandatory Duty Theory

For all the reasons discussed in Part V.1 *supra* (re Statutorily- Created Interest) Plaintiffs have more than alleged sufficient facts to support their claim that the County is in violation of California Government Code section 815.6 by failing to provide statutorily-imposed, medically necessary care to unhoused individuals in Los Angeles. (SASC ¶¶ 59-70; 144-147; *see also* Pls.' Opp'n to County MTD at 14-16, ECF No. 268; and Order re County MTD at 9-11, ECF No. 300.)

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

**B.    Plaintiffs Have Alleged Sufficient Facts to Support a Taxpayer Waste Claim under California Code of Civil Procedure Section 526a**

Contrary to the County's argument, Plaintiffs need not demonstrate an expenditure is "illegal" to constitute a claim under section 526a; "waste" may also be shown where the government conduct is:

> "[A] useless expenditure of public funds" that is incapable of achieving the ostensible goal. [ ] Certainly it reaches outright fraud, corruption, or collusion. [ ] Even when "done in the exercise of a lawful power," public spending may qualify as waste if it is "completely unnecessary" or "useless" or "provides no public benefit." [ ] Waste is money that is squandered, or money that is left uncollected, and thus is a constitutionally prohibited gift of public resources. [ ] Waste can exist even when there is no net loss, as when "illegal procedures actually permit a saving of tax funds."

*Chiatello v. City & County of San Francisco*, 189 Cal. App. 4th 472, 482 (2010) (emphasis added) (citations omitted), *review denied* (Jan. 26, 2011).

For example, in *Los Altos Property Owners Ass'n v. Hutcheon*, plaintiffs' allegations were sufficient to support a finding of waste under section 526a where they alleged defendant school district "will be expending public funds on a consolidation plan that costs a great deal more than alternative plans considered, without a finding of any additional public benefit." 69 Cal. App. 3d 22, 30 (1977). Similarly in *Harnett v. Sacramento County*, the California Supreme Court found that holding an election which could not achieve the stated goal would be a "useless expenditure and waste of public funds." 195 Cal. 676, 682-83 (1925). Likewise, Plaintiffs have properly alleged that taxpayer funds have been misused in a way that makes it impossible for Measure H and the Mental Health Services Act to achieve the ostensible goal for which it was passed. (SASC ¶¶ 59-67.)

17

## A.    Statutory Immunity is Inapplicable to Claims for Equitable and Injunctive Relief

California Government Code section 814, which governs all claims for immunities under Title 1, Division 3.6, Part 2, Chapter 1 (inclusive of Government Code sections 815.2 and 820.2, cited by Defendant County), states: "Nothing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee." Cal. Gov't Code § 814 (emphasis added); *see also* Cal. Gov't Code § 814, Legislative Committee Comments—Senate ("The various provisions of this part determine only whether a public entity or public employee is liable for money or damages . . . .  This section also declares that the provisions of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief other than money or damages.") (emphasis added.); *Schooler v. State*, 85 Cal. App. 4th 1004, 1013 (2000) ("[U]nder section 814, Government Code immunities extend only to tort actions that seek money damages.").  (*See also* Order on MTD at 11, ECF No. 300 ("[D]iscretionary immunity is inapplicable to claims seeking only equitable and injunctive relief[.]").)

Plaintiffs seek only equitable and injunctive relief for their California Tort causes of action (*see* SASC, Prayer for Relief No. 2 ("As to the federal claims and claims under the California constitution only, compensatory damages and other special, general and consequential damages according to proof[.]").  Defendant County's argument that the injunctive relief sought by Plaintiffs would "impose financial burdens" on the County and therefore immunity is still applicable under *Schooler* fails because Plaintiffs are not seeking to impose additional financial burdens the County would not already have, had it properly fulfilled its constitutional and statutory obligations.  *See Pierce v. County of Orange*, Case No. SA CV 01-981, 2004 WL 7340113, at *2 (C.D. Cal. June 4, 2004)

18

Unlike Schooler where the plaintiff sought to use equitable and injunctive relief to impose a duty to maintain a property the state did not otherwise have a duty to maintain, Plaintiffs here seek to enforce compliance with mandatory state jail regulations, the California Disabled Persons Act, and the due process and equal protection clause of the California Constitution. Plaintiffs are not seeking to expose the County to financial burdens it would not otherwise have incurred, as Defendant is already under the duty to comply with these laws.

In fact, one of the central points of the complaint is the extraordinary amounts of money that the County has expended allegedly to end homelessness, when a fraction of those funds could mitigate this crisis directly by providing shelter, treatment, and services for every unhoused individual in the streets of Los Angeles.  (SASC ¶¶ 18-21; 59-70.)  Plaintiffs seek to compel the County to use only existing funds, not impose additional financial burdens.

**B.      Plaintiffs Have Properly Pled Facts to Support Their Nuisance Claim**

California has defined nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of . . . any public park, square, street, or highway[.]"  Cal. Civ. Code § 3479.  The County argues only that it did not cause the nuisance (MTD SASC at 26-27.)  Yet the "substantial factor" test for a nuisance may also be met by a *failure to act* when the defendant has a duty to take a positive action to prevent or abate the interference.  *See Birke v. Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1552-53 (2009) (finding that as the plaintiff's landlord, defendant had "a duty to maintain its premises in a reasonably safe condition.").

The County's actions as described herein and throughout the SASC have led to a massive mental health and drug addiction crisis and otherwise failed to act which has

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

directly caused the streets to become an open-air asylum where drug addicts languish and those in mental health crisis openly suffer.  This has caused the buildup of unhealthy encampments, caused an explosion in violence and crime, and interferes with Plaintiffs' comfortable enjoyment of life or property including (1) increased health risks; (2) a reduction in property value in the Designated Areas; (3) increased insurance costs due to the fire risks associated with encampments; (4) additional cleanup costs associated with the encampments, and (5) significant health and safety risks.  (SASC, *passim*.)

To be clear, Plaintiffs do not allege "[persons experiencing homelessness] are themselves an actionable, area-wide nuisance[,]" and in fact several unhoused individuals are members of the Alliance. (MTD SASC at 27.)  Rather, the Complaint lays the blame squarely at the County's feet for causing and exacerbating this crisis.  When large numbers of people are forced to live on the street without basic access to hygiene and sanitary facilities like bathrooms and kitchens, and without the necessary treatment they are entitled to, it is no surprise that a massive crisis ensues on those streets that directly effects both the unhoused and the housed.  Contrary to Defendants' representations, the Ninth Circuit has not "repeatedly affirmed" that homeless individuals "have rights to exist in the streets with their personal property" (MTD SASC at 27), but merely that when they have nowhere else to go—because their local government has failed them—sleeping and maintaining property in public spaces is the inevitable result.

This case is not about the rights of those experiencing homelessness to live as they choose.  It is about the County's violation of their rights—and the rights of others— over the course of four decades of pointless policies, profligate spending, and deplorable results.  The complaint in this case states clear claims arising out of the County's unconstitutional failure to do what is it is obligated to do for all the citizens of the County: to provide basic mental health and substance use services to those most in need of it.  Because the complaint states valid claims, the motion must be denied.

20

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court DENY Defendant County of Los Angeles' Motion to Dismiss Second Amended Complaint in its entirety.

Dated: May 15, 2023                    /s/ Elizabeth A. Mitchell
                                       UMHOFER, MITCHELL & KING LLP
                                       Matthew Donald Umhofer
                                       Elizabeth A. Mitchell

                                       *Attorneys for Plaintiffs*

*PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED AND SUPPLEMENTAL COMPLAINT*