UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                    Date: June 29, 2023

Title: LA ALLIANCE FOR HUMAN RIGHTS, et al., v. CITY OF LOS ANGELES, et al.

---

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

---

**PROCEEDINGS (IN CHAMBERS):**    **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [552]**

Before the Court is a Motion to Dismiss ("Motion" or "Mot.") (Dkt. 552) brought by Defendant County of Los Angeles ("Defendant" or "County"). The Court heard oral arguments on June 6, 2023. Having reviewed the moving papers submitted by the parties and heard the parties' arguments, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.

### I. Background

#### A. Facts

The Court adopts the facts as laid out in its previous order denying the County's Motion to Dismiss. ("First Order") (Dkt. 300). Plaintiffs are members of a broad coalition of Los Angeles residents that include a number of persons experiencing homelessness in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                  Date: June 29, 2023

Page 2

Los Angeles. Second Amended and Supplemental Complaint ("SAC") (Dkt. 454) ¶¶ 1, 81. Specifically, Plaintiffs assert that they "are current and formerly unhoused individuals, residents, community members, businesses, non-profit, and service providers all coming together to fight against what has become the accepted standard of death and despair in Los Angeles." Dkt. 265-2.

Currently, five to six homeless individuals die each day on the streets of Los Angeles. SAC ¶ 4. In 2020, a point-in-time count "showed 66,436 persons experiencing homelessness in Los Angeles County," a figure that has increased "by approximately 60% since 2013, with the number of unsheltered homeless doubling." *Id.* The mortality rates for the unhoused have grown even faster. *Id.* Plaintiffs allege, "the mentally ill and addicted visibly suffer in intersections, parks, and sidewalks. Without medical supervision or treatment, the most severely affected cannot hold jobs or housing, and are left to wander and fend for themselves in a horrific cycle of degradation." *Id.* ¶ 5.

The County allegedly caused a "lethal under-funding of emergency and interim shelter solutions which has in turn left thousands to decline and die on the streets without support from County services." SAC ¶ 6. According to Plaintiffs, "[t]he City and County combined spend over a billion dollars annually providing police, emergency, and support services to those living on the streets. And still, the tragedy unfolds." SAC ¶ 10. "The County has squandered massive amounts of homelessness-related funds, using its substantial revenue from Measure H and state and federal funds together to fund homeless-relief projects which have no chance of achieving the goal for which they are intended." *Id.* ¶ 59.

Plaintiffs bring constitutional claims under 42 U.S.C. § 1983 as well as claims under California state law, including both statutory and tort claims. *See* SAC.

### B. Procedural History

On March 10, 2020, Plaintiff LA Alliance for Human Rights et al. ("Plaintiff" or "LA Alliance") filed their complaint (Dkt. 1). In the ensuing years, the Court conducted numerous hearings in which it heard evidence regarding the City and County of Los Angeles' action and inaction as it pertains to the homelessness crisis. On July 15, 2022, LA Alliance filed a Second Amended and Supplemental Complaint. ("SAC") (Dkt. 454).

On May 3, 2023, the County of Los Angeles filed the instant Motion to Dismiss ("Motion" or "Mot.") (Dkt. 552). On May 15, 2023, Plaintiffs filed an opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. LA CV 20-02291-DOC-KES | Date: June 29, 2023 |

Page 3

("Opposition" or "Opp'n") (Dkt. 567). Defendant County replied on May 22, 2023 ("Reply") (Dkt. 569).

## II.   Legal Standard

Dismissal under Rule 12(b)(1) is proper if the Court lacks subject matter jurisdiction to adjudicate claims asserted in a plaintiff's complaint. Fed. R. Civ. P. 12(b)(1). To satisfy the "'irreducible constitutional minimum' of standing," the party invoking federal jurisdiction must demonstrate that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). A motion to dismiss under a Rule 12(b)(1) challenge to subject matter jurisdiction may be facial or factual. "A facial attack accepts the truth of the plaintiff's allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## III.   Discussion

The County argues that (1) Plaintiffs' claims are not justiciable as there is no case or controversy, and because Plaintiffs lacks standing; (2) Plaintiffs' federal Section 1983 claims fail to state a claim; and (3) Plaintiffs' state law claims fail to state a claim.

### A.  Plaintiffs' Claims are Justiciable

#### 1.        There is a live case or controversy

The County asserts first that there is no case or controversy due to a proposed settlement agreement between the County and Plaintiffs. Mot. at 13–15. As stated in prior orders, the Court found the proposed settlement agreement inadequate and lacking in accountability. As such, the Court denied jurisdiction over the proposed settlement agreement and found that no settlement agreement had been reached. *See* Order Denying Certificate of Appealability; Supplemental Order (Dkts. 551, 588).

Further, Plaintiffs deny the existence of a settlement agreement, and continue to litigate the instant matter. *Id.*; *see also* Opp'n at 4. (stating "the County expressly agreed that the Settlement Agreement would not become binding unless the Court (i) dismissed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                                                 Date: June 29, 2023

Page 4

the case and (ii) agreed to continuing enforcement, neither of which the Court did.") (internal quotation marks omitted).

### 2.  Plaintiffs Have Established Standing

The County asserts that Plaintiffs lack standing because (1) not every Plaintiff has standing to pursue each claim; (2) Plaintiffs' alleged injuries are not traceable to the County, and (3) Plaintiffs' injuries are not redressable. Mot. at 14–16.

#### a.  Standing for Each Plaintiff

Defendant argues that "not every Plaintiff has standing to pursue each claim," because Plaintiffs include both persons experiencing homelessness and property owners. Mot. at 15. Plaintiffs Shinbane, Bastian, Rich, Burk, Frem, Pinsky, and Tashdjian (the "Property-Owner Plaintiffs") are mostly property owners in Skid Row. The County continues that the Property-Owner Plaintiffs cannot allege injuries under § 17000, which provides a cause of action for the poor and indigent.

The Court agrees that the Property-Owner Plaintiffs do not have standing to pursue claims under § 17000. To the extent Property-Owner Plaintiffs pursue claims for violation of mandatory duty under § 17000, those claims are DISMISSED WITH PREJUDICE. The remaining indigent Plaintiffs have standing for their claim under § 17000. The Property-Owner Plaintiffs' remaining claims are examined separately below.

Defendant also argues that persons experiencing homelessness cannot have standing to pursue the nuisance claims. However, those claims are properly brought by "Plaintiffs who own or rent property." SAC ¶ 136.

As to the remaining claims, the Court finds that Plaintiffs have adequately alleged standing, as explained in the following sections.

#### b.  Plaintiffs' Alleged Injuries are Traceable

A causal connection between the injury and the conduct complained of requires that the injury be "'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 41–42 (1976)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                              Date: June 29, 2023

Page 5

Defendant contends that "[n]o Plaintiff or representative members reside in unincorporated parts of Los Angeles County, which the County's authority is limited to . . . To the extent Plaintiffs' injuries are due to increased PEH in Skid Row, it is beyond dispute that countless factors lead to homelessness. Plaintiffs cannot link their alleged harm and the County's substantial efforts to combat homelessness." Mot. at 16.

Plaintiffs respond that their injuries are traceable to a variety of the County's actions or inactions, including failure to provide necessary mental health and drug rehabilitation services or care; concentrating services "which draws and keeps unhoused individuals in the most unsafe and unhealthy location in the county; or wasting or misusing funds designed to reduce homelessness or directly assist homeless mentally ill individuals. *See* Opp'n. at 6-7. Plaintiffs allege that the County has a "statutory obligation to properly administer and provide mental and healthcare services" to all citizens of Los Angeles County, including those within incorporated parts of Los Angeles County. SAC ¶ 63.

While other factors contribute to the asserted injury, here the link between the County's actions and homelessness "is not tenuous or abstract." *Ocean Advocs. v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005). The County's alleged actions or inactions that cause the number of persons experiencing homelessness to increase or cause the conditions of homelessness to worsen demonstrate a direct and causal link to the asserted injury-in-fact. Accordingly, Plaintiffs have sufficiently alleged causality between their injuries and the County's conduct.

### c. Plaintiff's Alleged Injuries are Redressable

Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

Defendant argues that redressability is unattainable here because "[t]he Court's Article III power does not permit intervention into legislative prerogatives about how to spend limited resources to serve the public." Mot. at 16. Plaintiffs respond that "district courts have broad power to order equitable relief when a constitutional or statutory right has been violated." Opp'n. at 4-5 (citing *LA All. for Human Rights v. County of Los Angeles*, 14 F.4th 947, 961 (9th Cir. 2021) ("The district court undoubtedly has broad

Case 2:20-cv-02291-DOC-KES   Document 593   Filed 06/29/23   Page 6 of 14   Page ID #:18713

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                                                Date: June 29, 2023

Page 6

equitable power to remedy legal violations that have contributed to the complex problem of homelessness in Los Angeles.")

"[T]he law and the Constitution demand recognition of certain [] rights . . . If government fails to fulfill [its] obligation, the courts have a responsibility to remedy the resulting [] violation." *Brown v. Plata*, 563 U.S. 493, 510-11 (2011); *see also Swann v. Charlotte-Mecklenburg Bd. Of Educ.*, 402 U.S. 1, 15 (1971) (when considering the affirmative acts of a government body "[o]nce a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies"); *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("In shaping equity decrees, the trial court is vested with broad discretionary power"). Accordingly, if the Court finds an ongoing constitutional violation, it is obligated to impose a remedy. Budgetary and capacity concerns can be adequately addressed by the Court by giving the party sufficient discretion in how to remedy the violation.

Therefore, Plaintiffs have shown that their injuries are likely to be redressed by a favorable judicial decision and have carried their burden of establishing standing at this stage of the litigation.

### B. Constitutional Claims Under 42 U.S.C. § 1983

#### 1. Plaintiffs Properly Allege a Constitutional Violation

Defendant argues that Plaintiffs have not met their burden to state a plausible claim based on substantive due process because "[t]he Constitution does not confer a fundamental right to housing . . . nor any governmental aid." Mot. at 18. (citation omitted).

The Court finds that Plaintiffs have brought a plausible substantive due process claim. The Fourteenth Amendment provides, in relevant part, that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause guarantees not only procedural protections, but also substantive rights, thereby "barring certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process accordingly "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or

Case 2:20-cv-02291-DOC-KES Document 593 Filed 06/29/23 Page 7 of 14 Page ID #:18714

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                                Date: June 29, 2023

Page 7

'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 870 (9th Cir. 1988) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). The "shocks the conscience" standard is not subject to a rigid list of established elements. *See County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998 ("Rules of due process are not . . . subject to mechanical application in unfamiliar territory.") On the contrary, "an investigation into substantive due process involves an appraisal of the totality of the circumstances rather than a formalistic examination of fixed elements." *Squadrito,* 152 F.3d 564, 570 (7th Cir. 1998).

As to whether substantive due process applies to the particular circumstances alleged, the "threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n. 8. The "touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), and the "exercise of power without any reasonable justification in the service of a legitimate governmental objective," *Lewis*, 523, U.S. at 846. The due process guarantee bars governmental conduct that violates the "decencies of civilized conduct," *Rochin v. California*, 342 U.S. 165, 173 (1952) interferes with rights "'implicit in the concept of ordered liberty[,]'" *id*. at 169, 72 S.Ct. 205 (quoting *Palko v. State of Conn.*, 302 U.S. 319, 325 (1937)), or is so "'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency[.]" *Breithaumpt v. Abram*, 352 U.S. 432, 435 (1957). Accordingly, substantive due process protects against government power arbitrarily and oppressively exercised. *Daniels*, 474 U.S. at 331.

Here, the question is whether the conduct attributed to the County violates unhoused families' substantive due process right to family integrity. It has long been settled that the liberty interest identified in the Fifth Amendment provides a right to family integrity or to familial association. *See* U.S. Const. amend. V (stating no person shall "be deprived of life, liberty, or property, without due process of law."); *Quilloin v. Walcott*, 434 U.S. 246, 255, (1978) (stating "the relationship between parent and child is constitutionally protected."). Indeed, "[t]he liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by" the Court. *Troxel v. Granville*, 530 U.S. 57, 65, (2000); *see also Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079

Case 2:20-cv-02291-DOC-KES   Document 593   Filed 06/29/23   Page 8 of 14   Page ID #:18715

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                              Date: June 29, 2023

Page 8

(9th Cir. 2011) ("The substantive due process right to family integrity or to familial association is well established.").

The County's discriminatory conduct has threatened the family integrity of the Black unhoused. A disproportionate number of Black unhoused families directly stems from decades of systemic racism intended to segregate and disenfranchise the Black community. These allegations sufficiently describe government conduct that arbitrarily threatens the family integrity of the Black unhoused and represents the "exercise of power without any reasonable justification in the service of an otherwise legitimate governmental objective[.]" *Lewis*, 523 U.S. at 846, 118 S.Ct. 1708; *see also* SAC ¶¶ 47-59. Such conduct, if true, as assumed to be on the present motion, fails to comport with traditional notions of fair play and decency.

### 2.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution proscribes state action that discriminates against a suspect class. The Supreme Court has instructed lower courts to examine state action on a case-by-case basis, "sifting facts and weighing circumstances [so that] the nonobvious involvement of the State…[can] be attributed its true significance." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961). The Supreme Court has held that "a State *does not discharge its constitutional obligations* until it eradicates policies and practices traceable to its prior *de jure* dual system that continue to foster segregation." *United States v. Fordice*, 505 U.S. 717, 727–28 (1992) (emphasis added). Defendants argue that "Plaintiffs cannot show that the County discriminated against anyone." Mot. at 25. By contrast, as just one example of the County's significant role in creating and perpetuating systemic racism, the County has recently undertaken efforts to return previously seized land to the descendants of Black property owners in Manhattan Beach. Dkt. 277 at 20. Los Angeles County Supervisor Janice Hahn recently stated: "There's no doubt that this was such an injustice that was inflicted — not just on [former Manhattan Beach property owners] Charles and Willa Bruce, but generations of their descendants who almost certainly would be millionaires had they been allowed to keep that beachfront property." Dkt. 277 at 20. Beyond this admission, Plaintiffs allege the County's persistent inaction and inertia as it pertains to developing sustainable solutions to the homelessness crisis in the face of a disparate impact on Black homeless individuals further evinces an Equal

Case 2:20-cv-02291-DOC-KES   Document 593   Filed 06/29/23   Page 9 of 14   Page ID #:18716

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                                      Date: June 29, 2023

Page 9

Protection Violation. *See* Dkt. 277 at 76–79. The Court has previously noted that the County's own Los Angeles Homeless Services Authority ("LAHSA") reported in December of 2018 that: "The impact of institutional and structural racism in education, criminal justice, housing, employment health care, and access to opportunities cannot be denied: homelessness is a by-product of racism in America." *See* Dkt. 277 at 3-4;

The Court therefore DENIES the County's motion as to Plaintiffs' Equal Protection claim.

### 3.      State-Created Danger Doctrine

While "the Fourteenth Amendment…generally does not confer any affirmative right to governmental aid," *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989*); Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011), the Supreme Court in *DeShaney* created an exception that imposes a duty to act when the government has created the dangerous conditions. *DeShaney*, 489 U.S. at 198–202. The Ninth Circuit has held that a state has a duty to act "when the state affirmatively places the plaintiff in danger by acting with 'deliberate indifference' to a 'known or obvious danger.'" *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir. 1996) (internal citation omitted).

Defendant contends that Plaintiffs "do not allege that the County created a particularized danger specifically directed at any particular plaintiff," nor an "affirmative act" by the County. Mot. at 21.

In contrast to Defendant's assertion, Plaintiffs' complaint specifically notes that the County's actions are "exacerbating or causing significant mental and physical decline at such a rate that outpaces the building and provision of such units." SAC ¶ 158 (emphasis added). Plaintiffs' allegations include that the County failed in its obligation to relieve and support the poor, failed to provide adequate mental health services, and misused funds throughout the County. SAC ¶¶ 28-70, 124-126.

Considering the extensive allegations that Defendant has mismanaged Los Angeles' homelessness crisis and created a system plagued by unaccountability and systemic racism that has led to disproportionate danger for communities of color, the Court cannot accept Defendant's argument that the County has not played a significant role in creating this crisis. Therefore, Defendant's motion to dismiss Plaintiffs' claim based on the state-created danger doctrine is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES　　　　　　　　　　　　　　　　　　　　　Date: June 29, 2023

Page 10

### 4. Takings Claim (Unlawful Policy, Custom, or Practice)

Defendant asserts that Plaintiffs cannot sufficiently allege that Plaintiffs have a property interest, nor that Defendant has taken that property for which compensation is due. Mot at. 23. Defendant argues that Plaintiffs cannot have a private property interest in public locations, such as sidewalks, beaches and under overpasses. *Id.*

Plaintiffs argue that the City and County's actions "concentrating homeless individuals in unsafe areas" have directly caused injury to Plaintiff's private property. Opp'n at 15. For example, due to dangerous and unhealthy conditions, members of Plaintiffs cannot lease or sell their properties and spend hundreds of thousands on sanitation or repair from excrement, needles, graffiti, or uncontrollable fires. *Id.*; SAC ¶ 56-57, 81.

The County goes on to argue that any injury is caused by third parties, the people experiencing homelessness, rather than direct action by the County. In *Cedar Point Nursery v. Hassid*, the Supreme Court confirmed that regulatory action by the government which permits third party intrusion can be considered a "taking" under the Fifth Amendment. 141 S. Ct. 2063, 2079-80 (2021) ("The access regulation grants labor organizations a right to invade the growers' property. It therefore constitutes a per se physical taking."). To determine whether government action that does not physically invade the property nonetheless constitutes a taking, courts "balanc[e] factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." *Id.* at 2072. Here, the Court finds that Plaintiffs have plausibly alleged that the County's actions have "restricted a property owner's ability to use his own property." *Id.*

Therefore, Defendant's motion to dismiss Plaintiffs' takings claims is DENIED.

### C. State Law Claims

### 1. Cal. Welf. & Inst. Code § 17000

The California Welfare and Institutions Code provides as follows:

> Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not

> supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions.

Cal. Welf. & Inst. Code § 17000 (West 2020). This provision is intended "to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed." *Id.* § 10000. Such aid and services shall be "provided promptly and humanely, with due regard for the preservation of family life," and on a non-discriminatory basis. *Id.* Courts have interpreted § 17000 as imposing requirements to both provide "general assistance" and "subsistence medical care to the indigent." *Hunt v. Super. Ct.*, 21 Cal 4th 984, 1011–13 (1999).

Defendant's primary argument is that § 17000 or other provisions do not "give rise to a mandatory duty for the County." Mot. at 25. Defendant argues that § 17000 "does not require counties to cover all unmet needs, only to provide last resort financial assistance and medically necessary care." *Id.* (citations omitted). However, giving the County discretion over the "type and form" of services it provides does not mean the County has discretion over whether or not to carry out its duties under § 17000. While the Court agrees with the County's assertion that Defendants have discretion over how they discharge their duties under § 17000, the Court disagrees that § 17000 does not impose a mandatory duty for the County to act and care for its indigent constituents. Accordingly, the County's motion to dismiss Plaintiffs' claim under § 17000 is DENIED.

### 2.      Nuisance

Defendant argues that Plaintiffs fail to state a claim for nuisance, public or private, because "the County did not create the alleged nuisance – the waste, disease, fires or crime." Mot. at 27. The County further states that people experiencing homelessness themselves cannot be an actionable, area-wide nuisance under Ninth Circuit precedence. *Id.*

Plaintiff responds that the County's alleged actions have "led to a massive mental health and drug addiction crisis" causing increased health risks, lowered property values, increased insurance costs, cleanup costs, and significant safety risks. Opp'n. at 20. Plaintiffs argue that they do not allege persons experiencing homelessness themselves are a nuisance. *Id.* Instead, Plaintiffs argue the County's failure to provide access to hygiene and sanitary facilities create the nuisance.

Defendant cites *Pac. Bell* for the proposition that nuisance liability cannot extend "to damage suffered as a proximate result of the independent intervening acts of others." *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557, 1565 (1990). In *Pac. Bell*, the court found

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES	Date: June 29, 2023

Page 12

that a telephone company was not liable for an assault committed by third parties that were "attracted to" the company's telephone booths. *Id.* at 1560. The court observed that there was "[n]o special relationship" between the telephone company and the assailants. *Id.* at 1567.

Here, the County allegedly has the responsibility for both creating the conditions causing these alleged injuries, and for perpetuating and facilitating them. Unlike the telephone company in *Pac. Bell*, the County may have a special relationship to persons experiencing homelessness — "[t]he County has the obligation to provide for indigent and low-income mental and public healthcare." SAC ¶ 5.

Accordingly, the Court DENIES Defendant's Motion as to Plaintiffs' nuisance claim.

### 3.       Cal. Code of Civ. Pro. § 526a

Plaintiffs also bring a taxpayer waste claim under California Code of Civil Procedure § 526a. Defendant contends that Plaintiffs cannot state a claim for relief under § 526a because they have merely alleged that the County could be making better use of its funds rather than that current spending is illegal. Mot. at 27-28.

However, as Plaintiffs point out, "Plaintiffs need not demonstrate an expenditure is 'illegal' to claim under section 526a…" Opp'n at 17. Rather, "[e]ven when done in the exercise of a lawful power, public spending may qualify as waste if it is completely unnecessary or useless or provides no public benefit." *Chiatello v. City & County of San Francisco*, 189 Cal. App. 4th 472, 482 (2010) (internal quotation marks and citations omitted).

In their complaint, Plaintiffs properly alleged that taxpayer funds have been misused "in a way that makes it impossible for Measure H to achieve the ostensible goal for which it was passed." Opp'n at 17; SAC ¶¶ 59–67. Considering the billions of dollars spent on homeless relief in recent years and the fact that homelessness rates and homeless deaths continue to grow exponentially in the face of such spending, there is little question that Plaintiffs have made an adequate showing that at least some degree of government spending has been "unnecessary or useless" in tackling the homelessness problem.

Accordingly, the County's motion to dismiss Plaintiffs' claim under § 526a is DENIED.

Case 2:20-cv-02291-DOC-KES  Document 593  Filed 06/29/23  Page 13 of 14  Page ID #:18720

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                         Date: June 29, 2023

Page 13

### 4. California Tort Claims

Defendant asserts that under California Government Code section 820.2 and Government Code section 815.2, the County is immune from Plaintiffs' first, third, and fourth California tort causes of action. Mot. at 28-29.

Plaintiff responds, and the Court agrees, that discretionary immunity is inapplicable to claims seeking only equitable and injunctive relief, as is the case here. *See* Opp'n. at 18. California Government Code section 814, which governs all claims for immunities under Title 1, Division 3.6, Part 2, Chapter 1 (including Government Code sections 815.2 and 820.2, which Defendant cites and relies upon) specifically denotes that "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."; *see also* Cal. Gov. Code § 814, Legislative Committee Comments—Senate ("The various provisions of this part determine only whether a public entity or public employee is liable for money or damages . . . . This section also declares that the provision of this statute relating to liability of public entities and public employees have no effect upon whatever right a person may have to obtain relief other than money or damages.").

Thus, the County's claims of immunity under 820.2 and 815.2 are inapplicable to the present California tort causes of action. Accordingly, Defendant's motion to dismiss these causes of action is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. LA CV 20-02291-DOC-KES                                       Date: June 29, 2023

Page 14

## IV. Disposition

For the reasons set forth above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant County's Motion to Dismiss. (Dkt. 552). In particular, Property-Owner Plaintiffs' claims for violation of mandatory duty under § 17000 are **DISMISSED WITH PREJUDICE**. Defendant's Motion is **DENIED** as to:

— Unhoused Plaintiffs' claim for violation of mandatory duty under § 17000;
— Plaintiffs' nuisance (public and private) claim;
— Plaintiffs' state law takings, or inverse condemnation, claim;
— Plaintiffs' § 526a waste claim;
— Plaintiffs' equal protection claim;
— Plaintiffs' state-created danger claim; and
— Plaintiffs' federal takings claim.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                      Initials of Deputy Clerk: kdu
CIVIL-GEN