STEPHEN YAGMAN (SBN 69737)
filing@yagmanlaw.net
YAGMAN + REICHMANN, LLP
333 Washington Boulevard
Venice Beach, California 90292-5152
(310) 452-3200

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| **L.A. ALLIANCE FOR HUMAN RIGHTS**, <br><br> Plaintiff, <br><br> vs. <br><br> **CITY OF LOS ANGELES**, *et al.,* <br><br> Defendants. | 2:20-cv-02291-DOC(KES) <br><br> **PROPOSED PERMISSIVE INTERVENORS' REPLY ON THEIR MOTION FOR PERMISSIVE INTERVENTION** <br><br> Sept. 11, 2023 <br> 10:00 a.m. <br> Courtroom 10A <br><br> Judge David O. Carter |

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Both the plaintiffs and the County don't want the proposed intervenors in this action. Docs. 611 & 615. (Defendant City did not file an opposition.)

Plaintiffs and the present, other intervenors appear to be not sufficiently aggressive or zealous, though the latter certainly have the right intentions.

Plaintiffs started out as a false flag endeavor, *LA Alliance for Human Rights v. County of Los Angeles*, 14 F.3d 947, 952-53 (9th Cir. 2021) ("LA Alliance is a coalition of Los Angeles residents. Members include business and property owners, landlords, housed residents of the Skid Row area, formerly homeless residents of a Skid Row-area mission, and a real estate professional with an interest in the downtown area. Six of the nine individuals alleged to be representative of LA Alliance's membership own property or have business or organizational interests in and around homeless encampments. Five of the eight LA Alliance members who are individual Plaintiffs, including two who use wheelchairs, live in or near Skid Row.") (three *liberal* Ninth Circuit judges), and then plaintiffs added some actual homeless people as plaintiffs. (Ironically, "In 2019, LA Alliance unsuccessfully attempted to intervene in and object to the settlement of *Mitchell v. City of Los Angeles*, No. 2:16-cv-01750 (C.D. Cal. filed Mar. 14, 2016)," and now *they* oppose the instant proposed intervenors' intervention.

In effect, proposed intervenors seek to have their counsel in this action, and plaintiffs and the County should welcome into this action plaintiffs' counsel, who has exactly 50 years' experience litigating § 1983 actions in federal courts in the Southern District of New York, the Middle District of Florida, the District of Colorado, the District of Idaho, the Eastern District of California, the Central District of California, and the U.S. Supreme Court. Declaration of Stephen Yagman, and CV attached thereto, and whose name is on hundreds of published, mostly civil rights cases. *Ibid.* But they do not welcome his participation and

2

eschew it. Mr. Yagman is well-known for his learned and very zealous advocacy in civil rights actions, virtually always on behalf of the downtrodden. *Ibid.* And, contrary to their oppositions, his participation will do absolutely nothing to deter this action from going to trial: as was stated, he will file no papers in this action.

*****

It is possible for hard-core conservatives, wishy-washy liberals, and practical pragmatics all to play too nicely with one another, all while Rome burns.

True adversarial judicial proceedings are a hallmark of American law. Cf. *United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) (plurality opinion)). As the Court held in *U.S. v. Cronic*, 466 U.S. 648 656 104 S.Ct. 203980 L.Ed.2d 657 (1984), in a criminal proceeding, "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." The same should be true here. But, apparently, it is not. It appears that plaintiffs and defendants are too cozy and happy with one another and that there may not be true adversariness.

Plaintiffs should be, but are not, the *parens patriae* of the unhoused; indeed, so too, should the governmental entity defendants be the true *parens patriae* of the unhoused, but neither are they. The government should be regarded as the legal protector of citizens unable to protect themselves: the principle of political authority carries with it the responsibility for protection of citizens. Here, someone must act as *parens patriae* of the unhoused in both the County of Los Angeles and the City of Los Angeles*,* and the moving intervenors seek to fill that seemingly-unfilled role.

The instant action has been pending for over three years, all the while, while unhoused persons literally rot in the streets. There needs to be some urgency, such as this court introduced into this action in 2021 by *sua sponte* issuing the

3

preliminary injunction that the Ninth Circuit then vacated. *See LA Alliance for Humanity*, *supra*.

This action adversely affects the proposed intervenors because, as this court repeatedly has stated at hearings in their cases, the court does not want intervenors' cases "to get ahead" of this, instant case, because rulings that the court will make in the instant action will affect movants' cases. Movants want to protect their cases and their interests, by having a say in want will be held in the instant case; as well, movants want to protect the unhoused at large.

In every case, the other side's case must be "subject . . . to meaningful adversarial testing . . . ." *Id*. at 659.

Defendants in this action never will settle it voluntarily. When the pretend-liberals on the County board of supervisors run into the false flag plaintiffs, all under the wing of a pragmatic court, the result is nothingness, and not in the semi-positive sense that Jean-Paul Sartre used that term. *See* "L'Être et le néant : Essai d'ontologie phénoménologique," 1943.

Paul Boring, Chrystal Finley, David Jacobs, Wendy Lockett, and Eric Serin, each and all meet Rule 24(b)'s permissive intervention criteria, and seek to permissively intervene in this action to protect their legal interests, as well as the legal interests of all un-housed persons in the City of Los Angeles and the County of Los Angeles. They all are homeless people all who reside in the City of Los Angeles and the County of Los Angeles, and who are plaintiffs in actions against the City and County based on their and their putative class members' status as un-housed persons.

//

//

//

//

4

## 1. THE APPLICABLE LAW ON PERMISSIVE INTERVENTION.

In *United States v. City of Los Angeles,* 288 F.3d 391 (9th Cir.2002) (LAPD consent decree case)[1], the Ninth Circuit held that permissive intervention should be governed by the three-prong test put forward in *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 839 (9th Cir. 1996) (stating "a court may grant permissive intervention where the applicant for intervention shows: (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common"). *See also Garza County of Los Angeles,* 918 F.2d 763, 777 (9th Cir. 1990) (Rule 24(b), Fed. R. Civ. P., provides for permissive intervention. Fed. R.Civ.P. 24(b). The Court has discretion in allowing permissive intervention where the movant: (1) moves for intervention in a timely fashion; (2) raises a claim that has a question of law or fact in common with the main case; and (3) shows an independent ground for jurisdiction.).

## 2. APPLICATION OF THE *NORTHWEST* FACTORS.

There are independent grounds for jurisdiction for each of the five parties who seek intervention: Paul Boring, David Jacobs, Chrystal Finley, Wendy Lockett, and Eric Serin. *See Boring v. Murillo*, 21-07305-DOC; *Jacobs v. Garcetti*, 2:22-cv-03533-DOC, 2:22-cv-08010-DOC; *Finley v. Garcetti*, 2:21-cv-06003-DOC; *Lockett v. Garcetti*, 2:21-cv-07596-DOC; *Serin v. Garcetti*, 2:22-cv-03531-DOC.

This court repeatedly has stated that these actions cannot proceed before the instant action, because the instant action will be dispositive of issues in the actions of those parties who seek permissive intervention. Proposed intervenors seek to intervene to protect their legal interests, so that important issues that affect their

---

[1] Stephen Yagman's clients were granted permissive intervention; Yagman was also appointed as *amicus curiae*.

5

cases are not decided in their absences. Those issues require more zealous advocacy than now is present in this action. And, more "speedy" attention. Fed. R. Civ. P. Rule 1.

(1) The motion is timely and will not cause any disruption or delay of the instant action, because proposed intervenors will raise no new claims and will abide by all of the court's deadlines set on Aug. 8, 2023, Doc. 607. Proposed intervenors' counsel will not file any papers and would require only a seat in the courtroom for trial.

(2) There are only common questions of fact and law as among the actions: the legal rights of un-housed persons.

(3) There are independent grounds for jurisdiction because there are grounds for jurisdiction in each of the proposed intervenors' own actions.

### 3. CONCLUSION.

The *Northwest* factors having been met, therefore, permission intervention should be granted to Paul Boring, Chrystal Finley, David Jacobs, Wendy Lockett, and Eric Serin, and their counsel, Stephen Yagman.

Respectfully submitted,
**YAGMAN + REICHMANN, LLP**

By:  /s/  Stephen Yagman
**STEPHEN YAGMAN**

6

# CERTIFICATE OF COMPLIANCE
### (L.R. 11-6.2)

The undersigned, counsel of record for plaintiff(s) certifies that this brief contains 1,390 words, which complies with the word limit of L.R. 11-6.1.

**YAGMAN + REICHMANN, LLP**

By: _____

**STEPHEN YAGMAN**

## <u>DECLARATION OF STEPHEN YAGMAN</u>

I, Stephen Yagman, declare the following to be true under the penalty of perjury at Venice Beach, California, pursuant to 28 U.S.C. § 1746, on the date set forth below my signature hereinbelow.

1. I am one of the attorneys for the plaintiff in this action.

2. I incorporate herein by this reference the factual matters set forth in the preceding memorandum, which I know of my personal knowledge, in order to render them admissible in evidence.

3. I attach hereto my current CV, whose contents are correct, and that I incorporate herein by this reference, in order to render it admissible in evidence.

_____
**STEPHEN YAGMAN** 08/24/23

8