MATTHEW DONALD UMHOFER
(State Bar No. 206607)
matthew@umklaw.com
ELIZABETH A. MITCHELL
(State Bar No. 251139)
elizabeth@umklaw.com
UMHOFER, MITCHELL & KING LLP
767 S. Alameda St., Suite 270
Los Angeles, California 90031
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

Attorneys for Plaintiffs

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

[*Additional counsel continued on following page.*]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>　　　　Defendants. | **CASE NO. 2:20-cv-02291 DOC (KES)**<br><br>**JOINT SUBMISSION OF SECOND ADDENDUM TO SETTLEMENT AGREEMENT AND STIPULATION FOR VOLUNTARY DISMISSAL WITH PREJUDICE PURSUANT TO F.R.C.P. 41(a)(2)**<br><br>Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

*SECOND ADDENDUM TO SETTLEMENT AGREEMENT AND STIPULATION FOR DISMISSAL*

[*Additional counsel continued from previous page.*]

DAWYN R. HARRISON (State Bar No. 173855)
*County Counsel*
KATHERINE M. BOWSER (State Bar No. 230626)
*Assistant County Counsel*
ANA WAI-KWAN LAI (State Bar No. 257931)
*Senior Deputy County Counsel*
alai@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
500 West Temple Street, Suite 648
Los Angeles, California 90012
Telephone: (213) 974-1830
Facsimile: (213) 626-7446

*SECOND ADDENDUM TO SETTLEMENT AGREEMENT AND STIPULATION FOR DISMISSAL*

**TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

Plaintiffs LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karen Pinsky, Charles Malow, and George Frem (collectively, "Plaintiffs") and Defendant County of Los Angeles ("County" and together with Plaintiffs, the "Parties") have reached a second amended settlement in the above-captioned case and respectfully request an order pursuant to Federal Rule of Civil Procedure 41(a)(2) dismissing Plaintiffs' claims against the County with prejudice.

Attached hereto as **Exhibit A** is the Parties' previously-filed Stipulation for Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), which the Parties submitted on October 17, 2022, along with an executed copy of their Settlement Agreement [Dkt. 485].  The Parties requested dismissal of this action due to settlement because they believed their agreement was critical to effectuating Plaintiffs' settlement with the City of Los Angeles and would bring valuable additional resources to people experiencing homelessness ("PEH").

At its core, the Settlement Agreement between the County and Plaintiffs was intended to build on the success of the City and County's collaboration under the "freeway deal"—as memorialized in the June 2020 Memorandum of Understanding [Dkt. 136, 185].[1]  Under the terms of the Settlement Agreement, the County committed to funding a suite of wraparound services at the thousands of interim and permanent supportive housing units financed by the City pursuant to its settlement with Plaintiffs through the end of the 2026–2027 fiscal year, connecting clients with available local, State, and federal benefits to which they are entitled (including linkage to mental health and substance use disorder ("SUD") treatment services.  [*See* Dkt. 421 (City

---

[1] The freeway deal is an agreement between the City and County, whereby the City agreed to provide 6,700 housing or shelter beds for vulnerable PEH, including those residing under freeway overpasses, and the County agreed to assist the City with funding services for the new beds in the amount of $293 million and provide a package of mainstream services to PEH residing in facilities established by the City pursuant to this MOU.

---

*SECOND ADDENDUM TO SETTLEMENT AGREEMENT AND STIPULATION FOR DISMISSAL*

settlement).] Experts agree that it is only the combination of housing/shelter and supportive services that will bring meaningful relief to PEH by helping them transition out of homelessness and receive access to benefits to maintain housing.

The Settlement Agreement contained a number of other benefits for PEH, including but not limited to:

- The County agreed to make reasonable best efforts to ensure County outreach teams have access to County Homeless Initiative-funded high service need interim housing beds for PEH in the City.

- The County agreed to dramatically expand the number of Multi-Disciplinary Teams ("MDTs") and Homeless Outreach & Mobile Engagement ("HOME") teams that do field engagement (including on Skid Row) to connect the most vulnerable PEH—unsheltered and living with complex health or behavioral conditions, and/or a serious mental illness—and connect them to necessary services and housing. The agreement guarantees a 50 to 80 percent increase from current numbers.

- The County agreed to work with the City in making available to each other appropriate City- and/or County-owned land, to create new interim or permanent supportive housing units.

As a sign of its commitment, the County moved forward with implementing the key terms of the Settlement Agreement even after the Court denied dismissal which is why the bed funding agreement within the Settlement Agreement is retroactive to 2022.

Attached hereto as **Exhibit B** is the Parties' Proposed Second Addendum to their Settlement Agreement.[2] This Second Addendum further supplements the

---

[2] The Parties' submitted their First Addendum to the Settlement Agreement on April 18, 2023, along with a renewed request for an order dismissing Plaintiffs' claims against the County with prejudice under Rule 41(a)(2) [Dkt. 533]. Attached hereto as **Exhibit C** is the Parties' fully-executed First Addendum to their Settlement Agreement. The Second Addendum further augments the material terms of the Agreement and First Addendum.

2

*JOINT SUBMISSION OF SECOND ADDENDUM TO SETTLEMENT AGREEMENT*

Settlement Agreement in three key ways:

**_3,000 New Mental Health/Substance Use Disorder Beds_**: The Parties recognize the co-occurrence of homelessness, mental illness, and/or substance use disorder (SUD) and, by extension, the importance of connecting eligible PEH with mental health and SUD treatment and sustainable housing attached to needed treatment to help lift them out of homelessness.  Under the Second Addendum, the County is funding 3,000 new mental health/SUD beds for high acuity PEH and PEH with serious mental illness and/or SUD—a 900 percent increase from the original Settlement Agreement.[3]  These 3,000 beds are an array of beds along the continuum of care in order to best support the different levels of needs of the County's PEH population, from treatment beds to housing beds with treatment services.  The beds pair mental health and/or SUD services with eligible individuals and PEH in need of ongoing medical care.  The individuals consist of current Department of Mental Health (DMH)/Department of Public Health, Substance Abuse Prevention and Control (SAPC) clients who need these types of care for their recovery journey and individuals whom the departments are trying to enroll in DMH/SAPC services for their health.  Even if a client does not meet the licensed beds criteria, the continuum still provides options for mental health and/or SUD treatment and sustainable housing.  By offering a spectrum of treatment options and housing settings, the County is best able to meet the varied needs of PEH and more precisely address their individualized needs in order to maximize their likelihood of long-term recovery.

**_450 New "Board and Care" Subsidies_**: The County intends to make available 450 new enhanced-rate subsidies for enriched residential care at licensed Adult Residential Facilities ("ARFs") and Residential Care Facilities for the Elderly ("RCFEs").  These facilities are a vital housing resource for the County's indigent population and are often utilized by individuals who are homeless or at risk of

---

[3] The 3,000 new mental health/SUD beds under the Second Addendum is the total number of new beds under the Settlement Agreement between the Parties.

3

*JOINT SUBMISSION OF SECOND ADDENDUM TO SETTLEMENT AGREEMENT*

homelessness and need care and supervision to maintain housing. The Enriched Residential Care ("ERC") program is administered by the Department of Mental Health and serves to decompress institutions such as hospitals or Institutes for Mental Disease ("IMD"), including those who are homeless or at risk of becoming homeless due to the need for a higher level of care. Over the last few years, these facilities have been facing an existential crisis due to low reimbursement rates that outpace maintenance and operating costs, which has forced the closure of many facilities and threatened the housing stability of many of the County's most vulnerable residents. The subsidies under the First Addendum are valued at approximately $40 million and will help add an additional 450 clients daily to the program, which currently serves approximately 738 individuals. In doing so, the First Addendum will help keep ARFs and RCFEs in operation and encourage additional ARFs and RCFEs to open, thus preserving this housing opportunity for clients who need the extra support provided by licensed residential care facilities and 24/7 care and supervision. .

### ***Appointment of Hon. Jay C. Gandhi As Monitor of the Parties' Settlement***:

The Second Addendum augments the accountability provisions under the existing Settlement Agreement by adding Judge Jay C. Gandhi (Ret.) as a monitor of the County's compliance with the settlement. Judge Gandhi's oversight is in addition to the County's quarterly reporting obligations to Plaintiffs and the Court's acceptance of continuing jurisdiction (in the exercise of its discretion) through the end of fiscal year 2026/27, as already provided for in the Settlement Agreement. Judge Gandhi is a conscientious and thorough jurist who has a demonstrated track record of success working with public entities and government officials. He was also material to brokering the Settlement Agreement between the Parties and thus has a meaningful background in the case, the terms of the agreement, and the complexities of homelessness, serious mental illness, and substance use disorder. While Judge Gandhi already has some background because of his involvement in the settlement discussions, he is committed to getting up to speed and conducting meaningful assessments,

4

including anticipated on-site visits, so that he can provide comprehensive information to the Court.

*  *  *

This Parties' Settlement Agreement and Addenda further the well-recognized public policy in favor of settlements, which conserve judicial and party resources. *See Ahern v. Cent. Pac. Freight Lines*, 846 F.2d 47, 48 (9th Cir. 1988) ("The Ninth Circuit is firmly 'committed to the rule that the law favors and encourages compromise settlements.'" (citation omitted.))  Not only that, but it reflects the Parties' mutual desire to bring this historic litigation to a close and help PEH.  All Parties want this Agreement.  The Parties respectfully request that the Court approve the stipulation and enter an order dismissing Plaintiffs' claims against the County with prejudice.

DATED:  September 25, 2023          UMHOFER, MITCHELL & KING, LLP


By:  _____/s/ Elizabeth A. Mitchell_____
    ELIZABETH MITCHELL
    Attorneys for Plaintiffs

DATED:  September 25, 2023          MILLER BARONDESS, LLP


By:  _____/s/ Mira Hashmall_____
    MIRA HASHMALL
    Attorneys for Defendant
    COUNTY OF LOS ANGELES

5

*JOINT SUBMISSION OF SECOND ADDENDUM TO SETTLEMENT AGREEMENT*

# ATTORNEY ATTESTATION

The other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED:  September 25, 2023          UMHOFER, MITCHELL & KING, LLP


By:   _____/s/_ Elizabeth A. Mitchell_____
      ELIZABETH MITCHELL
      Attorneys for Plaintiffs

*SECOND ADDENDUM TO SETTLEMENT AGREEMENT AND STIPULATION FOR DISMISSAL*

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into in connection with the action *LA Alliance for Human Rights et al. v. City of Los Angeles et al.*, U.S. District Court for the Central District of California, Case No. 2:20-cv-02291 (the "Action") by and between the County of Los Angeles ("County"); LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karyn Pinsky, Charles Malow, and George Frem (collectively, "Plaintiffs"); and Spertus, Landes, & Umhofer, LLP ("Plaintiffs' Counsel"), solely with respect to Section B.5 of this Agreement.  Each of the County and Plaintiffs is referred to individually as a "Party" and collectively as the "Parties."

In and through this landmark Agreement, the Parties desire to end the Action and also address the needs of People Experiencing Homelessness ("PEH") by supporting the development of housing units and the provision of a comprehensive and targeted array of supportive services designed to prevent and end homelessness, and by strengthening existing agreements and partnerships between and among relevant stakeholders such as the Parties and the City of Los Angeles ("City").  This Agreement follows over two years of contested litigation involving significant motion practice and an appeal, and months of arduous mediation attended by the Parties and the City.  All Parties have found and determined that this Agreement is entered into for good consideration following a lengthy negotiation and revision process.

## RECITALS

WHEREAS, Plaintiff LA Alliance for Human Rights ("Alliance") is an incorporated non-profit membership association in Los Angeles, California;

WHEREAS, Alliance's members include Plaintiffs Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karyn Pinsky, Charles Malow, George Frem, Charles Van Scoy, Leonard Suarez, all other individual plaintiffs that appeared in the Action, and current and/or former homeless individuals, non-profit organizations, community leaders, employees, residents, business owners, service providers, and community members residing and/or working in the County and/or the City;

WHEREAS, on March 10, 2020, Plaintiffs initiated the Action against the City and the County in the District Court for the Central District of California, where it was assigned to the Honorable David O. Carter ("District Court");

WHEREAS, on April 20, 2021, the District Court entered a preliminary injunction against the City and County, ordering the County to, *inter alia,* cease any sales, transfers or leases of County-owned properties, shelter and provide treatment services to all residents of Skid Row, and prepare numerous audits and reports (ECF No. 277);

WHEREAS, on October 15, 2021, the United States Court of Appeals for the Ninth Circuit vacated the injunction issued by the District Court and remanded the Action to the District Court;

WHEREAS, on November 1, 2021, Plaintiffs filed a First Amended and Supplemental Complaint ("FASC") against the City and the County (ECF No. 361);

WHEREAS, the County denied all claims in the FASC and filed a motion to dismiss the FASC, which was taken under submission by the District Court following a hearing on January 24, 2022 (ECF No. 370);

Page 1 of 11

WHEREAS, while the County's motion to dismiss was pending, Plaintiffs and the City entered into a settlement agreement to which the County is not a party (the "City Settlement"), and also filed a stipulated order of dismissal as to Plaintiffs' claims against the City (ECF Nos. 426-1, 429-1);

WHEREAS, on June 14, 2022, the District Court entered an order approving the settlement agreement between Plaintiffs and the City, and dismissing with prejudice Plaintiffs' claims against the City as alleged in the FASC (ECF No. 445) but retained jurisdiction for purposes of enforcement;

WHEREAS, on July 15, 2022, Plaintiffs filed a Second Amended and Supplemental Complaint ("SASC") against the County (ECF No. 454);

WHEREAS, the County expressly denies all claims alleged in the SASC;

WHEREAS, the Parties have participated in multiple mediation sessions before neutral third parties at which all Parties were represented by sophisticated counsel of their choosing and engaged in arms-length negotiations that resulted in this Agreement;

WHEREAS, Plaintiffs and the County now desire to fully and finally compromise and settle all claims arising out of or relating to all matters alleged or that could have been alleged in the Action with respect to the Parties, without any admission of fault, liability, or wrongdoing, in the interests of avoiding the additional expense and the inherent uncertainties of protracted litigation upon the terms and conditions set forth in this Agreement; and

NOW THEREFORE, in consideration of the promises, covenants, warranties, representations, and conditions contained herein, for good and valuable consideration given hereunder, and with the intent to be legally bound, the Parties hereby agree as follows:

## TERMS

**A.**    **Effective Date and Duration**:

**1.**    Subject to the requirements of Sections A.2 and E, this Agreement shall become effective and operative on the date that the District Court enters an Order dismissing, with prejudice, the Action, subject to the court's continuing enforcement in accordance with Section P of this Agreement.

**2.**    The effectiveness of this Agreement is expressly subject to and contingent upon approval by the County's approval of settlements process, including by the Los Angeles County Claims Board and/or the County Board of Supervisors, and by approval of the individual Plaintiffs.

**3.**    The County's obligations in Section D.1–9 of this Agreement shall terminate at the end of fiscal year 2026/2027 (*i.e.*, June 30, 2027).

**B.**    **Representations, Warranties, and Acknowledgements**:

**1.**    Plaintiffs represent and warrant that they have not assigned, transferred, granted, or purported to assign, transfer, or grant, any of the claims, demands, and causes of action disposed of by this Agreement.

Page **2** of **11**

2.      Each Party represents and warrants that he, she, or it has read this Agreement in its entirety, understands its contents, and is signing this Agreement freely and voluntarily, without duress or undue influence from any other Party.

3.      Each Party represents and warrants that he, she, or it has been represented by independent counsel of his, her, or its own choosing and that, before their execution of this Agreement, each has had an adequate opportunity to conduct an independent investigation of all the facts and circumstances with respect to all matters that are the subject of this Agreement. Each Party further warrants and represents that he, she, or it executes this Agreement freely, knowingly, and voluntarily, that any representative executing this Agreement on behalf of any Party has the full authority of that Party to do so and thereby bind the Party represented, and that each Party is fully aware of and understands the content and effect of this Agreement.

4.      Each Party represents and warrants that he, she, or it is not relying on any statement of fact or opinion made by any Party, or by anyone acting on behalf of any Party, to induce execution of this Agreement, other than those expressly set forth in this Agreement.

5.      Plaintiffs and Plaintiffs' Counsel represent and warrant that they are not aware of any potential plaintiff other than Plaintiffs, or any attorney other than Plaintiffs' Counsel, who intends to make demands or bring litigation against the County relating to the allegations in the Action.  Plaintiffs' Counsel represents and warrants that it does not represent any clients, or have knowledge of any potential clients, with claims or potential claims against County relating to those alleged in the Action aside from Plaintiffs.

6.      Each Party acknowledges and agrees that the representations and warranties set forth in this Section are material inducements to the other Party's entering into this Agreement.

C.      **Settlement Payment and Attorney's Fees**:

1.      In addition to the County's obligations set forth in Section D below, and further valuable consideration for the promises, representations, warranties, acknowledgements, and releases herein, the County shall pay the sum of $2 million (the "Payment") to the Spertus, Landes, & Umhofer, LLP attorney-client trust account, which shall be inclusive of all claims for attorneys' fees and costs claimed by Plaintiffs in the Action.  Plaintiffs' Counsel may enter into a separate distribution agreement at their discretion.  The County shall not be responsible for the allocation or payment of any sum between and among any of Plaintiffs, Plaintiffs' counsel, and any of their affiliates, representatives, members, agents, and assigns.  Except for the Payment, each Party shall be responsible for and bear its own attorneys' fees and costs incurred in the Action including in connection with the negotiation and execution of this Agreement.

2.      Plaintiffs and Plaintiffs' Counsel acknowledge that no representations have been made by the County regarding the taxability of all or any portion of this Agreement, and that they have had the opportunity to seek independent advice regarding the tax consequences of this Agreement and accept each responsibility for satisfaction of their own tax obligation(s) and/or liabilities, if any, that may result from this Agreement.

Page 3 of 11

**D.    County's Obligations:**

1.    **Support for Plaintiffs' Settlement with the City:**

i.    From fiscal year 2022/2023 through fiscal year 2026/2027, the County shall fund and provide supportive services for interim housing and permanent supportive housing units financed by the City as part of the City Settlement, as units are developed by the City and become occupiable, in an amount to be determined solely by County and City in their respective discretion. These supportive services shall include, but shall not be limited to, "mainstream" services including public assistance programs, mental health services, substance use disorder services, and benefits advocacy services to clients who meet eligibility criteria for these services.

ii.    The County shall provide City-funded outreach teams with access to Department of Mental Health ("DMH"), Department of Health Services ("DHS"), Department of Public Social Services ("DPSS"), and Department of Public Health ("DPH") services directly and through coordination with Multi-Disciplinary Teams ("MDTs") and Homeless Outreach & Mobile Engagement ("HOME") teams assigned within the City.

iii.    The Parties acknowledge that the County does not support the enforcement component of the City's street engagement strategy and no funding or services from the County or any County department or affiliated agency committed herein will be used to support the City's street engagement strategy.

2.    **Beds Available to County Outreach Teams**: Throughout the term of this Agreement, the County shall make reasonable best efforts to ensure County outreach teams (including the increased MDT and HOME teams referenced above) have access to County Homeless Initiative-funded high service need interim housing beds for PEH in the City, and that those beds shall either be exclusively for use by, or prioritize, PEH in the City.

3.    **Mental Health/Substance Use Disorder Beds**: By the end of fiscal year 2023/2024 (*i.e.*, June 30, 2024), the County shall develop 300 additional substance use and mental health beds according to the greatest need as solely determined by the County.

4.    **Multi-Disciplinary Teams (MDTs)**: The County shall increase to 34 from 22 (numbers based on what is currently required and could be subject to change based on the latest point-in-time count) the number of MDTs dedicated to conducting outreach exclusively in the City, allocating at least 1 team per Council District and remaining teams assigned where there is the greatest need as informed by the Point-In-Time Count. The County shall increase the number of MDTs from 22 to a minimum of 28 by the end of fiscal year 2022/2023 (*i.e.*, June 30, 2023) and to a minimum of 34 by the end of fiscal year 2023/2024 (*i.e.*, June 30, 2024).

5.    **Homeless Outreach and Mobile Engagement (HOME) Teams**: The County shall increase to 10 from 5.5 (numbers based on what is currently required and could be subject to change based on the latest point-in-time count) the number of HOME teams dedicated to conducting outreach exclusively in the City. The County shall increase the number of HOME teams from 5.5 to a minimum of 8 by the end of fiscal year 2022/2023 (*i.e.*, June 30, 2023) and to a minimum of 10 by the end of fiscal year 2023/2024 (*i.e.*, June 30, 2024).

Page 4 of 11

6.      **Partnership on City- and County-Owned Land**: Throughout the term of this Agreement, the County shall continue to work with the City in making available to each other appropriate City- and/or County-owned land, located within the City's jurisdiction, to create new interim or permanent housing units as mutually agreed by County and City.

7.      **PEH with Serious Mental Illness or Substance Use Disorders**:  The County acknowledges it has responsibilities under State and federal law to provide services, including but not limited to clinical treatment, to eligible County residents suffering from serious mental illness and/or substance use disorders, including PEH in the City.  Throughout the term of this Agreement, County shall work with the City to advocate and apply for additional state and federal funding for this purpose as mutually agreed to by County and City.

8.      **New Funding**:  If the County or City obtains significant new funding from City ballot initiative United to House L.A. or County Measure H extension for the housing and/or services outlined in this Agreement, the County shall consider and may propose potential amendments to this Agreement to enhance housing and services City-wide or County-wide. Such amendments may include (but not be limited to) continuation of operations and supportive services for the permanent and interim units beyond the term of the Agreement, or redeployment of resources to address homelessness in other cities or unincorporated County jurisdictions.

9.      **Reporting**: The County shall file reports regarding its progress in meeting its obligations under this Agreement quarterly.  Each status report shall be provided within 30 days of the end of the County's fiscal quarter.  Reports shall include the following:

  i.      **Support for Plaintiffs' Settlement with the City:**

  (1)      Upon receiving information from City at least 30 days before a quarterly report is due, County shall include a status regarding support services for interim and permanent supportive housing units: what units are being supported, what services have been provided, and numbers of PEH accessing services.  County shall have no responsibility to confirm or otherwise verify the accuracy or completeness of the information provided to it by City or on behalf of City;

  (2)      Upon receiving information from City at least 30 days before a quarterly report is due, County shall include the number of contacts or service support requests by City Outreach worker, and the result of those contacts and/or service support requests, including (a) type or types of service requests, (b) agency or organization to provide/which provided services, (c) number of requests per individual, and (d) location where request was made.  County shall have no responsibility to confirm or otherwise verify the accuracy or completeness of the information provided to it by City or on behalf of City.

  ii.      **Beds Available to County Outreach Teams:**

  (1)      The number of referrals to Homeless Initiative-funded high service need interim housing beds, the type of team making the referral, the disposition of the referral, and an explanation for any referrals that are not approved (if any).

Page **5** of **11**

### iii.  Mental Health/Substance Use Disorder Beds:

(1)    The number of beds that have been developed (or status thereon) under this agreement, what said beds are being used for, and basis for determining greatest need.

### iv.  Multi-Disciplinary Teams:

(1)    The number of MDTs deployed under this agreement, where, and how the greatest need has been evaluated (or re-evaluated).

### v.  Homeless Outreach and Mobile Engagement Teams:

(1)    The number of HOME teams deployed under this agreement, where, and how the greatest need has been evaluated (or re-evaluated).

### vi.  Partnership on City- and County-Owned Land:

(1)    A status of City/County's land partnership.

### vii.  PEH with Serious Mental Illness or Substance Use Disorders:

(1)    Status regarding any advocacy or applications for additional state or federal funding for PEH with serious mental illness or substance use disorders.

## E.   Releases:

1.     Plaintiffs, including each of their heirs, spouses, trustees, successors, assigns, agents, representatives, attorneys, employees, officers, directors, shareholders, members, managers, principals, partners, insurers, and predecessors (collectively, the "Releasing Parties"), hereby absolutely and forever release and discharge the County, including all of its boards, bureaus, departments, elected and appointed officials, representatives, attorneys, administrators, officers, agents, employees, and all persons that acted on behalf of the County, and each of their predecessors, successors, agents, and assigns (the "County Released Parties"), from any and all claims, including claims for damages, damages, demands, actions, causes of action, suits, covenants, settlements, contracts, agreements, and liabilities for personal injuries, property damage, loss, cost or expense of every nature whatsoever, whether known or unknown, contingent or otherwise, at law or in equity, and whether or not expected to exist which the undersigned Plaintiffs to this Agreement had, have, or may have against the County Released Parties, and each of them, that arise out of or are related to the Action, and any allegations, events, transactions or occurrences that were alleged or that could have been alleged therein ("Claims").

2.     The Releasing Parties acknowledge that they are aware that statutes exist that render null and void releases and discharges of any claims, rights, demands, liabilities, actions and causes of action that are unknown to the releasing or discharging parties at the time of execution of those releases and discharges.  The Releasing Parties expressly waive, surrender, and agree to forego any protection to which they would otherwise be entitled by virtue of the

Page **6** of **11**

existence of any statute in any jurisdiction, including California. Plaintiffs acknowledge that they are familiar with section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

It is understood and agreed that all rights under section 1542 of the California Civil Code are expressly waived by the Releasing Parties, to the full extent allowed by law. The Releasing Parties agree that this Agreement extends and applies to all unknown, unsuspected and unanticipated claims, demands, injuries, or damages within the scope of this Agreement and the releases herein. The Releasing Parties waive any equivalent provision of any statute of the United States or any other state or jurisdiction with respect to such claims, demands, injuries, or damages within the scope of this Agreement.

The Releasing Parties recognize and acknowledge that factors which have induced each of them to enter into this agreement may turn out to be incorrect or to be different from what they had previously anticipated, and they hereby expressly assume any and all of the risks thereof and further expressly assumes the risks of waiving the rights provided by California Civil Code section 1542.

3.     Releasing Party does not waive future claims, subject to corresponding statute of limitations, after the term of the Agreement ends. The Releasing Parties agree that the Payment and the County's obligations set forth in Section D, pursuant to, and in accordance with this Agreement, is valuable consideration for the releases in this Section and every other benefit conferred upon them directly or indirectly under this Agreement.

4.     The Releasing Parties acknowledge that their execution and delivery of the releases in this Section is a condition of the County's obligations under this Agreement and that the County is relying on this release in carrying out its obligations under this Agreement.

F.     **Dismissal With Prejudice**: Within five (5) days of the execution of this Agreement by all Parties, Plaintiffs shall file a Joint Stipulation For Voluntary Dismissal With Prejudice Pursuant to F.R.C.P. 41(a)(2) (the "Stipulation"). In the event that the District Court enters an order granting the Stipulation upon terms and conditions not agreed to by the Parties in this Agreement, the Parties may withdraw their consent to this Agreement and continue the Action if the Agreement and its terms never existed.

G.     **No Prevailing Party**: The Parties agree that no Party to this Agreement is a prevailing party under any applicable law, including 42 U.S.C. § 1988 or similar fee-shifting statutes.

H.     **No Admission of Liability**: This Agreement is the result of a compromise and for the purpose of settling disputed claims, and shall not at any time for any purpose constitute or be considered or deemed any admission of liability on the part of any Party hereto. Each Party expressly denies any wrongdoing or liability in connection with any action or omission relating

Page **7** of **11**

to one another.  This Agreement and any document related to this settlement, and the negotiations leading thereto, shall be inadmissible in evidence and shall not be used for any purpose in this or any other proceeding except in an action or proceeding to approve, interpret, implement, or enforce the Agreement.

I.    **Entire Agreement**:  This Agreement contains all of the terms and conditions agreed upon by the Parties regarding the subject matter of this Agreement, and supersedes all prior and contemporaneous oral and written agreements and discussions between Plaintiffs and County.

J.    **Construction**:  The Parties have collaborated with each other in drafting and preparing this Agreement.  No Party to this Agreement, or any Party's respective counsel, shall be deemed to have drafted this Agreement, and this Agreement shall not be construed as against any Party on such grounds.

K.    **No Oral Modifications:**  This Agreement constitutes the entire agreement between Parties hereto, and no oral understanding not incorporated herein shall be binding on any Party. This Agreement may only be modified, altered or revised, as necessary, by mutual consent of the parties hereto by the issuance of a written amendment, signed and dated by the Parties.

L.    **Successors**:  The provisions of this Agreement shall be deemed to extend to and inure to the benefit of the Parties' respective transferees, grantees, assigns, successors, heirs, trustees, executors, administrators, and any other person or entity claiming by or through them, and to extend to and obligate the Parties' respective transferees, grantees, assigns, heirs, trustees, executors, and administrators.

M.    **No Third Party Beneficiaries:**  Notwithstanding anything in this Agreement to the contrary, there are no intended third-party beneficiaries that may assert rights or defenses under this Agreement, except the Parties to this Agreement and their Counsel.

N.    **Severability**:  Should any part of this Agreement be declared invalid, void or unenforceable, all remaining parts shall remain in full force and effect and shall in no way be invalidated or affected.

O.    **Choice of Law**:  This Agreement in all respects shall be interpreted, enforced, and governed by and under the laws of the State of California applicable to instruments, persons, and transactions that have legal contracts and relationships solely within the State of California.

P.    **Dispute Resolution**:

1.    The Parties agree that the procedures contained in this Section are the required and exclusive steps for resolving any dispute between the Parties arising out of or relating to this Agreement or any Party's rights or obligations hereunder ("Dispute").

i.    Dispute Initiation/Right to Cure:  In the event of any dispute between the Parties arising out of or relating to this Agreement or any Party's rights or obligations hereunder, a Party wishing to raise a claim, demand, or cause of action (the "Claiming Party") against any other Party (the "Responding Party") shall, before taking any other action concerning the dispute, provide to the Responding Party written notice setting out in reasonable detail the nature

Page **8** of **11**

of the dispute and the relief sought ("Notice of Dispute"). The Parties shall meet and confer within a reasonable time in a good-faith effort to resolve the dispute through informal negotiations. Any Party that is alleged in a Notice of Dispute to be in breach of this Agreement, and who, after meeting and conferring, requests an opportunity to cure, shall have up to one hundred twenty (120) days after receipt of the Notice of Dispute to cure such alleged breach, unless otherwise agreed ("Cure Period"). No Party will be considered in breach of this Agreement unless it is alleged that such Party has failed to substantially perform its obligations under this Agreement ("Breach").

        **ii.**    <u>Judicial Enforcement</u>: If, after exhausting the dispute resolution procedures described in Section (P)(1)(i), the Claiming Party still alleges the Responding Party is in breach of this Agreement, the Claiming Party may file a notice of breach and request for judicial enforcement in the District Court to remedy such alleged breach. The District Court retains jurisdiction, at its discretion, for purposes of enforcing this Agreement until the end of fiscal year 2026/2027 (*i.e.*, June 30, 2027). The only relief that any Party may seek in the event of an alleged Breach of this Agreement will be an order compelling specific performance of the Agreement. No Party may seek monetary damages of any kind as a result of an alleged Breach.

        **2.**    Each Party shall bear his, her, or its own costs and fees in connection with any of the dispute resolution processes under this Section.

**Q.**    **Notices.** All notices to be sent under this Agreement shall be delivered as follows and shall reference the Action in the subject line of the notice:

    **1.**    *For Plaintiffs*:
Spertus Landes & Umhofer LLP
617 W. 7th Street, Suite 200
Los Angeles, CA 90017
Attention: Matthew Donald Umhofer, Elizabeth Mitchell
matthew@spertuslaw.com, emitchell@spertuslaw.com

    **2.**    *For the County*:
Office of County Counsel
500 West Temple Street, Suite 648
Los Angeles, California 90012
Attention: Ana Lai; Jennifer Lehman
alai@counsel.lacounty.gov; jlehman@counsel.lacounty.gov

    Any Party may change its notice recipient or address for providing notice to it by notifying the other Party(ies) in writing setting forth such new notice recipient or address.

**R.**    <u>Force Majeure</u>: No Party to this Agreement shall be deemed in violation if it is prevented or delayed from performing any of the obligations hereunder by reason of boycotts, labor disputes, embargoes, shortage of material, act of God, strikes, lockouts, inability to procure labor or materials, fire, accident, laws or regulations of general applicability, act of superior governmental authority, weather conditions, sabotage, or any other cause or circumstances for which it is not responsible and beyond its control (financial inability excepted). A Party that is delayed from performing its obligations hereunder shall make reasonable best efforts to perform

Page **9** of **11**

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

**S.      Execution in Counterparts and Email/Fax Signatures**: This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement. The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

By:   ANA LAI                                            Dated: OCTOBER 11, 2022
Title: SENIOR DEPUTY COUNTY COUNSEL

**LA ALLIANCE FOR HUMAN RIGHTS**

By:   Don Steier                                        Dated: October 10, 2022
Title: Chair

**JOSEPH BURK**

_____        Dated: _____

**GEORGE FREM**

_____        Dated: _____

**WENZIAL JARRELL**

_____        Dated: _____

**CHARLES MALOW**

_____        Dated: _____

**KARYN PINSKY**

_____        Dated: 10/10/22

Page **10** of **11**

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

**S.** **Execution in Counterparts and Email/Fax Signatures**: This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement. The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

_____       Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____       Dated: _____
By:
Title:

**JOSEPH BURK**

_____       Dated: _____10/10/2022_____

**GEORGE FREM**

_____       Dated: _____

**WENZIAL JARRELL**

_____       Dated: _____

**CHARLES MALOW**

_____       Dated: _____

**KARYN PINSKY**

_____       Dated: _____

Page **10** of **11**

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

S.    **Execution in Counterparts and Email/Fax Signatures**: This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement. The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

_____      Dated: _____

By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____      Dated: _____

By:
Title:

**JOSEPH BURK**

_____      Dated: _____

**GEORGE FREM**

_____      Dated: ___10/10/2022_____

**WENZIAL JARRELL**

_____      Dated: _____

**CHARLES MALOW**

_____      Dated: _____

**KARYN PINSKY**

_____      Dated: _____

Page **10** of **11**

its obligation at the earliest time possible. Any Party intending to assert force majeure shall notify the other Party(ies) in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

S.     **Execution in Counterparts and Email/Fax Signatures**:  This Agreement may be executed in any number of counterparts, each of which so executed shall be deemed to be an original and such counterparts shall together constitute one and the same Agreement.  The Parties agree to accept signed pages transmitted by email or facsimile.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

_____     Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____     Dated: _____
By:
Title:

**JOSEPH BURK**

_____     Dated: _____

**GEORGE FREM**

_____     Dated: _____

**WENZIAL JARRELL**

_Wenzial Jarrell_____     Dated: _10 – 10 – 22_____

**CHARLES MALOW**

_Charles Malow_____     Dated: _10 – 10 – 22_____

**KARYN PINSKY**

_____     Dated: _____

Page **10** of **11**

**HARRY TASHDJIAN**

Dated: _10-10-22_

Plaintiffs' Counsel agrees to be bound by Section B.5 of the Agreement.

Spertus, Landes, & Umhofer, LLP

Dated: _October 10, 2022_

By:    Elizabeth A. Mitchell
Title:  Attorney for Plaintiffs

# |ADDENDUM TO SETTLEMENT AGREEMENT

This Addendum to Settlement Agreement (the "Addendum") is entered into by and between the County of Los Angeles ("County"); LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karyn Pinsky, Charles Malow, and George Frem (collectively, "Plaintiffs"). Each of the County and Plaintiffs is referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on October 11, 2022, the Parties entered into a Settlement Agreement ("Agreement"), wherein they memorialized their agreement to settle and finally resolve the matter entitled *LA Alliance for Human Rights et al. v. City of Los Angeles et al.*, U.S. District Court for the Central District of California, Case No. 2:20-cv-02291 (the "Action");

WHEREAS, on October 17, 2022, the Parties filed a copy of the Agreement with the Court and jointly requested the Court to dismiss the Action against the County; The Court scheduled a hearing regarding the Agreement;

WHEREAS, on January 17, 2023, the Parties attended the hearing, and in light of the new leadership at the County and City of Los Angeles level, the Parties indicated their interest in reviewing and potentially increasing resources for the People Experiencing Homelessness ("PEH"); and

NOW, THEREFORE, the Parties hereby agree to modify the terms of the Agreement as follow:

## TERMS OF ADDENDUM

A. Paragraph D, County's Obligations, Subparagraph 3, Mental Health/Substance Use Disorder Beds, shall be deleted in its entirety and replaced with the following:

3a.   **Mental Health/Substance Use Disorder Beds**: The County shall develop/contract 1,000 additional mental health and substance use disorder beds according to the greatest need as solely determined by the County. The 1,000 beds shall be open and operational on the following timeline: 300 beds by June 30, 2023, 310 beds by December 31, 2023, 90 beds by December 31, 2024, 130 beds by December 31, 2025, and 170 beds by December 31, 2026. The beds herein shall exclude those previously funded in any agreement effective before June 14, 2022 between the County and a provider agency for contracted facilities, and shall exclude beds that the County directly operated and became available before June 14, 2022. Funding shall not include any advance payments for startups.

Page **1** of **5**

B. Paragraph D, County's Obligations, Subparagraph 3b, Enriched Residential Care for Adult Residential Facilities ("ARF") and Residential Care Facilities for the Elderly ("RCFEs") Beds, shall be added to the Agreement as follows:

> 3b. **Enriched Residential Care for Adult Residential Facilities ("ARF") and Residential Care Facilities for the Elderly ("RCFEs") Beds**: The County shall make available 450 new subsidies which includes an enhanced services rate at existing ARF and RCFEs that accept individuals eligible for Department of Mental Health ("DMH") services. These beds are frequently, but not exclusively, utilized by individuals with Serious Mental Illness who would otherwise be homeless. The parties recognize that whether there are sufficient third-party providers to accept these funds is not within the County's control and the utilization of these funds is contingent on receipt of 450 eligible referrals over the course of this Agreement. The County shall make available the subsidies within the following deadlines: 40 by December 31, 2023, 160 by December 31, 2024, 120 by December 31, 2025, and 130 by December 31, 2026.

C. Paragraph D, County Obligations, Subparagraph 9, Reporting, Section i, Support for Plaintiffs' Settlement with the City, Subsection (3) shall be added to the Agreement as follows:

> (3) The Parties acknowledge that Paragraph D(9)(i)(1) and D(9)(i)(2), above, shall be contingent upon receipt of information from the City.

D. Paragraph D, County Obligations, Subparagraph 9, Reporting, Section (iii), Mental Health/Substance Use Disorder Beds, shall be deleted in its entirety and replaced with the following:

> iii. **Mental Health/Substance Use Disorder Beds:**
>
> (1) The number of beds that have been developed/contracted since June 14, 2022 (or status thereon) under this agreement, date said beds became open and operational, and confirmation said beds continue to be open and operational.

E. Paragraph D, County Obligations, Subparagraph 9, Reporting, Section viii, Enriched Residential Care for ARF and RCFEs Beds, shall be added to the Agreement as follows:

> viii. **Enriched Residential Care for ARF and RCFEs Beds:**
>
> (1) The number of referrals, name of referral sources, number of referrals accepted, date individual moved in, and name and type of facility accepting enhanced rate.

Page 2 of 5

**Exhibit B, Page 26**

F.  Paragraph Q, Notices, shall be deleted in its entirety and replaced as follows:

Q.  **Notices.**  All notices to be sent under this Agreement shall be delivered as follows and shall reference the Action in the subject line of the notice:

1.  *For Plaintiffs*:
Umhofer, Mitchell & King LLP
11766 Wilshire Blvd, Suite 900
Los Angeles, CA 90025
Attn: Matthew Donald Umhofer, Elizabeth A. Mitchell
matthew@umklaw.com; elizabeth@umklaw.com

2.  *For the County*:
Office of County Counsel
500 West Temple Street, Suite 648
Los Angeles, California 90012
Attention: Ana Lai; Jennifer Lehman
alai@counsel.lacounty.gov; jlehman@counsel.lacounty.gov

Any Party may change its notice recipient or address for providing notice to it by notifying the other Party(ies) in writing setting forth such new notice recipient or address.

G.  All references to "Spertus, Landes, & Umhofer, LLP", including on Page 1, Paragraph 1, introductory paragraph, Page 3, Paragraph C, Settlement Payment and Attorney's Fees, Subparagraph 1, and Page 11, signature line, of the Agreement, shall be replaced by "Umhofer, Mitchell & King LLP".

//

//

//

//

//

//

//

//

Page **3** of **5**

**Exhibit B, Page 27**

This Addendum is hereby incorporated into and shall become a part of the Agreement.  In all other respects, the Agreement shall remain unchanged and in full force and effect.


AGREED TO AND ACCEPTED.


**COUNTY OF LOS ANGELES**

_____                    Dated: ___4-18-2023_____

By:    ANA LAI
Title: SENIOR DEPUTY COUNTY COUNSEL

**LA ALLIANCE FOR HUMAN RIGHTS**

_____                    Dated: _____
By:
Title:

**JOSEPH BURK**

_____                    Dated: _____


**GEORGE FREM**

_____                    Dated: _____


**WENZIAL JARRELL**

_____                    Dated: _____


**CHARLES MALOW**

_____                    Dated: _____


**KARYN PINSKY**

_____                    Dated: _____


Page 4 of 5

**Exhibit B, Page 28**

**HARRY TASHDJIAN**

_____          Dated: _____

Page 5 of 5

This Addendum is hereby incorporated into and shall become a part of the Agreement. In all other respects, the Agreement shall remain unchanged and in full force and effect.

AGREED TO AND ACCEPTED.

COUNTY OF LOS ANGELES

_____     Dated: _____

By:
Title:

LA ALLIANCE FOR HUMAN RIGHTS

_____     Dated:    4 | 17 | 2023

By:    DONALD STEIER
Title:    CHAIR

JOSEPH BURK

_____     Dated: _____

GEORGE FREM

_____     Dated: _____

WENZIAL JARRELL

_____     Dated: _____

CHARLES MALOW

_____     Dated: _____

KARYN PINSKY

_____     Dated: _____

Page 4 of 5

**Exhibit B, Page 30**

This Addendum is hereby incorporated into and shall become a part of the Agreement.  In all other respects, the Agreement shall remain unchanged and in full force and effect.


AGREED TO AND ACCEPTED.


**COUNTY OF LOS ANGELES**

_____          Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____          Dated: _____
By:
Title:

**JOSEPH BURK**

_____          Dated: _____04/14/2023_____


**GEORGE FREM**

_____          Dated: _____


**WENZIAL JARRELL**

_____          Dated: _____


**CHARLES MALOW**

_____          Dated: _____


**KARYN PINSKY**

_____          Dated: _____


Page **4** of **5**

**Exhibit B, Page 31**

This Addendum is hereby incorporated into and shall become a part of the Agreement. In all other respects, the Agreement shall remain unchanged and in full force and effect.

AGREED TO AND ACCEPTED.


**COUNTY OF LOS ANGELES**

_____         Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____         Dated: _____
By:
Title:

**JOSEPH BURK**

_____         Dated: _____

**GEORGE FREM**

_____         Dated: ___4/14/2023___

**WENZIAL JARRELL**

_____         Dated: _____

**CHARLES MALOW**

_____         Dated: _____

**KARYN PINSKY**

_____         Dated: _____


Page 4 of 5

**Exhibit B, Page 32**

This Addendum is hereby incorporated into and shall become a part of the Agreement. In all other respects, the Agreement shall remain unchanged and in full force and effect.

AGREED TO AND ACCEPTED.

COUNTY OF LOS ANGELES

_____     Dated: _____
By:
Title:

LA ALLIANCE FOR HUMAN RIGHTS

_____     Dated: _____
By:
Title:

JOSEPH BURK

_____     Dated: _____

GEORGE FREM

_____     Dated: _____

WENZIAL JARRELL

_Whial Jarhell_____     Dated: _Mon Apr 17_____

CHARLES MALOW

_____     Dated: _____

KARYN PINSKY

_____     Dated: _____

Page 4 of 5

**Exhibit B, Page 33**

This Addendum is hereby incorporated into and shall become a part of the Agreement. In all other respects, the Agreement shall remain unchanged and in full force and effect.

AGREED TO AND ACCEPTED.

COUNTY OF LOS ANGELES

_____     Dated: _____
By:
Title:

LA ALLIANCE FOR HUMAN RIGHTS

_____     Dated: _____
By:
Title:

JOSEPH BURK

_____     Dated: _____

GEORGE FREM

_____     Dated: _____

WENZIAL JARRELL

_____     Dated: _____

CHARLES MALOW

_____     Dated: 04/14/2023

KARYN PINSKY

_____     Dated: _____

Page 4 of 5

**Exhibit B, Page 34**

This Addendum is hereby incorporated into and shall become a part of the Agreement.  In all other respects, the Agreement shall remain unchanged and in full force and effect.


AGREED TO AND ACCEPTED.


**COUNTY OF LOS ANGELES**

_____          Dated: _____
By:
Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

_____          Dated: _____
By:
Title:

**JOSEPH BURK**

_____          Dated: _____


**GEORGE FREM**

_____          Dated: _____


**WENZIAL JARRELL**

_____          Dated: _____


**CHARLES MALOW**

_____          Dated: _____


**KARYN PINSKY**

_____          Dated: _04/17/23_____


Page 4 of 5

**Exhibit B, Page 35**

**HARRY TASHDJIAN**

Dated: 04-14-23

Page **5** of **5**

## SECOND ADDENDUM TO SETTLEMENT AGREEMENT

This Second Addendum to Settlement Agreement (the "Addendum") is entered into by and between the County of Los Angeles ("County"); LA Alliance for Human Rights, Joseph Burk, Harry Tashdjian, Wenzial Jarrell, Karyn Pinsky, Charles Malow, and George Frem (collectively, "Plaintiffs"). Each of the County and Plaintiffs is referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

WHEREAS, on October 11, 2022, the Parties entered into a Settlement Agreement ("Agreement"), wherein they memorialized their agreement to settle and finally resolve the matter entitled *LA Alliance for Human Rights et al. v. City of Los Angeles et al.*, U.S. District Court for the Central District of California, Case No. 2:20-cv-02291 (the "Action"); and

WHEREAS, on October 17, 2022, the Parties filed a copy of the Agreement with the Court and jointly requested the Court to dismiss the Action against the County; the Court scheduled a hearing regarding the Agreement; and

WHEREAS, on January 17, 2023, the Parties attended the hearing, and in light of the new leadership at the County and City of Los Angeles level, the Parties indicated their interest in reviewing and potentially increasing resources for the People Experiencing Homelessness ("PEH"); and

WHEREAS, the Parties subsequently negotiated and entered into an Addendum to Settlement Agreement (the "First Addendum"), pursuant to which the County agreed to provide substantial new resources to ameliorate homelessness, including developing/contracting 1,000 new mental health and substance use disorder beds for PEH, as well as making available 450 new subsidies for enriched residential care for Adult Residential Facilities and Residential Care Facilities for the Elderly beds (commonly called "Board and Care" beds) that are frequently utilized by individuals with a serious mental illness who are at risk of homelessness; and

WHEREAS, the County calculated that the value of the resources in the Settlement Agreement and First Addendum was over $850 million; and

WHEREAS, on April 18, 2023, the Parties filed the fully executed First Addendum, re-submitted their F.R.C.P. 41(a)(2) Stipulation for Voluntary Dismissal, and requested the Court enter an order dismissing the Action with prejudice; and

WHEREAS, on April 20, 2023, the Court held a hearing at which the Court stated that the Agreement and First Addendum did not provide for a sufficient number of beds or oversight, and

Page **1** of **5**

denied the Parties' Stipulation for Voluntary Dismissal, declining to accept continuing jurisdiction;

WHEREAS, on May 9, 2023, the Court set trial for November 6, 2023, and issued a scheduling order requiring the completion of all discovery in five months;

WHEREAS, on June 15, 2023, the Court issued a Supplemental Order regarding the denial of the Parties' stipulation to dismiss the Action against the County stating that it declined jurisdiction over the terms of the Parties' settlement and also found that the Parties did not have a finalized or enforceable settlement agreement; and

WHEREAS, on August 17, 2023, the Parties filed a Stipulation to Continue Trial and All Pretrial Deadlines and informed the Court the Parties have resumed settlement negotiations; and

WHEREAS, the Parties still desire to fully and finally compromise and settle all claims arising out of or relating to all matters alleged or that could have been alleged in the Action, without any admission of fault, liability, or wrongdoing, in the interests of avoiding the additional expense and the inherent uncertainties of protracted litigation and trial on the terms and conditions of the Agreement, the First Addendum, and this Addendum;

NOW, THEREFORE, the Parties hereby agree to modify the terms of the Agreement, as modified by the First Addendum, as follows:

## TERMS OF SECOND ADDENDUM

A. Paragraph A, Effective Date and Duration, is deleted in its entirety, and replaced with the following:

A. **Effective Date and Duration:** The obligations of the Parties, and the releases contained in the Agreement, shall become effective and operative on the date the Court enters an Order dismissing Plaintiffs' claims against the County with prejudice. The Court will have continuing oversight and enforcement of the Agreement. The Agreement shall terminate on June 30, 2027.

B. Paragraph C, Settlement Payment and Attorneys' Fees, Subparagraph 1, shall be deleted in its entirety and replaced with the following:

1. In addition to the County's obligations set forth in Section D below, and further valuable consideration for the promises, representations, warranties, acknowledgements, and releases herein, the County shall pay the sum of $2,400,000 (the "Payment") as separately directed by Plaintiffs' counsel, which shall be inclusive of all claims for attorneys' fees and costs claimed by Plaintiffs in the Action. Plaintiffs' Counsel may enter into a separate distribution agreement at their discretion. The County shall not be responsible for the allocation or

Page **2** of **5**

payment of any sum between and among any of Plaintiffs, Plaintiffs' counsel, and any of their affiliates, representatives, members, agents, and assigns. Except for the Payment, each Party shall be responsible for and bear its own attorneys' fees and costs incurred in the Action including in connection with the negotiation and execution of this Agreement. Payment to be made within forty-five (45) days of an order by the Court dismissing the Action with prejudice.

C. Paragraph D, County's Obligations, Subparagraph 3, Mental Health/Substance Use Disorder Beds, shall be deleted in its entirety and replaced with the following:

3. **Mental Health/Substance Use Disorder Beds**: The County shall develop/contract 3,000 mental health and substance use disorder beds according to the greatest need as solely determined by the County. The 3,000 beds shall be open and operational on the following timeline: 600 by December 31, 2023; 1,200 by December 31, 2024; 1,800 by December 31, 2025; and 3,000 by December 31, 2026. The beds herein shall exclude those previously funded in any agreement effective before June 14, 2022, between the County and a provider agency for contracted facilities, and shall exclude beds that the County directly operated and became available before June 14, 2022. Funding shall not include any advance payments for startups.

D. Paragraph F, Dismissal With Prejudice, shall be deleted in its entirety and replaced with the following:

F. **Dismissal With Prejudice:** On September 25, 2023, Plaintiffs shall file a Joint Stipulation For Voluntary Dismissal With Prejudice Pursuant to F.R.C.P. 41(a)(2).

E. Paragraph Q, Notices, shall be deleted in its entirety and replaced with the following:

Q. **Notices**. All notices to be sent under this Agreement shall be delivered as follows and shall reference the Action in the subject line of the notice:

1. *For Plaintiffs:*
Umhofer, Mitchell & King LLP
767 S. Alameda St., Suite 270
Los Angeles, CA 90021
Attention: Matthew Donald Umhofer, Elizabeth A. Mitchell
matthew@umklaw.com; elizabeth@umklaw.com

2. *For the County:*
Office of County Counsel
500 West Temple Street, Suite 648
Los Angeles, California 90012
Attention: Ana Lai; Katherine Bowser
alai@counsel.lacounty.gov; kbowser@counsel.lacounty.gov

Page **3** of **5**

Any Party may change its notice recipient or address for providing notice to it by notifying the other Party(ies) in writing setting forth such new notice recipient or address.

F.  Paragraph T, Special Master, shall be added to the Agreement as follows:

T.      **Special Master:**  The Parties agree to the Court's recommendation of Hon. Jay C. Gandhi (Ret.) as Special Master for the purpose of assisting the Court in overseeing and enforcing this Agreement, including resolving Disputes per Section P.1.i.  The Special Master shall have discretion to involve Intervenors, including in proceedings arising under Section P.1.i.  The Special Master costs shall not exceed $200,000 per year and shall be paid by County.  Should Hon. Jay C. Gandhi (Ret.) be unable to perform his duties as Special Master for any reason, the Parties and the Court will work together to select a mutually agreeable replacement.

This Second Addendum is hereby incorporated into and shall become a part of the Agreement. In all other respects, the Agreement and its First Addendum shall remain unchanged and in full force and effect.

AGREED TO AND ACCEPTED.

**COUNTY OF LOS ANGELES**

By: _____          Dated: _____9/28/23_____

Title:

**LA ALLIANCE FOR HUMAN RIGHTS**

By: _____          Dated: _____

Title:

[Additional signatures on following page]

*1. This agreement is a floor not a ceiling. While this agreement does not solve homelessness in Los Angeles County, it is a huge step forward.*

Page 4 of 5

*2. All future billings from providers must be completely transparent and all invoices are to be public documents.*

[Signatures cont'd from previous page]


**JOSEPH BURK**

_____          Dated: _____


**GEORGE FREM**

_____          Dated: _____


**WENZIAL JARRELL**

_____          Dated: _____


**CHARLES MALOW**

_____          Dated: _____


**KARYN PINSKY**

_____          Dated: _____


**HARRY TASHDJIAN**

_____          Dated: _____


3. For the first year, Judge Gandhi will work for free as Special Monitor or alternatively will be compensated commensurately with Special Master Michele Martinez. Additionally, Judge Gandhi will work under the guidance of Ms. Martinez for the first year to ensure continuity. The Monitor must be willing to take to the

Page 5 of 5

streets, and learn from the community, not the bureaucracy, and has an absolute fiduciary duty to the court as Special

Judge David O. Carter
United States District Court.

September 28, 2023