HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
ARLENE N. HOANG, Deputy City Attorney (SBN 193395)
JESSICA MARIANI, Deputy City Attorney (SBN 280748)
200 North Main Street, City Hall East, 7th Floor
Los Angeles, California 90012
Telephone: 213-978-6952
Facsimile: 213-978-7011
Email:  Scott.Marcus@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a Municipal entity, et al.,<br><br>    Defendants. | Case No. CV 20-02291 DOC (KES)<br><br>Assigned to Hon. Judge David O. Carter<br><br>**DECLARATION OF SCOTT MARCUS IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE AND SANCTIONS**<br><br>**Date: March 4, 2024**<br>**Time: 8:30 p.m.**<br>**Dept: 10A** |

## <u>DECLARATION OF SCOTT MARCUS</u>

I, Scott Marcus, hereby declare:

1.      I am an attorney licensed to practice law in the State of California.  I am a Chief Assistant City Attorney with the Los Angeles City Attorney's Office.  I have personal knowledge of the facts set forth in this Declaration, and if called upon to testify to the truth of these matters, I could and would competently do so.  I am counsel for Defendant City of Los Angeles ("City") in the above-captioned litigation, *LA Alliance et al. v. City of Los Angeles, et al.,* Case No. 20-CV-02291 DOC (KES).

2.      The City and the LA Alliance for Human Rights ("the Alliance") signed the Settlement Agreement in this matter on May 19, 2022.  Dkt. 421-1.  However, it did not take effect until it was approved by the Court on June 14, 2022.  Dkt. 445.

3.      The Settlement Agreement obligated the City to calculate the Required Number[1] within 30 days from the date the information from the 2022 PIT Count was confirmed and released by LAHSA.  Dkt. 421, ¶ 5.1.  LAHSA published the results of the 2022 PIT count on or about September 8, 2022.[2]  The City calculated the Required Number and provided it to Plaintiffs on October 6, 2022, within the 30 day deadline set forth in the Agreement, not after "several months of delay" as intimated by the Alliance. *See* Declaration Of Elizabeth A. Mitchell In Support Of Plaintiffs' Motion For Order Re Settlement Agreement Compliance And Sanctions ("Mitchell Decl."), ¶ 2 and Ex. A. Notably, the City did not exclude people who were chronically homeless from its calculation of the Required Number as the Agreement allowed, but rather included them, resulting in the City committing to create a higher number of shelter and housing

---

[1] The "Required Number" in the Settlement Agreement is the number of housing or shelter solutions equal to the shelter and/or housing capacity needed to accommodate sixty percent (60%) of unsheltered City Shelter Appropriate people experiencing homelessness in the City based on LAHSA's 2022 Point in Time (PIT) Count.

[2] See https://www.lahsa.org/news?article=895-lahsa-releases-2022-great-los-angeles-homeless-count-results-released.

solutions than it was required to under the Agreement.  The City then provided the Required Number calculation to the Court on October 14, 2022.  Dkt. 483.[3]

4.       After the Required Number is calculated, the Settlement Agreement calls for the City to develop plans and milestones for the creation of shelter and housing solutions and encampment engagement, cleaning, and reduction, both Citywide and district-by-district.  Dkt. 421, ¶ 5.2.  The City is to provide these milestones to the Plaintiffs, work in good faith to resolve any disputes, and provide a report setting forth the final milestones.  *Id*.  Unlike the Required Number, there is no deadline, date, or timeframe by which these milestones must be created, shared with the Plaintiffs, or finalized.  *Id*.

5.       The City provided the Alliance with milestones for the creation of shelter and housing solutions both Citywide and district-by-district on November 11, 2022.  The City also provided a list of potential projects, identified by Council Districts, that the City intended to use to satisfy its shelter and housing opportunities requirements.  See Mitchell Decl., ¶ 3 and Ex. B.

6.       In October 2022, the leaked recordings of a conversation among 3 Los Angeles City Council members and a labor leader resulted in extraordinary disruptions in the City.  The then-Council president resigned, and Council meetings were filled with protestors calling for the resignation of the other 2 members on the recording on a daily basis.

7.       On November 7, 2022, Karen Bass was elected Mayor of Los Angeles. Several new Councilmembers were also elected, and there was a change in leadership in the City Council.  Mayor Bass and the other newly elected officials took office on December 12, 2022.  With the change in administration and leadership came a change in the City's focus on addressing homelessness, both substantively and procedurally.  For example, Mayor Bass declared a local state of emergency regarding homelessness on her

---

[3] The Required Number increased from 12,904 to 12,915 due to changes in how LAHSA reported the results of the 2022 PIT Count after Council District lines were redrawn.

DECLARATION OF SCOTT MARCUS

first day in office.  *See* Emergency Declaration; https://mayor.lacity.gov/sites/g/files/wph2066/files/2023-03/20221212%20Mayor%20Emergency%20Declaration%20Homelessness%20Crisis%20signed%20by%20clerk.pdf

8.    The Parties also began discussions around establishing encampment milestones.  The City initially proposed its Street Engagement Strategy, supplemented by Mayor Bass' new Inside Safe Program, should serve as milestones governing encampment engagement, cleaning, and reduction in the City.  The City's Street Engagement Strategy was publicly available in reports submitted on a regular basis to the City Council.  See, e.g., Los Angeles City Council Files 21-0329, 21-0329 S1, 21-0329 S4.  The Alliance responded that they found the Street Engagement Strategy to be insufficient to serve as encampment milestones, and the Parties met and conferred as required by the Settlement Agreement.  The result of this meet and confer was the Parties agreed that the City would endeavor to provide new encampment milestones by October 1, 2023, to give the new City administration time to develop milestones based on its new approach and programs to address homelessness.

9.    One of the elements discussed by the Parties in the meet and confer was the City's issuance of requests for qualifications (RFQs) to homeless service providers to contract directly with the City (not through LAHSA) to provide outreach and engagement services to people experiencing homelessness across multiple City Council Districts, as referenced in paragraphs 5 and 6 of Ms. Mitchell's declaration.  Ultimately, the City decided to set aside the RFQ process in favor of dedicating those resources to Inside Safe and other existing City programs for addressing encampments.  This was explained to counsel for the Alliance at the January 4, 2024 meeting with Mayor Bass.

10.    The City provided revised encampment milestones on October 3, 2023, as referenced in paragraph 8 of and Ex. D to Ms. Mitchell's Declaration.  These new milestones set forth in more detail the City's plans for encampment engagement, cleaning, and reduction, as well as a detailed description of the City's programs to accomplish these milestones.

3

DECLARATION OF SCOTT MARCUS

11. When Plaintiffs voiced objections over the encampment milestones, the Parties had a series of discussions and meet and confer sessions beginning on October 13, 2022. The City expressed the difficulty in predicting specific numbers and deadlines for resolving encampments, based on its experience with Inside Safe and other programs, as many of the necessary components to successful encampment resolution are outside the City's control. The Parties continued to meet and confer, and the City proposed a series of revised encampment milestones in its efforts to address the Plaintiffs' concerns.

12. For example, the City sent proposed milestones on November 21, 2023, that included cleaning milestones of 2 encampment cleanings each week in each Council District (i.e. 30 cleanings each week), which the City committed to increase to 5 encampment cleanings each week in each Council District (i.e. 75 cleanings) by the end of Fiscal Year 2024-2025. The Alliance appeared to accept these cleaning milestones. The November 21 proposal also included milestones of 2 encampment reductions per month. Importantly, the City's proposal defined "encampment" based on LAHSA's definition of encampment:  5 or more people experiencing homelessness and 3 or more shelters (tents, makeshifts, or vehicles) within a 300-foot radius or physical boundaries defined by an encampment resolution effort.

13. In response, the Alliance proposed on November 27, 2023, that the City set a milestone of 5,328 encampment reductions, based on the City's share of the total number of tents and makeshift shelters in the County reflected in the 2022 PIT Count.

14. The City continued to propose encampment reductions based on LAHSA's definition of encampments (rather than individual tents and shelters as proposed by the Alliance), including its November 29 proposal as referenced in paragraph 12 of and Ex. F to Ms. Mitchell's Declaration.

15. Given the Alliance's objections, the Parties continued to meet and confer on the proposed milestones, as the Settlement Agreement required. In an effort to resolve the dispute, on December 13, 2023, the City expressed interest in a compromise based on the Citywide number proposed by the Alliance: 5,328. However, the City pointed out

4

DECLARATION OF SCOTT MARCUS

that the Alliance's proposal was based on a specific number of individual tents and makeshift shelters, not a specific number of <u>encampments</u> as that phrase is used by LAHSA. The City also noted that the Citywide number proposed by the Alliance failed to take into account that a certain percentage of tents and makeshift shelters are occupied by non-City Shelter Appropriate individuals whom are the responsibility of the County, not the City.

16. The Alliance responded the next day by claiming their milestones proposal of 5,328 (which the City expressed interest in accepting) was actually an error, and the real number it wanted the City to use as milestones was more than double—12,871. When reduced to include only City Shelter Appropriate individuals, the Alliance was now proposing that the City use 9,789 as its encampment milestone—not the 5,300 it originally proposed. (Correcting for the Alliance's mathematical error, the number is actually 9,782, which the Alliance agreed with.) The Alliance continued to propose that "encampments" be defined as a single tent, shelter, car, or RV, rather than the traditional LAHSA definition originally proposed by the City.

17. The Alliance also started expressing interest in obtaining benefits beyond the terms of the Settlement Agreement (some of which were expressly discussed and rejected by the City in negotiating the Settlement Agreement). For example, on December 15, the Alliance started demanding milestones for specific encampments, including Skid Row and Avenue 45. To be clear, there is no obligation to provide encampment-specific milestones in the Settlement Agreement, nor is the Alliance entitled under the Agreement to direct the City's efforts to encampments of particular interest to its members.

18. Later that same day, December 14, 2023, the Parties met with the Court and Special Master Michele Martinez, and discussed the recent progress made in the ongoing negotiations over the encampment milestones—specifically, the City's interest in the Alliance's Citywide milestone number of 9,782. The Court requested that the City provide revised milestones by December 29.

DECLARATION OF SCOTT MARCUS

19.    The City initially requested the Alliance stipulate to a three week extension of the Court's December 29 deadline (to January 19, 2024) to submit revised milestones. On December 20, the Alliance said it would only agree to an extension if, among other things, (a) counsel for the Alliance got a private audience with Mayor Bass (which the City eventually arranged), and (b) should the City miss the January 19 deadline or request any further extensions, the City would pay the Alliance a $250,000 penalty for every week or partial week of additional delay.  On December 26, the City rejected the Alliance's conditions, opting instead to provide the revised milestones by December 29 as required by the Court.

20.    On December 28, the City proposed Citywide encampment milestones totaling 12,000 over 5 years (more than the 9,782 proposed by the Alliance).  The proposal touted the Citywide approach of the milestones, and did not include milestones broken down district-by-district.  The City provided the same 12,000 Citywide milestone proposal to the Court on December 29.  This is the proposal referred to in paragraph 15 and attached as Ex. G to the Mitchell Decl.

21.    Mayor Bass and other senior City administration leadership, including the City Administrative Officer, Mr. Szabo, met with the Alliance and their counsel on January 4, 2024.  As Ms. Mitchell noted, no agreement was reached at this meeting, but the Parties had further substantial negotiations over the milestones, including the Alliance's renewed interest in district-by-district milestones.  On January 6, the City proposed Citywide encampment milestones of 9,800 (agreeing to and rounding up from the Alliance's proposed number of 9,782) over the 5 year term of the Agreement, and included breakdowns of the milestones district by district, as referenced in paragraph 18 of and Ex. H to Ms. Mitchell's Declaration.

22.    In response to the City's proposed milestones, on January 8, the Alliance issued new demands to the City, including that the City agree to:

    a.  12,000 encampment reduction milestones over 5 years or 9,800 encampment reduction milestones over 4 years;

6

DECLARATION OF SCOTT MARCUS

b. Provide specific milestones and plans for encampments in Skid Row, Highland Park, and near Avenue 45; and

c. Pay the Alliance $1,000,000.

If the City did not agree to these demands, the Alliance threatened to seek sanctions in the amount of $2,950,000, equal to $50,000 for each week of delay between November 21, 2022 and January 8, 2024.

23.    Notably, the Alliance's January 8 letter did not express any concern that the proposed milestones "were not the product of any consultation with the City Council", did not "reflect[] the needs and agreement of each district representative," or were not "vetted."  See Mitchell Decl., ¶ 19.  Nor could they, as none of these new found objections were required under the Settlement Agreement.  Dkt. 421.[4]

24.    In a good faith effort to resolve the issue once and for all, the City agreed to the Alliance's demand for 9,800 encampment reductions—including district-by-district milestones—over 4 years.  The City rejected the Alliance's demands to provide milestones on specific encampments of interest to its members, because that is not required under the Settlement Agreement.  The City also rejected paying millions of dollars to the Alliance, preferring to expend its resources to address homelessness, not to pay counsel.  See Ex. I to Mitchell Decl. (referenced in ¶ 19).  Indeed, counsel for the Alliance has already received $4.2 million in this litigation, $1.8 million from the City (Dkt. 421) and $2.4 from the County (Dkt. 647).

25.    On January 11, the Alliance again sought Court assistance in resolving the ongoing negotiations over the encampment milestones.  In response, Judge Andre Birotte convened a meeting amongst the Parties on January 17, at which the Parties agreed on next steps to resolve new objections raised by the Alliance.

26.    One week later, on January 24, the Alliance threatened to file a motion seeking sanctions against the City over the encampment milestones, even before the City Council was scheduled to address the matter on January 31.

---

[4] In fact, the City did not learn of these concerns until January 17, *after* the City agreed to accept the milestones proposed by the Alliance in the first place.

7

DECLARATION OF SCOTT MARCUS

27. On February 1, the City confirmed its proposal of 9,800 encampment reduction milestones over 4 years, and provided updated district-by-district milestones, as referenced in paragraph 20 of and Ex. J to Ms. Mitchell's Declaration.  The City contends these milestones comply with the requirements under Paragraph 5 of the Settlement Agreement, and no further order of compliance is warranted.

28. Attached hereto are the following, which I am informed and believe are all publicly available through the LA City Clerk Connect online system and website at https://cityclerk.lacity.org/m.clerkconnect/#/

    a. Exhibit 1 is a true and correct copy of the report to Paul Krekorian, City Council President, Nithya Raman, Chair, Housing and Homelessness Committee, and Bob Blumenfield, Chair, Budget, Finance and Innovation Committee from Matthew W. Szabo, City Administrative Officer, dated February 1, 2024, concerning Homelessness Emergency Account- General City Purposed Fund Eleventh Status Report (C.F. 22-1545) as of Friday, January 19, 2024;  https://clkrep.lacity.org/onlinedocs/2022/22-1545-s14_rpt_cao_2-01-24.pdf

    b. Exhibit 2 is a true and correct copy of the report to Paul Krekorian, City Council President, and Nithya Raman, Chair, Housing and Homelessness Committee, from Matthew W. Szabo, City Administrative Officer, dated October 13, 2023, concerning Homelessness Emergency Declaration- 2023-24 First Quarterly Report.  C.F. 23-0652-S2; https://clkrep.lacity.org/onlinedocs/2023/23-0652-S2_misc_10-13-23.pdf.

    c. Exhibit 3 is a true and correct copy of the report to Paul Krekorian, City Council President, and Nithya Raman, Chair, Housing and Homelessness Committee, from Matthew W. Szabo, City Administrative Officer, dated October 27, 2023, concerning Homelessness Emergency Declaration- Supplemental- 2023-24 First Quarterly Report- (C.F. 23-0652-S2); https://clkrep.lacity.org/onlinedocs/2023/23-0652-S2_misc_10-27-23.pdf.

DECLARATION OF SCOTT MARCUS

d.  Exhibit 4 is true and correct copy of the report to Paul Krekorian, City Council President, and Nithya Raman, Chair, Housing and Homelessness Committee, from Matthew W. Szabo, City Administrative Officer, dated January 12, 2024, concerning Homelessness Emergency Declaration-Supplemental- 2023-24 Second Quarterly Report- (Council File No. 23-0652).

e.  Exhibit 5 is a true and correct copy of the report to the City Council from Matthews W. Szabo, City Administrative Officer and Sharon M. Tso, Chief Legislative Analyst, dated December 1, 2023, concerning Alliance Settlement Agreement Progress as of September 30, 2023; https://clkrep.lacity.org/onlinedocs/2023/23-1022_misc_12-01-23.pdf.

29.  Finally, I reviewed Plaintiffs' Application For Leave To File Under Seal Motion For Order Re Settlement Agreement Compliance And Sanctions, as well as the Declaration of Elizabeth A. Mitchell In Support Of Plaintiffs' Application For Leave To File Under Seal Motion For Order Re Settlement Agreement Compliance And Sanctions.

30.  The City never asked that any documents be filed under seal.  Rather, counsel for the Alliance stated in her January 24 email that she had identified certain exhibits Plaintiffs intended to file in support of their Motion for Sanctions that, according to her, potentially need to be sealed and/or redacted, and asked if the City wanted Plaintiffs to continue to treat those documents (and possibly others) confidential. In response, I suggested the Parties agree on a stipulated set of facts in lieu of submitting a voluminous set of unnecessary exhibits under seal, redacted, or otherwise.

31.  On January 29, Ms. Mitchell stated the Alliance would not agree to a stipulated set of facts, and then stated that none of the exhibits should be filed under seal, despite her earlier statement that some potentially needed to be sealed.  I responded that there was no benefit in making the details of our negotiations public, and that, at most, the two letters summarizing the history and issues would be sufficient for the Court to rule on their motion, and anything more would be unnecessary.

9

DECLARATION OF SCOTT MARCUS

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct, and that this Declaration was executed on February 12, 2024, at Los Angeles, California.

*/s/ Scott Marcus*
Scott Marcus

10