**FILED**
CLERK, U.S. DISTRICT COURT
03/04/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: kdu DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, ET AL.<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>Defendant. | Case No.  2:20-cv-02291-DOC-KES<br><br>**NOTICE FROM THE COURT RE LETTER FROM COUNCIL MEMBER BOB BLUMENFIELD** |

1.



# BOB BLUMENFIELD
Councilmember, Third District

March 1, 2024

The Honorable David O. Carter
United States District Court
Central District of California
411 West Fourth Street, Room 9-160
Santa Ana, CA 92701

Re:  LA County Alliance Settlement Case NO. 2:20-cv-02291 DOC (KES)

Dear Hon. Judge Carter,

I read with interest the County of Los Angeles' First Status Report Pursuant to the Settlement Agreement filed on January 30, 2024, and am pleased to see some progress towards implementing their additional beds for Mental Health/Substance Use Disorder per this Agreement. I have several concerns about the implementation of this Settlement, to which the City of Los Angeles is not a party, but about which the City has great hope for meaningful progress in our efforts to serve the unsheltered and reduce street homelessness and encampments under our own LA Alliance Settlement Agreement. As you know, the City's ability to implement its own Agreement relies on funding for services and support from LA County, which has not yet been fully defined or realized. The City and County have been negotiating an MOU but have not reached an agreement for Settlement implementation.

The Court may find that since the City of Los Angeles is not a party to this settlement agreement, the City (and myself as a representative of 260,000 residents) have no standing to speak up about these concerns. However, having worked with you and followed the direction of both LA Alliance lawsuits since 2020, I am hopeful that the Court may be able to facilitate meaningful progress in a timely manner.

In particular, the lack of an MOU with the County is a challenge for the city as the payment for services (bed rate) and list of services to be provided remain incomplete. If the Court could encourage the completion of an MOU prior to the City Council's consideration of the FY 24/25 budget (anticipated after the release of the Mayor's Budget, which is required by April 20, 2024, by Charter), it would be most beneficial.




The Honorable Judge Carter
March 1, 2024
Page 2

While the September 12, 2022, non-binding preliminary agreement between the city and the County, signed by the County's Chief Executive Officer and City Administrative Officer, sets the framework for the Alliance settlements, the Alliance Agreement between the City and the County, through a future MOU, will require willingness from the County to avail and ensure services to residents at City interim and permanent sites. Unfortunately, Court oversight and agreements with the County are necessary to ensure general relief, social services, health, mental health, and re-entry services are being delivered to County residents within the city.

The current Roadmap Agreement avails $60 million in funding for services every year for five (5) years for the 6,700 new homeless housing interventions the City built. However, the $60 million is not enough to cover the level of services actually required, and the City funds supplemental services at our Roadmap sites, and on January 9, 2024, authorized a mid-year bed rate adjustment for service providers. (See CAO Report CF 23-1348). Additional bed rate increases will occur for both City and County beds, and it will be important to establish a "daily bed rate" that clearly defines "Mainstream services" and "Enhanced services" offered by service providers and offered by County department staff.

Bed rates determine how many staff members a service provider can hire to operate a site, which impacts their capacity and ability for service-delivery. Service providers operating our Roadmap, Alliance, and Inside Safe sites state a higher bed rate is required to provide case management, housing navigation, and connections to health and behavioral health services. The County needs to play a more active role in availing County staff to support the nonprofit service providers operating "low-barrier" City sites. As the Roadmap Agreement expires in 2025, it will be important to identify a sustained funding source for beds created by the Roadmap Agreement, and a review by the Court on the compliance with the Roadmap Agreement is important to set the foundation for this next Alliance Agreement.

The MOU with the County should include agreed-upon definitions of "Mainstream" and "Enhanced" County services, clarification for what the City is responsible to provide for "City appropriate" shelter and what the County provides to complement the City's investment, a bed rate for payment that covers the expenses of the services whether Mainstream or Enhanced by location, including retroactive payment for services that were obligated but not provided by the County during the term of the Agreement.

Additionally, it would be mutually beneficial to include clear direction for how clients in City interim housing can access crisis, behavioral health bridge housing, high service need interim housing, and other County services. Also, important would-be clear direction for how people experiencing homelessness on the streets in the City can access County services and the required new MH/SUD beds.

The Honorable Judge Carter
March 1, 2024
Page 3

Finally, it would be helpful to all if the MOU provided clarity that the City's General Fund and investments should be focused on providing housing and an obligation that the County provides services, with the City funds only tapped for health, mental health, or substance abuse services rarely and as an exception once County funds and resources have been exhausted and reimbursement by the County cannot be obtained. Until an MOU is signed, the City will continue to pay for services, "mainstream" and "enhanced," by contracting with service providers already contracted with the County to provide health, mental health, and substance use disorder treatment services for people currently at our city sites. Including these issues in an MOU would assist the city with creating its own mechanisms to comply with the settlement, as approved by the Council in the Alliance Implementation Motion CF 23-1054 (passed by Council November 2023) which I authored.

I would like to call to your attention the following key concerns in the County of Los Angeles' First Status Report, and I appreciate your consideration of these issues as you oversee this agreement:

1) **There is no path for placement of individuals who would be better served with higher acuity programs/County-appropriate shelter**, and in the meantime, many individuals with these needs remain in the City's low barrier City-appropriate interim housing where they often are exited or cause disruption to other clients due to their unmet needs. Providing sufficient access to County-funded high-service needs beds is a critical point in the City's Settlement (section 9 County obligations) which has not been implemented.

2) **Mainstream County services which are supposed to be provided to the City's interim housing program under the prior Roadmap agreement have not been delivered**, and there appears to be no prioritization for the city in the newly created 900 beds reported in this document for existing Roadmap clients.

3) **The status report does not include a list of which Interim Housing sites are eligible** for and should be receiving these County services, which makes it difficult for the City to ensure they are being provided, as required, to the maximum of 3,100 interim housing units. Without a list and tracking, the City is unable to know when/if County is deploying staff to interim sites or if funding for additional services via contracts with service providers are occurring.

The Honorable Judge Carter
March 1, 2024
Page 4

4) **The County seems to rely on reporting by the city for requests made for Department of Mental Health (DMH) services and tracking of those requests by the city**, but my staff and I were not informed that our teams needed to track these requests. I do not believe that there is any system in place for the city to meet its responsibility to provide this information and thus no accountability from the County to provide services. Furthermore, my staff have only very limited access to HMIS data about clients (i.e., only name and service provider they are linked to, if there is one), so the city has very little ability to ensure that a client has been enrolled in County services once referred.

5) **Subsidies, vouchers, and other assistance required in this Settlement do not appear to have any allocation towards residents of the city** in interim housing or connection to the responsibilities of the city in its own Settlement Agreement with the LA Alliance. In particular, a Board and Care subsidy could be a life-saving resource for an individual on the street in my district with ongoing medical needs who has been placed repeatedly in our interim housing programs only to walk away due to ongoing mental health issues, but this resource has never been made available to her.

6) **The Exhibit B chart which lists referrals to High Service Need Interim Housing beds lacks information about which City or location these referrals were made from and has no information about where those beds are.** Even so, with 900 new contracted beds the report shows there are only a total of 109 clients placed which makes it difficult to understand why Mental Health beds remain to difficult to access.

7) **The Exhibit D chart listing placements in facilities by facility does not indicate where the client had previously been residing, making it impossible to determine if residents of Los Angeles, and particularly Skid Row, are benefiting from these placements.** Further there is no information provided about the requests per individual or site.

8) **Implementation of this Agreement relies in part on coordination from LAHSA, a** Joint Powers Authority that is not a party to the Agreement, and service providers who may not be coordinating their efforts to ensure compliance with this Agreement.

9) **Implementation of the City's Settlement Agreement assumes prioritization for placement of people experiencing homelessness in the City of Los Angeles to Permanent Supportive Housing beds created in the City of Los Angeles**, but the placement of individuals by LAHSA matchers/service providers relies on a different system tied to the CES system which has facilitated placement of non-City residents in City-funded units.

The Honorable Judge Carter
March 1, 2024
Page 5

As the City strives to improve the lives of people with disabilities, substance use disorder, ongoing medical conditions, mental health conditions, your assistance to spur action in a timely manner would be appreciated.

If I can be of help to you in this effort, please do not hesitate to contact me or my Chief of Staff Lisa Hansen at (213) 473-7003.

Sincerely,

BOB BLUMENFIELD
Councilmember
City of Los Angeles

BB/lh/sp