UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | | |
|---|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, ET AL., | ) | CASE NO: 2:20-CV-02291-DOC-KES |
| | ) | CIVIL |
| Plaintiffs, | ) | |
| | ) | Los Angeles, California |
| vs. | ) | |
| | ) | Thursday, March 7, 2024 |
| CITY OF LOS ANGELES, ET AL., | ) | (1:36 p.m. to 1:45 p.m.) |
| | ) | (2:01 p.m. to 2:11 p.m.) |
| Defendants. | ) | |

HEARING RE:

MOTION TO ENFORCE THE SETTLEMENT AGREEMENT
AND FOR SANCTIONS

BEFORE THE HONORABLE DAVID O. CARTER,
UNITED STATES DISTRICT JUDGE

**APPEARANCES:**                 SEE PAGE 2

Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Karlen Dubon

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>APPEARANCES</u>:


For Plaintiffs:              ELIZABETH A. MITCHELL, ESQ.
                             Umhofer Mitchell & King
                             767 S. Alameda Street, Suite 270
                             Los Angeles, CA 90021
                             213-394-7979

                             MATTHEW D.  UMHOFER, ESQ.
                             Umhofer Mitchell & King
                             767 S. Alameda Street, Suite 270
                             Los Angeles, CA 90021
                             213-394-7979


Also present:                PAUL WEBSTER


For Defendants:              JENNIFER M. HASHMALL, ESQ.
                             Miller Barondess, LLP
                             1999 Avenue of the Stars, Suite 1000
                             Los Angeles, CA 90067
                             310-552-4400

                             SCOTT D. MARCUS, ESQ.
                             Los Angeles City Attorney's Office
                             200 N. Main St.
                             7th Floor, Room 675
                             Los Angeles, CA 90012
                             213-978-7558


For Intervenor:              SHAYLA R. MYERS, ESQ.
                             Legal Aid Foundation of LA
                             7000 S. Broadway
                             Los Angeles, CA 90003
                             213-640-3983

                             CAROL A. SOBEL, ESQ.
                             1158 26th Street
                             Suite 552
                             Santa Monica, CA 90403
                             310-393-3055


Proposed Intervenor:         STEPHEN YAGMAN, ESQ.
                             Yagman & Reichmann
                             333 Washington Boulevard
                             Venice Beach, CA 90292
                             310-452-3200

**3**

**INDEX**

**WITNESS TESTIMONY**                                                    **PAGE**

**MATT SZABO**

  **COURT INQUIRY**                                                         **5**

EXCEPTIONAL REPORTING SERVICES, INC

**4**

**Los Angeles, California; Thursday, March 7, 2024; 1:36 p.m.**

**(Call to Order)**

**THE COURT:**  Please be seated.  All parties are present.

I want to disclose to you that I received a call from Mayor Bass over the lunch hour.  She's in Paris right now pursuant to the 2028 Olympic games, along with Paul Kerkorian, who's the president (phonetic) counsel, and a number of other people for the City.

We both have each other's cellphone number.  I want you to know that.

She's represented to the Court the following -- and I'll have her staff check this with her so that there's no misstatement on my part -- that the mayor is agreeable to transparency and accountability concerning the invoices and the underlying work documents for services on first and last matter, Inside Safe, and future agreements concerning homelessness.

Also, she's returning -- and I've said that I will continue a portion of this matter next week out of courtesy to her so she's able to participate, speaking to Marcus and the other parties if you choose to talk further.  And I think that's a courtesy that the Court could readily extend to the mayor.

Second, the controller, Sergio, the assistant, will

**EXCEPTIONAL REPORTING SERVICES, INC**

be here tomorrow at 9:00 o'clock.  And as such, they will be testifying concerning a number of questions.

But I'm going to ask Matt Szabo to step forward for just a moment.  I'd like to put you under oath now, and if you'd come here for just a minute, please.

If you'd administer your oath to the executive.

THE CLERK:  Please raise your right hand.

**MATT SZABO, SWORN**

THE COURT:  Thank you, sir.  If you'll please take the witness stand, it's just to my right.  Thank you.

And would you be kind enough to state your name for the record after you're comfortably seated?

MR. SPEAKER:  You want me to grab that?

Did we take the chair away?  There was a purpose (inaudible).  Thank you.  (Inaudible) Mr. Szabo's been --

MR. SPEAKER:  Comfortable chair.

THE COURT:  -- kind enough to retrieve a chair.  Okay.  State your name for the record, please.

THE WITNESS:  My name is Matt Szabo.

THE COURT:  Would you spell your last name, please?

THE WITNESS:  It's S-Z-A-B-O.

THE COURT:  Sergio and the controller will be present tomorrow to testify in this matter.  There's been a lot of conversation you've heard sitting in the audience about the audit.

And I know that you emailed the special master your thoughts about this.  But I want this under oath, and that is if a program or programs are centralized in the mayor's office, does the controller have the authority and power to audit those programs?

MR. MARCUS:  Your Honor, Scott Marcus on behalf of the City.  I don't know that Mr. Szabo is the appropriate witness for that.  That's a legal determination that the Court can make based on the charter --

THE COURT:  Thank you, overruled.  You can answer that question, please.

THE WITNESS:  So in normal circumstances, if issues like this are raised, I would consult with the City attorney to (inaudible) --

THE COURT:  Sure.

THE WITNESS:  -- determination on the charter.  But typically -- so I am not in a position to opine on --

THE COURT:  I understand that.

THE WITNESS:  -- this case.  Typically programmatic audits are not conducted by the controller's office on elected officials.

THE COURT:  All right.  And that would mean that the audits of these different programs, whether it's LA Alliance or Inside Safe, at least subject to disagreement and advice of your counsel of course who may disagree, but aren't subject to

Matt Szabo - Court Inquiry                                                7

an audit; is that correct, by the controller's office?

THE WITNESS:  Again, under this circumstance, the typical determination would be that the programs under the purview of the mayor, in this case Inside Safe and its associated programs, would not be.

Other programs that serve to comply with the requirements of the alliance would be.

THE COURT:  Matt, if you can't audit these programs, how would there be public accountability unless there's an outside audit?  In other words, by you -- by I mean the controller?

THE WITNESS:  Well, there are a number of ways that the City conducts audits.  My office, for example, does have the authority to conduct programmatic audits, and from time to time we are asked to do so by the City counsel.

THE COURT:  Let's assume, though, that the Court might be uncomfortable with the very entity being audited conducting the audit.  Let's assume that's a concern.

THE WITNESS:  So I would say that the office of the CAO and the office of the City controller are the two primary entities that would conduct or contract for outside audits.

THE COURT:  Okay.  If the controller is unable to audit any programs run by the mayor's office, then the concern might be that the mayor's office shifting from addressing homelessness on a district by district basis to a citywide

EXCEPTIONAL REPORTING SERVICES, INC

approach centralized in the mayor's office would shield -- and shield's a bad word, but shield the City from accountability and oversight, wouldn't it?

MR. MARCUS:  Your Honor, again, I need to object. This is not anything that was part of the motion for sanctions. An audit was not part of the relief requested.  It is not part of the briefing.  I do not think Mr. Szabo is an appropriate witness to answer these questions at this time.

THE COURT:  Well who would be?  Because Mr. Szabo contacted with the special master, who I'll bring out in a moment.  And I'm going to show you both the email in just a moment.

So the controller cannot audit a program under the control of the mayor.  He can't audit other elected officials. You disagree with that.

MR. MARCUS:  I do not disagree with that.  That is --

THE COURT:  All right, thank you.

MR. MARCUS:  -- what is stated in our charter.

THE COURT:  All right.

MR. MARCUS:  But, again, --

THE COURT:  Thank you.

Is that still your opinion?  That doesn't mean it's legally binding.  Is that still your opinion?

THE WITNESS:  That's my opinion, yes.

THE COURT:  Okay.  Now, the controller's going to be

Matt Szabo - Court Inquiry                    **9**

here tomorrow.  Would you be present?  Because there may be the controller's trying to search out this answer also.

And apparently (inaudible) the special master I'm learning that this has been a debate for well over a year within the controller's office.  So their position is equivocal and they're not certain what your position is on this, although there may be a conflict.

And you can work that with your counsel.  They'll -- they can bring their counsel tomorrow also.

And I don't mean to embarrass you in any way.  First of all, humbly thank you, okay.  And I appreciate the candidness of this.

And, counsel, I'm not going to allow any questions at this time.  There'll be questions later on, upon receipt of that email.

Of course I'm concerned how an audit would be conducted if not through an outside source.

So, Matthew, you may step down.  I'm going to ask you to be here tomorrow at 9:00 o'clock.

(Witness steps down.)

All right.  We'll take testimony from the controller tomorrow.  Are you prepared to either reach a stipulation or present evidence concerning the conversation that you've had with Mercedes Marquez?

**MS. MITCHELL:**  Two things, Your Honor.  So, one, we

did reach a stipulation.  I emailed chambers with a copy of that stipulation right before we began back at 1:30, so that's already done.

THE COURT:  Okay.  I'll get off the bench.  If you can reach a stipulation, I'm going to accept that.

MS. MITCHELL:  Yes.

THE COURT:  If you can't reach a stipulation, then the testimony will (inaudible) you can call Paul Webster today.

If Daniel Conway isn't available, try tomorrow because we'll be in session tomorrow at 9:00 o'clock with the controller.

And I can take Conway's testimony or I can delay that.  But now I want to pay the courtesy of the mayor returning next Thursday so she's involved.

MS. MITCHELL:  Your Honor, so a couple things.  So we did reach a stipulation.  The Court has a copy of it in chambers email.

THE COURT:  I do?

MS. MITCHELL:  So that's done.  The stipulation was sent to DOC chambers 20 minutes ago.

THE COURT:  It was.

MS. MITCHELL:  Yes.

THE COURT:  Well let me get that stipulation then.

MS. MITCHELL:  Okay.

THE COURT:  I apologize.  I'm going to get off --

**11**

                    **MS. MITCHELL:**  No problem.

                    **THE COURT:**  -- the bench so -- we've been back in the back talking about all of you folks, --

                    **MS. MITCHELL:**  Briefly, Your --

                    **THE COURT:**  -- so we'll be right back.

                    **MS. MITCHELL:**  -- Honor, before the Court goes, can I make a suggestion that if we're coming back next week for the mayor, that we also have the controller come back next week as well and we handle both -- all pieces --

                    **THE COURT:**  Oh, no.

                    **MS. MITCHELL:**  -- at the same time?

                    **THE COURT:**  No, no.  I want this tied down in close proximity to Mr. Szabo.

                    **MS. MITCHELL:**  Okay.

                    **THE COURT:**  And then we can take additional testimony.

                    **MS. MITCHELL:**  Okay.

                    **THE COURT:**  But right now I don't want to go in over to third session because we haven't reached resolutions or accommodation I'll be writing as of Thursday night next week, okay.

                    **MS. MITCHELL:**  Thank you, Your Honor.

                    **THE COURT:**  So we're in recess.  I'll go get the stipulation.

                    //

(Recess taken from 1:45 p.m. to 2:01 p.m.)

(In progress)

THE COURT:  -- to CourtSmart.  And CourtSmart isn't performing up to capability.  So the MIS people are here with the Court's great appreciation.  And if we have any trouble with distortion, let me know because we're coming back tomorrow at 9:00 o'clock anyway, okay?

THE CLERK:  I'm sorry, can you get appearances one more time for the reporter?

THE COURT:  For the reporter, you'll need the appearances one more time because we've switched to CourtSmart.  So just remain seated.

Ms. Mitchell, would you start with your appearance again?

MS. MITCHELL:  Yes, Your Honor.  Elizabeth Mitchell from Umhofer, Mitchell, and King on behalf of Plaintiff LA Alliance.

Matthew Umhofer has had to leave.  He's going out of town.  I have next to me Paul Webster, Executive Director of LA Alliance.

THE COURT:  Okay.  And proposed Intervenors.

MR. YAGMAN:  Good morning, Your Honor.

Stephen Yagman on behalf of the proposed intervenors. I have a conflict tomorrow morning that I can't be here.

THE COURT:  Then you won't be here.

Mr. Marcus on behalf of the City.

**MR. MARCUS:**  Thank you.  Scott Marcus on behalf of the City of Los Angeles.

**THE COURT:**  Okay.  And on behalf of the County.

**MS. HASHMALL:**  Good afternoon, Your Honor, Mira Hashmall for the County.

**THE COURT:**  And then Ms. Sobel and Ms. Myer.

**MS. SOBEL:**  Carol Sobel on behalf of Intervenors.

**MS. MYERS:**  Shayla Myers on behalf of Los Angeles Community Action Network and LA Catholic Worker.

**THE COURT:**  Okay.  The Court's received over the lunch hour stipulated facts re: RFQ agreements, March 15th, 2023.

Do we have the capability of putting this up on the ELMO, Una (phonetic), Karlen?  Do we have an additional copy we can put up?

**(Clerk/Judge confer.)**

**THE COURT:**  Counsel, when I'm done reading this, I'm going to ask you in light of the stipulation if either the City or LA Alliance or anyone else would like to add additional information to the stipulation; and, if so, then you can call a witness.  If you're satisfied, then so be it.

But in reading this, it would seem to the Court that I would then, in writing an opinion, find that you were misled from March 15th minimally through October 16th, Ms. Mitchell,

by the representations of Mercedes is it Lewis?

**MS. MITCHELL:**  Marquez.

**THE COURT:**  Marquez, Mercedes Marquez, in terms of the representations made to you.  And I'm putting all parties on fair notice that you can -- if I go with this stipulation, then maybe neither one of you are calling additional witnesses.

But otherwise you're both welcome to call those witnesses.  But that would be the Court's belief and probably my written opinion concerning this.  Now, what I do with it is subject to argument.

But, all right, stipulated facts re:  RFQ agreement, March 15th, 2023.

First, LA Alliance, represented by Elizabeth Mitchell and Daniel Conway, met with the City represented by Scott Marcus, David Michaelson, and Mercedes Marquez on March 8th and again March 15th, 2023 to discuss the City's noncompliance with the agreement.

On March 15th, 2023 the City through then-Chief Housing and Homelessness Officer Mercedes Marquez claimed that the City had significant plans intended to come into compliance with Section 5.2 subsection two and subsection four.

Specifically, Marquez stated that the City had already put out an RFQ, request for quote or request for qualification, for service outreach providers, would be fully staffed with an assigned service outreach provider for each

district by July 1st, 2023, and would have each district fully assessed, which was described as identifying the numbers of unsheltered PEH, plus a description of the needs of various groups, including an estimate of the number of individuals with serious mental illness and substance use disorder in each district by September 30th, 2023.

Ms. Marquez promised that once the effort was complete, the City would then provide the Alliance its proposed encampment milestones and deadlines by October 1st, 2023.

Second, Elizabeth Mitchell summarized the meeting in an email thereafter directed to Scott Marcus, Mercedes Marquez, and David Michaelson.

In our last meeting, we talked about the RFQ that the City has put out for a list of qualified service outreach providers, and that the City expects to be fully staffed with the district's chosen providers by July 1st.

We also discussed that the City could commit to having each district fully assessed and could get us a list of proposed milestones and deadlines within three months thereafter, October 1st.

Third, relying upon the promises of the new mayor's representative and extending a good faith opportunity to a new administration, LA Alliance agreed to the extension.

Mr. Marquez, on behalf of the City, confirmed the request for extension and agreed the City would provide

**16**

district-specific encampment milestones by October 1st, 2023.

Fourth, the City did not complete the RFQ process as represented to LA Alliance. It did not have each district fully assessed to help establish appropriate milestones as the City had committed to on March 15, 2023.

Two days after October 1st, the City emailed its encampment engagement cleaning and resolution proposal that contained no proposed district by district deadlines or milestones at all.

First of all, Ms. Mitchell, your signature's on that.

And, Mr. Marquez, I understand that you were going to sign this but there was a trouble with the --

MR. MARCUS: Scott Marcus on behalf of the City, Your Honor. I did sign a copy that was brought out by the judicial assistant.

THE COURT: I don't have that so --

MS. MITCHELL: That -- this one right here's signed.

THE COURT: Oh, do you have it right here?

MS. MITCHELL: Yes.

MR. MARCUS: I believe --

THE COURT: Are both of your signatures on that?

MR. MARCUS: I believe the one on the ELMO has both of our signatures, yes.

THE COURT: Una?

MS. SPEAKER: Yes.

**17**

THE COURT: Okay. Thank you. Then I'll order that be filed with the Court.

In light of that, do you wish to present any additional witnesses, with a forewarning that here I would find quite frankly whether it was a confession or admission based upon this stipulation that you were misled?

MS. MITCHELL: I would agree, Your Honor. And, no, we do not intend --

THE COURT: Well, you have an opportunity to embellish that or cross examination if the other party wants to call either Mr. Conway or the gentleman here in court, Paul Webster, or Mercedes Marquez. I've given you all that opportunity for both sides.

MS. MITCHELL: And I --

THE COURT: Otherwise, I'm not going to be quibbling about this in the future.

And I'm warning each of you, I would find that you were misled in this matter.

MS. MITCHELL: I appreciate that, Your Honor. On behalf of the Alliance, we do not intend to present additional witnesses.

THE COURT: Do you wish to cause any further witnesses, Mr. Marquez or Mr. Marcus?

MR. MARCUS: Thank you, Your Honor. The City does not need to call any additional witnesses. We do agree with

EXCEPTIONAL REPORTING SERVICES, INC

**18**

the facts as stated in the stipulation, with one caveat.

I believe the Court misspoke in reciting paragraph three --

**THE COURT:**  I'm sorry.

**MR. MARCUS:**  -- that Ms. Marquez sent the email, not me, Mr. Marcus.  I --

**THE COURT:**  Let me read that again then.

**MR. MARCUS:**  -- just wanted to make that clear.

**THE COURT:**  My apologies.  Relying --

**MR. MARCUS:**  And then if I could --

**THE COURT:**  -- upon the promises of the new mayor's representative and extending a good faith opportunity to a new administration, LA Alliance agreed to the extension.

Mr. Marcus on behalf of the City confirmed the request for extension and agreed the City would provide district specific encampment milestones by October 1st, 2023. Have I read that correctly?

**MR. MARCUS:**  Yes.

**THE COURT:**  I apologize for any mistake in the first reading.

**MR. MARCUS:**  I just wanted to make sure the record was clear.

And again, Your Honor, the City is stipulating to those facts but not to the legal effect of those facts and whether those facts should result in any sanction to the City.

**19**

The City would like an opportunity to continue to argue that if any additional argument is needed from the Court.

          **THE COURT:**  As you know with transparency, you know my concerns going in.  You have a chance on either side to call witnesses to bolster your record, to cross examine.  Otherwise I've given you a fairly tentative feeling about this matter, and that is that you were misled by the City.

          All right.  Now, my suggestion's this.  We're going to reconvene at 9:00 o'clock.  We would be in consecutive session each day, but the mayor's in Paris.  I want to afford every courtesy so she can return, consult with her staff out of courtesy.

          But the controller will be here tomorrow to make whatever representations concerning this audit.

          You're ordered back to this Court at 9:00 o'clock, okay.  I think you should get on the road right now, and so should we.  We'll see you at 9:00 o'clock tomorrow.  Thank you.

          **MS. MITCHELL:**  Thank you, Your Honor.

          **MS. SPEAKER:**  Thank you, Your Honor.

     **(This proceeding was adjourned at 2:11 p.m.)**

20

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    **March 8, 2024**

      **Signed**                                    **Dated**

*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**