UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, ET AL., | ) CASE NO: 2:20-CV-02291-DOC-KES |
| | ) |
| | ) CIVIL |
| Plaintiffs, | ) |
| | ) Los Angeles, California |
| vs. | ) |
| | ) Friday, March 8, 2024 |
| CITY OF LOS ANGELES, ET AL., | ) (9:04 a.m. to 9:18 a.m.) |
| | ) (9:28 a.m. to 9:34 a.m.) |
| Defendants. | ) |

HEARING RE:

MOTION TO ENFORCE THE SETTLEMENT AGREEMENT
AND FOR SANCTIONS

BEFORE THE HONORABLE DAVID O. CARTER,
UNITED STATES DISTRICT JUDGE

**APPEARANCES:**          SEE PAGE 2

Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Karlen Dubon

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

APPEARANCES:


For Plaintiffs:             ELIZABETH A. MITCHELL, ESQ.
                            Umhofer Mitchell & King
                            767 S. Alameda Street, Suite 270
                            Los Angeles, CA 90021
                            213-394-7979


For Defendants:             SCOTT D. MARCUS, ESQ.
                            Los Angeles City Attorney's Office
                            200 N. Main St.
                            7th Floor, Room 675
                            Los Angeles, CA 90012
                            213-978-7558


For Intervenor:             SHAYLA R. MYERS, ESQ.
                            Legal Aid Foundation of LA
                            7000 S. Broadway
                            Los Angeles, CA 90003
                            213-640-3983


Also present:               KENNETH MEJIA, CITY CONTROLLER

                            SERGIO PEREZ


Special Master:             MICHELE MARTINEZ

**3**

<u>**INDEX**</u>

<u>**WITNESS TESTIMONY**</u>                                             <u>**PAGE**</u>

**KENNETH MEJIA**

  **COURT INQUIRY**                                                   **5**

EXCEPTIONAL REPORTING SERVICES, INC

**4**

Los Angeles, California; Friday, March 8, 2024; 9:04 a.m.

(Call to Order)

THE COURT:  Please be seated.  Thank you very much. That's awfully nice of you.  First of all, it's very much appreciated but --

Well, first of all, good morning.

MR. MARCUS:  Good morning, Your Honor.

MS. SPEAKER:  Good morning, Your Honor.

THE COURT:  I hope all of you are well.  I received a text this morning about 7:30 from Mayor Bass who is in Paris and Counsel President Paul Krekorian.  I'm, first of all, going to ask the Comptroller if he's here.

MR. MARCUS:  He is, Your Honor.

THE COURT:  Thank you.  If you'd come forward, sir. It's a pleasure.

Is Sergio here also?

Sergio, why don't you come on up also?  We'll swear the Comptroller at this time.

THE CLERK:  Please raise your right hand.

KENNETH MEJIA, CITY COMPTROLLER, SWORN

THE COURT:  All right.  Thank you, sir.  If you'd take the stand.

And, Sergio, if you'd like to stand next to him as his able advisor, it's appreciated.

MR. PEREZ:  Appreciate it.

THE COURT:  And before I begin, I think much of this has been alleviated this morning.  So I want to disclose to you the conversation that the Mayor has.  And I'm going to begin my complimenting the Mayor and the Council President on their leadership in this matter.

So, Michele, would you --

SPECIAL MASTER MARTINEZ:  Can you --

THE COURT:  Well, we'll swear him in just a moment.

So, Sergio, just have a seat for a moment.  I want you to hear this first before we swear you.  Okay?

Or you want -- maybe take the testimony first?

SPECIAL MASTER MARTINEZ:  First, yes.

THE COURT:  All right.  We'll take your testimony first and I think that this may have been resolved but -- first of all, sir, would you state your full name, please?

MR. MEJIA:  City Comptroller Kenneth Mejia.

THE COURT:  It's a pleasure to meet you.  I've talked to you by phone and I've talked to Sergio.  So it's nice to see you.

Have we sworn the gentleman?

THE CLERK:  Yes.

THE COURT:  Okay.  Does the Mayor have control over your budget?

MR. MEJIA:  Yes.

THE COURT:  And if the homeless programs are

centralized in the Mayor's office, does the Comptroller have the authority to audit that program?

MR. MARCUS:  Again, Your Honor, Scott Marcus for the City objecting that that calls for a legal conclusion.

MR. MEJIA:  Yes, the City Comptroller's office --

THE COURT:  Thank you very much.

MR. MEJIA:  -- can audit City programs.

THE COURT:  And would you state that again?

MR. MEJIA:  Yes, the City Comptroller can audit City programs.

THE COURT:  Matt Szabo testified yesterday that the Comptroller cannot audit a program under the control of the Mayor and that he can't audit elected officials.  Do you disagree with that?

MR. MEJIA:  When it comes to a City program, especially those housed under elected officials, we have disagreements with the Mayor and the City Attorney's office but we believe there's nothing in the charter that prohibits the Mayor or the City Council from voluntarily submitting themselves to an audit by our office.  So we disagree.

THE COURT:  If you can audit these programs, have you done so -- these homeless programs?

MR. MEJIA:  Not yet, due to our limited resources.

THE COURT:  Do you have any future plans that you've announced to audit these programs?

**MR. MEJIA:**  Yes.

**THE COURT:**  When?

**MR. MEJIA:**  Depending on when availability for our resources free up.

**THE COURT:**  I asked the Special Master to check back and we didn't find -- and I want you to correct me -- any public officials or their programs that had been audited.  And could you help me with what all you've conducted as a public official?

**MR. MEJIA:**  Yes.  So, so far -- and I want to preface this.  Due to our limited resources, we have about six performance auditors for --

**THE COURT:**  Sure.

**MR. MEJIA:**  -- 40-plus departments.  We have completed an audit on interim housing data, shelter beds.  In addition, we've completed an audit on the LAPD's helicopter program.  We also have audits in progress such as homelessness, Pathways to Permanent Housing.  We also have a -- our auditing is working on the LAPD's compliance with military equipment policies on the State level.  In addition, we have two other audits such as the City's Housing Department's Tenant Anti-harassment Ordinance and, in addition, the City's Affordable Housing efforts.

**THE COURT:**  I'm going to represent to you and state that I don't know but there's an arguable position that at

least $600 million -- long before you were auditor -- flowed through the provider programs in the City of Los Angeles -- and that's a minimum number -- between 2017 and 2019.

Many of those documents, by the way, I have -- some of those I have seen.  And often they would come from a particular provider or providers without even a date and simply a request for, hypothetically, $248,000 with no data, no documents that would support what services were performed.

So a person like you diligently couldn't give input back whether this was overstaffed or whether the person was reaching out with whatever services.  There was no comparison or ability to know who was benefiting, folks on the street who needed services desperately.

And there's been now a representation that in the future, all the invoices coming to you will have the supporting data so that you'll know what services are being performed.  And that way, you'll be able in the future to give input back to the Council President and the Mayor and show what data each provider is providing with services.

And ultimately the goal, of course, is getting folks into shelter and housing.  No matter how many services, we've got a desperate need on the street for just services with mentally ill and other people, obviously.  But, ultimately, we need to get these folks into some kind of shelter and housing.

My concern had been if the Comptroller is unable to

audit any program run by the Mayor's office, which you say you are, although there's a disagreement it seems between you and the CAO --

          **MR. MEJIA:**  Yes.

          **THE COURT:**  -- and the City Attorney --

          **MR. MEJIA:**  Yes.

          **THE COURT:**  -- I know in the past, my fear -- that I was concerned if we went from a district-by-district approach to a citywide approach, if we didn't have that ability that there wouldn't be any accountability.

          I think that that's been set aside.  So I want you to hear some very pleasant news in just a moment and I think it will be a benefit for everybody because of the Mayor's leadership in this regard and Paul Krekorian.

          So, Michele, as much as you can remember and then I'll fill in.

          **SPECIAL MASTER MARTINEZ:**  Thank you, Your Honor, and just very quickly, I will say on behalf of the Mayor and the Council President, based on a discussion this morning, they have offered for the City of Los Angeles to pay for an independent audit of the choosing of the judge.  And so that is what's going to take place and so just wanted to inform everyone that they have offered to pay for an audit and the judge will work with the City Attorney and whoever at staff. But it will be through the Court and who that independent

auditor will be and what they will be auditing.

THE COURT: I'm going to be even more complimentary because the conversation was at least, what, half an hour or more?

SPECIAL MASTER MARTINEZ: Yes, 20 minutes or more.

THE COURT: First of all, the Court didn't suggest this. When the Court received the phone call, this came from the Mayor and from Paul Krekorian, the President. I, frankly, have complimented them privately and I compliment them publicly on their leadership. This is an issue that should have never come to the Court's attention but they have absolutely stepped up and they have recognized -- not any insinuation but a potential conflict because it comes -- you saw it basically comes from the Mayor's office. Okay.

The second is they want that independence also for credibility purposes and that's absolutely commendable and absolutely what the public needs.

The second thing we've talked about is the link of the MOUs and how long they're taking. That's on the table but there's a recognition on their part that these MOUs have to come more quickly, whether it's 30 days or 60 days. I think there's a genuine concern that at the present time, without this MOU, the County is paying -- or strike that -- the City is paying for services through Inside Safe.

There's $250 million that we're -- came out of the

Tobacco Fund, or that settlement.  I'm going to leave that to the County and the City to work out but I'm requesting and probably will order that this MOU be completed within 30 days and so, therefore, between the City and the County -- and this has been dragging out for 14 months.

There were some other things discussed but I'll speak to the parties in private through Michele about that.  But I've represented that I will recess today so that the Mayor can return from Paris and pay her the courtesy of being here next Thursday and that Paul Krekorian will be discussing these matters with the Council.

And we'll try to centralize this and we're also concerned about -- not you, Mr. Marcus, but the City Attorney disseminating information to the Council.  I'm not certain whether now I should be counseling every Council member on my docketing and/or the Board of Supervisors because the information, through no fault of yours, is not getting out to your Council members.  And the Council President is very concerned that we've got this -- not to review points of the Council but a lack of centralization because a lack of information getting out.

So I'm probably going to docket, Michele, this point forward -- and Carlen -- every Council member so they are aware.

Now, I may be forgetting something, Michele.  What am

I forgetting?

SPECIAL MASTER MARTINEZ:  (Indisc.)

THE COURT:  Okay.  All right.  Now, Mr. Marcus.

MR. MARCUS:  Thank you, Your Honor, Scott Marcus for the City of Los Angeles.  If I could be heard on just a couple of those items?

THE COURT:  Please.

MR. MARCUS:  The first is --

THE COURT:  Oh, by the way, I've also represented -- I apologize for cutting you off.  That wasn't the complete conversation.  I've already also indicated to the Mayor that I've already reached the decision that the Plaintiffs were misled.  This is bad faith.  And that there's basically a stipulation and if not, the parties are welcome to call Mercedes Marquez, et cetera, or Daniel Conway or whomever.  You can fill in the record.

And I've also become concerned that there seems to be some finger-pointing going on because Michele and my clerk called to attention an article which is simply hearsay at this point but it was in *L.A. First* yesterday.  And that article was, Mercedes Marquez told *L.A. First* over text messages that, "She does not want to be anybody's scapegoat."

She wrote that it was not the Mayor's office but a different City office, that of the City Administrator Officer Matt Szabo who managed the outreach contractor during -- hiring

**13**

that didn't come to fruition.

Now, I choose not to recall Matt today.  I'm going to slow this process down until next Thursday to see if there can be some thoughtful discussion concerning this.

Now, Mr. Scott -- I'm -- Mr. Marcus -- I'm sorry.

**MR. MARCUS:**  That's a good thing.  Before I begin, Your Honor, if the Court is done with Comptroller Mejia, may he step down?

**THE COURT:**  Oh, first of all, my apologies.  If I can buy you a cup of coffee in the future, I'd love to.  I'd love to come back over to your office someday.  I -- first of all, thank you for your courtesy and I'm really humbled that you respond so quickly.  You're a true public servant and very much appreciated.  Thank you for, sir.

**MR. MEJIA:**  Thank you, Your Honor.

**THE COURT:**  Thank you for your service, sir.

And, Sergio, thank you very much.  It's always a pleasure.

Thank you, Mr. Marcus.

**MR. MARCUS:**  Thank you.  If I may address a few items.  First, Your Honor, in terms of scheduling, Council President Krekorian has also requested to be present at the next hearing.  He is not available on the 14th but is available on the 21st.  And the Mayor said that the 21st also is a good date.  So --

**14**

THE COURT:  Well, let me ask you something.  Hold on.  It was my concern on each of your part that you were going to budget on April 20th.  That's why I pressed to know where the County was and where you were because the City had a budget that Matt Szabo was pressing on the 20th.  Would you go back to talk to Mr. Newman and your Homeless Director back there for just a moment?

I'm happy to do that.  I want Paul present but by the -- or the Council President present but by the same token, I don't want this to be a concern or conflict with the City because this was a request from the City that this get resolved.  So go have a talk with them.

MR. MARCUS:  Okay.

THE COURT:  And if you need to, Paul is available in Paris right now.  So is the Mayor and so if you need to press, that's fine but what I don't want to do is set a date, flip a date.  Let me pay you the courtesy.  I'm going to take a recess so you can coordinate it.

And once again, I want you to -- for you to hear.  I really want to -- I want you to hear this.  Are you ready?  I really want to compliment the Mayor and Council President for their leadership.  This is exactly what we're looking for.  They've stepped up and they've taken this issue which they should have before but they've taken it from the Court.  That's leadership.  Thank you.

**(A recess is taken from 9:19 a.m. to 9:28 a.m.)**

THE COURT:  Okay.  Then we're back on the record.  All counsel are present.

Well, thank you for your courtesy.  If you'd be seated.  It's very much appreciated.

Mr. Marcus, I'm sorry, if you'd like to continue.

MR. MARCUS:  Thank you, Your Honor.  As I was stating before the recess, Council President Krekorian did ask to be present.  I believe we have all agreed on March 18th as the next hearing date.

THE COURT:  Okay.  March 18th then is acceptable to the Plaintiffs and to Shayla Myers and the County wishes to be present.  Okay.  All right.

MR. MARCUS:  Thank you.

THE COURT:  March 18th then which is a Monday at 9:00 o'clock.

MR. MARCUS:  Thank you.  If I could just address two other items that the Court raised this morning.  The first was with respect to the MOU between the City and the County.  I understand the Court is not making any orders today with respect to that.

THE COURT:  I'm going to pay the courtesy of letting the Mayor and Paul Krekorian return, have them have a chance to talk to the present Chair of the Board along with counsel.  But I'm prepared to make that order.  I want to forewarn you.  I'm

**16**

not trying to trap anybody.  It's gone on long enough, 14 months now.

MR. MARCUS:  I under --

THE COURT:  I'm not going to make it today.

MR. MARCUS:  -- I understand.  Thank you, Your Honor. I was going to suggest potentially if the Court was planning on scheduling a hearing addressing the County Alliance settlement, the Court could schedule at the same time a status conference on the status of the MOU to take place on that same date.

THE COURT:  I don't understand that.  I'm sorry.

MR. MARCUS:  You referenced yesterday that the Court was planning on scheduling a hearing in the first or second week of April to address --

THE COURT:  I've already done that.  I just have it on the docket April 4th.

MR. MARCUS:  Yes.  So what the Court could also do is at the same -- for that same date, schedule a status conference on the status of the City/County MOU with that to be addressed.

THE COURT:  And that would give the courtesy to the Chairperson of the Board and also the Mayor to hopefully resolve this.

MR. MARCUS:  It --

THE COURT:  Excellent suggestion, I'll do that.

MR. MARCUS:  Thank you.  The last item, Your Honor, I would like to address is the Court's intention to find that the

City misled the Plaintiffs.

**THE COURT:** I'm going to find bad faith, Counsel.

**MR. MARCUS:** Which is what I would like to address. The City did stipulate to the facts. We are not contesting the facts but as I stated yesterday, we are not stipulating to the legal effect of those facts.

**THE COURT:** I understand that and I'm not indicating what remedy yet.

**MR. MARCUS:** And I just want to make clear that at the time that that representation was made, that was the plan. The RFQ had been issued. That was the plan for the City to conduct the assessments which would then feed into establishing the milestones. That did --

**THE COURT:** Now, let me be very clear. I'm not trying to trap you. That's why I'm doing this. I'm telling you that based upon that stipulation, I'm going to find bad faith. If you want to present additional evidence, if you want to call witnesses, if you want to call Mercedes Marquez, you're welcome to do that. You're welcome to fill in those blanks but right now I'm indicating to you that this will be a finding of bad faith based upon that. Now, what the remedy is, I don't know.

**MR. MARCUS:** Understood, Your Honor. I don't think any additional facts are necessary but, again, the finding of bad faith indicates some sort of intent to mislead and I am

**18**

arguing based on those facts, those facts are not sufficient to make that finding.  And I just want to point out that the fact -- that there is no bad faith.  Yes, the City was not prompt enough or efficient enough in communicating the change in plans to the Alliance.  I admitted that yesterday.  I will admit that today.

But the parties met and conferred.  We got milestones.  We provided the milestones to the Alliance based on the numbers they requested.  We kept saying yes.

**THE COURT:**  I don't think that the Mayor and Paul Krekorian want this to go any farther.  You might consult with your client before you make these representations because if you continue, I'm going to order Mercedes Marquez in here and I'm going to order you to take the stand because right now I'm indicating based upon this record and if we're not satisfied, I'm going to find bad faith because that's what you've stipulated to basically.

Now, if you disagree with that, you have all the latitude to call anybody you'd like to but I'm warning you about this.  Now, you can take it up on appeal and I might get reversed but I'm offering you the opportunity to indicate -- and not by argument now -- that this is -- I believe this has led to bad faith.

So if you want to go further, that's fine and we can go further today but if so, let's go find Mercedes Marquez and

let's get Mr. Szabo back up on the stand today which is everything that I hoped we didn't have to do after talking to the Mayor.  And I think you better talk to your client, the Mayor.

        **MR. MARCUS:**  I don't need to talk to them.  I agree with the Court, Your Honor.  We do not believe any additional evidence is necessary.  I simply wanted to make the record based on --

        **THE COURT:**  Here's my order.  Mercedes Marquez is to be present so that we have no disagreement -- just present.  Somebody go out and find her for next Thursday.  Hopefully, she'll never be called.

        You're to be available, Paul, and so is Daniel Conway.  Understood?  Okay.

        And that way, if I need to fill in this record and if I'm wrong, I'll take testimony from the stand.  But I believe the record is sufficient but I'm not going to take a chance on appeal and if we want to go through that process, which is exactly what I don't think your client wants to, I would just suggest you reach out to your client before we have to go down that route.

        **MR. MARCUS:**  Understood.

        **THE COURT:**  Okay.  All right.

        **MR. MARCUS:**  Thank you.

        **THE COURT:**  Now, anything else?  Otherwise, I think

we should be in recess now.

**MR. MARCUS:**  Nothing else from the City.  Thank you, Your Honor.

**MS. MITCHELL:**  Nothing from Plaintiffs.

**MS. SPEAKER:**  Nothing, Your Honor.

**MS. MYERS:**  Nothing from the Intervenors.

**(Proceeding adjourned at 9:34 a.m.)**

21

## CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **March 9, 2024**

        **Signed**                                                    **Dated**


*TONI HUDSON, TRANSCRIBER*