UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, ET AL., | ) CASE NO: 2:20-CV-02291-DOC-KESx |
| | ) |
| | )                    CIVIL |
| Plaintiffs, | ) |
| | )       Los Angeles, California |
| vs. | ) |
| | )        Friday, April 5, 2024 |
| CITY OF LOS ANGELES, ET AL., | )     (3:41 p.m. to 3:43 p.m.) |
| | )     (3:49 p.m. to 3:55 p.m.) |
| Defendants. | )     (3:56 p.m. to 4:04 p.m.) |

HEARING RE:

MOTION TO ENFORCE THE SETTLEMENT AGREEMENT
AND FOR SANCTIONS [DKT.NO.668]
(REVIEW OF MOU);

STATUS CONFERENCE RE DEFENDANT COUNTY OF LOS ANGELES' PROGRESS
IN COMPLYING WITH THEIR OBLIGATIONS UNDER THE SETTLEMENT
AGREEMENT

BEFORE THE HONORABLE DAVID O. CARTER,
UNITED STATES DISTRICT JUDGE

APPEARANCES:                    SEE PAGE 2

Court Reporter:          Recorded; CourtSmart

Courtroom Deputy:        Karlen Dubon

Transcribed by:          Exceptional Reporting Services, Inc.
                         P.O. Box 8365
                         Corpus Christi, TX 78468
                         361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

<u>APPEARANCES</u>:


For Plaintiffs:          MATTHEW UMHOFER, ESQ.
                         Umhofer Mitchell & King
                         767 S. Alameda Street, Suite 270
                         Los Angeles, CA 90021
                         213-394-7979


For Defendants:          SCOTT D. MARCUS, ESQ.
                         Los Angeles City Attorney's Office
                         200 N. Main St.
                         7th Floor, Room 675
                         Los Angeles, CA 90012
                         213-978-7558


For Intervenor:          SHAYLA R. MYERS, ESQ.
                         Legal Aid Foundation of LA
                         7000 S. Broadway
                         Los Angeles, CA 90003
                         213-640-3983


Also present:            SPECIAL MASTER MICHELE MARTINEZ

EXCEPTIONAL REPORTING SERVICES, INC

**Los Angeles, California; Friday, April 5, 2024; 3:41 p.m.**

**--oOo--**

**THE COURT:** So this is 20-02291, *LA Alliance for Human Rights versus the City of Los Angeles.*

And if you'd just have a seat for just a moment. It's okay. And just make your appearances.

**MR. UMHOFER:** Good afternoon, Your Honor. Matthew Umhofer on behalf of the Plaintiffs LA Alliance.

**THE COURT:** Thank you.

**MR. MARCUS:** Good afternoon, Your Honor. Scott Marcus on behalf of the City of Los Angeles.

**MS. MYERS:** Good afternoon, Your Honor. Shayla Myers on behalf of the Intervenors.

**THE COURT:** I want to have a very limited discussion with you for a moment about the auditors who made their presentation yesterday. You don't have to respond to this question but I would be interested in what your impression was, who you believe the auditor is most capable of carrying out these audits.

**MR. UMHOFER:** On the Plaintiffs' side, Your Honor, it appears Alvarez is really the only one that could under the circumstances. That's our view of it, subject to the City's as well.

**THE COURT:** Let me turn to Scott on behalf of the City.

**EXCEPTIONAL REPORTING SERVICES, INC**

**4**

MR. MARCUS: Your Honor, at the -- after the initial presentation, I would say that the Alvarez and the Horne firms appear to be well-versed in the matters and would be capable of performing the audit. I have since --

THE COURT: And just if the judge has to make a decision, which one?

MR. MARCUS: Well I've been since provided additional information about the Horne firm that I think would render them less desirable to the Court; and had we known that, we could have maybe even saved them a trip to the courtroom. That being said, the third firm I don't think was capable of performing the audit that the Court has in mind.

THE COURT: So which firm?

MR. MARCUS: That would leave Alvarez.

THE COURT: Okay. And Alvarez. Shayla?

MS. MYERS: Your Honor, the Intervenors agree. We had provided some information to other folks that we could share with you regarding the Horne firm's involvement and so we think the Alvarez firm would be the best firm of the three.

THE COURT: Okay. I'll be back with you then in just a moment.

**(Recess from 3:43 p.m. to 3:49 p.m.)**

THE COURT: Folks have a seat.

And Michele Martinez has brought me up to date and obviously you're far ahead of the Court with what's been

occurring.  So I'm going to turn this over to any of you and I think probably, Mr. Marcus, it's your option of making a statement.

MR. MARCUS:  Yes, Your Honor, Scott Marcus for the City.

As the Court requested yesterday for me to come back and report on city council action and response to what was discussed yesterday.

The city council has approved paying for the audit as ordered by the Court in a range of 1.5 to 2.2 million dollars. That's the range that was approved which we think is workable with the proposals that we've seen.

The council also approved the payment of the fees to the LA Alliance of the $725,000.

THE COURT:  Okay.  Matt, is that your understanding as well?

MR. UMHOFER:  It is my understanding, Your Honor.

And our understanding of this resolution, as reflected in the stipulation, is that this is a stipulation to resolve the sanction's issue.  So it is a stipulated sanction's sanction in the form of both the audit and the payment of the attorneys' fees.

THE COURT:  So in other words, the Court would not be going forward on the sanction's issue.

MR. UMHOFER:  That is correct.

THE COURT:  Is that your understanding?

MR. MARCUS:  That is my understanding as well.

THE COURT:  Shayla, what's your understanding? Weren't you consulted in this?  Originally you objected to sanctions to begin with but I want you to be involved in this.

MS. MYERS:  I mean we were not involved at all in the discussions.  I have no idea what the $725,000 is tied to. That's a significant amount of taxpayer money so it would be helpful I think for the public to know if that was attorneys' fees or what that -- what that money is --

THE COURT:  I'm assuming it's attorneys' fees but ...

All right.  Now, let me ask each of you this:

I want to make certain that the audit is finalized and the eventual decision is the Court's.  So while I respect the council's limitation, that's what they've approved so far. I want to make certain that this audit is thorough.

And I also independently believe that Alvarez was at this point anyway, tentatively, the firm that the Court wanted to talk to but I don't want to finalize that until we bring Alvarez back in.  I don't want any surprises.  If they're going to charge more or they're going to say to the council it's another $500,000, I don't think that's fair to the council in good faith.

By the same token, ultimately, that's my decision. How you pay for that, I'd like to keep the costs down but with

10 billion dollars, probably 30 million dollars running through the homeless issues in the state; quite frankly, a couple hundred thousand dollars doesn't make much of a difference. We're dealing with huge amounts of homeless money or money devoted to homelessness in this state, 25 to 30 billion dollars probably, and Los Angeles probably receiving I'm going to guess 10 or 11 million -- billion dollars of that. So what I don't want to see is incompleteness.

And I want to have the auditor come in on Monday. I'd like Michele to talk to the auditor over the weekend. Scott, with your help, Shayla's help, Matt, your help, we can work this weekend.

And if there's going to be a concern on the auditor's part, we need to know that. So do we have contact with the Alvarez firm?

**MR. MARCUS:** Your Honor, I had had the contact with the Alvarez firm via email in response to the submission, the solicitation we sent out. I can share that email contact information with the Special Master so that she can then reach out and conduct those conversations.

**THE COURT:** Then I think we simply need to finalize the audit so the city council knows with finality what the auditor's position is.

Shayla, Matt, you need to be involved obviously in the scope of this.

**8**

**MS. MYERS:** Yes, Your Honor.

**THE COURT:** And we need to complete this by Monday because it would be my understanding then that you're not going forward with sanctions.

**MR. UMHOFER:** That's correct, Your Honor.

**THE COURT:** The Court will then not be making a final decision concerning the City.

**MR. UMHOFER:** That's correct.

**THE COURT:** All right. What time Monday? In other words --

**MR. UMHOFER:** Your Honor, I think we're due here at 4:00 p.m. on Monday anyway. Am I correct on that? I see Special Master Martinez nodding. And so we could make it at that time.

**THE COURT:** Is that comfortable for everybody? 4:00 p.m.?

**MR. MARCUS:** That was already calendared so that was already on my schedule.

**THE COURT:** Yeah. Comfortable? I just want to verify that.

**MR. MARCUS:** Yes, Your Honor.

**THE COURT:** Shayla?

**MS. MYERS:** Yes, Your Honor.

**THE COURT:** Okay then is there anything further today?

**MR. UMHOFER:**  Not from the Plaintiffs, Your Honor.

**MR. MARCUS:**  Not from the City.

**THE COURT:**  Okay.  All right.  Well then, counsel, we'll get you on your way and you have a wonderful weekend, okay?

**MR. MARCUS:**  Thank you, Your Honor, you too.

**MS. MYERS:**  Thank you, Your Honor.

**THE COURT:**  Now, Michele, anything else that you can think of?

**SPECIAL MASTER MARTINEZ:**  No.

**THE COURT:**  Thank you very much.

(Pause)

Oh and by the way, counsel, Matt, there's one more thing.

You also have an additional stipulation you submitted to the Court.  It was an additional stipulation.  I'm going to accept that stipulation in light of the prior stipulation. Keep both of them but docket that stipulation as well.  Docket it.

**MR. MARCUS:**  That's fine, Your Honor.  The stipulation the -- from yesterday, it has been docketed.  We filed it on the docket, yes.

**THE COURT:**  It has.  Okay.  I didn't check this morning.  Thanks.  Okay.  Thank you very much.

//

**(Off case at 3:55 p.m.; resume at 3:56 p.m.)**

**THE COURT:**  Yeah.  I want to see you folks again.

Matt, I want to see you again.

**(Pause)**

I want to go back on the record just for a moment. Sorry, Shayla; sorry Scott.

**(Pause)**

So the first portion, I somewhat knew through Michele what was being discussed but I didn't know until a few moments ago, Scott, with finality although Michele attempted to tell me in chambers.

So with the motion for sanctions being resolved, I don't want to make that decision today because I want to make certain that the audit is final.  And if we don't have a final audit, and I don't want the Court to rule on this and we still have a case in controversy, in a sense, because we haven't -- we don't have an auditor.

But I would think, from your standpoint on behalf of LA Alliance, that this puts the City on notice that transparency in communications would be critical in making sure that they fulfill their promises under the settlement agreement.  And I believe last month that the parties really took a very meaningful step in that direction and I really believe that they collaborated in good faith with each other and that's a compliment to you.  And I think we reached that

because the mayor was actually here in court and made decisions at the highest level, all (inaudible) in the presence of the council.

I don't know how intimately Judge Andre Birotte's been involved and late hours he's been keeping with you folks and the Special Master but they bilked (phonetic) some out the well with me. In other words, I know certain things but I don't know everything. In fact I'm surprised at some of the things I didn't know. I think they did that to protect me and the ethics involved so don't assume that I'm a part of those negotiations.

I know you were making some progress but this resolution on the sanctions issue and the compensation to the attorneys for these past, let's say -- as Scott put it -- could have communicated better. I don't want to destroy that when you've taken these really unprecedented steps towards more transparency. I don't want to let the perfect get in the way of very good.

And I do want to maintain that optimism that the mayor has tried to install initially with Janice Hahn and Paul Krekorian. That's this County has been bickering with the City for so long. It goes back to the 1980s. And there's cooperation at that level, that's the leadership that the City needs because this is a divided city in terms of who's really in control of the city. The mayor doesn't even have a vote on

**12**

the council.

And if the City is continuing to take these I think unprecedented steps towards more transparency, and agreeing as they did to an audit concerning the homeless programs, and now creating a website which now the County is following, then the public can scrutinize the homeless spending.

And I think that if you're going to withdraw the sanctions motion and this money can be devoted to homeless people, then that could be a very good resolution instead of potentially sanctions, and we could get children housing to keep and hope people come inside.

My only reason -- and I want to reiterate this as of delay is although the council has set a limit, which may be reasonable from the council's standpoint, I can't have a substandard audit.  And I need to talk to Alvarez about the scope of this audit because I don't want to be $100,000 short or even a million dollars short.  And they had a range of 2.9, I believe, to 4.2 -- We really need -- million.  We really need to talk to those folks.

And then if you're all involved along with the Court, if they're asking for more, we need to know why, what that scope is, et cetera.  I need you, particularly, Shayla, in this area at this point, and that it may have to go back to the council.  It may not, it may not.

But I reiterate, the council does not control the

**EXCEPTIONAL REPORTING SERVICES, INC**

**13**

amount.  I have to be reasonable in that.  I'm dealing with tens of billions of dollars.  I appreciate the council's limitation but I want you folks who represent the mayor, et cetera, and the council, I'm not bound by that limit, okay?

And what I can't do is fall short in terms of resources.  That's why I need to get those auditors back in here, see if we can create a conversation with them, try to reach this 2.2, okay?  But I don't want to be surprised later on.

So that's my forewarning, that's why I'm not making that final decision this evening because if that audit falls through and we don't have the resources, then we're back to litigation.  Okay?

Okay.  Now you go have a nice weekend.  Thank you.

**(Attorneys thank the Court)**

**(Proceeding adjourned at 4:03 p.m.)**

14

## CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **April 6, 2024**

           **Signed**                                          **Dated**


*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**