UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, ET AL., | ) CASE NO: 2:20-CV-02291-DOC-KESx |
| | ) |
| | )               CIVIL |
| Plaintiffs, | ) |
| | )     Los Angeles, California |
| vs. | ) |
| | )     Monday, April 8, 2024 |
| CITY OF LOS ANGELES, ET AL., | )     (4:20 p.m. to 4:38 p.m.) |
| | )     (5:04 p.m. to 5:09 p.m.) |
| Defendants. | ) |

HEARING RE:

STATUS CONFERENCE RE DEFENDANT COUNTY OF LOS ANGELES' PROGRESS
IN COMPLYING WITH THEIR OBLIGATIONS UNDER THE SETTLEMENT
AGREEMENT

BEFORE THE HONORABLE DAVID O. CARTER,
UNITED STATES DISTRICT JUDGE

**APPEARANCES:**            SEE PAGE 2

Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:            Karlen Dubon

Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

APPEARANCES:


For Plaintiffs:          ELIZABETH A. MITCHELL, ESQ.
                         Umhofer Mitchell & King
                         767 S. Alameda Street, Suite 270
                         Los Angeles, CA 90021
                         213-394-7979


For Defendants:          SCOTT D. MARCUS, ESQ.
                         Los Angeles City Attorney's Office
                         200 N. Main St.
                         7th Floor, Room 675
                         Los Angeles, CA 90012
                         213-978-7558

                         JENNIFER M. HASHMALL, ESQ.
                         Miller Barondess
                         2121 Avenue of the Stars
                         Suite 2600
                         Los Angeles, CA 90067


For Intervenor:          SHAYLA R. MYERS, ESQ.
                         Legal Aid Foundation of LA
                         7000 S. Broadway
                         Los Angeles, CA 90003
                         213-640-3983


Also present:            SPECIAL MASTER MICHELE MARTINEZ

**Los Angeles, California; Monday, April 8, 2024; 4:20 p.m.**

--oOo--

THE COURT:  We're on the record on *LA Alliance for Human Rights versus the City of Los Angeles*, Case Number 20-02291.

And, Counsel, if you'd start with your appearances. Just remain seated.

MS. MITCHELL:  Good afternoon, Elizabeth Mitchell on behalf of Plaintiffs.

MR. MARCUS:  Scott Marcus on behalf of the City of Los Angeles.

MS. HASHMALL:  Good afternoon, Your Honor, Mira Hashmall for the County of Los Angeles.

MS. MYERS:  Shayla Myers on behalf of the Intervenors.

THE COURT:  All right.  First, I hope all of you have had time to have informal discussions with the Special Master, with each other.

Ms. Mitchell, have you had enough time?

MS. MITCHELL:  We did discuss the status of the MOUs. I haven't heard anything beyond that --

THE COURT:  Okay.

MS. MITCHELL:  -- and I'm interested in open court to hear the status.

THE COURT:  Okay.  And, Scott, have you had enough

**4**

time?

MR. MARCUS:  Yes.

THE COURT:  Ms. Hashmall?

MS. HASHMALL:  Yes, Your Honor.

THE COURT:  Shayla?

MS. MYERS:  Same as Ms. Mitchell.

THE COURT:  Okay.  That was uniquely between the County and the City concerning the MOU.

First, I would like the auditing firm to come forward.  If you folks would be so kind just to stand up and come up to the lectern.

First, would you just identify yourself by name, please?  Well, first of all, state your firm.

MS. RAFFERTY:  Our firm is Alvarez and Marsal.

THE COURT:  And then who each of you are appearing today in court.

MS. RAFFERTY:  I'm Diane Rafferty.  I'm the Managing Director with Public Sector Group.

THE COURT:  Pleasure.

MS. RAFFERTY:  And I work in Health and Human Services.

THE COURT:  Thank you.

MS. MCCURLEY:  I'm David McCurley, Managing Director with our State and Local Government Practice.

MS. MCCURLEY:  Pleasure.

**MS. COLLIER:** Laura Collier, Director, also with the Public Health and Human Services.

**THE COURT:** Okay, thank you.

**MR. MCKEE:** My name is Scott McKee. I'm a Managing Director in the Disputes and Investigations.

**THE COURT:** Okay, thank you.

**MR. POTTER:** Michael Potter, I'm a Senior Director in our Public Sectors.

**THE COURT:** Ms. Mitchell, I'd like you give some representation concerning your interaction first informally before the Court met with the firm today. And previously, Ms. Mitchell, you had believed that this was the choice on behalf of LA Alliance. Is this still your choice?

**MS. MITCHELL:** It is, Your Honor.

**THE COURT:** Scott, on behalf of L.A. City, still your choice?

**MR. MARCUS:** Yes, Your Honor, we have no objection to this firm.

**THE COURT:** All right. Shayla, still your choice?

**MS. MYERS:** Yes, Your Honor.

**THE COURT:** Okay. Then if you would.

**SPECIAL MASTER MARTINEZ:** Yes, Your Honor, and I will be very short. I made it very clear to Alvarez and Marsal that they were not going to audit 88 cities. It was just the City of Los Angeles, obviously LAASA (phonetic) and the three

**6**

programs that we discussed or initiatives which is the Alliance, the Inside Safe and the Freeway Agreement.

And so we got all of that squared away and more importantly, their commitment to this and so they are definitely on board and their commitment to the range that the City Council provided even though, Judge, you ultimately have the discretion but they made a commitment to ensuring that they would be able to stay within that frame of the range.

**THE COURT:** And I want to compliment you for your civic mindedness. It's an amazing undertaking on your part and one I think that will have tremendous benefits to the City and eventually maybe to all of California in terms of your setting the precedence.

I couldn't be more complimentary about my initial meeting and in those discussions, I've asked you to take to the streets almost immediately. We'll notify you concerning the time and the place very shortly. I want you to meet the community.

And so, Don (phonetic), you're here and Catherine (phonetic). I'll contact you but I want them to be out on the streets first and see the community. See the residents. They've been impacted by this. See the homeless and their situation. Try to get a good overall perspective from the residents, to the homeless, to just our whole community here in Los Angeles.

**7**

I may be asking you to go to one more location but we'll probably start on Skid Row.  We may end up in Venice or the Valley on more than one occasion.  And I apologize but I'd you to meet me, as I said, this morning as early as 6:30 because some of the folks start to move at that time.  And it will be on more than one occasion.

If you have any questions of me, I'm happy to respond to them as I did this morning but as far as I'm concerned, I'm going to finalize you with your consent then to be the auditing entity and you have the Court's full support.  And I want to state that repeatedly.  In a sense, you're almost like I perceive the Grand Jury to be.  The Grand Jurors are created by the Court.  In a sense, you're the arm of the Court undertaking this audit on behalf of our city.

Do you have any questions of me?  If not, you'll be receiving a call prior to midnight -- just joking.  But you'll be receiving a call pretty quickly from me and I expect within the next seven days, we'll be out in the street.  I stand off to the side, by the way.  I don't want to be influencing you but we'll take you into the communities.

Any questions of me?

**(All indicate "No")**

I can't tell you how much you're appreciated and thank you very much.  It's a great opportunity to make things a lot better for everyone.  Congratulations!  Thank you very

much.

        **(Pause)**

            THE COURT:  Now, Counsel, concerning the MOU, what are your thoughts?

            MR. MARCUS:  Good afternoon, Your Honor.  The County and the City have been making progress -- substantial progress on the MOU including discussions over the weekend, further exchange of written materials.  We think it makes the most sense to come back Thursday at 2:00 p.m. to give a further update to the Court --

            THE COURT:  Okay.

            MR. MARCUS:  -- to let you know exactly where we are at that point.

            THE COURT:  After receiving input from Michele and from the County as well -- is this your request also, firstly?

            MS. HASHMALL:  Yes, Your Honor.

            THE COURT:  Okay.  I want to compliment you because I know you were working on Sunday.  I know you worked very hard on this and that's exactly what's needed.  So you have my compliments.  I know you are very close.  I know you have to go back to certain entities.  So there's no reason to reconvene tomorrow.  It's a waste of your time -- and on Wednesday.

            So Thursday at 2:00 o'clock on the MOUs, correct?

            MR. MARCUS:  Yes.

            THE COURT:  Okay.  So the events on the docket are

                    **EXCEPTIONAL REPORTING SERVICES, INC**

going to show that we'll reconvene at 2:00 o'clock on Thursday.

Okay.  And that will be in the Courtroom 1 off of the first

floor.  This is the only day we're in 6A.

Let's move on to the sanctions.  Ms. Mitchell?

**MS. MITCHELL:**  What is the Court looking for?

**THE COURT:**  Well, I'm not.  Last time it was

represented by Matt who was here that you were ignoring the

sanctions moved to in this matter.

**MS. MITCHELL:**  No, Your Honor, it's not we had never

agreed to withdraw.  Instead, it was a stipulated resolution of

the sanctions motion.

**THE COURT:**  Okay.  Now, state that for me again so

I'm in complete understanding.

**MS. MITCHELL:**  Yes.  The agreement that we reached

with the City was a stipulated resolution --

**THE COURT:**  Okay.

**MS. MITCHELL:**  -- for the motion for sanctions.

**THE COURT:**  And that would include the latest filing?

**MS. MITCHELL:**  Correct.

**(Pause)**

**THE COURT:**  How am I to proceed?  In other words,

what is the agreement then between the two of you?

**MS. MITCHELL:**  The agreement between the City and the

Alliance is as was filed -- I think it was on Thursday and I

don't know the docket number off the top of my head but it was

the agreement by the City to participate in and pay for the cost of the audit, to engage in monthly -- at least monthly meetings with the Alliance between the Alliance and the City and to pay certain costs and fees.  I think those are the three stipulations.

THE COURT:  Then I was unclear.  What happens to the request for sanctions on your part?

MS. MITCHELL:  I think it's resolved at this point, Your Honor.

THE COURT:  So is that between both parties?

MS. MITCHELL:  Correct.

THE COURT:  And so I would not be proceeding with the sanctions motion; is that correct?

MS. MITCHELL:  Correct, pursuant to the stipulated resolution and the audit -- full cooperation by the City with the audit program.  I think that is the stipulated resolution. We no longer need a resolution by the Court.

THE COURT:  No longer a resolution by the Court?

MS. MITCHELL:  Correct.

THE COURT:  All right.  Scott, is that your understanding on behalf of the City?

MR. MARCUS:  Yes.

THE COURT:  All right.  Well, going forward, I would hope that all of us -- the City is on notice that transparency in communication is going to be critical concerning the

**11**

promises under the settlement agreement.  I believe you've

corroborated in good faith with each other and Judge Birotte

and the Special Master Michele Martinez.  So I've been

partially aware of that but not fully aware because I've

blocked myself off from certain information.

But hopefully this is going to cause good

communication in the future because I know it's a divided

government.  I do say that I feel that you've taken

unprecedented steps on behalf of the City concerning

transparency with the Mayor's leadership.  I appreciate her

being present in court and taking that leadership position and

agreeing to this audit concerning homeless programs.  And most

importantly also -- well, as importantly, creating this website

so that the public can look and scrutinize this homeless

spending.

And hopefully that going through this process will

give us all a renewed spirit of cooperation to build housing to

bring people inside.  So I'm going to accept this resolution

and won't proceed with the sanctions with the agreement of both

counsel in this matter.

I think that I have nothing further to state unless

you have any questions, Liz, on behalf of LA Alliance.

**MS. MITCHELL:**  No.  The only concern that I had --

and I just wanted to make this clear on the record -- regarding

the limited, I guess, budget that was agreed to by City Council

**EXCEPTIONAL REPORTING SERVICES, INC**

on Friday and I understand there was a cap of 2.2 million.

THE COURT:  No, there's not.  That's what the City says the cap is.  That's what the City says.

MS. MITCHELL:  Understood.

THE COURT:  There's no cap.

MS. MITCHELL:  Okay, thank you.  That was my concern, Your Honor.

THE COURT:  But what I think you've got is good faith from the folks doing the auditing that they're going to make everything in their power -- to do everything in their power to fit within that budget and, in fact, I think they're stepping forward literally -- and some of you folks can come over here so you can speak for yourselves from the auditing group.  Come on up.

But I said before, I'm not tied to a budget or any effort to limit that until we've had an adequate audit.  I was very clear about that.

MS. MITCHELL:  Thank you, Your Honor.

THE COURT:  Okay.

MS. MITCHELL:  And that is one thing that I did want to put on the record.

THE COURT:  Yeah.

MS. MITCHELL:  I understand that it is contingent that -- that the commitment to the budget is contingent on full cooperation by the City and by LAASA --

THE COURT:  Absolutely.

MS. MITCHELL:  -- and the turnarounds and those kinds of things.  So if that doesn't happen, I can see the budget going much higher and I just wanted to raise that issue.

THE COURT:  Well, let's hear from the auditors and from Michele because certain representations have been made to me in good faith but they may not be part of the public record.  And I said last time, whether it's a hundred thousand or a million, that this audit is going to be adequate because we've gotten billions of dollars flowing through the City and a lot of money being spent on homelessness.  This isn't going to be a hundred thousand dollars short or a million dollars short.

But, Michele, you can make whatever representations you'd like to and the auditors can make whatever representations that they'd like to and the City can because I think we've entered into a good-faith agreement but, no, I'm not limited in this regard.  And the City won't limit me in an inadequate audit.

SPECIAL MASTER MARTINEZ:  Yes, Your Honor, I did speak to Alvarez and Marsal and I told them the City Council's range of the 1.2 to the 2.2 million and they said they would stay within that range.  I also asked them if they would be willing to do some voluntary work, pro bono work, and they pretty much said to me -- and they can state that for the record themselves -- that they are committed to doing what it

takes even if they even work extra hours that they will not be charging but they're willing and more committed to this job.

THE COURT: So let me hear from you folks. I don't want to have words put in your mouth but I've received this from the Special Master, some conversation with you.

MS. RAFFERTY: Correct. So we -- now that we have a better understanding of the scope and exactly what the work needs to be done, we are going to commit to staying within that budget. So we will present a scope while we do the contracting process to meet the budget requirements.

This is very, very important work. Those of us who've grown up in L.A. and stay here understand everything that -- not everything that needs to be done but the importance of this job. So we're not cutting ourselves off at 40 hours a week. If it takes us more time, if it takes us to meet you on Saturday and Sunday in these areas, we're going to do that.

THE COURT: Okay.

MS. RAFFERTY: We are committed to doing the right job in the right amount of time with the right people.

MR. MCCURLEY: And, Your Honor, I would -- I'd like to add, too. At the same time, we're going to make sure -- and we're going to be spending the rest of this week going back through and doing an honest, bottoms-up estimate based upon what we now understand to be scope to make sure we're not -- it's not about cutting corners to fit the budget.

**15**

THE COURT:  Right.

MS. MCCURLEY:  It's about doing the right thing, still giving the right quality of work with the full independence that was requested from the Court to begin with. So -- and we believe based upon what we heard today that we should be able to fit within this range.  And so that's what we communicated and that's what we're going to do.  But I want to make sure that you understand that this is not about cutting corners in order to make it fit.  This is still doing the quality work that's expected based upon the scope that we know today to be included.

THE COURT:  So privately it's also been represented to me that there may be a certain amount of pro bono work that they're taking on and that's what's so exemplary.  I wish that so many other firms and entities would step up with that attitude towards this City and contribute, quite frankly, and this firm seems to be willing to do that and do that on behalf of the City which is so complimentary.

So any questions?

MS. MITCHELL:  No, I think that's it.  I mean, I think that we all understand where we're at and I appreciate the Court and --

THE COURT:  Yeah.

MS. MITCHELL:  -- Council's cooperation as well as the auditing firm.

**16**

THE COURT:  Yeah.  And, Scott, any questions?

MR. MARCUS:  No questions, Your Honor, but I do need to put on the record that the City's stipulation to resolve the motion was contingent on City Council approval and that approval was to the 2.2 million.  We understand that there might be -- need to be some flexibility with that going forward but it's not a blank check.

THE COURT:  Well, and I'll repeat then.  You won't tie this Court to an inadequate audit based upon that.  You've got a good-faith representation that these folks will fit within it and these folks have represented that they'll do pro bono work but I will not accept -- I'm going to be very clear about this -- and not catching me by surprise that the Council will limit me in any way in case there's more money needed.

So, Michele, I'm in recess now.  You have some discussions that you need to enter to.

**(A recess is taken from 4:38 p.m. to 5:04 p.m.)**

THE COURT:  We're back on the record, Counsel, and Michele has come back.  So the court is back in session.

MS. MITCHELL:  Your Honor --

THE COURT:  My position is clear.

MS. MITCHELL:  -- Plaintiffs' position is clear as well.  We have no objection to the proposed fee.  I understand that it is a flat fee and Plaintiffs feel comfortable that the auditing firm will do their best job that the City and

Los Angeles County will be cooperative in providing that, such that the fees aren't overly much and I think we're comfortable where we're at, Your Honor.

MR. MARCUS:  Yes, Your Honor.  The City understands it's a flat fee and we agree as well.

THE COURT:  Michelle?

SPECIAL MASTER MARTINEZ:  Well, we could have Alvarez and

Marsal --

THE COURT:  Yeah, let's get Alvarez up here.  You're a part of this and I want to make certain you're all right with the house being built correctly.

MR. MCKEE:  Thank you, Your Honor.  So we had the opportunity to speak with Ms. Martinez today as well as yourself.  We understand much more about the scope and so as we discussed with you and Ms. Martinez, what we plan on doing is over the next week as we're going through the contracting process, we will develop the scope that will fit within the budget that we will negotiate back and forth, right, to make sure that everybody is comfortable with what we're doing and what we're planning on developing and delivering.

In doing so, to the extent that once that's in place and if we go over on our time, we are only billing the flat fee, or the fixed fee is what -- it's a contract.  And so we will put in the time necessary to deliver everything in the

contract.

THE COURT:  This agreement has to be between you and the City.  I said last Friday that -- I'm going to be very clear on this.  I was very clear last Friday to the City that you can't place the Court in a position of having an audit and then limiting the scope of that audit when the fee is reasonable between 2.9 and 4.2.  You don't limit the Court.

Where does the counsel come into my Court on a condition?  Now, in good faith, it sounds like you can work in the budget with the City and the City could work within the budget and you're willing to have pro bono time.  But I want it absolutely clear -- Matt, do you hear me -- that I am not binding myself with the 2.5.

And so if you two can draw up an agreement between you and you're satisfied that they're going to work pro bono and give back to the community with goodness, et cetera, and, Scott, you're satisfied with that, I will follow through and accept this agreement but I will not accept this agreement if the Court is placed in a position of having any -- and I mean any limitation within a reasonable amount that I'm willing to work with all of you in terms of getting an adequate product.  And I won't be limited by the City.

Am I clear about that?  Am I miscommunicating in any way?

MR. MARCUS:  No, Your Honor.  The City understands.

THE COURT: Okay. Liz, do you understand?

MS. MITCHELL: Yes, Your Honor, I'm in agreement.

THE COURT: You can't -- there's no limitations. In other words, you can't have an entity come into this court with billions of dollars flowing through this system and then say, Judge, here's a limited budget. Now, I'm working with you in good faith. I'm hoping it's 2.5 million and I'm hoping they give pro bono work but the Court won't be limited now by the City. Understood?

MS. MITCHELL: That's right, Your Honor. It's a sanction as we move forward but I believe the number is 2.2, not 2.5. I think that is the flat fee.

THE COURT: Well, then 2.2, okay. But that's the point. If we've got -- this is an agreement between you and the City. If something falls apart, I'm coming right back to the City and I'm not accepting this agreement between you, Scott, Matt and you folks on some limitation where I don't have an absolutely adequate audit. Fair enough?

MR. MCKEE: Understood.

THE COURT: Scott, fair enough?

MR. MARCUS: Yes.

THE COURT: Matt, fair enough, yes or no?

MR. UMHOFER: Yes, Your Honor.

THE COURT: City?

MR. MARCUS: Your Honor, I answered for the City.

**20**

**THE COURT:**  Oh, no, not to the Court.  Understood?

**MR. MARCUS:**  We understand.

**THE COURT:**  And don't come into my court after you've been told on Friday what my limitations are and then come right back with this same audit.  No.

Okay.  Now, I think we're done with that.  I think we're all happy and smiling.  We're going to move forward very positively and I think partially that's just because of your firm willing to be able to donate probably what's going to be in excess of this limitation on behalf of the City.  I want to thank you for that.

Okay.  I'm going to accept this agreement then.  We're now proceeding further.  Anything further today?

**MS. MITCHELL:**  Not from Plaintiffs, Your Honor.

**THE COURT:**  Then we'll see you on Thursday.  Thank you very much -- at 2:00 o'clock.

**MR. MARCUS:**  Thank you.

**MR. SPEAKER:**  Thank you, Your Honor.

**(Proceeding adjourned at 5:09 p.m.)**

**EXCEPTIONAL REPORTING SERVICES, INC**

21

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>April 9, 2024</u>

Signed                                                      Dated


*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**