HYDEE FELDSTEIN SOTO, City Attorney (SBN 106866)
DENISE C. MILLS, Chief Deputy City Attorney (SBN 191992)
KATHLEEN KENEALY, Chief Assistant City Attorney (SBN 212289)
ARLENE N. HOANG, Deputy City Attorney (SBN 193395)
JESSICA MARIANI, Deputy City Attorney (SBN 280748)
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone: 213-978-7508
Facsimile: 213-978-7011
Email:  Arlene.Hoang@lacity.org
        Jessica.Mariani@lacity.org

Attorneys for Defendant
CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a Municipal entity, et al.,<br><br>Defendants. | Case No. 2:20-cv-02291 DOC (KES)<br><br>Hon. David O. Carter<br><br>**DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER RE: SETTLEMENT AGREEMENT COMPLIANCE**<br><br>Hearing<br>Date:  October 2, 2024<br>Time: 9:00 a.m.<br>Courtroom:  TBD |

## I. **INTRODUCTION**

In seeking address and date information for the City of Los Angeles' (the "City's") reported encampment reductions, Plaintiffs ("LA Alliance") are attempting to add to, and alter, the terms of the Settlement Agreement between the City and LA Alliance without any basis for doing so. Conspicuously, LA Alliance does not cite any provision of the Settlement Agreement that provides for the "increased" reporting they are requesting because no such provision exists. *See* Dkt. 767 at ECF p. 7:4, 767-3 at ECF p. 2:5. Simply put, the Settlement Agreement between the City and LA Alliance does not obligate the City to provide the locations and dates of encampment resolutions, and LA Alliance's flawed attempt to "compel specific performance" of contractual terms that do not exist should be rejected. *See* Dkt. 767 at ECF p. 2:4.

Indeed, it is unsurprising that LA Alliance's requested "increased" reporting was not included in the Settlement Agreement because it would not serve the purpose LA Alliance advances. Although styled as a "Motion For Order Re: Settlement Agreement Compliance," LA Alliance's motion is not based on any lack of compliance with the relevant terms of the Settlement Agreement related to encampment reduction goals (Section 5.2)[1], but rather on an alleged desire to "verify" the City's reporting months after the fact – a task that is already being accomplished in real-time by the Court-appointed Special Master (Dkt. 767 at ECF p. 6:18-20), in addition to other reporting the City is doing.

The City entered the Settlement Agreement with LA Alliance so that the City could focus its resources and efforts on addressing homelessness through creating shelter solutions and encampment outreach, engagement, and reduction, without the distraction of litigation and the diversion of resources to defend a lawsuit. LA Alliance's current

---

[1] Notably, LA Alliance's August 16 meet and confer letter stated "…the City seems to have met its goal on encampment reduction" but quibbled that LA Alliance "still do not have a commitment from the City to provide the locations of encampments that have been resolved so that [they] can verify the information."

1

DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER RE: SETTLEMENT AGREEMENT COMPLIANCE

effort to add new and unnecessary reporting obligations to the Settlement Agreement – which the parties did not negotiate or agree to – only serves to distract City employees from doing the actual work of creating beds so that unhoused individuals can come inside off the streets, which LA Alliance repeatedly states in the motion was its goal in bringing this lawsuit in the first place. *See, e.g.,* Dkt. 767 at ECF p. 3:19-22, ECF p. 6:11-13.  The additional reporting sought by LA Alliance will do nothing to confirm or support these efforts, and LA Alliance's motion should be denied.

## II.   <u>RELEVANT PROVISIONS OF THE SETTLEMENT AGREEMENT AND THE ENCAMPMENT REDUCTION MILESTONES</u>

The homelessness crisis is a multi-faceted challenge, which necessitates a multi-pronged response.  One prong is creating beds and ensuring they are being utilized by persons experiencing homelessness, while another prong involves encampment engagement, cleaning, and reduction.  Recognizing they are different tasks employed for different reasons in the critical work to address the homelessness crisis, LA Alliance and the City addressed these prongs separately in their Settlement Agreement.  Specifically, in Section 5.2, the City agreed to create plans and develop milestones and deadlines for (1) the City's creation of shelter and housing solutions to accommodate a minimum of 60% of unsheltered City Shelter Appropriate PEH in each Council District and Citywide as determined by the Required Number (12,915), and (2) encampment engagement, cleaning, and reduction in each Council District and Citywide. *See* Dkt. 421-1 at § 5.2 (i)-(iv).

In negotiating the ultimately agreed-upon Milestone Goals to fulfill this second obligation, LA Alliance proposed, and the City agreed, to a Citywide Milestone Goal of removal from the public rights-of-way of 9800 tents, makeshift shelters, cars, and RVs by June 30, 2026.  The Citywide 9800 goal was broken down further between milestones in each of the 15 Council Districts. *See* Dkt. 767-2 ("Milestone Goals"); *see also* 02/07/24 Plaintiffs' Motion for Order re Settlement Agreement Compliance and Sanctions, Dkt. 668 at ECF p.12 n.3 ("Because the word 'encampment' was difficult to

DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER RE: SETTLEMENT AGREEMENT COMPLIANCE

define, the City and Alliance used LAHSA metrics for tents, makeshift shelters, cars, vans, and RVs."); 02/07/24 Declaration of Elizabeth A. Mitchell, Dkt. 668-1 at ¶ 14, n.2 (same); Ex C at p. 22, Ex I at p. 72.  While this removal of items is the focus of the parties' agreed-upon encampment reduction Milestone Goals, and the City's reporting thereon, the City also separately reports on the critical work of moving people experiencing homelessness from encampments to shelters and housing.  As LA Alliance knows, that is addressed in the City's quarterly reports on the number of new beds the City is creating, and the number of individuals served by those beds pursuant to Section 7.1.  *See e.g.,* City's July 15, 2024 Quarterly Report, Dkt. 757, 757-1 and 757-2 (providing reporting on the two different data sets).  In other words, the parties have consistently understood the creation of beds and their utilization, on the one hand, and the reduction of encampments, on the other, as calling for different milestones and different reporting obligations.  LA Alliance's sudden attempt to conflate the two issues is misguided and inappropriate.

## III. <u>THE CITY IS COMPLYING WITH THE AGREEMENT, AND THERE IS NO BASIS FOR THE ADDITIONAL REPORTING ALLIANCE SEEKS</u>

LA Alliance does not contend the City is not complying with the Settlement Agreement, but rather requests "increased" reporting above and beyond what the parties agreed to, without any sound justification in fact or law for the request.

### a. The City Is Not Required To Provide Addresses or Dates, And This Information Would Not Serve To Verify Encampment Reductions

It is telling that LA Alliance points to no provision or legal authority requiring the City to provide address or date information for the locations where encampment resolutions occur, and cannot do so.  Indeed, LA Alliance is not seeking to enforce an existing settlement term, but rather concedes it is seeking to require the City to "increase" reporting on encampment reductions, or in other words, unilaterally alter the terms of the Settlement Agreement. *See* Dkt. 767 (Motion) at ECF p.7:4; 767-3 (Proposed Order) at ECF p.2:5.  But there is no justification for doing so. *See Jeff v.*

3

*Andrus*, 899 F.2d 753, 758 (9th Cir. 1990) ("courts are not permitted to modify settlement terms or in any manner to rewrite agreements reached by parties."); *see also Weddington Prods, Inc. v. Flick*, 60 Cal. App. 4th 793, 810 (1998) (in enforcing a settlement under California law, a court cannot create and impose new obligations to which the parties themselves did not previously agree).

Reporting that was negotiated and agreed to, and which actually serves the important purpose of enabling the parties and the Court to ensure the City and County are complying with their respective settlement obligations is critical; on the other hand, there is no basis for requiring "increased" reporting that was not agreed to by the parties, and which does not serve the purpose of ensuring compliance by the City and County with their respective settlement agreements. Indeed, such unnecessary reporting adds a pointless burden to the City and detracts from its important work in addressing the homelessness crisis.

The only rationale LA Alliance offers for desiring the address information of encampment reductions is to "ensure that said reductions are occurring" (Dkt. 767 at ECF p.3:10-12), but providing address information in quarterly reports for the reductions that already occurred – in some instances months earlier – does not achieve that stated goal. Indeed, the new notion advanced by LA Alliance that an encampment would never again exist in a particular location after an encampment resolution was never contemplated by the parties, nor would it be viable. It is not uncommon that a location where an encampment reduction previously occurred may later be repopulated by new individuals and new tents, makeshift shelters, or vehicles. Any effort by LA Alliance to suggest otherwise is unfounded, and underscores its groundless position in the current motion.

Moreover, as LA Alliance points out, Special Master Michele Martinez, who is tasked with assisting the Court in monitoring, overseeing and enforcing the terms of the Settlement Agreement, attends various encampment reductions and observes them in real time. *See* Dkt. 767 at ECF p. 6:18-20. This real-time monitoring – which is already

4

taking place – is a more effective way to ensure the reported reductions are occurring.

Simply put, the parties did not agree to provide addresses of prior encampment reductions, and this information would not serve the LA Alliance's stated goal of verification.

### b. The City Already Provides Information Concerning Beds Created And People Moving Into Those Beds

Moving people indoors is a paramount goal of the City, which continues to move with urgency to create more beds and to move as many individuals indoors as it can as quickly as possible.

The City's creation of beds, and the number of people experiencing homelessness served by those beds, is reported on in both of the City's quarterly reports to this Court pursuant to its MOU with the County (Dkt. 185-1) and to the Settlement Agreement. As reported in the City's last quarterly report, as of June 30, 2024, 3,724 individuals had been served by the beds created by the City pursuant to the Settlement Agreement, and an additional 33,410 had been served in beds created by the City pursuant to the Roadmap. *See* Dkts. 756-1, 757-1.

This information LA Alliance is already receiving from the City on a quarterly basis confirms that thousands of people are being offered shelter or housing. The number of individuals being offered housing and moving into beds created by the City was, however, never contemplated to be included in the City's separate reporting on its progress toward its encampment resolution Milestone Goals (which instead addressed removal of items from the public rights of way).

Obtaining the additional information LA Alliance seeks (*i.e.,* addresses and dates) will not aid LA Alliance or the Court in any meaningful way beyond the information that the City already reports, and will divert resources away from the City in performing the important work of moving people off the streets.

### IV. CONCLUSION

The City is working with urgency to create new beds to bring as many people as

DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER RE: SETTLEMENT AGREEMENT COMPLIANCE

possible indoors as quickly as possible, while also fulfilling its commitment to clean and reduce encampments in each Council District and Citywide.  LA Alliance's request for additional reporting – made under the unfounded guise of "compelling specific performance" with non-existent terms of the parties' Settlement Agreement – will do nothing to confirm or support the City's efforts, and should be denied.

DATED:  September 11, 2024    HYDEE FELDSTEIN SOTO, City Attorney
                              DENISE C. MILLS, Chief Deputy City Attorney
                              KATHLEEN KENEALY, Chief Asst City Attorney
                              ARLENE N. HOANG, Deputy City Attorney
                              JESSICA MARIANI, Deputy City Attorney

                              By: /s/ Jessica Mariani
                              Deputy City Attorney
                              Counsel for Defendant City of Los Angeles

DEFENDANT CITY OF LOS ANGELES' OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER RE: SETTLEMENT AGREEMENT COMPLIANCE