UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
mumhofer@umklaw.com
emitchell@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>              Plaintiffs,<br><br>    v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>              Defendants. | Case No. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE**<br><br>Before:  Hon. David O. Carter<br>Courtroom: 1<br>Hearing Date:  October 2, 2024<br>Hearing Time:  9:00 p.m. |

*REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE*

## I.   INTRODUCTION

The City is actively frustrating or at least failing to meaningfully fulfill one of the primary purposes of the Settlement Agreement between the parties: "to achieve a substantial and meaningful reduction in unsheltered homelessness in the City of Los Angeles." (*Amended* Fully Executed Stipulated Order of Dismissal as to Def. City of Los Angeles ("Settlement Agreement") 2:13–15, ECF 429-1.)  One of the agreed-upon mechanisms to achieve that purpose is for the City to use its "best efforts" to comply with its established milestones and deadlines for "encampment engagement, cleaning, and reduction" in each Council District.  (Settlement Agreement 8:14–16, ECF 429-1.) After the City finally produced its milestones and deadlines for encampment reduction on January 31, 2024, it has been reporting only raw numbers of alleged "reductions" without any further details.[1] The lack of additional details included in the City's report is problematic because it (perhaps intentionally) does not permit Plaintiff, the Court, or any other party to verify its reported numbers.  Without the ability to verify accuracy, there is no accountability, and the reported metrics are meaningless.  This was not the intended result of the reporting obligations by the City of Los Angeles contained in the Settlement Agreement.

## II.   THE CITY IS INSUFFICIENTLY REPORTING ENCAMPMENT REDUCTION EFFORTS

The City has an obligation to "provide quarterly status updates to the Court regarding its progress with this Agreement[.]" (Settlement Agreement 9:4–8, ECF 429-1.)  Those updates are required to include (but are not limited to): "the number of housing or shelter opportunities created or otherwise obtained, the number of beds or opportunities offered, and the number of beds or opportunities currently available in

---

[1] Even the City's reported numbers are conflicting, reporting 2,137 reductions in the first quarter, but then identifying errors in reporting and reporting only 1,688 in a six-month period.  To date the City does not appear to have an accurate number of Encampment Resolutions, or is possibly behind in Resolutions according to its Milestones and Deadlines.

*REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE*

each Council District." (*Id*.) The City is also obligated to "work with LAHSA to include . . . the number of PEH engaged, the number of PEH who have accepted offers of shelter or housing, the number of PEH who have rejected offers of shelter or housing and why offers were rejected, and the number of encampments in each Council District." (*Id*. at 9:8–12.) The purpose of the reporting obligations is to provide the parties and the court with a fulsome picture of the City's efforts, including massively increasing the bed counts for PEH, engaging with and offering those beds to unsheltered PEH, and ultimately reducing the number of unsheltered individuals living (and dying) on the streets of Los Angeles. Rather than abide by the obligations and conform to the purpose of the historical and ground-breaking agreement, the City under its new administration has side-stepped its settlement obligations in an attempt to fit the settlement agreement into existing City structures rather than re-structure City operations to fit the agreement as was originally intended.

The City somewhat inaccurately claims the Settlement Agreement "does not obligate the City to provide the locations and dates of encampment resolutions." (Def. City of Los Angeles' Opp'n to Mot. for Order ("Opp'n") 1:8–11.) In truth, the Agreement is silent on the specific details the City is required to report on "encampment engagement, cleaning and reduction." (Settlement Agreement 8:14–16, ECF 429-1; *id*. at 9:4–8 (mandating quarterly reports on "[the City's] progress with this Agreement," "including" reports on bed creations and PEH outreach.[2]) . However, the Agreement clearly intends for more than the identified metrics because it uses an inclusionary phrase ("including") but never specifies that the City reporting obligations are "limited to" the identified metrics. This paragraph was intended to be flexible to

---

[2] The City is failing to report the specific metrics of "the number of beds or [shelter] opportunities currently available in each Council District" and "the number of PEH engaged, the number of PEH who have accepted offers of shelter or housing, the number of PEH who have rejected offers of shelter or housing and why offers were rejected, and the number of encampments in each Council District." (Settlement Agreement 9:9–12, ECF 429-1.) 7.1. Reporting these metrics would go far in meeting the City's obligations to provide sufficient information to enable the parties to evaluate compliance.

2

*REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE*

meet the parties' informational needs to evaluate compliance and progress. In this case, location and date information is needed to evaluate compliance and progress and is therefore an implied term of the Agreement. *See, e.g. Retired Emps. Ass'n of Orange Cnty., Inc. v. County of Orange*, 52 Cal. 4th 1171, 1178–79 (2011) (Under California law, "[e]ven when a written contract exists, 'evidence derived from experience and practice can . . . trigger the incorporation of additional, implied terms'" though "implied terms should never be ready to vary express terms.") (citation omitted); *see also* Cal. Civ. Code § 1643 ("A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."); *United Com. Ins. Serv.*, *Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (Even in federal court, "[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally.") (citation omitted).

Here, the City's reporting of only raw numbers (and inconsistent ones at that) does not meet the parties' informational needs to evaluate compliance with the terms of the Agreement. Indeed, it has come to the Alliance's attention that the City is likely using CARE/CARE+ clean-ups as "encampment reduction" metrics, a fact that the Alliance raised in its moving papers and the City did not deny in its opposition. But CARE/CARE+ clean-ups are not "encampment reductions" they are "cleanings" which is a separately-identified item in the Settlement Agreement (Settlement Agreement 8:11–16, ECF 429-1), requiring the City's "best efforts" to comply with plans, milestones, and deadlines for "encampment engagement, cleaning, and reduction.").

CARE/CARE+ Teams are described as "citywide encampment clean-ups along with trash, litter/debris, and health hazard and/or safety hazard removal on the City's public rights-of-way."[3]  CARE+ teams remove "trash, litter, and debris" and "power

---

[3] City of Los Angeles, LA Sanitation, Livability, lacitysan.org, https://www.lacitysan.org/san/faces/home/portal/s-lsh-wwd-s/s-lsh-wwd-s/s-lsh-wwd-s-

*REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE*

wash[] . . . public rights-of-way to ensure fully sanitized areas for public safety." (*Id.*) CARE teams "provide day-to-day maintenance to achieve safe and clean public rights-of-way." (*Id.*) Personal property is "stored and maintained in a secure location . . . for the rightful owner to retrieve." (*Id.*) Per Alliance observations of this CARE/CARE+ cleanups and reports to City Council, individuals are provided advanced notice of cleanings, requested to move to another block, and then may return once the cleaning is done.  Day-to-day maintenance, sanitation, and trash removal is an important service to the housed and unhoused communities to maintain impacted areas; however, they certainly do not constitute "encampment reduction" because the individuals are not necessarily offered housing or shelter and moved inside—they are simply moved *aside* until the areas are clear.  Nothing is "reduced" except trash and debris.  This is a "cleaning" not a "reduction."  The Agreement requires *both.*  The City does not get to combine efforts into a singular number.

The purpose of this Agreement is to *bring people inside*, thus achieving a "substantial and meaningful reduction in unsheltered homelessness in the City of Los Angeles." (Settlement Agreement 2:13–15, ECF 429-1.)  While the City no doubt does engage in outreach, engagement, and encampment reduction through other means (Inside Safe operations, 41.18 compliance, individual council efforts), CARE/CARE+ operations do not comply.  Without fulsome reporting on its reduction efforts, including the date and location of the alleged "reductions" there is no accountability for compliance with the Agreement, frustrating the purpose of the reporting obligations.  And because the reporting obligations contained in Section 7.1 necessarily include items that are not specifically delineated but certainly implied for the Agreement to be effective, reporting these details falls squarely within the City's obligations.

---

l?_adf.ctrl-state=a94rw0iin_1&_afrLoop=43504756160509839&_afrWindowMode=0&_afrWindowId=null#!%40%40%3F_afrWindowId%3Dnull%26_afrLoop%3D43504756160509839%26_afrWindowMode%3D0%26_adf.ctrl-state%3Da94rw0iin_5 (last visited Sept. 18, 2024).

*REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE*

III.    **REPORTING BED METRICS AND OCCASIONAL SPECIAL MASTER REAL-TIME OBSERVATIONS IS INSUFFICIENT TO MEET THE CITY'S REPORTING OBLIGATIONS**

The City argues additional data for encampments reductions is unnecessary because a) the City reports bed usage in its quarterly reports, and b) Special Master Martinez occasionally observes "various encampment reductions" in real time. But neither of these suffices to evaluate compliance and progress specifically with the City's encampment reduction obligations. The number of PEH served in each facility does not necessarily equate to the number of encampments reduced, as a single tent, makeshift shelter, RV or vehicle may have multiple individuals residing therein. And many individuals find alternative housing or migrate rather than accept city-offered shelter or housing. Individuals residing in City beds may also have come from other facilities or areas. The metric of encampment reduction is totally unrelated to the number of individuals in projects, and needs to be reported separately. And while Special Master Martinez is able to view some encampment engagement and reductions in real-time, she is not present during each of these.

//

//

//

//

IV.    **CONCLUSION**

No person in the City of Los Angeles should have to or be allowed to live outside where it is unsafe and unhealthy for both the individuals living on the streets and the surrounding communities. Encampments, in the form of tents, makeshift shelters, vehicles, and RVs, should be reduced as the City's outreach and bed production ramps up. Yet the encampments do not appear to be reduced, and the City's reporting of raw numbers only is both unreliable and insufficient to evaluate compliance. The Alliance requests the Court order the City to report the locations and

5

*REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE*

dates of alleged encampment resolutions/reductions to ensure accountability and evaluate Agreement compliance.

Dated: September 18, 2024                    Respectfully submitted,

                                            */s/ Elizabeth A. Mitchell*
                                            UMHOFER, MITCHELL & KING, LLP
                                            Matthew Donald Umhofer
                                            Elizabeth A. Mitchell

                                            *Attorneys for Plaintiffs*

*REPLY ISO MOTION FOR ORDER RE SETTLEMENT AGREEMENT COMPLIANCE*