DAWYN R. HARRISON (State Bar No. 173855)
*County Counsel*
KATHERINE M. BOWSER (State Bar No. 230626)
*Assistant County Counsel*
ANA WAI-KWAN LAI (State Bar No. 257931)
*Senior Deputy County Counsel*
alai@counsel.lacounty.gov
OFFICE OF COUNTY COUNSEL
500 West Temple Street, Suite 648
Los Angeles, California 90012
Telephone: (213) 974-1830
Facsimile: (213) 626-7446

LOUIS R. MILLER (State Bar No. 54141)
smiller@millerbarondess.com
MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | **CASE NO. 2:20-cv-02291 DOC (KES)** <br><br> **COUNTY OF LOS ANGELES' STATEMENT RE: PROPOSED OCTOBER 25, 2024 EVIDENTIARY HEARING ON CITY'S BED PLAN** <br><br> Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

700561.4

## I.    INTRODUCTION

On October 16, 2024, the Court set an "evidentiary hearing" for the afternoon of October 25, 2025, following discussions regarding the City's proposed "Bed Plan." (10/16/24 Hrg. Tr. at 43:9-14, 46:15-47:12.)  The Bed Plan refers to the City's request to modify its settlement agreement with Plaintiffs ("City Settlement," Dkt. 421) by, *inter alia*, "adding 2,500 beds created under the Roadmap Agreement (Dkt. 185-1)" in order "to meet its remaining bed obligation." (Dkt. 775; *see also* Dkt. 765 [8/30/24 Minute Order re Bed Plan].)

The County expresses no position on the necessity of an evidentiary hearing regarding the appropriateness of modifying the City Settlement per the Bed Plan. However, Plaintiffs also suggested during the October 16th status conference that the evidentiary hearing should include "potentially develop[ing] facts around the question of whether the County's refusal to continue to fund those [2,500 beds] violates the County's settlement agreement as well." (10/16/24 Hrg. Tr. at 15:23-25.)  This request for an evidentiary hearing regarding **the County** misstates the record, has no basis in fact or law, and would exceed the Court's authority under Plaintiffs' settlement agreement with the County ("County Settlement," Dkt. 646).

## II.    PROCEDURAL HISTORY

Plaintiff LA Alliance for Human Rights is an organization that represents housed residents and business owners unhappy with the state of homelessness in the Los Angeles area.  It was formed for the purpose of pursuing this litigation after being denied intervention in *Mitchell v. City of Los Angeles*, Case No. 16-CV-01750.  In this case, Plaintiff alleged constitutional violations of due process and equal protection related to the presence of homeless encampments, as well as violations of state law, nuisance statutes, negligence and waste of public funds.

### A.    The Roadmap/Freeway Agreement

On June 16, 2020, the County and the City entered into a binding term sheet whereby the County agreed to pay the City $53 million during the first year, and up

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

to $60 million per year for the following four years, to finance operations for 6,000 new beds for vulnerable people experiencing homelessness ("PEH").  (Dkt. 136.) The County also agreed to provide a package of mainstream services to PEH residing in facilities established by the City pursuant to the Memorandum of Understanding ("MOU"), including on-site outreach and engagement, benefits assistance, as well as mental health and substance use disorder services.

In October 2020, the City and County filed their MOU memorializing this commitment. (Dkt. 185-1.)   The first page of the MOU sets forth its term, which expires on June 30, 2025. (*Id.* at 1.)  The Roadmap/Freeway Agreement ("Roadmap Agreement") also made clear that, other than the annual payments described in the MOU, the City was "responsible for all costs, including capital costs, operating costs, and/or other expenses" associated with the 6,700 new beds.  (*Id.* at 5.)  Not only that, the MOU states that "[t]he funding obligation of COUNTY under this MOU is exclusive," and the County was otherwise free to allocate funding "consistent with Board policy."  (*Id.*)

It is undisputed that the County has tendered each annual payment to the City, as well as filed quarterly status reports regarding its supportive services.  Pursuant to the terms of the MOU, the County made its last payment of $60 million to the City on July 3, 2024.  (Dkt. 758.)  Plaintiffs were never a party to the MOU.

## B.      The City Settlement

Plaintiffs and the City reached a settlement of the underlying litigation in the spring of 2022.  As relevant to this dispute, the City agreed in the City Settlement to "create a Required Number of housing or shelter solutions, which is equal to, but (in the City's discretion) may be greater than, the shelter and/or housing capacity needed to accommodate sixty percent (60%) of unsheltered City Shelter Appropriate PEH within the City based on LAHSA's 2022 Point in Time count."  (Dkt. 421.)

In response to objections by the Intervenors, the City confirmed that "[a]ll of the beds the City is committing to build in this Settlement Agreement are in addition

to the beds being built pursuant to the MOU" and "[t]here will be no double-counting of beds between this Settlement Agreement and the MOU." (Dkt. 438 at 6 (citing 5/20/22 Hrg. Tr. at 11:19–23).)

## C.    The Instant Dispute Regarding The City's Bed Plan

During a status conference on August 29, 2024, the City Administrative Officer, Matt Szabo, appeared in court to present a proposed modification to the City Settlement. (*See* Dkt. 765.) According to Mr. Szabo, the City has identified "a gap of 4,252 beds that . . . need to be identified and funded between now and June of 2027" for the City to meet its housing obligations under the City Settlement. (8/29/24 Hrg. Tr. at 73:3-4.) As part of its plan to close that gap, the City requested permission to migrate 2,500 beds created under the Roadmap Agreement to the City Settlement. (*Id.* at 72:22-77:4.) At the Court's request (Dkt. 765), the City submitted a written proposal to this effect (Dkt. 775).

On October 4, 2024, Plaintiffs filed a "Position" concerning the Bed Plan and requested an "an answer from the County of Los Angeles about whether it will amend the Roadmap Agreement to continue paying for 50% of the operational costs of the 4,100 shelter beds upon expiration of the Roadmap Agreement, to prevent those beds from being closed." (Dkt. 785 at 1.) In their Position, Plaintiffs admit "the [MOU] 'was always set to expire,'" (*id.* at 2), but nevertheless called for "an evidentiary hearing on October 16, 2024, about the implications of closing these 4,100 beds and/or the financial conditions of the City upon losing County funding and why the County cannot continue to separately fund these beds." (*Id.*)

Plaintiffs made no effort to ground this request in any provision of the Roadmap Agreement or County Settlement, because *none* exists. Plaintiffs cited to a single news article that has nothing to do with this case or the County Settlement at all. Far from supporting an evidentiary hearing, the article was about one of countless examples of County-backed homeless programs above and beyond the commitments made by the County in the Settlement. The article lauded the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600   LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

700561.4

4

County's efforts to "expand[] its emergency resources to ensure our most vulnerable community members can access safe shelter and services during inclement weather events," reporting the Board of Supervisors recently unanimously approved the development of year-round, 24/7 emergency homeless shelters. (*Id.*)

Plaintiffs nevertheless pressed for an evidentiary hearing during the October 16th status conference. Their presentation to the Court relied on photographs of unhoused individuals, excerpts from the ***City Settlement***, and quotes from recent status conferences where representatives of the City and County mentioned the expiration of the Roadmap Agreement. (Dkt. 794.) Plaintiffs proffered no evidence showing the County is in breach of any term of the County Settlement merely because the Roadmap Agreement ends next year by its own terms.

## III.   THERE IS NO BASIS FOR AN EVIDENTIARY HEARING REGARDING THE COUNTY SETTLEMENT

The decision rests exclusively with the City, Plaintiffs, and the Court whether the City may migrate 2,500 of the beds it created under the Roadmap Agreement to fulfill its settlement obligations. The County is not a party to the City Settlement.

However, if the Court approves the Bed Plan, the County has confirmed those 2,500 beds will be supported by the County pursuant to their May 2024 Memorandum of Understanding ("May 2024 MOU"), in which the County committed hundreds of millions of dollars to funding 100% of the operations of the City's interim housing counted towards the City Settlement. (10/16/24 Hrg. Tr. at 38:20-41:6.) To be clear, that commitment is ***in addition to*** the millions of dollars in services, new beds, and new subsidies that the County is providing under the County Settlement. And under the MOU, the County is doing more than the Roadmap Agreement, not less, because the County is funding 100% of the City bed's operating costs; whereas under the Roadmap Agreement it was funding about half of the costs of these beds. The May 2024 MOU is a private agreement between the City and County as partners in tackling the crisis of homelessness in the City;

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Plaintiffs are not parties to that agreement, and it is not within the scope of this case. (5/2/24 Hrg. Tr. at 10:8-11:6.)  However, this is one of countless examples of the County's substantial efforts above and beyond the obligations under its settlement agreement with the Plaintiffs to shelter, house, and ease of the suffering of PEH in the County and the 88 cities within it, including through its emergency declaration, new framework to end homelessness, encampment resolution program, and more.[1]

Plaintiffs' call for an evidentiary hearing is, therefore, misplaced.  An obvious threshold issue is that the County Settlement contains detailed dispute resolution procedures that must be satisfied before Plaintiffs can assert a breach and ask the Court to exercise its continuing jurisdiction.  Specifically, Section P.1 provides that the "*required*" and "*exclusive steps[]*" for raising concerns regarding the County's obligations under the Agreement are by written notice to County Counsel, followed by "informal negotiations" between the parties to try and resolve any dispute.  (*See* Dkt. 646 at 16-17.) The parties' Second Addendum to the settlement likewise contemplates the involvement of the monitor(s)—not the Court—in these initial discussions.  (*See id.* at 38.)  Plaintiffs have side-stepped the process agreed to by the Parties because they do not have credible grounds to argue that the natural lapse of the Roadmap Agreement constitutes a breach of the County Settlement.

Not only is there no basis to treat the expiration of the Roadmap Agreement as a violation of the County Settlement, Plaintiffs are also not entitled to conduct a fishing expedition through the County budget, which is what this is.  And it is especially inappropriate for Plaintiffs to exploit photographs of vulnerable PEH to justify their disregard for the negotiated dispute resolution procedures and obtain a needless evidentiary hearing.

In order to continue to make meaningful progress in this unprecedented crisis,

[1] More information about these efforts can be found at the County Homeless Initiative's website, https://homeless.lacounty.gov/newsroom/#.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

700561.4

6

the County needs freedom to pursue a variety of evidence-based policy choices that are responsive to the needs of the community and the County's budget realities, not the anecdote-fueled perspective of one interest group. *See City of Grants Pass, Oregon v. Johnson*, 144 S. Ct. 2202, 2226 (2024) (communities need "'wide latitude' and 'flexibility' . . . to address the homelessness crisis"). There is no reason to call the County's subject matter experts away from their tireless work on behalf of the homeless population.

DATED: October 24, 2024          MILLER BARONDESS, LLP


By: _____*/ s / Mira Hashmall*_____
MIRA HASHMALL
Attorneys for Defendant
COUNTY OF LOS ANGELES

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

700561.4

7

COUNTY OF LOS ANGELES' STATEMENT RE
PROPOSED OCTOBER 25, 2024 EVIDENTIARY HEARING RE CITY'S BED PLAN