## MEMORANDUM OF UNDERSTANDING BETWEEN
## THE COUNTY OF LOS ANGELES AND THE CITY OF LOS ANGELES

This Memorandum of Understanding ("MOU") is entered into by and between the County of Los Angeles, a subdivision of the State of California ("County"), and the City of Los Angeles, a municipal corporation ("City"), for purposes of funding and expanding housing, outreach, and supportive services for people experiencing homelessness ("PEH"). County and City will be referred to herein individually as "Party" and together as "Parties."

### RECITALS

WHEREAS, City and County have long forged an unprecedented partnership in recognition of the need for a comprehensive, centralized response to counteract the myriad causes of homelessness within their boundaries;

WHEREAS, on August 17, 2015, the Los Angeles County Board of Supervisors ("Board") launched the Homeless Initiative to combat the homelessness crisis. The Homeless Initiative convened 18 policy summits on nine topics from October 1 to December 3, 2015, which brought together County departments, cities, other public agencies, and a wide range of community partners and stakeholders. On February 9, 2016, the Board approved 47 strategies that reach across government and community boundaries to forge effective partnerships and get results. On the same day, the Los Angeles City Council ("Council") approved the City Comprehensive Homeless Strategy, which was developed and adopted in tandem with the Homeless Initiative to increase focus on short- and long-term homelessness issues;

WHEREAS, in November 2016, voters overwhelmingly approved Proposition HHH, which authorized City to issue up to $1.2 billion in general obligation bonds to partially subsidize the development of supportive housing units for individuals and families who are experiencing homelessness or are at risk of becoming homeless;

WHEREAS, in March 2017, voters also approved Measure H by over a two-thirds vote, a landmark 0.25-cent County sales tax to provide an estimated $355 million per year for ten years to fund a comprehensive regional approach encompassing 21 interconnected strategies in six areas to combat homelessness. City and County have deployed resources from Proposition HHH and Measure H to build thousands of housing units and deliver an expanded network of supportive services to PEH;

WHEREAS, in December 2017, City and County entered into a memorandum of understanding providing that, for a ten-year term, the City will create 10,000 new Permanent Supportive Housing ("PSH") units and County will provide supportive services, including intensive case management services and integrated health services, for each unit created by City;

WHEREAS, in response to the COVID-19 crisis, City and County partnered to immediately provide PEH with safe and secure sites to shelter in place while seeking permanent housing;

577454.28 Page **1** of **15**

**FILED**
CLERK, U.S. DISTRICT COURT

11/22/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ kdu _____ DEPUTY

WHEREAS, on December 12, 2022, City declared a state of emergency on homelessness given the magnitude of loss of life, the persistent and disproportionate impact of the COVID-19 pandemic, and the persistent discriminatory impacts of a lack of housing;

WHEREAS, on January 10, 2023, County proclaimed a local emergency for homelessness in Los Angeles County due to the existence of conditions of extreme peril to the safety of persons on the basis of pervasive and pernicious homelessness in the County;

WHEREAS, City and County continue to make addressing homelessness a top priority, and desire to further expand their collaboration to house and serve PEH, including the most vulnerable people experiencing chronic homelessness;

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions set forth herein, the Parties hereto agree as follows:

## I.    PURPOSE

The purpose of this MOU is to establish a framework for funding and expanding housing, outreach, and supportive services for PEH, as well as for facilitating data-sharing and other forms of collaboration. This MOU does not arise from a legal obligation and does not resolve any litigation. This MOU supersedes and replaces the Agreement to Terms between the City and County dated September 2022.

## II.    RECITALS

The Recitals to this MOU are incorporated into and shall constitute a part of this MOU and to the same extent and the same force and effect as if fully set forth herein.

## III.    DEFINITIONS

The following terms when used in this MOU shall have the meanings assigned to them below, regardless of capitalization:

a.  **"2017 MOU"**: The December 2017 Memorandum of Understanding between the City and County providing that, for a ten-year term, the City will create 10,000 new PSH units and County will provide Mainstream Services for each unit created by City.

b.  **"Beds":** Any housing or shelter services, including but not limited to tiny homes, shared housing, purchased or master-leased apartments, hotels/motels or other buildings, congregate shelters, PSH, rental assistance/rapid rehousing, family reunification, sprung structures or tents, safe parking, safe sleeping/camping, affordable housing, and interim housing (including A Bridge Home beds).

c.  **"Bed Rate":** Refers to the daily or nightly fee paid to an interim housing provider to house one person. This fee covers the basic cost of sheltering an individual and includes accommodation, meals, security, assessment, case management, linkage

to health/behavioral health services, general operations, and management services.

d. **"City PEH":** People experiencing homelessness in the City of Los Angeles, or PEH who were in the City before they were placed in a County bed outside of the City.

e. **"City Settlement":** The June 14, 2022 settlement agreement between the City and Plaintiffs in connection with the action entitled *LA Alliance for Human Rights et al. v. City of Los Angeles et al.*, U.S. District Court for the Central District of California, Case No. 2:20-CV-02291 ("*LA Alliance*");

f. **"County Settlement":** The September 29, 2023 settlement agreement between the County and Plaintiffs in connection with *LA Alliance.*

g. **"Freeway/Roadmap MOU":** The October 9, 2020 Memorandum of Understanding between the City and County, to finance the development of and provide Mainstream Services at 6,700 beds for vulnerable PEH, including those living within 500 feet of a freeway overpass, underpass, and ramp, or who are 65 years or older.

County's obligations under this MOU, including the provision or funding of any services, are in addition to, and shall not supplant, the obligations, including the provision or funding of services, provided by County under the Freeway/Roadmap MOU.

h. **"HOME teams":** The Homeless Outreach and Mobile Engagement teams deployed by County Department of Mental Health ("DMH") to provide psychiatric support, outreach, and intensive case management to PEH with serious mental illnesses. References to HOME teams include the increased number of teams created pursuant to the County Settlement.

i. **"Mainstream Services":** County Department of Public Social Services ("DPSS") public assistance programs, DMH mental health services, County Department of Public Health-Substance Abuse Prevention and Control ("DPH-SAPC") services, and benefits advocacy services to clients who meet eligibility criteria for these services.

j. **"MDTs":** The Multi-Disciplinary Teams deployed by County Department of Health Services ("DHS") whose staff have physical health, mental health, substance use, case management, and peer support experience and serve PEH with more complex health and/or behavioral health conditions. References to MDTs include the increased number of teams created pursuant to the County Settlement.

k. **"PSH":** Permanent supportive housing.

l. **"PSH Services":** Social welfare or benefits administered by or through the County, including (1) Intensive Case Management Services ("ICMS") and integrated health services; (2) Mainstream Services; and (3) services to facilitate a tenant's connection to primary care, specialty mental health services, and substance abuse disorder services.

m. **"Refer," "referral," and "referring":** The act of referring a PEH client for services, consultation, or other assistance through the formal process(es) outlined in this MOU.

n. **"SUD":** Substance use disorder.

## IV.    MOU TERM

This MOU shall become effective and operative when executed by the City and County and shall terminate on June 30, 2027, unless terminated sooner or extended by the Parties, in whole or in part, as provided in this MOU.

## V.    CITY RESPONSIBILITIES

a. **Housing and Services**

   i. City alone shall be responsible for confirming that all beds governed by this MOU are compliant with the City Settlement, and County shall bear no responsibility.

   ii. **Interim Housing**

   1. City shall be responsible for contracting for the interim housing beds City establishes under the City Settlement, and County bears no responsibility for City's contracts with bed providers.

   2. City shall invoice County for the cost of interim housing beds established by City under the City Settlement as set forth in Section VI.a.i.1. City shall only invoice County for interim housing beds that (a) are included on City's quarterly reports in connection with the City Settlement; and (b) are active and that clients can be placed in (i.e., if a room has two beds but the site is using the room as single occupancy then City will only invoice County for one bed). City will not retroactively add interim housing beds to its quarterly reports in connection with the City Settlement.

   3. City shall invoice County in arrears for the actual cost of interim housing beds City incurred from June 14, 2022, through the execution of this MOU that were included on the City's quarterly reports in connection with the City Settlement. City and County

acknowledge the Highland Gardens site is the only site that falls within this provision.

4. City will use best efforts to ensure access to City interim housing beds for City PEH who are connected to County services.

5. City interim housing sites will conduct assessments and connect clients to Mainstream Services, including by coordinating with County departments to provide services onsite, assisting clients with making appointments, providing appointment reminders, and coordinating transportation. These activities are consistent with existing interim housing contract terms.

6. City shall ensure that it is not seeking double reimbursement across the 2017 MOU, the Freeway/Roadmap MOU Deal, or the City Settlement. City shall provide County with quarterly reports on beds attributed to the 2017 MOU. City provides quarterly reports to the court on beds attributed to the Freeway/Roadmap MOU and City Settlement. Upon request, City will provide County with additional information on beds attributed to any of these agreements so that County has sufficient information to verify that there is no duplication of reimbursements for beds across agreements.

 iii. **PSH**

1. City shall provide County a schedule by fiscal quarter, updated quarterly, of the PSH it intends to establish pursuant to the City Settlement.

b. **Outreach**

 i. City shall establish a City structure for outreach coordination that represents the Mayor's Office, Council Districts, and other City entities involved in outreach, and coordination between City and County will occur through this structure. City Council Offices may also meet with MDTs outside of this structure as set forth in Section VII.b.ii.

 ii. City shall ensure that City-funded outreach teams participate in trainings on how to access DMH, DHS, DPSS, and DPH services and that City-funded outreach teams document their referrals in Homeless Management Information System ("HMIS").

c. **High Service Need Interim Housing Beds**

 i. City shall prioritize the placement of City PEH exiting County Homeless Initiative-funded unlicensed high service need interim housing beds for

City interim housing beds once clients are ready to be discharged from County's high service need beds.

ii. City shall establish a process for County to refer City PEH in County's Homeless Initiative-funded unlicensed high service need interim housing beds to City interim housing beds.

d. **Prioritization of Housing Placements**

i. City is working with the U.S. Department of Housing and Urban Development ("HUD") to develop a community housing preference program. Once approved by HUD, City will work with Los Angeles Homeless Services Authority ("LAHSA"), property owners and managers, and all other applicable project funders such as the County (DHS, DMH, LACDA), to apply the approved preferences to supportive housing units in the City.

ii. City shall include City PEH served by County departments, outreach teams, and/or in County-funded beds in its selection process for City PSH placements, its community housing preference program, and its use of any HUD waivers to reduce barriers to entry.

e. **Invoicing and Payment**

i. City shall invoice County as set forth in Section VI.a.i.1 only for the Bed Rate specified hereunder. City must prepare invoices, which will include the amount owed to City by County under the terms of this MOU, as well as back-up documentation by site. City's payments will be as provided in this MOU, and the City will be paid only for the Bed Rate approved in writing by the Parties.

ii. City must submit invoices to County by the last calendar day of the month following the quarter of payment. All invoices under this MOU must be submitted to and have the written approval of the County's Chief Executive Office, Homeless Initiative, Executive Director, or designee, prior to payment. In no event will County be liable or responsible for any payment prior to such written approval. Approval for payment will not be unreasonably withheld.

VI. **COUNTY'S RESPONSIBILITIES**

a. **Housing and Services**

i. **Interim Housing**

1. Upon receipt of City's invoice(s) per Section V.a.ii, County shall reimburse City on a retroactive and go-forward basis for the Bed Rate at interim housing beds established by City pursuant to the

577454.28 Page **6** of **15**

City Settlement between June 14, 2022, and June 30, 2027, consistent with the terms described herein. County's reimbursement shall be at the rates established by City and LAHSA, until an adjusted and standardized interim housing bed rate schedule is adopted. Upon adoption of the adjusted and standardized interim housing bed rate, the County will reimburse City for the Bed Rate consistent with the adjusted "basic bed rate" schedule.

2. In addition to the Bed Rate, County will provide Mainstream Services to clients in interim housing beds established by City pursuant to the City Settlement to clients who meet eligibility criteria for these services.

ii. **PSH**

1. County shall contract for and fund PSH Services for PEH in PSH units established by City pursuant to the City Settlement. These services shall be provided on a per unit basis as PSH units are established and become occupiable.

2. County may use existing agreements between County and City, including the 2017 MOU, to fulfill its obligations herein.

3. County shall work to prioritize referrals of PEH in the City to PSH placements in project-based units located within City limits, even if the units are funded and/or are operated by the County, subject to availability, eligibility requirements, and provided there is no rule, regulation, statute, or legal prohibition, and consistent with applicable funding sources requirements, contracts and agreements.

iii. County's obligation to provide, contract for, and/or fund services and reimburse Bed Rates under this MOU is limited to a maximum of 3,100 interim housing units and 10,200 PSH units. By mutual agreement, the number of PSH units can increase by a corresponding decrease in the number of interim housing units.

b. **Outreach**

i. Of the 34 MDTs and 10 HOME teams that County is assigning to conduct outreach exclusively in the City pursuant to the County Settlement, County shall allocate at least 1 MDT team per Council District and assign the remaining MDT teams where there is the greatest need as informed by the Point-In-Time ("PIT") Count. However, City acknowledges and expressly agrees that MDTs may work outside of their assigned Council District and HOME teams can work outside of their regularly assigned

areas in response to emergencies, weather events, City priorities requiring additional resources such as scheduled encampment resolutions, and to maintain continuity with clients who move across District boundaries.

ii.    County shall provide City-funded outreach teams with access to DMH, DHS, DPSS, and DPH services directly and through coordination with MDT and HOME teams assigned to City.  County will not charge City to provide access or for any other Mainstream Service in connection with this provision.

iii.   County-funded outreach teams will have access to County Homeless Initiative-funded unlicensed high service need interim housing beds regardless of where they are located.

iv.   County shall collect and provide City, on a quarterly basis, MDT outreach data on a Council District by Council District basis using reports produced from HMIS.

c.   **High Service Need Interim Housing Beds**

i.    County shall provide access to City-funded outreach teams to refer City PEH to Homeless Initiative-funded unlicensed high service need interim housing beds using County's centralized bed management  for Homeless Initiative-funded unlicensed high service need interim housing beds.

ii.   County shall prioritize PEH in City-funded interim housing for County Homeless Initiative-funded unlicensed high service need interim housing beds, subject to availability, eligibility requirements, and provided there is no rule, regulation, statute, or legal prohibition, and consistent with applicable funding sources requirements, contracts and agreements, and or there is not a client with a greater or more immediate need.  The Parties understand that Homeless Initiative-funded unlicensed high service need interim housing beds use funding streams intended to serve PEH countywide and prioritization for City PEH will not limit non-City PEH access to countywide beds with consideration of PIT Count.

iii.   The Parties will coordinate to ensure that lower acuity PEH occupying high service need interim housing beds are transitioned to more appropriate housing options to maximize availability of high service need beds.

d.   **Mental Health/SUD Beds**

i.    A referral for City PEH to the beds described in this section will be a priority if there is no rule, regulation, statute, or legal prohibition and there is not a client with a greater or more immediate need.

ii. County shall provide City with County's periodic reports to the County's Board of Supervisors on the number and type of beds currently administered by County and the pipeline of new beds.

iii. County shall provide City with periodic reports, on at least a quarterly basis, on the number of City referrals, placements, offers and declined offers to these mental health/SUD beds. The periodic reports shall be based on documented City referrals using data that is available to County. City outreach worker referrals will consist of those referrals made using the process established in Section V.c.ii. The Parties will develop a process to document other types of City referrals.

iv. County will partner with City to advocate and apply for additional State and federal funding to provide services to eligible County residents suffering from serious mental illness or substance use disorders, including PEH in City.

v. County acknowledges it has certain responsibilities under state and federal law to provide services, at its sole expense, to eligible County residents suffering from serious mental illness or substance use disorders, including City PEH. Nothing in this MOU shall be construed to limit, take the place of, or interpret County's responsibilities under local, state, or federal law.

e. **Prioritization of Housing Placements**

i. County shall work to prioritize referrals of City PEH to PSH placements in project-based units located within City limits, even if the units are funded and/or are operated by County. PSH placements shall be consistent with all federal and state laws and regulations, applicable funding sources requirements, and contracts and agreements.

ii. County acknowledges it has certain responsibilities under state and federal law to provide services, at its sole expense, to eligible County residents suffering from serious mental illness or substance use disorders, including City PEH. Nothing in this MOU shall be construed to limit, take the place of, or interpret County's responsibilities under local, state, or federal law.

VII. **JOINT RESPONSIBILITIES**

a. **Housing and Services**

i. The rate schedule for interim housing beds when adopted by City and County must provide funding options which are both best practice and fiscally sustainable.

ii. City and County agree to meet to discuss the financial implications and to mitigate the impacts of the rate schedule on the interim housing beds the City will establish pursuant to the City Settlement.

iii. Over the term of the MOU, the Parties shall periodically meet, at least every six months, to discuss potential continuation of supportive services for permanent and interim units beyond the term of this MOU.

b. **Outreach**

i. County and City will develop a mutually agreeable schedule for outreach coordination meetings that shall include DMH, DHS, and DPH, and will consider the structure that City establishes for outreach coordination per Section IV.b.ii. The Parties shall leverage existing meetings whenever possible to minimize additional scheduling.

ii. DHS and the MDTs shall meet regularly with each Council District Office to discuss operations and needs within that Council District. City acknowledges DHS holds the contracts for MDTs and is responsible for holding MDTs accountable. County acknowledges that City input provided through the outreach coordination structure described above shall be given great weight by County in planning service deployment and coverage. To the extent that County deployment and coverage does not match City's input, County shall articulate the basis for the difference.

c. **Mental Health/SUD Beds**

i. City and County shall define a process for City PEH to access existing and new mental health and SUD beds (including a process for outreach workers engaging City PEH).

ii. City PEH will have access to the beds regardless of whether those beds are in City limits. Placement of City PEH in these beds is subject to availability, eligibility requirements, and provided there is no rule, regulation, statute, or legal prohibition, and consistent with applicable funding sources requirements, contracts and agreements, and or there is not a client with a greater or more immediate need.

d. **New Funding**

i. City and County shall meet periodically to discuss strategic maximization of local homeless and housing revenue sources, with consideration of alignment that supports the continuation of existing services beyond the terms of this MOU.

e. **Partnership on City-/County Owned Land**

    i. City and County will provide each other with land inventory of prioritized parcels for the creation of new interim or permanent housing units as mutually agreed by County and City, as such parcels are identified as appropriate as determined by each Party owning such parcel, in the exercise of its discretion.

    ii. Units created through this partnership can be credited to City's unit creation requirement under the City Settlement and/or the Freeway/Roadmap MOU upon mutual agreement between County and City.

## VIII.  FUNDING

a. County hereby allocates to City an amount not to exceed the total amount of $259,000,000, for the MOU Term as set forth in Section VI for the interim housing Bed Rate as described in this MOU.  The not to exceed amount shall be adjusted if the basic bed rate under the standardized interim housing bed rate schedule exceeds $100/night.

## IX.  OVERSIGHT

a. Each Party agrees to maintain accurate and complete financial accounts, documents, and records relating to their performance under this MOU.  All such material will be kept and maintained by each Party and will be made available to the other Party, upon reasonable notice, during the term of this MOU and for a period of five years thereafter unless the other Party's written permission is given to dispose of any such material prior to such time.

b. Either Party, within thirty (30) days of notification from the other Party of any findings relating to the appropriateness and validity of expenditures under the terms of this MOU, may dispute the findings in writing and provide records and/or documentation to support the expenditure claims.  The Party that made the findings shall review this documentation and make a final determination as to the validity of the expenditures.

c. It is understood and agreed that any funds paid to City pursuant to Section VI.a.i may only be used for the interim housing costs specified in this MOU.  In furtherance of this understanding, it is agreed that should County determine that any funds paid to City hereunder have been used for other purposes, County shall engage City in good faith to address the dispute under the procedures developed

under Section IX concerning the refund of any such improperly used funds to the County.

d. City and County shall discuss oversight measures over this MOU, including adding County representation to City's Homeless Strategy Committee (HSC). To ensure the oversight group remains effective in meeting the evolving needs of the Parties, the Parties shall maintain the flexibility to adjust the group's composition and form through mutual written agreement.

## X. IMPLEMENTATION

City and County shall develop and implement appropriate procedures governing the performance of all requirements under this MOU and shall be responsible for meeting and conferring in good faith to address any disputes, which may arise concerning implementation of this MOU.

## XI. MODIFICATIONS AND REVISIONS

This MOU constitutes the entire agreement between Parties hereto, and no oral understanding not incorporated herein will be binding on any Party. This MOU may only be modified, altered or revised, as necessary, by mutual consent of Parties hereto by the issuance of a written amendment, signed and dated by Parties.

## XII. CONFIDENTIALITY

City and County must comply with all applicable federal, State, and local laws and regulations pertaining to confidentiality of records.

## XIII. PRESS RELEASES AND COMMUNICATIONS

To the extent feasible, both Parties shall be invited to participate when communicating with the press, television, radio or any other form of media regarding duties or performance under this MOU. Participation of each Party in press/media presentations will be determined by each Party's public relations policies. Unless a Party directs otherwise, each Party shall make specific reference to both Parties in all communications regarding this MOU.

## XIV. INDEMNIFICATION

Pursuant to the provisions of sections 895.4 et seq. of the California Government Code, each Party agrees to indemnify and hold the other harmless from all loss or liability for injury or damage, actual or alleged, to person or property arising out of or resulting from the indemnifying Party's acts or omissions in the performance of this MOU. In the event of third-party loss caused by the negligence, wrongful act or omission of more than one Party, each Party hereto shall bear financial responsibility in proportion to its percentage of fault as may be mutually agreed between them or judicially determined. The provisions of California Civil Code section 2778 regarding interpretation of indemnity agreements are hereby incorporated into this MOU.

## XV.    NOTICES AND APPROVALS

a.  Any notices or other communication relating to or required or permitted hereunder shall be in writing and shall be delivered to the representative of the Party at the address set forth below.  Each Party shall promptly notify the other of any change of contact information.  Written notice shall include notice delivered via email.  A notice shall be deemed to have been received on (a) the date of delivery if delivered by hand during regular business hours, or by confirmed email; or (b) on the third business day following mailing by registered or certified mail (return receipt requested) to the addresses set forth below.

b.  All notices, approvals, and invoicing shall be directed to and made by the following representatives of the Parties:

| | |
|---|---|
| To the County: | Chief Executive Office, Homeless Initiative<br>Attn: Cheri Todoroff, Executive Director<br>500 W. Temple Street, Suite 493<br>Los Angeles, CA 90012<br>CTodoroff@ceo.lacounty.gov and<br>E-mail: HIAdmin@ceo.lacounty.gov |
| To the City: | City Administrative Officer<br>Attn: Matthew W. Szabo, CAO;<br>Edwin C. Gipson II, Assistant CAO<br>200 N. Main Street, Suite 1500<br>Los Angeles, CA 90012-4137<br>E-mail: Matt.Szabo@lacity.org<br>Email: Edwin.Gipson@lacity.org |

Any Party may change its notice recipient or address for providing notice to it by notifying the other Party in writing setting forth such new notice recipient or address.

## XVI.    RELATIONSHIP OF THE PARTIES

The Parties are, and shall remain at all times as to each other, wholly independent entities. No Party shall have power to incur any debt, obligation, or liability on behalf of any other Party unless expressly authorized by this MOU. No employee, agent, or officer of one Party shall be deemed for any purpose whatsoever to be an agent, employee, or officer of the other Party.

## XVII.    FORCE MAJEURE

No Party to this MOU shall be deemed in violation of it if it is prevented from performing any of the obligations hereunder by reason of boycotts, labor disputes, embargoes, shortage of material, act of God, strikes, lockouts, labor troubles, inability to procure labor or materials, fire, accident, laws or regulations of general applicability, act of superior governmental authority, weather conditions, sabotage, or any other cause or

577454.28 Page **13** of **15**

circumstances for which it is not responsible and beyond its control (financial inability excepted). Any Party intending to assert force majeure shall notify the other Party in writing as soon as practicable following the date the Party first knew, or by the exercise of reasonable diligence should have known, of the force majeure event.

## XVIII. MISCELLANEOUS PROVISIONS

a.  This MOU is governed by and shall be interpreted in accordance with the laws of the State of California, excluding its conflict of law rules. The Parties agree that any action relating to any dispute, claim, or controversy regarding the validity, enforcement, interpretation, or breach of this MOU shall only be commenced in and maintained in, and the Parties hereby stipulate to the jurisdiction only of, the courts in Los Angeles, California.

b.  If any part of this MOU is found to be illegal, invalid, or unenforceable by a court of competent jurisdiction, the legality, validity, and enforceability of the remaining parts, terms, or provisions of this MOU shall not be affected thereby and shall remain in full force and effect. The illegal, unenforceable, or invalid part, term, or provision shall no longer be deemed to be part of this MOU. It is the desire and intent of the Parties that the provisions of this MOU be enforced to the fullest extent permissible under applicable laws.

c.  This MOU may be executed in counterparts, each of which so executed will be deemed to be an original and will together constitute one and the same agreement. Manual signatures may be provided by facsimile, or digitally scanned and provided by electronic mail.

d.  Each Party shall be responsible for and bear its own attorneys' fees and costs incurred in connection with this MOU.

* * *

IN WITNESS WHEREOF, City has executed this MOU, or caused it to be duly executed by its authorized representative, and County by order of its Board, has delegated to its Chief Executive Officer the authority to execute this Agreement on its behalf on the date and year written below.

CITY OF LOS ANGELES

By_____    Date May 2, 2024
   MATTHEW W. SZABO
   City Administrative Officer

577454.28 Page 14 of 15

By _____

Scott Marcus
Chief Assitant City Attorney

COUNTY OF LOS ANGELES

By _____   Date May 2, 2024

FESIA A. DAVENPORT
Chief Executive Officer

APPROVED AS TO FORM:

DAWYN R. HARRISON
County Counsel

By _____

Ana Lai
Senior Deputy County Counsel

577454.28 Page **15** of **15**

MARY C. WICKHAM (Bar No. 145664)
*County Counsel*
RODRIGO A. CASTRO-SILVA (Bar No. 185251)
*Acting Chief Deputy County Counsel*
LAUREN M. BLACK (Bar No. 192302)
*Assistant County Counsel*
AMIE S. PARK (Bar No. 273346)
*Deputy County Counsel*
500 West Temple Street, Suite 468
Los Angeles, CA 90012
Tel: 213.974.1830  Fax: 213.626.7446
Email: apark@counsel.lacounty.gov

BYRON J. MCLAIN (Bar No. 257191)
FOLEY & LARDNER LLP
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Tel:  213.972.4500  Fax:  213.486.0065
Email: bmclain@foley.com

Attorneys for Defendant
COUNTY OF LOS ANGELES

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| L.A. ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, et al., <br><br> Defendants. | Case No. 2:20-cv-02291 DOC-KES <br><br> **JOINT NOTICE TO THE COURT REGARDING MEMORANDUM OF UNDERSTANDING FOR 6,700 BED PLAN FROM CITY OF LOS ANGELES AND COUNTY OF LOS ANGELES** |

LOUIS R. MILLER (SBN 54141)
MIRA HASHMALL (SBN 216842)
EMILY A. SANCHIRICO (SBN 311294)
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Tel.: (310) 552-4400 | Fax: (310) 552-8400
Email: esanchirico@millerbarondess.com

Attorneys for Defendant
COUNTY OF LOS ANGELES

MICHAEL N. FEUER, Bar No. 111529
City Attorney
KATHLEEN A. KENEALY, Bar No. 212289
Chief Assistant City Attorney
SCOTT MARCUS, Bar No. 184980
   scott.marcus@lacity.org
Senior Assistant City Attorney
200 N. Main St., City Hall East, 7th Floor
Los Angeles, CA 90012
Tel:  213.978.4681  Fax:  213.978.7011

Attorneys for Defendant
CITY OF LOS ANGELES

JOINT NOTICE TO COURT REGARDING MEMORANDUM OF
UNDERSTANDING
-2-        Case No. 2:20-cv-02291 DOC-KES

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on October 9, 2020, the City of Los Angeles ("City") and the County of Los Angeles ("County") reached an agreement on a Memorandum of Understanding ("MOU"). This MOU clarifies the historic agreement between the City and County to provide a total of 6,700 beds and services for people experiencing homelessness (PEH") in the City of Los Angeles within 18 months. (*See* Dkt. 136, Binding Term Sheet at ¶ 1.)

Attached hereto is the MOU with its associated Binding Term Sheet as Exhibit 1.

DATED: October 12, 2020      FOLEY & LARDNER LLP
Byron J. McLain


 */s/ Byron J. McLain*
Byron J. McLain
Attorneys for Defendant
COUNTY OF LOS ANGELES

DATED: October 12, 2020      MICHAEL N. FEUER, City Attorney


 */s/ Scott Marcus*
Scott Marcus
Senior Assistant City Attorney
CITY OF LOS ANGELES

**MEMORANDUM OF UNDERSTANDING
BETWEEN
THE COUNTY OF LOS ANGELES and
THE CITY OF LOS ANGELES**

This Memorandum of Understanding ("MOU") is entered into this 9th day of October 2020 by and between the County of Los Angeles, a subdivision of the State of California ("COUNTY"), and the City of Los Angeles, a municipal corporation ("CITY"), for purposes of establishing roles, responsibilities, and financial relationships necessary to create housing or shelter for (i) people experiencing homelessness ("PEH") living within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles, (ii) PEH age 65 and over within the City of Los Angeles, and (iii) other vulnerable PEH within the City of Los Angeles. COUNTY and CITY will be referred to herein individually as "PARTY" and together as "PARTIES."

PARTIES agree to the following for purposes of this MOU only:

I.      TERM OF MOU

The term of this MOU will begin on the date of signature of PARTIES, and will end on June 30, 2025, unless extended upon mutual agreement of PARTIES.

II.     RECITALS

    A.      COUNTY

        1.      The County has long recognized that a comprehensive crisis response is required to counteract the myriad causes of homelessness and has taken several constructive steps towards meeting this challenge.

        2.      On August 17, 2015, the Los Angeles County Board of Supervisors ("Board") launched the Homeless Initiative to combat the homeless crisis that pervades our communities. The primary initial objective of the Homeless Initiative was to develop a coordinated set of recommended strategies. To achieve this objective, the Homeless Initiative convened 18 policy summits on nine topics from October 1 to December 3, 2015, which brought together County departments, cities and other public agencies, and a wide range of community partners and stakeholders.

        3.      On February 9, 2016, the Board approved 47 strategies that reach across government and community boundaries to forge effective partnerships and get results. On the same day, the Los Angeles City Council approved the first-ever Los Angeles City Comprehensive Homeless Strategy which was developed in collaboration with the County.

        4.      In March 2017, voters resoundingly approved Measure H, the landmark ¼ percent increase to the County's sales tax to provide an ongoing revenue stream – an estimated $355 million per year for ten years – to fund

HOA.103025439.1                                1

services, rental subsidies and housing. It is designed to fund a comprehensive regional approach encompassing 21 interconnected strategies in six areas to combat homelessness: (i) prevent homelessness; (ii) subsidize housing; (iii) increase income; (iv) provide case management and services; (v) create a coordinated system; and (vi) increase affordable/homeless housing.

5. The County began efforts to alleviate homelessness even before passage of Measure H by infusing $100 million to launch these strategies in 2016.

6. On January 21, 2020, the Board approved a motion proposed by Supervisors Mark Ridley-Thomas and Janice Hahn entitled "Establishing a Comprehensive Homelessness Crisis Response Strategy in Los Angeles," with a goal of establishing an accountability framework for providing shelter or housing for PEH in Los Angeles County.

7. On April 14, 2020, the Board unanimously approved a motion entitled "Piloting a Comprehensive Crisis Response to Ensure Post-COVID-19 Housing for Homeless Older Adults in Los Angeles County," directing its Chief Executive Officer ("CEO") to develop a pilot program to provide long-term housing options and services to PEH who are aged 65 years or older including those who were provided emergency housing in response to the COVID-19 public health crisis. The motion further directed all County departments to take appropriate action to implement 16 recommendations for changes in state law or policy to achieve three goals: (i) addressing and preventing street homelessness; (ii) reducing barriers to building more housing; and (iii) getting more people into treatment.

B.  CITY

1. The City has taken unprecedented action to end street homelessness in Los Angeles, and continues to act to address both the crisis of homelessness in the city and the increased risk that COVID-19 creates for persons experiencing homelessness in Los Angeles.

2. In February 2016, the Mayor and City Council adopted the City's Comprehensive Homeless Strategy. It is meant to be a comprehensive approach to address short- and long-term homelessness issues and is adopted in tandem with the Homeless Initiative approved concurrently by the County of Los Angeles Board of Supervisors. The City Council also adopted 14 Guiding Principles which are incorporated in the Comprehensive Homeless Strategy.

3. In November 2016, Los Angelenos overwhelmingly approved Proposition HHH. Proposition HHH authorized the City to issue up to $1.2 billion in general obligation bonds to partially subsidize the development of up to 10,000 supportive housing units for individuals and families who are experiencing homelessness or are at risk of becoming homeless. As of

HOA.103025439.1

2

September 30, 2019, the City has allocated nearly the entire amount authorized by the Proposition HHH ballot measure, on its way to securing the development of up to 10,000 supportive housing units. City and County also entered into a memorandum of understanding securing County's provision of services to tenants of City-created permanent supportive housing opportunities, including intensive case management, integrated health services, and rental assistance.

4. In April 2018, the Mayor and the City Council declared an emergency shelter crisis and took advantage of a new state law that enables cities to construct bridge housing more quickly on land owned or leased by the City. The A Bridge Home (ABH) shelter program seeks to create 100 shelter beds in each of the City's 15 Council Districts.

5. In April 2018, the City also formed the Unified Homelessness Response Center ("UHRC") in the City's Emergency Operations Center, bringing City Departments and partners under one roof to respond to the crisis together and deliver every possible resource to help Angelenos experiencing homelessness get the help they need to move indoors.

6. On March 19, 2020, the City declared a state of emergency and issued the Safer at Home orders in response to the coronavirus pandemic. The City took several emergency measures to help protect homeless Angelenos and slow the spread of COVID-19, including opening more than 20 emergency shelters at City recreation centers to provide emergency shelter for over 1,000 people. The City also worked with the County and the State to provide shelter through Project Roomkey. These emergency shelters are temporary, however, and persons experiencing homelessness who were brought inside these shelters must be relocated to longer term interim or permanent housing solutions.

7. The City continues to make addressing homelessness a top priority, even during the financial crisis caused by COVID-19. In Fiscal Year 2020-2021, the City has committed over $460 million in supportive housing, bridge housing, services, and facilities to help homeless Angelenos find their way off the streets.

C. THE COURT

1. COUNTY and CITY are parties to *LA Alliance for Human Rights, et al. v. City of Los Angeles, et al.*, Civil Action No. 2:20-cv-02291 (the "Action"), in the United States District Court for the Central District of California, Judge David O. Carter presiding (the "Court").

2. In addition to individuals over 65, those with preexisting medical conditions, and those otherwise vulnerable to coronavirus, the Court has expressed concerns about the health and safety of people experiencing homelessness living within 500 feet of freeway overpasses, underpasses

HOA.103025439.1                                        3

and ramps. On June 18, 2020, the Parties submitted a binding term sheet in the Action to address the Court's concerns (Dkt. 136) ("Binding Term Sheet").

III.  PARTIES' RESPONSIBILITIES

PARTIES agree to the following responsibilities in connection with this MOU. This MOU does not arise from a legal obligation, does not resolve the Action or any other litigation, and further defines and incorporates the PARTIES' Binding Term Sheet, attached as Exhibit 1 to this MOU.

A.  During the term of this MOU, the CITY will provide a total of 6,000 New Beds, and 700 Other Beds, for housing or shelter for (i) PEH within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles, and then give priority to (ii) PEH who are aged 65 years or older within the City of Los Angeles and (iii) other vulnerable PEH within the City of Los Angeles. CITY will provide 5,300 New Beds within ten (10) months of June 16, 2020, and an additional 700 New Beds within eighteen (18) months of June 16, 2020 ("6,000 New Beds"). CITY will provide 700 Other Beds within ten (10) months of June 16, 2020 ("700 Other Beds").

1.  "New Beds" provided under this MOU shall be defined as beds (i) not previously captured in any agreement or plan between the PARTIES, and (ii) opened on or after the date of the Binding Term Sheet (*i.e.,* June 16, 2020). New Beds may include any combination of the following: (i) purchased and/or leased motel/hotel rooms by the City; (ii) rental assistance, including rapid rehousing, but only for the duration of the assistance; (iii) sprung structures or tents; (iv) safe parking; (v) safe sleeping; (vi) scattered site or permanent supportive housing; (vii) ABH beds; and (viii) other innovative modes of housing or shelter. Family reunification is not included as a New Bed under this MOU.

2.  "Other Beds" provided under this MOU may be beds previously captured in an agreement or plan between CITY and COUNTY.

B.  To assist CITY with funding services for the 6,000 New Beds, COUNTY shall contribute up to $53 million for the first year and up to $60 million for years two through five, as set forth in more detail below:

1.  For the period from execution of this MOU until June 30, 2021 ("Year One"), COUNTY shall pay to CITY the amount of (i) $17.66 million on September 1, 2020; (ii) $17.67 million on January 1, 2021; and (iii) $17.67 million on April 1, 2021.

2.  For the period from July 1, 2021 to June 30, 2022 ("Year Two"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2021; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2021, COUNTY may prorate payment equal to $10,000 per new bed that exists or will be open and occupiable within 60 days of the Year Two payment date.

HOA.103025439.1

4

3.  For the period from July 1, 2022 to June 30, 2023 ("Year Three"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2022; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2022, COUNTY may prorate payment equal to $10,000 per new bed that exists or will be open and occupiable within 60 days of the Year Three payment date.

4.  For the period from July 1, 2023 to June 30, 2024 ("Year Four"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2023; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2023, COUNTY may prorate payment equal to $10,000 per new bed that exists or be will open and occupiable within 60 days of the Year Four payment date.

5.  For the period from July 1, 2024 to June 30, 2025 ("Year Five"), COUNTY shall pay to CITY the amount of $60 million on July 1, 2024; however, if the 6,000 New Beds from CITY are not open and occupiable by July 1, 2024, COUNTY may prorate payment equal to $10,000 per new bed that exists or will be open and occupiable within 60 days of the Year Five payment date.

C.  COUNTY will pay to CITY a one-time bonus of $8 million if 5,300 New Beds are open and occupiable within ten months from June 16, 2020.

D.  The Los Angeles Homeless Services Authority ("LAHSA") facilitates the coordination and management of resources and services in order to efficiently and effectively connect PEH in the community to available housing and supportive services equitably. To leverage resources and efficiency, services provided to PEH who are sheltered or housed under this MOU may be facilitated and supported by LAHSA in coordination with relevant community-based providers, but City may, in its sole discretion, contract with service providers directly, and such services may be consistent with LAHSA's service standards. City may also utilize its own staff to deliver certain services (i.e. maintenance, sanitation, supplies, etc.) where appropriate.

E.  Except as otherwise stated in this MOU, or to the extent COUNTY is responsible for costs in an agreement or plan between the PARTIES other than this MOU, CITY is responsible for all costs, including capital costs, operating costs, and/or other expenses associated with the 6,000 New Beds and 700 Other Beds described herein.

F.  The precise mix and location of New Beds and Other Beds will be determined at CITY's sole discretion. CITY will use all reasonable efforts to utilize, on an ongoing and regular basis, all the New Beds for PEH in the City of Los Angeles for which COUNTY is contributing a portion of the funding for services.

G.  The funding obligation of COUNTY under this MOU is exclusive. COUNTY will continue to allocate Measure H funding by Service Planning Area (SPA) based on the Homeless Count conducted by LAHSA and, where applicable, the Homeless Population Estimate, consistent with Board policy.

H.      COUNTY will take action to provide a package of the following mainstream services to PEH residing in facilities established by CITY pursuant to this MOU at the scale and availability deemed appropriate by the County: mental health and substance-use disorder outreach and disability benefit advocacy services through COUNTY's Departments of Health Services, Mental Health, and Public Health; and assistance to apply for and obtain public assistance, including Electronic Benefits Transfer ("EBT") benefits to purchase food, temporary financial assistance and employment-focused services for families with minor children, Medi-Cal enrollment, and general relief (i.e., temporary financial assistance for indigent adults who are otherwise ineligible for state- or federally-funded benefits) through COUNTY's Department of Public Social Services. In addition, the County will continue to provide these mainstream services at its County Department offices and other locations, as applicable, to all eligible PEH in the City of Los Angeles, including to PEH assisted through family reunification.

IV.     COMPLIANCE AND REPORTING

PARTIES agree to the following reporting requirements; provided, however, if the Court requires different and more extensive reporting than what is set forth below, then the PARTIES agree to provide reporting as required by the Court and not in this MOU.  PARTIES agree that:

CITY shall submit to COUNTY and the Court the following:

A.      BED PLAN.

        1.      By August 1, 2020, CITY shall provide each Council District's current plan describing how CITY will establish New Beds and Other Beds specified herein ("Bed Plan").  The CITY's Bed Plan shall include, at a minimum, the following information:

                a)      Identification of New Beds and Other Beds in development to be provided under this MOU, categorized by type, number, and location (if not tenant-based), and the expected opening dates for each intervention;  and

                b)      Identification of additional New Beds and Other Beds being considered or proposed for development, categorized by type, number, and location (if not tenant-based), and the status of the proposed intervention.

B.      STATUS REPORTS.

1.      Quarterly Reports. During the term of this MOU, CITY shall provide written quarterly status reports, starting at least by October 15, 2020, to report on CITY's progress in providing New Beds, Other Beds, and services pursuant to this MOU ("Status Report"). Each Status Report shall include information for the most recent three-month period, and will be provided within 30 days of the end of the quarter, and shall include at least the following:

a)      Updates to the Bed Plan;

b)      Number and location of New Beds and Other Beds then existing, as well as the current status of beds being created, and additional interventions being considered pursuant to this MOU; and

c)      Number of PEH provided New Beds and Other Beds, identified by the three target PEH populations: (i) PEH within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles; (ii) PEH who are aged 65 years or older within the City of Los Angeles; and (iii) other vulnerable PEH within the City of Los Angeles.

2.      Bed Count. At least 90 days prior to the annual payment date for Years Two through Five, CITY shall provide information regarding the number of existing beds and the number of beds that will be open within 60 days of the payment date.

3.      Annual Report. At least annually, City shall report the cumulative amount of City funding provided to fund services during the preceding fiscal year for New Beds established under this MOU. The City's and County's contribution are each expected to cover 50% of the average cost of providing services to PEH in New Beds established by the City under this MOU.

COUNTY shall submit to CITY and the Court the following:

C.      STATUS REPORTS.

1.      Payment Report. COUNTY shall report the amounts paid to CITY in Year One pursuant to this MOU by September 30, 2020, January 31, 2021, and April 30, 2021, and shall thereafter report the amounts paid to CITY in Years Two through Five on or before September 30 of each respective Year (or earlier if requested by the Court).

2.      Payment After City Reporting.  COUNTY's scheduled payments to the CITY as identified in this MOU shall occur (i) as identified in Section III.B.1 or (ii) within 30 days after the CITY has met its reporting obligations (i.e., Status Reports) immediately preceding that payment as specified in this Compliance and Reporting section (whichever date is latest).

3.      Mainstream Services.  During the term of this MOU, COUNTY shall provide written quarterly status reports on COUNTY's provision of mainstream services for PEH in facilities established by CITY pursuant to this MOU.  Each Status Report will be provided within 30 days of the end of the fiscal quarter.

## V.      MODIFICATIONS AND REVISIONS

This MOU constitutes the entire agreement between PARTIES hereto, and no oral understanding not incorporated herein will be binding on any PARTY.  This MOU may only be modified, altered or revised, as necessary, by mutual consent of PARTIES hereto by the issuance of a written amendment, signed and dated by PARTIES.

## VI.     DISPUTE RESOLUTION

PARTIES agree to implement good faith efforts and promptly meet and confer to resolve disputes arising from this MOU.  If, after such efforts, the PARTIES cannot resolve disputes, the PARTIES shall seek resolution from the Court.

## VII.    COURT ENFORCEMENT

This MOU is subject to enforcement by the Court.  Promptly upon execution, PARTIES agree to submit this MOU to the Court.

## VIII.   PRESS RELEASES AND COMMUNICATIONS

To the extent feasible, both PARTIES shall be invited to participate when communicating with the press, television, radio or any other form of media regarding duties or performance under this MOU.  Participation of each PARTY in press/media presentations will be determined by each PARTY's public relations policies.  Unless a PARTY directs otherwise, each PARTY shall make specific reference to both PARTIES in all communications regarding this MOU.

## IX.     INDEMNIFICATION

Pursuant to the provisions of Section 895.4 of the California Government Code, PARTIES agree to indemnify and hold the other PARTY harmless from all liability for damage, actual or alleged, to person or property arising out of or resulting from indemnifying PARTY's acts or omissions in the performance of this MOU.  In the event of third-party loss caused by negligence, wrongful act or omission of PARTIES, each PARTY shall bear financial responsibility in proportion to its percentage of fault as may be mutually agreed or judicially determined.  The provisions of California Civil Code Section 2778 regarding interpretation of indemnity agreements are hereby incorporated.

HOA.103025439.1                                          8

## X.   MISCELLANEOUS PROVISIONS

This MOU is governed by and shall be interpreted in accordance with the laws of the State of California, excluding its conflict of law rules.  PARTIES agree that any action relating to any dispute, claim, or controversy regarding the validity, enforcement, interpretation, or breach of this MOU shall only be commenced in and maintained in, and PARTIES hereby stipulate to the jurisdiction only of, the United States District Court for the Central District of California.

If any part of this MOU is found to be illegal, invalid, or unenforceable by a court of competent jurisdiction, the legality, validity, and enforceability of the remaining parts, terms, or provisions of this MOU shall not be affected thereby, and shall remain in full force and effect.  The illegal, unenforceable, or invalid part, term, or provision shall no longer be deemed to be part of this MOU.  It is the desire and intent of the PARTIES that the provisions of this MOU be enforced to the fullest extent permissible under applicable laws.

This MOU may be executed in counterparts, each of which so executed will be deemed to be an original and will together constitute one and the same agreement.  Manual signatures may be provided by facsimile, or digitally scanned and provided by electronic mail.

Each PARTY shall be responsible for and bear its own attorneys' fees and costs incurred in connection with this MOU.

The City of Los Angeles

By: _____

Richard H. Llewellyn, Jr
City Administrative Officer

Date___October 9, 2020___

The County of Los Angeles

By:_____

Fesia Davenport
Acting Chief Executive Officer

Date: 10/12/2020

HOA.103025439.1

9

# EXHIBIT 1

EXHIBIT 1

LA 20-CV-02291-DOC

FILED
CLERK, U.S. DISTRICT COURT

June 18, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY:    KD    DEPUTY

Confidential
Binding term sheet

LA Alliance for Human Rights v. City of Los Angeles

1.  City agrees to provide 6,700 beds within 18 months to house or shelter (i) PEH living within 500 feet of freeway overpasses, underpasses and ramps within the City of Los Angeles, and then to give priority to providing housing or shelter to (ii) PEH 65+ within the City of Los Angeles and (iii) other vulnerable PEH within the City of Los Angeles.

The schedule will be as follows:

New beds (not in existing agreements): 6000
5300 within 10 months (bonus of $8 million if 10 month target date met)
700 within 18 months

Beds in existing agreements
700 beds within 10 months

TOTAL: 6700 beds established within 18 months

5,300 of the 6,700 beds will be new beds and will be created within 10 months, and the 700 additional new beds created within 18 months, must be beds not previously captured in any agreement or plan between the City and County; 700 of the 6,000 beds created within 10 months may be beds previously captured in an agreement or plan between the City and County.

2.  To assist in funding services for the 6,000 new beds, County shall pay City up to $60 million per year for 5 years. In the first year, County shall pay City $53 million: $17.66 million on 9/1/20; $17.67 million on 1/1/21; and $17.67 million on 4/1/21. In the second through fifth years, County shall pay City $60 million on July 1; however, if 6,000 new beds have not been created by the July 1 payment date, County can prorate payment equal to $10,000 per new bed that exists or will open within 60 days of the payment date.

The funding under this agreement is exclusive and the County will continue to allocate Measure H funding by Service Planning Are (SPA) based on LAHSA's Homeless Count and, where applicable, the Homeless Population Estimate, consistent with Board policy.

3.  County will pay to City a one-time bonus of $8 million if the 5,300 new bed target is reached within 10 months from execution of agreement.

*MCW*
6-16-2020

SDM
6-16-2020

4.   County will take action to provide a package of mainstream services for PEH residing in facilities established by the City pursuant to this Agreement.

5.   Agreement subject to court approval, monitoring, and enforcement.

6.   Agreement subject to City and County approval.

7.   The parties will submit this term sheet to the Court.  Upon approval of this term sheet by the City and County, the parties will respectfully request the Court to entertain an oral motion coupled with a joint stipulation from the City and County that the Preliminary Injunction dated May 22, 2020 be vacated without prejudice, subject to the Court's later consideration of reinstatement of the Preliminary Injunction should the parties fail to comply with the terms identified above.

County Counsel Los Angeles County
Mary C. Wickham
6-16-2020

Senior Assistant City Attorney
6-16-2020