Gregory Edward Gray
Pro Se (PETITIONER)
3183 Wilshire Boulevard
Ste. 196K26
Los Angeles, CA 90010
gegcbg@outlook.com

FILED

CLERK, U.S. DISTRICT COURT

12/9/24

CENTRAL DISTRICT OF CALIFORNIA

BY _____MRV_____ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LA ALLIANCE FOR HUMAN
RIGHTS, et al.

Case No. 2:20-cv-02291-DOC-KES

vs

**MOTION REQUESTING PERMISSION TO BE NAMED AN INTERESTED PARTY AND FOR  DOCUMENT SUBMISSION IN COURT-ORDERED AUDIT IN CASE NO. 2:20-cv-02291-DOC-KES**

CITY OF LOS ANGELES, et al.

## I.  INTRODUCTION

1.  COMES NOW, Gregory Edward Gray and hereby files this Motion Requesting Permission to Become an Interested Party and for Document Submission in Court-Ordered Audit in Case No. 2:20-cv-02291-DOC-KES.

Mr. Gray requests that the Court grant permission for him to be named an interested party and that he be allowed to submit documentation that is germane to the court-ordered audit of all housing and housing assistance programs operated or funded by the City of Los Angeles. The scope of that audit includes in its purpose to perform a *"complete and thorough transparency for each and every homelessness assistance program and initiative funded or conducted by the City of Los Angeles."* Mr. Gray's documentation of incidents that he experienced as a client of these programs aligns with the scope of audit as outlined in the document filed March 21, 2024 entitled, **LA Alliance for Human Rights' and City of Los Angeles' Agreement for An Independent and Objective Audit of City-Funded Homelessness Assistance Programs.** [1]

In a hearing held on April 8, 2024, during which the firm, Alvarez & Marsal, was approved to conduct the audit, Judge David O. Carter said, *"...I want them to be out on the streets first and see the community. See the residents. They've been impacted by this. See the homeless and their situation. Try to get a good overall perspective from the residents, to the homeless, to just our whole community here in Los Angeles."*

---

1) See Exhibit 1: Notice of Filing Audit Scope, LA Alliance for Human Rights' and City of Los Angeles' Agreement for An Independent and Objective Audit of City-Funded Homelessness Assistance Programs.

Beginning in April 2024, Mr. Gray asked for assistance from the Plaintiff, LA Alliance for Human Rights, to submit his documentation to the Court. Mr. Gray's request was denied. Contemporaneously, in April 2024, Mr. Gray sought assistance from the Legal Aid Foundation of Los Angeles to submit his documentation to the Court.  Again, Mr. Gray's request was denied.  Mr. Gray sought the assistance of elected public officials, including, but not limited to, Los Angeles City Council President Marqueese Harris-Dawson, Los Angeles County Board of Supervisors Janice Hahn and Board of Supervisors Chair Lindsey Horvath, all of whom have testified during the course of hearings about the audit.

Lastly, in May 2024, Mr. Gray sought out Alvarez and Marsal, whose representative wrote to him that Mr. Gray would be included in the audit's interview list. Mr. Gray has never been contacted for an interview.  Additionally, Mr. Gray wrote to inform Alvarez and Marsal of events that were happening in real time in May 2024 and in June 2024. Mr. Gray asked Alvarez and Marsal to report those events to the Court. Mr. Gray's request was denied.

Mr. Gray's documentation[2] chronicles events that happened to him as a client of service providers contracted by the Los Angeles Homelessness Services Authority *aka* LAHSA, a lead agency in the Department of Housing and Urban

---

2) See Exhibit 2: Compilation of Emails/Correspondence for Audit Inclusion

Development aka HUD program known as Continuum of Care. Those service providers include People Assisting the Homeless *aka* PATH, Weingart Center Association, The Salvation Army and First to Serve. Additionally, Mr. Gray's documentation speaks to his experiences as a client of the Housing Authority of the City of Los Angeles *aka* HACLA.

Most of these events occurred during Mr. Gray's participation in the INSIDE SAFE INITIATIVE OF LOS ANGELES launched by Mayor Karen Bass and the preceding program, PROJECT ROOM KEY, initiated by the office of former Los Angeles Mayor Eric Garcetti.  More recently, Mr. Gray has been and continues to be subjected to similar, adverse experiences in a HUD-funded housing development wherein LAHSA is a master leaseholder and PATH is a designated service provider.

## II.  STATEMENT OF FACTS

Gregory Edward Gray is a resident of Los Angeles, California, a post-stroke/heart patient and diabetic under the care of physicians at UCLA Health.

Mr. Gray and his wife spent some twenty-seven months in interim housing funded by LAHSA and operated/supported by the following LAHSA service providers: First to Serve, The Salvation Army, Weingart Center Association and People Assisting the Homeless *aka* PATH.

Mr. Gray spent fifteen of those months in PROJECT ROOM KEY under Mayor Eric Garcetti. The balance was spent in the INSIDE SAFE INITIATIVE.

As HUD-funded projects, these programs are governed by 24 CFR § 982.303(b)(2) of Title 24, Subtitle A, Part 8-Non-discrimination Based on Handicap in Federally Assisted Programs and Activities of the Department of Housing and Urban Development. The Authorities listed are 29 U.S.C. 794; 42 U.S.C. 3535(d) and 5309. The Source noted is 53 FR 20233, June 2, 1988, unless otherwise noted.

For Mr. Gray, what was supposed to be an orderly transition from interim to permanent housing instead locked Mr. Gray and his wife into a state of literal captivity that subjected them to a process of stops and starts by service provider programs funded and operated by the City of Los Angeles through LAHSA.

For twenty-seven months, LAHSA and its service providers were non-responsive to Mr. Gray's medical challenges and his need for permanent housing that is in accordance with his plan of care as well as the needs of his household. This non-responsiveness led to Mr. Gray being roadblocked, time after time, with no way to move out of interim housing and into a permanent housing environment.

Mr. Gray was subjected to some of the most counterintuitive acts imaginable committed by LAHSA and its service providers. Those acts included, but were not

limited to: 1) falsifying and breaching Mr. Gray's personal, financial, health and housing records; 2) committing acts of intimidation to silence Mr. Gray; 3) encouraging gross negligence in protecting Mr. Gray's rights under HIPPA, THE PRIVACY ACT, and ADA laws; 4) willfully ignoring no less than 25 medical letters from physicians at UCLA HEALTH documenting Mr. Gray's medical challenges and need for permanent housing specific to his health needs and that of his household; 6) willfully sabotaging Mr. Gray's opportunities to swiftly move forward to secure permanent housing; and 7) attempting multiple times, through service provider agencies and staff, to coerce Mr. Gray into interim housing rife with unsanitary, unsafe conditions and otherwise unsuitable for his medical and housing needs.  Mr. Gray provided reports regarding these acts to the U.S. Department of Housing and Urban Development and U.S. Department of Justice.

Throughout this entire time, Mr. Gray was in possession of a federal emergency housing voucher issued by HUD through the Housing Authority of the City of Los Angeles *aka* HACLA.

Even in this instance, Mr. Gray had to fight to keep his emergency housing voucher active, with HACLA allowing the document to lapse more than once and, in at least one incident, outright rejecting Mr. Gray's request for an extension supported by medical documentation. The denial of this extension occurred on or

about May 21, 2024. Mr. Gray filed an appeal to HACLA, wrote an extensive letter to the Office of Mayor Karen Bass, and reported all to the Department of Justice through a civil rights complaint.  On or about June 11, 2024, Mr. Gray's voucher was reinstated.

By the end of July 2024, Mr. Gray was able to make the transition to a new housing development. However, this opportunity came only after Mr. Gray pushed back on efforts by a LAHSA service provider, namely, Weingart Center Association, to coerce Mr. Gray and his wife into an unsafe, unsanitary motel in a neighborhood rife with criminal activity.  The move came within days before Mr. Gray's interim housing, the LA GRAND Hotel, was scheduled for closure.

Four days before the hotel was due to shut down, Weingart upper management visited Mr. Gray and his wife.  When they reviewed Mr. Gray's medical documentation and learned that Mr. Gray possessed an emergency housing voucher, they told Mr. Gray that the Weingart staffer trying to force Mr. Gray into a rundown motel was not being truthful about Mr. Gray's housing options.

The Weingart representatives returned the following day with representatives from LAHSA and told Mr. Gray about a new apartment building development, showing a photo of the building and offering Mr. Gray and his wife a chance to take a tour. The Weingart and LAHSA representatives told Mr. Gray that he could move in within days and that they (the Weingart and LAHSA representatives)

could make immediate arrangements for a lease signing. That lease was signed in July, 2024. However, as it turned out, that lease would only be a temporary one.

In the roughly five months since Mr. Gray and his wife moved into the new apartment building funded by HUD with LAHSA as the master lease holder and PATH as the in-house service provider, the building has been allowed to deteriorate both aesthetically and operationally,

The apartment building is now rife with all manner of questionable activity, including the suspected infiltration of gang organizations, including one known as the so-called Mexican Mafia, a criminal enterprise that was the subject of a federal case over which Judge David O. Carter presided. There has been other criminal activity, including mail theft, vandalism and trespassers squatting in vacant apartments.  Many tenants and their guests habitually show a wanton disregard for building rules, a fact that has gone on for months. Mr. Gray has reported all of this this information to LAHSA, including the suspected gang activity, drug use and trafficking, strangers marauding throughout the building, day and night, disruptions during what are supposed to be building quiet hours and at least one arrest of an unruly guest just last week who caused a disruption in one of the building's hallways and destroyed building property.

Lastly, there is now the outstanding matter concerning Mr. Gray's use of his emergency housing voucher, which can only be activated following approval of

what is known as a Request for Tenancy Approval aka RFTA issued by HACLA.

Since September 6, 2024, Mr. Gray has been waiting for information from LAHSA and its operatives on how it intends to satisfy the lease documents required by the HACLA that are needed to finalize Mr. Gray's RFTA package that will formally activate Mr. Gray's federal housing voucher. To date, there has been no plausible explanation from either LAHSA or its building management about why it has taken so long for this documentation to be finalized.

For months, LAHSA and its subcontracted building management failed to respond to Mr. Gray's multiple requests, both written and verbal, for information regarding their respective roles in this process and exactly when HACLA would receive the paperwork necessary to activate Mr. Gray's housing voucher. As a result of this inexplicable delay, Mr. Gray and his wife were left in yet another holding pattern, virtual captives once again, in a process impacting their permanent housing that should have been resolved long ago.

Mr. Gray forwarded a request to the Office of Los Angeles Mayor Karen Bass, asking the Mayor's Office to inquire about the lapse of time between now and the August 5, 2024 submission of his RFTA paperwork to the Housing Authority for the City of Los Angeles *aka* HACLA.  As of this writing, the approval of his RFTA documentation remains outstanding and is necessary to activate his housing voucher.

On December 4, 2024, Mr. Gray received word from LAHSA's subcontracted building management, KRPM Group, that a new lease had been prepared for him. Near the close of business on December 6, 2024, LAHSA contacted Mr. Gray to reiterate that a new lease had been prepared to submit to HACLA.  However, to date, neither LAHSA nor KRPM Group has offered any explanation to justify the lapse of time between HACLA's first request on September 6th for additional paperwork, including a revised lease.  In fact, since September 6th, Mr. Gray had been stonewalled by LAHSA's subcontracted building management, KRPM Group of Anaheim, California.  KRPM Group instructed Mr. Gray to keep his email communications "internal" regarding the status of the outstanding paperwork requested by HACLA.

Not until Mr. Gray sought assistance from the Mayor's Office, Diversity Housing Corporation (the building developers), LA Care Health Plan, (a LAHSA funder), et al, did LAHSA finally show up, beginning with, of all things, a text message on Saturday, November 2nd to Mr. Gray's wife's phone.

Since that time, Mr. Gray and his wife have corresponded directly with Ms. Kris Freed, who was recently named as a Chief Strategist for LAHSA. According to Ms. Freed, she is responsible for the overall operations for the apartment building development. Virtually all of the emails to and from Ms. Freed are carbon copied to LAHSA CEO Dr. Va Lecia Adams Kellum.  Dr. Adams Kellum has

corresponded at least once with Mr. Gray and his wife regarding the initial email sent to her attention.

At present, Mr. Gray is under the care of his neurology specialist who wrote the following on Mr. Gray's behalf in a letter dated December 2, 2024 addressed to Dr. Michael Brodsky, Medical Services Director of LA Care Health Plan. A copy of the letter is attached in Exhibit 2:

**"Gregory Edward Gray (date of birth: 8/5/1953) is followed at the UCLA Neurology clinic for diagnoses of stroke, cervical spinal canal stenosis, neuropathy, cognitive impairment. I have recommended Mr. Gray obtain further diagnostic testing -including an EMG/NCS, MRI of the spine. I have also recommended physical therapy for cervical spinal canal stenosis as well as gait and balance training. Mr. Gray's symptoms can be worsened with psychological stress which may result in recrudescence of neurological symptoms. Mr. Gray should receive housing that is most appropriate for his needs, including that which is in close proximity to his primary care doctor and specialists. Mr. Gray would benefit most from housing that is safe and maintained in a cleanly and well kept manner. Mr. Gray reports that these issues have been very stressful to him - it is important that we minimize psychological stress for Mr. Gray.**

**Given the complexity of his medical problems, such as difficulty with**

**cognition, ambulation, and diabetes care, it is essential that Mr. Gray have housing to facilitate his care, prevent adverse outcomes (such as recurrent stroke, heart attack, falls) and prevent hospitalizations.**

**I again request that Mr. Gray be given an extension for 6 months (May 27, 2025) regarding clerical matters given that Mr. Gray focus on diagnostic testing and rehabilitation efforts."**

Mr. Gray has responded to LAHSA and KRPM Group, informing both of his current medical restrictions. Mr. Gray has also communicated with LAHSA and KRPM Group of his intent to be guided by his physician on when he can accommodate signing of the new lease. Finally, Mr. Gray expects that LAHSA and KRPM Group will provide him more specific details as to why it has taken since September 6, 2024 for a revised lease to finally surface as of December 4, 2024.

**RELIEF REQUESTED**

Petitioner respectfully requests the Court allow Mr. Gray permission to become an interested party and allow Mr. Gray to submit his documentation to the Court for the purpose of inclusion in the audit.

Dated: December 9, 2024                                     /s/ Gregory Edward Gray
                                                             Pro Se
                                                             3183 Wilshire Boulevard
                                                             Ste. 196K26
                                                             Los Angeles, CA 90010
                                                             (213) 638-2039
                                                             gegcbg@outlook.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on December 9, 2024, the foregoing Motion Requesting Permission to Become an Interested Party and for Document Submission in Court-Ordered Audit in Case No. 2:20-cv-02291-DOC-KES was filed electronically with the Court. Counsel of record will be served by electronic mail on this same date as follows:

Elizabeth Mitchell
emitchell@umklaw.com

Matthew Donald Umhofer
mumhofer@umklaw.com

Valerie Flores, Esq.
Valerie.Flores@lacity.org

Jessica Mariani, Esq.
Jessica.Mariani@lacity.org

Jennifer M. Hashmall, Esq.
mhashmall@millerbarondess.com

Lauren Brody
lbrody@millerbarondess.com

Shayla Myers, Esq.
lschmidt@lafla.org

/s/ Gregory Edward Gray
Gregory Edward Gray
Pro Se
Ste. 196K26
3183 Wilshire Boulevard
Los Angeles, CA 90010
(213) 638-2039
gegcbg@outlook.com

**EXHIBIT ONE**

**EXHIBIT TWO**

☰    U.S. District Court, Central District of California

# CONFIRMATION

The document(s) listed below have been submitted to the United States District Court for the Central District of California using the Electronic Document Submission System ("EDSS"). The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF").

Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission, shown below, will be considered the filing date for any documents submitted through EDSS and later filed into CM/ECF.

**Name:** Gregory Gray
**Tracking Number:** EDS-241207-001-5998
**Date:** 12/7/2024

Uploaded files:

- **CV-60 FORM COMPLETED BY GREGORY EDWARD GRAY COPY.pdf**
  *Description: CV-60 FORM COMPLETED BY GREGORY EDWARD GRAY12 6 24 CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY*

- **CV127 PSP FORM COMPLETED BY GREGORY EDWARD GRAY 12 6 24 CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY.pdf**
  *Description: CV127 PSP FORM COMPLETED BY GREGORY EDWARD GRAY 12 6 24 CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY*

- **CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY (2).pdf**
  *Description: COPY OF MOTIONCASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY*

- **EDSS CONFIRMATION RECEIPT CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY.pdf**
  *Description: EDSS CONFIRMATION RECEIPT CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY*

Please include the tracking number as a reference on any communications with the Court about this submission. We recommend that you print this page for your records. You should also receive an email, sent to the email address you provided during the EDSS submission process, confirming your submission.

**For assistance, please contact:**

Civil Intake

United States District Court

Central District of California

Tel: (213) 894-3535

[Go back to the main EDSS page.](#)

| Clerk Services | Jurors Information | Attorney Information | Court Procedures |
|---|---|---|---|
| Court Reporting Services | Jurisdiction | Attorney Admissions | Filing Procedures |
| Courtroom Technology | Terms of Service | Attorney Assistance | Forms |
| Employment | Requesting an Excuse | Alternative Dispute Resolution (ADR) | General Orders |
| Interpreter Services | Requesting a Postponement | Capital Habeas | Local Rules |
| Naturalization Ceremony Information | Students | Criminal Justice Act (CJA) | |
| Policy For Limited Use of Court | Payment | Lawyer Representatives | |
| Facilities | Juror Amenities | Pro Bono | |

Case 2:20-cv-02291-DOC-KES   Document 841   Filed 12/09/24   Page 18 of 19   Page
ID #:23241

Records Department

Statistical Reports

Dress Code

Security

Employer Information

Checking Status / Confirming

Reporting Instructions

Certificate of Jury Service

Contact Us

Parking / Directions

Subsistence Information / Hotels

Direct Assignment of Civil Cases to
Magistrate Judges Program

Attorney Workroom Copier Password
Request

Mileage Rates

Post-Judgment Interest Rates


U.S. District Court, Central District of California

# CONFIRMATION

The document(s) listed below have been submitted to the United States District Court for the Central District of California using the Electronic Document Submission System ("EDSS"). The document(s) have not yet been filed. Just like documents received through the U.S. Mail, documents received through the Electronic Document Submission System ("EDSS") will not be considered filed until court staff have uploaded them into the Court's Case Management/Electronic Case Filing System ("CM/ECF").

Documents submitted using EDSS should be processed within 1-2 business days of receipt. However, the date of EDSS submission, shown below, will be considered the filing date for any documents submitted through EDSS and later filed into CM/ECF.

**Name:** GREGORY GRAY
**Tracking Number:** EDS-241206-001-5994
**Date:** 12/6/2024

Uploaded files:

- **CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTNG PERMISSION TO BECOME AN INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY.pdf**
  *Description: CASE NO 2 20 cv 02291 DOC KES MOTION REQUESTING PERMISSION TO BECOME INTERESTED PARTY AND SUBMIT DOCUMENTS FOR COURT ORDERED AUDIT FILED 12 6 24 BY GREGORY EDWARD GRAY*

Please include the tracking number as a reference on any communications with the Court about this submission. We recommend that you print this page for your records. You should also receive an email, sent to the email address you provided during the EDSS submission process, confirming your submission.

**For assistance, please contact:**

Civil Intake
United States District Court
Central District of California
Tel: (213) 894-3535

Go back to the main EDSS page.

| Clerk Services | Jurors Information | Attorney Information | Court Procedures |
|---|---|---|---|
| Court Reporting Services | Jurisdiction | Attorney Admissions | Filing Procedures |
| Courtroom Technology | Terms of Service | Attorney Assistance | Forms |
| Employment | Requesting an Excuse | Alternative Dispute Resolution (ADR) | General Orders |
| Interpreter Services | Requesting a Postponement | Capital Habeas | Local Rules |
| Naturalization Ceremony Information | Students | Criminal Justice Act (CJA) | |
| Policy For Limited Use of Court | Payment | Lawyer Representatives | |
| Facilities | Juror Amenities | Pro Bono | |
| Records Department | Dress Code | Direct Assignment of Civil Cases to Magistrate Judges Program | |
| Statistical Reports | Security | Attorney Workroom Copier Password Request | |
| | Employer Information | Mileage Rates | |
| | Checking Status / Confirming | Post-Judgment Interest Rates | |
| | Reporting Instructions | | |
| | Certificate of Jury Service | | |
| | Contact Us | | |
| | Parking / Directions | | |
| | Subsistence Information / Hotels | | |