UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
mumhofer@umklaw.com
emitchell@umklaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, *et al.*, <br><br> Defendants. | Case No. 2:20-CV-02291-DOC-KES <br><br> Assigned to Judge David O. Carter <br><br> **JOINT STIPULATION REGARDING DEFENDANT'S MOTION FOR PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION TO PRECLUDE TESTIMONY, AND REQUEST FOR RULING** <br><br> Before: Hon. David O. Carter <br> Courtroom: 10A |

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

Plaintiff LA Alliance for Human Rights ("Alliance") notified Defendant City of Los Angeles ("City") of its intent to call Mayor Bass and Councilmembers Rodriguez and Park to testify in the upcoming hearing on May 27, 2025.  Defendant City objects on the basis on the Apex Witness and/or Deliberative Process doctrines, as well as relevance, and seeks a protective order, or alternatively, moves to preclude the testimony of the Mayor and any Councilmember.  The parties hereby submit the following joint statement of points and authorities, and request an order by the court on an expedited basis, to better allow the parties to prepare for the hearing.  Out of an abundance of caution, the City will also be filing an ex parte application to quash the Alliance's subpoenas to Mayor Bass and Councilmembers Rodriguez and Park on the grounds set forth below.

## **DEFENDANT CITY OF LOS ANGELES' ARGUMENT IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER OR MOTION TO PRECLUDE THE TESTIMONY OF APEX WITNESSES**

The Alliance has made an extraordinary request in purporting to name Mayor Bass and Councilmembers Rodriguez and Park as witnesses—and now subpoenaing their testimony even before securing a ruling from this Court on the propriety of seeking such testimony.  This Court should reject the Alliance's overreach for two independent reasons:  (1) the apex doctrine and (2) the deliberative-process privilege.

*First*, the apex doctrine bars the Alliance's attempt to force Mayor Bass and Councilmembers Rodriguez and Park to testify.  Parties generally cannot depose or call to testify high-level (or apex) governmental officials.  This prohibition applies to requests for testimony from high-level officials at all levels of government.  *See, e.g.*, *United States v. Morgan*, 313 U.S. 409, 422 (1941) (federal cabinet secretary); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 231 (9th Cir. 1979) (federal agency head); *Coleman v. Schwarzenegger*, 2008 WL 4300437, at *4 (E.D. Cal. Sept. 15, 2008) (state governor); *Sargent v. City of Seattle*, 2013 WL 1898213, at *3 (W.D. Wash. May 7, 2013) (city police chief).  And it protects both executive officials like mayors,

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

*e.g.*, *Marisol A. v. Giuliani*, 1998 WL 132810, at \*4 (S.D.N.Y. Mar. 23, 1998); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007), and legislative officials like councilmembers, *e.g.*, *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 n.18 (1977).

Calling an apex witness to testify is an extraordinary request that requires "extraordinary circumstances." *K.C.R. v. Cnty. of Los Angeles*, 2014 WL 3434257, at \*3 (C.D. Cal. July 11, 2014). The apex doctrine prevents parties from obtaining testimony from high-level officials unless, at minimum, the official "'has unique first-hand, non-repetitive knowledge of the facts at issue in the case,'" plus "'the party seeking the deposition'" (or, as here, live testimony at a hearing) "'has exhausted other less intrusive discovery methods.'" *Id.* These circumstances are met only rarely because testimony from apex witnesses is supposed to be rare. High-level officials— and, in particular, mayors of large cities—"ha[ve] large demands on [their] time." *Marisol A.*, 1998 WL 132810, at \*4. An attempt to seek testimony from an apex witness "creates a 'tremendous potential for abuse or harassment.'" *K.C.R.*, 2014 WL 3434257, at \*3. Magnifying that potential for harassment, a large city like Los Angeles at any given time could be involved in hundreds, if not thousands, of active cases. And the apex doctrine, at bottom, reflects a fundamental principle of comity: The Judiciary should not subject high-level governmental officials like Mayor Bass and Councilmembers Rodriguez and Park to undue scrutiny. *See Morgan*, 313 U.S. at 422.

The Alliance does not dispute that the apex doctrine applies to Mayor Bass and Councilmembers Rodriguez and Park. After all, Mayor Bass leads the second-largest city in the Nation—she is at the apex of apex witnesses in Los Angeles. *See, e.g.*, *Bogan*, 489 F.3d at 423 (holding that the mayor of Boston, the 25th-largest city, is an apex witness). The Alliance therefore must demonstrate *both* that Mayor Bass and Councilmembers Rodriguez and Park "ha[ve] direct personal information of material issues in the action" *and* "that the information may not be gained from any other

3

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

source." *Sargent*, 2013 WL 1898213, at *3; *accord, e.g.*, *Coleman*, 2008 WL 4300437, at *2.

The Alliance doesn't even clear the first bar of proving that Mayor Bass and Councilmembers Rodriguez and Park have personal information relevant to deciding the issues before this Court. This Court has jurisdiction only to determine compliance with the Settlement Agreement, which was the only agreement over which this Court retained jurisdiction when dismissing the Alliance's claims against the City. Dkt. 429-1 ¶ 2; *see Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994). The Alliance's motions for compliance raise discrete issues regarding whether the City has created the number of beds it agreed to create, and whether the City used its best efforts to comply with certain milestones under the agreement. *See* Dkts. 767, 863. The Alliance never explains how Mayor Bass and Councilmembers Rodriguez and Park have critical, firsthand knowledge of those specific issues. Instead, the Alliance refers primarily to Mayor Bass's leadership role within the City—precisely why the apex doctrine *protects* her from rather than exposes her to being called as a witness. The Alliance's basis for calling the Councilmembers is equally thin: a few allegedly critical comments about unspecified aspects of the City's homelessness response without substantiating any connection to the City's compliance with the Settlement Agreement.

Just as fundamentally, the Alliance doesn't even try to explain why Mayor Bass and Councilmembers Rodriguez and Park *alone* possess information that they need to try to prove noncompliance with the Settlement Agreement. *See Marisol A.*, 1998 WL 132810, at *5 (blocking deposition of New York mayor because plaintiff had not established that information was "not available from any other source"). Nor could they: The City officials who are *most* knowledgeable about compliance with the Settlement Agreement are City Administrative Officer Matthew Szabo and Deputy Mayor of Homelessness and Community Health Dr. Etsemaye Agonafer—not the Mayor or Councilmembers. *See* Dkt. 918 at 2–3.

4

The Alliance concedes below that they have not attempted to secure evidence first from other witnesses.  Instead, the Alliance argues that it doesn't matter that they have gone straight to the top of the City's government.  But the Alliance does not cite a single case holding that a court can force a high-ranking official to testify merely on the grounds of personal knowledge of *something*, let alone where the plaintiff does not even attempt to exhaust all other avenues to secure information relevant to the case.  The only cases it cites involve non-governmental officials, and both reiterated that the Court must consider whether parties seeking testimony from apex witnesses have exhausted all other avenues to secure information relevant to the case.  *See Pinn, Inc. v. Apple Inc.*, 2021 WL 4775969, at *2 (C.D. Cal. Sept. 10, 2021) (asking "'whether the party seeking the deposition has exhausted other less intrusive methods'"); *Grateful Dead Prods. v. Sagan*, 2007 WL 2155693, at *1 n.5 (N.D. Cal. July 26, 2007) ("high-level corporate officers" should be protected when "testimony would be repetitive").  Governmental officials receive even more solicitude given the comity and federalism concerns of subjecting them to the burdens of preparing for and providing testimony at a court proceeding.  *See K.C.R.*, 2014 WL 3434257, at *3 (explaining that extraordinary circumstances are required "in particular" for high-ranking governmental officials).

The Alliance is unwilling to acknowledge the burdensome nature of its request.  Although the Alliance downplays the commitment below as just "an hour or two of time," Mayor Bass and Councilmembers Rodriguez and Park would also have to prepare on short notice over a holiday weekend to testify under oath on specific matters concerning compliance with the Settlement Agreement where they are *not* the most knowledgeable witnesses available.  The Alliance cites no case supporting such an imposition on high-ranking governmental officials—because none exists.

*Second*, to the extent the Alliance seeks testimony from Mayor Bass and Councilmembers Rodriguez and Park regarding private communications and decision-making processes when crafting the City's homelessness policy, that information is

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

protected by the deliberative-process privilege.  That privilege is rooted in the "fundamental, historically enshrined legal principle that precludes any judicially authorized inquiry into the subjective motives or mental processes of legislators." *Cnty. of Los Angeles v. Superior Court*, 13 Cal. 3d 721, 726 (1975).  The privilege blocks "the disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  *Lab. & Workforce Dev. Agency v. Superior Court*, 19 Cal. App. 5th 12, 27 (2018) (quoting *Dudman Commc'ns v. Dep't of Air Force*, 815 F.2d 1565, 1568 (D.C. Cir. 1987)).

The Alliance's attempts to avoid the apex doctrine are not only unsuccessful on their own terms but also bring them into direct conflict with the deliberative-process privilege.  Compelling Mayor Bass and Councilmembers Rodriguez and Park to testify would deter frank deliberations on future issues and take them away from the important day-to-day duties they were elected to fulfill.  Unsurprisingly, courts have found that similar probing into city officials' mental processes is protected by the deliberative-process privilege.  *See, e.g.*, *San Joaquin Cnty. Loc. Agency Formation Comm'n v. Superior Court*, 162 Cal. App. 4th 159, 170 (2008) (prohibiting plaintiff from deposing local officials because of deliberative-process privilege); *Bd. of Supervisors v. Superior Court*, 32 Cal. App. 4th 1616, 1626–27 (1995) (holding that the deliberative-process privilege protected the Los Angeles County Board of Supervisors' decision-making process).  The Alliance's apparent desire to peer into the minds of the City's elected officials is particularly inappropriate because the information is—at best—only tangentially relevant to the issues raised in its motions—again, whether the City has created the number of beds it agreed to create, and whether the City met and correctly reported the agreed-upon encampment resolution milestones.  *See FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (per curiam) (considering relevance of sought evidence in weighing privilege).

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

In short, two separate, well-settled doctrines foreclose the Alliance's attempts to force Mayor Bass and Councilmembers Rodriguez and Park to testify at the upcoming hearing on Thursday.

## PLAINTIFF LA ALLIANCE RESPONSE

Defendant's attempt to use the apex witness doctrine is nothing more than a self-serving effort to withhold testimony from Mayor Karen Bass and Councilmembers Rodriguez and Park regarding *their own* decisions, conduct, and opinions about the City's lack of compliance with the Settlement Agreement and overall broken homelessness response system.

Although Defendant seeks to improperly shift its burden onto Plaintiff, applicable caselaw provides that it is the party seeking the protective order who must show good cause to block the witness' testimony. *See Pinn, Inc. v. Apple Inc.*, 2021 WL 4775969, at *2 (C.D. Cal. Sept. 10, 2021) ("A district court has broad discretion to determine whether, on the totality of the record, a party seeking a protective order has met its burden of showing good cause to block an apex deposition.")

Given the focus on the City's compliance with the Settlement Agreement, it is disappointment that Defendant is attempting to withhold testimonial evidence from the very officials who are ultimately deciding how the City will address the Settlement Agreement and the homelessness crisis.

The apex doctrine is intended "to protect [government] officials from discovery that will burden the performance of their duties, particularly given the frequency with which such officials are likely to be named in lawsuits." *K.C.R. v. Cnty. of Los Angeles*, 2014 WL 3434257, at *5 (C.D. Cal. July 11, 2014). Defendant argues that the mayor and councilmembers cannot be bothered to appear at the upcoming hearing but fails to explain how it would "burden the performance of their duties" when it will only take an hour or two of time on critical issues. While Defendant may be eager to minimize the importance of these proceedings (and the ongoing homelessness crisis),

7

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

the scope and potential impact of this case clearly constitutes extraordinary circumstances deserving of the mayor's and councilmembers' attention.

Moreover, Defendant's assertion that Plaintiff must prove before the hearing that the Mayor and Councilmember have material and completely unique information is inaccurate as a matter of law. *See* Defendant's objection ("The Alliance therefore must demonstrate *both* that Mayor Bass and Councilmember Rodriguez 'ha[ve] direct personal information of material issues in the action' *and* 'that the information may not be gained from any other source.'"). To the contrary, a party seeking witness testimony "does not need to prove conclusively in advance that the deponent definitely has unique, non-repetitive information; instead, "where a corporate officer [or government official] may have any first-hand knowledge of relevant facts, the [testimony] should be allowed." *Grateful Dead Productions v. Sagan*, 2007 WL 2155693, at *1, n. 5 (N.D. Cal. 2007). Similarly, Courts have found that the exhaustion of other sources is a consideration for the Court in its discretion but is not absolute requirement. *Pinn, Inc. v. Apple Inc.*, 2021 WL 4775969, at *2 (C.D. Cal. Sept. 10, 2021)

Mayor Bass undeniably has "unique knowledge of the facts at issue." *Pinn* at 2. She put herself directly in the middle of this issue by promising to"[p]ersonally lead as Mayor" on the issue of homelessness and to "lead on homelessness and personally drive action at City Hall to marshal the resources of every city department to fight homelessness and end all street encampments." Mayor Bass appointed herself personally to sit on the LAHSA commission and has remained a commissioner since 2023. She made the decisions and led the strategy around Inside Safe which is one of the City's main programs to address homelessness. She also made specific representations in court about the audit and the broken homelessness system which Plaintiff is entitled to address. Similarly, Councilmember Rodriguez sat on the City Council Homelessness and Housing Committee for over seven years, has called LAHSA and the City's homelessness response system a "merry-go-round from hell," objected to the City's practice of paying service provider invoices without sufficient

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

documentation, and criticized the exorbitant cost and slow pace of many homelessness solutions the City is pursuing as part of this Agreement.  Finally, Councilmember Park just yesterday publicly announced that the City has wasted "hundreds of millions of dollars" on homelessness housing when "no one can even tell us which ones are operational and which ones aren't or how many beds we have," that " LAHSA is in a free-for-all. Literally no one can account for the billions we flushed down the toilet," and that the City is "completely unprepared and . . . unable to manage our own homeless affairs."  On the critical issue of whether the City has met its obligations under this Agreement, and on the bigger issue of the completely broken system and why Receivership is necessary, Plaintiff must be allowed to probe these issues, and the Court must hear from them directly. Their personal knowledge and understanding of these issues is critical and central to the case.  *See, e.g. Detoy v. City and County of San Francisco*, 196 F.R.D. 362, 369 (N.D. Cal 2000) (permitting deposition of police chief and distinguishing other cases precluding depositions of high-ranking officials "about matters of which they had no personal knowledge); *see also Green v. Baca*, 226 F.R.D. 624, 648-50 (C.D. Cal 2005) (permitting plaintiff to call Los Angeles Sheriff Lee Baca in its case in chief because "it cannot be said that Baca has no personal knowledge of the facts at issue.").

Similarly, the deliberative process/mental process privilege is only a qualified immunity, protects only "predecisional" testimony "generated before the adoption of a policy or decision" and can be overcome by a demonstration that "the need for accurate fact-finding override[s] the government's interest in non-disclosure." *FTC,* 742 F.2d at 1161 (N.D. Cal 2003). Relevant factors courts consider are:

> (1) the relevance of the evidence; (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. [] Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society,

9

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

*North Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal 2003) (ordering testimony from city council members because their "motive and intent" was relevant to the claim and the "decisionmaking process" was central to the case which involved allegations of governmental misconduct"); *see also Thomas v. Cate*, 715 F. Supp. 2d 1012, 1020, 1037" (E.D. Cal 2010) (noting that "[a] number of courts have held that the deliberative process privilege does not apply in actions where the government's decision making is central to the plaintiff's case" and overruling the California Governor's objections to certain interrogatories because, among other issues, "Petitioner's interest in accurate fact-finding outweighs the Governor's interest in keeping [decisions] confidential."). The majority of the testimony Plaintiff intends to elicit is not "predecisional" but relates directly to policy and decisions that have been made over the last several years. Regardless, to the extent it relates to "predecisional" issues, the need for "accurate fact-finding" far outweighs the government's interest in preventing embarrassment of its leaders. The evidence is highly relevant and the stakes could not be higher: potential receivership over a billion-dollar programs and the lives of thousands of people.

To be clear, Plaintiff seeks only testimony concerning the witnesses' personal knowledge, communications, intent, and decision-making, which is central to the issues to be raised at the evidentiary hearing. Mayor Bass and Councilmembers Rodriguez and Park have made numerous public comments regarding homelessness and budget issues. They have participated heavily in setting policy for the City of Los Angeles in this issue and can testify to their own knowledge, intent, and the basis for the decisions that were made.

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*

Plaintiff respectfully requests this Court overrule Defendant City's objections and produce Mayor Bass and Councilmember Rodriguez as witnesses on May 27, 2025.

Dated: May 23, 2025          Respectfully submitted,

*/s/ Elizabeth A. Mitchell*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)

*Attorneys for Plaintiffs*

Dated: May 23, 2025          */s/ Theane Evangelis*
Theane Evangelis

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
   tevangelis@gibsondunn.com
MARCELLUS McRAE, SBN 140308
   mmcrae@gibsondunn.com
KAHN SCOLNICK, SBN 228686
   kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
   bhamburger@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:   213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
DENISE C. MILLS, SBN 191992
KATHLEEN KENEALY, SBN 212289
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:   213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

11

*Joint Stipulation re Apex Witness and Deliberative Privilege Objections*