UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
elizabeth@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>Defendants. | Case No. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**DECLARATION OF ELIZABETH MITCHELL ISO PLAINTIFF LA ALLIANCE'S REPLY ISO OPENING BRIEF RE EVIDENTIARY HEARING ON SETTLEMENT BREACH**<br><br>Before: Hon. David O. Carter<br>Courtroom: 1 |

`

*DECLARATION OF ELIZABETH MITCHELL ISO REPLY ISO OPENING BRIEF*

I, Elizabeth A. Mitchell, hereby declare as follows:

1. I am an attorney at the law firm of Umhofer, Mitchell & King LLP, and I represent Plaintiffs LA Alliance for Human Rights, Joseph Burk, George Frem, Wenzial Jarrell, Charles Malow, Karyn Pinsky, and Harry Tashdjian ("Plaintiffs") in this action. Except for those that are stated upon information and belief, I have personal knowledge of the facts set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2. The City and Alliance spent months meeting and conferring about the City's violations prior to the Alliance filing its Motion for Settlement Agreement Compliance in February of 2025. I drafted and sent a letter to the City on August 16, 2024, raising the issue of missed milestones, an incomplete plan, and faulty encampment reduction reporting. In response, the City proposed an updated bed plan which would bring it into compliance with Section 5.1, but which proposed that it would "re-use" or "borrow" beds from the Roadmap Agreement. The Alliance objected, noting that the City has committed to increasing its overall bed count in addition to the Roadmap Agreement. In October of 2024, the City withdrew its updated bed plan for political reasons—apparently relying on assurances by the County which never manifested.

3. Having not resolved the issues, I drafted and caused to be sent to the City another letter raising the same issues again, to which the City responded on December 4, 2024. The parties thereafter met and conferred about the multiple violations; Special Master Martinez was included in the meeting. The City did nothing to allay my client's concerns, and affirmed that no further plans for additional beds had been developed

4. In early January, prior to the onset of the two wildfires in the Los Angeles area, I informed counsel for the City, Jessica Mariani and Arlene Hoang, that I intended to file the motion for settlement compliance, as the City was in breach of the Agreement. In response, the City requested to further meet and confer about the breaches. The following day, counsel for the City unilaterally announced that, due to the fires, the City's obligations "are hereby paused." My response, that the Alliance has

*DECLARATION OF ELIZABETH MITCHELL ISO REPLY ISO OPENING BRIEF*

satisfied its meet-and-confer obligation, had nothing to do with the fire emergency, but was in response to the four months of prior discussions about the City's multiple ongoing breaches. (*See* Pl.'s Reply ISO Mot. for Order for SA Compl. Ex. 1, Email from E. Mitchell, Jan. 15, 2025, ECF No. 872-02.) Defendant conveniently failed to include the entire email chain which referred to the long process of meeting and conferring about the City's violations—having nothing to do with the Declaration of Emergency. Attached as **Exhibit A** is a true and correct copy of the entire email chain.

5.      I informed the City, on behalf of my client, that I would "delay filing the motion to compel to permit the City a reasonable period of time to recover" to which the City never responded. (*Id*.) And we did wait over a month to file the motion, during which time there was no communication from the City, and certainly no request to meet and confer about the emergency. Had the City requested to do so, of course the Alliance would have met and conferred. Having not heard further from the City, the Alliance was free to file the motion without further concern. It was not until six days after the Alliance filed the motion for settlement compliance—on February 26, 2025—that the City reached out with a request to meet and confer under Section 8.2. (*See* Ex. 217, Email from E. Mitchell, Feb. 28, 2025, ECF No. 964-11.)[1]

6.      The City and Plaintiff met and conferred on March 4, 2024—a date chosen by the City—at which point it again raised the issue of re-using the Roadmap beds as part of the Alliance Agreement. There were subsequent discussions, and at least one meeting with Special Master Martinez and Judge Andre Birotte, where the ongoing issues were discussed. My client could not agree to the proposed re-use because 1) it would be a violation of the Settlement Agreement and would reduce the number of overall beds in the City by 3,000, and 2) the proposed modification was the same basic plan the City asked to use the year before, having nothing to do with the fire emergency and everything to do with the City's financial mismanagement, which predated the fire

---

[1] All references to exhibits are those exhibits admitted at the evidentiary hearing.

*MITCHELL DECLARATION ISO REPLY ISO OPENING BRIEF*

by years. Regardless, in an attempt to continue to work with the City, I requested the City "send me the proposed 3,000 beds you would migrate." The City never did so and never responded further on the subject, despite the ongoing motion practice. (*See* Ex. 218, Email from A. Hoang, Mar. 28, 2025, ECF No. 964-12.) To this day, I have not received the actual proposal of which beds would be proposed to be migrated.

7.    To properly monitor the city reports, I requested that my staff track the City's reports, including the new beds. Upon noticing that new Inside Safe beds had been added to the report, I asked my office to separately identify the Inside Safe beds and whether they were equitably distributed across the Council Districts. Attached hereto as **Exhibit B** is a true and correct copy of that tracking file, which identifies the Inside Safe projects as being heavily weighted for CD 8 (22.61%), CD 9 (14.14%), CD 13 (17.76%), and CD 14 (14.51%).

8.    Upon receiving the City's TLS submission (Decl. of M. Szabo re TLS Reporting, June 11, 2025, ECF No. 980), my team created a list of the cities identified by the City where the subsidies are being used. Attached hereto as **Exhibit C** is a true and correct copy of that list. I also asked my team to map the cities where the subsidies are being used. Attached hereto as **Exhibit D** is a true and correct copy of that map.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 17, 2025, at Los Angeles, California.


/s/ Elizabeth A. Mitchell
Elizabeth A. Mitchell

3
*MITCHELL DECLARATION ISO REPLY ISO OPENING BRIEF*