MIRA HASHMALL (State Bar No. 216842)
mhashmall@millerbarondess.com
JASON H. TOKORO (State Bar No. 252345)
jtokoro@millerbarondess.com
LAUREN M. BRODY (State Bar No. 337858)
lbrody@millerbarondess.com
MILLER BARONDESS, LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, California 90067
Telephone: (310) 552-4400
Facsimile: (310) 552-8400

Attorneys for Defendant
COUNTY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | **CASE NO. 2:20-cv-02291 DOC (KES)**<br><br>**THE COUNTY OF LOS ANGELES'S POST-EVIDENTIARY HEARING BRIEF**<br><br>Assigned to the Hon. David O. Carter and Magistrate Judge Karen E. Scott |

740738.3

## I.    INTRODUCTION

The evidentiary hearing that took place from May 27, 2025 through June 4, 2025 arose out of two "Motion[s] For Order re Settlement Agreement Compliance" filed by the LA Alliance for Human Rights ("Alliance") against the City of Los Angeles ("City").  (Dkts. 767, 863.)  Those motions concerned the City's obligations under its settlement agreement with the Plaintiffs.  As is clear from the face of the document, and the Court has already found, the City's settlement "imposes no responsibilities on the County of Los Angeles because they are not a party to th[at] Agreement."  (Dkt. 445.)

Then, in its post-hearing Opening Brief, Plaintiffs *sua sponte* requested that the Court extend the "Roadmap Agreement[] for a minimum period of two years to ensure compliance and oversight."  (Dkt. 988 at 28.)  That "remedy" was in addition to "impos[ing] . . . a Receivership," ordering additional monitoring, audits, investigations, and reports, and issuing other relief related to the City's alleged breach of its settlement agreement.  (*Id.*)

However, there is no question that **the County** has fully and completely complied with its obligations under the Roadmap Agreement.  (Dkt. 953 at 86:1–4; *see* Dkts. 203, 254, 341, 463, 594, 758.)  Not only that, but the County has substantially increased its commitment to supporting people experiencing homelessness ("PEH") in the City in the five years since the Roadmap Agreement.  Through its own settlement with the Alliance, the County expanded its outreach in the City and provides mainstream services to people in the housing and shelter that the City committed to creating.  Beyond this lawsuit, the County has invested millions of dollars in the City, including Skid Row, demonstrating its deep investment in addressing the homelessness crisis.

There is thus no basis to extend the term of the Roadmap Agreement, and it would hinder the County's current efforts to address homelessness.  The County is looking forward, not backwards.  The Court should deny the Plaintiffs' requested

relief.[1]

## II.    BACKGROUND

Alliance filed this case on March 10, 2020.  Along with eight individual Plaintiffs, none of whom were themselves experiencing homelessness, Alliance contended that the City and County's choice to follow the research and advice of public health experts and homeless advocates and devote resources to permanent supportive housing ("PSH") violated their constitutional and state-law rights.  At the time, the prevailing law held that the Eighth Amendment's prohibition on cruel and unusual punishment barred the imposition of criminal penalties on PEH for sitting, sleeping, or lying outside on public property if there are no shelter beds available. *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019).  Plaintiffs approached this suit with a specific housing prerogative: force the construction of "temporary shelter," which is all *Martin* required.  (Dkt. 1 ¶¶ 17–18, 31; *see id.* ¶ 84 ("Without beds to offer, the City and County's efforts are stymied and destined to fail under *Martin v. City of Boise*.").)

Alliance's complaint was filed mere days before state and local officials approved the landmark stay-at-home orders related to the spread of the then-novel coronavirus, COVID-19.  The "Roadmap Agreement" refers to the 2020 Memorandum of Understanding between the City and County that was entered into in the midst of that unprecedented public health crisis.  (*See* Dkt. 185-1, Ex. 1 at 1.)

On May 13, 2020, the Court issued an order for briefing on a potential preliminary injunction following concerns over the heightened public health risks facing PEH who lived under freeway overpasses and underpasses, and near entrance and exit ramps.  (Dkt. 103.)  At a conference on May 15, 2020, the Court asked the

---

[1] The County addresses this remedy because it would directly affect the County and, specifically, the Roadmap Agreement between the County and the City.  Nothing in this brief shall be construed as an endorsement of Alliance's accusations of breach by the City nor of any of the remedial measures it seeks.

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

parties to develop a "plan" to assist PEH near freeways.  (Dkt. 117 at 13:4–23, 44:23–45:12.)  That same day, the Court issued a preliminary injunction order that would become effective May 22, 2020, but invited the parties to submit an "alternative plan" before then.   (Dkt. 108.)

On May 19, 2020, the County, jointly with the Los Angeles Community Action Network and Los Angeles Catholic Worker (together, "Intervenors"), submitted an alternative plan "to address the short term and long term needs of persons experiencing homelessness near freeways."  (Dkt. 115 at 1.)  That proposal included a joint funding model for a suite of new housing sites, as well as a package of mainstream services developed by the County and offered to people experiencing homelessness and residing at shelters within the City.  (*Id.* at 10.)

Following a joint mediation session before the Honorable André Birotte Jr., the City and County agreed to a binding term sheet that became the Roadmap Agreement.  (*See* Dkts. 124, 125, 127, 137.)  The Roadmap Agreement represented, at the time, a historic collaboration between the City and County to develop meaningful and effective solutions to address the homelessness crisis and support PEH.   Plaintiffs did not participate in that mediation nor are they a party to the agreement that followed.  In the Roadmap Agreement, the City and County agreed to attempt to resolve any disputes arising out of the Agreement informally between themselves first. (Dkt. 185-1 § VI.)

Nearly five years later, and two months after the briefing on the second of its motions against the City, Alliance filed a "Response Re Issues Raised By Court On March 27, 2025." (Dkt. 899.)  In it, Alliance argued for the first time that the City had breached its obligations under the Roadmap Agreement related to its counting of certain Time Limited Subsidies ("TLS") in its quarterly reports.  Even then, Plaintiffs appeared to be relying on the City's alleged breach of the Roadmap Agreement for the sole purpose of supporting its request for a Receivership.  Only in its post-hearing Opening Brief did Plaintiffs seek affirmative relief pursuant to the

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400   FAX: (310) 552-8400

Roadmap Agreement.

## III. THE COURT SHOULD NOT EXTEND THE COUNTY'S OBLIGATIONS UNDER THE ROADMAP AGREEMENT

The Roadmap Agreement is set to expire on June 30, 2025, and should not be extended. There is no evidence—or even an accusation—of a breach of the Roadmap Agreement by the County. That alone forecloses the relief requested relief by Alliance, which is not a party with enforceable rights under the agreement in any event.[2] But there are other important reasons the Court should not extend the Roadmap Agreement's term by two years.

In the five years since the City and County negotiated that agreement, circumstances have changed. The terms of the Roadmap Agreement would no longer cover the increased costs of operating interim housing, meaning any extension would still require additional funding. Moreover, the County has a new approach for addressing homelessness. With the passage of the Affordable Housing, Homelessness Solutions, and Prevention Now Transactions and Use Tax Ordinance ("Measure A"), the County is implementing baseline and target performance metrics and stronger accountability and transparency measures for homelessness spending based on best practices for standardizing care.

The County is also executing on recommendations from the County's Blue-Ribbon Commission on Homelessness to strengthen the homeless services system. To support this work, the County created the Executive Committee on Regional Homeless Alignment ("ERCHA"), made up of elected officials including members from the County Board of Supervisors and the City Mayor, to develop a single regional plan, establish common performance indicators, and align resources. The County also created the Leadership Table on Regional Homeless Alignment,

---

[2] Alliance does not argue otherwise in its Opening Brief, either. (*See* Dkt. 977.) The City addressed this issue in its brief. (*See* Dkt. 983 at 32–35.)

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400    FAX: (310) 552-8400

740738.3

5

composed of subject matter experts, to serve as an advisory body to ERCHA. In addition, the County is streamlining the Los Angeles Homeless Services Authority ("LAHSA") and centralizing homelessness services within a new County department, set to launch by January 2026. Alvarez & Marsal made recommendations to improve the homeless services system, many of which align with steps the County is already taking.

The County has also demonstrated that it can and *will* conduct meaningful oversight over money earmarked for homelessness. The Board voluntarily called for a financial audit of LAHSA in February 2024, which was performed by the County's Auditor-Controller's office and published in November 2024. In addition, the County is currently taking a hard look at the City's supplemental data and information on the TLS "slots" reported under the Roadmap Agreement, which was recently submitted following testimony from Alvarez & Marsal Director Laura Frost and the Court's orders for additional information in response to concerns raised during the evidentiary hearing.

No party has meaningfully questioned the success of the Roadmap Agreement, but it was always intended to sunset after five years. Alliance's belated suggestion to extend the Roadmap Agreement should be rejected, as it risks disrupting the County's ongoing homelessness services and programs and its newly launched effort to streamline LAHSA and strengthen homeless service delivery through the creation of a dedicated department, all of which depend on the County's limited resources and careful planning and budgeting.

DATED: June 17, 2025         MILLER BARONDESS, LLP

By: _____
         MIRA HASHMALL
         Attorneys for Defendant

MILLER BARONDESS, LLP
ATTORNEYS AT LAW
2121 AVENUE OF THE STARS, SUITE 2600  LOS ANGELES, CALIFORNIA 90067
TEL: (310) 552-4400  FAX: (310) 552-8400

740738.3

THE COUNTY'S POST-EVIDENTIARY HEARING BRIEF