UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
elizabeth@umklaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>Defendants. | Case No. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES PURSUANT TO COURT ORDER DATED JUNE 24, 2025**<br><br>Before:   Hon. David O. Carter<br>Courtroom:  1 |

1

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION .................................................................................................. 1

II.   ARGUMENT........................................................................................................ 2

    A.    Fees and Costs May Be Awarded under Section 1983 ................................. 2

    B.    Fees and Costs Can Be Awarded as Contempt Sanctions as Well ............. 4

    C.    The Attorneys' Fees and Costs Sought Are Reasonable ............................ 6

    D.    Plaintiff's Hourly Rates Are Reasonable ...................................................... 8

    E.    The Hours Incurred Are Reasonable............................................................ 11

    F.    The Court May Also Apply A Multiplier and/or Prospective Fees ........... 12

        1.    A Multiplier Is Warranted.................................................................. 12

            a.    Extraordinary Results and Undervaluing Counsel ................ 14

            b.    Risk and Incentives for Competent Counsel ........................ 16

        2.    Prospective Attorneys' Fees May Also Be Awarded ...................... 19

III.  CONCLUSION ................................................................................................. 21

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

Aetna Life & Cas. Co. v. City of Los Angeles,
  170 Cal. App. 3d 865 (1985) ................................................................6

Alliance to End Repression v. City of Chicago,
  No. 74 C 3268, 1994 WL 86690 (N.D. Ill. Mar. 15, 1994) ........................21

Barjon v. Dalton,
  132 F.3d 496 (9th Cir. 1997) ................................................................8

Bellinghausen v. Tractor Supply Co.,
  306 F.R.D. 245 (N.D. Cal. 2015) ..........................................................8

Bernardi v. Yeutter,
  951 F.2d 971 (9th Cir. 1991) ..............................................................17

Brewster v. Dukakis,
  786 F.2d 16 (1st Cir. 1986) ................................................................21

Cap. Pure Assets, Ltd., v. CC Tech. Corp.,
  Case No. 24-cv-00680, 2025 WL 1704975 (D. Nev. June 17, 2025) ..........6

CliniComp Int'l, Inc. v. Cerner Corp.,
  Case No. 17-cv-02479, 2023 WL 2604816 (S.D. Cal. Mar. 22, 2023) ........9

Coles v. Berryhill,
  No. EDCV 14-1488-KK, 2018 WL 3104502 (C.D. Cal. June 21, 2018) ......9

Consumer Privacy Cases,
  175 Cal. App. 4th 545 (2009) ..............................................................6

Cotton v. City of Eureka,
  889 F. Supp. 2d 1154 (N.D. Cal. 2012) ..................................................8

Daniel v. Astrue,
  No. EDCV 04-01188, 2009 WL 1941632 (C.D. Cal. July 2, 2009) ............8

Dawson v. City of Seattle,
  435 F.3d 1054 (9th Cir. 2006) ..............................................................4

Diaz v. Romer,
  961 F.2d 1508 (10th Cir. 1992) ............................................................2

Emond v Murphy, Case No. LA,
  CV18-09040, 2019 WL 13039332 (C.D. Cal. Aug. 27, 2019) ....................6

Glover v. Johnson,
  138 F.3d 229 (6th Cir. 1998) ................................................................2

Goodyear Tire & Rubber Co. v. Haeger,
  581 U.S. 101 (2017) ........................................................................4, 6

Hensley v. Eckerhart,
  461 U.S. 424 (1983) ............................................................................2

Jordan v. Multnomah County,
  815 F.2d 1258 (9th Cir. 1987) ..............................................................8

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

Joseph A. by Wolfe v. N.M. Dep't of Hum. Servs.,
    28 F.3d 1056 (10th Cir. 1994) ..............................................................................2, 3
Keith v. Volpe,
    833 F.2d 850 (9th Cir. 1987) ......................................................................................21
Kelly v. Wengler ("Kelly I",
    ), 7 F. Supp. 3d 1069 (D. Idaho 2014) ..................................................13, 14, 16, 18
Kelly v. Wengler,
    822 F.3d 1085 (9th Cir. 2016) ................................................................13, 14, 18
Kerr v. Screen Extras Guild, Inc.,
    526 F.2d 67 (9th Cir. 1975) ........................................................................................13
Kersch v. Bd. of Cnty. Comm'rs,
    851 F. Supp. 1541 (D. Wyo. 1994) ..............................................................................3
Ketchum v. Moses,
    24 Cal. 4th 1122 (2001) ...............................................................................................6
Lake v. Gates,
    130 F.4th 1054 (9th Cir. 2025) ....................................................................................6
Lindy Bros. Builders, Inc. v. Am. Radiator & Stand. Sanitary Corp.,
    540 F.2d 102 (3d Cir. 1976) .......................................................................................21
McEneany v. Comm'r of Soc. Sec.,
    No. No. 21 Civ. 10370, 2024 WL 815984 (S.D.N.Y. Feb. 27, 2024)...........................9
Morales v. City of San Rafael,
    96 F.3d 359 (9th Cir. 1996) ........................................................................................13
Moreno v. City of Sacramento,
    534 F.3d 1106 (9th Cir. 2008) .....................................................................................7
Ochinero v. Ladera Lending, Inc.,
    Case No. SACV 19-1136, 2021 WL 4460334 (C.D. Cal. July 19, 2021)...................19
Orthopaedic Hosp. v. Encore Med., L.P.,
    Case No. 19-cv-00970, 2021 WL 5449041 (S.D. Cal. Nov. 19, 2021).........................9
Palos v. Colvin,
    Case No. CV 15-04261, 2016 WL 5110243 (C.D. Cal. Sept. 20, 2016) ......................9
Parsons v. Ryan,
    949 F.3d 443 (9th Cir. 2020) ......................................................................................12
Plyler v. Evatt,
    902 F.2d 273 (4th Cir. 1990) ........................................................................................3
Quinnin v. Colvin,
    No. 12-CV-01133, 2013 WL 5786988 (D. Or. Oct. 28, 2013) .....................................9
Robbins v. Alibrandi,
    127 Cal. App. 4th 438 (2005) .......................................................................................6
Stanger v. China Elec. Motor, Inc.,
    812 F.3d 734 (9th Cir. 2016) ......................................................................................12
Tutor-Saliba Corp. v. City of Hailey,
    452 F.3d 1055 (9th Cir. 2006) ......................................................................................3

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

Van Vranken v. Atl. Richfield Co.,
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................ 19
Vizcaino v. Microsoft Corp.,
    290 F.3d 1043 (9th Cir. 2002) ...................................................................... 19
Vogel v. Harbor Plaza Ctr., LLC,
    893 F.3d 1152 (9th Cir. 2018) ........................................................................ 6
Williams v. Berryhill,
    Case No. EDCV 15-919, 2018 WL 6333695 (C.D. Cal. Nov. 13, 2018) ...................... 8

**STATUTES**

42 U.S.C. § 1988(b) ......................................................................................... 2
42 U.S.C. §§ 1983 and 1988 .............................................................................. 2
42 U.S.C § 1988 ......................................................................................... 2, 3

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

**MEMORANDUM OF POINTS & AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff has once again prevailed in proving that the City has violated the Settlement Agreement in this case, and once again, attorneys' fees must be awarded to Plaintiff because of the City's misconduct.[1]

That misconduct was exposed and elucidated in this Court's detailed order granting Plaintiff's Motion for Settlement Compliance following a seven-day evidentiary hearing. Specifically, the Court found that the LA Alliance prevailed in proving that "[t]he City breached the LA Alliance Settlement Agreement in four ways" and "as a sanction for the City's noncompliance, including disobeying the Court's order on encampment reductions, Plaintiffs' efforts should be compensated." (Order re Mot. for Settlement Compliance ("Order") 56:6, 59:9–10, ECF No. 991.)

The amount of compensation due to Plaintiff is directly derived from the hours the LA Alliance and its attorneys and staff spent over the past year policing the City's compliance with the Settlement Agreement. As the Court put it, "the City has forced Plaintiffs into the position of investigating and monitoring" and spending hundreds of hours litigating the City's many failings. (Id. at 57:27–58:1.) The City's failures have made the LA Alliance the prevailing party here and damaged the LA Alliance and its counsel in the amount of hours spent addressing those failures. At an hourly rate of $1,295—the blended rate the City agreed to pay its recently-hired outside counsel— Plaintiff's counsel's hours yield a total of $1,392,818 in fees (along with $44,257.21 in costs) occasioned by the City's misconduct. Because of that misconduct, the Court may also consider (i) applying a multiplier to reward and incentivize this kind of litigation and (ii) awarding prospective fees to ensure that the LA Alliance and its counsel are

---

[1] Because this Court already ordered that Plaintiff's attorneys' fees and costs should be paid by the City, this brief is submitted as a memorandum in support of fees rather than a motion for attorneys' fees. Should the court expect instead that a motion be filed, Plaintiff hereby notices and moves for an award of attorneys' fees as described more fully herein.

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

compensated for their regrettably necessary efforts to hold the City accountable for the two years remaining in the Settlement Agreement.

As this sentence is written and read, the City remains in violation of its Settlement Agreement obligations. For this, fees are a modest but necessary consequence of the City's ongoing misconduct.

## II.     ARGUMENT

### A.     Fees and Costs May Be Awarded under Section 1983

While the Court identified contempt as a basis for awarding attorneys' fees and costs, there is a clearer path: a prevailing party attorneys' fees award under 42 U.S.C. §§ 1983 and 1988. 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983 . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs,"); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (a prevailing party under § 1988 has been defined as one whose success "on any significant issue in litigation . . . achieves some of the benefit . . . sought in bringing the suit.") (citation omitted).

Courts have made it clear that a party "prevails" in a Section 1983 case when it successfully seeks compliance with a consent decree, brings a contempt motion based on a prior order, and/or engages in monitoring of prior court orders. Joseph A. by Wolfe v. N.M. Dep't of Hum. Servs., 28 F.3d 1056, 1059 (10th Cir. 1994) ("Fees are also available to the prevailing party for post-judgment monitoring of a consent decree.") (citing Diaz v. Romer, 961 F.2d 1508, 1511 (10th Cir. 1992)); see also Glover v. Johnson, 138 F.3d 229, 251–52 (6th Cir. 1998) ("In bringing the contempt motion, plaintiffs were seeking defendants' compliance with the district court's 1979 and 1981 orders in which plaintiffs were prevailing parties. The district court did not abuse its discretion in finding plaintiffs were entitled to attorneys' fees. . . . **The plaintiffs should be compensated for their work in connection with the appeal** of the Compliance Committee matter, both because the defendants' voluntary dismissal of the appeal in effect made the plaintiffs prevailing parties, and because **that appeal clearly constituted a 'monitoring' matter** within the

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

meaning of this court's earlier <u>Glover</u> opinion.") (emphasis added); <u>Kersch v. Bd. of Cnty. Comm'rs</u>, 851 F. Supp. 1541, 1543 (D. Wyo. 1994) ("Even if the 'monitoring' standard were not applicable in this situation, **plaintiffs would still be entitled to recover their attorney's fees because they are 'prevailing parties' in the contempt litigation**.") (emphasis added); <u>Plyler v. Evatt</u>, 902 F.2d 273, 280–81 (4th Cir. 1990) ("As the district court noted, the plaintiffs' work in <u>Plyler I</u> was directed toward the protection of rights originally and unambiguously vindicated in the consent decree. . . . **[H]ere, plaintiffs' counsel, obviously successful in negotiating the consent decree, are not seeking to cure its revealed deficiencies, but to preserve its fruits.** . . . To deny attorney fees for such an effort, whether successful in detail or not, would obviously thwart the underlying purpose of the attorney fee provision of 42 U.S.C. § 1988.") (emphasis added.)

In this case, after securing the Settlement Agreement ("SA") and the Court's order dismissing the case and incorporating the SA into that order, the LA Alliance was required to police the City's constant non-compliance, including several months of meeting and conferring on different issues. Unable to get the City to move voluntarily into compliance, the Alliance was ultimately forced to file additional motions and put on a seven-day evidentiary hearing that exposed the City's contempt of the Court's prior orders. Those efforts led the Court to conclude that the LA Alliance proved that "[t]he City breached the LA Alliance Settlement Agreement in four ways." (Order 56:6.) The LA Alliance is, then, the prevailing party here "for post-judgment monitoring of a consent decree." <u>Joseph A. by Wolfe</u>, 28 F.3d at 1059. To grant fees would vindicate the laudable purpose of Section 1988; to deny fees would frustrate that purpose.

In addition to their attorneys' fees, prevailing parties are entitled to reimbursement of the costs they incurred. Under 42 U.S.C. § 1988, "reasonable out of pocket expenses that are normally billed to fee-paying clients may be awarded as costs . . . ." <u>Tutor-Saliba Corp. v. City of Hailey</u>, 452 F.3d 1055, 1058 n.1 (9th Cir. 2006) (citation omitted). In the Ninth Circuit, there is a presumption in favor of awarding costs to the prevailing party.

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

Dawson v. City of Seattle, 435 F.3d 1054, 1070 (9th Cir. 2006). The LA Alliance is, then, entitled not just to its fees, but to its costs.

### B.  Fees and Costs Can Be Awarded as Contempt Sanctions as Well

The Court has already identified and made factual findings concerning a second basis for a fee award: a "compensatory" sanction may be awarded to the "'portion of [a party's] fees that he would not have paid for' but the misconduct." Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 109 (2017) (citation omitted). As the Court put it, "[a]s a sanction for the City's noncompliance, including disobeying the Court's order on encampment reductions, Plaintiffs' efforts should be compensated." (Order 59:9–10.)

The City's "noncompliance" and "misconduct" were itemized in the Court's order, and fall in four categories:

- **Settlement Agreement breaches.** Order 56:6–12 "The City breached the LA Alliance Settlement Agreement in four ways. The City failed to provide a plan for how it intends to create 12,915 shelter or housing solutions. For years, the City consistently missed its shelter and housing creation milestones. The City also improperly reported encampment reductions and disobeyed the Court's order on encampment reductions. Finally, the City flouted its reporting responsibilities by failing to substantiate its reporting and failing to provide accurate and comprehensive data when requested by the Court, Special Master Martinez, the Parties, and A&M."

- **Failure to provide reliable data.** Order 48:8–12 "The Court receives numbers of shelter and housing solutions created by the City in its quarterly reports with no documentation to substantiate the numbers. When errors are found in the data reported, the City has repeatedly ignored the errors or attacked the messenger instead of engaging with and correcting the issues. This pattern has persisted for years and is untenable if the City is to succeed in meeting its obligations by 2027."

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

- **Lack of cooperation and responsiveness.** Order 37:22–27 "Instead, the evidentiary record reflects a consistent lack of cooperation and responsiveness—an unwillingness to provide documentation unless compelled by court order or media scrutiny. And rather than spending taxpayer dollars on finding the missing data or striving to provide verification, the City fought with the findings and methods of the A&M Assessment, the same methods they agreed to and paid for."; Order 39:9–11 "The pattern is clear: documentation is withheld until exposure is imminent, public accountability is resisted until judicially mandated, and the truth of reported progress remains clouded by evasive recordkeeping."

- **Disobeying a Court order.** Order 52:5–9 "Despite the Court's Order in March, the City never filed a motion for reconsideration or modification of the Settlement Agreement based on the clarification. The City merely orally objected to the Order at the March 27, 2025 hearing and then proceeded to ignore the Order. The City failed to amend its prior reports to the Court and willfully disobeyed the Order in its April 15, 2025 quarterly status report."

Each of these categories of misconduct harmed the LA Alliance by forcing it and its counsel to devote an extraordinary amount of hours and incur significant expenses in addressing each category of City misconduct. For example, as to the reliability of the data, the Court held that "[b]y consistently refusing to provide explanations and verification of its reporting, the City has forced Plaintiffs into the position of investigating and monitoring the numbers reported." (Order 57:26-58:1.) Similarly, the City's breaches of the Settlement Agreement have required the Plaintiff to repeatedly raise these issues with the City and the Court at great expense. And the City's lack of cooperation and responsiveness has "unnecessarily and unfairly wasted the resources of the Parties and the Court." (Id. at 57:24–26.)

The City's misconduct, then, is a but-for cause of the fees and expenses incurred by Plaintiff—but for the City's flouting of its obligations under the Agreement and to the

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

Court and Plaintiff, Plaintiff would not have spent hundreds of hours contending with the City on these issues. Goodyear Tire, 581 U.S. at 109 ("The complaining party . . . may recover 'only the portion of his fees that he would not have paid but for' the misconduct.") (citations omitted). Plaintiff seeks "only the fees . . . reasonably incurred during litigation" of the four categories of the City's misconduct. Lake v. Gates, 130 F.4th 1054, 1059 (9th Cir. 2025). The analysis is simple: the City violated the Settlement Agreement, and Plaintiffs are entitled to fees incurred in investigating and proving up those violations. Cap. Pure Assets, Ltd., v. CC Tech. Corp., Case No. 24-cv-00680, 2025 WL 1704975, at *2 (D. Nev. June 17, 2025) ("In this case, the Court found that Counter-Defendants violated the settlement agreement when they refused to make the initial payment of $14,000. Counterclaimant is entitled to fees incurred as a result of that misconduct . . . .") (citation omitted).

### C.    The Attorneys' Fees and Costs Sought Are Reasonable

The evaluation of the amount of fees to which the LA Alliance is entitled "begins with a lodestar figure . . ." Emond v Murphy, Case No. LA CV18-09040, 2019 WL 13039332, at *12 (C.D. Cal. Aug. 27, 2019) (quoting Robbins v. Alibrandi, 127 Cal. App. 4th 438, 448 (2005)); Ketchum v. Moses, 24 Cal. 4th 1122, 1131–32 (2001); Consumer Privacy Cases, 175 Cal. App. 4th 545, 556 (2009). "[T]he lodestar amount is calculated by multiplying "the number of hours **reasonably** expended on the litigation by a **reasonable** hourly rate." Vogel v. Harbor Plaza Ctr., LLC, 893 F.3d 1152, 1160 (9th Cir. 2018) (emphasis in original) (citation omitted). "The question presented by a fee request is whether it is 'fair and reasonable.'" Emond, 2019 WL 13039332, at *12 (quoting Robbins, 127 Cal. App. 4th at 449).

The reasonableness of attorney fees incurred by the LA Alliance is "determined by consideration of, among other things, the number of hours spent on the case, reasonable hourly compensation for the attorney, the novelty and difficulty of the questions involved, the skill displayed in presenting them, and the extent to which the litigation precluded other employment by the attorney[.]" Aetna Life & Cas. Co. v. City of Los Angeles, 170

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

Cal. App. 3d 865, 880–81 (1985). "The district court's inquiry must be limited to determining whether the fees requested by this particular legal team are justified for the particular work performed and the results achieved in this particular case." <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1115 (9th Cir. 2008).

Plaintiff's lodestar figures, based on attorney and paralegal time and expense records, are as follows:

| Attorney | Hours Worked | Hourly Rate | Fee Total |
|---|---|---|---|
| Elizabeth Mitchell | 658.5 | $1,295 | $852,757.50 |
| Matthew Umhofer | 199.8 | $1,295 | $258,741.00 |
| Diane Bang | 47.3 | $1,295 | $61,253.50 |
| Eugene Lim | 31.1 | $1,295 | $40,274.50 |
| Adam Snyder | 5.7 | $1,295 | $7,381.50 |
| **Paralegal** | **Hours Worked** | **Hourly Rate** | **Fee Total** |
| Madeline Matson | 140.8 | $500.00 | $70,400.00 |
| Jon Powell | 96.2 | $500.00 | $48,100.00 |
| Patrick Nitchman | 73.5 | $500.00 | $36,750.00 |
| Jennifer Mitchell | 3.6 | $500.00 | $1,800.00 |
| **Admin** | **Hours Worked** | **Hourly Rate** | **Fee Total** |
| Ingrid Nitchman | 56 | $150.00 | $8,400.00 |
| **Law Clerk** | **Hours Worked** | **Hourly Rate** | **Fee Total** |
| Omid Rahimdel | 46.4 | $150.00 | $6,960.00 |
| **Grand Total** | **1358.90** | | **$1,392,818.00** |

7

### D.    Plaintiff's Hourly Rates Are Reasonable

The lodestar analysis here "requires the district court to determine a reasonable hourly rate for the fee applicant's services." Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1166 (N.D. Cal. 2012). "This determination is made by examining the prevailing market rates in the relevant community charged for similar services by 'lawyers of reasonably comparable skill, experience and reputation.'" Id. (citation omitted). The relevant community is the district in which the case is proceeding. See id. (citing Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir. 1997)). "The fee applicant has the burden of producing satisfactory evidence . . . that the requested rate is in line with those prevailing in the community . . . ." Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987). The fee applicant may provide affidavits from the attorney who worked on the case, as well as "affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 262 (N.D. Cal. 2015).

The LA Alliance's lodestar calculation is based upon a blended hourly rate for partners and associates of $1,295 per hour, and $500 per hour for paralegals. This rate corresponds precisely to the blended hourly rates the City has agreed to pay Defendant's outside counsel—a rate outside counsel discounted from a "standard" rate of nearly $2,500, and a rate that the City clearly believes to be reasonable and appropriate for complex civil litigation in this district. (Declaration of Matthew Donald Umhofer ("Umhofer Decl.") ¶ 10.) Federal courts have determined rates at or above the "discounted" $1,295 amount to be reasonable in complex civil cases like these. Williams v. Berryhill, Case No. EDCV 15-919, 2018 WL 6333695, at *2 (C.D. Cal. Nov. 13, 2018) ("The Court finds Counsel's effective hourly rate of approximately $1,553.36, reasonable under the circumstances.") (citation omitted); Daniel v. Astrue, No. EDCV 04-01188, 2009 WL 1941632, at *2 (C.D. Cal. July 2, 2009) ("Counsel assumed a significant risk of nonpayment inherent in a contingency agreement[.] . . . Although the *de facto* hourly rate of plaintiff's counsel's services amounts to $1,491.25, counsel seeks only

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

approximately 18% of plaintiff's past-due benefits, rather than the 25% to which counsel is entitled under the Agreement."); Coles v. Berryhill, No. EDCV 14-1488-KK, 2018 WL 3104502, at *3 (C.D. Cal. June 21, 2018) ("The Court finds Counsel's effective hourly rate of approximately $1,431.97, id., reasonable under the circumstances."); Palos v. Colvin, Case No. CV 15-04261, 2016 WL 5110243, at *2 (C.D. Cal. Sept. 20, 2016) (approving fees where "the fees sought translate into an hourly rate of $1,546.39 for attorney and paralegal services . . . ."); McEneany v. Comm'r of Soc. Sec., No. No. 21 Civ. 10370, 2024 WL 815984, at *1 (S.D.N.Y. Feb. 27, 2024) ("For the reasons stated in the Report, Plaintiff's counsel is awarded $35,400.00 in attorney's fees under § 406(b), reflecting a de facto hourly rate of approximately $1,500 per hour . . ."); Quinnin v. Colvin, No. 12-CV-01133, 2013 WL 5786988, at *4 (D. Or. Oct. 28, 2013) (approving fees with "a *de facto* hourly rate for attorney time of $1,240 and paralegal time of $620."); CliniComp Int'l, Inc. v. Cerner Corp., Case No. 17-cv-02479, 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023) (finding reasonable undiscounted hourly rates for a partner up to $1,465, for associates up to $805, and for paralegals up to $495 in patent litigation); Orthopaedic Hosp. v. Encore Med., L.P., Case No. 19-cv-00970, 2021 WL 5449041, at *13–15 (S.D. Cal. Nov. 19, 2021) (finding reasonable in a complex, high-stakes patent litigation a Quinn Emanuel partner's billing rate of up to $1,260 and a fifth-year associate hourly rate of up to $1,065, but acknowledging a client discount that worked out to an average hourly rate of $709.63.).

This rate is consistent with the rates charged by Umhofer, Mitchell & King for other litigation matters. (Umhofer Decl. ¶ 13.) In 2025, the firm's standard rate for partners is $1250 per hour, and it currently has matters ranging from $700 (legacy matters) to $1450 per hour for partners. (Id.)

Moreover, the rates are commensurate with the experience of counsel. Matthew Umhofer served as a clerk to two federal judges, was an Assistant United States Attorney, counsel at Skadden, Arps, Slate, Meagher & Flom, an adjunct law professor at Loyola Law School, and has practiced law for nearly 25 years. (Id. ¶ 2.) He has received the

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

California Lawyer Attorney of the Year Award twice, and serves as the president of the Dwight D. Opperman Foundation, named for the former president of the West Publishing Corporation, and coordinates the Edward J. Devitt Distinguished Service to Justice Award. (Id.)

Elizabeth Mitchell is a former Deputy City Attorney for the City of Los Angeles who has practiced law for 18 years, including 15 as a civil rights litigator. (Id. ¶ 3.) She, too, is a recipient of the California Lawyer Attorney of the Year Award,  and has been identified as one of the top 100 lawyers in California and one of the top women lawyers in the state. She regularly litigates complex litigation matters alongside and against large firms like outside counsel for the City. Counsel Diane Bang and Senior Associate Eugene Lim are both former federal judicial clerks who have been practicing for nearly 10 years each. (Id. ¶¶ 4, 5.) All practice regularly in federal court. (Id. ¶¶ 2–5.) The background and experience of counsel for Plaintiff are commensurate with highly compensated counsel in complex civil matters in this district, and a reasonable rate for their services is aligned with the "discounted" rate the City negotiated with its outside counsel.

This case has also required significant time investment by Paul Webster, executive director for LA Alliance, which he does on a part-time basis. (Declaration of Paul Webster ("Webster Decl.") ¶ 2.) Mr. Webster is a highly accomplished subject matter expert on homelessness and related issues. Prior to joining the LA Alliance in 2021, he was a Senior Policy Advisor at the U.S. Department of Housing and Urban Development (HUD) where he specialized in homelessness assistance programs, particularly in the Southern California area. (Webster Decl. ¶ 3.) He is currently a Senior Fellow with the Cicero Institute focusing on homelessness policy, and in the past has worked for the San Diego Regional Chamber of Commerce, Solutions for Change (a San Diego-based homelessness service provider), and for multiple local, state, and federal legislators. (Id.) Mr. Webster's work for LA Alliance typically focuses on policy analysis, advocacy, and community outreach; however, he has had to divert a substantial amount of his limited time to monitoring City compliance and assisting counsel in enforcing the Settlement Agreement,

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

including participating in meetings and testifying in court. His consulting hourly rate is $200 per hour, which is on the low end of what others in his area of expertise charge. (Id. ¶ 4–5.)

Because the rates used by Plaintiff in calculating the lodestar are reasonable to both the City and courts in this Circuit, the fee award should be based on those rates.

### E.     The Hours Incurred Are Reasonable

The fees and costs sought by the LA Alliance stem from its efforts to hold the City accountable under the Settlement Agreement—and the City's persistent efforts to resist accountability. (Umhofer Decl. ¶ 15.) Indeed, the story of the Settlement Agreement since its signing is a story of a City mounting a sustained campaign of obstruction, obfuscation, and outright intentional misconduct aimed at frustrating the purpose of the Settlement Agreement. The City spent the year after the Settlement Agreement was signed stonewalling and affirmatively misleading the LA Alliance on encampment milestones and deadlines in open violation of the agreement, leading to a stipulation under which the City agreed to fund the A&M assessment and pay the LA Alliance's attorneys' fees. (Joint Stip. to Resolve Mot., Apr. 4, 2024, ECF No. 713.) Since that time, the City has continued to breach the Settlement Agreement in a multitude of additional ways, as elucidated in the Court's Order. This City conduct has required Plaintiff to incur fees and costs incurred in policing the City's compliance with the Settlement Agreement since the signing of that stipulation, through the evidentiary hearing and this motion. Those are the hours for which Plaintiff seeks compensation.

Plaintiff's City-policing push involved a substantial amount of work over the past 13 months, including:

    (i)     intensive review and analysis of the City's reports, the Special Master's reports, and the A&M assessment report (draft and final);

    (ii)    frequent communication with the City and the Special Master;

    (iii)   active involvement in the A&M assessment;

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

> (iv)    the drafting and filing of 17 briefs concerning the City's noncompliance with the Settlement Agreement and the Roadmap Agreement;
>
> (v)    attendance at 23 hearings;
>
> (vi)    litigating a seven-day evidentiary hearing; and
>
> (vii)    drafting and filing this attorneys' fees motion.

(Umhofer Decl. ¶ 18.)

Despite the magnitude of the effort, Plaintiff's work was efficient—most of this work was performed by two partners, with modest support from other non-partners and staff. (Id. ¶ 19.) The efficiency contrast between the LA Alliance and the City was on stark display during the evidentiary hearing, which involved two partners appearing on the Plaintiff's side, while the defense featured five partners taking witnesses, assisted by at least two partners, one associate, and two or more deputy city attorneys. (Id.) The reasonableness of Plaintiff's two-attorney effort is difficult to dispute when compared with the City's ten-lawyer endeavor.

### F.    The Court May Also Apply A Multiplier and/or Prospective Fees

Given the difficulty involved in maintaining accountability under the Settlement Agreement, the need for Plaintiff and its counsel to spend far more time monitoring and enforcing the Agreement(s) than anticipated, and the significant work required over the next two years under the Court's order, Plaintiff respectfully suggests the Court consider taking two additional, well-established steps to ensure that Plaintiff and its counsel are fairly compensated for past work and over the remaining years of this case. Specifically, Plaintiff requests that the Court consider (i) a multiplier and (ii) prospective fees.

### 1.  A Multiplier Is Warranted

Part of any lodestar analysis is whether the established fee should be adjusted by a multiplier—a decision committed to the district court's discretion. Stanger v. China Elec. Motor, Inc., 812 F.3d 734, 740 (9th Cir. 2016). This case is eligible for a multiplier, as the Ninth Circuit has blessed multipliers in cases brought under Section 1983. Parsons v.

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

Ryan, 949 F.3d 443, 466 n.14 (9th Cir. 2020); Kelly v. Wengler, 822 F.3d 1085, 1100 (9th Cir. 2016).

Consideration of a multiplier should "focus on the Kerr factors 'that are not already subsumed in the initial lodestar calculation.'" Kelly v. Wengler ("Kelly I"), 7 F. Supp. 3d 1069, 1081 (D. Idaho 2014) (citing Morales v. City of San Rafael, 96 F.3d 359, 363–64 (9th Cir. 1996) opinion amended on denial of reh'g, 108 F.3d 981 (9th Cir. 1997)), aff'd, 822 F.3d 1085 (9th Cir. 2016).[2] Those Kerr factors not already subsumed in the lodestar calculation include: "(5) the customary fee, . . . (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." Kelly 1, 7 F. Supp. 3d at 1081.

In Kelly I, the Court applied a multiplier of 2.0 based on two factors: (i) "Extraordinary Results and Undervaluing Counsel" and (ii) "Risk and Incentives to Obtain Competent Counsel." Id. at 1082–84. The Ninth Circuit affirmed. Kelly v. Wengler ("Kelly II"), 822 F.3d 1085, 1103 (9th Cir. 2016). Those factors support an upward multiplier here.

---

[2] The list of complete Kerr factors are:
(1) the time and labor required,
(2) the novelty and difficulty of the questions involved,
(3) the skill requisite to perform the legal service properly,
(4) the preclusion of other employment by the attorney due to acceptance of the case,
(5) the customary fee,
(6) whether the fee is fixed or contingent,
(7) time limitations imposed by the client or the circumstances,
(8) the amount involved and the results obtained,
(9) the experience, reputation, and ability of the attorneys,
(10) the 'undesirability' of the case,
(11) the nature and length of the professional relationship with the client, and
(12) awards in similar cases.
Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds Whitaker v. SMB Grp., No. 22-55668, 2023 WL 5842311 (9th Cir. 2023).

13

PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES

### a. **Extraordinary Results and Undervaluing Counsel**

As to the "superior performance" factor, this Court may enhance the lodestar figure "when plaintiff's counsel's 'superior performance and commitment of resources' is 'rare' and 'exceptional' as compared to the run-of-the-mill representation in such cases." Kelly II, 822 F.3d at 1102. In Kerr, the Ninth Circuit noted "Plaintiffs' counsel achieved excellent results for their clients under extreme time pressure and with very limited resources. Counsel's lodestar hours do not fully reflect this success because the quality of the work that produced these results is underrepresented in the hourly fee." Kerr, 7 F. Supp. 3d at 1082. The same is true here. The rarity and exceptional nature of this case is undisputed—this case is a first-of-its-kind civil rights case brought not to stop the government from acting (the typical posture of a civil rights case) but to require affirmative action from the government because of its pattern of constitutional violations. And there is not a single homelessness-related case—in any city, in federal or state court—that has resulted in anything near the commitments and accountability measures required by the settlement agreements in this case. Moreover, in a case involving $3 billion worth of financial obligations by the City alone, "the City has forced Plaintiffs into the position of investigating and monitoring the numbers reported" and overseeing the City's compliance with obligations to create thousands of beds and reduce thousands of encampments. (Order 57:26–58:1.) This case has been, and continues to be, a gargantuan and trailblazing undertaking for the Plaintiff and its counsel.

For that reason, this Court has repeatedly commented upon and praised the efforts of Plaintiff's counsel in this case:

- "It should not be the burden of private citizens to sue their local elected representatives as [LA] Alliance has done in this case. Only in times of desperation, anger, hopelessness, do lawsuits strike or come forth such as this case, and this case has expanded from what I viewed initially as a downtown, Skid Row, geographical lawsuit that now is a citywide lawsuit and a countywide lawsuit. And, therefore, this Court's perspective has

14

changed along the way. If I were to believe it was born out of desperation and fury from decades of neglect – it's a beautiful vibrant city, and it's been crying out for relief for citizens for a long time." (Hr'g Tr. 10:23–11:10, Nov. 17, 2022, ECF No. 505.)

- "The question of the government accountability was first raised -- and by the way, for Mr. Umhofer and for you, Ms. Mitchell, I have nothing but praise. In fact, in bringing this lawsuit, it did cause a breaking of absolute inertia in the city. And at some point, I don't think you bargained -- and I'm joking with you -- to go citywide and now countywide. I don't know that that was ever your original -- but in a sense, you've acted as a buffer, and the County has been fortunate and so is the City, because this has become the center of the litigation including Venice Homeowners who came into court, issues involving recreational trailers." (Hr'g Tr. 26:1–12, Apr. 21, 2023, ECF No. 540.)

- "[W]e wouldn't be here but for the Alliance calling this to our attention, quite frankly, and literally in a small law firm acting as a monitor." (Hr'g Tr, 34:23–25, Mar. 9, 2024, ECF No. 681.)

- "You need to be compensated for this time. You're a small law firm. You've probably given up all future business with the City. Most of the large law firms are never going to enter into this because in good faith, they're intertwined with the City." (Hr'g Tr. 22:10–14, ECF No. 692.)

- "The second general area is the [complaint about the] $1,800,000 [fee agreement] is ridiculous. That is a low figure for the services you've performed, and I'll put that on the record. And, Mr. Miller, just produce your paycheck. And I'm going to say that to you bluntly. When I hear that argument, I'm affronted by it, frankly. Just put on the table your contract with the County, along with all of your associates. So, as far as the $1,800,000, happy to accept that number. If that's the agreement between

15

you and the City, I have no concern and no complaint." (Hr'g Tr. 59:23–60:7, June 9, 2022, ECF No. 441.)

- "Look, it's not fair. If I turn down this agreement, you and your firm are grossly underpaid. Let me put that on the record. I won't go further with that, but you are grossly underpaid from moving from a downtown to a citywide lawsuit, and it cannot be your responsibility to take on future pro bono efforts . . . ." (Hr'g Tr. 17:15–21, Nov. 17, 2022, ECF No. 505.)

These observations underscore the exceptional nature of this case—and the exceptional effort it has required of counsel for the LA Alliance.

In the face of the City's pattern of "[o]bfuscation and delay"—outmanned and outgunned by the City's powerful array of officials, in-house attorneys, and now outside counsel—"Plaintiffs have diligently and persistently raised important issues to the Court's attention," ensuring that the City is held accountable to the groundbreaking settlement reached in this case. (Order 58:6, 59:8–9.) Since the City agreed to the payment of attorneys' fees in April 2024, Plaintiff has prevailed on issue after issue, proving that the City is using the wrong definition of encampments, establishing that the City is violating the Settlement Agreement in multiple ways, exposing the unreliability of the City's numbers and data, and forcing the City to face up to its failures on the homelessness crisis.

Here, as in Kelly I, evidence supports "a multiplier appropriate to reasonably compensate counsel for extraordinary performance yielding extraordinary results." 7 F. Supp. 3d at 1083. Of note, the City's own arrangement with outside counsel confirms that a reasonable rate that is not discounted would exceed the $1,295 rate by more than $1,000 per hour. (Umhofer Decl. ¶ 10.) This factor supports a multiplier.

### b. Risk and Incentives for Competent Counsel

A district court may enhance a fee award when "payment for attorney's services is contingent upon success and the attorney bears the risk of nonpayment in case of failure." Bernardi v. Yeutter, 951 F.2d 971, 975 (9th Cir. 1991) (citation omitted). This is precisely such a case.

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

The hurdles and headwinds presented by this case illustrate the risks inherent in these types of cases and challenge of—and the need for—"attracting competent counsel" to take similar cases. This case has required counsel for LA Alliance to devote millions of dollars of time to a novel, literally unprecedented case with no guarantee of success or compensation.

Professor Laurie Levenson makes this point precisely:

- "I am aware of no other case like this one in the nation." (Declaration of Laurie Levenson, ¶ 4.)
- "The risk assumed in this by the attorneys for the LA Alliance was elevated in comparison to typical civil rights cases." (Id. ¶ 6.)
- The case involved "affirmative remedies—that is, to compel municipal entities and officials to take affirmative action—in a manner that is unusual for civil rights cases, which often seek to enjoin government action (or compensate for its consequences)." (Id. ¶ 4.)
- "[M]ost law firms would hesitate to bring such a case, and those that did would be unlikely to incur the cost of monitoring compliance with a settlement agreement for years without compensation." (Id. ¶ 9.)
- "Complex civil rights cases seeking injunctive relief tend to be complex, time-consuming, and expensive to litigate. Even if a plaintiff prevails, most attorneys would recover considerably less in fees than they would normally charge a client, and will likely not recover all their expenses. Thus, there is a substantial disincentive to taking these cases, and they are not attractive to attorneys in private practice." (Id. ¶ 10–11.)
- "It would not be economically feasible, in my opinion, for an attorney to handle plaintiffs' civil rights cases on a contingency fee basis if the potential recovery for money damages was not significant." (Id. ¶ 12.)

Indeed, Don Steier—attorney and chair of the board of directors of the LA Alliance who hired its counsel—confirms how hard it was to find a law firm willing to take on the

17

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

challenge of litigating this case. (Declaration of Donald Steier, ¶ 4 ("Over the course of several years prior to 2019, I and a group of other downtown stakeholders, residents, community members, and service providers sought legal representation for an action against the City and County on the homelessness issue, but could not find a firm willing to take the case due to the significant risk involved and real or potential conflicts with the City and County.").)

Indeed, the Ninth Circuit's observations in awarding a multiplier in Kelly apply with equal force here: "Despite these constraints, Plaintiffs' counsel uncovered substantial evidence of noncompliance with the settlement agreement. Based on this evidence, they obtained a contempt finding and secured significant remedies for their clients." Kelly II, 822 F.3d at 1103. Similarly, in this case as in Kelly, "Plaintiffs' counsel 'were likely the only attorneys willing to accept' Plaintiffs' case." Id. at 1104.

The foregoing declarations "make clear that plaintiffs seeking counsel for injunctive relief lawsuits face significant difficulty in finding such counsel, and that current counsel were likely the only attorneys willing to accept their case." Kelly I, 7 F. Supp. 3d. at 1084. This kind of innovative civil rights litigation is burdensome and often thankless, and a multiplier serves to incentivize laudable work like this.

In addition, Umhofer, Mitchell & King had to expend attorney time and resources on this matter that could have been devoted to other work, and were damaged by the City's misconduct through the amount of time required to monitor and address it. Because of the high demand for the firm's services, the hours devoted to this case are hours that would have otherwise been devoted to hourly matters for which the firm is compensated monthly. (Umhofer Decl. ¶ 14.) Thus, an hour spent on this case costs Umhofer, Mitchell & King an average of $1,200–$1,450 per hour in partner time—with no guarantee that the time will be compensated, as the LA Alliance is unable to pay Umhofer, Mitchell & King for its work on this matter. (Id.) The risk and costs of Umhofer, Mitchell & King's continued efforts were increased because the amount of work triggered by the City's malfeasance was unexpected. While the firm anticipated some monitoring of the City's

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

compliance with the Settlement Agreement, it did not anticipate needing to devote more than $1 million per year in attorney time since the Settlement Agreement was reached. (Id. ¶ 15.) Yet, the City's conduct required such efforts. The extraordinary and incorrect facts and arguments the City put forward in defending its Settlement Agreement violations have required additional hours from Umhofer, Mitchell & King that could have been devoted to other matters. (Id. ¶ 14.) This has harmed the firm financially, and yet the firm has remained committed to the work and ensuring the City's compliance with its obligations. (Id.) Likewise, Mr. Webster had to commit substantial time to monitoring and enforcing the SA, limiting the time he was able to spend on policy analysis, advocacy, and community engagement which reduced the Alliance's reach and influence on these issues. (Webster Decl. ¶ 4.)

In light of the foregoing, should the Court grant a multiplier, Plaintiff respectfully requests a multiplier of 2.5. This is within the range of multipliers commonly applied by courts and accurately reflects the unique challenge presented by this case and the City's pattern of misconduct, and the unusual success of Plaintiff in pursuing this case and monitoring the City's compliance with the Settlement Agreement. See Ochinero v. Ladera Lending, Inc., Case No. SACV 19-1136, 2021 WL 4460334, at *8 (C.D. Cal. July 19, 2021) ("The Ninth Circuit has noted that multipliers range from 1.0-4.0 and a 'bare majority' fall within the range of 1.5-3.0.") (citing Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.6 (9th Cir. 2002)); Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation.").

### 2. **Prospective Attorneys' Fees May Also Be Awarded**

If anything is clear since the Settlement Agreement was consummated, it is that it is not self-executing. The Court's Order also makes it clear the next two years will be as busy for Plaintiff as the last two, if not more so. Under the terms of the Order (see pp. 48-50, 56-57), Plaintiff will have to:

(i)    analyze and respond to a new City bed plan, milestones and deadlines;

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

(ii)    participate in a monitor selection process;

(iii)    engage multiple times a month with the monitor and special master re: City compliance;

(iv)    review and probe quarterly reports;

(v)    review, analyze, and take action on reports by the special master and the monitor;

(vi)    independently verify selected aspects of City reporting;

(vii)    assess and address bed creation explanations;

(viii)    investigate and analyze encampment reduction efforts;

(ix)    review and analyze past bed creation efforts;

(x)    attend in-person hearings quarterly;

(xi)    conduct independent data analysis concerning City numbers;

(xii)    meet and confer with the City over any disputes and attempt to resolve them; and

(xiii)    litigate disputes that cannot be resolved.

This is a heavy lift for any law firm going forward. The Court's Order contemplates more scrutiny on the City, not less, and while the addition of an independent monitor is significant, it is likely to create more work for the Plaintiff, not less. And because "seeking accountability with the City of Los Angeles is like chasing the wind," (Order at 39:16), if the past of this case is prologue, Plaintiff will be required to overcome City opacity, resistance, and gamesmanship at every turn. This is time-consuming, expensive work. The City can minimize it through compliance, but the City has forfeited any presumption of cooperation or compliance through its conduct, and Plaintiff should no longer be expected to be the City's no-cost accountability buddy.

Simply put, the inevitably substantial work the LA Alliance will perform to police compliance with the Settlement Agreement and the Court's Order should be eligible for reimbursement as part of this Court's sanction order. Courts have considered and awarded prospective attorneys' fees in other cases. <u>See, e.g. Lindy Bros. Builders, Inc. v. Am.</u>

Radiator & Stand. Sanitary Corp., 540 F.2d 102, 121 (3d Cir. 1976) (declining to overturn district court's flat-fee award "for future time" as estimated to "wind up settlement administration"). "In fact, fees have been awarded in several cases where the consent decree imposes monitoring duties on another entity." Alliance to End Repression v. City of Chicago, No. 74 C 3268, 1994 WL 86690, at *4 (N.D. Ill. Mar. 15, 1994) (awarding plaintiffs attorneys' fees where the agreed order, judgment, and decree imposed duties on a third-party entity); see e.g., Keith v. Volpe, 833 F.2d 850, 858 (9th Cir. 1987) (finding that the consent decree's creation of other monitoring entities did not preclude an award of attorney's fees because counsel's services were not duplicative); Brewster v. Dukakis, 786 F.2d 16, 18–19 (1st Cir. 1986) (allowing an award of fees where the consent decree created a defendant-funded monitor because the reduced fees seemed reasonable, counsel's activities were not duplicative, and defendants had no authority supporting their position that fees were unavailable.).

A prospective fees procedure is easily arranged: the Court can order Plaintiff to submit monthly or quarterly bills reflecting their hourly work to the Independent Monitor for review, approval, and prompt payment by the City, at the approved rate. If this request is granted, Plaintiff's counsel will agree not to seek a multiplier for work through the conclusion of the Settlement Agreement.

## III.    CONCLUSION

The Court's Order lays bare the City's efforts to frustrate the Settlement Agreement in this case and confirms that Plaintiff prevailed on its claims of breach. Neither the LA Alliance nor its counsel should have to bear the past and future burden of the City's intransigence.

Because Plaintiff is the prevailing party, and because the City's conduct warrants sanctions in the form of the payment of Plaintiff's attorneys' fees and costs, the LA Alliance is entitled to an award of fees and costs for the time it has already expended on these issues, for a total of $1,392,818.00 in attorneys' fees and $44,257.21 in costs. Given the significant burden on Plaintiff, and the significance of this case, the Court should also

21

consider a multiplier and prospective fees. These requests are no windfall for Plaintiff—they are restorative. Plaintiff has earned this result—and sadly, so has the City.

Dated: July 25, 2025              Respectfully submitted,

                                  */s/ Matthew Donald Umhofer*
                                  UMHOFER, MITCHELL & KING, LLP
                                  Matthew Donald Umhofer
                                  Elizabeth A. Mitchell

                                  *Attorneys for Plaintiffs*

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 22 pages, which complies with the Court's mandatory page limit.

Dated: July 25, 2025   Respectfully submitted,

*/s/ Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

*Attorneys for Plaintiffs*

*PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*