UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
elizabeth@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*, | Case No. 2:20-CV-02291-DOC-KES |
| Plaintiffs, | Assigned to Judge David O. Carter |
| v. | |
| CITY OF LOS ANGELES, *et al.*, | **DECLARATION OF MATTHEW DONALD UMHOFER IN SUPPORT OF PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES** |
| Defendants. | |
| | Before:    Hon. David O. Carter |
| | Courtroom:  1 |

*DECLARATION OF MATTHEW DONALD UMHOFER ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

## DECLARATION OF MATTHEW DONALD UMHOFER

I, Matthew Donald Umhofer, declare as follows:

1. I am an attorney duly licensed to practice before this Court. I am the managing partner at the law firm Umhofer, Mitchell & King LLP.

2. I have over twenty years of litigation experience and am a former Assistant United States Attorney and former counsel at Skadden, Arps, Slate, Meagher & Flom. I clerked for the Honorable Lowell A. Reed, Jr., United States District Judge for the Eastern District of Pennsylvania, and the Honorable Ferdinand F. Fernandez of the United States Court of Appeals for the Ninth Circuit. I received my law degree from Georgetown University and graduated *cum laude*. I served as an editor on the Georgetown Law Journal. I am the president of the Dwight D. Opperman Foundation, which administers the Edward J. Devitt Award for Distinguished Service to Justice, a judicial honor bestowed by a panel of federal judges each year at the United States Supreme Court. I received the California Lawyer Attorney of the Year Award on two occasions, in 2012 and 2024. `

3. My partner, Elizabeth A. Mitchell, served as a deputy city attorney for the City of Los Angeles for a decade, including 15 years litigating civil rights cases. She also received the California Lawyer Attorney of the Year Award in 2024, and has been identified as one of the top 100 lawyers in California and one of the top women lawyers in the state. She regularly litigates complex litigation matters alongside and against large firms like outside counsel for the City.

4. Diane Bang is counsel at the firm and has been practicing law for fourteen years. Ms. Bang received her law degree from Loyola Law School ( where she was Chief Research Editor of the Loyola Law Review) and is a former judicial law clerk to the Honorable S. James Otero. A three time Super Lawyer honoree, her legal experience is extensive, and just last year, she was trial counsel for the UMK team that won a $21 million award in a federal civil jury trial.

5.     Eugene Lim is a senior associate at the firm and has seven years of experience. Mr. Lim received his law degree from UCLA School of Law. He clerked for the Honorable Patrick J. Walsh and the Honorable Virginia A. Phillips. Eugene litigates complex civil and criminal cases, and has also been recognized by Super Lawyers as Rising Star.

6.     Attached hereto as **Exhibit A** is a true and correct summary of billing in this matter since April 2024, broken down by biller.

7.     Attached hereto as **Exhibit B** is a true and correct spreadsheet reflecting the billing of individuals at my firm on the LA Alliance matter since April 2024. Redactions have been made to privileged material. Upon request, we can lodge unredacted versions with the Court for *in camera* review.

8.     Attached hereto as **Exhibit C** is a true and correct spreadsheet reflecting the costs incurred by my firm on the LA Alliance matter since April 2024.

9.     Attached hereto as **Exhibit D** is a true and correct spreadsheet reflecting the time devoted to this litigation by the Executive Director of the LA Alliance, Paul Webster, since April 2024.

10.     Attached hereto as **Exhibit E** is a true and correct copy of the Agreement for Professional Legal Services Between the City of Los Angeles and Gibson, Dunn & Crutcher LLP.

11.     Attached hereto as **Exhibit F** is a survey of hourly rates for law firms, published in Major, Lindsey & Africa's 2024 Partner Compensation Survey.

12.     The LA Alliance is a nonprofit entity with two part-time staff, no income stream, and minimal donations. The Executive Director of the LA Alliance receives minimal compensation and has donated over 350 hours of uncompensated time to this matter.

13.      The organization has been unable to compensate Umhofer, Mitchell & King for its work on this matter at any time since its founding in 2023.

*DECLARATION OF MATTHEW DONALD UMHOFER ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

14.    Since April 2024, Umhofer, Mitchell & King has devoted a substantial amount of time and resources to the LA Alliance case. While attorneys' fees and costs have been paid previously under agreements reached in this case—most recently in 2024—Umhofer, Mitchell & King has been vastly undercompensated for the amount of time it has devoted to this matter.

15.    The firm consists of 11 lawyers and has a busy litigation practice that relies largely on hourly billable matters. In 2025, our standard rate for partners is $1,250 per hour. We currently have matters ranging from $700 (legacy matters) to $1,450 per hour for partners.

16.    Because of the high demand for our services, the hours devoted to the LA Alliance case are hours that would otherwise be devoted to hourly matters for which we are compensated monthly. Thus, an hour spent on the LA Alliance case—which is not compensated on an hourly basis—deprives our firm of an average of $1,200–$1,450 per hour.

17.    While I anticipated some monitoring of the City's compliance with the Settlement Agreement, I did not anticipate needing to devote $1 million per year in attorney hours to this matter after the Settlement Agreement was reached. Yet the City's noncompliance with the Settlement Agreement has required us to spend those hours ensuring that commitments in the Settlement Agreement are met.

18.    Over the past two years, the work required on this case has placed financial strain on my firm, in part because it has required the firm to decline other hourly work in light of the extensive amount of time required by the LA Alliance matter, to which we have remained committed despite the cost.

19.    The litigation tactics of the City—featuring extraordinary and incorrect facts and arguments—have required additional hours from this firm that could have been devoted to other matters. The firm has thus been damaged by the City in the amount of the reasonable attorney hourly rate of $1,295, multiplied by the number of hours spent

3

on this matter since April 2024—the last time the City paid attorneys' fees arising out of its violation of the Settlement Agreement—and $500 per hour for paralegals.

20. I have reviewed the billing records for this case from April 2024 to the present, and I have taken care to remove any billing unrelated to monitoring and litigating the City's compliance with the Settlement Agreement. The time spent by the attorneys, paralegals, and assistants in prosecuting this action, preparing for trial, and trying the case was necessary and appropriate. The billing records reflect and include time spent on the following tasks:

(i) Intensive review and analysis of the City's reports, the Special Master's reports, and the A&M assessment report (draft and final);

(ii) frequent communication with the City and the Special Master;

(iii) active involvement in the A&M assessment;

(iv) the drafting and filing of 17 briefs concerning the City's noncompliance with the Settlement Agreement and the Roadmap Agreement;

(v) attendance at 23 hearings;

(vi) litigating a seven-day evidentiary hearing; and

(vii) drafting and filing this attorneys' fees motion.

21. Most of this work was performed by two partners, me and Ms. Mitchell, with robust paralegal support, and modest support from Ms. Bang and Mr. Lim. At the seven-day evidentiary hearing, Ms. Mitchell and I were the only attorneys who appeared on behalf of the LA Alliance. By contrast, five partners, assisted by at least two associates and two deputy city attorneys, appeared on behalf of the City.

*DECLARATION OF MATTHEW DONALD UMHOFER ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on July 25, 2025 at Los Angeles, California.

                                        /s/ Matthew Donald Umhofer
                                        Matthew Donald Umhofer

*DECLARATION OF MATTHEW DONALD UMHOFER ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM RE: ATTORNEYS' FEES*

# Exhibit A

| Name | Title | Rate Billed | Total Amount Billed | Total Time Billed |
|---|---|---|---|---|
| Elizabeth Mitchell | Partner | $1,295.00 | $852,757.50 | 658.5 |
| Matthew Umhofer | Partner | $1,295.00 | $258,741.00 | 199.8 |
| Diane Bang | Counsel | $1,295.00 | $61,253.50 | 47.3 |
| Eugene Lim | Associate | $1,295.00 | $40,274.50 | 31.1 |
| Adam Snyder | Associate | $1,295.00 | $7,381.50 | 5.7 |
| Madeline Matson | Paralegal | $500.00 | $70,400.00 | 140.8 |
| Jon Powell | Paralegal | $500.00 | $48,100.00 | 96.2 |
| Patrick Nitchman | Paralegal | $500.00 | $36,750.00 | 73.5 |
| Jennifer Mitchell | Paralegal | $500.00 | $1,800.00 | 3.6 |
| Ingrid Nitchman | Admin | $150.00 | $8,400.00 | 56 |
| Omid Rahimdel | Law Clerk | $150.00 | $6,960.00 | 46.4 |
| **Grand Total** | | | $1,392,818.00 | 1,358.90 |

# Exhibit B

| Date | Service Item | Time | Description | Rate | Total |
|---|---|---|---|---|---|
| 05/01/2024 | Elizabeth Mitchell | 1 | Review status reports | $1,295.00 | $1,295.00 |
| 05/01/2024 | Matthew Umhofer | 2 | Review documents and prep for hearing, strategize re: same | $1,295.00 | $2,590.00 |
| 05/02/2024 | Elizabeth Mitchell | 0.7 | Draft and circulate agenda for upcoming meeting | $1,295.00 | $906.50 |
| 05/02/2024 | Elizabeth Mitchell | 4 | Travel to/from, attend pre-hearing meeting and hearing | $1,295.00 | $5,180.00 |
| 05/02/2024 | Elizabeth Mitchell | 0.9 | Calls with MR, Paul Webster, Michele Martinez, Matt Umhofer re ongoing City issues | $1,295.00 | $1,165.50 |
| 05/02/2024 | Matthew Umhofer | 0.2 | Call with E. Mitchell | $1,295.00 | $259.00 |
| 05/03/2024 | Elizabeth Mitchell | 0.4 | Calls with M. Martinez and T. Campbell re audit | $1,295.00 | $518.00 |
| 05/06/2024 | Madeline Matson | 0.1 | Review civil minutes to determine and circulate relevant materials with attorney team | $500.00 | $50.00 |
| 05/06/2024 | Elizabeth Mitchell | 0.5 | Communications re audit-related information | $1,295.00 | $647.50 |
| 05/08/2024 | Elizabeth Mitchell | 0.5 | Review P. Webster comments re county report | $1,295.00 | $647.50 |
| 05/10/2024 | Elizabeth Mitchell | 0.4 | Review and edit strategic communications | $1,295.00 | $518.00 |
| 05/13/2024 | Diane Bang | 0.3 | Review Comments to LA County's Report for filing | $1,295.00 | $388.50 |
| 05/24/2024 | Elizabeth Mitchell | 0.7 | Confer re audit re witness interviews | $1,295.00 | $906.50 |
| 05/28/2024 | Elizabeth Mitchell | 0.5 | Communications with team re city settlement enforcement | $1,295.00 | $647.50 |
| 05/28/2024 | Matthew Umhofer | 0.4 | Communications with team re: city settlement | $1,295.00 | $518.00 |
| 05/29/2024 | Elizabeth Mitchell | 1 | Communications with team and contacts re HMIS documentation | $1,295.00 | $1,295.00 |
| 05/31/2024 | Elizabeth Mitchell | 1.2 | Emails with audit team re status and next steps | $1,295.00 | $1,554.00 |
| 05/31/2024 | Matthew Umhofer | 1.2 | Review docs and strategize re: audit issues | $1,295.00 | $1,554.00 |
| 06/03/2024 | Madeline Matson | 0.3 | Review civil minutes and associated documents to determine and circulate relevant materials with attorney team. | $500.00 | $150.00 |
| 06/03/2024 | Elizabeth Mitchell | 0.5 | Review audit-related data requests and interview questions | $1,295.00 | $647.50 |
| 06/03/2024 | Elizabeth Mitchell | 0.6 | Calls with C. B. and D. Steier re ongoing city issues | $1,295.00 | $777.00 |
| 06/03/2024 | Matthew Umhofer | 1.5 | Review documents and strategize re: audit | $1,295.00 | $1,942.50 |
| 06/04/2024 | Madeline Matson | 0.2 | Review civil minutes to determine and circulate relevant materials with attorney team. | $500.00 | $100.00 |
| 06/04/2024 | Elizabeth Mitchell | 1.2 | Meeting with Audit working group | $1,295.00 | $1,554.00 |
| 06/05/2024 | Elizabeth Mitchell | 0.5 | Review comments re A&M assessment | $1,295.00 | $647.50 |
| 06/05/2024 | Elizabeth Mitchell | 1.5 | Participate in Audit committee meeting; debrief re same | $1,295.00 | $1,942.50 |
| 06/05/2024 | Elizabeth Mitchell | 1.6 | Prep for Hearing | $1,295.00 | $2,072.00 |
| 06/05/2024 | Elizabeth Mitchell | 0.5 | Call with P. Webster re status and strategy | $1,295.00 | $647.50 |
| 06/05/2024 | Matthew Umhofer | 1.4 | Review documents and prep for hearing | $1,295.00 | $1,813.00 |
| 06/06/2024 | Madeline Matson | 0.3 | Review minutes of status conference to determine and circulate relevant material with attorney team. | $500.00 | $150.00 |
| 06/06/2024 | Elizabeth Mitchell | 9 | Travel to/from, attending hearing | $1,295.00 | $11,655.00 |
| 06/10/2024 | Elizabeth Mitchell | 1 | Prep for and attend City meeting | $1,295.00 | $1,295.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 06/10/2024 | Matthew Umhofer | 0.7 | Review document and communications re: city meeting | $1,295.00 | $906.50 |
| 06/11/2024 | Elizabeth Mitchell | 0.3 | Communications re audit committee | $1,295.00 | $388.50 |
| 06/13/2024 | Jon Powell | 3 | Prepare a chart in excel ████████████████ ███████, deliver to E. Mitchell via email for review and discussion | $500.00 | $1,500.00 |
| 06/13/2024 | Elizabeth Mitchell | 0.5 | Review audit information and communications with audit team | $1,295.00 | $647.50 |
| 06/18/2024 | Matthew Umhofer | 0.8 | Communications re: audit, review documents re: same | $1,295.00 | $1,036.00 |
| 06/19/2024 | Elizabeth Mitchell | 0.5 | Review data and strategize re audit issues | $1,295.00 | $647.50 |
| 06/20/2024 | Madeline Matson | 0.3 | Review related case order to determine trial related dates and deadlines to circulate with E. Mitchell. | $500.00 | $150.00 |
| 06/21/2024 | Elizabeth Mitchell | 0.4 | Advise ████████████████████████ | $1,295.00 | $518.00 |
| 06/21/2024 | Elizabeth Mitchell | 0.9 | Review and advise re strategic communications | $1,295.00 | $1,165.50 |
| 06/23/2024 | Elizabeth Mitchell | 3.5 | Skid Row trip | $1,295.00 | $4,532.50 |
| 06/25/2024 | Madeline Matson | 0.3 | Prepare combined hearing transcript for P. Webster. | $500.00 | $150.00 |
| 06/25/2024 | Elizabeth Mitchell | 0.5 | Call with P. Webster re status and strategy | $1,295.00 | $647.50 |
| 06/26/2024 | Madeline Matson | 0.3 | Review order re judge and SMs to determine and circulate relevant materials with attorney team. | $500.00 | $150.00 |
| 06/26/2024 | Elizabeth Mitchell | 0.3 | Call with M. Martinez re status | $1,295.00 | $388.50 |
| 06/26/2024 | Elizabeth Mitchell | 0.5 | Advise re white paper re settlement progress | $1,295.00 | $647.50 |
| 06/27/2024 | Madeline Matson | 0.2 | Review order setting 6/28 hearing to determine and circulate relevant materials with attorney team. | $500.00 | $100.00 |
| 06/27/2024 | Elizabeth Mitchell | 1.2 | Audit interview strategy discussion | $1,295.00 | $1,554.00 |
| 06/28/2024 | Elizabeth Mitchell | 0.5 | Communications re audit | $1,295.00 | $647.50 |
| 07/01/2024 | Elizabeth Mitchell | 1.5 | Meeting with A&M re audit | $1,295.00 | $1,942.50 |
| 07/01/2024 | Elizabeth Mitchell | 0.5 | Advise re strategy | $1,295.00 | $647.50 |
| 07/01/2024 | Elizabeth Mitchell | 0.7 | Communications re audit | $1,295.00 | $906.50 |
| 07/01/2024 | Matthew Umhofer | 1.1 | Communications and review documents re: audit | $1,295.00 | $1,424.50 |
| 07/03/2024 | Madeline Matson | 0.6 | Prepare updated combined transcript document and deliver to E. Mitchell and P. Webster. | $500.00 | $300.00 |
| 07/08/2024 | Madeline Matson | 0.6 | Prep for and zoom with P. Webster to troubleshoot combined transcript document. | $500.00 | $300.00 |
| 07/09/2024 | Elizabeth Mitchell | 3 | Edit juice white paper re City housing | $1,295.00 | $3,885.00 |
| 07/09/2024 | Elizabeth Mitchell | 0.3 | Call with P. Webster re status and strategy | $1,295.00 | $388.50 |
| 07/10/2024 | Elizabeth Mitchell | 0.4 | Review security video; strategize re same | $1,295.00 | $518.00 |
| 07/11/2024 | Elizabeth Mitchell | 2.5 | Meet with city re agreement; meeting with team re strategy prep re same | $1,295.00 | $3,237.50 |

| 07/15/2024 | Elizabeth Mitchell | 0.8 | Review Safe and Clean Streets Initiative; calls with MM and P. Webster re same | $1,295.00 | $1,036.00 |
|---|---|---|---|---|---|
| 07/16/2024 | Elizabeth Mitchell | 0.2 | Call with P. Webster re status and strategy | $1,295.00 | $259.00 |
| 07/22/2024 | Jon Powell | 1 | Update City of LA tracking chart based on the newest quarterly report | $500.00 | $500.00 |
| 07/22/2024 | Elizabeth Mitchell | 0.7 | Call with E. Solivan re San Jose housing; research re same | $1,295.00 | $906.50 |
| 07/23/2024 | Elizabeth Mitchell | 1.5 | Research and synthesize ongoing oversight issues | $1,295.00 | $1,942.50 |
| 07/23/2024 | Elizabeth Mitchell | 0.9 | Call with D. Conway re status and strategy | $1,295.00 | $1,165.50 |
| 07/23/2024 | Matthew Umhofer | 0.9 | Review documents and strategize re: city accountability | $1,295.00 | $1,165.50 |
| 07/24/2024 | Diane Bang | 0.7 | Call E. Mitchell re case background; review relevant materials for upcoming listening session | $1,295.00 | $906.50 |
| 07/24/2024 | Elizabeth Mitchell | 0.5 | Call with D. Bang re status and strategy | $1,295.00 | $647.50 |
| 07/25/2024 | Diane Bang | 0.5 | Review settlement agreements | $1,295.00 | $647.50 |
| 07/26/2024 | Elizabeth Mitchell | 0.3 | Call with P. Webster re status and strategy | $1,295.00 | $388.50 |
| 07/29/2024 | Diane Bang | 2.5 | Attend listening session | $1,295.00 | $3,237.50 |
| 07/30/2024 | Elizabeth Mitchell | 0.5 | Call with M. Umhofer re LA Alliance debrief; communications with team re same | $1,295.00 | $647.50 |
| 07/30/2024 | Matthew Umhofer | 0.6 | Analyze issues re: city compliance | $1,295.00 | $777.00 |
| 07/30/2024 | Matthew Umhofer | 0.7 | Call with E. Mitchell re: status update | $1,295.00 | $906.50 |
| 08/02/2024 | Elizabeth Mitchell | 1 | Review dockets | $1,295.00 | $1,295.00 |
| 08/07/2024 | Elizabeth Mitchell | 0.3 | Strategic communications re city lack of progress | $1,295.00 | $388.50 |
| 08/07/2024 | Elizabeth Mitchell | 0.7 | Strategize re ██████████████████ | $1,295.00 | $906.50 |
| 08/07/2024 | Elizabeth Mitchell | 1 | Housing and Homelessness Committee | $1,295.00 | $1,295.00 |
| 08/09/2024 | Elizabeth Mitchell | 1.5 | Strategize re ██████████ | $1,295.00 | $1,942.50 |
| 08/09/2024 | Elizabeth Mitchell | 0.8 | Calls with D. Conway and P. Webster re status and strategy | $1,295.00 | $1,036.00 |
| 08/13/2024 | Jon Powell | 2.5 | Review and analyze the City's most recent status report and prepare ███████████████████████████████ | $500.00 | $1,250.00 |
| 08/13/2024 | Diane Bang | 1.8 | Confer with E. Mitchell re demand letter to the City; review documents related to milestones and goals; draft demand letter | $1,295.00 | $2,331.00 |
| 08/13/2024 | Elizabeth Mitchell | 2.6 | Review reports and compare to settlement agreements; research ██████; assign demand letter; prep for and attend call with City | $1,295.00 | $3,367.00 |
| 08/13/2024 | Elizabeth Mitchell | 0.7 | Prep for and call with City re county issues | $1,295.00 | $906.50 |
| 08/15/2024 | Elizabeth Mitchell | 1.5 | Strategize re ██████████ | $1,295.00 | $1,942.50 |
| 08/15/2024 | Elizabeth Mitchell | 1.6 | Edit draft demand letter | $1,295.00 | $2,072.00 |
| 08/16/2024 | Madeline Matson | 0.3 | Prepare and deliver demand letter to City of LA | $500.00 | $150.00 |

| 08/19/2024 | Elizabeth Mitchell | 0.5 | Communications with City | $1,295.00 | $647.50 |
|---|---|---|---|---|---|
| 08/19/2024 | Matthew Umhofer | 1.3 | Review city status reports and analyze issues re: same | $1,295.00 | $1,683.50 |
| 08/20/2024 | Elizabeth Mitchell | 0.5 | Communications with special masters | $1,295.00 | $647.50 |
| 08/21/2024 | Elizabeth Mitchell | 0.8 | Review and comment re ██████████████████████; strategize re same | $1,295.00 | $1,036.00 |
| 08/21/2024 | Elizabeth Mitchell | 1.5 | Prep for and attend meet-and-confer with city; communications with special master re same | $1,295.00 | $1,942.50 |
| 08/22/2024 | Jon Powell | 0.8 | Reveiw and analyze the city's status report for the fourth quarter, enter details into our chart of progress, deliver results of the review to team via email for review and discussion | $500.00 | $400.00 |
| 08/22/2024 | Madeline Matson | 0.2 | Review order regarding data requests; deliver materials to attorney team | $500.00 | $100.00 |
| 08/22/2024 | Diane Bang | 0.2 | Review minute order re data requests; review correspondence re dispute resolution | $1,295.00 | $259.00 |
| 08/22/2024 | Elizabeth Mitchell | 0.3 | Communications re dispute resolution | $1,295.00 | $388.50 |
| 08/22/2024 | Matthew Umhofer | 0.6 | Analyze issues re: meet and confer with city | $1,295.00 | $777.00 |
| 08/23/2024 | Elizabeth Mitchell | 0.5 | Call with D. Conway re status and strategy | $1,295.00 | $647.50 |
| 08/26/2024 | Jon Powell | 0.5 | Pull status reports for M. Umhofer and deliver to him via email | $500.00 | $250.00 |
| 08/26/2024 | Elizabeth Mitchell | 1 | Draft prep email with relevant docs in preparation for the meet and confer with city and county | $1,295.00 | $1,295.00 |
| 08/27/2024 | Diane Bang | 2.8 | Attend dispute resolution Zoom meeting; review communications from E. Mitchell re current issues to prep for same; post-meeting communications with E. Mitchell and M. Umhofer re same | $1,295.00 | $3,626.00 |
| 08/27/2024 | Elizabeth Mitchell | 0.5 | Communications re meet and confer | $1,295.00 | $647.50 |
| 08/28/2024 | Diane Bang | 0.4 | Review communications from E. Mitchell re city and county dispute resolution meeting and issues for status hearing | $1,295.00 | $518.00 |
| 08/28/2024 | Elizabeth Mitchell | 2.3 | Meeting w county, city, special masters; follow up call with M. Martinez re same; communications with team re same | $1,295.00 | $2,978.50 |
| 08/29/2024 | Diane Bang | 5 | Attend status hearing; post-hearing communications with E. Mitchell and M. Umhofer; travel to and from the courthouse | $1,295.00 | $6,475.00 |
| 08/29/2024 | Elizabeth Mitchell | 5 | Prep for, drive to/from, attend hearing | $1,295.00 | $6,475.00 |
| 08/29/2024 | Matthew Umhofer | 5 | Prepared for and attended hearing | $1,295.00 | $6,475.00 |
| 08/29/2024 | Matthew Umhofer | 4.1 | Attend hearing prep for same and follow up | $1,295.00 | $5,309.50 |
| 08/30/2024 | Diane Bang | 0.6 | Confer with E. Mitchell re motions for compliance against city and county; review communications with opposing counsel re same | $1,295.00 | $777.00 |
| 08/30/2024 | Elizabeth Mitchell | 1.2 | Communications with team re motions to enforce | $1,295.00 | $1,554.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 08/30/2024 | Elizabeth Mitchell | 0.4 | Call with P. Webster and D. Conway re status and strategy | $1,295.00 | $518.00 |
| 08/30/2024 | Matthew Umhofer | 1 | Review documents and analyze issues re: city compliance | $1,295.00 | $1,295.00 |
| 09/03/2024 | Diane Bang | 0.2 | Review minute order from August 29 hearing | $1,295.00 | $259.00 |
| 09/03/2024 | Elizabeth Mitchell | 0.8 | Emails with county attorney re ongoing issues | $1,295.00 | $1,036.00 |
| 09/03/2024 | Elizabeth Mitchell | 0.5 | Prep for and call with City attorneys re county and city issues | $1,295.00 | $647.50 |
| 09/03/2024 | Matthew Umhofer | 1.1 | Review documents and analyze issues re: city compliance | $1,295.00 | $1,424.50 |
| 09/04/2024 | Jon Powell | 4.1 | Review and analyze the motion for order re City compliance for citations to record cites and case law, prepare mark up of suggestions, deliver to E. Mitchell via email for review and discussion, prepare a draft declaration, and finalize all documents for filing, deliver to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $2,050.00 |
| 09/04/2024 | Madeline Matson | 0.2 | Review motion for settlement compliance order; deliver relevant materials to attorney team | $500.00 | $100.00 |
| 09/04/2024 | Elizabeth Mitchell | 2.1 | Draft motion to compel (City) | $1,295.00 | $2,719.50 |
| 09/04/2024 | Elizabeth Mitchell | 1.8 | Finalize both motions for filing | $1,295.00 | $2,331.00 |
| 09/04/2024 | Matthew Umhofer | 1.4 | Review and comment on brief | $1,295.00 | $1,813.00 |
| 09/05/2024 | Madeline Matson | 0.3 | Review notice and transcript of proceedings; deliver to attorney team | $500.00 | $150.00 |
| 09/10/2024 | Madeline Matson | 0.3 | Review minute order to target action items and circulate with team | $500.00 | $150.00 |
| 09/10/2024 | Elizabeth Mitchell | 0.5 | Review minute orders from court and discuss with team | $1,295.00 | $647.50 |
| 09/10/2024 | Matthew Umhofer | 0.3 | Review minute orders, strategize re: same | $1,295.00 | $388.50 |
| 09/11/2024 | Madeline Matson | 0.2 | Review City of LA opposition to determine action items and circulate with team | $500.00 | $100.00 |
| 09/12/2024 | Madeline Matson | 0.2 | Review City of LA proposed bed plan and associated documents to target action items and circulate with team | $500.00 | $100.00 |
| 09/12/2024 | Diane Bang | 0.3 | Review City's opposition to motion for compliance with settlement agreement | $1,295.00 | $388.50 |
| 09/12/2024 | Elizabeth Mitchell | 0.6 | Review City of LA bed plan | $1,295.00 | $777.00 |
| 09/12/2024 | Elizabeth Mitchell | 0.7 | Calls with M. Martinez and P. Webster | $1,295.00 | $906.50 |
| 09/13/2024 | Diane Bang | 0.6 | Review City's bed plan and meet and confer communications re same | $1,295.00 | $777.00 |
| 09/13/2024 | Elizabeth Mitchell | 0.9 | Draft email to city re offer to compromise | $1,295.00 | $1,165.50 |
| 09/13/2024 | Matthew Umhofer | 0.5 | Analyze issues re: city compromise and compliance | $1,295.00 | $647.50 |
| 09/17/2024 | Diane Bang | 0.4 | Review communications with client re City's obligations | $1,295.00 | $518.00 |

| 09/18/2024 | Jon Powell | 2.1 | Review and analyze the reply in support of motion for compliance for the City for case law and record citations, deliver mark up in track changes to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $1,050.00 |
|---|---|---|---|---|---|
| 09/18/2024 | Madeline Matson | 0.2 | Review reply in support of order to target action items and circulate with team | $500.00 | $100.00 |
| 09/18/2024 | Madeline Matson | 0.3 | Review minute order to target action items and circulate with team | $500.00 | $150.00 |
| 09/18/2024 | Elizabeth Mitchell | 3.5 | Draft reply ISO motion to compel city compliance | $1,295.00 | $4,532.50 |
| 09/18/2024 | Elizabeth Mitchell | 0.9 | Calls with P. Webster and M. Umhofer re status and strategy | $1,295.00 | $1,165.50 |
| 09/18/2024 | Matthew Umhofer | 0.7 | Review and comment on brief | $1,295.00 | $906.50 |
| 09/18/2024 | Matthew Umhofer | 0.6 | Call with E. Mitchell re status and strategy | $1,295.00 | $777.00 |
| 09/19/2024 | Elizabeth Mitchell | 0.5 | Strategize re █████████████ | $1,295.00 | $647.50 |
| 09/19/2024 | Elizabeth Mitchell | 0.5 | Review and comment re MOU | $1,295.00 | $647.50 |
| 09/20/2024 | Elizabeth Mitchell | 0.3 | Call with M. Umhofer re strategy | $1,295.00 | $388.50 |
| 09/20/2024 | Matthew Umhofer | 0.3 | Call with E. Mitchell re strategy | $1,295.00 | $388.50 |
| 09/23/2024 | Madeline Matson | 0.2 | Review amended exhibit, target action items and circulate with team | $500.00 | $100.00 |
| 09/23/2024 | Elizabeth Mitchell | 0.8 | Call with auditors | $1,295.00 | $1,036.00 |
| 09/23/2024 | Elizabeth Mitchell | 1.5 | Communications with auditors, UMK team re status and next steps | $1,295.00 | $1,942.50 |
| 09/26/2024 | Madeline Matson | 0.2 | Review City of LA response to target action items and circulate with team | $500.00 | $100.00 |
| 10/01/2024 | Madeline Matson | 0.2 | Review letter from K. Leon to target action items and circulate with team | $500.00 | $100.00 |
| 10/01/2024 | Elizabeth Mitchell | 0.5 | Call with M. Umhofer re status and strategy | $1,295.00 | $647.50 |
| 10/01/2024 | Matthew Umhofer | 1.3 | Strategize re: court order, call with E. Mitchell re: same; prep for hearing | $1,295.00 | $1,683.50 |
| 10/02/2024 | Madeline Matson | 0.2 | Review letter from Supervisor Solis to target action items and circulate with team | $500.00 | $100.00 |
| 10/02/2024 | Diane Bang | 0.3 | Confer with M. Umhofer re today's hearing and next steps; review filing from Supervisor H. Solis | $1,295.00 | $388.50 |
| 10/02/2024 | Elizabeth Mitchell | 5 | Prep for, travel to and from, attend hearing; debrief re same | $1,295.00 | $6,475.00 |
| 10/02/2024 | Elizabeth Mitchell | 0.2 | Review notes re housing and homelessness committee | $1,295.00 | $259.00 |
| 10/02/2024 | Matthew Umhofer | 5 | Prepare for and attended hearing | $1,295.00 | $6,475.00 |
| 10/03/2024 | Madeline Matson | 0.3 | Review minute order to target action items/deadlines and circulate with team | $500.00 | $150.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 10/03/2024 | Diane Bang | 0.4 | Review court's minute order and communications with counsel for County re next steps | $1,295.00 | $518.00 |
| 10/03/2024 | Diane Bang | 0.8 | Attend call with City re bed plan; post-call conference with M. Umhofer and E. Mitchell | $1,295.00 | $1,036.00 |
| 10/03/2024 | Elizabeth Mitchell | 1.1 | Call with LAAHR team re status and strategy | $1,295.00 | $1,424.50 |
| 10/03/2024 | Elizabeth Mitchell | 1.7 | Review response emails re listening session; strategize re same | $1,295.00 | $2,201.50 |
| 10/03/2024 | Elizabeth Mitchell | 0.7 | Prep for. call with City re Roadmap beds | $1,295.00 | $906.50 |
| 10/03/2024 | Matthew Umhofer | 0.7 | Review docs and analyze issues re: Roadmap | $1,295.00 | $906.50 |
| 10/04/2024 | Jon Powell | 2 | Review and analyze the response to proposed City bed plan for citations to the record and authorities, deliver to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $1,000.00 |
| 10/04/2024 | Madeline Matson | 0.2 | Review transcript and associated filings to target action items and circulate with team | $500.00 | $100.00 |
| 10/04/2024 | Elizabeth Mitchell | 1.1 | Draft Plaintiffs' Response re Bed Plan; coordinate e-filing | $1,295.00 | $1,424.50 |
| 10/07/2024 | Matthew Umhofer | 1 | Prep for hearing | $1,295.00 | $1,295.00 |
| 10/07/2024 | Matthew Umhofer | 1 | Prepare for hearing, review documents | $1,295.00 | $1,295.00 |
| 10/08/2024 | Madeline Matson | 0.2 | Review order selecting courtroom to target action items and circulate with team | $500.00 | $100.00 |
| 10/08/2024 | Diane Bang | 0.2 | Confer with M. Umhofer re hearing on City's bed plan | $1,295.00 | $259.00 |
| 10/08/2024 | Elizabeth Mitchell | 4 | Travel to/from, prep for, attend hearing | $1,295.00 | $5,180.00 |
| 10/08/2024 | Elizabeth Mitchell | 2.5 | Meeting with M. Martinez re ███████████ | $1,295.00 | $3,237.50 |
| 10/08/2024 | Matthew Umhofer | 4 | Prepare for and attend hearing; strategize re next steps | $1,295.00 | $5,180.00 |
| 10/09/2024 | Madeline Matson | 1 | Meet with T. Campbell and P. Webster to discuss next steps and review outline | $500.00 | $500.00 |
| 10/09/2024 | Elizabeth Mitchell | 1.7 | Prep for. attend meet and confer with County, City | $1,295.00 | $2,201.50 |
| 10/09/2024 | Elizabeth Mitchell | 1 | Meeting wtih M. Matson, Paul, Tim re ███████████ | $1,295.00 | $1,295.00 |
| 10/09/2024 | Matthew Umhofer | 1.3 | Communication regarding city bed plan regarding same | $1,295.00 | $1,683.50 |
| 10/10/2024 | Madeline Matson | 0.2 | Communicate with E. Mitchell on materials to incorporate into flowchart outline | $500.00 | $100.00 |
| 10/10/2024 | Madeline Matson | 0.2 | Review hearing transcript and associated filings to target action items and circulate with team | $500.00 | $100.00 |
| 10/10/2024 | Elizabeth Mitchell | 0.5 | Call with M. Umhofer re status and strategy | $1,295.00 | $647.50 |
| 10/10/2024 | Elizabeth Mitchell | 0.9 | Review ███████████████████████████; call with M. Umhofer re same | $1,295.00 | $1,165.50 |
| 10/10/2024 | Matthew Umhofer | 0.5 | Call with E. Mitchell re: strategy and status | $1,295.00 | $647.50 |
| 10/11/2024 | Elizabeth Mitchell | 0.7 | Strategize re hearing; review pasadena CES | $1,295.00 | $906.50 |
| 10/11/2024 | Elizabeth Mitchell | 0.4 | Follow up from meet and confer | $1,295.00 | $518.00 |
| 10/14/2024 | Madeline Matson | 0.3 | Create update hearing transcript binder and deliver to P. Webster | $500.00 | $150.00 |

| 10/14/2024 | Madeline Matson | 4.2 | Review and incorporate various sources into outline and deliver to E. Mitchell | $500.00 | $2,100.00 |
|---|---|---|---|---|---|
| 10/14/2024 | Elizabeth Mitchell | 1.9 | Review and comment re LA Alliance outline (M. Matson) | $1,295.00 | $2,460.50 |
| 10/15/2024 | Madeline Matson | 0.2 | Communicate with E. Mitchell re current outline status | $500.00 | $100.00 |
| 10/15/2024 | Diane Bang | 0.2 | Review meet and confer communications with City and County | $1,295.00 | $259.00 |
| 10/15/2024 | Elizabeth Mitchell | 1.1 | Review and comment re LA Alliance outline (M. Matson) | $1,295.00 | $1,424.50 |
| 10/15/2024 | Elizabeth Mitchell | 3.2 | Draft outline of issues for court; review and comment on presentation slides | $1,295.00 | $4,144.00 |
| 10/15/2024 | Matthew Umhofer | 3.3 | Prep powerpoint for hearing | $1,295.00 | $4,273.50 |
| 10/15/2024 | Matthew Umhofer | 0.5 | Call with E. Mitchell re: prep | $1,295.00 | $647.50 |
| 10/16/2024 | Diane Bang | 3.7 | Attend hearing on bed plan review; travel to and from courthouse | $1,295.00 | $4,791.50 |
| 10/16/2024 | Elizabeth Mitchell | 5 | Prep for, travel to and from, attend hearing | $1,295.00 | $6,475.00 |
| 10/16/2024 | Elizabeth Mitchell | 1.2 | Calls with M. Martinez (.5), P. Webster (.5), and M. Umhofer (.2) | $1,295.00 | $1,554.00 |
| 10/16/2024 | Matthew Umhofer | 3.6 | Prep review and revise presentation for hearing | $1,295.00 | $4,662.00 |
| 10/16/2024 | Matthew Umhofer | 4 | Prepared for and attended hearing | $1,295.00 | $5,180.00 |
| 10/16/2024 | Matthew Umhofer | 0.2 | Call with E. Mitchell | $1,295.00 | $259.00 |
| 10/16/2024 | Matthew Umhofer | 2.3 | Strategize regarding hearing | $1,295.00 | $2,978.50 |
| 10/17/2024 | Jon Powell | 0.5 | Draft notice of filing presentation, deliver to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $250.00 |
| 10/17/2024 | Madeline Matson | 0.7 | Draft and file D. Bang notice of appearance | $500.00 | $350.00 |
| 10/17/2024 | Madeline Matson | 0.3 | Communicate with E. Mitchell regarding ████████ ███ | $500.00 | $150.00 |
| 10/17/2024 | Elizabeth Mitchell | 0.2 | Call with M. Umhofer re status and strategy | $1,295.00 | $259.00 |
| 10/17/2024 | Elizabeth Mitchell | 0.7 | Prep powerpoint presentation for filing; coordinate filing re same | $1,295.00 | $906.50 |
| 10/17/2024 | Elizabeth Mitchell | 1.5 | Strategize re and communications re evidentiary hearing | $1,295.00 | $1,942.50 |
| 10/17/2024 | Matthew Umhofer | 0.2 | Call with E. Mitchell re: strategy and status | $1,295.00 | $259.00 |
| 10/18/2024 | Madeline Matson | 0.2 | Review notice of filing presentation to target action items and circulate with team | $500.00 | $100.00 |
| 10/18/2024 | Madeline Matson | 0.3 | Review minute order to target action items and circulate with team | $500.00 | $150.00 |
| 10/18/2024 | Madeline Matson | 0.3 | Review City of LA quarterly status reports to target action items and circulate with team | $500.00 | $150.00 |
| 10/18/2024 | Diane Bang | 0.6 | Review quarterly status reports, minute order re evidentiary hearing, and communications from counsel re same | $1,295.00 | $777.00 |
| 10/18/2024 | Elizabeth Mitchell | 0.3 | Call with P. Webster re status and strategy | $1,295.00 | $388.50 |
| 10/18/2024 | Elizabeth Mitchell | 0.5 | Listen to Housing and Homelessness committee for evidentiary value | $1,295.00 | $647.50 |

| 10/18/2024 | Elizabeth Mitchell | 1 | Strategize re evidentiary hearing | $1,295.00 | $1,295.00 |
|---|---|---|---|---|---|
| 10/18/2024 | Matthew Umhofer | 1 | Analyze issues re: evidentiary hearing | $1,295.00 | $1,295.00 |
| 10/21/2024 | Madeline Matson | 0.2 | Review civil minutes to target action items and circulate with team | $500.00 | $100.00 |
| 10/21/2024 | Elizabeth Mitchell | 0.4 | Strategize with M. Umhofer re evidentiary hearing | $1,295.00 | $518.00 |
| 10/21/2024 | Elizabeth Mitchell | 2 | Prep for evidentiary hearing | $1,295.00 | $2,590.00 |
| 10/21/2024 | Matthew Umhofer | 1.1 | Prep for evidentiary hearing, strategize with E. Mitchell re: same | $1,295.00 | $1,424.50 |
| 10/22/2024 | Jon Powell | 0.8 | Finalize the witness list for the evidentiary hearing, deliver to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $400.00 |
| 10/22/2024 | Madeline Matson | 0.3 | Review minute order on audit extension to target action items and circulate with team | $500.00 | $150.00 |
| 10/22/2024 | Madeline Matson | 0.3 | Communication with E. Mitchell and service providers regarding ███████████████ | $500.00 | $150.00 |
| 10/22/2024 | Madeline Matson | 2 | Prepare and deliver draft of 2024-10-16 city committee transcript to E. Mitchell | $500.00 | $1,000.00 |
| 10/22/2024 | Diane Bang | 0.2 | Review witness list for evidentiary hearing | $1,295.00 | $259.00 |
| 10/22/2024 | Elizabeth Mitchell | 1.5 | Communications re witnesses; draft and coordinate e-filing of witness list | $1,295.00 | $1,942.50 |
| 10/22/2024 | Elizabeth Mitchell | 0.8 | Research; Draft responses to A&M questions | $1,295.00 | $1,036.00 |
| 10/22/2024 | Elizabeth Mitchell | 1.4 | Review and anotate housing and homelessness committee | $1,295.00 | $1,813.00 |
| 10/22/2024 | Elizabeth Mitchell | 0.7 | Communications re anticipated testimony at hearing | $1,295.00 | $906.50 |
| 10/23/2024 | Madeline Matson | 4.7 | Travel to and from, and participate in meeting with Hope the Mission outreach workers | $500.00 | $2,350.00 |
| 10/23/2024 | Madeline Matson | 0.2 | Review Alliance witness list to target action items and circulate with team | $500.00 | $100.00 |
| 10/23/2024 | Madeline Matson | 0.8 | Review, edit, and deliver notes from meeting with Hope the Mission to E. Mitchell and P. Webster | $500.00 | $400.00 |
| 10/23/2024 | Madeline Matson | 4.7 | Edit and finalize 2024-10-16 city committee meeting transcript and deliver to E. Mitchell and P. Webster | $500.00 | $2,350.00 |
| 10/23/2024 | Elizabeth Mitchell | 3.5 | Travel to/from, attend listening session at Hope the Mission | $1,295.00 | $4,532.50 |
| 10/23/2024 | Elizabeth Mitchell | 0.7 | Strategize with P. Webster re status | $1,295.00 | $906.50 |
| 10/23/2024 | Elizabeth Mitchell | 1.2 | Meeting with A&M | $1,295.00 | $1,554.00 |
| 10/23/2024 | Matthew Umhofer | 2.5 | Evidentiary hearing prep | $1,295.00 | $3,237.50 |
| 10/24/2024 | Jon Powell | 0.5 | Finalize the request for clarification, deliver final pdf to E. Mitchell via email for approval, file and serve via ECF | $500.00 | $250.00 |
| 10/24/2024 | Madeline Matson | 0.3 | Review and discuss notes from Hope the Mission field visit with T. Campbell and P. Webster | $500.00 | $150.00 |

| 10/24/2024 | Madeline Matson | 0.2 | Review notice of [illegible] minutes to target action items and circulate with team | $500.00 | $100.00 |
|---|---|---|---|---|---|
| 10/24/2024 | Madeline Matson | 0.2 | Review Alliance request for clarification to target action items and circulate with team | $500.00 | $100.00 |
| 10/24/2024 | Diane Bang | 0.3 | Review filings related to evidentiary hearing on Friday | $1,295.00 | $388.50 |
| 10/24/2024 | Elizabeth Mitchell | 9.5 | Evidentiary hearing prep - draft outlines | $1,295.00 | $12,302.50 |
| 10/24/2024 | Elizabeth Mitchell | 1.5 | Research and draft request for clarification re witnesses | $1,295.00 | $1,942.50 |
| 10/25/2024 | Madeline Matson | 0.3 | Communication with outreach providers re meeting or ▮ | $500.00 | $150.00 |
| 10/25/2024 | Madeline Matson | 0.3 | Review LA County statement and witness list to target action items and circulate with team | $500.00 | $150.00 |
| 10/25/2024 | Madeline Matson | 0.2 | Review LA City statement target action items and circulate with team | $500.00 | $100.00 |
| 10/25/2024 | Elizabeth Mitchell | 6.5 | Travel to/from, attend dispute resolution conference; prep for hearing | $1,295.00 | $8,417.50 |
| 10/25/2024 | Matthew Umhofer | 6.5 | Prepared for and attended hearing | $1,295.00 | $8,417.50 |
| 10/25/2024 | Matthew Umhofer | 2 | Hearing and preparation for same | $1,295.00 | $2,590.00 |
| 10/28/2024 | Madeline Matson | 0.2 | Review hearing transcript and notice from 10/25 to target action items and circulate with team | $500.00 | $100.00 |
| 10/28/2024 | Madeline Matson | 0.3 | Correspondence with team regarding ▮ | $500.00 | $150.00 |
| 10/28/2024 | Madeline Matson | 0.2 | Review minutes if alliance request for clarification to target action items and circulate with team | $500.00 | $100.00 |
| 10/28/2024 | Elizabeth Mitchell | 1.2 | Review articles and notes; Strategize re status and leaks | $1,295.00 | $1,554.00 |
| 10/29/2024 | Madeline Matson | 2 | Incorporate notes from HOPE the mission field visit into outline | $500.00 | $1,000.00 |
| 10/29/2024 | Elizabeth Mitchell | 0.3 | Call with P. Webster re status and strategy | $1,295.00 | $388.50 |
| 10/29/2024 | Elizabeth Mitchell | 0.7 | Review LAHSA response to M. Martinez questions; strategize re same | $1,295.00 | $906.50 |
| 10/30/2024 | Madeline Matson | 0.3 | Review minute order to target action items and circulate with team | $500.00 | $150.00 |
| 10/30/2024 | Madeline Matson | 1.8 | Finalize current draft of systemic issues outline and deliver to team | $500.00 | $900.00 |
| 10/30/2024 | Madeline Matson | 1.5 | Call with B. Ulf and E. Mitchell to ▮ for outline | $500.00 | $750.00 |
| 10/30/2024 | Diane Bang | 0.4 | Review communications with opposing counsel re ▮ | $1,295.00 | $518.00 |
| 10/30/2024 | Elizabeth Mitchell | 0.7 | Synthesize notes for distribution; communications with LA City Attorney re same | $1,295.00 | $906.50 |

| 10/30/2024 | Elizabeth Mitchell | 1 | Meeting with B. Ulf | $1,295.00 | $1,295.00 |
|---|---|---|---|---|---|
| 10/31/2024 | Jon Powell | 2 | Update the tracking chart regarding ████████; deliver to team via email for review and discussion | $500.00 | $1,000.00 |
| 10/31/2024 | Madeline Matson | 0.2 | Review LA County quarterly report pursuant to settlement to target action items and circulate with team | $500.00 | $100.00 |
| 10/31/2024 | Madeline Matson | 1.4 | Review and incorporate notes from B. Ulf meeting into overall ████████ and circulate with team | $500.00 | $700.00 |
| 10/31/2024 | Madeline Matson | 0.2 | Coordinate meeting with A. Bales to continue updating ████ ████ | $500.00 | $100.00 |
| 10/31/2024 | Elizabeth Mitchell | 0.5 | Review audit re controls assessment; communications re same | $1,295.00 | $647.50 |
| 10/31/2024 | Elizabeth Mitchell | 0.7 | Call with city lawyers | $1,295.00 | $906.50 |
| 11/01/2024 | Madeline Matson | 0.3 | Communications with team regarding upcoming outline sessions | $500.00 | $150.00 |
| 11/04/2024 | Madeline Matson | 0.3 | Review order to sign amended letter to target action items and circulate with team | $500.00 | $150.00 |
| 11/04/2024 | Diane Bang | 0.1 | Review order ordering city to sign amended engagement letter | $1,295.00 | $129.50 |
| 11/05/2024 | Madeline Matson | 2 | Prep for and attend meeting with A. Bales regarding ████ ████ | $500.00 | $1,000.00 |
| 11/05/2024 | Elizabeth Mitchell | 0.4 | Call with P. Webster re status and strategy | $1,295.00 | $518.00 |
| 11/05/2024 | Elizabeth Mitchell | 1.2 | Call with A. Bales re homeless response system issues | $1,295.00 | $1,554.00 |
| 11/06/2024 | Diane Bang | 1.2 | Attend meet and confer call with County and City; revise notes from meeting | $1,295.00 | $1,554.00 |
| 11/06/2024 | Elizabeth Mitchell | 2.2 | Prep for and attend meet and confer with County and City | $1,295.00 | $2,849.00 |
| 11/07/2024 | Madeline Matson | 0.3 | Draft and deliver raw transcript of LA H&H Committee meeting to E. Mitchell | $500.00 | $150.00 |
| 11/07/2024 | Madeline Matson | 5 | Travel to and from, and take notes at listening session at Hope the Mission | $500.00 | $2,500.00 |
| 11/07/2024 | Diane Bang | 0.2 | Review communications from City re alleged reporting issues | $1,295.00 | $259.00 |
| 11/07/2024 | Elizabeth Mitchell | 3.4 | Travel to/from, meet with Hope the Mission re systemic issues | $1,295.00 | $4,403.00 |
| 11/08/2024 | Madeline Matson | 0.3 | Review order setting A&M audit hearing to target action items and circulate with team | $500.00 | $150.00 |
| 11/08/2024 | Madeline Matson | 1.3 | Meet with L. Raagas to discuss and update ████ ████ | $500.00 | $650.00 |
| 11/08/2024 | Diane Bang | 0.2 | Review communications re City's reporting issues and order setting hearing | $1,295.00 | $259.00 |
| 11/11/2024 | Madeline Matson | 3 | Prepare updated systemic issues outline and deliver to team | $500.00 | $1,500.00 |
| 11/11/2024 | Elizabeth Mitchell | 0.4 | Call with M. Umhofer re status and strategy | $1,295.00 | $518.00 |
| 11/11/2024 | Elizabeth Mitchell | 0.5 | Strategize re status | $1,295.00 | $647.50 |
| 11/11/2024 | Matthew Umhofer | 0.2 | Call with E. Mitchell re: strategy and status | $1,295.00 | $259.00 |

| 11/12/2024 | Madeline Matson | 3 | Finalize notes in ███ ███, and deliver to team | $500.00 | $1,500.00 |
|---|---|---|---|---|---|
| 11/13/2024 | Elizabeth Mitchell | 0.7 | Draft strategy re audit response | $1,295.00 | $906.50 |
| 11/14/2024 | Madeline Matson | 1 | Meet with Michael of wound walk to discuss updates to ███ ███ | $500.00 | $500.00 |
| 11/14/2024 | Madeline Matson | 1 | Review and incorporate notes from meeting into ███ ███, circulate with team | $500.00 | $500.00 |
| 11/14/2024 | Elizabeth Mitchell | 4.5 | Review and edit outline re ███ | $1,295.00 | $5,827.50 |
| 11/14/2024 | Elizabeth Mitchell | 0.5 | Call with P. Webster re status and strategy | $1,295.00 | $647.50 |
| 11/14/2024 | Elizabeth Mitchell | 1.4 | Meet with wound walk re ███ | $1,295.00 | $1,813.00 |
| 11/15/2024 | Diane Bang | 0.2 | Review communications with City and County re city-funded outreach workers | $1,295.00 | $259.00 |
| 11/18/2024 | Elizabeth Mitchell | 0.5 | Calls with M. Martinez and M. Umhofer | $1,295.00 | $647.50 |
| 11/18/2024 | Matthew Umhofer | 0.2 | Call with E. Mitchell | $1,295.00 | $259.00 |
| 11/19/2024 | Madeline Matson | 0.8 | Meet with T. Pierce to go over key HMIS features | $500.00 | $400.00 |
| 11/19/2024 | Madeline Matson | 0.3 | Draft and deliver key takeaways from meeting with T. Pierce to E. Mitchell | $500.00 | $150.00 |
| 11/19/2024 | Diane Bang | 1.4 | Draft follow-up letter to City re failure to comply with settlement agreement; review relevant filings | $1,295.00 | $1,813.00 |
| 11/19/2024 | Elizabeth Mitchell | 0.3 | Advise re 60 percent calculation | $1,295.00 | $388.50 |
| 11/19/2024 | Elizabeth Mitchell | 0.5 | Strategize re ███ | $1,295.00 | $647.50 |
| 11/19/2024 | Elizabeth Mitchell | 1.2 | Synthesize issues re City and County non-compliance and draft letter re same | $1,295.00 | $1,554.00 |
| 11/19/2024 | Matthew Umhofer | 0.6 | Review documents and communciations re: city compliance | $1,295.00 | $777.00 |
| 11/20/2024 | Jon Powell | 2.5 | Draft a notice regarding the audit, deliver to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $1,250.00 |
| 11/20/2024 | Madeline Matson | 0.7 | Incorporate notes from meeting with T. Pierce into systemic issues outline and circulate with team | $500.00 | $350.00 |
| 11/20/2024 | Madeline Matson | 0.2 | Review County audit to target action items and circulate with team | $500.00 | $100.00 |
| 11/20/2024 | Madeline Matson | 0.2 | Review order re A&M information on audit to target action items and circulate with team | $500.00 | $100.00 |
| 11/20/2024 | Diane Bang | 0.3 | Review filings related to audit of LAHSA | $1,295.00 | $388.50 |
| 11/20/2024 | Elizabeth Mitchell | 3.1 | Synthesize issues re City and County non-compliance and draft letter re same | $1,295.00 | $4,014.50 |
| 11/20/2024 | Elizabeth Mitchell | 0.4 | Coordinate e-filing audit | $1,295.00 | $518.00 |
| 11/20/2024 | Elizabeth Mitchell | 0.4 | Review audit management response | $1,295.00 | $518.00 |
| 11/20/2024 | Elizabeth Mitchell | 1.2 | Housing and homelessness committee | $1,295.00 | $1,554.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 11/21/2024 | Diane Bang | 7.7 | Attend hearing on audit audit, confer with E. Mitchell and Paul Webster following hearing, travel to and from court | $1,295.00 | $9,971.50 |
| 11/21/2024 | Elizabeth Mitchell | 6.5 | Prep for, drive to/from, attend hearing re audit | $1,295.00 | $8,417.50 |
| 11/21/2024 | Elizabeth Mitchell | 0.4 | Debrief with D. Bang and P. Webster | $1,295.00 | $518.00 |
| 11/21/2024 | Elizabeth Mitchell | 0.3 | Call with M. Martinez re audit | $1,295.00 | $388.50 |
| 11/22/2024 | Madeline Matson | 0.4 | Review all filings associated with 11/21 hearing to target action items and circulate with team | $500.00 | $200.00 |
| 11/25/2024 | Madeline Matson | 0.3 | Review minute order on 2024-11-21 hearing to target action items and circulate with team | $500.00 | $150.00 |
| 11/26/2024 | Jon Powell | 1.5 | Finalize letters to the City and County regarding violations of the settlement agreements, deliver to E. Mitchell via email for review and discussion, serve via email | $500.00 | $750.00 |
| 11/26/2024 | Madeline Matson | 0.2 | Review letter re update to target action items and circulate with team | $500.00 | $100.00 |
| 12/04/2024 | Madeline Matson | 0.2 | Communication with E. Mitchell regarding ███████ progress | $500.00 | $100.00 |
| 12/04/2024 | Madeline Matson | 0.3 | Review minute order re 1/7 hearing to target action items and circulate with team | $500.00 | $150.00 |
| 12/06/2024 | Madeline Matson | 0.2 | Review City of LA notice re A&M budget to target action items and circulate with team | $500.00 | $100.00 |
| 12/06/2024 | Diane Bang | 0.1 | Review notice of additional audit funds | $1,295.00 | $129.50 |
| 12/06/2024 | Diane Bang | 0.2 | Review correspondence with opposing counsel re breaches of settlement agreement | $1,295.00 | $259.00 |
| 12/09/2024 | Matthew Umhofer | 0.9 | Review communications and documents re: city compliance | $1,295.00 | $1,165.50 |
| 12/10/2024 | Elizabeth Mitchell | 0.6 | Calls with P. Webster re status and strategy | $1,295.00 | $777.00 |
| 12/11/2024 | Madeline Matson | 0.2 | Communication with team re ███████ glossary plan | $500.00 | $100.00 |
| 12/11/2024 | Elizabeth Mitchell | 0.5 | Meet and confer with City | $1,295.00 | $647.50 |
| 12/12/2024 | Elizabeth Mitchell | 0.4 | Strategize re ███████ re ███ | $1,295.00 | $518.00 |
| 12/13/2024 | Madeline Matson | 0.5 | Prepare 12/11 meeting transcript and deliver to E. Mitchell | $500.00 | $250.00 |
| 12/13/2024 | Matthew Umhofer | 0.3 | Call with E. Mitchell re: update on meet and confer | $1,295.00 | $388.50 |
| 12/20/2024 | Elizabeth Mitchell | 0.5 | Meeting requests re ███████ | $1,295.00 | $647.50 |
| 12/20/2024 | Elizabeth Mitchell | 0.8 | Edit and advise re LAHSA document | $1,295.00 | $1,036.00 |
| 12/23/2024 | Matthew Umhofer | 1 | Review outreach issues | $1,295.00 | $1,295.00 |
| 01/06/2025 | Diane Bang | 0.1 | Review communications from M. Martinez re observation sessions | $1,295.00 | $129.50 |
| 01/06/2025 | Elizabeth Mitchell | 0.4 | Strategize with P. Webster | $1,295.00 | $518.00 |

| 01/06/2025 | Elizabeth Mitchell | 1.2 | Discussion re ████████████, call with A. Briscoe re same | $1,295.00 | $1,554.00 |
| 01/06/2025 | Elizabeth Mitchell | 0.5 | Communications re ████████████████████ | $1,295.00 | $647.50 |
| 01/07/2025 | Elizabeth Mitchell | 6 | Travel to/from, attend hearing; debrief with P. Webster re same | $1,295.00 | $7,770.00 |
| 01/07/2025 | Elizabeth Mitchell | 0.5 | Call with M. Martinez | $1,295.00 | $647.50 |
| 01/08/2025 | Madeline Matson | 0.3 | Communications re upcoming observation learning sessions | $500.00 | $150.00 |
| 01/08/2025 | Madeline Matson | 0.3 | Communications re systemic issues outline with E. Mitchell | $500.00 | $150.00 |
| 01/08/2025 | Madeline Matson | 0.4 | Review hearing transcript and all associated hearing filings to target action items and circulate with team | $500.00 | $200.00 |
| 01/08/2025 | Diane Bang | 0.2 | Review article re hearing and communications re observation sessions | $1,295.00 | $259.00 |
| 01/08/2025 | Elizabeth Mitchell | 0.4 | Communications re website comments | $1,295.00 | $518.00 |
| 01/08/2025 | Elizabeth Mitchell | 0.3 | Advise re ████████ re ████████████ | $1,295.00 | $388.50 |
| 01/08/2025 | Elizabeth Mitchell | 0.9 | Review letter to City and agremeent; draft email re City non-compliance | $1,295.00 | $1,165.50 |
| 01/09/2025 | Madeline Matson | 0.2 | Communications re 1/16 observation and listening session | $500.00 | $100.00 |
| 01/09/2025 | Madeline Matson | 0.2 | Review minutes from 1/7 to target action items and circulate with team | $500.00 | $100.00 |
| 01/10/2025 | Elizabeth Mitchell | 0.5 | Policy meeting re ████████████████ | $1,295.00 | $647.50 |
| 01/13/2025 | Elizabeth Mitchell | 0.2 | Communications re City meet and confer | $1,295.00 | $259.00 |
| 01/13/2025 | Matthew Umhofer | 0.3 | Analyze issues re: city accountability, meet and confer | $1,295.00 | $388.50 |
| 01/14/2025 | Madeline Matson | 2.5 | Analyze original ████████████ and begin editing V.2 | $500.00 | $1,250.00 |
| 01/14/2025 | Elizabeth Mitchell | 1.3 | Meeting re City/LA Alliance post-fires | $1,295.00 | $1,683.50 |
| 01/14/2025 | Elizabeth Mitchell | 0.5 | Call with P. Webster re status and strategy | $1,295.00 | $647.50 |
| 01/15/2025 | Madeline Matson | 1.5 | Review and edit V.2 of ████████████ | $500.00 | $750.00 |
| 01/15/2025 | Elizabeth Mitchell | 0.9 | Statutory analysis and meetings | $1,295.00 | $1,165.50 |
| 01/15/2025 | Elizabeth Mitchell | 0.8 | Communications and strategy re city motion to compel | $1,295.00 | $1,036.00 |
| 01/16/2025 | Madeline Matson | 0.8 | Review and edit V.2 of ████████████ | $500.00 | $400.00 |
| 01/16/2025 | Elizabeth Mitchell | 0.3 | Call with P. Webster re status and strategy | $1,295.00 | $388.50 |
| 01/17/2025 | Elizabeth Mitchell | 2.1 | Meeting, communications, and drafts re ████████████ ████████ | $1,295.00 | $2,719.50 |
| 01/20/2025 | Matthew Umhofer | 1.5 | Review communications and documents re: city compliance | $1,295.00 | $1,942.50 |
| 01/22/2025 | Madeline Matson | 0.3 | Review City of LA quarterly status reports and associated filings to target action items and circulate with team | $500.00 | $150.00 |
| 01/27/2025 | Jon Powell | 0.7 | Review the new City's reports and enter the information in our tracking chart, deliver to E. Mitchell via email for review and discussion | $500.00 | $350.00 |
| 01/27/2025 | Madeline Matson | 4.1 | Review and edit V.2 of systemic issues outline | $500.00 | $2,050.00 |

| 01/27/2025 | Elizabeth Mitchell | 1 | Communications related to statutory changes impacting city compliance | $1,295.00 | $1,295.00 |
|---|---|---|---|---|---|
| 01/28/2025 | Madeline Matson | 2 | Review and edit V.2 of systemic issues outline | $500.00 | $1,000.00 |
| 01/28/2025 | Patrick Nitchman | 0.3 | Discuss assignments and next steps | $500.00 | $150.00 |
| 01/28/2025 | Elizabeth Mitchell | 0.5 | Call with S. Stenzler re ██████████ ██ | $1,295.00 | $647.50 |
| 01/28/2025 | Elizabeth Mitchell | 0.8 | Call with D. Steier and P. Webster re status and strategy | $1,295.00 | $1,036.00 |
| 01/28/2025 | Elizabeth Mitchell | 1 | Advise re ████████████████ | $1,295.00 | $1,295.00 |
| 01/29/2025 | Madeline Matson | 2 | Review and edit V.2 of systemic issues outline | $500.00 | $1,000.00 |
| 01/29/2025 | Elizabeth Mitchell | 0.5 | Strategize re ████████ re ███████ | $1,295.00 | $647.50 |
| 01/30/2025 | Madeline Matson | 3 | Review and edit systemic issues outline v.2 | $500.00 | $1,500.00 |
| 01/31/2025 | Jon Powell | 1 | Pull ██████████████████████ and distribute to the team | $500.00 | $500.00 |
| 01/31/2025 | Madeline Matson | 0.3 | Review settlement agreement status reports to target action items and circulate with team | $500.00 | $150.00 |
| 01/31/2025 | Madeline Matson | 1.5 | Review and edit systemic issues outline v.2 | $500.00 | $750.00 |
| 02/03/2025 | Madeline Matson | 1.5 | Review and edit systemic issues outline V.2 | $500.00 | $750.00 |
| 02/03/2025 | Elizabeth Mitchell | 1 | Meeting re status and strategy | $1,295.00 | $1,295.00 |
| 02/03/2025 | Ingrid Nitchman | 0.5 | Download Homelessness and Housing Committee meeting and run through Ai transcripting; review for corrections | $150.00 | $75.00 |
| 02/04/2025 | Jon Powell | 1 | Download documents into the foundational documents folder for E. Mitchell and to DropBox | $500.00 | $500.00 |
| 02/04/2025 | Madeline Matson | 0.3 | Emails re systemic issues outline updates and meetings | $500.00 | $150.00 |
| 02/04/2025 | Madeline Matson | 2.8 | Review and edit systemic issues outline V.2 | $500.00 | $1,400.00 |
| 02/04/2025 | Elizabeth Mitchell | 1 | Call with CS re ██████████████ | $1,295.00 | $1,295.00 |
| 02/04/2025 | Ingrid Nitchman | 0.9 | Rerun HHC meeting video through alternate ai program and review for readability | $150.00 | $135.00 |
| 02/05/2025 | Madeline Matson | 2.2 | Finalize organization of outline v.2 and begin analysis | $500.00 | $1,100.00 |
| 02/06/2025 | Madeline Matson | 0.2 | Emails re upcoming listening sessions | $500.00 | $100.00 |
| 02/06/2025 | Madeline Matson | 0.3 | Meeting with PATH attorney re upcoming listening session | $500.00 | $150.00 |
| 02/06/2025 | Madeline Matson | 4 | Analyze and edit V.2 of systemic issues outline | $500.00 | $2,000.00 |
| 02/06/2025 | Elizabeth Mitchell | 0.3 | Call with N. Phillips re PATH meeting re ████████████ ██████ | $1,295.00 | $388.50 |
| 02/07/2025 | Madeline Matson | 1 | Meet with PATH re systemic issues outline | $500.00 | $500.00 |
| 02/07/2025 | Madeline Matson | 4 | Finalize analysis and reorganization of V.2 systemic issues outline and deliver to E. Mitchell | $500.00 | $2,000.00 |
| 02/07/2025 | Elizabeth Mitchell | 0.5 | Call with P. Webster re status and strategy | $1,295.00 | $647.50 |
| 02/07/2025 | Elizabeth Mitchell | 1.1 | Review and advise re fact sheet | $1,295.00 | $1,424.50 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 02/07/2025 | Elizabeth Mitchell | 0.5 | Call to | $1,295.00 | $647.50 |
| 02/07/2025 | Elizabeth Mitchell | 1 | Call with PATH CEO re ███████████████ | $1,295.00 | $1,295.00 |
| 02/10/2025 | Madeline Matson | 0.2 | Communications with team re upcoming fundraising event | $500.00 | $100.00 |
| 02/10/2025 | Diane Bang | 3.2 | Outline motion to ███████████████ ██████; review all relevant facts; communications with E. Mitchell re same | $1,295.00 | $4,144.00 |
| 02/10/2025 | Elizabeth Mitchell | 0.8 | Calls with P. Webster re status and strategy | $1,295.00 | $1,036.00 |
| 02/10/2025 | Elizabeth Mitchell | 2.5 | Travel to/from, meet with S. Snakeoil re homelessness response system | $1,295.00 | $3,237.50 |
| 02/10/2025 | Elizabeth Mitchell | 0.5 | Call with P. Webster re status and strategy | $1,295.00 | $647.50 |
| 02/11/2025 | Madeline Matson | 0.6 | Incorporate notes from meeting with Path and Sidewalk Project into outline and deliver to E. Mitchell | $500.00 | $300.00 |
| 02/11/2025 | Diane Bang | 4.2 | Outline motion to █████████████; review all relevant facts; communications with E. Mitchell re same | $1,295.00 | $5,439.00 |
| 02/11/2025 | Elizabeth Mitchell | 1 | Draft █████████ talking points | $1,295.00 | $1,295.00 |
| 02/11/2025 | Elizabeth Mitchell | 0.2 | Strategize with M. Umhofer re ███████████ | $1,295.00 | $259.00 |
| 02/11/2025 | Elizabeth Mitchell | 0.5 | Call with D. Bang re motion to compel | $1,295.00 | $647.50 |
| 02/11/2025 | Matthew Umhofer | 0.2 | Strategize with E. Mitchell re: ██████████ | $1,295.00 | $259.00 |
| 02/12/2025 | Madeline Matson | 0.8 | Edit current version of systemic issues outline and deliver to E. Mitchell | $500.00 | $400.00 |
| 02/12/2025 | Diane Bang | 2.3 | Draft motion to █████████████████ | $1,295.00 | $2,978.50 |
| 02/12/2025 | Elizabeth Mitchell | 1 | Review articles and strategize re LAHSA | $1,295.00 | $1,295.00 |
| 02/13/2025 | Diane Bang | 2.3 | Draft motion to █████████████████ | $1,295.00 | $2,978.50 |
| 02/13/2025 | Elizabeth Mitchell | 0.3 | Call with M. Martinez re status | $1,295.00 | $388.50 |
| 02/13/2025 | Elizabeth Mitchell | 0.9 | Strategize with M. Umhofer re motion to compel, etc | $1,295.00 | $1,165.50 |
| 02/13/2025 | Matthew Umhofer | 1.1 | Review documents and communications re: city and settlement agreement, analyze issues re: same | $1,295.00 | $1,424.50 |
| 02/13/2025 | Matthew Umhofer | 0.9 | Strategize with E. Mitchell re: motion to compel | $1,295.00 | $1,165.50 |
| 02/13/2025 | Ingrid Nitchman | 0.6 | Download and run Homeless Committee Meeting video through Ai Transcripting program; review and edit for readability | $150.00 | $90.00 |
| 02/15/2025 | Elizabeth Mitchell | 7 | Research and draft motion to █████████████ re settlement agreement | $1,295.00 | $9,065.00 |
| 02/15/2025 | Matthew Umhofer | 2.1 | Strategize re: city motion to compel | $1,295.00 | $2,719.50 |
| 02/16/2025 | Elizabeth Mitchell | 4.8 | Research and draft motion to █████████████ re settlement agreement | $1,295.00 | $6,216.00 |

| Date | Name | Hours | Description | Rate | Amount |
|------|------|-------|-------------|------|--------|
| 02/18/2025 | Jon Powell | 4 | Review and analyze the motion for order re ██████████, communicate with E. Mitchell via email regarding the brief | $500.00 | $2,000.00 |
| 02/18/2025 | Madeline Matson | 0.2 | Discussion with team re April 2025 fundraising event | $500.00 | $100.00 |
| 02/18/2025 | Madeline Matson | 0.3 | Communications re upcoming and potential service provider interviews for systemic issues outline | $500.00 | $150.00 |
| 02/18/2025 | Elizabeth Mitchell | 2.8 | Update and finalize motion to ██████████ | $1,295.00 | $3,626.00 |
| 02/18/2025 | Elizabeth Mitchell | 0.9 | Emails re ██████████ | $1,295.00 | $1,165.50 |
| 02/19/2025 | Jon Powell | 3 | Draft a declaration for E. Mitchell, deliver to E. Mitchell via email for review and discussion, continue review of the motion for order re ██████████ | $500.00 | $1,500.00 |
| 02/19/2025 | Elizabeth Mitchell | 1.5 | Finalize motion for ██████████ | $1,295.00 | $1,942.50 |
| 02/19/2025 | Matthew Umhofer | 2.3 | Review and revise motion to compel, reseach re: same | $1,295.00 | $2,978.50 |
| 02/20/2025 | Jon Powell | 5 | Make changes to the motion for order re ██████████ ██████████, generate and prepare the table of contents and table of authorities, draft a proposed order, deliver all documents to E. Mitchell via email for final approval, file and serve via ECF, deliver proposed order to chambers, deliver copies to DropBox for M. Umhofer | $500.00 | $2,500.00 |
| 02/20/2025 | Madeline Matson | 0.3 | Review learning and observation session details in advance of 3/3 session | $500.00 | $150.00 |
| 02/20/2025 | Elizabeth Mitchell | 0.4 | Coordinate e-filing motion | $1,295.00 | $518.00 |
| 02/21/2025 | Madeline Matson | 0.3 | Review motion for order re compliance and continued hearing to target action items and circulate with team | $500.00 | $150.00 |
| 02/24/2025 | Ingrid Nitchman | 1.2 | Download and begin HSC meeting AI Transcripting; review for readbility | $150.00 | $180.00 |
| 02/25/2025 | Madeline Matson | 1 | Review and edit systemic issues outline by incorporating recently published, revenant materials | $500.00 | $500.00 |
| 02/26/2025 | Madeline Matson | 0.2 | Strategize re new targets for systemic issues outline research | $500.00 | $100.00 |
| 02/26/2025 | Elizabeth Mitchell | 0.4 | Communications re ██████████; review agreement | $1,295.00 | $518.00 |
| 02/26/2025 | Elizabeth Mitchell | 0.8 | Call with M. Martinez re update; communications with LAAHR and UMK team re same | $1,295.00 | $1,036.00 |
| 02/26/2025 | Ingrid Nitchman | 2.5 | Continue proofing and editing for readability HSC Meetings transcripts | $150.00 | $375.00 |
| 02/27/2025 | Elizabeth Mitchell | 0.5 | Strategize re audit | $1,295.00 | $647.50 |
| 02/27/2025 | Elizabeth Mitchell | 0.4 | Advise re policy re ██████████ | $1,295.00 | $518.00 |
| 02/27/2025 | Elizabeth Mitchell | 0.3 | Advise re strategic communications | $1,295.00 | $388.50 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 02/27/2025 | Ingrid Nitchman | 2 | Continue proofing and editing for readability HSC Meetings transcripts | $150.00 | $300.00 |
| 02/28/2025 | Elizabeth Mitchell | 1 | SHARE discussion | $1,295.00 | $1,295.00 |
| 02/28/2025 | Ingrid Nitchman | 1.5 | Continue proofing and editing for readability HSC Meetings transcripts | $150.00 | $225.00 |
| 03/03/2025 | Madeline Matson | 0.2 | Review Judge Carter's order to determine date of publicly available audit | $500.00 | $100.00 |
| 03/03/2025 | Elizabeth Mitchell | 6 | Travel to/from, attend listening sessions and meetings re City/County/LAHSA and outreach support | $1,295.00 | $7,770.00 |
| 03/03/2025 | Elizabeth Mitchell | 2.5 | Review and analyze draft audit report | $1,295.00 | $3,237.50 |
| 03/04/2025 | Madeline Matson | 1 | Prepare consolidated listening session notes and deliver to E. Mitchell | $500.00 | $500.00 |
| 03/04/2025 | Madeline Matson | 0.3 | Begin reviewing and analyzing A&M audit | $500.00 | $150.00 |
| 03/04/2025 | Elizabeth Mitchell | 2.1 | Meet and confer re ▮▮▮▮ re ▮ with M. Martinez and M. Umhofer re same; email to A. Birotte re same | $1,295.00 | $2,719.50 |
| 03/04/2025 | Elizabeth Mitchell | 0.5 | Review updated audit report | $1,295.00 | $647.50 |
| 03/04/2025 | Matthew Umhofer | 1.6 | Review audit report, analyze issues re: same, discuss with E. Mitchell re: same | $1,295.00 | $2,072.00 |
| 03/05/2025 | Madeline Matson | 0.4 | Review orders pertaining to A&M audit to target action items and circulate with team | $500.00 | $200.00 |
| 03/05/2025 | Elizabeth Mitchell | 0.8 | Strategize re ▮▮▮▮ | $1,295.00 | $1,036.00 |
| 03/05/2025 | Elizabeth Mitchell | 0.3 | Edit strategic communications re audit | $1,295.00 | $388.50 |
| 03/05/2025 | Elizabeth Mitchell | 0.5 | Review ▮▮ by T. Campbell | $1,295.00 | $647.50 |
| 03/06/2025 | Madeline Matson | 1 | Meet with J. Maceri of the People's Concern to discuss systemic issues outline | $500.00 | $500.00 |
| 03/06/2025 | Madeline Matson | 0.2 | Review opposition to motion for order for compliance to target action items and circulate with team | $500.00 | $100.00 |
| 03/06/2025 | Elizabeth Mitchell | 0.3 | Strategize re ▮▮ | $1,295.00 | $388.50 |
| 03/06/2025 | Elizabeth Mitchell | 1 | Meeting with J. Maceri re ▮▮▮ | $1,295.00 | $1,295.00 |
| 03/06/2025 | Elizabeth Mitchell | 3.5 | Review final report; communications with Alliance, and UMK teams re same | $1,295.00 | $4,532.50 |
| 03/06/2025 | Matthew Umhofer | 0.9 | Review audit | $1,295.00 | $1,165.50 |
| 03/07/2025 | Elizabeth Mitchell | 1.2 | Review final report; communications with Alliance, and UMK teams re same | $1,295.00 | $1,554.00 |
| 03/10/2025 | Jon Powell | 0.7 | Prepare a ▮▮▮▮ deliver to E. Mitchell via email for review and discussion | $500.00 | $350.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 03/10/2025 | Elizabeth Mitchell | 1.7 | Meeting with Judge Birotte, M. Martinez, and City re Roadmap beds; calls with UMK team and Judge Birotte re same | $1,295.00 | $2,201.50 |
| 03/10/2025 | Elizabeth Mitchell | 1.1 | Research and draft ███████████████ | $1,295.00 | $1,424.50 |
| 03/11/2025 | Madeline Matson | 0.8 | Analyze and edit systemic issues outline, incorporating J. Maceri meeting notes | $500.00 | $400.00 |
| 03/11/2025 | Elizabeth Mitchell | 5.1 | Research and draft ███████████████ | $1,295.00 | $6,604.50 |
| 03/11/2025 | Elizabeth Mitchell | 0.9 | Call with P. Webster and D. Steier re status and strategy; draft email to D. Kozlowski re same | $1,295.00 | $1,165.50 |
| 03/11/2025 | Elizabeth Mitchell | 0.5 | Research ███████████ | $1,295.00 | $647.50 |
| 03/12/2025 | Elizabeth Mitchell | 7.2 | Research and draft ███████████ | $1,295.00 | $9,324.00 |
| 03/12/2025 | Matthew Umhofer | 2 | Review and revise draft reply | $1,295.00 | $2,590.00 |
| 03/13/2025 | Madeline Matson | 0.2 | Review alliance reply in support of motion for order for settlement agreement compliance to target action items; circulate with team | $500.00 | $100.00 |
| 03/13/2025 | Elizabeth Mitchell | 1.5 | Update and finalize reply for filing | $1,295.00 | $1,942.50 |
| 03/18/2025 | Madeline Matson | 0.2 | Analyze order for compliance briefing and deliver to team | $500.00 | $100.00 |
| 03/18/2025 | Elizabeth Mitchell | 0.3 | Call with M. Martinez | $1,295.00 | $388.50 |
| 03/18/2025 | Elizabeth Mitchell | 0.5 | Strategize with team | $1,295.00 | $647.50 |
| 03/18/2025 | Elizabeth Mitchell | 0.9 | Call with D. Steier and P. Webster | $1,295.00 | $1,165.50 |
| 03/19/2025 | Elizabeth Mitchell | 0.4 | Call with M. Umhofer re status and strategy | $1,295.00 | $518.00 |
| 03/19/2025 | Elizabeth Mitchell | 1.5 | Housing and Homelessness Committee Meeting | $1,295.00 | $1,942.50 |
| 03/19/2025 | Matthew Umhofer | 0.3 | Call with E. Mitchell re: strategy and status | $1,295.00 | $388.50 |
| 03/20/2025 | Elizabeth Mitchell | 0.5 | Strategic communications re ███████ | $1,295.00 | $647.50 |
| 03/20/2025 | Elizabeth Mitchell | 0.3 | Call with P. Webster re status and strategy | $1,295.00 | $388.50 |
| 03/21/2025 | Elizabeth Mitchell | 2.5 | Prep for hearing; review and research re same | $1,295.00 | $3,237.50 |
| 03/24/2025 | Madeline Matson | 0.2 | Review order re settlement agreement compliance to target action items; circulate with team | $500.00 | $100.00 |
| 03/24/2025 | Elizabeth Mitchell | 0.5 | Review and discuss court order re encampments | $1,295.00 | $647.50 |
| 03/24/2025 | Elizabeth Mitchell | 0.5 | Review and discussion re order re motion for settlement compliance | $1,295.00 | $647.50 |
| 03/24/2025 | Matthew Umhofer | 1 | Review and strategize re: encampment order | $1,295.00 | $1,295.00 |
| 03/25/2025 | Elizabeth Mitchell | 5.6 | Hearing Prep | $1,295.00 | $7,252.00 |
| 03/25/2025 | Elizabeth Mitchell | 0.4 | Communications re ███████████████ | $1,295.00 | $518.00 |
| 03/26/2025 | Madeline Matson | 1.5 | Review, analyze, and edit ██████████ hearing on settlement compliance | $500.00 | $750.00 |
| 03/26/2025 | Madeline Matson | 0.2 | Review minute order re LAHSA response to target action items; circulate with team | $500.00 | $100.00 |

| 03/26/2025 | Elizabeth Mitchell | | Hearing Prep | | $6,086.50 |
| 03/26/2025 | Elizabeth Mitchell | 0.3 | Call with M. Umhofer re status and strategy | $1,295.00 | $388.50 |
| 03/26/2025 | Elizabeth Mitchell | 0.2 | Call with G. Frem | $1,295.00 | $259.00 |
| 03/26/2025 | Elizabeth Mitchell | 0.3 | Meet and confer with city re ▇ | $1,295.00 | $388.50 |
| 03/26/2025 | Matthew Umhofer | 0.3 | Call with E. Mitchell re: strategy and status | $1,295.00 | $388.50 |
| 03/27/2025 | Elizabeth Mitchell | 2.2 | Hearing Prep | $1,295.00 | $2,849.00 |
| 03/27/2025 | Elizabeth Mitchell | 9 | Drive to/from, participate in hearing; communications re same | $1,295.00 | $11,655.00 |
| 03/27/2025 | Matthew Umhofer | 9 | Prepare for and attend hearing | $1,295.00 | $11,655.00 |
| 03/27/2025 | Matthew Umhofer | 0.7 | Review documents and prepare for hearing | $1,295.00 | $906.50 |
| 03/27/2025 | Eugene Lim | 1.5 | Attend hearing for LA Alliance re motion to compel compliance with settlement order | $1,295.00 | $1,942.50 |
| 03/28/2025 | Madeline Matson | 0.2 | Analyze minute order to target action items; circulate with team | $500.00 | $100.00 |
| 03/31/2025 | Madeline Matson | 0.3 | Review notice of and transcript of 3/27 hearing to target action items; circulate with team | $500.00 | $150.00 |
| 03/31/2025 | Madeline Matson | 0.3 | Analyze order setting 5/15 hearing to target action items; circulate with team. | $500.00 | $150.00 |
| 03/31/2025 | Elizabeth Mitchell | 1 | Meet with A&M re report | $1,295.00 | $1,295.00 |
| 03/31/2025 | Elizabeth Mitchell | 0.5 | Review orders | $1,295.00 | $647.50 |
| 03/31/2025 | Matthew Umhofer | 0.4 | Review orders | $1,295.00 | $518.00 |
| 04/01/2025 | Madeline Matson | 0.3 | Review amended order and updated exhibits from 3/27 hearing to target action items; circulate with team | $500.00 | $150.00 |
| 04/01/2025 | Elizabeth Mitchell | 0.3 | Coordinate re ▇▇▇▇▇▇ | $1,295.00 | $388.50 |
| 04/01/2025 | Elizabeth Mitchell | 1.5 | Long Beach Alliance board meeting | $1,295.00 | $1,942.50 |
| 04/01/2025 | Elizabeth Mitchell | 1.2 | Calls with NH (.2), P. Webster (.6), M. Martinez (.4) re ▇▇▇▇ | $1,295.00 | $1,554.00 |
| 04/02/2025 | Elizabeth Mitchell | 0.5 | Review and communications re ▇▇▇▇▇▇ | $1,295.00 | $647.50 |
| 04/02/2025 | Elizabeth Mitchell | 0.5 | Assignment re receivership briefing | $1,295.00 | $647.50 |
| 04/02/2025 | Elizabeth Mitchell | 1.5 | Homelessness and Housing committee | $1,295.00 | $1,942.50 |
| 04/02/2025 | Elizabeth Mitchell | 0.8 | Call with L. Raagas re status and strategy | $1,295.00 | $1,036.00 |
| 04/03/2025 | Elizabeth Mitchell | 0.4 | Strategize re ▇▇▇▇ | $1,295.00 | $518.00 |
| 04/03/2025 | Elizabeth Mitchell | 0.5 | Communications re TLS memorandum | $1,295.00 | $647.50 |
| 04/03/2025 | Ingrid Nitchman | 0.5 | Transcribe LA City Council meeting | $150.00 | $75.00 |
| 04/04/2025 | Elizabeth Mitchell | 0.4 | Calls and emails re LAHSA resignation | $1,295.00 | $518.00 |
| 04/07/2025 | Madeline Matson | 0.2 | Review request for ruling on motion to intervene to target action items; circulate with team | $500.00 | $100.00 |
| 04/07/2025 | Ingrid Nitchman | 1 | Transcribe LA City Council meeting | $150.00 | $150.00 |
| 04/08/2025 | Elizabeth Mitchell | 0.4 | Edit strategic communications | $1,295.00 | $518.00 |
| 04/08/2025 | Ingrid Nitchman | 1.5 | Transcribe LA City Council meeting | $150.00 | $225.00 |

| 04/10/2025 | Elizabeth Mitchell | 1 | Communications re federal taskforce | $1,295.00 | $1,295.00 |
|---|---|---|---|---|---|
| 04/10/2025 | Ingrid Nitchman | 2 | Transcribe LA City Council meeting | $150.00 | $300.00 |
| 04/14/2025 | Elizabeth Mitchell | 0.3 | Discussions re ███████ | $1,295.00 | $388.50 |
| 04/14/2025 | Eugene Lim | 2.6 | Evalute and analyze court orders and filings for receivership briefing | $1,295.00 | $3,367.00 |
| 04/14/2025 | Ingrid Nitchman | 1 | Transcribe and format  LA City Council meeting | $150.00 | $150.00 |
| 04/15/2025 | Madeline Matson | 0.3 | Analyze City of LA quarterly status reports to target action items; circulate with team | $500.00 | $150.00 |
| 04/15/2025 | Matthew Umhofer | 1.6 | Review documents re: city compliance and strategize re: same | $1,295.00 | $2,072.00 |
| 04/15/2025 | Eugene Lim | 1.1 | Conduct research on ████████████ | $1,295.00 | $1,424.50 |
| 04/15/2025 | Ingrid Nitchman | 3.9 | Transcribe and format  LA City Council meeting | $150.00 | $585.00 |
| 04/16/2025 | Elizabeth Mitchell | 0.5 | Review emails and call with N. Gerda re TLS beds | $1,295.00 | $647.50 |
| 04/16/2025 | Elizabeth Mitchell | 0.3 | Call with P webster re status and strategy | $1,295.00 | $388.50 |
| 04/17/2025 | Madeline Matson | 1 | Meet with E. Mitchell and A. Turk re ██████████ | $500.00 | $500.00 |
| 04/17/2025 | Elizabeth Mitchell | 1 | Meet with A. Turk re ███████████ | $1,295.00 | $1,295.00 |
| 04/17/2025 | Eugene Lim | 2.7 | Conduct legal research for receivership briefing | $1,295.00 | $3,496.50 |
| 04/17/2025 | Eugene Lim | 1.9 | Examine record and ██████████████ | $1,295.00 | $2,460.50 |
| 04/18/2025 | Madeline Matson | 0.4 | Analyze and edit A. Turk meeting notes, deliver to E. Mitchell | $500.00 | $200.00 |
| 04/21/2025 | Madeline Matson | 0.7 | Review and incorporate A. Turk meeting notes into overall systemic issues in the system outline | $500.00 | $350.00 |
| 04/22/2025 | Elizabeth Mitchell | 0.4 | Calls with IS and MR re ███████████ | $1,295.00 | $518.00 |
| 04/23/2025 | Madeline Matson | 0.5 | Prepare cover letters for service of first amended complaint | $500.00 | $250.00 |
| 04/24/2025 | Matthew Umhofer | 3.1 | Review documents re: city compliance and strategize re: same | $1,295.00 | $4,014.50 |
| 04/25/2025 | Elizabeth Mitchell | 1.5 | Strategize re status | $1,295.00 | $1,942.50 |
| 04/27/2025 | Eugene Lim | 3.4 | Draft thorough outline for receivership briefing | $1,295.00 | $4,403.00 |
| 04/28/2025 | Elizabeth Mitchell | 0.9 | Research re ████████ | $1,295.00 | $1,165.50 |
| 04/28/2025 | Eugene Lim | 0.5 | Revise outline and circulate to partners | $1,295.00 | $647.50 |
| 04/29/2025 | Elizabeth Mitchell | 1.9 | Research re ████████ | $1,295.00 | $2,460.50 |
| 04/29/2025 | Elizabeth Mitchell | 0.2 | Calls with M. Umhofer and P. Webster re status and strategy | $1,295.00 | $259.00 |
| 04/29/2025 | Matthew Umhofer | 0.2 | Call with E. Mitchell re: strategy and status | $1,295.00 | $259.00 |
| 04/30/2025 | Madeline Matson | 0.3 | Review listening session notes from 2024/25 and deliver to E. Mitchell | $500.00 | $150.00 |
| 04/30/2025 | Madeline Matson | 0.2 | Review quarterly status report pursuant to memorandum of understanding to target action items; circulate with team | $500.00 | $100.00 |
| 04/30/2025 | Elizabeth Mitchell | 0.9 | Research re ████████ | $1,295.00 | $1,165.50 |
| 04/30/2025 | Matthew Umhofer | 2.3 | Review quarterly reports and A&M audit | $1,295.00 | $2,978.50 |
| 05/01/2025 | Elizabeth Mitchell | 2.5 | Research re ████████ | $1,295.00 | $3,237.50 |

| 05/01/2025 | Elizabeth Mitchell | 0.7 | Evaluate jurisdiction | $1,295.00 | $906.50 |
|---|---|---|---|---|---|
| 05/01/2025 | Elizabeth Mitchell | 0.5 | Call with N. Gerda re ████ | $1,295.00 | $647.50 |
| 05/02/2025 | Patrick Nitchman | 2.5 | Email communication with E. Mitchell re research and drafting project; review documents; begin legal research | $500.00 | $1,250.00 |
| 05/05/2025 | Jon Powell | 1 | Pull all City of Los Angeles Roadmap status reports, deliver to E. Mitchell via email and Dropbox | $500.00 | $500.00 |
| 05/05/2025 | Patrick Nitchman | 5.2 | Legal research re ████ draft brief re ████; email communication with E. Mitchell re brief | $500.00 | $2,600.00 |
| 05/05/2025 | Elizabeth Mitchell | 12.2 | Research and draft brief re ████ | $1,295.00 | $15,799.00 |
| 05/05/2025 | Matthew Umhofer | 2 | Analyze isssues re: receivership | $1,295.00 | $2,590.00 |
| 05/05/2025 | Ingrid Nitchman | 8.5 | Download and clipped video into shorter manageable sections, rendered segments and transcribed LA City Council 5/1/2025 Budget Hearings | $150.00 | $1,275.00 |
| 05/06/2025 | Elizabeth Mitchell | 12.9 | Research and draft brief re ████ | $1,295.00 | $16,705.50 |
| 05/06/2025 | Ingrid Nitchman | 3.5 | Download and clipped video into shorter manageable sections, rendered segments and transcribed LA City Council 5/1/2025 Budget Hearings | $150.00 | $525.00 |
| 05/07/2025 | Elizabeth Mitchell | 11.2 | Research and draft brief re ████ | $1,295.00 | $14,504.00 |
| 05/07/2025 | Matthew Umhofer | 3.1 | Review and revise brief | $1,295.00 | $4,014.50 |
| 05/07/2025 | Ingrid Nitchman | 5.5 | Download and clipped video into shorter manageable sections, rendered segments and transcribed LA City Council 5/1/2025 Budget Hearings | $150.00 | $825.00 |
| 05/08/2025 | Jon Powell | 7.5 | Continue to review and analyze the response to court's concerns for citation references to the record, press, and law, prepare a new draft of the document with track changes showing suggested changes, draft and assemble a declaration for E. Mitchell and exhibits, deliver final mark of changes to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $3,750.00 |
| 05/08/2025 | Madeline Matson | 0.2 | Emails with E. Mitchell re hearing transcripts | $500.00 | $100.00 |
| 05/08/2025 | Madeline Matson | 0.9 | Prepare ████ and deliver to E. Mitchell | $500.00 | $450.00 |
| 05/08/2025 | Madeline Matson | 0.3 | ████ and deliver to E. Mitchell | $500.00 | $150.00 |
| 05/08/2025 | Madeline Matson | 0.2 | Review minute order re 2025-05-15 hearing to target action items; circulate with team | $500.00 | $100.00 |

| 05/08/2025 | Elizabeth Mitchell | 5.1 | Finalize brief and coordinate filing | $1,295.00 | $6,604.50 |
|---|---|---|---|---|---|
| 05/08/2025 | Elizabeth Mitchell | 0.5 | Strategize re hearing | $1,295.00 | $647.50 |
| 05/09/2025 | Madeline Matson | 0.2 | Review plaintiff's response re issues raised by court to target action items; circulate with team | $500.00 | $100.00 |
| 05/09/2025 | Elizabeth Mitchell | 1.4 | Strategize re hearing | $1,295.00 | $1,813.00 |
| 05/09/2025 | Elizabeth Mitchell | 1.5 | Calls re ███████ | $1,295.00 | $1,942.50 |
| 05/09/2025 | Eugene Lim | 0.5 | Review filings on receivership briefing | $1,295.00 | $647.50 |
| 05/12/2025 | Elizabeth Mitchell | 1.5 | Hearing strategy and prep (witness meetings, draft outlines, research issues) | $1,295.00 | $1,942.50 |
| 05/12/2025 | Matthew Umhofer | 3.6 | Review documents and prepare for hearing | $1,295.00 | $4,662.00 |
| 05/13/2025 | Madeline Matson | 0.2 | Correspondence with team re B. Ulf witness fee deadline | $500.00 | $100.00 |
| 05/13/2025 | Madeline Matson | 0.3 | Review minute order regarding evidentiary hearing to target action items; circulate with team | $500.00 | $150.00 |
| 05/13/2025 | Madeline Matson | 0.2 | Review county status report regarding settlement agreement to target action items; circulate with team | $500.00 | $100.00 |
| 05/13/2025 | Elizabeth Mitchell | 4.8 | Hearing strategy and prep (witness meetings, draft outlines, research issues) | $1,295.00 | $6,216.00 |
| 05/14/2025 | Madeline Matson | 0.2 | Review special master independent report to target action items; circulate with team | $500.00 | $100.00 |
| 05/14/2025 | Elizabeth Mitchell | 1.5 | Research ███████ | $1,295.00 | $1,942.50 |
| 05/14/2025 | Elizabeth Mitchell | 1.1 | Hearing strategy and prep (witness meetings, draft outlines, research issues) | $1,295.00 | $1,424.50 |
| 05/14/2025 | Elizabeth Mitchell | 1 | Homeless and Housing Committee Review | $1,295.00 | $1,295.00 |
| 05/14/2025 | Matthew Umhofer | 1.8 | Strategize re: ███████, review documents re: same | $1,295.00 | $2,331.00 |
| 05/15/2025 | Madeline Matson | 0.2 | Review independent assessment of city funded programs to target action items; circulate with team | $500.00 | $100.00 |
| 05/15/2025 | Madeline Matson | 0.3 | Review minutes from 5/15 hearing to target action items; circulate with team | $500.00 | $150.00 |
| 05/15/2025 | Elizabeth Mitchell | 8 | Drive to/from, attend hearing | $1,295.00 | $10,360.00 |
| 05/15/2025 | Elizabeth Mitchell | 1.1 | Draft stipulation re ███████; communications re same | $1,295.00 | $1,424.50 |
| 05/15/2025 | Matthew Umhofer | 2.6 | Review document and prepare for hearing | $1,295.00 | $3,367.00 |
| 05/15/2025 | Matthew Umhofer | 8 | Prepared for and attended hearing | $1,295.00 | $10,360.00 |
| 05/16/2025 | Madeline Matson | 0.2 | Review second amended minutes to target action items; circulate with team | $500.00 | $100.00 |
| 05/16/2025 | Madeline Matson | 0.2 | Review and analyze transcript for proceedings to target action items; circulate with team | $500.00 | $100.00 |
| 05/16/2025 | Madeline Matson | 0.3 | Review briefing schedule to target action items; circulate with team | $500.00 | $150.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 05/16/2025 | Elizabeth Mitchell | 1.5 | Meet with criminal district | $1,295.00 | $1,942.50 |
| 05/16/2025 | Elizabeth Mitchell | 1.4 | Meeting with potential witnesses | $1,295.00 | $1,813.00 |
| 05/16/2025 | Elizabeth Mitchell | 2.1 | Prep for hearing; draft stipulated briefing schedule and confer re Apex witnesses | $1,295.00 | $2,719.50 |
| 05/18/2025 | Elizabeth Mitchell | 4.7 | Strategize for evidentiary hearing; draft joint stipulation for Apex witnesses | $1,295.00 | $6,086.50 |
| 05/19/2025 | Elizabeth Mitchell | 4.9 | Hearing Prep | $1,295.00 | $6,345.50 |
| 05/19/2025 | Matthew Umhofer | 2.1 | Prepare for hearing | $1,295.00 | $2,719.50 |
| 05/20/2025 | Madeline Matson | 0.4 | Draft joint witness list and deliver to E. Mitchell | $500.00 | $200.00 |
| 05/20/2025 | Madeline Matson | 0.7 | Draft witness calendar and deliver to E. Mitchell | $500.00 | $350.00 |
| 05/20/2025 | Elizabeth Mitchell | 4.2 | Hearing Prep | $1,295.00 | $5,439.00 |
| 05/20/2025 | Elizabeth Mitchell | 0.9 | Draft joint witness list; communications with city re pending issues | $1,295.00 | $1,165.50 |
| 05/20/2025 | Matthew Umhofer | 3 | Hearing preparation | $1,295.00 | $3,885.00 |
| 05/21/2025 | Jon Powell | 0.5 | Finalize the subpoenas to appear for K. Bass and M. Rodriguez, deliver to E. Mitchell via email for review and service | $500.00 | $250.00 |
| 05/21/2025 | Madeline Matson | 1 | Finalize witness list and prepare witnesses for evidentiary hearing appearances | $500.00 | $500.00 |
| 05/21/2025 | Madeline Matson | 0.5 | Quality check ██████ and deliver results to J. Powell | $500.00 | $250.00 |
| 05/21/2025 | Patrick Nitchman | 0.2 | Email discussion re TrialPad for upcoming hearing | $500.00 | $100.00 |
| 05/21/2025 | Elizabeth Mitchell | 5.9 | Hearing Prep | $1,295.00 | $7,640.50 |
| 05/22/2025 | Jon Powell | 1.5 | Review and analyze the opposition to request to continue for citations to case law and the record, make changes to formatting, finalize the declaration and assemble the exhibits, file and serve via ECF | $500.00 | $750.00 |
| 05/22/2025 | Jon Powell | 3 | Coordinate the creation of demonstrative charts for the May 27 hearing, deliver charts to P. Webster via email for review and discussion, update and double check ██████ ██████, deliver everything to P. Nitchman for chart creations | $500.00 | $1,500.00 |
| 05/22/2025 | Jon Powell | 0.5 | Format the notice of apex witness and review and analyze citations to case law and the record, deliver mark up to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $250.00 |
| 05/22/2025 | Madeline Matson | 1 | Analyze and quality check ██████ ██████ and deliver results to J. Powell | $500.00 | $500.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 05/22/2025 | Madeline Matson | 0.6 | Research K. Bass ████ and deliver results to team | $500.00 | $300.00 |
| 05/22/2025 | Madeline Matson | 0.3 | Review Gibson Dunn notices of appearance to target action items; circulate with team | $500.00 | $150.00 |
| 05/22/2025 | Madeline Matson | 0.3 | Review Judge Carters orders in advance of evidentiary hearing to target action items; circulate with team | $500.00 | $150.00 |
| 05/22/2025 | Madeline Matson | 0.3 | Review briefing on hearing continuance to target action items; circulate with team | $500.00 | $150.00 |
| 05/22/2025 | Madeline Matson | 0.3 | Strategize with team re evidentiary hearing | $500.00 | $150.00 |
| 05/22/2025 | Patrick Nitchman | 0.2 | Research and download report re homelessness; circulate for attorney review | $500.00 | $100.00 |
| 05/22/2025 | Patrick Nitchman | 2.5 | Prepare charts based on ████ ; circulate to matter team for review and discussion; revise charts based on feedback | $500.00 | $1,250.00 |
| 05/22/2025 | Elizabeth Mitchell | 6.1 | Hearing Prep | $1,295.00 | $7,899.50 |
| 05/22/2025 | Elizabeth Mitchell | 2.7 | Review ex parte application to continue and draft opposition | $1,295.00 | $3,496.50 |
| 05/22/2025 | Adam Snyder | 0.2 | Call with E. Mitchell re briefing on ████ | $1,295.00 | $259.00 |
| 05/22/2025 | Adam Snyder | 4.3 | Review and analyze opposing counsel's objection and relevant caselaw; draft outline of arguments; draft brief | $1,295.00 | $5,568.50 |
| 05/22/2025 | Ingrid Nitchman | 2 | General Internet research for contact information for Emily Vaughn Henry; communications with E. Mitchell re same | $150.00 | $300.00 |
| 05/22/2025 | Ingrid Nitchman | 3 | Review past transcipts for instances of discussion between ████ ████ | $150.00 | $450.00 |
| 05/23/2025 | Jennifer Mitchell | 0.8 | Finalize & file Stipulation re Bass & Rodriguez subpoenas per E. Mitchell | $500.00 | $400.00 |
| 05/23/2025 | Jennifer Mitchell | 0.2 | Finalize & file joint witness list | $500.00 | $100.00 |
| 05/23/2025 | Jon Powell | 12 | Preparation for upcoming evidentiary hearing pull exhibts, number them, Bates lable them, prepare an exhibit list, draft subpoenas to appear at hearing, deliver to team via email for review and discussion | $500.00 | $6,000.00 |
| 05/23/2025 | Madeline Matson | 0.3 | Strategize with team re upcoming evidentiary hearing | $500.00 | $150.00 |
| 05/23/2025 | Madeline Matson | 0.5 | Edit and deliver final witness list to E. Mitchell | $500.00 | $250.00 |
| 05/23/2025 | Madeline Matson | 4 | Prepare all evidentiary hearing exhibits and deliver to J. Powell | $500.00 | $2,000.00 |
| 05/23/2025 | Madeline Matson | 0.5 | Prepare opposition to ex parte application and deliver to E. Mitchell | $500.00 | $250.00 |
| 05/23/2025 | Madeline Matson | 0.3 | Review notices of appearance to target action items; circulate with team | $500.00 | $150.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 05/23/2025 | Patrick Nitchman | 4.6 | Prepare additional charts; communication re same; phone call with E. Mitchell; discussion with M. Umhofer | $500.00 | $2,300.00 |
| 05/23/2025 | Elizabeth Mitchell | 5.7 | Hearing Prep | $1,295.00 | $7,381.50 |
| 05/23/2025 | Elizabeth Mitchell | 2.6 | Apex witness briefing | $1,295.00 | $3,367.00 |
| 05/23/2025 | Matthew Umhofer | 9.1 | Prepare for hearing | $1,295.00 | $11,784.50 |
| 05/23/2025 | Adam Snyder | 1.2 | Review and revise joint stipulation re City's motion for protective order | $1,295.00 | $1,554.00 |
| 05/23/2025 | Ingrid Nitchman | 3.1 | Download and transcribe 5/20/2025 City Council meeting | $150.00 | $465.00 |
| 05/24/2025 | Jon Powell | 7.5 | Preparation for upcoming evidentiary hearing pull exhibts, number them, Bates lable them, prepare an exhibit list, draft subpoenas to appear at hearing, deliver to team via email for review and discussion | $500.00 | $3,750.00 |
| 05/24/2025 | Elizabeth Mitchell | 6.6 | Hearing Prep | $1,295.00 | $8,547.00 |
| 05/24/2025 | Elizabeth Mitchell | 2.5 | Draft and file opposition to ex parte application to quash subpoenas | $1,295.00 | $3,237.50 |
| 05/25/2025 | Jon Powell | 5 | Preparation for upcoming evidentiary hearing pull exhibts, number them, Bates lable them, prepare an exhibit list, draft subpoenas to appear at hearing, deliver to team via email for review and discussion | $500.00 | $2,500.00 |
| 05/25/2025 | Elizabeth Mitchell | 3.7 | Hearing Prep | $1,295.00 | $4,791.50 |
| 05/26/2025 | Patrick Nitchman | 2.9 | Revise charts based on attorney feedback | $500.00 | $1,450.00 |
| 05/26/2025 | Patrick Nitchman | 0.4 | Review witness outline and compile exhibit list | $500.00 | $200.00 |
| 05/26/2025 | Patrick Nitchman | 3.4 | Prepare TrialPad iPad; prepare exhibit iPads; TrialPad training with M. Umhofer and E. Mitchell; load hearing transcripts to TrialPad | $500.00 | $1,700.00 |
| 05/26/2025 | Elizabeth Mitchell | 10.6 | Hearing prep | $1,295.00 | $13,727.00 |
| 05/27/2025 | Jon Powell | 3.5 | Continue to work on preparations for the coming days of the hearing, draft a request to ███████████████, deliver to M. Umhofer via email for review and discussion, file and serve via ECF | $500.00 | $1,750.00 |
| 05/27/2025 | Madeline Matson | 0.3 | Strategize re alliance settlement in process research project | $500.00 | $150.00 |
| 05/27/2025 | Madeline Matson | 0.3 | Review alliance ex parte briefing and order to target action items; circulate with attorney team | $500.00 | $150.00 |
| 05/27/2025 | Madeline Matson | 0.2 | Review City of LA objections to expert testimony to target action items; circulate with attorney team | $500.00 | $100.00 |

| 05/27/2025 | Patrick Nitchman | 10.2 | Travel to court and attend hearing; setup iPads; prepare exhibits; prepare video clips; revise charts with corrected data labels; draft notice of filing corrected exhibit; file notice of correct exhibit; file brief re admissibility standards | $500.00 | $5,100.00 |
|---|---|---|---|---|---|
| 05/27/2025 | Elizabeth Mitchell | 16.8 | Prep for, participate in evidentiary hearing | $1,295.00 | $21,756.00 |
| 05/27/2025 | Omid Rahimdel | 2 | Conducted research regarding the ███████ ████████ per M. Umhofer's request | $150.00 | $300.00 |
| 05/27/2025 | Omid Rahimdel | 2 | Created a report that sorted research findings regarding the ██████████████ for M. Umhofer's review | $150.00 | $300.00 |
| 05/27/2025 | Omid Rahimdel | 1.5 | Drafted a pleading that incorporated M. Umhofer's research regarding █████████ | $150.00 | $225.00 |
| 05/27/2025 | Omid Rahimdel | 0.1 | Printed a list of the current LA City Council members for the court's reference | $150.00 | $15.00 |
| 05/27/2025 | Omid Rahimdel | 3 | Attended LA Alliance hearing to take notes and provide support for M. Umhofer and E. Mitchell | $150.00 | $450.00 |
| 05/28/2025 | Jennifer Mitchell | 0.7 | Research with I. Nitchman M. Umhofer request for articles from City Council meeting, controller | $500.00 | $350.00 |
| 05/28/2025 | Madeline Matson | 2 | Prepare █████████ exhibit and deliver to E. Mitchell for evidentiary hearing cross | $500.00 | $1,000.00 |
| 05/28/2025 | Madeline Matson | 0.1 | Review and analyze Alliance request to Hold May 29 Hearing in Skid Row to target action items; circulate with team | $500.00 | $50.00 |
| 05/28/2025 | Madeline Matson | 0.3 | Research Mejia █████████ and deliver findings to M. Umhofer | $500.00 | $150.00 |
| 05/28/2025 | Madeline Matson | 0.1 | Review notice of filing corrected exhibit and supplemental exhibit to target action items; circulate with team | $500.00 | $50.00 |
| 05/28/2025 | Madeline Matson | 0.2 | Analyze minutes from Evidentiary Hearing Day 1 to target action items; circulate with team | $500.00 | $100.00 |
| 05/28/2025 | Madeline Matson | 0.2 | Review notice re conflict from City of LA to target action items; circulate with team | $500.00 | $100.00 |
| 05/28/2025 | Madeline Matson | 0.7 | Prepare electronic binder for exhibits 201-214 and deliver to M. Umhofer | $500.00 | $350.00 |
| 05/28/2025 | Patrick Nitchman | 7.3 | Travel to court and attend hearing; print corrected charts; troubleshoot spreadsheet exhibit in TrialPad; edit exhibit; prepare documents into new exhibits; email opposing counsel re updated exhibits sharefile | $500.00 | $3,650.00 |
| 05/28/2025 | Elizabeth Mitchell | 15 | Prep for, participate in evidentiary hearing | $1,295.00 | $19,425.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 05/28/2025 | Ingrid Nitchman | 1 | Researched and compiled City Council documents re homelessness emergency extension per M. Umhofer request | $150.00 | $150.00 |
| 05/28/2025 | Ingrid Nitchman | 2 | Transcribed City Council 5-27-2025 meeting | $150.00 | $300.00 |
| 05/28/2025 | Ingrid Nitchman | 0.8 | Researched and compiled Controller report on Unspent Homelessness budget per M. Umhofer request | $150.00 | $120.00 |
| 05/28/2025 | Omid Rahimdel | 4 | Attended LA Alliance hearing to take notes and provide support for M. Umhofer and E. Mitchell | $150.00 | $600.00 |
| 05/28/2025 | Omid Rahimdel | 1.5 | Created a chart detailing LA City Council districts, the current occupant, and prior occupant(s) for M. Umhofer | $150.00 | $225.00 |
| 05/28/2025 | Omid Rahimdel | 1.3 | Took detailed notes on the testimony of M. Szabo for E. Mitchell | $150.00 | $195.00 |
| 05/28/2025 | Omid Rahimdel | 0.5 | Delivered exhibits from court to office for scanning and sending | $150.00 | $75.00 |
| 05/28/2025 | Omid Rahimdel | 0.3 | Finalized M. Szabo testimony notes to send to E. Mitchell for her review | $150.00 | $45.00 |
| 05/29/2025 | Jennifer Mitchell | 0.5 | Review Agonafer outline per M. Matson request for additional exhibits | $500.00 | $250.00 |
| 05/29/2025 | Madeline Matson | 3.5 | Finalize exhibits for Agonafer and Bass ████████; and travel to and from courthouse re same | $500.00 | $1,750.00 |
| 05/29/2025 | Madeline Matson | 0.3 | Review and analyze transcripts from days one and two of evidentiary hearing to target action items; circulate with team | $500.00 | $150.00 |
| 05/29/2025 | Patrick Nitchman | 4.6 | Prepare exhibits; prepare audio clip; prepare video clip; communication re same; research ███████ | $500.00 | $2,300.00 |
| 05/29/2025 | Elizabeth Mitchell | 14.5 | Prep for, participate in evidentiary hearing | $1,295.00 | $18,777.50 |
| 05/29/2025 | Matthew Umhofer | 11 | Prepare for hearing, participate in hearing | $1,295.00 | $14,245.00 |
| 05/29/2025 | Omid Rahimdel | 2 | Attended LA Alliance hearing to take notes and provide support for M. Umhofer and E. Mitchell | $150.00 | $300.00 |
| 05/29/2025 | Omid Rahimdel | 0.6 | Revised and reprinted LA City Council chart to make requested changes from the City | $150.00 | $90.00 |
| 05/29/2025 | Omid Rahimdel | 0.3 | Picked up and delivered printed exhibits for M. Umhofer and E. Mitchell in relation to the LA Alliance hearing | $150.00 | $45.00 |
| 05/29/2025 | Omid Rahimdel | 0.5 | Picked up iPad materials for M. Umhofer in preparation for LA Alliance hearing the following day | $150.00 | $75.00 |
| 05/29/2025 | Omid Rahimdel | 2 | Reviewed court transcript from first day of LA Alliance hearings per M. Umhofer's request to ███████ | $150.00 | $300.00 |
| 05/29/2025 | Omid Rahimdel | 2 | Created summary of ██████ the LA Alliance hearings per M. Umhofer's request | $150.00 | $300.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 05/29/2025 | Omid Rahimdel | 0.4 | Resolved technical issue relating to blinded Access not properly functioning on iPad used in court per E. Mitchell's request | $150.00 | $60.00 |
| 05/30/2025 | Jennifer Mitchell | 1.2 | Pull Henry testimony from May 27 transcript per M. Umhofer request | $500.00 | $600.00 |
| 05/30/2025 | Madeline Matson | 2.5 | Analyze ████████████████████, deliver research results to E. Mitchell and M. Umhofer in court | $500.00 | $1,250.00 |
| 05/30/2025 | Madeline Matson | 0.3 | Read and analyze ████████████████ ████████ for M. Umhofer; circulate with team | $500.00 | $150.00 |
| 05/30/2025 | Madeline Matson | 0.2 | Review minutes of evidentiary hearings on 5/28 and 5/29 to target action items; circulate with team | $500.00 | $100.00 |
| 05/30/2025 | Patrick Nitchman | 4.6 | Prepare exhibits and video clips | $500.00 | $2,300.00 |
| 05/30/2025 | Elizabeth Mitchell | 12.2 | Prep for, participate in evidentiary hearing | $1,295.00 | $15,799.00 |
| 05/30/2025 | Matthew Umhofer | 10.4 | Prepare for hearing, participate in hearing | $1,295.00 | $13,468.00 |
| 05/30/2025 | Omid Rahimdel | 1 | Attended LA Alliance hearing to take notes and provide support for M. Umhofer and E. Mitchell | $150.00 | $150.00 |
| 05/30/2025 | Omid Rahimdel | 2 | Reviewed 39-page brief by E. Mitchell to ████████ ████████████ per M. Umhofer's request | $150.00 | $300.00 |
| 05/30/2025 | Omid Rahimdel | 2 | Created outline of ████████████████ in E. Mitchell's brief for M. Umhofer to review for LA Alliance hearing | $150.00 | $300.00 |
| 05/30/2025 | Omid Rahimdel | 1.5 | Reviewed charts provided by E. Mitchell to compare ████████ ████████████ | $150.00 | $225.00 |
| 05/30/2025 | Omid Rahimdel | 1 | Created a chart detailing the comparison of ████████████████ ████ per E. Mitchell's request | $150.00 | $150.00 |
| 05/30/2025 | Omid Rahimdel | 0.6 | Revised chart detailing the comparison of ████████████ ████ per E. Mitchell's request | $150.00 | $90.00 |
| 06/01/2025 | Elizabeth Mitchell | 6.2 | Prep for evidentiary hearing | $1,295.00 | $8,029.00 |
| 06/02/2025 | Jennifer Mitchell | 0.2 | Research & circulate ████████████████ ████ per M. Umhofer request | $500.00 | $100.00 |
| 06/02/2025 | Madeline Matson | 2 | Prepare physical binders and flash drives with evidentiary hearing exhibits and deliver to courthouse | $500.00 | $1,000.00 |
| 06/02/2025 | Madeline Matson | 0.3 | Review and analyze evidentiary hearing transcripts days three and four to target action items; deliver to team | $500.00 | $150.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 06/02/2025 | Madeline Matson | 0.3 | Analyze relevant related case docket; review and deliver supplemental briefs to E. Mitchell | $500.00 | $150.00 |
| 06/02/2025 | Patrick Nitchman | 0.4 | Research public source for full text of ▮▮▮▮ | $500.00 | $200.00 |
| 06/02/2025 | Patrick Nitchman | 2.1 | Prepare electronic exhibits for hearing; print physical exhibits and materials for hearing; create video clip exhibits; prepare flash drives for court | $500.00 | $1,050.00 |
| 06/02/2025 | Patrick Nitchman | 2.7 | Draft Notice of Lodging Video Exhibits; revise based on attorney feedback; prepare for filing; file documents | $500.00 | $1,350.00 |
| 06/02/2025 | Elizabeth Mitchell | 12.1 | Drive to/from, prep for, participate in evidentiary hearing | $1,295.00 | $15,669.50 |
| 06/02/2025 | Omid Rahimdel | 0.9 | Attend hearing; Resolve issue with printer and deliver documents for E. Mitchell for use in hearing | $150.00 | $135.00 |
| 06/03/2025 | Madeline Matson | 0.3 | Review transcripts and notice of lodging re days four and five of evidentiary hearing to target action items; deliver to team | $500.00 | $150.00 |
| 06/03/2025 | Madeline Matson | 0.2 | Review request for judicial notice to target action items; deliver to team | $500.00 | $100.00 |
| 06/03/2025 | Patrick Nitchman | 4.8 | Update exhibit list; analyze exhibits and basis for judicial notice; research legal standards; draft ▮▮▮▮▮; prepare documents for filing; file documents | $500.00 | $2,400.00 |
| 06/03/2025 | Elizabeth Mitchell | 12.9 | Drive to/from, prep for, participate in evidentiary hearing | $1,295.00 | $16,705.50 |
| 06/03/2025 | Omid Rahimdel | 4 | Attend hearing; assist team with research and fact gathering in evidentiary hearing | $150.00 | $600.00 |
| 06/04/2025 | Madeline Matson | 0.2 | Review and analyze City of LA response to Alliance Request for Judicial Notice to target action items; deliver to team | $500.00 | $100.00 |
| 06/04/2025 | Madeline Matson | 0.2 | Review evidentiary hearing transcript day 5 to target action items; deliver to team | $500.00 | $100.00 |
| 06/04/2025 | Elizabeth Mitchell | 10.8 | Drive to/from, prep for, participate in evidentiary hearing | $1,295.00 | $13,986.00 |
| 06/04/2025 | Matthew Umhofer | 10.1 | Prepare for and attend evidentiary hearing | $1,295.00 | $13,079.50 |
| 06/04/2025 | Omid Rahimdel | 4.5 | Attend hearing; assist team with research and fact gathering in evidentiary hearing | $150.00 | $675.00 |
| 06/05/2025 | Madeline Matson | 0.3 | Finishing reviewing exhibits associated with notice of lodging to target action items; circulate with team | $500.00 | $150.00 |
| 06/05/2025 | Madeline Matson | 0.3 | Review post-hearing briefing order to target action items; circulate with team | $500.00 | $150.00 |
| 06/05/2025 | Madeline Matson | 0.3 | Analyze minutes of evidentiary hearings to target action items; circulate with team | $500.00 | $150.00 |

| 06/05/2025 | Madeline Matson | 0.2 | Review hearing transcript day 6 and notice of filing to target action items; circulate with team | $500.00 | $100.00 |
|---|---|---|---|---|---|
| 06/05/2025 | Matthew Umhofer | 8.6 | Prepare for and attend evidentiary hearing | $1,295.00 | $11,137.00 |
| 06/05/2025 | Ingrid Nitchman | 2.5 | Assist in drafting supplemental brief | $150.00 | $375.00 |
| 06/05/2025 | Omid Rahimdel | 2.1 | Reviewed and revised notes on the cross-examination of Matthew Szabo for E. Mitchell. | $150.00 | $315.00 |
| 06/06/2025 | Elizabeth Mitchell | 8.7 | Review transcripts, research issues, and draft post-hearing briefing | $1,295.00 | $11,266.50 |
| 06/07/2025 | Elizabeth Mitchell | 7.6 | Review transcripts, research issues, and draft post-hearing briefing | $1,295.00 | $9,842.00 |
| 06/08/2025 | Elizabeth Mitchell | 16.9 | Review transcripts, research issues, and draft post-hearing briefing | $1,295.00 | $21,885.50 |
| 06/09/2025 | Jon Powell | 6 | Review and analyze the opening brief regarding evidentiary hearing citations to law and the record, prepare a markup of suggested changes and deliver to E. Mitchell via email for review and discussion, prepare table of contents and table of authorities, finalize and file and serve via ECF | $500.00 | $3,000.00 |
| 06/09/2025 | Elizabeth Mitchell | 6.9 | Research and draft opening brief; incorporate changes; final and coordinate filing | $1,295.00 | $8,935.50 |
| 06/10/2025 | Elizabeth Mitchell | 0.9 | Review transcripts | $1,295.00 | $1,165.50 |
| 06/10/2025 | Matthew Umhofer | 1.1 | Strategize re: next steps and ███████ | $1,295.00 | $1,424.50 |
| 06/11/2025 | Jon Powell | 1.5 | Prepare a tracking chart of ██████████ ████████ deliver to E. Mitchell via email for review and discussion | $500.00 | $750.00 |
| 06/11/2025 | Patrick Nitchman | 0.3 | Set account for accessing sealed exhibits; acquire and circulate exhibits | $500.00 | $150.00 |
| 06/11/2025 | Elizabeth Mitchell | 1.2 | Review TLS declaration and docs; communications re same | $1,295.00 | $1,554.00 |
| 06/11/2025 | Elizabeth Mitchell | 0.3 | Review transcripts | $1,295.00 | $388.50 |
| 06/11/2025 | Ingrid Nitchman | 2 | Assist with drafting Alliance reply brief | $150.00 | $300.00 |
| 06/12/2025 | Patrick Nitchman | 3.4 | Prepare ███████████████: revise and edits map | $500.00 | $1,700.00 |
| 06/12/2025 | Elizabeth Mitchell | 0.6 | Review TLS declaration and docs; communications re same | $1,295.00 | $777.00 |
| 06/12/2025 | Elizabeth Mitchell | 0.8 | Review transcripts | $1,295.00 | $1,036.00 |
| 06/12/2025 | Elizabeth Mitchell | 0.5 | Call with T. Goethals re orientation | $1,295.00 | $647.50 |
| 06/13/2025 | Patrick Nitchman | 0.8 | Review opposition brief filed by City; email correspondence re same | $500.00 | $400.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 06/13/2025 | Elizabeth Mitchell | 1.5 | Review transcripts | $1,295.00 | $1,942.50 |
| 06/13/2025 | Elizabeth Mitchell | 3.9 | Review city opposition brief; research and outline reply | $1,295.00 | $5,050.50 |
| 06/14/2025 | Elizabeth Mitchell | 8.8 | Research and draft reply brief | $1,295.00 | $11,396.00 |
| 06/14/2025 | Eugene Lim | 4.9 | Perform legal research on Defendants' limits of federal court powers arguments | $1,295.00 | $6,345.50 |
| 06/14/2025 | Eugene Lim | 1.1 | Draft arguments on ███████ in brief | $1,295.00 | $1,424.50 |
| 06/15/2025 | Patrick Nitchman | 4.7 | Update exhibit folders; research legal standards re ███████ | $500.00 | $2,350.00 |
| 06/15/2025 | Elizabeth Mitchell | 10.2 | Research and draft reply brief | $1,295.00 | $13,209.00 |
| 06/15/2025 | Eugene Lim | 4.8 | Perform legal research on Defendants' limits of federal court powers arguments | $1,295.00 | $6,216.00 |
| 06/15/2025 | Eugene Lim | 4.6 | Draft arguments on ███████ in brief and circulate | $1,295.00 | $5,957.00 |
| 06/16/2025 | Jon Powell | 2.5 | Review and analyze the reply in support of evidentiary hearing for citations to the report and case law, make suggested changes in track changes | $500.00 | $1,250.00 |
| 06/16/2025 | Patrick Nitchman | 2.5 | Draft section for reply brief re legal standards and analysis of ███████; revise based on attorney feedback to provide additional case analysis | $500.00 | $1,250.00 |
| 06/16/2025 | Eugene Lim | 1.5 | Perform legal research re ███████; revise brief, and circulate | $1,295.00 | $1,942.50 |
| 06/17/2025 | Jon Powell | 4 | Continue work on the review and analysis of the reply in support of evidentiary hearing for citations to the report and case law, review and update the Mitchell declaration, make suggested changes in track changes, draft the table of contents and table of authorities, deliver to E. Mitchell via email for review and discussion, file and serve via ECF | $500.00 | $2,000.00 |
| 06/18/2025 | Elizabeth Mitchell | 2.1 | Draft declarations and exhibits; coordinate e-filing | $1,295.00 | $2,719.50 |
| 06/19/2025 | Elizabeth Mitchell | 0.7 | Housing and homelessness committee | $1,295.00 | $906.50 |
| 06/19/2025 | Elizabeth Mitchell | 1.1 | Review city council meeting and transcript; coordinate notice to court re same | $1,295.00 | $1,424.50 |
| 06/19/2025 | Ingrid Nitchman | 3 | Download and transcribe Housing and 2025-06-18 Homelessness Committee Meeting | $150.00 | $450.00 |
| 06/20/2025 | Jon Powell | 1 | Prepare a first draft of a motion ███████, Umhofer declaration, and a proposed order, deliver to M. Umhofer via email for review and discussion | $500.00 | $500.00 |
| 06/20/2025 | Patrick Nitchman | 2.9 | Draft Request for Judicial Notice re ███████; prepare exhibits; prepare documents for filing; file documents | $500.00 | $1,450.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 06/20/2025 | Elizabeth Mitchell | 0.2 | Review and approve joint report | $1,295.00 | $259.00 |
| 06/20/2025 | Elizabeth Mitchell | 0.5 | Communications with M. Martinez and City re ███████████; discussions with team re same | $1,295.00 | $647.50 |
| 06/20/2025 | Elizabeth Mitchell | 0.4 | Review and coordinate e-filing notice | $1,295.00 | $518.00 |
| 06/23/2025 | Matthew Umhofer | 2.7 | Review decision, strategize re: same | $1,295.00 | $3,496.50 |
| 06/24/2025 | Elizabeth Mitchell | 4.2 | Review and analyze order re motion for settlement agreement enforcement | $1,295.00 | $5,439.00 |
| 06/24/2025 | Matthew Umhofer | 2.3 | Research and draft fee motion | $1,295.00 | $2,978.50 |
| 06/25/2025 | Elizabeth Mitchell | 1 | Calls with P. Webster and M. Umhofer re status and strategy | $1,295.00 | $1,295.00 |
| 06/25/2025 | Elizabeth Mitchell | 1.6 | Strategize with team re order follow up | $1,295.00 | $2,072.00 |
| 06/25/2025 | Elizabeth Mitchell | 0.4 | Call with M. Martinez | $1,295.00 | $518.00 |
| 06/26/2025 | Elizabeth Mitchell | 0.2 | Call with L. Raagas re CAHS | $1,295.00 | $259.00 |
| 06/26/2025 | Elizabeth Mitchell | 0.5 | Call with A&M team re data monitor | $1,295.00 | $647.50 |
| 06/26/2025 | Elizabeth Mitchell | 0.8 | Analysis re order re city compliance | $1,295.00 | $1,036.00 |
| 06/29/2025 | Matthew Umhofer | 3.7 | Research and draft fee motion | $1,295.00 | $4,791.50 |
| 06/30/2025 | Elizabeth Mitchell | 0.6 | Edit LA Alliance response re policy re city order | $1,295.00 | $777.00 |
| 06/30/2025 | Elizabeth Mitchell | 0.8 | Strategize with LAAHR team re order | $1,295.00 | $1,036.00 |
| 06/30/2025 | Elizabeth Mitchell | 0.4 | Review research re CFCA | $1,295.00 | $518.00 |
| 06/30/2025 | Matthew Umhofer | 6.3 | Research and draft fee motion | $1,295.00 | $8,158.50 |
| 06/30/2025 | Omid Rahimdel | 0.8 | Conduct case law research for M. Umhofer to find cases where ████████████████ | $150.00 | $120.00 |
| 06/30/2025 | Omid Rahimdel | 0.6 | Review cases detailing ██████████ to identify relevant quotes. | $150.00 | $90.00 |
| 06/30/2025 | Omid Rahimdel | 0.4 | Conduct case law research for M. Umhofer to find cases where ████████████████ | $150.00 | $60.00 |
| 06/30/2025 | Omid Rahimdel | 0.5 | Review cases detailing ██████████ to identify relevant quotes. | $150.00 | $75.00 |
| 06/30/2025 | Omid Rahimdel | 0.5 | Create a string cite of cases and quotes that ███████████ ████████. | $150.00 | $75.00 |
| 07/14/2025 | Matthew Umhofer | 2 | Communications re: audit, review documents re: same | $1,295.00 | $2,590.00 |
| 08/10/2025 | Matthew Umhofer | 0.9 | Strategize re: ██████████ | $1,295.00 | $1,165.50 |
| TOTAL | | 1358.90 | | | $1,392,818.00 |

# Exhibit C

## UMK Costs Incurred

| Date | Account | Debit |
|------|---------|-------|
| 2024-10-02 | Parking | $20.00 |
| 2024-10-07 | Parking | $20.00 |
| 2024-10-08 | Parking | $17.50 |
| 2024-10-16 | Parking | $12.00 |
| 2024-10-25 | Parking | $20.00 |
| 2024-11-15 | Mailing & Postage | $33.80 |
| 2024-11-21 | Meals | $20.04 |
| 2024-11-21 | Parking | $12.00 |
| 2024-12-13 | Parking | $9.70 |
| 2025-01-07 | Meals | $14.67 |
| 2025-01-07 | Meals | $74.13 |
| 2025-02-11 | Meals | $10.01 |
| 2025-02-26 | Taxi/Uber/Car Service | $11.94 |
| 2025-02-26 | Taxi/Uber/Car Service | $13.84 |
| 2025-03-08 | Parking | $10.00 |
| 2025-03-27 | Parking | $12.00 |
| 2025-05-15 | Hotel | $42.02 |
| 2025-05-26 | Hotel | $39.09 |
| 2025-05-27 | Hotel | $259.31 |
| 2025-05-27 | Meals | $9.33 |
| 2025-05-27 | Meals | $6.58 |
| 2025-05-27 | Meals | $9.05 |
| 2025-05-27 | Meals | $55.76 |
| 2025-05-28 | Parking | $55.00 |
| 2025-05-28 | Meals | $19.48 |
| 2025-05-28 | Meals | $19.65 |
| 2025-05-29 | Parking | $42.00 |
| 2025-05-29 | Meals | $10.92 |
| 2025-05-29 | Meals | $12.62 |
| 2025-05-29 | Meals | $16.90 |
| 2025-05-29 | Meals | $7.40 |
| 2025-05-30 | Parking | $42.00 |

| | | |
|---|---|---|
| 2025-05-30 | Hotel | $496.40 |
| 2025-05-30 | Meals | $21.07 |
| 2025-05-30 | Meals | $42.64 |
| 2025-05-31 | Hotel | $186.94 |
| 2025-05-31 | Hotel | $1,395.36 |
| 2025-06-02 | Parking | $42.00 |
| 2025-06-02 | Parking | $12.99 |
| 2025-06-02 | Meals | $2.15 |
| 2025-06-02 | Meals | $13.72 |
| 2025-06-02 | Meals | $25.13 |
| 2025-06-03 | Parking | $42.00 |
| 2025-06-03 | Taxi/Uber/Car Service | $74.42 |
| 2025-06-03 | Meals | $2.15 |
| 2025-06-03 | Meals | $2.15 |
| 2025-06-03 | Meals | $7.68 |
| 2025-06-03 | Meals | $12.07 |
| 2025-06-03 | Meals | $21.29 |
| 2025-06-03 | Meals | $9.55 |
| 2025-06-03 | Subscription | $135.79 |
| 2025-06-03 | Subscription | $17.45 |
| 2025-06-04 | Parking | $42.00 |
| 2025-06-04 | Taxi/Uber/Car Service | $14.88 |
| 2025-06-04 | Meals | $32.82 |
| 2025-06-16 | Copier and Printer | $235.82 |
| | | **$3,847.21** |

# Exhibit D

| Date | Service Item | Time | Description | Rate | Total |
|---|---|---|---|---|---|
| 2024-07-01 | Paul Webster | 1.50 | Meeting with A&M re audit | $200 | $300.00 |
| 2024-07-01 | Paul Webster | 0.30 | Advise re strategy | $200 | $60.00 |
| 2024-07-01 | Paul Webster | 0.50 | Communications re audit | $200 | $100.00 |
| 2024-07-02 | Paul Webster | 0.50 | Communications re subsidiary | $200 | $100.00 |
| 2024-07-02 | Paul Webster | 1.00 | Weekly Marketing and Comms meeting | $200 | $200.00 |
| 2024-07-03 | Paul Webster | 0.50 | Email Followup to Laura A&M | $200 | $100.00 |
| 2024-07-03 | Paul Webster | 0.75 | Call w City Council Contact | $200 | $150.00 |
| 2024-07-08 | Paul Webster | 1.50 | Discussion w M. Matson of UMK | $200 | $300.00 |
| 2024-07-09 | Paul Webster | 1.00 | Consituent meeting | $200 | $200.00 |
| 2024-07-09 | Paul Webster | 0.75 | call with E. Mitchell re status and strategy | $200 | $150.00 |
| 2024-07-09 | Paul Webster | 1.25 | Review draft email  re HMIS and other county-related issues | $200 | $250.00 |
| 2024-07-11 | Paul Webster | 5.50 | Travel and meetings re enforcement and settlement compliance | $200 | $1,100.00 |
| 2024-07-11 | Paul Webster | 0.50 | Call w City re settlement and monitoring | $200 | $100.00 |
| 2024-07-16 | Paul Webster | 0.75 | Draft  strategic communications | $200 | $150.00 |
| 2024-07-16 | Paul Webster | 0.50 | Call with E. Mitchell re status and strategy | $200 | $100.00 |
| 2024-07-26 | Paul Webster | 0.50 | Call with E. Mitchell re status and strategy | $200 | $100.00 |
| 2024-07-26 | Paul Webster | 1.00 | Call with City Councilmember | $200 | $200.00 |
| 2024-07-30 | Paul Webster | 1.25 | Meeting with City Council District Staff | $200 | $250.00 |
| 2024-08-07 | Paul Webster | 4.00 | Homelessness Committee | $200 | $800.00 |
| 2024-08-07 | Paul Webster | 1.75 | Draft reports beds issues and encampment resolutions | $200 | $350.00 |
| 2024-08-09 | Paul Webster | 0.50 | Calls with D. Conway and E. Mitchell re status and strategy | $200 | $100.00 |
| 2024-08-14 | Paul Webster | 0.50 | Strategize re ballot initiative due to City lack of compliance | $200 | $100.00 |
| 2024-08-16 | Paul Webster | 1.00 | CoC Progress w A&M | $200 | $200.00 |
| 2024-08-27 | Paul Webster | 0.50 | Discussion with Special Master Martinez | $200 | $100.00 |
| 2024-08-28 | Paul Webster | 1.00 | Meeting w county, city, special masters; | $200 | $200.00 |
| 2024-08-29 | Paul Webster | 6.00 | Prep for, drive to/from, attend hearing | $200 | $1,200.00 |
| 2024-08-30 | Paul Webster | 0.30 | Communications with City re County HMIS issues and reporting | $200 | $60.00 |

| Date | Name | Hours | Description | Rate | Amount |
|---|---|---|---|---|---|
| 2024-08-30 | Paul Webster | 0.10 | Call with E. Mitchell and D. Conway re status and strategy | $200 | $20.00 |
| 2024-09-05 | Paul Webster | 2.00 | LAA Member Meeting | $200 | $400.00 |
| 2024-09-11 | Paul Webster | 1.50 | CD1 Coalition Meeting | $200 | $300.00 |
| 2024-09-11 | Paul Webster | 1.00 | Discussion w. Plaintiff G.F. re City compliance | $200 | $200.00 |
| 2024-09-12 | Paul Webster | 0.50 | Calls with M. Martinez and E. Mitchell | $200 | $100.00 |
| 2024-09-18 | Paul Webster | 0.50 | Calls with E. Mitchell and M. Umhofer re status and strategy | $200 | $100.00 |
| 2024-09-23 | Paul Webster | 1.00 | Call with auditors | $200 | $200.00 |
| 2024-10-02 | Paul Webster | 6.00 | Prep for, travel to and from, attend hearing; debrief re same | $200 | $1,200.00 |
| 2024-10-02 | Paul Webster | 2.50 | vitual attendance Housing and Homelessness Committee | $200 | $500.00 |
| 2024-10-03 | Paul Webster | 1.00 | Call with LAAHR team re status and strategy | $200 | $200.00 |
| 2024-10-03 | Paul Webster | 1.50 | Marketing and Strategic Comms Discussion w DK | $200 | $300.00 |
| 2024-10-09 | Paul Webster | 3.00 | Prep for, attend meet and confer with County, City | $200 | $600.00 |
| 2024-10-09 | Paul Webster | 1.00 | Meeting wtih M. Matson, T. Campbell re systemic problems | $200 | $200.00 |
| 2024-10-15 | Paul Webster | 0.75 | Comment re LA Alliance outline (M. Matson) | $200 | $150.00 |
| 2024-10-16 | Paul Webster | 7.00 | Prep for, travel to and from, attend hearing | $200 | $1,400.00 |
| 2024-10-16 | Paul Webster | 3.00 | Attend City Housing and Homelessness Committee Meeting | $200 | $600.00 |
| 2024-10-16 | Paul Webster | 1.50 | Calls with Special Master and Legal Team | $200 | $300.00 |
| 2024-10-18 | Paul Webster | 1.00 | Call with E. Mitchell re status and strategy | $200 | $200.00 |
| 2024-10-23 | Paul Webster | 8.00 | Travel to/from, attend listening session at Hope the Mission | $200 | $1,600.00 |
| 2024-10-23 | Paul Webster | 0.50 | Strategize with E. Mitchell re status | $200 | $100.00 |
| 2024-10-29 | Paul Webster | 1.00 | Call with E. Mitchell re status and strategy | $200 | $200.00 |
| 2024-10-29 | Paul Webster | 1.50 | Review LAHSA response to M. Martinez | $200 | $300.00 |
| 2024-11-05 | Paul Webster | 1.00 | Call with E. Mitchell re status and strategy | $200 | $200.00 |
| 2024-11-08 | Paul Webster | 1.00 | Review CoC Program w A&M | $200 | $200.00 |
| 2024-11-14 | Paul Webster | 1.00 | Call with E. Mitchell re status and strategy | $200 | $200.00 |
| 2024-11-18 | Paul Webster | 0.50 | Call w H Tashjian re settlement monitoring | $200 | $100.00 |

| Date | Name | Hours | Description | Rate | Total |
|---|---|---|---|---|---|
| 2024-11-19 | Paul Webster | 2.00 | Review County audit | $200 | $400.00 |
| 2024-11-21 | Paul Webster | 7.00 | Prep for, drive to/from, attend hearing re audit | $200 | $1,400.00 |
| 2024-11-21 | Paul Webster | 0.50 | Debrief with D. Bang and E. Mitchell | $200 | $100.00 |
| 2024-11-21 | Paul Webster | 0.50 | Call with M. Martinez re audit | $200 | $100.00 |
| 2024-11-22 | Paul Webster | 1.00 | Call with E. Mitchell re accountability strategy | $200 | $200.00 |
| 2024-12-03 | Paul Webster | 1.00 | Call with E. Mitchell re status/strategy | $200 | $200.00 |
| 2024-12-04 | Paul Webster | 2.50 | LA City Council Housing and Homelessness Committee meeting | $200 | $500.00 |
| 2024-12-10 | Paul Webster | 1.00 | Calls with E. Mitchell re status and strategy | $200 | $200.00 |
| 2024-12-11 | Paul Webster | 1.00 | Meet and confer with City | $200 | $200.00 |
| 2024-12-15 | Paul Webster | 2.00 | Prepare document on  LAHSA effectiveness | $200 | $400.00 |
| 2025-01-06 | Paul Webster | 0.30 | Strategize with E. Mitchell | $200 | $60.00 |
| 2025-01-07 | Paul Webster | 6.50 | Travel to/from, attend hearing; debrief with E. Mitchell re same | $200 | $1,300.00 |
| 2025-01-09 | Paul Webster | 1.00 | Constituent calls and emails | $200 | $200.00 |
| 2025-01-14 | Paul Webster | 0.50 | Call w E. Mitchell re status and strategy | $200 | $100.00 |
| 2025-01-15 | Paul Webster | 1.25 | Constituent calls and emails | $200 | $250.00 |
| 2025-01-16 | Paul Webster | 0.75 | Call with E. Mitchell re status and strategy | $200 | $150.00 |
| 2025-01-28 | Paul Webster | 0.75 | Call with D. Steier and E. Mitchell re status and  strategy | $200 | $150.00 |
| 2025-02-07 | Paul Webster | 1.00 | Call with E. Mitchell re status and strategy | $200 | $200.00 |
| 2025-02-10 | Paul Webster | 0.50 | Calls with E. Mitchell re status and strategy | $200 | $100.00 |
| 2025-02-10 | Paul Webster | 0.75 | Call with E. Mitchell re status and strategy | $200 | $150.00 |
| 2025-02-10 | Paul Webster | 1.50 | Constituent calls and emails | $200 | $300.00 |
| 2025-02-11 | Paul Webster | 0.30 | Edit policy update re compliance | $200 | $60.00 |
| 2025-03-03 | Paul Webster | 8.50 | Travel to/from, attend listening sessions and meetings re City/County/LAHSA and outreach support | $200 | $1,700.00 |
| 2025-03-03 | Paul Webster | 3.00 | Review and analyze draft audit report | $200 | $600.00 |
| 2025-03-04 | Paul Webster | 1.75 | Constituent calls and emails | $200 | $350.00 |
| 2025-03-05 | Paul Webster | 1.00 | Draft strategic communications re audit | $200 | $200.00 |
| 2025-03-05 | Paul Webster | 2.50 | Review audit analysis by T. Campbell | $200 | $500.00 |

| 2025-03-10 | Paul Webster | 1.25 | Meeting re accountability options; research re same | $200 | $250.00 |
|---|---|---|---|---|---|
| 2025-03-11 | Paul Webster | 1.00 | Call with E. Mitchell and D. Steier re status and strategy; draft email to D. Kozlowski re same | $200 | $200.00 |
| 2025-03-18 | Paul Webster | 1.00 | Call with D. Steier and E. Mitchell | $200 | $200.00 |
| 2025-03-18 | Paul Webster | 0.75 | Draft strategic communications | $200 | $150.00 |
| 2025-03-19 | Paul Webster | 2.00 | Housing and Homelessness Committee Meeting | $200 | $400.00 |
| 2025-03-19 | Paul Webster | 2.25 | Constituent calls and emails | $200 | $450.00 |
| 2025-03-20 | Paul Webster | 1.00 | Call with E. Mitchell re status and strategy | $200 | $200.00 |
| 2025-03-24 | Paul Webster | 0.50 | Review and discuss court order re encampments | $200 | $100.00 |
| 2025-03-27 | Paul Webster | 8.50 | Drive to/from, participate in hearing; communications re same | $200 | $1,700.00 |
| 2025-03-30 | Paul Webster | 1.25 | Constituent calls and emails | $200 | $250.00 |
| 2025-03-31 | Paul Webster | 1.00 | Meet with A&M re report | $200 | $200.00 |
| 2025-04-01 | Paul Webster | 0.75 | Coordinate re Alliance breakdown of audit | $200 | $150.00 |
| 2025-04-01 | Paul Webster | 0.50 | Calls with E. Mitchell | $200 | $100.00 |
| 2025-04-02 | Paul Webster | 0.50 | Review and communications re LAHSA | $200 | $100.00 |
| 2025-04-02 | Paul Webster | 1.50 | Constituent calls and emails | $200 | $300.00 |
| 2025-04-02 | Paul Webster | 1.50 | Homelessness and Housing committee | $200 | $300.00 |
| 2025-04-03 | Paul Webster | 0.50 | Strategize re receivership | $200 | $100.00 |
| 2025-04-04 | Paul Webster | 1.75 | Calls and emails re LAHSA resignation | $200 | $350.00 |
| 2025-04-16 | Paul Webster | 1.00 | Call with E. Mitchell status and strategy | $200 | $200.00 |
| 2025-04-29 | Paul Webster | 1.00 | Calls with M. Umhofer and E. Mitchell re status and strategy | $200 | $200.00 |
| 2025-05-14 | Paul Webster | 1.25 | Homeless and Housing Committee Review | $200 | $250.00 |
| 2025-05-15 | Paul Webster | 8.50 | Drive to/from, attend hearing | $200 | $1,700.00 |
| 2025-05-23 | Paul Webster | 3.00 | Hearing prep | $200 | $600.00 |
| 2025-05-23 | Paul Webster | 2.50 | Constituent calls and emails | $200 | $500.00 |
| 2025-05-27 | Paul Webster | 8.50 | Evidentiary hearing | $200 | $1,700.00 |
| 2025-05-28 | Paul Webster | 1.50 | Constituent calls and emails | $200 | $300.00 |
| 2025-05-30 | Paul Webster | 12.50 | Prep for, participate in evidentiary hearing | $200 | $2,500.00 |
| **TOTAL** | | **202.05** | | | **$40,410.00** |

# Exhibit E

# AGREEMENT FOR PROFESSIONAL LEGAL SERVICES

## BETWEEN

## THE CITY OF LOS ANGELES

## AND

## GIBSON, DUNN & CRUTCHER LLP

## AGREEMENT FOR PROFESSIONAL LEGAL SERVICES

C-201616

THIS AGREEMENT, Contract Number _____, is made and entered into by and between the City of Los Angeles ("City"), a municipal corporation, acting through the Office of the City Attorney ("City Attorney"), and Gibson, Dunn & Crutcher LLP, a Delaware limited liability partnership ("Outside Counsel" or "Gibson Dunn"), with reference to the following:

### RECITALS

WHEREAS, the City Attorney and the Los Angeles City Council/Board have approved the use of Outside Counsel to assist the City Attorney with legal representation in the matter of the LA Alliance for Human Rights, et. al v. City of Los Angeles, et. al; and

WHEREAS, Outside Counsel indicates that it has the expertise and competence to perform the professional legal services sought by the City; and

WHEREAS, the City Attorney has selected Outside Counsel to provide assistance in such matters, Outside Counsel is willing to provide such assistance and represents to the City that it is able to do so without a conflict of interest; and

WHEREAS, the professional legal services to be performed by the Outside Counsel are of an expert and technical nature and are temporary and occasional in character;

NOW, THEREFORE, in consideration of the promises, covenants, terms and conditions contained herein, the parties hereby covenant, agree and represent as follows:

### I.    SCOPE OF REPRESENTATION AND PARTNERING

Outside Counsel is retained to assist the City Attorney in providing legal representation for the City in the matter of LA Alliance for Human Rights, et. al v. City of Los Angeles, et. al. Outside Counsel shall at all times work under the direction of the City Attorney. The City and City Attorney shall rely on the competence, expertise and experience of Outside Counsel. At all times, Outside Counsel shall provide professional legal advice and services at the highest level expected of law firms providing legal services in the Los Angeles region. This is a non-exclusive agreement to provide legal services to the City and, at the City Attorney's discretion, the City may augment the services with another law firm or law firms or select to terminate Outside Counsel's services in a manner consistent with this Agreement.

City Attorney and Outside Counsel recognize and agree that an important purpose of this Agreement is to promote effective collaboration between City Attorney and Outside Counsel so that, among other things, City Attorney is able to gain familiarity with the legal issues presented in these matters and for Outside Counsel to impart substantive subject matter knowledge to City Attorney's lawyers. To this end, City Attorney and Outside Counsel both agree to make reasonable efforts to coordinate their efforts and work.

1

## II.    GENERAL CONDITIONS

### A.    Period of Performance

This Agreement shall begin on the effective date hereof and will be considered terminated at the earlier of (a) City's termination of Outside Counsel's representation pursuant to Section II.B. below, (b) Outside Counsel's withdrawal from its representation of City, or (c) the substantial completion of Outside Counsel's work for City.  In the event there has been no work performed by Outside Counsel's attorneys on City's behalf for a period of six consecutive months, the parties agree that the attorney-client relationship will have been terminated, unless the matter on which Outside Counsel was engaged is a litigation matter that is still pending in a court or other tribunal.

### B.    Termination or Suspension of Legal Services

#### 1.    Termination or Suspension for City's Convenience

a)    Services performed under this Agreement may be terminated or suspended in whole or in part at any time by City Attorney.  City Attorney shall terminate or suspend services by delivering to Outside Counsel a written notice specifying the extent to which services are terminated or suspended and the effective date of such termination or suspension.

b)    After receiving a notice of termination or suspension, unless otherwise directed by City Attorney, Outside Counsel shall:

1)    Stop services on the date and to the extent specified in the notice; and

2)    Continue to perform services not terminated or suspended by the notice.

c)    After receiving a notice of termination, Outside Counsel shall submit final billing for services rendered through the time of termination no later than thirty (30) calendar days from the effective date of termination.

#### 2.    Termination for Outside Counsel's Default

a)    Services performed under this Agreement may be terminated in whole or in part by City Attorney upon a default by Outside Counsel.  Under this Agreement, Outside Counsel will be deemed in default if Outside Counsel:

1)    Fails to perform the service(s) within the specified time period; or

2)    Fails to perform any of the provisions contained in this Agreement; or

3)    Fails to make adequate progress in the matter and

2

endangers the performance of this Agreement's terms.

b)      If City Attorney wholly or partially terminates services under this Agreement, City Attorney may obtain alternative legal services with terms and in a manner City Attorney deems appropriate.

3.      Termination By Outside Counsel

Outside Counsel may withdraw from representation and terminate this agreement with consent of the City Attorney or for good cause, which includes the City's breach of this agreement or refusal to cooperate with Outside Counsel or follow our Outside Counsel's advice on a material matter, as well as in any other circumstance permitted by applicable rules.   Otherwise, Outside Counsel's representation of the City will terminate upon the earlier of May 21, 2028, or six months of no work recorded by Outside Counsel on the matter.

4.      Transfer of Client File

Outside Counsel shall give City Attorney the Client File (defined below) for every matter in which Outside Counsel is substituted out as attorney of record. Outside Counsel shall reasonably cooperate with City in connection with its transition to alternate counsel.

5.      Notwithstanding such termination, City will remain obligated to pay Outside Counsel for all services provided and to reimburse Outside Counsel for all costs and expenses paid or incurred on City's behalf prior to such termination in accordance with the terms of this Agreement.  If requested by City Attorney, Outside Counsel shall file a Motion for Substitution of Counsel or other necessary pleadings with the court when instructed to do so by City Attorney and shall deliver a Closing Report to City Attorney as soon as reasonably practicable of the termination of services.  The Closing Report shall include:

1)      A brief description of the facts of the case;

2)      A discussion of applicable law;

3)      A description of the status of the case; and

4)      A list and description of future scheduled court appearances.

C.      Independent Contractor Status

This Agreement is between City and Outside Counsel and is not intended, and shall not be construed, to create, as between City and Outside Counsel, the relationship of agent, servant, employee, partnership, joint venture or association. Outside Counsel understands and agrees that all Outside Counsel personnel furnishing services to City under this Agreement are employees solely of Outside Counsel and not City.  Outside

Counsel shall bear the sole responsibility and liability for furnishing workers' compensation benefits to any Outside Counsel personnel for injuries arising from services performed under this Agreement.

D.    Ownership of Documents

All information, documents, records, reports, data, or other materials furnished to Outside Counsel or other such information, documents, records, data or other materials to which Outside Counsel has access during their performance pursuant to this Agreement are deemed confidential and shall remain the property of City ("City Information"). All memorandum, filings, drafts, closing sets, pleadings, deposition transcripts, exhibits, physical evidence, expert's reports, and other work product produced in the course of representing the City for which Outside Counsel has been paid, together with the City Information is defined as the "Client File". Outside Counsel shall not make use of City Information for any purpose unrelated to the Retained Matter and shall not make oral or written disclosure thereof, other than as necessary for their performance hereunder, in each case, without the prior written approval of City Attorney.

Outside Counsel will retain the Client File electronically and/or in its off-site storage facilities in accordance with Outside Counsel's records retention policy. In the absence of any other arrangements made with City, Outside Counsel's records retention policy provides that upon the expiration of ten years after a matter has been closed, all materials in the file may be destroyed or discarded without notice to City.

The "Firm's Files" are comprised of administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and internal correspondence and lawyers' work product (such as drafts, notes, internal memoranda, mental impressions, and legal and factual research), or other similar materials. The Firm's Files are Outside Counsel's property and, as such, Outside Counsel may retain or dispose of the Firm's Files at its sole discretion.

E.    Insurance

Outside Counsel shall comply with the insurance requirements described in this Agreement. If Outside Counsel does not obtain professional liability insurance or maintain the insurance throughout the duration of this Agreement, City Attorney may terminate the Agreement.

F.    Governing Law

The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of California and any action brought by either party on this Agreement shall be brought in the Los Angeles County Central District of California Superior Courts.

G.    Validity

The invalidity in whole or in part of any provision of this Agreement shall not void or affect the validity of any other provision.

H.    Waiver

4

No waiver of a breach of any provision of this Agreement by either party shall constitute a waiver of any future breach of the provision or any breach of any other provision of this Agreement. Failure of either party to enforce any provision of this Agreement at any time shall not be construed as a waiver of that provision.

I.    Remedies Reserved to City

The remedies reserved to City shall be cumulative and additional to any other remedies provided in law or equity.

J.    Authorization for Warranty

Outside Counsel represents and warrants that the signatory(ies) to this Agreement is(are) fully authorized to obligate Outside Counsel and that all corporate acts necessary to the execution of this Agreement have been accomplished.

K.    Changes and Written Amendment of Terms

Material changes to this Agreement shall only be effective upon the execution of a mutually-approved written amendment.

## III.   OUTSIDE COUNSEL'S SERVICES AND RESPONSIBILITIES

A.    Professional Ethics and Conflicts of Interest

Outside Counsel is a large international law firm with active practices in a variety of areas including regulatory matters, government contracts and litigation. City recognizes that Outside Counsel currently represents and may in the future represent other clients that, from time to time, may have interests adverse to City. Any such representation shall be in accordance with applicable rules of professional conduct.

In a variety of matters currently being handled by Outside Counsel for other clients, the scope of Outside Counsel's representation is such that the City and other City agencies are or may be or later become adverse parties in such matters. Based upon the results of our conflict search, we do not believe that Outside Counsel's representations of other clients presents any direct conflict with the City, other than the representations identified below (collectively, the "Existing Matters"), none of which is directly related to the litigation matter in which Outside Counsel has been asked to represent the City (the "Retained Matter"):

- Representation of Uber in connection with *People v. Uber Technologies, Inc.*
- Representation of HomeAway in connection with *People v. HomeAway.com, Inc.*
- Representation of HRRP Garland in connection with *LA Care v. HRRP Garland, LLC* and *City of Los Angeles v. HRRP Garland, LLC*
- Representation of Alliance for Automotive Innovation as amicus curiae in litigation in the D.C. Circuit concerning Corporate Average Fuel Economy standards
- Representation of SoCalGas and SoCal Edison (and/or their affiliates) in connection with various matters related to franchise agreements with the City (and Port and LAX)
- Representation of MacQuarie in connection with a lease agreement with the City/Port

5

- Representation of SSA Marine/Carrix and Blackstone Infrastructure Partners in connection with a lease agreement related to the Port
- Representation of Berggruen Institute in connection with a proposed Specific Plan and related CEQA approvals for a think tank / educational institute in CD11
- Representation of Al Violet (Hines) in connection with a proposed office development project in Downtown Los Angeles (CD14)
- Representation of Phillips 66 in connection with a proposed conversion of a Wilmington refinery to a different industrial use (CD15)
- Representation of the Los Angeles Rams in connection with a proposed Master Plan for a new practice facility and mixed-use development in Warner Center (CD3)
- Representation of Burlington Stores in connection with potential land use development issues related to improvements to existing store location(s) in the San Fernando Valley
- Representation of Fifteen Group in connection with a potential redevelopment project in CD14
- Representation of Prime Property Capital in connection with a potential land use application in CD4

In addition to the Existing Matters, Outside Counsel also expects to represent existing and future clients in future matters, including litigation, under circumstances in which the City and other City agencies may be adverse parties (collectively, "Future Matters").

To ensure that our work for the City does not adversely affect the ability of Outside Counsel to continue to represent other clients on current or future matters where their interests may be adverse to the City or any agencies thereof, including but not limited to litigation adverse to the City or any of its agencies, the City agrees that:

(1) the City is Outside Counsel's only client in the Retained Matter, and Outside Counsel shall not be deemed to represent (a) the City with respect to any matter other than the Retained Matter; or (b) any other agency with respect to the Retained Matter or any other matters, in each case, absent both parties' consent and our completing a conflicts check;

(2) the City waives any conflict of interest that might exist or arise from Outside Counsel's representation of other clients in connection with:

    a. the Existing Matters and any Future Matters that do not involve litigation against the City;

    b. any Future Matters that involve litigation adverse to the City where such litigation is initiated by the City; and

    c. any Future Matters that involve litigation adverse to the City where such litigation is initiated by another client, provided that (i) such Future Matters do not directly relate to homelessness issues or the work performed for the City in the Retained Matter, and (ii) Outside Counsel establishes an ethical screen between the team on any such Future Matters and the team that has represented the City in the Retained Matter; and

(3)    the City will not seek to disqualify Outside Counsel or any of Outside Counsel's lawyers in, or assert a conflict with respect to, Outside Counsel's engagement in any Existing Matters or any Future Matters that are in compliance with the City's agreement to waive conflicts under this paragraph.

Outside Counsel understands and agrees that Outside Counsel may not pay or receive, or agree to pay or receive, any referral fees, remuneration, reciprocal referral or anything else of value as a result of or related to the matters on which Outside Counsel is engaged by the City, other than the fees and costs paid by the City for Outside Counsel's services in these matters. Outside Counsel understands and agrees that no City employee may solicit, agree to accept or receive any referral fees, remuneration or other item of value related to any services rendered to the City, any claim or other matter brought or filed against the City or any settlement, resolution, verdict, or other disposition by or against City. Outside Counsel immediately shall report any such solicitation, agreement or receipt to the City Attorney and to the City Ethics Commission.

B.    Key Outside Counsel Personnel

1.    Outside Counsel's Supervising Attorney for this Agreement shall be Theane Evangelis. Outside Counsel's Supervising Attorney shall not be changed without City Attorney's written authorization.

2.    Outside Counsel's Supervising Attorney shall have full authority to act for Outside Counsel on all daily operational matters under this Agreement and shall serve as or designate Lead Counsel for all law and motion appearances, pretrial and trial proceeding(s), settlement conference(s) or meetings of counsel for the litigants, depositions, document productions, and all court and other proceedings in which substantive rights of the parties may be determined. Designation of a Lead Counsel other than the Supervising Attorney shall be subject to City Attorney's prior written approval.

C.    Legal Representation

1.    Outside Counsel shall provide City with the necessary representation by qualified staff at the least costly billing category. Partners and associates shall be admitted to practice law before all of the courts of the State of California or of whatever state or district in which Outside Counsel is engaged to represent the City. The names of personnel authorized to provide services under this Agreement and the hourly rates for each staff member are listed in the document entitled, "Hourly Rates for Gibson Dunn," attached hereto and incorporated herein as Exhibit B to this Contract.

Any use of personnel other than as enumerated shall be subject to the prior written approval of City Attorney's Supervising Attorney. Outside Counsel may hire experts or consultants, but only with the prior written approval of City Attorney's Supervising Attorney. Outside Counsel may retain other law firms or attorneys as subcontractors to provide the legal services covered by this Agreement, but only with the prior written approval of the Chief Deputy City Attorney. Any such written approval of subcontractors must set forth the name of each approved attorney or other personnel and the agreed rate for such individual.

7

Outside Counsel will use commercially reasonable efforts to require any such subcontractors or consultants comply with the terms and conditions of this Agreement, but Outside Counsel shall not be liable for any act or omission of any such subcontractors or consultants.

2.    Outside Counsel's legal representation shall include, but is not limited to:

a)    All settlement negotiations and pretrial proceedings;

b)    Appearances at all law and motion hearings, discovery proceedings, hearings regarding orders to show cause, writs, trials and, when applicable, administrative hearings;

c)    All due diligence, legal research, preparation for hearings, and review of all documents and other evidentiary materials;

d)    Investigative, secretarial, and clerical support services necessary to perform the legal representation in a professional manner.

3.    Outside Counsel shall provide all required reports referenced in this Agreement.

4.    Outside Counsel shall meet with City Attorney as City Attorney requires.

5.    Outside Counsel shall consult with City Attorney on trial and tactical decisions.

6.    Outside Counsel shall assist City Attorney's Supervising Attorney in settlement evaluations and negotiations, and shall obtain City Attorney's authority before making any settlement proposal on City's behalf to the Court or any party.

7.    Outside Counsel shall immediately notify City Attorney, in writing, when a judgment, verdict or other award is rendered.

8.    Upon City Attorney's request, Outside Counsel shall provide copies of all court rulings and all pleadings filed with the court or other administrative body, including those submitted by other parties.

9.    Outside Counsel shall maintain all backup documentation to support all entries included in its billings.

D.    Reporting Requirements

Depending on the nature of the matter and the benefit derived, City Attorney may request that Outside Counsel provide City Attorney with the following reports:

1.    Case Evaluation and Plan

a)    The Case Evaluation and Plan is a written independent evaluation of the case that can be used to develop City's legal position and strategy. It will also serve to assist in controlling litigation costs. Outside Counsel

8

shall base the Case Evaluation and Plan on a review of the pleadings, discovery, reports and other documents, physical evidence, conversations with City Attorney and any other information Outside Counsel deems appropriate based on Outside Counsel's expertise and experience.

b)    The Case Evaluation and Plan shall include, but is not limited to:

1)    Statement of known facts and identified legal issues, including identities of opposing attorney(s), if known;

2)    Statement of precedent-setting or sensitive issues, if applicable;

3)    Statement of alleged and probable injuries and damages;

4)    Statement of liability exposure;

5)    Statement of recommendation(s) on case strategy, including discovery, motions, extent of legal research, consultants and percipient witnesses, experts to be retained, and the extent of expert services to be performed;

6)    Statement of Outside Counsel's projected costs that can be reasonably anticipated. Costs shall be budgeted on a total, annualized basis and shall include, but are not limited to:

(a)    Attorney fees - an identification of the staffing levels, hourly rates and estimated number of hours for each partner, associate, and/or paralegal;

(b)    Consultant and expert witness rates, and estimated number of hours each will be needed;

(c)    Deposition, transcript and other expenses;

(d)    Fees and expenses for handling the case through each of the following applicable stages:

(1)    Pleadings

(2)    Discovery

(3)    Pretrial conference(s)

(4)    Mediation or Arbitration

(5)    Trial, and

(6)    Any other identified stages.

9

2.    Proposed Settlement Recommendations

a)    If requested by City Attorney, Outside Counsel shall submit to City Attorney written settlement recommendations that clearly state the reasons supporting a proposed settlement.

3.    Appellate Action

a)    If requested by City Attorney, Outside Counsel shall submit to City Attorney recommendations as to whether to appeal or petition for other review, or defend in the appellate courts. Outside Counsel shall state clearly the reason(s) supporting the recommended action.

b)    Outside Counsel shall list City Attorney as co-counsel with Outside Counsel on all briefs and papers submitted to the appellate courts or other reviewing body.

## IV.    CITY'S DUTIES AND RESPONSIBILITIES

A.    Key City Personnel

1.    City hereby appoints the City Attorney, or his or her designee, to represent the City on all matters related to this Agreement; however, any written amendment to this Agreement requiring additional funds shall be conditioned upon the approval of the additional appropriation of said funds by the Los Angeles City Council/Board. The City Attorney's Supervising Attorneys shall be Chief Deputy City Attorney Valerie Flores and Hydee Feldstein Soto, the Los Angeles City Attorney. On all matters relating to invoices the City Attorney's representative shall be Valerie Flores, Arlene Hoang and Jessica Mariani.

2.    City Attorney's Supervising Attorneys shall have full authority to act for City on all daily operational matters under this Agreement and shall review and approve Outside Counsel's reports, whether written or verbal, and any change in Outside Counsel's designated Lead Counsel.

3.    Approval of proposed settlement recommendations is subject to City's settlement approval procedures.

## V.    COMPENSATION

A.    Appropriation of Funds

The Los Angeles City Council has appropriated $900,000 for this Agreement. Outside Counsel's work pursuant to this Agreement shall not exceed that amount without the prior written approval of City Attorney. While the contract amount is not intended to be a binding fee cap, the City may delay payment for any work done and/or costs incurred in excess of the appropriated amount unless additional appropriations are made and a written amendment to this Agreement is executed by the parties.

10

B.    Outside Counsel's Obligation for Continued Performance

In the event that Outside Counsel's fees, costs and expenses, in the aggregate, exceed the amount appropriated by City as provided herein, Outside Counsel shall not be obligated to provide services or incur any further costs or expenses on the work required hereunder, and the City shall not be liable for fees or costs in excess of the amount appropriated, unless the appropriated amount is increased as provided herein. Outside Counsel shall be responsible for notifying City Attorney's Supervising Attorneys that the aforesaid appropriated amount will be expended before completion of the work required hereunder and that Outside Counsel will need additional funds if City desires further work. Outside Counsel shall give written notice to City Attorney's Supervising Attorney and to the City Attorney's Chief Financial and Administrative Officer, when Outside Counsel's expenditures under this Agreement are equal to sixty percent (60%) and eighty percent (80%) of the total dollar value appropriated for this Agreement so that City Attorney has sufficient time to consider whether it desires to seek an additional appropriation and written amendment to the Agreement.

C.    Fees

1.    The City shall pay Outside Counsel for the services performed by Outside Counsel which are reasonably necessary. The fees for such services shall be based upon the time expended to render the required services, with fractions thereof being stated to the tenth of an hour, and shall be computed at a rate not to exceed the discounted rates specified for each category of staff as listed in Exhibit B. Notwithstanding the foregoing, in no event shall the total fees for Outside Counsel's services over the life of the Retained Matter exceed the amount that Outside Counsel would have billed the City if its fees were computed based on the standard hourly rates in effect at the time the services were provided for each category of staff.

2.    Billing rates may only be increased with the prior written approval of the Chief Deputy City Attorney.

D.    City's Reservation of Rights to Obtain Reimbursement

City shall pay Outside Counsel based on Outside Counsel's submission of monthly invoices consistent with the provisions of this Agreement. Even though City makes payment pursuant to invoices, City shall have the right to demand reimbursement any time City determines that previously paid costs and expenses where not properly billed by Outside Counsel. Outside Counsel shall promptly reimburse City for such costs and expenses previously paid by City.

E.    Expenses

Absent the express prior written approval of the appropriate City Attorney's Supervising Attorney, the City will not pay for any extraordinary expenses incurred in any legal matter. The City Attorney's Chief Financial and Administrative Office must approve in writing any item of expense that exceeds $5,000. The City Attorney's Supervising Attorney must approve in writing any item of expense that exceeds $1,000. Such expenses include, but are not limited to, expert witnesses, consultant services,

11

investigative services, computer litigation support services, videotaping of depositions, temporary office help, travel expenses, meals as well as other expenses. Travel time is non-reimbursable. The City will not pay for business class or first class airfare or luxury hotels. City shall reimburse Outside Counsel for the actual out-of-pocket expenses, enumerated below, but without any additional costs for having advanced the funds. Outside Counsel shall note that City is exempt from all filing fee charges.

1. Reimbursable ordinary expenses shall include, but are not limited to:

a) Deposition fees- The City expects Outside Counsel to keep the costs of deposition transcripts to a minimum. When depositions are taken and Outside Counsel receives the original, City shall not pay the court reporter's fee for providing Outside Counsel with an extra photocopy of the deposition transcript. City expects Outside Counsel to make a photocopy of the original at Outside Counsel's office. Likewise, when attending depositions of third parties or third-party witnesses, City requests that, if Outside Counsel believes an additional copy of the deposition transcript is necessary, Outside Counsel agree with opposing counsel or co-counsel to share the costs. Prior written approval from City must be obtained before ordering any expedited original or expedited copy of a deposition transcript.

b) Deposition summaries, if necessary, should be brief and should be completed by the deposing attorney. The City shall not pay for a paralegal or other lawyer to summarize the deposition transcript unless trial is imminent. City shall not pay for summaries that are, in effect, a complete regurgitation of the underlying deposition.

c) Transcript fees;

d) Messenger service - where appropriate, documents should be transmitted via email or facsimile/telecopier;

e) Facsimile/Telecopier (FAX) transmission - Outside Counsel shall not bill the City for any expense related to facsimile charges beyond Outside Counsel's actual net costs for long distance telephone charges actually and reasonably incurred by Outside Counsel for the sending of facsimiles. Outside Counsel shall indicate in its billing statements the number of pages transmitted via facsimile together with the related cost of each charge. Outside Counsel shall attach the appropriate receipts, invoices or proof of any expenditure for facsimile charges; and

f) Process service.

2. Reimbursable extraordinary expenses shall include charges for which Outside Counsel has obtained City Attorney's prior written approval. Such expenses shall include, but are not limited to:

a) Consultants;

b) Expert witnesses;

12

c)     Investigative services;

d)     Computer Assisted Legal Research ("CALR") - The City of Los Angeles's decision to retain a particular firm is based in part on the firm's expertise and knowledge. The City therefore assumes familiarity with the basic substantive law at issue in the matter for which the firm was retained; any exception to this general expectation should be discussed fully at the time of retention.  In conducting legal research the law firm is expected to utilize all appropriate sources reasonably available, including previously prepared briefs and memoranda. Should Outside Counsel determine that it is necessary to incur CALR charges in order to satisfy the terms of this Agreement, Outside Counsel shall obtain City Attorney Supervising Attorney's prior written approval to charge for such expenses. No charges for CALR shall be paid by the City without its prior written approval of such a charge.

Outside Counsel shall describe in detail in its billings any travel expenses incurred by Outside Counsel.  City retains the right to audit these expenses.  Only coach fare will be reimbursed for travel. Travel time is non-reimbursable.  If a receipt is submitted, a reasonable single occupancy hotel accommodations will be reimbursed.  For trial attendance by out-of-town experts or consultants, this rate may be increased, depending on the availability of lodging and prior City Attorney written approval.

3.     Non-reimbursable expenses shall include, but are not limited to:

a)     Staff time or overtime for performing secretarial, clerical, or word processing functions;

b)     Charges for time spent complying with City Attorney audits or billing or budgeting inquiries;

c)     Charges for work performed which City Attorney had not authorized. Such work shall be a gratuitous effort by Outside Counsel; and

d)     Expenses that are considered to be part of general law firm overhead, including but not limited to, administrative time, secretarial time, calendaring, setting up files, indexing, word processing, air conditioning, equipment rental, office supplies, meals, snacks, beverages, seminars, books or association dues, etc.;

e)     Travel time.

F.     Rates

Outside Counsel represents that, as of the date hereof, the rates set forth in Sections III.C. and V.C. above and the other economic terms and conditions provided in this Agreement, taken individually, are agreed upon for both parties.

13

## VI.    BILLINGS AND PAYMENTS

### A.    Billings

1.    Outside Counsel shall endeavor to submit its billing statement monthly in arrears, no later than the tenth business day of the month following the month service was rendered.

2.    Outside Counsel and City Attorney recognize that legal services performed under this Agreement are being paid for with tax dollars from the citizens of the City of Los Angeles and that, therefore, a heightened duty of care exists in both Outside Counsel and City Attorney to ensure that Outside Counsel scrupulously adheres to principles of moderation, frugality and cost consciousness in carrying out the goals of this Agreement. Outside Counsel pledges to observe a duty of reasonableness and cost effective representation in all aspects of this Agreement. Accordingly, each billing statement shall contain a certification by Outside Counsel's Supervising Attorney that the services performed and the expenses incurred were both reasonable and necessary.

3.    The City will not pay for more than one attorney doing any particular task unless City Attorney has given its prior written approval. The City will not pay for excessive attorneys attending the same deposition or court appearance. The City will pay for the time recorded by more than one attorney for in-office conferences, but only if the conference is an occasional and necessary strategy meeting relating to some significant legal event or proceeding.

The City shall not pay for duplicative time charges by two or more attorneys, e.g., for legal research, reviewing documents, drafting documents, except as reasonably necessary for the complexity of the matter or as approved in writing by City Attorney. The City shall not pay for "training" or "apprenticeship" time. The City shall not pay for the involvement of attorneys who work on the case irregularly or sporadically, unless a particular attorney has a special expertise that substantially advances the prosecution/defense of the case.

4.    Use of paralegals is encouraged providing they meet the requirements set forth herein. Assignment of work to paralegals should not result in duplicative activity between attorneys and paralegals, or the reworking or rewriting of paralegals' work product by attorneys. The City will not pay for paralegal time spent performing clerical/secretarial work (e.g., filing, indexing, sorting, organizing, photocopying and bates stamping documents) unless the City has given its prior written approval. City expects paralegals to perform true paralegal work, e.g., research, document productions, preparing discovery or responses, interviewing witnesses, etc.

5.  Billings under this Agreement shall not be made in more than one-tenth of an hour (six minute) increments, and shall represent the devotion of a full six minutes before such an increment is billed. Under no circumstances shall Outside Counsel use "block billing" procedures, wherein a list of series of activities is done each day with only an aggregate amount of time specified. Instead, Outside Counsel shall provide a detailed specific entry for each separate task and sub-task reflecting the time for such task or subtask. All tasks set forth in Outside Counsel's billing documentation shall be highly specific and highly detailed. Overly generalized listings of task descriptions

14

such as "review contract" or "prepare for negotiations" will not be acceptable. Outside Counsel shall provide a detailed description of each action as described below.

6. Each billing statement shall be identified by a unique number and itemized to include:

a) Case name and case number;

b) Staffing level(s), hourly rates and specific activities for each attorney and/or paralegal;

1) Each activity shall be billed in a reporting format acceptable to City Attorney.

2) A detailed description of specific activities for each attorney and/or paralegal shall include, but is not limited to:

(a) In-person conferences.

(b) Telephone call(s).

(c) Correspondence.

(d) Depositions.

(e) Case reports.

(f) Pleading, brief or opinion drafting.

(g) Hearings.

(h) Research, including computerized legal research databases.

(i) Case reviews.

(j) Trials.

c) Total current monthly fees billed for each staffing level;

d) Total cumulative fees billed for each staffing level;

e) Total current monthly expenses billed in the following categories:

1) Consultant and expert witness expenses;

2) Deposition and transcript expenses;

3) Other miscellaneous expenses.

f) Total cumulative expenses to date billed in (e) above.

15

B.    Payments

1.    City shall make payment(s) for services rendered under this Agreement based on the monthly, itemized billing statement(s) Outside Counsel submits to City Attorney.

2.    City Attorney's legal and accounting staff shall review all billing statements in accordance with City's review procedures.

3.    City shall make its best effort to process payments promptly after receiving Outside Counsel's monthly billing statement. City shall not pay interest or finance charges on any outstanding balance(s).

C.    Audit

For at least three years after completion of services under this Agreement or termination of this Agreement, Outside Counsel and any third party retained by Outside Counsel to assist in the performance of this Agreement, shall maintain backup documentation to support all entries included in the monthly billing statement. Such backup documentation shall be maintained in an auditable format. City Attorney, at its sole discretion, may, at any time prior to the termination of this Agreement, request an audit of Outside Counsel. Outside Counsel shall cooperate with reasonable audit requests, provided that such audits are conducted with reasonable advance notice to Outside Counsel, do not exceed once annually, and are subject at all times to Outside Counsel's confidentiality and other ethical obligations with respect to other clients.

VII.    **NOTICES**

All invoices, notices and required reports shall be written and hand-delivered or mailed by first class, postage prepaid, addressed to City Attorney or Outside Counsel at the addresses below, or at any other address City Attorney or Outside Counsel shall provide in writing to each other, or by email:

A.    If invoice to City Attorney:

Aimee Sevilla
Outside Counsel Accounting Unit
Office of the City Attorney
200 North Main Street,
8th Floor, City Hall East
Los Angeles, California 90012-4130


If notice or a report to City Attorney:

City of Los Angeles
Office of the City Attorney
200 North Main Street, City Hall East
Los Angeles, California 90012-4130
Attention: Arlene Hoang and Jessica Mariani

16

If notice concerning conflict of interest to City Attorney:

Anne Haley, Assistant City Attorney
City of Los Angeles
Office of the City Attorney
200 North Main Street
8th Floor, City Hall East
Los Angeles, California 90012-4130

B.    If notice to Outside Counsel:

GIBSON, DUNN & CRUTCHER LLP
333 South Grand
Los Angeles, CA 90071
Attention: Theane Evangelis

## VIII.    ASSIGNMENT

A.    No part of this Agreement or any right or obligation arising from it is assignable without City's prior written consent.

B.    Any attempt by Outside Counsel to assign or subcontract services relating to this Agreement without City's prior written consent shall constitute a material breach of this Agreement.

## IX.    STANDARD TERMS AND CONDITIONS

### IRAN CONTRACTING ACT OF 2010

In accordance with California Public Contract Code Sections 2200-2208, all bidders submitting proposals for, entering into, or renewing contracts with the City of Los Angeles for goods and services estimated at $1,000,000 or more is required to complete, sign, and submit the "Iran Contracting Act of 2010 Compliance Affidavit."

### STANDARD PROVISIONS FOR CITY CONTRACTS

Contractor agrees to comply with the Standard Provisions for City Contracts (Rev. 6/24 [v. 1.]), which are attached hereto as Exhibit A and incorporated herein by reference, except as follows:

PSC -6 shall not apply to payment of fees.

17

PSC-9 shall be deleted in its entirety. Termination shall be governed by this Agreement.

The second paragraph of PSC-11 shall be amended to read:

"CONTRACTOR shall not use Subcontractors to assist in performance of this Contract without the prior written approval of CITY. If CITY permits the use of Subcontractors, CONTRACTOR shall remain responsible for performing all aspects of this Contract and paying all Subcontractors. CITY has the right to approve CONTRACTOR'S Subcontractors, and CITY reserves the right to request replacement of any Subcontractor. CITY does not have any obligation to pay CONTRACTOR'S Subcontractors, and nothing herein creates any privity of contract between CITY and any

Subcontractor, provided that, CONTRACTOR may, with consent of the CITY, retain third-party vendors, such as eDiscovery providers, consultants or expert witnesses, specifically to work on behalf of the CITY in conjunction with this matter. The retention agreements with such third-party vendors, consultants, and/or experts shall state that the City shall have sole responsibility for payment of services and shall require invoices to be submitted directly to the CITY."

PSC-14 is hereby deleted in its entirety.

PSC-16 shall be deleted in its entirety and replaced with the following:

"Retention of Records. Audit and Reports. CONTRACTOR shall maintain all records, including records of financial transactions, pertaining to the performance of this Contract, in their original form or as otherwise approved by CITY. These records shall be retained as required by law, but in no event for a period of less than three years from the later of the following: (1) final payment made by CITY, (2) the expiration of this Contract or (3) termination of this Contract. The records will be subject to examination and audit by authorized CITY personnel or CITY'S representatives at any time (provided that such audits are conducted with reasonable advance notice to CONTRACTOR, do not exceed once annually, and are subject at all times to CONTRACTOR's confidentiality and other ethical obligations with respect to other clients). CONTRACTOR shall provide any reports requested by CITY regarding performance of this Contract to which CITY is entitled pursuant to the Agreement. Any subcontract entered into by CONTRACTOR for work to be performed under this Contract must include an identical provision. In lieu of retaining the records for the term as prescribed in this provision, CONTRACTOR may, upon CITY'S written approval, submit the required information to CITY in an electronic format, e.g. USB flash drive, at the expiration or termination of this Contract."

PSC-18 is hereby deleted in its entirety.

18

PSC-19 is hereby deleted in its entirety.

PSC-21 is hereby deleted in its entirety. Document ownership and retention is governed by this Agreement.

PSC-22 shall be deleted in its entirety and replaced with the following:

"Data Protection.

A. CONTRACTOR shall protect, using commercially reasonable security means and technology, CITY-provided data or consumer-provided data acquired in the course and scope of this Contract, including but not limited to customer lists and customer credit card or consumer data, (collectively, the "City Data"). CONTRACTOR shall notify CITY in writing as soon as reasonably feasible, and in any event within forty- eight hours, of CONTRACTOR'S discovery or reasonable belief of any unauthorized access of City Data (a "Data Breach"), or of any incident affecting, or potentially affecting City Data related to cyber security (a "Security Incident"), including, but not limited to, denial of service attack, and system outage, instability or degradation due to computer malware or virus. CONTRACTOR shall begin remediation immediately. CONTRACTOR shall provide periodic updates regarding findings and actions performed by CONTRACTOR until the Data Breach or Security Incident has been effectively resolved. CONTRACTOR shall conduct an investigation of the Data Breach or Security Incident and shall share the report of the investigation with CITY. CONTRACTOR shall cooperate fully with CITY, its agents and law enforcement.

B. CONTRACTOR shall fully cooperate with CITY throughout the investigation of a Security Incident and work closely to determine the necessity, extent and timing of remediation responsibilities on a case-by-case basis."

PSC-23 shall be deleted in its entirety and replaced with the following:

"During the term of this Contract, CONTRACTOR shall maintain at its own expense adequate and industry-standard insurance policies with reputable providers. Exhibit 1 attached hereto is deemed deleted."

PSC-24 shall be deleted in its entirety and replaced with the following:

"Best Terms. While it is not possible to make perfect comparisons between the rates that CONTRACTOR will charge CITY and the rates CONTRACTOR charges other clients in other matters, given the different teams staffed on different matters and different times in which agreements are made, the discounted rates CONTRACTOR will charge CITY will be competitive with the financial arrangements CONTRACTOR has with its

other clients that are similarly situated and have received rate discounts."

PSC-26 is hereby deleted in its entirety.

PSC-27 is hereby deleted in its entirety.

PSC-29 is hereby deleted in its entirety.

PSC-30, C. is hereby deleted in its entirety.

PSC-32 is hereby deleted in its entirety.

PSC-34 is hereby deleted in its entirety.

PSC-35 is hereby deleted in its entirety.

PSC-37 is hereby deleted in its entirety.

PSC-38 is hereby deleted in its entirety.

PSC-39 is hereby deleted in its entirety.

PSC-40 is hereby deleted in its entirety.

## X.    **MERGER**

This Agreement supersedes all prior communications and all previous written and oral agreements, and shall constitute the complete and exclusive statement of understanding between City, City Attorney and Outside Counsel relating to the subject matter of this Agreement.

## XI.    **ORDER OF PRECEDENCE**

In the event of any inconsistency between the provisions in the body of this Agreement and the attachments, the provisions in the body of this Agreement take precedence, followed by Attachment A, Standard Provisions for City Contracts (Rev. 1.25) [v.2], followed by Attachment B, Fee Schedule, followed by any other exhibits or attachments to this Agreement in the order in which they are attached. This Agreement may be executed in one or more counterparts, and by the parties in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement. The parties further agree that facsimile signatures or signatures scanned into .pdf (or signatures in another electronic format designated by City) and sent by e-mail shall be deemed original signatures.

**IN WITNESS WHEREOF** the parties have caused this Agreement to be executed by their respective, duly authorized representatives.

THE CITY OF LOS ANGELES,
a municipal corporation

HYDEE FELDSTEIN SOTO, City Attorney

By _____
    Chief Deputy City Attorney

Date May 20, 2025

GIBSON, DUNN & CRUTCHER LLP

By _____

Date 5/20/25

APPROVED AS TO FORM

HYDEE FELDSTEIN SOTO, City Attorney

By _____

Date 5/29/2025

ATTEST: PETTY SANTOS, Interim City Clerk

By _____
    Deputy City Clerk

Date Jun 2, 2025

City Business License Number: _____

Internal Revenue Service ID Number: _____

Council File/CAO File Number: _____

Contract Number: C-201616 _____

21

**ATTACHMENT A**

Standard Provisions for City Contracts (Rev. 1/25 [v.2])

## STANDARD PROVISIONS FOR CITY CONTRACTS

### TABLE OF CONTENTS

PSC-1    Construction of Provisions and Titles Herein ............................................... 1

PSC-2    Applicable Law, Interpretation and Enforcement .......................................... 1

PSC-3    Time of Effectiveness ................................................................................... 1

PSC-4    Integrated Contract ...................................................................................... 2

PSC-5    Amendment .................................................................................................. 2

PSC-6    Excusable Delays ......................................................................................... 2

PSC-7    Waiver .......................................................................................................... 2

PSC-8    Suspension .................................................................................................. 2

PSC-9    Termination .................................................................................................. 3

PSC-10   Independent Contractor ............................................................................... 5

PSC-11    Contractor's Personnel ................................................................................ 5

PSC-12   Assignment and Delegation ......................................................................... 6

PSC-13   Permits ........................................................................................................ 6

PSC-14   Claims for Labor and Materials .................................................................... 6

PSC-15   Current Los Angeles City Business Tax Registration Certificate Required .... 6

PSC-16   Retention of Records, Audit and Reports ..................................................... 6

PSC-17   Bonds .......................................................................................................... 7

PSC-18   Indemnification ............................................................................................ 7

PSC-19   Intellectual Property Indemnification ........................................................... 7

PSC-20   Intellectual Property Warranty ..................................................................... 8

PSC-21   Ownership and License ................................................................................ 8

PSC-22   Data Protection ........................................................................................... 9

PSC-23   Insurance ..................................................................................................... 9

**TABLE OF CONTENTS (Continued)**

**PSC-24**  Best Terms ........................................................................... **9**

**PSC-25**  Warranty and Responsibility of Contractor ..................................... **10**

**PSC-26**  Mandatory Provisions Pertaining to Non-Discrimination in Employment ...... **10**

**PSC-27**  Child Support Assignment Orders ................................................ **10**

**PSC-28**  Living Wage Ordinance ........................................................... **11**

**PSC-29**  Service Contractor Worker Retention Ordinance ............................... **11**

**PSC-30**  Access and Accommodations .................................................... **11**

**PSC-31**  Contractor Responsibility Ordinance ............................................ **12**

**PSC-32**  Business Inclusion Program ...................................................... **12**

**PSC-33**  Slavery Disclosure Ordinance ................................................... **12**

**PSC-34**  First Source Hiring Ordinance .................................................... **12**

**PSC-35**  Local Business Preference Ordinance ........................................... **12**

**PSC-36**  Iran Contracting Act ............................................................. **12**

**PSC-37**  Restrictions on Campaign Contributions in City Elections ..................... **12**

**PSC-38**  Contractors' Use of Criminal History for Consideration of Employment
Application ....................................................................**13**

**PSC-39**   Limitation of City's Obligation to Make Payment to Contractor ...............**13**

**PSC-40**  Compliance with Identity Theft Laws and Payment Card Data Security
Standards....................................................................**14**

**PSC-41**  Compliance with California Public Resources Code Section 5164 ............. **14**

**PSC-42**  Possessory Interests Tax ........................................................ **14**

**PSC-43**  Confidentiality................................................................... **15**

**PSC-44**  Contractor Data Reporting ....................................................... **15**

**Exhibit 1** Insurance Contractual Requirements ........................................... **16**

ii

## STANDARD PROVISIONS FOR CITY CONTRACTS

**PSC-1.** <u>Construction of Provisions and Titles Herein</u>

All titles, subtitles, or headings in this Contract have been inserted for convenience, and shall not be deemed to affect the meaning or construction of any of the terms or provisions of this Contract. The language of this Contract shall be construed according to its fair meaning and not strictly for or against **CITY** or **CONTRACTOR**. The word "**CONTRACTOR**" includes the party or parties identified in this Contract. The singular shall include the plural and if there is more than one **CONTRACTOR**, unless expressly stated otherwise, their obligations and liabilities shall be joint and several. Use of the feminine, masculine, or neuter genders shall be deemed to include the genders not used.

**PSC-2.** <u>Applicable Law, Interpretation and Enforcement</u>

Each party's performance shall comply with all applicable laws of the United States of America, the State of California, and **CITY**, including but not limited to, laws regarding health and safety, labor and employment, wage and hours and licensing. This Contract shall be enforced and interpreted under the laws of the State of California without regard to conflict of law principles. **CONTRACTOR** shall comply with new, amended, or revised laws, regulations, or procedures that apply to the performance of this Contract with no additional compensation paid to **CONTRACTOR**.

In any action arising out of this Contract, **CONTRACTOR** consents to personal jurisdiction, and agrees to bring all such actions, exclusively in state or federal courts located in Los Angeles County, California.

If any part, term or provision of this Contract is held void, illegal, unenforceable, or in conflict with any federal, state or local law or regulation, the validity of the remaining parts, terms or provisions of this Contract shall not be affected.

**PSC-3.** <u>Time of Effectiveness</u>

Unless otherwise provided, this Contract shall take effect when all of the following events have occurred:

A.    This Contract has been signed on behalf of **CONTRACTOR** by the person or persons authorized to bind **CONTRACTOR**;

B.    This Contract has been approved by the City Council or by the board, officer or employee authorized to give such approval;

C.    The Office of the City Attorney has indicated in writing its approval of this Contract as to form; and

D.    This Contract has been signed on behalf of **CITY** by the person designated by the City Council, or by the board, officer or employee authorized to enter into this Contract.

**PSC-4.** Integrated Contract

This Contract sets forth all of the rights and duties of the parties with respect to the subject matter of this Contract, and replaces any and all previous Contracts or understandings, whether written or oral, relating thereto. This Contract may be amended only as provided for in the provisions of PSC-5 hereof.

**PSC-5.** Amendment

All amendments to this Contract shall be in writing and signed and approved pursuant to the provisions of PSC-3.

**PSC-6.** Excusable Delays

Neither party shall be liable for its delay or failure to perform any obligation under and in accordance with this Contract, if the delay or failure arises out of fires, floods, earthquakes, epidemics, quarantine restrictions, other natural occurrences, strikes, lockouts (other than a lockout by the party or any of the party's Subcontractors), freight embargoes, terrorist acts, insurrections or other civil disturbances, or other similar events to those described above, but in each case the delay or failure to perform must be beyond the control and without any fault or negligence of the party delayed or failing to perform (these events are referred to in this provision as "Force Majeure Events").

Notwithstanding the foregoing, a delay or failure to perform by a Subcontractor of **CONTRACTOR** shall not constitute a Force Majeure Event, unless the delay or failure arises out of causes beyond the control of both **CONTRACTOR** and Subcontractor, and without any fault or negligence of either of them. In such case, **CONTRACTOR** shall not be liable for the delay or failure to perform, unless the goods or services to be furnished by the Subcontractor were obtainable from other sources in sufficient time to permit **CONTRACTOR** to perform timely. As used in this Contract, the term "Subcontractor" means a subcontractor at any tier.

In the event **CONTRACTOR'S** delay or failure to perform arises out of a Force Majeure Event, **CONTRACTOR** agrees to use commercially reasonable best efforts to obtain the goods or services from other sources, and to otherwise mitigate the damages and reduce the delay caused by the Force Majeure Event.

**PSC-7.** Waiver

A waiver of a default of any part, term or provision of this Contract shall not be construed as a waiver of any succeeding default or as a waiver of the part, term or provision itself. A party's performance after the other party's default shall not be construed as a waiver of that default.

**PSC-8.** Suspension

At **CITY'S** sole discretion, **CITY** may suspend any or all services provided under this Contract by providing **CONTRACTOR** with written notice of suspension. Upon receipt of the notice of suspension, **CONTRACTOR** shall immediately cease the services

suspended and shall not incur any additional obligations, costs or expenses to **CITY** until **CITY** gives written notice to recommence the services.

**PSC-9.** Termination

    A.     Termination for Convenience

**CITY** may terminate this Contract for **CITY'S** convenience at any time by providing **CONTRACTOR** thirty days written notice. Upon receipt of the notice of termination, **CONTRACTOR** shall immediately take action not to incur any additional obligations, costs or expenses, except as may be necessary to terminate its activities. **CITY** shall pay **CONTRACTOR** its reasonable and allowable costs through the effective date of termination and those reasonable and necessary costs incurred by **CONTRACTOR** to effect the termination. Thereafter, **CONTRACTOR** shall have no further claims against **CITY** under this Contract. All finished and unfinished documents and materials procured for or produced under this Contract, including all intellectual property rights **CITY** is entitled to, shall become **CITY** property upon the date of the termination. **CONTRACTOR** agrees to execute any documents necessary for **CITY** to perfect, memorialize, or record **CITY'S** ownership of rights provided herein.

    B.     Termination for Breach of Contract

        1.     Except as provided in PSC-6, if **CONTRACTOR** fails to perform any of the provisions of this Contract or so fails to make progress as to endanger timely performance of this Contract, **CITY** may give **CONTRACTOR** written notice of the default. **CITY'S** default notice will indicate whether the default may be cured and the time period to cure the default to the sole satisfaction of **CITY**. Additionally, **CITY'S** default notice may offer **CONTRACTOR** an opportunity to provide **CITY** with a plan to cure the default, which shall be submitted to **CITY** within the time period allowed by **CITY**. At **CITY'S** sole discretion, **CITY** may accept or reject **CONTRACTOR'S** plan. If the default cannot be cured or if **CONTRACTOR** fails to cure within the period allowed by **CITY**, then **CITY** may terminate this Contract due to **CONTRACTOR'S** breach of this Contract.

        2.     If the default under this Contract is due to **CONTRACTOR'S** failure to maintain the insurance required under this Contract, **CONTRACTOR** shall immediately: (1) suspend performance of any services under this Contract for which insurance was required; and (2) notify its employees and Subcontractors of the loss of insurance coverage and Contractor's obligation to suspend performance of services. **CONTRACTOR** shall not recommence performance until **CONTRACTOR** is fully insured and in compliance with **CITY'S** requirements.

3. If a federal or state proceeding for relief of debtors is undertaken by or against **CONTRACTOR**, or if **CONTRACTOR** makes an assignment for the benefit of creditors, then **CITY** may immediately terminate this Contract.

4. If **CONTRACTOR** engages in any dishonest conduct related to the performance or administration of this Contract or violates **CITY'S** laws, regulations or policies relating to lobbying, then **CITY** may immediately terminate this Contract.

5. Acts of Moral Turpitude

   a. **CONTRACTOR** shall immediately notify **CITY** if **CONTRACTOR** or any Key Person, as defined below, is charged with, indicted for, convicted of, pleads nolo contendere to, or forfeits bail or fails to appear in court for a hearing related to, any act which constitutes an offense involving moral turpitude under federal, state, or local laws ("Act of Moral Turpitude").

   b. If **CONTRACTOR** or a Key Person is convicted of, pleads nolo contendere to, or forfeits bail or fails to appear in court for a hearing related to, an Act of Moral Turpitude, **CITY** may immediately terminate this Contract.

   c. If **CONTRACTOR** or a Key Person is charged with or indicted for an Act of Moral Turpitude, **CITY** may terminate this Contract after providing **CONTRACTOR** an opportunity to present evidence of **CONTRACTOR'S** ability to perform under the terms of this Contract.

   d. Acts of Moral Turpitude include, but are not limited to: violent felonies as defined by Penal Code Section 667.5, crimes involving weapons, crimes resulting in serious bodily injury or death, serious felonies as defined by Penal Code Section 1192.7, and those crimes referenced in the Penal Code and articulated in California Public Resources Code Section 5164(a)(2); in addition to and including acts of murder, rape, sexual assault, robbery, kidnapping, human trafficking, pimping, voluntary manslaughter, aggravated assault, assault on a peace officer, mayhem, fraud, domestic abuse, elderly abuse, and child abuse, regardless of whether such acts are punishable by felony or misdemeanor conviction.

e.    For the purposes of this provision, a Key Person is a principal, officer, or employee assigned to this Contract, or owner (directly or indirectly, through one or more intermediaries) of ten percent or more of the voting power or equity interests of **CONTRACTOR**.

6.    In the event **CITY** terminates this Contract as provided in this section, **CITY** may procure, upon such terms and in the manner as **CITY** may deem appropriate, services similar in scope and level of effort to those so terminated, and **CONTRACTOR** shall be liable to **CITY** for all of its costs and damages, including, but not limited to, any excess costs for such services.

7.    If, after notice of termination of this Contract under the provisions of this section, it is determined for any reason that **CONTRACTOR** was not in default under the provisions of this section, or that the default was excusable under the terms of this Contract, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to PSC-9(A) Termination for Convenience.

8.    The rights and remedies of **CITY** provided in this section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Contract.

C.    In the event that this Contract is terminated, **CONTRACTOR** shall immediately notify all employees and Subcontractors, and shall notify in writing all other parties contracted with under the terms of this Contract within five working days of the termination.

**PSC-10.** Independent Contractor

**CONTRACTOR** is an independent contractor and not an agent or employee of **CITY**. **CONTRACTOR** shall not represent or otherwise hold out itself or any of its directors, officers, partners, employees, or agents to be an agent or employee of **CITY**.

**PSC-11.** Contractor's Personnel

Unless otherwise approved by **CITY**, **CONTRACTOR** shall use its own employees to perform the services described in this Contract. **CITY** has the right to review and approve any personnel who are assigned to work under this Contract. **CONTRACTOR** shall remove personnel from performing work under this Contract if requested to do so by **CITY**.

**CONTRACTOR** shall not use Subcontractors to assist in performance of this Contract without the prior written approval of **CITY**. If **CITY** permits the use of Subcontractors, **CONTRACTOR** shall remain responsible for performing all aspects of this Contract and paying all Subcontractors. **CITY** has the right to approve **CONTRACTOR'S** Subcontractors, and **CITY** reserves the right to request replacement of any

Subcontractor. **CITY** does not have any obligation to pay **CONTRACTOR'S** Subcontractors, and nothing herein creates any privity of contract between **CITY** and any Subcontractor.

**PSC-12.** Assignment and Delegation

**CONTRACTOR** may not, unless it has first obtained the written permission of **CITY**:

A.     Assign or otherwise alienate any of its rights under this Contract, including the right to payment; or

B.     Delegate, subcontract, or otherwise transfer any of its duties under this Contract.

**PSC-13.** Permits

**CONTRACTOR** and its directors, officers, partners, agents, employees, and Subcontractors, shall obtain and maintain all licenses, permits, certifications and other documents necessary for **CONTRACTOR'S** performance of this Contract. **CONTRACTOR** shall immediately notify **CITY** of any suspension, termination, lapses, non-renewals, or restrictions of licenses, permits, certificates, or other documents that relate to **CONTRACTOR'S** performance of this Contract.

**PSC-14.** Claims for Labor and Materials

**CONTRACTOR** shall promptly pay when due all amounts owed for labor and materials furnished in the performance of this Contract so as to prevent any lien or other claim under any provision of law from arising against any **CITY** property (including reports, documents, and other tangible or intangible matter produced by **CONTRACTOR** hereunder), and shall pay all amounts due under the Unemployment Insurance Act or any other applicable law with respect to labor used to perform under this Contract.

**PSC-15.** Current Los Angeles City Business Tax Registration Certificate Required

For the duration of this Contract, **CONTRACTOR** shall maintain valid Business Tax Registration Certificate(s) as required by **CITY'S** Business Tax Ordinance, Section 21.00 *et seq*. of the Los Angeles Municipal Code ("LAMC"), and shall not allow the Certificate to lapse or be revoked or suspended.

**PSC-16.** Retention of Records, Audit and Reports

**CONTRACTOR** shall maintain all records, including records of financial transactions, pertaining to the performance of this Contract, in their original form or as otherwise approved by **CITY**. These records shall be retained for a period of no less than three years from the later of the following: (1) final payment made by **CITY**, (2) the expiration of this Contract or (3) termination of this Contract. The records will be subject to examination and audit by authorized **CITY** personnel or **CITY'S** representatives at any time. **CONTRACTOR** shall provide any reports requested by **CITY** regarding

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**          **6**                              **ATTACHMENT A**

performance of this Contract. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

In lieu of retaining the records for the term as prescribed in this provision, **CONTRACTOR** may, upon **CITY'S** written approval, submit the required information to **CITY** in an electronic format, e.g. USB flash drive, at the expiration or termination of this Contract.

**PSC-17.** Bonds

All bonds required by **CITY** shall be filed with the Office of the City Administrative Officer, Risk Management for its review and acceptance in accordance with Los Angeles Administrative Code ("LAAC") Sections 11.47 *et seq*., as amended from to time.

**PSC-18.** Indemnification

Except for the active negligence or willful misconduct of **CITY**, or any of its boards, officers, agents, employees, assigns and successors in interest, **CONTRACTOR** shall defend, indemnify and hold harmless **CITY** and any of its boards, officers, agents, employees, assigns, and successors in interest from and against all lawsuits and causes of action, claims, losses, demands and expenses, including, but not limited to, attorney's fees (both in house and outside counsel) and cost of litigation (including all actual litigation costs incurred by **CITY**, including but not limited to, costs of experts and consultants), damages or liability of any nature whatsoever, for death or injury to any person, including **CONTRACTOR'S** employees and agents, or damage or destruction of any property of either party hereto or of third parties, arising in any manner by reason of an act, error, or omission by **CONTRACTOR,** Subcontractors, or their boards, officers, agents, employees, assigns, and successors in interest. The rights and remedies of **CITY** provided in this section shall not be exclusive and are in addition to any other rights and remedies provided by law or under this Contract. This provision will survive expiration or termination of this Contract.

**PSC-19.** Intellectual Property Indemnification

**CONTRACTOR**, at its own expense, shall defend, indemnify, and hold harmless the **CITY**, and any of its boards, officers, agents, employees, assigns, and successors in interest from and against all lawsuits and causes of action, claims, losses, demands and expenses, including, but not limited to, attorney's fees (both in house and outside counsel) and cost of litigation (including all actual litigation costs incurred by **CITY**, including but not limited to, costs of experts and consultants), damages or liability of any nature arising out of the infringement, actual or alleged, direct or contributory, of any intellectual property rights, including, without limitation, patent, copyright, trademark, trade secret, right of publicity, and proprietary information: (1) on or in any design, medium, matter, article, process, method, application, equipment, device, instrumentation, software, hardware, or firmware used by **CONTRACTOR**, or its Subcontractors, in performing the work under this Contract; or (2) as a result of **CITY'S** actual or intended use of any Work Product (as defined in PSC-21) furnished by **CONTRACTOR**, or its Subcontractors, under this Contract. The rights and remedies of **CITY** provided in this section shall not be exclusive

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**          7                    **ATTACHMENT A**

and are in addition to any other rights and remedies provided by law or under this Contract. This provision will survive expiration or termination of this Contract.

**PSC-20.** Intellectual Property Warranty

**CONTRACTOR** represents and warrants that its performance of all obligations under this Contract does not infringe in any way, directly or contributorily, upon any third party's intellectual property rights, including, without limitation, patent, copyright, trademark, trade secret, right of publicity and proprietary information.

**PSC-21.** Ownership and License

Unless otherwise provided for herein, all finished and unfinished works, tangible or not, created under this Contract including, without limitation, documents, materials, data, reports, manuals, specifications, artwork, drawings, sketches, blueprints, studies, memoranda, computation sheets, computer programs and databases, schematics, photographs, video and audiovisual recordings, sound recordings, marks, logos, graphic designs, notes, websites, domain names, inventions, processes, formulas, matters and combinations thereof, and all forms of intellectual property originated and prepared by **CONTRACTOR** or its Subcontractors under this Contract (each a "Work Product"; collectively "Work Products") shall be and remain the exclusive property of **CITY** for its use in any manner **CITY** deems appropriate. **CONTRACTOR** hereby assigns to **CITY** all goodwill, copyright, trademark, patent, trade secret and all other intellectual property rights worldwide in any Work Products originated and prepared under this Contract. **CONTRACTOR** further agrees to execute any documents necessary for **CITY** to perfect, memorialize, or record **CITY'S** ownership of rights provided herein.

**CONTRACTOR** agrees that a monetary remedy for breach of this Contract may be inadequate, impracticable, or difficult to prove and that a breach may cause **CITY** irreparable harm. **CITY** may therefore enforce this requirement by seeking injunctive relief and specific performance, without any necessity of showing actual damage or irreparable harm. Seeking injunctive relief or specific performance does not preclude **CITY** from seeking or obtaining any other relief to which **CITY** may be entitled.

For all Work Products delivered to **CITY** that are not originated or prepared by **CONTRACTOR** or its Subcontractors under this Contract, **CONTRACTOR** shall secure a grant, at no cost to **CITY**, for a non-exclusive perpetual license to use such Work Products for any **CITY** purposes.

**CONTRACTOR** shall not provide or disclose any Work Product to any third party without prior written consent of **CITY**.

Any subcontract entered into by **CONTRACTOR** relating to this Contract shall include this provision to contractually bind its Subcontractors performing work under this Contract such that **CITY'S** ownership and license rights of all Work Products are preserved and protected as intended herein.

**STANDARD PROVISIONS**
**FOR CITY CONTRACTS (Rev. 1/25 [v.2])**          **8**          **ATTACHMENT A**

**PSC-22.**    <u>Data Protection</u>

    A.    **CONTRACTOR** shall protect, using the most secure means and technology that is commercially available, **CITY**-provided data or consumer-provided data acquired in the course and scope of this Contract, including but not limited to customer lists and customer credit card or consumer data, (collectively, the "City Data"). **CONTRACTOR** shall notify **CITY** in writing as soon as reasonably feasible, and in any event within twenty-four hours, of **CONTRACTOR'S** discovery or reasonable belief of any unauthorized access of City Data (a "Data Breach"), or of any incident affecting, or potentially affecting City Data related to cyber security (a "Security Incident"), including, but not limited to, denial of service attack, and system outage, instability or degradation due to computer malware or virus. **CONTRACTOR** shall begin remediation immediately. **CONTRACTOR** shall provide daily updates, or more frequently if required by **CITY**, regarding findings and actions performed by **CONTRACTOR** until the Data Breach or Security Incident has been effectively resolved to **CITY'S** satisfaction. **CONTRACTOR** shall conduct an investigation of the Data Breach or Security Incident and shall share the report of the investigation with **CITY**. At **CITY'S** sole discretion, **CITY** and its authorized agents shall have the right to lead or participate in the investigation. **CONTRACTOR** shall cooperate fully with **CITY**, its agents and law enforcement.

    B.    If **CITY** is subject to liability for any Data Breach or Security Incident, then **CONTRACTOR** shall fully indemnify and hold harmless **CITY** and defend against any resulting actions.

**PSC-23.**    <u>Insurance</u>

During the term of this Contract and without limiting **CONTRACTOR'S** obligation to indemnify, hold harmless and defend **CITY**, **CONTRACTOR** shall provide and maintain at its own expense a program of insurance having the coverages and limits not less than the required amounts and types as determined by the Office of the City Administrative Officer of Los Angeles, Risk Management (template Form General 146 in Exhibit 1 hereto). The insurance must: (1) conform to **CITY'S** requirements; (2) comply with the Insurance Contractual Requirements (Form General 133 in Exhibit 1 hereto); and (3) otherwise be in a form acceptable to the Office of the City Administrative Officer, Risk Management. **CONTRACTOR** shall comply with all Insurance Contractual Requirements shown on Exhibit 1 hereto. Exhibit 1 is hereby incorporated by reference and made a part of this Contract.

**PSC-24.** <u>Best Terms</u>

Throughout the term of this Contract, **CONTRACTOR**, shall offer **CITY** the best terms, prices, and discounts that are offered to any of **CONTRACTOR'S** customers for similar goods and services provided under this Contract.

**PSC-25.** Warranty and Responsibility of Contractor

**CONTRACTOR** warrants that the work performed hereunder shall be completed in a manner consistent with professional standards practiced among those firms within **CONTRACTOR'S** profession, doing the same or similar work under the same or similar circumstances.

**PSC-26.** Mandatory Provisions Pertaining to Non-Discrimination in Employment

Unless otherwise exempt, this Contract is subject to the applicable non-discrimination, equal benefits, equal employment practices, and affirmative action program provisions in LAAC Section 10.8 et seq., as amended from time to time.

A.    **CONTRACTOR** shall comply with the applicable non-discrimination and affirmative action provisions of the laws of the United States of America, the State of California, and **CITY**. In performing this Contract, **CONTRACTOR** shall not discriminate in any of its hiring or employment practices against any employee or applicant for employment because of such person's race, color, religion, national origin, ancestry, sex, sexual orientation, gender, gender identity, age, disability, domestic partner status, marital status or medical condition.

B.    The requirements of Section 10.8.2.1 of the LAAC, the Equal Benefits Ordinance, and the provisions of Section 10.8.2.1(f) are incorporated and made a part of this Contract by reference.

C.    The provisions of Section 10.8.3 of the LAAC are incorporated and made a part of this Contract by reference and will be known as the "Equal Employment Practices" provisions of this Contract.

D.    The provisions of Section 10.8.4 of the LAAC are incorporated and made a part of this Contract by reference and will be known as the "Affirmative Action Program" provisions of this Contract.

Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-27.**    Child Support Assignment Orders

**CONTRACTOR** shall comply with the Child Support Assignment Orders Ordinance, Section 10.10 of the LAAC, as amended from time to time. Pursuant to Section 10.10(b) of the LAAC, **CONTRACTOR** shall fully comply with all applicable State and Federal employment reporting requirements. Failure of **CONTRACTOR** to comply with all applicable reporting requirements or to implement lawfully served Wage and Earnings Assignment or Notices of Assignment, or the failure of any principal owner(s) of **CONTRACTOR** to comply with any Wage and Earnings Assignment or Notices of Assignment applicable to them personally, shall constitute a default by the **CONTRACTOR** under this Contract. Failure of **CONTRACTOR** or principal owner to cure

the default within 90 days of the notice of default will subject this Contract to termination for breach. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-28.** Living Wage Ordinance

**CONTRACTOR** shall comply with the Living Wage Ordinance, LAAC Section 10.37 *et seq.*, as amended from time to time. **CONTRACTOR** further agrees that it shall comply with federal law proscribing retaliation for union organizing. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-29.** Service Contractor Worker Retention Ordinance

**CONTRACTOR** shall comply with the Service Contractor Worker Retention Ordinance, LAAC Section 10.36 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-30.** Access and Accommodations

**CONTRACTOR** represents and certifies that:

A.  **CONTRACTOR** shall comply with the Americans with Disabilities Act, as amended, 42 U.S.C. Section 12101 et seq., the Rehabilitation Act of 1973, as amended, 29 U.S.C. Section 701 et seq., the Fair Housing Act, and its implementing regulations and any subsequent amendments, and California Government Code Section 11135;

B.  **CONTRACTOR** shall not discriminate on the basis of disability or on the basis of a person's relationship to, or association with, a person who has a disability;

C.  **CONTRACTOR** shall provide reasonable accommodation upon request to ensure equal access to **CITY**-funded programs, services and activities;

D.  Construction will be performed in accordance with the Uniform Federal Accessibility Standards (UFAS), 24 C.F.R. Part 40; and

E.  The buildings and facilities used to provide services under this Contract are in compliance with the federal and state standards for accessibility as set forth in the 2010 ADA Standards, California Title 24, Chapter 11, or other applicable federal and state law.

**CONTRACTOR** understands that **CITY** is relying upon these certifications and representations as a condition to funding this Contract. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-31.** Contractor Responsibility Ordinance

**CONTRACTOR** shall comply with the Contractor Responsibility Ordinance, LAAC Section 10.40 *et seq*., as amended from time to time.

**PSC-32.** Business Inclusion Program

Unless otherwise exempted prior to bid submission, **CONTRACTOR** shall comply with all aspects of the Business Inclusion Program as described in the Request for Proposal/Qualification process, throughout the duration of this Contract. **CONTRACTOR** shall utilize the Regional Alliance Marketplace for Procurement ("RAMP") at https://www.rampla.org/s/, to perform and document outreach to Minority, Women, and Other Business Enterprises. **CONTRACTOR** shall perform subcontractor outreach activities through RAMP. **CONTRACTOR** shall not change any of its designated Subcontractors or pledged specific items of work to be performed by these Subcontractors, nor shall **CONTRACTOR** reduce their level of effort, without prior written approval of **CITY**.

**PSC-33.** Slavery Disclosure Ordinance

**CONTRACTOR** shall comply with the Slavery Disclosure Ordinance, LAAC Section 10.41 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-34.** First Source Hiring Ordinance

**CONTRACTOR** shall comply with the First Source Hiring Ordinance, LAAC Section 10.44 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-35.** Local Business Preference Ordinance

**CONTRACTOR** shall comply with the Local Business Preference Ordinance, LAAC Section 10.47 *et seq.*, as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-36.** Iran Contracting Act

In accordance with California Public Contract Code Sections 2200-2208, all contractors entering into, or renewing contracts with **CITY** for goods and services estimated at $1,000,000 or more are required to complete, sign, and submit the "Iran Contracting Act of 2010 Compliance Affidavit."

**PSC-37.** Restrictions on Campaign Contributions and Fundraising in City Elections

Unless otherwise exempt, if this Contract is valued at $100,000 or more and requires approval by an elected **CITY** office, **CONTRACTOR**, **CONTRACTOR'S** principals, and **CONTRACTOR'S** Subcontractors expected to receive at least $100,000 for performance

under the Contract, and the principals of those Subcontractors (the "Restricted Persons") shall comply with Charter Section 470(c)(12) and LAMC Section 49.7.35. Failure to comply entitles **CITY** to terminate this Contract and to pursue all available legal remedies. Charter Section 470(c)(12) and LAMC Section 49.7.35 limit the ability of the Restricted Persons to make campaign contributions to and engage in fundraising for certain elected **CITY** officials or candidates for elected **CITY** office for twelve months after this Contract is signed. Additionally, a **CONTRACTOR** subject to Charter Section 470(c)(12) is required to comply with disclosure requirements by submitting a completed and signed Ethics Commission Form 55 and to amend the information in that form as specified by law. Any **CONTRACTOR** subject to Charter Section 470(c)(12) shall include the following notice in any contract with any Subcontractor expected to receive at least $100,000 for performance under this Contract:

> "Notice Regarding Restrictions on Campaign Contributions and Fundraising in City Elections
>
> You are a subcontractor on City of Los Angeles Contract # _____. Pursuant to the City of Los Angeles Charter Section 470(c)(12) and related ordinances, you and your principals are prohibited from making campaign contributions to and fundraising for certain elected City of Los Angeles ("**CITY**") officials and candidates for elected **CITY** office for twelve months after the **CITY** contract is signed. You are required to provide the names and contact information of your principals to the **CONTRACTOR** and to amend that information within ten business days if it changes during the twelve month time period. Failure to comply may result in termination of this Contract and any other available legal remedies. Information about the restrictions may be found online at ethics.lacity.org or by calling the Los Angeles City Ethics Commission at (213) 978-1960."

**PSC-38.**  Contractors' Use of Criminal History for Consideration of Employment Applications

**CONTRACTOR** shall comply with the City Contractors' Use of Criminal History for Consideration of Employment Applications Ordinance, LAAC Section 10.48 *et seq*., as amended from time to time. Any subcontract entered into by **CONTRACTOR** for work to be performed under this Contract must include an identical provision.

**PSC-39.** Limitation of City's Obligation to Make Payment to Contractor

Notwithstanding any other provision of this Contract, including any exhibits or attachments incorporated therein, and in order for **CITY** to comply with its governing legal requirements, **CITY** shall have no obligation to make any payments to **CONTRACTOR** unless **CITY** shall have first made an appropriation of funds equal to or in excess of its obligation to make any payments as provided in this Contract. **CONTRACTOR** agrees that any services provided by **CONTRACTOR**, purchases made by **CONTRACTOR** or expenses incurred by **CONTRACTOR** in excess of the appropriation(s) shall be free and without charge to **CITY** and **CITY** shall have no obligation to pay for the services, purchases or expenses. **CONTRACTOR** shall have no obligation to provide any services,

provide any equipment or incur any expenses in excess of the appropriated amount(s) until **CITY** appropriates additional funds for this Contract.

**PSC-40.**   Compliance with Identity Theft Laws and Payment Card Data Security Standards

**CONTRACTOR** shall comply with all identity theft laws including without limitation, laws related to: (1) payment devices; (2) credit and debit card fraud; and (3) the Fair and Accurate Credit Transactions Act ("FACTA"), including its requirement relating to the content of transaction receipts provided to Customers. **CONTRACTOR** also shall comply with all requirements related to maintaining compliance with Payment Card Industry Data Security Standards ("PCI DSS"). During the performance of any service to install, program or update payment devices equipped to conduct credit or debit card transactions, including PCI DSS services, **CONTRACTOR** shall verify proper truncation of receipts in compliance with FACTA.

**PSC-41.** Compliance with California Public Resources Code Section 5164

California Public Resources Code Section 5164 prohibits a public agency from hiring a person for employment or as a volunteer to perform services at any park, playground, or community center used for recreational purposes in a position that has supervisory or disciplinary authority over any minor, if the person has been convicted of certain crimes as referenced in the Penal Code, and articulated in California Public Resources Code Section 5164(a)(2).

If applicable, **CONTRACTOR** shall comply with California Public Resources Code Section 5164, and shall additionally adhere to all rules and regulations that have been adopted or that may be adopted by **CITY**. **CONTRACTOR** is required to have all employees, volunteers and Subcontractors (including all employees and volunteers of any Subcontractor) of **CONTRACTOR** working on premises to pass a fingerprint and background check through the California Department of Justice at **CONTRACTOR'S** sole expense, indicating that such individuals have never been convicted of certain crimes as referenced in the Penal Code and articulated in California Public Resources Code Section 5164(a)(2), if the individual will have supervisory or disciplinary authority over any minor.

**PSC-42.** Possessory Interests Tax

Rights granted to **CONTRACTOR** by **CITY** may create a possessory interest. **CONTRACTOR** agrees that any possessory interest created may be subject to California Revenue and Taxation Code Section 107.6 and a property tax may be levied on that possessory interest. If applicable, **CONTRACTOR** shall pay the property tax. **CONTRACTOR** acknowledges that the notice required under California Revenue and Taxation Code Section 107.6 has been provided.

**PSC-43.** Confidentiality

All documents, information, City Data (as that term is defined in PSC-22), and materials provided to **CONTRACTOR** by **CITY** or developed by **CONTRACTOR** pursuant to this Contract (collectively "Confidential Information") are confidential. **CONTRACTOR** shall not provide, and shall prohibit its employees and subcontractors from providing or disclosing, any Confidential Information or their contents or any information therein either orally or in writing, to any person or entity, except as authorized by **CITY** or as required by law. **CONTRACTOR** shall immediately notify **CITY** of any attempt by a third party to obtain access to any Confidential Information. This provision will survive expiration or termination of this Contract.

**PSC-44**. Contractor Data Reporting

If Contractor is a for-profit, privately owned business, Contractor shall, within 30 days of the effective date of the Contract and on an annual basis thereafter (i.e., within 30 days of the annual anniversary of the effective date of the Contract), report the following information to City via the Regional Alliance Marketplace for Procurement ("RAMP") or via another method specified by City: Contractor's and any Subcontractor's annual revenue, number of employees, location, industry, race/ethnicity and gender of majority owner ("Contractor/Subcontractor Information"). Contractor shall further request, on an annual basis, that any Subcontractor input or update its business profile, including the Contractor/Subcontractor Information, on RAMP or via another method prescribed by City.

Form Gen. 133 (Rev.10/17)

## EXHIBIT 1

### INSURANCE CONTRACTUAL REQUIREMENTS

**CONTACT** For additional information about compliance with City Insurance and Bond requirements, contact the Office of the City Administrative Officer, Risk Management at (213) 978-RISK (7475) or go online at www.lacity.org/cao/risk. The City approved Bond Assistance Program is available for those contractors who are unable to obtain the City-required performance bonds. A City approved insurance program may be available as a low-cost alternative for contractors who are unable to obtain City-required insurance.

**CONTRACTUAL REQUIREMENTS**

CONTRACTOR AGREES THAT:

**1.   Additional Insured/Loss Payee.** The CITY must be included as an Additional Insured in applicable liability policies to cover the CITY'S liability arising out of the acts or omissions of the named insured. The CITY is to be named as an Additional Named Insured and a Loss Payee As Its Interests May Appear in property insurance in which the CITY has an interest, e.g., as a lien holder.

**2.   Notice of Cancellation.** All required insurance will be maintained in full force for the duration of its business with the CITY. By ordinance, all required insurance must provide at least thirty (30) days' prior written notice (ten (10) days for non-payment of premium) directly to the CITY if your insurance company elects to cancel or materially reduce coverage or limits prior to the policy expiration date, for any reason except impairment of an aggregate limit due to prior claims.

**3.   Primary Coverage.** CONTRACTOR will provide coverage that is primary with respect to any insurance or self-insurance of the CITY. The CITY'S program shall be excess of this insurance and non-contributing.

**4.   Modification of Coverage.** The CITY reserves the right at any time during the term of this Contract to change the amounts and types of insurance required hereunder by giving CONTRACTOR ninety (90) days' advance written notice of such change. If such change should result in substantial additional cost to CONTRACTOR, the CITY agrees to negotiate additional compensation proportional to the increased benefit to the CITY.

**5.   Failure to Procure Insurance.** All required insurance must be submitted and approved by the Office of the City Administrative Officer, Risk Management prior to the inception of any operations by CONTRACTOR.

CONTRACTOR'S failure to procure or maintain required insurance or a self-insurance program during the entire term of this Contract shall constitute a material breach of this Contract under which the CITY may immediately suspend or terminate this Contract or, at its discretion, procure or renew such insurance to protect the CITY'S interests and pay any and all premiums in connection therewith and recover all monies so paid from CONTRACTOR.

**6.  Workers' Compensation.** By signing this Contract, CONTRACTOR hereby certifies that it is aware of the provisions of Section 3700 *et seq*., of the California Labor Code which require every employer to be insured against liability for Workers' Compensation or to undertake

**STANDARD PROVISIONS**                                    **1**                                    **ATTACHMENT A**
**FOR CITY CONTRACTS (Rev. 1/25 [v.2])**

Form Gen. 133 (Rev. 10/17)

self-insurance in accordance with the provisions of that Code, and that it will comply with such provisions at all time during the performance of the work pursuant to this Contract.

**7.   California Licensee.** All insurance must be provided by an insurer <u>admitted</u> to do business in California or written through a California-licensed surplus lines broker or through an insurer otherwise acceptable to the CITY. Non-admitted coverage must contain a **Service of Suit** clause in which the underwriters agree to submit as necessary to the jurisdiction of a California court in the event of a coverage dispute. Service of process for this purpose must be allowed upon an agent in California designated by the insurer or upon the California Insurance Commissioner.

**8.   Aggregate Limits/Impairment.** If any of the required insurance coverages contain annual aggregate limits, CONTRACTOR must give the CITY written notice of any pending claim or lawsuit which will materially diminish the aggregate within thirty (30) days of knowledge of same. You must take appropriate steps to restore the impaired aggregates or provide replacement insurance protection within thirty (30) days of knowledge of same. The CITY has the option to specify the minimum acceptable aggregate limit for each line of coverage required. No substantial reductions in scope of coverage which may affect the CITY'S protection are allowed without the CITY'S prior written consent.

**9.   Commencement of Work.** For purposes of insurance coverage only, this Contract will be deemed to have been executed immediately upon any party hereto taking any steps that can be considered to be in furtherance of or towards performance of this Contract. The requirements in this Section supersede all other sections and provisions of this Contract, including, but not limited to, PSC-3, to the extent that any other section or provision conflicts with or impairs the provisions of this Section.

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**          1          **ATTACHMENT A**

# Required Insurance and Minimum Limits

Name:_____    Date: _____

Agreement/Reference: _____

Evidence of coverages checked below, with the specified minimum limits, must be submitted and approved prior to occupancy/start of operations. Amounts shown are Combined Single Limits ("CSLs"). For Automobile Liability, split limits may be substituted for a CSL if the total per occurrence equals or exceeds the CSL amount.

**Limits**

___ **Workers' Compensation (WC) and Employer's Liability (EL)**

☐ Waiver of Subrogation in favor of City          ☐ Longshore & Harbor Workers
                                                  ☐ Jones Act

WC
_____ *Statutory*

EL _____

___ **General Liability** _____          _____

☐ Products/Completed Operations          ☐
☐ Fire Legal Liability _____          Sexual Misconduct _____
☐

___ **Automobile Liability** (for any and all vehicles used for this contract, other than commuting to/from work)          _____

___ **Professional Liability** (Errors and Omissions)          _____

Discovery Period _____

___ **Property Insurance** (to cover replacement cost of building - as determined by insurance company)          _____

☐ All Risk Coverage          ☐ Boiler and Machinery
☐ Flood _____          ☐ Builder's Risk
☐ Earthquake _____          ☐ _____

___ **Pollution Liability**          _____

☐ _____

___ **Surety Bonds -** Performance and Payment (Labor and Materials) Bonds          _____
___ **Crime Insurance**          _____

**Other:** _____
_____
_____

**STANDARD PROVISIONS
FOR CITY CONTRACTS (Rev. 1/25 [v.2])**          1

## EXHIBIT B

### Hourly Rates for Gibson Dunn

A.  The specific hourly rates for each authorized timekeeper shall not exceed the following during calendar year 2025:

| Authorized Timekeeper | Title | Standard Hourly Rate | Discounted Hourly Rate |
|---|---|---|---|
| Theane Evangelis | Lead Partner | $2,425 | $1,295 |
| Marcellus McRae | Partner | $2,245 | $1,295 |
| Kahn Scolnick | Partner | $2,190 | $1,295 |
| Bradley Hamburger | Partner | $2,110 | $1,295 |
| Senior Associate (7th+ Year) | Associate | $1,555 | $1,295 |
| Mid-Level Associate (4th-6th Year) | Associate | $1,415 | $1,295 |
| Junior Associate (1st-3rd Year) | Associate | $945 - $1,220 | $1,295 |

B.  The hourly rate for each timekeeper category shall not exceed the following:

| Title | Standard Hourly Rate | Discounted Hourly Rate |
|---|---|---|
| Partners | $2,650 | $1,295 |
| Of Counsel | $1,675 | $1,295 |
| Associates | $1,555 | $1,295 |
| Paralegals | $820 | $550 |

109082941.3

23

# Exhibit F



# 2024

# PARTNER

# COMPENSATION

# SURVEY

MAJOR, LINDSEY & AFRICA

Friends,

We are pleased to provide you with the results of Major, Lindsey & Africa's 2024 Partner Compensation Survey—our eighth in a line of biennial surveys since 2010. MLA's Partner Compensation Survey continues to be the most comprehensive effort undertaken to identify partner compensation ranges, the criteria law firms use in determining partner compensation, and the level of satisfaction law firm partners have with their compensation and compensation systems.

Data for this survey was collected this past summer using an online questionnaire hosted by a third-party partner seeking information regarding compensation received by AmLaw 200 partners in 2023. As in all past surveys, responses went only to our third-party partner, and no personally identifiable information of respondents or their firms has been or will be shared with MLA, individually or in the aggregate. Thank you to all of you who participated in the survey—we very much appreciate your time.

We have once again learned a great deal from the survey, and you will see repeated themes that are now a part of the Big Law compensation landscape, including increased compensation and billing rates, disparities between equity and non-equity partners, and lateral movement. For a historical perspective, we have chosen to compare this year's results to those in our 2022 Survey regarding 2021 compensation and our 2014 Survey regarding 2013 compensation.

We hope that this report will provide important and relevant information for partners reflecting on their careers and those in law firm management tasked with optimizing their compensation systems.

Should you have any questions regarding the results of the survey, please feel free to reach out to either of us or to any of our Major, Lindsey & Africa Partner Practice Group colleagues.

Sincerely,

**Karen A. Andersen**
*Partner*
Southern California & Seattle
**kandersen@mlaglobal.com**

**Louis Ramos**
*Managing Director*
Washington, D.C.
**louramos@mlaglobal.com**

# Table of Contents

**Findings**                                                                                    **05**

**2024 Survey Respondent Demographics**                                                          **08**

**Survey Results**                                                                               **10**

**Compensation**                                                                                 **10**

    All Respondents                                                          10

    By Partnership Status                                                     10

    By Partnership Tenure —Total Years as a Partner                           11

    By Practice Area                                                          11

    By Metro Area                                                             12

    By Compensation System Transparency                                       12

    By Gender                                                                 13

    By Ethnicity                                                              13

**Originations**                                                                                 **14**

    All Respondents                                                          14

    Originations vs. Compensation                                             15

    By Partnership Status                                                     16

    By Partnership Tenure — Total Years as a Partner                          16

    By Practice Area                                                          17

    By Metro Area                                                             17

    By Compensation System Transparency                                       18

    By Gender                                                                 18

    By Ethnicity                                                              19

**Billing Rates, Billable Hours & Working Attorney Receipts**                                    **19**

    Billing Rates                                                             19

    Standard Discount Off Average Billing Rate                                21

    Billable Hours                                                            21

    Working Attorney Receipts                                                 22

**Compensation Satisfaction**                                                                    **22**

    Overall Satisfaction                                                      22

    By Partnership Status                                                     23

    By Years at Current Firm                                                  23

By Lateral Status                                        24

By Practice Area                                         24

By Metro Area                                            25

By Compensation System Transparency                      25

By Compensation                                          26

By Originations                                          26

By Billable Hours                                        27

By Gender                                                27

By Ethnicity                                             28

**Methodology**                                          **29**

**Links**                                                **29**

**Statistical Terms**                                    **29**

**About**                                                **30**

The Authors                                              30

Major, Lindsey & Africa                                  30

Western Management Group                                 31

# Findings

## Compensation

- Over the past ten years, average compensation for AmLaw 200 partners has nearly doubled. The average reported compensation, $1,411,000, marks a 26% increase since our 2022 Survey and is almost double the $716,000 average reported in our 2014 Survey. Median compensation for all 2024 respondents was $800,000, up 19% from 2022 ($675,000) and 68% from 2014 ($475,000).

  The significant increase in average compensation over the past two years compared to the median makes clear that compensation at the highest levels is growing at a more substantial rate.

- As we have consistently found, equity partners continue to earn significantly more than non-equity partners. Equity partners reported average compensation of $1,937,000—more than three times higher than the $558,000 average compensation reported by non-equity partners. This disparity is consistent with our 2014 Survey, which revealed that equity partners' average compensation ($971,000) was almost three times the average compensation of non-equity partners ($338,000).

  Additionally, 42% of equity partners earned over $1,500,000 in 2023, while more than 50% of non-equity partners earned less than $500,000.

- Average compensation for equity and non-equity partners has surged since our 2022 Survey, rising by 32% and 21%, respectively. These increases are the largest in our survey's history. Prior to 2022, non-equity partner compensation typically saw only single-digit growth between biennial surveys. The dramatic rise in non-equity partner pay suggests recent market forces, particularly law firms' need to retain and attract talent at the non-equity level, have significantly impacted compensation strategies.

- Male respondents earned an average of $1,662,000 in 2023—29% higher than female respondents ($1,239,000). While this gap is significant, it has narrowed considerably from the 44% and 34% differentials we reported in our 2014 and 2022 Surveys, respectively.

  Notably, the rate of increase in women's compensation matched that of men's for the first time in the history of our surveys, with both groups experiencing a 37% rise since the 2022 Survey. [1]

- Our 2024 Survey data[2] reveals a narrowing compensation gap between partners of diverse ethnicities and those identifying as white. While ethnically diverse partners reported double-digit pay discrepancies compared to their white counterparts in 2014, the landscape appears to have shifted significantly over the past decade. In 2024, ethnically diverse partners reported average compensation 4% lower than white (non-Hispanic) partners ($1,355,232 vs. $1,416,893). However, it's important to note that this gap varies across different ethnicities, with some facing wider disparities than others.

[1] The rate of increase in compensation for men and women differs from the average increase for all respondents. This is due to not all respondents answering the question regarding their gender.

[2] The number of respondents for some non-white ethnicities is quite low, so we are reluctant to draw conclusions from the data. The numbers of respondents per ethnicity is set forth in more detail in the associated section of this report.

## Originations

- Average originations for all respondents in the 2024 Survey were $3,476,000, up 26% from 2022 and 78% from 2014. However, median reported originations were on par with those reported in 2022 and up only 19% from 2014. The differential between average and median originations suggests that there are significant outliers at the high end of reported originations.

- Both equity and non-equity partners reported increases in average originations in the 2024 Survey compared to the 2022 Survey, but equity partners reported a 32% increase to almost $5,000,000 as compared to a 5% increase by non-equity partners to $971,000.

- Consistent with each of our prior surveys equity partners on average, continue to generate more than four times the amount of business generated by non-equity partners. Median originations for equity partners were $2,750,000, compared to $750,000 for non-equity partners.

- As we have seen throughout MLA's fourteen years of survey data, men continue to significantly outpace women in originations. Male partners reported average originations of $3,900,000, representing a 29% increase from our 2022 Survey. Female partners reported an 18% increase, with average originations of almost $2,400,000.

## Billing Rates, Billable Hours & Working Attorney Receipts

- Reported hourly billing rates ranged from $200 to $2,750. The average hourly billing rate for all 2024 Survey respondents was $1,114, up 36% from 2022 ($819) and 83% from 2014 ($608). The median hourly rate reported in the 2024 Survey was $1,075, up 41% from 2022 ($762) and 75% from 2014 ($613).

  The average hourly rates reported in 2024 are 26% higher for equity partners than for non-equity partners. The average hourly billing rate for equity partners was $1,218 (up 39% from 2022) as compared to $935 for non-equity partners (up 31% from 2022). The median hourly billing rate reported by equity partners was $1,198 as compared to $875 for non-equity partners.

- Average billable hours[3] reported in 2024 were 1,721—identical to those reported in 2022 and only 2% higher than the 1,686 average reported in 2014. We would not expect dramatic hours increases, for (as the saying goes) there are only 24 hours in a day. Equity partners on average reported billable hours of 1,704 as compared to 1,750 for non-equity partners, a divergence of only 3%.

- Working attorney receipts (WAR)[4] ranged from a minimum of $250,000 to a maximum of over $5,000,000. Given the increase in billing rates, it is not surprising that the average WAR for all partners has risen 19% to $1,643,910 since our 2022 Survey. By comparison, the average WAR for all partners in 2014 was $1,097,000. The median reported WAR for the 2024 Survey was $1,375,000[5].

[3] Aggregate billable hours numbers in this report were normalized to be comparable to numbers reported in previous surveys by omitting responses of fewer than 500 hours from the analysis.

[4] Working Attorney Receipts is defined as the total dollar value collected (or expected to be collected) by your firm for work performed personally by you (i.e., your billable hours multiplied by your effective billing rate) in the 2023 fiscal year.

[5] The disparity between the reported increase in billing rates and the reported increase in WAR is likely due to discounting or other variables not surveyed.

## Compensation Drivers — Regression Analysis

- Our 2024 Survey data reaffirms that originations remain the dominant force shaping partner compensation, with billing rates playing a secondary role. Regression analysis, a statistical method for quantifying relationships between variables, supports this finding. The analysis reveals that originations alone account for 64% of compensation variation among partners; billing rates showed a 35% correlation to variation in compensation. Together, these two variables explain 72% of the observed compensation differences. Notably, the analysis suggests all other factors had a negligible impact on compensation levels.

- Equity partners, as a cohort, consistently outperform non-equity partners on both originations and billing rates, which directly translates to their substantially higher compensation.

## Open/Closed Compensation Systems

- Consistent with our prior surveys, partners in open compensation systems (where access to other partners' compensation is easy to obtain or readily available) reported significantly higher average compensation—$1,779,264 as compared to $1,358,738 for partners in partially open systems (where access to other partners' compensation is difficult to obtain or limited) and $1,009,991 for partners in closed systems (where partners do not have access to other partners' compensation). Median data is more closely grouped—median compensation for partners in "Open" systems was $1,000,000, compared to those in "Partially Open" ($775,000) and closed systems ($625,000).

- Almost half (48%) of respondents reported being in open compensation systems, 20% reported being in partially open systems and 32% reported being in closed systems.

## Satisfaction with 2023 Compensation

- Partners' satisfaction with their 2023 compensation was robust: 72% classified themselves as some level of "satisfied," with a quarter of all respondents reporting that they are "very satisfied." Conversely, only 22% classified themselves as some level of "dissatisfied," with only 5% of respondents reporting that they are "very dissatisfied." Six percent of respondents were neutral. These figures align with trends observed in previous surveys, indicating consistently high satisfaction with compensation among partners as a whole.

- However, when broken out by equity or non-equity partner status, a significant gap in satisfaction appears—80% of equity partners reported being some level of "satisfied" with their 2023 compensation (34% being "very satisfied"), compared to only 60% of non-equity partners (10% being "very satisfied"). Only 16% of equity partners reported being some level of "dissatisfied" (3% being "very dissatisfied"), compared to 32% of non-equity partners (8% being "very dissatisfied").

- Women partners reported very similar levels of satisfaction/dissatisfaction with their 2023 compensation as men across all categories. This contrasts with our 2022 Survey in which 31% of male partners reported being "very satisfied" versus only 26% of female partners being in that category, and 18% of male partners being at some level "dissatisfied" compared to 22% of female partners.

## Practice Area

- Corporate partners reported the highest average compensation ($1,922,000), as they have consistently over the history of our survey, and labor and employment partners reported the lowest ($929,000).

- Unsurprisingly, corporate partners also reported the highest originations ($5,248,000), billing rates ($1,277 per hour), and WAR. Labor and employment partners reported the second lowest originations ($2,390,000) and the lowest billing rates ($826 per hour) and WAR.

- It is important to note, however, that labor and employment partners as a cohort reported a nearly identical level of satisfaction as corporate partners (74% vs. 75%).

# 2024 Survey Respondent Demographics





## Ethnicity





**Practice Area**
- Corporate
- Employment/Labor
- IP
- Litigation
- Real Estate
- Tax & ERISA
- Other

**Open/Closed Compensation System**
- Open
- Partially Open
- Closed

# Survey Results | Compensation

## All Respondents

### Average and Median Compensation (All Respondents)



## By Partnership Status

### Average Compensation by Partnership Status



## By Partnership Tenure — Total Years as Partner

### Average Total Compensation by Partnership Tenure



## By Practice Area

### Average Total Compensation by Practice Area



## By Metro Area

As with past surveys, we have opted to include only metropolitan areas with a statistically significant number of respondents. Denver and Orlando reached that threshold after they did not in 2022, whereas Minneapolis met the required number in 2022 but not in 2024.



**Average Total Compensation by Metro Area**

## By Compensation System Transparency

We asked respondents: "Is your firm's compensation system open or closed?" They were given the following options:

- **Open:** Partners know what other partners' compensation is or can easily find out.
- **Partially open:** Information about other partners' compensation is limited or somewhat difficult to find out.
- **Closed:** Partners generally do not know what other partners' compensation is.

**Average Total Compensation by Compensation System Transparency**



## By Gender

Male partners earned an average of $1,662,000 in 2023, 29% higher than female partners ($1,239,000). This gap, while significant, has narrowed considerably from the 44% and 47% differentials we reported in our 2014 and 2020 Surveys. The average time as a partner at any firm reported by male partners is thirteen years and by female partners nine years. The median time as a partner at any firm reported by male partners is eleven years and by female partners six years.

Notably, the rate of increase in women's' compensation matched that of men's for the first time in the history of our surveys, with both groups experiencing a 37% rise since the 2022 Survey. Our regression analysis did not show that gender had a statistically significant influence on compensation variability. As noted above, originations and to a lesser extent billing rates are the most statistically significant variables that influence compensation.

### Total Average Compensation by Gender



## By Ethnicity

The ethnicity categories used in the survey and this report follow those used by the American Bar Association. Historically, because of the comparatively small number of ethnically diverse respondents, we have been reluctant to draw conclusions for those categories. We are, however, encouraged by the continued steady increases in responses from ethnically diverse partners.

The total numbers of respondents to the survey by ethnicity were as follows: white, not Hispanic (1,470); Black, not Hispanic (61); Hispanic (59); Asian Pacific, not Hispanic (107); American Indian, not Hispanic (4); Native Hawaiian or Pacific Islander, not Hispanic (3); mixed races (22). All other respondents either did not answer the question or selected "Prefer not to say."

Our 2024 Survey data reveals a narrowing compensation gap between partners of diverse ethnicities and those identifying as white. While ethnically diverse partners reported double-digit pay discrepancies compared to their white counterparts in 2014, the landscape appears to have shifted significantly over the past decade. In 2024, ethnically diverse partners reported an average compensation that was 4% lower than white (non-Hispanic) partners ($1,355,232 vs. $1,416,893). However, it's important to note that this gap varies across different ethnicities, with some facing wider disparities than others.

## Average Total Compensation by Ethnicity



# Originations

A total of 1,486 respondents provided their originations data, with reported originations ranging from less than $500,000 to more than $30,000,000.

## All Respondents

Average originations for all respondents in the 2024 Survey were $3,476,000, up 26% from 2022 and 78% from 2014. However, median reported originations were on par with those reported in 2022 and up only 19% from 2014. The differential between average and median originations suggests that there are significant outliers at the high end of reported originations.

## Average and Median Originations (All Respondents)



## Originations vs. Compensation

Our 2024 Survey data reaffirms that originations remain the dominant force shaping partner compensation, with billing rates playing a secondary role. Regression analysis, a statistical method for quantifying relationships between variables, supports this finding. The analysis reveals that originations alone account for 64% of compensation variation among partners; billing rates showed a 35% correlation to variation in compensation. Together, these two variables explain 72% of the observed compensation differences. Notably, the analysis suggests all other factors had a negligible impact on compensation levels.

Equity partners, as a cohort, consistently outperform non-equity partners on both originations and billing rates, which directly translates to their substantially higher compensation.

### Comparison of Average Originations to Average Compensation



### Comparison of Median Originations to Median Compensation



## By Partnership Status

Both equity and non-equity partners reported increases in average originations in the 2024 Survey compared to the 2022 Survey, but equity partners reported a 32% increase to almost $5,000,000 as compared to a 5% increase by non-equity partners to $971,000.

### Average Client Originations by Partner Status



## By Partnership Tenure — Total Years as a Partner

### Average Client Originations by Total Partnership Tenure



## By Practice Area



**Average Client Originations by Practice Area**

Legend: ■ 2014  ■ 2022  ■ 2024

## By Metro Area

As with past surveys, we have opted to include only metropolitan areas with a statistically significant number of respondents. Denver and Orlando reached that threshold after they did not in 2022, whereas Minneapolis met the required number in 2022 but not in 2024.



**Average Client Originations by Metro Area**

Legend: ■ 2022  ■ 2024

## By Compensation System Transparency

### Average Client Originations by Compensation System Transparency



## By Gender

As we have seen throughout MLA's fourteen years of survey data, men continue to significantly outpace women in originations. Male partners reported average originations of $3,900,000, representing a 29% increase from our 2022 Survey. Female partners reported an 18% increase, with average originations of almost $2,400,000.

As noted above, regression analysis suggests that 72% of variation in compensation is accounted for by originations and, to a lesser extent, billing rates.

### Average Client Originations by Gender



## By Ethnicity

As noted previously, the total number of respondents to the survey by ethnicity was as follows: white, not Hispanic (1,470); Black, not Hispanic (61); Hispanic (59); Asian Pacific, not Hispanic (107); American Indian, not Hispanic (4); Native Hawaiian or Pacific Islander, not Hispanic (3); mixed races (22). All other respondents either did not answer the question or selected "Prefer not to say."



**Average Client Originations by Ethnicity**

# Billing Rates, Billable Hours & Working Attorney Receipts

## Billing Rates

The average hourly billing rate for all 2024 Survey respondents was $1,114, up 36% from 2022 ($819) and a whopping 83% from 2014 ($608), more than double the rate of inflation in the same period. The median hourly rate reported in the 2024 Survey was $1,075, up 41% from 2022 ($762) and 75% from 2014 ($613).

The average hourly rates reported in 2024 are 26% higher for equity partners than for non-equity partners. The average hourly billing rate for equity partners was $1,218 (up 39% from 2022) as compared to $935 for non-equity partners (up 31% from 2022). The median hourly billing rate for equity partners was $1,198 as compared to $875 for non-equity partners.

## Average Billing Rates



## Average Billing Rates by Partner Status



## Average Hourly Billing Rates by Practice Area



## Standard Discount Off Average Billing Rate[6]



**Average Standard Discount**

## Billable Hours

Average billable hours[7] reported in 2024 were 1,721—identical to those reported in 2022 and only 2% higher than the 1,686 average reported in 2014. We would not expect dramatic hours increases, for (as the saying goes) there are only 24 hours in a day. Equity partners on average reported billable hours of 1,704 as compared to 1,750 for non-equity partners, a divergence of only 3%.

**Average Billable Hours**

**Average Billable Hours by Partner Status**

[6] Standard discount data was not collected in 2014.

[7] Aggregate billable hours numbers in this report were normalized to be comparable to numbers reported in previous surveys by omitting responses of fewer than 500 hours from the analysis.

## Working Attorney Receipts

WAR[8] ranged from a minimum of $250,000 to a maximum of over $5,000,000. Given the increase in billing rates, it is not surprising that the average WAR for all partners has risen 19% to $1,643,910 since our 2022 Survey. By comparison, the average WAR for all partners in 2014 was $1,097,000. The median reported WAR for the 2024 Survey was $1,375,000.[9]

**Average Working Attorney Receipts**



# Compensation Satisfaction

## Overall Satisfaction



[8] Working Attorney Receipts is defined as the total dollar value collected (or expected to be collected) by your firm for work performed personally by you (i.e., your billable hours multiplied by your effective billing rate) in the 2023 fiscal year.

[9] The disparity between the reported increase in billing rates and the reported increase in WAR is likely due to discounting or other variables not surveyed.

## By Partnership Status

### 2024 Satisfaction with Total Compensation by Partner Status



**Legend:** Very Dissatisfied · Moderately Dissatisfied · Slightly Dissatisfied · Neutral · Slightly Satisfied · Moderately Satisfied · Very Satisfied

## By Years at Current Firm

### 2024 Satisfaction with Compensation by Years at Current Firm



**Legend:** Very Dissatisfied · Moderately Dissatisfied · Slightly Dissatisfied · Neutral · Slightly Satisfied · Moderately Satisfied · Very Satisfied

## By Lateral Status

### 2024 Satisfaction with Compensation by Lateral Status



**Partners who have moved laterally from another firm, government service, or private industry:**
- Very Satisfied: 29%
- Moderately Satisfied: 35%
- Slightly Satisfied: 11%
- Neutral: 6%
- Slightly Dissatisfied: 7%
- Moderately Dissatisfied: 8%
- Very Dissatisfied: 5%

**Partners who have been promoted at their current firm:**
- Very Satisfied: 22%
- Moderately Satisfied: 38%
- Slightly Satisfied: 11%
- Neutral: 7%
- Slightly Dissatisfied: 8%
- Moderately Dissatisfied: 10%
- Very Dissatisfied: 4%

Legend: Very Dissatisfied · Moderately Dissatisfied · Slightly Dissatisfied · Neutral · Slightly Satisfied · Moderately Satisfied · Very Satisfied

## By Practice Area

### 2024 Satisfaction with Compensation by Practice Area

| Category | Corporate | Employment/Labor | IP | Litigation | Real Estate | Tax & ERISA | Other |
|---|---|---|---|---|---|---|---|
| Very Satisfied | 26% | 25% | 22% | 24% | 25% | 30% | 27% |
| Moderately Satisfied | 41% | 35% | 30% | 35% | 37% | 38% | 33% |
| Slightly Satisfied | 8% | 14% | 15% | 11% | 12% | 8% | 9% |
| Neutral | 6% | 6% | 5% | 5% | 8% | 4% | 10% |
| Slightly Dissatisfied | 6% | 6% | 10% | 9% | 7% | 9% | 11% |
| Moderately Dissatisfied | 10% | 10% | 9% | 10% | 8% | 7% | 7% |
| Very Dissatisfied | 3% | 4% | 8% | 7% | 4% | 4% | 3% |

Legend: Very Dissatisfied · Moderately Dissatisfied · Slightly Dissatisfied · Neutral · Slightly Satisfied · Moderately Satisfied · Very Satisfied

## By Metro Area

**2024 Satisfaction with Total Compensation by Metro Area**



## By Compensation System Transparency

**2024 Satisfaction with Total Compensation by Compensation System Transparency**



## By Compensation

### 2024 Satisfaction with Total Compensation by Total Compensation



## By Originations

### 2024 Satisfaction with Total Compensation by Total Client Originations



## By Billable Hours

**2024 Satisfaction with Total Compensation by Total Billable Hours**



## By Gender

Women partners reported very similar levels of satisfaction/dissatisfaction with their 2023 compensation as men across all categories. This contrasts with our 2022 Survey in which 31% of male partners reported being "very satisfied" versus only 26% of female partners being in that category, and 18% of male partners being at some level "dissatisfied" compared to 22% of female partners.

**2024 Satisfaction with Total Compensation by Gender**



## By Ethnicity

### 2024 Satisfaction with Total Compensation by Ethnicity



# Methodology

The 2024 Survey was conducted this past summer in partnership with Western Management Group (WMG). Invitations containing a link to the questionnaire were emailed by WMG to 53,587 partners across the United States at AM Law 200 firms. The questionnaire link was accessible from June 27 to August 26, 2024.

Additionally, a small number of partners were invited to participate in the WMG-hosted survey via email from select partner recruiters at MLA. As noted earlier, all survey responses went only to WMG. No names of partners or their firms were collected by WMG, and no personally identifiable information of respondents collected by WMG has been or will be shared with MLA, either individually or in the aggregate.

A total of 1,718 responses were received by WMG. Assuming that all partners contacted received the invitation, the overall response rate was 3.1%. As is common with surveys of this nature, not every respondent answered every question.

For certain data categories where there was only a small number of respondents, it is difficult to draw statistically meaningful conclusions. This is true with regard to our data sorted by ethnicity, certain practice areas, and certain cities. We have endeavored to note this where we believe it is relevant for the reader.

For some questions, respondents were given ranges as response choices. For example, compensation values were typically grouped in $50,000 ranges (e.g., $800,000 to $850,000). To calculate the data in such instances, we used the midpoint for all responses that were expressed as ranges. In those cases where midpoints were not identifiable (e.g., responses where one parameter of the range was open-ended), MLA identified an appropriately representative value to be used for those responses, applying criteria consistent with previous surveys.

# Links

The report refers to changes over the past decade and since our last survey report. The 2014 and 2022 Surveys can be found by **clicking here**.

The 2024 questionnaire can be found by **clicking here**.

# Statistical Terms

- The **median** (or the 50th percentile) is the value separating the higher half from the lower half of a data sample. For a data set, it may be thought of as the "middle" value. The basic feature of the median in describing data compared to the average is that it is not skewed by a small proportion of extremely large or small values and therefore provides a better representation of the center.

- The **average** (or mean) is the sum of a collection of numbers divided by the count of numbers in the collection.

Percentages may not total 100 because of decimal places/rounding.

# About

## The Authors



**Karen A. Andersen** is a partner at Major, Lindsey & Africa assisting individual partners and groups in navigating the lateral marketplace in Southern California and the Pacific Northwest. With over twenty years in partner recruiting both at MLA and in major law firms, Karen can adeptly identify synergistic opportunities as well as potential issues for both partners and firms.

Before opening the Seattle office of MLA in 2003, Karen served as managing director and general counsel to the advisor of two Bechtel Enterprises and GE Capital-sponsored venture capital funds. Prior to that, she practiced corporate securities law at Brobeck, Phleger & Harrison and as a partner at Davis Wright Tremaine and Summit Law Group. Karen returned to MLA in 2019 after ten years serving as the chief lateral partner recruitment officer for Perkins Coie and Pepper Hamilton.



**Louis Ramos** is a managing director in Major, Lindsey & Africa's Partner Practice Group in Washington, D.C. Having been a law firm partner, an assistant United States attorney and a senior in-house lawyer at a Fortune 100 company over his 22-year legal career, Lou brings a unique perspective to legal recruiting. He uses his extensive experience in the legal profession to advise potential candidates and clients on the lateral partner market overall as well as specific opportunities.

Prior to joining MLA, Lou was a partner at DLA Piper and Morgan Lewis, where he focused on significant white-collar litigation, government and internal investigations, and compliance counseling. Before returning to law firm practice, Lou was an assistant general counsel with Pfizer, where he managed a team of lawyers responsible for investigations around the globe.

Lou also served for over five years as an assistant United States attorney in the District of Columbia, where he was the lead prosecutor in nineteen jury trials and directed numerous investigations into violations of federal and local criminal laws, including mail and wire fraud, money laundering, counterfeiting, narcotics trafficking, human trafficking, murder, and other serious crimes. While at the U.S. Attorney's Office, Lou was the recipient of numerous special achievement awards and a commendation from the United States Secret Service for his work on a counterfeiting investigation. Lou started his career as a litigation associate at Fried, Frank, Harris, Shriver & Jacobson.

## Major, Lindsey & Africa

Major, Lindsey & Africa is the world's leading legal search firm. The firm, founded in 1982, offers a range of **specialized recruiting** to meet the ever-changing legal and governance needs of law firms and corporations and to support the career aspirations of talented lawyers, compliance professionals and C-suite executives working to advance their career in the boardroom. With more than 25 offices and 200-plus search consultants around the world, Major, Lindsey & Africa uses its market knowledge and experience to partner with organizations to fulfill their legal and governance talent needs and provide solutions to increase team efficiency and effectiveness. Major, Lindsey & Africa is an **Allegis Group** company, the global leader in talent solutions. To learn more about Major, Lindsey & Africa, visit **www.mlaglobal.com** and follow MLA on **LinkedIn**, **X** , **Facebook** , **YouTube** and **Instagram**.

## Western Management Group

Since 1972, Western Management Group has been an independent global leader in the design, development, and conduct of compensation and benefits surveys. Their practice is dedicated to providing timely, valid, and accurate market data to compensation and benefits professionals through the use of state-of-the-art tools and analyses.

Western Management Group has conducted specialized surveys and studies for over 10,000 global organizations in a wide variety of industries, including high technology, telecommunications, pharmaceuticals, aerospace, financial services, retail, consumer products, media and advertising, entertainment, agriculture, and educational institutions.

Recognized for their innovation, rapid response, flexibility, and expertise, WMG offers a full range of surveys for companies seeking the best information available for developing and managing employee compensation in an ever-changing marketplace.

To learn more about Western Management Group, visit **www.wmgnet.com**.



MAJOR, LINDSEY & AFRICA