UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
elizabeth@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*, | Case No. 2:20-CV-02291-DOC-KES |
| Plaintiffs, | Assigned to Judge David O. Carter |
| v. | |
| CITY OF LOS ANGELES, *et al.*, | **DECLARATION OF LAURIE L. LEVENSON IN SUPPORT OF PLAINTIFF LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES** |
| Defendants. | |
| | Before:      Hon. David O. Carter |
| | Courtroom:  1 |

*DECLARATION OF LAURIE L. LEVENSON ISO PLAINTIFF LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES*

## DECLARATION OF LAURIE L. LEVENSON

I, Laurie L. Levenson, declare as follows:

1.      I am an attorney duly licensed to practice before this Court. I am a Professor of Law at the Loyola Law School and hold the David W. Burcham Chair in Ethical Advocacy. I previously served as the Chief of the Criminal Division of the United States Attorney's Office for the Central District of Los Angeles. In 2019, I co-founded (with Judge Sandra Klein) Girl Scout Troop 1085, a troop for girls experiencing homelessness but are able to participate because their families are staying in shelters or transitional housing. At Loyola, I am the Founding Director of the Loyola Project for the Innocent, the Loyola Center for Ethical Advocacy, and the Fidler Institute on Criminal Justice, and I am Senior Faculty for Loyola's Journalist Law School. I have served as a Special Master to the United States District Court for the Central District of California since 1995. I was a Member of the Blue Ribbon Commission on Reforms for Los Angeles Police Department and the Special Independent Committee Investigating Civil Disorder in Los Angeles (the Rampart Scandal).

2.      During my time as a federal prosecutor, I prosecuted civil rights violations. I have written, taught, and spoken on civil-rights-related litigation and have followed closely civil rights litigation involving the City of Los Angeles.

3.      The expert opinions in this declaration are my own and do not reflect the views of any other institution or individual.

4.      I have followed the litigation in this case with great interest. The case involves a distinctive set of facts, novel legal theories, and a humanitarian crisis with a scope and seriousness that defies comparison. The case seeks affirmative remedies—that is, to compel municipal entities and officials to take affirmative action—in a manner that is unusual for civil rights cases, which often seek to enjoin government action (or compensate for its consequences). I am aware of no other case like this one in the nation.

5.      Novel cases require extra work and ingenuity from the advocates who bring them. There is no template for a case like this, so the lawyers who brought this case

1

necessarily did work beyond what is required in a common civil rights case involving allegations of law enforcement misconduct or conditions of incarceration. This is all more true in a case that involves not a single event, but an issue as multifaceted and complex as homelessness.

6.      Lawyers often take civil rights cases on a contingency basis, which means the lawyers assume the risk that in the event the case is not successful, they will receive no compensation, and in the event, the case is successful, that they will be under-compensated for their time. The risk is higher in novel cases than it is in run-of-the-mill lawsuits where likely recoveries can be anticipated. This is particularly true in cases that seek mostly injunctive relief, like this one. The risk assumed in this by the attorneys for the LA Alliance was elevated in comparison to typical civil rights cases.

7.      This case has also required the LA Alliance to monitor multiple government agencies and their compliance with settlement agreements. Based on my experience, monitoring government agencies is a labor-intensive process that exceeds the usual work required in a civil rights matter. There is also an ongoing risk that monitoring this goes uncompensated. The efforts of counsel for the LA Alliance in assessing compliance with the settlement agreement in this matter involved a high risk of under compensation.

8.      Taking on the City and County in a case this complex increases the risk as well—the City has resources that far outstrip most law firms and can devote far more person-hours to litigation like this than a small law firm could.

9.      In light of all the risks involved in this case and the amount of work required by it, most law firms would hesitate to bring such a case, and those that did would be unlikely to incur the cost of monitoring compliance with a settlement agreement for years without compensation. The risk undertaken and commitment shown to this case by counsel for the LA Alliance is exceptional and worthy of compensation.

10.      Civil rights cases principally seeking declaratory and injunctive relief are highly undesirable in the private bar, especially cases brought for the benefit of constituencies that lack the resources to fund litigation, such as persons experiencing

2

homelessness. Complex civil rights cases seeking injunctive relief tend to be complex, time-consuming, and expensive to litigate. Even if a plaintiff prevails, most attorneys would recover considerably less in fees than they would normally charge a client, and will likely not recover all their expenses.

11.    Thus, there is a substantial disincentive to taking these cases, and they are not attractive to attorneys in private practice. This is why civil rights cases addressing complex issues and seeking injunctive relief are typically brought and litigated by organizations like the ACLU and Public Counsel.

12.    It would not be economically feasible, in my opinion, for an attorney to handle plaintiffs' civil rights cases on a contingency fee basis if the potential recovery for money damages was not significant.

13.    In light of this, a multiplier would greatly incentivize other competent attorneys to take on pathbreaking, complex civil rights cases unlikely to be funded by other means.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on July 16, 2025 at Los Angeles, California.

_____
Laurie L. Levenson

*DECLARATION OF LAURIE L. LEVENSON ISO PLAINTIFF LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES*