# Exhibit A

Case No. 25-4623

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LA ALLIANCE FOR HUMAN RIGHTS, a non-profit corporation,

*Plaintiff-Appellee,*

v.

CITY OF LOS ANGELES, a municipal entity; COUNTY OF LOS ANGELES, a municipal entity,

*Defendants-Appellants,*

Appeal from the United States District Court, for the Central District of California,
Case No. 2:20-cv-02291 DOC (KES)
The Honorable David O. Carter, United States District Judge

## APPELLEE'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Matthew Donald Umhofer (CA SBN 206607)
mumhofer@umklaw.com
Elizabeth A. Mitchell (CA SBN 251139)
elizabeth@umklaw.com
UMHOFER, MITCHELL & KING LLP
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

July 30, 2025     *Attorneys for Plaintiff-Appellee,*
*LA Alliance for Human Rights*

## TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ...............................................................................................1

II.    RELEVANT BACKGROUND...........................................................................2

III.    THIS COURT DOES NOT HAVE JURISDICTION OVER THIS
        INTERLOCUTORY APPEAL...........................................................................10

IV.    CONCLUSION...................................................................................................17

        CERTIFICATE OF COMPLIANCE ................................................................19

i

## TABLE OF AUTHORITIES

**CASES**                                                            **PAGE(S)**

Bogard v. Wright,
159 F.3d 1060 (7th Cir. 1998) ...........................................................................14

Cacique, Inc. v. Robert Reiser & Co.,
169 F.3d 619 (9th Cir. 1999)...........................................................................15

Carson v. Am. Brands, Inc.,
450 U.S. 79 (1981)...........................................................................................13

Fed. Trade Comm'n v. Zurixx,
26 F.4th 1172 (10th Cir. 2022) ................................................................. 14, 15

Fisher v. Tucson Unified Sch. Dist.,
588 F. App'x 608 (9th Cir. 2014) ....................................................................13

Flores v. Barr ("Flores I"),
977 F.3d 742 (9th Cir. 2020)...........................................................................12

Flores v. Barr ("Flores II"),
934 F.3d 910 (9th Cir. 2019)............................................................. 2, 11, 12, 16

Gautreaux v. Chi. Hous. Auth.,
178 F.3d 951 (7th Cir. 1999)...........................................................................14

Pimentel & Sons Guitar Makers, Inc. v. Pimentel,
477 F.3d 1151 (10th Cir. 2007) .......................................................................14

Thompson v. Enomoto,
815 F.2d 1323 (9th Cir. 1987) ................................................................... 13, 14

United States v. El Dorado County, California,
704 F.3d 1261 (9th Cir. 2013) .........................................................................13

Weyerhaeuser Co. v. Int'l Longshoremen's & Warehousemen's Union, Loc. 21,
733 F.2d 645 (9th Cir. 1984)............................................................................15

**STATUTES**

28 U.S.C. § 1291 .................................................................................... 1, 10, 15

28 U.S.C. §1292 ........................................................................ passim

**RULES**

Fed. R. App. P. Rule 27(d) .............................................................. 19

Fed. R. App. P. Rule 32(f) .............................................................. 19

Fed. R. App. P. Rules 32(a)(5) and (6) .......................................... 19

Federal Rules of Appellate Procedure 32(g) .................................. 19

**OTHER AUTHORITIES**

Jack Metzler, "Cleaning Up Quotations,"
    18 J. App. Prac. & Process 143 (2017) ..................................... 2

## I.    INTRODUCTION

In an effort to avoid accountability for its failure on the homelessness crisis and undo the Agreement it entered into years ago, the City of Los Angeles has appealed an unappealable order. Because this Court lacks jurisdiction over this appeal, it must be dismissed.

The City's appeal is unquestionably interlocutory—there was no final judgment below, and no finality to the order from which the appeal is taken. All that happened below is that the district court (i) issued an order that reaffirmed the City's obligations under a consent-decree-like settlement agreement; and (ii) set further proceedings to consider fees and monitor the City's compliance. (Ex. 1, Order Granting in Part and Denying in Part Plaintiffs' Motions for Settlement Compliance ("Order"), ECF No. 991.)[1] No new obligations were imposed on the City, and no sanctions issued in that order. Despite all this, the City has appealed.

The appeal cannot persist. There is no jurisdiction under Section 1291 because the order isn't final. 28 U.S.C. § 1291 ("The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]").

---

[1] All exhibits attached hereto are filed in the California Central District Court case, which is the subject of this appeal, LA Alliance for Human Rights, et al. v. City of Los Angeles, et al., Case No. 2:20-cv-02291 DOC (KES), as Ex. __, [description], ECF No. ___.

1

And there is no jurisdiction under Section 1292 because the Order didn't do any of the things contemplated in that section. 28 U.S.C. §1292(a)(1) (referencing orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions[.]").

Under these very circumstances—where "[t]he text of the district court's opinion in this case interpreted the existing Agreement [and] . . . granted enforcement of various provisions of the Agreement"—this Court concluded that a district court's order "did not constitute an interlocutory order modifying an injunction, or refusing to . . . modify an injunction" and "[w]e therefore lack jurisdiction over this claim." Flores v. Barr ("Flores II"), 934 F.3d 910, 914–16 (9th Cir. 2019) (cleaned up).[2] The same is true here, and this Court must dismiss the City's appeal.

## II.    RELEVANT BACKGROUND

In July 2022, the City agreed to settle a lawsuit brought by Plaintiff-Appellee, LA Alliance for Human Rights, which alleged that the City's decades-long failure to address the homelessness crisis had violated the United States Constitution and federal and state law. The resolution of the case was memorialized in a Settlement Agreement, which was incorporated into a final

---

[2] Citations and quotations are cleaned up for readability. See Jack Metzler, "Cleaning Up Quotations," 18 J. App. Prac. & Process 143 (2017).

order under which the district court agreed to "retain exclusive jurisdiction . . . to enforce the Settlement Agreement, and to resolve any future disputes regarding interpretation, performance, or enforcement of the Agreement.") (Ex. 2, Order Approving Stipulated Dismissal & Proposed Settlement, ECF No. 445 (citing Stipulated Dismissal & Proposed Settlement, ECF No. 421).) The City never appealed that order (because the City jointly requested it).

Over the ensuing two and a half years, the district court, assisted by a Special Master, exercised oversight over the Settlement Agreement pursuant to the parties' request, held hearings, took briefing, and issued orders interpreting and applying the Settlement Agreement. On several occasions during that time period, the LA Alliance accused the City of violating its obligations under the Settlement Agreement. Specifically:

- From January, 2023 through April 2024, the LA Alliance repeatedly identified that the City had failed to comply with its Settlement Agreement obligation to produce district-by-district and citywide plans for "encampment engagement, cleaning, and reduction." After several hearings and a Court finding that the City had acted in bad faith, the City entered into a stipulation resolving the dispute. As part of that resolution, the City agreed to both pay attorneys' fees to the LA Alliance and fund an audit/assessment of the City's spending and

3

outcomes on homelessness relief efforts (done by Alvarez & Marsal ("A&M"), pursuant to agreement of the parties). (Ex. 3, Joint Stipulation to Resolve Mot. for Order re Settlement Agreement Compliance and Sanctions, ECF No. 713.)

- From August, 2024 through March, 2025, the LA Alliance identified that the City had breached another provision in the Settlement Agreement by improperly counting sanitation clean-ups as "encampment reductions." On March 24, 2025, the district court issued an order interpreting the relevant provision of the Settlement Agreement and finding the City in breach. (Ex. 3, Order re Pl.'s Mot. re Settlement Agreement Compliance, ECF No. 874.)

The City never appealed these or any other orders issued by the district court concerning the Settlement Agreement from May 2022 through June 2025.

In May 2025, A&M completed its audit/assessment and issued a report that featured damning findings, as summarized by the district court:

- Due to poor data quality and integration, A&M was unable to verify the number of beds the City reported under the Roadmap and Alliance Programs.

- A&M identified about $2.3 billion of funding related to the City Programs during the Lookback Period but

was unable to fully quantify the amount spent by the City based on the data provided by LAHSA and the City.

- A&M found that distinct referral and data systems across the City, County, and LAHSA created a siloed continuum of care system that caused confusion and a lack of transparency.

- A&M found that the City and LAHSA's financial oversight and performance monitoring of service provider contracts was extremely limited. For example, there was little to no verification of the quality or provision of services based on what was contracted for.

- A&M's review of contracts between the City, LAHSA, and service providers revealed broad terms, conflicting responsibilities, and wide discretion afforded to service providers in spending.

- A&M found significant variability between the costs and services provided by different service providers across the City Programs.

- A&M found that the City did not reconcile actual spending or contractual obligations with its budget allocations and funding.

(Order at 25 (citing A&M Independent Assessment of City-Funded Homelessness Assistance Programs, ECF No. 905).) The City was offered the opportunity to challenge or respond to these findings but never did. (Ex. 4, Hr'g Tr. 9:25–10:3, ECF No. 909.) The Mayor stated during one hearing that "there's a lot in this report that I agree with." (Ex. 5, Hr'g Tr. 45:11–12, ECF No. 878.)

Based on part on the findings of the audit/assessment, the LA Alliance raised new concerns about the City's noncompliance with the Settlement Agreement in hearings and briefing in Spring of 2025 —specifically, that the City had failed to (i) produce a plan for the creation of housing and shelter options, (ii) meet quarterly milestones and deadlines for housing and shelter bed creation and use its best efforts to do so; and (iii) failed to meet quarterly milestones and deadlines for encampment reduction by both its own numbers and by mis-reporting what constitutes a reduction. (Ex. 6, LA Alliance's Resp. re Issues Raised by the Court on March 27, 2025 at 8, ECF No. 899; Ex 7, Mot. for Order re Settlement Agreement Compliance, Sept. 4, 2024, ECF No. 767; Ex. 8, Mot. for Order re Settlement Agreement Compliance, Feb. 20, 2025, ECF No. 863.) The LA Alliance also contended the City had violated a separate bed-creation agreement

6

referred to as the "Roadmap Agreement." (Ex. 8, Mot. of Order re Settlement

Agreement Compliance 4:23–5:19, ECF No. 863.)

Those breach allegations led to a seven-day evidentiary hearing during

which the LA Alliance and the City presented evidence concerning the City's

compliance with the Settlement Agreement. Following that hearing and post-

hearing briefing, the district court issued a detailed Order that analyzed the City's

conduct and the terms of the Settlement Agreement and found the City in violation

of several provisions of the Settlement Agreement:

> [t]he City breached the LA Alliance Settlement
>
> Agreement in four ways. The City failed to provide a
>
> plan for how it intends to create 12,915 shelter or housing
>
> solutions. For years, the City consistently missed its
>
> shelter and housing creation milestones. The City also
>
> improperly reported encampment reductions and
>
> disobeyed the Court's order on encampment reductions.
>
> Finally, the City flouted its reporting responsibilities by
>
> failing to substantiate its reporting and failing to provide
>
> accurate and comprehensive data when requested by the
>
> Court, Special Master Martinez, the Parties, and A&M.

(Order 56:6–12.)

In light of these violations, the Order reaffirmed the City's obligations under the Agreement, imposed an independent monitor expressly called for by the Settlement Agreement, and set deadlines for the City to begin to come into compliance with its existing obligations under the Settlement Agreement. (Order 56:26–-57:22, explicitly labeled "Reaffirming LA Alliance Settlement Obligations".) The Court imposed no requirements on the City that were not already required under the Settlement Agreement. The Court also invited the LA Alliance and certain intervenors to submit a request for attorneys' fees. The Court's Order neither imposed sanctions (yet) nor modified the Settlement Agreement.

The Order is unambiguous in breaking no new ground and imposing no new obligations on the City. In a section entitled "Remedy for Breaches," the Order announced that "[t]o facilitate compliance and greater oversight, the City is ordered to the following . . . :"

- Provide the Parties and the Court with an updated "bed plan" for how it intends to meet its obligation to create 12,915 shelter or housing solutions by October 3, 2025

8

- Provide the Parties and the Court with updated bed creation milestones consistent with the updated bed plan by October 3, 2025

- Beginning in the quarterly status report slated for October 2025, the City shall include an explanation for each unit that already physically existed prior to the Settlement Agreement of how the City "created" that unit, meaning contributed to bringing that unit into existence as a shelter or housing solution for people experiencing homelessness as opposed to its prior use

- Meet and confer with Plaintiffs on selecting a third-party Monitor by August 22, 2025, and select this Monitor by September 12, 2025, subject to the Court's approval

- Attend in-person court hearings after the submission of each quarterly status report starting with the October 2025 quarterly report on November 12, 2025

- Report encampment reduction data consistent with the Court's definition beginning in the October 2025

quarterly report and provide accompanying data on

shelter or housing offers to the Monitor

(Order 57:1–20.) Removing any doubt as to whether these were new obligations,

the district court expressly stated that "each of the above requirements are actions

that the City was already under an obligation to do." (Id. at 57:21–22.) The court

noted that the City's breaches may entitle the LA Alliance and intervenors to

attorneys' fees, and invited briefing on that subject. ("[T]he Court will require that

the City pay attorney's fees to both Plaintiffs and Intervenors if Plaintiffs and

Intervenors are able to show how they have been harmed by the City's conduct and

the resulting losses to them under the law.") (Order 59:9–14.)

Even though the Order neither imposed nor modified any injunction nor

levied any actual sanctions on the City, the City has appealed the Order.

## III.   THIS COURT DOES NOT HAVE JURISDICTION OVER THIS
## INTERLOCUTORY APPEAL

This Court's jurisdiction is not unlimited—rather, it is limited to appeals from

final judgments of the district courts, certain interlocutory orders under 28 U.S.C.

1292(a)(1), and orders certified by the district court under Rule 54. *See* 28 U.S.C. §§

1291, 1292(a)(1), and 1292(b).

Because the Order from which the appeal was taken is clearly not a final order,

the City's only hope is Section 1292(a)(1), which confers appellate jurisdiction over

"[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1292(a)(1). But by its own terms, the Order does none of those things— indeed, the district court took great pains to make that clear. (Order 57:21–22) ("[E]ach of the above requirements are actions that the City was already under an obligation to do.")

To the extent that the jurisdictional deficit is not obvious from the plain language of Section 1292(a)(1), this Court's precedent demolishes any doubt. For example, when a government entity tried to appeal an order issued under strikingly similar circumstances in Flores II, this Court dismissed for lack of jurisdiction. 934 F.3d at 914–17. There, as in this case, the Plaintiffs sought to enforce an existing consent decree/settlement agreement, the district court granted the motion, and the government appealed. In finding it lacked jurisdiction over the appeal, this Court used language in that case which tracks what the Order in this case did with remarkable consistency:

> The text of the district court's opinion in this case interpreted the existing Agreement; its operative provisions, which appear at the end of the Order, granted enforcement of various provisions of the Agreement. The

11

conclusion of the Order reads, for example, "Plaintiffs'
motion to enforce Paragraph 12A of the Agreement on the
issue of unsanitary conditions is GRANTED . . . ." The
Order's operative provisions do not require the
government to take any specific action other than to
propose a Juvenile Coordinator for appointment.

> The government does not challenge the
appointment of a Juvenile Coordinator, as that
appointment is expressly provided for in the Agreement.

Id. at 914–15.

This passage confirms that what happened in this case—the interpretation of an existing agreement and the enforcement of existing provisions—does not trigger appellate jurisdiction. See also Flores v. Barr ("Flores I"), 977 F.3d 742, 747 (9th Cir. 2020) ("Here, in contrast, as in Flores II, the district court just directed compliance with the Agreement . . . . The deadlines in the orders assure compliance with the Agreement by a date certain, but they add no substantive requirement. Each of the actions ordered by the district court likely effectuates, rather than modifies, the Agreement."). The Flores finding is consistent with prior Ninth Circuit cases applying a three-part test for when a post-judgment consent-decree order may be appealed under Section 1292(a)(1): that the order "(1) has 'the practical effect of the

12

grant or denial of an injunction'; (2) has 'serious, perhaps irreparable consequences';

and (3) can be 'effectively challenged only by immediate appeal.'" United States v.

El Dorado County, California, 704 F.3d 1261, 1263 (9th Cir. 2013) (citing

Thompson v. Enomoto, 815 F.2d 1323, 1326–27 (9th Cir. 1987); Carson v. Am.

Brands, Inc., 450 U.S. 79 (1981)); see also Fisher v. Tucson Unified Sch. Dist., 588

F. App'x 608, 610 (9th Cir. 2014),

> Because the appealed orders do not substantially alter the
> parties' relationship as set forth in the [prior order and
> agreement], the District failed to satisfy the first prong of
> the Carson test, and this court does not have jurisdiction
> under 28 U.S.C. § 1292(a)(1). Moreover, the District
> failed to satisfy the second prong of the Carson test as well.
> The interpretation of the [prior order and agreement], is
> largely procedural in nature and does not have serious, let
> alone irreparable, consequences for the District. For this
> reason also, we lack jurisdiction.

This principle—that an appeal cannot be taken from order that merely

interprets and enforces an existing settlement agreement or injunction—is so

uncontroversial it is indisputable. Fisher, 588 F. App'x at 609 ("Section 1292(a)(1)

does not provide for jurisdiction over interlocutory appeals of orders interpreting, as

13

opposed to modifying, consent decrees."); Thompson, 815 F.2d at 1327 (appointment of a special master cannot be appealed under § 1292(a)(1) unless "the interlocutory order appointing a special master 'modifies' the consent decree."); see also Bogard v. Wright, 159 F.3d 1060, 1064–65 (7th Cir. 1998) (dismissing for lack of jurisdiction an appeal of an order that enforced but did not modify a consent decree, and discussing the "appellate remedy" available to each party under section 1292(a)(1) with respect to orders after a final judgement); Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 477 F.3d 1151, 1152 (10th Cir. 2007) ("Appellate courts do not have jurisdiction to review a district court order that merely interprets or clarifies, without modifying, an existing injunction"); Gautreaux v. Chi. Hous. Auth., 178 F.3d 951, 958 (7th Cir. 1999) (when a district court's order enforcing compliance with existing injunction does "nothing more than reassert the court's prior orders," it is not a "fresh injunction" that may be appealed).

Facing this insurmountable jurisdictional bar, the City will try to avoid it by pointing out that the Order found the City had violated several aspects of the Settlement Agreement—but even contempt findings are not enough to bring an order within the ambit of Section 1292(a)(1). Fed. Trade Comm'n v. Zurixx, 26 F.4th 1172, 1177–78 (10th Cir. 2022) (rejecting jurisdiction where "the substance of this order was to hold Efron in contempt for violating the court's preliminary injunction. Simply put, the contempt order did not grant, deny, or modify an

14

injunction as required by § 1292. . . . It merely enforced a previously granted preliminary injunction."); see also Weyerhaeuser Co. v. Int'l Longshoremen's & Warehousemen's Union, Loc. 21, 733 F.2d 645, 645–46 (9th Cir. 1984) ("A contempt order is not a final order under 28 U.S.C. § 1291 prior to the imposition of sanctions.") (citations omitted).

Another tack the City might take is to point to the Order's references to sanctions as evidence that the Order is somehow final. But because no sanctions have been imposed, the Order is not appealable on that basis either. Zurixx, 26 F.4th at 1177–78 (concurring with "other courts [that] require nonparties to satisfy the same two criteria—show a finding of contempt and the imposition of sanctions—to establish the finality of a contempt order.") (citing Cacique, Inc. v. Robert Reiser & Co., 169 F.3d 619, 622 (9th Cir. 1999) ("A contempt order and imposition of sanctions on a non-party for failure to obey a discovery order or subpoena is a final order for purposes of 28 U.S.C. § 1291.")). Reference in the Order to one party's ability to file a motion for fees cannot be "final" because "the order contained no specifics about the amount of the possible sanction" and "[w]ithout imposition of a specific, unavoidable sanction, the contempt order was not a final, appealable decision under § 1291, and [the Court] lack[s] jurisdiction to consider it." Zurixx, 26 F.4th at 1178.

A last-ditch argument for the City is to insist—as the government did in Flores—that the district court modified the Settlement Agreement, bringing things within the ambit of Section 1292(a)(1)'s language concerning "[i]nterlocutory orders . . . modifying . . . injunctions." 28 U.S.C. § 1292(a)(1). But that doesn't work either, for the same reasons it did not in Flores—all the district court did here is explain and clarify the existing terms of the Settlement Agreement. Flores II, 934 F.3d at 917. ("In short, the district court's explanation of its enforcement of paragraph 12A regarding the conditions at Border Patrol stations concerned only requirements unarguably within the terms of the Agreement. As a result, the portion of the court's order enforcing paragraph 12A did not constitute an '[i]nterlocutory order[ ] . . . modifying [an] injunction[ ], or refusing to . . . modify [an] injunction[ ].' 28 U.S.C. § 1292(a)(1). We therefore lack jurisdiction over this claim.").

The City appears to be particularly exercised over the district court's interpretation of the City's encampment reduction obligations, and will likely claim that that analysis effectively modified the agreement. While the Order specifically avoided modifying the City's encampment reduction obligations, this particular argument fails for an additional reason: the district court's encampment reduction analysis merely echoed an order issued months before that the City never appealed. (Ex. 3, Order re Plaintiff's Motion re Settlement Agreement Compliance,

16

dated March 24, 2025, ECF No. 874.) In the Order from which this appeal is taken, the district court observed that as to encampment reduction obligations, it "reaffirms its previous Order and again clarifies the following for the City." (Order 52:9–10.) Not only did the City not appeal the previous order, but the district court noted that "the City never filed a motion for reconsideration or modification of the Settlement Agreement based on the clarification [in the previous order]. The City merely orally objected to the Order at the March 27, 2025 hearing and then proceeded to ignore the Order." (Id. at 52:5–7.) That was the basis of one of the district court's findings of breach by the City in the Order on appeal: "The City also improperly reported encampment reductions and disobeyed the Court's order on encampment reductions." (Id. at 56:8–9.) Because the previous March 24, 2025 order reflecting the Court's analysis and interpretation of the City's encampment reduction obligations was issued more than 30 days before the notice of appeal was filed, the City is too late to appeal that aspect of the Order, which it just "ignore[d]" and then openly violated. (Id. at 52:5–7.)

In short, the Order makes it clear that the City has no appellate ground to stand upon here, and this Court cannot permit this appeal to proceed.

## IV.    CONCLUSION

The context of this appeal is critical: After facing a federal lawsuit faulting the City for decades of failure on homelessness, the City freely entered into a

Settlement Agreement and then flouted it for more than two years. Over the course of multiple hearings, briefs, and a court-ordered audit/assessment, the City was found in breach and then compelled to comply with its existing obligations under the Settlement Agreement. Hoping to avoid the accountability imposed by the district court, the City has run to this Court for relief that this Court cannot give. And allowing this appeal to continue could allow the City to run out the clock on its obligations under the Settlement Agreement—indeed, that appears to be the City's intent.

The City's attempt to avoid accountability cannot alter the abject absence of appellate jurisdiction. This appeal must be dismissed.

DATED:   July 30, 2025                Respectfully submitted,

                                      /s/ *Matthew Donald Umhofer*
                                      UMHOFER, MITCHELL & KING LLP
                                      Matthew Donald Umhofer
                                      Elizabeth A. Mitchell

                                      *Attorneys for Plaintiff-Appellee,*
                                      *LA Alliance for Human Rights*

18

## CERTIFICATE OF COMPLIANCE

I am the attorney for Plaintiff-Appellee LA Alliance for Human Rights. Pursuant to Federal Rules of Appellate Procedure ("Fed. R. App. P.") Rule 32(g), I certify that this brief complies with the word limit of Fed. R. App. P. Rule 27(d) because it contains **3,710** words, excluding the items exempted by Fed. R. App. P. Rule 32(f). The brief's type size and typeface comply with Fed. R. App. P. Rules 32(a)(5) and (6).

DATED:  July 30, 2025             Respectfully submitted,

                                 /s/ *Matthew Donald Umhofer*
                                 UMHOFER, MITCHELL & KING LLP
                                 Matthew Donald Umhofer
                                 Elizabeth A. Mitchell

                                 *Attorneys for Plaintiff-Appellee,*
                                 *LA Alliance for Human Rights*

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form15instructions.pdf

**9th Cir. Case Number(s)** | 25-4623

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellee's Motion to Dismiss for Lack of Jurisdiction

**Signature** | s/ Matthew Donald Umhofer     **Date** | Jul 30, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                                                              *Rev. 12/01/2018*