Shayla R. Myers (SBN 264054)
Isabelle M. Geczy (SBN 349594)
**LEGAL AID FOUNDATION**
**OF LOS ANGELES**
1550 W. 8th St
Los Angeles, CA 90017
Tel: (213) 640-3983
     (323) 801-7990
Email: smyers@lafla.org
       igeczy@lafla.org

Carol A. Sobel (SBN 84483)
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Ave.
Santa Monica, CA 90401
Telephone: (310) 393-3055
Email: carolsobel@aol.com

*Attorneys for Intervenors*
*Additional Counsel listed on next page*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et. al.*<br>　　　　　Plaintiff(s),<br><br>v.<br><br>City of Los Angeles, *et. al.*<br>　　　　　Defendant(s). | CASE NO.: 20-CV-02291-DOC-KES<br><br>Hon. David O. Carter<br><br>**DECLARATION OF CAROL A. SOBEL ISO INTERVENORS' MOTION FOR AWARD OF ATTORNEYS' FEES**<br><br>*[Filed Concurrently herewithin Intervenors' Motion for Award of Attorneys' Fees, Declaration of Shayla Myers]*<br><br><br>Action Filed:　March 10, 2020 |

*Additional Counsel*

Catherine Sweetser (SBN 271142)
**SCHONBRUN SEPLOW HARRIS
& HOFFMAN, LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: (310) 396-0731
Email: catherine.sdshhh@gmail.com

Brook Weitzman (SBN 301037)
William Wise (SBN 109468)
**ELDER LAW AND DISABILITY
RIGHTS CENTER**
1535 E. 17th Street, Suite 110
Santa Ana, California 92705
Tel: (714) 617-5353
Email: bweitzman@eldrcenter.org
Email: bwise@eldrcenter.org

*Attorneys for Orange Catholic Worker*

2

**DECLARATION OF CAROL A. SOBEL**

## DECLARATION OF CAROL A. SOBEL

I, CAROL A. SOBEL, declare:

1.      I am an attorney admitted to practice before the Supreme Court of California and the United States District Court for the Central District of California, among other federal courts.  I have personal knowledge of the facts herein and, if called to testify to those facts, could and would do so competently.

2.      I graduated from law school and was admitted to practice in 1978.  Following 20 years with the ACLU Foundation of Southern California, I entered private practice in April of 1997.  My practice primarily involves complex civil rights litigation, focusing on the rights of homeless persons, First Amendment rights and police practices.  Exhibit 1 is my resumé.

3.      I received many awards for my legal work over the years.  In 2008, I was named a California Lawyer of the Year (CLAY) for civil rights by California Lawyer Magazine.  That same year, I was also named as one of the Top 75 Women Litigators in California by the Daily Journal Corporation.  In 2007, I received an Angel Award from California Lawyer Magazine for pro bono work and was also named by the Daily Journal as one of the Top 100 Most Influential Lawyers in California.  In 2013 and again in 2014, I was named one of the top 50 women lawyers in Los Angeles.  I am named as a Superlawyer in the area of First Amendment or civil rights litigation consistently for more than a decade.  Additional recognition of my legal work is set out in my attached resumé.

4.      For the six years prior to 1997, I was a Senior Staff Counsel in the legal department of the ACLU Foundation of Southern California.  During that time, I was responsible for preparing many of the fee motions in cases where the ACLU represented the prevailing party.  Because the ACLU does not bill clients on an hourly basis for its services, I was required to obtain information to establish reasonable market rates for the ACLU lawyers.  It was my practice to obtain current billing rates for lawyers of comparable skill and experience at several firms throughout the City.  I did this on an annual basis, contacting partners familiar with the ACLU lawyers in question so that they

3

**DECLARATION OF CAROL A. SOBEL**

could assess the comparable skill levels of attorneys at their firms to establish ACLU billing rates.  At the time that I consulted these individuals, I was aware that the partners had been personally involved in pro bono litigation with the ACLU and worked directly with the ACLU lawyers for whom I sought to establish market billing rates, so they were able to assess the skill and experience of the ACLU lawyers.

5.      As a sole practitioner, I assess a reasonable market rate by comparison to lawyers of comparable skill and experience at other firms in the Los Angeles area, as I did when I was at the ACLU.  Since entering private practice, I continue to survey firms each year to obtain relevant information for rates.  As part of my survey, I obtain information concerning rates for attorneys in larger law firms engaged in complex litigation, as well as smaller boutique civil rights law firms.

6.      I also review fee applications and awards in other cases than my own. Specifically, I regularly review fee applications submitted by, and awards to, private attorneys practicing civil rights law, as well as court awards to the ACLU, Disability Rights Legal Center ("DRLC"), Public Counsel,  Western Center on Law and Poverty ("WCLP"), and other public interest groups in Los Angeles.  Because many cases brought by public interest groups are co-counseled by attorneys at private commercial firms, I see those billing rates as well.

7.      When I become aware of a case where statutory fees are sought, I obtain fee applications and any resulting awards from on-line public records for the courts, as well as from legal research databases such as LEXIS and Westlaw.  Included in my review of fee applications and awards are those by, and awards to, large firms engaged in complex litigation to assess customary billing rates for these firms.  Many of these commercial firms also serve as pro bono counsel on occasion.  I estimate that I review around 100 or more fee motions, supporting declarations and fee awards annually and have done so for more than 30 years.  If I am preparing a declaration for a specific jurisdiction, I search for recent fee awards for comparably skilled and experienced attorneys in that legal market.

8.      I do not charge to provide a fee declaration, although I do suggest that, if

**DECLARATION OF CAROL A. SOBEL**

successful, the attorneys in private civil rights practices donate to a non-profit legal organization.

9. I believe I am extremely qualified to provide declarations for the civil rights bar and the non-profit legal community because of my work at the ACLU and in private practice since 1978, my adjunct teaching at Loyola Law School for the past 18 years, and my role in organizing legal representation for large-scale legal actions. For example, at the request of the ACLU of Georgia, I organized the initial representation of nearly 1,000 Mariel Cubans in immigration hearings after they were transferred to federal prisons in Southern California following an uprising over conditions and prolonged detention at the Atlanta Federal Penitentiary in the late 1980s. Ultimately, the USC Criminal Law Clinic took over responsibility; however, in the initial rounds of hearings, I recruited dozens of law students from UCLA, Loyola and USC and supervised them in representing the Mariel Cubans at administrative hearings. Many of them are employed now at various public interest and civil rights groups in Los Angeles.

10. I also organized attorneys and students to represent about 5,000 high- school students in Southern California charged in juvenile court as truants after they walked out of school to protest the proposed Sensenbrenner immigration bill in Congress in 2005. Through all this work, I am familiar with a significant portion of civil rights and public interest law students and lawyers in Los Angeles and am able to assess their skill, experience and reputation based on my professional interactions with them.

11. In addition, unlike most other attorneys providing "expert" evidence of market rates, I have extensive experience in a broad range of civil rights litigation, including, among other areas, Public Records Act Requests, employment law, First Amendment Church/State law, free speech and assembly, anti-SLAPP litigation, homelessness litigation, excessive force, false arrest and class actions. As my resumé demonstrates, I successfully brought landmark cases in these and other civil rights subject areas, including a state-wide class-action on behalf of women's health-care providers in California against the anti-abortion group Operation Rescue. *National Abortion*

5

**DECLARATION OF CAROL A. SOBEL**

*Federation, et al. v. Operation Rescue, et. al.*, 8 F.3d 680 (9th Cir. 1993). Many of these cases required novel approaches to the issues and became models for attorneys challenging similar issues around the country.

12. For example, in *Jones v. City of Los Angeles*, 2014 U.S. App. LEXIS 6640 (9th Cir. Apr. 10, 2014), (subsequent citation on vacatur upon settlement omitted), first filed in 2003, the groundwork was laid for *Martin v. City of Boise,* 920 F.3d 584 (9th Cir. 2019). When *Jones* was filed, I faced three cases in the Ninth Circuit and one at the California Supreme Court, as well as multiple lawsuits across the country, all unsuccessful in striking policies criminalizing homelessness and replicating *Pottinger v. City of Miami*, 720 F. Supp. 955 (S.D. Fla. 1989), *aff'd*. 40 F.3d 1155 (11th Cir. 1994). Although the *Jones* case has now been rejected by the Supreme Court in *Grants Pass v. Johnson*, (2024), the legal theory I developed to protect the rights of unhoused persons was successfully applied around the country for more than two decades.

13. In *National Abortion Federation*, the district court dismissed the action pursuant to *Bray v. Alexandria Clinic,* 506 U.S. 263 (1993), holding the first two clauses of the Ku Klux Klan Act, 42 U.S.C.S. § 1985 did not state a claim for relief. The Circuit reversed and remanded, finding the district court erred in denying Plaintiffs' move to amend to add a claim under 42 U.S.C.S. § 1985(3), the "hindrance" clause. 8 F.3d at 685-87.

14. My declarations in support of fee applications for civil rights and public interest attorneys have been cited repeatedly by courts as evidence of reasonable market rates. Most recently, my declaration was cited favorably in support of an award of fees in *HIT & MISS ENTERPRISES, INC.,* Case 2:18-cv-09996-WLH-SSC, [Doc. 138] (C.D. Cal. Feb. 11, 2025). In September 2023, my declaration was cited with approval for both rates and methodology in an award of attorney fees in *Mickail Myles v. County of San Diego*, Case No. 3:15-cv-01985-JAH-BLM (S.D. Cal. 2023). [Doc. 484, p.7]. The motion in *Myles* was filed in late 2022 in San Diego. Earlier in 2023, my declaration was cited with approval in *Valenzuela v. City of Anaheim*, Case No. SACV 17-00278-CJC (DFMx)

**DECLARATION OF CAROL A. SOBEL**

(C.D. Cal. 2023) [Dkt. 462], and the companion case of *Craig v. City of Anaheim,* SACV 17-02094-CJC (DFMx) (C.D. Cal. 2023) [Dkt. 280], on behalf of the Galipo law firm. My declaration was also cited with approval in and *D. R., a minor v. Redondo Beach Unified School District*, Case No. 21-56033 (9th Cir. Aug. 2023).  In *Nadarajah v. Holder*, 569 F.3d 906, 912-914 (9th Cir. 2009), the Ninth Circuit referenced my declaration with approval in support of attorney's fees for the ACLU under the Equal Access to Justice Act ("EAJA").  In *Torrance Unified School District v. Magee*, 2008 U.S. Dist. LEXIS 95074 (C.D. Cal. 2008), granting IDEA fees pursuant to 20 U.S.C. §1415(i)(3)(c), the Court cited my declaration as persuasive evidence of market rates.  In *Atkins v. Miller*, CV 01-01574 DDP (C.D. Cal. 2007), Judge Pregerson cited my declaration and that of Barry Litt to support the requested rates.  *Id.* at pp. 8-9 and n.4. Additional cases in which my declaration was cited favorably include, among others, *Charlebois v. Angels Baseball LP*, SACV 10-0853 DOC (C.D. Cal. May 30, 2012); *Orantes-Hernandez v. Holder*, 713 F. Supp. 2d 29, 963-64 (C.D. Cal. 2010); *Hiken v. DOD*, 2013 U.S. Dist. LEXIS 118165 (N.D. Cal. Jan. 14, 2013), *Hiken v. DOD*, 836 F.3d 1037 (9th Cir. 2016); *Vasquez v. Rackauckas*, 2011 U.S. Dist. LEXIS 83696 (C.D. Cal. 2011); *Rauda v. City of Los Angeles*, 2010 U.S. Dist. LEXIS 138837 (C.D. Cal. 2010); *Jochimsen v. County of Los Angeles*, *supra*; *Dugan v. County of Los Angeles,* cv-11-08145 CAS (C.D. Cal. Mar. 3, 2014); *Flores v. City of Westminster*, SA-CV-11-0278 DOC (C.D. Cal. Oct. 23, 2014); *Xue Lu v. United States*, 2014 U.S. Dist. LEXIS 77789 (C.D. Cal. May 23, 2014); *Wagafe v. Trump*, Case 2:17-cv-00094-RAJ [Doc. 223] (W.D. Wash. 02/27/19); *Webb v. Officer J. Ackerman*, 13-cv-01992 PLA (C.D. Cal. Jan. 4, 2018) [Doc. 180, p.5]; and *Carrillo v. Schneider Logistics,* awarding fees in Circuit Case No. 12-55042 (9th Cir. Apr. 2014), following the affirmance of a preliminary injunction (*See* 501 Fed. Appx. 713, 2012 U.S. App. LEXIS 26601 (9th Cir. Dec. 28, 2012); and *Gomez-Sanchez v. Barr, sub nom Gomez-Sanchez v. Sessions,* 892 F.3d 985 (9th Cir. 2018), awarding EAJA fees to the ACLU.  In *Jochimsen*, a unanimous court held I was qualified as an expert on market rates in California.

**DECLARATION OF CAROL A. SOBEL**

15.    I also litigated statutory fee issues at the appellate level in several cases, including *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th 604 (2004), the companion case to *Graham v. Daimler-Chrysler*, 34 Cal. 4th 533 (2004), affirming continued vitality of the "catalyst" fee doctrine in California and affirming a nearly $2 million fee award in 1999 in a multi-plaintiff sexual discrimination/harassment lawsuit on behalf of female employees of the Los Angeles Police Department.  I was also counsel in *Jones v. City of Los Angeles*, 555 Fed. Appx. 659 (9th Cir. 2014), establishing entitlement to fees as a "prevailing party" based on the Circuit's necessary approval of a settlement that was, in turn, conditioned on vacatur of the panel decision.

16.    I provide training on attorney fees best practices for civil rights and public interest firms, including the Legal Aid Foundation of Los Angeles and the ACLU.  I also have done CLEs on attorney fees for the National Lawyers Guild and the National Police Accountability Project.

17.    In addition, I have considerable experience reviewing and analyzing billing records in my own cases and in cases for which I provide a supporting declaration on the reasonableness of rates or hours.  Many of these cases involve multiple attorneys and law offices.  In my own cases, I am usually the attorney who conducts a review of all of the fee records and exercises billing judgment to eliminate any impermissible hours.  This includes, among other issues, eliminating clerical tasks, unnecessarily duplicative items, improperly billed items and vague items.  For example, in the *Tipton-Whittingham* case cited above, it was my responsibility to review the fee records covering six years of work for attorneys from three firms: the ACLU, the Western Regional Office of the NAACP Legal Defense Fund, and Litt & Associates.  The unadorned lodestar in *Tipton* was approximately $1,900,000.

18.    In *Multi-Ethnic Immigrant Worker Network v. City of Los Angeles*, involving a police assault on a lawful demonstration in MacArthur Park on May Day, 2007, I performed a billing judgment on the fee records for all attorneys and support staff in the

**DECLARATION OF CAROL A. SOBEL**

case.   Because the case was a hybrid class action, with both 300 individual plaintiffs and a residual class of several thousand persons, the legal team was sizable.  The fee approved in the case 25 years ago was $3,713,000.

19.     In all the fee declarations I prepare, I apply my understanding of the decision in *Blum v. Stenson*, 465 U.S. 886 (1984), that "rates charged in private representations may afford relevant comparisons."  *Id.* at 895 fn. 11.   I understand this to mean that fees for civil rights lawyers should approximate the rates charged by attorneys of comparable skill, experience and reputation in the relevant legal market, who are engaged in similarly complex litigation, regardless of whether the attorneys work for a non-profit, represent individuals on contingency, serve as in-house counsel, or charge a minimal rate with the possibility of receiving a market rate award if successful.  *See Nadarajah,* 569 F.3d at 910.

20.     I apply several additional principles to assess market rates.   First, when available, I look at rates awarded to the attorneys in previous cases because I understand such awards are viewed as strong evidence of reasonable market rates.  *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014); *U.S. v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 976 (9th Cir. 2008). Past decisions where "a lawyer charges a particular hourly rate, and gets it, is evidence bearing on what the market rate is, because the lawyer and his clients are part of the market." *Carson v. Billings Police Dept.*, 470 F.3d 889, 892 (9th Cir. 2008).

21.     Next, I look to billing rates by attorneys engaged in similarly complex litigation as an approved method of setting market rates for civil rights attorneys who do not bill on an hourly basis. *See Blum*, 465 U.S. at 895; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (approving use of declarations of other attorneys regarding prevailing rates in the relevant market and rates in other cases). I understand the market rate comparison "extends to all attorneys in the relevant community engaged in equally complex Federal litigation, no matter the subject matter." *Prison Legal News*

9

**DECLARATION OF CAROL A. SOBEL**

*v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (internal quotation omitted).

22. When the specific rate evidence identified in the preceding paragraph is available, I usually do not rely on surveys because, in my opinion, they do not meet the standards for the lodestar analysis. In my experience, fee surveys report market rates in sweeping categories with no identification of the comparable skill, experience and reputation of the individual attorneys included in the survey and often no indication of the relevant legal market. *See, e.g., Shirrod v. Director, Office of Workers' Compensation Programs*, 809 F.3d 1082, 1089 (9th Cir. 2015) (reversing where the lower court relied on a national survey rather than local rates).

23. I do not apply rates billed by and paid to opposing counsel who are usually salaried, contract government attorneys, or retained insurance defense lawyers as they generally charge rates well below market and are paid win or lose, so they do not share the risk of fee-shifting statutes and other contingent fees. *See e.g., Shapiro v. Paradise Valley Unified School Dist.*, 374 F.3d 857, 866 (9th Cir. 2004) (government lawyers and retained defense attorneys generally bill at lower rates, so they do not reflect the same legal market).

24. Finally, I apply the rule that the relative "simplicity" or "complexity" of a case is reflected in the hours, not the lodestar rate. *See Van Skike v Director, Office of Workers' Compensation Programs,* 557 F.3d 1041, 1046 (9th Cir. 2009).

25. The most important factors in determining reasonable market rates are skill and experience. The size of the firm is not a determinative factor. In *Davis v. City & County of San Francisco*, 976 F.2d 1536, modified on other grounds, 984 F.2d 345 (9th Cir. 1993), the Court upheld rates for sole practitioners and non-profit law firm staff at those charged by "corporate attorneys of equal caliber." *Id.* at 1545; *see also Auer v. Robbins*, 519 U.S. 452 (1997) (market rates for comparably skilled attorneys not reduced based on firm size).

26. To support my opinion on the reasonableness of the fees sought by this motion, I attach fee awards and declarations in cases in the Los Angeles legal market.

**DECLARATION OF CAROL A. SOBEL**

Each is a true and correct copy of the document available in the Court's files. Some are now several years old, so they do not reflect current rates. In *Hiken v. DOD*, the court noted that "market rates in effect more than two years *before* the work was performed" are not current lodestar rates. 802 F.3d at 1107 (9th Cir. 2016) (emphasis in original). To adjust for rates more than two years old, I apply a minimum of a 3.1 percent increase, which was the average legal services component increase in the Consumer Price Index for Los Angeles before the pandemic. *See* http://www.bis.gov/news.release/cpi.102.htm (Table2.Consumer Price Index for All Urban Consumers (CPI-U): U.S. city average by detailed expenditure category). For the last two years, I have used a slightly higher increase of five percent to reflect a rise in inflation rates. Even that increase is below what I observed for increases in the Los Angeles legal market at firms doing complex litigation.

27. My rate for 2025 is $1,450 an hour. I have not filed a contested fee motion in several years other than to seek Court approval of the fees in class-action settlements, or to settle non-class cases. In 2024, the Court approved the rate of $1,325 an hour for me in the final approval of a class action against the City of Santa Monica arising from the 2020 George Floyd protests. *Black Lives Matter, et al. v. City of Santa Monica, et al.,* 2:21-cv-05253-CAS-AJR [Doc 64].

28. In 2022, the Court approved a rate of $1,150 an hour for me in *Shawn Carroll, et al. v. County of Orange, et al.*, Case No. 8:19-cv-00614 DOC-DFM (C.D. Cal.), a class-action challenging Orange County's regulations for determining eligibility to qualify for General Relief. [Doc. 40, p.5]. In the same case, the Court approved the 2022 rate of $650 an hour for my co-counsel, Brooke Weitzman, then with 8 years of experience.

29. In May 2019, I used the rate of $1050 an hour for the fees in *Mitchell v. City of Los Angeles*, Case No. 2:16-cv-01750-SJO-JPR (C.D. Cal.) and for a lodestar cross-check in a class action, *Chua v. City of Los Angeles*, Case 2:16-cv-00237-JAK-GJS (C.D. Cal.). Prior to 2019, I resolved attorney fees in several cases at rates of $900 and $975

**DECLARATION OF CAROL A. SOBEL**

an hour.  My last court awarded fee in a contested motion was $875 an hour in 2014 in *CPR for Skid Row v. City of Los Angeles*, 779 F.3d 1098 (9th Cir. 2015).

30.     I understand fees are sought by this motion for attorneys Shayla Myers, Catherine Sweetser, Isabelle Geczy and paralegal staff, as well as a law clerk. The chart of personnel and rates is set out below.

| Name | Role | Graduation | Rate |
|---|---|---|---|
| Shayla Myers | Attorney | 2008 | $1,025 |
| Catherine Sweetser | Attorney | 2008 | $1,025 |
| Isabelle Geczy | Attorney | 2022 | $ 600 |
| Paralegal | n/a | n/a | $ 275 |
| Law clerk | n/a | 2024 | $ 250 |

31.     In my experience, the rates for counsel in this matter are well within the market rate for attorneys of their skill, experience and reputation in the public interest legal community but well below rates for comparably skilled and experienced attorneys at large firms engaged in complex litigation in the Los Angeles legal market. I have served as co-counsel with both Ms. Myers and Ms. Sweetser in multiple cases over the last 15 years or so, so I am very familiar with their work and consider it to be of the highest caliber.

32.     Based on my personal knowledge, I am aware that Ms. Myers and Ms. Sweetser are both 2008 law graduates.  Both clerked for federal circuit court judges.  I also know Ms. Geczy and believe she is a 2022 graduate.

33.     Attached at Exhibit 2 is the recent fee award by Judge Marshall to the law firm of Hadsell, Stormer, Renick and Dai in *Pineda v. City of Los Angeles*, Case 2:21-cv-06470-CBM-AS (C.D. Cal. April 19, 2024) [Doc. 195]. The motion was filed in 2023, seeking current market rates. The Court approved $915 an hour for Morgan Ricketts. The Court's order notes that Ms. Ricketts is a 2009 law graduate. Ex.2, p. 7. I am very familiar with Ms. Rickett and reviewed the fee application submitted in *Pineda.* The rate sought

**DECLARATION OF CAROL A. SOBEL**

for Shayla Myers and Catherine Sweetser is slightly more than 10 percent above the 2023 rate approved for Ms. Ricketts, which represents an annual increase of approximately three percent, below the cost of living increase over the same time period.  It does not reflect a step increase for additional experience.

34.    In *Pineda*, the Court also approved the 2023 rate of $285 an hour for Tami Galindo, a paralegal with the law firm.  Ex. 2, p.4.

35.    Attached at Exhibit 3 is the 2024 order of final approval by Judge Snyder of the class action against the City of Santa Monica arising from the 2020 George Floyd protests. *Black Lives Matter, et al. v. City of Santa Monica, et al.,* 2:21-cv-05253-CAS-AJR [Doc 64], filed October 22, 2024. Among the attorneys for whom fees were approved is Erin Darling at the 2024 rate of $975 an hour.  I have known Mr. Darling since he was a law student and, based on my personal knowledge, believe him to be a 2008 graduate, the same year as Ms. Myers and Ms. Sweetser. The 2025 rate requested by this motion represents an increase of five percent above the approved 2024 rate for Mr. Darling.

36.    Attached at Exhibit 4 is the Declaration of Eric Rowen of Greenberg Traurig in support of a motion for fees in *Simons v. Superior Court ("Simons I")*, LASC Case No. 19STCP01994.  The motion sought fees at historical rates for 2018 and 2019 in a complex business matter. The lower Court's award was upheld on appeal in an unpublished decision available at 2022 Cal. App. Unpub. LEXIS 1854. After the ruling by the appellate court, Greenberg Traurig filed a motion for additional attorney fees for the appeal ("*Simons II*").  Mr. Rowen filed a second declaration, setting out the firm's rates for 2020, 2021 and 2022.  A true and correct copy of the declaration is at Exhibit 5.  He averred that the 2021 rate for Matthew Gershman, a 2007 admittee, was $935 an hour and the 2022 rate was $990 an hour.    Ex. 5, pp. 9, 12, ¶ 37, 48.  In 2022, Mr. Gershman had 15 years of experience, two years less than Ms. Myers and Ms. Sweetser have in 2025.

37.    In *Simons II*, fees were also sought for Layal Bashara at the 2021 rate of $585 an hour.  Mr. Rowen's declaration identified Ms. Bashara as a 2019 law graduate.

**DECLARATION OF CAROL A. SOBEL**

In 2021, she had two years of experience. The declaration also set out Ms. Bashara's 2022 rate of $665 an hour, when she had three years of experience. *Id.* at p.12.

38.    In *Herring Networks v. Rachel Maddow*, Case No. 19-cv-1713 BAS-AHG (S.D. Cal. 2020), Gibson Dunn submitted the declaration of Scott Edelman, listing the firm's customary billing rates in the Los Angeles legal market. A true and correct copy of the Edelman Declaration is attached at Exhibit 6. The *Herring Networks* case was an anti-SLAPP lawsuit before the Southern District of California. The motion sought fees for Nathaniel Bach, then a senior associate in the Los Angeles office at Gibson Dunn, at his customary 2019 rate in Los Angeles of $915 an hour and his 2020 rate of $960 an hour. Ex. 6, pp. 5-6. I reviewed Mr. Bach's listing on the State Bar and his current firm and, on that basis, concluded that he is a 2006 law graduate. In 2020, the year of the *Herring* award, Mr. Bach had 14 years of experience, three years less than Ms. Myers and Ms. Sweetser. Although the Court in *Herring* reduced Mr. Bach's rate to align with local market rates in San Diego, more recent awards to Mr. Bach support the reasonableness of the rates in this motion.

39.    Attached at Exhibit 7 is the declaration of Nathaniel Bach submitted in support of an award of fees in Tracy Anderson Mind and Body, LLC v. Megan Roup, et al., Case No. 2:22-cv-04735-PSG-E (C.D. Cal. 2023), an anti-SLAPP case. In his declaration, Mr. Bach set out his standard 2022 rate of $960 an hour and his standard 2023 rate of $1,065 an hour, an increase of approximately 12 percent annually. Ex. 7, p. 5.

40.    Among the attorneys at Manatt for whom fees were sought was Andrea Gonzalez. Her 2022 rate was $620 an hour and her 2023 rate was $655 an hour. *Id.* I reviewed Ms. Gonzalez's listing on the firm's website and, on that basis, believe she is a 2020 graduate of UCLA Law School. In 2023, Ms. Gonzalez had three years of experience, the same amount of experience as M. Geczy has now. The requested rate for Ms. Geczy is nearly 10 percent below Ms. Gonzalez's approved 2023 rate.

41.    In Exhibit 7, the Manatt firm includes the 2022 rate of $395 an hour and the

**DECLARATION OF CAROL A. SOBEL**

2023 rate of $455 an hour for a "Practice Support Specialist," which I understand to be a term describing a senior paralegal. *Id.*, pp. 5-6.

The chart below sets out the rates referenced in my declaration.

| Ex. | Attorney | Graduation | Award | Years | Rate |
|---|---|---|---|---|---|
| 2 | Morgan Ricketts | 2009 | 2023 | 14 | $ 915.00 |
| 3 | Erin Darling | 2008 | 2024 | 16 | $ 975.00 |
| 3 | Law students | n/a | 2024 | n/a | $ 225.00 |
| 5 | Matthew Gershman | 2007 | 2021 | 14 | $ 935.00 |
| 5 | Matthew Gershman | 2007 | 2022 | 15 | $ 990.00 |
| 5 | Layal Bishara | 2019 | 2021 | 2 | $ 585.00 |
| 5 | Layal Bishara | 2019 | 2022 | 3 | $ 665.00 |
| 6 | Nathaniel Bach | 2006 | 2020 | 14 | $ 960.00 |
| 7 | Nathaniel Bach | 2006 | 2022 | 16 | $ 960.00 |
| 7 | Nathaniel Bach | 2006 | 2023 | 17 | $1,065.00 |
| 7 | Andrea Gonzalez | 2020 | 2022 | 2 | $ 620.00 |
| 7 | Andrea Gonzalez | 2020 | 2023 | 3 | $ 655.00 |
| 7 | Practice Support Specialist | n/a | 2022 | n/a | $ 395.00 |
| 7 | Practice Support Specialist | n/a | 2023 | n/a | $ 455.00 |

42.    Based on the foregoing, I believe the rates sought by this motion, as well as the hours for which compensation is sought, are reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 6th day of August, 2025 at Los Angeles, California.

_____
CAROL A. SOBEL

15

**DECLARATION OF CAROL A. SOBEL**