# EXHIBIT 5

Electronically FILED by Superior Court of California, County of Los Angeles on 01/14/2022 01:11 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 2:20-cv-02291-DOC-KES    Document 1022-13    Filed 08/08/25    Page 2 of 13
Page ID #:29427

GREENBERG TRAURIG, LLP
Eric V. Rowen (SBN 106234)
Matthew R. Gershman (SBN 253031)
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Telephone:    (310) 586-7700
Facsimile:    (310) 586-7800
Email:    RowenE@GTlaw.com
            GershmanM@GTlaw.com
Attorneys for Respondents

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| ANN M. SIMONS, individually and as the Designated Representative of Family 3,<br><br>Petitioner,<br><br>v.<br><br>THE ENTERPRISE, a business enterprise, GILAD LUMER, individually and as the Designated Family Representative of Family 1, HARRY LUMER, SR., individually and as the Designated Family Representative of Family 2, STUART RUBIN, individually and as a Representative of Family 4, and DAVID WANK, individually and as the Representative of Family 5,<br><br>Respondents.<br><br>AND RELATED CROSS-ACTION. | CASE NO. 19STCP01994<br>[Related to Case No. BS127141]<br><br>[Assigned for all purposes to Hon. Randolph M. Hammock, Dept. 47]<br><br>**DECLARATION OF ERIC V. ROWEN IN SUPPORT OF RESPONDENTS' MOTION FOR ATTORNEYS' FEES**<br><br>[Filed Concurrently with Notice of Motion and Motion for Attorneys' Fees and [Proposed] Order]<br><br>Date:    March 11, 2022<br>Time:    9:00 a.m.<br>Dept.:    47<br><br>**RESERVATION NO. 338002096520**<br><br>Action filed:  May 21, 2019 |

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

ACTIVE 62180462v4

## <u>DECLARATION OF ERIC V. ROWEN</u>

I, Eric V. Rowen, declare as follows:

1.      I am an attorney at law duly licensed to practice by the State of California and before this Court.  I am a shareholder at Greenberg Traurig, LLP, and am counsel responsible for the representation of Respondents The Enterprise, Gilad Lumer, Harry Lumer, Sr., Stuart Rubin, and David Wank ("Respondents"). As such, I have personal knowledge of the following facts, except as to those matters which are based on information and belief, as to which I believe them to be true, and I would competently testify thereto if necessary.

**The Enterprise Agreement and underlying arbitration**

2.      Respondents and Petitioner Ann Simons ("Petitioner") entered into an Enterprise Agreement in 2001.  In 2008, the Enterprise Agreement was amended to provide for a reorganization and termination of Petitioner's position as Vice President.  Attached hereto as **Exhibit 1** is a copy of the Enterprise Agreement.

3.      In 2008, Petitioner filed the underlying arbitration, seeking to unwind the amendment to the Enterprise Agreement, and Justice John Zebrowski (Ret.) was appointed as the arbitrator in early 2009. The arbitration proceeded in phases, with issues relating to governance and the validity of the Amendment to be resolved first in Phase 1.  On March 3, 2010, Justice Zebrowski issued a Partial Final Award for the first phase, which confirmed the validity of the amendment to the Enterprise Agreement and new management structure.  Attached as **Exhibit 2** is a copy of the March 3, 2010 Phase 1 Partial Final Award.

**This Court confirms Justice Zebrowski's Phase I Partial Final Arbitration Award.**

4.      In June 2010, Respondents filed a petition to confirm the Phase 1 Partial Final Award, a copy of which is attached as **Exhibit 3**.  The Court subsequently entered an Order in favor of Respondents and against Petitioner.  Attached as **Exhibit 4** is a copy of the Court's (Hon. Judge Alarcon) Order confirming the Phase I Partial Final Award.

**Petitioner tries and fails to replace Justice Zebrowski in the arbitration.**

5.      Unhappy with the prior outcome from Phase I, Petitioner sent a letter to the AAA requesting disqualification of Justice Zebrowski in 2014.  Petitioner's effort was unsuccessful.

**Justice Zebrowski orders a further phasing of the arbitration.**

6.      In 2015, after Petitioner's attempts to replace the arbitrator failed, Justice Zebrowski asked the parties to provide updated statements identifying the issues to be tried in Phase II.  On May 15, 2015, both sides updated their arbitration claims.

7.      After briefing and argument, and in order to expedite the separation of the two side's respective business interests, Justice Zebrowski ordered further phasing and determined that the separation

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

issues would be adjudicated before any claims for monetary relief.  A copy of Justice Zebrowski's Order explaining that is attached as **Exhibit 5.**

**Phase II concludes with Justice Zebrowski issuing the Phase II Partial Final Arbitration Award.**

8.     Phase II evidentiary hearings were held in December 2015, as well as an additional 18 days spanning August 2017 to August 2018.  After closing briefing and argument, and after receiving and considering comments from both sides about a tentative ruling, Justice Zebrowski issued his Phase II Partial Final Arbitration Award, a copy of which is attached as **Exhibit 6.**

**Petitioner unsuccessfully seeks to vacate the Phase II Partial Final Arbitration Award.**

9.     On May 21, 2019, Petitioner filed her petition to vacate the Phase II Partial Final Award. Respondents filed a cross-petition for confirmation of the Phase II Partial Final Award.  Although Petitioner had filed a lengthy petition to vacate at the outset of this action, Petitioner additionally filed a motion to vacate.

10.     The parties then filed their respective opposition papers to the dueling cross-petitions.

11.     On February 27, 2020, this Department heard the matter and—based on Petitioner's false assertions at the hearing—ordered supplemental briefing.  The parties then filed their respective supplemental briefs, along with briefing regarding Petitioner's objections to Respondent's brief.

12.     On April 7, 2020, this Court issued its ruling, denying Petitioner's petition and motion to vacate, and granting Respondents' cross-petition to confirm the Phase II Partial Final Arbitration Award. Attached as **Exhibit 7** is a copy of the Court's April 7, 2020 Minute Order.  Respondents submitted a proposed form of judgment, to which Petitioner did not object, and, on May 12, 2020, almost a full year after this action began, this Court entered Judgment in Respondents' favor, providing that "Respondents are the prevailing parties" and "may seek their attorneys' fees for this action by motion."  Attached as **Exhibit 8** is a copy of the Notice of Entry of Judgment.

**Petitioner's Merits Appeal**

13.     On May 28, 2020, Petitioner filed a notice of appeal from this Court's May 12, 2020 Judgment.

14.     Due to Respondent Harry Lumer's senior status and the imminent risks posed at the time by COVID-19, Respondents filed a motion for calendar preference on July 8, 2020.  Attached as **Exhibit 9** is a copy of Respondents' motion for calendar preference (exhibits omitted for brevity).  Petitioner opposed.  Respondents filed their reply brief on July 24, 2020.  Attached as **Exhibit 10** is a copy of Respondents' reply.  The Court of Appeal denied calendar preference.

15.     The Reporter's Transcript was finished on October 9, 2020.  Over a month later, on November 12, 2020, Petitioner filed a request for an extension to file her opening brief, which

3

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Respondents did not oppose and which was granted. On December 10, 2020, Petitioner filed a second request for an extension to file her opening brief; Respondents again did not oppose, and it was granted. Then, on January 14, 2021, Petitioner filed a third request for an extension of time to file her opening brief; this time, Respondents opposed. Attached as **Exhibit 11** is a copy of Respondents' opposition to Petitioner's third request (exhibits omitted for brevity). The Court of Appeal granted Petitioner's third extension request, but also held no further extensions would be granted. Attached hereto as **Exhibit 12** is a copy of the Court of Appeal's order.

16.    Almost a full year after taking the appeal, on March 8, 2021, Petitioner filed her opening brief. Petitioner also filed an eleven-volume appendix totaling 4,435 pages. Attached hereto as **Exhibit 13** is a copy of Petitioner's opening brief.

17.    Respondents then filed their respondents' brief and a motion for judicial notice. Attached hereto as **Exhibits 14** and **15** are copies of the respondents' brief and motion for judicial notice, respectively.

18.    After the respondents' brief was filed, the Fourth Appellate District issued a new decision relevant to the appeal; Respondents filed a supplemental authority letter, bringing the new decision to the Court of Appeal's attention under Rule of Court 8.254. Attached as **Exhibit 16** is a copy of the supplemental authority letter.

19.    Petitioner opposed Respondents' motion for judicial notice and also filed an appellant's reply brief.

20.    On August 16, 2021, the Court of Appeal sent the parties a letter requesting supplemental briefing on a certain issue in the appeal, and the parties filed their supplemental letter briefs on August 27, 2021. Attached hereto as **Exhibits 17** and **18** are copies of the Court's letter and Respondents' supplemental letter brief.

21.    The Court of Appeal heard oral argument on September 13, 2021, and, within the month, issued its unpublished Opinion in favor of Respondents. Attached as **Exhibit 19** is a copy of the Court of Appeal's Opinion. The Court of Appeal rejected every one of Petitioner's attacks on this Court's judgment and the underlying arbitration award, holding "the trial court properly denied the petition to vacate the arbitration award," and that "there is no merit to Simons's objections to the arbitrator's award." The Opinion further concluded Respondents were entitled to an interlocutory judgment confirming the Phase II Partial Final Arbitration Award and "may recover their appellate costs."

22.    The Court of Appeal issued the remittitur on December 6, 2021. Attached as **Exhibit 20** is a copy of the Court of Appeal's Remittitur. The remittitur stated that the Court of Appeal's September

4

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

30 opinion had "now become final," and confirmed again that Respondents "may recover their appellate costs."

**Petitioner's Fees/Costs Appeal**

23. Still pending before the Court of Appeal as Case No. B309885 is Petitioner's separate appeal taken from this Court's post-judgment orders awarding Respondents their prevailing-party attorney's fees and costs. This Court may recall Petitioner opposed Respondents' post-judgment fee motion. Attached as **Exhibit 21** is a copy of my declaration (without exhibits) filed on July 1, 2020 in support of Respondents' post-judgment fee motion. Attached as **Exhibit 22** is a copy of Petitioner's opposition (without exhibits).

24. This Court heard Respondents' last prevailing-party fee motion on October 7, 2020. Attached as **Exhibit 23** is a copy of the transcript from the October 7, 2020 hearing. Attached as **Exhibit 24** is a copy of the Court's October 8, 2020 Order granting Respondents' last prevailing-party fee motion.

25. To be clear, this information regarding Petitioner's appeal from the post-judgment fee and cost award is provided for context. The work performed for those post-judgment proceedings and Petitioner's appeal therefrom is not included in the lodestar for this motion. Only the work involved with Petitioner's appeal from the judgment, and the work to prepare this fees motion is included in this motion's fee request.

**Respondents' Requested Attorneys' Fees**

26. Respondents had a core team of attorneys handle Petitioner's appeal from the judgment. That team included myself, shareholder Scott Bertzyk, shareholder Matthew R. Gershman, and associate Layal Bishara.

27. I am a commercial civil litigation shareholder at Greenberg Traurig, LLP, and the Co-Chair of the Real Estate Litigation Practice and Chair of the Western Region Real Estate Litigation Group. I have particular experience in litigation involving real estate, real estate financing, commercial real estate leasing, real estate related bankruptcies, and trusts holding vast real estate assets, as well as experience in litigation and pre-litigation counseling involving securitized loan portfolios, bond financings, loan and loan portfolio workouts and restructurings, construction financing, partnership and joint venture disputes, complex eminent domain, lease disputes, entitlements, title issues, title insurance, and real property related environmental matters. Attached as **Exhibit 25** is a copy of my biography pulled from the firm's website. I have been lead counsel in the underlying arbitration and related court proceedings since inception in 2008 and have headed up the litigation team in this action, setting overall strategy, supervising drafting of briefing, handling trial court appearances, and otherwise directing the litigation.

5

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

28.    Scott D. Bertzyk is a shareholder in Greenberg Traurig, LLP's litigation and appellate groups, with particular experience in disputes involving real estate, family trust management, and appellate issues. Attached as **Exhibit 26** is a copy of Mr. Bertzyk's biography pulled from the firm's website. Mr. Bertzyk had primary responsibility for directing briefing strategy on appeal, revisions to appellate court draft papers, and handling the appellate oral argument.

29.    Matthew R. Gershman is a shareholder in Greenberg Traurig, LLP's litigation and appellate groups, with particular experience in disputes involving real estate, family trust management, copyright and trademark claims, and class actions. Attached as **Exhibit 27** is a copy of Mr. Gershman's biography pulled from the firm's website. Mr. Gershman had primary responsibility for drafting the appellate court filings and for managing the case on a day-to-day basis.

30.    One litigation associate provided additional assistance for the appeal. Ms. Bishara was principally responsible for research support, as well as initial drafting of Respondents' motion for calendar preference and a motion for judicial notice. Attached as **Exhibit 28** is a copy of Ms. Bishara's biography from the firm's website.

31.    Care was taken in the staffing and delegation of responsibility to avoid overlap and duplication. Thus, Mr. Gershman ran point on the briefs and was the principal appellate drafter on the team, while I supervised overall strategy and had final review on briefs and other court filings. Mr. Bertzyk took the lead on oral argument, directing briefing strategy, and aided in revising the respondents' brief and supplemental letter brief. And Ms. Bishara contributed primarily in a support and research role, and occasionally with initial drafting, as detailed above. The delegation of work by experience level is further evidenced in the breakdown of billed hours detailed in charts provided below. Additionally, for the sake of computing a conservative lodestar, other billing timekeepers on the appeal—such as paralegal support—have not been included in this fee request.

32.    I have reviewed the time entries for this matter to determine how much time was billed by each attorney timekeeper in the core team (and the year in which that time was billed) for work on Petitioner's appeal taken from the judgment. The total hours incurred by each such attorney with respect to this appeal are as set forth in the chart below:

6

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

*ACTIVE 62180462v4*

| Timekeeper | Title | Law School graduation year | Hours (and year in which hours worked) | Totals |
|---|---|---|---|---|
| Eric Rowen | Shareholder | 1982 | 1.6 (2020) | 9.0 |
| | | | 7.4 (2021) | |
| Scott Bertzyk | Shareholder | 1984 | 32.5 (2021) | 32.5 |
| Matthew Gershman | Shareholder | 2007 | 14.9 (2020) | 116.6 |
| | | | 101.7 (2021) | |
| Layal Bishara | Associate | 2019 | 6.4 (2020) | 28 |
| | | | 21.6 (2021) | |
| | | | | **186.1** |

33.    Only 2.4 of these total hours—billed at $3,002.00 dollars—come from time entries commonly referred to as "block-billed" entries.  In these few instances, I carefully analyzed the block-billed entries to determine the portion attributable to these appellate proceedings, to arrive at 2.4 total hours from block-billed time.  In doing so, I was conservative in leaning toward not including billed time from those handful of entries.

34.    The work performed by each attorney also breaks down further as follows:

| Motion Practice re: Calendar Preference | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2020 | Rowen | 0 | 0 | .4 | .4 |
| | Gershman | 0 | 11.1 | 1.5 | 12.6 |
| | Bishara | 0 | 4 | 0 | 4 |
| **Totals** | | **0** | **15.1** | **1.9** | **17** |

| Motion Practice re: Petitioner's Extensions | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2020 | Rowen | 0 | 0 | 1.2 | 1.2 |
| | Gershman | 0 | 1.8 | .2 | 2 |
| 2021 | Rowen | 0 | 0 | 1.5 | 1.5 |
| | Gershman | 0 | .7 | 0 | .7 |
| **Totals** | | **0** | **2.5** | **2.9** | **5.4** |

7

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

ACTIVE 62180462v4

| Respondents' Brief, Motion for Judicial Notice, Supplemental Authority Letter | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2020 | Gershman | 0 | 0 | .3 | .3 |
| | Bishara | 1.3 | 0 | 0 | 1.3 |
| 2021 | Rowen | 0 | .5 | 3.8 | 4.3 |
| | Gershman | 0 | 75.4 | 0 | 75.4 |
| | Bertzyk | 0 | 14 | 0 | 14 |
| | Bishara | 12 | 3.6 | 0 | 15.6 |
| **Totals** | | **13.3** | **93.5** | **4.1** | **110.9** |

| Supplemental Letter Brief requested by Court of Appeal | | | | | |
|---|---|---|---|---|---|
| Year | Timekeeper | Research | Legal Analysis, Planning & Outlining, and Drafting/Revising | Overseeing Strategy | Totals |
| 2021 | Rowen | 0 | .7 | .4 | 1.1 |
| | Gershman | 0 | 22.3 | .9 | 23.2 |
| | Bertzyk | 0 | 5.5 | 0 | 5.5 |
| | Bishara | 4.5 | 1.5 | 0 | 6 |
| **Totals** | | **4.5** | **30** | **1.3** | **35.8** |

| Preparing for and Attending Oral Argument (and other miscellaneous tasks) | | |
|---|---|---|
| Year | Timekeeper | **Time** |
| 2020 | Bishara | 1.1 |
| 2021 | Rowen | .5 |
| | Gershman | 2.4 |
| | Bertzyk | 13 |
| **Total** | | **17** |

35.    With respect to the immediately above chart—"Preparing for and Attending Oral Argument (and other miscellaneous tasks)"—15 of the 17 hours consisted of preparing for and attending oral argument, and the remaining 2 hours involved corresponding with the court, and dealing with transcript designations.

36.    Respondents' core team of professionals each charged the following hourly rates for work on this appeal:

8

| Timekeeper | Title | Law School graduation year | Hourly Rate(s) (and year in which hourly rate applied) |
|---|---|---|---|
| Rowen | Shareholder | 1982 | $1,315 (2020) |
| | | | $1,380 (2021) |
| Bertzyk | Shareholder | 1984 | $1,260 (2021) |
| Gershman | Shareholder | 2007 | $890 (2020) |
| | | | $935 (2021) |
| Bishara | Associate | 2019 | $515 (2020) |
| | | | $585 (2021) |

37.     Thus, the lodestar for these appellate services based on the hours and rates identified above, are as set forth in the chart below:

| Timekeeper | Hours (and year in which hours worked) | Hourly Rate(s) (and year in which hourly rate applied) | Fees |
|---|---|---|---|
| Rowen | 1.6 (2020) | $1,315 (2020) | $2,104.00 |
| | 7.4 (2021) | $1,380 (2021) | $10,212.00 |
| Bertzyk | 32.5 (2021) | $1,260 (2021) | $40,950.00 |
| Gershman | 14.9 (2020) | $890 (2020) | $13,261.00 |
| | 101.7 (2021) | $935 (2021) | $95,089.50 |
| Bishara | 6.4 (2020) | $515 (2020) | $3,296.00 |
| | 21.6 (2021) | $585 (2021) | $12,636.00 |
| **TOTAL** | **186.1** | | **$177,548.50** |

38.     I personally reviewed the billings on which the summaries above are based, and I supervised the preparation of these summaries based on review of contemporaneous firm records reflecting total billings, and time records reflecting the work performed by our team on a month-by-month basis. I personally am familiar with the way in which such records are kept and can attest that our time records are inputted at or near the time of the events reflected therein and are kept and maintained electronically in the ordinary course of our firm's business.

39.     I also supervise collections on billings for this matter, and the hourly rates identified above that were billed for this appellate work are, in fact, paid in this case.

40.     The work involved in this appeal was substantial and caused Respondents to incur the fees requested. Not only did Respondents need to deal with Petitioner's numerous delays and then respond to a lengthy opening brief with eleven volumes of exhibits appended, but Respondents also were directed by the Court of Appeal to file a supplemental letter brief. Ultimately, the work underlying this fees request was successful, resulting in a 38-page Opinion in Respondents' favor.

41.     All things considered, and as detailed herein and in the Motion, these fees were necessarily and reasonably incurred, especially considering the work involved, the experience and skill of the attorneys involved, and the prevailing rates at other comparable law firms in Los Angeles.

9

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

ACTIVE 62180462v4

42.     For context, Greenberg Traurig, LLP, was ranked in May 2017 as the largest U.S. law firm, with more than 35 locations at that time throughout the United States and abroad and more than 1,700 attorneys in the United States.  Attached as **Exhibit 29** is a copy of an article titled "Turning 50, Greenberg Traurig Tops the Law360 400," <www.law360.com/articles/929048>.  The firm has grown now to have 41 offices worldwide.  The Real Estate Litigation Practice Group that I chair was awarded 2017 "Law Firm of The Year – Real Estate Litigation," U.S. News—Best Lawyers.

43.     With that context in mind, attached as **Exhibit 30** is a copy of The National Law Journal's 2015 survey of hourly billing rates.  According to the 2015 Survey, five years before this appeal was even filed, when rates were generally lower than those charged in 2020 and 2021, the average partner hourly rates at 49 other comparable firms ranged from $715 to $1,055, and the average associate hourly rates at those same firms ranged from $290 to $678.

44.     By way of further example, in 2018 to support her own fee application in prior litigation between these same parties as evidence of reasonable hourly rates, Petitioner submitted a Thomson Reuters California Region survey from December 2016—which shows that four years before this appeal was filed, when rates were generally lower than those charged in 2020 and 2021, partner hourly billing rates ranged from $675 (for a 6th-year partner) to $1,350 (for a 32-year partner), while associate hourly billing rates ranged from $675 to $995 (excluding one outlier 16-year associate's billing rate).  While Petitioners' entire fee application from that prior action are in the Court's records, the filing exceeds 500 pages; accordingly, for the Court's convenience, attached as **Exhibit 31** is a copy of the relevant portions of Petitioners' fee application from that prior action (Case No. BC667970), as well the Thomson Reuters California Region surveys on which Petitioner relied and that she submitted to the Court.  Though the Court denied Petitioner's fee application in that prior litigation, it was because Petitioner was not a prevailing party in that matter either.  Attached as **Exhibit 32** is a copy of the Court's April 18, 2018 Minute Order denying Petitioner's fee application in that case on that ground.

45.     Additionally, a June 2021 Report by PricewaterhouseCoopers LLP ("PWC Survey") further supports the conclusion that the above-referenced hourly rates are consistent with, or less than, the prevailing rates charged by non-IP litigation practice groups that operate offices in Los Angeles.  I understand that Greenberg Traurig, LLP's subscription agreement with PricewaterhouseCoopers LLP does not permit me to include the PWC Survey as an exhibit to this declaration.  However, according to the PWC Survey, at other firms in Los Angeles with non-IP litigation practice groups, (i) the 1st Quartile for the hourly rate of equity non-IP litigation partners with 36-40 years' experience was $1,321, as compared to my hourly rates of $1,315 in 2020 and $1,380 in 2021, respectively, and to Mr. Bertzyk's hourly rate in 2021 of $1,260, (ii) the 1st Quartile for the hourly rate of equity non-IP litigation partners

10

*ACTIVE 62180462v4*

with 11-15 years' experience was $1,175 (and the median rate was $1,070), as compared to Mr. Gershman's hourly rates in 2020 and 2021 of $890 and $935, respectively, and (iii) the 1st Quartile for the hourly rate of 1st-year and 2nd-year non-IP litigation associates was $600 and $653, respectively, as compared to Ms. Bishara's hourly rate as a 1st and 2nd-year associate of $515 and $585, respectively.

46.     In sum, based on the PWC Survey, and consistent with my extensive experience and successful track record, my rates in 2020 and 2021 would rank right around the first quartile of 2021 rates charged by comparably experienced equity partners in non-IP litigation practice groups in Los Angeles, though it still would be less than (or in 2021, slightly higher than) rates charged in 2016 by a partner with lesser experience according to Petitioner's Thomson Reuters California Region Survey.  Mr. Bertzyk's rate in 2021 would rank below the first quartile of 2021 rates charged by comparably experienced equity partners in non-IP litigation practice groups in Los Angeles, though it still would be less than rates charged in 2016 by a partner with lesser experience according to Petitioner's Thomson Reuters California Region Survey.  Moreover, when comparing 2016 rates to our rates in 2020 or 2021, one must keep in mind that 2016 rates were generally lower than those charged in 2020 and 2021.  Indeed, a recent ABA Journal article stated that partners at comparable firms have increased their hourly rates to $2,000.  A copy of the ABA Journal article is attached hereto as **Exhibit 33**.  As for the rest of the core team of professionals, based on the PWC Survey, all their rates during 2020 or 2021 would rank far below the first quartile of 2021 rates charged by comparably experienced non-IP litigation attorneys in comparable practice groups in Los Angeles, and Mr. Gershman's rates would rank below even the median 2021 rate charged by comparably experienced equity partners in non-IP litigation practice groups in Los Angeles.  The 2020 and 2021 rates for Mr. Gershman and Ms. Bishara also compare similarly to the rates noted in the surveys from several years prior in 2015 (by the National Law Journal) and 2016 (by Thomas Reuters).

47.     Moreover, the fees requested here also are reasonable when considering the stakes.  The arbitration award at issue concerned the in-kind allocation of assets based on relative equity values, where (i) Petitioner's expert in the arbitration opined the assets had a total equity value of $399,900,000, and (ii) Respondents' expert opined the total equity value was $127,617,000.  A copy of the relevant excerpt from Petitioner's expert's exhibit in the underlying arbitration, showing his opinion of total equity value, is attached as **Exhibit 34**, and a copy of Respondents' expert's opinion showing the same is attached as **Exhibit 35**.  Either way, as shown in **Exhibit 6** (at pp. 9-11), Justice Zebrowski's Phase II Partial Final Arbitration Award awarded assets equal to 78% of the total equity value to Respondents, and assets equal to 22% of the total equity value to Petitioner.  Thus, the stakes here were objectively large.

48.     In addition to the appellate fees requested, the lodestar fees for preparing this motion and its supporting papers are as follows:

11

*ACTIVE 62180462v4*

| Timekeeper | Hours (and year in which hours worked) | Hourly Rate(s) (and year in which hourly rate applied) | Fees |
|---|---|---|---|
| Rowen | 1.7 (2022) | $1,450 (2022) | $2,465.00 |
| Gershman | 1.2 (2021) | $935 (2021) | $1,122.00 |
| | 5.5 (2022) | $990 (2022) | $5,445.00 |
| Bishara | 5.8 (2021) | $585 (2021) | $3,393.00 |
| | 9 (2022) | $665 (2022) | $5,985.00 |
| **TOTAL** | **23.2** | | **$18,410.00** |

49.     Thus, adding the fees incurred for this motion to the requested appellate fees equals a total fee request of $195,958.50.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 14th day of January 2022.

_____/s/ Eric V. Rowen_____

12

DECLARATION OF ERIC V. ROWEN IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

ACTIVE 62180462v4