GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a Municipal entity, et al., <br><br> Defendant. | CASE NO. 2:20-cv-02291 DOC (KES) <br><br> Honorable David O. Carter, United States District Judge <br><br> **DEFENDANT CITY OF LOS ANGELES'S OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES** <br><br> Action Filed:   March 10, 2020 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARD ......................................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.     The Alliance's fee request falls outside this Court's inherent power. ........ 4

     A.     The Alliance has not met the *Chambers* requirements for a fee award. ................................................................................... 4

           1.     The Alliance ignores the need for clear and convincing evidence. .................................................................. 5

           2.     The City substantially complied with the Settlement Agreement. ....................................................... 6

           3.     Any substantial noncompliance was based on the City's good-faith and reasonable interpretation of the Settlement Agreement. ....................................................... 10

     B.     The Alliance has not carried its burden to prove what costs it would not have incurred but for the purported breaches. .............. 13

     C.     Under the proper but-for standard, the Alliance cannot inflate its hours and rates, request a multiplier, or seek future fees.......... 15

II.     Section 1988 does not authorize fee-shifting here. ................................. 20

     A.     The Alliance did not prevail on its § 1983 claims and incurred fees litigating a settlement agreement, not § 1983. .......... 20

     B.     Section 1988 does not support the Alliance's fee request in any event. ......................................................................... 23

CONCLUSION .................................................................................................................. 25

Gibson, Dunn & Crutcher LLP

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance to End Repression v. City of Chicago,*
1994 WL 86690 (N.D. Ill. Mar. 15, 1994) ...................................................................25

*Alyeska Pipeline Serv. Co. v. Wilderness Society,*
421 U.S. 240 (1975) .........................................................................................................3

*America Unites for Kids v. Rousseau,*
985 F.3d 1075 (9th Cir. 2021) ..................................................................................10, 18

*Armand Hammer Found., Inc. v. Hammer Int'l Found.,*
2023 WL 5916443 (C.D. Cal. Sept. 11, 2023) ................................................................3

*Autotel v. Nev. Bell Tel. Co.,*
697 F.3d 846 (9th Cir. 2012) ...........................................................................................5

*Baker Botts L.L.P. v. ASARCO LLC,*
576 U.S. 121 (2015) .........................................................................................................2

*Battaglia v. United States,*
653 F.2d 419 (9th Cir. 1981) ...........................................................................................5

*Blixseth v. Yellowstone Mountain Club, LLC,*
854 F.3d 626 (9th Cir. 2017) .........................................................................................16

*BMW of N. Am., Inc. v. Gore,*
517 U.S. 559 (1996) .......................................................................................................12

*Brewster v. Dukakis,*
786 F.2d 16 (1st Cir. 1986) ............................................................................................25

*Brooke v. Ashna Inc.,*
2024 WL 3537861 (C.D. Cal. July 11, 2024) .................................................................5

*Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources,*
532 U.S. 598 (2001) .......................................................................................................22

*Chambers v. NASCO, Inc.,*
501 U.S. 32 (1991) .........................................................................................1, 3, 5, 12, 13

Gibson, Dunn & Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Cities Serv. Oil Co. v. Dunlap*,
  308 U.S. 208 (1939)......................................................................................... 6

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) ........................................................3, 5, 6, 8

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*,
  244 F.3d 1128 (9th Cir. 2001) ...................................................................3, 5

*Farrar v. Hobby*,
  506 U.S. 103 (1992).........................................................................................22

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
  386 U.S. 714 (1967).......................................................................................... 3

*Fox v. Vice*,
  563 U.S. 826 (2011)......................................................................................3, 23

*Frew v. Hawkins*,
  540 U.S. 431 (2004).........................................................................................22

*Frlekin v. Apple, Inc.*,
  979 F.3d 639 (9th Cir. 2020) ........................................................................17

*FTC v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999) ....................................................................... 8

*Gates v. Deukmejian*,
  987 F.2d 1392 (9th Cir. 1992) ......................................................................17

*Gilead Sciences, Inc. v. Merck & Co., Inc.*,
  2017 WL 3007071 (N.D. Cal. July 14, 2017) .......................................14, 16

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017).....................................1, 3, 13, 14, 15, 16, 18, 19, 23

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).........................................................................................23

*Keith v. Volpe*,
  833 F.2d 850 (9th Cir. 1987) .....................................................................22, 25

Gibson, Dunn & Crutcher LLP

iii

# TABLE OF AUTHORITIES

**Page(s)**

*Kelly v. Wengler*,
  979 F. Supp. 2d 1104 (D. Idaho 2013) ................................................................5, 21

*Kelly v. Wengler*,
  7 F. Supp. 3d 1069 (D. Idaho 2014) ........................................................................24

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ............................................................................5, 24

*Keyes Law Firm, LLC v. Napoli*,
  120 F.4th 139 (4th Cir. 2024) ..................................................................................18

*Kooritzky v. Herman*,
  178 F.3d 1315 (D.C. Cir. 1999) ...............................................................................19

*Lackey v. Stinnie*,
  145 S. Ct. 659 (2025) ................................................................................2, 20, 21, 22

*Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator &
  Standard Sanitary Corp.*,
  540 F.2d 102 (3d Cir. 1976) .....................................................................................25

*Lu v. United States*,
  921 F.3d 850 (9th Cir. 2019) .................................................................................3, 14

*Maher v. Gagne*,
  448 U.S. 122 (1980) ..................................................................................................22

*Manion v. Am. Airlines, Inc.*,
  395 F.3d 428 (D.C. Cir. 2004) ..................................................................................19

*Mendez v. County of San Bernardino*,
  540 F.3d 1109 (9th Cir. 2008) ..................................................................................23

*Miller v. City of Los Angeles*,
  661 F.3d 1024 (9th Cir. 2011) ....................................................................................4

*Myles v. County of San Diego*,
  2025 WL 1367186 (9th Cir. May 12, 2025) .............................................................24

*Parsons v. Ryan*,
  949 F.3d 443 (9th Cir. 2020) ....................................................................................21

Gibson, Dunn &
Crutcher LLP

iv

# TABLE OF AUTHORITIES

**Page(s)**

*Patagonia, Inc. v. The 18A Chronicles LLC,*
2023 WL 3963787 (C.D. Cal. May 22, 2023)..................................................................3

*Perdue v. Kenny A.,*
559 U.S. 542 (2010)........................................................................................................24

*Philip Morris USA v. Williams,*
549 U.S. 346 (2007)........................................................................................................12

*Roadway Express, Inc. v. Piper,*
447 U.S. 752 (1980)........................................................................................................12

*In re Southern Cal. Sunbelt Developers, Inc.,*
608 F.3d 456 (9th Cir. 2010) .........................................................................................16

*Stone v. City and County of San Francisco,*
968 F.2d 850 (9th Cir. 1992) ...........................................................................................6

*Taggart v. Lorenzen,*
587 U.S. 554 (2019).................................................................................................10, 12

*United States v. Rylander,*
460 U.S. 752 (1983)..........................................................................................................8

*Vieira v. County of Sacramento,*
2020 WL 3343988 (N.D. Cal. June 19, 2020)...............................................................15

*Weiner v. Fleischman,*
54 Cal. 3d 476 (1991) .......................................................................................................6

*Welch v. Metropolitan Life Ins. Co.,*
480 F.3d 942 (9th Cir. 2007) .........................................................................................14

**Statutes**

42 U.S.C. § 1983................................................................................................................2

42 U.S.C. § 1988(b) ...............................................................................................2, 20, 21

Cal. Civ. Code § 1717(a) ................................................................................................21

Cal. Evid. Code § 115........................................................................................................6

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

After receiving $1.8 million from the City in settlement funds, the Alliance seeks nearly double that amount—almost $3.5 million in attorneys' fees—adding every bell and whistle along the way:  all its hours billed for more than a year with any connection to the parties' Settlement Agreement, inflated rates for its attorneys, a 2.5 multiplier, future fees, and even some cash for its executive director.  The Alliance claims that its request is in the public's interest, but its attempt to line its counsel's pockets with taxpayer money has nothing to do with helping address pressing matters, including providing resources to the City's vulnerable unhoused population.  The Alliance's request defies every limit on this Court's inherent sanctions power, ignores every burden that the law places on a party seeking sanctions, and would divert funds at the expense of vital City programs.  The Court should deny the motion in full.

This Court was clear that it was considering only one potential basis for awarding Alliance fees:  its inherent power to punish disobedience of its own orders.  Such a sanction requires proof of "willful disobedience of a court order"—in other words, contempt.  Dkt. 991 at 58 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)).  But the Alliance runs away from the requirements of civil contempt.  The Alliance never comes forward with clear and convincing evidence that the City failed to substantially comply with any specific and definite court order and lacked an objectively reasonable basis for its actions.  And the Alliance seeks essentially *all* of its fees since April 2024 while making no attempt to identify "only the portion of [its] fees that [it] would not have paid but for the misconduct." *Id.* at 59 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017)).  Because the City did not do anything sanctionable, and because the Alliance cannot trace its fees to any misconduct in any event, the Alliance is entitled to no fees at all.

The Alliance evidently came to the same conclusion.  Instead of funneling its fee request through the requirements of this Court's inherent power (in accordance with the Court's directive), the Alliance seeks full-freight fees as a "prevailing party" under

Gibson, Dunn & Crutcher LLP

1

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

42 U.S.C. § 1988. That provision authorizes fee-shifting in a "proceeding to enforce a provision of," among other statutes, § 1983. 42 U.S.C. § 1988(b). But the Alliance did not prevail on its § 1983 claims and instead dismissed them with prejudice. And the Alliance incurred fees litigating the Settlement Agreement, not § 1983. As the Supreme Court has recently reaffirmed, a party that dismisses its § 1983 claims is not a prevailing party and cannot seek fees under § 1988. *Lackey v. Stinnie*, 145 S. Ct. 659, 667–70 (2025).

Even if this Court overlooks the Alliance's failure to apply the but-for causation test of *Goodyear*, the maximum permissible fee award would be much smaller. The only order that this Court has suggested the City willfully disobeyed is the encampment-reduction order from March 2025. The City respectfully disagrees that the law or facts could support a finding of civil contempt of that order. But even if one accepts that noncompliance with that March 2025 order could justify a sanctions award, the maximum award—excluding hours that predated the order or were on their face spent on other tasks—would be $98,413. Any award must compensate the Alliance only for actual expenses that it would not have incurred but for the supposed noncompliance with the encampment-reductions order, a test that forecloses any multiplier or future fees.

The Settlement Agreement does not authorize fees for its enforcement nor employ the Alliance's counsel to monitor compliance on the City's dime. And any taxpayer money that enriches the Alliance and its lawyers is money that is unavailable to spend on the people of Los Angeles, including those served by programs under the Settlement Agreement. The Court should deny the motion and award the Alliance zero fees.

## LEGAL STANDARD

Courts follow "'the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). When neither a statute nor contract authorizes fee-shifting, a court has a limited inherent power to "assess attorneys' fees for the 'willful disobedience of a court order'" or for litigation

Gibson, Dunn & Crutcher LLP

2

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

conduct undertaken "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975). Courts exercise these inherent powers "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

An award of fees for "willful disobedience of a court order" is a sanction for "civil contempt." *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967); *accord Chambers*, 501 U.S. at 45. Contempt requires proof that "(1) [the City] violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). "Although contempt and sanctions are not identical" in every way, the principles that govern contempt proceedings "guide [the] determination of what procedural protections are necessary in imposing sanctions under a court's inherent powers." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137 (9th Cir. 2001); *see, e.g., Armand Hammer Found., Inc. v. Hammer Int'l Found.*, 2023 WL 5916443, at *2 (C.D. Cal. Sept. 11, 2023) (applying requirements for civil contempt to request for fees under *Chambers*); *Patagonia, Inc. v. The 18A Chronicles LLC*, 2023 WL 3963787, at *3 (C.D. Cal. May 22, 2023) (same).

Even when a party proves willful disobedience of a court order under the standard applicable to civil contempt, that party is not entitled to shift all of its fees. The award must be compensatory, which means that a party "may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)); *see* Dkt. 991 at 59. A party seeking fees therefore must demonstrate whether a given fee "would or would not have been incurred in the absence of the sanctioned conduct." *Goodyear*, 581 U.S. at 110. If the fee "would have been incurred even absent" the misconduct, "it cannot be part of" an award. *Lu v. United States*, 921 F.3d 850, 860 (9th Cir. 2019).

# ARGUMENT

## I.    The Alliance's fee request falls outside this Court's inherent power.

This Court should decline to award any fees under *Chambers*.  The Alliance has not established that the City willfully disobeyed any court order at all, let alone under the procedural prerequisites for civil contempt, including proof by clear and convincing evidence, substantial noncompliance with a specific and definite court order, and the lack of an objectively reasonable basis.  In seeking all of its fees, the Alliance also has not attempted to prove what fees it would not have incurred but for the supposed sanctionable misconduct.  This Court contemplated that the Alliance would receive no fees unless it was "able to show how [it] ha[s] been harmed by the City's conduct and the resulting losses to them under the law."  Dkt. 991 at 59.  The Alliance has proved itself unable to face up to that task.  But even if the Court does the Alliance's work for it—going line by line through the Alliance's billing records—the law would allow, at most, a much more modest award for the time that the Alliance spent addressing the City's purported noncompliance with this Court's encampment-reduction order.

### A.    The Alliance has not met the *Chambers* requirements for a fee award.

The Alliance recognizes that *Chambers* authorizes a fee award as compensation for willful disobedience of a court order on a theory of "contempt."  Dkt. 1015 at 4.  But that is where its treatment of the governing framework stops.  Instead, the Alliance overlooks every requirement for such a contempt sanction and instead equates any purported breach of the Settlement Agreement with sanctionable contempt.  *Id.* at 4–5.  The Alliance is wrong to collapse the distinction between breach and sanctionable misconduct.  *See Miller v. City of Los Angeles*, 661 F.3d 1024, 1029 (9th Cir. 2011) (violation of court order not enough for fee award unless other conditions for invoking inherent power are present).  Even if one accepts for present purposes the four breaches adjudicated by this Court, the Alliance still hasn't proved that (1) clear and convincing evidence establishes noncompliance, (2) the City did not substantially comply with its obligations under the Agreement, and (3) any noncompliance was not based on a good-

Gibson, Dunn &
Crutcher LLP

4

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

faith and reasonable interpretation of the Agreement, as incorporated into this Court's order. *Dual-Deck*, 10 F.3d at 695. This is not the rare case that justifies contempt sanctions under this Court's inherent power on top of the contractual remedies this Court imposed to ensure ultimate compliance by the Agreement's deadlines.*

**1.     The Alliance ignores the need for clear and convincing evidence.**

This Court signaled a willingness to award fees as "a sanction for the City's noncompliance" with the Settlement Agreement. Dkt. 991 at 59. The Court had ancillary jurisdiction to enforce the Agreement because it was incorporated into this Court's order. *Kelly v. Wengler*, 822 F.3d 1085, 1095–96 (9th Cir. 2016). And an award of "attorney's fees as a sanction for the willful disobedience of a court order"—the order incorporating the Settlement Agreement—is a "punishment for contempt." *Chambers*, 501 U.S. at 45 (quotation marks omitted). As a result, this Court has inherent power to award the Alliance fees only if it finds "by clear and convincing evidence" that the City was in contempt of the Agreement. *Kelly*, 822 F.3d at 1096; *see Kelly v. Wengler*, 979 F. Supp. 2d 1104, 1108 (D. Idaho 2013) (citing *Battaglia v. United States*, 653 F.2d 419, 422 (9th Cir. 1981)).

This Court never purported to apply the heightened clear-and-convincing-evidence standard in its order resolving the Alliance's motions. *See generally* Dkt. 991.

---

\* *Chambers* also authorizes a fee award "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 501 U.S. at 45–46 (quotation marks omitted); *see* Dkt. 991 at 58. None of the City's conduct comes close to meeting that demanding standard. For that reason, the Alliance has invoked only the "willful disobedience" branch of this Court's inherent powers, Dkt. 1015 at 4–6, in contrast to Intervenors, which invoke only the bad-faith standard, Dkt. 1022 at 8–9. That they cannot agree on the basis for sanctions underscores that there is no basis for sanctions. Nor can the Alliance surface a new basis for a fee award in its reply. *See Brooke v. Ashna Inc.*, 2024 WL 3537861, at *5 (C.D. Cal. July 11, 2024) ("[A]rguments raised for the first time in a reply brief are waived." (quoting *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 852 (9th Cir. 2012)). In any event, the Ninth Circuit has suggested that the same protections may govern determinations of "bad faith," including that "the appropriate standard of proof is clear and convincing evidence." *F.J. Hanshaw*, 244 F.3d at 1143 n.11.

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

Gibson, Dunn & Crutcher LLP

Nor did the Alliance ever argue that it had proved noncompliance by clear and convincing evidence. *See generally* Dkt. 977, 984. To be sure, the Court could enforce the Settlement Agreement without applying a heightened standard of proof. The default rule for contract enforcement under California law is "proof by a preponderance of the evidence." Cal. Evid. Code § 115; *see, e.g., Weiner v. Fleischman*, 54 Cal. 3d 476, 483 (1991) (applying § 115 in contract action); *see also Cities Serv. Oil Co. v. Dunlap*, 308 U.S. 208, 210–12 (1939) (federal courts apply state-law standard of proof under *Erie* when deciding state-law claims). But this Court cannot go a step further and award attorneys' fees as a contempt sanction for any breach of the Settlement Agreement without a determination by clear and convincing evidence that any breach amounts to willful disobedience of a court order. Because the Alliance has shirked its burden to prove willful disobedience by clear and convincing evidence, the Court should deny its fee motion outright.

### 2.    The City substantially complied with the Settlement Agreement.

Even aside from the Alliance's disregard of the proper standard of proof, the record does not establish by clear and convincing evidence that the City was out of "substantial compliance" with the Settlement Agreement. *Dual-Deck*, 10 F.3d at 695. That standard requires the Alliance to prove clearly and convincingly that the City "violated a *specific and definite* order of the court." *Stone v. City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992) (emphasis added). None of the four purported breaches—reporting encampment reductions not linked to offers of shelter, not updating the bed plan, missing milestones, and reporting data that others had difficulty verifying—meets that high bar.

***Encampment-reduction order.*** This Court stated that the City willfully disobeyed its March 2025 order stating that encampment reductions must be accompanied by an offer of shelter because the City "failed to amend its prior reports to the Court" and did not change its reporting for "its April 15, 2025 quarterly status report." Dkt. 991 at 52. Although this Court signaled an intent to impose sanctions for

this issue, the timeline of events establishes the absence of a specific and definite order, an inability to comply retroactively, and substantial compliance within the realm of possibility.

In March 2025, this Court made only one specific and definite order: that the City could not count mere cleanups as reductions. The Court stated that "[t]he City may not report clean-ups from programs such as Care or Care+ as Reductions to prove compliance with the Settlement Agreement because they are not permanent in nature." Dkt. 874 at 2. The Court also added that "cleaning an area, only to have unhoused individuals move back in without offers of shelter or housing, is not a 'Resolution' or Encampment 'Reduction' and shall not be reported as such." *Id.* But the Court further indicated that it would decide the remainder of the issues after oral argument at the March 27 hearing. *Id.* During that hearing, the City argued that the Order granted relief the Alliance did not request in its motion and was contrary to the agreement reached between the City and the Alliance, and the Intervenors also argued there was no agreement the Court could enforce. Dkt. 878 at 109:5–119:20. The Court took the matter under submission, *id.* at 119:22–23, and did not enter a subsequent order before the evidentiary hearing. At that point, the City's reporting obligations remained a moving target.

The City did not disobey the March order, much less substantially. As this Court recognized, the City did not count "merely shifting encampments during cleanings under Care and Care+" but instead "the reduction numbers reported represent tents, makeshift shelters, and vehicles that are removed and taken into the City's custody." Dkt. 991 at 53–54. And the City could not report new numbers based on any undefined permanence standard in the March 2025 order, especially after this Court took the parties' dueling arguments under submission. So the Court's June 2025 order later offered multiple new clarifications: (1) that "each reduction must be accompanied by an offer of shelter or housing to the individual or individuals whose tent, makeshift shelter, or vehicle is removed"; (2) that "[i]ndividuals need not accept the offer" for the City to count a

Gibson, Dunn &
Crutcher LLP

7

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

reduction; (3) that the City can count reductions when "a tent, makeshift shelter, or vehicle is abandoned"; and (4) that the City need not "track whether the person offered shelter or housing remains housed indefinitely for the purposes of the Settlement Agreement." Dkt. 991 at 52. Until those clarifications, this Court's encampment-reduction interpretation was not specific and definite enough to support civil contempt.

Even if this Court's March 2025 order specifically and definitively ordered the City to report only reductions that involved offers of shelter (or abandoned property), the Alliance still is not entitled to a fee award because the City substantially complied with its obligations under the agreement—and the Alliance certainly did not prove otherwise by clear and convincing evidence. That quarterly report contained data that the City had collected from January 1, 2024, through March 31, 2025, Dkt. 892 at 1, a period that began more than a year and ended only seven days after this Court's March 2025 encampment-reduction order, Dkt. 874. At that point, the City of course could not travel back in time and collect data under this Court's newly announced interpretation of what qualifies as a reduction. This Court can't award fees on the theory that the April 2025 quarterly report should have reported only the subset of reductions that were accompanied by an offer of shelter, which would have been "factually impossible" for the City (particularly when, apart from the Inside Safe program, the City typically does not itself make the offer of shelter). *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

The question, then, is whether the City fell out of substantial compliance by reporting the data it had collected (all but a week's worth before the encampment-reduction order) rather than nothing. There was no deception. The City was upfront with the Court that its historical data did not necessarily reflect an offer of shelter. Dkt. 991 at 51. If this Court were to hold that the City should have reported nothing at all pending further guidance on this Court's interpretation and pending an opportunity to collect data in compliance with that interpretation, that would be the kind of "'technical violation[ ]'" that can't support civil contempt. *Dual-Deck*, 10 F.3d at 695.

Gibson, Dunn & Crutcher LLP

8

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

***Updated bed plan.***  The City also did not violate any specific and definite order to provide an updated bed plan.  The City provided an initial bed plan to the Alliance in November 2022.  Dkt. 863-4.  Although the Alliance argued that the City had breached the Settlement Agreement by not providing for all 12,915 shelter and housing solutions in the initial plan, this Court "agree[d] with the City that there may be multiple plans and they may be iterative."  Dkt. 991 at 42.  But the Settlement Agreement does not impose any expiration date on the initial plan or any deadline for an updated one.  Dkt. 429-1 § 5.2.  While this Court has ordered the City to provide an updated plan by October 3, 2025, the City did not violate any specific and definite order by failing to provide an updated bed plan before the Court issued its post-hearing order on June 24, 2025.

***Shelter and housing milestones.***  The City also substantially complied with its milestones for shelter and housing solutions.  In its order, this Court appeared to hold that missing milestones is a breach of the Settlement Agreement.  Dkt. 991 at 44.  The City reiterates and preserves its position that the Agreement requires only that the City use "best efforts" to hit "milestones"—a standard that contemplates that milestones *could* be missed.  Dkt. 429-1 § 5.2; *see* Dkt. 983 at 21–27.  But even if one accepts the premise that the City breached the Agreement merely by missing milestones, the City substantially complied with the milestones.  The City has consistently reduced the milestone deficit as it has opened permanent supportive housing with great effort and continued to invest in interim options, leading to only a 1% deficit in the last quarterly report before this Court's order.  Dkt. 991 at 43–44.  That is substantial compliance by any measure.

***Data reporting and verification.***  The City did not violate any specific and definite court order related to data reporting and verification.  This Court asserted that "it is extremely difficult, if not impossible, to verify the housing and shelter solutions that are reported by the City to meet its obligations."  Dkt. 991 at 48.  Although the Court collected criticisms from Special Master Martinez and A&M about their ease of

Gibson, Dunn &
Crutcher LLP

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

understanding the complex data that the City collects and sorts, the Court did not identify any court order that the City could have disobeyed.  The Court instead proactively appointed a monitor under § 7.2, Dkt. 991 at 49–50, which contemplates that the parties would "engage a mutually agreed-upon third party to provide data collection, analysis, comments, and regular public reports on the City's compliance with the terms of this Agreement," Dkt. 429-1 § 7.2.  Whatever the basis for forward-looking application of § 7.2, the City did not willfully disobey any specific and definite court order in its data reporting and verification.

### 3. Any substantial noncompliance was based on the City's good-faith and reasonable interpretation of the Settlement Agreement.

Even if the City did not substantially comply with a specific and definite court order, sanctions still are inappropriate unless the City "'acted deliberately'" in disobeying such an order. *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).  The Alliance cannot show willfulness by clear and convincing evidence. For each purported breach, the City had an objectively reasonable (and subjectively good-faith) justification for its conduct. *See Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (noting that standard is typically objective except for the bad-faith standard that the Alliance has not invoked here).

***Encampment-reduction order.***  There was "fair ground of doubt" whether City disobeyed this Court's March 2025 encampment-reduction order by reporting data in April that it had collected before the order's date. *Taggart*, 587 U.S. at 562.  Any noncompliance was based on the City's good-faith, reasonable, and textually faithful interpretation.  This Court did not detail exactly what the City could not report, other than mere cleanups. *See supra*, at 7.  This Court also only partially ruled on the Alliance's motions for settlement compliance, which remained outstanding, were taken under submission, and would be decided on a more robust record.  Dkt. 874 at 2; Dkt. 878 at 119:22–23.  The City reasonably believed that it would be able to defend its interpretation on that record and that it did not have to shift reporting midstream while

the motions were pending.  Dkt. 983 at 30.  And there is no evidence that the City deliberately disobeyed a court order by choosing to report encampment reductions in April 2025 rather than report nothing at all.  *See supra*, at 8.

This Court's ruling on § 8.2 further confirms that the City did not willfully disobey this Court's encampment-reduction order.  The Court "defer[red] to the City's position that the Agreement's obligations [under §§ 3–5] are currently paused under Section 8.2 because of the state of emergency declaration" put in place during the January 2025 wildfires.  Dkt. 991 at 55.  If the City's obligations were paused, then the City necessarily had an objectively reasonable (and subjectively good-faith) basis not to change how it was reporting encampment reductions under § 5.2 during the period of pause.  No one could reasonably think that the obligations were paused under § 8.2 and (at the same time) a contempt landmine waiting to explode once this Court finished adjudicating the Alliance's motions for settlement compliance.

***Updated bed plan.***  The City did not willfully disobey any court order to provide an updated bed plan.  The Court "agree[d] with the City that there may be multiple plans," did not identify any fixed deadline in the Agreement for producing an updated plan, and ordered an updated plan by October 3, 2025, as a prophylactic measure to address the perceived "risk that the City will not sufficiently plan to fund the beds." Dkt. 991 at 42.  In doing so, the Court did not identify any deliberate action by the City to flout any court order.  And the § 8.2 pause equally demonstrates here that the City did not willfully disobey any obligation to provide a bed plan.  *Id.* at 55.

***Shelter and housing milestones.***  The City did not deliberately choose to fall short of milestones.  This Court never suggested otherwise.  Dkt. 991 at 42–45.  To the contrary, the Court rejected the Alliance's argument "that the City has incorrectly prioritized investment in permanent supportive housing" over cheaper and quicker alternatives.  *Id.* at 42.  Holding the City in contempt later on the theory that the City *willfully* missed milestones because of policy decisions to invest in permanent supportive housing would be a direct assault on the Settlement Agreement's preservation

of the City's "sole discretion" to choose any shelter or housing solution. Dkt. 429 § 3.2. And again, the § 8.2 pause also establishes that the City could not have been willfully disobeying its obligation to use best efforts to meet milestones at the time of this Court's order. Dkt. 991 at 55.

***Data reporting and verification.*** The City did not willfully hamstring third parties' ability to verify its data. "Elementary notions of fairness" under the Due Process Clause require that a "person receive fair notice" of "the conduct that will subject him to punishment." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996); *see Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) (holding that district courts cannot impose sanctions under inherent power without "fair notice"). No order regarding data reporting or verification could have put the City on notice that there was no "'fair ground of doubt as to the wrongfulness of [its] conduct.'" *Taggart*, 587 U.S. at 561 (emphasis omitted). The City even paid millions of dollars to A&M for the assessment that noted difficulty in procuring data from Los Angeles Homeless Services Authority (LAHSA). And when ordered by this Court to procure data from LAHSA, the City exerted great effort on a short timeframe both to persuade LAHSA to share data that it had previously withheld and to verify the data. Dkt. 980 ¶¶ 2–5. That is the opposite of willful disobedience.

Imposing contempt sanctions on the City for this supposed breach also would be an impermissible form of collective punishment. As reflected in the testimony at the hearing and in this Court's orders, the verification issues largely (if not entirely) concerned data in the possession of LAHSA. Dkt. 991 at 48–49; *see id.* at 11–22, 25–26. This Court cannot hold the City in contempt on the theory that LAHSA, a separate legal entity, withheld data that A&M wanted to verify. Dkt. 983 at 44. Because LAHSA is not a party, holding the City in contempt for LAHSA's conduct would deprive the City of its due-process right to "'an opportunity to present every available defense.'" *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007). That is why the *City's* conduct must be "willful." *Chambers*, 501 U.S. at 45 (citation omitted).

\*    \*    \*

The Alliance wants "[c]ontempt [s]anctions" but doesn't want to follow contempt rules. Dkt. 1015 at 4. The Alliance has not proved—and cannot prove—by clear and convincing evidence that the City willfully disobeyed a specific and definite court order. The Court should deny the Alliance's motion for attorneys' fees in full because of its failure to establish any basis for awarding them as a contempt sanction.

**B.      The Alliance has not carried its burden to prove what costs it would not have incurred but for the purported breaches.**

This Court already outlined the but-for standard that governs the Alliance's request for fees under *Chambers*. Dkt. 991 at 58–59. The Court can impose a civil sanction under its "'inherent powers'" only to compensate a "wronged party 'for losses sustained'" and "may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear*, 581 U.S. at 108. The Alliance thus bears the burden of showing that it has requested only fees that were "incurred *because of* the misconduct at issue." *Id.* (italics added). In all cases, this but-for causation standard requires the moving party to identify "whether a given legal fee" "would or would not have been incurred in the absence of the sanctioned conduct." *Id.* at 110. A court may "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop" only in "exceptional cases" that meet the but-for test, such as when a party's "'entire course of conduct throughout the lawsuit'" was sanctionable or when misconduct caused all fees after a set date. *Id.* at 110–11 (quoting *Chambers*, 501 U.S. at 50).

The Alliance doesn't attempt to trace the fees it seeks to any of the four breaches that this Court adjudicated. It hasn't, for instance, demonstrated that any of the line items within its dozens of pages of billing records would not have been incurred but for the City's purported noncompliance with the encampment reduction order, identified any fees it would have avoided had the City provided an updated bed plan, linked any fees to missed housing and shelter milestones, or explained which fees are solely attributable to purported shortcomings in data reporting and verification. Nor does the

Alliance ever argue that this case is an "exceptional" one that allowed it to dispense with "the grind of segregating individual expense items" under the theory that all its fees since May 2024 "would not have been incurred except for [any] misconduct." *Goodyear*, 581 U.S. at 111. The Alliance merely asserts—without substantiating in any way—that supposedly sanctionable conduct "is a but-for cause of the fees and expenses" that it seeks. Dkt. 1015 at 6. This disregard of the *Goodyear* but-for standard is remarkable, especially considering that the Court expressly directed the Alliance to "track the compensation to the wrong and the loss resulting from that wrong." Dkt. 991 at 59.

Rather than identify specific losses and explain how those losses were caused by any sanctionable misconduct, the Alliance submits what appears to be a comprehensive list of all time entries related to the Settlement Agreement since May 1, 2024, more than ten months *before* the Court issued the only order that the City could have even conceivably disobeyed willfully. Dkt. 1015-1 ¶ 19; *see* Dkt. 991 at 59 (suggesting that disobedience of the Court's March 24, 2025 encampment-reductions order could be sanctionable conduct). That is the precise "temporal approach rejected in *Goodyear*." *Lu*, 921 F.3d at 862. The Alliance's counsel in fact admits to ignoring the *Goodyear* but-for standard, stating that he removed only "any billing unrelated to monitoring or litigating the City's compliance with the Settlement Agreement," Dkt. 1015 ¶ 20, even though a breach alone could not authorize contempt sanctions, and even though the Alliance spent large amounts of time trying to prove breaches that this Court rejected, litigating subpoenas they withdrew, and seeking extraordinary remedies like receivership that this Court rejected. The Alliance's records also include block billing, making it "difficult to determine how much time was spent on particular activities" caused by sanctionable conduct. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). And there are numerous entries so heavily redacted that it's impossible for either the Court or the City to decipher what work was performed. *Cf. Gilead Sciences, Inc. v. Merck & Co., Inc.*, 2017 WL 3007071, at *9 (N.D. Cal. July 14, 2017) (awarding fees for redacted entries so long as they "provide[d] sufficient information for

[the defendant] to assess their reasonableness"). In short, the Alliance flouts this Court's clear instruction "to establish a causal link—between the litigant's misbehavior and legal fees paid by the opposing party." *Goodyear*, 581 U.S. at 108. The Alliance should not be rewarded for its failure even to attempt to carry its burden.

The Alliance can't claim to be blindsided by the very standard the Court invited it to brief. Dkt. 991 at 58. Instead, it appears the Alliance was unwilling (or unable) to do what the Court requested: explain what fees would not have been incurred but for the City's supposed misconduct. The Alliance cannot shirk its "obligation to disentangle" the fees caused by supposed willful disobedience "from those fees that would have been incurred anyway." *Vieira v. County of Sacramento*, 2020 WL 3343988, at *2 (N.D. Cal. June 19, 2020). Even if the Alliance "found the task prohibitively difficult," "that is no reason to overlook the law's demands." *Id.* This Court should deny the Alliance's motion outright because of its disregard to follow the but-for standard that it directed the Alliance to brief.

> **C.    Under the proper but-for standard, the Alliance cannot inflate its hours and rates, request a multiplier, or seek future fees.**

If the Court is nevertheless inclined to award fees under *Chambers*, the Alliance's requested figure flouts multiple limitations of the exacting causation requirement from *Goodyear*. The Court expressly identified only one supposed instance of sanctionable misconduct: "disobeying the Court's order on encampment reductions." Dkt. 991 at 59. The City reiterates its position that it did not willfully disobey this Court's encampment-reduction order. But even on the premise that *Chambers* would allow a targeted compensatory award for disobedience of the encampment-reduction order, any award of fees should be strictly limited to fees that the Alliance would not have incurred but for the City's supposed disobedience of that order. Any such compensatory award would be calculated for a substantially reduced number of hours and at rates far below what the Alliance requests. The Alliance's requests for a multiplier and future fees are also fundamentally incompatible with the *Chambers* framework. And those same rules

should apply to any award of fees to the Alliance's executive director, Paul Webster.

### 1. The Alliance's billing records include hours of unrelated entries.

An award of fees to sanction the City for its supposed noncompliance with the March 24, 2025 encampment order would necessarily eliminate any entries dated before that order was issued. The Alliance also cannot recover for entries attributable to unrelated issues, like work related to its unsuccessful bid for a court-appointed receiver or its failed attempt to enforce subpoenas of apex witnesses. Nor should the award include entries so heavily redacted that the City and Court cannot assess their relationship to the encampment order. *See Gilead Sciences*, 2017 WL 3007071, at *9. And the Alliance seeks fees for the time spent preparing its fee motion even though "[o]nly the direct costs" of responding to sanctionable conduct, "and not fees-on-fees, may be included in an award under the court's inherent power." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 630 (9th Cir. 2017) (citing *In re Southern Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 466–67 (9th Cir. 2010)). Removing those entries from the Alliance's billing records nets 678.2 hours (including 431.3 attorney hours and 246.9 hours billed by legal staff) that could even conceivably be related to the City's compliance with this Court's March 2025 encampment-reduction order. *See* Hamburger Decl., Ex. A at 19.

Even then, the Alliance still would have incurred most of the remaining hours "without the [City's purported] misconduct." *Goodyear*, 581 U.S. at 108. The issues litigated in this case since March 24, 2025, have been numerous and diverse. The evidentiary hearing lasted seven days, with only a fraction of that time devoted to issues involving the City's reporting of encampment reductions. The Alliance's arguments and the Court's order provide a sense of the relative importance of the encampment issue. The transcript of the Alliance's closing argument spanned 27 pages, and only roughly 3.5 pages (13%) discuss encampment-reductions reporting. Dkt. 976 at 204–07. In its post-hearing brief, the Alliance devoted only 3 of 25 pages—roughly 12%—to the encampment-reduction provision. Dkt. 984 at 10–13. And the Court's post-hearing

Gibson, Dunn &
Crutcher LLP

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

order dedicates just 4 out of 62 pages (6.5%) to this topic.  Dkt. 991 at 51–54.

The Ninth Circuit has recognized that "across-the-board percentage cuts" in the "number of hours claimed" can be "'a practical means of trimming the fat from a fee application.'"  *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).  Here, a sensible benchmark would be that roughly 25% of the Alliance's hours incurred after March 24 in entries generally related to the Settlement Agreement were devoted to the reporting of encampment reductions.  This benchmark almost certainly exceeds the share of hours billed that were related to that issue but would adequately track this Court's determination that encampment-reduction reporting was one of four breaches, at least once all entries related to issues on which the Alliance lost are removed.  Accordingly, the number of compensable hours would at most be 169.5 hours (107.8 attorney hours and 61.7 legal staff hours).

**2.  The Alliance's lawyers should be compensated only at their actual hourly rates.**

Under *Chambers*, the Alliance also could recover only the rates that its lawyers *actually* charge—which is the measure of the real-world harm.  Counsel represents that partner rates at its firm, UMK, range between $700 and $1,450 per hour.  Dkt. 1015 at 9; Dkt. 1015-1 ¶ 15.  But in December 2024, UMK sought attorneys' fees at a rate of $700 per hour for partner Matthew Umhofer and rates ranging from $275 to $650 per hour for other attorneys at his firm.  Hamburger Decl., Ex. C at 41; *see Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 n.1 (9th Cir. 2020) (contents of court filings are subject to judicial notice).  The Alliance does not submit anything documenting that their rates for partners almost doubled in seven months—and submits nothing documenting the rates for the hours by counsel and associates in their fee application.  And this is one of UMK's "legacy matters" if there ever were one.  Dkt. 1015-1 ¶ 15.  Assuming an attorney rate of $700 per hour, a compensatory award for fees incurred because of any noncompliance with the encampment order would be $98,413 (including $75,460 for attorney work and $22,953 billed by legal staff).  *See* Hamburger Decl., Ex. A at 19.

The Alliance openly seeks more than its "loss resulting from [the City's] wrong." *Goodyear*, 581 U.S. at 108. In its view, the City should pay the Alliance the same rate that the City pays its outside counsel in this case. Dkt. 1015 at 8. The Court should reject that argument as the public-relations gimmick that it is. Because the Alliance has expressly tied its fee request to something other than the actual harm to itself and its attorneys, the Alliance makes plain that it does not seek a compensatory award.

Nor can the Alliance ignore the *Chambers* framework in favor of the fee-shifting model. Unlike "a standard fee-shifting statute providing 'reasonable attorneys' fees,'" the "purpose of sanctions is not to reward lawyers for the value of their work." *Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139, 145 (4th Cir. 2024). The focus under *Chambers* is not reasonableness—the touchstone in a typical fees application—but instead "making the victim whole." *Id.* Within that framework, any sanction imposed on the City "may go no further than to redress the wronged party 'for losses sustained' and may not impose any additional consequence as punishment for the sanctioned party's behavior." *America Unites for Kids*, 985 F.3d at 1089. A compensatory award, then, must be limited to "'only the portion of fees that [the Alliance] would not have paid but for' the misconduct." *Goodyear*, 581 U.S. at 109. For that reason, any award should be calculated using the rates UMK actually would have charged the Alliance. Anything more would not be "'calibrate[d] to [the] damages caused by'" the sanctionable misconduct. *Id.* at 108.

The Alliance is also entitled to far less than it seeks even under its requested rates. Such an award could not exceed $162,586: the total for hours attributable to the City's supposed noncompliance with the encampment reduction order calculated at the Alliance's requested rates. *See* Hamburger Decl., Ex. A at 19.

**3.      A multiplier is categorically unavailable under *Chambers*.**

In addition to seeking a rate nearly double what it sought in a fee application filed just months ago, the Alliance's counsel asks the Court to impose a 2.5 multiplier on fees calculated at those rates. The Alliance, in other words, seeks almost five times more per

hour than the rates it sought just last December.  As with its request for an inflated hourly rate, a multiplier would go "further than to redress the [Alliance] 'for losses sustained'" and would amount to an impermissible "additional amount as punishment for" the City's supposed noncompliance.  *Goodyear*, 581 U.S. at 108.  The Alliance's punitive request for a multiplier on fees awarded as a sanction under *Chambers* is incompatible with the but-for causation standard of *Goodyear*.

### 4.     Future fees are also unavailable under *Chambers*.

The Alliance also makes the extraordinary request for "prospective attorneys' fees."  Dkt. 1015 at 19–21.  That request likewise has no grounding in the but-for causation standard of *Chambers*.  Again, this Court has inherent power only to award fees that "would not have been incurred except for the misconduct."  *Goodyear*, 581 U.S. at 111.  The Alliance never explains how any future costs could have been caused by past noncompliance with the Settlement Agreement that this Court adjudicated in June.  Needless to say, a court cannot sanction a party based on a prediction of hypothetical future contempt.  *Cf. Minority Report* (2002).

### 5.     The same principles limit any award to Paul Webster.

Any fees awarded to the Alliance's executive director should be similarly circumscribed and eliminate any cost that is not a "but for" cause of its supposed misconduct.  *Goodyear*, 581 U.S. at 108.  To begin, the Alliance does not represent that it paid out of pocket for Webster's time working on this matter.  And Webster, as a client representative, cannot seek an award "as salary for time spent as a witness in his own litigation" as opposed to "reimbursing [him] for his out-of-pocket costs."  *Kooritzky v. Herman*, 178 F.3d 1315, 1322 (D.C. Cir. 1999); *see also Manion v. Am. Airlines, Inc.*, 395 F.3d 428, 432 (D.C. Cir. 2004) (party's "time in attending court proceedings" was not reimbursable to compensate for vexatious litigation).

If the Court is inclined to award fees to Mr. Webster, it should award only fees incurred after the March 24, 2025 order was issued, and only a percentage of those fees.  Webster's time entries claim hours supposedly worth $11,600 between March 24, 2025,

and May 30, 2025.  *See* Hamburger Decl., Ex. B.  Applying the same 25% benchmark for the relative time likely spent on the encampment-reduction issue would yield a maximum sanction of $2,900 to reimburse the Alliance for the time that Webster spent.

## II. Section 1988 does not authorize fee-shifting here.

This Court suggested that a limited fee award could be appropriate as a sanction under the Court's "'inherent powers'" if the Alliance is "able to show how [it] ha[s] been harmed by the City's conduct and the resulting losses."  Dkt. 991 at 58–59.  But instead of attempting to prove the costs that it would not have incurred but for sanctionable noncompliance with a court order, the Alliance leads with an entirely different theory supporting its request for all its fees—with multipliers and future fees, no less—under 42 U.S.C. § 1988.  Dkt. 1015 at 2–4.  Section 1988 does not save the Alliance from its inability to meet its burden to prove recoverable harms under this Court's inherent powers.  The Alliance neither prevailed on its dismissed § 1983 claims nor incurred any fees enforcing § 1983—only the Settlement Agreement.  And the Alliance's request far outstrips a reasonable fee award under § 1988 anyway.

### A. The Alliance did not prevail on its § 1983 claims and incurred fees litigating a settlement agreement, not § 1983.

Congress has authorized fee-shifting in "any action or proceeding to enforce a provision of" a series of civil-rights statutes, including § 1983.  42 U.S.C. § 1988(b).  District courts have discretion to award fees only to "prevailing part[ies]" in such actions to enforce § 1983.  *Id.*  And a party is prevailing only when, "'at the end of the suit, or other proceeding, the party who has made a claim against the other, has successfully maintained it.'"  *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025).  So even if the plaintiff gets much or all of what it hoped from filing an action (for example, because a legislature repealed the challenged law), the plaintiff is not a prevailing party when it "stipulate[s] to dismissal" of its § 1983 claim.  *Id.* at 665.  Section 1988 requires more than just a "favorable resolution of a *dispute*"—"success on a *claim* in a legal *action*."  *Id.* at 670.

Section 1988 does not apply to any fees that the Alliance incurred in relation to

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

the parties' Settlement Agreement for the simple reason that the Alliance was not the "prevailing party" on any § 1983 claim. 42 U.S.C. § 1988(b). In its amended complaint, the Alliance asserted four of its 13 claims under § 1983 and invoked the Due Process, Equal Protection, and Takings Clauses. Dkt. 361 ¶¶ 211–26. But the Alliance stipulated that its claims against the City were "hereby dismissed with prejudice as to the City" at the time of the parties' settlement. Dkt. 429-1 at 3; *see* Dkt. 445 (order dismissing Alliance's claims with prejudice). At risk of stating the obvious: Dismissing one's § 1983 claims with prejudice is the *opposite* of prevailing on the claims. *Lackey*, 145 S. Ct. at 665, 670. Given that dismissal, the Alliance can't invoke § 1988.

In addition to not prevailing on its § 1983 claims, the Alliance also did not incur fees at issue here in any "proceeding to enforce a provision of" § 1983. 42 U.S.C. § 1988(b). The post-dismissal proceeding that culminated in an evidentiary hearing and this Court's post-hearing order was to enforce provisions of the parties' Settlement Agreement, a question that this Court resolved under California law. Dkt. 991 at 29 (citing Dkt. 429-1 § 23). While the Alliance might be a prevailing party (albeit only in part) in its action to enforce the Agreement, it did not prevail in enforcing § 1983—or even attempt to do so. The statute that governs fee-shifting for such actions to enforce contracts is not § 1988, but California Civil Code § 1717, which shifts fees only "where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded . . . to the prevailing party." Cal. Civ. Code § 1717(a). Because the Agreement does not provide for attorneys' fees in enforcement actions, the only applicable fee-shifting statute forecloses the Alliance's motion. Dkt. 429-1 § 15; *see* Dkt. 983 at 49; *cf. Parsons v. Ryan*, 949 F.3d 443, 459–60, 467 (9th Cir. 2020) (allowing fees for enforcing settlement that expressly authorized fee-shifting under the rules applicable to § 1988); *Kelly v. Wengler*, 979 F. Supp. 2d 1104, 1117 (D. Idaho 2013) (same).

The Alliance relies exclusively on cases involving fee awards under § 1988 to plaintiffs who successfully compelled compliance with consent decrees. Dkt. 1015 at

Gibson, Dunn & Crutcher LLP

21

2–3.  But those cases only demonstrate why § 1988 doesn't apply here.  Section 1988 dictates that, "[t]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the *merits* of his claim."  *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (emphasis added).  A consent decree meets that test because it is "'subject to the rules generally applicable to other judgments and decrees'" and "must further the objectives of the law upon which the complaint was based."  *Frew v. Hawkins*, 540 U.S. 431, 437 (2004).  Because a consent decree is a judgment for the plaintiff, the Supreme Court and the Ninth Circuit have held that plaintiffs who win consent decrees that further the aims of § 1983 can seek fees under § 1988 even though the defendant consented to entry of judgment against itself.  *Maher v. Gagne*, 448 U.S. 122, 129 (1980); *Keith v. Volpe*, 833 F.2d 850, 855 (9th Cir. 1987).  But while a consent decree is a judgment entered in the plaintiff's favor, a dismissal with prejudice (even when paired with a settlement agreement) is entered in the defendant's favor.  That is the very distinction that § 1988's reference to "prevailing party" status makes dispositive.

The Supreme Court's recent decision in *Lackey* confirms that the theory underlying § 1988 fee awards for consent decrees does not authorize fee-shifting in this case.  *Lackey* reiterated that a "court-ordered consent decree" can qualify under § 1988 because "[i]t *conclusively resolves the claim* [under § 1983], bears a judicial *imprimatur*, and may grant enduring relief that materially alters the legal relationship between the parties."  145 S. Ct. at 671 (first emphasis added).  Applying that test, the Court has "only awarded attorney's fees where the plaintiff has received a judgment on the merits or obtained a court-ordered consent decree."  *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources*, 532 U.S. 598, 605 (2001)).  That list doesn't include dismissals of § 1983 claims as a part of a settlement agreement.  Such a dismissal doesn't conclusively resolve the claim—and certainly not in the *plaintiff's* favor.  *See supra*, at 21.  The Alliance's attempt to expand § 1988 to dismissals paired with settlement agreements defies *Lackey*, which has reinforced the textual limits on fee-shifting under § 1988.

Gibson, Dunn & Crutcher LLP

22

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

In short, this Court already bypassed statutory fee-shifting for a reason: Section 1988 doesn't apply here. The Alliance may not like the limits on this Court's inherent power. But the Alliance can't escape them through § 1988 after dismissing its § 1983 claims with prejudice.

**B.    Section 1988 does not support the Alliance's fee request in any event.**

The Alliance also doesn't even abide by the limitations that would govern any award of fees under § 1988. This Court has no cause to reach the issue because its inherent power is the only potential basis for a fee award. But to avoid any doubt, the City points out that many of the Alliance's shortcomings under *Chambers* also permeate its misdirected § 1988 request.

The Alliance seeks fees for many hours that fall outside any proper lodestar method. Section 1988 does not allow a plaintiff to recover a fee "for services on [an] unsuccessful claim." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This standard can be more forgiving for the party seeking fees than the but-for causation standard that applies to this Court's inherent power. *See supra*, at 13. A prevailing plaintiff is entitled to "fees that the plaintiff reasonably incurred in remedying a breach of his civil rights," even if he can't show that he incurred those fees litigating *only* a successful claim. *Fox*, 563 U.S. at 834; *see id.* at 836 (adopting a stricter "but-for test" when defendants seek fees under § 1988); *see also Goodyear*, 581 U.S. at 109 (adopting same stricter but-for test under *Chambers*). But even under the looser standard applicable to prevailing plaintiffs under § 1988, a substantial portion of the entries on their face bear "no relation to the grant of relief" by this Court. *Fox*, 563 U.S. at 834. The Alliance indiscriminately included time entries spent on tasks where the *City* was the prevailing party, including its withdrawn subpoenas to Mayor Bass and Councilmembers Rodriguez and Park, its rejected request for a receivership, and its failed claims that the City had breached the Roadmap agreement with the County. *See supra*, at 16. The Alliance also block-billed numerous time entries, which justifies "reducing or eliminating [such] claimed hours." *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008).

Gibson, Dunn & Crutcher LLP

Unlike under this Court's inherent power, a multiplier can be appropriate under § 1988 in "'rare'" cases. *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *see, e.g.*, *Kelly*, 822 F.3d at 1102. Such cases are rare because there is a "'strong'" presumption that the lodestar method produces "a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue*, 559 U.S. at 552. The Alliance hasn't overcome that strong presumption here for *any* multiplier, much less an astronomical 2.5 multiplier. Because its attorneys (partners, counsel, and associates) are seeking an *overvalued* $1,295 base rate above the $700 hourly partner rate they sought last December (and still above the unsubstantiated "standard" $1,250 hourly rate they now claim for partners), a multiplier wouldn't have been necessary to induce them to accept representation in this case. Dkt. 1015 at 8–9; *cf. Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1083–84 (D. Idaho 2014) (multiplying $435/hour rate by 2 and $300/hour rate by 1.3 because the "PLRA-mandated hourly rate is too low to attract competent counsel"), *aff'd*, 822 F.3d at 1104 (affirming based on "inadequacy of the unenhanced PLRA rate"). This Court also cannot enhance fees "based on a factor that is subsumed in the lodestar calculation," and the Alliance already included the "novelty and complexity of [the] case" as factors supporting the base rate. *Perdue*, 559 U.S. at 553; *see* Dkt. 1015 at 8 (defending requested base rate as "appropriate for complex civil litigation in this district"); *id.* at 14–19 (double-counting same considerations in multiplier request); *see also Myles v. County of San Diego*, 2025 WL 1367186, at *5 (9th Cir. May 12, 2025) ("risk is already built into the attorneys' rates"). And it bears remembering that "Section 1988's aim is to enforce the covered civil rights statutes, not to provide 'a form of economic relief to improve the financial lot of attorneys'"— especially not lawyers who claim to charge $1,250/hour and litigate proceedings that don't even involve the enforcement of any civil-rights statute. *Perdue*, 559 U.S. at 552.

Like under this Court's inherent power, the Alliance's request for "future fees" is a major overreach under § 1988. The Alliance leads with a case where a district court compensated class counsel from a settlement fund for future work administering the

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

Gibson, Dunn & Crutcher LLP

settlement for absent class members—that is, the class members were paying for their *own* lawyers in advance. *Lindy Bros. Builders, Inc. of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 121 (3d Cir. 1976). So *Lindy* did not involve fee-shifting at all and does not support the notion that courts can order defendants to fund their adversaries' attempts to manufacture future disputes. The other cases cited by the Alliance all involved fee awards for past—not future—monitoring of consent decrees entered to resolve § 1983 claims. *Alliance to End Repression v. City of Chicago*, 1994 WL 86690, at *4 (N.D. Ill. Mar. 15, 1994) (1994 award for past monitoring in 1991 and 1992); *Keith*, 833 F.3d at 853 (1985 award for "services rendered between 1982 and 1984"); *Brewster v. Dukakis*, 786 F.2d 16, 17 (1st Cir. 1986) (1985 award that "covered the period from January 1, 1982 through June 30, 1984"). The Alliance can't assume that it will be able to prove any hypothetical future breaches, particularly when the Court rejected most of the Alliance's contentions in its post-hearing order. Dkt. 991 at 39 (no breach of MOU with County); *id.* at 42 (no breach from City's policy decision to prioritize "permanent supportive housing"); *id.* at 46–48 (Inside Safe beds properly count); *id.* at 54–56 (§ 8.2 paused City's obligation under Settlement Agreement); *id.* at 59–61 (no receivership). Although the Alliance could have tried to negotiate for a future stream of cash to fill its coffers, the Alliance and the City instead agreed that they "shall bear their own fees and costs in this Action" except as provided in the Settlement Agreement. Dkt. 429-1 at 3; *see id.* § 15 (not authorizing fee-shifting for enforcement of Agreement). The Alliance can't rewrite the bargain it struck with the City after the fact.

## CONCLUSION

The Court should deny the Alliance's motion for attorneys' fees. In the event that the Court awards any fees, the amount should be no more than $98,413.

Gibson, Dunn &
Crutcher LLP

25

OPPOSITION TO LA ALLIANCE'S MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

DATED: August 15, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: */s/ Theane Evangelis*
Theane Evangelis

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS McRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*