Gregory Edward Gray
Pro Se
3183 Wilshire Boulevard
Ste. 196K26
Los Angeles, CA 90010
gegcbg@outlook.com



FILED

CLERK, U.S. DISTRICT COURT

8/26/25

CENTRAL DISTRICT OF CALIFORNIA

BY_____CS_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

LA ALLIANCE FOR HUMAN
RIGHTS, et al.

CITY OF LOS ANGELES, et al.

Case No. 2:20-cv-02291-DOC-KES

vs

**MOTION FOR PERMISSION TO REQUEST OF THE COURT TO REQUIRE THE CITY OF LOS ANGELES, ET AL TO ENSURE CORRECTION OF HOUSING DATA AND PROGRAM SERVICES TO MEET HUD FEDERAL GUIDELINES**

## I.     INTRODUCTION

COMES NOW, Gregory Edward Gray and hereby makes a request to the Court for permission to file this Motion asking the Court to require the City of Los Angeles, Housing Authority of the City of Los Angeles, aka HACLA, Los Angeles Homeless Services Authority, aka LAHSA and all relevant federally-funded service providers to correct errors in the content, quality and execution of housing

program documentation and program services relating to Mr. Gray and his household.  Mr. Gray asks the Court for permission to file this Motion because he is not a party to the above-named case.

## II.  STATEMENT OF FACTS

Gregory Edward Gray is a resident of Los Angeles, California, a post-stroke/heart patient and diabetic under the care of physicians at UCLA Health. Among Plaintiff's chief complaints is the falsification of Plaintiff's HMIS data file by HUD-funded agencies under the umbrella of the INSIDE SAFE INITIATIVE, the signature housing program launched by Los Angeles Mayor Karen Bass. The Plaintiff's HMIS data, which must be HUD compliant, is at the core of the issues detailed in this motion and part of what Plaintiff believes is a broader effort to erase a record of facts contained in more than 500 pages of documentation that Plaintiff submitted to the Court during a January 7, 2025, hearing on a court-ordered performance audit of key housing programs funded and operated by the City of Los Angeles, including the INSIDE SAFE INITIATIVE.[1]

The HMIS data is important enough to be recognized by the Court as a key component of accuracy and accountability for all HUD-funded housing programs

_____
1)  Reference to Documentation forwarded to Special Master Michele Martinez via Docu-Sign, Google Docs and email on January 10, 2025, January 16, 2025. Additional documents provided via email on February 14, 2024 & March 13, 2025.

that were part of the Court's performance audit. The fact that Plaintiff's HMIS data has not been corrected since Plaintiff first reported it nearly three years ago is a violation of Plaintiff's rights as defined by HUD guidelines and applicable law. As a result, Plaintiff remains in a state of literal captivity because Plaintiff's HMIS data is grossly compromised.

Plaintiff reported his concerns to the regional office of HUD beginning in January 2023. There was no investigation. The matters Plaintiff reported to HUD were left unchecked and allowed to fester which resulted in Plaintiff having to seek legal counsel to avert being exited from the very HUD-funded programs that were supposed to be working to assist Plaintiff. Within four to five days of receiving a February 27, 2023[2], letter from HUD, the same HUD-funded agencies (LAHSA and PATH) that disrupted Plaintiff's housing navigation started their adverse actions all over again. Plaintiff again reported these events to HUD in April 2023. The same violations reported to HUD continued throughout 2023, 2024, and throughout 2025 to the present, August 2025. Absent the correction of Plaintiff's HMIS data, no other data can be considered fully reliable, including data from the Housing Authority of the City of Los Angeles aka HACLA, such as the recertification document package Plaintiff received from HACLA on July 25,

---

2) HUD Letter, February 27, 2023, Exhibit 1

2025. That is the backdrop of the HUD letter, which reads as follows:

*"Thank you for your inquiry dated January 17, 2023, to the U.S. Department of Housing And Urban Development (HUD) in requesting assistance with the disclosure of information authorization forms in your application to the Emergency Housing Voucher (EHV) program administered by the Housing Authority of The City of Los Angeles (HACLA). In your inquiry, you stated the People Assisting the Homeless (PATH) provided you with a form that would authorize disclosing your information to The Los Angeles Homeless Services Authority (LAHSA). Your letter was forwarded to the Community Planning and Development (CPD) Division of the HUD Los Angeles Field Office for review. Ms. Rosalia Soloman, Assistant Manager Section 8 EHV for HACLA, confirmed your application to HACLA'S EHV Program. Ms. Soloman stated a voucher extension request was approved in November 2022, which granted an extension on the term of your voucher until June 2, 2023. Ms. Soloman said you are welcome to submit a Request for Tenancy Approval (RFTA) for a prospective unit to initiate the contracting process. Ms. Soloman advised that if you require additional information regarding your application status with HACLA, you may contact HACLA'S EHV team via email at EHV.IP@hacla.org. On February 21, 2023, Rufus Washington, CPD Director, and Nathaniel King, CPD Representative, reached out to you via phone to further investigate your inquiry. After the call, the*

*outcome was that Mr. Washington and Mr. King would continue to work with LAHSA and HACLA to resolve your inquiry. If you have additional questions regarding this letter's content, please email the HUD Los Angeles Office of Community Planning and Development at CPDLA@hud.gov. Sincerely, Laurie Udit Field Office Director"*

Plaintiff advised the Office of Mayor Karen Bass multiple times, and as recently as June 4, 2025, about the unresolved matters concerning falsified health and housing data in Plaintiff's HMIS file generated by a HUD-funded service provider. That service provider operates as an administrative agency within the Mayor's INSIDE SAFE INITIATIVE.

Between September 2023 and December 2023, Plaintiff's primary care physician generated at least five letters making clear that any reports of Plaintiff's medical condition are the exclusive domain of Plaintiff's healthcare specialists at UCLA Health: *"Any other documentation written outside of UCLA Health does not represent patient's current medical condition…"* These letters followed Plaintiff's reports to the doctor about the false medical information Plaintiff discovered in Plaintiff's HMIS file. This is documented in the records provided to the Court.

In an email dated September 20, 2023, an administrator of that service provider, Weingart Center Association, made written assurances that the HMIS data would be corrected: *"We will make sure the notes are corrected to accurately report information provided. We apologize for any inconvenience this may have caused you. We look forward to resolving this matter as quickly as possible."* To date, Plaintiff has never received a corrected copy of the HMIS data. Moreover, the Mayor's Office has ignored responsibility for ensuring that the data is corrected, despite the fact that the event occurred under the INSIDE SAFE INITIATIVE and that the data is required to meet HUD guidelines.

Absent correction of Plaintiff's HMIS data, no other data can be considered fully reliable. This includes data from the Housing Authority of the City of Los Angeles aka HACLA, Los Angeles Homeless Services Authority aka LAHSA, and all relevant federally-funded service providers that have failed to correct errors in the content, quality and execution of housing program documentation and program services relating to Plaintiff and his household.

As an example, Plaintiff received an email dated July 25, 2025[3], from the Housing Authority for the City of Los Angeles, aka HACLA, notifying Plaintiff of required paperwork for recertification of Plaintiff's emergency housing voucher.

---

3) HACLA email, July 25, 2025, Exhibit 2

The email was forwarded from an individual identified as a HACLA program housing advisor.

Plaintiff has had no prior contact with the individual. The Plaintiff has waited for notification of a HACLA-assigned housing advisor as far back as September 17, 2024, some ten months ago, when the Plaintiff was advised in a HACLA email, *"…You will be assigned an advisor who will be your point of contact for annuals and if you have any changes or questions."*

This assignment was again promised within 48 hours of an email forwarded to the Plaintiff from a HACLA administrator on February 27, 2025, but there was no follow through on that promise from HACLA. The Court received copies of the email exchanges regarding the assignment of a HACLA program housing advisor through the exhibits that are part of Dkt. 971 filed on June 4, 2025.

The HACLA July 25th email states that, *"Failure to provide this information will result in termination of your housing assistance."* The following portion of the email is highlighted in yellow: *"IF YOU DO NOT RETURN YOUR ANNUAL REVIEW PACKET BY 08/23/2025, THE PAYMENT TO YOUR LANDLORD WILL STOP ON 09/01/2025, YOU WILL BE RESPONSIBLE FOR THE FULL AMOUNT OF THE RENT, AND WE WILL BEGIN THE PROCESS TO TERMINATE YOUR HOUSING ASSISTANCE."*  Plaintiff has filed a NOTICE OF MEMORANDUM regarding the HACLA email.

While Plaintiff has complied with the August 23rd deadline cited, Plaintiff brings the HACLA July 25th email to the attention of the Court because the email has a direct impact on the Plaintiff's housing; either sign or assistance is gone.

Plaintiff's health challenges as a post-stroke heart patient and diabetic are compounded by the fact that Plaintiff has been virtually house-bound for more than three months due to the continued threats and acts of retaliation/intimidation aimed at Plaintiff for reporting suspected criminal activity in Plaintiff's residential building.  Plaintiff has been unable to resume daily activities critical to managing those health challenges, which also puts his life at risk.

HACLA is in receipt of multiple physician letters documenting Plaintiff's disability and health status.  Given this fact, for Plaintiff to receive an email from HACLA directly threatening Plaintiff's housing is yet another assault upon Plaintiff's health, not unlike the threats aimed at Plaintiff and his wife for reporting suspected criminal activities in Plaintiff's residential building.

For nearly ten months, nothing has been done to address Plaintiff's concerns about the threats to the health, safety and welfare of Plaintiff's household.  Moreover, Plaintiff's HMIS data and everything pertaining to that data has not been corrected since Plaintiff first reported the problem over some three years to the Office of Mayor Bass and the Mayor's INSIDE SAFE INITIATIVE.  There has been no assistance from the Office of the Mayor.

Plaintiff's June 4th letter to Mayor Bass and the Mayor's Office includes a reference to Plaintiff's April 22nd correspondence to Los Angeles Police Chief Jim McDonnell.  Plaintiff advised Mayor Bass and the Mayor's Office that Plaintiff had informed Chief McDonnell of Plaintiff's reports to the LAPD Central Bureau concerning suspected criminal activity in Plaintiff's residential building, providing dates and information about those reports.  The building's master leaseholder is LAHSA, the current administrative lead for the INSIDE SAFE INITIATIVE launched by Mayor Bass.  Plaintiff's April 22nd letter[5] to Chief McDonnell reads as follows:

*"My wife and I are both senior citizens with documented disabilities. We live in downtown Los Angeles. Since at least last October, we have reported to the Los Angeles Police Department, Central Bureau, a series of incidents that we believe are related to suspected gang and illegal drug activity occurring in the building in which we reside. Our reports have been via email and through the LAPD reporting line. The emails include one sent today, 4/16/25, 4/7/25, 3/11/25, 2/12/25, 1/24/25, 1/1/25, 11/27/24 and 10/29/24. Our most recent report, addressed to Officer Maria Padilla, speaks of acts of retaliation and intimidation aimed toward us and instigated by persons affiliated with suspected gang activity*

---

5)  Letter to Chief Jim McDonnell, Los Angeles Police Dept., April 22, 2025, Exhibit 3

*and illegal drug activity within our building. Last month, the LAPD came to the building and on our floor. An officer went to the unit of a problem tenant where suspected gang activity and illegal drug use have been ongoing since at least last October. On Friday, April 4th, the occupant of that unit threatened me and my wife while we were inside the building elevator. We reported this to the LAPD and building management. To date, we have heard nothing about what building management intends to do. Almost immediately, acts of intimidation and retaliation occurred on Thursday, April 10th, and again on Saturday, April 19th, both of which I reported to Officer Padilla. These events are very disturbing and are undermining my health. As a post-stroke/heart patient and diabetic, I have a routine that I need to follow per the instructions of my healthcare specialists. However, in recent days, these events have made it virtually impossible for me to do so, as I am on constant watch for individuals in and around the building, and as I do routine errands/travel, who are affiliated with the suspected gang and illegal drug activity that is present. Moreover, we have reports to the Mayor's Office, LA City Council, Los Angeles County Board of Supervisors, Office of U.S. Senator Alex Padilla, and U.S. District Court, Central Division, State of California, in the court of The Honorable Judge David O. Carter. Those reports spoke to the ongoing problems regarding health, safety, and welfare in the building. Our report to the Court is part of its public record. In addition, we have made reports and*

*asked for help from the agencies (via Dr. Va Lecia Adams Kellum, CEO of LAHSA, Kris Freed, Chief Strategist of LAHSA, and Jennifer Hark Dietz, CEO of PATH) that receive federal, state, and city funds and that are responsible for the building and program services for tenants. Lastly, I have reported these events to my UCLA HEALTH physicians and LA CARE HEALTH (via Dr. Michael Brodsky, Medical Services Director, LA CARE HEALTH PLAN), the latter being my health insurance provider as well as a major funder of programs at the building. Sadly, after all of these months, much of the same activity still exists in the building. I am asking for your help to restore order in this building and to protect our health, safety, and welfare as it relates to curtailing the suspected illegal activity that I have described in the attached emails and that is still ongoing. Thank you for your time and attention to all of the above."*

Two days after Plaintiff forwarded correspondence to Chief McDonnell, on April 24th, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, accompanied by a contingent of LAPD officers on stand down, conducted a raid on Plaintiff's building.  Plaintiff described this event to Mayor Bass and the Mayor's Office in Plaintiff's June 4th letter, a copy of which Plaintiff has provided to the Court:

*"The ICE officers, armed with rifles and handguns, were apparently looking for undocumented immigrants, including those affiliated with suspected gangs,*

*drug use/trafficking, and other suspected illegal activity. The elevator was shut down to lobby access. ICE officers searched both the interior and exterior of the building."*

On the morning of the raid, as Plaintiff exited the building, a group of ICE officers was gathered on the sidewalk. Plaintiff stopped to speak with them for five to ten minutes. As Plaintiff was talking to the ICE officers, Plaintiff noticed individuals at the building door and surrounding area observing the conversation, some of whom were involved in the stalking and other acts of intimidation/retaliation Plaintiff reported to law enforcement.

After leaving the ICE officers, Plaintiff continued to the Metro station to meet his wife. As they walked down the platform to enter the train, Plaintiff saw the same individuals who were at the building door and surrounding area now following him. There were no Metro police officers in the area. When the train doors opened, as Plaintiff looked back to observe those individuals, Plaintiff suffered a major fall on the train, causing trauma to his head, knee, and eye.

A May 8, 2025, letter authored by Plaintiff's former neurologist describes the following[6]: *"Gregory Edward Gray (date of birth: 8/5/1953) is followed at the UCLA Neurology clinic for diagnoses of stroke, cervical spinal canal stenosis,*

---

6) Physician letter, Dr. Alexan Yerevanian, UCLA Neurology, ULCA Health, Exhibit 4

*neuropathy, cognitive impairment. His last clinic visit with me was on 5/1/2025. Mr. Gray's symptoms can be worsened with psychological stress which may result in recrudescence of neurological symptoms. It is important that psychological stress be kept at a minimum for Mr. Gray to optimize his physical and mental health. Mr. Gray requires housing that is most appropriate for his needs, including that which is in close proximity to his primary care doctor and specialists. He continues to have stress regarding his living situation which has culminated in a fall on April 24, 2025 that occurred while boarding public transport resulting in trauma to his knee, head, and eye. Mr. Gray would benefit most from housing that is safe and maintained in a clean and well kept manner. In addition, Mr. Gray would benefit from reasonable accommodations and transportation resources-such as door-to-door transportation-to avoid any subsequent falls. Given the complexity of his medical problems, such as difficulty with cognition, ambulation, and diabetes care, it is essential that Mr. Gray have housing and transportation services to facilitate his care, prevent adverse outcomes (such as recurrent stroke, heart attack, falls) and prevent hospitalizations. I again request that Mr. Gray be given an extension for 12 months (May 8, 2026) regarding clerical matters given that Mr. Gray focus on diagnostic testing and rehabilitation efforts."*

Plaintiff's endocrinologist authored a similar letter[7] dated May 7, 2025: "...Mr. Gray continues to experience significant psychological stress related to his situation which has been exacerbated in recent months, culminating in a bad fall on 4/24/25 while boarding a train on the way to his health club to exercise. He would benefit from appropriate transportation resources and reasonable accommodations to allow him to seek medical care and attend to activities of daily living.  Mr. Gray has multiple medical problems, including but not limited to type 2 diabetes, hypertension, hyperlipidemia, obesity, and a history of stroke. There medical problems require consistent medical care (for example, for appointments and lab work) and stable housing (for example, for the proper storage of medications). It is my professional recommendation that Mr. Gray minimize unnecessary stress to optimize his physical and mental health and to reduce the harmful effects of an uncertain living situation on his physical and mental health."

From Plaintiff's primary care physician came this letter dated June 11, 2025:[8] "...Due to the nature of his medical issues, Mr. Gray's symptoms can be exacerbated by both physical and mental stressors. Therefore, it is crucial that he

---

7) Physician letter, Dr Laura Sue, UCLA Endocrinology, ULCA Health, Exhibit 5
8) Physician letter, Dr. Esther Yu, UCLA Family Medicine, ULCA Health, Exhibit 6

*is provided with appropriate and safe housing to optimize his health and well-being. Mr. Gray's situation is complex, and it is essential that his living environment minimizes the daily stressors he encounters. Ensuring he has access to stable and supportive housing will significantly contribute to his overall health management and quality of life. Additionally, it is crucial that he is provided with reasonable transportation so he can care for himself physically, including transportation to the grocery store and for physical activities such as going to the gym to optimize his health. Thank you for your attention to this matter and for considering Mr. Gray's need for suitable housing accommodations."*

The idiom, *"Cover your tracks."* means, *"If someone covers their tracks, they hide or destroy evidence of their identity or their actions, because they want to keep them secret."* -Collins Dictionary. *(https://www.com/us/dictionary/english/cover-your-tracks)*.

On three separate occasions, June 5th, June 13th, and June 18th, the Office of Mayor Bass sent Plaintiff emails[9] that were non-responsive, that deliberately ignored the record of documentation and that represented the shaping of convenient deception, since none of the messages reflected the content of

---

9) Copies of emails, June 5, June 13, and June 18, 2025, Office of the Mayor, City of Los Angeles, Exhibit 7

Plaintiff's June 4th letter to the Office of Mayor Bass or its attachments.

By trying to change the record documented in Plaintiff's June 4th letter, the Office of Mayor Bass attempted to deflect accountability for events occurring under the Mayor's INSIDE SAFE INITIATIVE that were reported in multiple emails, as noted in Plaintiff's June 4th letter to the Office of the Mayor: *"Additionally, I have previously sent correspondence to the Mayor's Office requesting assistance with innumerable matters concerning HACLA, LAHSA, and LAHSA's service providers on the following dates, including but not limited to: 1/17/23, 2/9/23, 6/23/23, 12/18/23, 2/9/24, 3/12/24, 5/23/24, 6/5/24, 6/17/24, 6/20/24, 6/21/24, 6/23/24, 7/22/24, 10/15/24, 11/25/24, 11/27/24, 12/4/24, 12/5/24, 12/16/24, 2/14/25, 3/26/25, 3/27/25, and 4/7/25."*

These emails addressed Plaintiff's multiple reports to Mayor Bass and the Mayor's Office about how LAHSA and its contracted service providers, through the INSIDE SAFE INITIATIVE, were engaged in: 1) falsifying and breaching Plaintiff's personal, financial, health and housing records, including the information contained in Plaintiff's HMIS data; 2) committing acts of intimidation to silence complaints; 3) encouraging gross negligence in protecting Plaintiff's rights under HIPPA, THE PRIVACY ACT, and ADA laws; 4) willfully ignoring no less than 25 medical letters from Plaintiff's physicians documenting medical challenges and Plaintiff's need for permanent housing specific to Plaintiff's health

needs and the needs of Plaintiff's household; 6) willfully sabotaging Plaintiff's opportunities to swiftly move forward to secure permanent housing; and 7) attempting multiple times, through service provider agencies and staff, to deploy coercion into interim housing rife with unsanitary, unsafe conditions and otherwise unsuitable for Plaintiff's medical and housing needs.

Instead of the Office of Mayor Bass immediately addressing and correcting these issues first reported by the Plaintiff in 2023, the Mayor's Office left Plaintiff's concerns unchecked, allowing the issues to fester.  When Plaintiff would not abandon the documentation record detailed in Plaintiff's June 4th letter, as the follow-up email messages from the Mayor's Office encouraged, the Mayor's Office set upon a campaign to deliberately change that record, and, as the idiom is defined, *"to cover their tracks."*

As an example of this convenient deception, nowhere in Plaintiff's June 4th letter to Mayor Bass/the Mayor's Office did Plaintiff ever articulate: *"Any complaints or concerns regarding the Los Angeles Police Department…"* which is what the Mayor's Office wrote in its June 18th email to Plaintiff. That the Mayor's Office would suggest this and encourage pursuit of the same by inviting Plaintiff to contact *"…the Office of the Inspector General, who oversees the LAPD and may be able to conduct an investigation into the matter…"* serves only to deflect responsibility from the Mayor's Office.

Since October 2024, when Plaintiff first reported to Mayor Bass and the Mayor's Office the threats and acts of retaliation/intimidation aimed at Plaintiff for reporting suspected criminal activity in Plaintiff's residential building, nothing has been done to address Plaintiff's concerns.  By not addressing the threats to Plaintiff's health, safety and welfare, Mayor Bass and the Office of the Mayor are complicit in this activity, encouraging it to continue unfettered, in effect, joining the suspected gangs and other criminal perpetrators seeking to harm the Plaintiff.

In Plaintiff's view, The Los Angeles Police Department is not the problem. It is the failure of the Office of Mayor Bass and the Mayor's INSIDE SAFE INITIATIVE to eliminate the criminal element harbored in a publicly-funded building that poses a threat to the health, safety and welfare of the Plaintiff by way of threats, stalking and other acts of retaliation/intimidation for Plaintiff reporting suspected criminal activities to law enforcement. Plaintiff has been reporting these matters to Mayor Bass and the Mayor's Office since October 15, 2024 and in subsequent emails dated 11/25/24, 11/27/24, 12/4/24, 12/5/24, 12/16/24, 2/14/25, 3/26/25, 3/27/25, 4/7/25 and now, 6/4/25. To date, nothing has been done to eradicate the criminal activity in the building, including the threats, stalking and other acts of retaliation/intimidation aimed at Plaintiff for reporting suspected criminal activities to law enforcement. As a result, Plaintiff has been virtually house-bound for more than three months, unable to resume daily activities critical

to managing his medical challenges, which also puts his life at risk. Plaintiff has reported his concerns to the U.S. Departments of Justice, Housing and Urban Development and Homeland Security. Plaintiff also reported his concerns, both prior and current, to the Office of Governor Gavin Newsom, U.S. Senator Alex Padilla, then-Congressman Adam Schiff and other public officials/agencies, but none assisted.

The example cited above replicates the kind of activity surrounding the false information contained in Plaintiff's HMIS data, generated under Mayor Bass' INSIDE SAFE INITIATIVE through its contracted administrative agency, LAHSA, and its contracted service providers. The example also reflects what the Court identified as the overall problem of how the City has failed to be accountable for expenditures for and execution of housing programs under its authority, including the INSIDE SAFE INITIATIVE launched by Mayor Bass:

*"The pattern is clear: documentation is withheld until exposure is imminent, public accountability is resisted until judicially mandated, and the truth of reported progress remains clouded by evasive recordkeeping. As the Court observed, these failures have undermined public trust and judicial trust alike." (Case No. 2:20- cv-02291-DOC-KES, Dkt. 991, June 24, 2025."*

**RELIEF REQUESTED**

Plaintiff requests that the Court require the City of Los Angeles, Housing Authority of the City of Los Angeles, aka HACLA, Los Angeles Homeless Services Authority, aka LAHSA and all relevant federally-funded service providers to correct errors in the content, quality and execution of housing program documentation and program services relating to Plaintiff and his household.  This includes correction of Plaintiff's HMIS data since this information must be in compliance with HUD's data collection, management, and reporting standards. Plaintiff has previously asked the Court to require the aforementioned parties to facilitate transfer to and payment for new permanent housing of Plaintiff's and his wife's choosing in accordance with HUD guidelines governing the use of Emergency Housing Vouchers aka EHV, Time Limited Subsidies aka TLS, applicable housing laws and all properly executed permanent housing program protocols. This request was previously made in DKT. 886, filed 04/02/25.

Citing Plaintiff's medical challenges, the Plaintiff has also previously requested the Court, in DKT. 971 filed 06/04/25, to appoint an attorney for him so that Plaintiff may properly file a case to address the grievances as detailed in DKT. 886, filed 04/02/25, and so that Plaintiff has representation in any related hearing for the same.

Dated: <u>08/26/2025</u>

/s/ Gregory Edward Gray
Pro Se
3183 Wilshire Boulevard
Ste. 196K26
Los Angeles, CA 90010
(213) 638-2039
gegcbg@outlook.com

## CERTIFICATE OF SERVICE

The undersigned certifies that, on August 26, 2025 the foregoing Motion Requesting Permission to file Motion Requiring the City of Los Angeles/Office of Mayor Karen Bass to ensure Plaintiff's Housing Data is HUD-compliant was filed electronically with the Court. Counsel of record will be served by electronic mail on this same date as follows:

Elizabeth Mitchell
emitchell@umklaw.com

Matthew Donald Umhofer
mumhofer@umklaw.com

Valerie Flores, Esq.
Valerie.Flores@lacity.org

Jessica Mariani, Esq.
Jessica.Mariani@lacity.org

Jennifer M. Hashmall, Esq.
mhashmall@millerbarondess.com

Lauren Brody
lbrody@millerbarondess.com

Shayla Myers, Esq.
lschmidt@lafla.org

/s/ Gregory Edward Gray
Gregory Edward Gray
Pro Se
Ste. 196K26
3183 Wilshire Boulevard
Los Angeles, CA 90010
(213) 638-2039
gegcbg@outlook.com

**EXHIBIT ONE**



**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**
Los Angeles Field Office
300 North Los Angeles Street, Suite 4054
Los Angeles, CA 90012

February 27, 2023

Mr. Gregory Edward Gray
gegcbg@outlook.com
213-638-2039

Dear Mr. Gray:

Thank you for your inquiry dated January 17, 2023, to the U.S. Department of Housing and Urban Development (HUD) in requesting assistance with the disclosure of information authorization forms in your application to the Emergency Housing Voucher (EHV) program administered by the Housing Authority of the City of Los Angeles (HACLA). In your inquiry, you stated the People Assisting the Homeless (PATH) provided you with a form that would authorize disclosing your information to the Los Angeles Homeless Services Authority (LAHSA). Your letter was forwarded to the Community Planning and Development (CPD) Division of the HUD Los Angeles Field Office for review.

Ms. Rosalia Soloman, Assistant Manager Section 8 EHV for HACLA, confirmed your application to HACLA's EHV program. Ms. Soloman stated a voucher extension request was approved in November 2022, which granted an extension on the term of your voucher until June 2, 2023. Ms. Soloman said you are welcome to submit a Request for Tenancy Approval (RFTA) for a prospective unit to initiate the contracting process. Ms. Soloman advised that if you require additional information regarding your application status with HACLA, you may contact HACLA's EHV team via email at EHV.IP@hacla.org.

On February 21, 2023, Rufus Washington, CPD Director, and Nathaniel King, CPD Representative, reached out to you via phone to further investigate your inquiry. After the call, the outcome was that Mr. Washington and Mr. King would continue to work with LAHSA and HACLA to resolve your inquiry.

If you have additional questions regarding this letter's content, please email the HUD Los Angeles Office of Community Planning and Development at CPDLA@hud.gov.

Sincerely,

Laurie Udit
Field Office Director

**EXHIBIT TWO**

 Outlook

## Section 8 Annual Reexamination

| | |
|---|---|
| **From** | Erika Orozco <Erika.Orozco@hacla.org> |
| **Date** | Fri 7/25/2025 2:20 PM |
| **To** | ggpi1@aol.com <ggpi1@aol.com>; gegcbg@outlook.com <gegcbg@outlook.com> |

📎 1 attachment (781 KB)
FILLABLE EAST.EHV ENGLISH PACKET UPDATED (1).pdf;

Dear Gregory Gray,

As a condition of participation in the Program, you are required to provide information regarding your family and income. Failure to provide this information will result in termination of your housing assistance.

IF YOU DO NOT RETURN YOUR ANNUAL REVIEW PACKET BY 08/23/2025, THE PAYMENT TO YOUR LANDLORD WILL STOP ON 09/01/2025, YOU WILL BE RESPONSIBLE FOR THE FULL AMOUNT OF THE RENT, AND WE WILL BEGIN THE PROCESS TO TERMINATE YOUR HOUSING ASSISTANCE.

**PACKET INSTRUCTIONS:**
1. Carefully read the packet instruction sheet and the instructions on each page before completing any of the section of this packet.
2. Complete, sign and date each form in the packet and email the completed packet to your Advisor.
3. Answer questions completely. For "yes" responses, provide all required information and documents.
4. Answer questions accurately. The information you provide is certified under penalty of perjury to be accurate and will be verified.
5. Report ALL family income from ALL sources. You must provide documents to verify the income.



**Erika Orozco** | Housing Program Advisor

e: erika.orozco@hacla.org

p: 833-422-5248

**Housing Authority of the City of Los Angeles**

**Section 8 - Emergency Housing Voucher Program**

2600 Wilshire Blvd,

Los Angeles, CA 90057

w: www.hacla.org

**EXHIBIT THREE**

 Outlook

## RE: URGENT REQUEST FOR ASSISTANCE IN RESIDENTIAL BUILDING WITH SUSPECTED GANG AND ILLEGAL DRUG ACTIVITY

**From** Gregory Edward Gray <gegcbg@outlook.com>

**Date** Tue 4/22/2025 6:29 PM

**To**    contact.lapdonline@lapd.online <contact.lapdonline@lapd.online>

**Bcc**   gegcbg@outlook.com <gegcbg@outlook.com>

📎 1 attachment (500 KB)

EMAILS RE URGENT REQUEST FOR LAPD ASSISTANCE 4 22 25 thru 10 29 24.pdf;

4/22/25

Chief Jim McDonnell
Los Angeles Police Department
200 N Spring St.
Los Angeles, CA 90012

*-via email:  contact.lapdonline@lapd.online*

Dear Chief McDonnell:

My wife and I are both senior citizens with documented disabilities.  We live in downtown Los Angeles.

Since at least last October,  we have reported to the Los Angeles Police Department, Central Bureau, a series of incidents that we believe are related to suspected gang and illegal drug activity occurring in the building in which we reside.  Our reports have been via email and through the LAPD reporting line.

The emails include one sent today, 4/16/25, 4/7/25,  3/11/25, 2/12/25, 1/24/25,  1/1/25, 11/27/24 and 10/29/24.

Our most recent report, addressed to Officer Maria Padilla, speaks of acts of retaliation and intimidation aimed toward us and instigated by persons affiliated with suspected gang activity and illegal drug activity within our building.  Last month, the LAPD came to the building and on our floor.  An officer went to the unit of a problem tenant where suspected gang activity and illegal drug use have been ongoing since at least last October.  On Friday, April 4th, the occupant of that unit threatened me and my wife while we were inside the building elevator.  We reported this to the LAPD and building management.  To date, we have heard nothing about what building management intends to do.   Almost immediately, acts of intimidation and retaliation occurred on Thursday, April 10th, and again on Saturday, April 19th, both of which I reported to Officer Padilla.

These events are very disturbing and are undermining my health.  As a post-stroke/heart patient and diabetic, I have a routine that I need to follow per the instructions of my healthcare specialists.  However,  in recent days, these events have made it virtually impossible for me to do so, as I am on constant watch for individuals in and around the building, and as I do routine errands/travel, who are affiliated with the suspected gang and illegal drug activity that is present.

Moreover, we have reports to the Mayor's Office, LA City Council, Los Angeles County Board of Supervisors, Office of U.S. Senator Alex Padilla,  and U.S. District Court, Central Division, State of California, in the court of The Honorable Judge David O. Carter.  Those reports spoke to the ongoing problems regarding health, safety, and welfare in the building.  Our report to the Court is part of its public record.

In addition, we have made reports and asked for help from the agencies (via Dr. Va Lecia Adams Kellum, CEO of LAHSA, Kris Freed, Chief Strategist of LAHSA, and Jennifer Hark Dietz, CEO of PATH) that receive federal, state, and city funds and that are responsible for the building and program services for tenants.

Lastly, I have reported these events to my UCLA HEALTH physicians and LA CARE HEALTH (via Dr. Michael Brodsky, Medical Services Director, LA CARE HEALTH PLAN), the latter being my health insurance provider as well as a major funder of programs at the building.

Sadly, after all of these months, much of the same activity still exists in the building.

I am asking for your help to restore order in this building and to protect our health, safety, and welfare as it relates to curtailing the suspected illegal activity that I have described in the attached emails and that is still ongoing.

Thank you for your time and attention to all of the above.

Sincerely,

Gregory Edward Gray
(213) 638-2039

**EXHIBIT FOUR**

Name: Gregory Gray | DOB: 8/5/1953 | MRN: ███████ | PCP: Esther S. Yu, DO | Legal Name: Gregory Gray



**Santa Monica Neurology**

1801 WILSHIRE BLVD
SUITE 100
SANTA MONICA CA 90403
Phone: 310-319-5098
Fax: 310-319-4552

May 8, 2025

Gregory Edward Gray
3183 Wilshire Ste196 K26
Los Angeles CA 90010

Dr. Brodsky,

Gregory Edward Gray (date of birth: 8/5/1953) is followed at the UCLA Neurology clinic for diagnoses of stroke, cervical spinal canal stenosis, neuropathy, cognitive impairment.  His last clinic visit with me was on 5/1/2025.

Mr. Gray's symptoms can be worsened with psychological stress which may result in recrudescence of neurological symptoms.  It is important that psychological stress be kept a a minimum for Mr. Gray to optimize his physical and mental health.

Mr. Gray requires housing that is most appropriate for his needs, including that which is in close proximity to his primary care doctor and specialists. He continues to have stress regarding his living situation which has culminated in a fall on April 24, 2025 that occurred while boarding public transport resulting in trauma to his knee, head, and eye.  Mr. Gray would benefit most from housing that is safe and maintained in a clean and well kept manner.  In addition, Mr. Gray would benefit from reasonable accommodations and transportation resources - such as door-to-door transportation - to avoid any subsequent falls.

Given the complexity of his medical problems, such as difficulty with cognition, ambulation, and diabetes care, it is essential that Mr. Gray have housing and transportation services to facilitate his care, prevent adverse outcomes (such as recurrent stroke, heart attack, falls) and  prevent hospitalizations.

I again request that Mr. Gray be given an extension for 12 months (May 8, 2026) regarding clerical matters given that Mr. Gray focus on diagnostic testing and rehabilitation efforts.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Alexan I. Yerevanian, MD


CC:
No Recipients

RE: Gray, Gregory -- CSN#: 90236514215                                    Page 1 of 1

MyChart® licensed from Epic Systems Corporation© 1999 - 2025

**EXHIBIT FIVE**

Name: Gregory Gray | DOB: 8/5/1953 | MRN: ▓▓▓▓ | PCP: Esther S. Yu, DO | Legal Name: Gregory Gray



**UCLA Health Downtown Los Angeles Endocrinology**
700 W 7TH ST
SUITE S270
LOS ANGELES CA 90017
Phone: 213-409-6687
Fax: 213-988-8390

May 7, 2025

To Whom It May Concern:

This letter is to attest to the current health status of Mr. Gregory Gray.  Mr. Gray has been a patient under my care since 07/14/2022.  His last clinic visit with me was on 05/07/2025.

Mr. Gray has multiple medical problems, including but not limited to type 2 diabetes, hypertension, hyperlipidemia, obesity, and a history of stroke.  These medical problems require consistent medical care (for example, for appointments and lab work) and stable housing (for example, for the proper storage of medications).

Mr. Gray continues to experience significant psychological stress related to his housing situation, which has been exacerbated in recent months, culminating in a bad fall on 04/24/2025 while boarding a train on the way to his health club to exercise.  He would benefit from appropriate transportation resources and reasonable accommodations to allow him to seek medical care and attend to activities of daily living.

It is my professional recommendation that Mr. Gray minimize unnecessary stress to optimize his physical and mental health and to reduce the harmful effects of an uncertain living situation on his physical and mental health.

Thank you for your time.

Sincerely,

Laura Sue, MD, MPH

RE: Gray, Gregory -- CSN#: 90237088541                                          Page 1 of 1

MyChart® licensed from Epic Systems Corporation© 1999 - 2025

**EXHIBIT SIX**

Name: Gregory Gray | DOB: 8/5/1953 | MRN: ███████ PCP: Esther S. Yu, DO | Legal Name: Gregory Gray



**UCLA Health Downtown Los Angeles Primary Care**
700 W 7TH ST
SUITE S270
LOS ANGELES CA 90017
Phone: 213-988-8380
Fax: 213-988-8390

June 11, 2025

Gregory Gray
Mailing Address:
3183 Wilshire Blvd.,
Ste.  196k26
Los Angeles CA 90010



**UCLA Health Downtown Los Angeles Primary Care**
700 W 7TH ST
SUITE S270
LOS ANGELES CA 90017
Phone: 213-988-8380
Fax: 213-988-8390

June 10, 2025

Gregory Gray
Mailing Address:
3183 Wilshire Blvd.,
Ste.  196k26
Los Angeles CA 90010

To Whom It May Concern,

I am writing to provide information regarding Mr. Gregory Edward Gray, born on August 5, 1953, who is under the care of UCLA Health for various personal health conditions. Due to the nature of his medical issues, Mr. Gray's symptoms can be exacerbated by both physical and mental stressors. Therefore, it is crucial that he is provided with appropriate and safe housing to optimize his health and

well-being.

Mr. Gray's situation is complex, and it is essential that his living environment minimizes the daily stressors he encounters. Ensuring he has access to stable and supportive housing will significantly contribute to his overall health management and quality of life. Additionally, it is crucial that he is provided with reasonable transportation so he can care for himself physically, including transportation to the grocery store and for physical activities such as going to the gym to optimize his health.

Thank you for your attention to this matter and for considering Mr. Gray's need for suitable housing accommodations.

Sincerely,

Esther Yu, DO
Family Medicine
700 7th Street, Suite S270
Los Angeles, CA, 90017
Phone: 213-988-8380

CC:
No Recipients

RE: Gray, Gregory -- CSN#: 90240224121                                                    Page 1 of 1

MyChart® licensed from Epic Systems Corporation© 1999 - 2025

FPCFromClipboardUntitled

Exhibit 4

FPCFromClipboardUntitled

**EXHIBIT SEVEN**

 Outlook

---

## Mayor Karen Bass Message

---

**From** LA City SNow <cityoflaprod@service-now.com>

**Date** Wed 6/18/2025 11:39 AM

**To** gegcbg@outlook.com <gegcbg@outlook.com>

    **Office of Mayor Karen Bass**

Hi Mr. Gregory Edward Gray,

Thank you for your email and for providing further information on your situation.

I understand you are in need of transportation assistance. You may be eligible for Access Transportation through LA County, which can provide prescheduled door-to-door transportation services. Please register with the below information.
https://accessla.org/riding_access/gaining_eligibility.html
800-827-0829
cserv@accessla.org

Any complaints or concerns regarding the Los Angeles Police Department can be made directly with the Office of the Inspector General, who oversees the LAPD and may be able to conduct an investigation into the matter.
350 S. Figueroa Street, Suite 1002, Los Angeles, CA 90071
213-893-6400
communityrelationsoig@lacity.org

Additionally, I understand you have concerns with LAHSA, and have filed grievances in the past. Our office does not have the authority to direct LAHSA to change any decisions made as they are pursuant to policies and procedures in place. However, I am happy to take your comments down so my office is aware of the situation. We do not have access to the HMIS system; to request a copy of your file, please contact LAHSA.

Our office does not provide housing, but we are happy to connect you with a service provider if you are currently experiencing homelessness. If you would like to be placed in a different housing unit, please contact your caseworkers or LAHSA directly.

Finally, I understand you are awaiting an assigned caseworker with HACLA. Do you have any identifying information, such as an application or tenant ID number so I may inquire about your case?

I look forward to assisting you.


Best Regards,

Esha K.
Constituent Services Coordinator
Office of Mayor Karen Bass

---

2025-06-13 01:53:20 PM PDT

6/13/25


Esha K.
Constituent Services Coordinator
Office of Mayor Karen Bass


Dear Esha K.:

PLEASE SEE THE ATTACHED SENT ON 6/4/25 AND 6/5/25 with CONFIRMATION RECEIPT FROM
CONSTITUENT SERVICES REQUESTING ASSISTANCE.

Sincerely,

Gregory Edward Gray

/cbg

 Outlook

---

**Mayor Karen Bass Message**

---

**From** LA City SNow <cityoflaprod@service-now.com>

**Date** Fri 6/13/2025 1:54 PM

**To** gegcbg@outlook.com <gegcbg@outlook.com>

6/13/25

Esha K.
Constituent Services Coordinator
Office of Mayor Karen Bass

Dear Esha K.:

PLEASE SEE THE ATTACHED SENT ON 6/4/25 AND 6/5/25 with CONFIRMATION RECEIPT FROM CONSTITUENT SERVICES REQUESTING ASSISTANCE.

Sincerely,

Gregory Edward Gray

/cbg

---

2025-06-13 01:02:10 PM PDT

**Office of Mayor Karen Bass**

Hi Mr. Gregory Edward Gray,

I'm following up from your email to the Office of Mayor Karen Bass. Are you in need of assistance from the Constituent Services team? If so, please feel free to respond directly to this email with a brief description of the issue.

I look forward to assisting you.

Best Regards,

Esha K.
Constituent Services Coordinator
Office of Mayor Karen Bass

 Outlook

## Fw: Mayor Karen Bass Message

| | |
|---|---|
| **From** | Gregory Edward Gray <gegcbg@outlook.com> |
| **Date** | Thu 6/5/2025 5:33 PM |
| **To** | cityoflaprod@service-now.com <cityoflaprod@service-now.com> |
| **Bcc** | gegcbg@outlook.com <gegcbg@outlook.com> |

📎 1 attachment (3 MB)

Mail - Gregory Edward Gray - Outlook MAYORS OFFICE CONSTITUENT SERVICES CONFIRMATION RECEIPT 6 4 25 WITH EMAIL CORRESPONDENCE TO MAYORS OFFICE DATED 6 4 25 ATTACHED.pdf;

**6/5/25**

**PLEASE SEE THE ATTACHED.**

**GREGORY EDWARD GRAY**

**/cbg**

---

**From:** LA City SNow <cityoflaprod@service-now.com>
**Sent:** Thursday, June 5, 2025 3:58 PM
**To:** gegcbg@outlook.com <gegcbg@outlook.com>
**Subject:** Mayor Karen Bass Message

         **Office of Mayor Karen Bass**

Hi Mr. Gregory Edward Gray,

Thank you for contacting the Office of Mayor Karen Bass. Are you in need of assistance from the Constituent Services team? If so, please feel free to respond directly to this email with a brief description of the issue.

I look forward to assisting you.

Best Regards,

Esha K.
Constituent Services Coordinator