UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
mumhofer@umklaw.com
emitchell@umklaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>           Plaintiffs,<br><br>     v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>           Defendants. | Case No. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**PLAINTIFF LA ALLIANCE'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEY'S FEES PURSUANT TO COURT ORDER DATED JUNE 24, 2025**<br><br>Before:  Hon. David O. Carter<br>Courtroom: 10A |

*REPLY ISO PLAINTIFF LA ALLIANCE'S MOTION FOR ATTORNEY'S FEES*

# TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................2

    A.    Fees and Costs Should be Awarded Under Section 1983 ..........................2

    B.    Fees and Costs Can Be Awarded as Contempt Sanctions as Well ...............7

    C.    The Requested Fees and Costs are Reasonable and Appropriate ...............16

        1.    The City is Liable for Plaintiff's Fees and Costs Related to the City's Violations of the ERO and SAO and Its Bad Faith Actions..17

        2.    The City is Liable for All Fees Incurred Related to the City's Misconduct ...............................................................................................18

        3.    Plaintiff's Attorney's Fees Are Sufficiently Detailed and Unredacted to Permit the Court to Evaluate Reasonableness ............................19

        4.    The Appropriate Standard for Determining Fees Award is "Reasonableness"..................................................................................19

        5.    Plaintiff May Be Compensated For Time Spent On Fees Litigation ....................................................................................................21

        6.    Multiplier and Prospective Fees Awards Are Available .................22

        7.    The Alliance's Costs, Including for Mr. Webster's Time, Are Reimbursable. ........................................................................................23

III.  CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                                                           **PAGE(S)**

*Am. Unites for Kids v. Rousseau*,
   985 F.3d 1075 (9th Cir. 2021) .............................................................................. 20, 22

*Arizona State Bd. For Charter Sch. v. U.S. Dep't of Educ.*,
   464 F.3d 1003 (9th Cir. 2006) .................................................................................. 18

*Balla v. Idaho*,
   677 F.3d 910 (9th Cir. 2012) ...................................................................................... 3

*Barnes v. Dalton*,
   158 F.3d 1212 (11th Cir. 1998) ................................................................................ 23

*Barrios v. California Interscholastic Fed'n*,
   277 F.3d 1128 (9th Cir. 2002) .................................................................................... 4

*Blixseth v. Yellowstone Mountain Club, LLC*,
   854 F.3d 626 (9th Cir. 2017) .................................................................................... 21

*Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and
   Human Resources*,
   532 U.S. 598 (2001) ................................................................................................... 4

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991) ............................................................................................. passim

*Chapman v. Panchal*,
   834 F. App'x 333 (9th Cir. 2021) ............................................................................... 4

*Democratic Party of Washington State v. Reed*,
   388 F.3d 1281 (9th Cir. 2004) .................................................................................. 19

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
   314 U.S. 95 (1941) .................................................................................................... 18

*Fink v. Gomez*,
   239 F.3d 989 (9th Cir. 2001) .................................................................................... 10

*Fischer v. SJB-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ................................................................................. 5, 6

*Fjelstad v. Am. Honda Motor Co., Inc.*,
   762 F.2d 1334 (9th Cir. 1985) .............................................................................. 15, 16

*Gilead Sci., Inc. v. Merck & Co., Inc.*,
   No. 13-CV-04057-BLF, 2017 WL 3007071 (N.D. Cal. July 14, 2017) .................. 19

*Goodyear Tire & Rubber Co. v. Haeger*,
   581 U.S. 101 (2017) ................................................................................. 7, 19, 23, 24

*Harper v. Nevada Prop. 1, LLC*,
   552 F. Supp. 3d 1033 (D. Nev. 2021) ....................................................................... 21

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ...................................................................................... 13

*REPLY ISO PLAINTIFF LA ALLIANCE'S MOTION FOR ATTORNEY'S FEES*

*Jankey v. Poop Deck*,
   537 F.3d 1122 (9th Cir. 2008) .................................................................5, 6

*Joseph A. by Wolfe v. N.M. Dep't of Hum. Servs.*,
   28 F.3d 1056 (10th Cir. 1994) ......................................................................7

*Kelly v. Wengler*,
   822 F.3d 1085 (9th Cir. 2016) ....................................................................11

*Keyes Law Firm, LLC v. Napoli*
   120 F.4th 139 (4th Cir. 2024) .....................................................................20

*Kinney v. Int'l. Bhd. of Elec. Workers*,
   939 F.2d 690 (1991) ....................................................................................21

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994) ................................................................................8, 10

*La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*,
   624 F.3d 1083 (9th Cir. 2010) ......................................................................5

*Labotest, Inc. v. Bonta*,
   297 F.3d 892 (9th Cir. 2002) ........................................................................5

*Lackey v. Stinnie*,
   145 S. Ct. 659 (2025) ....................................................................................6

*Margolis v. Ryan*,
   140 F.3d 850 (9th Cir. 1998) ......................................................................22

*Matter of Battaglia*,
   653 F.2d 419 (9th Cir. 1981) ......................................................................12

*Matter of Yagman*,
   796 F.2d 1165 (9th Cir.) .............................................................................20

*Miller v. City of Phoenix*,
   197 F. App'x. 624 (9th Cir. 2006) ..............................................................10

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) ........................................................................19

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ......................................................................................3

*Prison Legal News v. Schwarzenegger*,
   608 F.3d 446 (9th Cir. 2010) ...............................................................1, 3, 7

*Richard S. v. Dep't of Developmental Servs. Of State of California*,
   317 F.3d 1080 (9th Cir. 2003) ......................................................................4

*Stone v. City and Cnty. of San Francisco*,
   968 F.2d 850 .................................................................................................11

*Thorne v. City of El Segundo*,
   802 F.2d 1131 (9th Cir. 1986) ....................................................................18

*United States v. State of Or.*,
   913 F.2d 576 (9th Cir. 1990) ........................................................................5

*User Profile Litig.*,
   655 F. Supp. 3d 899 (N.D. Cal. 2023) ..................................................20, 21

iv
*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
689 F.2d 885 (9th Cir. 1982) ...................................................................................13

**STATUTES**

28 USC § 1291 ..............................................................................................................4
42 U.S.C. § 1988 ...................................................................................................passim
Sections 1983 and 1988 .........................................................................................4, 21

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

## I.    INTRODUCTION

This Court has already found that (i) the City violated the Settlement Agreement Order ("SAO") and the Encampment Reduction Order ("ERO") , (ii) the City's bad-faith actions wasted the parties and courts' time and forced them to spend countless errors "chasing the wind" of accountability (Order, *passim*), and (iii) Plaintiff is entitled to an award of attorney's fees as a result of the City's above-described misconduct if Plaintiff can demonstrate damages, i.e. fees and costs. (Order re Mot. for Settlement Compliance, ECF No. 991 at 39-60, hereinafter "Order" at 57-59.) Yet the City once again wastes the Court and Parties' time in re-litigating the issues which have already been determined by the Court. The *only* thing this Court must decide at this point is the amount of attorney's fees to be awarded to the Plaintiff as a result of the city's misconduct, and whether to award those fees to Plaintiff as the prevailing party under Section 1988 or as a sanction for the City's contemptuous actions. **Plaintiff submits that the simplicity, lower burden, and reduced appellate vulnerability makes prevailing party the better path here, and thus the Court need not proceed down the sanctions path.**

To be clear: Plaintiff never wanted to be in the position of taking more money from the City. Plaintiff has been ready and willing to celebrate the City's successes alongside it—for free. Yet the City consistently refuses to do what it is supposed to do and has now cost Plaintiff over one and a half million dollars in attorney and expert time just to investigate the veracity of its reports and hold the City accountable for its constant failures. Plaintiff has identified, with specificity, the amount of fees and costs it has sustained as a direct result of the City's misconduct: $1,600,633 in fees and $45,467.21 in costs, with optional multipliers and prospective fee awards available.

Defendant City's opposition arguments are contrary to both fact and law. The City argues that "prevailing party" fees are unavailable because of the distinction between a "settlement agreement" and "consent decree" but the Ninth Circuit has squarely rejected that argument. *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010) ("Although this case involves a settlement agreement, not a consent decree, the

difference is immaterial. In both contexts, monitoring serves the same purpose: causing defendants to fulfill their obligations 'more speedily and reliably'. . . [Section] 1988 authorizes [plaintiff] to recover attorney's fees for monitoring the state officials' compliance with the parties' settlement agreement.")

The City outrageously claims that the Court itself determined Plaintiff is only entitled to fees related to violations of the ERO, but the Court actually found that the City violated *both* the SAO *and* the ERO *and* committed sanctionable misconduct. The City argues that the "reasonableness" standard does not apply to attorney's fees as sanctions, that "fees-on-fees" are not recoverable, and costs are unrecoverable but the Ninth Circuit has squarely addressed and rejected each of these arguments—authority which is wholly and disingenuously ignored by the City. And the City's criticism of the Alliance's fee request—$1.6 million over seventeen months—as unreasonable is ludicrous in light of the significant publicity surrounding the City's outside counsel fees at $1.8 million for *only two weeks of work*, and now up to $3.2 million only three months into the contract.[1]

## II.    ARGUMENT

### A.    Fees and Costs Should be Awarded Under Section 1983

The LA Alliance is entitled to its attorney's fees as the prevailing party for monitoring and seeking the City's compliance with the Settlement Agreement Order (Order Approving Stip. Dismissal & Proposed Settlement, ECF No. 445, hereinafter

---

[1] James Queally, *City Council Declines to Give More Money to Law Firm in Homeless Case*, *Los Angeles Times* (Aug. 27, 2025), https://www.latimes.com/california/story/2025-08-27/city-council-declines-to-give-more-money-to-law-firm-in-homeless-case. Also ironic is that the firm hired by the City to defend its failure on encampment reduction is the same firm that previously, in a ripped-from-the-Alliance-Complaint article, criticized cities, including the City of L.A., for their hands-off approach: "During 2020, the number of encampments swelled throughout Los Angeles, popping up everywhere from empty parking lots to freeway overpasses, from beaches to golf courses." Billy Cole, Theane Evangelis & Bradley J. Hamburger, *Breaking the Legal Paralysis: Combatting California's Homelessness Crisis After Martin v. City of Boise*, 39 *Cal. Real Prop. J.* 35 (2021), Evangelis-Hamburger-Breaking-the-Legal-Paralysis-Combatting-Californias-Homelessness-Crisis-After-Martin-v.-City-of-Boise-California-Real-Property-Journal-July-2021.pdf.

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

"SAO").[2] The Ninth Circuit has held that 42 U.S.C. § 1988 entitles a plaintiff "to recover attorney's fees for **monitoring the state officials' compliance with the parties' settlement agreement**." *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 451 (9th Cir. 2010) (emphasis added). Contrary to the City's contention, that Plaintiff has been forced to monitor and enforce what is titled a "Settlement Agreement" versus a "Consent Decree" is a distinction without a difference. In *Prison Legal News*, the Ninth Circuit explained, "Although this case involves a settlement agreement, not a consent decree, the difference is immaterial. In both contexts, monitoring serves the same purpose: causing defendants to fulfill their obligations 'more speedily and reliably.'" *Id.* And whether or not a plaintiff's monitoring leads "to any judicially sanctioned relief" is irrelevant to the determination—the monitoring itself is sufficient to authorize a fee award. *Id.* at 452 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 559 (1986)); *see also Balla v. Idaho*, 677 F.3d 910, 917–18 (9th Cir. 2012) (reaffirming the holding in *Prison Legal News* that actions brought to monitor compliance are eligible for attorney's fees awards).

Here, after securing the Settlement Agreement and the Court's order dismissing the case and incorporating the SA into that order, the LA Alliance was forced to police the City's constant non-compliance, file additional motions, and put on a seven-day evidentiary hearing that exposed the City's contempt of the Court's prior orders and failure to comply with the SA. Indeed, this Court has already found that the City has "forced Plaintiffs into the position of investigating and monitoring the numbers reported." (Order at 58.) Those efforts led to the Court's finding that the LA Alliance

---

[2] The City admits that Plaintiff was the prevailing party on at least some issues. Andrew Khouri & David Zahniser, *Law Firm in L.A. Homelessness Case Bills the City $1.8 Million for Two Weeks' Work*, *Los Angeles Times* (Aug. 8, 2025), https://www.latimes.com/california/story/2025-08-08/law-firm-hired-by-the-city-in-homelessness-case-bills-1-8-million.(admitting the Court accepted at least *some* of the Alliance's arguments by claiming "the district court has rejected *most* of [the] Alliance's arguments." (emphasis added).

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

prevailed in proving that "[t]he City breached the LA Alliance Settlement Agreement in four ways" and "as a sanction for the City's noncompliance, including disobeying the Court's order on encampment reductions, Plaintiffs' efforts should be compensated." (Order at 56, 59.) That the LA Alliance successfully proved the City's non-compliance is further evidence that it is the prevailing party and therefore entitled to fees under Sections 1983 and 1988.

The City misrepresents the law on this issue, likely to protect its pending appeal, as it is challenging the Court's Order only under 28 USC § 1291. The City wrongly contends that Section 1988 does not apply to any attorney's fees incurred as a result of monitoring compliance with the SAO because a "prevailing party" is limited to one that obtained a judgment on the merits or entered into a court-supervised consent decree. (City of LA Opp'n to Alliance Mot. for Attorney's Fees, ECF No. 1023 at 20-23, hereinafter "Opp.") But the Ninth Circuit has expressly rejected that contention. *Chapman v. Panchal*, 834 F. App'x 333, 334 n.2 (9th Cir. 2021) (**rejecting** argument "that *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001) forecloses the district court's conclusion that a private settlement could give rise to prevailing party status . . . . This court has repeatedly not followed what it considers dictum from *Buckhannon*, instead holding that **a party can prevail so long as a private settlement agreement is legally enforceable.**") (emphasis added). The Ninth Circuit has in fact repeatedly addressed this issue, holding that for purposes of attorney's fees and costs in a civil rights case, a party "prevails" where, as here, "[plaintiff] enters into a legally enforceable settlement agreement against the defendant." *Richard S. v. Dep't of Developmental Servs. Of State of California,* 317 F.3d 1080, 1086 (9th Cir. 2003) (*citing Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)); *Chapman v. Panchal,* 834 F. App'x 333, 334 (9th Cir. 2021) (rejecting appellee's argument that "*Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001) forecloses the district court's conclusion that a private

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

settlement could give rise to prevailing party status," and finding the settlement agreement was sufficient to make Chapman the "prevailing party."); *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1089 (9th Cir. 2010) ("Litigation that results in an enforceable settlement agreement can confer 'prevailing party' status on a plaintiff."); *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (finding "settlement agreement between the parties under which the court retained jurisdiction to enforce the settlement" constituted "sufficient judicial imprimatur" to render bar patron a "prevailing party"); *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002) (holding "a plaintiff who obtains a court order incorporating an agreement that includes relief the plaintiff sought in the lawsuit is a prevailing party entitled to attorney's fees under 42 U.S.C. § 1988."); *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) ("Because Fischer has an enforceable settlement that requires the Inn to do something it otherwise would not be required to do, Fischer is a 'prevailing party.'")

Moreover, although a prevailing party is not limited to one who has obtained a consent decree, the SAO contains the hallmarks of a consent decree, as the Court maintains significant judicial approval and ongoing judicial oversight to enforce the Agreement. *See United States v. State of Or.*, 913 F.2d 576, 580 (9th Cir. 1990) ("A consent decree is 'essentially a settlement agreement subject to judicial policing.'") Indeed, the Court has repeatedly suggested that the Settlement Agreement effectively operates as a consent decree. (*See* Transcript, August 28, 2023, ECF No. 620 at 54:15-17) ("With all these words, what I'm hearing is that you want supervision. I'll call it a consent decree.") (referring to potential County Agreement; (Transcript, March 7, 2024, ECF No. 681 at 94:1-4) ("So in three or four years, unless you get going -- and I don't see how you catch up -- this is going to be just another consent decree given to some judge, giving some excuse about how you couldn't do it.") Regardless of the name given to it by the parties or the Court, the SAO under which the court retains jurisdiction to enforce its terms constitutes "sufficient judicial imprimatur" to render LA Alliance a prevailing party in this case. *Jankey*, 537 F.3d at 1130.

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

The City also improperly implies that *Lackey v. Stinnie*, 145 S. Ct. 659 (2025), indicates that Section 1988 does not allow Plaintiff to recover attorney's fees for monitoring compliance with a settlement agreement. *Lackey* does not stand for this proposition. In that case, the plaintiffs had obtained a preliminary injunction prohibiting the enforcement of a Virginia statute. *Lackey*, 145 S. Ct. at 664-65. The Virginia legislature then repealed the statute and the parties agreed that the action had become moot. *Id.* In denying the plaintiffs attorney's fees, the Court noted that the trial court's issuance of a preliminary injunction did not make the plaintiffs the prevailing party because it was only "temporary success at an intermediary stage of the suit" and not enduring relief. *Id.* at 668-69. This case is distinguishable from *Lackey* because it isn't a preliminary injunction case and Plaintiff's lawsuit was not mooted by a change in policy. Here, by contrast, the LA Alliance obtained a legally enforceable SAO against the City and then later prevailed in establishing that the City breached the Agreement. The Court held that "as a sanction for the City's noncompliance, . . . Plaintiffs' efforts should be compensated." (Order at 56, 59.) This is exactly the type of judicially enforceable relief that entitles the LA Alliance to recover attorney's fees as the prevailing party.

The touchstone for whether a party "prevails" is whether the legal relationship is materially altered, which occurs when the "plaintiff becomes entitled to enforce a judgment, consent decree, or settlement against the defendant." *Fischer*, 214 F.3d at 1118. "A settlement agreement," in particular "meaningfully alters the legal relationship between parties if it allows one party to require the other party 'to do something it otherwise would not be required to do.'" *Jankey*, 537 F.3d at 1130 (quoting *Fischer*, 214 F.3d at 1118). The SAO in this case "meaningfully alter[ed] the legal relationship between the parties" as it requires the City to do something it otherwise would not be required to do—and has failed to do—including, *inter alia*, create 12,915 housing or shelter solutions, implement an approach of equitably distributing housing and shelter solutions throughout the City, provide quarterly status updates to the Court regarding its

6

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

progress with this Agreement, including the number of housing or shelter opportunities created or otherwise obtained, the number of beds or opportunities offered, and the number of beds or opportunities currently available in each Council District (*See* Settlement Agreement, ECF No. 429-1, at Hearing Exhibit # 25, hereinafter "Settlement Agreement".) As such, the LA Alliance is entitled to its attorney's fees and costs as the prevailing party for having to monitor and prove the City's ongoing non-compliance with the Settlement Agreement. *See Prison Legal News*, 608 F.3d at 451 ("[Section] 1988 authorizes [plaintiff] to recover attorney's fees for monitoring the state officials' compliance with the parties' settlement agreement."); *Joseph A. by Wolfe v. N.M. Dep't of Hum. Servs.*, 28 F.3d 1056, 1059 (10th Cir. 1994) ("Fees are also available to the prevailing party for post-judgment monitoring of a consent decree.")

The Court's analysis can and should end here. The City's only argument against awarding prevailing party attorney's fees is wrong as a matter of law. There is no question that Plaintiffs prevailed in the evidentiary hearing and through their successful monitoring efforts over the past 15 months. Considering the contempt basis for a fees award raises more issues, triggers a higher burden, invites additional and unnecessary appellate scrutiny, and enables the City to further delay and bog down this case by challenging the Court's underlying findings. A prevailing party award avoids these issues and narrows the appellate path for the City, while providing a sound legal basis for fees.

**B.     Fees and Costs Can Be Awarded as Contempt Sanctions as Well**

While the Court need not go here, the City's numerous violations of two separate court orders and its bad faith actions which led to and were on display during the evidentiary hearing caused Plaintiff substantial damage that it would not have incurred "but for the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017). The misconduct by the City was identified by the Court: breaches of the SAO (a

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

"court order" under *Kokkenen[3]*), disobeying the Court's separate Encampment Reduction Order (Order re Pl's Mot. re Settlement Agreement Compliance, ECF No. 874) ("ERO"), failing to provide reliable data, and lack of cooperation and responsiveness including days of wasted hearing time and "obfuscation and delay." (Order at 58.) This misconduct "forced Plaintiffs into the position of investigating and monitoring the numbers reported" (*Id.*) including multiple briefs, court hearings, and ultimately a seven-day evidentiary hearing resulting in the Court granting the Plaintiff's motion for settlement agreement compliance and finding that Plaintiff is entitled to an award of fees.

The City attempts to pigeon-hole Plaintiff out of fees the Court already determined Plaintiff was entitled to by conveniently ignoring nearly the entirety of the Court's order—a pattern all-too familiar to this Court and Counsel. *First*, the City disregards the Court's findings about the City's bad-faith actions; *second,* the City conveniently forgets that the Settlement Agreement was incorporated into the dismissal by court order, establishing continuing supervision, which makes any violation of the Settlement Agreement necessarily a violation of a "clear and definite" order; *third*, the City unsuccessfully claims it "substantially complied" with orders with which it clearly did not come close to complying; and *fourth,* it claims its actions were not "willful." None of these withstand scrutiny under the law or the Court's Order.

*First*, the City mischaracterizes the Alliance's argument as only claiming entitlement to fees as sanction for violation of a court order (see footnote *), but it ignores both references in the Alliance's motion to the City's perfidy underlying the need for the ongoing litigation and the multiple findings by the Court of the City's conduct that clearly constitute "bad faith, vexatious[], wanton[], [and] oppressive" misconduct (*see Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)):

---

[3] *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994)

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

- "The pattern is clear: documentation is withheld until exposure is imminent, public accountability is resisted until judicially mandated, and the truth of reported progress remains clouded by evasive recordkeeping. As the Court observed, these failures have undermined public trust and judicial trust alike." Order at 39.

- "[S]eeking accountability with the City of Los Angeles is like chasing the wind." *Id.*

- "[T]he City has repeatedly ignored the [data] errors or attacked the messenger instead of engaging with and correcting the issues. This pattern has persisted for years and is untenable . . .. The City's inability or unwillingness to verify its reporting . . . was on stark display during the evidentiary hearing. At no point during the costly and time-intensive seven-day hearing did the City attempt to substantiate its reporting which had been called into question by Special Master Martinez, in addition to other witnesses, and which A&M had not been able to replicate." *Id.* at 48.

- "The City wasted significant time during the hearing berating A&M for not adhering to certain governmental accounting standards even the City *agreed* to the standards used by A&M and *paid for* the Assessment. . . . the City has been on notice for years that its data collection and reporting is woefully insufficient but continues to ignore its responsibility to report accurate numbers to the Court." *Id.* at 49.

- "The City's refusal to provide updated plans, meet its milestones, correct its encampment reduction numbers, and verify its reporting has unnecessarily and unfairly wasted the resources of the Parties and the Court." *Id.* at 57.

- "The City's attempt to unilaterally change its definition of encampment reduction now ignores its past conduct and promise, the Court's prior Order, and the plain meaning of the Settlement Agreement." *Id.* at 54.

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

- "Days of the evidentiary hearing could have been avoided if the City had simply substantiated its own reports. The City refused to do so even during the seven-day hearing. Obfuscation and delay cannot be tolerated." *Id*. at 58.

- "[A] review of the record reveals missed milestones, neglected obligations, and a troubling lack of oversight. That neglect carries real consequences, borne most heavily by those with the least, by the people whose lives depend on those promises being fulfilled." *Id*. at 61.

Each of these describes behavior by the City that can only be described as bad faith. Courts may also award sanctions in the form of attorney's fees against an offending party if the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defined" or where the party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers*, 501 U.S. at 46. Likewise, sanctions are "justified when a party acts *for an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). And sanctions are appropriate where conduct is "tantamount to bad faith" meaning "recklessness combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Miller v. City of Phoenix*, 197 F. App'x. 624, 625 (9th Cir. 2006). Here, the City's actions and the Court's findings—all referenced by Plaintiff's moving papers—easily clear the "bad faith" standard articulated by the Supreme Court and Ninth Circuit. *See also* Intervenors brief, ECF No. 1022 at 8-11.

*Second*, having absolved itself of its years-long bad faith conduct, the City claims the "only possible order" it could have violated subjecting itself to sanctions is the ERO. (Opp. at 14.) But its counsel wholly ignores the fact that the SAO itself is a court order, having been incorporated into the Court's dismissal order under *Kokkonen. Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994) ("[T]he court is authorized to embody the settlement contract in its dismissal order or, what has the same effect, retain

10

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

jurisdiction over the settlement contract if the parties agree."); *Kelly v. Wengler*, 822 F.3d 1085, 1094 (9th Cir. 2016) ("When a court's order dismissing a case with prejudice incorporates the terms of a settlement agreement, the court retains ancillary jurisdiction to enforce the agreement because **a breach of the incorporated agreement is a violation of the dismissal order**.") (emphasis added); SAO at 3 (approving the Settlement Agreement "which is now incorporated in full into the Court's Order as though fully set forth herein" and retaining "jurisdiction for a period of five years to enforce the terms of the Settlement Agreement."). This fact was highlighted by Intervenors in closing arguments: "[W]hat is actually at issue in these proceedings, particularly related to the settlement agreement, is this court's order incorporating by reference the agreement between the City and the LA Alliance . . . It is incredibly important that this court entered an enforceable order in June 2022 that retained jurisdiction to enforce the terms of the agreement." (Transcript, Wednesday, June 4, 2025, ECF No. 976 at 217-18). And it was acknowledged by the City: "[T]his Court has inherent power to award the Alliance fees . . if it finds by clear and convincing evidence that the City was in contempt of the Agreement." (Opp. at 5) (citation omitted).

Thus, findings that the City violated the Settlement Agreement *are* findings that the City violated a "clear and definite" order of the court.[4] *Stone v. City and Cnty. of San Francisco*, 968 F.2d 850, 856 n 9 (9th Cir. 1992). And the Court expressly found that the City violated the SAO "in four ways":

> The City failed to provide a plan for how it intends to create 12,915 shelter or housing solutions. For years, the City consistently missed its shelter and housing creation milestones. The City also improperly reported encampment reductions and disobeyed the Court's order on

---

[4] The City cannot now argue that the Settlement Agreement or SAO is not "specific and definite" as the City participated in the drafting of the Agreement, signed it, stipulated to it, and jointly asked the Court to retain jurisdiction to enforce it for five years. *See* Opp., passim.

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

encampment reductions. Finally, the City flouted its reporting responsibilities by failing to substantiate its reporting and failing to provide accurate and comprehensive data when requested by the Court, Special Master Martinez, the Parties, and A&M."[5]

*Third*, the City claims there was no "clear and definite" order requiring it to comply with the Agreement but it nevertheless "substantially complied" (Opp. at 6-10.) The City is wrong on both accounts. As discussed *supra*, the Settlement Agreement itself is a "specific and definite" court order, having been incorporated into the Court's dismissal order, and thus claims by the City that it did not know what "encampment reduction" actually meant (6-8) or there was no order in place to require it to provide an accurate and complete bed plan, meet its milestones, or properly report its metrics (9-10) are disingenuous at best. Violations of the SAO are by their very nature violations of a court order. The Court in the ERO crystalized for the City the meaning of "encampment reduction" requiring the City to "only []report Encampment Reductions that have a more permanent meaning such that unhoused individuals are moved off of the street and given shelter and housing." (ERO at 2.) The City blatantly "ignore[d] the Order" and now avers it was not "clear" previously and therefore didn't track the right metrics. But the City admits it tracks offers of shelter and encampment reductions as part of the Inside Safe program (Opp. at 8) and yet still failed to report those "reductions" as part of the April status report. To-date it still has not "amend[ed] its prior reports to the Court" to accurately reflect reductions under the SAO. (Order at 52.) And in any case, if it failed to accurately track encampment reductions and that's the reason for the non-

---

[5] The City criticizes the Court for not identifying the standard by which it found violations (Opp. at 5-6) but the Court was not obligated to do so in the Order because it was not a civil contempt-sanction order. If the Court now chooses to award fees as sanctions for civil contempt, rather than as a prevailing party, the Court can and should now find the City committed misconduct—in terms of both violations of the orders and bad faith—by clear and convincing evidence. *See Matter of Battaglia*, 653 F.2d 419, 422 (9th Cir. 1981) ("In a civil contempt proceeding, the contempt must be proved by clear and convincing evidence.")

compliance, the failure to accurately track reductions is itself a violation. *See* Settlement Agreement Section 7.1.

And the City by no means "substantially complied" with the SAO or ERO portions identified. In *Dual-Deck*, cited by the City, sanctions were improper because the party made only "a few technical violations" of the order and "every reasonable effort [was] made to comply." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (vacating sanctions where, "despite its harmless technical violations, [the offending party] substantially complied with the order"); *see also Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir. 1982) (district court did not abuse its discretion in denying sanctions where "defendants had made every reasonable effort to comply with the court's order" because "Defendants' 'every reasonable effort' constituted substantial compliance."). Here Defendant City did not commit "a few technical violations" of the ERO or SAO—its violations were material and substantial. *See* Order at 37-56. And the City does not even claim to "have made every reasonable effort to comply" but argued in the evidentiary hearing (and continues to argue) it didn't have to comply in the first place. *See* Opp. at 11 (arguing it did not "willfully" miss milestones because it made "policy decisions" to invest in permanent supportive housing.)

The Court found the City violated court orders in five ways:

- "[F]ail[ure] to provide a plan for . . . 12,915 shelter or housing solutions." (violation of SAO) (ECF 991 at 56).

- Failure to meet its "shelter and housing creation milestones." (violation of SAO) (*Id.*)

- "[I]mproperly report[ing] encampment reductions" (violation of SAO) (*Id.*)

- "[D]isobey[ing] the Court's order on encampment reductions" (violation of ERO) (*Id.*)

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

- "[F]lout[ing] its reporting responsibilities by [both] failing to substantiate its reporting and failing to provide accurate and comprehensive data" (violation of SAO) (*Id.*)

***Encampment Reductions.*** Aside from ignoring the majority of the order and boldly claiming that the ERO is "the only order that the City could have even conceivably disobeyed willfully" (Opp. at 14), the City also both admits the ERO was "specific and definite" (*Id.* at 7) but somehow not "specific and definite enough" (*Id.* at 8.) The City to-date still has not reported the number of compliant reductions and therefore can hardly be in "substantial compliance" particularly when it admits it tracks Inside Safe offers and reductions and fails to report them. *Id.*

***Failure to Provide a Bed Plan***. The City's sole claim to substantial compliance is that it provided a plan which was less than two-thirds complete three years ago. Then it provided an updated plan, but withdrew it over political pressure. Over halfway through the five-year term of the SAO and we still do not have an updated bed plan with accurate timelines and complete numbers.

***Shelter and Housing Milestones***. The court delineated the significant deficit produced by the City since the inception of the Agreement which lasted for years and ranged from 62% to 30% at every reporting period. (Order at 43-44.) The April 15, 2025, reporting period still reflected a 58-bed gap, despite the City's last-minute scramble to add thousands of never-before-counted Inside Safe beds.[6] These are not "a few technical violations" but rather "inflicted material harm to the public and those living on the streets who were denied shelter or housing." *See* Order at 43.

---

[6] Many of which do not meet the definition of "create" as articulated by the City ("The word 'create' indicates that the City will create new beds that are not already in existence. *See, e.g.*, Webster's Dictionary, https://www.merriamwebster.com/dictionary/create ('create' means 'to bring into existence' and 'to produce or bring about by a course of action or behavior'; Black's Law Dictionary, 6th Ed. 1990 ('create' means 'to bring into being; to cause to exist; to produce'). Order at 45. Moreover any "booking agreement" beds which cannot be verified as actually utilized cannot be counted. Order at 47-48.

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

***Data Reporting and Verification***. Again, the City misses entirely that the SAO *is* an order when it claims that "the Court did not identify any court order that the City could have disobeyed" relating to data and reporting. (Opp. at 10.) And again, the City is woefully mistaken. Inherent in the SAO is that the data reported would be accurate and verifiable. And the Court explicitly found "[T]he City has been on notice for years that its data collection and reporting is woefully insufficient but continues to ignore its responsibility to report accurate numbers to the Court." (Order at 49.) No part of the Order lends itself to the conclusion that the City has substantially complied with its obligations.

*Fourth*, in a last-ditch effort to avoid accountability, the City claims its actions were not "willful" because they were based on a "good faith and reasonable interpretation of the Settlement Agreement." Given the years-long history of disputes related to encampment reduction, the incomplete bed plan, missed milestones and deadlines, and data obfuscation, this argument approaches frivolity. "Willfulness" has been defined by the Ninth Circuit as "disobedient conduct not shown to be outside the control of the litigant." *Fjelstad v. Am. Honda Motor Co., Inc.*, 762 F.2d 1334, 1341 (9th Cir. 1985). On encampment reduction, the City has known about the nature of its obligations since the SAO was entered and confirmed its understanding throughout the negotiations in 2023 and continuing through 2025 when it referred to reductions as "resolutions" paired with offers of shelter or alternative housing options. The Court put it best: "The City's attempt to unilaterally change its definition of encampment reduction now ignores its past conduct and promises, the Court's prior Order, and the plain meaning of the Settlement Agreement." (Order at 54.) Nothing about the milestones and deadlines are "optional or aspirational" (Order at 44) and no reasonable interpretation of the SAO could come to that conclusion. The City was aware of its obligation to provide an updated, complete bed plan since at least August of 2024 when the Court so-ordered and the City made a decision not to do so. (Order at 41.) And the City "has been on notice for years that its data collection and reporting is woefully insufficient but

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

continues to ignore its responsibility to report accurate numbers to the Court." (Order at 49.) The City's argument that its conduct was not "willful" because it made "policy decisions" (Opp. at 11) proves the point: its "decisions" were necessarily within "the control of the litigant" and therefore "willful." *Fjelstad*, 762 F.2d at 1341.

*Finally*, even if the orders were not "clear and definite" (they were), the City "substantially complied" (it did not), and its actions were not willful (they were), the City's bad faith actions in (i) "with[holding] documentation until exposure is imminent," (ii) "resist[ing]" "public accountability . . .until judicially mandated," (iii) maintaining data in an "evasive" manner which clouds "the truth of reported progress," (iv) "ignore[ing] the [data] errors or attack[ing] the messenger instead of engaging with and correcting the issues," (v) "wast[ing] significant time . . . berating A&M for not adhering to certain governmental accounting standards even though the City *agreed* to the standards . . . and *paid for the Assessment*,"(vi) "continuing to ignore its responsibility to report accurate numbers to the Court," (vii) "refusal to provide updated plans, meet its milestones, correct its encampment numbers, and verify its reporting has unnecessarily and unfairly wasted the resources of the Parties and the Court," (viii) "ignore[ing] past conduct and promise[s], the Court's prior Order, and the plain meaning of the Settlement" and attempting to "unilaterally change its definition of encampment reduction," and (ix) generally engaging in "obfuscation and delay" the totality of which "carries real consequences, borne most heavily by those with the least, by the people whose lives depend on those promises being fulfilled," mandates severe sanctions under *Chambers* and *Goodyear*.

### C.    The Requested Fees and Costs are Reasonable and Appropriate

Plaintiff's counsel's requested hourly rate, number of billers, hours billed, and costs expended are inherently reasonable and linked directly to the damages Plaintiff has incurred in enforcing the SAO. The hourly rate of $1295 per hour is consistent with the firm's standard hourly rate, with the hourly rate the City is paying its outside counsel, and with hourly rates charged by and awarded to other attorneys with commensurate

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

experience in this experience. *See* Pls.' Mem. in Supp. of Mot. for Att'y's Fees, ECF No. 1015 at 8-11, hereinafter "Memo"; Declaration of M. Umhofer, ECF No. 1015-1 at ¶ 21, hereinafter "Umhofer Decl."; Declaration of Sobel, ECF No. 1022-8. The number of billers was limited, with the vast majority of the work done by two partners and two paralegals (*Id.* at ¶ 21.) And the hourly bills have already been reviewed, with all work unrelated to the City's misconduct removed.[7] *Id.* at ¶ 20. No fees or costs have been submitted that would not have been incurred but-for the City's misconduct. *Id* at ¶¶ 17-20. Because the requested fees and costs are directly linked to the damages sustained by Plaintiff, the Court should award Plaintiff the entirety of the requests fees and costs, with optional multiplier and prospective fees awarded for the reasons articulated in Plaintiff's memorandum and herein.

The City throws the kitchen sink at Plaintiff's fees memorandum in an attempt to criticize and discredit Plaintiff's efforts and ultimately reduce the amount of fees it is required to pay. But in so doing it distorts the facts, re-writes history, and ignores binding authority. None of Defendant's kitchen-sink arguments hold water.

**1.    The City is Liable for Plaintiff's Fees and Costs Related to the City's Violations of the ERO and SAO and Its Bad Faith Actions**

The City yet-again attempts to improperly restrict Plaintiff's recovery by speciously claiming the "only order that the City could have even conceivably disobeyed willfully" is the ERO, ignoring entirely the Settlement Agreement as an enforceable court order under *Kokkonen*. Under the City's theory, Plaintiff would be limited to recovery only after the ERO issued in March, 2025, and only for that time directly related to the ERO. (Opp. at 13-17.) That claim is both factually and legally inaccurate: (i) because the SAO is also an order which was violated several times over, the City must reimburse Plaintiff for *all* its attorney's time spent related to *all* the City's misconduct—

---

[7] To the extent the Court wishes to review the totality of Plaintiff's counsel's bills to confirm irrelevant material was removed, or to review the redacted information, Plaintiff is happy to submit the totality of its fees to the Court for *ex parte in camera* review.

not just the ERO; (ii) the City is required under the Court's Order to also reimburse Plaintiff for the time spent enforcing the Settlement Agreement due to the City's "bad faith, wanton, vexatious" conduct, not just the violations of the SAO and ERO.[8] Order at 58; *Chambers*, 501 U.S. at 45-46

## 2. The City is Liable for All Fees Incurred Related to the City's Misconduct

The City criticizes the Alliance for claiming time for issues allegedly unrelated to the identified breaches but cites no authority supportive of such a complaint and for good reason: it cannot. Binding authority dictates that matters which are "related" meaning "involve a common core of facts" should be included in fee calculations regardless of whether Plaintiff was successful on the individual issue. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (The test is "whether relief sought on the successful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.") The only two items identified by the City as "unsuccessful"—the apex witness subpoenas, which were withdrawn only after sufficient evidence was elicited by Plaintiff to obviate the need, and the request for receivership—necessarily "involve a common core of facts," with the Alliance's efforts as a whole: seeking relief from the "course of conduct that gave rise to the injury" of the City's violations. Put another way, Plaintiff's counsel would never have spent time on either of these issues but-for the City's multiple

---

[8] The City also erroneously claims "[t]he Court expressly identified only one supposed instance of sanctionable misconduct" for disobeying the ERO. Opp. at 15. This is a blatant misrepresentation of the Order which specified that "Plaintiffs' efforts should be compensated" "[a]s a sanction for the City's noncompliance, *including* disobeying the Court's order on encampment reductions." Order at 59 (emphasis added). The violation of the ERO was *included* in the City's misconduct but the order for sanctions was in no way *limited* to that violation. *Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941) ("[T]he term 'including is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."); *Arizona State Bd. For Charter Sch. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1007 (9th Cir. 2006) ("In both legal and common usage, the word 'including' is ordinarily defined as a term of illustration, signifying that what follows is an example of the preceding principle.") The City's blatant misrepresentation of the Court's own order itself subjects the City to additional sanctions.

---

18

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

violations and misconduct. *See Goodyear Tire*, 581 U.S. at 109 (sanctions order limited "to the fees that party would not have incurred but for the misconduct.").

### 3. Plaintiff's Attorney's Fees Are Sufficiently Detailed and Unredacted to Permit the Court to Evaluate Reasonableness

The City claims Plaintiff's attorney's entries are "block billed" (Opp. at 14, 23) and "so heavily redacted" they are impossible to decipher (Opp. at 14, 16) but provides zero examples or specific objections to any actual entries because it cannot: the entries by counsel are appropriately detailed and minimally redacted such that court and counsel can still clearly evaluate the reasonableness of the fees. Attorneys are "entitled . . . to considerable secrecy" over work product and client communications, and redactions are appropriate where they "do not impair the ability of the court to judge whether the work was an appropriate basis for fees." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004). And even when counsel engages in "block billing" (it did not in this case), entries are "sufficient for the purpose of evaluating whether the total block-billed hours were reasonable as a whole." *Gilead Sci., Inc. v. Merck & Co., Inc.*, No. 13-CV-04057-BLF, 2017 WL 3007071, at *8 (N.D. Cal. July 14, 2017). Here the City does not identify a single objectionable entry as overly redacted or lacking in sufficient detail. Regardless, Plaintiff is willing to submit full, unredacted bills to the Court for *ex parte, in camera* review should the Court determine it needs additional information.

### 4. The Appropriate Standard for Determining Fees Award is "Reasonableness"

In any attorney's fee award the Court always starts with a lodestar analysis—this is true for a "prevailing party" award and a sanctions award. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("The customary method of determining fees . . . is known as the lodestar method. The lodestar determination has emerged as the predominate element of the analysis in determining a reasonable attorney's fee award. The 'lodestar' is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation by a reasonable hourly rate.") (citations omitted); *Matter of Yagman*, 796 F.2d 1165, 1184-85 (9th Cir.), *opinion amended on denial of reh'g sub nom. In re Yagman*, 803 F.2d 1085 (9th Cir. 1986) ("When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring into the reasonableness of the claimed fees. . . .**The measure to be used "is not actual expenses and fees but those the court determines to be reasonable**.") (emphasis added); *see also In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d 899, 926 (N.D. Cal. 2023) (In determining a sanctions award, "[a]fter a court estimates the amount of fees and costs incurred 'because of' the misconduct, it then determines whether that amount is reasonable by looking to the number of hours reasonably expended on the case . . . multiplied by a reasonable hourly rate.")

The cases tangentially cited by the City for its arbitrary claim that the Court should throw out the lodestar analysis are inapposite. *Keyes L. Firm, LLC v. Napoli*—a case out of the Fourth Circuit—did not discard the "reasonableness" analysis but rather distinguished the inquiry from a typical Section 1988 analysis: in a sanctions award the district court must "establish a causal link" between the sanctioned behavior and the fees awarded and ensure the fees are "reasonably necessary and proportionate to defend against the misconduct" while keeping the focus on "making the victim whole [n]ot on what amount of fees would have been reasonable relative to the value of the degree of success achieved in the case." 120 F.4th 139, 145 (4th Cir. 2024). *America Unites for Kids* likewise is entirely silent on the appropriate method of calculation of attorney's fees as sanctions. *See generally Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021).

In the case at bar, the requested hourly rate of $1295 per hour—a rate inherently reasonable as the "discount" rate charged by outside counsel to Defendant City—is nearly identical to Plaintiff's standard rate of $1250 per hour. Umhofer Decl. at ¶ 15. It is also in line with fees awarded to other counsel in this district of similar background

and experience. Memo at 8-11; *See also* Decl. of Carol Sobel, ECF No. 1022 at ¶ 8 (outlining various fee awards and noting as a solo practitioner she charges $1,450 per hour). In an attempt to undermine Plaintiff's requested rate, Defendant City attaches a fee request from Mr. Umhofer for a partner rate of $700 per hour in an unrelated case from 2024 (Opp. Exhibit 4, ECF No. 1023-04.) That fee request is wholly irrelevant: (i) it was a "reimbursement" request by a shareholder under the California Corporations Code, having nothing to do with "reasonableness" analysis, and (ii) the matter was indeed a "legacy" matter, the firm having represented the client for several years, and as a courtesy declining to increase the rates as the years went by despite the firm's rates (and expenses) nearly doubling. Umhofer Decl. at ¶ 15. A reimbursement request in another, unrelated matter with a far different standard is irrelevant to the lodestar analysis of "reasonableness" required here.

**5.      Plaintiff May Be Compensated For Time Spent On Fees Litigation**

Whether awarded as sanctions for the City's misconduct or as the prevailing party under Section 1983, Plaintiff may be awarded its fees for the time spent litigating the issue of sanctions and amount thereof ("fees-on-fees"). *Kinney v. Int'l. Bhd. of Elec. Workers*, 939 F.2d 690 (1991) ("fees are allowed for fee litigation . . . in suits under . . . 42 USC 1983" because "it would be inconsistent with the purpose of the Fees Act to dilute a fees award by refusing to compensate the attorney for the time reasonably spent in establishing and negotiating his rightful claim to the fee."); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 655 F. Supp. 3d at 925–26 ("A court may also award fees and costs incurred in moving for sanctions. These fees and costs are a result of the misconduct—were there no sanctionable conduct, there would have been no proceeding to impose sanctions, and no fees incurred in that proceeding.") (citing *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 631 (9th Cir. 2017); *Harper v. Nevada Prop. 1, LLC*, 552 F. Supp. 3d 1033, 1047 (D. Nev. 2021) ("If the Court finds it appropriate to impose sanctions under its inherent authority, there are several options available.. . . Attorney's fees would be recoverable for briefing a motion to enforce

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

settlement, attending a hearing on a motion to enforce settlement, and briefing the request for sanctions, including preparing the documentation underlying the calculation for such request."). The Ninth Circuit has approved sanctions "imposed by the district court" for "reasonable attorney's fees incurred by [] counsel in preparing [its] motion for sanctions" because that award "appear[ed] to be compensatory." *Am. Unites for Kids*, 985 F.3d at 1091.[9]

### 6.   Multiplier and Prospective Fees Awards Are Available

Plaintiff's goal in this litigation has always been to see "a substantial and meaningful reduction in unsheltered homelessness in the City of Los Angeles." (Proposed Stip. Order of Dismissal., ECF 429-1 at 2). Unfortunately, Defendant City, dead set on resisting any accountability to achieve such a reduction, has cost Plaintiff massive amounts of attorney time in reviewing and analyzing data and reports, frequent communications with the City and Special Master, oversight of the A&M assessment (which itself was a stipulated sanction for misconduct), drafting and filing of multiple briefs, and attendance at dozens of hearings. This culminated in a seven-day evidentiary hearing, the length of which was at least doubled by City's new counsel's incessant objections (nearly all of which were overruled), "berating A&M for not adhering to" standards which the City "*agreed to*" and "*paid for*" (Order at 49), and failure to "simply substantiate[] its own reports." (Order at 58). Plaintiff's counsel has sacrificed desirable working relationships to take this incredibly important case that no other firm would touch and has made a tremendous impact in the community. *See* Memo at 13-19. Prospective fees to ensure compliance—given the Court's order contemplating

---

[9] The two cases cited by the City criticizing fees-on-fees awards under the Court's inherent power are inapplicable, both in the bankruptcy context, and reliant on the Supreme Court's analysis of an outdated version of Fed. R. Civ. Proc. 11 which at the time permitted only "damages" awards but was subsequently amended to permit fees-on-fees awards: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." 11(c)(2); *Margolis v. Ryan*, 140 F.3d 850, 854-55 (9th Cir. 1998) ("The rule in *Lockary* . . . is no longer good law. The December 1, 1993 amendment to Rule 11 specifically allows a district court to include the costs associated with sanctions proceedings.")

substantial monitoring on a going forward basis and the City's already-filed appeal and announced intention to "seek to reform the settlement agreement"[10]—are also reasonable. Such fees are clearly available for "prevailing party" awards and the only case cited by the City to support its contentions that they are not available as part of a sanction award only reinforces Plaintiff's position: but-for the City's misconduct, Plaintiff would not be forced into a situation where it has to analyze and respond to new City plans, participate in a monitor selection process and follow up on data monitor issues, review compliance, and attend quarterly hearings; as such these fees are compensable under *Goodyear*, 581 U.S. at 109. ("The complaining party . . .may recover only the portions of his fees that he would not have paid but for the misconduct.")

> **7.    The Alliance's Costs, Including for Mr. Webster's Time, Are Reimbursable.**

Awarding costs to the Alliance, along with attorney's fees award, is a standard and appropriate sanction for a party's misconduct. *Chambers,* 501 U.S. at 42 (upholding award of fees *and costs* by the district court). One such cost is expert witness time, such as that which was expended by the Alliance for Mr. Webster's work on these issues. *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998) (confirming award of expert witness fees as sanction because the "district court fashion[ed] a sanction which [was] a direct response to the harm that the bad faith conduct of the attorney cause[d].").

Contrary to the City's claims, Mr. Webster was not in court as a client representative and only appeared as necessary when called. In 2024, he was paid only part-time, yet was required to spend additional time beyond the obligations for which he was paid working on issues related to enforcement of the SAO, specifically due to the City's multiple violations and misconduct. (Decl. of Paul C. Webster, ECF 1015-3, hereinafter "Webster Decl."). Beginning in January of 2025 he moved into a very part-

---

[10] Andrew Khouri & David Zahniser, *Law Firm That Sent L.A. a Big Bill in Homeless Case Wants $5 Million More for Its Work*, *Los Angeles Times* (Aug. 26, 2025), https://www.latimes.com/california/story/2025-08-26/gibson-dunn

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

time role (2 hours per week) with the Alliance and receives minimal compensation for his work, which does not cover any of the time spent dedicated to enforcement of the SAO, including the time spent as a witness in the evidentiary hearing. That time is tracked and billed separately and he is appropriately compensated as an expert witness/consultant. Webster Decl. at ¶¶ 3-4, Declaration of E. Mitchell at ¶ 6. Here, Mr. Webster spent significant time dedicated solely to the issues raised in the Order, none of which was covered by his minimal salary, and all of which has caused the Alliance direct damage and would not have been incurred "but for" the City's misconduct. *Goodyear*, 581 U.S. at 109.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff LA Alliance requests that because the Plaintiff is a prevailing party, and/or because the City, by clear and convincing evidence, breached two separate court orders and acted in bad faith, Plaintiff is entitled to its full fee award of $ $1,600,633 plus costs in the amount of $45,467.21, and consider a multiplier for good work and/or prospective fees given the uphill battle to hold the City accountable as no other entity can, or will.

Dated: August 29, 2025          Respectfully submitted,

                                */s/ Elizabeth A. Mitchell*
                                UMHOFER, MITCHELL & KING, LLP
                                Matthew Donald Umhofer
                                Elizabeth A. Mitchell

                                *Attorneys for Plaintiffs*

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief complies with the 25-page limit set forth in this Court's procedures, § 6, **"Length and format of motions**."

Dated: August 29, 2025          */s/ Elizabeth A. Mitchell*
                                UMHOFER, MITCHELL & KING, LLP
                                Matthew Donald Umhofer
                                Elizabeth A. Mitchell

                                *Attorneys for Plaintiffs*

*REPLY ISO PLAINTIFF LA ALLIANCE'S MEMORANDUM ISO ATTORNEY'S FEES*