GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a Municipal entity, et al.,<br><br>Defendant. | CASE NO. 2:20-cv-02291 DOC (KES)<br><br>Honorable David O. Carter,<br>United States District Judge<br><br>**DEFENDANT CITY OF LOS ANGELES'S OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES**<br><br>Action Filed:    March 10, 2020 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

LEGAL STANDARD......................................................................................................2

ARGUMENT ..................................................................................................................3

    I.    Intervenors lack clear and convincing evidence of bad faith....................3

        A.    The standard for finding bad faith is extremely demanding and requires proof by clear and convincing evidence. ....................3

        B.    Intervenors do not come close to demonstrating bad faith with clear and convincing evidence...................................................7

    II.    Intervenors have not carried their burden to prove what costs would not have been incurred but for the purported bad faith............................10

CONCLUSION..............................................................................................................12

Gibson, Dunn & Crutcher LLP

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Society*,
421 U.S. 240 (1975) ............................................................................................. 2

*America Unites for Kids v. Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ............................................................................ 10

*Autorama Corp. v. Stewart*,
802 F.2d 1284 (10th Cir. 1986) ............................................................................ 6

*Baker Botts L.L.P. v. ASARCO LLC*,
576 U.S. 121 (2015) ............................................................................................. 2

*Blixseth v. Yellowstone Mountain Club, LLC*,
854 F.3d 626 (9th Cir. 2017) ............................................................................. 11

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ..................................................................................... 1, 2, 11

*ConsumerDirect, Inc. v. Pentius, LLC*,
2023 WL 8876198 (C.D. Cal. Sept. 21, 2023) ..................................................... 6

*Doe 1 v. McAleenan*,
2019 WL 4963196 (N.D. Cal. Oct. 8, 2019) ........................................................ 5

*In re Dyer*,
322 F.3d 1178 (9th Cir. 2003) ............................................................................. 4

*Eastwood v. Nat'l Enquirer, Inc.*,
123 F.3d 1249 (9th Cir. 1997) ............................................................................. 6

*F.J. Hanshaw Ents., Inc. v. Emerald River Dev., Inc.*,
244 F.3d 1128 (9th Cir. 2001) ............................................................................. 6

*Fink v. Gomez*,
239 F.3d 989 (9th Cir. 2001) ....................................................................... 1, 4, 9

*Fox v. Vice*,
563 U.S. 826 (2011) ............................................................................................. 3

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1992) ..............................................................................12

*Gilead Sciences, Inc. v. Merck & Co.*,
2017 WL 3007071 (N.D. Cal. July 14, 2017) .........................................................11

*Gomez v. Vernon*,
255 F.3d 1118 (9th Cir. 2001) .............................................................................4, 5

*Goodyear Tire & Rubber Co. v. Haeger*,
581 U.S. 101 (2017).........................................................................2, 3, 10, 11

*In re Itel Securities Litig.*,
791 F.2d 672 (9th Cir. 1986) ...............................................................................4, 7

*Jorgensen v. Cassiday*,
320 F.3d 906 (9th Cir. 2003) ...................................................................................9

*Keyes Law Firm, LLC v. Napoli*,
120 F.4th 139 (4th Cir. 2024) ................................................................................10

*Korb v. Comm'r of Social Security*,
2016 WL 215542 (N.D. Cal. Jan. 19, 2016)............................................................5

*Lackey v. Stinnie*,
604 U.S. 192 (2025).................................................................................................3

*Lahiri v. Universal Music & Video Distrib. Corp.*,
606 F.3d 1216 (9th Cir. 2010) .............................................................................4, 6

*Lu v. United States*,
921 F.3d 850 (9th Cir. 2019) ...................................................................................3

*Lucas v. Jos. A Bank Clothiers, Inc.*,
217 F. Supp. 3d 1200 (S.D. Cal. 2016) ...................................................................6

*Martin v. DaimlerChrysler Corp.*,
251 F.3d 691 (8th Cir. 2001) ...................................................................................6

*Mendez v. County of San Bernardino*,
540 F.3d 1109 (9th Cir. 2008) .................................................................................7

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

**Page(s)**

*Orman v. Cent. Loan Admin. & Reporting,*
   2020 WL 919302 (D. Ariz. Feb. 26, 2020) ................................................................11

*Primus Auto. Fin. Servs., Inc. v. Batarse,*
   115 F.3d 644 (9th Cir. 1997) ...............................................................................1, 3, 4

*Shepherd v. Am. Broad. Cos.,*
   62 F.3d 1469 (D.C. Cir. 1995) ..................................................................................1, 6

*In re Southern Cal. Sunbelt Developers, Inc.,*
   608 F.3d 456 (9th Cir. 2010) .....................................................................................11

*Taggart v. Lorenzen,*
   587 U.S. 554 (2019) ......................................................................................................9

*Yukos Capital S.A.R.L. v. Feldman,*
   977 F.3d 216 (2d Cir. 2020) ........................................................................................6

*Zambrano v. City of Tustin,*
   885 F.2d 1473 (9th Cir. 1989) ....................................................................................5

**Statutes**

42 U.S.C. § 1988 ...................................................................................................................3

Cal. Evid. Code § 115 ...........................................................................................................6

Gibson, Dunn & Crutcher LLP

iv

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

**INTRODUCTION**

Intervenors seek $200,000 in attorneys' fees incurred participating in the recent evidentiary hearing held in this matter, but have failed to establish any basis for such a fee award.  This Court was clear that it was considering only one potential basis for awarding Intervenors fees:  its inherent power to punish certain litigation misconduct.  Such a sanction requires proof of "willful disobedience of a court order" (*i.e.*, contempt) or litigation conduct taken "in bad faith, vexatiously, wantonly, or for oppressive reasons."  Dkt. 991 at 58 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991)).  Eschewing any attempt to prove willful disobedience of a court order, Intervenors hinge their motion solely on assertions of bad faith.  Dkt. 1022 at 8–12.  Intervenors have a heavy burden to prove either subjective bad intent or recklessness combined with an additional factor like harassment, frivolousness, or other improper purpose by clear and convincing evidence.  *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995).  But Intervenors have not presented *any* evidence that the City acted in bad faith, let alone evidence that is clear and convincing.

That Intervenors have fallen far short of proving bad faith is not surprising.  Courts have inherent power to impose sanctions on a bad-faith theory only in "rare and exceptional case[s]" involving egregious misconduct.  *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).  Despite the parties' competing interpretations of the Settlement Agreement, no one has ever suggested that the City has engaged in harassment, deceit, or other manipulative behavior designed to gain an unfair advantage in these proceedings.  As a result, Intervenors have not satisfied the demanding *Chambers* standard for any award of fees.

Even if Intervenors could demonstrate bad faith, the maximum permissible fee award would be much smaller than what they seek.  The only order that this Court has suggested could support sanctions under *Chambers* is the City's supposed disobedience of the encampment-reduction order from March 2025.  Dkt. 991 at 59.  The City

Gibson, Dunn & Crutcher LLP

1

respectfully disagrees that the law or facts support a finding of civil contempt of (or bad faith relating to) that order. Up until now, Intervenors disputed that the agreement between the Alliance and the City as to encampment reductions was even enforceable before flipping positions and seeking sanctions for supposed noncompliance. But if one accepts that noncompliance with that March 2025 order could justify a sanctions award, any award must compensate Intervenors only for actual expenses that would not have been incurred but for the supposed noncompliance with the encampment-reduction order. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017). Under the *Goodyear* standard, the maximum fees that can be awarded to Intervenors—excluding heavily redacted entries and hours related to this fees motion—is $67,081.

In short, the Settlement Agreement does not authorize fees to encourage voluntary participation in this case nor offer a bounty to Intervenors to monitor compliance with a contract between the City and the Alliance. Intervenors have every right to participate in these proceedings. But they have no right to force the City to pay for their attendance in court, absent a showing that they have not and cannot make. The Court should deny the motion and award Intervenors zero fees.

## LEGAL STANDARD

Courts follow "'the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.'" *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015). When neither a statute nor contract authorizes fee-shifting, a court has a limited inherent power to "assess attorneys' fees for the 'willful disobedience of a court order'" or for litigation conduct undertaken "'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975). Courts exercise these inherent powers to sanction "with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

Even when a party shows willful disobedience or bad-faith conduct, that party is not entitled to shift all of its fees. The award must be compensatory, which means that

a party "may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017) (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)); *see* Dkt. 991 at 59. A party seeking fees therefore must demonstrate whether a given fee "would or would not have been incurred in the absence of the sanctioned conduct." *Goodyear*, 581 U.S. at 110. If the fee "would have been incurred even absent" the supposedly sanctionable conduct, "it cannot be part of" an award. *Lu v. United States*, 921 F.3d 850, 860 (9th Cir. 2019).

## ARGUMENT

### I.    Intervenors lack clear and convincing evidence of bad faith.

This Court has signaled a willingness to award fees as "a sanction for the City's noncompliance" with the Settlement Agreement. Dkt. 991 at 59. Specifically, this Court stated that the City willfully disobeyed its March 2025 order that encampment reductions must be accompanied by an offer of shelter because the City "failed to amend its prior reports to the Court" and did not change its reporting for "its April 15, 2025 quarterly status report." *Id.* at 52. Intervenors try to recharacterize this and other litigation conduct as supposed bad faith by the City, but they have failed to satisfy the extremely stringent standard that limits this Court's inherent power to punishing only egregious litigation misconduct.*

### A.    The standard for finding bad faith is extremely demanding and requires proof by clear and convincing evidence.

"The bad faith requirement sets a high threshold." *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Such "sanctions should be reserved for

---

* In a passing footnote, Intervenors contend that they are also entitled to fees under 42 U.S.C. § 1988 as a prevailing party in a § 1983 action. Dkt. 1022 at 7 n.1. But this Court lacks authority to shift fees under § 1988 for reasons that the City has already explained at length. Dkt. 1023 at 20–25. Although Intervenors refer to a settlement agreement in a different case that resolved a § 1983 case, Intervenors did not prove a violation of that settlement agreement in this case, much less the resolution of § 1983 claim in their favor, as required for prevailing-party status. *Lackey v. Stinnie*, 604 U.S. 192, 200–07 (2025).

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

Gibson, Dunn & Crutcher LLP

the 'rare and exceptional case where'" a party's behavior is "'clearly frivolous, legally unreasonable or without legal foundation" or tied to "'an improper purpose.'" *Id.* at 649. Bad faith is clear cut when a party's misconduct is "substantially motivated by vindictiveness, obduracy, or *mala fides*." *In re Itel Securities Litig.*, 791 F.2d 672, 675 (9th Cir. 1986). Although bad faith does not necessarily require proof of such subjectively malicious intent, a finding of bad faith requires "something more egregious than mere negligence or recklessness." *In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003). Even reckless conduct rises to the level of bad faith only when "combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).

Bad faith that justifies sanctions often involves "an attempt to influence or manipulate proceedings" to gain an unfair "tactical advantage." *Fink*, 239 F.3d at 994. In *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216 (9th Cir. 2010), for example, an attorney "acted recklessly and in bad faith in pursuing a frivolous copyright claim for five years" and made "repeated misrepresentations" of the applicable law. *Id.* at 1221. The attorney even retained the judge's former law firm in an attempt to force the district judge to recuse and thereby forestall a sanctions motion. *Id.* at 1221. The Ninth Circuit upheld a bad-faith finding based on this "manipulative tactic," as well as the misrepresentations. *Id.* at 1222. Similarly, in *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001), defense counsel received and read copies of numerous privileged communications between the plaintiffs and their counsel over the course of several months. *Id.* at 1124–25. Defense counsel knew that the documents might be privileged but did not inform opposing counsel that the defendant had the documents. *Id.* at 1124. This unethical behavior was made even worse when defense counsel ignored explicit advice from the state bar to stop reading the communications and turn them over to the court. *Id.* at 1124–25. The Ninth Circuit upheld the district court's finding of bad faith and subsequent imposition of sanctions under its inherent authority, reasoning that the attorneys "bypassed questions of ethics in an effort to gain advantage in [the] litigation."

*Id.* at 1134.

Behavior that is not calculated to deceive, manipulate, or otherwise gain an unfair advantage usually does not amount to bad faith. In *Zambrano v. City of Tustin*, 885 F.2d 1473 (9th Cir. 1989), for instance, the Ninth Circuit reversed an award of sanctions imposed on an attorney who inadvertently failed to become a member of the district court's bar before appearing at trial. *Id.* at 1475. The Ninth Circuit suggested that the attorney did not act in bad faith because the evidence did not "suggest[ ] that he had any cause to avoid the requirements of the local rules." *Id.* at 1483. And in *Korb v. Commissioner of Social Security*, 2016 WL 215542 (N.D. Cal. Jan. 19, 2016), the government's refusal to "treat its procedural or discovery obligations with the seriousness and diligence they demanded" did not amount to bad faith. *Id.* at *5. The district court had ordered the government to produce records of the plaintiff's social security checks. *Id.* at *3. The government did not provide the records, citing an inability to access the information. *Id.* Several months later, however, the government learned of a database through which it could access the information and belatedly produced the records. *Id.* This conduct, though reckless, did not evince bad faith absent "an additional factor, 'such as frivolousness, harassment, or an improper purpose.'" *Id.* at *5. The government had not deceived the court or otherwise sought an unfair advantage because it "did not have actual knowledge of the existence" of the evidence. *Id.*; *see also Doe 1 v. McAleenan*, 2019 WL 4963196, at *5 (N.D. Cal. Oct. 8, 2019) (no finding of "bad faith warranting sanctions under the Court's inherent authority" in case involving the clawback of a document produced pursuant to discovery order).

A party seeking sanctions under *Chambers* also must prove bad faith by clear and convincing evidence. Because "[t]he Supreme Court has recognized that awards of attorneys' fees for bad faith conduct serve the same punitive and compensatory purposes" as civil contempt, several circuits have "require[d] clear and convincing evidence of misconduct before imposing attorneys' fees under their inherent power." *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1477 (D.C. Cir. 1995); *accord, e.g., Yukos*

*Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 695 (8th Cir. 2001); *Autorama Corp. v. Stewart*, 802 F.2d 1284, 1288 (10th Cir. 1986). That heightened standard reflects that "courts are quite hesitant"—properly so when exercising inherent power—to impose sanctions for bad faith "unless the evidence is remarkably supportive of such a proposition." *Autorama*, 802 F.2d at 1288. Although the Ninth Circuit to date has reserved the question, its decisions suggest that clear and convincing evidence is the appropriate standard because the contempt rules guide the "determination of what procedural protections are necessary in imposing sanctions under a court's inherent powers." *F.J. Hanshaw Ents., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137, 1143 n.11 (9th Cir. 2001); *see, e.g.*, *Lahiri*, 606 F.3d at 1219; *see also, e.g.*, *ConsumerDirect, Inc. v. Pentius, LLC*, 2023 WL 8876198, at *6 (C.D. Cal. Sept. 21, 2023) (applying "the clear and convincing standard" to bad-faith determination); *Lucas v. Jos. A Bank Clothiers, Inc.*, 217 F. Supp. 3d 1200, 1204 (S.D. Cal. 2016) (noting that "most courts that have considered the issue apply the clear and convincing evidence standard").

This Court never purported to apply the heightened clear-and-convincing-evidence standard in its order resolving the Alliance's motions. *See generally* Dkt. 991. The Court could enforce the Settlement Agreement without applying a heightened standard of proof because the default rule for contract enforcement under California law is "proof by a preponderance of the evidence." Cal. Evid. Code § 115; *see* Dkt. 1023 at 6. But this Court cannot go a step further and award attorneys' fees as a sanction for any breach of the Settlement Agreement without a determination by clear and convincing evidence that the City engaged in sanctionable misconduct. Because the clear-and-convincing-evidence standard demands "far in excess of the preponderance sufficient for most civil litigation," Intervenors have a "'heavy burden'" to adduce the kind of overwhelming evidence necessary to prove bad faith. *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1252 (9th Cir. 1997).

Gibson, Dunn & Crutcher LLP

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

**B.    Intervenors do not come close to demonstrating bad faith with clear and convincing evidence.**

Intervenors have not met their heavy burden to justify sanctions on a bad-faith theory under *Chambers*.  They don't suggest that the City was "motivated by vindictiveness" or any other similarly culpable mental state.  *Itel*, 791 F.2d at 675.  None of the three issues that Intervenors highlight—how the City "created" shelter in the Settlement Agreement, the reporting of encampment reductions, and the general verification of data—comes close to clear and convincing evidence that the City sought to obstruct or prolong proceedings in bad faith.

First, Intervenors suggest that the City acted in bad faith by not reporting how the City "create[d]" each shelter and housing solution in § 3.1 of the Settlement Agreement.  Dkt. 1022 at 10.  But the Settlement Agreement required only that the City report, as relevant, "the number of housing or shelter opportunities created or otherwise obtained"—not *how* the opportunities were created or obtained.  Dkt. 429-1 § 7.1.  Nor did the City engage in bad faith by declining Intervenors' invitation to report additional information on the City's role of ensuring the availability of that shelter or housing.  Dkt. 1022 at 10.  While this Court later ordered the City to "include an explanation for each unit that already physically existed prior to the Settlement Agreement of how the City contributed to bringing that unit into existence as a shelter or housing solution for people experiencing homelessness as opposed to its prior use" beginning in October 2025, the Court remarked that this new reporting obligation would "ensure compliance moving forward" without suggesting that the City had breached any obligation, let alone acted in bad faith, by not volunteering additional reporting on its own.  Dkt. 991 at 46.  This Court never "unambiguously communicated" before that order that the City had any duty to report information about how it "created" shelter and housing solutions was to the City, so Intervenors cannot prove bad faith on this theory.  *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1132 (9th Cir. 2008).

Second, Intervenors suggest that the City reported encampment reductions in bad

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

faith without substantiating offers of shelter. Dkt. 1022 at 10–11. That theory of bad faith has the same flaws as the Alliance's attempt to prove willful disobedience on this ground. Dkt. 1023 at 10–11. Any noncompliance with the Court's encampment-reduction order was based on the City's good-faith, reasonable, and textually faithful interpretation of that order. The Court's March 2025 order stated that "[t]he City may not report clean-ups from programs such as Care or Care+ as Reductions to prove compliance with the Settlement Agreement because they are not permanent in nature" and that "cleaning an area, only to have unhoused individuals move back in without offers of shelter or housing, is not a 'Resolution' or Encampment 'Reduction' and shall not be reported as such." Dkt. 874 at 2. But the Court further indicated that it would decide the remainder of the issues after oral argument at the March 27 hearing. *Id.* During that hearing, the City argued that the order granted relief the Alliance did not request in its motion and was contrary to the agreement reached between the City and the Alliance, and Intervenors also argued there was no agreement the Court could enforce—the exact opposite position from the one they now take. Dkt. 878 at 109:5–119:20. The Court took the matter under submission, *id.* at 119:22–23, and did not enter a subsequent order before the evidentiary hearing. At that point, the City's reporting obligations remained a moving target.

Even in the face of this uncertainty, the City complied with its reporting obligations as best as it could, filing a quarterly report in April 2025 that contained data it had collected from January 1, 2024, through March 31, 2025, Dkt. 892 at 1, a period that began more than a year before and ended only seven days after this Court's March 2025 encampment-reduction order, Dkt. 874. At that point, the City could not turn back the clock and collect data under this Court's newly announced interpretation of what qualifies as a reduction. Even if the City's inclusion of reductions other than those accompanied by an offer of shelter in the quarterly report was contrary to the March 2025 order, that inclusion was based on a mistaken interpretation of the order, not bad faith.

Gibson, Dunn &
Crutcher LLP

8

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

Intervenors cannot prove any deception that might indicate bad faith with clear and convincing evidence because there is zero evidence of any improper motive. In fact, everything about the City's conduct with respect to its encampment reporting demonstrated its commitment to transparency. The City was upfront with the Court that its historical data did not necessarily reflect an offer of shelter. Dkt. 991 at 51. And as the Court correctly determined, the City's obligations under the Settlement Agreement are currently paused under § 8.2—the provision that pauses obligations in the event of fires, large scale civil disturbances, or fiscal emergencies. *Id.* at 55. The City had a subjectively good-faith basis not to change how it was reporting encampment reductions during this pause. *See Taggart v. Lorenzen*, 587 U.S. 554, 561–62 (2019) (explaining that "subjective intent" governs "bad faith" determination under *Chambers*).

Third, Intervenors contend generically that an evidentiary hearing occurred because of the City's supposed "intransigence related to providing transparency and accountability about its compliance with the Settlement Order." Dkt. 1022 at 9. But arguing that purported issues in data collection and reporting were a but-for cause of the hearing does not prove an "additional factor such as frivolousness, harassment, or an improper purpose" that is required for bad faith. *Fink*, 239 F.3d at 994. While they use the rhetoric of "intransigence," Intervenors do not suggest, much less prove by clear and convincing evidence, that the City intended to harass with its data-reporting practices, deceived the parties or the Court, frivolously depleted Intervenors' resources, or otherwise sought an unfair advantage in these proceedings. In fact, as reflected in the testimony at the hearing and in this Court's orders, the verification issues largely (if not entirely) concerned data in the possession of LAHSA. Dkt. 991 at 48–49; *see id.* at 11–25, 25–26. This Court cannot sanction the City on the theory that LAHSA, a separate legal entity, withheld data from Intervenors. Dkt. 983 at 44; *see Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (no sanctions for conduct that is "'outside the control of the litigant'").

In short, Intervenors have not proved—and cannot prove—by clear and

Gibson, Dunn & Crutcher LLP

9

OPPOSITION TO INTERVENORS' MOTION FOR ATTORNEYS' FEES
2:20-cv-02291 DOC (KES)

convincing evidence that the City acted in bad faith at any point in these proceedings. The Court should deny Intervenors' motion for attorneys' fees in full because of their failure to establish any basis for sanctioning the City under the Court's inherent powers.

## II.   Intervenors have not carried their burden to prove what costs would not have been incurred but for the purported bad faith.

If the Court is nevertheless inclined to award fees under *Chambers*, Intervenors' requested figure flouts multiple limitations of the exacting causation requirement from *Goodyear*. This Court already outlined the but-for standard that governs Intervenors' request for fees under *Chambers*. Dkt. 991 at 58–59. The Court can impose a civil sanction under its "'inherent powers'" only to compensate a "wronged party 'for losses sustained'" and "may not impose an additional amount as punishment for the sanctioned party's misbehavior." *Goodyear*, 581 U.S. at 108. And unlike "a standard fee-shifting statute providing 'reasonable attorneys' fees,'" the "purpose of sanctions is not to reward lawyers for the value of their work." *Keyes Law Firm, LLC v. Napoli*, 120 F.4th 139, 145 (4th Cir. 2024). The focus under *Chambers* is not reasonableness—the touchstone in a typical fee application—but instead "making the victim whole." *Id.* Under that framework, any sanction imposed on the City "may go no further than to redress the wronged party 'for losses sustained' and may not impose any additional consequence as punishment for the sanctioned party's behavior." *America Unites for Kids v. Rousseau*, 985 F.3d 1075, 1089 (9th Cir. 2021).

Intervenors bear the burden of showing that they have requested only fees that were "incurred *because of* the misconduct at issue." *Goodyear*, 581 U.S. at 108 (italics added). In all cases, this but-for causation standard requires the moving party to identify "whether a given legal fee" "would or would not have been incurred in the absence of the sanctioned conduct." *Id.* at 110. A court may "shift all of a party's fees, from either the start or some midpoint of a suit, in one fell swoop" only in "exceptional cases" that meet the but-for test, such as when a party's "'entire course of conduct throughout the lawsuit'" was sanctionable or when misconduct caused all fees after a set date. *Id.* at

110–11 (quoting *Chambers*, 501 U.S. at 50).

The Court expressly identified only one supposed instance of sanctionable misconduct: "disobeying the Court's order on encampment reductions." Dkt. 991 at 59. The City reiterates its position that it did not willfully disobey this Court's encampment-reduction order or engage in bad faith when reporting encampment reductions in its April quarterly report. But even on the premise that *Chambers* would allow a targeted compensatory award for disobedience of the encampment-reduction order, any award of fees should be strictly limited to fees that Intervenors would not have incurred but for the City's supposed disobedience of that order. Any such compensatory award would be calculated for a substantially reduced number of hours.

To begin, Intervenors' billing records include several line items that should not be included in a compensatory award under *Chambers* and *Goodyear*. An award of fees cannot include entries so heavily redacted that the City and Court cannot assess their relationship to the encampment order. *See Gilead Sciences, Inc. v. Merck & Co.*, 2017 WL 3007071, at *9 (N.D. Cal. July 14, 2017). Intervenors also seek fees for the time spent preparing its fee motion even though "[o]nly the direct costs" of responding to sanctionable conduct, "and not fees-on-fees, may be included in an award under the court's inherent power." *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 630 (9th Cir. 2017) (citing *In re Southern Cal. Sunbelt Developers, Inc.*, 608 F.3d 456, 466–67 (9th Cir. 2010)); *see also Orman v. Cent. Loan Admin. & Reporting*, 2020 WL 919302, at *6 (D. Ariz. Feb. 26, 2020) (denying recovery of fees-on-fees from party sanctioned under the court's inherent authority). Removing those entries from Intervenors' billing records nets entries totaling $167,702.50. Hamburger Decl., Ex. A at 7.

Even then, Intervenors still would have incurred many of the remaining hours "without the [City's purported] misconduct." *Goodyear*, 581 U.S. at 108. The issues litigated in this case since March 24, 2025, have been numerous and diverse. The evidentiary hearing lasted seven days, with only a fraction of that time devoted to issues

involving the City's reporting of encampment reductions. Intervenors' arguments and the Court's order provide a sense of the relative importance of the encampment issue. The transcript of Intervenors' closing argument spanned roughly 20 pages, of which roughly 8.5 pages (42%) discuss encampment-reductions reporting. Dkt. 976 at 220–28. In its post-hearing brief, Intervenors devoted only 10 of 25.5 pages—roughly 40%—to the encampment-reduction provision. Dkt. 985 at 13–23. And the Court's post-hearing order dedicates just 4 out of 62 pages (6.5%) to this topic. Dkt. 991 at 51–54.

The Ninth Circuit has recognized that "across-the-board percentage cuts" can be "'a practical means of trimming the fat from a fee application.'" *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). Here, a sensible benchmark would be that roughly 40% of Intervenors' fees generally related to the Settlement Agreement were devoted to the reporting of encampment reductions. This benchmark almost certainly exceeds the share of hours billed for participation in the hearing that were related to the encampment issue and would generously exceed this Court's determination that encampment-reduction reporting was one of four adjudicated breaches. Accordingly, Intervenors should be compensated no more than $67,081.

## CONCLUSION

The Court should deny Intervenors' motion for attorneys' fees. In the event that the Court awards any fees, the amount should be no more than $67,081.

DATED: September 5, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theane Evangelis*
Theane Evangelis

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS McRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*