Shayla R. Myers (SBN 264054)
Isabelle M. Geczy (SBN 349594)
**LEGAL AID FOUNDATION
OF LOS ANGELES**
1550 W. 8th St
Los Angeles, CA 90017
Tel: (213) 640-3983
       (323) 801-7990
Email: smyers@lafla.org
        igeczy@lafla.org

Carol A. Sobel (SBN 84483)
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Ave.
Santa Monica, CA 90401
Telephone: (310) 393-3055
Email: carolsobel@aol.com

*Attorneys for Intervenors*
*Additional Counsel listed on next page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et. al.*<br>    Plaintiff(s),<br><br>v.<br><br>City of Los Angeles, *et. al.*<br>    Defendant(s). | CASE NO.: 20-CV-02291-DOC-KES<br><br>Hon. David O. Carter<br><br>**INTERVENORS' REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES (DKT. 1022)**<br><br>Action Filed: March 10, 2020 |

*Additional Counsel*

Catherine Sweetser (SBN 271142)
**SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: (310) 396-0731
Email: catherine.sdshhh@gmail.com

Brook Weitzman (SBN 301037)
William Wise (SBN 109468)
**ELDER LAW AND DISABILITY RIGHTS CENTER**
1535 E. 17th Street, Suite 110
Santa Ana, California 92705
Tel: (714) 617-5353
Email: bweitzman@eldrcenter.org
Email: bwise@eldrcenter.org

*Attorneys for Orange Catholic Worker*

# TABLE OF CONTENTS

I.    INTRODUCTION ...............................................................................................6

II.   THERE IS CLEAR AND CONVINCING EVIDENCE OF THE CITY'S MISCONDUCT TO SUPPORT A SANCTIONS AWARD OF FEES..............7

      A.    Intervenors Bring this Motion Based on the City's Misconduct, All of Which is Sanctionable ....................................................................................8

      B.    There Is Clear And Convincing Evidence of the City's Willful Disobedience ............................................................................................10

      C.    There Is Clear And Convincing Evidence of the City's Additional Misconduct .................................................................................................12

      D.    Intervenors are Entitled to the Fees Incurred But for the City's Misconduct .................................................................................................14

III.  INTERVENORS ARE ENTITLED TO ALL THEIR REQUESTED FEES ...15

      A.    The City's Misconduct was the But For Cause of Intervenors' Fees Associated with the Evidentiary Hearing.................................................16

      B.    The Court May Award Fees for Intervenors' Fees (Dkt. 1022) and this Reply............................................................................................................17

      C.    The "Several Line Items" in Intervenors' Fee Request Were Redacted Properly .......................................................................................................19

IV.   CONCLUSION................................................................................................19

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

# TABLE OF AUTHORITIES

## Cases

*Abrams v. Sequium Asset Sols., LLC*, 2023 U.S. Dist. LEXIS 58378 (W.D. Wash. 2023) ................................................................................17

*Battaglia v. United States*, 653 F.2d 419 (9th Cir. 1981) .........................................10

*Blisxeth v. Yellowstone Mt. Club, LLC*, 854 F.3d 626 (9th Cir. 2017)....................18

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).................................................7, 9, 14

*Colorado v. New Mexico*, 467 U.S. 310 (1984).......................................................10

*Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) ..................11

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ........................................................7, 9

*F.J. Hanshaw Enters., Inc. v. Emerald River Dev. Inc.*, 244 F.3d 1128 (9th Cir. 2001) ......................................................................13

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992)........................................17, 18

*Gilead Sciences, Inc. v. Merck & Co.*, 2017 U.S. Dist. LEXIS 110797 (N.D. Cal. July 14, 2017)...........................................................................19

*Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101 (2017) ......................*passim*

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...........................................................19

*Hutto v. Finney*, 437 U.S. 678 (1978).......................................................9, 12, 13, 14

*Ibrahim v. United States Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019) ........................................................................9

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003)..............................................................10

*In re Lehtinen*, 564 F.3d 1052 (9th Cir. 2009)........................................................13

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

*In re Southern Cal. Sunbelt Developers. Inc*., 608 F.3d 456 (9th Cir. 2010).........18

*Kelly v. Wengler*, 979 F.Supp.2d 1104 (D. Idaho 2013) .........................................10

*Lahiri v. Universal Music & Video Distrib. Corp.*,
606 F.3d 1216 (9th Cir. 2010) .....................................................................13

*Orman v. Cent. Loan Admin. & Reporting*, 2020 U.S. Dist. LEXIS 32646
(D. Ariz. Feb. 26, 2020)...............................................................................18

*Primus Auto Fin. Servs. v. Batarse*, 115 F.3d 644 (9th Cir. 1997)........................12

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ...............................................9

**Other Authorities**

Fed. R. App. P. 38 .......................................................................................18
Fed. R. Civ. P. 11 ........................................................................................18

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

## I.   INTRODUCTION

At this Court's invitation, Intervenors in this case seek attorney's fees to compensate them for the work performed by their attorneys, to the exclusion of other work on behalf of Intervenors and their members. They do so after this Court found that the City had engaged in sanctionable misconduct, including willfully disobeying its recent court order related to encampment reductions. Based on those findings, the Court invited Intervenors, along with Plaintiffs, to seek an award of fees if they could show they were harmed by the City's misconduct. Intervenors made that showing—a fact the City does not contest.

Yet in opposition to Intervenors' motion, the City argues that Intervenors are still not entitled to any fees at all—not because Intervenors were not harmed by the City's misconduct or even that the fees were unreasonable. Instead, the City argues that Intervenors abandoned their reliance on the City's willful disobedience to support a fee award and that Intervenors failed to prove, by "clear and convincing evidence," that the City acted in bad faith. The City's arguments completely miss the mark.

First, the City's argument that Intervenors are relying solely on the City's "bad faith" to support the fee award completely ignores the fact that the Court already found willful disobedience, as outlined in its June 24, 2025 Order Granting In Part and Denying In Part Plaintiffs' Motion for Settlement Compliance, Dkt. 991 ("Sanctions Order"). The Court invited Intervenors and Plaintiffs to move for fees if they could show they were harmed by that misconduct. Intervenors were not required to prove willful disobedience yet again. The City's argument is simply another instance in which the City has refused to accept this Court's prior rulings and attempts, in subsequent briefing, to get another bite at the apple. This is precisely the conduct that supported this Court finding of "willful disobedience" of the March 24, 2025 encampment reduction order. Here, the City goes even further, attempting to argue that Intervenors should be punished for taking the Court at its word and not relitigating its prior findings.

Likewise, the City attempts to get out from under this Court's ruling by arguing the

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

Court did not find that clear and convincing evidence supports the Court's imposition of sanctions. Even assuming that is the applicable standard, there is ample evidence in the record to explicitly find that clear and convincing evidence supports the award.

Finally, the City attempts to deconstruct the evidentiary hearing and related briefing to argue that Intervenors are entitled to only a fraction of the requested fees—not because the requested rate or hours are unreasonable—the City implicitly concedes that they are reasonable—but because the award should be based only on a single finding in the Court's order and the work it deems related to that order. There is no merit to this argument either.

This Court's Sanctions Order is clear that the City engaged in misconduct that warrants sanctions. Intervenors have more than met their burden of showing that the conduct harmed them, and as a result, they are entitled to the fees requested.

## II. THERE IS CLEAR AND CONVINCING EVIDENCE OF THE CITY'S MISCONDUCT TO SUPPORT A SANCTIONS AWARD OF FEES

As this Court previously found in its Sanctions Order and as Intervenors outlined in their opening brief, this Court has the authority to issue attorney's fees as sanctions for the whole range of misconduct that the Court found the City engaged in following the parties' presentation of evidence and arguments as part of the evidentiary hearing related to Plaintiffs' motion for sanctions. Sanctions Order at 59; 1022 at 8-11. Under its inherent powers, a district court may levy sanctions for "willful disobedience of a court order…or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fink v. Gomez*, 239 F.3d 989, 991-993 (9th Cir. 2001). "Sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Id.* at 994. Courts have the ability to address the full range of litigation abuses through their inherent powers, including "when a party when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

**A.    Intervenors Bring this Motion Based on the City's Misconduct, All of Which is Sanctionable**

As an initial matter, the City's attempt to argue that Intervenors have "eschewed arguments related to willful disobedience" or that Intervenors and Plaintiffs seek attorney's fees under different standards is not well taken. Defendant City of Los Angeles's Opposition to Intervenors' Motion for Attorneys' Fees, Dkt. 1030 at 6 ("City Opp."), 13; *see also* Dkt. 1023 at 5, n*. It misrepresents the task given to Intervenors and Plaintiffs by the Court, and is little more than an attempt to—yet again—escape a prior ruling by this Court. The City's brief ignores the fact that Court already found that the City willfully disobeyed its March 24, 2025 order and determined that this conduct was one of the grounds for sanctions, including the payment of attorney's fees. *Id.* Based on its finding of sanctionable conduct, the Court found that Intervenors and Plaintiffs were entitled to fees if they could show they were harmed by this misconduct. Sanctions Order at 59. Therefore, the task required of the Intervenors and Plaintiffs was to show harm and that the City's misconduct was the "but for" cause of that harm, not relitigate the question of whether the City's conduct warranted sanctions, which Intervenors did in their brief.

The City's attempt to now mischaracterize Intervenors' argument as focusing only on "bad faith" to the exclusion of "willful disobedience" is unsurprising, because it is the City's best shot at escaping this Court's explicit ruling on willful disobedience. But it does not help the City here.  At bottom, and evident from a fair reading of Intervenors' Motion for Attorneys' Fees, Intervenors advanced arguments and evidence that the whole range of the City's sanctionable misconduct, including the City's willful disobedience of the Court's order and the City's bad faith delay in complying with the settlement, was the "but for" cause of the harm to Intervenors.  *See e.g.,* Dkt. 1022 at 9-11 (describing the City's misconduct, including "most relevant to Intervenors' concerns in the litigation,"  the City's decision to "ignore the Court's prior order"); at 8 (quoting *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) and citing it for "highlighting the historic grounds for awarding attorney's fees—*all of which are applicable here*") (emphasis added).

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

Intervenors' shorthand description of the City's range of sanctionable misconduct as "bad faith" fits well within the Ninth Circuit's definition of a district court's inherent authority to levy sanctions. In *Fink v. Gomez*, the Ninth Circuit sought to clarify the court's inherent authority power after a district court expressed that there was a lack of certainty in the case law. 239 F.3d 989, 991 (9th Cir. 2001). Balancing the language of both *Roadway Express, Inc. v. Piper* (447 U.S. 752 (1980)), and *Chambers v. NASCO, Inc.* (501 U.S. 32 (1991)), the *Fink* court explained that "the Court in *Roadway* and *Chambers* used the term 'bad faith' to mean two different things. The Court sometimes used 'bad faith' to mean a single category of sanctionable conduct, and sometimes as a shorthand term for all sanctionable conduct under a court's inherent power." *Id. See also Ibrahim v. United States Dep't of Homeland Sec.*, 912 F.3d 1147, 1183 (9th Cir. 2019) (citing *Hutto v. Finney*, 437 U.S. 678, 689 n.14) (holding that willful disobedience of a court order supports a finding of bad faith).

Intervenors did not "only invoke the bad faith standard," Dkt. 1023 at 5, n\*, but rather made the requisite showing to the Court that Intervenors were harmed by the whole range of the City's sanctionable conduct, including the willful disobedience the Court explicitly found and the bad faith caused by the City's "delaying …the litigation" and "hampering enforcement of the court order." *Fink*, 239 F.3d at 991 (citing *Chambers,* 501 U.S. at 46). That is the showing that was required by this Court's Sanctions Order. *See* Sanctions Order at 59 ("[T]he Court will require that the City pay attorney's fees to both Plaintiffs and Intervenors if Plaintiffs and Intervenors are able to show how they have been harmed by the City's conduct and the resulting losses to them under the law."). And the City does not dispute that Intervenors made that showing.

Instead, the City focuses on mischaracterizing arguments neither the Intervenors nor the Plaintiffs were required to make. Worse, the City's attempt to pigeonhole the parties' motions as focusing on only one standard or another, after this Court already found the conduct necessary to warrant sanctions, is little more than another attempt to do an end run around this Court's prior rulings and force the parties to relitigate issues already

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

decided by this Court.  This is exactly the type of argument the City relied on with regards to the Court's interpretation of the Encampment Resolution Plan.  Just as there was no basis for the City to do so with its interpretation of the Encampment Resolution Plan, there is no basis for doing so here.

**B.      There Is Clear And Convincing Evidence of the City's Willful Disobedience**

This Court plainly held in its Sanctions Order that the City willfully disobeyed the Court's March, 24, 2025 Order (Dkt. 874) in its April 15, 2025 quarterly status report, Dkt. 874. Sanctions Order at 52-53. The City's willful disobedience of the Court's order was one aspect of the City's misconduct the Court has already identified as sanctionable, in the form of payment of attorney's fees to Intervenors and Plaintiffs, precipitating Intervenors' previous Motion and this Reply. Sanctions Order at 59. Clear and convincing evidence is the agreed upon civil contempt standard of proof for establishing willful disobedience of a court order. *Kelly v. Wengler*, 979 F. Supp. 2d 1104, 1108 (D. Idaho 2013) (citing *Battaglia v. United States*, 653 F.2d 419, 422 (9th Cir. 1981).  When a party moves to enforce a consent decree and obtain civil contempt sanctions, the party must establish by clear and convincing evidence that the contemnor violated "a specific and definite order of the court." *In re Dyer*, 322 F.3d 1178, 1189 (9th Cir. 2003). The clear and convincing standard of proof requires only sufficient evidence to reasonably satisfy the fact finder that it is highly probable the ultimate fact at issue happened. *Colorado v. New Mexico*, 467 U.S. 310, 315 (1984).

The City argues that the heightened clear and convincing evidence standard was not invoked by the Court as to the City's sanctionable misconduct, and without invocation of the standard, the Court cannot impose attorney's fees as a sanction. City Opp. at 6. Even if the Court's earlier order was unclear as to the applicable standard it was applying, the record speaks for itself and offers the Court clear and convincing evidence upon which it can support an imposition of sanctions.

The City's willful disobedience of this Court's March 24, 2025 Order was a

10

deliberate act, and therefore cognizable conduct for the imposition of sanctions under this Court's inherent authority. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). The City never filed a motion for reconsideration or modification of the Settlement Agreement based on the clarification; the City only orally objected to the Order at the March 27, 2025 hearing and then, as the Court stated, "proceeded to ignore the Order." Sanctions Order at 52. During the evidentiary hearing, City Administrative Officer Matthew Szabo testified to these exact actions, that despite the Court's March 24, 2025 Order, the reporting of encampment reductions did not change, stating "The Order hasn't been discussed further, and it would need further clarification before we would make any changes." Dkt. 953, Evidentiary Hearing Tr. May 29, 2025, 129:21-131:04. The City did not seek a clarification, though. Sanctions Order at 52.

Even in the City's post-evidentiary hearing brief, the City proffered only their disagreement with the Court's order, but again, did not ask for reconsideration. Instead, the City referred to the Court's March 24, 2025 Order as an "initial determination" which had "no basis in the plain meaning of 'reduction' or the parties intent." Dkt. 983 at 29. Mere paragraphs later, though, the City argues that should the Court "adhere to its initial interpretation of what qualifies as a reduction" then the City still used "best efforts in logging reductions," despite relying on its own prior definition of reductions of tents, makeshift shelters, and vehicles w. *Id.* at 30-31. Here, in the City's own words, is its willful disobedience with the Court's March 24, 2025 Order. As this Court has made plain, by filing their April 15, 2025 quarterly status report without adhering to the March 24, 2025 Order, the City willfully disobeyed this Court. Sanctions Order at 52-23.  In the near month prior to the filing of the April 15, 2025 quarterly status report, the City could have changed course by filing a motion for reconsideration or seeking clarification from the Court, but instead the City deliberately chose not to. Taken altogether, there is clear and convincing evidence that the City willfully disobeyed this Court's March 24, 2025 Order, supporting an imposition of sanctions against the City.

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

## C. There Is Clear And Convincing Evidence of the City's Additional Misconduct

The City's willful disobedience of the March 24, 2025 Order was not the sole conduct for which the Court imposed sanctions. Instead, the Court included this act of willful disobedience as one significant instance of sanctionable conduct; it was in tandem with the City's refusal to provide updated plans for creating shelter or housing solutions, the City's missing of shelter and housing creation milestones, and the City's failure to verify its reporting. Sanctions Order at 57. These additional instances of noncompliance all are distinct showings of willful disobedience of the Order Approving Stipulated Dismissal and Proposed Settlement. Dkt. 445 (hereafter "Settlement Order"), [1] as well as bad faith; the City delayed the litigation and hampered the Court's enforcement of the Settlement Order. *See Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978) ("An equity court has the unquestioned power to award attorney's fees against a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.") *See also Primus Auto Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997).

The Court has already detailed the extensive record of the City's delays and obstructionist behavior, including but not limited to: the City's failure to amend their bed plan, which was incomplete when it was presented in 2022 and has not been formally amended since, Sanctions Order at 41-42; when errors were found in reported data, the City "repeatedly ignored the errors or attacked the messenger instead of engaging with and correcting the issues," despite Special Master Martinez putting the City on notice in her very first report in February 2024 that improvements to data gathering would need to

---

[1] As Intervenors argued and the Court found in his order, when this Court granted the parties' request to approve the settlement, the Court entered a stipulated order of dismissal that incorporated the terms of the Settlement Agreement into that order. Sanctions Order at 6-7; Dkt. 985 at 13. The incorporated agreement granted this Court continuing jurisdiction to oversee the agreement, resolve disputes, and enforce its terms; placing the agreement and its terms within the Court's inherent authority to enforce its own orders.

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

be made, *Id.* at 48; the City "stalled and blocked" both Special Master Martinez and the A&M auditors from "achieving meaningful review" of City-reported data, *Id.* at 58; and even during this Court's evidentiary hearing, the City refused to substantiate its own reports, engaging in "obfuscation and delay," *Id.* at 58. Taken together, the City's pattern of delay and hampering the enforcement of the Settlement Order rise to the level of sanctionable misconduct and evidence the City's bad faith. *Hutto,* 437 U.S. at 689, n.14

The Ninth Circuit has reserved the question of the burden of proof required for a finding of bad faith and imposition of sanctions. *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010). *See also In re Lehtinen*, 564 F.3d 1052, 1061 n.4 (9th Cir. 2009) (declining to address burden because clear and convincing evidence of misconduct supported finding of bad faith); *F.J. Hanshaw Enters., Inc. v. Emerald River Dev. Inc.*, 244 F.3d 1128, 1143 n.11 (9th Cir. 2001) (same).  But even assuming the burden of proof for a finding of bad faith is clear and convincing evidence, there is ample support for such a finding. The City's intransigence and obstructionist behavior is well documented throughout the docket and in the Court's order. Sanctions Order at 41-42, 46, 48-49, 52. As this Court found, no matter the issue, the City chose the path that resulted in delay and obfuscation. Sanctions Order at 56-59.

In relation to the City's reporting of the creation of shelter and housing opportunities pursuant to the agreement, for example, the City refused to provide accountability or transparency, which delayed the enforcement of the Settlement Order. Intervenors raised this issue nearly a year prior to the evidentiary hearing, in August 2024, yet while counsel for the City stated on the record they "were happy to look into it," they provided non-committal responses to Intervenors' first follow-up message, and then ignored future communications on the matter. Dkt. 1022 at 10. In their opposition, the City decries that it was never required to report how opportunities were created or obtained; rather, they were only required to report the number of opportunities. City Opp.at 7. Here, the City splits hairs with the hope of distracting the Court; during the August 24 hearing in question, Intervenors had specifically asked the City for "an indication to the public for

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

transparency's sake or to the Court about how these beds are being counted by the City of Los Angeles," followed up by an inquiry as to the City's contribution towards the creation of the housing that allowed it to be counted toward the bed count. Dkt. 768, Tr. August 29, 2024, 89:18-25. The City's obfuscation on the issue forced Intervenors and everyone else involved in the evidentiary hearing to commit significant resources to unravel what the City's practices actually were, which  hampered enforcement of the settlement agreement. Sanctions Order at 45-46, 49. *Chambers,* 501 U.S. at 46  (citing *Hutto* 437 U.S. at 689, n. 14).

Taken together, all of this misconduct—none of which the City has disputed occurred—provides clear and convincing evidence of bad faith and willful disobedience sufficient to award Intervenors their requested fees.

**D.     Intervenors are Entitled to the Fees Incurred But for the City's Misconduct**

Finally, the City barely even addresses the sole issue the Court requested briefing on related to the parties' entitlement to fees: whether Intervenors were harmed by the City's misconduct. Sanctions Order. The City makes no serious argument to suggest they were not. As outlined in their motion for fees, the evidentiary hearing occurred solely because of the City's misconduct, and Intervenors were required to participate in order to protect their interest and the interests of their members.  The issues before the Court in the evidentiary hearing were precisely the issues upon which this Court granted mandatory intervention to Los Angeles Community Action Network and the Los Angeles Catholic Worker' at the beginning of this litigation. *See* Dkt. 29.  The City's only attempt to address this is to suggest that Intervenors' role in the hearing was voluntary, but this misunderstands the role of an intervenor in litigation. Intervenors were granted intervention to protect their interests and the rights of their members.  There is nothing voluntary about their participation.  Intervenors are organizations who serve the unhoused residents of Skid Row, and whose members are unhoused residents of Skid Row who are impacted by the City's homelessness policies, and subject to enforcement actions as a

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

result of this litigation. Dkt. 29.

Likewise, the City's insinuation that awarding Intervenors fees in this instance would be tantamount to a bounty for monitoring compliance, when Intervenors have been an active participant in the litigation since March 2020 and have logged over 2,000 uncompensated hours, misses the point of compensatory sanctions for misconduct. Intervenors' participation in the litigation remains uncompensated; that does not mean that when the City engages in misconduct that results in even more work for intervenors that they would not have had to undertake but for that misconduct, that an award of sanctions should not be granted.  On the contrary, that is precisely when Courts have shifted the burden to parties to pay for the work that would not occurred but for the City's misconduct.

As outlined in their opening brief, which the City does not dispute, Intervenors seek fees for their participation in the seven-day evidentiary hearing and subsequent briefing because Intervenors have suffered actual harm and their lawyers were required to take on the work of the hearing and the subsequent briefing.  The City's misconduct was the but for cause of that harm, and Intervenors are entitled to fees as a result. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (fees can be properly awarded for legal work where the misconduct in question was the "but for" cause of that legal work).

**III.    INTERVENORS ARE ENTITLED TO ALL THEIR REQUESTED FEES**

There is also no merit to the City's attempt to reduce any sanctions award to just a fraction of the fees incurred by Intervenors as a result of the City's misconduct.  City does not challenge the  reasonableness of Intervenors' rates or the reasonableness of the amount of time Intervenors spent participating in the evidentiary hearing and subsequent briefing. Nor could they. Intervenors' rates and hours are immensely reasonable; one need only compare the rates and hours of others participating in the same hearing to appreciate just how reasonable they are.  Instead, the City attempts to reduce the amount of sanctions by arguing that the City must pay for only a fraction of the work Intervenors incurred as a result of the City's misconduct.  There is no merit to the City's arguments.

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

A.      The City's Misconduct was the But For Cause of Intervenors' Fees Associated with the Evidentiary Hearing

Under the standard promulgated in *Goodyear Tire & Rubber Co. v. Haeger*, fees can be properly awarded for legal work where the misconduct in question was the "but for" cause of that legal work. 581 U.S. 101, 107 (2017). The City effectively concedes that if the Court awards Intervenors their fees, the work related to the encampment reduction plan was caused directly by the City's misconduct and willful disobedience of the Court's March 24, 2025 Order. Dkt. 1022 at 9-12.  But the City's further contention that Intervenors' fees must be limited to just that work because the Court only expressly identified disobeying the Court's order on encampment reductions as sanctionable misconduct is inaccurate. City Opp. at 11. In its Order, this Court identified multiple instances of misconduct that it was basing its sanctions order upon: the City's "refusal to provide updated plans, meet its milestones, correct its encampment reduction numbers, and verify its reporting." Sanctions Order at 57. This is the conduct the Court held had "unnecessarily and unfairly wasted the resources of the Parties and the Court." *Id.* At no point did the Court cabin a finding of fees for the Intervenors to only the City's reporting on the encampment reductions. The Court did specifically identify the City had, amidst its many actions of noncompliance, disobeyed the Court's March 24, 2025 Order on encampment reductions; however, as outlined in Section II above, the fact that the Court elevated the most recent instance of the City's willful disobedience in its order of sanctions does not erase the Court's findings that the City engaged in sanctionable misconduct in numerous other ways.  *Id*. at 59 ("As a sanction for the City's noncompliance, including disobeying the Court's order on encampment reductions….").

Moreover, even if the Court limits its finding of sanctionable conduct to the City's willful disobedience of the Court's March 24, 2025 encampment reduction order, which the City effectively concedes would form the basis for a fee award upon a showing by clear and convincing evidence, Intervenors are still entitled to their fees for the entirety of their work in question. The fees for the entirety of the evidentiary hearing represent

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

time Intervenors spent developing the record evidencing the City's pattern of misconduct, and advancing arguments which resulted in an order by this Court issuing much of the relief they sought. The City fails to cite any authority for limiting Intervenors' fees, save for the "but for" causation approach articulated in *Goodyear*. City Opp. at 11.  As discussed below, Intervenors assuredly meet this standard.

Intervenors have properly cabined their fee request to litigation fees which were incurred as a result of the City's misconduct: the evidentiary hearing, subsequent post-hearing briefing, and briefing on fees necessitated by the City's misconduct and called for in this Court's Order. Intervenors requested fees no greater than those already contemplated in this Court's Order ("Based on Intervenors' active role in the evidentiary hearing and briefing, the Court will require that the City pay attorney's fees…"). Sanctions Order at 59. The City's attempts to argue otherwise in their opposition are poorly taken, and in total conflict with the "but for" approach of *Goodyear*. The "but for" approach, as articulated by the court in *Goodyear*, "escapes the grind of segregating individual expense items (a deposition here, a motion there)—or even categories of such items (again, like expert discovery)—but only because all fees in the litigation, or phase of it, meet the applicable test: they would not have been incurred except for the misconduct." 581 U.S. at 111. Here, the fees associated with the evidentiary hearing and related briefing meet that test.

**B.     The Court May Award Fees for Intervenors' Fees (Dkt. 1022) and this Reply**

The City's suggestion of an "across the board percentage cut" to Intervenors' already conservative fee request is misplaced. *See* City Opp. at 12 (quoting *Gates v. Deukmejian*, 87 F.2d 1392, 1399 (9th Cir. 1992)).  There is no "fat" to "trim" from the already lean fee request.  *Id.* Furthermore, the process of bluntly cutting a percentage of fees as articulated by the court in *Gates*—a process often referred to as the "meat-axe" approach—is an appropriate practical measure only when the court is faced with a "massive fee application." *Abrams v. Sequium Asset Sols., LLC*, 2023 U.S. Dist. LEXIS

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

58378 at 21 (W.D. Wash. 2023) (citing *Gates,* 987 F.2d 1399) ( holding that the "meat-axe" approach was inappropriate where seven pages of billing records were submitted by counsel, and the court could conduct an hour-by-hour analysis of challenged hours to exclude those identified as unreasonable).  That is certainly not applicable here, given the relatively small number of hours and fees at issue in Intervenors' motion.

The City wrongly contends the Court cannot award fees for the work incurred bringing this Motion for Attorneys' Fees. City Opp. at 11. The City urges this Court to remove the entirety of Intervenors' time entries related to Intervenors' Motion for Attorneys' Fees, under the theory that these fees are not "direct costs" of responding to sanctionable conduct, arguing that only "direct costs" may be awarded. *Id.*

The City provides no support for this position. City relies on cases that are immediately shown to have no bearing on the present matter. The City cites *Blisxeth v. Yellowstone Mt. Club, LLC,* asserting that only "direct costs" may be included in sanctions award under the court's inherent authority; yet the court in *Blisxeth* was seeking to determine an appropriate award of "just damages" under Rule 38, an entirely different issue. 854 F. 3d 626, 630 (9th Cir. 2017). The discussion of *In re Southern Cal. Sunbelt Developers. Inc*. and other authority by the *Blisxeth* court, cited by the City, was a reasoning through of how prior courts have handled fees for post-dismissal actions in bankruptcy proceedings, and awards of fees and costs under the version of  Rule 11 in effect at the time, regarding the fees and cost related to defending the Rule 11 sanction award on appeal. The additional case that the City relies upon, *Orman v. Cent. Loan Admin. & Reporting*, 2020 U.S. Dist. LEXIS 32646, also fails to support the City's contention, as the *Orman* court relied exclusively on the respondent's failure to adhere to a District of Arizona local rule when they denied respondent's recovery of fees on fees.

Intervenors may properly be awarded fees for bringing their Motion for Attorneys' Fees, because the City's misconduct, which this Court already found, necessitated it. Under *Goodyear*, the briefing Intervenors undertook at request of the Court was incurred specifically as a result of the City's misconduct. *Goodyear*, 581 U.S. at 110.  Here, too,

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

this Court is allowed to exercise its discretion and judgement in fashioning an award of sanctions under its inherent authority. *Id.* A district court "may take into account its overall sense of a suit" and "may decide that all of a particular category of expenses… were incurred solely because of litigant's bad faith conduct." *Id*. Due to the trial court's "superior understanding of the litigation" these judgements are entitled to "substantial deference on appeal." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

C.    **The "Several Line Items" in Intervenors' Fee Request Were Redacted Properly**

The City quibbles with six line items (totaling $1877.50 for 4.2 hours of work) in Intervenors' fee request, arguing that Intervenors engaged in "heavily redacting" "several line items" in their billing records, as the City was unable to determine if those fees were related to the encampment reduction issue. City Opp. at 11. This is only at issue if the Court decides to award fees only for the encampment reduction issue; otherwise, whether the work billed was regarding the specific issue of the encampment reductions is not a proper inquiry under *Goodyear*. Therefore the City's contention that it cannot ascertain if the fees were related to the encampment reductions is irrelevant, because there is sufficient information for opposing counsel to assess their reasonableness. *See Gilead Sciences, Inc. v. Merck & Co.*, 2017 U.S. Dist. LEXIS 110797 (N.D. Cal. July 14, 2017) at *35. If the Court concludes otherwise, Intervenors are able to provide these six fees to the Court, in their unredacted form.

IV.   **CONCLUSION**

For the foregoing reasons, Intervenors request this Court grant Intervenors' request for fees and costs and award the requested amount of fees incurred during Intervenors' participation in the evidentiary briefing, the subsequent post-hearing briefing, and briefing on fees (including the fees sought for this reply and any hearings that may be required).[2]

---

[2] Intervenors request the opportunity to submit a supplemental memorandum of fees for fees incurred for this reply brief and any hearing on the matter.

19

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

Dated: September 19, 2025     Respectfully submitted,

LEGAL AID FOUNDATION OF LOS ANGELES
/s/ *Shayla Myers*
Shayla Myers
Isabelle M. Geczy

*Attorney for Intervenors*

SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP
/s/ *Catherine Sweetser*
Catherine Sweetser

*Attorney for Intervenors*

LAW OFFICE OF CAROL A. SOBEL
/s/ *Carol A. Sobel*
Carol A. Sobel

*Attorney for Intervenors*

ELDER LAW AND DISABILITY RIGHTS CENTER
/s/ *Brooke Weitzman*
Brooke Weitzman

*Attorney for Intervenors*

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**

**Local Rule 5-4.3.4 Attestation**

I hereby attest that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

DATED: September 19, 2025   LEGAL AID FOUNDATION OF LOS ANGELES


/s/ *Shayla Myers*
Shayla Myers

21

**REPLY ISO INTERVENORS' MOTION FOR ATTORNEYS' FEES**