**F I L E D**
CLERK, U.S. DISTRICT COURT

10/06/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ kdu _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al. | Case No. LA CV 20-02291-DOC(KESx) |
| Plaintiff, | Judge: Hon. David O. Carter |
| v. | **SPECIAL MASTER STATEMENT** |
| CITY OF LOS ANGELES, et al. | |
| Defendant. | |

1

**LA ALLIANCE FOR HUMAN RIGHTS, et al.** Plaintiffs, v. **CITY OF LOS ANGELES, et al.** Defendants. Case No. 2:20-cv-02291 DOC (KES)

**TO:** Honorable David O. Carter
United States District Judge
Central District of California

**FROM:** Michele Martinez, Special Master

**DATE:** October 6, 2025

**RE:** Statement Submitted Regarding Dkt. 1041 Status Report on City Council Consideration of Proposed Third-Party Monitors

**SUBMISSION:**
Attached please find the Special Master's Statement, submitted regarding the Dkt. 1041 status report concerning City Council consideration of proposed third-party monitors.

This Statement provides factual background on the implementation of Section 7.2, summarizes the parties' monitor proposals, and outlines procedural developments since the last hearing. It also reflects the Court's stated criteria for monitor selection and identifies potential coordination steps should further engagement be required.

I remain available to assist the Court in any capacity it deems appropriate.

Respectfully submitted,
Michele Martinez
Special Master

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION – LOS ANGELES

**LA ALLIANCE FOR HUMAN RIGHTS, et al.** Plaintiffs, v. **CITY OF LOS ANGELES, et al.** Defendants. Case No. 2:20-cv-02291 DOC (KES)

**Special Master's Statement**

**Submitted by:** Michele Martinez, Special Master

**Date:** October 6, 2025

### I. Purpose of Submission

This Statement responds to the parties' October 3, 2025 Joint Status Report (Dkt. 1041), which updates the Court on proposed monitor appointments and related procedural developments. It provides factual background on Section 7.2 implementation, the City Council's timeline since the September 16, 2025 Status Conference, and procedural risks that may affect enforceability. It also reflects the Court's stated criteria for monitor selection and outlines a path for scope alignment and coordination.

### II. Verification Constraints and Oversight Limitations

As documented in prior filings and acknowledged in the Court's June 24, 2025 Order (Dkt. 991), the absence of a third-party verification system has limited the ability to confirm compliance with the Settlement Agreement. This context underscores the urgency of implementing Section 7.2 and finalizing a Monitor appointment that meets the Court's stated criteria.

### III. Section 7.2: Procedural Status

Section 7.2 of the Settlement Agreement requires the City and LA Alliance to:

"Engage a mutually agreed-upon third party to provide data collection, analysis, comments, and regular public reports on the City's compliance."

This provision was designed to ensure transparency and independent validation. It has not been fulfilled. The absence of a third-party system continues to impact the Court's ability to enforce the Agreement and limits the effectiveness of oversight.

The Court's June 24 Order (Dkt. 991) further clarified that the Monitor must:

- Review and verify the City's data prior to publication
- Confirm that shelter or housing offers were made in connection with encampment reductions
- Provide public reports grounded in validated evidence
- Appear before the Court on November 12, 2025, to present findings

**IV. Monitor Proposals and Court Criteria**

At the September 16, 2025 Status Conference (Dkt. 1034), the parties jointly presented two proposed candidates for Monitor: Ron Galperin (former Los Angeles City Controller) and the McKinsey Group. These names emerged after extensive meet-and-confer efforts between the City and LA Alliance.

As stated by counsel for the City:

"Many names were considered and proposed by both sides. Either the Alliance or the City had various objections to various names." (Transcript, Dkt. 1034 at 6)

LA Alliance had previously proposed Daniel Garrie, A&M, Jan Perry, and Kenneth Mejia (current Los Angeles City Controller). The City was not amenable to these proposals. The City, in turn, proposed RAND, academic institutions, and other entities that were not agreed to by LA Alliance.

The two names ultimately presented jointly to the Court reflected narrowed options following party negotiations.

The Court expressed reservations about both Galperin and McKinsey. Regarding McKinsey, the Court cited its involvement in the Purdue Pharma litigation and stated:

"I'm really uncomfortable with that recommendation… I don't think [McKinsey] is going to be acceptable to the Court." (Transcript, Dkt. 1034 at 10–11)

Regarding Galperin, the Court acknowledged his prior work but raised concerns about technical qualifications and potential entanglements:

"I'm concerned that he lacks the technical expertise… and I'm worried about any past entanglements with the City or future entanglements going forward." (Transcript, Dkt. 1034 at 11, 15)

The Court then articulated specific criteria for any appointed Monitor:

"The stated monitor needs to have experience with real-time data auditing and timestamp validation… capacity to compute such metrics as the mean, variance, and standard deviation… and fluency in protocols that distinguish verified data from estimates or placeholders." (Transcript, Dkt. 1034 at 12–13)

These criteria reflect the Court's intent to ensure that oversight meets evidentiary and technical standards necessary for enforceability and public trust.

**V. City Council Timeline and Procedural Delay**

Following the September 16, 2025 Status Conference:

- September 26: City introduced the monitor item to Council
- October 1: Vote was continued due to missing scope of work and budget documentation

- October 3: Parties filed Joint Status Report (Dkt. 1041) documenting unresolved delays
- October 7: Next scheduled vote on monitor appointment

In the Joint Status Report, the City stated that it placed the item on the Council agenda and was working to finalize scope and budget for the proposed monitors.

LA Alliance stated that it submitted an amended scope of work on September 27, 2025, but was not engaged by the City in any follow-up. The City Attorney's Office exchanged a separate scope with one proposed monitor without including Plaintiffs in the communication. These statements reflect each party's position, I am also attaching the scopes of work for both Daniel Garrie and Ron Galperin, as well as the City Attorney's memorandum dated September 22, 2025 (Report No. R25-0463), all filed in Council File No. 20-0263-S4 via the Los Angeles City Clerk Connect system.

## VI. Judicial Oversight and Scope Authority

The Court's authority to appoint the Monitor and define the scope of work is established in its June 24, 2025 Order (Dkt. 991) and reinforced in the transcript of the September 16, 2025 Status Conference (Dkt. 1034). At that hearing, Judge Carter stated:

"As I read 7.2… I can't unilaterally impose my will or my choice on each of you… if each of you reach an agreement, it also requires my acceptance." (Transcript, Dkt. 1034 at 10)

This reflects the Court's interpretation of Section 7.2 as requiring party input while reserving final authority to approve any Monitor appointment and scope of work. The Court also emphasized that any appointment must meet evidentiary and technical standards, and expressed concern that City Council action could delay or undermine the process:

"I don't want to see you folks reaching an agreement here in good faith… and then having the City Council reject this in a couple of weeks." (Transcript, Dkt. 1034 at 7)

The Court did not delegate scope creation or approval solely to the discretion of the City Council. Rather, it invited input from the parties to inform its own determination. As stated in the Joint Status Report (Dkt. 1041), LA Alliance submitted a revised scope of work on September 27, 2025, but was not engaged by the City in any follow-up. The City Attorney's Office exchanged a separate scope with one proposed monitor without including Plaintiffs in the communication.

The City Council's October 1, 2025 agenda and related materials (Council File No. 20-0263-S4) frame the proposed monitor appointments as City-led retention actions. This language does not reflect the Court's directives under Dkt. 991 or the procedural structure of Section 7.2. The monitors are appointed by the Court—not retained by the City—and their scope must be aligned with Court directives.

## VII. Timeline Pressures and Procedural Path Forward

The Court's June 24, 2025 Order (Dkt. 991) established the following timeline:

- October 15, 2025: City's next quarterly report due

- November 12, 2025: Monitor to appear before the Court to present verified findings

At the September 16, 2025 Status Conference, Judge Carter stated:
"I think 7.2 doesn't let me unilaterally impose [a monitor]… but if we reach a stalemate, the Court will act… and have a record of the inability of counsel to come together and reach an agreement." (Transcript, Dkt. 1034 at 13)

This language reflects the Court's recognition that its role is not to impose unilateral decisions, but to preserve the enforceability of the Settlement Agreement when the parties are unable to proceed. The record now reflects such a delay.

Should the City Council fail to act on October 7, 2025, or approve a scope of work that does not reflect the Court's stated criteria or mutual engagement, I am available to convene a facilitated meeting with the parties to address scope alignment and monitor coordination.

If consensus cannot be reached by October 8, 2025, I will notify the Court so it may determine whether a status conference is warranted to preserve the timeline set forth in Dkt. 991.

## VIII. Conclusion

Three years into the Settlement Agreement, the absence of a third-party verification system continues to limit oversight and public accountability. The Court has recognized this challenge, and the record reflects both the need and the readiness for a technical solution.

The parties have proposed multiple candidates, and the Court has articulated clear criteria for the Monitor's qualifications. While collaborative selection remains the intent of Section 7.2, the current delay—documented in the Joint Status Report and reflected in the transcript—has constrained the Court's ability to enforce the Agreement as contemplated.

The City Council is scheduled to vote on October 7, 2025. Regardless of the outcome, the scope of work currently under consideration does not reflect the criteria outlined by the Court at the September 16, 2025 Status Conference, nor does it reflect mutual engagement between the parties.

I respectfully submit this statement to clarify the procedural record and support the Court's oversight function.

I remain available to assist the Court in any capacity it deems appropriate.

**Respectfully submitted,**
Michele Martinez
Special Master

**LAW &
FORENSICS**
A Global Legal Engineering Firm

Thursday, September 18, 2025

Law & Forensics LLC
Daniel Garrie, Esq.
Phone: 855.529.2466
Email: daniel@lawandforensics.com

Office of the City Clerk
City of Los Angeles
200 N. Spring Street, Room 360
Los Angeles, CA 90012
By Email Only

**RE:  Law & Forensics Preliminary Proposal Framework for Independent
Verification and Validation of Settlement Data**

Dear Esteemed City Council Members,

Law & Forensics brings over fifteen years of experience serving courts, government entities, and Fortune 500 companies in some of the most sensitive and high-profile data, compliance and monitoring matters. Led by Daniel Garrie, who has served as a court-appointed neutral, mediator, and technical expert in complex federal litigation and settlements.

Our team combines deep legal knowledge with unmatched technical expertise in data monitoring, system integration, judicial compliance with court orders, and delivering solutions.  We have data scientists, attorneys, technology architects, software engineers, and others on our team. We have been trusted repeatedly by federal judges, corporate boards, and government agencies to design and oversee verification systems that stand up to the highest levels of scrutiny.

Our approach is rooted in transparency, accountability, and practical solutions – ensuring that we can not only meet the Court's directives in this matter but also provide the City of Los Angeles with a sustainable and transparent monitoring framework that strengthens public trust and benefits Angelinos.

With this in mind, Law & Forensics submits this initial proposal to the City of Los Angeles in response to the United States District Court's Settlement Compliance Order (Dkt. 991, June 24, 2025). The intent of this is to get the appointment process underway to comply with the timeline set-forth court, which requires this to up and running on November 12, 2025.

This engagement will:

- Independently verify all reported bed and unit figures.
- Validate milestones for projects in process.

- Provide fiduciary oversight of accounting and expenditures.
- Deliver verifiable data regarding encampment engagements and shelter offers with evidentiary support.
- Enhance transparency and accountability through mechanisms that are aligned with the spirit of the court order.

In conclusion, Law & Forensics, led by Daniel Garrie, will serve as the co-independent Data Monitor pursuant to the Court's order in L.A. Alliance for Human Rights v. City of Los Angeles (Case No. 20-CV-02291, Dkt. MO).

Respectfully yours,

Daniel B. Garrie
DBG



October 1, 2025

The Honorable City Council; City of Los Angeles
Room 395, City Hall
200 N. Spring Street
Los Angeles, CA 90012

The Honorable Hydee Feldstein Soto
Los Angeles City Attorney
8th Floor, City Hall East
200 N. Main Street
Los Angeles, CA 90012

**RE:     Report R25-0463-S4:  Appointment of Monitor in L.A. Alliance for Human Rights, et. al. v. City of L.A., et. al. - Proposal to Serve as Court-Appointed Monitor**

Dear Honorable Members and Honorable City Attorney:

Thank you for your consideration of me to be retained as the Court-appointed independent Monitor in the matter of the L.A. Alliance for Human Rights, et. al. v. City of L.A. et. al. I submit this letter to provide a brief framework for what my approach would be to the role of Monitor - subject to the Council's authorization of the L.A. City Attorney's Office to negotiate and enter into a contract for me to serve in the role of Monitor in the aforementioned case.

I would bring to the work of Monitor my experience as the former two-term independently elected L.A. City Controller – and, notably, extensive experience in reviewing data and in preparing audits and reports. Prior reports issued during my tenure as City Controller included reviews related to homeless housing, LAHSA outreach, and encampments. I also have strong familiarity with many of the programs and players - and with the subject matter to be monitored. I will also note my years of experience as a journalist and as an attorney. I also believe my experience with City and City-related data will provide opportunities for efficiencies.

1901  Avenue of the Stars, Suite 200, Los Angeles, CA  90067 * E-Mail: Ron@RonGalperin.com * www.RonGalperin.com * Tel. (424) 248-8006

As Monitor, I would be serving as an officer of the Court – independently reporting on the City's compliance with terms of the settlement agreement between the parties to the case. My only duty is to honestly and accurately report to the Court (and the public) on issues of compliance. I care deeply about Los Angeles and about the crucial work of helping to alleviate the many challenges of homelessness and of unhoused Angelenos. I know you share my commitment to addressing these challenges.

The City, as we all know, is in the midst of significant budget challenges as well. My goal is to do the work needed to be Monitor in the most efficient way - so as to minimize costs to the City and to preserve precious resources of the City for its work to address and to alleviate homelessness and its related impacts on all of Los Angeles. I am also committed to working with the Court; the Plaintiffs; the City, the City's leaders and departments and offices; and other parties and resources and stakeholders.

## I      SCOPE OF WORK

At this moment, the parties to the litigation (namely, the City and the Alliance) may not yet fully agree on the scope and the extent of the role of Court-ordered Monitor for the above-entitled matter. Going forward, it will be crucial for the parties, along with the Judge, to be able to have a shared understanding of the scope of work, details of expectations and the work product to be issued by the Monitor. I generally leave it to the parties to come to an accord – but I am open and available, if they so wish, to assist in said endeavor. In all events, I will offer my perspectives on what will / should be needed to perform the role of Monitor in a meaningful way.

Based on my initial review, there are various materials from which one might glean the framework for the Monitor role in this matter - including settlement-related agreements, orders of the Court, and transcripts and /or minutes of the Court.

The U.S. District Court's June 24, 2025 *Order Granting in Part and Denying in Part Plaintiff's Motions for Settlement Compliance* states on page 50: "Subject to the Parties' input, the Monitor will at least be responsible for reviewing the City's data prior to publication of its quarterly reports, verifying the numbers reported, engaging with the Parties and LAHSA to resolve data issues, and providing public reports on data compliance." Page 54 of the Order further states: "The Monitor provided for in Section 7.2 will also be responsible for reviewing whether offers of shelter or housing were made to those whose belongings are counted as encampment reductions. It is expected that the City be able to provide the name of the shelter or housing that was offered and available for each encampment reduction, but the details of what documentation is required will be finalized by the Monitor in consultation with the Parties." Page 56 of the Order further states that the City shall: "Report encampment reduction data consistent with the Court's definition beginning in the October 2025 quarterly report and provide accompanying data on shelter or housing offers to the Monitor."

On Sept. 24, 2025, Counsel for the City, Khan A. Scolnick, of the firm Gibson, Dunn & Crutcher LLP, prepared a Proposed Scope of Work. On Sept. 25, 2025, Elizabeth Mitchell, counsel for plaintiff (Alliance) of the firm of Umhofer, Mitchell & King LLP prepared a redlined and amended Proposed Scope of Work. On Sept. 30, 2025, another further amended draft version of proposed work was conveyed to me by the Office of the L.A. City Attorney, entitled: "Proposed Scope of Work for Monitor Pursuant to Section 7.2 of the Settlement Agreement between Plaintiffs and the City of Los Angeles (Dkt. No. 429-1)".

.
The parties to the litigation, in consultation with the Monitor, will need to reach agreement on what will be the stated Scope of Work. Further, all parties will need to come into accord regarding expectations related to the extent and interpretation of terms such as review, public reports, field work, etc. Understanding the expectations will be crucial to satisfying the parties and the Court.

Pending an agreement of the parties, the proposal outlined hereinbelow is based on the Sept. 30, 2025 Proposed Scope of Work referenced hereinabove from the City Attorney's Office. I offer herein a framework of how I would perform the work of a Monitor - subject to the parties coming into some form of accord. Said proposal shall, of necessity, be subject to more detailed conversations of, and with, the parties - and a more detailed agreement to be negotiated with the City Attorney's Office - in order to, hopefully, arrive at definitive terms of my retention as a Monitor by the City.

## II.      DATA VALIDATION

In a Sept. 12 Joint Submission to Court by parties it was stated: "LA Alliance believes that the appointed monitor will need to be assisted by a team with the requisite data, technological, and infrastructure training, knowledge, and experience at the City's cost. The City believes that it is premature to decide whether such a team will be necessary and that the need for such a team should be resolved in consultation with the monitor once approved by the Court and City Council." Thereafter, according to the Sept. 16, 2025 minutes of a hearing conducted by the Court,  "By stipulation of the parties, Daniel Gerrie (sic)  and Ron Galperin are selected as the proposed Third Party Monitors pending Los Angeles City Counsel (sic) approval."

What remains unclear are the precise intentions and wishes of the parties and of the Court in terms of Monitor responsibilities, division of labor, reporting etc.  I connected twice with Mr. Garrie about what our approach might be best in terms of monitoring. Thereafter he submitted an independent outline of a proposal for consideration by the City Council - and I am now herein submitting mine. How all this is to work would need to come into focus - along with a clear framework for accountability and the avoidance of confusion and of duplication.

### III.    STRUCTURE:

I would propose the following:

•    Monitor: As a Monitor, I would seek to provide overall I would seek to execute on the priorities outlined hereinabove and to coordinate with City staff as needed, to keep all of the parties up-to-date and informed and to execute on said priorities and the agreed-upon Scope of Work.

•    Data Validation – The more technical aspects of validating data will be a vital component of overall monitoring. Given my experience as the elected City Controller for almost a decade, I believe I have the knowledge and capacity to work through complex data issues. That said, as the Scope of Work and deliverables become more clear and precise, the services of a data expert may be helpful. Such expertise might include identifying the technical tools, programs, apps and methods needed for effective data verification – for instance, specifying what data access a Monitor's team should obtain from City and other databases, or recommending a software platform for processing encampment data. Some data is also likely to be sensitive (including personal information of individuals being placed for housing). The guidance of a data expert might include how to deal with such issues in order to lawfully access and protect the integrity thereof.

Insofar as the City has been proffered a separate data proposal from Daniel Garrie, I will defer to the Council's judgment as to how it would like to handle the matter. I will note that items under the Priorities Section, hereinbelow, that I have designated in *ITALICS,* indicate those items that may need the consultation of a data expert as a supplement to this proposal - and as items for which the City might expect to be separately billed.  I can and will also consult with the CAO, ITA, the L.A. Controller's Office and LAHSA regarding their data. I am prepared to work collaboratively with Mr. Garrie on data-specific matters or to separately retain data-specific services as-needed with consent granted therefor.

### IV.    PRIORITIES:

The following would be my priorities as a Monitor:

- Phase I - Establishment of Framework:
    - Memorialize a clear wholly agreed-upon Scope of Work;
    - Clarify expectations for the Scope of Work and work product(s);
    - Initial fact-finding;
    - Confer with all parties to the case, and with relevant elected and appointed officials and managers;
    - Confer with various involved stakeholders - including City and County departments, LAHSA, service providers and others with knowledge and expertise;

- - *Determine sources of data;*
  - *Assess accessibility and accuracy of data;*
  - *Develop models for data validation and tracking;*
  - *Develop public-facing model for reporting;*

  - Develop standards for compliance;
  - Develop issue resolution process; Develop reporting model to Court;
  - Develop timeline for all reports; and
  - Develop plans for communications to parties and to the public.

- Phase IA - Produce First Quarterly Report on compliance, incorporating reporting on the work undertaken in Phase I:

- Phase II - Ongoing - Produce subsequent quarterly reports:
  - Quarterly reports;
  - *Data validation;*
  - Status reports to the Court and the parties;
  - As-needed site visits;
  - Issue(s) resolution;
  - Updates and amendments to Scope of Work, as-needed;
  - Conferring with the parties;
  - Meetings; and
  - Oversight.

## V.    COMPENSATION

As someone who cares deeply about our City, its finances, and the crisis of homelessness in our midst, I am also very cognizant of the need for cost management and control. Moreover, I am acutely aware of the legitimate concerns of City leaders about how hourly-rate-based City consulting/service agreements can quickly escalate into larger-than-expected bills. And so I seek to balance herein the needs of the City, its budgetary restraints, and the inevitable and unavoidable costs of the work and time and expertise needed to fulfill the Monitor role to the satisfaction of the parties – and of the Court. Accordingly, I would propose set fees, with an agreed-upon limit on hours. $100,000 for Phase I, $100,000 for Phase IA (including the first quarterly report), and $72,000 per quarter thereafter through the end of the term of the Alliance settlement agreement (June 30, 2027). The fees for Phase I and Phase IA would be subject to a time cap of 125 hours each, and the quarterly fees in Phase II for the quarters subsequent to the first reporting quarter would each be subject to a cap of 90 hours. Said work would be performed by a combination of me, and other professionals chosen by me to complete the Scope of Work and timely and regularly complete deliverables. The time for clerical/secretarial/scheduling assistance would be separately billed monthly at a rate of $45 per hour (not to exceed 20 hours per week).

I anticipate that the work needed can be completed within the allotted time caps - and I would agree not to exceed said time caps except with the express written consent of the City Attorney's Office. In the unlikely event that it becomes necessary to exceed said caps, the additional hours would be charged based on a blended professional hourly rate of $800 and a rate of $45 per hour clerical/secretarial/scheduling assistance - but only with prior written consent. Should the time needed to perform the work of Monitor come to be markedly less than the time caps, I would seek to discuss how the City might be credited therefor.

As noted hereinabove, I would anticipate that the cost of specific expert data validation professional services, as needed, would be separately billed to and paid by the City. My goal, however, would be to see such services be reasonably tailored and cost-limited.

## VI.     CONCLUSION

Thank you for your consideration.

Sincerely,

Ron Galperin



Office of the Los Angeles City Attorney
Hydee Feldstein Soto

REPORT NO. R25-0463

Sept. 22, 2025

### APPOINTMENT OF MONITOR IN *LA ALLIANCE FOR HUMAN RIGHTS, et al. v. CITY OF L.A. et al.*; AUTHORIZATION TO NEGOTIATE AND ENTER INTO CONTRACTS WITH MONITOR

The Honorable City Council
 City of Los Angeles
Room 395, City Hall
200 North Spring Street
Los Angeles, California 90012

Honorable Members:

The City Attorney's Office seeks City Council approval to retain the services of Ron Galperin and his team, along with data analyst Daniel Garrie and his team, to serve collectively as the Monitor pursuant to the City's settlement agreement with Plaintiffs in the *LA Alliance* case.

In the event Council approves the selection of Ron Galperin and Daniel Garrie and their teams as Monitor, the City Attorney's Office requests authorization to negotiate and enter into a contract with Messrs. Galperin and Garrie for their and their teams' services.

Recommendations

1. Approve the retention of Ron Galperin and Daniel Garrie and their teams collectively to serve as the Monitor pursuant to the City's settlement agreement with Plaintiffs in the *LA Alliance* case and a subsequent Court Order dated June 24, 2025.

The Honorable City Council
 of the City of Los Angeles
Page 2

     2. Authorize the City Attorney's Office to negotiate and enter into contracts with Messrs. Galperin and Garrie for their and their teams' services as Monitor in the *LA Alliance* case.

Sincerely,
HYDEE FELDSTEIN SOTO, City Attorney

By         

STREFAN FAUBLE
Assistant City Attorney
