UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
mumhofer@umklaw.com
emitchell@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>    Defendants. | Case No. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES**<br><br>Before:  Hon. David O. Carter<br>Courtroom: 1 |

Plaintiff LA Alliance for Human Rights ("Plaintiff") files this notice to object to the City's Notice of Submission of Defendant City of Los Angeles' Updated Bed Plan and Milestones, Dkt. No. 1040, filed October 3, 2025. Plaintiff's primary objection is to the use of Time Limited Subsidy ("TLS") slots in the forthcoming bed plan due to historical lack of transparency and accountability with the City's TLS program which was well documented through A&M's assessment and during the parties' seven-day evidentiary hearing. Plaintiff requested the City provide assurance that issues identified in the Assessment and during the hearing would be addressed before Plaintiff could agree to the use of TLS slots to fulfill the City's bed plan obligations moving forward.

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*

The City has been unable to provide Plaintiff with the necessary assurances that the program would be run any differently from the defective TLS program under the Roadmap Agreement and therefore Plaintiff objects to the use of those beds to meet its obligations under the Settlement Agreement.

## I.    Historical Documentation of TLS Issues

On March 6, 2025, Alvarez & Marsal ("A&M") publicly filed its Second Amended Draft of the Alvarez & Marsal (A&M) Assessment of Los Angeles City Homelessness Programs (Dkt. No. 870) which identified for the first time multiple issues with the City's Homelessness Response system including the TLS program under the Roadmap Agreement:

- More than half of the funding came from sources outside the City of Los Angeles. *Id*. at 63.

- Discrepancies with expenditures and contracts, with LAHSA[1] identifying 95 contracts associated with the City's TLS program, but 70% of those contracts showing no expenditures. *Id*. at 64. A&M ultimately "could not validate the reported number of TLS beds or the ~~toal~~total expenses necessary to support those beds." *Id*.

- Unable to identify the number of TLS slots provided. *Id*. at 105; *see also* testimony of Lara Frost, Hearing Tr.  May 29, 2025, Dkt. No. 949 at 224:7-20.

- Inability to "confirm which participants were served through the TLS housing interventions established under the Roadmap Program" which precluded "verifying whether participants received the intended case management and rental subsidy services" and "heightened [the] risk in accurately assessing the quality and effectiveness of these services."  Dkt 870 at 111.

---

[1] LAHSA operated the City's TLS program under the Roadmap Agreement.

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*

Following the public release of the draft assessment, the City met with A&M ostensibly to correct any factually inaccurate information. Yet the City still failed to verify the TLS slots or correct any of the issues identified by A&M with the TLS program. As a result, A&M released its final version of the assessment which included these same findings. *See generally* Independent Assessment of City-Funded Homelessness Assistance Programs, Dkt. No. 905.

Following the release of the final assessment, the parties participated in a seven-day evidentiary hearing where the TLS program came up frequently. Lara Frost, director at A&M, confirmed A&M's findings and inability to verify TLS beds; the Court cited Ms. Frost's testimony in describing the disfunction in the City's TLS program:

At the heart of this evidentiary record lies a persistent problem: the inability to verify the City's reported data. Laura Frost, a Director at A&M who helped lead the A&M Assessment, testified that neither the City, nor LAHSA provided adequate documentation showing that the reported TLS beds were newly created. Tr., 18, June 3, 2025.[2] She explained that approximately 70% of the contracts LAHSA initially identified as creating new beds lacked any associated spending details. *Id.* This was compounded by inconsistent internal contract data that failed to specify how many beds were authorized, created, or utilized. *Id.* at 19. Further, the reported address and site rosters failed to align with the number of beds reported; in some cases, the addresses even overlapped with those also being reported under the Alliance Settlement. *Id.* at 19, 99.

---

[2] This is likely a typographic error and is meant to refer to Ms. Frost's testimony on June 5, 2025.

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*

These verification issues are not new, in fact they were raised in open court months prior to the Evidentiary Hearing. During a hearing on March 27, 2025, these issues were openly discussed, and the Parties were invited to discuss the findings of the A&M Assessment with A&M or provide the missing data. *See* Tr., 108, March 27, 2025. But even after this hearing, the Chief Administrative Officer ("CAO") of Los Angeles still failed to provide A&M with the data necessary to confirm whether the TLS beds had been created under the Roadmap Agreement. Tr., 179, June 3, 2025. The evidentiary record also contains no testimony or exhibits from the City directly addressing or rebutting these concerns. Instead, the evidentiary record reflects a consistent lack of cooperation and responsiveness—an unwillingness to provide documentation unless compelled by court order or media scrutiny. And rather than spending taxpayer dollars on finding the missing data or striving to provide verification, the City fought with the findings and methods of the A&M Assessment, the same methods they agreed to and paid for.

…

In an effort to preserve resources, the Court provided the City with one final opportunity to cure its evidentiary deficiencies. After the close of evidence, it issued an Order directing the City to produce a comprehensive spreadsheet containing key data for each of the 2,679 TLS slots and 130 scattered-site beds it claimed to have created under the Roadmap Agreement. Amended Order Requiring City Verification of TLS Reporting (Dkt. 967). This data—long requested by A&M but previously withheld—was finally produced only by Court Order. In disclosing this data, the City also came clean that there was some double counting or false reporting. *See* Declaration of

4

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*

Matthew W. Szabo re Court's Directive ("Szabo Decl.") (Dkt. 980) at 1-2.)

Order Granting in Part and Denying in Part Plaintiffs' Motions for Settlement Compliance, Dkt. No. 991.

## II.    City's Updated Bed Plans Includes 1,800 TLS Slots

On August 6, 2025, the City first raised with the Alliance the issue of counting TLS as an appropriate shelter solution under the Settlement Agreement and asked Plaintiff to agree those slots would count towards the City's obligation. In response, the Alliance raised concerns regarding the issues that came out in the Assessment and the Hearing:

- "Funding: it isn't clear to us at all that the City has the right to count all the beds it counted under the Roadmap Agreement. The County/State/Federal funding to our understanding was going to fund those TLS slots *regardless* of anything the City was doing. Those were not matching funds, they weren't grant funding that the City applied for and obtained, and they weren't under a program organized by the City. It appears LAHSA was getting money directly from various sources, combining them into a single account, and the City was counting all of the beds funded therefrom as City beds.[3]  While the Court ultimately declined to find a violation based on this issue, the Alliance will not recognize these slots unless **the City can identify what role the City has had in obtaining and increasing**

---

[3] The City has never presented testimony or evidence to dispute the fact that a number of slots the City counted under the Roadmap Agreement would be funded regardless of the City's participation.

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*

**the number of beds from what would be in existence regardless. If you can get that plan to us, we will consider it."[4]**

- "Tracking: there needs to be a better mechanism in place than what we've witnessed so far. LAHSA's data is unquestionably a mess. **Please provide us the plan for tracking these beds that will actually allow us/the court to verify the existence of those beds**."[5]

The City thereafter, without responding to or engaging with the Alliance on these issues, created a plan to include 1,800 TLS slots, out of 2,130 total interventions, or 84.5% of all new interventions, in its proposed bed plan.

After a further meet-and-confer and multiple emails on the subject, the City has yet to assuage the Alliance's significant concerns; in contrast, the Alliance has even more concerns about the City's proposed process for funding and tracking the TLS beds. Specifically:

- The City will use a "fiscal agent" to "verify and track the TLS placements" – specifically HOM, Inc. which appears to be an Arizona-based housing organization. The City has not yet determined "whether the fiscal agent will contract with LAHSA or the City."[6] And the City has not explained what this "fiscal agent" will do and how it will oversee the TLS program to ensure fiscal and substantive accountability and transparency.[7]

---

[4] Email from Plaintiff's counsel, Elizabeth Mitchell, to counsel for the City of Los Angeles, dated August 14, 2025, at 2:05pm; email available to the Court upon request.

[5] *Id.*

[6] HOM, Inc. displays on its home page a LAHSA graphic, with the text "Proudly partnering with LAHSA to deliver efficient, transparent support for TLS housing programs—helping Angelenos exit homelessness with dignity." HOM, Inc., https://www.hominc.com/ (last visited Oct. 13, 2025).

[7] Email from Tim Biche, associate with Gibson, Dunn & Crutcher on behalf of the City of Los Angeles, received by the Alliance October 10, 2025 at 3:02pm; email can be provided to the Court upon request.

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*

- The City has not determined "how to allocate the Time Limited Subsidies" and therefore cannot identify "which providers are getting which slots." Given the serious discrepancies identified *supra*, including absurd lack of alignment of funding, bed slots, utilization, and contractual obligations for the TLS beds funded under the Roadmap Agreement, the City's lack of planning for oversight and accountability over beds very susceptible to fraud is unacceptable.

- The City claims it will "only report [TLS] that are in use" but **provides no details about what mechanism it intends to use to validate or verify the beds are occupiable or occupied.**

- The City refuses to identify how the County will be able to report services rendered to these slots under the Agreement.

- The City has never denied that it used funds to pay for Roadmap TLS slots which would have existed and paid for TLS slots regardless of City participation. The City has again indicated its intention to use county, state, and federal funds to pay for TLS slots but again has failed to indicate what role the City will have in obtaining those funds such that the City is "create[ing]" new beds under Section 3.1 of the Settlement Agreement.

While TLS beds creatively use existing infrastructure to provide housing for a percentage of the population which desperately needs it, the City's plan fails to address the significant concerns raised by the proceedings on the TLS program to date and leaves it wholly open to fraud, waste, and abuse. Without a more defined plan to ensure the beds align with contracts, are actually occupiable, only occupied beds are reported, funding is traced to City action, and the program overall has more accurate reporting with more accountability and transparency, the Alliance cannot agree with this plan.

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*

### III.    Objections to New Proposed Milestones and Deadlines

The Alliance brought the pending litigation to spur urgency to an unquestionable humanitarian crisis. While the City's new proposed milestones are more evenly allocated than original milestones for the last two fiscal years, because 84.5% of the new proposed beds will be very temporary in nature—as opposed to creation of actual infrastructure—should the Court accept the TLS bed proposal or should the City present additional information to address the Alliance's significant concerns as articulated herein, the City should be required to either front-load the TLS beds into the 2025-2026 fiscal year—to be open and occupiable through the remainder of the Agreement—or attest the identified slots will be funded, occupiable, and occupied to the extent possible for at least one year after the slot begins. Doing otherwise would fundamentally defeat the purpose of the Agreement.

Dated: October 13, 2025          Respectfully submitted,

/s/ Elizabeth A. Mitchell
UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

Attorneys for Plaintiffs

*NOTICE OF OBJECTIONS TO CITY'S BED PLAN AND UPDATED MILESTONES AND DEADLINES*