**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:20-cv-02291-DOC-KES                    Date:  October 14, 2025

Title: LA ALLIANCE FOR HUMAN RIGHTS, ET AL., V. CITY OF LOS ANGELES, ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Karlen Dubon | Not Present |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| None Present | None Present |

**PROCEEDINGS (IN CHAMBERS):   ORDER RESOLVING THIRD-PARTY MONITOR APPOINTMENT AND SCOPE OF WORK**

On October 10, 2025 the City of Los Angeles (the "City") and Plaintiffs LA Alliance for Human Rights et al. (the "Alliance") submitted a Joint Report (Dkt. 1045) "to update the Court regarding the status of the City Council's approval of the third-party Monitor" and "to request the Court's review and resolution of the issue pursuant to Section 24 of the Settlement Agreement." Joint Report at 1. As the Parties recognize, Section 24 of the Settlement Agreement (Dkt. 429-1) provides that:

> If a dispute arises between the Plaintiffs and the City regarding the interpretation, performance, or enforcement of this Agreement . . . [and] [i]n the event that the Parties are unable to resolve the dispute within a reasonable time after [] meeting Plaintiffs or the City may, pursuant to the Order, submit the matter to the Court for review and decision.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:20-cv-02291-DOC-KES                    Date: October 14, 2025
                                                                              Page 2

Because the Parties have jointly requested the Court utilize its authority under Section 24 to resolve the Parties' dispute over the Monitor's appointment and scope of work, the Court now does so.

## I.      BACKGROUND

Section 7.2 of the Parties' Settlement Agreement provides that "[t]he Parties will engage a mutually agreed-upon third party to provide data collection, analysis, comments, and regular public reports on the City's compliance with the terms of this Agreement."

On June 24, 2025, the Court ordered—with respect to this provision—that the City was to "[m]eet and confer with Plaintiffs on selecting a third-party Monitor by August 22, 2025, and select this Monitor by September 12, 2025, subject to the Court's approval." Order Granting in Part and Denying in Part Plaintiffs' Motions for Settlement Compliance (Dkt. 991) at 57. This Order is grounded in the agreements set forth by the parties in their Settlement Agreement (Section 7.2). *Id.* at 50. 54:

- The Monitor will "at least be" responsible for reviewing and verifying the city's data prior to publication, resolving data issues, and providing public reports on data compliance;
- The Monitor will have full access to the data the City uses to create its reports;
- The Monitor shall review and provide guidance on public accessibility to the City's contracts and invoices;
- The Monitor will confirm that shelter or housing offers were made with respect to the encampment reductions.

The Court then set a Status Conference regarding monitor selection for September 16, 2025 (the "Status Conference"). Order Setting Status Conference on Monitor Selection on September 16, 2025 (Dkt. 1026). Prior to the Status Conference, the Parties jointly proposed Ron Galperin or McKinsey & Company to serve as monitor, "subject to Court and City Council approval, subject to their willingness to serve as the monitor, and subject to [various technical] qualifications." Joint Submission Re: Selection of Third-Party Monitor (Dkt. 1033) at 1. Specifically, LA Alliance noted that it "believes that the appointed monitor will need to be assisted by a team with the requisite data, technological, and infrastructure training, knowledge, and experience at the City's cost." *Id.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:20-cv-02291-DOC-KES                    Date: October 14, 2025
                                                                          Page 3

At the Status Conference, the Court rejected McKinsey & Company because of its prior role with respect to the marketing of OxyContin—a drug that has perpetuated the homeless crisis, and expressed reservations regarding Mr. Galperin because of his associations with the City and a lack of technical expertise qualifications. *See generally id.* The Court also restated and elaborated on the requisite criteria for the Monitor, *id.* at 12-13, including that:

- The need for "experience with real time data auditing and timestamp validation," along with "applied knowledge of data integrity and source attribution protocols. This includes the ability to assess whether reported data is accurate, complete and traceable to its original source, whether it's through timestamp documentation, system logs or field level records."
- The Monitor "should be fluent in protocols that distinguish verified data from estimates of placeholders and capable of validating that all figures are supported by primary evidence."
- The Monitor will need to be able to determine whether, for example, "the data at issue best modulated or modeled by normal distribution or binomial distribution [and] to compute such metrics as the main variance and standard deviation to analyze  the data for purposes of evaluating consistency across datasets."

In short, the Court noted that "essentially what's required is a data analyst who has the capacity to [do more than] just collect data." *Id.* at 12:24-25.

In light of this criteria, at the Status Conference "[b]y stipulation of the parties, Daniel Garrie and Ron Galperin [were] selected as the proposed Third Party Monitors pending Los Angeles City Council approval." Status Conference Re Monitor Selection (Dkt. 1036) at 1. Furthermore, the City of Los Angeles's counsel represented at that hearing that "our office would certainly help prioritize getting it on the agenda and making the recommendation [to the Council]." Status Conference Tr. (Dkt. 1034) at 8:4-6.

However, despite this stipulation and these representations, the City Council has repeatedly delayed the vote to confirm the Monitor appointment. Joint Status Report Regarding City Council Consideration of Proposed Third-Party Monitors (Dkt. 1041). Over a month has passed with three calendar dates with no action by the City. Special Master Statement (Dkt. 1042) at 4-5. The Alliance also protested that the City unfairly excluded it from negotiations with the Monitor regarding the scope of work for Mr.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**


**CIVIL MINUTES – GENERAL**


Case No. 2:20-cv-02291-DOC-KES                              Date: October 14, 2025
                                                                       Page 4


Galperin and Mr. Garrie. Joint Status Report (Dkt. 1041). Special Master Michele
Martinez also provided an update regarding the continued delay in appointing the
Monitor: "The parties have proposed multiple candidates, and the Court has articulated
clear criteria for the Monitor's qualifications. While collaborative selection remains the
intent of Section 7.2, the current delay—documented in the Joint Status Report and
reflected in the transcript—has constrained the Court's ability to enforce the Agreement
as contemplated." Special Master Statement at 6.

Now, the Court has been apprised that "the City Council was scheduled to vote
on two proposed Monitors, Ron Galperin and Daniel Garrie, at its October 7, 2025
meeting," but that the Council did not vote at the meeting and instead referred the matter
to the Housing and Homelessness Committee. Joint Report at 1. In fact, [t]he City is no
longer amenable to having Mr. Garrie serve as a Monitor." Specifically, the City
complains of Mr. Garrie's "unduly expansive and overly broad proposed scope of work,
his unnecessarily large and expensive proposed team, and his refusal to provide a
budget." *Id.* Now, the City instead proposes a combination of former City Controller Mr.
Galperin and current City Controller Kenneth Mejia. *Id.*

In contrast, the Alliance claims that "[t]he City has since dragged its feet in
submitting the [monitor] issue to City Council and has now continued the vote twice
before sending the issue to committee—essentially a refusal to vote." *Id.* at 3. Instead, it
"proposes that Mr. Daniel Garrie, Esq. be appointed as monitor with Ron Galperin in a
supporting role to navigate the difficult systems within the City." *Id.* at 3. The Alliance
also notes that the appointment suggested by the City is unnecessarily duplicative, and
lacks a true neutral given the Controllers' affiliation with the City. *Id.* at 5-6.

The Parties also quibble over the scope of work that should attach to the
appointment monitor and provide competing visions. *See id.* Exs. A-B. The City accuses
the Alliance of adding superlative terms to the scope of work, while the Alliance
maintains that its scope of work reflects what is actually needed for the Monitor to
complete meet its goals. *Id.* at 6-10.

## II.    MONITOR APPOINTMENT

The Court appoints Daniel Garrie to the Monitor position. Kenneth Mejia, current
Los Angelos City Controller, will support Mr. Garrie, without further cost to the City, in
the execution of his role by facilitating data access and coordination, per Daniel Garrie's
discretion. In addition, Mr. Mejia is currently the most knowledgeable person regarding

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:20-cv-02291-DOC-KES                    Date: October 14, 2025
                                                                        Page 5

the myriad and complex funding streams involved with the homelessness system—he would not require further payment either. Daniel Garrie and his team have the technical expertise and prior experience to review the City's data, as well as verify validity of that data.

The Court understands the City's concerns regarding Mr. Garrie's scope of work and expenses related to his position, but finds that Mr. Garrie remains the most viable option for Monitor. Without cooperation from the City, Mr. Garrie cannot provide a precise budget. The scope and effort of his work will be determined by the City's data, systems, and documentation. Rather than provide an imprecise estimate divorced from the realities on the ground, Mr. Garrie will provide an estimate upon review of the systems currently in place. The Court also finds that Mr. Garrie is the most economical choice of the options presented. His discounted rate of $750/hour[1] is the lowest compared to other candidates such as Ron Galperin who would charge $800/hour, plus fixed fees. *See* Special Master Statement at 13-14. Additionally, Mr. Garrie will not be charging for his travel time or travel expenses.

The Court acknowledges Mr. Galperin's distinguished public service and prior role as City Controller. His experience in public reporting and stakeholder engagement is commendable, and the Court appreciates his willingness to serve. The Monitor role under Section 7.2 is not ceremonial or advisory—it requires specialized technical expertise in timestamp validation, field-level data auditing, and real-time verification. The Court finds that Mr. Garrie's technical qualifications are better suited to fulfill the Monitor's independent verification duties.

Finally, the Court notes that appointing Mr. Garrie as a single, technically qualified Monitor—supported by City liaison Mr. Mejia—offers a more efficient and cost-effective structure for the City while preserving the independence and enforceability required under the Agreement.

While the Court appreciates the City's claims of being in a fiscal crisis, the webs of this crisis have been spinning for years and cannot be excused because there will always be a crisis. *See* Parties' Joint Report at 3-4 (noting that "if the City is concerned about budgetary issues [it is] surprising given its publicly disclosed $6 million spend on outside counsel in this case").

---

[1] Mr. Garrie notified the City and Special Master Martinez of his rate previously which remains unchanged.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 2:20-cv-02291-DOC-KES                                    Date: October 14, 2025
                                                                                                           Page 6


**III.     SCOPE OF WORK**

The Scope of Work was adequately set forth in the Court's Order Granting in Part and Denying in Part Plaintiff's Motion for Settlement Compliance (Dkt. 991) and further elaborated on at the September 16, 2025 Status Conference. The Court declines to rule further until, at a minimum, the Monitor has rendered an initial assessment.

The appointment of the Monitor shall take effect immediately upon the issuance of this order. This will allow the Monitor sufficient time to review and assess the October 15 quarterly report. The City must make arrangements with the Monitor so he can meet the forthcoming November 12, 2025 deadline for an initial assessment.

The Clerk shall serve this minute order on the parties.

MINUTES FORM 11                                                    Initials of Deputy Clerk:
                                                                                                              kdu
CIVIL-GEN