GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>          Plaintiffs,<br><br>     v.<br><br>CITY OF LOS ANGELES, a Municipal entity, et al.,<br><br>          Defendant. | CASE NO. 2:20-cv-02291 DOC (KES)<br><br>Honorable David O. Carter, United States District Judge<br><br>**DEFENDANT CITY OF LOS ANGELES'S EX PARTE APPLICATION FOR STAY OF ORDER APPOINTING DANIEL GARRIE AS MONITOR PENDING APPEAL**<br><br>Action Filed:     March 10, 2020 |

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT under Local Rule 7-19, Defendant City of Los Angeles will and hereby does apply ex parte for an order staying the Court's order appointing Daniel Garrie as monitor over pending resolution of the City's appeal to the Ninth Circuit.

On June 24, 2025, in accordance with Section 7.2 of the Settlement Agreement between Plaintiffs ("the Alliance") and the City (Dkt. 429-1), the Court ordered the parties to select a mutually agreed-upon monitor by September 12. Dkt. 991 at 57. On September 12, the parties filed a joint submission in which they proposed, "subject to Court and City Council approval," that former City Controller Ron Galperin or McKinsey & Company serve as the monitor. Dkt. 1033 at 1. At a hearing on September 16, the Court rejected Mr. Galperin and McKinsey and suggested a third monitor not jointly proposed by the parties: Daniel Garrie. Dkt. 1034 at 13:21–14:14. The City agreed to seek City Council approval to engage Mr. Garrie and Mr. Galperin to jointly serve as the monitor. *Id.* at 84–86. After the City Council did not take action on this proposal, the City stated that it was not amenable to having Mr. Garrie serve as a monitor, and proposed that Mr. Galperin serve as the monitor, along with current City Controller Kenneth Mejia. Dkt. 1045 at 1. Because the Alliance disagreed with this proposal (despite not having any objection to either Mr. Galperin or Controller Mejia), on October 10, the parties filed a joint request for the Court's assistance in resolving this disagreement. Dkt. 1045.

On October 14, the Court appointed Mr. Garrie as the monitor, with "support" from Controller Mejia "per Daniel Garrie's discretion." Dkt. 1048 at 4. This is an outcome that the City did not consent to, that the City Council has not approved, and that directly contradicts and effectively rewrites Section 7.2 of the Settlement Agreement. On October 22, the City filed a notice of appeal from that order. Dkt. 1053. The City now seeks a stay of the Court's order appointing Mr. Garrie as the monitor pending that appeal.

A stay is warranted because the City is likely to prevail on the merits of its appeal and because the balance of interests favors a stay.  There is a substantial likelihood the Ninth Circuit will agree with the City's position that the Court lacked authority—under the parties' Settlement Agreement or otherwise—to appoint Mr. Garrie over the City's objections and in the absence of City Council approval.  As the Court itself recognized at the September 16 hearing, "under 7.2" the Court does not have "any authority . . . to impose anything on either party, L.A. Alliance or the City" and "has no jurisdiction nor ability to impose unilaterally anything on you."  Dkt. 1034 at 40:8–10, 41:15–17.  The Court, however, has done just that—unilaterally imposing Mr. Garrie on the City despite the lack of any agreement or City Council approval of that result.

The balance of interests also favors a stay.  The City will suffer irreparable harm without a stay for two reasons.  First, it would be difficult or impossible to claw back funds paid to Mr. Garrie for performing court-ordered work if the City prevailed on appeal.  And all signs point to Mr. Garrie's work being extremely costly; he has stated that he intends to assemble a team of eight people to assist him and has refused to provide any budget to the City.  And the substantial expenditures that are likely to result from the work of Mr. Garrie and his large team could not come at a worse time for the City, which recently declared a fiscal emergency.  Second, the Court's order will irreparably harm the City by depriving the City of its right to manage its own affairs through its elected representatives, and by intruding on the independence of Controller Mejia, whom the Court has ordered to assist Mr. Garrie even though Controller Mejia is an independent elected official answerable only to the voters.  Although the risk of harm to the City and the public without a stay is high, a stay poses no risk of harm to the Alliance, including because certain of the City's obligations under the Settlement Agreement are currently paused because of declared emergencies after this year's wildfires, civil unrest, and fiscal emergency.

Good cause exists for ex parte relief because (1) the City will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion

Gibson, Dunn & Crutcher LLP

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

procedures and (2) the City is without fault in creating the need for ex parte relief. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995). The City will be irreparably prejudiced if Mr. Garrie is permitted to immediately move forward with work that will cost the taxpayers significant money that probably cannot be recouped and if Mr. Garrie is permitted to direct the activity of a duly elected official. And the City is not responsible for this emergency because it worked diligently with the Alliance to select a mutually agreeable monitor. The City could not have reasonably anticipated that the Court would re-write and override the terms of the Settlement Agreement by appointing a monitor to whom the City objected and whom the City Council had not approved—especially when this Court just last month said multiple times on the record that it lacked the authority to impose a monitor on the City without Council approval.

On October 22, 2025, counsel for the City provided notice to counsel for the Alliance, the County, and Intervenors by email. Scolnick Decl. ¶ 7, Ex. E. Counsel for the Alliance responded to that email, indicated that the Alliance would oppose, and confirmed that the City had satisfied the meet and confer requirement of Local Rule 7-19.1. *Id.* Counsel for the Intervenors indicated they did not intend to take a position on the ex parte but reserved the right to do so depending on the contents of the application. *Id.* ¶ 9. Counsel for the County also indicated that the County did not intend to take a position. *Id.* ¶ 10.

This ex parte application is based upon this notice, the accompanying memorandum of points and authorities, the declaration of Matthew Szabo, including the attached exhibits reflecting the City's fiscal emergency and communications with Mr. Garrie, the declaration of Kahn A. Scolnick, including the attached exhibits reflecting the parties' meet-and-confer efforts and communications with Mr. Garrie, and other such evidence as may be presented to the Court at any hearing on this application.

In keeping with Local Rule 7-9, the City lists below the names, addresses, telephone numbers, and email addresses of counsel for the other parties in this action:

**Counsel for Plaintiff LA Alliance for Human Rights**

Matthew Donald Umhofer
mumhofer@umklaw.com
Elizabeth A. Mitchell
emitchell@umklaw.com
UMHOFER, MITCHELL & KING LLP
767 South Alameda Street, Suite 221
Los Angeles, CA 90017
Telephone:  213.394.7979
Facsimile:   213.529.1027

**Counsel for Intervenors Orange County Catholic Worker, Los Angeles Catholic Worker, and Los Angeles Community Action Network**

Shayla R. Myers
smyers@lafla.org
Isabelle M. Geczy
igeczy@lala.org
LEGAL AID FOUNDATION OF LOS ANGELES
1550 West 8th Street
Los Angeles, CA 90017
Telephone:  213.640.3983
                    323.801.7990

Carol A. Sobel
carolsobel@aol.com
LAW OFFICE OF CAROL A. SOBEL
725 Arizona Avenue
Santa Monica, CA 90401
Telephone:  310.393.3055

Catherine Sweetser
catherine.sdshhh@gmail.com
SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP
11543 Olympic Boulevard
Los Angeles, CA 90064
Telephone:  310.396.0731

Brooke Weitzman
bweitzman@eldrcenter.org
William Wise
bwise@eldrcenter.org
ELDER LAW AND DISABILITY RIGHTS CENTER
1535 East 17th Street, Suite 110
Santa Ana, CA 92705

Telephone:  714.617.5353

**Counsel for Defendant County of Los Angeles**

Mira Hashmall
mhashmall@millerbarondess.com
Jason H. Tokoro

Gibson, Dunn & Crutcher LLP

5

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

jtokoro@millerbarondess.com
Lauren M. Brody
  lbrody@millerbarondess.com
MILLER BARONDESS LLP
2121 Avenue of the Stars, Suite 2600
Los Angeles, CA 90067
Telephone:  310.552.4400
Facsimile:   310.552.8400

DATED: October 22, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Theane Evangelis
    Theane Evangelis

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS McRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

LEGAL STANDARD..............................................................................................3

ARGUMENT ..........................................................................................................3

    I.     The City is likely to succeed in persuading the Ninth Circuit to reverse or vacate the order appointing Mr. Garrie as the monitor.............3

    II.    The City will face irreparable harm without a stay pending appeal. .........7

    III.   A stay is in the public interest and would not harm the Alliance. ...........11

CONCLUSION.....................................................................................................13

Gibson, Dunn & Crutcher LLP

i

# TABLE OF AUTHORITIES

## Cases

*Ariz. Dream Act Coal. v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ................................................................................ 7

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) .................................................................................. 9

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) .................................................................................................. 6

*City & Cnty. of S.F. v. Trump*,
783 F. Supp. 3d 1148 (N.D. Cal. 2025) ............................................................ 9, 11

*City of Grants Pass v. Johnson*,
603 U.S. 520 (2024) ........................................................................................... 7, 10

*Cnty. of Santa Clara v. Trump*,
250 F. Supp. 3d 497 (N.D. Cal. 2017) .................................................................... 9

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) .................................................................................... 6

*GM LLC v. Santa Monica Grp., Inc.*,
2010 WL 2740166 (C.D. Cal. Jul. 9, 2010) ......................................................... 11

*Immigrant Defs. Law Cntr. v. Noem*,
2025 WL 2017247 (9th Cir. July 18, 2025) .................................................... 10, 11

*King Cnty. v. Turner*,
785 F. Supp. 3d 863 (W.D. Wash 2025) ................................................................. 9

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) .................................................................................. 3

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
145 S. Ct. 2658 (2025) ............................................................................................ 9

*Nken v. Holder*,
556 U.S. 418 (2009) ........................................................................................... 3, 12

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

# TABLE OF AUTHORITIES

**Page(s)**

*Philip Morris USA Inc. v. Scott*,
    561 U.S. 1301 (2010)..................................................................................................... 9

*Swain v. Junior*,
    958 F.3d 1081 (11th Cir. 2020) ....................................................................................11

*Trump v. CASA*,
    606 U.S. 831 (2025)......................................................................................................10

*US Airways, Inc. v. McCutchen*,
    569 U.S. 88 (2013).......................................................................................................... 6

*Washington v. U.S. Dep't of Transp.*,
    2025 WL 1742893 (W.D. Wash. June 24, 2025) ........................................................ 9

## INTRODUCTION

Just last month, the Court correctly recognized that it did not have "any authority . . . to impose anything on either party, L.A. Alliance or the City" and that it had "no jurisdiction nor ability to impose unilaterally anything on you" with respect to the appointment of a mutually agreed-upon monitor under Section 7.2 of the Settlement Agreement.  Dkt. 1034 at 40:8–10, 41:15–17.  Yet the Court has done just that— declining to appoint any monitor proposed by the City and issuing an order on October 14 that appoints Daniel Garrie and requires City Controller Kenneth Mejia to provide "support" at Mr. Garrie's "discretion."  Dkt. 1048 at 4.  The City has appealed, and it asks that the Court stay its order pending the appeal.  A stay is warranted because the City is likely to prevail on appeal and will suffer irreparable harm without a stay.

The City is likely to prevail on the merits before the Ninth Circuit because there is no lawful basis for the Court's appointment of Mr. Garrie as a monitor.  There is no contractual basis for the Court's order, as the Court rightly noted at the September 16 hearing.  Section 7.2 of the parties' Settlement Agreement states that any monitor shall be "mutually agreed-upon" (Dkt. 429-1 § 7.2)—which means, as the Court itself repeatedly acknowledged at the hearing on monitor selection, that the Court cannot unilaterally appoint someone over either party's objection.  Here, the parties proposed two monitors:  former City Controller Ron Galperin and McKinsey & Company.  Citing concerns about Galperin's technical qualifications and McKinsey's previous work for an opioid manufacturer, the Court declined to appoint either McKinsey or Mr. Galperin as the monitor.  Instead, it proposed Mr. Garrie.  The City never agreed to have Mr. Garrie serve as monitor; instead, it agreed to seek City Council approval of the Court's proposal to have Mr. Garrie serve with Mr. Galperin. Dkt. 1034 at 84–86.  And after the City Council did not vote on this proposal, the City expressly stated that it was "no longer amenable to having Mr. Garrie serve as a Monitor."  Dkt. 1045 at 1.  There is also no extracontractual basis for doing what the agreement forbids.  The Court did not say, for example, that it was finding the City in contempt (and for good reason,

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

because no evidence, much less clear and convincing evidence, shows that the City willfully disobeyed any order). Given the lack of any legitimate basis for imposing Mr. Garrie on the City despite its objections, the Ninth Circuit is likely to reverse the Court's order.

The Ninth Circuit is also likely to conclude there is another problem with the Court's order: It directs Controller Mejia to "support" an unelected and politically unaccountable monitor (Mr. Garrie), encroaching on the principle that the City's elected representatives are answerable only to the voters. The Court's order placing Mr. Garrie effectively in charge of Controller Mejia's work is yet another reason the order is likely to be reversed.

If the City does not have the benefit of a stay while it presents these arguments to the Ninth Circuit, it will face irreparable harm. Under the Settlement Agreement, the City is solely "responsible" for paying the monitor's fees. So it will likely have to pay Mr. Garrie money that it probably will not be able to claw back even if it prevailed on appeal, given that he is now commencing work under a court order. And Mr. Garrie's fees are likely to be large. He has declined to provide any budget, has proposed an expansive scope of work, intends to field a team of eight people working at high hourly rates, and has already sent the City hundreds of questions. And the prospect of a massive additional expenditure—one that the City Council has not approved—could scarcely come at a worse time, as the City is grappling with a declared fiscal emergency.

The City stands to lose not just a large sum of money, but also the independence of its elected officials. Only the City Council should be permitted to decide whether and how to employ a monitor, and elected officials should be answerable to the voters for that choice. And yet this Court's order will give Mr. Garrie carte blanche to spend City funds—without any budget whatsoever—and to direct the work of an elected official.

Although the City would suffer serious and irreparable harm without a stay, the Alliance would suffer no real harm from a pause in Mr. Garrie's work. The City's final obligations under the Settlement Agreement are not until 2026 and 2027, and certain

obligations have been paused in any event under Section 8.2 as a result of three separate emergencies this year (devastating wildfires, civil unrest that strained City resources, and an ongoing fiscal emergency). Dkt. 429-1 § 8.2. If the Alliance insists that commencing the work of a monitor is urgent, then the Court could address that concern—and obviate the need for the City's appeal—simply by working with the City to obtain City Council approval of a different monitor who is acceptable to all parties, including the City's elected officials.

If the Court is not inclined to adopt that approach, it should stay its order appointing Mr. Garrie as the monitor pending the City's appeal challenging that order. At the very least, the Court should temporarily stay its order until the Ninth Circuit has had an opportunity to assess for itself whether the order should be stayed pending appeal, as otherwise the City will begin to incur substantial costs from Mr. Garrie's work.

## LEGAL STANDARD

District courts have "judicial discretion" to stay proceedings pending appeal. *Nken v. Holder*, 556 U.S. 418, 433 (2009). In determining whether to grant a stay pending appellate review, courts consider: (1) the stay applicant's likelihood of success of on the merits; (2) whether the stay applicant will be irreparably injured absent the stay; (3) whether the stay would substantially injure other parties; and (4) the public interest. *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011); *see also Nken*, 556 U.S. at 426. The Ninth Circuit looks at these factors on a "continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified." *Leiva-Perez*, 640 F.3d at 970 (quotation marks and citation omitted).

## ARGUMENT

**I.      The City is likely to succeed in persuading the Ninth Circuit to reverse or vacate the order appointing Mr. Garrie as the monitor.**

On appeal, the City intends to argue that this Court lacked the authority to (1) appoint Mr. Garrie as the data monitor without the City's consent and (2) require that

Controller Mejia must support Mr. Garrie in his efforts.  There is a strong likelihood that the City will prevail on one or both arguments.

    **1.**  Nothing in the parties' Settlement Agreement permits the Court to choose a monitor without the City's consent.  Section 7.2 provides that the monitor must be "mutually agreed-upon" by the City and the Alliance.  Dkt. 429-1 § 7.2.  Accordingly, on September 12, the parties filed a joint submission proposing, "subject to Court and City Council approval," that Mr. Galperin or McKinsey serve as the monitor.  Dkt. 1033 at 1.  At the September 16 hearing at which the parties and the Court discussed monitor candidates, this Court suggested a monitor not jointly proposed by the parties— Mr. Garrie—while simultaneously acknowledging that the language of Section 7.2 means what it says:

- "As I read 7.2, . . . I can't unilaterally impose my will or my choice on each of you."  Dkt. 1034 at 10:5-7.

- "And what I fear is that we won't reach an agreement between the two of you and then the Court is either forced to act unilaterally which I think is against 7.2 and not appropriate, or we reach a stalemate where the Court will act and just, you know, send it to the appeal amongst many issues." *Id.* at 13:14-18.

- "If you don't agree, I think 7.2 doesn't let me unilaterally [im]pose that." *Id.* at 15:8-9.

- "[T]he way 7.2 is drafted, the parties are actually the City and LA Alliance. And if they do come to a meeting of the minds, I think I'm duty-bound to accept that." *Id.* at 33: 5–7.

Notwithstanding these remarks, the Court rejected both options offered by the parties, citing concerns regarding Mr. Galperin's "technical expertise," *id.* 1034 at 10:25–11:1, and McKinsey's prior work for an opioid manufacturer, *id.* at 9:7–25. Instead, the Court proposed Mr. Garrie—a monitor to whom the parties had not mutually agreed, but in whom the Court had great confidence because of its prior "work[] with

him overseas at the highest levels of government." *Id.* at 14:4–5. The City's counsel agreed to seek City Council approval to have Mr. Garrie and Mr. Galperin serve as co-monitors. Dkt. 1034 at 84–86.

The Court understood that the City could not agree on any candidate for the monitor role without a vote by the City Council:

- "[T]here's another player involved. The City Council's approval," which "takes some time." As a result, "I don't want to see you folks reaching an agreement here in good faith . . . and then having the City Council reject this in a couple of weeks. It's a waste of your time." Dkt. 1034 at 7:3-17.

- "So ultimately it'll be the person or party in the City Attorney's office that makes the recommendation to the Council. Then, of course, it's in the Council's hands." *Id.* at 8:8-11.

- "I'm hoping that the Council approves, because I don't know any more cost effective way to get there. All these other entities from McKinsey on down are going to charge much more, but I'll leave that to the Council. That's up to them." *Id.* at 85:21-25.

After the City Council did not act on the proposal to appoint Mr. Garrie and Mr. Galperin, the City stated that it was not amenable to having Mr. Garrie serve as a monitor. Instead, it proposed that Mr. Galperin serve as the monitor, along with current City Controller Kenneth Mejia. Dkt. 1045 at 1. Because the Alliance disagreed with this proposal (despite not having any objection previously to either Mr. Galperin or Controller Mejia), the parties, on October 10, requested the Court's assistance in resolving this disagreement. In the parties' joint request, the City proposed that the Court appoint Mr. Galperin and Controller Mejia as monitors, and the Alliance proposed that the Court appoint Mr. Garrie and Controller Mejia. Dkt. 1045.

Although at the hearing the Court was of the view that the selection of the monitor was "in the Council's hands" and "[t]hat's up to them," on October 14 the Court took it upon itself to appoint Mr. Garrie—a monitor who was not "mutually agreed-upon" by

the parties. The Court appears to have justified its decision to appoint Mr. Garrie under Section 24 of the Settlement Agreement, which gives the Court authority to resolve disputes between the parties "regarding the interpretation, performance, or enforcement" of the Settlement Agreement. Dkt. 1045; Dkt. 429-1 § 24. Although the parties asked the Court to take action under Section 24 to resolve the dispute over selection of the monitor, the City never agreed that the Court could appoint a monitor who was not mutually agreed-upon by the parties. To the contrary, the City expressly rejected the Alliance's position that "the Court should . . . force the City to agree to have Controller Mejia and Mr. Garrie serve as the Monitor," and explained why that was "contrary to the Settlement Agreement." Dkt. 1045 at 2. And nothing about the Court's dispute-resolution powers under Section 24 permits rewriting Section 7.2 of the Settlement Agreement, which expressly requires mutual agreement over the choice of the monitor—something that is lacking here. The parties agreed on a mechanism for modifying their agreement: All modifications must be in writing and signed by all parties. Dkt. 429-1 § 18. To "override a plain contract term" like that found in Section 7.2, without any written agreement by the parties, is not dispute resolution—it is clear legal error. *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 99 (2013).

This Court did not identify anything outside of the contract that might give it the authority to choose a monitor who was objectionable to the City and never approved by the City Council. The Alliance may argue that the Court's order was based on its inherent contempt powers to "fashion . . . appropriate sanction[s] for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991). But the Court did not make any of the findings necessary to hold the City in contempt: proof that "(1) [the City] violated [a] court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order, (4) by clear and convincing evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). The Court decided the City Council was taking too long to make a decision on who might serve as the monitor, Dkt. 1048 at 4, but it never

suggested that the City violated any court order, much less find that the City did so by clear and convincing evidence.

**2.** The Ninth Circuit also is likely to conclude that this Court's order infringes on democratic norms in another way—by making the City Controller, an elected official, function as the subordinate of the unelected and politically unaccountable third party, Mr. Garrie. The Court has acknowledged that federal judges cannot "begin to 'match' the collective wisdom the American people possess in deciding 'how best to handle' a pressing social question like homelessness." Dkt. 991 at 60 (quoting *City of Grants Pass v. Johnson*, 603 U.S. 520, 560 (2024)). The people do that through "their elected representatives," who set policy and must face the criticism of the voters if those representatives' policy choices don't lead to the outcomes demanded by the public. *Grants Pass*, 603 U.S. at 552, 560. Yet the Court's order appears to place Controller Mejia—an elected official—under the control of Mr. Garrie, with Controller Mejia only having a "support" role that is to be guided by "Daniel Garrie's discretion." Dkt. 1048 at 4. That has it exactly backwards, and is another basis for reversal or vacatur of the Court's order.

## II. The City will face irreparable harm without a stay pending appeal.

The order appointing Mr. Garrie as monitor will irreparably harm the City by deepening its fiscal crisis and taking away core policymaking discretion from elected officials. "Irreparable harm" is "harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). The City will suffer three irreparable injuries without a stay: (1) the irreparable loss of funds paid to Mr. Garrie, coming at a time that the City is under a declared fiscal emergency; (2) the disruption of democratic norms, with the Court effectively ordering the expenditure of taxpayer funds without approval from the City Council, and with an elected City official becoming the subordinate of an unelected monitor; and (3) the City's loss of benefit of the bargain it struck, which permits it to have a say on the appointment of any data monitor.

Gibson, Dunn & Crutcher LLP

7

1. The City has been under a declared state of emergency since July 7, 2025, due to depleted General Fund reserves and unexpectedly low tax revenue, both of which pose a serious risk to public services. Szabo Decl. Ex. A. The factors leading to this crisis have been well documented in reports from City Administrative Officer Matt Szabo. The first report for fiscal year 2024-25 projected revenue to be $51.6 million below expectations because of decreased business and transient occupancy taxes, and anticipated roughly $216 million in overspending from civil lawsuits, Fire and General Services Department expenses, and other areas. *Id.* at 1. The second report for fiscal year 2024-25 reported almost $300 million in unplanned expenditures and warned of a significant reduction to the City's Reserve Fund. *Id.* at 1–2. These financial challenges worsened in January 2025 with the unprecedented Palisades Fire—which itself led to a separate emergency declaration from the Mayor. *Id.* at 2. The third report for fiscal year 2024-25 again noted about $300 million in overspending and continued Reserve Fund depletion. *Id.* In response, the Mayor and City Council reduced appropriations by $76 million and imposed hiring constraints, causing significant service impacts and limiting departmental planning. *Id.* at 2–3. Based on these ongoing challenges, the Mayor and City Council declared the existence of an emergency under Government Code Section 3504.5 and Los Angeles Administrative Code Section 4.859. *Id.* at 5.

The Court's appointment of Mr. Garrie as the monitor will irreparably harm the City as Mr. Garrie and his large team begin extensive and expensive work that exceeds the scope contemplated in the parties' settlement agreement and diverts the City's already-scarce resources away from essential public services, including homelessness programs. This Court's appointment order does not define the scope of Mr. Garrie's work, Dkt. 1048 at 6, and there is a serious risk that the costs of that work will quickly balloon. Mr. Garrie already plans to assemble an eight-person team, expects that familiarizing himself with the project will take 100 hours (at $750/hour), has refused to even provide a budget for his services, and just four days after his appointment requested answers to more than 700 questions from Mr. Szabo. Szabo Decl. ¶ 6, Ex. D. The

ballooning costs of Mr. Garrie's monitoring project will have a potentially drastic impact on the City's budget by diverting funds from other programs, all at the time of a fiscal emergency.

This monetary harm would be irreparable because it likely "cannot be recouped" and would therefore be "irrevocably expended." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025) (quoting *Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010)); *see also California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). Even if Mr. Garrie's appointment is eventually overturned, it would be exceedingly difficult for the City to recover anything it pays him and his team in the interim. As it stands, Mr. Garrie is performing work according to an order of this Court and would likely seek to hold the City liable for his fees and expenses even if his appointment is later invalidated by the Ninth Circuit.

Even if the City could theoretically recover some of the money paid to Mr. Garrie, that possibility still would not cure the City's inability to "budget, plan for the future, and properly serve [its] residents." *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017). Budgetary disruptions and uncertainty are irreparable harms because they threaten cuts to "healthcare, disease control, emergency management, public benefits, and law enforcement programs," which would have a lasting impact on the City and its residents regardless of whether the City eventually recovers damages. *City & Cnty. of S.F. v. Trump*, 783 F. Supp. 3d 1148, 1186 (N.D. Cal. 2025). For that reason, courts routinely find that harms to a municipal budget, including mere "uncertainty," are irreparable. *Id.*; *Cnty. of Santa Clara*, 250 F. Supp. 3d at 537; *King Cnty. v. Turner*, 785 F. Supp. 3d 863, 890 (W.D. Wash 2025) ("acute budgetary uncertainty is irreparable"), *appeal filed*, No. 25-3664 (9th Cir. June 10, 2025) ; *Washington v. U.S. Dep't of Transp.*, 2025 WL 1742893, at *29 (W.D. Wash. June 24, 2025) (similar).

**2.** This Court's order also will irreparably harm the City because it undermines democratic norms. First, as noted above, the Court's order appears to imbue

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

Gibson, Dunn & Crutcher LLP

Mr. Garrie—a Court-appointed monitor—with the authority to oversee and control the elected City Controller.  Specifically, the Court's order appointing Mr. Garrie states that Controller Mejia "will support Mr. Garrie, without further cost to the City . . . *per Daniel Garrie's discretion*."  Dkt. 1048 at 4 (emphasis added).  Stated differently, the Court has directed an elected City official to perform unpaid work at the "discretion" of an unelected monitor who was not approved by the City Council—as if Mr. Garrie were the sort of receiver whom the Alliance unsuccessfully urged the Court to appoint.  Dkt. 991 at 60.  City residents entrusted Controller Mejia with discretion over how to perform the functions of the City Controller—not to take orders from a third party like Mr. Garrie.

Second, the Court has taken away from the people's elected representatives and given to Mr. Garrie the power to decide how to spend taxpayer funds.  The Supreme Court has explained that homelessness policy is best served by the "collective wisdom" of the voters whose will is carried out by their elected officials.  *Grants Pass*, 603 U.S. at 560.  The Court recognized that principle when it rejected the Alliance's unprecedented request to appoint a receiver to take control of the City's response to the homelessness crisis.  Dkt. 991 at 60.  But Mr. Garrie's appointment will interfere with the democratic process in much the same way that a receivership would.  Mr. Garrie has never offered a budget, so he will be free to spend taxpayer money on whatever monitoring measures he deems essential—taxpayer money that the City Council could otherwise allocated to its preferred homelessness programs or other essential matters.

This subversion of the City's democratic institutions constitutes irreparable harm justifying issuance of the requested stay.  The Court's order strips City residents of their right to self-governance and democratic accountability in a way that no remedy could undo.  As the Ninth Circuit has recognized, "the harms involved in denying the duly elected branches the policies of their choice" are irreparable.  *Immigrant Defs. Law Cntr. v. Noem*, 2025 WL 2017247, *13 (9th Cir. July 18, 2025) (citing *Trump v. CASA*, 606 U.S. 831, 860–62 (2025)).  Damages cannot make up for the harms the City and its

residents will suffer if the City "lose[s] the discretion vested in [it] under state law to allocate scarce resources among different [programs]." *Swain v. Junior*, 958 F.3d 1081, 1090 (11th Cir. 2020).

**3.** The City will suffer irreparable harm because it entered into the Settlement Agreement with an expectation that the Agreement's bargained-for terms would be honored. *See, e.g.*, *GM LLC v. Santa Monica Grp., Inc.*, 2010 WL 2740166, at *2 (C.D. Cal. Jul. 9, 2010) (entering injunction to enforce a settlement agreement because plaintiff would otherwise be "completely deprive[d] . . . of an important benefit of its bargain"). One of those terms, set out in Section 7.2, is that the City will have the right to choose a monitor. But this Court's decision deprives the City of that right. And if the City prevails on appeal, it will never be able to recover the time it spent under the watchful eye of someone it never agreed to engage.

### III.    A stay is in the public interest and would not harm the Alliance.

Because the City has established a likelihood of success and irreparable harm, the Court should consider whether a stay is in the public interest and would cause any harm to the Alliance. *Immigrant Defs. Law Cntr.*, 2025 WL 2017247, at *4. Both of these factors also support the requested stay.

The irreparable harms to the City are also irreparable harms to the public. All residents of the City of Los Angeles stand to lose if the City's scarce funds are spent at the sole discretion of an unelected monitor who was not entrusted with that power by the City Council. "The public interest is served by allowing [cities] clarity about their budgets and programmatic capacities" and thus avoiding cuts to essential services. *City & Cnty. of S.F.*, 783 F. Supp. 3d at 1202. Likewise, interference with the discretion of City officials inflicts harm upon the public, who elected those officials. *Immigrant Defs. Law Cntr.*, 2025 WL 2017247, at *13 (interfering with the discretion of an elected body "inflict[s] irreparable injury to the interests of the government and the public").

The Alliance, by contrast, won't suffer any significant harm if Mr. Garrie is unable to begin his work immediately. The relevant question at this stage is not whether

Gibson, Dunn & Crutcher LLP

11

the Alliance would be harmed by the outright revocation of the appointment, but whether it would be harmed by "the issuance of the stay" as the propriety of that appointment is resolved in the court of appeals. *Nken*, 556 U.S. at 434. Pausing Mr. Garrie's work would not result in any harm because the City's obligations under the agreement are not immediately due, and if the Alliance believes immediate action is necessary, then the Court could achieve that result by appointing a different monitor who meets the approval of all parties. Any perceived prejudice to the Alliance can also be alleviated by seeking an expedited appeal in the Ninth Circuit.

The City faces no immediate deadlines under the agreement; it agreed to create 12,915 housing or shelter solutions by June 13, 2027, Dkt. 775-1 at 1, and make 9,800 reductions of tents, makeshift shelters, cars, and RVs by June 30, 2026, Dkt. 668-1 at 82–84; Dkt. 713 at 2–3. And certain of the City's obligations are currently paused anyway under Section 8.2 of the Settlement Agreement, which provides that "[i]n the event of fires," "large scale civil disturbances," and "any local or fiscal emergency declared by the Mayor of Los Angeles and the Los Angeles City Council," among other things, "the obligations of the City . . . shall be paused, and the Parties agree to meet and confer on any necessary and appropriate amendments to those obligations." Dkt. 429-1 § 8.2. The City has been in a state of emergency since January 7, 2025, as a result of the massive fires in and around Los Angeles. Dkt. 983-3. And the fires deepened the fiscal crisis, requiring "immediate expenditure of public funds" to save lives and property. Dkt. 983-5 at 4. The state of affairs worsened in June 2025, when civil unrest erupted. Szabo Decl. Ex. C. Responding to the unrest cost the City over $32 million, pushing its already-strained finances further into the red. *Id.* Ex. C at 2. And due to the City's dire financial situation, the City declared a fiscal emergency on July 7. *Id.* Exs. A–B. Any of those events was sufficient on its own to trigger a pause to the agreement under the unambiguous language of Section 8.2; together, they compel the conclusion that the City's obligations are suspended.

The only looming deadline is the November 12, 2025 hearing regarding the

October 2025 status report. Dkt. 991 at 57. But the Alliance won't suffer irreparable harm if that hearing is moved or if Mr. Garrie does not participate in it. To the extent urgent action by any monitor is necessary, either in connection with the hearing or otherwise, the Court could simply work with the City to obtain City Council approval of a different monitor who is acceptable to all parties, including the City's elected officials. In fact, the Alliance agreed that Mr. Galperin would be a suitable monitor *without any co-monitor*, Dkt. 1033, and has also suggested that Controller Mejia could serve as a co-monitor, Dkt. 1045 at 2. And the City has proposed seeking City Council approval to have former City Controller Ron Galperin and Controller Mejia to serve as the monitors. Dkt. 1045 at 1. If urgency is necessary, the Alliance and the Court could simply permit the City to seek City Council approval of that alternative.

In sum, a stay will prevent irreparable harms to the City's budget and the broader democratic process without harming the Alliance. The balance of interests favors a stay.

## CONCLUSION

The Court should stay its order appointing Mr. Garrie as the monitor pending the City's appeal from that order. At the very least, the Court should temporarily stay its order until the Ninth Circuit has had an opportunity to assess for itself whether the order should be stayed pending appeal.

DATED: October 22, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Theane Evangelis
        Theane Evangelis

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
    tevangelis@gibsondunn.com
MARCELLUS McRAE, SBN 140308
    mmcrae@gibsondunn.com
KAHN SCOLNICK, SBN 228686
    kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
    bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
    akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
    pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978-7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

14

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)