# Exhibit A

Scolnick Decl. Ex. A - 4

LA ALLIANCE FOR HUMAN                )
RIGHTS,                              )
                                     ) Case No:
   vs.                               ) 2:20-CV-02291-DOC-KES
                                     )
CITY OF LOS ANGELES,                 )
                                     )
_____)


                        MEET AND CONFER


                       Taken via Zoom
                  Thursday, August 7, 2025
                      At 12:31 p.m.


Reported by:  Emily A. Gibb, RPR, CSR, CCR
CA CSR #14551, NV CCR #709


                                              Page 1

Scolnick Decl. Ex. A - 5

                        A P P E A R A N C E S
    For the City of Los Angeles:
             Kahn A. Scolnick, Esq.
             Marcellus McRae, Esq.
             Bradley J. Hamburger, Esq.
             GIBSON DUNN
             333 South Grand Avenue
             Los Angeles, California   90071
             (213) 229-7000
             kscolnick@gibsondunn.com
             mmcrae@gibsondunn.com
             bhamburger@gibsondunn.com

    For LA Alliance for Human Rights:
             Matthew D. Umhofer, Esq.
             UMHOFER, MITCHELL & KING, LLP
             767 S Alameda Street
             Suite 270
             Los Angeles, California   90021
             (213) 394-7979
             matthew@umklaw.com

    Also Present:

             Paul Webster, Esq.

             Diane Bang, Alliance

             Valerie Flores, City of Los Angeles

             Arlene Hoang, City of Los Angeles

             Jessica Mariana, City of Los Angeles

             Matt Szabo, City Representative

                         *  *  *

                                                   Page 2

Scolnick Decl. Ex. A - 6

P R O C E E D I N G S

-o0o-

MR. SCOLNICK:  Well, thank you.

We're on the record?

MS. HOANG:  Just before we get started, I know Jessica's trying to be let in, so whoever is --

MR. SCOLNICK:  Oh, okay.  Well, let me admit -- I'm admitting.

I see Paul Webster joining.

MR. WEBSTER:  Hello.

MR. SCOLNICK:  Hello, Paul.

We -- we're on the record.  We've got a court reporter, just so you know.

MR. WEBSTER:  Fair enough.  I probably won't -- I'm just here to listen.

MR. SCOLNICK:  Understood.

Okay.  I think everyone from our side is here.  Everyone from the Alliance side is here. Absent objections, let's -- let's start talking.

MR. UMHOFER:  Sure.

MR. SCOLNICK:  Okay.  Well, thank you.

So -- so -- thanks, Matt, and thanks, Paul.

We -- we, I think, started this because we wanted to, first and foremost, invoke the -- the

Page 3

Scolnick Decl. Ex. A - 7

Section 8.2 of the -- of the settlement agreement.

And just since we're on the record, I think we all know what that is, but it's -- it's the provision, the force majeure provision.  Our view is that the parties negotiated and included and the Court approved this provision contemplating that there could be funding challenges along the way of this multiyear settlement agreement that would require both a pause and a revisiting and renegotiation of -- of certain terms.  So that is the reason we -- that is the reason we want to talk today.

And as you know, we've invoked three separate emergencies that qualify under the express terms of -- of 8.2, the -- the wildfires, the -- the fiscal emergency declared by the City, and the -- the civil unrest due to the ICE raids.  We've sent you information about all of those, including the fiscal impact of those.  And so that, in our view, does -- does trigger, again, both a pause, but more importantly for today, an obligation to -- to discuss appropriate modifications to the terms of the settlement agreement.  We've sent you two overarching things that we want to talk about.  And -- and I think we would, I guess, turn it over to you, then,

Page 4

Scolnick Decl. Ex. A - 8

to get your reactions and responses to -- to our suggested revisions to the settlement agreement terms.  Okay?  And --

MR. HAMBURGER:  And -- and, Matt, I'm happy to go through and explain the things that are in Kahn's email, about the -- the amendments that we're proposing, but I'll pause there because you were about to say something.

MR. UMHOFER:  Yeah.  No, no.  Look, I appreciate the email.  I haven't had -- some of these things -- so there will be two things that I will probably say, you know, on this today in terms of just, okay, I can either say I'm only equipped at this point to say no or I need more information and more to figure things out.

So some of these things are clear nos on our end.  Some of them are we need more information to understand.  And so -- but I just -- on the -- on the invocation of 8.2, I just want to understand the timing here.

Is it -- is the City's position that 8.2 is hereby invoked as of this moment or whenever things were sent over on this?  Is there another time that 8.2 -- I just -- I -- I want to establish, at least from the City's perspective, clarity on when it --

Page 5

Scolnick Decl. Ex. A - 9

when it's invoked -- it has invoked 8.2.

Or does this go back months?  I'm just trying to be --

MR. SCOLNICK:  Yeah.  So let -- let me see if I can explain.  Our -- our -- our interpretation of the plain language, really, of 8.2 is there's two separate things; right?  And one is a pause, and two is an obligation to meet and confer to discuss amendments to the obligations in the settlement agreement.

So the language of 8.2 on the first one, on the pause is automatic.  It says that in the event of these things, all three of which we've -- you know, we've shown you or we -- you know, we've given you information about: the fires, the fiscal emergency, and the ICE raids.  In the event of those things, the obligations of the City in Sections 3, 4, and 5 of the agreement shall, that's the word, shall be paused.  So that -- that happened as soon as those events happened without us even invoking anything. It's just automatic.

And then the second -- the second part of 8.2 is the -- is the obligation of the parties to meet and confer and discuss appropriate amendments. That happened when we reached out.  We reached out,

Page 6

Scolnick Decl. Ex. A - 10

and we -- I guess there was -- there was a prior effort to reach out even before the last -- the evidentiary hearing, you know, back in the -- in the time of the fires themselves. But right now, we are -- we are restarting that discussion. We've -- we've reached out to you to -- to meet and confer about amendments. And so that's -- I hope I answered your question, but that's -- that's how we see this.

MR. UMHOFER: Okay. No, that -- I understand. So your view is that as of -- what's the first date that you would -- like, the earliest date of the three emergencies that you've identified? What is the earliest date there?

MR. SCOLNICK: January 7th or something like that.

MR. UMHOFER: January 7th. Okay. I just wanted -- I didn't -- I didn't know whether any of the other things predated January 7th. But it sounds like January 7th is the operative date for the City from the pause perspective.

MR. SCOLNICK: Yes.

MR. UMHOFER: That's the earliest -- okay. And so from the City's perspective, there's been a pause since then. And this -- and I understand your point about the meeting and

Page 7

Scolnick Decl. Ex. A - 11

conferring.  And I understand that's why we're here.
So that's -- that's helpful.

MR. McRAE:  Hey, Matt, can I ask you?  You say you understand it.

Is there anything that you disagree with there?

MR. UMHOFER:  Yeah.  I -- I don't know that -- I don't know that it's possible for something to happen and we don't know about it and for that to enact this pause.  So I don't think that that's consistent with just reality that the City can -- something can happen, the City can keep it secret for a while, years, if not -- you know, or -- and -- and then consider the agreement paused but not tell anybody and that that enacts the pause.  I just don't think that's possible.

MR. SCOLNICK:  Well --

MR. UMHOFER:  Well, I'm not suggesting -- I mean, that's the extreme version of things.  But -- so I'm not in agreement on the notion that the pause happens whenever something happens.  That's just not -- I don't think that's possible.

MR. McRAE:  Isn't that -- isn't that what the agreement says?  I mean, I think Kahn just read the language.  And so as part of the meet and confer,

Page 8

Scolnick Decl. Ex. A - 12

what language, other than the language in the agreement, are you relying on for contrary construction?  Or -- or how do you read that language?  Just operating within the congruency agreement, how do you read the language differently than he did?

MR. UMHOFER:  I think we're looking at the same language.  I think the City has to invoke it in order for it to be paused.  And that's consistent with the language of the Court's order as well on this.  So I understand the City's invoked, but I disagree with the notion that, A, that -- that that's unreviewable by the Court.  I think the Court still has jurisdiction to interpret whether this is true.

I think that it's impossible under the -- that it cannot be that something can happen, it's never communicated, but things are just paused and nobody gets notified.  I just don't think that that's possible.

MR. McRAE:  Why do you --

MR. HAMBURGER:  Isn't that a bit academic here?  I mean, I assume you knew about the fires like everybody else knew about the fires.  And I assume you knew from media reports about the civil unrest.  And I think we even briefed -- had in our brief

Page 9

Scolnick Decl. Ex. A - 13

references to the declaration of the fiscal emergency.  So you're talking hypotheticals.

You're talking about the actual -- the -- the -- the things that have happened in the last year; right?

MR. UMHOFER:  I'm trying to pinpoint -- I'm just trying to get the City's position, and I'm not going to agree that -- so I'm not going to agree that things are automatically paused when something happens but the City never invokes the agreement. And so --

MR. McRAE:  But -- but -- but again --

MR. UMHOFER:  And so you asked me if I disagreed with anything.

MR. McRAE:  Right.

MR. UMHOFER:  And I'm telling you that I disagree.  And you -- I understand your point, which is, Okay, hey, I'm seeing this agreement just says things shall be paused.  I think the City has to communicate that.

It didn't communicate that on January 7th. It is the City's position, however, that the obligations were paused as of January 7th.  I think it's important to know where the City comes down on that, and I understand that now.

Page 10

Scolnick Decl. Ex. A - 14

Brad, you're right -- Bradley, you're correct that at some point, the City did invoke and notify.  I get that they've done that at this point, and that's where we are at this point.

I take the -- the Court's interpretation of this section at face value as well, which is that the -- this invocation of Section 8.2 doesn't excuse the City from its ongoing obligations.  The pause is not a blanket exception from the agreement, et cetera, et cetera.

So to the extent that it -- it's a -- we can -- I don't think it's helpful now to debate what the impact of a pause is.

MR. McRAE:  Well, it's -- it's not a debate about that.  None of what you just read about what the Court said addresses the issue of when the pause goes into effect.  In fact, what you were talking about was, assuming that you're reading the order correctly, what the implications of the pause are.

Brad's point was:  Isn't that academic?  You knew that these things occurred.  You don't dispute that.  I mean, you were aware of the fires.  You were obviously aware of the -- the raids.  And clearly, we did brief the point about the fiscal emergency.

So are you saying that you guys weren't

Page 11

Scolnick Decl. Ex. A - 15

aware of those things?

MR. UMHOFER:  I'm saying that I was aware of them, but there are fires every day in the City.  And it cannot -- if the City is going to take the position -- I don't know if the City viewed these fires as triggering the pause.  And so that's why I asked the question.

It's not an academic question about whether a fire down the street in skid row, you know, a tent fire, something like that, versus a fire that takes over and, you know, displaces tens of thousand -- 10,000 people.  Those are very -- two very different things.  It's helpful for me to know that the City views January 7th as a triggering event.

MR. McRAE:  And do you have an alternative date under your interpretation of things?

MR. UMHOFER:  Not clearly in mind, but I think invocation is important to the agreement.  I think there needs to be communication.  I think if the City can unilaterally pause based on information that it doesn't communicate, that it considers one fire to not be a triggering event but another fire to be a triggering event, I think it's important.

I think it's necessary, for the agreement to have any meaning, that the City either communicate

Page 12

Scolnick Decl. Ex. A - 16

that there is a pause on -- and that this has been triggered or not.  If there's a 1.0 earthquake, is there a pause?  Yes or no?  The city's got to communicate that, I think, for this agreement to work.

MR. HAMBURGER:  Okay.  So -- so -- but -- but -- this may be also academic, right, because there was invocation --

MR. UMHOFER:  Yes, I get it.  So --

MR. HAMBURGER:  -- shortly after the fires.

It was either in January or February; right?

MR. UMHOFER:  Right.

And so, again, I -- I think it's important for our -- I'm just trying to establish where the City is in on this.

MR. HAMBURGER:  Okay.

MR. UMHOFER:  I don't have a different date clearly in mind.  I know that you invoked weeks -- weeks or a month or so after the fire.  I don't have the specific date on when that happened.

I think that that is an important date because that was the first point at which we've -- knew that the City considered that to be a triggering event.  We didn't know before that the City -- that the City considered -- considered it to be a

Page 13

Scolnick Decl. Ex. A - 17

triggering event. And if it comes down to certain obligations that you had in those intervening weeks that were not met, I just want to be clear on where the -- what the City's position is. And if I have a different position, I'll let you know.

MR. McRAE: And before we move on --

MR. UMHOFER: Right now it is academic.

MR. McRAE: Before we move on from this topic, you mentioned the invocation that you think is a threshold in communication. I just want to make sure that I understand this.

A, do you read the agreement as this isn't mutuality that's required in terms of 8.2 applying? As Kahn read the language, it doesn't say that the parties have to agree that it applies for it to apply. It simply says upon these events.

You have that same reading; right? I just want to make sure that we're not --

MR. UMHOFER: I don't -- I don't know that I do. I don't know that anything in this agreement is -- gives the City unilateral ability to pause without us disagreeing and taking it to the Court. I think the application of 8.2 can be reviewed by the Court and, indeed, it -- it has been.

MR. McRAE: Those are different issues,

Page 14

Scolnick Decl. Ex. A - 18

whether something can be reviewed or whether the action can be taken or whether something is in fact the case.  In other words, someone can assert that something happened.  It either did or didn't happen.  Whether it's reviewable by the Court is a different issue.

But -- but let -- let me get to this, because I -- I do want to make sure I understand this.

You said communication and invocation.  Those terms are not in Section 8.2.

MR. UMHOFER:  Yes, they are not in Section 8.2.

MR. McRAE:  Okay.  So -- so --

MR. UMHOFER:  Other than the meeting and conferring.

MR. McRAE:  -- your interpretation depends on -- I -- I guess -- again, I just want to make sure I understood the source of your assertion that you think those things are prerequisites for the applicability of this.  Those are terms that are external.  They're not even external.  They're terms that are just not present in the agreement.

MR. UMHOFER:  Yeah.  I think it renders the agreement absurd to think that the city can

Page 15

Scolnick Decl. Ex. A - 19

unilaterally pause and not communicate its pause to anybody based on a fire that happens on a street corner or an earthquake that doesn't trigger any --

MR. McRAE:  Yeah.

MR. UMHOFER:  -- you know, meaningful --

MR. McRAE:  And we agree that that didn't happen.

MR. UMHOFER:  I understand that.

MR. McRAE:  In other words, the city didn't fail to --

MR. UMHOFER:  But you're asking me for my interpretation, so there's -- you're moving from what does the agreement say to the application of the agreement.

MR. McRAE:  Right, right.

MR. UMHOFER:  And so I --

MR. McRAE:  On these facts, though.  Not on hypothetical facts where nobody gets alerted, because that doesn't do us any good to talk about.

MR. UMHOFER:  Well, right.  We have been alerted.  And your point is -- but you keep coming back to the agreement, and I agree that the words "invocation" and "communication" aren't in there.

I think that a pause that is not communicated and not asserted can't be an effective

Page 16

Scolnick Decl. Ex. A - 20

pause under this agreement.  And I think that that's just -- you know, and I -- I -- forgive me for not having the appropriate Latin term for this, but I just think it's -- it's an absurd result if as a -- putting aside the fact, the specific facts that the agreement could be that a City could have a secret pause and that that could be an effective pause under this agreement.

So -- and the meeting and conferring obligation is there, you know.  I -- I -- it would seem to me to allow for communication and, you know -- I mean, like, there's -- a pause is followed by meeting and conferring, and that's what we're doing now.

So we can spend a lot of time on -- on this, but I'm not going to commit myself to interpret -- a particular interpretation of the agreement at this point, an agreement with -- with the City's view that simply having these events happen with no communication whatsoever to the Court or to the parties would be effective under the agreement as a pause.

MR. SCOLNICK:  Let -- I mean, let's move on, because it sounds like we agree there was a massive fire and it was an emergency and there were, you

Page 17

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 21

know, internationally recognized ICE raids that everyone knew about and triggered a pause.  And so again, I -- I think you're not going to commit to an abstract interpretation of this thing.  But these things happened.  You know about them.  We reached out to talk and let's talk.

MR. UMHOFER:  Yep.  I gotcha.

MR. SCOLNICK:  Okay.

MR. UMHOFER:  And so my understanding -- and I -- again, I appreciate the email -- is I -- we can just run through the email on shelter and housing solutions, the first one.

The TLS subsidies, we are willing to consider this, but we need to know how the time-limited subsidies are working and where the funding is coming from for them.  So we'll submit, you know, additional questions to you about that.

But fundamentally, I think, you know, we need a new bed plan from you guys, a bed plan that gets you to the 12915 number.  And I presume that you guys are going to throw TLS beds in there, and, you know, we'll ask some questions to try to get to the bottom of it so that we can figure out whether this is a modification, to the extent that it is a modification, to the extent that these beds are going

Page 18

Scolnick Decl. Ex. A - 22

to be acceptable toward the 12915 goal from the plaintiffs' perspective.  Again, obviously the Court's perspective is the one that matters.

MR. HAMBURGER:  Yeah.  So on that, you know, we believe that -- you know, we're not actually asking for -- we don't think we're asking for a modification.  I think we are asking for, you know, out of abundance of caution to avoid a dispute.  So I guess it may be a modification in the sense that we make something, you know, more express that we think is already express.

But we understand that you're willing to consider it.  Appreciate that.  And if you have questions for us, we will answer them.

And I want to make clear, you know, on the -- the shelter and housing solutions, we are not asking for a modification of the total number.  So -- but -- but we're asking for the two things that we've put in -- in the email.

MR. UMHOFER:  Yeah, yeah.  And I think to the extent -- I need to talk with Liz about this more to the extent that on the second bullet point of No. 1, we have an initial disinclination to allow those to be counted.  But I need to talk to Liz.  I can't elaborate at this point.  That was -- we need

Page 19

Scolnick Decl. Ex. A - 23

to talk a little bit more about that.

MR. HAMBURGER:  Okay.

MR. UMHOFER:  So --

MR. HAMBURGER:  So your disinclination on that, you're -- you're not inclined to agree --

MR. UMHOFER:  To agree with -- yeah.

MR. HAMBURGER:  -- to allow those to be counted.

Okay.  But you don't have the basis today for why?

MR. UMHOFER:  Yeah, I want to discuss that a little bit more with her --

MR. HAMBURGER:  Okay.

MR. UMHOFER:  -- before we give you kind of more on that.

The encampment --

MR. HAMBURGER:  Can we -- can we pause there, though?  I just want to make sure.

On the housing and shelter solutions, do you any proposed amendments that you would like us to consider or that we should be conferring about?

MR. UMHOFER:  No.  We just -- I mean, right now, I believe we are seeking no modifications to the agreement at this point.  And I -- I get that you are seeking modification, but we don't have any stealth

Page 20

Scolnick Decl. Ex. A - 24

modifications --

MR. HAMBURGER:  Yeah.

MR. UMHOFER:  -- you know.

MR. HAMBURGER:  I -- I guess -- I guess -- I guess my question -- that's helpful.

I guess my question is broader than -- since you made it broader, which is -- so just so I have your position clear, you don't believe any of the three events that we identified warrant a modification of the agreement?  At least beyond what we've proposed?

MR. UMHOFER:  Yeah, we're not -- no, not at this point.  No.  I'll give it some additional thought, but -- but at this point, none of these things, from our view, alters or should alter the obligations of the City under the agreement.

So I understand the City feels differently about that.  That's why we're here, and we're working through these, but --

MR. HAMBURGER:  Yeah.

MR. UMHOFER:  -- not now.

MR. HAMBURGER:  So we provided you with -- that -- that's helpful.

We provided you with a substantial amount of data in the reports, so I would just encourage you to

Page 21

Scolnick Decl. Ex. A - 25

take a look at that.  There -- these are significant fiscal events.  And they also take up time of -- of the City officials.  And so -- you know, so I understand your position right now is -- is you're not proposing any modifications, and it sounds like you're suggesting that maybe no modifications are warranted.

But, you know, our position will be that these are very significant fiscal events, but I understand you can take the position that no modifications would -- would be warranted.

MR. UMHOFER:  Well, again, we're -- we're not -- I'm not saying that there are some that we're going to consider here.

MR. HAMBURGER:  Okay.

MR. UMHOFER:  So down the line here, as we go down this list.

MR. HAMBURGER:  Great.

MR. UMHOFER:  But, you know, as the plaintiffs in the case, believing that the -- some of the fiscal -- aspects of the fiscal emergency were not triggered by these events, but were at least equally caused by other just decisions that were made by the City council about funding, the seeds that were planted long ago.

Page 22

Scolnick Decl. Ex. A - 26

And so it's a little bit hard when the, you know, City makes certain decisions at certain points, including its decisions to emphasize the most -- some of the most expensive ways to address homelessness, and then turns around and says, We're out of money and we can't do everything that needs to be done under the agreement, that's -- that's where we run into it.

So I get your point that these are events that have -- that are causing problems for the City, but I think the City has also made a bunch of choices independent of these that have led to the fiscal crisis as well.

(Overlapping speakers.)

MR. SCOLNICK:  Can I -- sorry.  Just I -- I assume you're not saying this, but just so we're clear.

You're not saying, are you, that the City made choices that made the fire damage more expensive or that --

(Overlapping speakers.)

MR. UMHOFER:  No, of course not.  Of course not.

MR. SCOLNICK:  -- made the ICE raids more expensive?

Page 23

Okay.  I assumed not, but I want to know.

MR. UMHOFER:  I'm not saying --

(Overlapping speakers.)

MR. McRAE:  And -- and, Matt, here's the thing:  A, the Court has already said in its order exactly what we were asserting during the evidentiary hearing, which is how expensive the housing is, et cetera, is in the City's discretion.

We got to move on from that.  We can't keep relitigating a point that we've already won.  I mean, that just doesn't -- to -- to invoke that in the context of talking about choices that have been made is to basically ignore the fact that that's already an established point that's in the City's favor.  So that's one thing.

But the second thing is this:  What would be really helpful when you guys get back to us on what you're going to do with respect to this is when you look at the data that we provided that shows the fiscal impact and you add that all up -- which, by the way, you just answered Kahn's question, none of those things, I think, are you guys saying, Oh, that's self-inflicted harm.

So when you look at all of that, if you don't think that that amount of money and the

Page 24

Scolnick Decl. Ex. A - 28

collateral consequences of it has an impact on the City's ability to meet the obligations, two things: One, if you think there was something that was self-inflicted that actually has a quantifiable impact on the City's ability to meet its obligations, it would be great for you to point that out.

And secondly, if this amount of economic impact wouldn't warrant a modification, what would? What would the amount be?  Or would the position basically be, of the Alliance, literally no amount of fiscal disruption or economic distress would ever warrant any modification of these obligations? Because that will be really helpful for us to know.

MR. UMHOFER:  Yeah, I'm not going to answer a hypothetical about what the threshold is.

You guys are coming to us -- the Court said that the City has discretion and it does.  You're coming to us with -- with a different question, which is we're running out of money, and therefore, we can't meet the obligations.  That's a totally separate question from the City discretion.  Yes, the city has that discretion.  And now that discretion has had consequences in concert with other things beyond the City's control that has led to --

MR. McRAE:  Right.

Page 25

Scolnick Decl. Ex. A - 29

MR. UMHOFER:  -- to a fiscal point.

And so you don't get to declare that the agreement on its face gives the City discretion.  And then -- and then the City exercises that discretion, and then as part of that spends a lot of money and then other things run into -- it runs into other things beyond its control that required to spend money, and then take away our ability to say -- the City kind of did some things -- and, again, things that have nothing to do with this, things like giving raises to a bunch of City workers and things like that, that had a huge impact, that people objected to at city council meetings.  No, don't spend money on this thing.  It's going to cause a fiscal problem, and you're going to take us off a fiscal cliff, and here we are.  That's all fair game in answering the question of is the City's -- all these decisions that led up to this, and then the City turning around and saying, Okay, we've had some things beyond our control that have had a significant impact.  But you might have had more money had you made different decisions, again, on things that have nothing to do with homelessness.  So --

MR. McRAE:  Can -- can I -- but I -- but I think the point is when you make those assertions, it

Page 26

Scolnick Decl. Ex. A - 30

would be very helpful if you would definitize what you are saying because in terms of the raises, for example, just to take that for the sake of argument, if that's a proverbial drop in the bucket in terms of the amount of fiscal wreckage of these other things and the havoc that that's wreaked, that's really kind of a -- an immaterial point.  In other words --

MR. UMHOFER:  I don't think it is, though. It is -- it's a big number.

MR. McRAE:  I know -- well, when you say it's a big number, what's the number?  Because we gave you the number with respect to what the -- the emergencies that have been declared in terms of what those are in terms of financial impact.  That's in the data that we provided you.

The thing that you just mentioned, the data point about giving people raises, do you even know what percentage those raises are the amount of money that we're talking about?

MR. UMHOFER:  We have that --

(Overlapping speakers.)

MR. McRAE:  Probably not.

MR. UMHOFER:  -- Paul, we can probably answer that.  But my understanding is that that number is, you know, a nine-figure number.  And --

Page  27

Scolnick Decl. Ex. A - 31

you know, and so I'm -- again, I want to be precise about those, but I know that that's been discussed as one of the reasons why the City, independent of these other emergencies, found itself in a really tight spot fiscally.

MR. McRAE:  And -- and --

MR. UMHOFER:  It's a huge number.

MR. McRAE:  And, Matt, that's why I'm asking as part of this meet and confer, because it would be really helpful if we're going to agree on something or disagree on something, when you make an assertion like that -- which, by the way, to get back to your point to saying you can't exercise discretion and then have things happen beyond your control and not say that they're linked.

Well, you kind of can because once you have reserved the discretion under the agreement to do something, you can't penalize the exercise of that discretion when the prop- -- let me finish.

MR. UMHOFER:  Okay.

MR. McRAE:  When the proper -- let me finish.

-- when the proper invocation of that discretion is then coupled with things beyond your control.  Then what you're trying to do is leverage

Page 28

Scolnick Decl. Ex. A - 32

the proper exercise of authority as something that created the disadvantage when, in fact, it's not a disadvantage that is a self-inflicted harm.  It was the proper exercise of discretion.

So when you're talking about things that you think are not within the realm of discretion that you think are self-inflicted harm, I'm just saying be precise about it and quantify it and let us know exactly what you're talking so that -- because otherwise, we're just dealing with nebulous assertions about, Well, you know, when things happen and you do things that get in your way, and that's not going to really be productive.

MR. UMHOFER:  Well, I -- I -- I'm not committing right now to meet your expectations about specificity around this.

Again, I think -- I think it's very safe to say that a fiscal crisis is a combination of a lot of different events and that certain things happening beyond the City's control is irrelevant, but certain things happening that are within the City's control are -- are relevant.

And I take your point.  I'll -- I'll -- about you wanting more specificity around that.  I -- I don't think it's -- I -- I don't know at this point

Page 29

Scolnick Decl. Ex. A - 33

how specific I intend to be around that.  But I -- I take it that you want that, and I will take it back and we'll discuss it amongst ourselves.

MR. HAMBURGER:  Can -- can I ask you a question about just something you said.  I want to make sure we don't have a dispute on this or what your position is.

You were suggesting that -- that the fiscal emergency needs to be tethered to the kind of things in the first part of Section 8.2.  And maybe I misunderstood you, you know --

MR. UMHOFER:  No.

MR. HAMBURGER:  -- the fires, earthquakes, you know, insurrection, large-scale civil disturbances.  The way I read it is that I think our position is that a fiscal emergency on -- on its own, whatever its cause, constitutes an event contemplated under 8.2 when it's been declared by the mayor and the -- the city council.  So I just want to make sure that you weren't conflating those --

MR. UMHOFER:  So that's on the list.  I see that.  That is one of the things on the list.

And so then the question is:  What modifications are warranted in light of that?  So that's --

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 34

MR. HAMBURGER:  Got it.

MR. UMHOFER:  -- what we're meeting and conferring about.

So I see -- and we're reading the same language that fires and fiscal emergencies are on a list of "ors," and so a fiscal emergency alone is enough.

The question is:  What sort of modification is appropriate?

And we as the plaintiffs get to weigh in on that.  And you may not like the way we weigh in on it.  It may not be specific enough, and then the Court gets to, you know, sort of decide around that.

But we will think about the issues that have been raised on the call here, and we will think about whether additional specificity is warranted.

Our point, I think we will keep making the point, we will keep fighting the battle, that the City is -- has continued to do the most expensive things necessary.  And when you want -- when you come back and you want -- when you do the most expensive things necessary and then you declare a fiscal emergency and want a modification, it is relevant that the City has done the most expensive things possible to house people as opposed to less expensive

Page 31

Scolnick Decl. Ex. A - 35

things that could have housed more people or sheltered more people.

And I know you disagree with me on that, Marcellus, and I know you don't want me to keep raising it.  I -- I think --

MR. McRAE:  No, it -- it's -- I mean, look. The -- the facts are the facts.  You can keep ignoring that but for the fires, but for the raids, but for this fiscal emergency, there's three different things that we've been talking about, I'm sure that you wouldn't disagree that -- you know, you're not making the assertion that even with the election of what you call the most expensive housing, the City would have been able to perform that.

In other words, you can't ignore -- it's almost like ignoring the emergencies.  By focusing on the most expensive proposition, you're missing the point that it's the emergencies that make this a challenge, that require there to be modifications to the agreement.

And -- and by keep coming back to, Well, you've done the most expensive option, again, but for the emergencies, you wouldn't be having the invocation, and you wouldn't be having the request to have the modification.  So it's sort of like shifting

Page 32

Scolnick Decl. Ex. A - 36

it away from the actual issue.

In other words, once the exercise of the discretion is acknowledged by the Court to be lawful, you now have to deal with the emergencies.  And if you recognize that and recognize that they have an economic impact, you don't go back and say, Well, yeah, but what about this decision that's perfectly lawful that the Court has acknowledged you have the authority to do?

But, again, we've been around on this. You've made your point.

MR. UMHOFER:  Yeah.

MR. McRAE:  We disagree on it.  We -- we can move on to another topic.

MR. UMHOFER:  Yeah.  And we do, and I think that the City is going to have surpluses.  In this case, the City has a fiscal emergency.  If the City went out and did something crazy with the money, which I'm not saying it did, I'm just -- and then declared a fiscal emergency to excuse itself from -- I -- I -- there's a bad-faith hypothetical out there.

MR. McRAE:  Why are we talking about it, then?  Why are we talking about it, then?

MR. UMHOFER:  Because you're talking about -- you're trying to make a lot of points that

Page 33

Scolnick Decl. Ex. A - 37

include hypotheticals and --

MR. McRAE:  No, none of my points were hypotheticals.  My points were directly talking about the actual emergencies in this case and the -- the baseline false assertion that somehow the City doing something that it reserved the right to do, that the Court acknowledged that it had the right to do, somehow equates to a diminution in the exigency created by these situations and their impact.  Those are realities.  So let's not talk about --

MR. UMHOFER:  If you're going to raise --

MR. McRAE:  -- hypotheticals.

MR. UMHOFER:  If you're going to raise fiscal emergencies, you're making budget choices relevant.  You just are.  That -- you are.  And we -- and we do disagree about that, so let's move forward.

MR. HAMBURGER:  So -- so your position, Matt, just so I understand, is that there has to a be scrutiny of why the fiscal emergency was declared by the -- the mayor and -- and the city council such that you get to second-guess, you know, positions about funding that were taken in the past?

MR. UMHOFER:  We get to exercise our judgment about whether a modification is appropriate in light of the emergency presented.

Page 34

Scolnick Decl. Ex. A - 38

MR. HAMBURGER:  Yeah.

MR. UMHOFER:  If it was a $1 emergency and you want a $10 million break, they're just -- they don't -- they don't match up.

MR. HAMBURGER:  Okay.

MR. UMHOFER:  And so, again, sorry to be talking in the hypotheticals, but I'm trying to answer the question because you're trying to get me to commit to something broadly that would apply across the board, and that feels like a hypothetical to me.

So what I'm trying to do is say that in the exercise of our judgment, we get to look at, especially with respect to fiscal emergency, how bad is it?  Is this the result of choices that the City has made that were bad choices that are now coming home to roost?

So I -- we will disagree about that.  I'm not going to take a broad position, Brad, about -- about this.  I'm trying to be specific, which is in the exercise of our judgment around modifications, we are not going back and saying -- and -- and, you know, relitigating whether a fire occurred or whether the City -- the numbers are that the City finds itself, this fiscal emergency.  But in our exercise

Page 35

Scolnick Decl. Ex. A - 39

of our judgment about what an appropriate modification is when this is a population that is in as much distress and facing as much challenge as anybody, people who have lost their homes, people who are suffering under the ICE raids, the people who are struggling a few blocks away from me are in as dire straits as many of those people, if not more so.

And so we get to balance all that and our decision -- and our decision about, Okay, what is the City -- when the City wants a modification of an agreement that they had entered into with eyes open, you know, we get to exer- -- we get to take in a lot of different factors.  And that --

MR. HAMBURGER:  But I'm assuming that you're not taking the position that -- that the fiscal emergency was declared in bad faith?  Or are you taking that position that it was declared in bad faith?

MR. UMHOFER:  I'm not a fiscal guy.  So I'm not looking to say that something was taken in bad faith or that somebody's declared a fire in bad faith or the ICE raids in bad faith.  That's not what I'm doing.  I'm just saying that I get to exercise as the -- you know, and my client gets to exercise their judgment as the plaintiff about whether the

Page 36

Scolnick Decl. Ex. A - 40

modification makes sense in light of the declared emergency.  There is a relationship between the two.  And so --

MR. HAMBURGER:  Okay.

MR. UMHOFER:  -- we just get to factor all that stuff in.

MR. HAMBURGER:  I think as part of -- as part of the meet and confer, which I understand will be ongoing, I think it would be helpful, if you are taking the position that no modifications are warranted, if you're doing that because you don't believe that the emergencies are of sufficient significance or if they are, you know, somehow pretext or bad faith or something, because you -- you've made those -- you've used the word "bad faith," I think, you know, or you've had hypotheticals about, you know, minor fires and --

MR. UMHOFER:  Yeah, because you asked me for a general proposition --

(Overlapping speakers.)

MR. HAMBURGER:  But I want to say, I think it would be useful for our meet and confer -- I understand what your position is.  You position is that that needs to be in the calculus when you're assessing the proposed modifications.  And I

Page 37

Scolnick Decl. Ex. A - 41

understand that.

I just want to -- it would be helpful for the meet and confer process if you are taking the position that there's -- you know, that there's nothing -- that these are fake emergencies or -- or a fiscal emergency that's not real or is not --

MR. UMHOFER:  I am not stating that.

MR. HAMBURGER:  Okay.

MR. UMHOFER:  I am not stating those things.

MR. McRAE:  And -- and -- and, Matt, just to correct this, when you say we're asking for broad application, we're actually not.

These are three emergencies that have been identified, and there are then, in the email that was sent to you, specific requests on these particular facts in this particular case relative to shelter, housing solution, and encampment reduction.  So I'm really a little confused about, when we ask for what say you with respect to these emergencies and these specific requests for modification, I don't get the connection to, Well, you're asking me for a broad application.  It's not a broad application.

MR. UMHOFER:  Well, that's what that's doing.  That's -- when Brad asks questions about, Are you taking the position that under this agreement,

Page 38

Scolnick Decl. Ex. A - 42

and then he states a claim, I'm responding to that.

And so I am happy to get right back to No. 2 here. I -- you know, because we are -- we are having some academic arguments here. Let's get back to No. 2. We've gotten through No. 1. Let's get through No. 2 --

MR. HAMBURGER: Okay. Number 2.

MR. UMHOFER: -- which is the agreement that's a 6129 reduction that the City has reported. I can -- I can just let you know under the first bullet, that's an easy no on our -- on our side. Given the facts that were developed at the hearing, given the -- given what the Court found on this point, we will not agree to that.

I -- as to the second bullet point --

MR. McRAE: Well, before -- before you go to the second one, then what position does the Alliance take with respect to the number of reductions that shall count?

MR. UMHOFER: We don't have that information because the City is still in violation of the Court's order to report only numbers that comport with the City's -- or, excuse me, with the -- with the definition as articulated by the Court. So until we have numbers reported that are compliant with the

Page 39

Scolnick Decl. Ex. A - 43

Court's order, an order that the Court has announced that the City has -- has violated, which is you need to report numbers that are compliant with this.  You put out a report that still counts it the old way. I -- there's no possible way I can come up with a number that works without accurate reporting.

And so until you can report a number that -- and we can kick the tires.  I'm not going to take your number at face value, but until you report numbers under this -- the definition articulated by the Court twice now, we're not -- we -- we can't give you a number.  We'd just be guessing --

MR. HAMBURGER:  So -- so --

(Overlapping speakers.)

MR. UMHOFER:  -- tell us how many reductions you've made under that definition.

MR. HAMBURGER:  So, Matt, I think we are proposing an amendment to the agreement.  Okay?  And the amendment to the agreement in light of the fiscal emergency would be that we would agree to count the 6,129 reductions as reductions, and that is the -- the amendment we're asking you to consider.

MR. UMHOFER:  Okay.  Yeah, I -- that's a weird -- and now that you articulate it that way, it's just kind of a weird amendment.  But -- I mean,

Page 40

Scolnick Decl. Ex. A - 44

you can amend any way you want, I guess.  The

amendment would say there have been -- the parties

hereby agree that there have been 6,129 reductions,

and we will not agree to that.

MR. HAMBURGER:  And --

MR. McRAE:  And --

MR. HAMBURGER:  You count any number of

those?  At this point you're saying no?

MR. UMHOFER:  No, because we -- you guys

need to give us --

MR. McRAE:  Let me -- let me --

MR. UMHOFER:  You guys need to give us

numbers.  So I -- if you guys want us to count any

number, I need more information.

MR. McRAE:  Let me --

MR. UMHOFER:  So what I'm saying is no to

the 6129.  If you guys want to give us actual

information about how many actual reductions you've

made that are compliant with the Court's definition,

you guys can do that.  You don't have to, but you can

do that, and then I'll consider a number.

MR. McRAE:  I think -- let's not conflate

these points.  I -- I think that where Brad was going

is -- and these are two different issues.  One

question is:  Do you count anything?  One? five? a

Page 41

Scolnick Decl. Ex. A - 45

thousand? 2,000?  Anything?

And I think you've answered that you are not in a position to count anything.  We can agree to disagree about whether or not you are in a position to count anything.

The second question, independent of what you consensually agree should be counted, is in an effort to effect a modification of the agreement, is there a number that you would agree to?  That doesn't require you to agree that something is counted or not counted.  It's a question of whether or not you are willing to agree for purposes of modifying the agreement to a number.  So --

MR. UMHOFER:  And I'm telling you I want you guys to give me the count under the -- if you want me to give you a number --

MR. McRAE:  I know but --

(Overlapping speakers.)

MR. McRAE:  No, no.  I'm sorry.

MR. UMHOFER:  No.

(Overlapping speakers.)

MR. McRAE:  Matt, Matt, I'm sorry.  You're not -- you're not answering my question.

Respectfully --

MR. UMHOFER:  I know.  There is not a

Page  42

Scolnick Decl. Ex. A - 46

number.

MR. McRAE:  By saying -- by saying -- and I apologize to the court reporter 'cause we are talking over each other.  We should refrain from doing that. I will commit to try to do that, and I'm sure you will as well.

I am not asking you what you would agree to count.  I've already parsed the distinction between what you think is eligible to be counted versus what number in order to effect a modification you would agree to.  That does not require a mathematical analysis.  It doesn't require a specific documentation and a specific form.  Nor does it require someone to try to go back in time before an order was declared giving particularity and more clarity to what was requested.  Doesn't require any of those things.

It just requires: Is there a number that you would agree to for purposes of a modification?  It's a yes-or-no question.

MR. SCOLNICK:  Not without more information from the City.  Period.

MR. HAMBURGER:  Can you be specific and maybe you'll tell me --

(Overlapping speakers.)

Page 43

Scolnick Decl. Ex. A - 47

MR. UMHOFER: I -- so I am allowed to exercise my own judgment about what that number is, and I'm telling you, I will not commit to whatever number or I will not throw a number out until I have the information that I want from the City on this.

So the answer is zero number. I'm not going to give you a number. The number remains what it is in the agreement. No modification. I am open to giving you a number once you give me that calculation. And I get to make that decision, Marcellus. That does -- I've decided that that number that you're asking for from me, I am -- that I'm not got going to give it to you without that information. And I get -- I do get to decide that.

Brad?

MR. HAMBURGER: Yeah. So I -- I guess, you know, that -- that raises the question of what information that you want about the 6,129 reductions.

So -- so what information -- and maybe it's something that will be in your list of things you want from us, but -- but you -- you've mentioned a couple times you need more information about those reductions.

MR. UMHOFER: I've told you precisely what I want, which is of that number, what number

Page 44

comports -- does the City believe comports with the definition the Court has articulated?  So very straightforward.  Of the 6129, is it a thousand that meets the Court's definition?  Is it one?  Is it zero?

MR. SCOLNICK:  But can I ask again, and maybe this isn't helpful.  But I'm curious.

Let's say it's zero.  Just hypothetically. I'm not saying it actually is zero, but let's say we -- we are unable to find --

MR. UMHOFER:  I thought we were trying to get away from hypotheticals.

MR. SCOLNICK:  That was a different topic. I'm trying to understand the point.

MR. UMHOFER:  All right.

MR. SCOLNICK:  If it's zero -- 'cause you're asking for information.  What if the information shows it's zero?  Are you going to say zero count?

MR. UMHOFER:  I might, but I'm not committing to that right now.  I want you guys to give me the number.  I mean, I just -- you know. Okay.  So apparently we're allowed to do hypotheticals right now.

If the City is literally cre- -- reduced zero encampments under the Court's definition, good

Page 45

Lord, you know, we've got a lot of work to do. And -- and I -- and that would be deeply concerning to me. And you've got a commitment to over 9800 and you're at zero right now in the hypothetical? I'm not saying you are, but I'm trying to play with your hypothetical. I mean, that's what we bargained for. And these things were supposed to have happened before there was a fiscal emergency declared.

And so if the City hasn't done anything when it's had the money to do so, under your hypothetical, I -- I'm even more concerned and more committed to that 9800 number.

But I'm not declaring that the number will always be zero for us. We may give you -- we might give you five. I don't know right now, because you guys aren't giving me the information I need to make an educated decision about whether, in the plaintiffs' view, a modification, it would be a reasonable modification to give you credit.

When you ask for 6129, and -- you know, if you guys are at 6100 and you want 29 more beds, I'll probably give them to you -- or, excuse me, 29 more reductions, I'll probably give them to you, you know.

And so that's why I need that information, to figure out -- to exercise my discretion and the

Page 46

Scolnick Decl. Ex. A - 50

client's discretion and, you know, our collective discretion around whether that's a reasonable modification or not that we would agree to. So I mean, I don't think -- I don't think there's much more to say on that, but I'm sure somebody might -- might disagree.

MR. SCOLNICK: Not me.

MR. UMHOFER: Okay. Second bullet point, 400 reductions.

Hard to say. You know, I -- I think we need to answer the first question before we can give you an answer on the second. I'll -- you know, if the point is that there will be -- okay. We give you the credit for the 6129 plus you'll do 400 more and that will be it, and you won't hit the 9800 number under any scenario, that's one scenario that, you know, is probably problematic for us. I -- I just can't tell if -- if -- and so maybe from a clarification standpoint, is the proposal, 1 and 2 together, that you -- you guys get credit for the 6129 and then there's another 400, and then not -- and then that's -- that's it? You guys are done on encampment reductions?

MR. HAMBURGER: That -- that's our proposal --

Page 47

Scolnick Decl. Ex. A - 51

MR. UMHOFER:  Okay.

MR. HAMBURGER:  -- with the -- with the understanding that the -- the 400 reductions would be reductions within the meaning of -- of reductions that the Court has established.

MR. UMHOFER:  That -- yep.

MR. HAMBURGER:  And -- and specifically, I -- I want to be clear on that.  Either paired with an offer of shelter reducing tents, makeshift shelters, or RVs paired with an offer of shelter, or when a -- a tent, a makeshift shelter or RV are removed because they are unattended after 24 hours' notice being provided when the items are removed, which we consider to be abandoned, which I think comports also with what -- what the Court said in its most recent ruling on this.  So that would be the -- the idea that --

And just so you understand, you know, I think we -- we've briefed this, we -- we think we had a different agreement always on this.  We think this idea about offers of shelter is something that wasn't in the original agreement, and that in prior meet and confers that led up to the prior agreement, that there was agreement on that, that -- and that if the number was going to need to include offers of

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 52

shelter, that the -- the total number would have to be substantially less than 9,800, and that -- but in light of the fiscal emergency, we don't believe that -- we believe that the 400 is what we can do, and so that is our -- our requested modification.

MR. UMHOFER:  Okay.  Yeah.  And -- and that clarification is helpful around the 400 being -- well, for lack of better term, compliant with the Court's definition.

MR. HAMBURGER:  Yeah.

MR. UMHOFER:  So I understand what the -- I -- I think that -- I mean, predicting -- leaning no on that.  But, again, I really need the information that I've asked for under No. 1 to really assess this.  So you guys can give it to me or not.

MR. McRAE:  And -- and, Matt, can I ask you a quick question about that?

Do you -- you acknowledge -- I just want to make sure that we're operating, again, on the same page.

The Court actually did not clarify what it understood reduction to mean until orders, not just this year, but really until we got the order in June, after the evidentiary hearing.

So, in other words, this -- this paradigm or

Page 49

Scolnick Decl. Ex. A - 53

interpretation under which we're operating now, I mean, the history of the case shows that it wasn't extant prior to the Court issuing that clarifying order.

And the reason I ask that is because, you know, at some point, if you acknowledge that this is why -- and I understand what you're saying, that it's your position that you need a number, but are you factoring into your reflection on whether or not you'll accommodate a modification of this number, the reality that for the City, for the Alliance, everybody else involved in the case, we didn't get this clarification until we got the order just, you know, six or so weeks ago.

MR. UMHOFER:  Absolutely not.

MR. McRAE:  Okay.

MR. UMHOFER:  So I don't agree with that.

MR. McRAE:  And -- and -- you don't agree --

MR. UMHOFER:  I'm not --

(Overlapping speakers.)

MR. McRAE:  I'm sorry.  I want to make sure I understand what you don't agree with.

You don't agree that the Court clarified or provided -- I shouldn't even say "clarified" -- provided its understanding of what that term meant in

Page 50

Scolnick Decl. Ex. A - 54

an order that was issued in June?  You don't dis- -- you don't agree with that?

MR. UMHOFER:  I mean, Marcellus, I -- I'm not going to be -- this is a different question than what you just asked.  The question you asked is --

MR. McRAE:  No, that is the question I asked.

MR. UMHOFER:  -- do you accept -- so, no, this is a different question.  You asked me: Do you accept the reality that the parties weren't operating and everybody, including the LA Alliance, weren't operating under the Court's definition until the Court announced the definition?  No, I won't agree. I won't -- I don't agree with that.

We've always had the Court's understanding of that.  So -- so that's -- that's the problem I have with what you've laid out, which is:  Would you agree that everybody thought it was different until --

MR. McRAE:  No, that's not what I said. That's not --

(Overlapping speakers.)

MR. McRAE:  -- literally is not what I said.

MR. UMHOFER:  Okay.

MR. McRAE:  I did not say did we have

Page 51

Scolnick Decl. Ex. A - 55

unanimity.  My question was --

MR. UMHOFER:  No, no, no.

MR. McRAE:  But that's what you just said.
You said everyone.  And obviously I didn't say that.

I simply asked you:  A, do you acknowledge
that the Court did not issue the order where it
actually said, This is what this term will mean,
"encampment reduction," and specifically focusing on
the evidence that was gathered at the hearing until
June of this year?  And if so, do you think that that
should in any way have any impact whatsoever on how
the parties go about meeting and conferring in order
to deal with the realities of the agreement on a
going-forward basis?

MR. UMHOFER:  So I acknowledge there was an
order that the Court issued, and I acknowledge that
there was an order that the Court issued in March on
this issue.

MR. McRAE:  Mm-hmm.

MR. UMHOFER:  So those -- those exist.  They
reflect what we believe to be the plain meaning of
language as it existed.  That -- and so those orders
reflect what we believe and understood to be the
plain meaning.  If we thought that we were agreeing
to 9800 tent disposals, abandoned tent disposals, We

Page 52

Scolnick Decl. Ex. A - 56

would not -- that -- that's not what's in the agreement.

MR. McRAE:  Matt, Matt --

MR. UMHOFER:  And so --

MR. McRAE:  -- didn't Ms. Mitchell actually send an email at one point where it was -- I'm trying to remember -- let me -- let me -- let me get back to that.  Maybe I can try to find that document.

MR. UMHOFER:  No, track it down.  Let's keep this going.

MR. McRAE:  But -- but -- but -- but my -- my question is:  When you say you didn't agree to that, as Brad pointed out, I think you may have even participated in the meeting conferring on this.  Part of the issue with how you got to the number on the encampment reductions was because if it were to be coupled with an offer of housing, there's no way that they would have had the number be at 9800.

And -- and I mean, we could lay out for you and show you the progression of the exchanges on this.  I mean, you lived this history.

You -- you don't remember there being an exchange between, Well, we want the number to be X, we want the number to be Y, and the way that the parties arrived at 9800 was because it wasn't going

Page 53

Scolnick Decl. Ex. A - 57

to be coupled with an offer of housing.  You don't --
you -- if -- if we --

MR. UMHOFER:  That's not -- that is not my
recollection.  Neither of us have those documents in
front of us now.

MR. McRAE:  Oh, we --

MR. UMHOFER:  You guys have tried to pull
those out and tried to convince the Court of that,
and you failed.  And so --

MR. McRAE:  No, no.  But -- but that's a
separate --

MR. UMHOFER:  So I --

MR. McRAE:  That's a separate question of
whether -- we're talking to you right now.  And the
point is that if we lay the documents out in front of
you that reflect that that's exactly what happened, I
have to think that you would acknowledge the reality,
that, yeah, that's exactly the exchange that you
engaged in.

MR. UMHOFER:  You're asking another
hypothetical and --

MR. McRAE:  No, it's not a hypothetical.

MR. UMHOFER:  No, it is.  If I put documents
in front of you -- you literally said, If I put
documents in front of you, you will agree that X.

Page 54

Scolnick Decl. Ex. A - 58

MR. McRAE:  No, no.  The documents --

MR. UMHOFER:  I'm not agreeing to --

MR. McRAE:  The documents are not hypothetical.

Let me -- let me ask you a different question.

You really don't recall -- this is my question to you -- that the 9800 number was achieved because the City was not willing --

MR. UMHOFER:  No.

MR. McRAE:  -- to have a number that high with an offer of housing?

And -- and you don't remember that there was a -- a proposal or a plan that was submitted that did not have the accompaniment of an offer of housing and that that's what you eventually settled on?

MR. UMHOFER:  I know what the plain language of the agreement is.  That's what matters.  The history of the negotiation --

MR. McRAE:  Well, there's not --

(Overlapping speakers.)

(Admonition by the Reporter.)

MR. McRAE:  You said that the agreement has the plain language within it.

There's no offer of housing with encampment

Page 55

Scolnick Decl. Ex. A - 59

reduction in the agreement; right?  That's not -- words are not there.

MR. UMHOFER:  Okay.  The Court has interpreted the agreement.  That's what the -- that's the interpretation that is derived from the plain language, and we're sticking with it.  And so that's the definition we're using, and I believe we're now through Section 2, both -- both bullets at this point.

MR. HAMBURGER:  Yeah.  I just want to clarify something.  I understand that you're -- you're -- you're taking the position about what the agreement said, and you're taking a position about what the Court has ruled.

I just want to make very clear, we are proposing amendments to whatever you think the agreement was before, and -- and the amendments we are proposing is that we would no longer have the 9,800 by next June; that we would agree to count the 6,129 reductions that we have reported already under our understanding of that obligation towards the reductions.  And the agreement would be a new agreement, 400 reductions at the -- at -- you know, as I explained earlier, in accordance with either an offer of shelter or removing an unintended --

Page 56

Scolnick Decl. Ex. A - 60

unattended tent, makeshift shelter or RV.  That is

the proposal.  It is -- I will admit to you is a

modification of whatever the agreement was before.

So --

MR. UMHOFER:  I understand.  I understand.

MR. HAMBURGER:  -- that is our proposal.

MR. UMHOFER:  I understand your proposal,

and I am informed by the -- by what's happened here

about what you're proposing.  I've gotten

clarification about the 400.  I will get a written

request to you about more information on the 6100.

You can give me more information or not, and we'll

take it from there.

As for RAND, can you guys tell me how much

money the City has given RAND over the past five

years?

MR. HAMBURGER:  What to you mean by "given"?

MR. UMHOFER:  Do you -- you do know that the

City and several agencies within the City are

identified publicly as funders of the RAND

Corporation; correct?

MR. HAMBURGER:  I don't have personal

knowledge of that, but -- but I just want to -- I was

asking a clarifying question.  We'll probably have to

get back to you on this, but by "given," I -- I

Page 57

Scolnick Decl. Ex. A - 61

assume you don't mean just donations.

Are you talking about --

MR. UMHOFER:  I don't know -- I don't know how it works.  Obviously, there's multiple different agencies.  I mean, my point is RAND is a nonstarter for us because the City -- because it has a preexisting relationship with the City and the City funds it in a variety of different ways according to RAND's website.

So we're -- we want a neutral, a true neutral that is not dependent on the City for income, that has not received income from the City in the past in any meaningful amount.  But based on the website, it appears that -- that, you know, RAND has gotten a substantial amount of money from the City, even in exchange for services.  I'm not suggesting --

MR. McRAE:  Well, that -- that was with the distinction --

MR. UMHOFER:  Yeah.  So --

MR. McRAE:  Who -- who do you propose?

MR. UMHOFER:  RAND -- I mean, look, we think -- we are getting inquiries from the folks. The way the process worked before is it was -- you know, there were people sort of -- you know, the Court had people coming to it, around it, the parties

Page 58

Scolnick Decl. Ex. A - 62

do.

I think we should treat this a little bit like coming up with a mediator, which is that we all come up with multiple people.  I -- we certainly think that A&M should be on -- is going to be on our list.  And we think they've already, you know, developed a substantial amount of expertise.  We understand that the City disagrees, but they'll be on our list.  There are -- so that's the one that has come to mind for us, but I think we should, you know, work on exchanging a list.

But I -- I just can't agree to somebody that the City -- that has a preexisting financial relationship -- a substantial preexisting relationship with the City.

And I'm sorry because, I mean, RAND seems like a good organization, generally speaking.  But I just can't agree to -- I mean, I could be overruled, obviously, by the Court, but we -- we would object to RAND.  So --

MR. HAMBURGER:  You seem to have some information about -- if you could provide the information you're referencing that has the issues with RAND, and, you know, we could take a further look at it.

Page 59

Scolnick Decl. Ex. A - 63

MR. UMHOFER:  Yeah, I -- I will.  I mean, I Googled RAND --

MR. HAMBURGER:  That would be helpful.

MR. UMHOFER:  I -- I Googled how we are funded at RAND, and five or six different City organizations come up, so ...

MR. HAMBURGER:  Sure.  Yeah, we would just like to take a look at that.

And --

MR. UMHOFER:  Sure.

MR. HAMBURGER:  -- and, Marcellus, I don't know if you want to speak to A&M.

MR. McRAE:  I mean, obviously, you know, I think it's not going to come as a surprise to you.  I believe -- do -- do you have other entities that you have talked to or thought about?

MR. UMHOFER:  Well, we've gotten some -- I don't have the -- we've got a few others, so we'll share them.  I think Liz has had those conversations, so we'll share a list.  And I think we should all just -- I mean, I think it's just going to take a list, and we're just going to have to work through it.

But no, other than A&M right now, I don't have another group in mind.  So we may just both have

Page 60

Scolnick Decl. Ex. A - 64

to go fish --

MR. McRAE:  Yeah.

MR. UMHOFER:  -- on this.

And, you know, knowing the Court -- you know, there were some people who put in for the A&M role previously, and I don't know whether they -- and so -- and I think some of them came through the Court.  I don't know -- I don't remember who they were, though.

MR. HAMBURGER:  And I think, Marcellus, I don't think you --

(Overlapping speakers.)

MR. McRAE:  Brad, you can -- you can go ahead and speak to the -- to the A&M piece.

MR. HAMBURGER:  Yeah.  I just want to make clear that -- I think Marcellus implied it, but just for the record, that we -- we object to A&M.  We believe that they're a nonstarter here, you know, largely based on the experiences and the -- and the arguments we've made about them in our briefing and at the evidentiary hearing.

And also -- yeah, so -- so that -- that -- but -- but I -- I guess I'm an optimist -- cautiously optimistic.  If -- if -- a mediator-type scenario, if you want to provide options to us --

Page 61

Scolnick Decl. Ex. A - 65

MR. UMHOFER:  Mm-hmm.

MR. HAMBURGER:  -- that would be helpful, and then we'll get back to you once you do that and -- but we would like to -- you know, I understand you're -- you're not inclined to agree to RAND, but we -- we would like more details about the objection on RAND, because it sounds like it's this funding issue, not qualifications.  So we just would like more detail on that.

MR. UMHOFER:  Yeah.  I mean, I -- the funding issue, sort of, you know, both asks -- both -- just answers the question for us, so I don't think we need to go beyond that.

MR. McRAE:  Well, I -- I did have one question about that.

When you cite that, is that a personal or visceral objection to an existing -- purported existing relationship, or is there some authority or source that you are asserting disqualifies RAND due to the alleged financial relationship?

MR. UMHOFER:  I -- I think that -- I -- I don't know that anybody who wanted to sort of -- you know, like an arbitrator who -- if -- if an arbitrator had separately done work for a company, I think they would recuse -- I'm trying -- I mean, this

Page 62

Scolnick Decl. Ex. A - 66

is a general standard, but I'm trying to apply sort of the similar standard.

So, you know, if an arbitrator had previously done work for a company and then that company came before them, they'd recuse themselves. I mean, that's the kind of thing. I mean, both L.A. County and L.A. City are -- are -- are listed as funders of -- of RAND.

MR. McRAE: Right.

MR. UMHOFER: And L.A. City and County are -- so I -- it's just in the exercise of -- I -- so I'll make it easy for you. In the exercise of our judgment, based on that alone, RAND is -- we would object to RAND. Just --

MR. McRAE: Right. I --

MR. UMHOFER: We don't -- we don't need to do -- go any further from my perspective.

MR. McRAE: Well, that -- that's fine. That answers my question. In other words, there is no source authority that you're aware of that constitutes a per se disqualification. This is just more personal judgment, as you say.

And I mean, obviously, the City is different than two civil litigants in terms of, you know, who it may have contracts with or who it may have

Page 63

Scolnick Decl. Ex. A - 67

dealings with.

So I mean, I don't -- I don't think you're suggesting that those are fungible for purposes of your arbitrator analogy. But no, that's helpful.

And if you do become aware of some, you know, per se disqualification or source that would suggest that that was the case, that would also be helpful.

MR. UMHOFER: Yeah. I think that there are -- I just don't know how a monitor is viewed by the courts. I think that there are some standards out there, and I don't know -- I feel like I've touched on them at some point during the case about special masters and their -- and so court rules about special masters and conflicts and things like that and the fact that they will be viewed similarly to a judge. And I just don't know if monitors fall within that, so that be the one that I would look at. But I'm not aware of a court decision or a statute or rule of civil procedure right now that would act to disqualify RAND.

I'm just saying that as the plaintiff in the case, I'm not inclined to go with a neutral that has received a substantial amount of funding from my opponent.

Page 64

Scolnick Decl. Ex. A - 68

MR. SCOLNICK:  Hey, Matt --

MR. HAMBURGER:  I think -- I think on that point -- go ahead, Kahn.

MR. SCOLNICK:  I might be able to help you a little bit there.  I believe -- I'm just Googling as -- as you're talking, and I think there's -- you're going to the -- RAND's website, How We Are Funded, and a list?

MR. UMHOFER:  Yep.

MR. SCOLNICK:  And -- and the list that comes up is City of Los Angeles, and there's five departments under there?

MR. UMHOFER:  Yep.

MR. SCOLNICK:  Those are all county departments.  Maybe it's the way that they screwed up and listed it for the City.  But, like, the public defender is not a city.  It's a county organization. The Department of Mental Health, Public Health, the school district, the probation, those are all county.

MR. UMHOFER:  Yeah, I understand that.  I also understand that the -- that RAND has done studies that -- about what's happening in the City of Los Angeles.  And so whether those subheads are just located under the wrong entity -- like, you see the County of Los Angeles below that.  So whether those

Page 65

Scolnick Decl. Ex. A - 69

subheads are located under the wrong county entity. I do also -- I also am aware that RAND has produced studies that are related specifically and limited to, in my understanding, the City which, I presume, were funded by the City in some way.

So the combination of those two things -- look, if you guys want to tell us RAND got five bucks, I'll re- -- I'll reconsider.

MR. SCOLNICK:  Let -- let us find out. 'Cause for all I know, they did get five bucks, but I don't know.  So let -- let's find out how much, if any, money the City has given RAND.

MR. McRAE:  Yeah, and we don't want to work off presumption.

MR. UMHOFER:  Yeah.  And the county is relevant, too, from our perspective, because they're also, you know -- they're also, you know, on the other side of the meet from us on this.

As for --

MR. McRAE:  Not -- not under the Alliance agreement, though.

MR. UMHOFER:  No, that's correct.

MR. McRAE:  Okay.

MR. UMHOFER:  That's correct.

MR. McRAE:  All right.

Page 66

Scolnick Decl. Ex. A - 70

MR. UMHOFER:  I -- with respect to the duties of the monitor -- I apologize.  I have a hard -- I have a DOJ meeting coming up at -- that I'm going to need -- I didn't think that we were going to go the full two hours.  So -- so I'm coming up short on time, and so I know that there's more to discuss here.

On the duties of the monitor, you know --

MR. McRAE:  I think that was lifted directly out of the order, so we really shouldn't have any dispute there.

MR. UMHOFER:  I can't say -- this is -- this is a place where I know Liz is going to have some input, and her not being on the call leaves us -- leaves me at a deficit.  So I -- I don't think we can make a commitment around this at this point, but we're looking at it and we understand --

MR. McRAE:  Can you -- can you commit that whatever the Court says the duties are, that you're not going to try to go beyond what the Court says the duties are?

MR. UMHOFER:  Is that a -- okay.  So --

MR. McRAE:  No, it's not a hypothetical. It's an actual question.

MR. UMHOFER:  No, it's if the Court -- I

Page 67

Scolnick Decl. Ex. A - 71

mean, it's a definition of hypothetical, Marcellus.

MR. McRAE:  No, no, not --

MR. UMHOFER:  You say if the Court says this --

MR. McRAE:  No, no.

MR. UMHOFER:  -- you will do that.  That is a hypothetical.

MR. McRAE:  Because I was trying to not have -- require you to agree with me that that's the language.  So let me rephrase the question.

That's what the language in the agreement says.  You guys are not going to try --

MR. UMHOFER:  I don't have the agreement in front of me.

MR. McRAE:  You're not going to try to expand on that; right?

MR. UMHOFER:  I'm not make -- I'm not saying one way or the other right now, so --

MR. McRAE:  What would be the reason -- what -- what would be the basis to expand the duties beyond what the Court has said the duties are?

MR. UMHOFER:  Another hypothetical.

MR. McRAE:  No.  It's -- no.

MR. UMHOFER:  Yeah, what would be the duties?

Page 68

Scolnick Decl. Ex. A - 72

MR. McRAE:  You just said you're not willing to commit to it, and I'm asking you --

MR. UMHOFER:  Yeah.

MR. McRAE:  -- as you sit here now, what thoughts in your mind could possibly justify expanding or changing the duties prescribed in the order?

MR. UMHOFER:  I think that we can get more specific.  And I think that the duties identified in the order could benefit from additional negotiation and conversation between us to further define them. So if you guys -- and you guys can participate in that.  I'm not going to -- I'm obviously not going to unilaterally try to inflict new obligations on you. But I think that the language in the order is a helpful starting point, and I think that we could do better in terms of getting more specific in ways that could benefit both of us.

So I -- you may not be interested in that. That's fine.  I'm going to take -- I haven't compared word for word.  I'm going to take, you know, that this is a quote or an accurate paraphrase of that. We will look at it, and we will get back to you about what -- about defining the scope.

But I'm -- in some ways, I see the Court's

Page 69

Scolnick Decl. Ex. A - 73

interpretation like a term sheet, and we have to negotiate something more detailed so that we avoid disagreements and vagueness and things like that going forward.  The more time we spend trying to, you know, hammer that out together, not unilaterally, but together, I think the better the monitor process will be, so -- so --

MR. SCOLNICK:  Can we get 45 days?

MR. UMHOFER:  I'm sorry?

MR. SCOLNICK:  Can we get the 45 days?  That should be easy, I hope.

MR. UMHOFER:  Where's -- sorry.  Remind me the 45 days --

MR. SCOLNICK:  Additionally, given the new requirement for the monitor, we want 45 days following the close of a quarter to -- to report.

MR. McRAE:  To file the quarterly reports.

MR. UMHOFER:  Okay.  So tell me how that --

MR. McRAE:  It would be 45 days after the close of a quarter to file a quarterly report.

MR. UMHOFER:  For --

MR. McRAE:  That's the request.

MR. UMHOFER:  Right.  And so I just want to make sure I understand.  New requirement, the monitor review, 45 days.  I mean, I -- so the modification to

Scolnick Decl. Ex. A - 74

the agreement would be that in light of the monitor coming in 45 days later, I'd like it to be tighter. I'd like it to be 30, but I -- I can talk to, you know, Liz about it.

MR. McRAE:  Any -- any reason why -- why 30 as opposed to 45?

MR. UMHOFER:  Because -- I mean, I -- we just want those reports as quickly as possible, you know, and we want to -- we want to keep things moving quickly in as many different ways as possible, especially with respect to the reports, because the reports -- you know, especially if the monitor's looking at, we're looking at the information, we're digesting it, and then we got to get back to the Court, every day of delay for us is a day when I -- I hope that we don't have to keep coming back and forth on compliance with the agreement.

But we're concerned that, you know, 15 extra days is just 15 -- you know, adds up over time in terms of our ability to raise issues, you know, to the extent that they come up, so ...

But I'm not -- I'm not demanding -- I'm not saying no to the 45.  I'd like it to be 30.  If you guys will agree to 30, great.  If not, let me take it back to Liz, and we'll talk a little bit more -- and

Page 71

Scolnick Decl. Ex. A - 75

Liz and Paul will talk a little bit more.

MR. SCOLNICK:  Yeah.  If -- if you could do that, that would be helpful 'cause I think the -- the problem is that with the monitor involved, I think you -- you -- everybody would be better served by getting the numbers right and -- and -- and having the monitor be able to do what the monitor is supposed to do.

So that would be our -- our explanation for why at 45.  We don't think there's a difference -- you -- I don't think it's material for the reasons that you -- you stated it, and -- but I think it is material on our end to get the numbers out.

MR. UMHOFER:  Got it.

We do not have time for this.  I apologize. But I do want to make one other request, and, you know, I wouldn't expect you to do it on the fly, which is in terms -- I want to go back to the very beginning to the pause, and I want to understand whether -- you know, if the City could define -- so now we have January 7th as sort of the operative date from the City's perspective.  If the City could define whether it's the pause on the entire agreement, or if not, what -- I mean, we are talking about continued compliance with the agreement.  And

Page 72

Scolnick Decl. Ex. A - 76

so on some level, I -- again, I'm not trying to put words in your mouth or, you know, assume facts, but it seems like the City is trying to continue compliance.  Like, the City is not saying, We're never going to do quarterly reports anymore.  We're talking about more time; right?

So I'd like to get clarity on what -- I -- I understand we're looking at modifications.  It would be helpful to get clarity in writing from the City about the shape of the pause, what is and what is not paused, from the City's perspective under the agreement.

MR. McRAE:  I mean, the -- the agreement says at lines 7 that the obligations of the City as set forth in Sections 3, 4, and 5 of this agreement shall be paused.  So those are the allegations that are paused.

That's not inconsistent with if the City, nonetheless, makes efforts to try to comply notwithstanding that.  In other words, those are not mutually inconsistent.

What this would do --

MR. UMHOFER:  This is not a --

MR. McRAE:  -- it pauses the obligation, meaning that it -- it could have a cessation, but it

Page 73

Scolnick Decl. Ex. A - 77

doesn't require that the City not -- if it decides that it, nonetheless, wants to continue to, you know, engage in efforts under those circumstances, to fulfill obligations that it can do so.  So I'm not really sure what you're asking.

MR. UMHOFER:  I -- I will put my request in writing around that, which is --

MR. McRAE:  Okay.

MR. UMHOFER:  But I -- I do understand your point.  I think quarterly reports come in 3, 4, or 5. I just don't have the agreement in front of me, but I think quarterly reports, the City is clearly doing those things.

And I do hear what you're saying, which is that the City -- there's nothing that prevents the City from continuing to do stuff even though its view is that things are paused.

It's just a question -- I think it really comes down to try and anticipate enforceability questions.  Like, if you guys weren't -- and I won't do a hypothetical.  But you guys can figure out the hypotheticals around if -- if the City were to decide not to do something next month, you know, is that a violation of the agreement or not?

And --

Page 74

Scolnick Decl. Ex. A - 78

MR. McRAE:  You --

MR. UMHOFER:  -- maybe the City's point is that the -- that no, it's not because the obligations are paused.

And so what I hear you saying is not parsing the agreement.  You're not saying this part is paused, this part is paused, this part is paused.  It's all paused, but the City is still trying.  And --

MR. McRAE:  But my -- the -- I -- the City -- and I think this was clear during the evidentiary hearing, the City is not, by virtue of continuing to try to comply with obligations, in any way waiving the rights under 8.2.

MR. UMHOFER:  I get that.

MR. McRAE:  Again, that -- that's --

MR. UMHOFER:  I get that.  I'm not -- this is not a gotcha question.  This is really just wanting to understand does the City view itself as obligated under the agreement today in any way, shape, or form?  Or is the pause, you know --

MR. McRAE:  I -- I --

(Overlapping speakers.)

MR. McRAE:  -- I think the problem with your question is that when you say "obligated under the

Page 75

Scolnick Decl. Ex. A - 79

agreement," the pause is part of the agreement.  So it's not that --

MR. UMHOFER:  Let me rephrase that.

MR. McRAE:  It's not that with the existence of the pause that the City is denouncing the agreement.  It's the opposite.  The City is enforcing the agreement and demanding recognition of the provisions that the parties negotiated precisely because of the pressing recognition that events like this could happen.

MR. UMHOFER:  Right.  And -- and so my -- my more specific question is:  Does the City believe that it remains obligated under Sections 3, 4, and 5 in light of the pause?  And you don't have to answer that now.  I'm not asking you to.  I've got to go.

MR. McRAE:  I don't even -- I mean, Brad, I don't know if -- or you and Kahn, I don't know if you understand the question.  I don't understand --

MR. UMHOFER:  It's a very clear question.

MR. McRAE:  No, it's not, actually.

MR. UMHOFER:  So --

MR. McRAE:  When you say, Are you still obligated under Sections 3, 4, and 5, which by application of the language in the agreement are paused, what do you mean?

Page 76

Scolnick Decl. Ex. A - 80

MR. UMHOFER: I'm literately trying to say if you don't produce a quarterly report by a date required under Section 3, 4, or 5, do you believe you're in violation of the agreement? I'm not asking you to answer that because it's a hypothetical, but I'm trying to clarify what my question is.

MR. McRAE: Why don't you put your question in writing.

MR. UMHOFER: We will. We will.

But, I mean, it seems like, to me, the City is trying to have it both ways in this -- in this -- I appreciate the City is still trying under the agreement, but I've got to know if the City views itself as obligated to perform the things that the agreement requires it to do in light of the pause.

And if the answer is yes or no -- it -- it seems to me like it's a yes or no, but it's okay if it's vague. It's up to you guys. I can't force you to answer the question the way I want you to.

MR. HAMBURGER: Yeah. So -- okay. I think it would be helpful to get it to us in writing. I think our position, though, is that the agreement is paused by operation of -- of Section 8.2. And I do think that if there was -- at some point, perhaps if there is a modification of the agreement the parties

Page 77

Scolnick Decl. Ex. A - 81

can agree upon, you know, that -- you know, obviously at some point, the -- the -- the pause will end.

But we -- we think currently the pause is in effect and it has been. But like Marcellus said, that doesn't mean that the City won't continue to try to, you know, do its best to comply with the agreement, which is -- always has been its intention. But we obviously are not waiving the position that -- that it is paused such that if we fail to satisfy the agreement, that -- that that -- those obligations were paused.

MR. SCOLNICK: Yeah, and I'm not making -- I'm not trying to strap you guys into a waiver. I really am not.

MR. HAMBURGER: Okay.

MR. UMHOFER: So you can take that off the table. End on a note of civility here.

MR. HAMBURGER: Great.

MR. UMHOFER: But I appreciate you guys' time and appreciate the clarity that this conversation has brought. And it's just sort of -- you know, it's solidified some of the areas of disagreement here. So we'll get you something in writing next week.

MR. McRAE: And we -- we should also resume

Page 78

Scolnick Decl. Ex. A - 82

this discussion, Matt, to go over the areas that you guys have raised, because we're in need of clarification on those.  And we recognize that you didn't contemplate we would take the entire time, so I think we could benefit from exchange on the points that --

MR. UMHOFER:  No, I agree with that.  I agree with that.  I don't think we could get -- at any rate, I don't think we could get through them in eight minutes.  So -- so yeah, we'll reconvene with lead counsel, Liz Mitchell.  So thanks, folks.

MR. McRAE:  Thank you.

MR. UMHOFER:  Take care.  Bye now.

(This meeting concluded at 1:52 p.m.)

* * * * *

Page 79

REPORTER'S CERTIFICATE

I, EMILY A. GIBB, a Certified Shorthand Reporter and Registered Professional Reporter, hereby certify:

THAT the foregoing proceedings were taken before me at the time and place set forth in the caption hereof; that the witness was placed under oath to tell the truth, the whole truth, and nothing but the truth; that the proceedings were taken down by me in shorthand and thereafter my notes were transcribed through computer-aided transcription; and the foregoing transcript constitutes a full, true, and accurate record of such testimony adduced and oral proceedings had, and of the whole thereof.

I have subscribed my name on this 11th day of August, 2025.

Emily A. Gibb, RPR, CSR, CCR

Page 80

Scolnick Decl. Ex. A - 84

[& - actually]

| & | 3 | 7 | absent 3:20 |
|---|---|---|---|

**&** 2:10

**0**

**02291** 1:2

**1**

**1** 19:23 35:2
39:5 47:19
49:14
**1.0** 13:2
**10** 35:3
**10,000** 12:12
**11th** 80:17
**12915** 18:20
19:1
**12:31** 1:16
**14551** 1:25
**15** 71:18,19
**1:52** 79:14

**2**

**2** 39:2,5,6,7
47:19 56:8
**2,000** 42:1
**2025** 1:15
80:18
**213** 2:6,12
**229-7000** 2:6
**24** 48:12
**270** 2:11
**28531** 80:22
**29** 46:21,22
**2:20** 1:2

**3** 6:17 73:15
74:10 76:13,23
77:3
**30** 71:3,5,23,24
**333** 2:5
**394-7979** 2:12

**4**

**4** 6:17 73:15
74:10 76:13,23
77:3
**400** 47:9,14,21
48:3 49:4,7
56:23 57:10
**45** 70:8,10,13
70:15,19,25
71:2,6,23
72:10

**5**

**5** 6:17 73:15
74:10 76:13,23
77:3

**6**

**6,129** 40:21
41:3 44:18
56:20
**6100** 46:21
57:11
**6129** 39:9
41:17 45:3
46:20 47:14,20

**7** 1:15 73:14
**709** 1:25
**767** 2:11
**7th** 7:14,16,18
7:19 10:21,23
12:14 72:21

**8**

**8.2** 4:1,15 5:19
5:21,24 6:6,11
6:23 11:7
14:13,23 30:18
**8.2.** 6:1 15:11
15:13 30:10
75:14 77:23

**9**

**9,800** 49:2
56:19
**90021** 2:12
**90071** 2:5
**9800** 46:3,12
47:15 52:25
53:18,25 55:8

**a**

**a&m** 59:5
60:12,24 61:5
61:14,17
**abandoned**
48:14 52:25
**ability** 14:21
25:2,5 26:8
71:20
**able** 32:14 65:4
72:7

**absent** 3:20
**absolutely**
50:15
**abstract** 18:4
**absurd** 15:25
17:4
**abundance**
19:8
**academic** 9:21
11:20 12:8
13:7 14:7 39:4
**accept** 51:8,10
**acceptable** 19:1
**accommodate**
50:10
**accompanim...**
55:15
**accordance**
56:24
**accurate** 40:6
69:22 80:15
**achieved** 55:8
**acknowledge**
49:18 50:6
52:5,15,16
54:17
**acknowledged**
33:3,8 34:7
**act** 64:20
**action** 15:2
**actual** 10:3
33:1 34:4
41:17,18 67:24
**actually** 19:5
25:4 38:12

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 85

**[actually - applies]**

45:9 49:21 52:7 53:5 76:20

**add** 24:20

**additional** 18:17 21:13 31:16 69:10

**additionally** 70:14

**address** 23:4

**addresses** 11:16

**adds** 71:19

**adduced** 80:15

**admit** 3:9 57:2

**admitting** 3:9

**admonition** 55:22

**agencies** 57:19 58:5

**ago** 22:25 50:14

**agree** 10:8,8 14:15 16:6,22 17:24 20:5,6 28:10 39:14 40:20 41:3,4 42:3,7,9,10,12 43:7,11,19 47:3 50:17,18 50:22,23 51:2 51:13,14,18 53:12 54:25 56:19 59:12,18 62:5 68:9

71:24 78:1 79:7,8

**agreeing** 52:24 55:2

**agreement** 4:1 4:8,23 5:2 6:10 6:18 8:14,20 8:24 9:2,5 10:10,18 11:9 12:18,24 13:4 14:12,20 15:23 15:25 16:13,14 16:22 17:1,6,8 17:17,18,21 20:24 21:10,16 23:7 26:3 28:17 32:20 36:11 38:25 39:8 40:18,19 42:8,13 44:8 48:20,22,23,24 52:13 53:2 55:18,23 56:1 56:4,13,17,22 56:23 57:3 66:21 68:11,13 71:1,17 72:24 72:25 73:12,13 73:15 74:11,24 75:6,20 76:1,1 76:6,7,24 77:4 77:13,15,22,25 78:7,10

**ahead** 61:14 65:3

**aided** 80:13

**alameda** 2:11

**alerted** 16:18 16:21

**allegations** 73:16

**alleged** 62:20

**alliance** 1:1 2:9 2:16 3:19 25:10 39:17 50:11 51:11 66:20

**allow** 17:11 19:23 20:7

**allowed** 44:1 45:22

**alter** 21:15

**alternative** 12:15

**alters** 21:15

**amend** 41:1

**amendment** 40:18,19,22,25 41:2

**amendments** 5:6 6:9,24 7:7 20:20 56:16,17

**amount** 21:24 24:25 25:7,9 25:10 27:5,18 58:13,15 59:7 64:24

**analogy** 64:4

**analysis** 43:12

**angeles** 1:3 2:2 2:5,12,17,18,19 65:11,23,25

**announced** 40:1 51:13

**answer** 19:14 25:14 27:24 35:8 44:6 47:11,12 76:14 77:5,16,19

**answered** 7:7 24:21 42:2

**answering** 26:16 42:23

**answers** 62:12 63:19

**anticipate** 74:19

**anybody** 8:15 16:2 36:4 62:22

**anymore** 73:5

**apologize** 43:3 67:2 72:15

**apparently** 45:22

**appears** 58:14

**applicability** 15:21

**application** 14:23 16:13 38:12,22,22 76:24

**applies** 14:15

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scelnick Decl. Ex. A - 86

**[apply - brad]**

apply 14:16 35:9 63:1
applying 14:13
appreciate 5:10 18:10 19:13 77:12 78:19,20
appropriate 4:22 6:24 17:3 31:9 34:24 36:1
approved 4:6
arbitrator 62:23,24 63:3 64:4
areas 78:22 79:1
argument 27:3
arguments 39:4 61:20
arlene 2:18
arrived 53:25
articulate 40:24
articulated 39:24 40:10 45:2
aside 17:5
asked 10:13 12:7 37:18 49:14 51:5,5,7 51:9 52:5
asking 16:11 19:6,6,7,17,18 28:8 38:11,21 40:22 43:7

44:12 45:17 54:20 57:24 69:2 74:5 76:15 77:4
asks 38:24 62:11
aspects 22:21
assert 15:3
asserted 16:25
asserting 24:6 62:19
assertion 15:19 28:11 32:12 34:5
assertions 26:25 29:11
assess 49:14
assessing 37:25
assume 9:22,23 23:16 58:1 73:2
assumed 24:1
assuming 11:18 36:14
august 1:15 80:18
authority 29:1 33:9 62:18 63:20
automatic 6:12 6:21
automatically 10:9
avenue 2:5

avoid 19:8 70:2
aware 11:22,23 12:1,2 63:20 64:5,19 66:2

**b**

back 6:2 7:3 16:22 24:17 28:12 30:2 31:21 32:21 33:6 35:22 39:2,4 43:14 53:7 57:25 62:3 69:23 71:14,16,25 72:18
bad 33:21 35:14,16 36:16 36:17,20,21,22 37:14,15
balance 36:8
bang 2:16
bargained 46:6
based 12:20 16:2 58:13 61:19 63:13
baseline 34:5
basically 24:13 25:10
basis 20:9 52:14 68:20
battle 31:18
bed 18:19,19
beds 18:21,25 46:21

beginning 72:19
believe 19:5 20:23 21:8 37:12 45:1 49:3,4 52:21 52:23 56:7 60:15 61:18 65:5 76:12 77:3
believing 22:20
benefit 69:10 69:18 79:5
best 78:6
better 49:8 69:17 70:6 72:5
beyond 21:10 25:24 26:7,19 28:14,24 29:20 62:13 67:20 68:21
bhamburger 2:7
big 27:9,11
bit 9:21 20:1,12 23:1 59:2 65:5 71:25 72:1
blanket 11:9
blocks 36:6
board 35:10
bottom 18:23
brad 11:1 35:19 38:24 41:23 44:15

Page 3

Scolnick Decl. Ex. A - 87

**[brad - clarity]**

53:13 61:13 76:16
**brad's** 11:20
**bradley** 2:4 11:1
**break** 35:3
**brief** 9:25 11:24
**briefed** 9:25 48:19
**briefing** 61:20
**broad** 35:19 38:11,21,22
**broader** 21:6,7
**broadly** 35:9
**brought** 78:21
**bucket** 27:4
**bucks** 66:8,10
**budget** 34:14
**bullet** 19:22 39:11,15 47:8
**bullets** 56:8
**bunch** 23:11 26:11
**bye** 79:13

**c**

**c** 2:1 3:1
**ca** 1:25
**calculation** 44:10
**calculus** 37:24
**california** 2:5 2:12
**call** 31:15 32:13 67:14

**caption** 80:9
**care** 79:13
**case** 1:2 15:3 22:20 33:17 34:4 38:16 50:2,12 64:7 64:13,23
**cause** 26:14 30:17 43:3 45:16 66:10 72:3
**caused** 22:23
**causing** 23:10
**caution** 19:8
**cautiously** 61:23
**ccr** 1:24,25 80:23
**certain** 4:10 14:1 23:2,2 29:19,20
**certainly** 59:4
**certificate** 80:1
**certified** 80:3
**certify** 80:5
**cessation** 73:25
**cetera** 11:10,10 24:8
**challenge** 32:19 36:3
**challenges** 4:7
**changing** 69:6
**choices** 23:11 23:19 24:12 34:14 35:15,16

**circumstances** 74:3
**cite** 62:16
**city** 1:3 2:2,17 2:18,19,20 4:16 6:17 7:19 8:11,12 9:8 10:10,19,24 11:2,8 12:3,4,5 12:13,20,25 13:15,23,24,25 14:21 15:25 16:9 17:6 21:16,17 22:3 22:24 23:2,10 23:11,18 25:17 25:21,22 26:3 26:4,9,11,13,18 28:3 30:19 31:19,24 32:14 33:16,17,17 34:5,20 35:15 35:24,24 36:10 36:10 39:9,21 40:2 43:22 44:5 45:1,24 46:9 50:11 55:9 57:15,19 57:19 58:6,7,7 58:11,12,15 59:8,13,15 60:5 63:7,10 63:23 65:11,16 65:17,22 66:4 66:5,12 72:20

72:22 73:3,4,9 73:14,18 74:1 74:12,15,16,22 75:8,11,12,19 76:5,6,12 77:10,12,13 78:5
**city's** 5:21,25 7:23 9:11 10:7 10:22 13:3 14:4 17:18 24:8,14 25:2,5 25:24 26:17 29:20,21 39:23 72:22 73:11 75:2
**civil** 4:17 9:24 30:14 63:24 64:20
**civility** 78:17
**claim** 39:1
**clarification** 47:18 49:7 50:13 57:10 79:3
**clarified** 50:23 50:24
**clarify** 49:21 56:11 77:6
**clarifying** 50:3 57:24
**clarity** 5:25 43:16 73:7,9 78:20

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 88

**[clear - correct]**

clear  5:16 14:3 19:15 21:8 23:17 48:8 56:15 61:16 75:11 76:19
clearly  11:23 12:17 13:18 74:12
client  36:24
client's  47:1
cliff  26:15
close  70:16,20
collateral  25:1
collective  47:1
combination  29:18 66:6
come  31:20 40:5 59:4,10 60:6,14 71:21 74:10
comes  10:24 14:1 65:11 74:19
coming  16:21 18:16 25:16,18 32:21 35:16 58:25 59:3 67:3,5 71:2,16
commit  17:16 18:3 35:9 43:5 44:3 67:18 69:2
commitment  46:3 67:16

committed  46:11
committing  29:15 45:20
communicate  10:20,21 12:21 12:25 13:4 16:1
communicated  9:17 16:25
communication  12:19 14:10 15:10 16:23 17:11,20
company  62:24 63:4,5
compared  69:20
compliance  71:17 72:25 73:4
compliant  39:25 40:3 41:19 49:8
comply  73:19 75:13 78:6
comport  39:22
comports  45:1 45:1 48:15
computer  80:13
concerned  46:11 71:18
concerning  46:2

concert  25:23
concluded  79:14
confer  1:12 6:8 6:24 7:6 8:25 28:9 37:8,22 38:3
conferring  8:1 15:16 17:9,13 20:21 31:3 52:12 53:14
confers  48:23
conflate  41:22
conflating  30:20
conflicts  64:15
confused  38:18
congruency  9:4
connection  38:21
consensually  42:7
consequences  25:1,23
consider  8:14 18:14 19:13 20:21 22:14 40:22 41:21 48:14
considered  13:23,25,25
considers  12:21
consistent  8:11 9:9

constitutes  30:17 63:21 80:14
construction  9:3
contemplate  79:4
contemplated  30:17
contemplating  4:6
context  24:12
continue  73:3 74:2 78:5
continued  31:19 72:25
continuing  74:16 75:13
contracts  63:25
contrary  9:2
control  25:24 26:7,20 28:14 28:25 29:20,21
conversation  69:11 78:21
conversations  60:19
convince  54:8
corner  16:3
corporation  57:21
correct  11:2 38:11 57:21 66:22,24

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 89

**[correctly - different]**

| | | | |
|---|---|---|---|
| **correctly** 11:19 | 64:14,19 67:19 | **days** 70:8,10,13 | **defining** 69:24 |
| **council** 22:24 | 67:20,25 68:3 | 70:15,19,25 | **definition** |
| 26:13 30:19 | 68:21 71:15 | 71:2,19 | 39:24 40:10,16 |
| 34:20 | **court's** 9:10 | **deal** 33:4 52:13 | 41:19 45:2,4 |
| **counsel** 79:11 | 11:5 19:3 | **dealing** 29:10 | 45:25 49:9 |
| **count** 39:19 | 39:21 40:1 | **dealings** 64:1 | 51:12,13 56:7 |
| 40:20 41:7,13 | 41:19 45:4,25 | **debate** 11:12 | 68:1 |
| 41:25 42:3,5 | 49:9 51:12,15 | 11:14 | **definitize** 27:1 |
| 42:15 43:8 | 69:25 | **decide** 31:13 | **delay** 71:15 |
| 45:18 56:19 | **courts** 64:11 | 44:14 74:22 | **demanding** |
| **counted** 19:24 | **crazy** 33:18 | **decided** 44:11 | 71:22 76:7 |
| 20:8 42:7,10 | **cre** 45:24 | **decides** 74:1 | **denouncing** |
| 42:11 43:9 | **created** 29:2 | **decision** 33:7 | 76:5 |
| **counts** 40:4 | 34:9 | 36:9,9 44:10 | **department** |
| **county** 63:7,10 | **credit** 46:19 | 46:17 64:19 | 65:18 |
| 65:14,17,19,25 | 47:14,20 | **decisions** 22:23 | **departments** |
| 66:1,15 | **crisis** 23:13 | 23:2,3 26:17 | 65:12,15 |
| **couple** 44:22 | 29:18 | 26:22 | **dependent** |
| **coupled** 28:24 | **csr** 1:24,25 | **declaration** | 58:11 |
| 53:17 54:1 | 80:23 | 10:1 | **depends** 15:17 |
| **course** 23:22,22 | **curious** 45:7 | **declare** 26:2 | **derived** 56:5 |
| **court** 3:14 4:6 | **currently** 78:3 | 31:22 | **detail** 62:9 |
| 9:13,13 11:16 | **cv** 1:2 | **declared** 4:16 | **detailed** 70:2 |
| 14:22,24 15:5 | | 27:13 30:18 | **details** 62:6 |
| 17:20 24:5 | **d** | 33:20 34:19 | **developed** |
| 25:16 31:13 | **d** 2:10 3:1 | 36:16,17,21 | 39:12 59:7 |
| 33:3,8 34:7 | **damage** 23:19 | 37:1 43:15 | **diane** 2:16 |
| 39:13,24 40:1 | **data** 21:25 | 46:8 | **difference** |
| 40:11 43:3 | 24:19 27:15,16 | **declaring** 46:13 | 72:10 |
| 45:2 48:5,15 | **date** 7:11,11,13 | **deeply** 46:2 | **different** 12:12 |
| 49:21 50:3,23 | 7:19 12:16 | **defender** 65:17 | 13:17 14:5,25 |
| 51:13 52:6,16 | 13:17,20,21 | **deficit** 67:15 | 15:5 25:18 |
| 52:17 54:8 | 72:21 77:2 | **define** 69:11 | 26:21 29:19 |
| 56:3,14 58:25 | **day** 12:3 71:15 | 72:20,23 | 32:10 36:13 |
| 59:19 61:4,8 | 71:15 80:18 | | 41:24 45:13 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scelnick Decl. Ex. A - 90

**[different - emily]**

48:20 51:4,9 51:18 55:5 58:4,8 60:5 63:23 71:10

**differently** 9:5 21:17

**digesting** 71:14

**diminution** 34:8

**dire** 36:6

**directly** 34:3 67:9

**dis** 51:1

**disadvantage** 29:2,3

**disagree** 8:5 9:12 10:17 28:11 32:3,11 33:13 34:16 35:18 42:4 47:6

**disagreed** 10:14

**disagreeing** 14:22

**disagreement** 78:23

**disagreements** 70:3

**disagrees** 59:8

**discretion** 24:8 25:17,21,22,22 26:3,4 28:13 28:17,19,24 29:4,6 33:3

46:25 47:1,2

**discuss** 4:21 6:8,24 20:11 30:3 67:6

**discussed** 28:2

**discussion** 7:5 79:1

**disinclination** 19:23 20:4

**displaces** 12:11

**disposals** 52:25 52:25

**dispute** 11:21 19:8 30:6 67:11

**disqualificati...** 63:21 64:6

**disqualifies** 62:19

**disqualify** 64:21

**disruption** 25:11

**distinction** 43:8 58:18

**distress** 25:11 36:3

**district** 65:19

**disturbances** 30:15

**doc** 1:2

**document** 53:8

**documentation** 43:13

**documents** 54:4,15,23,25 55:1,3

**doing** 17:14 34:5 36:23 37:11 38:24 43:4 74:12

**doj** 67:3

**donations** 58:1

**drop** 27:4

**due** 4:17 62:19

**dunn** 2:4

**duties** 67:2,8 67:19,21 68:20 68:21,25 69:6 69:9

**e**

**e** 2:1,1 3:1,1

**earlier** 56:24

**earliest** 7:11,13 7:22

**earthquake** 13:2 16:3

**earthquakes** 30:13

**easy** 39:11 63:12 70:11

**economic** 25:7 25:11 33:6

**educated** 46:17

**effect** 11:17 42:8 43:10 78:4

**effective** 16:25 17:7,21

**effort** 7:2 42:7

**efforts** 73:19 74:3

**eight** 79:10

**either** 5:13 12:25 13:11 15:4 48:8 56:24

**elaborate** 19:25

**election** 32:13

**eligible** 43:9

**email** 5:6,10 18:10,11 19:19 38:14 53:6

**emergencies** 4:14 7:12 27:13 28:4 31:5 32:16,18 32:23 33:4 34:4,14 37:12 38:5,13,19

**emergency** 4:16 6:15 10:2 11:24 17:25 22:21 30:9,16 31:6,23 32:9 33:17,20 34:19 34:25 35:2,14 35:25 36:16 37:2 38:6 40:20 46:8 49:3

**emily** 1:24 80:3 80:23

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Scolnick Decl. Ex. A - 91

**[emphasize - fighting]**

emphasize 23:3
enact 8:10
enacts 8:15
encampment
  20:16 38:17
  47:22 52:8
  53:16 55:25
encampments
  45:25
encourage
  21:25
enforceability
  74:19
enforcing 76:6
engage 74:3
engaged 54:19
entered 36:11
entire 72:23
  79:4
entities 60:15
entity 65:24
  66:1
equally 22:23
equates 34:8
equipped 5:13
especially
  35:14 71:11,12
esq 2:3,3,4,10
  2:15
establish 5:24
  13:14
established
  24:14 48:5
et 11:10,10
  24:8

event 6:12,16
  12:14,22,23
  13:24 14:1
  30:17
events 6:20
  14:16 17:19
  21:9 22:2,9,22
  23:9 29:19
  76:9
eventually
  55:16
everybody 9:23
  50:12 51:11,18
  72:5
evidence 52:9
evidentiary 7:3
  24:6 49:24
  61:21 75:12
exactly 24:6
  29:9 54:16,18
example 27:3
exception 11:9
exchange 53:23
  54:18 58:16
  79:5
exchanges
  53:20
exchanging
  59:11
excuse 11:7
  33:20 39:23
  46:22
exer 36:12
exercise 28:13
  28:18 29:1,4

33:2 34:23
  35:13,21,25
  36:23,24 44:2
  46:25 63:11,12
exercises 26:4
exigency 34:8
exist 52:20
existed 52:22
existence 76:4
existing 62:17
  62:18
expand 68:16
  68:20
expanding 69:6
expect 72:17
expectations
  29:15
expensive 23:4
  23:19,25 24:7
  31:19,21,24,25
  32:13,17,22
experiences
  61:19
expertise 59:7
explain 5:5 6:5
explained
  56:24
explanation
  72:9
express 4:14
  19:10,11
extant 50:3
extent 11:11
  18:24,25 19:21
  19:22 71:21

external 15:22
  15:22
extra 71:18
extreme 8:19
eyes 36:11

**f**

face 11:6 26:3
  40:9
facing 36:3
fact 11:17 15:2
  17:5 24:13
  29:2 64:16
factor 37:5
factoring 50:9
factors 36:13
facts 16:17,18
  17:5 32:7,7
  38:16 39:12
  73:2
fail 16:10 78:9
failed 54:9
fair 3:15 26:16
faith 33:21
  36:16,18,21,21
  36:22 37:14,16
fake 38:5
fall 64:17
false 34:5
favor 24:14
february 13:11
feel 64:12
feels 21:17
  35:10
fighting 31:18

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 92

**[figure - going]**

| | | | |
|---|---|---|---|
| **figure** 5:15 18:23 27:25 46:25 74:21 | 33:17,20 34:14 34:19 35:14,25 36:15,19 38:6 40:19 46:8 49:3 | **fulfill** 74:4 | 46:14,15,19,22 46:23 47:11,13 49:15 57:12 |
| **file** 70:17,20 | **fiscally** 28:5 | **full** 67:5 80:14 | **given** 6:14 |
| **financial** 27:14 59:13 62:20 | **fish** 61:1 | **fundamentally** 18:18 | 39:12,13,13 57:15,17,25 |
| **find** 45:10 53:8 66:9,11 | **five** 41:25 46:15 57:15 60:5 65:11 66:7,10 | **funded** 60:5 65:8 66:5 | 66:12 70:14 |
| **finds** 35:24 | | **funders** 57:20 63:8 | **gives** 14:21 26:3 |
| **fine** 63:18 69:20 | **flores** 2:17 | **funding** 4:7 18:16 22:24 34:22 62:7,11 64:24 | **giving** 26:10 27:17 43:15 44:9 46:16 |
| **finish** 28:19,22 | **fly** 72:17 | | **go** 5:5 6:2 |
| **fire** 12:9,10,10 12:22,22 13:19 16:2 17:25 23:19 35:23 36:21 | **focusing** 32:16 52:8 | **funds** 58:8 | 22:17 33:6 39:16 43:14 52:12 61:1,13 62:13 63:17 |
| | **folks** 58:22 79:11 | **fungible** 64:3 | 64:23 65:3 67:5,20 72:18 |
| | **followed** 17:12 | **further** 59:24 63:17 69:11 | 76:15 79:1 |
| **fires** 6:15 7:4 9:22,23 11:22 12:3,6 13:10 30:13 31:5 32:8 37:17 | **following** 70:16 | | **goal** 19:1 |
| | **force** 4:4 77:18 | **g** | **goes** 11:17 |
| | **foregoing** 80:7 80:14 | **g** 3:1 | **going** 10:8,8 12:4 17:16 18:3,21,25 22:14 24:18 25:14 26:14,15 28:10 29:13 33:16 34:11,13 35:19,22 40:8 41:23 44:6,13 45:18 48:25 51:4 52:14 53:10,25 59:5 60:14,21,22 |
| **first** 3:25 6:11 7:11 13:22 18:12 30:10 39:10 47:11 | **foremost** 3:25 | **game** 26:16 | |
| | **forgive** 17:2 | **gathered** 52:9 | |
| | **form** 43:13 75:21 | **general** 37:19 63:1 | |
| **fiscal** 4:16,18 6:15 10:1 11:24 22:2,9 22:21,21 23:12 24:20 25:11 26:1,14,15 27:5 29:18 30:8,16 31:5,6 31:22 32:9 | **forth** 71:16 73:15 80:8 | **generally** 59:17 | |
| | **forward** 34:16 52:14 70:4 | **getting** 58:22 69:17 72:6 | |
| | **found** 28:4 39:13 | **gibb** 1:24 80:3 80:23 | |
| | **front** 54:5,15 54:24,25 68:14 74:11 | **gibson** 2:4 | |
| | | **gibsondunn.c...** 2:6,7,7 | |
| | | **give** 20:14 21:13 40:11 41:10,12,17 42:15,16 44:7 44:9,13 45:21 | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 93

[going - hypotheticals]

65:7 67:4,4,13
67:20 68:12,15
69:13,13,20,21
70:4 73:5
**good** 16:19
45:25 59:17
**googled** 60:2,4
**googling** 65:5
**gotcha** 18:7
75:18
**gotten** 39:5
57:9 58:15
60:17
**grand** 2:5
**great** 22:18
25:6 71:24
78:18
**group** 60:25
**guess** 4:25 7:1
15:18 19:9
21:4,4,5,6
34:21 41:1
44:16 61:23
**guessing** 40:12
**guy** 36:19
**guys** 11:25
18:19,21 24:17
24:22 25:16
41:9,12,13,17
41:20 42:15
45:20 46:16,21
47:20,22 49:15
54:7 57:14
66:7 68:12
69:12,12 71:24

74:20,21 77:18
78:13,19 79:2

**h**

**hamburger** 2:4
5:4 9:21 13:6
13:10,16 19:4
20:2,4,7,13,17
21:2,4,20,22
22:15,18 30:4
30:13 31:1
34:17 35:1,5
36:14 37:4,7
37:21 38:8
39:7 40:13,17
41:5,7 43:23
44:16 47:24
48:2,7 49:10
56:10 57:6,17
57:22 59:21
60:3,7,11
61:10,15 62:2
65:2 77:20
78:15,18
**hammer** 70:5
**happen** 8:9,12
9:16 15:4 16:7
17:19 28:14
29:11 76:10
**happened** 6:19
6:20,25 10:4
13:20 15:4
18:5 46:7
54:16 57:8
**happening**
29:19,21 65:22

**happens** 8:21
8:21 10:10
16:2
**happy** 5:4 39:2
**hard** 23:1
47:10 67:3
**harm** 24:23
29:3,7
**havoc** 27:6
**health** 65:18,18
**hear** 74:14 75:5
**hearing** 7:3
24:7 39:12
49:24 52:9
61:21 75:12
**hello** 3:11,12
**help** 65:4
**helpful** 8:2
11:12 12:13
21:5,23 24:17
25:13 27:1
28:10 37:9
38:2 45:7 49:7
60:3 62:2 64:4
64:8 69:16
72:3 73:9
77:21
**hereof** 80:9
**hey** 8:3 10:18
65:1
**high** 55:11
**history** 50:2
53:21 55:19
**hit** 47:15

**hmm** 52:19
62:1
**hoang** 2:18 3:6
**home** 35:17
**homelessness**
23:4 26:23
**homes** 36:4
**hope** 7:7 70:11
71:16
**hours** 48:12
67:5
**house** 31:25
**housed** 32:1
**housing** 18:11
19:16 20:19
24:7 32:13
38:17 53:17
54:1 55:12,15
55:25
**huge** 26:12
28:7
**human** 1:1 2:9
**hypothetical**
16:18 25:15
33:21 35:10
46:4,6,10
54:21,22 55:4
67:23 68:1,7
68:22 74:21
77:5
**hypothetically**
45:8
**hypotheticals**
10:2 34:1,3,12
35:7 37:17

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Scolnick Decl. Ex. A - 94

[hypotheticals - kes]

| | | | |
|---|---|---|---|
| 45:12,23 74:22 | included 4:5 | interpret 9:14 | 59:23 71:20 |

**i**

**ice** 4:17 6:16
18:1 23:24
36:5,22
**idea** 48:17,21
**identified** 7:12
21:9 38:14
57:20 69:9
**ignore** 24:13
32:15
**ignoring** 32:8
32:16
**immaterial**
27:7
**impact** 4:19
11:13 24:20
25:1,5,8 26:12
26:20 27:14
33:6 34:9
52:11
**implications**
11:19
**implied** 61:16
**important**
10:24 12:18,23
13:13,21
**importantly**
4:21
**impossible** 9:15
**inclined** 20:5
62:5 64:23
**include** 34:1
48:25

**including** 4:18
23:3 51:11
**income** 58:11
58:12
**inconsistent**
73:18,21
**independent**
23:12 28:3
42:6
**inflict** 69:14
**inflicted** 24:23
25:4 29:3,7
**information**
4:18 5:14,17
6:15 12:20
39:20 41:14,18
43:21 44:5,14
44:18,19,22
45:17,17 46:16
46:24 49:13
57:11,12 59:22
59:23 71:13
**informed** 57:8
**initial** 19:23
**input** 67:14
**inquiries** 58:22
**insurrection**
30:14
**intend** 30:1
**intention** 78:7
**interested**
69:19
**internationally**
18:1

17:16
**interpretation**
6:5 11:5 12:16
15:17 16:12
17:17 18:4
50:1 56:5 70:1
**interpreted**
56:4
**intervening**
14:2
**invocation** 5:19
11:7 12:18
13:8 14:9
15:10 16:23
28:23 32:24
**invoke** 3:25 9:8
11:2 24:11
**invoked** 4:13
5:22 6:1,1 9:11
13:18
**invokes** 10:10
**invoking** 6:20
**involved** 50:12
72:4
**irrelevant**
29:20
**issue** 11:16
15:6 33:1 52:6
52:18 53:15
62:8,11
**issued** 51:1
52:16,17
**issues** 14:25
31:14 41:24

**issuing** 50:3
**items** 48:13

**j**

**j** 2:4
**january** 7:14
7:16,18,19
10:21,23 12:14
13:11 72:21
**jessica** 2:19
**jessica's** 3:7
**joining** 3:10
**judge** 64:17
**judgment**
34:24 35:13,21
36:1,25 44:2
63:13,22
**june** 49:23 51:1
52:10 56:19
**jurisdiction**
9:14
**justify** 69:5

**k**

**kahn** 2:3 8:24
14:14 65:3
76:17
**kahn's** 5:6
24:21
**keep** 8:12 16:21
24:9 31:17,18
32:4,7,21 53:9
71:9,16
**kes** 1:2

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 95

[kick - lot]

kick  40:8
kind  20:14 26:9
  27:6 28:16
  30:9 40:25
  63:6
king  2:10
knew  9:22,23
  9:24 11:21
  13:23 18:2
know  3:7,14
  4:3,13 5:12
  6:13,14 7:3,17
  8:7,8,9,13
  10:24 12:5,9
  12:11,13 13:18
  13:24 14:5,19
  14:20 16:5
  17:2,10,12
  18:1,5,14,17,18
  18:22 19:4,5,7
  19:10,15 21:3
  22:3,8,19 23:2
  24:1 25:13
  27:10,17,25
  28:1,2 29:8,11
  29:25 30:11,14
  31:13 32:3,4
  32:11 34:21
  35:23 36:12,24
  37:13,16,17
  38:4 39:3,10
  42:17,25 44:17
  45:21 46:1,15
  46:20,23 47:1
  47:10,12,16

  48:18 50:6,14
  55:17 56:23
  57:18 58:3,3
  58:14,24,24
  59:6,10,24
  60:12,13 61:4
  61:5,6,8,18
  62:4,11,22,23
  63:3,24 64:6
  64:10,12,17
  66:10,11,17,17
  67:6,8,13
  69:21 70:5
  71:4,9,12,18,19
  71:20 72:17,20
  73:2 74:2,23
  75:21 76:17,17
  77:13 78:1,1,6
  78:22
knowing  61:4
knowledge
  57:23
kscolnick  2:6

l

l.a.  63:6,7,10
la  1:1 2:9 51:11
lack  49:8
laid  51:17
language  6:6
  6:11 8:25 9:1,1
  9:4,5,8,10
  14:14 31:5
  52:22 55:17,24
  56:6 68:10,11
  69:15 76:24

large  30:14
largely  61:19
latin  17:3
lawful  33:3,8
lay  53:19 54:15
lead  79:11
leaning  49:12
leaves  67:14,15
led  23:12 25:24
  26:18 48:23
level  73:1
leverage  28:25
lifted  67:9
light  30:24
  34:25 37:1
  40:19 49:3
  71:1 76:14
  77:15
limited  18:15
  66:3
line  22:16
lines  73:14
linked  28:15
list  22:17 30:21
  30:22 31:6
  44:20 59:6,9
  59:11 60:20,22
  65:8,10
listed  63:7
  65:16
listen  3:16
literally  25:10
  45:24 51:23
  54:24

literately  77:1
litigants  63:24
little  20:1,12
  23:1 38:18
  59:2 65:5
  71:25 72:1
lived  53:21
liz  19:21,24
  60:19 67:13
  71:4,25 72:1
  79:11
llp  2:10
located  65:24
  66:1
long  22:25
longer  56:18
look  5:9 22:1
  24:19,24 32:6
  35:13 58:21
  59:25 60:8
  64:18 66:7
  69:23
looking  9:7
  36:20 67:17
  71:13,13 73:8
lord  46:1
los  1:3 2:2,5,12
  2:17,18,19
  65:11,23,25
lost  36:4
lot  17:15 26:5
  29:18 33:25
  36:12 46:1

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 96

[made - mind]

| m | massive 17:24 | 49:16 50:16,18 | 68:1 70:25 |
|---|---|---|---|
| **made** 21:7 | **masters** 64:14 | 50:21 51:6,20 | 71:7 72:24 |
| 22:23 23:11,19 | 64:15 | 51:23,25 52:3 | 73:13 76:16,25 |
| 23:19,24 24:12 | **match** 35:4 | 52:19 53:3,5 | 77:10 78:5 |
| 26:21 33:11 | **material** 72:11 | 53:11 54:6,10 | **meaning** 12:25 |
| 35:16 37:15 | 72:13 | 54:13,22 55:1 | 48:4 52:21,24 |
| 40:16 41:19 | **mathematical** | 55:3,11,20,23 | 73:25 |
| 61:20 | 43:11 | 58:17,20 60:13 | **meaningful** |

**made** 21:7
  22:23 23:11,19
  23:19,24 24:12
  26:21 33:11
  35:16 37:15
  40:16 41:19
  61:20
**majeure** 4:4
**make** 14:10,18
  15:8,18 19:10
  19:15 20:18
  26:25 28:11
  30:6,19 32:18
  33:25 44:10
  46:16 49:19
  50:21 56:15
  61:15 63:12
  67:16 68:17
  70:24 72:16
**makes** 23:2
  37:1 73:19
**makeshift** 48:9
  48:11 57:1
**making** 31:17
  32:12 34:14
  78:12
**marcellus** 2:3
  32:4 44:11
  51:3 60:11
  61:10,16 68:1
  78:4
**march** 52:17
**mariana** 2:19

**massive** 17:24
**masters** 64:14
  64:15
**match** 35:4
**material** 72:11
  72:13
**mathematical**
  43:11
**matt** 2:20 3:23
  5:4 8:3 24:4
  28:8 34:18
  38:10 40:17
  42:22,22 49:16
  53:3,3 65:1
  79:1
**matters** 19:3
  55:18
**matthew** 2:10
  2:13
**mayor** 30:18
  34:20
**mcrae** 2:3 8:3
  8:23 9:20
  10:12,15 11:14
  12:15 14:6,8
  14:25 15:14,17
  16:4,6,9,15,17
  24:4 25:25
  26:24 27:10,22
  28:6,8,21 32:6
  33:13,22 34:2
  34:12 38:10
  39:16 41:6,11
  41:15,22 42:17
  42:19,22 43:2

49:16 50:16,18
  50:21 51:6,20
  51:23,25 52:3
  52:19 53:3,5
  53:11 54:6,10
  54:13,22 55:1
  55:3,11,20,23
  58:17,20 60:13
  61:2,13 62:14
  63:9,15,18
  66:13,20,23,25
  67:9,18,23
  68:2,5,8,15,19
  68:23 69:1,4
  70:17,19,22
  71:5 73:13,24
  74:8 75:1,10
  75:16,22,24
  76:4,16,20,22
  77:7 78:25
  79:12
**mean** 8:19,24
  9:22 11:22
  17:12,23 20:22
  24:10 32:6
  40:25 45:21
  46:6 47:4
  49:12,22 50:2
  51:3 52:7
  53:19,21 57:17
  58:1,5,21
  59:16,18 60:1
  60:13,21 62:10
  62:25 63:6,6
  63:23 64:2

68:1 70:25
  71:7 72:24
  73:13 76:16,25
  77:10 78:5
**meaning** 12:25
  48:4 52:21,24
  73:25
**meaningful**
  16:5 58:13
**meant** 50:25
**media** 9:24
**mediator** 59:3
  61:24
**meet** 1:12 6:8
  6:24 7:6 8:25
  25:2,5,20 28:9
  29:15 37:8,22
  38:3 48:22
  66:18
**meeting** 7:25
  15:15 17:9,13
  31:2 52:12
  53:14 67:3
  79:14
**meetings** 26:13
**meets** 45:4
**mental** 65:18
**mentioned** 14:9
  27:16 44:21
**met** 14:3
**million** 35:3
**mind** 12:17
  13:18 59:10
  60:25 69:5

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 97

**[minor - obligations]**

| | | | |
|---|---|---|---|
| **minor** 37:17 | 58:15 66:12 | 49:13 50:8 | 28:7 39:7,18 |
| **minutes** 79:10 | **monitor** 64:10 | 62:13 63:16 | 40:6,7,9,12 |
| **missing** 32:17 | 67:2,8 70:6,15 | 67:4 79:2 | 41:7,14,21 |
| **misunderstood** | 70:24 71:1 | **needs** 12:19 | 42:9,13,16 |
| 30:11 | 72:4,7,7 | 23:6 30:9 | 43:1,10,18 |
| **mitchell** 2:10 | **monitor's** | 37:24 | 44:2,4,4,6,7,7,9 |
| 53:5 79:11 | 71:12 | **negotiate** 70:2 | 44:12,25,25 |
| **mm** 52:19 62:1 | **monitors** 64:17 | **negotiated** 4:5 | 45:21 46:12,13 |
| **mmcrae** 2:7 | **month** 13:19 | 76:8 | 47:15 48:25 |
| **modification** | 74:23 | **negotiation** | 49:1 50:8,10 |
| 18:24,25 19:7 | **months** 6:2 | 55:19 69:10 | 53:15,18,23,24 |
| 19:9,17 20:25 | **mouth** 73:2 | **neither** 54:4 | 55:8,11 |
| 21:10 25:8,12 | **move** 14:6,8 | **neutral** 58:10 | **numbers** 35:24 |
| 31:8,23 32:25 | 17:23 24:9 | 58:11 64:23 | 39:22,25 40:3 |
| 34:24 36:2,10 | 33:14 34:16 | **never** 9:17 | 40:10 41:13 |
| 37:1 38:20 | **moving** 16:12 | 10:10 73:5 | 72:6,13 |
| 42:8 43:10,19 | 71:9 | **new** 18:19 | **nv** 1:25 |
| 44:8 46:18,19 | **multiple** 58:4 | 56:22 69:14 | |
| 47:3 49:5 | 59:4 | 70:14,24 | **o** |
| 50:10 57:3 | **multiyear** 4:8 | **nine** 27:25 | **o** 3:1 |
| 70:25 77:25 | **mutuality** | **nonstarter** 58:5 | **o0o** 3:2 |
| **modifications** | 14:13 | 61:18 | **oath** 80:10 |
| 4:22 20:23 | **mutually** 73:21 | **nos** 5:16 | **object** 59:19 |
| 21:1 22:5,6,11 | **n** | **note** 78:17 | 61:17 63:14 |
| 30:24 32:19 | **n** 2:1 3:1 | **notes** 80:12 | **objected** 26:12 |
| 35:21 37:10,25 | **name** 80:17 | **notice** 48:13 | **objection** 62:6 |
| 73:8 | **nebulous** 29:10 | **notified** 9:18 | 62:17 |
| **modifying** | **necessary** | **notify** 11:3 | **objections** 3:20 |
| 42:12 | 12:24 31:20,22 | **notion** 8:20 | **obligated** 75:20 |
| **moment** 5:22 | **need** 5:14,17 | 9:12 | 75:25 76:13,23 |
| **money** 23:5 | 18:14,19 19:21 | **notwithstandi...** | 77:14 |
| 24:25 25:19 | 19:24,25 40:2 | 73:20 | **obligation** 4:21 |
| 26:5,8,13,21 | 41:10,12,14 | **number** 18:20 | 6:8,23 17:10 |
| 27:18 33:18 | 44:22 46:16,24 | 19:17 27:9,11 | 56:21 73:24 |
| 46:10 57:15 | 47:10 48:25 | 27:11,12,25,25 | **obligations** 6:9 |
| | | | 6:17 10:23 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 98

**[obligations - paused]**

11:8 14:2
21:16 25:2,5
25:12,20 69:14
73:14 74:4
75:3,13 78:10
**obviously**
11:23 19:2
52:4 58:4
59:19 60:13
63:23 69:13
78:1,8
**occurred**  11:21
35:23
**offer**  48:9,10
53:17 54:1
55:12,15,25
56:25
**offers**  48:21,25
**officials**  22:3
**oh**  3:8 24:22
54:6
**okay**  3:8,18,22
5:3,13 7:9,16
7:22 10:18
13:6,16 15:14
18:8 20:2,9,13
22:15 24:1
26:19 28:20
35:5 36:9 37:4
38:8 39:7
40:18,23 45:22
47:8,13 48:1
49:6 50:16
51:24 56:3
66:23 67:22

70:18 74:8
77:17,20 78:15
**old**  40:4
**once**  28:16 33:2
44:9 62:3
**ongoing**  11:8
37:9
**open**  36:11
44:8
**operating**  9:4
49:19 50:1
51:10,12
**operation**
77:23
**operative**  7:19
72:21
**opponent**  64:25
**opposed**  31:25
71:6
**opposite**  76:6
**optimist**  61:23
**optimistic**
61:24
**option**  32:22
**options**  61:25
**oral**  80:16
**order**  9:9,10
11:18 24:5
39:22 40:1,1
43:10,15 49:23
50:4,13 51:1
52:6,12,16,17
67:10 69:7,10
69:15

**orders**  49:22
52:22
**organization**
59:17 65:17
**organizations**
60:6
**original**  48:22
**ors**  31:6
**overarching**
4:23
**overlapping**
23:14,21 24:3
27:21 37:20
40:14 42:18,21
43:25 50:20
51:22 55:21
61:12 75:23
**overruled**
59:18
**own**  30:16 44:2

**p**

**p**  2:1,1 3:1
**p.m.**  1:16 79:14
**page**  49:20
**paired**  48:8,10
**paradigm**
49:25
**paraphrase**
69:22
**parsed**  43:8
**parsing**  75:5
**part**  6:22 8:25
26:5 28:9
30:10 37:7,8
53:14 75:6,7,7

76:1
**participate**
69:12
**participated**
53:14
**particular**
17:17 38:15,16
**particularity**
43:15
**parties**  4:5 6:23
14:15 17:21
41:2 51:10
52:12 53:25
58:25 76:8
77:25
**past**  34:22
57:15 58:13
**paul**  2:15 3:10
3:12,23 27:23
72:1
**pause**  4:9,20
5:7 6:7,12 7:20
7:24 8:10,15
8:20 11:8,13
11:16,19 12:6
12:20 13:1,3
14:21 16:1,1
16:24 17:1,7,7
17:12,22 18:2
20:17 72:19,23
73:10 75:21
76:1,5,14
77:15 78:2,3
**paused**  6:19
8:14 9:9,17

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 99

[paused - productive]

10:9,19,23 73:11,16,17 74:17 75:4,7,7 75:7,8 76:25 77:23 78:9,11

**pauses** 73:24

**penalize** 28:18

**people** 12:12 26:12 27:17 31:25 32:1,2 36:4,4,5,7 58:24,25 59:4 61:5

**percentage** 27:18

**perfectly** 33:7

**perform** 32:14 77:14

**period** 43:22

**personal** 57:22 62:16 63:22

**perspective** 5:25 7:20,23 19:2,3 63:17 66:16 72:22 73:11

**piece** 61:14

**pinpoint** 10:6

**place** 67:13 80:8

**placed** 80:9

**plain** 6:6 52:21 52:24 55:17,24 56:5

**plaintiff** 36:25 64:22

**plaintiffs** 19:2 22:20 31:10 46:18

**plan** 18:19,19 55:14

**planted** 22:25

**play** 46:5

**plus** 47:14

**point** 5:14 7:25 10:17 11:2,3,4 11:20,24 13:22 16:21 17:18 19:22,25 20:24 21:13,14 23:9 24:10,14 25:6 26:1,25 27:7 27:17 28:13 29:23,25 31:17 31:18 32:18 33:11 39:14,15 41:8 45:14 47:8,13 50:6 53:6 54:15 56:9 58:5 64:13 65:3 67:16 69:16 74:10 75:2 77:24 78:2

**pointed** 53:13

**points** 23:2 33:25 34:2,3 41:23 79:5

**population** 36:2

**position** 5:21 10:7,22 12:5 14:4,5 21:8 22:4,8,10 25:9 30:7,16 34:17 35:19 36:15,17 37:10,23,23 38:4,25 39:17 42:3,4 50:8 56:12,13 77:22 78:8

**positions** 34:21

**possible** 8:8,16 8:22 9:19 31:25 40:5 71:8,10

**possibly** 69:5

**precise** 28:1 29:8

**precisely** 44:24 76:8

**predated** 7:18

**predicting** 49:12

**preexisting** 58:7 59:13,14

**prerequisites** 15:20

**prescribed** 69:6

**present** 2:14 15:23

**presented** 34:25

**pressing** 76:9

**presume** 18:20 66:4

**presumption** 66:14

**pretext** 37:14

**prevents** 74:15

**previously** 61:6 63:4

**prior** 7:1 48:22 48:23 50:3

**probably** 3:15 5:12 27:22,23 46:22,23 47:17 57:24

**probation** 65:19

**problem** 26:14 51:16 72:4 75:24

**problematic** 47:17

**problems** 23:10

**procedure** 64:20

**proceedings** 80:7,11,16

**process** 38:3 58:23 70:6

**produce** 77:2

**produced** 66:2

**productive** 29:13

Page 16

Scolnick Decl. Ex. A - 100

[professional - recognized]

| professional | put 19:19 40:4 | 38:24 74:20 | 30:15 |
|---|---|---|---|
| 80:4 | 54:23,24 61:5 | quick 49:17 | reading 11:18 |
| progression | 73:1 74:6 77:7 | quickly 71:8,10 | 14:17 31:4 |
| 53:20 | putting 17:5 | quote 69:22 | real 38:6 |
| prop 28:19 | **q** | **r** | realities 34:10 |
| proper 28:21 | | | 52:13 |
| 28:23 29:1,4 | qualifications | r 2:1 3:1 | reality 8:11 |
| proposal 47:19 | 62:8 | raids 4:17 6:16 | 50:11 51:10 |
| 47:25 55:14 | qualify 4:14 | 11:23 18:1 | 54:17 |
| 57:2,6,7 | quantifiable | 23:24 32:8 | really 6:6 24:17 |
| propose 58:20 | 25:4 | 36:5,22 | 25:13 27:6 |
| proposed 20:20 | quantify 29:8 | raise 34:11,13 | 28:4,10 29:13 |
| 21:11 37:25 | quarter 70:16 | 71:20 | 38:18 49:13,14 |
| proposing 5:7 | 70:20 | raised 31:15 | 49:23 55:7 |
| 22:5 40:18 | quarterly | 79:2 | 67:10 74:5,18 |
| 56:16,18 57:9 | 70:17,20 73:5 | raises 26:11 | 75:18 78:14 |
| proposition | 74:10,12 77:2 | 27:2,17,18 | realm 29:6 |
| 32:17 37:19 | question 7:8 | 44:17 | reason 4:11,11 |
| proverbial 27:4 | 12:7,8 21:5,6 | raising 32:5 | 50:5 68:19 |
| provide 59:22 | 24:21 25:18,21 | rand 57:14,15 | 71:5 |
| 61:25 | 26:17 30:5,23 | 57:20 58:5,14 | reasonable |
| provided 21:22 | 31:8 35:8 | 58:21 59:16,20 | 46:19 47:2 |
| 21:24 24:19 | 41:25 42:6,11 | 59:24 60:2,5 | reasons 28:3 |
| 27:15 48:13 | 42:23 43:20 | 62:5,7,19 63:8 | 72:11 |
| 50:24,25 | 44:17 47:11 | 63:13,14 64:21 | recall 55:7 |
| provision 4:4,4 | 49:17 51:4,5,6 | 65:21 66:2,7 | received 58:12 |
| 4:6 | 51:9 52:1 | 66:12 | 64:24 |
| provisions 76:8 | 53:12 54:13 | rand's 58:9 | recent 48:16 |
| public 65:16,18 | 55:6,8 57:24 | 65:7 | recognition |
| publicly 57:20 | 62:12,15 63:19 | rate 79:9 | 76:7,9 |
| pull 54:7 | 67:24 68:10 | reach 7:2 | recognize 33:5 |
| purported | 74:18 75:18,25 | reached 6:25 | 33:5 79:3 |
| 62:17 | 76:12,18,19 | 6:25 7:6 18:5 | recognized |
| purposes 42:12 | 77:6,7,19 | reactions 5:1 | 18:1 |
| 43:19 64:3 | questions 18:17 | read 8:24 9:3,5 | |
| | 18:22 19:14 | 11:15 14:12,14 | |

Page 17

Scolnick Decl. Ex. A - 101

**[recollection - run]**

| | | | |
|---|---|---|---|
| **recollection** 54:4 | 62:20 | 71:8,11,12 | **resume** 78:25 |
| **reconsider** 66:8 | **relative** 38:16 | 73:5 74:10,12 | **review** 70:25 |
| **reconvene** 79:10 | **relevant** 29:22 | **representative** 2:20 | **reviewable** 15:5 |
| **record** 3:5,13 | 31:23 34:15 | **request** 32:24 | **reviewed** 14:23 |
| 4:2 61:17 | 66:16 | 57:11 70:22 | 15:1 |
| 80:15 | **relitigating** | 72:16 74:6 | **revisions** 5:2 |
| **recuse** 62:25 | 24:10 35:23 | **requested** | **revisiting** 4:9 |
| 63:5 | **relying** 9:2 | 43:16 49:5 | **right** 6:7 7:4 |
| **reduced** 45:24 | **remains** 44:7 | **requests** 38:15 | 10:5,15 11:1 |
| **reducing** 48:9 | 76:13 | 38:20 | 13:7,11,12 |
| **reduction** | **remember** 53:7 | **require** 4:9 | 14:7,17 16:15 |
| 38:17 39:9 | 53:22 55:13 | 32:19 42:9 | 16:15,20 20:22 |
| 49:22 52:8 | 61:8 | 43:11,12,14,16 | 22:4 25:25 |
| 56:1 | **remind** 70:12 | 68:9 74:1 | 29:15 34:6,7 |
| **reductions** | **removed** 48:12 | **required** 14:13 | 39:2 45:15,20 |
| 39:18 40:15,21 | 48:13 | 26:7 77:3 | 45:23 46:4,15 |
| 40:21 41:3,18 | **removing** | **requirement** | 54:14 56:1 |
| 44:18,23 46:23 | 56:25 | 70:15,24 | 60:24 63:9,15 |
| 47:9,23 48:3,4 | **renders** 15:24 | **requires** 43:18 | 64:20 66:25 |
| 48:4 53:16 | **renegotiation** | 77:15 | 68:16,18 70:23 |
| 56:20,22,23 | 4:10 | **reserved** 28:17 | 72:6 73:6 |
| **references** 10:1 | **rephrase** 68:10 | 34:6 | 76:11 |
| **referencing** | 76:3 | **respect** 24:18 | **rights** 1:1 2:9 |
| 59:23 | **report** 39:22 | 27:12 35:14 | 75:14 |
| **reflect** 52:21,23 | 40:3,4,7,9 | 38:19 39:18 | **role** 61:6 |
| 54:16 | 70:16,20 77:2 | 67:1 71:11 | **roost** 35:17 |
| **reflection** 50:9 | **reported** 1:24 | **respectfully** | **row** 12:9 |
| **refrain** 43:4 | 39:9,25 56:20 | 42:24 | **rpr** 1:24 80:23 |
| **registered** 80:4 | **reporter** 3:14 | **responding** | **rule** 64:20 |
| **related** 66:3 | 43:3 55:22 | 39:1 | **ruled** 56:14 |
| **relationship** | 80:4,4 | **responses** 5:1 | **rules** 64:14 |
| 37:2 58:7 | **reporter's** 80:1 | **restarting** 7:5 | **ruling** 48:16 |
| 59:14,15 62:18 | **reporting** 40:6 | **result** 17:4 | **run** 18:11 23:7 |
| | **reports** 9:24 | 35:15 | 26:6 |
| | 21:25 70:17 | | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 102

[running - sort]

running  25:19
runs  26:6
rv  48:11 57:1
rvs  48:10

**s**

s  2:1,11 3:1
safe  29:17
sake  27:3
satisfy  78:9
saying  11:25
   12:2 22:13
   23:16,18 24:2
   24:22 26:19
   27:2 28:13
   29:7 33:19
   35:22 36:23
   41:8,16 43:2,2
   45:9 46:5 50:7
   64:22 68:17
   71:23 73:4
   74:14 75:5,6
says  6:12 8:24
   10:18 14:16
   23:5 67:19,20
   68:3,12 73:14
scale  30:14
scenario  47:16
   47:16 61:24
school  65:19
scolnick  2:3 3:4
   3:8,12,17,22
   6:4 7:14,21
   8:17 17:23
   18:8 23:15,24
   43:21 45:6,13

45:16 47:7
65:1,4,10,14
66:9 70:8,10
70:14 72:2
78:12
scope  69:24
screwed  65:15
scrutiny  34:19
se  63:21 64:6
second  6:22,22
   19:22 24:16
   34:21 39:15,17
   42:6 47:8,12
secondly  25:7
secret  8:12 17:6
section  4:1 11:6
   11:7 15:11,13
   30:10 56:8
   77:3,23
sections  6:17
   73:15 76:13,23
see  3:10 6:4 7:8
   30:21 31:4
   65:24 69:25
seeds  22:24
seeing  10:18
seeking  20:23
   20:25
seem  17:11
   59:21
seems  59:16
   73:3 77:10,17
self  24:23 25:4
   29:3,7

send  53:6
sense  19:9 37:1
sent  4:17,23
   5:23 38:15
separate  4:14
   6:7 25:21
   54:11,13
separately
   62:24
served  72:5
services  58:16
set  73:15 80:8
settled  55:16
settlement  4:1
   4:8,23 5:2 6:9
several  57:19
shape  73:10
   75:21
share  60:19,20
sheet  70:1
shelter  18:11
   19:16 20:19
   38:16 48:9,10
   48:11,21 49:1
   56:25 57:1
sheltered  32:2
shelters  48:10
shifting  32:25
short  67:5
shorthand  80:3
   80:12
shortly  13:10
show  53:20
shown  6:14

shows  24:19
   45:18 50:2
side  3:18,19
   39:11 66:18
signature  80:22
significance
   37:13
significant  22:1
   22:9 26:20
similar  63:2
similarly  64:16
simply  14:16
   17:19 52:5
sit  69:4
situations  34:9
six  50:14 60:5
skid  12:9
solidified  78:22
solution  38:17
solutions  18:12
   19:16 20:19
somebody  47:5
   59:12
somebody's
   36:21
soon  6:19
sorry  23:15
   35:6 42:19,22
   50:21 59:16
   70:9,12
sort  31:8,13
   32:25 58:24
   62:11,22 63:1
   72:21 78:21

Page 19

Scolnick Decl. Ex. A - 103

**[sounds - terms]**

sounds  7:18
  17:24 22:5
  62:7
source  15:19
  62:19 63:20
  64:6
south  2:5
speak  60:12
  61:14
speakers  23:14
  23:21 24:3
  27:21 37:20
  40:14 42:18,21
  43:25 50:20
  51:22 55:21
  61:12 75:23
speaking  59:17
special  64:14
  64:15
specific  13:20
  17:5 30:1
  31:12 35:20
  38:15,20 43:12
  43:13,23 69:9
  69:17 76:12
specifically
  48:7 52:8 66:3
specificity
  29:16,24 31:16
spend  17:15
  26:7,13 70:4
spends  26:5
spot  28:5
standard  63:1
  63:2

standards
  64:11
standpoint
  47:19
start  3:20
started  3:6,24
starting  69:16
stated  72:12
states  39:1
stating  38:7,9
statute  64:19
stealth  20:25
sticking  56:6
straightforward
  45:3
straits  36:7
strap  78:13
street  2:11 12:9
  16:2
struggling  36:6
studies  65:22
  66:3
stuff  37:6 74:16
subheads  65:23
  66:1
submit  18:16
submitted
  55:14
subscribed
  80:17
subsidies  18:13
  18:15
substantial
  21:24 58:15
  59:7,14 64:24

substantially
  49:2
suffering  36:5
sufficient  37:12
suggest  64:7
suggested  5:2
suggesting  8:18
  22:6 30:8
  58:16 64:3
suite  2:11
supposed  46:7
  72:8
sure  3:21 14:11
  14:18 15:8,18
  20:18 30:6,19
  32:11 43:5
  47:5 49:19
  50:21 60:7,10
  70:24 74:5
surpluses  33:16
surprise  60:14
szabo  2:20

**t**

table  78:17
take  11:5 12:4
  22:1,2,10 26:8
  26:15 27:3
  29:23 30:2,2
  35:19 36:12
  39:18 40:8
  57:13 59:24
  60:8,21 69:20
  69:21 71:24
  78:16 79:4,13

taken  1:14 15:2
  34:22 36:20
  80:7,11
takes  12:10
talk  4:11,24
  16:19 18:6,6
  19:21,24 20:1
  34:10 71:3,25
  72:1
talked  60:16
talking  3:20
  10:2,3 11:17
  24:12 27:19
  29:5,9 32:10
  33:22,23,24
  34:3 35:7 43:3
  54:14 58:2
  65:6 72:24
  73:6
tell  8:14 40:15
  43:24 47:17
  57:14 66:7
  70:18 80:10
telling  10:16
  42:14 44:3
tens  12:11
tent  12:9 48:11
  52:25,25 57:1
tents  48:9
term  17:3 49:8
  50:25 52:7
  70:1
terms  4:10,15
  4:22 5:3,12
  14:13 15:11,21

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 104

**[terms - try]**

15:22 27:2,4 27:13,14 63:24 69:17 71:20 72:18

**testimony** 80:15

**tethered** 30:9

**thank** 3:4,22 79:12

**thanks** 3:23,23 79:11

**thereof** 80:16

**thing** 18:4 24:5 24:15,16 26:14 27:16 63:6

**things** 4:24 5:5 5:11,11,15,16 5:22 6:7,13,16 7:18 8:19 9:17 10:4,9,19 11:21 12:1,13 12:16 15:20 18:5 19:18 21:15 24:22 25:2,23 26:6,7 26:9,9,10,11,19 26:22 27:5 28:14,24 29:5 29:11,12,19,21 30:9,22 31:20 31:22,24 32:1 32:10 38:9 43:17 44:20 46:7 64:15 66:6 70:3 71:9

74:13,17 77:14

**think** 3:18,24 4:2,25 8:10,16 8:22,24 9:7,8 9:13,15,18,25 10:19,23 11:12 12:18,19,19,23 12:24 13:4,13 13:21 14:9,23 15:20,24,25 16:24 17:1,4 18:3,18 19:6,7 19:10,20 23:11 24:22,25 25:3 26:25 27:8 29:6,7,17,17,25 30:15 31:14,15 31:17 32:5 33:15 37:7,9 37:16,21 40:17 41:22,23 42:2 43:9 47:4,4,10 48:14,19,19,20 49:12 52:10 53:13 54:17 56:16 58:22 59:2,5,6,10 60:14,19,20,21 61:7,10,11,16 62:13,21,25 64:2,9,11 65:2 65:2,6 67:4,9 67:15 69:8,9 69:15,16 70:6 72:3,4,10,11,12

74:10,12,18 75:11,24 77:20 77:22,24 78:3 79:5,8,9

**thought** 21:14 45:11 51:18 52:24 60:16

**thoughts** 69:5

**thousand** 12:11 42:1 45:3

**three** 4:13 6:13 7:12 21:9 32:9 38:13

**threshold** 14:10 25:15

**throw** 18:21 44:4

**thursday** 1:15

**tight** 28:4

**tighter** 71:2

**time** 5:23 7:4 17:15 18:15 22:2 43:14 67:6 70:4 71:19 72:15 73:6 78:20 79:4 80:8

**times** 44:22

**timing** 5:20

**tires** 40:8

**tls** 18:13,21

**today** 4:12,21 5:12 20:9 75:20

**together** 47:19 70:5,6

**told** 44:24

**topic** 14:9 33:14 45:13

**total** 19:17 49:1

**totally** 25:20

**touched** 64:13

**toward** 19:1

**towards** 56:21

**track** 53:9

**transcribed** 80:13

**transcript** 80:14

**transcription** 80:13

**treat** 59:2

**tried** 54:7,8

**trigger** 4:20 16:3

**triggered** 13:2 18:2 22:22

**triggering** 12:6 12:14,22,23 13:23 14:1

**true** 9:14 58:10 80:14

**truth** 80:10,10 80:11

**try** 18:22 43:5 43:14 53:8 67:20 68:12,15 69:14 73:19 74:19 75:13

Page 21

Scolnick Decl. Ex. A - 105

**[try - using]**

| | | | |
|---|---|---|---|
| 78:5 | 22:12,16,19 | 70:23 71:7 | 22:4,10 34:18 |
| **trying**  3:7 6:3 | 23:22 24:2 | 72:14 73:23 | 37:8,23 38:1 |
| 10:6,7 13:14 | 25:14 26:1 | 74:6,9 75:2,15 | 45:14 48:18 |
| 28:25 33:25 | 27:8,20,23 | 75:17 76:3,11 | 49:11 50:7,22 |
| 35:7,8,12,20 | 28:7,20 29:14 | 76:19,21 77:1 | 56:11 57:5,5,7 |
| 45:11,14 46:5 | 30:12,21 31:2 | 77:9 78:16,19 | 59:8 62:4 |
| 53:6 62:25 | 33:12,15,24 | 79:7,13 | 65:20,21 67:17 |
| 63:1 68:8 70:4 | 34:11,13,23 | **umklaw.com** | 70:24 72:19 |
| 73:1,3 75:8 | 35:2,6 36:19 | 2:13 | 73:8 74:9 |
| 77:1,6,11,12 | 37:5,18 38:7,9 | **unable**  45:10 | 75:19 76:18,18 |
| 78:13 | 38:23 39:8,20 | **unanimity**  52:1 | **understanding** |
| **turn**  4:25 | 40:15,23 41:9 | **unattended** | 18:9 27:24 |
| **turning**  26:18 | 41:12,16 42:14 | 48:12 57:1 | 48:3 50:25 |
| **turns**  23:5 | 42:20,25 44:1 | **under**  4:14 | 51:15 56:21 |
| **twice**  40:11 | 44:24 45:11,15 | 9:15 12:16 | 66:4 |
| **two**  4:23 5:11 | 45:19 47:8 | 17:1,7,21 | **understood** |
| 6:6,7 12:12 | 48:1,6 49:6,11 | 21:16 23:7 | 3:17 15:19 |
| 19:18 25:2 | 50:15,17,19 | 28:17 30:18 | 49:22 52:23 |
| 37:2 41:24 | 51:3,8,24 52:2 | 36:5 38:25 | **unilateral** |
| 63:24 66:6 | 52:15,20 53:4 | 39:10 40:10,16 | 14:21 |
| 67:5 | 53:9 54:3,7,12 | 42:15 45:25 | **unilaterally** |
| **type**  61:24 | 54:20,23 55:2 | 46:10 47:15 | 12:20 16:1 |
| **u** | 55:10,17 56:3 | 49:14 50:1 | 69:14 70:5 |
| **umhofer**  2:10 | 57:5,7,18 58:3 | 51:12 56:20 | **unintended** |
| 2:10 3:21 5:9 | 58:19,21 60:1 | 65:12,24 66:1 | 56:25 |
| 7:9,16,22 8:7 | 60:4,10,17 | 66:20 73:11 | **unrest**  4:17 |
| 8:18 9:7 10:6 | 61:3 62:1,10 | 74:3 75:14,20 | 9:24 |
| 10:13,16 12:2 | 62:21 63:10,16 | 75:25 76:13,23 | **unreviewable** |
| 12:17 13:9,12 | 64:9 65:9,13 | 77:3,12 80:9 | 9:13 |
| 13:17 14:7,19 | 65:20 66:15,22 | **understand** | **used**  37:15 |
| 15:12,15,24 | 66:24 67:1,12 | 5:18,19 7:10 | **useful**  37:22 |
| 16:5,8,11,16,20 | 67:22,25 68:3 | 7:25 8:1,4 9:11 | **using**  56:7 |
| 18:7,9 19:20 | 68:6,13,17,22 | 10:17,25 14:11 | |
| 20:3,6,11,14,22 | 68:24 69:3,8 | 15:8 16:8 | |
| 21:3,12,21 | 70:9,12,18,21 | 19:12 21:17 | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 106

[vague - yeah]

| v | | | |
|---|---|---|---|
| **vague** 77:18 | 37:21 38:2 | **we've** 3:13 4:13 | **work** 13:5 46:1 |
| **vagueness** 70:3 | 41:1,13,17 | 4:17,23 6:13 | 59:11 60:22 |
| **valerie** 2:17 | 42:14,15 44:5 | 6:14,14 7:5,6 | 62:24 63:4 |
| **value** 11:6 40:9 | 44:18,21,25 | 13:22 19:18 | 66:13 |
| **variety** 58:8 | 45:20 46:21 | 21:11 24:10 | **worked** 58:23 |
| **version** 8:19 | 48:8 49:18 | 26:19 32:10 | **workers** 26:11 |
| **versus** 12:10 | 50:21 53:23,24 | 33:10 39:5 | **working** 18:15 |
| 43:9 | 56:10,15 57:23 | 46:1 48:19 | 21:18 |
| **view** 4:4,19 | 58:10 60:12 | 51:15 60:17,18 | **works** 40:6 |
| 7:10 17:18 | 61:15,25 66:7 | 61:20 | 58:4 |
| 21:15 46:18 | 66:13 70:15,23 | **website** 58:9,14 | **wreaked** 27:6 |
| 74:16 75:19 | 71:8,9,9 72:16 | 65:7 | **wreckage** 27:5 |
| **viewed** 12:5 | 72:18,19 77:19 | **webster** 2:15 | **writing** 73:9 |
| 64:10,16 | **wanted** 3:25 | 3:10,11,15 | 74:7 77:8,21 |
| **views** 12:14 | 7:17 62:22 | **week** 78:24 | 78:24 |
| 77:13 | **wanting** 29:24 | **weeks** 13:18,19 | **written** 57:10 |
| **violated** 40:2 | 75:19 | 14:2 50:14 | **wrong** 65:24 |
| **violation** 39:21 | **wants** 36:10 | **weigh** 31:10,11 | 66:1 |
| 74:24 77:4 | 74:2 | **weird** 40:24,25 | |
| **virtue** 75:12 | **warrant** 21:9 | **went** 33:18 | x |
| **visceral** 62:17 | 25:8,12 | **whatsoever** | **x** 53:23 54:25 |
| **vs** 1:2 | **warranted** 22:7 | 17:20 52:11 | |
| | 22:11 30:24 | **wildfires** 4:15 | y |
| w | 31:16 37:11 | **willing** 18:13 | **y** 53:24 |
| **waiver** 78:13 | **way** 4:7 24:21 | 19:12 42:12 | **yeah** 5:9 6:4 |
| **waiving** 75:14 | 28:12 29:12 | 55:9 69:1 | 8:7 15:24 16:4 |
| 78:8 | 30:15 31:11 | **witness** 80:9 | 19:4,20,20 |
| **want** 4:11,24 | 40:4,5,24 41:1 | **won** 24:10 | 20:6,11 21:2 |
| 5:19,24 14:3 | 52:11 53:17,24 | **word** 6:18 | 21:12,20 25:14 |
| 14:10,18 15:8 | 58:23 65:15 | 37:15 69:21,21 | 33:7,12,15 |
| 15:18 19:15 | 66:5 68:18 | **words** 15:3 | 35:1 37:18 |
| 20:11,18 24:1 | 75:14,20 77:19 | 16:9,22 27:7 | 40:23 44:16 |
| 28:1 30:2,5,19 | **ways** 23:4 58:8 | 32:15 33:2 | 49:6,10 54:18 |
| 31:20,21,23 | 69:17,25 71:10 | 49:25 56:2 | 56:10 58:19 |
| 32:4 35:3 | 77:11 | 63:19 73:2,20 | 60:1,7 61:2,15 |
| | | | 61:22 62:10 |

Page 23

Scolnick Decl. Ex. A - 107

**[yeah - zoom]**

64:9 65:20
66:13,15 68:24
69:3 72:2
77:20 78:12
79:10
**year**   10:5 49:23
52:10
**years**   8:13
57:16
**yep**   18:7 48:6
65:9,13

**z**

**zero**   44:6 45:5
45:8,9,16,18,18
45:25 46:4,14
**zoom**   1:14

Page 24

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Scolnick Decl. Ex. A - 108