UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: 213-394-7979
Facsimile: 213-529-1027
Email: matthew@umklaw.com
Email: elizabeth@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>    Defendants. | Case No. 2:20-cv-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF LOS ANGELES'S EX PARTE APPLICATION STAYING THE APPOINTMENT OF DANIEL GARRIE AS MONITOR PENDING APPEAL OF ORDER** |

*OPPOSITION TO CITY OF LOS ANGELES'S EX PARTE APPLICATION*

PLEASE TAKE NOTICE that Plaintiffs in this matter hereby oppose the City's *ex parte* application staying the appointment of Daniel Garrie as monitor pending the City's meritless appeal of the order to the Ninth Circuit.

The City spends the entirety of its 23-page application tap-dancing around the inescapable reality that **the City submitted the issue to the to the court for "review and resolution of the issue pursuant to Section 24 of the Settlement Agreement"** (Joint Update re Third-Party Monitor 1:1–5, Oct. 10, 2025, ECF No. 1045) (emphasis added) which explicitly provides: "In the event that the Parties are unable to resolve the [Parties'] dispute within a reasonable time after the [Parties'] meeting, Plaintiffs or the City may . . . submit the matter to the Court for review and decision." (Settlement Agreement 18:23–25, May 19, 2022, ECF No. 429-1). The facts are straightforward: (i) the parties could not agree on a monitor; (ii) The Settlement Agreement ("SA") expressly requires the Court to resolve a dispute between the parties if they cannot agree; (iii) the parties jointly submitted the issue to the court for "resolution" pursuant to the SA; (iv) the Court resolved the issue in light of the Parties' disagreement. The analysis is simple. There are no grounds for a stay or appeal.

Pretending that this contractual, court-enforced condition doesn't exist within the SA, or at least for whatever reason is inapplicable to the clauses of the City's choosing, the City creates an alternative reality where the parties *have* to agree to a monitor and if they don't agree to a monitor there is no resolution mechanism in existence that could resolve the issue. To support this illusion, the City cherry-picks a handful of the Court's comments from the last hearing, disingenuously suggesting the Court itself admitted it has no jurisdiction to decide this issue. Yet the Court repeatedly, correctly, caveated its comments on Section 7.2 to explain that the Court lacks jurisdiction *if the parties mutually agree to a monitor*: "**[A]s long as [the parties are] talking** . . . the court has [no] authority. . . . So **if you reach an accommodation**, . . . that's going to be accepted by the Court." (Hr'g Tr. 40:7–12, ECF No. 1034

1

*OPPOSITION TO CITY OF LOS ANGELES'S EX PARTE APPLICATION*

(emphasis added))[1]; **"[I]f each of you reach an agreement**, then the Court has no jurisdiction nor ability to impose unilaterally anything on you. So I want that very clear. **If you do reach an agreement**, I'm duty bound to accept that. Understood? I'm just telling you transparently some of my concerns, but those could be easily overcome if each of you agree." (*Id*. at 41:14–22 (emphasis added).)[2] Here the parties could not and did not agree, and therefore the Court appropriately decided the issue submitted to it under Rule 24. (Order at 2, Oct. 14, 2025, ECF No. 1048 ("Because the Parties have jointly requested the Court utilize its authority under Section 24 to resolve the Parties' dispute over the Monitor's appointment and scope of work, the Court now does so.").)[3] The analysis can stop there.

None of the red herrings thrown in the air by the City take flight.

*First,* nothing about Section 7.2 of the SA sets it outside of the reach of Section 24's dispute resolution clause. "Stipulations for dismissal are construed according to the 'basic contract principles' of local law." *Kelly v. Wengler*, 822 F.3d 1085, 1095 (9th Cir. 2016). In California, the "first step in contract interpretation is to look at the 'plain meaning' of the contract language." *PlayMedia Sys., Inc. v. Am. Online, Inc.*, 171 F. Supp. 2d 1094, 1114–25 (C. D. Cal. 2001). Dispute resolution clauses are interpreted broadly if they contain broad language such as "*any claim arising from or related* to" an agreement; conversely if a dispute resolution clause is "narrow" the agreed-to dispute resolution procedure would be interpreted narrowly, only to those

---

[1] Compare the above full quote with the City's misleading quotation: "'the Court correctly recognized that it did not have 'any authority . . . to impose anything on either party, L.A. Alliance or the City" (Def's Ex Parte Appl. 10:2–6, Oct. 22, 2025, ECF No. 1054.)

[2] Compare the above full quote with the City's misleading quotation: "The Court correctly recognized . . . that it had 'no jurisdiction nor ability to impose unilaterally anything on you.'" (*Id*.)

[3] The Court actually would have authority to decide this issue if the parties could not agree and even one party submitted this issue to the Court for resolution: "In the event that the Parties are unable to resolve the dispute within a reasonable time after the meeting, Plaintiffs *or* the City may, pursuant to the Order, submit the matter to the Court for review and decision." (SA 18:23–25, ECF No. 429-1) (emphasis added).

2
*OPPOSITION TO CITY OF LOS ANGELES'S EX PARTE APPLICATION*

issues identified by the parties. *Ahern v. Asset Mgmt. Consultants, Inc.*, 74 Cal. App. 5th 675, 689 (2022). In this case, the parties agreed that the subject dispute resolution section (Section 24 of the SA) would apply "[i]f a dispute arises between the Plaintiffs and the City regarding the interpretation, performance, or enforcement of this Agreement." (Settlement Agreement 18:19–23, ECF No. 429-1.) The parties did not carve out any exception to that broad application of Section 24, including if the parties could not "mutually agree[]" upon a monitor under section 7.2. (*Id*. at 9:13–15.) The City provides no evidence—extrinsic or otherwise—to support its contention that Section 24 is inapplicable to a dispute under 7.2.[4] The City is highly unlikely to succeed on the merits of its time-wasting appeal.

*Second*, the Court did not "reject[] Mr. Galperin and McKinsey and suggest [] a third monitor" (Def's Ex Parte Appl. 2:11–13) rather the Court opined that someone with technical abilities made the most sense and suggested that the parties agree to either A&M or Daniel Garrie (both originally proposed by Plaintiff) partnered with someone like Ron Galperin for the relevant Los Angeles expertise. (Hr'g Tr. 34:17–36:4, ECF No. 1034.)  The court took a break, the parties had an opportunity to discuss, and both the City and the Alliance AGREED on Daniel Garrie and Ron Galperin together, subject to City Council approval. (*Id*. at 84–85.) The City's attempt to paint the Court as improperly imposing its will on the parties is inappropriate and without factual basis.

*Third*, the City's complaint that it would be severely prejudiced if a stay is not issued has no merit. The City claims to be vindicating Controller Mejia's independence but it was *the City* who argued for his appointment as the co-data monitor in the first place (Jt. Update re Third-Party Monitor, ECF No. 1045) and it was Controller Mejia

---

[4] The City's argument that even though the parties *explicitly* "asked the Court to **take action** under section 24 **to resolve the dispute** over selection of the monitor, the City never agreed that the Court could appoint a monitor who was not mutually agreed-upon by the parties" is absurd on its face. If the Court was not permitted under Section 24 to make a decision between the parties' two positions, *what exactly* does the City contend the Court was authorized to do by "tak[ing] action" and "resolv[ing] the dispute."?

who fought for the appointment on social media.[5] Indeed the City has submitted two separate declarations as part of its ex parte application but nothing from Kenneth Mejia complaining that his role as Controller of the City of Los Angeles is being usurped. Nothing about the Court's order—which "split the baby" by combining the parties' contrasting proposals—makes the City Controller subordinate to Daniel Garrie. Instead Mr. Mejia, as the "most knowledgeable person regarding the myriad and complex funding streams involved with the homelessness system", is simply "facilitating data access and coordination" with Mr. Garrie and acting as a "City liaison." (Order 4–5, ECF No. 1048.)  Nothing about that order suggests that Mr. Garrie is "control[ling]," "oversee[ing]" or giving "orders to" Mr. Mejia, as the City so dramatically contends.

*Fourth*, the City's contention that the declared emergencies—which the City has vaguely contended have "paused" its obligations in an undefined and apparently unlimited way—are a basis for the stay is similarly baseless. The City was willing to pay a higher price for Mr. Galperin ($800/hour plus fees and travel expenses versus Mr. Garrie's $750/hour without charging fees or travel expenses) and the work must be done regardless pursuant to the SA and the Court's Order. Thus, in the extremely unlikely event the court of appeal overturns the Court's mild and straightforward order, the City would get the benefit of the work done for several months at a discounted rate.[6]

---

[5] LA City Controller Kenneth Mejia (@lacontroller), X, The City of LA spent MILLIONS to avoid transparency and accountability by my Office and is going to do it again to have an outside monitor keep an eye on the city's homelessness spending and efforts! (Sept. 23, 2025), https://x.com/lacontroller/status/1970694728644730942?s=10

[6] As the Court rightly noted, as did Mr. Garrie in his email to the City, a budget cannot be provided until Mr. Garrie understands "the City's data, systems, and documentation" (Order at 5, ECF No. 1048)—which is precisely what Mr. Garrie did in sending the CAO a list of *19 straightforward questions* (three identical questions regarding each of the City's properties, six each regarding the City's systems, and a separate set of ten questions on data collection and methodology)—hardly the ominous effort described by the City.

*OPPOSITION TO CITY OF LOS ANGELES'S EX PARTE APPLICATION*

*Fifth* the City's claims that the Alliance (and the public) would suffer no harm from a "pause" because "the City's obligations under the agreement are not immediately due" exposes the City's true objective: to wait out the Court, and this agreement, by slow-rolling its obligations, appealing everything, and doing as little as it can get away with—sadly demonstrating its lack of commitment to address the homelessness crisis for the benefit of both the housed and unhoused communities. The City is three years late in establishing the monitor required by Section 7.2 and recent events, including the release of A&M's Assessment and the Evidentiary Hearing, have demonstrated the extreme need for immediate accountability and transparency. Both the Alliance and the public have already been severely negatively impacted by the delay and should not have to wait longer for the City to continue to avoid accountability on this issue.

Finally, the City is absolutely at fault in creating the need for ex parte relief in this case. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 493 (C.D. Cal. 1995) (To obtain *ex parte* relief, "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief."). The November 12 hearing date has been known to the City since the Court issued its Order on June 24—that's five months to get an agreed-upon monitor in place prior to the first court hearing on the issue. Yet the City didn't seek to meet and confer about this issue until August, then let it stall in City Council for a month with two continuances and a vote to send the issue to committee—essentially a non-vote—all while knowing that the November 12 hearing was looming. Had the City acted diligently, perhaps the parties would have had more time to identify a mutually agreeable monitor or at least brief this issue in a regularly scheduled motion rather than an emergency *ex parte* application.

The Court should see the City's *Ex Parte* Application for what it is: a stall tactic by the City to avoid responsibility, transparency, and accountability. The application is meritless, as is the appeal, and should be denied.

*OPPOSITION TO CITY OF LOS ANGELES'S EX PARTE APPLICATION*

Respectfully submitted,

Dated: October 23, 2025

*/s/ Elizabeth A. Mitchell*
UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

*Attorneys for Plaintiffs*

6

*OPPOSITION TO CITY OF LOS ANGELES'S EX PARTE APPLICATION*