**FILED**
CLERK, U.S. DISTRICT COURT

10/31/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ kdu _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al. | Case No. LA CV 20-02291-DOC(KESx) |
| Plaintiff, | Judge:  Hon. David O. Carter |
| v. | **SPECIAL MASTERS REQUEST** |
| CITY OF LOS ANGELES, et al. | |
| Defendant. | |

1

RE: REQUEST FOR UPDATES ON CITY OF LOS ANGELES QUARTERLY REPORT (Q3 2025)

TO THE COURT AND ALL PARTIES:

Please take notice that on October 30, 2025, the Special Master transmitted the attached formal request for updates to the City of Los Angeles and the Parties via email. The request pertains to the City's October 15, 2025 Quarterly Report, covering the reporting period ending September 30, 2025.The request seeks written responses by November 6, 2025 to support the Special Master's review of compliance, verification, and validation under the Settlement Agreement and Dkt. 991. A copy of the request is attached hereto as Exhibit A.

A copy of the request is attached hereto as Exhibit A.

Respectfully submitted,
Dated: October 31, 2025
Michele Martinez
Special Master

Exhibit A- Special Master's Request for Updates (October 30,2025)

**DATE:** October 30, 2025
**FROM:** Michele Martinez, Special Master
**RE:** Request for Updates – Q3 2025 Compliance Review
**Subject:** Request for Updates on Settlement Obligations – October 2025 Quarterly Report
**TO:** Counsel for the City of Los Angeles

Dear Counsel,

As I prepare to submit my Special Master's report reviewing the City's self-reported data for the third quarter of 2025 (reporting period ending September 30, 2025), I am requesting updates on several outstanding obligations under the Settlement Agreement and Dkt. 991.

Please provide written responses to each section below so I may accurately reflect the status of implementation and compliance.

I will need your response by **November 6, 2025**, as I will be submitting my report to the Court in advance of the **November 12th hearing**.

## I.      Section 7.1 – Reporting on PEH Served

The City's October 15, 2025 Quarterly Report is currently under review for compliance, verification, and validation pursuant to Dkt. 991 and the Settlement Agreement.

**The report states:**
"This Quarterly Report does not include information regarding the number of persons experiencing homelessness served by the current intervention opportunities. The City has not been able to collect and verify that information in the time provided to complete this Report."

**However, Section 7.1 of the Settlement Agreement requires quarterly updates on:**
- Housing or shelter opportunities created
- Opportunities offered
- Opportunities currently available
- Number of persons experiencing homelessness (PEH) served in each Council District

**Please confirm:**
- Whether the City has requested this data from LAHSA
- When the verified PEH served data will be submitted

**II.        Section F – Encampment Reduction Reporting (per Dkt. 991)**

**In the City's July 15, 2025 Quarterly Report (Dkt. 1011-1), the City acknowledged:**
"The Court directed the City to 'report its updated encampment reduction data beginning in the October 2025 quarterly status report.' … The City thus is not including encampment-reduction data in this quarterly status report, but will endeavor to provide that information in the quarterly report slated for October 2025…"

Despite this commitment, the October 15, 2025 report does not include Q3 2025 data (July–September), nor does it explain why that data is missing. The Court's directive was issued on June 24, 2025, providing the City with a full quarter to begin tracking reductions consistent with the Court's definition.

The Monitor appointed under Section 7.2 will be responsible for reviewing whether offers of shelter or housing were made to individuals whose tents, makeshift shelters, or vehicles are counted as encampment reductions.

**The City is expected to:**
- Provide the name of the shelter or housing offered and available for each encampment reduction
- Support this with documentation, with specific requirements to be finalized by the Monitor in consultation with the Parties

**Please confirm:**
- When the City will submit Q3 2025 encampment reduction data consistent with the Court's definition
- Whether the City has prepared or intends to provide documentation of shelter or housing offers for each reported reduction
- Whether the City intends to provide the name of the shelter or housing offered for each reduction, as expected by the Court
- Whether the City has consulted with the Monitor or Plaintiffs regarding documentation protocols

**III. Section E – Verification and Validation (per Dkt. 991 and October 14, 2025 Minute Order)**

Section 7.2 of the Settlement Agreement requires the Parties to engage a mutually agreed-upon third party to provide data collection, analysis, comments, and regular public reports on the City's compliance. The City is responsible for funding this monitor.

**Dkt. 991 (June 24, 2025) states:**

"To address verification failures, the parties shall meet and confer on a third-party Monitor by August 22, 2025, and subject to the Court's approval, select the Monitor by September 12, 2025, to oversee quarterly compliance checks and milestone validation." (Dkt. 991 at 50)

"Subject to the Parties' input, the Monitor will at least be responsible for reviewing the City's data prior to publication of its quarterly reports, verifying the numbers reported, engaging with the Parties and LAHSA to resolve data issues, and providing public reports on data compliance. The Monitor shall have full access to the data that the City uses to create its reports to the Court." (Dkt. 991 at 50)

"To streamline disputes over verification and compliance, the Court also orders that the Parties attend an in-person court hearing after the submission of each quarterly report. This accountability measure will ensure that disagreements are efficiently resolved as they arise." (Dkt. 991 at 50)

On October 14, 2025, the Court appointed **Daniel Garrie as the Monitor** and designated **Controller Kenneth Mejia as liaison**, without further cost to the City. Mr. Mejia is tasked with facilitating data access and coordination at Mr. Garrie's discretion. (Minute Order, Oct. 14, 2025, pp. 4–5)

**The Court reiterated that the Monitor's role is not ceremonial or advisory. It requires:**
- Real-time data auditing and timestamp validation
- Applied knowledge of data integrity and source attribution
- Verification that reported figures are supported by primary evidence
- Capacity to distinguish verified data from placeholders or estimates

On October 22, the City filed a notice of appeal and an ex parte application for a stay of that appointment (Dkt. 1054), asserting that the appointment was made without its consent or City Council approval. The City also cited concerns about cost, scope, and the independence of elected officials.

On October 23, 2025, Plaintiffs filed their opposition to the City's ex parte application for a stay (Dkt. 1055), arguing that the City had jointly submitted the dispute to the Court under Section 24 of the Settlement Agreement and that the Court acted within its authority in appointing the monitor.

**Please confirm:**
- Whether the City intends to provide requested data to Mr. Garrie and Controller Mejia upon receipt of specific requests

- Whether any verified data is expected to be available for review prior to the November 12 hearing
- Whether the City anticipates supporting an initial assessment from the monitors, even if full validation is not yet possible
- Whether the City has taken any steps to internally assess or verify the reported bed and unit figures, pending third-party validation
- Whether any milestone-related data has been reviewed or documented in a way that could support future validation efforts
- How the City is currently ensuring accuracy and transparency in its reported figures

As of this writing, Mr. Garrie has communicated with the city to meet with City staff and submitted preliminary questions, but no underlying data has been provided for verification or milestone validation. With the November 12 hearing approaching, it is unclear whether Mr. Garrie or Controller Mejia will receive the necessary data in time to conduct an initial assessment. As the Special Master, I will not be in a position to confirm verification and validation of the City's Q3 2025 reported figures under Section 7.2 unless the underlying data is provided and the monitor is able to conduct an initial review.

## IV. Section 8.2 – Emergency Pause and Meet-and-Confer Obligation

Section 8.2 of the Settlement Agreement allows for a pause in obligations during declared emergencies, provided the Parties meet and confer on any necessary and appropriate amendments:

"In the event of fires, floods, earthquakes, epidemics, quarantine restrictions, or other natural catastrophic occurrences; terrorist acts, insurrections or other large scale civil disturbances; or any local or fiscal emergency declared by the Mayor of Los Angeles and the Los Angeles City Council… the obligations of the City as set forth in Sections 3, 4, and 5 of this Agreement shall be paused, and the Parties agree to meet and confer on any necessary and appropriate amendments to those obligations." (Dkt. 429-1 § 8.2) This provision applies only to Sections 3, 4, and 5 — housing/shelter creation, engagement, and milestones. It does not apply to Section 7 (reporting) or Section 7.2 (monitor oversight).

**The Court reaffirmed this in Dkt. 991:**
"The Settlement Agreement also imposes a duty on both parties to meet and confer in good faith to determine the necessary adjustments during any such pause. The Court reiterates that this responsibility remains ongoing and mutual. Resorting to the Court for answers that should first be addressed collaboratively under the Agreement only undermines its purpose." (Dkt. 991 at 55)

**The Court further clarified:**

"The invocation of Section 8.2 does not excuse the City from its ongoing responsibilities—particularly with respect to accurate reporting and verification of beds. The pause provision is not a blanket exemption from compliance." (Dkt. 991 at 55)

**The City is required to:**
- Declare an emergency
- Meet-and-confer with Plaintiffs

While the City referenced Section 8.2 in its ex parte application for a stay (Dkt. 1054), citing wildfires, civil unrest, and a fiscal emergency, the October 15, 2025 Quarterly Report does not indicate that Section 8.2 has been formally invoked. No record of a meet-and-confer or proposed amendments has been shared with the Special Master or the Court.

**Please confirm for the record:**
- What date the City invoked Section 8.2
- Whether the City and Plaintiffs have met and conferred as required
- What adjustments, if any, are being proposed

Thank you for your attention to these matters. I look forward to your response by **November 6, 2025**.

Respectfully,
Michele Martinez
Special Master

Exhibit A