GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978.7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., | CASE NO. 2:20-cv-02291 DOC (KES) |
| Plaintiffs, | Honorable David O. Carter, United States District Judge |
| v. | **DEFENDANT CITY OF LOS ANGELES'S REPLY IN SUPPORT OF EX PARTE APPLICATION FOR STAY OF ORDER APPOINTING DANIEL GARRIE AS MONITOR PENDING APPEAL** |
| CITY OF LOS ANGELES, a Municipal entity, et al., | |
| Defendant. | |
| | Action Filed:     March 10, 2020 |

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 2

    I.    The City is likely to succeed in persuading the Ninth Circuit to reverse or vacate the order appointing Mr. Garrie as the monitor. ............. 2

    II.   The City will face irreparable harm without a stay pending appeal. ......... 6

    III.  A stay is in the public interest and would not harm the Alliance. ............. 7

CONCLUSION .......................................................................................................... 9

Gibson, Dunn & Crutcher LLP

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ariz. Dream Act Coal. v. Brewer,*
  757 F.3d 1053 (9th Cir. 2014) ...................................................................................... 6

*Ashker v. Newsom,*
  968 F.3d 939 (9th Cir. 2020) ....................................................................................... 2

*City of Grants Pass v. Johnson,*
  603 U.S. 520 (2024) ...................................................................................................... 5

*English v. McFarland,*
  285 F.2d 267 (D.C. Cir. 1960) ..................................................................................... 3

*Gilliam v. Nevada Power Co.,*
  488 F.3d 1189 (9th Cir. 2007) ..................................................................................... 3

*Immigrant Defs. Law Cntr. v. Noem,*
  2025 WL 2017247 (9th Cir. July 18, 2025) ............................................................... 8

*PlayMedia Sys., Inc. v. Am. Online, Inc.,*
  171 F. Supp. 2d 1094 (C.D. Cal. 2001) ...................................................................... 2

*Sass v. Hank,*
  108 Cal. App. 2d 207 (1951) ....................................................................................... 2

*United States v. Baltimore Police Department,*
  282 F. Supp. 3d 897 (D. Md. 2017) ........................................................................ 3, 5

*Young v. Pierce,*
  822 F.2d 1368 (5th Cir. 1987) ..................................................................................... 3

Gibson, Dunn & Crutcher LLP

DEFENDANT'S REPLY IN SUPPORT OF EX PARTE APPLICATION
FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

**INTRODUCTION**

The Court should stay its order appointing Daniel Garrie as the monitor pending appeal because the City is likely to prevail on the merits and, absent a stay, the City will suffer irreparable harm during the pendency of the appeal.

The merits of the City's appeal are straightforward. Section 7.2 of the Settlement Agreement requires the appointment of a "mutually agreed-upon" monitor, Dkt. 429-1 § 7.2, but the City never agreed to the appointment of Mr. Garrie. The Alliance defends the appointment under Section 24 of the Agreement, but that's just a basic dispute-resolution provision, not a license for the Court to re-write the plain text of other provisions, including Section 7.2's "mutually agreed-upon" requirement. The Court itself recognized as much at the September hearing, acknowledging that it couldn't appoint a monitor without approval from the City Council. But when approval for Mr. Garrie wasn't forthcoming from the City Council, the Court appointed Mr. Garrie anyway. That order conflicts with the plain text of Section 7.2. The Court's order is also likely to be reversed because it empowered Mr. Garrie, an unelected third party, to direct an elected official, City Controller Kenneth Mejia. That unprecedented ruling is yet another reason the City is likely to prevail on appeal.

The appointment of Mr. Garrie will also cause the City irreparable harm, in the form of the loss of a substantial amount of taxpayer money that it will likely owe to Mr. Garrie if he continues his work, as well as a disruption of democratic norms given the Court's subordination of Controller Mejia to Mr. Garrie. The Alliance claims that Mr. Garrie will not direct Controller Mejia, but the Court order expressly states that Controller Mejia is to provide support "per Daniel Garrie's discretion." Dkt. 1048 at 4. The Alliance also claims it will be harmed unless Mr. Garrie continues with his work, but it never explains why it needs *him* to be the monitor, as to the other choices that actually comply with Section 7.2.

The Court should stay its order appointing Mr. Garrie as the monitor pending the

1

DEFENDANT'S REPLY IN SUPPORT OF EX PARTE APPLICATION
FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

resolution of the City's appeal from that order.  At the very least, the Court should temporarily stay its order until the Ninth Circuit has had an opportunity to assess for itself whether the order should be stayed pending appeal.

## ARGUMENT

### I.    The City is likely to succeed in persuading the Ninth Circuit to reverse or vacate the order appointing Mr. Garrie as the monitor.

The City is likely to prevail on appeal because Section 7.2 of the Settlement Agreement requires the appointment of "a mutually agreed-upon" monitor, Dkt. 429-1 § 7.2, and the City expressly objected to Mr. Garrie's appointment because of "his unduly expansive and overly broad proposed scope of work, his unnecessarily large and expensive proposed team, and his refusal to provide a budget," Dkt. 1045 at 1.  The fact that Mr. Garrie's appointment contravenes the express terms of the Agreement should be the end of the issue.  The Alliance's contrary arguments are premised on a faulty interpretation of the Agreement and a flawed account of the proceedings related to appointment of the monitor.

**1.**  The Alliance claims that Section 24 of the Settlement Agreement vests the Court with dispute-resolution powers broad enough to appoint "a mutually agreed-upon" monitor whom the City never approved.  Dkt. 1055 at 2.  The City agrees that "first step in contract interpretation is to look at the 'plain meaning' of the contract language." Dkt. 1055 at 2 (quoting *PlayMedia Sys., Inc. v. Am. Online, Inc.*, 171 F. Supp. 2d 1094, 1114–25 (C.D. Cal. 2001)).  But nothing in the plain language of Section 24—which allows parties to submit matters to the Court "[i]n the event that the Parties are unable to resolve [a] dispute"—vests the Court with authority to *rewrite* the Agreement and Section 7.2's "mutually agreed-upon" requirement.  Dkt. 429-1 § 24.

All Section 24 does is permit the Court to interpret the Agreement in the event of a dispute among the parties, not override its plain text.  *See, e.g.*, *Sass v. Hank*, 108 Cal. App. 2d 207, 215 (1951) (courts cannot "make a new contract or to rewrite or alter by construction what has been agreed to by the contracting parties"); *Ashker v. Newsom*,

2

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

968 F.3d 939, 944 (9th Cir. 2020) ("'[C]ourts are not empowered under the guise of construction or explanation to depart from the plain meaning of the writing and insert a term or limitation not found therein.'"); *Gilliam v. Nevada Power Co.*, 488 F.3d 1189, 1194 (9th Cir. 2007). The Court recognized as much when it reasoned that "unilaterally" appointing a monitor in the event of "a stalemate" was "against 7.2." Dkt. 1034 at 13:14–20. The Court's prior view was correct—the power to resolve disputes over the Agreement does not permit the Court to alter the plain language of the Agreement and the requirements of Section 7.2.

Courts appointing monitors pursuant to an agreement between parties consistently acknowledge that appointments must be made according to those agreements. For example, in *United States v. Baltimore Police Department*, 282 F. Supp. 3d 897 (D. Md. 2017), the parties assigned themselves "primary responsibility for evaluating the monitor candidates and selecting a proposed candidate, but assign[ed] the [c]ourt ultimate responsibility for appointing a fully qualified monitor." *Id.* at 899. The court recognized that it could do no more than "decide whether the parties' jointly proposed monitor candidate was selected in accordance with the terms of the Consent Decree"— no more and no less than what the agreement provided. *Id.* at 901–02. Similarly, in *Young v. Pierce*, 822 F.2d 1368 (5th Cir. 1987), the Fifth Circuit remanded the case to the district court to consider whether its order appointing a monitor was acceptable in light of a settlement the parties reached after that order's issuance. *Id.* at 1375. And in *English v. McFarland*, 285 F.2d 267 (D.C. Cir. 1960), the D.C. Circuit held that the trial court could not appoint a monitor to which one party "object[ed] on reasonable grounds" when the terms of the agreement "clearly provide[d]" that monitors should be "jointly nominated by the plaintiffs and defendants." *Id.* at 268. Here, too, there is no basis for disregarding the Agreement's unambiguous requirement that any monitor be "mutually agreed-upon."

**2.** The Alliance also rests its argument on an inaccurate retelling of the events preceding the Court's appointment of Mr. Garrie. According to the Alliance, the Court

had the power to choose Mr. Garrie because the parties were hopelessly deadlocked between two candidates, Mr. Garrie and former City Controller Ron Galperin, and the Court had to pick one of them. Dkt. 1055 at 2–3. That's wrong, as the key facts show:

- On June 24, the Court ordered the parties to select a third-party monitor by September 12. Dkt. 991 at 57.

- On August 7 and August 22, the parties met and conferred regarding the selection of a monitor. Dkts. 1054-8, 1054-9.

- On September 12, the parties "jointly propose[d]" that either Mr. Galperin or McKinsey & Company serve as monitor. Dkt. 1033. The Alliance "believe[d] that the appointed monitor w[ould] need to be assisted by a team" with technical expertise, while "[t]he City believe[d] it [wa]s premature to decide whether such a team w[ould] be necessary." *Id.*

- On September 16, the Court held a hearing regarding monitor selection, during which the Court suggested that Mr. Galperin lacked necessary "technical expertise," and was "uncomfortable" with McKinsey because of its unrelated work with an opioid manufacturer. Dkt. 1034 at 9:7–15, 10:25–11:1.

- The Court understood that Section 7.2 did not permit it to "unilaterally impose [its] will or . . . choice" upon the parties. *Id.* at 10:5–7; *see also, e.g.*, *id.* at 13:14–18, 15:8–9, 33:5–7.

- Nevertheless, the Court proposed Mr. Garrie instead. *Id.* at 13:2–14:14. The City said it would seek City Council approval for the appointment of Mr. Garrie and Mr. Galperin to serve as monitors. *Id.* at 85:17–20. The Court understood that the City Council might "reject" that proposal. *Id.* at 7:3–17.

- After the City Council did not take action on that proposal, and after the parties further met and conferred, the parties sought the Court's assistance in identifying an appropriate monitor on October 10, with the City making clear that it objected to the appointment of Mr. Garrie as the monitor and proposed instead seeking City Council approval for having Mr. Galperin and City

Gibson, Dunn & Crutcher LLP

4

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

Controller Mejia serve as the monitors. Dkt. 1045.

The City expected that the Court would get the efforts to select a mutually agreed-upon in accordance with Section 7.2 monitor back on track, perhaps by facilitating additional conversations about other candidates with the parties or by adopting the City's proposal to seek City Council approval of Mr. Galperin and City Controller Mejia. But at no point did the City expect that seeking the Court's assistance would result in Mr. Garrie's appointment irrespective of City Council approval, particularly in light of the Court's numerous representations at the September 16 hearing regarding its understanding of Section 7.2 and the necessity of City Council approval. In light of the history here, the Alliance cannot seriously suggest that Mr. Garrie's appointment was an inevitable consequence of the parties' seeking the Court's assistance to resolve the dispute over the selection of the monitor, much less somehow an agreement to allow the Court to dispense with Section 7.2's "mutually agreed-upon" requirement.

**3.** The Alliance does not even address the City's second, independent basis for likely success on appeal. A court enforcing a settlement agreement is "*not* granted the broad authority given legislatures and elected executives to set policy," nor is it "free to frame policy or adopt reform measures that the Court (or the public) might think is best under the circumstances." *Baltimore Police Dep't*, 282 F. Supp. 3d at 901. And courts cannot "begin to 'match' the collective wisdom the American people possess in deciding 'how best to handle' a pressing social question like homelessness." *City of Grants Pass v. Johnson*, 603 U.S. 520, 560 (2024). This Court's order upsets these fundamental democratic principles, placing Controller Mejia—an elected official—under Mr. Garrie's control "per [his] discretion." Dkt. 1048 at 4. As the Court previously recognized, it is the citizens of Los Angeles—not courts—that are responsible for shaping homelessness policy through elected representatives. Dkt. 991 at 60. The order also infringes on democratic norms by effectively commandeering the functions of the City Controller. The citizens of Los Angeles elected Controller Mejia to carry out the functions of that office—not take orders from an unelected monitor. This affront to

democratic norms is an independent basis for reversal on appeal.

## II.    The City will face irreparable harm without a stay pending appeal.

The order appointing Mr. Garrie as the monitor will irreparably harm the City by causing it to incur substantial expenses that the City Council has not approved during fiscal crisis and by taking away core policymaking discretion from the City's elected officials.  The City has explained it will suffer three distinct irreparable harms without a stay:  (1) the irreparable loss of funds paid to Mr. Garrie, and at a time when the City is under a declared fiscal emergency; (2) the disruption of democratic norms because the district court has ordered the expenditure of taxpayer funds without approval from the City Council, and because an elected City official has now been made the subordinate of an unelected monitor; and (3) the City's loss of the benefit of the bargain it struck, which permits it to have a say in the appointment of any data monitor.  Dkt. 1054 at 7–11.  The Alliance does not contest that these are harms "for which there is no adequate legal remedy," meaning they are irreparable.  *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014).

Ignoring most of the harms the City identified, the Alliance argues that the City will not be harmed by a stay because Controller Mejia will simply be facilitating data access. Dkt. 1055 at 3–4.  That argument cannot be reconciled with the language in the Court's order requiring Controller Mejia to "support Mr. Garrie, without further cost to the City . . . *per Daniel Garrie's discretion*."  Dkt. 1048 at 4 (emphasis added).  Mr. Garrie hasn't provided a budget for his services (Dkt. 1045-1), has unfettered discretion to commandeer the City Controller, and the Court has not defined the scope of his work (Dkt. 1048 at 6).  There is no check ensuring that Mr. Mejia is "simply 'facilitating data access and coordination' with Mr. Garrie," as the Alliance insists. Dkt. 1055 at 4.

The Alliance also argues that absent a stay, the City would still get the "benefit" of Mr. Garrie's work at a "discounted rate" even if it turns out he should never have been appointed in the first place.  Dkt. 1055 at 4.  The Alliance's argument turns on the fact

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

that Mr. Garrie's hourly rate ($750) is slightly lower than Mr. Galperin's rate ($800). But those rates do not tell the whole story.  Mr. Garrie is assembling an eight-person team and has refused to even provide a budget for his services.  Dkts. 1045 at 1; 1054-10.  He has already sent the City a list of over 700 questions and demanded to interview various City personnel.  Dkt. 1054-5.  And there will be additional expense to the City because the Court has directed Special Master Martinez to play a "supervisory" role over the monitor's work.  Dkt. 1050 at 1.  Mr. Galperin, in contrast, proposed a limit on his total hours, which he could exceed only with express written consent of the City.  Dkt. 1042 at 13–14.  Mr. Garrie has also thus far ignored the City's requests for him to provide a weekly accrual of the time spent and fees incurred by him and his staff.  Scolnick Decl., Ex. A.

Finally, the Alliance is wrong that the City is somehow at fault for creating the need for ex parte relief.  Dkt. 1055 at 5.  The City met the timeline for the monitor appointment set out by the Court.  The Court's June 24 order required the parties to meet and confer about potential monitors by August 22, to select a monitor by September 12, and to attend court hearings regarding each quarterly status report beginning on November 12.  Dkt. 991 at 57.  The parties did just that.  They met and conferred on August 7 and August 22.  Dkts. 1054-8, 1054-9.  On September 12, the parties filed a joint submission proposing that former City Controller Ron Galperin or McKinsey & Company serve as the monitor.  Dkt. 1033 at 1.  The Court declined to appoint either candidate and suggested Mr. Garrie instead, while also acknowledging that any agreed-upon monitor would require City Council approval, which would "take[] some time." Dkt. 1034 at 7:6.  Then, less than a month later, when it became apparent the City Council would not approve Mr. Garrie, the Court appointed him anyway.  Dkt. 1048 at 4.  The City is not responsible for any delay in the selection of a monitor.

### III.    A stay is in the public interest and would not harm the Alliance.

Because the City has established a likelihood of success and irreparable harm, the Court should consider whether a stay is in the public interest and would harm the

Gibson, Dunn & Crutcher LLP

DEFENDANT'S EX PARTE APPLICATION FOR STAY PENDING APPEAL
2:20-cv-02291 DOC (KES)

Alliance. *Immigrant Defs. Law Cntr. v. Noem*, 2025 WL 2017247, at *4 (9th Cir. July 18, 2025). Both of these factors also support the requested stay.

The irreparable harms to the City are also irreparable harms to the public. Dkt. 1054 at 11. All residents of the City of Los Angeles stand to lose if the City's scarce funds are spent at the sole discretion of an unelected monitor who was not entrusted with that power by the City Council.

The Alliance claims it would be harmed by a stay of the Court's order, Dkt. 1055 at 5, but any supposed harm could easily be avoided if the parties settled on a different and mutually acceptable monitor. The Alliance already agreed that Mr. Galperin would be a suitable monitor without any co-monitor, Dkt. 1033, and has also suggested that Controller Mejia could serve as a co-monitor, Dkt. 1045 at 2. And the City has proposed seeking City Council approval to have Mr. Galperin and Controller Mejia serve as the monitors. Dkt. 1045 at 1. The City has offered several other candidates for the monitor role, including the RAND Corporation, teams at USC and UCLA, and Ernst & Young. Dkt. 1034 at 22–23. There are doubtless others who likewise have the technical proficiency to handle the work. The Alliance has not come up with any reason why urgent action by *Mr. Garrie* specifically is needed.

Moreover, the City's primary obligations are due in 2026 and 2027, and are paused under Section 8.2 of the Agreement due to this year's wildfires, large-scale civil disturbances, and fiscal emergency. Dkt. 1054 at 12. Although the Agreement expressly pauses the City's primary obligations in the event of any of those three events and requires the parties to confer over modifications to the Agreement, the Alliance accuses the City of invoking Section 8.2 purely for the sake of delay. Dkt. 1055 at 5. This accusation ignores the reality that the City is in a fiscal emergency precipitated in part by this year's unprecedented wildfires and large-scale civil disturbances. Dkt. 1054-2 at 1–2; Dkt. 1054-4. Notwithstanding that fiscal challenge, the City remains committed to solving the homeless crisis. In fact, this year's budget committed over $300 million of the City's general fund toward homelessness despite the fiscal emergency. Dkt. 955

at 295:13–21.  But the City also faces a long list of complicated challenges beyond homelessness and has limited resources.  That's why it agreed to meet its obligations by specific dates in 2026 and 2027, and ensured that its obligations would be paused if the events listed in Section 8.2 occurred—and three such events have occurred in the past year.  The Alliance trivializes Section 8.2 because it finds that provision inconvenient, but the pause and the need to modify the City's obligations are written in black and white in an Agreement that the Alliance has otherwise been keen for months to enforce as strictly as possible.

## CONCLUSION

The Court should stay its order appointing Mr. Garrie as the monitor pending the City's appeal from that order.  At the very least, the Court should temporarily stay its order until the Ninth Circuit has had an opportunity to assess for itself whether the order should be stayed pending appeal.

DATED: November 7, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theane Evangelis*
Theane Evangelis

GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS McRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
ANGELIQUE KAOUNIS, SBN 209833
  akaounis@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978.7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*