UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 221
Los Angeles, California 90017
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
mumhofer@umklaw.com
emitchell@umklaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, *et al.*, <br><br> Defendants. | Case No. 2:20-CV-02291-DOC-KES <br><br> Assigned to Judge David O. Carter <br><br> **PLAINTIFF'S REQUEST FOR COURT RESOLUTION OF DISPUTE** <br><br> Before:  Hon. David O. Carter <br> Courtroom: 10A |

*PLAINTIFF'S REQUEST FOR COURT RESOLUTION AND OSC RE CONTEMPT*

Plaintiff LA Alliance for Human Rights ("LA Alliance") respectfully submits this request[1] for court resolution and for the Court to include issues raised herein in the Court's Order to Show Cause re: Contempt, or issue an additional Order to Show Cause re Contempt, pursuant to Section 24 of the Settlement Agreement, which provides:

> If a dispute arises between the Plaintiffs and the City regarding the interpretation, performance, or enforcement of this Agreement, the Party raising the dispute shall provide written notice of the dispute to all other Parties, and all Parties agree to meet and confer within a reasonable time in a good faith effort to resolve any dispute. In the event that the Parties are unable to resolve the dispute within a reasonable time after the meeting, Plaintiffs or the city may, pursuant to the Order, submit the matter to the Court for review and decision.

(Am. Fully Executed Stipulated Order of Dismissal as to Def. City of Los Angeles, Ex. 1, Settlement Agreement ("Settlement Agreement") § 24, Dkt. No. 429-1.)

Defendant City is in violation both of Sections 7.1 and 24 of the Settlement Agreement. It is undisputed Defendant has never reported metrics as required under Section 7.1 of the Settlement Agreement. (See City Status Reports, Oct. 14, 2020, Dkt. No. 483; Jan. 17, 2023, Dkt. No. 516-1; Apr. 21, 2023, Dkt. No. 539-1; July 17, 2023, Dkt. No. 598-1; Oct. 16, 2023, Dkt. No. 652-1; Jan. 16, 2024, Dkt. 660-1; Apr. 15, 2024, Dkt. No. 728-1; July 15, 2024, Dkt. No. 757-1; Oct. 18, 2024, Dkt. No. 797-1; Jan. 22, 2025, Dkt. No. 858-1; Apr. 15, 2025, Dkt. No. 892-1; July 15, 2025, Dkt. No. 1011-1; Oct. 15, 2025, Dkt. No. 1051-1.) And Plaintiff LA Alliance has been raising

---

[1] Because Section 24 specifically provides for resolution by the Court only after the parties have met and conferred, the meet-and-confer requirement under Local Rule 7-3 has been met as well. In this case, Plaintiff first requested to meet and confer about this issue on July 25, 2025, and actually spoke with the City on August 22, 2025.

1

*PLAINTIFF'S REQUEST FOR COURT RESOLUTION AND OSC RE CONTEMPT*

the City's violations of Section 7.1 since July 25, 2025 but the City has not met and conferred in good faith and within a reasonable time as required by Section 24.

The City's slow-rolling and obstruction of the LA Alliance's efforts to enforce the Settlement Agreement is echoed in both Special Master Martinez's and Data Monitor Daniel Garrie's experiences with the City over the same period of time. (See Status Report of Monitor Daniel B. Garrie for October 2025 ("Monitor Report") at 6:21-22, Dkt. No. 1063 (describing incomplete or evasive answers and communications and noting "the City, through its counsel, has delayed the Monitor's execution of his court ordered responsibilities."); Special Master's Report at 3, 5, & 6, Dkt. No.1065 (explaining the City's responses to basic inquiries from the Special Master "arrived a full week after the Special Master's inquiry and failed to provide the verified data, milestone documentation, or validation necessary for oversight."; "The City has had several months since the June 2025 order to coordinate with LAHSA and validate its figures. The absence of verified data and documentation constitutes a substantive failure to comply."; "The Special Master's questions remain unanswered, the oversight process remains stalled.")

Plaintiff respectfully requests the Court (i) resolve this dispute; (ii) issue an Order to Show Cause re: Contempt for Defendant that precisely defines (and puts the City on indisputable notice of) its several recent Settlement Agreement violations; (iii) provide the City with an opportunity to be heard concerning these violations; and (iv) issue an order finding the City in contempt of this Court's orders and sanctioning the City for its conduct.

A. **Defendant City Is in Violation of Sections 7.1 and 24 of the Settlement Agreement.**

Section 7.1 of the Settlement Agreement provides:

The City will provide quarterly status updates to the Court regarding its progress with this Agreement, including the number of housing or shelter opportunities created or otherwise obtained, **the number of beds or**

2

**opportunities offered**, and **the number of beds or opportunities currently available in each Council District**. The City will work with LAHSA to include in the quarterly status updates, to the extent possible: **the number of PEH engaged**, **the number of PEH who have accepted offers of shelter or housing**, **the number of PEH who have rejected offers of shelter or housing and why offers were rejected**, and the **number of encampments in each Council District**.

(Settlement Agreement § 7.1, Dkt. No. 429-1) (emphasis added).)

Despite this clear mandate in the Agreement, the City has <u>never reported</u> any of the following metrics:

    i.    The number of beds/opportunities <u>offered</u> (as opposed to "obtained");

    ii.    The number of beds or opportunities currently available in each Council District;

    iii.    The number of PEH engaged;

    iv.    The number of PEH who have accepted offers of shelter or housing;

    v.    The number of PEH who have rejected offers of shelter or housing and why offers were rejected; and

    vi.    The number of encampments in each Council District.

On July 25, 2025, counsel for LA Alliance emailed counsel for Defendant City to meet and confer regarding multiple issues of noncompliance, including failure to properly report metrics under Section 7.1. (Declaration of Elizabeth A. Mitchell ("Mitchell Decl.") Ex. A, Email from K. Scolnick.)[2] **The City didn't respond for 17 days**. (Mitchell Decl. ¶ 2.)

On August 11, rather than responding or agreeing to discuss the issues in person, counsel for the City asked for additional details about Plaintiff's position, which Plaintiff then sent on August 14. (Ex B, at 5–6, Email from E. Mitchell.)  The City

---

[2] All exhibits referenced, are attached to the Declaration of Elizabeth A. Mitchell via concurrently with this request.

3

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

then canceled a meet-and-confer scheduled for August 15, and rescheduled for August 22. (Id. at 3.) During the August 22, 2025 meet and confer, the City admitted that it had yet to contact LAHSA to obtain any data, stating merely that it would "go back to them and see if they can get that." (Ex. C, Meet & Confer Tr. 69:2–6, Aug. 22, 2025.) However the City has an affirmative obligation to report items (i) and (ii) independent of LAHSA, pursuant to the clear terms of the Agreement, and has an affirmative obligation to "work with LAHSA" to provide the remaining metrics. (Settlement Agreement § 7.1.)

On September 2, 2025, having heard nothing from the City, Plaintiff followed emailed again asking about the status of reporting additional information under Section 7.1. (Ex. B, at 1.) **The City never responded.** (Mitchell Decl. ¶ 3.)

Plaintiff sent another email on October 6, 2025 asking for an update. (Ex. D, Email from E. Mitchell, Oct. 6, 2025.)  The City responded only that they "are looking into your questions and hope to respond to you later this week." (Ex. E, Email from B. Hamburger, Oct. 7, 2025.) **The City never responded.** (Mitchell Decl. ¶ 6.)

The City filed its quarterly report on October 15, 2025, and not only did it not include any of the information required under 7.1 as discussed *supra*, it also did not include any information regarding "PEH served," a metric which had been included in City reports since the inception. (Ex. F, City Status Report Ex. A, Jan. 17, 2023, Dkt. No. 516-1.)  On October 20, Plaintiffs' counsel emailed City counsel asking 1) why the "PEH Served" column was blank and why the City "has not been able to collect and verify the information in the time provided to complete this Report," 2) what "changed from the way the City is collecting and verifying PEH served historically versus this last report?" and 3) why the City is still missing required information as required by 7.1 and "what steps [the City] has taken to get the information from LAHSA if needed?" (Ex. G, Email from E. Mitchell.)  **The City yet again did not respond.** (Mitchell Decl. ¶ 8.)

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

Plaintiff's counsel sent another email on October 28, 2025: "Good morning – following up on this." (Ex. H, Email from E. Mitchell.) **The City yet again did not respond.** (Mitchell Decl. ¶ 9.)

On October 30, 2025, Plaintiff's counsel sent another email: "Sending my third email on this in ten days. I assume we will be discussing these issues on today's call[3]—otherwise it appears the City is refusing to meet and confer in good faith as required by the agreement." (Ex. I, Email from E. Mitchell.) At the meet and confer, which took place via Zoom and was stenographically recorded, the City's could only again defer "if you can give me a few days, like next week, I will tell you what's going on and I will get some information for you." (Ex. J, Meet & Confer Tr. 25:3–8, Oct. 30, 2025). On Tuesday, November 4, the City emailed its **non-response**:

> The City has been working to verify the PEH served data, which it receives from LAHSA and other departments/agencies. Representatives from the City Administrative Office are scheduled to meet with LAHSA this week to discuss the Section 7.1 data and PEH served data that the City has requested from LAHSA. The City will provide verified PEH served numbers once the City has received the data it needs from LAHSA and has reviewed that data.

(Ex. K, Email from K. Scolnick.)

The City's non-response to Plaintiff mirrors the intentionally opaque and taciturn response it gave to the Special Master on November 7 about the same issues:

> **Section 7.1 – Reporting on PEH Served**
>
> **Whether the City has requested this data from LAHSA**
>
> Yes, the City has requested this data. Representatives from the City Administrative Office met with LAHSA this week.

---

[3] The City had separately requested a third meet-and-confer regarding its claims to emergency under Section 8.2 which was scheduled and did occur on October 30, 2025.

5

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

**When the verified PEH served data will be submitted**

> Verified PEH served data will be submitted once the City has received the data it needs to verify those numbers and has verified that data.

(Special Masters Report Ex. B, Letter from Gibson Dunn at 1, Nov. 6, 2025, Dkt. No. 1065.)

The City is clearly in violation of Section 7.1. Nearly four months after Plaintiff's initial email on the subject, the City not only has <u>not</u> included the mandatory information in its latest status report, but it's also actually included <u>less</u> information than ever before and refuses to explain the reason therefore either to Plaintiff or to the Special Master.

As the recitation of facts demonstrates, the City is also in violation of Section 24 for failing to "meet and confer within a reasonable period of time" and do so "in good faith." (Settlement Agreement § 24, Dkt. No. 429-1.) Arranging for over three months to elapse between inquiry and a "response"—that actually provided no response at all and doesn't nearly come close to addressing the plethora of questions posed—is not a "reasonable period of time" nor is it "good faith." <u>See, e.g.</u>, <u>Placentia Fire Fighters v. City of Placentia</u>, 57 Cal. App. 3d 9, 25–26 & n.1 (1976) ("In general, good faith is a subjective attitude and requires a genuine desire to reach agreement. The parties must make a serious attempt to resolve differences and reach a common ground. The effort required is inconsistent with a 'predetermined resolve not to budge from an initial position.'") (citations omitted). Here Plaintiff sent no less than eight emails over a three-month period, often with no response at all from the City. During two separate virtual meet-and-confers, the City had no substantive response other than promises to meet and talk to other people and respond at a later time. There has been no "serious attempt" by the City to resolve these issues or "reach a common ground."  It does not take three months have a meeting and convey a proposed solution or response. The City has refused to engage seriously on this issue and is instead delaying, obfuscating,

and avoiding compliance.  This pattern has repeated itself with both the Special Master and the Data Monitor

Because the City is plainly in violation of Section 7.1—and has been for over three years—and because the City refuses to meet and confer in good faith and within a reasonable time—**Plaintiff respectfully requests that the Court** resolve these issues and **issue an Order to Show Cause re: Contempt for the City's violations of Section 7.1 and 24** and in addition**:**

1)      Order the City to

    a.      come into compliance with Section 7.1 immediately by reporting on the missing categories in section (3) beginning no later than the next status report;

    b.      Respond to all LA Alliance, Special Master's, or the Data Monitor's inquiries within 24 hours;

    c.      Meet and confer in good faith with Plaintiff, and meet with the Special Master or Data Monitor upon request within three (3) business days of request; and

    d.      Provide all data requested by the Special Master, Data Monitor, or Plaintiffs within seven (7) days.

2)      Provide to the Court and parties within seven days all measures taken to obtain the verified PEH data and the expected timeline for obtaining and reporting the following data:

    a.      The number of beds/opportunities <u>offered</u> (as opposed to "obtained");

    b.      The number of beds or opportunities currently available in each Council District;

    c.      The number of PEH engaged;

    d.      The number of PEH who have accepted offers of shelter or housing;

    e.      The number of PEH who have rejected offers of shelter or housing and why offers were rejected; and

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

f.      The numbers of encampments in each Council District.

Upon finding contempt, Plaintiff respectfully requests:

1)      The Court fine the City of Los Angeles a determined amount per day of non-compliance;

2)      Extend the Agreement for the concomitant time the City is in noncompliance; and

3)      Order City to pay plaintiff's attorney's fees and costs in an amount according to proof of damages.

**B.      Request for Procedural Protections**

The LA Alliance is not alone in experiencing the City's tactical delay, non-responsiveness, and non-cooperation—the City has played the same game with the Special Master and Data Monitor, as detailed in their reports. (Monitor Report, Dkt. No. 1063 and Special Master's Report, Dkt. No. 1065.) The inescapable inference from the evidence and experience of these three different sources is that the City has decided to slow roll, frustrate, and generally undermine the Court's supervision and enforcement of the Settlement Agreement the City voluntarily entered into.

The City's conduct is also consistent with observations made by this Court after the seven-day evidentiary hearing held earlier this year:

The pattern is clear: documentation is withheld until exposure is imminent, public accountability is resisted until judicially mandated, and the truth of reported progress remains clouded by evasive recordkeeping. As the Court observed, these failures have undermined public trust and judicial trust alike. (Order Granting in Part & Denying in Part Pl.'s Mots. for Settlement Compliance ("Compliance Order") 39:9–12, June 24, 2025, Dkt. No. 991.)

. . .

8

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

When errors are found in the data reported, the City has repeatedly ignored the errors or attacked the messenger instead of engaging with and correcting the issues. This pattern has persisted for years and is untenable if the City is to succeed in meeting its obligations by 2027. The City's inability or unwillingness to verify its reporting or even explain how it counts and reports solutions was on stark display during the evidentiary hearing. At no point during the costly and time-intensive seven-day hearing did the City attempt to substantiate its reporting which had been called into question by Special Master Martinez, in addition to other witnesses, and which A&M had not been able to replicate. (Id. at 48:10–17.)

. . .

In short, the City has been on notice for years that its data collection and reporting is woefully insufficient but continues to ignore its responsibility to report accurate numbers to the Court. (Id. at 49:13–15.)

. . .

The inability to verify the City's reporting is a serious roadblock to compliance. In addition to the recent evidentiary hearing, confusion over and inconsistencies within the reporting have led to dozens of informal conferences, mediation sessions, and hearings throughout this litigation. (Id. at 49:16–19.)

. . .

Finally, the City flouted its reporting responsibilities by failing to substantiate its reporting and failing to provide accurate and comprehensive data when requested by the Court, Special Master Martinez, the Parties, and A&M.  (Id. at 56:10–12.)

9

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

On November 7, 2025, the Court issued an Order to Show Cause re: Contempt for the City's efforts in dodging accountability by failing to cooperate with the Special Master and Data Monitor and failing to provide the requested data verifying housing or shelter opportunities and encampment reductions consistent with the Court's orders on those issues.  (Order to Show Cause in re Contempt – City of Los Angeles, Dkt. No. 1066; see also Special Master's Report at 4, Dkt. No. 1065) (Special Master report finding that the City has provided "[n]o verified PEH data by Council District[,] [n]o documentation linking shelter/housing offers to encampment reductions[,] [n]o milestone validation materials[,] [and] [n]o timeline for submission of missing data.")

In the Ninth Circuit, contempt can be either criminal or civil. "The distinction between the two forms of contempt lies in the intended effects of the court's punishment. Punishment for civil contempt is intended to be either coercive or compensatory, whereas the purpose of criminal contempt punishment is punitive." United States v. Rylander, 714 F.2d 996, 1001 (9th Cir. 1983); see also Kelly v. Wengler, 822 F.3d 1085, 1097 (9th Cir. 2016) ("Whether contempt is civil or criminal turns on the nature of the sanction or sanctions involved. '[A] sanction generally is civil if it coerces compliance with a court order or is a remedial sanction meant to compensate the complainant for actual losses. A criminal sanction, in contrast, generally seeks to punish a "completed act of disobedience."'") (citations omitted).  If the contempt is criminal in nature, and the contempt occurred outside of the courtroom, the "individual charged . . . is entitled to the right to be advised of the charges, the right to a disinterested prosecutor, the right to assistance of counsel, a presumption of innocence, proof beyond a reasonable doubt, the privilege against self-incrimination, the right to cross-exam, the opportunity to present a defense and call witnesses, and the right to a jury trial if the fine or sentence imposed will be serious." F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc., 244 F.3d 1128, 1139 (9th Cir. 2001) (citing Int'l Union, United Mine Workers v Bagwell, 512 U.S. 821, 827–28 (1994)).  On the

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

other hand, if the contempt is civil in nature, "fewer procedural protections" are required and civil contempt "may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." United States v. Ayres, 166 F.3d 991, 995 (9th Cir. 1999) (citing Bagwell, 512 U.S. at 827, 831). "[T]he party alleging civil contempt must demonstrate by clear and convincing evidence that (1) the contemnor violated a court order, (2) the non-compliance was more than technical or de minimis, and (3) the contemnor's conduct was not the product of a good faith or reasonable interpretation of the violated order." Epic Games, Inc. v. Apple Inc., 781 F. Supp. 3d 943, 989 (N.D. Cal. 2025) (citation omitted). Moreover, in considering an order for contempt, it is appropriate for a court to take into consideration both the context of the case and the spirit of the order "even though its strict letter may not have been disregarded." Id. at 990 (citing Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y, 774 F.3d 935, 949 (9th Cir. 2014)). And "[a] party who has once infringed is allowed less leniency for purposes of injunction enforcement than an innocent party." Epic Games, 781 F. Supp. 3d at 1003 (citation omitted).

It is no secret that the City is attempting not only to avoid accountability but to escape its obligations in the Settlement Agreement entirely: it has hired outside counsel specializing in appellate practice, it has filed two frivolous appeals from non-appealable orders with more on the way, and appears to be playing at lip-service compliance just enough to argue reasonableness while avoiding substantive compliance altogether. And in so doing, it is hoping to goad this Court into side-stepping procedural protections in a manner that will lead to appellate intervention.

The orders this Court has issued have been crystal clear, and the neutrals appointed by this Court have reported only non-compliance by the City with those orders. The City's failure to report metrics as required by Section 7.1 is indisputable, and the City's delay game with Plaintiff has been played openly. That said, the City

*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*

must be given notice and an opportunity to be heard prior to being held in contempt and issued sanctions.  Accordingly, Plaintiff requests:

1) At the hearing on November 12, the court again spelled out in no uncertain terms exactly the ways in which the City has potentially violated both the Court's order approving and incorporating the Settlement Agreement (Am. Not. of Lodging of Fully Executed Stipulation Order of Dismissal as to Def. City of Los Angeles, Dkt. No. 429) and subsequent orders (Order re Pl.'s Mot. re Settlement Agreement Compliance, Mar. 24, 2025, Dkt. No. 874; Compliance Order, Dkt. No. 991; Order Resolving Third-Party Monitor Appointment and Scope of Work, Oct. 14, 2025, Dkt. No. 1048; Order Defining Special Master Duties in Light of Order Resolving Third-Party Monitor Appointment and Scope of Work, Oct. 15, 2025, Dkt. No. 1050), **including for violations Plaintiff has alleged herein**.

2) The Court specify whether the Order to Show Cause is for civil or criminal contempt, and provide appropriate procedural protections therefor;

3) Set an expedited briefing schedule for Defendant City's response to the Order to Show Cause and for Plaintiff's reply with a hearing set two-to-three weeks thereafter.  Due process does not require an evidentiary hearing for civil contempt; however should Defendant City request an evidentiary hearing Plaintiff will gladly participate.

Dated: November 10, 2025          Respectfully submitted,

/s/ Elizabeth A. Mitchell
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

*Attorneys for Plaintiffs*

12
*PLAINTIFF'S REQUEST FOR RESOLUTION AND OSC RE CONTEMPT*