# Exhibit A

Case No. 25-6760

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

LA ALLIANCE FOR HUMAN RIGHTS, a non-profit corporation,

*Plaintiff-Appellee*,

v.

CITY OF LOS ANGELES, a municipal entity,

*Defendants-Appellants*,

Appeal from the United States District Court, for the Central District of California,
Case No. 2:20-cv-02291 DOC (KES)
The Honorable David O. Carter, United States District Judge

## APPELLEE'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Matthew Donald Umhofer (CA SBN 206607)
mumhofer@umklaw.com
Elizabeth A. Mitchell (CA SBN 251139)
elizabeth@umklaw.com
UMHOFER, MITCHELL & KING LLP
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027

November 9, 2025    *Attorneys for Plaintiff-Appellee,*
*LA Alliance for Human Rights*

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ..................................................................................1

II.    RELEVANT BACKGROUND ...............................................................3

III.   ARGUMENT .........................................................................................12

IV.    CONCLUSION ......................................................................................17

CERTIFICATE OF COMPLIANCE ...............................................................19

## TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE(S)**

Bogard v. Wright,
   159 F.3d 1060 (7th Cir. 1998) ...............................................................................16

Carson v. Am. Brands, Inc.,
   450 U.S. 79 (1981).................................................................................................15

Congrejo Invs., LLC v. Mann (In re Bender),
   586 F.3d 1159 (9th Cir. 2009) .............................................................................12

Firestone Tire & Rubber Co. v. Risjord,
   449 U.S. 368 (1981)..............................................................................................12

Fisher v. Tucson Unified Sch. Dist.,
   588 F. App'x 608 (9th Cir. 2014) .................................................................. 15, 16

Flores v. Barr, ("Flores II"),
   934 F.3d 910 (9th Cir. 2019) ............................................................ 2, 13, 14, 17

Flores v. Barr, ("Flores III"),
   977 F.3d 742 (9th Cir. 2020) ...............................................................................14

Gautreaux v. Chi. Hous. Auth.,
   178 F.3d 951 (7th Cir. 1999) ...............................................................................16

In re Gugliuzza,
   852 F.3d 884 (9th Cir. 2017) ...............................................................................12

Klestadt & Winters, LLP v. Cangelosi,
   672 F.3d 809 (9th Cir. 2012) ...............................................................................12

Pimentel & Sons Guitar Makers, Inc. v. Pimentel,
   477 F.3d 1151 (10th Cir. 2007) ...........................................................................16

Thompson v. Enomoto,
   815 F.2d 1323 (9th Cir. 1987) ...................................................................... 15, 16

United States v. El Dorado County, California,
   704 F.3d 1261 (9th Cir. 2013) .............................................................................15

United States v. Orr Water Ditch Co.,
  391 F.3d 1077 (9th Cir. 2004) ............................................................................13

**STATUTES**

28 U.S.C. § 1292(a)(1)..................................................................... <u>passim</u>

28 U.S.C. § 1291 ...................................................................... 1, 12

## I.   <u>INTRODUCTION</u>

Plaintiff-Appellee, LA Alliance for Human Rights ("LA Alliance"), respectfully moves to dismiss Defendant-Appellant the City of Los Angeles's ("the City") appeal for lack of jurisdiction. The City is, once again, attempting to appeal a non-final order. The facts are simple:

- The City entered into a Settlement Agreement which requires, *inter alia*, appointment of a data monitor;

- The parties could not agree on the identity of the monitor;

- The parties jointly submitted the issue to the district court to resolve the disagreement, pursuant to the dispute resolution clause in the Agreement;

- The district court resolved the parties' conflict, as requested, by appointing the monitor both parties originally agreed to.

This does not qualify for immediate review. The City's appeal is obviously interlocutory and obviously improper because there was no final judgment below and no final order from which to appeal. The order involved no new obligations, no sanctions, and no modification of the settlement agreement, and this Court lacks jurisdiction. There is no jurisdiction under Section 1291 because the order appealed is not final. 28 U.S.C. § 1291 ("The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]"). There is no jurisdiction

1

under Section 1292 because the Order did not involve an injunction. 28 U.S.C. §1292(a)(1) (referencing orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions[.]").

Based on the City's stay application filed in the district court related to this appeal, the City will likely try to sway this Court with a histrionic argument about the right of the City to manage its affairs through its elected representatives. But compelling the City to abide by a Settlement Agreement it freely entered into to end litigation is not intruding on the independence of city officials or frustrating the will of the voters—it is the City that is attempting to undermine the rule of law and avoid compliance with a binding agreement its elected leaders approved. Indeed, rewarding the City's position here is likely to lead to more judicial intervention, not less, as a City that defaults on its settlement obligations while wrapping itself in a self-proclaimed mantle of self-determination will be less able to settle cases in the future.

Under these circumstances where "[t]he text of the district court's opinion in this case interpreted the existing Agreement [and] . . . granted enforcement of various provisions of the Agreement" this Court held that a district court's order "did not constitute an interlocutory order modifying an injunction, or refusing to . . . modify an injunction" and "[w]e therefore lack jurisdiction over this claim." Flores v. Barr

2

("Flores II"), 934 F.3d 910, 914-16 (9th Cir. 2019) (cleaned up) (citing 28 U.S.C.

§1292(a)(1)).

The same is true here, and this Court must dismiss the City's appeal.

## II.    **RELEVANT BACKGROUND**

In July 2022, the City knowingly and voluntarily agreed[1] to settle a lawsuit

brought by Plaintiff-Appellee, LA Alliance for Human Rights, which alleged that

the City's decades-long failure to address the homelessness crisis had violated the

United States Constitution and federal and state law. (Ex. 2, Order Approving

Stipulated Dismissal & Proposed Settlement [421], Dkt. No. 445; Ex. 1, Settlement

Agreement, Dkt. No. 421-1.) The resolution of the case was memorialized in a

Settlement Agreement, which was incorporated into a final order under which the

district court agreed to "retain exclusive jurisdiction . . . to enforce the Settlement

Agreement, and to resolve any future disputes regarding interpretation, performance,

---

[1] "This Agreement is an important legal document that has been voluntarily and knowingly executed by the Parties. The Parties, and each of them, specifically represent that, prior to signing this Agreement, (a) they have each been provided a reasonable period of time within which to consider whether to accept this Agreement, (b) they have each carefully read and fully understand all of the provisions of this Agreement, and (c) they are voluntarily, knowingly, and without coercion entering into this Agreement based upon their own judgment. Plaintiffs, and each of them, further specifically represent that, prior to signing this Agreement, they have conferred with counsel of their choice to the extent desired concerning the legal effect of this Agreement, and that the legal effect of this Agreement has been adequately explained to them." (Ex. 1, Settlement Agreement, Ex. 1, Stipulated Order of Dismissal as to Def. City of Los Angeles Only § 17 ("Stipulated Order of Dismissal"), Dkt. No. 421-1.)

or enforcement of the Agreement." (Ex. 1, Stipulated Order of Dismissal at 3:1–4.) Obviously, the City never appealed that order because the City jointly requested it.

The Settlement agreement provided that "the duration of the Agreement shall be five (5) years, during which point the Court shall have continuing jurisdiction to oversee and enforce this Settlement Agreement." (Ex. 1, Settlement Agreement § 2.) As part of the Settlement Agreement, the City agreed to a third-party data monitor:

> The Parties will engage a mutually agreed-upon third party to provide data collection, analysis, comments, and regular public reports on the City's compliance with the terms of this Agreement. The City shall be responsible for paying all fees, if any, or for obtaining grants or other private funding, if needed.

(Id. § 7.2.) Finally, the Settlement Agreement provided for dispute resolution by the district court:

> If a dispute arises between the Plaintiffs and the City regarding the interpretation, performance, or enforcement of this Agreement, the Party raising the dispute shall provide written notice of the dispute to all other Parties, and all Parties agree to meet and confer within a reasonable time in a good faith effort to resolve and dispute. In the event that the Parties are unable to resolve the dispute within a reasonable

4

time after the meeting, Plaintiffs or the City may, pursuant to the Order,

submit the matter to the Court for review and decision.

(Id. § 24.)

Over the next three years, the district court (with the assistance of a Special

Master who was separately provided for in the Agreement) oversaw the Settlement

Agreement, pursuant to the parties' request. The parties could not agree on a data

monitor and therefore none was initially appointed. At multiple points, the LA

Alliance flagged violations by the City of its obligations under the Settlement

Agreement. The district court held hearings, took briefing, and issued orders

interpreting and enforcing the Settlement Agreement as required. The City never

appealed any of these orders of the district court regarding the Settlement Agreement

from May 2022 through June 2025.

In May 2025, the accounting firm Alvarez & Marsal completed an audit and

report[2] that featured numerous findings adverse to the City. (Ex. 4, A&M

Independent Assessment of City-Funded Homelessness Assistance Programs, May

14, 2025, Dkt. No. 905.) The City never challenged or responded to these findings

despite an opportunity to do so. (Ex. 5, Hr'g Tr. 9:25–10:3, May 15, 2025, Dkt. No.

_____

[2] A third-party assessment of the City's homelessness programs was agreed
to by the City as a stipulated sanction for prior non-compliance with the Settlement
Agreement.  (See Ex. 3, Joint Stipulation to Resolve Mot. for Order re Settlement
Agreement Compliance & Sanctions, Dkt. No. 713.)

909.) Based in part on the findings of the audit, the LA Alliance raised renewed concerns about the City's noncompliance with the Settlement Agreement. As a result, the district court held a seven-day evidentiary hearing. Following the hearing and related briefing, the district court issued a detailed Order that analyzed the City's conduct and the terms of the Settlement Agreement and found the City in violation of several provisions of the Settlement Agreement. (Ex. 6, Order, June 24, 2025 ("June Order"), Dkt. No. 991.) The June Order reaffirmed the City's obligations under the Agreement, including the provision requiring appointment of the independent data monitor expressly called for and agreed to by the City in the Settlement Agreement. (Id. 49:25–28 (citing Ex. 1, Settlement Agreement § 7.2).) The June Order also set deadlines for the City to begin to come into compliance with its existing obligations. Nothing in the June Order imposed *new* requirements on the City beyond those which it had already agreed to as part of the Settlement Agreement. While the Court invited the LA Alliance to file a request for attorneys' fees, the Court neither imposed sanctions nor modified the Settlement Agreement.

As part of the June Order, the City was required to "meet and confer with Plaintiffs on selecting a third-party Monitor by August 22, 2025, and select this Monitor by September 12, 2025, subject to the Court's approval." (Ex. 6, Order 57: 13–15.) The district court removed any doubt as to whether these were new obligations: "each of the above requirements are actions that the City was already

6

under an obligation to do." (Id. at 57:21–22.) Despite the fact that the June Order merely reaffirmed existing obligations and imposed no new ones, the City appealed it and the LA Alliance moved to dismiss that appeal for lack of jurisdiction. (Ex. 8, Appellee's Mot. to Dismiss for Lack of Jurisdiction, LA Alliance for Human Rights v. City of Los Angeles, et al., Case No. 25-4623 (9th Cir. July 30, 2025), Dkt. No. 4.1.) That motion to dismiss remains pending.

Pursuant to the June Order, the parties met and conferred regarding the monitor to be selected. On September 12, 2025, the parties submitted a joint report selecting either Ron Galperin (former City Controller) or McKinsey & Company. (Ex. 8, Joint Submission re: Selection of Third-Party Monitor, Dkt. No. 1033.) Following a hearing on September 16, 2025, at which both the district court expressed reservations about the appointment of McKinsey and Plaintiff reported that McKinsey declined the role, the parties further met and conferred and by joint stipulation selected Daniel Garrie and Ron Galperin as co-monitors. (Ex. 9, Minute Order re: Status Conference re Monitor Selection, Dkt. No. 1036.) On October 2, 2025, the district court ordered the parties to submit a report on the status of City Council's approval of the monitor. (Ex. 10, Order re Joint Status Report for Appointment of Third-Party Monitor, Dkt. No. 1039.) The parties submitted a joint report detailing the City Council's repeated delay of the approval process. (Ex. 11,

7

Joint Status Report Regarding City Council Consideration of Proposed Third-Party Monitors, Dkt. No. 1041.)

On October 10, 2025, the parties submitted a joint report and request informing the district court that the City withdrew its stipulation to Mr. Garrie's serving as monitor and instead wanted former City Controller Galperin and current City Controller Kenneth Mejia to serve as co-monitors. (Ex. 12, Joint Req. to Ct. re Third-Party Monitor & Scope of Work ("Joint Req."), Dkt. No. 1045.) Plaintiff objected and requested the Court appoint the original agreed-upon monitors (Garrie and Galperin) or alternatively a combination of the two parties' suggestions (Garrie and Mejia). In the joint request, the parties specifically asked the district court resolve the dispute regarding the selection of the monitor pursuant to the terms of the Settlement Agreement:

> Plaintiffs LA Alliance for Human Rights et al. (the "Alliance") and the **City of Los Angeles** submit this Joint Report to update the Court regarding the status of the City Council's approval of the third-party Monitor contemplated by Section 7.2 of the Settlement Agreement and the Court's June 2025 Order, and to **request the Court's review and resolution of the issue pursuant to Section 24 of the Settlement Agreement.**

8

(Id. 1:1–5 (emphasis added).) Thus, not only was the district court authorized by the terms of the Settlement Agreement to resolve the dispute regarding the selection of the monitor, but the City unambiguously and expressly consented to and requested that the district court resolve the dispute and select the monitor.

On October 10, 2025, the Court, acting pursuant to the City's explicit request, selected the third-party monitor:

> The Court appoints Daniel Garrie to the Monitor position. Kenneth Mejia, current Los Angelos City Controller, will support Mr. Garrie, without further cost to the City, in the execution of his role by facilitating data access and coordination, per Daniel Garrie's discretion. In addition, Mr. Mejia is currently the most knowledgeable person regarding the myriad and complex funding streams involved with the homelessness system—he would not require further payment either. Daniel Garrie and his team have the technical expertise and prior experience to review the City's data, as well as verify validity of that data.

(Ex. 13, Order Resolving Third-Party Monitor Appointment & Scope of Work at 4–5, Dkt. No. 1048.) In doing so, the Court noted that it was a joint request by the parties that the district court resolved the issue and that the Settlement Agreement specifically authorized the district court to do so:

On October 10, 2025 the City of Los Angeles (the "City") and Plaintiffs LA Alliance for Human Rights et al. (the "Alliance") submitted a Joint Report (Dkt. 1045) "to update the Court regarding the status of the City Council's approval of the third-party Monitor" and "**to request the Court's review and resolution of the issue pursuant to Section 24 of the Settlement Agreement**." Joint Report at 1. As the Parties recognize, Section 24 of the Settlement Agreement (Dkt. 429-1) provides that:

> If a dispute arises between the Plaintiffs and the City regarding the interpretation, performance, or enforcement of this Agreement . . . [and] [i]n the event that the Parties are unable to resolve the dispute within a reasonable time after [] meeting Plaintiffs or the City may, pursuant to the Order, submit the matter to the Court for review and decision.

**Because the Parties have jointly requested** the Court utilize its authority under Section 24 to resolve the Parties' dispute over the Monitor's appointment and scope of work, the Court now does so.

(Id. at 1-2.) The district court then issued an order defining the duties of the Special Master following the appointment of the monitor. (Ex. 14, Order, Oct. 15, 2025, Dkt. No. 1050.) On October 22, 2025, the City filed a notice of appeal of both orders.

10

(Ex. 15, Notice of Appeal, Dkt. No. 1053.) The City also filed an ex parte application for a stay of the order appointing Mr. Garrie as monitor pending the appeal. (Ex. 16, Def.'s Ex Parte Appl. for Stay of Order Appointing Daniel Garrie as Monitor Pending Appeal, Dkt. No. 1054.)

In summary, the City (1) voluntarily entered into a Settlement Agreement that both authorized the appointment of a third-party monitor and contained a dispute resolution procedure that allowed the district court to resolve disputes between the parties, (2) voluntarily stipulated to the appointment of Mr. Garrie as monitor (before withdrawing its stipulation to Mr. Garrie), and (3) voluntarily submitted the dispute between the parties regarding the appointment of the monitor to the district court pursuant to the Settlement Agreement. Then, after the district court did what the City asked and what the Settlement Agreement authorized, the City filed a frivolous appeal without jurisdiction.

The City's absurd conduct here ignores that it entered into a settlement agreement that specifically authorized the appointment of a third-party data monitor, and specifically authorizes the district court to resolve disputes regarding the settlement agreement— and that the City itself submitted the issue to the court for "review and resolution of the issue pursuant to Section 24 of the Settlement Agreement." (Ex. 12, Joint Req. 1:1–5, Dkt. No. 1045).

There is no final order. There is no injunction. Thus, there is no jurisdiction for this Court to hear an appeal.

## III.    <u>ARGUMENT</u>

This Court's jurisdiction is not unlimited. Its jurisdiction is limited to appeals from final judgments of the district courts, certain interlocutory orders under 28 U.S.C. § 1292(a)(1), and orders certified by the district court under Rule 54. <u>See</u> 28 U.S.C. §§ 1291, 1292(3)(1), and 1292(b). Neither apply here.

This order selecting a monitor is not a final judgment. It is an interpretation and enforcement of a judgment to which the City already consented. "The scope of our jurisdiction under § 1291 is the same for all district court rulings." <u>In re Gugliuzza</u>, 852 F.3d 884, 890 (9th Cir. 2017) (citing <u>Klestadt & Winters, LLP v. Cangelosi</u>, 672 F.3d 809, 815 (9th Cir. 2012)). "Regardless of context, in determining whether the district court decision is final under § 1291, 'we ask whether the decision presented for review "ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment."'" <u>In re Gugliuzza</u>, 852 F.3d at 890 (quoting <u>Congrejo Invs., LLC v. Mann (In re Bender)</u>, 586 F.3d 1159, 1163 (9th Cir. 2009); <u>Firestone Tire & Rubber Co. v. Risjord</u>, 449 U.S. 368, 373 (1981). The final order authorizing the appointment of the monitor and the district court to resolve disputes was entered years ago, at the City's request.

Nor is the order an injunction over which this Court would have interlocutory jurisdiction pursuant to section l292(a)(l), which confers appellate jurisdiction over "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court[.]" 28 U.S.C. § 1292(a)(1).

The district court's order does not issue an injunction. The parties *jointly requested* the district court resolve a dispute pursuant to the Settlement Agreement. Thus, no one asked for an injunction and the district court did not say it was issuing one. While some orders are appealable if the "substantial effect" is that of an injunction, see United States v. Orr Water Ditch Co., 391 F.3d 1077, 1081 (9th Cir. 2004), this Order is plainly not injunctive in nature. Ninth Circuit precedent removes any doubt that there is no jurisdiction under Section 1292(a)(1).  In Flores II, a government entity sought an appeal of an order issued under nearly identical circumstances and this Court dismissed for lack of jurisdiction. 934 F.3d at 914–17.

In Flores II, the plaintiffs sought to enforce an existing consent decree/settlement agreement, the district court granted the motion, and the government appealed. In dismissing the appeal for lack of jurisdiction, this Court held:

13

The text of the district court's opinion in this case interpreted the existing Agreement; its operative provisions, which appear at the end of the Order, granted enforcement of various provisions of the Agreement. The conclusion of the Order reads, for example, "Plaintiffs' motion to enforce Paragraph 12A of the Agreement on the issue of unsanitary conditions is GRANTED . . . " The Order's operative provisions do not require the government to take any specific action other than to propose a Juvenile Coordinator for appointment. The government does not challenge the appointment of a Juvenile Coordinator, as that appointment is expressly provided for in the Agreement.

Id. at 914–15. Flores II confirms that what happened here—the interpretation of an existing agreement and the enforcement of existing provisions—does not trigger appellate jurisdiction. See also Flores v. Barr ("Flores III"), 977 F.3d 742, 747 (9th Cir. 2020) ("Here . . . as in Flores II, the district court just directed compliance with the Agreement . . . . The deadlines in the orders assure compliance with the Agreement by a date certain, but they add no substantive requirement. Each of the actions ordered by the district court likely effectuates, rather than modifies, the Agreement.").

The Flores II finding is consistent with Ninth Circuit precedent applying a three-part test for when a post-judgment consent-decree order may be appealed under Section 1292(a)(1): that the order "(1) has 'the practical effect of the grant or denial of an injunction', (2) has 'serious, perhaps irreparable consequences', and (3) can be 'effectively challenged only by immediate appeal.'" United States v. El Dorado County, California, 704 F.3d 1261, 1263 (9th Cir. 2013) (citing Thompson v. Enomoto, 815 F.2d 1323, 1326–27 (9th Cir. 1987) and Carson v. Am. Brands, Inc., 450 U.S. 79, 101 (1981)); see also Fisher v. Tucson Unified Sch. Dist., 588 F. App'x 608, 610 (9th Cir. 2014):

> Because the appealed orders do not substantially alter the parties' relationship as set forth in the [prior order and agreement], the District failed to satisfy the first prong of the Carson test, and this court does not have jurisdiction under 28 U.S.C. § 1292(a)(1). Moreover, the District failed to satisfy the second prong of the Carson test as well. The interpretation of the [prior order and agreement], is largely procedural in nature and does not have serious, let alone irreparable, consequences for the District. For this reason also, we lack jurisdiction.

Fisher, 588 F. App'x at 610.

None of that applies here. The district court's data monitor appointment order does not have the effect of an injunction and there cannot be irreparable harm in compelling the City to do something it voluntarily agreed to do three years ago.

This principle that an appeal cannot be taken from order that merely interprets and enforces an existing settlement agreement or injunction is so uncontroversial it is indisputable. Id. at 609 ("Section 1292(a)(1) does not provide for jurisdiction over interlocutory appeals of orders interpreting, as opposed to modifying, consent decrees."); Thompson, 815 F.2d at 1327 (appointment of a special master cannot be appealed under § 1292(a)(1) unless "the interlocutory order appointing a special master 'modifies' the consent decree."); see also Bogard v. Wright, 159 F.3d 1060, 1064–65 (7th Cir. 1998) (dismissing for lack of jurisdiction an appeal of an order that enforced but did not modify a consent decree, and discussing the "appellate remedy" available to each party under section 1292(a)(1) with respect to orders after a final judgment); Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 477 F.3d 1151, 1152 (10th Cir. 2007) ("Appellate courts do not have jurisdiction to review a district court order that merely interprets or clarifies, without modifying, an existing injunction"); Gautreaux v. Chi. Hous. Auth., 178 F.3d 951, 958 (7th Cir. 1999) (when a district court's order enforcing compliance with existing injunction does "nothing more than reassert the court's prior orders[,]" it is not a "fresh injunction" that may be appealed).

Nor can the City argue that the district court modified the Settlement Agreement, which would have brought things within the ambit of Section 1292(a)(1)'s language concerning "[i]nterlocutory orders . . . modifying . . . injunctions." 28 U.S.C. § 1292(a)(1). All the district court did here is enforce existing terms of the Settlement Agreement and resolve a dispute *at the request of the City*. Flores II, 934 F.3d at 917 ("In short, the district court's explanation of its enforcement of paragraph 12A regarding the conditions at Border Patrol stations concerned only requirements unarguably within the terms of the Agreement. As a result, the portion of the court's order enforcing paragraph 12A did not constitute an "interlocutory order modifying an injunction, or refusing to modify an injunction. We therefore lack jurisdiction over this claim.") (cleaned up) (citing 28 U.S.C. § 1292(a)(1)).

## IV.    CONCLUSION

After facing a federal lawsuit faulting the City for decades of failure on homelessness, the City freely and voluntarily entered into a Settlement Agreement and then flouted it for three years. The district court ordered the parties to comply with the Settlement Agreement by selecting a third-party monitor, something they already agreed to do. When they could not agree, the parties asked the district court to resolve the dispute, as it was authorized to do by the Settlement Agreement. There is no final order and no injunction—an order interpreting a voluntary Settlement

17

Agreement is neither of these things. Because nothing about that order triggers this

Court's jurisdiction, this appeal must be dismissed.

DATED:   November 9, 2025          Respectfully submitted,


                                   /s/ *Matthew Donald Umhofer*
                                   UMHOFER, MITCHELL & KING LLP
                                   Matthew Donald Umhofer
                                   Elizabeth A. Mitchell

                                   *Attorneys for Plaintiff-Appellee,*
                                   *LA Alliance for Human Rights*

## CERTIFICATE OF COMPLIANCE

I am the attorney for Plaintiff-Appellee LA Alliance for Human Rights. Pursuant to Federal Rules of Appellate Procedure ("Fed. R. App. P.") Rule 32(g), I certify that this brief complies with the word limit of Fed. R. App. P. Rule 27(d) because it contains **3,954** words, excluding the items exempted by Fed. R. App. P. Rule 32(f). The brief's type size and typeface comply with Fed. R. App. P. Rules 32(a)(5) and (6).

DATED:  November 9, 2025            Respectfully submitted,

/s/ *Matthew Donald Umhofer*
UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

*Attorneys for Plaintiff-Appellee,*
*LA Alliance for Human Rights*

19

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 25-6760

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are __NOT__ Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellee's Motion to Dismiss for Lack of Jurisdiction

**Signature** | s/ Elizabeth A. Mitchell       **Date** | Nov 9, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 15**                                                                 *Rev. 12/01/2018*