**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No: <u>LA CV 20-02291-DOC(KESx)</u>                Date: <u>November 12, 2025</u>

Title:   <u>LA ALLIANCE FOR HUMAN RIGHTS, et al. v. CITY OF LOS ANGELES, et al.</u>

PRESENT:   <u>THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT JUDGE</u>

| Karlen Dubon | Court Smart |
|---|---|
| Courtroom Clerk | Court Reporter |

| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
|---|---|
| Elizabeth Mitchell, Matthew Umhofer | **City:** |
| **Intervenors:** | Jessica Mariani, Brad Hamberger |
| Shayla Myers, Isabelle Geczy | Kahn Scolnick, Tim Biche |
| | **County:** |
| | Mira Hashmall, Lauren Brody |

| PROCEEDINGS: | **STATUS CONFERENCE RE QUARTERLY REPORT [1061]** |
|---|---|
| | **ORDER TO SHOW CAUSE RE CONTEMPT CITY OF LOS ANGELES [1066]** |
| | **MOTION FOR ATTORNEYS' FEES [1022]** |
| | **APPLICATION TO STAY [1054]** |
| | *(Evidentiary Hearing held at Los Angeles First Street)* |

Also present, Special Master Michele Martinez, Data Monitor Daniel Gerrie, and L.A. City Controller Kenneth Mejia.

The Court hears arguments re Motion for Attorney Fees [1022].

The Court receives the following exhibits:

Exhibit A - *Los Angeles Times* article by David Zahniser, published September 17, 2025;
Exhibit B - *LAist* article by Aaron Schrank, published August 27, 2025;
Exhibit C - *Los Angeles Times* article by Doug Smith published April 16, 2024;
Exhibit D - *Daily Journal* article by Skyler Romero, published November 11, 2025.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. LA CV 20-02291-DOC (KESx)                                    Date: November 12, 2025
                                                                                                    Page 2

Acting City Attorneys Gibson Dunn are ordered to file all documents re fee agreements between the City of Los Angeles and Gibson Dunn by Thursday, November 13, 2025 at 12:00 PM.

Motion for Attorneys' Fees [1022] is taken under submission.

Hearing re Quarterly Report [1061], Order to Show Cause re Contempt City of Los Angeles [1066], and Application to Stay [1054] is **CONTINUED** November 19, 2025 at 9:00 AM.

The Court orders the transcript of this hearing designated as the official court record and the transcript for the hearing on November 12, 2025 be made available and open to the public on CM / PACER forthwith.

The Court further orders the transcript be produced at Government expense, billed at the daily rate.

The transcript will also be available to download on the Court's Cases of Interest web page, located here: https://www.cacd.uscourts.gov/newsworthy/cases-of-interest.

cc:       CourtRecording_CACD@cacd.uscourts.gov
          Transcripts_CACD@cacd.uscourts.gov
          Reporter_CACD@cacd.uscourts.gov

                                                                    3        :        35
                                                                    Initials of Deputy Clerk: kdu

# EXHIBIT A

CALIFORNIA

# Lawyers who hit L.A. City with whopping bill on homeless case to get millions more

Los Angeles City Atty. Hydee Feldstein Soto had sought a major increase to the city's contract with the law firm Gibson, Dunn & Crutcher.  (Carlin Stiehl / Los Angeles Times)

 **By David Zahniser**
Staff Writer  |  𝕏 Follow

Sept. 17, 2025 3:50 PM PT

The Los Angeles City Council on Wednesday approved a fivefold increase to its contract with a law firm that drew heated criticism for the invoices it submitted in a high-stakes

homelessness case.

Three months ago, Gibson, Dunn & Crutcher billed the city $1.8 million for two weeks of legal work, with 15 of its attorneys billing nearly $1,300 per hour. By Aug. 8, the cost of the firm's work had jumped to $3.2 million.

The price tag infuriated some on the council, who pointed out that they had approved a three-year contract capped at $900,000 — and specifically had asked for regular updates on the case.

Despite those concerns, the council voted 10 to 3 Wednesday to increase the firm's contract to nearly $5 million for the current fiscal year, which ends in June 2026. Councilmember Katy Yaroslavsky supported the move, saying Gibson Dunn's work has been "essential to protecting the city's interests."

"At the same time, we put new oversight in place to ensure any additional funding requests come back to council before more money is allocated," said Yaroslavsky, who heads the council's budget committee.



**CALIFORNIA**

**Law firm in L.A. homelessness case bills the city $1.8 million for two weeks' work**

**Aug. 10, 2025**

Councilmembers Tim McOsker, Adrin Nazarian and Nithya Raman voted against the contract increase.

McOsker, who also sits on the budget committee, said he was not satisfied with Gibson Dunn's effort to scale back the amount it is charging the city. After the council asked for the cost to be reduced, the firm shaved $210,000 off of the bill, he said.

"I think Gibson should have given up more, and should have been pressed to give up more," McOsker said after the vote.

A Gibson Dunn attorney who heads up the team that represents the city did not immediately respond to a request for comment. Meanwhile, an aide to City Atty. Hydee Feldstein Soto welcomed the council's vote.

"We are pleased that the City Council recognizes and appreciates the strong legal representation that Gibson, Dunn & Crutcher has provided and continues to provide to the city," Karen Richardson, a spokesperson for Feldstein Soto, said in a statement.

Gibson Dunn was retained by the city in mid-May, one week before a major hearing in the case filed by the L.A. Alliance for Human Rights, a nonprofit group that has been at odds with the city over its handling of the homelessness crisis since 2020.

The city reached a settlement with the L.A. Alliance in 2022, agreeing to create 12,915 homeless shelter beds or other housing opportunities. Since then, the L.A. Alliance has repeatedly accused the city of failing to comply with the terms of the settlement agreement.

In May, a federal judge overseeing the settlement called a seven-day hearing to determine whether he should take authority over the city's homelessness programs from Mayor Karen Bass and the City Council, and hand them over to a third party. Alliance lawyers said during those proceedings that they wanted to call Bass and two council members to testify.

In the run-up to that hearing, the city hired Gibson Dunn, a powerhouse law firm that secured a landmark Supreme Court ruling that upheld laws prohibiting homeless people from camping in public spaces.



CALIFORNIA

**Law firm that sent L.A. a big bill in homeless case wants $5 million more for its work**

Aug. 26, 2025

Feldstein Soto has praised Gibson Dunn's work in the L.A. Alliance case, saying the firm helped the city retain control over its homelessness programs, while also keeping Bass and the two council members off the stand. She commended the firm for getting up to speed on the settlement, mastering a complex set of policy matters within a week.

Feldstein Soto initially hoped to increase the size of the Gibson Dunn contract to nearly $6 million through 2027 — only to be rebuffed by council members unhappy with the billing situation. On Wednesday, at the recommendation of the council's budget committee, the council signed off on nearly $5 million over one year.

A portion of that money will likely go toward the filing of an appeal of a federal judge's order in the L.A. Alliance case, Feldstein Soto said in a memo.

Faced with lingering criticism from council members, Feldstein Soto agreed to help with the cost of the Gibson Dunn contract, committing $1 million from her office's budget. The council also tapped $4 million from the city's "unappropriated balance," an account for funds that have not yet been allocated.

By transferring the money to the Gibson Dunn contract, the council depleted much of the funding that would have gone to outside law firms over the current budget year, said McOsker, who called the move "bad fiscal management."

Raman, who heads the council's homelessness committee, said her dissenting vote wasn't about the price of the services charged by Gibson Dunn, but rather the fact that so much was spent without council approval.

"As someone who is watching that money very closely, I was frustrated," she said. "So my 'no' vote was based on that frustration."

## More to Read

**L.A. City Council balks at $5-million request for law firm in homelessness case**

Aug. 27, 2025



**Trash fees will spike for many L.A. residents in aftermath of city's fiscal crisis**

Oct. 7, 2025



**L.A. marijuana businesses will pay higher fees as industry struggles**

Aug. 5, 2025





## Sign up for Essential California

The most important California stories and recommendations in your inbox every morning.

**Sign Me Up**

 **David Zahniser**

David Zahniser covers Los Angeles City Hall for the Los Angeles Times.

Copyright © 2025, Los Angeles Times | Terms of Service | Privacy Policy | CA Notice of Collection | Do Not Sell or Share My Personal Information

# EXHIBIT B

 

Audience-funded nonprofit news

❤ DONATE

((•)) LISTEN



# LA council delays decision on $5M more for law firm in homelessness lawsuit



__Aaron Schrank__ has been on the ground, reporting on homelessness and other issues in L.A. for more than a decade.

Published Aug 27, 2025 3:13 PM

L.A. City Attorney Hydee Feldstein Soto, seen at a recent news conference, originally asked council for $900,000 for outside legal fees. In late August, she requested $5.9 million instead.

(Carlin Stiehl / Los Angeles Times / Getty Images)

*With our free press under threat and federal funding for public media gone, your support matters more than ever. Help keep the LAist newsroom strong, become a monthly member or increase your support today.*

The Los Angeles City Council decided Wednesday to delay its decision on a request to pay $5 million more to a big law firm representing the city in a long-running federal legal settlement over its response to the region's homelessness crisis.

Instead, the Council referred the request from L.A. City Attorney Hydee Feldstein Soto to the city's Budget and Finance Committee for further consideration.

"My colleagues and I want to ensure we address it in a way that protects taxpayers and establishes a thoughtful, long-term strategy for managing outside legal expenses," said Councilmember Katy Yaroslavsky, who chairs the budget committee, in a statement to LAist.

The city agreed in May to pay $900,000 to Gibson, Dunn & Crutcher over a two-year period. Since then, the city has racked up more than $2 million in legal bills beyond what the council had originally authorized without telling the councilmembers.

The firm has 15 attorneys working on the case, each of whom is billing the city $1,295 an hour. The original $900,000 approved by the City Council covered the first few days of work.

---

## Trending on LAist



**The LA Olympics schedule is out. Here's a breakdown**

**California schools now offer free preschool for 4-year-olds. Here's what kids really learn in it**

 **You don't need to steal art from the Getty to have it at home. The museum is giving it away**

---

Councilmember Monica Rodriguez told LAist said she was "enraged" by how much money was being spent on a settlement reached years ago between the city and a group of downtown business owners and residents called the LA Alliance for Human Rights.

"The city should be more focused on becoming compliant and housing individuals," Rodriguez said. "There are people in L.A. who know how to stretch $1,300 for longer than an hour."


0:44
**LA council delays decision on $5M more for law firm in homelessness lawsuit**

And Councilmember Bob Blumenfield said sending the request back to committee was meant to send a message.

"My hope is that the City Attorney and reasonable folks at Gibson will sit down and figure out an alternative bill, " he said in a statement. "We must pursue appropriate cost review based on the fact that this is the public's money, that every dime spent on lawyers is one less dime spent on homeless interventions, as well as the fact that they exceeded the limits without authorization."

The L.A. City Attorney's Office did not respond to LAist's request for comment Wednesday.

The city's massive legal bills come as L.A. faces a $1 billion budget deficit and cuts to some homeless services.

## Massive legal bills

The law firm billed the city about $1.8 million for two weeks of work in May — double the amount approved for the entire two-year contract, according to a May invoice LAist obtained through a public records request. Altogether, the city has been invoiced for $3.2 million under the contract as of Aug. 8, according to a memo written by Feldstein Soto and obtained by the L.A. Times .

When the council members approved the original contract, they required the city attorney to keep them updated.

But two councilmembers on the city's budget committee, Blumenfield and Tim McOsker, said they didn't know the $900,000 had been exceeded until after LAist reached out to them for comment earlier this month.

Blumenfield said he was "not happy" about it.

During the meeting Wednesday, some members of the public criticized the city for legal bills they said were out of control.

"This is a disgrace and I am begging this council to oppose spending $6 million on litigation instead of on solutions," said Susan Collins in public comment Wednesday. "Wasteful spending cannot possibly get any more repugnant than this."

On the city's online public comment system, Sue Kohl asked: "Why are we not using those funds for actual food and shelter for homeless individuals and families?

## Why does LA want legal help?

In 2020, The LA Alliance for Human Rights sued the city and county for failing to adequately address L.A.'s homelessness crisis.

When settling the case in 2022, the city agreed to open nearly 13,000 new shelter beds by June 2027. But the federal judge overseeing the settlement said the city consistently has failed to meet its obligations under the agreement.

The city hired Gibson Dunn in May, as U.S. District Judge David O. Carter was considering a request by The LA Alliance for Human Rights to hand the city's homelessness programs over to a third-party receiver.

In June, Carter decided against receivership but ruled the city of L.A. had partially breached the settlement agreement because it had not provided a plan for creating thousands of new shelter beds. Carter also ordered quarterly hearings and additional oversight by a court-appointed monitor.

The city has said it plans to appeal that ruling, with Gibson Dunn's help. The firm did not immediately respond to LAist's request for comment.

## City attorney's role

Before May, the L.A. City Attorney's Office had been handling the case itself, without the help of outside counsel.

Feldstein Soto has defended Gibson Dunn's work. City attorney spokesperson Ivor Pine told LAist the "firm and its lawyers exceeded our expectations and delivered exceptional results."

LAist asked the City Attorney's Office to release additional invoices from the law firm, but it declined.

There is no evidence Gibson Dunn has been paid for its efforts yet. The L.A. City Controller's Office said it would not authorize the payments until the costs are approved by the City Council.

The city of L.A.'s charter requires outside counsel work, like the Gibson Dunn contract, to stay within the allocated dollar amount.

The firm's attorneys have handled many high-profile proceedings. Last summer, they represented the city of Grants Pass, Ore., before the U.S. Supreme Court in a landmark case that expanded cities' ability to enforce camping bans against unhoused people.

Councilmembers who oppose increasing the city's outside legal budget said the city should be spending its dollars more wisely.

"We have targets to meet, and we should be investing our very precious limited dollars in fulfilling those obligations and being compliant with this settlement agreement so that we can be done with it in 2027," Rodriguez said.

# Keep up with LAist.

If you're enjoying this article, you'll love our daily newsletter, The LA Report. Each weekday, catch up on the 5 most pressing stories to start your morning in 3 minutes or less.

Email

SUBSCRIBE

At LAist, we believe in journalism without censorship and the right of a free press to speak truth to those in power. Our hard-hitting watchdog reporting on local government, climate, and the ongoing housing and homelessness crisis is trustworthy, independent and freely accessible to everyone thanks to the support of readers like you.

*But the game has changed:* Congress voted to eliminate funding for public media across the country. Here at LAist that means a loss of $1.7 million in our budget every year. We want to assure you that despite growing threats to free press and free speech, LAist will remain a voice you know and trust. Speaking frankly, the amount of reader support we receive will help determine how

strong of a newsroom we are going forward to cover the important news in our community.

**We're asking you to stand up for independent reporting that will not be silenced.** With more individuals like you supporting this public service, we can continue to provide essential coverage for Southern Californians that you can't find anywhere else. **Become a monthly member today to help sustain this mission.**

Thank you for your generous support and belief in the value of independent news.



**Megan Garvey**

**Senior Vice President News, Editor in Chief**

# Chip in now to fund your local journalism

| Monthly | One time |
|---------|----------|

| $60 | $180 | $360 | $ other |
|-----|------|------|---------|

| SUPPORT NOW |
|-------------|

 Pay    PayPal    VISA    mastercard

🔒 Secure Payment

---

## Trending on LAist



HOUSING & HOMELESSNESS

**How did an 'implausible' claim about jobs created by LA's 'mansion tax' get cited by watchdogs?**



NEWS

**LA Memorial Coliseum to host the 2028 Olympic closing ceremony, dropping SoFi Stadium**



NEWS

## LAPD refuses to release crime map records, says data could lead to 'public panic'



EDUCATION

## The Trump administration canceled a top education award. This LA school is celebrating anyway

# The Brief

## LA rent reforms

Council votes to alter 40-year-old rent hike rules

53 minutes ago

## Brace for heavy rain

As much as 6 inches could fall in upcoming storm

1 hour ago

## RV impound policy

LA looks to remove more RVs from streets

1 hour ago

## Lucas Museum opening date

The art museum is set to open September

2 hours ago

## Cleto Escobedo III

Jimmy Kimmel's house band leader dies

5 hours ago

# Keep up with our local independent news

The L.A. Report newsletter is your daily morning update on the biggest stories in the Los Angeles region.

Email                                                                            SUBSCRIBE

    

| | |
|---|---|
| About LAist | Newsletters |
| Editorial Staff | Contact Us |
| Careers | Support Us |
| Sponsorship | Ethics & Guidelines |
| | Public Information |



LAist is an independent, nonprofit newsroom that is also home to L.A.'s largest NPR station broadcasting at 89.3 FM. We center our coverage around people and communities, not institutions or policies. We hold power to account. We are unapologetically L.A.

 

© 2025 Southern California Public Radio - All Rights Reserved
Terms of Service      Privacy Policy

# EXHIBIT C

CALIFORNIA

# A federal judge has found that L.A. city officials doctored records in a case over homeless camp cleanups

Members of a cleanup crew dismantle tents at a homeless encampment along San Vicente Boulevard outside the West Los Angeles Veterans Affairs campus in Los Angeles in 2021.  (Al Seib / Los Angeles Times)

 **By Doug Smith**
Senior Writer  |  𝕏 Follow

April 16, 2024 3 AM PT

A federal judge has found that Los Angeles city officials altered evidence to support the city's defense against allegations that it illegally seized and destroyed homeless people's

property.

Warning that the city will likely face sanctions following a forensic examination, U.S. District Judge Dale S. Fischer wrote in an order that the city had not only "altered, modified, and created documents relevant to Plaintiff's claims" but had also failed to produce legitimately requested documents.

"Suffice it to say that the City's credibility has been damaged significantly," she wrote.

According to court filings, records documenting what was taken during cleanups and the legal authorization for the seizure were altered or created up to two years after the cleanup occurred and in some instances just days before they were turned over to the plaintiffs.

In some records, the word "bulky items" was replaced by "health hazards" or "contaminated," after Fischer had ruled the city's law prohibiting bulky items unconstitutional.

In a court filing, Shayla R. Myers, an attorney with the Legal Aid Foundation of Los Angeles who is representing the eight plaintiffs, described the changes as so significant "they rise to the level of fraud on the court."

"In our view this isn't just about altering or creating evidence, it's about misleading the court and the public about the existence of safeguards to ensure the city isn't illegally throwing away unhoused people's belongings," Myers said in an interview.

"They argue that they have processes in place to ensure they aren't violating unhoused people's rights. ... And those are the very documents that the court found to be altered or fabricated."



CALIFORNIA

### Are L.A.'s anti-camping laws failing? We went to 25 sites to find the truth

March 7, 2024

A spokesman for the Los Angeles city attorney declined to answer The Times' questions about the case, saying the office does not comment on pending litigation. The alleged doctoring occurred during Mayor Eric Garcetti's administration, Myers said, although delays in producing documents have continued since Karen Bass became mayor.

The plaintiffs, seven homeless people and the group Ktown for All, allege that the city violated their rights by destroying their belongings in camp cleanups in 2018 and 2019. Among the items taken, they allege, were tents, chairs, work supplies, a laptop computer, a chest containing clothes and hygiene goods, a dog kennel, medications and personal identification.

The five-year-old lawsuit alleges that the city's practice of seizing and disposing of property violates the 4th Amendment's protection against illegal search and seizure and the 14th Amendment's guarantee of due process.

It describes property used by lead plaintiff Janet Garcia for her work as a domestic cleaner being seized and destroyed when she was not present. Other plaintiffs weren't given time to collect personal items before they were seized, it alleges.

Ktown for All, a group that advocates for and assists homeless people, was harmed by having to expend resources replenishing the seized items, it alleges.

The plaintiffs seek compensation for the destroyed property and pain and suffering as well as a declaration that the city's policies and practices violate the California and U.S. constitutions.

Early in the case, Fischer issued a preliminary injunction barring the city from enforcing the municipal code that prohibits bulky items. Because of that ruling, the plaintiffs would have essentially already won their case involving any property taken under the bulky item law, but would have retained a defense for items taken under a health standard, Myers said.

Fischer subsequently held the city in contempt after the plaintiff's attorney introduced evidence that city workers continued to post signs in some locations prohibiting bulky items.

Since then the case has dragged on over disputes about the accuracy of the city's records.

According to court filings, the city responded to the discovery request for the documents by converting printouts of the original Microsoft Word documents into PDFs. The process eliminated the date stamps that recorded when the originals were created and last modified.

When the original of one of those records was attached to an email the plaintiffs obtained in discovery, Myers found that it had been extensively revised before the conversion to PDF.

After Myers presented evidence of the altered documents in a 2022 hearing, Fischer took the unusual step of appointing a neutral third-party forensic examiner to determine if the city had "spoliated" records, a legal term meaning intentionally or negligently altering or destroying.

The examiner's preliminary report said he obtained some of the original documents but was unable to obtain others. Manually comparing originals with the PDFs, Myers' team found more than 100 revisions in some documents. Among them, bulky was changed to "ADA violation," a reference to the Americans With Disabilities Act, and "Property left

behind by encampment" was changed to "Contaminated Items Surrendered or Left Behind by Resident."

In February, Fischer issued a finding that the city had altered records and sharply rebuked the city's arguments that the revisions were insignificant.

"The City's contention that material changes to documents such as the reason for seizing and destroying personal property — sometimes to match the City's litigation position — are 'administrative' is also untenable," she wrote.

"The City's conduct cannot be excused as 'imperfect document management;' … its 'explanation' for its admitted spoliation is unconvincing to say the least."

In a follow-up order on April 1, she found that "the full extent of the city's spoliation has not yet been determined" and set an April 8 deadline for the city to turn over all relevant documents to the forensic examiner.

"Any delays by the City will not be tolerated," she wrote.

Fischer said she would deem any relevant records that the city fails to produce as "spoliated."

The city turned over a Google drive, which is being evaluated, but no additional documents, Myers said.

Myers said she has not determined what sanctions to propose and will do so after the forensic examination is complete, in a month or two.

A trial, stayed for the forensic examination, has still not been set.

"This case would have been resolved years ago but for the need for the court to investigate the city's conduct, delaying a public reckoning about the legality of these sweeps," Myers said.

## More to Read

**FOR SUBSCRIBERS**

### The real story of how L.A. became the epicenter of America's homeless crisis

July 10, 2025



### Judge declines to take power over L.A. homeless programs away from city leaders

June 25, 2025



### L.A. vowed to remove 9,800 encampments. But are homeless people getting housed?

July 9, 2025



 **Sign up for Essential California**

The most important California stories and recommendations in your inbox every morning.

**Sign Me Up**

 **Doug Smith**

Los Angeles Times senior writer Doug Smith scouts Los Angeles for the ragged edges where public policy meets real people, combining data analysis and gumshoe reporting to tell L.A. stories through his more than 50 years of experience covering the city.

Copyright © 2025, Los Angeles Times | Terms of Service | Privacy Policy | CA Notice of Collection | Do Not Sell or Share My Personal Information

# EXHIBIT D

Constitutional Law

Nov. 11, 2025

# Judge threatens to summon LA mayor over discovery in encampment suit

**U.S. District Judge Dale Fischer on Monday blasted Los Angeles city leaders over alleged discovery abuses in a homeless encampment case. She was the second federal judge in three days to make the threat.**





*U.S. District Judge Dale Fischer*

A federal judge castigated counsel for the City of Los Angeles on Monday over alleged discovery violations in a long-running case involving an ordinance that allows confiscation of belongings left on the streets and sidewalks by homeless people.

U.S. District Judge Dale S. Fischer threatened to call the city attorney, mayor and city council into court for answers.

Fischer's warning came three days after her bench colleague, U.S. District Judge David O. Carter, called Mayor Karen Bass and City Council President Marqueece Harris-Dawson into his Orange County courtroom in connection with a contempt notice related to the city's landmark homelessness settlement.

Fischer called the city's conduct "egregious," demanding a clear answer as to whether it is willing to stipulate to liability for potential constitutional violations under the U.S. Supreme Court decision in *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

"Pretty soon I'm going to order in the city attorney itself, or the mayor, or the city council," Fischer said. "I don't want to do that, but I want an answer as to whether the city is willing to stipulate to Monell liability."

Bass and Harris-Dawson are set to appear in Carter's court to address alleged noncompliance in the city's settlement with homelessness advocates on Wednesday. *LA Alliance for Human Rights et al. v. City of Los Angeles et al.*, 2:20-cv-02291 (C.D. Cal., filed March 10, 2020).

Carter ordered the city officials to explain why they should not be held in contempt after he heard that a special master and a data monitor reported Los Angeles is not meeting deadlines to provide shelter beds it agreed to in the settlement. The special master's report also filed on Friday found that the city's response to a status request "It arrived a full week after the special master's inquiry and failed to provide the verified data, milestone documentation, or validation necessary for oversight."

Monday's proceedings before Fischer focused on claims that Los Angeles Municipal Code § 56.11--which allows city employees known as Environmental Compliance Inspectors (ECIs) to seize and summarily destroy belongings during encampment cleanups--violates the state and federal Constitutions. *Garcia et al. v. City of Los Angeles et al.*, 2:19-cv-06182 (C.D. Cal, filed July 18, 2019).

"Rather than investing in solutions like bathrooms, handwashing stations, and trash cans, which would both meet the real and immediate public health needs of the thousands of unhoused residents in the city, and in turn, would also address many residents' complaints, the city has responded instead by seizing and destroying homeless people's belongings," read the plaintiffs' second amended complaint filed in March 2020.

The plaintiffs' motions for sanctions related to findings in January 2024 by a neutral forensic examiner of significant evidence of spoliation, fabrication, and the withholding of thousands of responsive documents by the city.

The central allegation is that the city materially altered and fabricated key evidentiary documents, including Health Hazard Assessment Reports (HHARs) and related checklists, which were intended to document the cleanups.

Plaintiffs further alleged the city actively concealed its misconduct by erasing metadata, submitting altered documents as PDFs to hide the changes, and misrepresenting the record.

Appearing on behalf of the plaintiffs on Monday, Shayla R. Myers of Legal Aid Foundation of Los Angeles argued that the spoliation caused "significant prejudice" against her clients.

"It is not simply the spoliation of evidence. I think the city has consistently pointed to the documents and said, 'We could simply not make reference to those documents,'" Myers said. "Your honor, these are the lead documents that the city themselves identified that are critical to how plaintiffs have built their case for six years."

Emerson H. Kim of the city attorney's office argued that the spoliation was unintentional.

"To state that this was a pattern and practice of defying the court's order of misleading plaintiffs is absolutely wrong, your honor," Kim said, "And frankly, if you look at the evidence, not looking at broad strokes, specifically what's at play here, we're talking about a handful of individual incidents concerning specific plaintiffs."

Fischer pushed back on the city's explanation for the creation of cleanup reports after the fact, noting that the city also altered documents in response to court proceedings.

"That's only one aspect of it," Fischer said. "The city changed the language to something that directly related to my order and what the topic was to something that wasn't right."

In response, Kim said that the process for ECIs to create a health hazard report involves a review by a senior inspector.

"This back-and-forth provision, frankly, is what got caught up as part of this discovery," Kim said.

"I would say it got 'caught,' not 'caught up,'" Fischer responded.

Fischer declined to rule immediately on the sanctions motions, noting that the 9th Circuit Court of Appeal creates a "high bar" for terminating sanctions.

Instead, Fischer admonished the parties to re-enter settlement talks in the hopes of bringing the long-running case to a close.



**Skyler Romero**
Daily Journal Staff Writer
skyler_romero@dailyjournal.com

**For reprint rights or to order a copy of your photo:**
Email Jeremy_Ellis@dailyjournal.com for prices.
Direct dial: 213-229-5424

**Send a letter to the editor:**
Email: letters@dailyjournal.com