UMHOFER, MITCHELL & KING LLP
Matthew Donald Umhofer (SBN 206607)
Elizabeth A. Mitchell (SBN 251139)
767 S. Alameda St., Suite 270
Los Angeles, California 90021
Telephone: (213) 394-7979
Facsimile: (213) 529-1027
matthew@umklaw.com
elizabeth@umklaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et al.*,<br><br>          Plaintiffs,<br><br>     v.<br><br>CITY OF LOS ANGELES, *et al.*,<br><br>          Defendants. | Case No. 2:20-CV-02291-DOC-KES<br><br>Assigned to Judge David O. Carter<br><br>**PLAINTIFF'S RESPONSE RE DEFENDANT CITY OF LOS ANGELES' REQUEST FOR FURTHER CLARIFICATION**<br><br>Before:  Hon. David O. Carter<br>Courtroom: 10A |

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

Plaintiff LA Alliance for Human Rights ("LA Alliance") respectfully submits this response to Defendant City of Los Angeles' Request for Further Clarification re November 19 Hearing.

Defendant City, intentionally or mistakenly, confused the Court's Order (Order Responding to City's Req. for Clarification [1074] ("Order"), Nov. 14, 2025, Dkt. No. 1079) responding to the City's November 13, 2025 Request for Order for clarification (Def.s' Req. for Clarification Regarding November 19, 2025 Evidentiary Hr'g, Dkt. No. 1074). In this Court's most recent order (Order, Dkt. No. 1079), the Court "elaborate[d]" on its November 7, 2025 Order to Show Cause re Contempt by expressing its "concern[] the City has demonstrated a consistent pattern of delay, and that the delay continues to this day as documented in the Special Master and Monitor's Reports." (*Id*. at 2.) Thus, the City's prior malfeasance in terms of bad faith and delay, was raised by the Court not as a separate basis to hold the City in contempt but as part of the City's "consistent pattern of delay" which "continues to this day." Because the City consistently expresses confusion at what are otherwise clear orders, Plaintiff again reiterates and restates the issues raised by the Court, Special Master, Data Monitor, and Plaintiff, so Defendant cannot thereafter claim confusion or lack of notice.

**1) Undue Delay, Obfuscation, and Hampering Enforcement of a Court Order.**

Special Master Martinez and Data Monitor Garrie[1] have both reported the City's delay and impedance of their responsibilities in monitoring and enforcing the SAO and the Settlement Compliance Order (Order Granting in Part and Denying in Part Pl.'s Mots. for Settlement Compliance ("Settlement Compliance Order"), June 24, 2025, Dkt. No. 991.) (*See* Special Masters Request, Oct. 31, 2025, Dkt. No. 1060; Special Master's Report, Nov. 7, 2025, Dkt. No. 1065; Status Report of Monitor Daniel B. Garrie for October 2025 ("Garrie Report"), Nov. 3, 2025, Dkt. No. 1063.) Monitor

---

[1] While Monitor Garrie's appointment is currently stayed, the City's actions in delaying and obstructing his efforts are relevant to the issue of the City's consistent undue delay, obfuscation, and hampering enforcement of orders of this Court.

1

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

Garrie informed the Court that due to delays by City's counsel and the City's refusal to provide access to systems or even describe the systems/databases, Monitor Garrie was unable to provide any update to the Court at the November 12 hearing, as required by the Court's Settlement Compliance Order (Settlement Compliance Order, 57:16–17.) The Monitor additionally reported the City failed to fully answer Monitor Garrie's questions, even when the responses were finally sent. (Garrie Report 7:17–25, Dkt. No. 1063.)  The City was explicitly warned that failure to provide the Data Monitor with "accompanying data on shelter or housing offers" beginning in October, 2025, "may result in sanctions." (Settlement Compliance Order 57:18–22.)

Likewise, the City waited until the last minute to respond to Special Master's requests, and many of the City's responses to Special Master's questions were incomplete and evasive ("When [will] the verified PEH data [] be submitted[?] Verified PEH served data will be submitted once the City has received the data it needs to verify those numbers and has verified that data."; "Whether any milestone-related data has been reviewed or documented in a way that could support future validation efforts[.] The City does not know what you mean by 'milestone-related data' or 'future validation efforts,' and accordingly cannot respond to this question without further explanation.") (Special Master's Report Ex. B, Gibson Dunn Letter, Nov. 6, 2025, Dkt. No. 1065), rather than providing full and complete answers or alternatively scheduling a meeting or call with the Special Master to provide context or ask clarifying questions if needed.  Other recent examples of the City's continued delay and obfuscation were also raised in the November 12, 2025 hearing: (i) City's refusal to pay Special Master Martinez for months, insisting on revelation of privileged information prior to issuing payment (Hr'g Tr. at 127–139, Dkt. No. 1076), (ii) objections to investigations and refusal to investigate or respond when obvious fraud is found. (*Id*. at 117-127.)

This pattern and practice of delay and obfuscation by the City has been well-documented over the last several years, with Alvarez & Marsal and Special Master Martinez ("By consistently refusing to provide explanations and verification of its

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

reporting, the City has forced Plaintiffs into the position of investigating and monitoring the numbers reported. Special Master Martinez and A&M were appointed and paid to undertake that role, but the City has stalled and blocked them too from achieving meaningful review.") (Settlement Compliance Order 57:26-58:2, Dkt. No. 991); *see also* (Report 1, Dkt. No. 674; Report 2, May 14, 2025, Dkt. No. 904)), and now Monitor Garrie (Garrie Report, Dkt. No. 1063), and Plaintiff (Pl.'s Req. for Court Resolution of Dispute, Dkt. No. 1070; *See* XX – Dkt 678 (Stipulated Facts) and March 8, 2024 Transcript (finding Plaintiffs "were misled" in "bad faith" Dkt 684, 12:11-13; 17:15-19) ). The City's conduct is also consistent with observations made by this Court after the seven-day evidentiary hearing held earlier this year:

> The pattern is clear: documentation is withheld until exposure is imminent, public accountability is resisted until judicially mandated, and the truth of reported progress remains clouded by evasive recordkeeping. As the Court observed, these failures have undermined public trust and judicial trust alike. (Settlement Compliance Order 39:9–12, Dkt. No. 991.)
>
> . . .
>
> When errors are found in the data reported, the City has repeatedly ignored the errors or attacked the messenger instead of engaging with and correcting the issues. This pattern has persisted for years and is untenable if the City is to succeed in meeting its obligations by 2027. The City's inability or unwillingness to verify its reporting or even explain how it counts and reports solutions was on stark display during the evidentiary hearing. At no point during the costly and time-intensive seven-day hearing did the City attempt to substantiate its reporting which had been called into question by Special Master Martinez, in addition to other witnesses, and which A&M had not been able to replicate. (*Id*. at 48:10–17.)

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

. . .

In short, the City has been on notice for years that its data collection and reporting is woefully insufficient but continues to ignore its responsibility to report accurate numbers to the Court. (*Id*. at 49:13–15.)

. . .

The inability to verify the City's reporting is a serious roadblock to compliance. In addition to the recent evidentiary hearing, confusion over and inconsistencies within the reporting have led to dozens of informal conferences, mediation sessions, and hearings throughout this litigation. (*Id*. at 49:16–19.)

. . .

Finally, the City flouted its reporting responsibilities by failing to substantiate its reporting and failing to provide accurate and comprehensive data when requested by the Court, Special Master Martinez, the Parties, and A&M.  (*Id*. at 56:10–12.)

Courts have inherent power to address litigation abuses, including: "when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order[.]'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (citation omitted). Likewise, sanctions are "justified when a party acts for *an improper purpose*—even if the act consists of making a truthful statement or a non-frivolous argument or objection." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). And sanctions are appropriate where conduct is "tantamount to bad faith" meaning "recklessness . . . *combined with* an additional factor such as frivolousness, harassment, or an improper purpose." *Miller v. City of Phoenix*, 197 F. App'x. 624, 625 (9th Cir. 2006) (citation omitted); *see also David v. United States*, 820 F.2d 1038, 1044 (9th Cir. 1987) ("If attorneys insist upon approaching this court through the woods of obfuscation, they should beware of the sanction wolf.")

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

The City's actions in delaying, obfuscating, and generally avoiding compliance with clear court orders subject it to a finding of contempt and potential sanctions.

**2) Violation of Section 7.1 of the Settlement Agreement Order (Order Approving Stipulated Dismissal and Proposed Settlement ("SAO"), June 14, 2022, Dkt. No. 445), for Failing to "Provide Quarterly Status Updates to the Court Regarding its Progress with [the SAO][2]" to the Extent Required by Section 7.1.**

Section 7.1 of the Settlement Agreement provides that:

The City will provide quarterly status updates to the Court regarding its progress with this Agreement, including the number of housing or shelter opportunities created or otherwise obtained, the number of beds or opportunities offered, and the number of beds or opportunities currently available in each Council District. The City will work with LAHSA to include in the quarterly status updates, to the extent possible: the number of PEH engaged, the number of PEH who have accepted offers of shelter or housing, the number of PEH who have rejected offers of shelter or housing and why offers were rejected, and the number of encampments in each Council District.

(SAO, incorporating by reference, Settlement Agreement § 7.1, Dkt. No. 421-1.)

The City has never reported the following information in any report to this Court:

1) The number of beds or opportunities offered;

2) The number of beds or opportunities currently available;

3) The number of PEH engaged;

---

[2] The Settlement Agreement between the Plaintiffs and Defendant City was incorporated into an order dismissing the case and retaining jurisdiction to oversee and enforce compliance with the Settlement Agreement. (*See* SAO, Dkt. 445.) Accordingly the SAO is a "specific and definite court order . . . ." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

4) The number of PEH who have accepted offers of shelter or housing;

5) The number of PEH who have rejected such offers and the reasons therefore; and

6) The number of encampments in each Council District.

The City has never included the above information in any report before the Court. (*See* City Status Reports, Oct. 14, 2020, Dkt. No. 483; Jan. 17, 2023, Dkt. No. 516-1; Apr. 21, 2023, Dkt. No. 539-1; July 17, 2023, Dkt. No. 598-1; Oct. 16, 2023, Dkt. No. 652-1; Jan. 16, 2024, Dkt. 660-1; Apr. 15, 2024, Dkt. No. 728-1; July 15, 2024, Dkt. No. 757-1; Oct. 18, 2024, Dkt. No. 797-1; Jan. 22, 2025, Dkt. No. 858-1; Apr. 15, 2025, Dkt. No. 892-1; July 15, 2025, Dkt. No. 1011-1; Oct. 15, 2025, Dkt. No. 1051-1, Nov. 11, 2025, and Dkt. No. 1072-1; *see also* Independent Monitoring Report Year One ("Report 1"), Feb. 29, 2024, Dkt. No. 674 ("Quarterly status updates have been submitted to the Court on time, but these reports only contain the number of housing or shelter opportunities created or otherwise obtained, the number of beds or opportunities offered, and the number of beds or opportunities currently available in each Council District for each quarter thus far. The City is missing other key progress areas that must be reported to the Court and public quarterly. The City has yet to provide the court with the following information: *The number of PEH who have accepted offers of shelter or housing, *the number of PEH who have rejected offers of shelter or housing and why offers were rejected, *the number of encampments in each council district.")

**3) Violation of Section 24 of the SAO for Failure to Meet and Confer in Good Faith and Within a Reasonable Time[3]**

Section 24 of the SAO provides:

> If a dispute arises between the Plaintiffs and the City regarding the interpretation, performance, or enforcement of this Agreement, the

---

[3] Also considered as part of the foundation for the City's contemptuous delay and obfuscation as described *supra*.

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

Party raising the dispute shall provide written notice of the dispute to all other Parties, and all Parties agree to meet and confer within a reasonable time in a good faith effort to resolve any dispute.  In the event that the Parties are unable to resolve the dispute within a reasonable time after the meeting, Plaintiffs or the city may, pursuant to the Order, submit the matter to the Court for review and decision.

(*Id*. § 24.)

LA Alliance sent at least eight emails requesting to meet and confer about the City's apparent failure under Section 7.1 since July 25, 2025, and the City failed to meaningfully meet and confer or address the issue, at times not responding to emails at all. (*See* Pl.'s Req. for Court Resolution of Dispute, Nov. 10, 2025, Dkt. No. 1070.)

Plaintiff is additionally requesting the Court issue the following orders to the City:

1) come into compliance with Section 7.1 immediately by reporting on the missing categories in section (3) beginning no later than the next status report;

2) Respond to all LA Alliance, Special Master's, or the Data Monitor's[4] inquiries within 24 hours;

3) Meet and confer in good faith with Plaintiff, and meet with the Special Master or Data Monitor upon request within three (3) business days of request; and

4) Provide all data requested by the Special Master, Data Monitor, or Plaintiff within seven (7) days.

5) Provide to the Court and parties within seven days all measures taken to obtain the verified PEH data and the expected timeline for obtaining and reporting the following data:

    a.    The number of beds/opportunities <u>offered</u> (as opposed to "obtained");

---

[4] All references to Data Monitor are requested to begin when Data Monitor is re-instated upon Ninth Circuit resolution.

*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*

b.   The number of beds or opportunities currently available in each Council District;

c.   The number of PEH engaged;

d.   The number of PEH who have accepted offers of shelter or housing;

e.   The number of PEH who have rejected offers of shelter or housing and why offers were rejected; and

f.   The numbers of encampments in each Council District.

6) Daily sanctions for failure to come into compliance with orders.

7) Extension of the Agreement for time period City is out of compliance

8) Payment of Plaintiff's fees and costs in an amount according to proof.

Dated: November 17, 2025            Respectfully submitted,

*/s/ Elizabeth A. Mitchell*
UMHOFER, MITCHELL & KING, LLP
Matthew Donald Umhofer
Elizabeth A. Mitchell

*Attorneys for Plaintiffs*

8
*PLAINTIFF'S RESPONSE TO DEFENDANT'S REQUEST FOR CLARIFICATION*