GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
KAHN A. SCOLNICK, SBN 228686
  kscolnick@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
DENISE C. MILLS, SBN 191992
KATHLEEN KENEALY, SBN 212289
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978.7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a Municipal entity, et al., <br><br> Defendant. | CASE NO. 2:20-cv-02291 DOC (KES) <br><br> Honorable David O. Carter, United States District Judge <br><br> **DEFENDANT CITY OF LOS ANGELES'S OBJECTION TO COURT'S OPENING REMARKS AT EVIDENTIARY HEARING** <br><br> Action Filed:     March 10, 2020 |

OBJECTION TO COURT'S OPENING REMARKS AT CONTEMPT
EVIDENTIARY HEARING
2:20-cv-02291 DOC (KES)

At the beginning of the contempt evidentiary hearing on November 19, 2025, the Court read opening remarks that purported to describe the City's alleged conduct leading to the hearing.  In doing so, the Court appears to have recited largely verbatim the facts alleged in the Alliance's February 2024 Motion for Settlement Compliance and Sanctions—without disclosing that it was doing that.  *Compare* Dkt. 1090 at 6–12, *with* Dkt. 668 at 2–10.  The chart below shows three example excerpts of the Alliance's brief compared to the Court's opening remarks.

| Alliance's February 2024 Motion for Settlement Compliance and Sanctions (with citations and emphasis removed) | Court's opening remarks |
| --- | --- |
| "On March 15, 2023, the City—specifically then-Chief Housing and Homelessness Officer Mercedes Marquez—claimed that the City had significant plans intended to come into compliance with Section 5.2(ii) and (iv). Specifically, Marquez assured Plaintiffs that the City had already put out an RFQ (Request For Quote or Request for Qualification) for service/outreach providers, would be 'fully staffed' with an assigned service/outreach provider for each district by July 1, 2023, and would 'have each district fully assessed' (which was described as identifying the numbers of unsheltered PEH, plus a description of the needs of various groups, including an estimate of the number of individuals with serious mental illness and substance use disorder, in each district) by September 30, 2023." Dkt. 668 at 5. | "On March 15th, 2023, the City, through then Chief Housing and Homeless Officer Mercedes Marquez, claimed that the City had significant plans designed to produce compliance with Sections 5.2(ii) and (iv). Specifically, Marquez assured plaintiffs that the City had already put out an RFQ, request for quote or request for qualification for service outreach providers, would be fully staffed with an assigned service outreach provider for each district by July 1st, 2023, and would have each district fully assessed, which was described as identifying the numbers of unsheltered PEH, plus a description of the needs of various groups, including an estimate of the number of individuals with serious mental illness and substance abuse disorder in each district." Dkt. 1090 at 7. |

1

OBJECTION TO COURT'S OPENING REMARKS AT CONTEMPT EVIDENTIARY HEARING
2:20-cv-02291 DOC (KES)

Gibson, Dunn & Crutcher LLP

| | |
|---|---|
| "But there were two major problems with this proposal. First, the City's proposal was still facially non-compliant with Section 5.2 because it ignored the requirement that the City propose milestones and deadlines for 'encampment . . . reduction in each district.'  This was the fourth instance of the City refusing to comply with Section 5.2 (ii). Second, the City's proposed 'plan' was plainly insufficient—at a rate of 1,800 individuals, citywide, per year, the City would not meaningfully reduce the numbers of the 32,680 unsheltered persons experiencing homelessness in Los Angeles." Dkt. 668 at 7. | "There were two major problems with this proposal.  First, it was facially noncompliant with Section 5.2 because it ignored the requirement that the City propose milestones and deadlines for encampment reduction in each district. You'll see that at settlement agreement, page 8. This marked the fourth instance of the City refusing to comply with Section 5.2(ii). Second, at a rate of 1,800 individuals citywide per year, the plan would not meaningfully reduce the numbers of the 32,680 unsheltered persons experiencing homeless in Los Angeles." Dkt. 1090 at 9. |
| "Two days later, on January 6, 2024, the City (David Michaelson) emailed counsel for the Alliance stating, for the first time 'The City . . . will update the encampment reduction goal to 9,800 . . . and provide district by district milestones.' The City then provided, for the first time—and 14 months after it was required to—proposed milestones and deadlines for each district throughout the City. <br><br>The Alliance then began assessing these new district-by-district numbers, and learned that they were not the product of any consultation with the City Council members who represent those districts. In March 2023, the City had promised to analyze the needs of each district and engage each Council member to arrive at real district-by-district number that reflected the needs of each district in the City. But in January 2024, the City had still not done what it had promised. This was the sixth violation of Section 5.2(ii)." Dkt. 668 at 9. | "Two days later, on January 6th of 2024, the City, David Michaelson, emailed counsel for the Alliance stating for the first time, quote, the City will update the encampment reduction goal to 9,800 and provide district-by-district milestones, end of quote. The City then provided for the first time and 14 months after it was required to, proposed milestones and deadlines for each district throughout the City. <br><br>The Alliance began assessing these new district-by-district numbers and learned that they were not the product of any consultation with the City council members who represent those districts. So these were therefore not real district-by-district numbers that reflected the needs and agreement of each district representative in the City. This was the sixth violation of Section 5.2(ii)." Dkt. 1090 at 11. |

OBJECTION TO COURT'S OPENING REMARKS AT CONTEMPT EVIDENTIARY HEARING
2:20-cv-02291 DOC (KES)

Gibson, Dunn & Crutcher LLP

Although it is unclear what role the Court intends these remarks to play as part of the evidentiary hearing, the City objects to the Court's usage of them to support any factual findings against the City.

*First*, many of the assertions from the Alliance's motion are disputed and are not evidence. The Court, however, recited many of those assertions verbatim, including argumentative inferences and legal conclusions that the City committed six separate "violation[s]" of Section 5.2 of the settlement agreement, Dkt. 668 at 9; Dkt. 1090 at 11, that the City "refus[ed] to comply" with Section 5.2 of the settlement agreement, *e.g*, Dkt. 668 at 5; Dkt. 1090 at 8, and that the City's November 2023 updated encampment engagement, cleaning, and reduction plan had "major problems." Dkt. 668 at 7; Dkt. 1090 at 9. And the Court read these disputed assertions into evidence before hearing any witness testimony and without indicating that they were only allegations. But "arguments and assertions of counsel 'are not evidence'" and should not form a basis for the Court's decision. *Barcamerica International USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002). Accepting the Alliance's factual assertions before hearing the evidence also demonstrates that "[a]n impartial observer could well conclude" that the Court "predetermined the outcome" of the hearing, which deprives the City's right to a fair proceeding. *Crandell v. United States*, 703 F.2d 74, 78 (4th Cir. 1983); *see also Franklin v. McCaughtry*, 398 F.3d 955, 962 (7th Cir. 2005) (when a court "prejudge[s] the facts," it "'cannot render a decision that comports with due process.'"). In short, the City objects to the Court commencing a contested evidentiary hearing by essentially adopting as findings of fact and conclusions of law a disputed and slanted series of allegations from one party.

*Second*, many of the factual assertions recited by the Court are not relevant to the present proceeding because they describe a dispute between the parties that has already been resolved. The Court described the exact facts that ultimately formed the basis of the March 2024 Stipulated Facts (Dkt. 678) and the City's agreement to pay $725,000

Gibson, Dunn & Crutcher LLP

3

OBJECTION TO COURT'S OPENING REMARKS AT CONTEMPT EVIDENTIARY HEARING
2:20-cv-02291 DOC (KES)

to the Alliance in fees and costs, as well as to submit to and fund in significant part the Alvarez & Marsal assessment. Dkt. 713 at 3; Dkt. 720 at 5, 9–14; Dkt. 743 at 3. This conduct cannot be the basis for the imposition of further civil contempt sanctions. Civil contempt sanctions must either compensate a wronged party or coerce an uncooperative party into compliance. *Mine Workers v. Bagwell*, 512 U.S. 821, 829 (1994). Because compensatory sanctions have already been imposed, any additional civil contempt sanctions involving the stipulated facts from the 2024 contempt proceedings must be coercive in nature. But fines "imposed retrospectively for a 'completed act of disobedience'" would punish rather than coerce, thus removing them from the realm of civil penalties. *Id.* at 828; Dkt. 1088 at 2–3.

*Third*, the Court's factual summary identified conduct beyond the scope of the notice for this hearing. Courts can find a party in civil contempt only after adequate notice of the alleged violation—a basic due process right. *United States v. Ayres*, 166 F.3d 991, 996 (9th Cir. 1999). The Court's order defining the scope of this evidentiary hearing covered three topics: (1) the March 2024 Stipulated Facts that led to the Court's finding of bad faith in the prior contempt proceeding, (2) the City's alleged "consistent pattern of delay" including specifically the issues documented by the Special Master and Monitor's reports, and (3) alleged violations of Section 7.1 of the settlement agreement. Dkt. 1079 at 2–3. Yet many of the factual assertions recited at the outset of the hearing weren't identified in that order. The Court's factual summary described the following:

- that the City's initial plans, milestones, and deadlines for beds, creation of shelter, and housing solutions under Sections 5.2(i) and 5.2(iii) was delayed by a month and didn't provide plans, milestones, and deadlines by council district—the purported "first instance of noncompliance." Dkt. 1090 at 6.
- supposed "major problems" with the City's November 29, 2023, updated encampment engagement, cleaning, and reduction plan—the purported "fourth instance" of noncompliance. Dkt. 1090 at 8–9.

4

OBJECTION TO COURT'S OPENING REMARKS AT CONTEMPT EVIDENTIARY HEARING
2:20-cv-02291 DOC (KES)

Gibson, Dunn & Crutcher LLP

- that the City did not provide district-by-district encampment reduction numbers as required by Section 5.2(ii) in its December 29, 2023, revised encampment reduction milestones—the purported "fifth instance" of noncompliance.  Dkt. 1090 at 9–10.

- that the City submitted proposed milestones and deadlines for each council district on January 6, 2024, that "were not the product of any consultation with the City council members who represent those districts"—the purported "sixth violation" of Section 5.2.  Dkt. 1090 at 11.

None of those contentions were identified in the Court's order setting the scope of this hearing, meaning the City was not given adequate notice that these issues could potentially form the basis for civil contempt.  Given that lack of notice, it would violate due process for the Court to hold the City in civil contempt based on any of these facts.

DATED: December 1, 2025

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP


By: /s/ Theane Evangelis
      Theane Evangelis

*Attorneys for Defendant*
CITY OF LOS ANGELES

Gibson, Dunn &
Crutcher LLP

5