IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

LA ALLIANCE FOR HUMAN RIGHTS, )
et al.,                       )
                              )
              Plaintiffs,     )  CASE NO.
                              )  2:20-cv-02291 DOC (KES)
         v.                   )
                              )
CITY OF LOS ANGELES, a        )
Municipal entity, et al.,     )
                              )
              Defendant.      )
_____)

REPORTER'S TRANSCRIPT OF

REMOTE MEET-AND-CONFER PROCEEDINGS

THURSDAY, OCTOBER 30, 2025

REPORTED BY:

LENA MESCALL, CSR NO. 13018, RPR

JOB NO. 7722990

REPORTED REMOTELY FROM IRVINE, CALIFORNIA

PAGES 1 - 27

Page 1

REMOTE APPEARANCES OF COUNSEL:


FOR THE PLAINTIFFS:
     UMHOFER, MITCHELL & KING LLP
     BY:  ELIZABETH MITCHELL, ESQ.
     767 South Alameda Street, Suite 270
     Los Angeles, California 90021
     213.394.7979
     Elizabeth@umklaw.com



FOR DEFENDANT CITY OF LOS ANGELES:
     GIBSON, DUNN & CRUTCHER LLP
     BY:  KAHN A. SCOLNICK, ESQ.
          DANIEL R. ADLER, ESQ.
          TIM BICHE, ESQ.
     333 South Grand Avenue
     Los Angeles, California 90071
     213.229.7000
     kscolnick@gibsondunn.com
     dadler@gibsondunn.com
     tbiche@gibsondunn.com

     LOS ANGELES CITY ATTORNEY'S OFFICE
     BY:  VALERIE L. FLORES, ESQ.
          ARLENE N. HOANG, ESQ.
          JESSICA MARIANI, ESQ.
     200 North Main Street, 6th Floor
     Los Angeles, California 90012
     213.978.7508
     Valerie.flores@lacity.org
     Arlene.hoang@lacity.org
     Jessica.mariani@lacity.org



Page 2

I N D E X


SESSIONS


THURSDAY, OCTOBER 30, 2025                              PAGE

MORNING SESSION                                          4

Page 3

REPORTED REMOTELY FROM IRVINE, CALIFORNIA;

THURSDAY, OCTOBER 30, 2025, 9:02 A.M. TO 9:29 A.M.

MR. SCOLNICK:  Great.  Okay.  Well, good morning.

I wanted to circle up on the 8.2 meet-and-confer and, from our view, just confirm where we think we are on that so that we know what each of the parties needs to do.

And just to recap, from our perspective, we have talked a few times now about the 8.2 obligation and the three different force majeure events that have happened, that we have provided documentation on the fiscal impacts, and our view is that those require -- they amount to a mandatory trigger of the 8.2 pause and the obligation to meet and confer, and that's what we have been doing.

So we would like to just confirm our position, is that we've proposed some modifications -- and I can go through that -- but we have proposed some modifications that are necessary in light of the events that we've outlined; namely, the large-scale civil disturbances as a result of the ICE situation, the fires, and the fiscal emergency in Los Angeles, and then all the financial impacts that have resulted from that

Page 4

that continue to linger.

So we have proposed -- and I can go through them, just so we are clear on the record what the proposals are -- and the Alliance has refused, as far as we understand, to agree to any of those modifications of the obligations in the settlement agreement.

So that's where I think we are, and we can go through in more detail, if helpful.

MS. MITCHELL:  Yeah.  Sure.  Why don't you just -- because we are on the record, why don't you go ahead and restate your proposal anew -- or proposals.

MR. SCOLNICK:  Okay.  So the two main obligations in the settlement agreement are the shelter obligations and the reductions.

As for the shelter obligations, we are actually not proposing -- we are not saying there's got to be any modifications to those, we are just confirming what we understand to already be the case.  You know, one is that, subject to verification, we believe the Court has already ruled that we can count the TLS beds.

And then, two -- I believe we are in agreement, but please confirm -- that we can count affordable housing because that is in the agreement as well.

Liz, I think --

MS. MITCHELL:  No, no.

MR. SCOLNICK:  Oh, there you are.

MS. MITCHELL:  I'm not frozen.  I'm just surprised that we are talking about this.

Yeah, no, I mean, you, obviously, proposed the TLS.  We objected.  The Court agreed with you and said that the data monitor is sufficient to oversee the TLS beds, and that's fine.  So the Court has ruled that you can use the TLS.

The Court has ruled that you can use booking agreements, which is wild to me, but that's the Court's ruling.  It is what it is.

And it also refers to affordable housing.  So you are correct on all of those counts.

MR. SCOLNICK:  Okay.  So then the real issue, I think, is with the reductions.  And what we have asked for is to count all of the previously reported reductions, and that number, I believe, is 6,129.  Those were based, as we have explained, on the City's understanding of what the settlement agreement requires before the Court ruled earlier this year as to what the Court believed it requires.  As you know, the City is appealing that interpretation.

So the one modification is that we have asked to count what we have already reported, what we, in good faith, thought we were doing to follow the settlement

Page 6

agreement.

The other modification we have asked for is that, going forward, the City would satisfy the settlement agreement by completing 400 additional reductions by the deadline, and those reductions will either be accompanied by an offer of shelter or will be of abandoned shelters after notice consistent with the Court's interpretation of the reduction provision.

That's what we are asking for.

MS. MITCHELL:  Okay.  Yeah.  So this is what we have already gone over, and what we have said from the beginning is your representation of what the City understood the reductions to be is wrong.  We negotiated on this pretty heavily in the beginning through the settlement agreement and then again when this came up in 2023 and 2024, and the City was very clear on what it was required to do and didn't do it, hence this issue raising its head.

And so, no, those 6,000 reductions that the City has reported is not consistent with what it had an obligation to do, either in the original settlement agreement discussions or the subsequent encampment reduction discussions.  So that's not something we are willing to do.  As we noted, we would be open to giving you credit for those that do count.  I know that you

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

sent over a number, and the number that was sent over to me was 313 were accompanied by an offer of shelter, and 1,152 reductions constituted removals of abandoned tents or makeshift shelters, meaning no person was present.

I asked follow-up questions on those. I wanted to understand the basis for that determination as well as the data that's relied on. I haven't gotten a response to that. I sent that email 11 days ago -- 13 days ago, and I haven't gotten any response to that. So that's -- I mean, we are willing to certainly consider those the count that qualify. Haven't gotten a response from the City on that.

And we are also willing -- I think the other thing we talked about is extending the time. Right now, you have an obligation to get this done by the middle of 2026, and, you know, we are happy to give you the rest of the settlement agreement to do that. We think that's a reasonable modification. And so those are the modifications that we have proposed.

I don't -- I kind of want to take a step back, though, because this is now the third time that we've talked about this and the third time we've had the same discussion. And what I still don't have answers to is what the City -- like, is the City claiming that all three of these emergencies are still active, what the

Page 8

implications are and what are currently paused, and how are the reductions related to the emergencies?  I don't have answers on any of those.

MR. SCOLNICK:  Okay.  Let me -- I heard three things.  Let me take all three in turn.

So, first, on the modification that the Alliance would be willing to accept, what I am hearing is you would accept the -- only to count the ones that meet the Court's definition, which is, in other words, not a modification at all.  That is -- you're saying count only the ones that count --

MS. MITCHELL:  Oh, to be clear, I don't think that you are in a proper emergency.  I think that's been over.  I've been very clear about that from the very beginning.  I don't think that the ICE raids have anything to do with that.  I think the fiscal emergency is contrived and was foreseen for years.  And I think the only thing that probably qualifies under this is the fires, and that was ten months ago.

So I don't think that any of this is a proper 8.2 basis to change and to try to shoehorn these -- the encampment reduction method the City wants to use into this agreement because of these emergencies.

So I have been pretty clear about that.

MR. SCOLNICK:  I understand.  I'll get to that.

Page 9

That's the third thing.  I'll get to the --

MS. MITCHELL:  Okay.

MR. SCOLNICK:  -- pause and the basis for the pause.  But assuming there's a pause, assuming the 8.2 applies here, we are asking about modifications.  And the first modification that you outlined was count only the ones that count under the Court's, you know, new definition.

MS. MITCHELL:  I don't consider that a modification.  I would just consider that those are the ones that are applicable.

MR. SCOLNICK:  Yeah.  Neither do we.  Okay.  So that's what I am clarifying.

Two, the only modification that I've heard you propose -- and I think it's the one you just outlined -- was extending the term, going longer.  So that's really -- again, to crystallize where we are, that is the modification -- the only modification that the Alliance would consider; correct?

MS. MITCHELL:  I mean, I think, at this time, yes.  I have asked for -- it feels like we are talking to a brick wall, if I'm going to be honest, Kahn, since you guys have started.  Like, previously we had a good working relationship with the City, where we could ask questions, where we could get feedback, we could meet

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

and confer.

So, like, if you had asked me this question nine months ago, I feel like we could have had a good-faith discussion.  It doesn't feel like we are having good-faith discussions now.  I am sending emails.  I don't get responses at all.  I have to send multiple emails.  I have to threaten ex parte applications even to get responses.  So it is difficult for me to say in a vacuum there aren't any modifications.  I think there is a world where the Alliance would probably accept some percentage or some number of reductions in combination with an extended time, if the City needs it.  Like, if the City -- if the City will dismiss the appeal, for example.

MR. SCOLNICK:  Okay.  Understood.  And I don't want to get too far on this road, but just to level set, before my firm's involvement, you-all had brought a motion for, you know, sanctions and settlement compliance.  So it wasn't as if things were perfectly -- you know, perfectly smooth at that time either.

MS. MITCHELL:  Things certainly weren't perfectly smooth, but they were definitely operating a lot better than they are now.

MR. SCOLNICK:  Okay.  Well, I understand your perspective.  Let me get to the third point.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

MS. MITCHELL:  Okay.

MR. SCOLNICK:  And this is maybe the fundamental nature of where we are seeing things differently, is, you know, what is 8.2?  What is the point of it, and what is going on with the pause --

MS. MITCHELL:  Yeah.

MR. SCOLNICK:  So, in our view, 8.2 is under the funding provision of Section 8, and it contemplates that all these things the City is agreeing to do a couple of years ago -- to provide a certain number of beds, to do a certain number of reductions -- that all is going to cost money and take up resources.  And so if there are things that change the calculus of how much money the City has to work with and the resources it could bring to bear on these issues, then that requires a modification of the agreement.

And that's exactly what has happened.  Yes, the fires are no longer burning, but that had a significant financial impact on the City and a resource impact.  The ICE raids and the civil disturbances, that requires a lot of resources to deal with -- police overtime, it requires sanitation work, it has a whole lot of people that have to do things that cost money that are now not able to be spent in the way that the City had planned to spend them in connection with the settlement agreement.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

And, likewise, the fiscal emergency is evidence of that.

So even though the fires are no longer burning, the impact of those fires financially is going to reverberate for quite some time. So in our view, those are extant. They are still affecting our ability to do the things that we are required to do under the agreement, and that's why we are asking for modifications.

MS. MITCHELL: So the -- a couple of things on that. So the first thing is, you said, it has modified -- or the City now has to do things it didn't plan on doing and it is not able to do things that it had planned to do because of these various emergencies.

The problem with that is the City never planned on doing these encampment reductions according to what you-all have said because now I'm being told this is what the City's perspective was. This was not even in the City's plan at all, which is the fundamental problem. And so, again, it very much feels like the City is trying to shoehorn what it wants to do into this agreement and use these 8.2 emergencies as an excuse, which is not what 8.2 is intended to do.

I will say, you know, there are -- there are protests regularly in the City of Los Angeles. We have all seen them quite a bit. I don't think any of those

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

count as an emergency.  It's something that fundamentally the City just has to deal with.

And, again, the fiscal crisis, this emergency is something that the City has seen for years coming, has been referred to in multiple reports to the Court. Matt Szabo has talked about this issue ad nauseam, and the City continued to do what the City wanted to do.

And I think pretty indicative of this is the City is not asking to change its shelter obligation. Right?  That's far more expensive.  And so when you have millions of dollars, billions of dollars, looking at these things, and the City is still wanting to do what the City wants to do and is only asking for modification of the encampment reduction, which is the thing the City doesn't want to do, I think that that only supports my point, that this is a contrived emergency to support the City doing what it wants to do anyway, which is in violation of the agreement and in violation of the Court order.

MR. SCOLNICK:  I think we are just going to have to agree to disagree on this.  You know, in our view, that language is in the contract for a reason.  It is important language.  The parties agreed on it.  And what you're saying here writes the language right out of the agreement.  There's no emergency, no civil

disturbance, no fiscal crisis that would actually affect the City's obligations under the agreement, and we just don't think that's the right way to read this agreement.

So, again, I think I understand your perspective. I think, hopefully, you at least understand where we are coming from. I don't know that we are going to benefit from further dialogue on this. So that's why -- one of the reasons -- one of the main reasons I wanted to have this is to crystallize where we are and then to comply with our 7.3 obligations to meet and confer in advance of a motion.

MS. MITCHELL: Okay.

MR. SCOLNICK: We do intend to bring a motion to -- you know, similar to what the Alliance did in the sense of enforce the provision of the agreement and have the Court weigh in on "what does this mean" and is the Alliance acting in good faith with respect to its dialogue on the modifications that we are proposing and what is the Court going to do to modify the agreement, if modifications are necessary in light of the 7.2 events.

And that's --

MS. MITCHELL: Let me -- that's fine. That's fine. We can agree to disagree on all of that stuff.

What -- why won't the City consider extending

Page 15

the period of time to give the City additional time to engage in more encampment reductions?  Why is that a nonstarter for the City?

MR. SCOLNICK:  Well, for one thing, under what we view as a new interpretation -- again, I know you think that's the original interpretation.  The City believes that's the new interpretation.  But compliance with that is significantly more onerous and significantly more burdensome and, more importantly, much more expensive on the City.  So that's why we are proposing 400.

And I think, in your interpretation, you get an extra year to do, you know, 8,000 or something.  That is just -- that is, like, a fundamentally more onerous and more expensive thing, and even given an extra year, that's not something the City is, you know, prepared at least right now to agree to.

Again, in our view, the obligations changed. In March or June of this year, the obligations changed, and they became significantly different and significantly more expensive.  So an extra year is not going to solve the problem.  You know, if we need to meet that obligation, we'll talk to the City, you know, and we will figure out if and how we can do it.  But for now, that's not -- that's not the modification that

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

aligns with the current situation in the City, which is the significant fiscal and financial crisis.  That's the reason why.  Okay.

MS. MITCHELL:  Is there some -- and I am not authorized to, like, agree to this today.  I am just throwing this out there -- like, is there some halfway point that the City would agree to do -- like, a 5,000 or 6,000 -- commit to that over a year or two, dismiss the appeal, and just move on with our lives?  Like, is that -- is there some halfway point, or is the City like, "No, it needs to be sub 1,000 or bust"?

MR. SCOLNICK:  I, obviously, haven't talked to folks about that.  I believe -- and I can get back to you, if I am wrong on this -- I believe the answer is no.  And I believe we just -- we just need clarity as to what the -- you know, again, what target we are shooting at, and we need the Court to tell us if we are still shooting at the -- you know, the big target or whether the 8.2 --

MS. MITCHELL:  Let me -- oh, I'm sorry, Kahn. I didn't mean to cut you off.  I was just going to say, are you going to submit it to the Court for resolution and then appeal if you don't get the decision that you like, because the Court is outside of its authority under Section 1024 --

MR. SCOLNICK:  I -- I don't know what we would do in that hypothetical scenario.  You know, the City has to approve appeals.  They have to approve what we are going to ask for.  So I can't look that far ahead.

MS. MITCHELL:  Okay.  Well, I mean, you know our position.  I think if there is some reasonable reduction -- I mean, one, in order to even count these 1,500 -- roughly 1,500, we would need to understand where the City is coming from in the calculations, how the City got there, how the City evaluated it, what the underlying data is.

I have asked for all of that, haven't gotten it.  So even to give the City credit at this point for those 1,500, I would need to see that underlying information.

But I think, you know, there may be some reasonable reduction or middle ground that the Alliance would come to, but it would never reach less than a thousand.  Like, that -- the conversation, even what was discussed in 2023, which I think was, like, one to two encampments per month, and those encampments were defined at the time as, like, 50 -- roughly 50 people, average of 50 people.  Even that would have gotten you to, like 4,000 or 5,000, and that was the City's own proposal.

Page 18

So for the City to now suggest that it needs to be -- and that was, by the way, you know, with the documented offers of shelter, et cetera, in that paper that we have all seen multiple times.  Like, even this -- the City's current suggestion that it always anticipated something less is just -- is just disingenuous, Kahn.  I mean, even in the City's own suggestions, it was thousands.

MR. SCOLNICK:  I understand your position.  And on that -- the question, though, that -- this probably isn't going to answer everything you want to know, but these numbers on -- like, the adjusted numbers on the tents and makeshift shelters and on the -- and on the unattended removals, that comes from L.A. Sanitation.  And then CAO sort of cross-referenced that with the data they got from the mayor's office.

So that's kind of -- that's how they are doing -- that's how they are doing it.  I don't know -- I mean, what -- if you could specify what more you want from that -- but that's what's happening.

MS. MITCHELL:  Yeah.  I mean, I think we would just -- I get that you're saying you get the numbers from sanitation.  Like, what are you getting it in?  Is it a spreadsheet?  Is it, like, a notation -- like, these were abandoned.  We couldn't find the people --

Page 19

you know, whatever.  Send me whatever that is and so I can take a look at it.

And then if it's -- I assume, as you say, it's cross-referenced with the Inside Safe program, and so you were just looking at locations and times, clearances, or something like that, and what was offered.  I assume that's what you're talking about, but I need some type of description from the City of what that looks like, how that happened, and what the data is just so I can take a look at it.

I think that that's a pretty reasonable thing, and once we get that, we can give you those numbers.

MR. SCOLNICK:  Yeah.  Understood.  We will talk about that.  Again, I don't know the exact -- spreadsheet versus Word document or whatever format it is, but I can find out.

MS. MITCHELL:  Okay.

MR. SCOLNICK:  I think, from our perspective, that's what we hoped to accomplish.  I mean, you sent an email a few minutes before this.  I candidly was on a call.  I have not had time, and Brad Hamburger is not on, and I will disclose that he's sort of the expert on some of that stuff, but I know that we are looking at it and Brad can get back to you on your question.

But I am not --

MS. MITCHELL:  Just getting back to the 8.2, and then I'll talk about the email that I sent right before this.

MR. SCOLNICK:  All right.

MS. MITCHELL:  I asked a specific question, like, multiple specific questions that I didn't get answers to.

MR. SCOLNICK:  Okay.

MS. MITCHELL:  Like, is the City claiming each of these emergencies is still active and why?

MR. SCOLNICK:  Yes.  I mean, I thought I --

MS. MITCHELL:  Because of the financial impact?

MR. SCOLNICK:  Yes.  Exactly.  So in other words, we have -- just to clarify, you know, we view the obligation -- this is all a provision that deals with funding.  And so the fact that the fires went out, the fact that people -- you know, that -- I mean, look, you know, the ICE situation, there are people being shot, you know, every day, with rubber bullets, if not real bullets in these protests, and so that requires significant resources from the City.  That costs money.  That diverts resources that were otherwise going to things that we planned on doing years ago.

MS. MITCHELL:  I don't think that there are people being shot with rubber bullets every day in the

Page 21

City of Los Angeles by LAPD, Kahn, as a result of these ICE raids.

MR. SCOLNICK:  I think you would be surprised.

MS. MITCHELL:  It's not currently happening.

MR. SCOLNICK:  Well, I think you would be surprised.  A friend of mine over the weekend --

MS. MITCHELL:  No, I work there.  Like, I wouldn't be -- I get -- I know how this works, but these protests have ended.  I have not seen a single stick in months.

MR. SCOLNICK:  My good friend is a trauma surgeon.  He was working with someone last week who was shot by ICE.  Shot in the elbow.

And the whole floor of California Hospital -- the whole ER, the whole trauma wing was shut down because ICE was there.  So it's happening.  I mean, you might not hear about it, you might not see it, but it's happening and this requires significant resources on behalf of the City.

MS. MITCHELL:  Okay.  Well, we will agree to disagree on that, because I don't think that ICE shooting people with rubber bullets has, like, a fiscal impact on the City.

But I think, moving on, the next question I had is what exactly -- what obligations is the City claiming

Page 22

is paused?  Like, what specifically are we talking about?  What is paused?

MR. SCOLNICK:  The obligations at 3, 4, and 5, per the terms of the agreement.

MS. MITCHELL:  But the City hasn't paused them.

MR. SCOLNICK:  The City is, in good faith, trying to go forward and to report numbers and to do the things it's supposed to do.  Our point is simply that the obligations and the ability to claim a breach of any obligations is paused.  The fact that the City is voluntarily, notwithstanding the pause, going forward is one thing, but the contractual requirement itself is paused.

MS. MITCHELL:  Okay.  When is it going to unpause?  Like, what are the conditions that would unpause?

MR. SCOLNICK:  I don't have a specific definition.  I think, as long as these impacts last, they are paused.

MS. FLORES:  And the thing I would say is the fiscal emergency is a yearlong fiscal year emergency; so that is still presently in effect and will be until June 30th of next year.

MR. SCOLNICK:  And hopefully --

MS. MITCHELL:  Okay.  So -- I am sorry.  Go

Page 23

ahead.

MR. SCOLNICK:  I said hopefully, you know, we don't have four more years of civil unrest or three more years of civil unrest from ICE, but that one is a little more nebulous.  The declaration of fiscal emergency is a little more finite, I suppose.

MS. MITCHELL:  Okay.  Well, let's -- if we can talk briefly about the email that I sent, unless there's anything else to talk about under 8.2.

MR. SCOLNICK:  Not from our perspective, no.  Thanks.

MS. MITCHELL:  Okay.  So I sent an email Monday, October 20th, to you and to Bradley, to Jessica, and Arlene, asking about the blank PEH-served section in the City's latest report, what's going on, and where we are from the Section 7.1, all of the information that's still missing, and what the City is doing to try to get that information from LAHSA as required.

So I sent that ten days ago and have gotten no response.  It does not feel like the City is meeting its obligation under Section 24 to meet and confer within a reasonable period of time.  So I would like some response on that today.

MR. SCOLNICK:  Okay.  That is not what this call is about, just to be clear.  I know that -- I

Page 24

appreciate that you raised this right before the call. I was on another call. I have not had time to talk to my client. I can tell you just as a -- you know, as a courtesy, that we are looking into this. I can't promise you a response -- an email today or a call today, but if you can give me a few days, like next week, I will tell you what's going on and I will get some information for you.

MS. MITCHELL: Okay. So just in fairness, because this has been going on for ten days and I got zero response, including, like, "Hey, here are your questions. We will get back to you on this" -- like, I have gotten zero response on this -- if I don't get a substantive response by, like, Monday or Tuesday of next week, I am going to be filing a motion.

I just -- I don't want that to be surprising to anybody because, at this point, like, again, it feels like I am hitting a brick wall in these conversations with the City and I don't think that that's a helpful way to move forward. So I just want to put that out there and, hopefully, we can get something more substantive going, moving forward.

MR. SCOLNICK: We will do what we can. I can't promise you something by Tuesday. You know, again, I know it's ten days and apologies for not at least

acknowledging your email, but these things just take a bit of time to get into.  I mean, we have been talking about this 8.2 for months now, I feel like.  But I hear you.  Again, we will -- apologies for not acknowledging your email.  And we will get back to you next week on what's going on.  I will do my best to get you what I can get you by Tuesday.

MS. MITCHELL:  Okay.  Sounds good.

MR. SCOLNICK:  All right.

MS. MITCHELL:  Thank you.

Anything else to talk about?

MR. SCOLNICK:  Not from our perspective.

MS. MITCHELL:  All right.

MR. SCOLNICK:  Thank you very much.

MS. MITCHELL:  Thanks, guys.  Happy Halloween.

MR. SCOLNICK:  Yeah.  You too.

(The proceedings concluded at 9:29 A.M.)

*    *    *

Page 26

STATE OF CALIFORNIA        )

                          )    ss.

COUNTY OF ORANGE           )


         I, Lena Mescall, Certified Shorthand Reporter, Certificate No. 13018, for the State of California, hereby certify:

         I am the person that stenographically recorded the transcript of proceedings held on Thursday, October 30, 2025.

         The foregoing transcript is a true record of said proceedings.


Dated: November 4, 2025

Page 27

[& - alliance]

**&**

**&**   2:4,11

**0**

**02291**   1:6

**1**

**1**   1:25
**1,000**   17:11
**1,152**   8:3
**1,500**   18:8,8,14
**1024**   17:25
**11**   8:8
**12638**   27:18
**13**   8:9
**13018**   1:23 27:5

**2**

**200**   2:21
**2023**   7:16 18:20
**2024**   7:16
**2025**   1:17 3:4
   4:2 27:9,14
**2026**   8:16
**20th**   24:13
**213.229.7000**
   2:15
**213.394.7979**
   2:7
**213.978.7508**
   2:22
**24**   24:21
**27**   1:25
**270**   2:6
**2:20**   1:6

**3**

**3**   23:3
**30**   1:17 3:4 4:2
   27:9
**30th**   23:23
**313**   8:2
**333**   2:14

**4**

**4**   3:5 23:3
   27:14
**4,000**   18:24
**400**   7:4 16:11

**5**

**5**   23:3
**5,000**   17:7
   18:24
**50**   18:22,22,23

**6**

**6,000**   7:19 17:8
**6,129**   6:17
**6th**   2:21

**7**

**7.1**   24:16
**7.2**   15:20
**7.3**   15:10
**767**   2:6
**7722990**   1:24

**8**

**8**   12:8
**8,000**   16:13
**8.2**   4:6,11,15
   9:21 10:4 12:4
   12:7 13:21,22

17:19 21:1
26:3
**8.2.**   24:9

**9**

**90012**   2:21
**90021**   2:6
**90071**   2:14
**9:02**   4:2
**9:29**   4:2 26:17

**a**

**a.m.**   4:2,2
   26:17
**abandoned**   7:7
   8:3 19:25
**ability**   13:5
   23:9
**able**   12:24
   13:12
**accept**   9:7,8
   11:10
**accompanied**
   7:6 8:2
**accomplish**
   20:19
**acknowledging**
   26:1,4
**acting**   15:17
**active**   8:25
   21:10
**actually**   5:15
   15:1
**ad**   14:6
**additional**   7:4
   16:1

**adjusted**   19:12
**adler**   2:12
**advance**   15:11
**affect**   15:1
**affecting**   13:5
**affordable**   5:22
   6:12
**ago**   8:8,9 9:19
   11:3 12:10
   21:23 24:19
**agree**   5:5 14:21
   15:24 16:17
   17:5,7 22:20
**agreed**   6:5
   14:23
**agreeing**   12:9
**agreement**   5:6
   5:13,21,23 6:19
   7:1,4,15,22
   8:17 9:23
   12:16,25 13:7
   13:21 14:18,25
   15:2,3,15,19
   23:4
**agreements**
   6:10
**ahead**   5:11
   18:4 24:1
**al**   1:4,8
**alameda**   2:6
**aligns**   17:1
**alliance**   1:4 5:4
   9:7 10:19
   11:10 15:14,17
   18:17

Page 1

**[amount - city]**

amount  4:15
anew  5:11
angeles  1:7 2:6
   2:10,14,18,21
   4:24 13:24
   22:1
answer  17:14
   19:11
answers  8:23
   9:3 21:7
anticipated
   19:6
anybody  25:17
anyway  14:17
apologies  25:25
   26:4
appeal  11:13
   17:9,23
appealing  6:22
appeals  18:3
appearances
   2:1
applicable
   10:11
applications
   11:7
applies  10:5
appreciate  25:1
approve  18:3,3
arlene  2:19
   24:14
arlene.hoang
   2:23
asked  6:15,23
   7:2 8:5 10:21

11:2 18:12
   21:5
asking  7:9 10:5
   13:7 14:9,13
   24:14
assume  20:3,7
assuming  10:4
   10:4
attorney's  2:18
authority  17:24
authorized
   17:5
avenue  2:14
average  18:23

**b**

back  8:20
   17:13 20:24
   21:1 25:12
   26:5
based  6:18
basis  8:6 9:21
   10:3
bear  12:15
beds  5:20 6:7
   12:11
beginning  7:12
   7:14 9:15
behalf  22:19
believe  5:19,21
   6:17 17:13,14
   17:15
believed  6:21
believes  16:7
benefit  15:7

best  26:6
better  11:23
biche  2:13
big  17:18
billions  14:11
bit  13:25 26:2
blank  24:14
booking  6:9
brad  20:21,24
bradley  24:13
breach  23:9
brick  10:22
   25:18
briefly  24:8
bring  12:15
   15:13
brought  11:17
bullets  21:19
   21:20,25 22:22
burdensome
   16:9
burning  12:18
   13:2
bust  17:11

**c**

calculations
   18:9
calculus  12:13
california  1:2
   1:24 2:6,14,21
   4:1 22:14 27:1
   27:5
call  20:21 24:25
   25:1,2,5

candidly  20:20
cao  19:15
case  1:5 5:18
central  1:2
certain  12:10
   12:11
certainly  8:10
   11:21
certificate  27:5
certified  27:4
certify  27:6
cetera  19:3
change  9:21
   12:13 14:9
changed  16:18
   16:19
circle  4:6
city  1:7 2:10,18
   6:21 7:3,12,16
   7:20 8:12,24,24
   9:22 10:24
   11:12,13,13
   12:9,14,19,24
   13:11,14,20,24
   14:2,4,7,7,9,12
   14:13,14,17
   15:25 16:1,3,6
   16:10,16,23
   17:1,7,10 18:2
   18:9,10,10,13
   19:1 20:8 21:9
   21:21 22:1,19
   22:23,25 23:5,6
   23:10 24:17,20
   25:19

Page 2

**[city's - discussion]**

| | | | |
|---|---|---|---|
| **city's** 6:18 13:17,18 15:2 18:24 19:5,7 24:15 | 15:11 24:21 | 18:7 | 20:9 |
| **civil** 4:22 12:20 14:25 24:3,4 | **confirm** 4:7,18 5:22 | **counts** 6:13 | **dated** 27:14 |
| **claim** 23:9 | **confirming** 5:17 | **county** 27:2 | **day** 21:19,25 |
| **claiming** 8:24 21:9 22:25 | **connection** 12:25 | **couple** 12:10 13:9 | **days** 8:8,9 24:19 25:6,10 25:25 |
| **clarify** 21:14 | **consider** 8:11 10:9,10,19 15:25 | **court** 1:1 5:19 6:5,7,9,20,21 14:5,18 15:16 15:19 17:17,22 17:24 | **deadline** 7:5 |
| **clarifying** 10:13 | **consistent** 7:7 7:20 | **court's** 6:10 7:8 9:9 10:7 | **deal** 12:21 14:2 |
| **clarity** 17:15 | **constituted** 8:3 | **courtesy** 25:4 | **deals** 21:15 |
| **clear** 5:3 7:16 9:12,14,24 24:25 | **contemplates** 12:8 | **credit** 7:25 18:13 | **decision** 17:23 |
| **clearances** 20:6 | **continue** 5:1 | **crisis** 14:3 15:1 17:2 | **declaration** 24:5 |
| **client** 25:3 | **continued** 14:7 | **cross** 19:15 20:4 | **defendant** 1:9 2:10 |
| **combination** 11:11 | **contract** 14:22 | **crutcher** 2:11 | **defined** 18:22 |
| **come** 18:18 | **contractual** 23:12 | **crystallize** 10:17 15:9 | **definitely** 11:22 |
| **comes** 19:14 | **contrived** 9:17 14:16 | **csr** 1:23 | **definition** 9:9 10:8 23:18 |
| **coming** 14:4 15:6 18:9 | **conversation** 18:19 | **current** 17:1 19:5 | **description** 20:8 |
| **commit** 17:8 | **conversations** 25:18 | **currently** 9:1 22:4 | **detail** 5:8 |
| **completing** 7:4 | **correct** 6:13 10:19 | **cut** 17:21 | **determination** 8:6 |
| **compliance** 11:19 16:7 | **cost** 12:12,23 | **cv** 1:6 | **dialogue** 15:7 15:18 |
| **comply** 15:10 | **costs** 21:21 | **d** | **different** 4:12 16:20 |
| **concluded** 26:17 | **counsel** 2:1 | **d** 3:1 | **differently** 12:4 |
| **conditions** 23:15 | **count** 5:20,22 6:16,24 7:25 8:11 9:8,11,11 10:6,7 14:1 | **dadler** 2:16 | **difficult** 11:8 |
| **confer** 1:16 4:7 4:16 11:1 | | **daniel** 2:12 | **disagree** 14:21 15:24 22:21 |
| | | **data** 6:6 8:7 18:11 19:15 | **disclose** 20:22 |
| | | | **discussed** 18:20 |
| | | | **discussion** 8:23 11:4 |

Page 3

**[discussions - fundamentally]**

discussions
7:22,23 11:5
disingenuous
19:7
dismiss  11:13
17:8
district  1:1,2
disturbance
15:1
disturbances
4:23 12:20
diverts  21:22
doc  1:6
document
20:15
documentation
4:13
documented
19:3
doing  4:17 6:25
13:12,15 14:17
19:18,18 21:23
24:17
dollars  14:11
14:11
dunn  2:11

**e**

e  3:1
earlier  6:20
effect  23:22
either  7:6,21
11:20
elbow  22:13
elizabeth  2:5,7

email  8:8 20:20
21:2 24:8,12
25:5 26:1,5
emails  11:5,7
emergencies
8:25 9:2,23
13:13,21 21:10
emergency
4:24 9:13,16
13:1 14:1,3,16
14:25 23:21,21
24:5
encampment
7:22 9:22
13:15 14:14
16:2
encampments
18:21,21
ended  22:9
enforce  15:15
engage  16:2
entity  1:8
er  22:15
esq  2:5,12,12
2:13,19,19,20
et  1:4,8 19:3
evaluated
18:10
events  4:12,21
15:21
evidence  13:1
ex  11:7
exact  20:14
exactly  12:17
21:13 22:25

example  11:14
excuse  13:21
expensive
14:10 16:10,15
16:21
expert  20:22
explained  6:18
extant  13:5
extended  11:12
extending  8:14
10:16 15:25
extra  16:13,15
16:21

**f**

fact  21:16,17
23:10
fairness  25:9
faith  6:25 11:4
11:5 15:17
23:6
far  5:4 11:16
14:10 18:4
feedback  10:25
feel  11:3,4
24:20 26:3
feels  10:21
13:19 25:17
figure  16:24
filing  25:15
financial  4:25
12:19 17:2
21:12
financially  13:3
find  19:25
20:16

fine  6:7 15:23
15:24
finite  24:6
fires  4:24 9:19
12:18 13:2,3
21:16
firm's  11:17
first  9:6 10:6
13:10
fiscal  4:14,24
9:16 13:1 14:3
15:1 17:2
22:22 23:21,21
24:5
floor  2:21
22:14
flores  2:19
23:20
folks  17:13
follow  6:25 8:5
force  4:12
foregoing  27:10
foreseen  9:17
format  20:15
forward  7:3
23:7,11 25:20
25:22
four  24:3
friend  22:6,11
frozen  6:2
fundamental
12:3 13:18
fundamentally
14:2 16:14

**[funding - kscolnick]**

| | | | |
|---|---|---|---|
| **funding** 12:8 21:16<br>**further** 15:7 | **ground** 18:17<br>**guys** 10:23 26:15 | **housing** 5:23 6:12<br>**human** 1:4<br>**hypothetical** 18:2 | **irvine** 1:24 4:1<br>**issue** 6:14 7:17 14:6<br>**issues** 12:15 |

| **g** | **h** | **i** | **j** |
|---|---|---|---|
| **getting** 19:23 21:1<br>**gibson** 2:11<br>**gibsondunn.c...** 2:15,16,16<br>**give** 8:16 16:1 18:13 20:12 25:6<br>**given** 16:15<br>**giving** 7:24<br>**go** 4:20 5:2,7,10 23:7,25<br>**going** 7:3 10:16 10:22 12:5,12 13:3 14:20 15:7,19 16:22 17:21,22 18:4 19:11 21:22 23:11,14 24:15 25:7,10,15,22 26:6<br>**good** 4:4 6:24 10:23 11:4,5 15:17 22:11 23:6 26:8<br>**gotten** 8:7,9,11 18:12,23 24:19 25:13<br>**grand** 2:14<br>**great** 4:4 | **halfway** 17:6 17:10<br>**halloween** 26:15<br>**hamburger** 20:21<br>**happened** 4:13 12:17 20:9<br>**happening** 19:20 22:4,16 22:18<br>**happy** 8:16 26:15<br>**head** 7:18<br>**hear** 22:17 26:3<br>**heard** 9:4 10:14<br>**hearing** 9:7<br>**heavily** 7:14<br>**held** 27:8<br>**helpful** 5:8 25:19<br>**hey** 25:11<br>**hitting** 25:18<br>**hoang** 2:19<br>**honest** 10:22<br>**hoped** 20:19<br>**hopefully** 15:5 23:24 24:2 25:21<br>**hospital** 22:14 | **ice** 4:23 9:15 12:20 21:18 22:2,13,16,21 24:4<br>**impact** 12:19 12:19 13:3 21:12 22:23<br>**impacts** 4:14 4:25 23:18<br>**implications** 9:1<br>**important** 14:23<br>**importantly** 16:9<br>**including** 25:11<br>**indicative** 14:8<br>**information** 18:15 24:16,18 25:8<br>**inside** 20:4<br>**intend** 15:13<br>**intended** 13:22<br>**interpretation** 6:22 7:8 16:5,6 16:7,12<br>**involvement** 11:17 | **jessica** 2:20 24:13<br>**jessica.mariani** 2:23<br>**job** 1:24<br>**june** 16:19 23:23 |

| **k** |
|---|
| **kahn** 2:12 10:22 17:20 19:7 22:1<br>**kes** 1:6<br>**kind** 8:20 19:17<br>**king** 2:4<br>**know** 4:8 5:18 6:21 7:25 8:16 10:7 11:18,20 12:4 13:23 14:21 15:6,14 16:5,13,16,22 16:23 17:16,18 18:1,2,5,16 19:2,11,18 20:1 20:14,23 21:14 21:17,18,19 22:8 24:2,25 25:3,24,25<br>**kscolnick** 2:15 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[l - november]**

| l | m | | move  17:9 25:20 |
|---|---|---|---|
| **l**  2:19 | **main**  2:21 5:12 15:8 | 9:12 10:2,9,20 11:21 12:1,6 13:9 15:12,23 17:4,20 18:5 19:21 20:17 21:1,5,9,12,24 22:4,7,20 23:5 23:14,25 24:7 24:12 25:9 26:8,10,13,15 | **moving**  22:24 25:22 |
| **l.a.**  19:14 | **majeure**  4:12 | | **multiple**  11:6 14:5 19:4 21:6 |
| **la**  1:4 | **makeshift**  8:4 19:13 | | **municipal**  1:8 |
| **lacity.org**  2:22 2:23,23 | **mandatory** 4:15 | | n |
| **lahsa**  24:18 | **march**  16:19 | | **n**  2:19 3:1 |
| **language**  14:22 14:23,24 | **mariani**  2:20 | **modification** 6:23 7:2 8:18 9:6,10 10:6,10 10:14,18,18 12:16 14:13 16:25 | **nature**  12:3 |
| **lapd**  22:1 | **matt**  14:6 | | **nauseam**  14:6 |
| **large**  4:22 | **mayor's**  19:16 | | **nebulous**  24:5 |
| **latest**  24:15 | **mean**  6:4 8:10 10:20 15:16 17:21 18:5,7 19:7,19,21 20:19 21:11,17 22:16 26:2 | | **necessary**  4:21 15:20 |
| **lena**  1:23 27:4 | | **modifications** 4:19,21 5:5,17 8:19 10:5 11:9 13:8 15:18,20 | **need**  16:22 17:15,17 18:8 18:14 20:8 |
| **level**  11:16 | | | |
| **light**  4:21 15:20 | | | **needs**  4:9 11:12 17:11 19:1 |
| **likewise**  13:1 | **meaning**  8:4 | **modified**  13:11 | **negotiated**  7:13 |
| **linger**  5:1 | **meet**  1:16 4:7 4:16 9:9 10:25 15:10 16:23 24:21 | **modify**  15:19 | **neither**  10:12 |
| **little**  24:4,6 | | **monday**  24:13 25:14 | **never**  13:14 18:18 |
| **lives**  17:9 | | | |
| **liz**  5:24 | | **money**  12:12 12:14,23 21:21 | **new**  10:7 16:5,7 |
| **llp**  2:4,11 | **meeting**  24:20 | | **nine**  11:3 |
| **locations**  20:5 | **mescall**  1:23 27:4 | **monitor**  6:6 | **nonstarter**  16:3 |
| **long**  23:18 | | **month**  18:21 | **north**  2:21 |
| **longer**  10:16 12:18 13:2 | **method**  9:22 | **months**  9:19 11:3 22:10 26:3 | **notation**  19:24 |
| | **middle**  8:15 18:17 | | **noted**  7:24 |
| **look**  18:4 20:2 20:10 21:17 | | | **notice**  7:7 |
| | **millions**  14:11 | **morning**  3:5 4:5 | **notwithstandi...** 23:11 |
| **looking**  14:11 20:5,23 25:4 | **mine**  22:6 | | |
| | **minutes**  20:20 | | **november** 27:14 |
| **looks**  20:9 | **missing**  24:17 | **motion**  11:18 15:11,13 25:15 | |
| **los**  1:7 2:6,10 2:14,18,21 4:24 13:24 22:1 | **mitchell**  2:4,5 5:9,25 6:2 7:10 | | |
| **lot**  11:23 12:21 12:22 | | | |

Page 6

**[number - put]**

| | | | |
|---|---|---|---|
| **number** 6:17 8:1,1 11:11 12:10,11 | 23:14,25 24:7 24:12,24 25:9 26:8 | **peh** 24:14 | 20:11 |
| **numbers** 19:12 19:12,22 20:12 23:7 | **once** 20:12 | **people** 12:22 18:22,23 19:25 21:17,18,25 22:22 | **previously** 6:16 10:23 |
| | **onerous** 16:8 16:14 | | **probably** 9:18 11:10 19:10 |
| **o** | **ones** 9:8,11 10:7,11 | **percentage** 11:11 | **problem** 13:14 13:19 16:22 |
| **objected** 6:5 | **open** 7:24 | **perfectly** 11:19 11:20,22 | **proceedings** 1:16 26:17 27:8,11 |
| **obligation** 4:11 4:16 7:21 8:15 14:9 16:23 21:15 24:21 | **operating** 11:22 | **period** 16:1 24:22 | **program** 20:4 |
| | **orange** 27:2 | **person** 8:4 27:7 | **promise** 25:5 25:24 |
| **obligations** 5:6 5:13,14,15 15:2 15:10 16:18,19 22:25 23:3,9,10 | **order** 14:19 18:7 | **perspective** 4:10 11:25 13:17 15:5 20:18 24:10 26:12 | **proper** 9:13,20 |
| | **original** 7:21 16:6 | | **proposal** 5:11 18:25 |
| **obviously** 6:4 17:12 | **outlined** 4:22 10:6,15 | **plaintiffs** 1:5 2:3 | **proposals** 5:4 5:11 |
| **october** 1:17 3:4 4:2 24:13 27:9 | **outside** 17:24 | **plan** 13:12,18 | **propose** 10:15 |
| | **oversee** 6:6 | **planned** 12:24 13:13,14 21:23 | **proposed** 4:19 4:20 5:2 6:4 8:19 |
| **offer** 7:6 8:2 | **overtime** 12:21 | **please** 5:22 | **proposing** 5:16 15:18 16:11 |
| **offered** 20:7 | **own** 18:24 19:7 | **point** 11:25 12:5 14:16 17:7,10 18:13 23:8 25:17 | **protests** 13:24 21:20 22:9 |
| **offers** 19:3 | **p** | | **provide** 12:10 |
| **office** 2:18 19:16 | **page** 3:4 | **police** 12:21 | **provided** 4:13 |
| **oh** 6:1 9:12 17:20 | **pages** 1:25 | **position** 4:18 18:6 19:9 | **provision** 7:8 12:8 15:15 21:15 |
| **okay** 4:4 5:12 6:14 7:10 9:4 10:2,12 11:15 11:24 12:1 15:12 17:3 18:5 20:17 21:8 22:20 | **paper** 19:3 | **prepared** 16:16 | |
| | **parte** 11:7 | **present** 8:4 | **put** 25:20 |
| | **parties** 4:9 14:23 | **presently** 23:22 | |
| | **pause** 4:15 10:3 10:4,4 12:5 23:11 | **pretty** 7:14 9:24 14:8 | |
| | **paused** 9:1 23:1 23:2,5,10,13,19 | | |

Page 7

**[qualifies - sense]**

| q | | | s |
|---|---|---|---|
| **qualifies** 9:18 | 7:13,19 8:3 9:2 | 12:22 21:20 | **safe** 20:4 |
| **qualify** 8:11 | 11:11 12:11 | 22:18 | **sanctions** 11:18 |
| **question** 11:2 | 13:15 16:2 | **resolution** | **sanitation** |
| 19:10 20:24 | **referenced** | 17:22 | 12:22 19:14,23 |
| 21:5 22:24 | 19:15 20:4 | **resource** 12:19 | **satisfy** 7:3 |
| **questions** 8:5 | **referred** 14:5 | **resources** 12:12 | **saying** 5:16 |
| 10:25 21:6 | **refers** 6:12 | 12:14,21 21:21 | 9:10 14:24 |
| 25:12 | **refused** 5:4 | 21:22 22:18 | 19:22 |
| **quite** 13:4,25 | **regularly** 13:24 | **respect** 15:17 | **scale** 4:22 |

| r | **related** 9:2 | **response** 8:8,9 | **scenario** 18:2 |
|---|---|---|---|
| **r** 2:12 | **relationship** | 8:12 24:20,23 | **scolnick** 2:12 |
| **raids** 9:15 | 10:24 | 25:5,11,13,14 | 4:4 5:12 6:1,14 |
| 12:20 22:2 | **relied** 8:7 | **responses** 11:6 | 9:4,25 10:3,12 |
| **raised** 25:1 | **remote** 1:16 2:1 | 11:8 | 11:15,24 12:2,7 |
| **raising** 7:18 | **remotely** 1:24 | **rest** 8:16 | 14:20 15:13 |
| **reach** 18:18 | 4:1 | **restate** 5:11 | 16:4 17:12 |
| **read** 15:3 | **removals** 8:3 | **result** 4:23 22:1 | 18:1 19:9 |
| **real** 6:14 21:19 | 19:14 | **resulted** 4:25 | 20:13,18 21:4,8 |
| **really** 10:17 | **report** 23:7 | **reverberate** | 21:11,13 22:3,5 |
| **reason** 14:22 | 24:15 | 13:4 | 22:11 23:3,6,17 |
| 17:3 | **reported** 1:23 | **right** 8:14 | 23:24 24:2,10 |
| **reasonable** | 1:24 4:1 6:16 | 14:10,24 15:3 | 24:24 25:23 |
| 8:18 18:6,17 | 6:24 7:20 | 16:17 21:2,4 | 26:9,12,14,16 |
| 20:11 24:22 | **reporter** 27:4 | 25:1 26:9,13 | **section** 12:8 |
| **reasons** 15:8,9 | **reporter's** 1:15 | **rights** 1:4 | 17:25 24:14,16 |
| **recap** 4:10 | **reports** 14:5 | **road** 11:16 | 24:21 |
| **record** 5:3,10 | **representation** | **roughly** 18:8 | **see** 18:14 22:17 |
| 27:10 | 7:12 | 18:22 | **seeing** 12:3 |
| **recorded** 27:7 | **require** 4:14 | **rpr** 1:23 | **seen** 13:25 14:4 |
| **reduction** 7:8 | **required** 7:17 | **rubber** 21:19 | 19:4 22:9 |
| 7:23 9:22 | 13:6 24:18 | 21:25 22:22 | **send** 11:6 20:1 |
| 14:14 18:7,17 | **requirement** | **ruled** 5:20 6:7 | **sending** 11:5 |
| **reductions** 5:14 | 23:12 | 6:9,20 | **sense** 15:15 |
| 6:15,17 7:5,5 | **requires** 6:19 | **ruling** 6:11 | |
| | 6:21 12:15,20 | | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[sent - third]**

| | | | |
|---|---|---|---|
| **sent** 8:1,1,8 20:19 21:2 24:8,12,19 | **smooth** 11:20 11:22 | **substantive** 25:14,22 | **tbiche** 2:16 |
| **served** 24:14 | **solve** 16:22 | **sufficient** 6:6 | **tell** 17:17 25:3 25:7 |
| **session** 3:5 | **sorry** 17:20 23:25 | **suggest** 19:1 | **ten** 9:19 24:19 25:10,25 |
| **sessions** 3:2 | **sort** 19:15 20:22 | **suggestion** 19:5 | **tents** 8:3 19:13 |
| **set** 11:16 | **sounds** 26:8 | **suggestions** 19:8 | **term** 10:16 |
| **settlement** 5:6 5:13 6:19,25 7:4,15,21 8:17 11:18 12:25 | **south** 2:6,14 | **suite** 2:6 | **terms** 23:4 |
| **shelter** 5:13,15 7:6 8:2 14:9 19:3 | **specific** 21:5,6 23:17 | **support** 14:16 | **thank** 26:10,14 |
| **shelters** 7:7 8:4 19:13 | **specifically** 23:1 | **supports** 14:15 | **thanks** 24:11 26:15 |
| **shoehorn** 9:21 13:20 | **specify** 19:19 | **suppose** 24:6 | **thing** 8:14 9:18 10:1 13:10 14:14 16:4,15 20:11 23:12,20 |
| **shooting** 17:16 17:18 22:22 | **spend** 12:25 | **supposed** 23:8 | |
| **shorthand** 27:4 | **spent** 12:24 | **sure** 5:9 | **things** 9:5 11:19,21 12:3,9 12:13,23 13:6,9 13:11,12 14:12 21:23 23:8 26:1 |
| **shot** 21:18,25 22:13,13 | **spreadsheet** 19:24 20:15 | **surgeon** 22:12 | |
| **shut** 22:15 | **ss** 27:1 | **surprised** 6:3 22:3,6 | |
| **signature** 27:18 | **started** 10:23 | **surprising** 25:16 | **think** 4:8 5:7 5:24 6:15 8:13 8:17 9:12,13,15 9:16,17,20 10:15,20 11:9 13:25 14:8,15 14:20 15:3,4,5 16:6,12 18:6,16 18:20 19:21 20:11,18 21:24 22:3,5,21,24 23:18 25:19 |
| **significant** 12:18 17:2 21:21 22:18 | **state** 27:1,5 | **szabo** 14:6 | |
| **significantly** 16:8,9,20,21 | **states** 1:1 | **t** | |
| **similar** 15:14 | **stenographic...** 27:7 | **take** 8:20 9:5 12:12 20:2,10 26:1 | |
| **simply** 23:8 | **step** 8:20 | **talk** 16:23 20:13 21:2 24:8,9 25:2 26:11 | |
| **single** 22:9 | **stick** 22:9 | | |
| **situation** 4:23 17:1 21:18 | **street** 2:6,21 | **talked** 4:11 8:14,22 14:6 17:12 | **third** 8:21,22 10:1 11:25 |
| | **stuff** 15:24 20:23 | | |
| | **sub** 17:11 | **talking** 6:3 10:21 20:7 23:1 26:2 | |
| | **subject** 5:19 | | |
| | **submit** 17:22 | **target** 17:16,18 | |
| | **subsequent** 7:22 | | |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[thought - years]**

| | | | |
|---|---|---|---|
| **thought** 6:25 21:11 | **turn** 9:5 | **v** | **week** 22:12 25:7,15 26:5 |
| **thousand** 18:19 | **two** 5:12,21 10:14 17:8 18:20 | **v** 1:6 | **weekend** 22:6 |
| **thousands** 19:8 | **type** 20:8 | **vacuum** 11:9 | **weigh** 15:16 |
| **threaten** 11:7 | | **valerie** 2:19 | **went** 21:16 |
| **three** 4:12 8:25 9:4,5 24:3 | **u** | **valerie.flores** 2:22 | **wild** 6:10 |
| **throwing** 17:6 | **umhofer** 2:4 | **various** 13:13 | **willing** 7:24 8:10,13 9:7 |
| **thursday** 1:17 3:4 4:2 27:8 | **umklaw.com** 2:7 | **verification** 5:19 | **wing** 22:15 |
| **tim** 2:13 | **unattended** 19:14 | **versus** 20:15 | **word** 20:15 |
| **time** 8:14,21,22 10:20 11:12,20 13:4 16:1,1 18:22 20:21 24:22 25:2 26:2 | **under** 9:18 10:7 12:7 13:6 15:2 16:4 17:25 24:9,21 | **view** 4:7,14 12:7 13:4 14:22 16:5,18 21:14 | **words** 9:9 21:14 |
| | | | **work** 12:14,22 22:7 |
| | **underlying** 18:11,14 | **violation** 14:18 14:18 | **working** 10:24 22:12 |
| **times** 4:11 19:4 20:5 | **understand** 5:5 5:18 8:6 9:25 11:24 15:4,6 18:8 19:9 | **voluntarily** 23:11 | **works** 22:8 |
| **tls** 5:20 6:5,6,8 | | **w** | **world** 11:10 |
| **today** 17:5 24:23 25:5,6 | **understanding** 6:19 | **wall** 10:22 25:18 | **writes** 14:24 |
| | | | **wrong** 7:13 17:14 |
| **told** 13:16 | **understood** 7:13 11:15 20:13 | **want** 8:20 11:16 14:15 19:11,19 25:16 25:20 | **x** |
| **transcript** 1:15 27:8,10 | | | **x** 3:1 |
| **trauma** 22:11 22:15 | **united** 1:1 | **wanted** 4:6 8:5 14:7 15:9 | **y** |
| **trigger** 4:15 | **unpause** 23:15 23:16 | **wanting** 14:12 | **yeah** 5:9 6:4 7:10 10:12 12:6 19:21 20:13 26:16 |
| **true** 27:10 | **unrest** 24:3,4 | **wants** 9:22 13:20 14:13,17 | |
| **try** 9:21 24:17 | **use** 6:8,9 9:22 13:21 | **way** 12:24 15:3 19:2 25:20 | **year** 6:20 16:13 16:15,19,21 17:8 23:21,23 |
| **trying** 13:20 23:7 | | **we've** 4:19,22 8:21,22 | **yearlong** 23:21 |
| **tuesday** 25:14 25:24 26:7 | | | **years** 9:17 12:10 14:4 |

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

**[years - zero]**

| 21:23 24:3,4 |
| :---: |
| **z** |
| **zero**  25:11,13 |

Page 11