# Exhibit B

| | |
|---|---|
| **From:** | Elizabeth Mitchell |
| **To:** | Hamburger, Bradley J.; Scolnick, Kahn A.; Matthew Umhofer |
| **Cc:** | Evangelis, Theane; McRae, Marcellus; Fuster, Patrick J.; Biché, Tim |
| **Subject:** | RE: LA Alliance v. City of LA |
| **Date:** | Friday, August 15, 2025 4:22:00 PM |

That works.  Please circulate an invite.  Will you also have this session transcribed?

Another question to add re: the City's "pause": when will it end, in the City's view?

Have a good weekend,
Liz

**From:** Hamburger, Bradley J. <BHamburger@gibsondunn.com>
**Sent:** Friday, August 15, 2025 4:03 PM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Liz:  Great to see you today.  Can we do 1 pm next Friday, August 22?

**Bradley J. Hamburger**
Partner

T: +1 213.229.7658 | M: +1 818.219.3917
BHamburger@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Thursday, August 14, 2025 3:44 PM
**To:** Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Oh, I was proposing that we move forward with tomorrow and set another time as well, but if you want to reschedule tomorrow altogether that's fine.

1

Can we find a solid 2-3 hours? Happy to host at our office to facilitate conversation if that's possible.

Our available times:

- In person:
    - Monday, 8/18: 10am-4pm
    - Wednesday, 8/20: 1pm-3pm
    - Thursday, 8/21: 2:30-5pm
- Virtual (in addition to the above):
    - Thursday, 8/21: 8am-11am
    - Friday, 8/22: 9am-11am; 1pm-3pm

If none of these work, please provide your dates/times and I'll see what we can do to make it work.

Best,
Liz

---

**From:** Hamburger, Bradley J. <BHamburger@gibsondunn.com>
**Sent:** Thursday, August 14, 2025 3:29 PM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Liz:  Thanks for sending this.  We agree that a further conference next week rather than tomorrow afternoon would be more productive, so we will take down the conference for tomorrow and revert with times we can do next week (it will likely be tomorrow before I can send you proposed time).

**Bradley J. Hamburger**
Partner

T: +1 213.229.7658 | M: +1 818.219.3917
BHamburger@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Thursday, August 14, 2025 2:06 PM
**To:** Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Scolnick, Kahn A.

2

<KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus
<MMcRae@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim
<TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Bradley,

I've had the opportunity to review the transcript from the meet-and-confer August 7, and am expounding on the issues raised therein, as well as your questions about the additional issues we've raised since 7/25.  As always, feel free to reach out directly if you have any clarifying questions.  Multiple questions were raised about whether we have any proposed modifications, which we do not.  Fundamentally we do not believe the emergencies you've identified in any way provide a sufficient basis for the City to decrease its commitments.  However, to the extent the City requires additional time to meet its obligations due to the emergencies/pauses you've identified, that's probably fair—maybe it's a concomitant extension of the agreement for all time which is paused. Lets discuss.

On a higher level, I think a lot of these issues can be resolved once you provide your updated bed plan and we can discuss as required.  It could be that we are fighting a shadow battle when we actually can get behind what you are proposing.  Rather than talk in hypotheticals, it is far easier to address solid proposals.  When can you get that to us?

On the topics raised in the meet-and-confer:

<u>TLS Subsidies</u>
- As a general proposition, the Alliance does not have an objection to TLS beds being used to satisfy part of the settlement agreement requirements.  However, the issue is with the source of funding and whether a percentage of those beds would exist regardless of City participation. The LAHSA tracking mechanisms are obviously another huge source of contention given the absurd lengths required just to verify the existence of the beds.
    - Funding: it isn't clear to us at all that the City has the right to count all the beds it counted under the Roadmap Agreement.  The County/State/Federal funding to our understanding was going to fund those TLS slots *regardless* of anything the City was doing.  Those were not matching funds, they weren't grant funding that the City applied for and obtained, and they weren't under a program organized by the City.  It appears LAHSA was getting money directly from various sources, combining them into a single account, and the City was counting all of the beds funded therefrom as City beds.  While the Court ultimately declined to find a violation based on this issue, the Alliance will not recognize these slots unless **the City can identify what role the City has had in obtaining and increasing the number of beds from what would be in existence regardless.  If you can get that plan to us, we will consider it.**
    - Tracking:  there needs to be a better mechanism in place than what we've witnessed so far.  LAHSA's data is unquestionably a mess.  **Please provide us the plan for tracking these beds that will actually allow us/the court to**

3

**verify the existence of those beds**.

Affordable Housing Units
- The City's obligation is to provide homeless housing and shelter solutions specifically to meet the needs of the unsheltered population.  Affordable housing is not a bad policy choice, and one the City is free to make, but it does not belong in this settlement.

Fiscal Emergency
- The irony of the City claiming a fiscal emergency cannot be lost on your client.  The City voted in billions of dollars in sworn and civilian pay increases over the last two years despite massive red flags and warnings by Mr. Szabo that those choices were going to send the City into the red, made the *choice* to dedicate funds to the most expensive homeless housing solutions, and yet Mr. Szabo testified on the record that there was no fiscal crisis just two months ago. I'm not sure how to take the declaration of emergency seriously under that scenario. This financial cliff is one that has been anticipated for years yet the City continued to make choices that sent it in that direction.  One cannot buy exclusively Gucci and credibly claim poverty.  Again, if you need additional time to meet your obligations, we'll consider it but given the City's ongoing decisions, historical choices, and disavowal by your CAO of any fiscal crisis, it's hard to give significant credence to the City's claims of emergency.

Encampment Reductions
- 6,129 Reductions
    - You've asked us to accept that all 6,129 reported reductions counts towards the City's 9,800 committed goal. Our question to you is **how many valid encampment reductions there have actually been to date, such that the Court's definition has been satisfied**? i.e. reductions of a more permanent nature such as the person has been sheltered, placed in a medical bed, reunited with family, etc. We do want to give the City credit for what the City's already done.  When I was negotiating with Scott Marcus on this issue in the fall of 2023, the City was tracking its Inside Safe metrics, and it was understood that's how the City would be meeting its 9,800 goal. In fact, Scott believed that they would be nearly 1/3 of the way there at the end of 2023. So if you can get us those metrics, that's a good starting point for what we are willing to accept.
    - If the City is unable to tell us the number it has accomplished under the Court's definition, please tell us that and we can go from there.  Perhaps provide some estimation of what the City has accomplished (1,000? 2,000? Based on what information?) so we can discuss.  We do not believe that the City's declared emergencies reduces the City's overall obligation but may afford the City additional time to accomplish its obligations depending on the circumstances.
- 400 Reductions
    - To Matt's point from the meet-and-confer, this is a non-starter.  It's not dissimilar from what the City was originally proposing in 2023 which the Alliance rejected.  It is woefully below the need.  The City and Alliance agreed on systematic and significant encampment reduction and we expect that to happen.  Given the crises you have outlined, if the City needs more time to accomplish these goals, we are willing to consider it.

4

Separately, you have a fundamental misunderstanding of how the negotiations happened on the encampment reductions. You can see just by looking at the reporting obligations under Section 7.1 that the City's shelter, outreach, and encampment reduction efforts were always designed to go together—otherwise the reporting obligations make no sense. The 9,800 reduction number always intended to represent outreach operations to get people inside or otherwise off the street, which is reflected in the multiple in-person meetings we had on the subject, the emails, and the various iterations of the plans the City submitted. At no point during discussions with the Alliance did the City announce its intention to decouple the encampment reduction number from outreach. Given this history, we are unsympathetic to complaints now that the Court's definition—which is what the parties always understood during discussions—is different than the City's understanding.

<u>Monitor</u>
- As we noted, we have an issue with the City hiring RAND given the significant partnership and funding the City has provided for RAND over the last several years. That said, can you provide a list of all the partnerships and funding between the City and RAND over the last decade? Perhaps it isn't as extensive as we understand it to be.
- I recognize the City has an objection to A&M but before GDC was involved A&M had a very good relationship with the City and I believe genuinely wants to see their work produce fruit. A&M spent over a year going through the City's data and is by far in the best place to 1) be able to help define a scope of what the data monitor would look like and 2) participate as the monitoring agency. If the City isn't open to A&M participating as the monitor, is the City open to working with A&M to further refine the scope of the monitor's activities?
- Other options which have been suggested to us:
  - Tim Campbell – he is a semi-retired professional auditor, having managed I think Torrance's performance audit program and occasionally writes for CityWatch. He was involved in early oversight of A&M. From the data side of things, he probably knows more about the City's homeless data than any other person/entity outside of the City other than A&M. Full disclosure: he's done some work with the Alliance in the past, never paid, to help us understand the data and budgets. But it's been a couple of years, and I don't see any conflict at this point. He would likely need to bring on additional assistance to do this job.
  - Daniel Garrie – he works for JAMS as a mediator/special master and specializes in data-related issues. He helped LA County work out their website issues last year in this case, and he was appointed as a discovery referee in an arbitration I was tangentially involved in several years ago that involved data management issues. I've never had a personal conversation with him, but he's been suggested to me as someone who is highly qualified though he would likely need to have a team to help him.
  - Jan Perry – former LA Councilwoman and general manager of LA's economic and workforce development department. I don't know how well she knows data issues, but she does know the City of LA very well and would be able to navigate the department issues, though she would also likely need a team to assist.
  - USC/UCLA are considerations as well, but those raise the some concerns as RAND. We welcome additional thoughts.

5

- As far as timing to produce the reports, we think that's a premature analysis, and will depend on the monitor's perspective.  It may be that there doesn't need to be additional time, or that 30 days is sufficient.
- Regarding the scope, we don't think the court's order is sufficiently clear, and any monitor is going to want more direction and detail about what they are actually doing.  We don't agree with your limitations.

Emergency Pause
- Our question is how the City views its obligations in light of the self-declared emergencies under Section 8.2.  What obligations does the City have and not have at this point, in the City's view?


From 7/25 email:

- Section 6: Dispute Resolution Process: The parties early on were engaged in multiple planning sessions but those stopped and should be re-engaged. *This issue is self-explanatory.  We need to re-engage on designing this dispute resolution process.*
- Section 7.1: The City has an ongoing obligation to report in its quarterly status updates many things which it is not currently reporting, including:
    - Number of beds/opportunities offered *City has never reported this*
    - Number of beds/opportunities currently available *City has never reported this*
    - Number of PEH engaged *City has never reported this*
    - Number of PEH who have accepted offers of shelter/housing *City has never reported this*
    - Number of PEH rejected offers and why offers were rejected rejected *City has never reported this*
    - Number of encampments in each council district *City has never reported this.*
- Section 9: Ensuring the County is complying with its obligations *The City has not been cooperative with holding the County accountable for doing the identified things, and needs to be more of an active participant in this.  The County is also failing in its obligations, particularly in the service and outreach front, and its impacting the City significantly (i.e. the City has to spend money on its own mental health and IMD teams.  That's the County's responsibility, and the City needs to be clear about what it isn't getting from the County)*
- Section 10: Identification of barriers in affordable housing. *This is self-explanatory.*

I think all of this is going to take far more than 2 hours, so we may want to get another date/time on the books right away. Please suggest some times that work for your team.

Thanks,
Liz

---

**From:** Hamburger, Bradley J. <BHamburger@gibsondunn.com>
**Sent:** Monday, August 11, 2025 3:20 PM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus

6

<MMcRae@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Thanks, Liz.  We'd like to stick to a 2 pm start time on Friday given the availability of others on our team.  We can send around a Zoom link.

I am aware of your July 25 email; what I was requesting was more detail about the basis for your list of purported violations.  For example, what is the Alliance contending the City is not doing with respect to Section 9 (the same could be said about the other sections of the agreement that you reference)?

**Bradley J. Hamburger**
Partner

T: +1 213.229.7658 | M: +1 818.219.3917
BHamburger@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Monday, August 11, 2025 2:13 PM
**To:** Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

I think the City will be present at the 8/15 10am meeting with Special Master Goethals, correct? Lets meet directly after (which I suppose could be 2pm but hopefully is earlier).  I'm currently scheduled to be in court Thursday morning but if that changes I can let you know.

Regarding the "myriad issues" I sent those to you on 7/25, but I'll include them again below.  Our positions are pretty clear, and I'm not sure what else you're looking for here but if you have specific questions I can answer them.  I know Matt also committed to putting a couple of things in writing during your meeting last week, and we'll get those to you in the next day or so.

……………
      From 7/25 email:

In addition to the City's 8.2 request, we'd also like to use this time to meet and confer regarding appointment of the data monitor pursuant to the Court's order and the parties' Agreement (Section 7.2), including both (a) identification of potential monitors and (b) scope of monitorship.  We'd also like to meet and confer regarding other provisions of the Settlement Agreement which have been ignored or otherwise are not being followed, specifically:
- Section 6: Dispute Resolution Process: The parties early on were engaged in multiple planning sessions but those stopped and should be re-engaged.
- Section 7.1: The City has an ongoing obligation to report in its quarterly status updates many things which it is not currently reporting, including:
  o Number of beds/opportunities offered
  o Number of beds/opportunities currently available
  o Number of PEH engaged
  o Number of PEH who have accepted offers of shelter/housing
  o Number of PEH rejected offers and why offers were rejected rejected
  o Number of encampments in each council district
- Section 9: Ensuring the County is complying with its obligations
- Section 10: Identification of barriers in affordable housing.

Thanks,
Liz

---

**From:** Hamburger, Bradley J. <BHamburger@gibsondunn.com>
**Sent:** Monday, August 11, 2025 12:02 PM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

We cannot do your proposed times but we could do the following windows:  Thursday Aug. 14 between 9:30 am to 11 am and Friday Aug. 15 between 2 pm to 4 pm.  We do not think it would make sense to get on a conference, however, until you have sent us your written questions / positions beforehand (including more details on the purported "myriad issues the City isn't doing per the agreement"), as that will make the conference much more productive.

**Bradley J. Hamburger**
Partner

T: +1 213.229.7658 | M: +1 818.219.3917
BHamburger@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

8

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Friday, August 8, 2025 12:20 PM
**To:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Counsel:

I understand there were some things we agreed to do at the conclusion of the meet and confer, including putting some questions in writing, which we will get to you early next week.  In the meantime, we'd like to get a new date/time on calendar to continue the meet and confer as I understand we didn't even get to the myriad issues the City isn't doing per the agreement.  Below are some dates/times are available:

- Monday, 8/11 3-5pm
- Tuesday, 8/12 3:30-5:30pm
- Thursday, 8/14: 12pm-3:30pm

We can also make ourselves available nights and weekends as needed.

Best,
Liz

**From:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Sent:** Wednesday, August 6, 2025 4:30 PM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>; Biché, Tim <TBiche@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Liz/Matt:

As promised, here's a list of the modifications to the settlement agreement in light of the three separate 8.2 incidents that have occurred.

1.    **Shelter and Housing Solutions**

- Acknowledgment that the City can count new time-limited subsidies towards the total required number of housing or shelter solutions, which is authorized under the Settlement Agreement.

- Acknowledgment that the City can count affordable housing units for extremely-low-income persons (i.e., those with 30% or less of the local area

9

median income) towards the total required number of housing or shelter solutions.

2.     **Encampment Reductions**

- Agreement that all 6,129 reductions the City has reported through March 31, 2025 count towards the reductions.

- Agreement that the City will make 400 reductions by the June 2026 deadline, commencing with the date after the last quarter the City reported on.

As for the monitor that Judge Carter has ordered, the City proposes to retain a team from the RAND Corporation to serve in that role.  The exact team that would be retained remains to be determined, but may include all or some of the following individuals:

- Jason M. Ward
(https://www.rand.org/about/people/w/ward_jason_m.html)
- Maya Buenaventure
(https://www.rand.org/about/people/b/buenaventura_maya.html)
- James Anderson
(https://www.rand.org/about/people/a/anderson_james_m.html)
- Sarah B. Hunter
(https://www.rand.org/about/people/h/hunter_sarah_b.html)
- Roland Neil
(https://www.rand.org/about/people/n/neil_roland.html)

The City believes that the duties of the monitor should be limited to those expressly outlined in Judge Carter's order, Dkt. 991:

- Reviewing City's data prior to publication of quarterly reports;
- Verifying the reported numbers;
- Engaging with the Parties and LAHSA to resolve data issues;
- Providing public reports on data compliance;
- Reviewing and providing guidance on public accessibility to the contracts and invoices for third-party service providers; and
- Reviewing whether offers of shelter or housing were made for encampment reductions, including determining the documentation required.

Additionally, given the new requirement for the monitor to review the City's data before publication of quarterly reports, the City would like an agreement that it has 45 days following the close of a quarter to file its quarterly reports.

Finally, you inquired about the factual basis for the City's invocation of Section 8.2.  We will be happy to explain more at our meeting, but the attached documents outline (a) the fiscal impact of the fires in January 2025, (b) the fiscal impact of the civil unrest this summer, and (c) the City's on-going fiscal emergency.

Talk to you tomorrow.  Thanks.

**Kahn A. Scolnick**

T: +1 213.229.7656
KScolnick@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Scolnick, Kahn A.
**Sent:** Wednesday, July 30, 2025 10:21 AM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Perfect, thanks, and yes, agreed.  And will do re the rest of the info you requested—it's been hard enough to find a time that works for everyone, so that's step 2!

---

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Wednesday, July 30, 2025 10:14 AM
**To:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Hi Kahn,

I will be on a plane but Matt can handle during that time.  Please circulate the dial-in (include me in case flight gets delayed—you never know!) As previously mentioned, for the meet-and-confer to be most effective it would be helpful to know ahead of time 1) the factual basis for your claims that the three identified events should impact the Agreement in some way, and 2) what exactly the City is requesting be modified as a result.

I expect at the same time we'll be able to meet and confer about the issues I identified. If you disagree please let me know ASAP.

Thanks,
Liz

11

**From:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Sent:** Wednesday, July 30, 2025 10:00 AM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Liz, how about next Thursday (8/7) between 1230 and 330?

**Kahn A. Scolnick**

T: +1 213.229.7656
KScolnick@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Sunday, July 27, 2025 6:23 PM
**To:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Hi Kahn,

That time does not work for us unfortunately. If the other times we proposed don't work, please suggest a few other dates/times and this week and we can try to have either Matt or I make it. Otherwise we'll need to push it into next week.

Thanks,
Liz

---

**From:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Sent:** Sunday, July 27, 2025 7:19 AM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Liz, we'd like Matt Szabo to join this meeting and he's available from 1:30-3 on Thursday. Can you make that work?

**Kahn A. Scolnick**

T: +1 213.229.7656
KScolnick@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Sent:** Friday, July 25, 2025 5:37 PM
**To:** Elizabeth Mitchell <elizabeth@umklaw.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Thanks, Liz, we'll get back to you on those requests, but in the meantime I'll send a hold for 9-11 on Thursday.

**Kahn A. Scolnick**

T: +1 213.229.7656
KScolnick@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

---

**From:** Elizabeth Mitchell <elizabeth@umklaw.com>
**Sent:** Friday, July 25, 2025 2:44 PM
**To:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>; Matthew Umhofer <matthew@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** RE: LA Alliance v. City of LA

Hi Kahn,

Next week is a bit tough for us, but we can block out the following times:

- Monday, 7/28: 2:30-5:30

- Wednesday, 7/30 2:30pm-5:30pm
- Thursday, 7/31 9am-11am

If none of those work for you, please provide dates and times the following week that work for your team and we'll find something that works.

To make the call most efficient, prior to the call please let us know what exactly the City proposes in terms of modification, and how the ICE issues impact the City's obligations

In addition to the City's 8.2 request, we'd also like to use this time to meet and confer regarding appointment of the data monitor pursuant to the Court's order and the parties' Agreement (Section 7.2), including both (a) identitification of potential monitors and (b) scope of monitorship.  We'd also like to meet and confer regarding other provisions of the Settlement Agreement which have been ignored or otherwise are not being followed, specifically:

- Section 6: Dispute Resolution Process: The parties early on were engaged in multiple planning sessions but those stopped and should be re-engaged.
- Section 7.1: The City has an ongoing obligation to report in its quarterly status updates many things which it is not currently reporting, including:
    - Number of beds/opportunities offered
    - Number of beds/opportunities currently available
    - Number of PEH engaged
    - Number of PEH who have accepted offers of shelter/housing
    - Number of PEH rejected offers and why offers were rejected rejected
    - Number of encampments in each council district
- Section 9: Ensuring the County is complying with its obligations
- Section 10: Identification of barriers in affordable housing.

Thanks, and have a great weekend,
Liz

---

**From:** Scolnick, Kahn A. <KScolnick@gibsondunn.com>
**Sent:** Thursday, July 24, 2025 5:20 PM
**To:** Matthew Umhofer <matthew@umklaw.com>; Elizabeth Mitchell <elizabeth@umklaw.com>
**Cc:** Evangelis, Theane <TEvangelis@gibsondunn.com>; McRae, Marcellus <MMcRae@gibsondunn.com>; Hamburger, Bradley J. <BHamburger@gibsondunn.com>; Fuster, Patrick J. <PFuster@gibsondunn.com>
**Subject:** LA Alliance v. City of LA

Matt and Liz:

I'm writing to re-engage the City's meet-and-confer efforts under section 8.2 of the Settlement Agreement with respect to the LA fires and their effects on the region (the declaration of emergency is still in place).  In addition, the City has had two other events that trigger the "pause" and meet-and-confer obligations in the Settlement Agreement: (1) the City Council declared a fiscal emergency in late June; and (2) the large-scale civil disturbances in response to the ICE raids.

14

Given the importance of these issues, we'll have a court reporter transcribe the discussion, at the City's expense,

Please let us know a few times next week when you'd be available to have this meeting.  Thanks.

**Kahn A. Scolnick**

T: +1 213.229.7656
KScolnick@gibsondunn.com

**GIBSON DUNN**
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue, Los Angeles, CA 90071-3197

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the

intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.

This message may contain confidential and privileged information for the sole use of the intended recipient. Any review, disclosure, distribution by others or forwarding without express permission is strictly prohibited. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

Please see our website at https://www.gibsondunn.com/ for information regarding the firm and/or our privacy policy.