GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
POONAM G. KUMAR, SBN 270802
  pkumar@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:  213.229.7000
Facsimile:   213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California  90012
Telephone:  213.978.7508
Facsimile:   213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, a Municipal entity, et al.,<br><br>Defendant. | CASE NO. 2:20-cv-02291 DOC (KES)<br><br>Honorable David O. Carter,<br>United States District Judge<br><br>**DEFENDANT CITY OF LOS ANGELES'S REPLY IN SUPPORT OF ITS MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT**<br><br>Date:         February 9, 2026<br>Time:        8:30 a.m.<br>Location: Courtroom 10A<br><br>Action Filed:     March 10, 2020 |

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.     The fires, civil unrest, and declaration of fiscal emergency triggered the pause and duty to meet and confer under Section 8.2..........................2

    II.    The Alliance breached Section 8.2 because it has refused to meet and confer in good faith. ...............................................................................5

    III.   The necessary and appropriate amendment is to allow the City to count its prior encampment reductions and to require only 400 more reductions. ...................................................................................................8

CONCLUSION .....................................................................................................................10

i

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Adams v. Johns-Manville Corp.*,
    876 F.2d 702 (9th Cir. 1989) ................................................................................5

*JJD-HOV Elk Grove LLC v. Jo-Ann Stores, LLC*,
    17 Cal. 5th 256 (2024) ..........................................................................................4

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).................................................................................................7

*Locke v. Warner Bros., Inc.*,
    57 Cal. App. 4th 354 (1997) .............................................................................7, 8

*O'Neil v. Bunge Corp.*,
    365 F.3d 820 (9th Cir. 2004) ...............................................................................6

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*,
    112 Cal. App. 5th 519 (2025) ..........................................................................7, 8

*Pasadena Live, LLC v. City of Pasadena*,
    114 Cal. App. 4th 1089 (2004) .............................................................................6

*Runyan v. Pac. Air Indus., Inc.*,
    2 Cal. 3d 304 (1970) ...............................................................................................8

*S.F. Housing Authority v. Serv. Employees Int'l Union, Local 790*,
    182 Cal. App. 4th 933 (2010)................................................................................6

*Tarrant Bell Property, LLC v. Superior Court*,
    51 Cal. 4th 538 (2011) ...........................................................................................3

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099 (C.D. Cal. 2001) ...........................................................4

*West Pueblo Partners, LLC v. Stone Brewing Co.*,
    90 Cal. App. 5th 1179 (2023) ..............................................................................4

**Statutes**

Cal. Gov't Code § 3505 ...............................................................................................6

Gibson, Dunn & Crutcher LLP

ii

**INTRODUCTION**

This Court has already held that Section 8.2 paused the City's obligations under the Settlement Agreement and "imposes a duty on both parties to meet and confer in good faith to determine the necessary adjustments" to the Settlement Agreement. Dkt. 991 at 55. The Alliance does not dispute that the catastrophic Los Angeles wildfires, large-scale civil disturbances, and the ongoing fiscal emergency declared by the City in 2025 each separately triggered Section 8.2 of the Settlement Agreement. Nor could it reasonably do so—"fires," "large scale civil disturbances," and "fiscal emergenc[ies] declared by the Mayor" and City Council are expressly identified as events that "shall . . . pause[ ]" the City's obligations and require the parties "to meet and confer on any necessary and appropriate amendments to those obligations." Dkt. 429-1 § 8.2. Notwithstanding that tacit concession, the Alliance has rejected *any* substantive amendment to the City's obligations under the Agreement, leaving no doubt about its bad faith during the meet-and-confer process. If anything would require amendments under Section 8.2, it would be the series of unprecedented emergencies over the last year. Yet the Alliance now tries to eviscerate Section 8.2, first by refusing to consent to the City's modest proposed amendment and next by trying to make the provision impossible to enforce.

The parties agree on the facts—the Alliance's complete refusal to consider any substantive changes to the City's encampment-reduction goals—and disagree only about whether Section 8.2 requires good-faith consideration of the City's proposal. In the Alliance's view, it has discharged its Section 8.2 obligations by merely meeting with the City, even though it consistently rebuffed the City's good-faith efforts to adjust its obligations to account for hundreds of millions in unplanned expenditures, and even though the Alliance demanded that the City forgo its appeal as a condition of considering the requested amendment. The Alliance also feigns ignorance regarding the financial nexus between the events that triggered Section 8.2 and the proposed modification, even though the City explained the obvious: Pairing and documenting every encampment

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

reduction with an offer of suitable and immediately available housing is extremely difficult and expensive. The Alliance ignores that Section 8.2 contemplates a substantive modification to the City's obligations to relieve *financial* hardship—relief that its proposed extension of the deadline to perform encampment reductions does not provide. And that amendment to the encampment-reduction obligation is particularly justified because the City has not sought any relief from its commitment to create an unprecedented number of shelter and housing solutions, despite grappling with unexpected costs inflicted by the emergencies.

The Court should hold that the Alliance breached the Settlement Agreement by failing to meet and confer in good faith and, as a remedy for that breach, order the implementation of the City's modest request for an amendment that leaves untouched the City's bed-creation obligations and would permit the City to discharge its encampment-reduction obligations by counting all reported reductions through March 31, 2025, and by completing 400 additional reductions by the June 2026 deadline.

## ARGUMENT

**I.    The fires, civil unrest, and declaration of fiscal emergency triggered the pause and duty to meet and confer under Section 8.2.**

Under the heading of "Funding," Section 8.2 has three clauses that work together to protect the City's fiscal health in the event of emergencies and other unforeseen expenses: "[1] In the event of fires, floods, earthquakes, epidemics, quarantine restrictions, or other natural catastrophic occurrences; terrorist acts, insurrections or other large scale civil disturbances; or any local or fiscal emergency declared by the Mayor of Los Angeles and the Los Angeles City Council under the authority vested in them by the Los Angeles City Charter and Los Angeles Administrative Code (or other applicable ordinances, resolutions, or laws), [2] the obligations of the City as set forth in Sections 3, 4, and 5 of this Agreement shall be paused, and [3] the Parties agree to meet and confer on any necessary and appropriate amendments to those obligations." Dkt. 429-1 § 8.2.

Gibson, Dunn & Crutcher LLP

2

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

The first clause outlines the events that trigger Section 8.2, including "fires," "large scale civil disturbances," and declarations of "fiscal emergency." Dkt. 429-1 § 8.2. In the past year, the City has experienced the worst wildfires in Los Angeles history, civil unrest related to federal immigration enforcement that dominated national headlines for weeks and resulted in substantial unexpected costs to the City, and a declaration of fiscal emergency (which remains ongoing). Dkt. 1122-1 at 4-7. Despite having scoffed at the gravity of these emergencies in the past, *see, e.g.*, *id.* at 12, the Alliance now does not dispute that these events qualify under Section 8.2, Dkt. 1139 at 1-17. All now agree that Section 8.2 has been triggered three times over.

The Alliance instead disputes the consequences of the triggering events—a question resolved by the second and third clauses. According to the Alliance, the City must prove a "causal link between the claimed emergencies and its requested modifications." Dkt. 1139 at 3. That is wrong. The second clause of Section 8.2 explicitly spells out what happens where there is a fire, large-scale civil disturbance, or declaration of fiscal emergency (let alone all three): The City's obligations under Sections 3 through 5 "*shall* be paused." Dkt. 429-1 § 8.2 (emphasis added). Under California law, "shall" is a "mandatory" word, *Tarrant Bell Property, LLC v. Superior Court*, 51 Cal. 4th 538, 542 (2011), that does not leave room for the Alliance to second-guess whether the City had enough of a "runway" to "address its financial woes before they became emergencies" following catastrophic fires, Dkt. 1139 at 4. And the third clause is equally clear about what happens during the pause: The Parties must "meet and confer on any necessary and appropriate amendments to those obligations." Dkt. 429-1 § 8.2. Such amendments are necessary and appropriate when they offset the financial harms of the triggering events and rebalance the "Funding" available for the City to perform its obligations, at monumental cost for both bed creation and encampment reduction. *Id.* § 8.

The Alliance's attempt to rewrite Section 8.2 as a standard "*force majeure* provision" is at war with the Settlement Agreement's plain language. Dkt. 1139 at 3.

Gibson, Dunn & Crutcher LLP

3

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

The Alliance relies on cases where the contract's language expressly required a party to prove as a *defense* to breach that an emergency prevented performance of the contract. In *West Pueblo Partners, LLC v. Stone Brewing Co.*, 90 Cal. App. 5th 1179 (2023), for example, the contract stated: "'**FORCE MAJEURE**. If either Party is delayed, interrupted or prevented from performing any of its obligations under this Lease, and such delay, interruption or prevention is due to fire, act of God, governmental act or failure to act, labor dispute, unavailability of materials or any cause outside the reasonable control of that Party, then the time for performance of the affected obligations of the Party shall be extended for a period equivalent to the period of such delay, interruption or prevention.'" *Id.* at 1182; *accord Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1109 (C.D. Cal. 2001). Section 8.2, by contrast, does not require the City to prove as a defense that the emergency caused nonperformance— instead, "[i]n the event" of an emergency, the City's obligations "shall be paused" without the need to prove anything else, and the parties then must confer over "necessary and appropriate amendments." Dkt. 429-1 § 8.2. Because the parties "'considered and agreed to allocate the risk'" of fires, civil unrest, and fiscal emergencies with a categorical provision that provides *affirmative* relief to the City (a pause and then modifications), the Alliance cannot rewrite Section 8.2 as merely a conditional defense to breach due to a *force majeure* event. *JJD-HOV Elk Grove LLC v. Jo-Ann Stores, LLC*, 17 Cal. 5th 256, 272 (2024).

Section 8.2 also reinforces the causal connection between the emergencies and the City's requested amendment. The Alliance asks whether "performance became impossible or unreasonably unexpensive." Dkt. 1139 at 4 (quoting *Watson*, 178 F. Supp. 2d at 1110). But the parties already decided which types of events justify amendments— among other things, "fires," "large scale civil disturbances," and declarations of "fiscal emergency." Dkt. 429-1 § 8.2. Because the agreement itself singled out those events, there is no basis to peer behind the curtain to determine how acute the fiscal emergency is. Such review, however, would only confirm the need for an amendment. Although

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

Gibson, Dunn & Crutcher LLP

the Settlement Agreement imposes exceptionally expensive obligations as to shelter and housing, the City is seeking relief only as to the encampment-reductions obligation, which became unreasonably expensive in light of this Court's interpretation and the unforeseen expenses the City has incurred in the past year (more than $300 million). The severe impact on the City's budget has caused it to cut back programs and lay off hundreds of employees. *See* Dkt. 1122-5.

Money is fungible—but limited. Again, that's why the parties agreed on the pause and put the provision under the heading of "Funding." Dkt. 429-1 § 8.2. Section 8.2 has always been about ensuring the City has financial breathing room—it was not about overriding federalism principles by tasking this Court with adjudicating the Alliance's unfounded and cynical accusations of fiscal irresponsibility.

## II. The Alliance breached Section 8.2 because it has refused to meet and confer in good faith.

The Alliance contends that it complied with Section 8.2's requirement to "meet and confer on any necessary and appropriate amendments" simply by responding to the City's requests to meet. Dkt. 1139 at 7–12. The Alliance's purely procedural account of its obligations conflicts with fundamental principles of California law, not to mention this Court's own interpretation of Section 8.2. Meeting with the City was the beginning of the Alliance's obligations—not the end.

Disavowing any duty to consider the City's proposals in good faith, the Alliance asserts that this case "is not a breach-of-contract case." Dkt. 1139 at 15. The Alliance instead treats the meet-and-confer process as a check-the-box requirement and analogizes it to rules like Local Rule 7-3 that require parties to discuss their respective positions before seeking court intervention. *Id.* at 5–7. But "[a] motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract." *Adams v. Johns-Manville Corp.*, 876 F.2d 702, 709 (9th Cir. 1989). Before now, the Alliance has said the same thing, too. *E.g.*, Dkt. 976 at 269:13–14 (Mr. Uhmhofer: "This case is about the breach of a settlement agreement."). And this Court likewise recognized that

"[t]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." Dkt. 991 at 29 (quoting *O'Neil v. Bunge Corp.*, 365 F.3d 820, 822 (9th Cir. 2004)).

California law is clear that a duty of good faith attaches when the parties agree by contract to meet and confer. This Court already recognized this duty to "meet and confer in good faith." Dkt. 991 at 55. That interpretation flows directly from the covenant of good faith and fair dealing implied in every contract for parties "'to do everything that the contract presupposes that [it] will do to accomplish its purpose.'" *Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089, 1093 (2004). So when parties have a contractual obligation to "meet and confer," they "shall have the mutual obligation personally to meet and confer promptly upon request by either party and continue for a reasonable period of time in order to exchange freely information, opinions, and proposals, and to *endeavor to reach agreement*." *E.g.*, Cal. Gov't Code § 3505 (emphasis added). Rejecting proposals "arbitrar[il]y and without a rational basis" is the opposite of meeting and conferring in good faith. *S.F. Housing Authority v. Serv. Employees Int'l Union, Local 790*, 182 Cal. App. 4th 933, 941 (2010).

The Alliance did meet and confer with the City—just not in good faith. As a condition of considering the City's requested amendment to the encampment-reduction obligations, the Alliance insisted the City relinquish its appeal challenging this Court's interpretation of that same provision. Dkt. 1122-11 at 11:9–14 ("I think there is a world where the Alliance would probably accept some percentage or some number of reductions in combination with an extended time, if the City needs it. Like, if . . . the City will dismiss the appeal, for example."). That demand was so shameless that the Alliance can find nothing at all to say in its defense. *See* Dkt. 1122-1 at 16-17. Even though Section 8.2 exists to protect the City, the Alliance treated the emergencies as leverage to exact concessions as a condition of the Alliance abiding by the terms that it already agreed to. A party who is willing to meet and confer in good faith does not start the bidding with extortionate demands on entirely unrelated matters.

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

The Alliance further revealed its bad faith by making counterproposals that do not even qualify as amendments to begin with. For example, when the City asked the Alliance if "there [is] a number that [it] would agree to for purposes of a modification," the Alliance replied, "the answer is zero number." Dkt. 1122-7 at 43:18–19, 44:6. Zero change is not a modification. The Alliance also proposed that it was "open to giving [the City] credit for" the encampment reductions "that do count" under the Court's March interpretation of the Settlement Agreement. Dkt. 1139 at 11–12 (citing Dkt. 1122-11 at 7:19–25). Again, giving the City credit to which it is already entitled is not a modification. Offering to accept the City's compliance with its existing obligation is the opposite of a good-faith proposal to amend the paused obligations under Sections 3 through 5.

Because the Alliance made unreasonable demands and offered only woefully insufficient proposals, the Alliance violated its duty to meet and confer in good faith for much the same reasons as the stonewalling parties in *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 112 Cal. App. 5th 519 (2025), and *Locke v. Warner Bros., Inc.*, 57 Cal. App. 4th 354 (1997). The Alliance attempts to distinguish *Oakland* and *Locke* as breach-of-contract cases. Dkt. 1139 at 12, 14. But this motion likewise seeks a remedy for the Alliance's breach of the Settlement Agreement, which is a contract. To the extent that the Alliance means to suggest that the City should have filed a new breach-of-contract action in some other court, the Alliance's own conduct tells a different story. It has filed many motions for settlement compliance with this Court, which retained jurisdiction to do exactly that. *See* Dkt. 429-1 at 3 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)). And it offers no reason why the City may not do the same.

Because basic principles of contract interpretation govern Section 8.2, *Oakland* and *Locke* are on point in all the ways that matter. The Alliance failed to "substantively engage" with the City's efforts to renegotiate its obligations under Section 8.2. *Oakland*, 112 Cal. App. 5th at 558. This refusal amounted to a breach of the covenant of good

faith and fair dealing, "which is at its core about reasonable conduct and cooperation." *Id.* The Alliance also "categorically refus[ed]" to consider the substantive modifications that the City proposed, "irrespective of the merits of [its] proposals." *Locke*, 57 Cal. App. 4th at 365. This refusal to negotiate "calls into question whether [the Alliance] had an honest or good faith dissatisfaction with [the City's] proposals, or whether it merely went through the motions of purporting to 'consider'" the terms it proposed. *Id.* Because the record conclusively answers that question—the Alliance refused to meet and confer in good faith—the Alliance has breached Section 8.2.

### III. The necessary and appropriate amendment is to allow the City to count its prior encampment reductions and to require only 400 more reductions.

The Alliance argues that, even if it has refused to consider modifications in good faith, the only available remedy would be "to order both parties back into meeting and conferring." Dkt. 1139 at 16. If the Alliance had not already deprived the City of a good-faith meet and confer for more than a *year* since the January 2025 fires first ignited, then an order to meet and confer very well may have been an appropriate initial remedy. But this Court also has authority to "'restore [the City] to [its] former position as far as possible,'" had the Alliance met and conferred in good faith at any point in the past year, even though "'the status quo cannot be exactly reproduced.'" *Runyan v. Pac. Air Indus., Inc.*, 2 Cal. 3d 304, 316 (1970). The only way to cure the Alliance's breach is to order the modifications that the Alliance refused in bad faith to consider: The City can count the 6,129 encampment reductions that occurred before this Court imposed the need for additional documentation in March 2025 and then will complete 400 more reductions by the present deadline.

The Alliance misunderstands the basis of this Court's authority to order an amendment. The City does not argue—and has never argued—that Section 24 allows this Court to modify the Settlement Agreement's terms. *Contra* Dkt. 1139 at 16. Neither Section 24 nor any other provision of the Settlement Agreement authorizes this Court to modify the Settlement Agreement. To the contrary, any "modification" must be made

by the parties through a "written instrument executed by each party." Dkt. 429-1 § 18. Section 24 instead permits this Court only to apply—not to rewrite—the terms in the course of resolving a dispute "regarding the interpretation, performance, or enforcement of this Agreement." *Id.* § 24. The question, then, is what Section 8.2 means. Here, the Court has authority to order an amendment to the City's encampment-reduction obligation *only* because Section 8.2 itself requires "necessary and appropriate amendments to those obligations." Dkt. 429-1 § 8.2. In short, amendment to the City's obligations is on the table here only because it is the appropriate remedy for the Alliance's bad-faith refusal to comply with Section 8.2—a provision that expressly contemplates amendment of the Agreement.

The Alliance does not rebut the City's showing that the requested amendments are both necessary and appropriate under Section 8.2. In the counterfactual world where the Alliance took seriously the challenges faced by the City, there would have been no sound reason for the Alliance to object to the City's request to count its encampment reductions up through March 2025 and to do 400 more. The City of course cannot go back in time to prepare complete documentation for encampment reductions, even those that in fact were paired with an offer of shelter or cleared abandoned property. Redoing those reductions will be even more costly this time around because the City now understands, under the Court's order, that it needs both to document offers of shelter or abandonment of property, and to pay a new monitor to review such documentation. That procedure—which requires extensive coordination with a large array of outreach workers, shelters, and service providers, to identify available shelter options and match them with appropriate candidates—is "fundamentally more onerous and more expensive." Dkt. 1122-11 at 16:14–15. That is the exact kind of "extreme expense" that even the Alliance concedes would justify an amendment. Dkt. 1139 at 4.

The Alliance was willing to consider only one change: "to extend the deadline for encampment reduction." Dkt. 1139 at 12. That proposed amendment is no amendment at all. Section 8.2 contemplates "amendments to *th[e] obligations*" in

Gibson, Dunn & Crutcher LLP

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT

"Sections 3, 4, and 5"—not merely more time to perform the *same* obligations. Dkt. 429-1 § 8.2 (emphasis added). Because Section 8.2 already addresses timing by imposing a pause, the Alliance's position effectively is that the only relief the City should get is *more* pause. But more time would not address the costs of the fiscal emergencies that triggered Section 8.2. As the City explained to the Alliance, "an extra year is not going to solve the problem" that the City cannot expend the resources to perform 9,800 encampment reductions under the present documentation requirements while also absorbing the unexpected costs of the fires and civil unrest. Dkt. 1122-11 at 16:21–22.

## CONCLUSION

The Court should grant this motion, find the Alliance has breached the Settlement Agreement by failing to meet and confer in good faith, and modify the Agreement to permit the City to discharge its encampment-reduction obligations under the Agreement by counting all reported reductions through March 31, 2025, and requiring 400 additional reductions by the June 2026 deadline.

DATED: January 26, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theane Evangelis*
Theane Evangelis

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

REPLY IN SUPPORT OF MOTION FOR ORDER RE COMPLIANCE WITH SECTION 8.2 OF SETTLEMENT AGREEMENT