Shayla R. Myers (SBN 264054)
**LEGAL AID FOUNDATION**
**OF LOS ANGELES**
1550 W. 8th St
Los Angeles, CA 90017
Tel: (213) 640-3983
Email: smyers@lafla.org

*Attorneys for Intervenors CANGRESS and Los*
*Angeles Catholic Worker*
*Additional Counsel listed on next page*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, *et. al*.<br>　　　　Plaintiff(s),<br><br>v.<br><br>City of Los Angeles, *et. al.*<br>　　　　Defendant(s). | CASE NO.: 20-CV-02291-DOC-KES<br><br>Hon. David O. Carter<br><br>**INTERVENORS' RESPONSE TO CITY'S OBJECTION RE: ORDER SETTING FEBRUARY 10, 2026 HEARING AND REQUEST FOR STAY [DKT. 1151]**<br><br>Action Filed:  March 10, 2020 |

**INTERVENORS' RESPONSE TO CITY OF LOS ANGELES'S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**

*Additional Counsel*

Catherine Sweetser (SBN 271142)
**SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP**
11543 W. Olympic Blvd.
Los Angeles, CA 90064
Tel: (310) 396-0731
Email: catherine.sdshhh@gmail.com

*Attorneys for Intervenors*

Carol A. Sobel (SBN 84483)
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Ave.
Santa Monica, CA 90401
Telephone: (310) 393-3055
Email: carolsobel@aol.com

*Attorneys for Intervenors*

**INTERVENORS' RESPONSE TO CITY OF LOS ANGELES'S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**

Intervenors LA CAN and Los Angeles Catholic Worker respectfully submit their response to the City's February 7, 2026 objection regarding the order setting the February 10 , 2026 hearing and the City's request for a stay.  Intervenors do not object to the request for a stay, to the extent the proceedings relate to *Cangress v. City of Los Angeles*, LA Superior Court, Case No. 25STCP00261 ("Brown Act litigation").  However, as outlined below, Intervenors respectfully submit that the Court's inquiry into possible misrepresentations by the City related to the approval of the Encampment Reduction Plan are separate and distinct from the issues being decided in the Brown Act litigation and therefore, this Court may resolve those issues without interfering with the Brown Act litigation or impermissibly intruding on the jurisdiction of the state court.

**The Underlying Brown Act Litigation**

As the Court is aware, Intervenor LA CAN is also the petitioner in the Brown Act Litigation.  As an initial matter, LA CAN brought the Brown Act Litigation not as an intervenor in this litigation, but rather, as a member of the public that was deprived of legally-mandated transparency by the City Council of its discussions related to a matter of significant public importance—namely, the clearing of nearly 10,000 homeless encampments.  As outlined in their petition, the City attempted to use these proceedings, and specifically, the contempt proceedings, to discuss and approve the ERP entirely behind closed doors, without any public scrutiny or transparency.  While LA CAN was aware of the Brown Act violation because of their role as intervenor in this case, LA CAN brought the Brown Act litigation because of its decades-long fight for transparency in City Hall, particularly when it comes to the City's criminalization of homelessness.

Importantly, in the Brown Act litigation, LA CAN does not seek an invalidation of the approval of the ERP, to the extent such approval occurred.  While that remedy is available in some Brown Act proceedings, *see* Ca. Gov't Code § 54960.1, LA CAN did not seek this as a remedy in its lawsuit.  LA CAN instead seek a writ of mandate and declaration that the City had violated the Brown Act, disclosure of the minutes of the

**INTERVENORS' RESPONSE TO CITY OF LOS ANGELES'S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**

meeting, and prospective relief to ensure the City does not violate the Brown Act in the future.

**The City's Request for a Stay**

To the extent the proceedings on Tuesday rely on the City's violation of the Brown Act, LA CAN does not object to the City's request for a stay, pending the resolution of Brown Act litigation. The City is correct that the case remains ongoing while the parties meet and confer about the scope of the judgment and will remain pending during any subsequent appeal. Without weighing in on the City's objections to the judgment and obviously disagreeing with the City about the merits of any arguments it may have about the Brown Act or Judge Kin's ruling, LA CAN agrees that the City remains within its right to assert that it did not violate the Brown Act and is entitled to a final judgment in those proceedings before it faces any possible consequences stemming from the Brown Act violations in these proceedings.[1]

**Inquiry into the City's Representations Regarding the Approval of the ERP**

To the extent the Court's focus on Tuesday's contempt proceeding is the City's representation to this Court that the "9,800 encampment reduction plan and milestones were presented to the City Council on January 31, 2024 , which approved them without delay," Dkt. 713 ¶ 8, Intervenors do not object to the proceedings. Those proceedings can move forward without interference with the Brown Act litigation or even reference to the City's Brown Act violations. The issue of potential misrepresentations by the City in these proceedings is separate from the underlying issues raised in the Brown Act litigation, which relate in part to whether the City was entitled to discuss and "approve" the plan in closed session. Nor does the resolution of the issue of misrepresentation

---

[1] The City's requested stay would prevent the Court from ruling on the issue during the pendency of those proceedings. Assuming the City does appeal the Brown Act ruling, this would likely prevent the Court from ruling on the issue before June 30, 2027, when the Court's jurisdiction over the settlement is currently set to expire. *See* Dkt. 429-1.

4

**INTERVENORS' RESPONSE TO CITY OF LOS ANGELES'S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**

require an interrogation into the contents of the Closed Session beyond what the City itself has already disclosed.   Moreover, the issue of whether the City Council approved the ERP falls squarely within this Court's purview, including within the bounds of these contempt proceedings, as outlined in the Court's orders related to the proceedings.

First, the question of whether the ERP was actually approved, as the City Attorney's office represented that it was, stems from the City's own contradictory representations in two separate proceedings, and what appears to be yet another attempt by the City to give definitions to words and phrases that are inconsistent with either the plain language of the word or related legal definitions of those words—in this case, definitions that appear in the City Charter and City Council rules.

As this Court is aware, on February 2, 2024, the LA Alliance filed a motion for settlement compliance against the City, alleging in part that the City had not timely fulfilled its obligations to create and approve the ERP, as required by Section 5.2 of the Settlement Agreement.  Dkt. 668.  In the declaration in support of the motion, counsel for the LA Alliance stated that she had been informed that the City Council had considered and approved the ERP on January 31, 2024 and she had been provided the plan on February 1, 2024. Dkt. 668-1.  The "milestone goals" she was provided were attached to her declaration.

Following a number of court hearings related to the motion for settlement compliance and in order to resolve issues related to the factual disputes between the parties, counsel for the Plaintiffs and the City submitted a Joint Stipulation to Resolve Motion for Order re: Settlement Agreement.  Dkt. 713.  That statement of facts was signed by the Chief Assistant City Attorney Scott Marcus, then counsel of record for the City of Los Angeles.  The joint stipulation stated unequivocally that "The 9,800 encampment reduction plan and milestones were presented to the City Council on January 31, 2024, which approved them without delay." Dkt. 713, ¶ 8.

After reviewing the recording of the January 31, 2024 city council meeting and confirming that the ERP had not been disclosed publicly, Intervenors' counsel contacted

5

**INTERVENORS' RESPONSE TO CITY OF LOS ANGELES'S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**

the City Clerk to inquire about the plan and its approval—specifically, the tally of the vote for the ERP. The Clerk did not respond.

On October 30. 2026, LA CAN's attorneys sent a letter to the City Attorney's office related to what they perceived to be a violation of the Brown Act, i.e., the discussion and approval of the ERP in closed session and the failure to disclose the vote on the ERP. In response, Assistant City Attorney Strefan Fauble responded and stated for the first time that the vote related to the ERP need not be disclosed—not because of the Brown Act, but rather, because "no vote was taken." A true and correct copy of Mr. Fauble's letter is attached as Exhibit A.

The City argues in its objection that the Court is assuming that "a City Council vote was required to approve the encampment reduction plan" and goes on to state that "the Encampment reduction plan did not require a formal vote of the city Council to effectuate approval." Dkt. 1151 at 3. However, Intervenors understand the Court's February 7, 2026 order as inquiring into whether the City misrepresented to the Court that the City Council considered the ERP and milestones and the City Council "approved them without delay." The City Charter and City Council rules provide only one way for the City Council to take action, namely a majority vote by its members. Specifically, Los Angeles City Charter, Sec. 244 states that except as otherwise provided in the Charter, action by the Council shall be taken by a majority vote of the entire membership of the Council. The City Council's rules likewise require that, "(e)xcept as otherwise required by the Charter or other law, or by these rules where not inconsistent therewith, action by the Council shall be taken by a majority vote of the entire membership of the Council." Rules of the City Council, Chapter IV, Rule 25. Although certainly the question of whether the City legally approved the ERP is a relevant inquiry, statements by the City's lawyers raise another highly relevant question--whether the City misrepresented to the Court that the *City Council* approved the ERP.

An inquiry into this issue does not require even a consideration of whether the City was entitled to convene this discussion in closed session, which is the issue in the Brown

6

**INTERVENORS' RESPONSE TO CITY OF LOS ANGELES'S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**

Act litigation, nor does it require any inquiry into any privileges the City is now attempting to assert.[2]  Even assuming any of these privileges would apply or that the *actions* taken by the City Council, i.e., the approval of the ERP, constitute attorney-client communications, the questions raised by the Court stem from disclosures already made by the City about what occurred in the closed session. *See* Ca. Evid. Code § 912(a) (privilege is waived with respect to a communication protected by the privilege if any holder of the privilege…has disclosed to a significant part of the communication or has consented to disclosure made by anyone”).   Mr. Marcus represented that the City Council “approved [the milestones and deadlines] without delay.” Dkt. 713 at ¶ 8. Likewise, in the prior contempt hearing, Matt Szabo testified that the City Council approved the ERP.  Dkt. 955, 133:25-134:01. It is fair game, therefore, to inquire what Mr. Marcus and Mr. Szabo meant when they stated that the City Council approved the ERP.  Likewise, Strefan Fauble, another attorney in the City Attorney’s office, opened the door about how the approval was given—if it was—by representing that “no vote was taken.” Exh. A.

The City attempts in its most recent filing to maintain its position that everything that occurred during the January 31, 2024 meeting is covered by the Brown Act and cannot be disclosed.  *See* Dkt. 1151 at 3 (discussing the requirement of a formal vote “without commenting on what did or did not occur in closed session”).  But that ship has already sailed.  The City did disclose specific facts about what occurred in closed session—in separate and seemingly contrary statements to the Court and LA CAN.  The City cannot now argue, when the Court attempts to inquiry about the contradictions, that the inquiry is either prohibited by the Brown Act or that it is related to the Brown Act ligation, such that this Court must abstain from inquiring into it.

_____

[2] While the City argues that an inquiry into the closed sessions “would necessarily seek information the City maintains is privileged for multiple distinct reasons” including the deliberative process privilege, the legislative privilege, and the official information privilege,” Dkt. 1151 at 4, Petitioner strongly objects to the City’s representation that these objections are before the Court in the Brown Act litigation.

**INTERVENORS’ RESPONSE TO CITY OF LOS ANGELES’S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**

**Conclusion**

To the extent the Court continues to be concerned with the veracity of the City's representations to this Court regarding compliance with the settlement agreement and the City's pattern of applying untenable definitions to commonly understood words and phrases, the issue of the City's representations about the approval of the ERP fall squarely within these proceedings. That issue can be addressed without stepping on the jurisdiction of the state court or impinging on the pending Brown Act litigation. To that end, Intervenors have requested that Matt Szabo, Scott Marcus, and Strefan Fauble appear at the hearing on February 10, 2026. The City has informed Intervenors that Mr. Szabo is not available but Mr. Marcus and Mr. Fauble are available.[3]

DATED: February 9, 2026                    LEGAL AID FOUNDATION OF LOS
                                           ANGELES

                                            By: /s/
                                                Shayla Myers

                                           *Attorneys for Intervenors CANGRESS and
                                           LOS ANGELES CATHOLIC WORKER*

---

[3] The City indicated that it will object to testimony by these witnesses.

8

**INTERVENORS' RESPONSE TO CITY OF LOS ANGELES'S OBJECTION TO FEBRUARY 10 2026 HEARING AND REQUEST FOR STAY**