**FILED**

CLERK, U.S. DISTRICT COURT

02/13/2026

CENTRAL DISTRICT OF CALIFORNIA

BY: _____ kdu _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al.<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.<br><br>Defendant. | Case No. LA CV 20-02291-DOC(KESx)<br><br>Judge:  Hon. David O. Carter<br><br>**SPECIAL MASTERS REPORT** |

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LA ALLIANCE FOR HUMAN RIGHTS, et al.,

Plaintiffs,

v.

CITY OF LOS ANGELES, et al.,

Defendants.

Case No. 2:20-cv-02291-DOC-KES

SPECIAL MASTER'S QUARTERLY REPORT FOR QUARTER 4

Submitted by:

**Michele Martinez**

**Special Master**

**Date: February 13, 2026**

Filed Pursuant to:

• Dkt. 429-1 (2022 Settlement Agreement)

• Dkt. 445 (Order Appointing Special Master)

• Dkt. 991 (Order Granting in Part and Denying in Part Plaintiffs' Motions for Settlement Compliance)

• Dkt. 1050 (Order Regarding Special Master Duties and Reporting Requirements)

• Dkt. 1048 (Order Resolving Third-Party Monitor Appointment and Scope of Work)

Submitted To:

**The Honorable David O. Carter**

United States District Judge

**EXECUTIVE SUMMARY**

This Report evaluates the City of Los Angeles's procedural compliance with the reporting, documentation, and verification requirements of the Settlement Agreement and the Court's Orders for Quarter 4, 2025 (October 1–December 31, 2025). As in Quarter 3, this assessment is necessarily limited to procedural compliance because, although a Data Monitor has been appointed, **the Monitor's work is stayed pending appeal**, and the Monitor is therefore not authorized to receive, review, or verify data. Verification under Section 7.2 cannot occur during this reporting period.

The City submitted its consolidated Quarter 4 report on January 15, 2026 (Dkt. 1138). Although the filing includes additional tables—such as PEH Engaged and encampment counts—the City did not provide the raw data, definitions, methodologies, offer-level information, acceptance/rejection data, reasons for rejection, or encampment-level documentation required under Sections 7.1 and 7.2 and Dkt. 991. These materials are prerequisites to verification once the appellate stay is lifted and the Data Monitor is able to perform its duties.

Because (1) the Data Monitor cannot conduct verification while the appellate stay remains in effect, and (2) the City did not provide the documentation required for verification, **the Court does not have a Data-Monitor-verified factual record for Quarter 4**, and substantive compliance cannot be evaluated.

During this reporting period, the parties also filed competing interpretations of Section 8.2 of the Settlement Agreement. Plaintiffs filed an opposition (Dkt. 1139) asserting that the City has not demonstrated that the 2025 fires, civil unrest, or fiscal emergency justify modifying its encampment-reduction obligations. The City filed a reply (Dkt. 1144) maintaining that Section 8.2 was triggered, that its obligations were paused, and that amendments are required to address emergency-related fiscal impacts. These filings do not alter the City's independent duty to provide complete quarterly reporting under Sections 7.1 and 7.2, nor do they supply the documentation necessary for future verification once the appellate stay is resolved.

Accordingly, for Quarter 4, **the Data Monitor cannot verify the accuracy, completeness, or compliance of the City's reported housing, shelter, engagement, or encampment-reduction data**, and the Special Master cannot inform the Court regarding substantive compliance until the stay is lifted and verification can occur. The absence of both (a) an active Data Monitor and (b) the required underlying documentation continues to prevent substantive evaluation of the City's performance under the Settlement Agreement.

**INTEGRATED ANALYSIS AND FRAMEWORK FOR PROCEDURAL REVIEW**

The Settlement Agreement establishes an interdependent structure of reporting, documentation, planning, and verification obligations. Dkt. 991 clarified that the City must provide complete, consistent, and verifiable information sufficient for independent evaluation by a Data Monitor

2

and the Court. These obligations remain in effect unless expressly modified by the parties and the Court.

This Report evaluates procedural compliance only, using the same framework applied in Quarter 3:

1.  Whether the record contains the information required under Sections 3, 4, 5, and 7.

2.  Whether the record contains documentation sufficient for verification under Section 7.2 and Dkt. 991.

3.  Whether the City's filings are internally consistent and reconcilable.

4.  Whether the procedural sequence necessary for verification was followed.

The City's Quarter 4 filing does not contain the documentation required for verification and does not correct the procedural deficiencies identified in Quarter 3.

## I. INTRODUCTION

This Report is submitted pursuant to Dkts. 991 and 1050 and addresses the procedural status of the City's Quarter 4 reporting under the Settlement Agreement. The City filed its Quarter 4 report on January 15, 2026 (Dkt. 1138). The filing includes Exhibits A–E, but the underlying data, definitions, methodologies, milestone documentation, and encampment-level materials required for verification were not provided.

Because the Monitor-appointment issue remains on appeal, the Data Monitor is not authorized to receive or review data, and verification under Section 7.2 did not occur for Quarter 4.

## II. VERIFICATION FRAMEWORK

Under Section 7.2 and Dkt. 991, the City must provide:

*   raw data underlying all reported metrics

*   definitions and methodologies

*   documentation supporting Section 7.1 reporting

*   documentation supporting Section 5.2 milestones

*   encampment-level materials

*   access to technical staff

These materials are prerequisites for verification once the appellate stay is lifted.

For Quarter 4, the City did not provide the documentation required for verification. In addition, the Data Monitor cannot conduct verification while the stay remains in effect, and therefore no

3

verification occurred. As a result, the Court does not have a Data-Monitor-verified factual record for this reporting period.

## III. SUMMARY OF RELEVANT OBLIGATIONS UNDER SECTIONS 3–8

### Section 3 – Housing and Shelter Creation

Quarter 4 reporting lists units and beds but does not provide milestone-based reporting or documentation showing how each bed was created or obtained.

### Section 4 – Engagement and Enforcement

Quarter 4 reporting does not include offer-level data or documentation showing that offers were made before encampment reductions.

### Section 5 – Milestones and Planning

No district-level or citywide milestone documentation was provided for Quarter 4.

### Section 7 – Reporting and Verification

Consistent with the Settlement Agreement and prior Court orders, all materials, documents, and underlying supporting documentation must be provided to the Monitor, who is responsible for independently reviewing and verifying the City's submissions before they are filed with the Court. Quarter 4 reporting continues to rely on "PEH Served," which is not a Section 7.1 metric, and does not include offer-level data. Verification under Section 7.2 did not occur because the Data Monitor is stayed pending appeal and the City did not provide the required documentation.

### Section 8 – Emergency Conditions

Section 8.2 provides that certain emergency events pause the City's obligations under Sections 3, 4, and 5 and require the parties to meet and confer regarding amendments. The City and Plaintiffs filed competing interpretations of Section 8.2 (Dkts. 1139, 1144). This dispute does not alter the City's reporting obligations or supply the documentation required for verification.

## IV. CLARIFICATION ON PROCEDURAL VS. SUBSTANTIVE COMPLIANCE

Quarter 4 reporting does not include:

- raw data

- source documentation

- definitions or methodologies

- offer-level data

- acceptance/rejection data

- reasons for rejection

- milestone documentation

- encampment-level materials

The City added two new tables (PEH Engaged and encampment counts), but these do not satisfy the procedural requirements of Sections 3, 4, 5, or 7.

**Substantive Compliance**

Substantive compliance cannot be evaluated because **the Data Monitor is stayed pending appeal** and the City did not provide the documentation required for verification.

## V.  FINDINGS

### Finding A – Section 3 (Bed Creation)

1.  The City did not provide documentation showing how each bed was created or obtained, and did not provide district-level or citywide milestone-based reporting required under Section 5.2.

### Finding B – Section 7.1 (Quarterly Reporting Requirements)

1.  The City did not provide offer-level data, acceptance and rejection information, reasons for rejection, or milestone-based reporting. These materials are required to support the Section 7.1 metrics.

### Finding C – Section 7.2 (Verification)

1.  Verification did not occur because the Data Monitor is stayed pending appeal and the City did not provide the raw data, source documentation, definitions, methodologies, or encampment-level materials required for verification under Section 7.2 and Dkt. 991.

### Finding D – Section 4 (Engagement and Enforcement)

1.  The City did not provide documentation showing that offers of shelter or housing were made before encampment reductions, as required under Section 4 and Dkts. 874 and 991.

### Finding E – Section 5.2 (Milestones)

1.  The City did not provide district-level milestones or documentation showing progress toward those milestones. Without milestone documentation, progress under Sections 3 and 4 cannot be evaluated.

5

**Finding F – Encampment Reductions**

1.  The City did not provide the encampment-level documentation required under Dkt. 991 to validate reported encampment reductions or to demonstrate that reductions meet the Court's definition.

**CONCLUSION**

The City's Quarter 4 reporting does not satisfy the procedural requirements of the Settlement Agreement or the Court's Orders. Because **the Data Monitor's work is stayed pending appeal** and the City did not provide the documentation required for verification under Section 7.2 and Dkt. 991, the Court does not have a Data-Monitor-verified factual record for this reporting period. Substantive compliance cannot be evaluated. The procedural deficiencies identified in Quarter 3 remain uncorrected in Quarter 4. The Special Master will continue to assess procedural compliance and will resume verification-related review once the appellate stay is resolved and the Data Monitor is authorized to perform its duties.

**Respectfully submitted,**

**Michele Martinez**
Special Master
Date: February 13, 2026

**CERTIFICATE OF SERVICE**

6

I am over the age of 18 and not a party to this action. My business address is the United States District Court, Central District of California.

On the date below, I caused the foregoing **Special Master's Quarterly Report for Quarter 4** to be served on all counsel of record via the Court's CM/ECF electronic filing system, which provides notice to all registered users.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 13, 2026, at Los Angeles, California.

**Michele Martinez**
Special Master

7