GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MARCELLUS MCRAE, SBN 140308
  mmcrae@gibsondunn.com
BRADLEY J. HAMBURGER, SBN 266916
  bhamburger@gibsondunn.com
POONAM G. KUMAR, SBN 270802
  pkumar@gibsondunn.com
PATRICK J. FUSTER, SBN 326789
  pfuster@gibsondunn.com
333 South Grand Avenue
Los Angeles, California 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

HYDEE FELDSTEIN SOTO, SBN 106866
VALERIE L. FLORES, SBN 138572
ARLENE N. HOANG, SBN 193395
JESSICA MARIANI, SBN 280748
200 North Main Street, City Hall East, 6th Floor
Los Angeles, California 90012
Telephone: 213.978-7508
Facsimile: 213.978.7011
Email: arlene.hoang@lacity.org

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF LOS ANGELES, a Municipal entity, et al., <br><br> Defendant. | CASE NO. 2:20-cv-02291 DOC (KES) <br><br> Honorable David O. Carter, United States District Judge <br><br> **DEFENDANT CITY OF LOS ANGELES'S RENEWED OBJECTION REGARDING EXPANDED CONTEMPT HEARING** <br><br><br> Action Filed: March 10, 2020 |

RENEWED OBJECTION REGARDING CONTEMPT HEARING

Based on the February 10, 2025 hearing, the City renews its objection to this Court's expansion of the contempt proceeding into whether the City misrepresented that the City Council approved the encampment reduction plan. *See* Dkts. 1140, 1151. No one disputes that the encampment reduction plan was approved on January 31, 2024. Yet the Court has sua sponte launched a probe into the circumstances of its approval. The questions asked at Tuesday's hearing by Intervenors and the Alliance confirm that this proceeding intrudes on multiple privileges, including the attorney-client privilege and the deliberative process privilege, and is now on an unnecessary collision course with the Brown Act and the *CANGRESS* litigation pending before Judge Kin in the Los Angeles County Superior Court—proceedings that are ongoing, have not resulted in a final judgment, and will be subject to appellate review. Indeed, an attorney for the City, who was formerly counsel of record in this case for many years, was called to the stand and repeatedly asked under oath to disclose confidential and privileged information from a closed session of the City Council. *See, e.g.*, Dkt. 1159 at 97:18–20 ("[C]an you tell us what action was taken to cause you to believe that the encampment reduction plan was approved?"); *id.* at 126:16–19 ("I'm asking what you observed that informed your opinion that the City Council approved the encampment reduction plan.").

Simply put, there is no way to proceed with an evidentiary hearing about what occurred at a closed session of the City Council without placing the City's employees in an impossible situation where they are potentially forced to choose between disclosing confidential and privileged information that the Brown Act (and, for the City's lawyers, the Rules of Professional Conduct) prohibit them from revealing, or refusing the Court's direction to answer questions that would require such disclosures. There is no reason for the Court to continue down this path, particularly given that (1) the Court has not clarified the basis for its assertion that the City's statements regarding the Council's "approval" of the encampment reduction plan may have been willful misrepresentations; (2) the Court's insistence that a formal vote is required for approval runs counter to the Tenth Amendment and the City's own legislative procedures; (3) the *CANGRESS*

litigation is ongoing; and (4) the City's representation that the plan was approved did not waive privilege.

1. At the February 10 hearing, the Court explained that "the City attorney seemed to represent to this Court that a vote had been taken," which supposedly contradicts "subsequent testimony before this Court that, in fact, no vote was taken." Dkt. 1159 at 5:15–24. But although the Court identified two statements allegedly at issue in the expanded contempt proceeding, neither statement involved a representation about a vote. The statement in the April 4, 2024 joint stipulation simply explains that "The 9,800 encampment reduction plan and milestones were presented to the City Council on January 31, 2024, which approved them without delay." Dkt. 713 ¶ 8. And the testimony of City Administrative Officer Matthew Szabo on May 30, 2025 that the plan was "approved" similarly does not describe any vote. Dkt. 955 at 133:25–134:1.

In short, the Court has failed to identify any objective or reasonable basis for its stated belief that either of these statements may have been a misrepresentation, much less one that was willful. No party has suggested that the encampment reduction plan was not actually approved by the City Council on January 31, 2024, much less presented any evidence that it was not approved, and no party is contesting that the plan remains in force. In other words, the Court's basis for "concern[] that an authorized representative of the City of Los Angeles may have willfully misrepresented a material fact or facts to this Court concerning action taken by the Los Angeles City Council on or about January 31, 202[4]," Dkt. 1153 at 1, is not supported by any evidence—or even an allegation from one of the parties—that the encampment reduction plan was not actually approved.

2. To the extent the Court's concern is that the City Council could only have "approved" the plan through a formal vote, the testimony of Scott Marcus should have put that concern to rest. As Mr. Marcus testified, there are multiple ways that the City Council can approve something: "[T]hey can approve things by a vote, they can approve things on unanimous consent. They can approve things via consensus. They can

approve things via discussion." Dkt. 1159 at 104:5–8.  While it appears that Intervenors and the Alliance may disagree that all of these things legally constitute approval based on their own flawed reading of the Los Angeles City Charter and the Rules of the Los Angeles City Council, any exploration of that question of California municipal law goes far beyond this Court's limited jurisdiction to enforce the terms of the Settlement Agreement.  And to the extent the Court were to rule that the only permissible way for the City Council to have approved the encampment reduction plan was via a formal vote, such a ruling would run headlong into the Tenth Amendment's prohibition on the commandeering of the local legislative process.  *See, e.g.*, *New York v. United States*, 505 U.S. 144, 161 (1992).  The Constitution simply does not permit this Court to dictate to the City Council the procedure that it must follow for it to approve of litigation decisions like the encampment reduction plan.

In fact, the City Council Rules and City Charter provide numerous instances in which a formal vote is not required, particularly in the context of litigation.  City Council Rule 49 requires roll call votes for certain enumerated activities, but explicitly provides that "[o]n other matters, if opportunity is given and no objection is raised, the Presiding Officer may announce a unanimous approval of an item under consideration." L.A. City Council Rules ch. VIII, rule 49.  And although City Charter section 244 generally requires Council votes, that provision is subject to exceptions "otherwise provided in the Charter."  Los Angeles City Charter art. II § 244.  Section 272 is one such exception.  Section 272 establishes an attorney-client relationship between the City Attorney—a separately elected official—and the Council.  *See id.* art. II, § 272 ("The City Attorney shall manage all litigation of the City, subject to client direction in accordance with this section, and subject to the City Attorney's duty to act in the best interests of the City and to conform to professional and ethical obligations.").  Noticeably absent from section 272 is any requirement that the Council, when acting as the City Attorney's client, take a formal vote to "direct[]" litigation.  *Id.*

The YouTube video that the Court played at the February 10 hearing of the City

1 Council returning from closed session on January 31, 2024 does not establish otherwise. As the Brown Act makes clear, specifically California Government Code section 54957.1(a), only certain enumerated actions taken during a closed session must be publicly reported. Approval of a plan to implement an already-existing settlement is not among the listed items under section 54957.1(a), which explains why no action was publicly reported on the YouTube video of the January 31, 2024 session.

**3.** The Court stated at the hearing that "democracy depends upon transparency." Dkt. 1159 at 123:25. The City wholly agrees that transparency is an important democratic value, but the California Legislature enacted the Brown Act to balance the ideal of transparency with the reality that municipal legislatures must conduct certain business—such as discussions with legal counsel regarding pending litigation—in closed sessions. *See, e.g.*, Cal. Gov. Code § 54956.9(a) (permitting "a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the local agency in the litigation."). While the petitioner in the *CANGRESS* litigation has challenged the City's decision to hold a closed session relating to this action, it is not the role of this Court to intrude upon that ongoing litigation. This is particularly true considering that Angelenos have elected the City Attorney to represent the City's litigation interests.

Democracy is not advanced by a federal court upsetting the carefully crafted provisions of the Brown Act, and forcing witnesses to disclose information from closed sessions in direct violation of that Act. *See* Cal. Gov. Code § 54963(a) ("A person may not disclose confidential information that has been acquired by being present in a closed session authorized by Section 54956.7, 54956.8, 54956.86, 54956.87, 54956.9, 54957, 54957.6, 54957.8, or 54957.10 to a person not entitled to receive it, unless the legislative body authorizes disclosure of that confidential information."). And it is certainly not advanced under the circumstances here, where the Brown Act issues are being litigated in the *CANGRESS* litigation and multiple serious privileges are at stake.

**4.** The Court suggested that the City sought to use privilege "as a sword and a shield" because it asserted that the encampment reduction plan was approved but objected to the Alliance's and Intervenors' attempts to probe into privileged discussions that resulted in that approval. Dkt. 1159 at 124:18–19. But the sword-and-shield argument involves "[a] party who affirmatively places its attorney-client communications at issue." *Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 353 (9th Cir. 2014). A party cannot, for example, assert an advice-of-counsel defense "while at the same time refusing to answer questions regarding relevant communications with counsel." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001). By contrast, the City has not put conversations with counsel at issue—it merely represented that the encampment reduction plan "was approved without delay." The City's representations of its client's approval are no more of a waiver of privilege than an attorney's announcement that her client has accepted a settlement offer or agreed to voluntarily dismiss their claims. In neither instance could a court probe into underlying conversations between the attorney and client regarding how the client arrived at the final decision. Any attempt to curtail that inquiry would be a proper invocation of the attorney-client privilege—not an attempt to use privilege as a sword and shield.

*   *   *

For these reasons, the City once again strenuously objects to the expanded contempt proceeding and urges the Court to reconsider its decision to expand the contempt proceeding, or at least stay the expansion until the *CANGRESS* litigation, including any appeals, has fully concluded. At a minimum, the City requests that the Court stay any ruling that would direct witnesses to disclose confidential and privileged information acquired at the January 31, 2024 closed session of the City Council until the Ninth Circuit resolves the City's pending writ petition.

DATED: February 13, 2026

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theane Evangelis*
Theane Evangelis

*Attorneys for Defendant*
*CITY OF LOS ANGELES*