UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | |
|---|---|
| LA ALLIANCE FOR HUMAN RIGHTS, ET AL., | ) CASE NO: 2:20-cv-02291-DOC-KESx |
| | ) |
| | ) CIVIL |
| Plaintiffs, | ) |
| | ) Los Angeles, California |
| vs. | ) |
| | ) Thursday, April 23, 2026 |
| CITY OF LOS ANGELES, ET AL., | ) |
| | ) (1:32 p.m. to 1:46 p.m.) |
| Defendants. | ) (2:22 p.m. to 2:30 p.m.) |

STATUS CONFERENCE

BEFORE THE HONORABLE DAVID O. CARTER,
UNITED STATES DISTRICT JUDGE, PRESIDING

APPEARANCES:                SEE PAGE 2

Courtroom Deputy:           Karlen Dubon

Court Reporter:             Recorded; CourtSmart

Transcribed by:             Exceptional Reporting Services, Inc.
                            20079 Stone Oak Pkwy., Suite 1105-237
                            San Antonio, TX 78258
                            361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

EXCEPTIONAL REPORTING SERVICES, INC

2

APPEARANCES:


For Plaintiffs:          ELIZABETH A. MITCHELL, ESQ.
                         Umhofer Mitchell & King
                         767 S. Alameda Street, Suite 270
                         Los Angeles, CA 90021
                         213-394-7979


For Defendants:          BRADLEY J. HAMBURGER, ESQ.
                         POONAM KUMAR, ESQ.
                         TIM BICHE, ESQ.
                         Gibson Dunn & Crutcher
                         333 South Grand Avenue
                         Los Angeles, CA 90071
                         213-299-7000

                         LAUREN M. BRODY, ESQ.
                         Miller Barondess
                         2121 Avenue of the Stars
                         Suite 2600
                         Los Angeles, CA 90067
                         310-552-4400


For Intervenor:          SHAYLA R. MYERS, ESQ.
                         Legal Aid Foundation of LA
                         7000 S. Broadway
                         Los Angeles, CA 90003
                         213-640-3983

Special Master:          MICHELLE MARTINEZ

Also present:            JUSTICE TOM GOETHALS

3

**Los Angeles, California; Thursday, April 23, 2026; 1:32 p.m.**

--oOo--

THE COURT:  Okay.  Then this is Case No. 20-02291, LA Alliance for Human Rights versus the City of Los Angeles, et al.  And, counsel, just remain seated, but would you be kind enough to make your appearances beginning with plaintiff.

MS. MITCHELL:  Yes, good afternoon, Your Honor, Elizabeth Mitchell on behalf of plaintiff LA Alliance for Human Rights.

THE COURT:  Good afternoon.  And then the City please?

MS. KUMAR:  Good afternoon, Your Honor, Poonam Kumar, Bardley Hamburger and Tim Biche on behalf of the City.

THE COURT:  All right.  Thank you very much.  And the intervenors please?

MS. MYERS:  Shayla Myers on behalf of the intervenors.

THE COURT:  And the County please?

MS. BRODY:  Lauren Brody from Miller Barondess on behalf of the County of Los Angeles.

THE COURT:  Okay.  I received the docket yesterday, Docket 1224, as a result of the parties' extensive mediation efforts before the Honorable Andre Birotte, the parties have reached significant agreement as to many of the currently pending issues -- I'm sorry, pending disputes.

Specifically, the parties have reached agreement regarding the data monitor and the scope of the City's reporting obligations under 7.1 of the settlement agreement. The parties' agreement is subject to the approval of the City Council, of course.

In addition to these areas of agreement, the parties continue to negotiate in good faith toward a potential resolution of additional disputes between the parties, including the City's shelter creation and encampment reduction obligations.

The parties have discussed a potential framework for these additional agreements, but need additional time to reach and document this broader agreement.  The parties are hopeful that they can conclude these negotiations by early next week. The City plans to present the parties' agreements to the City Council as early as April 29th.

I yesterday I responded that the Court has received and reviewed this joint status report.  I think I did that within ten minutes of you docketing it.

**MS. KUMAR:**  We were all impressed, Your Honor.

**THE COURT:**  Well, no, or vice versa.  And the Court appreciates and commends the parties' resolution of many of these issues before it.

We're proceeding with the hearing as scheduled for April 23rd at 1:30 in courtroom 1 and I am looking forward to

hearing whatever you choose to present to me today.  And counsel's comments as to the scope of the resolved settlement and the timing and final approval of the settlement or settlements, because right now you may have on the table April 29, it sounds like 7.1, 7.2, but I'll wait from you in just a moment.

And if all issues are not resolved, then I will proceed to solicit counsel's thoughts concerning a forthcoming hearing and how the Court should proceed.  So I'm really asking, you know, for your wisdom.  Right now I've scheduled this for May 8th but -- and Mr. Szabo is back on the stand if Daniel Garrie is flying back in.  By the same token, if you're making progress, I certainly don't want to be an obstacle.

But before I speak to each of you, I'd like to ask LAHSA to come forward for just a moment.  Is Gita here?  I want to start with complimenting you, because you've responded quickly to my request on the last occasion and I know you're trying to be at least transparent and accountable or more so. And I want you to hear that.

Any progress we can make, I think we have to ask ourselves always the question, what's good for the citizens of Los Angeles including the homeless and are we making progress, in terms of accountability, transparency and even increasing the services and the numbers, that's the ultimate question.

So if there's anything that you'd like to say I would

**6**

welcome that.  I've read your report.  I want to thank counsel for submitting it to me.  I got it last night.  I read it immediately.  I think I've absorbed most of it, but I'll turn that over to you, Gita, and thank you for being here.

MS. O'NEILL:  Sure.  Thank you for having us, Interim CEO Gita O'Neill.  We're happy that the Court sees that we're really -- LAHSA's really trying to be transparent.  We're at a crossroads with our funding streams, with our personnel, we are doing several layoffs, but we are still trying to maintain the same, you know, a good level of quality and transparency for all the County and the City.

We're working closely with the County on the transition and on the recoupment of the Measure H dollars.  This recoupment process will go to the County after June 30th, but until then, we will keep working with the County to make sure that the money's accounted for.

THE COURT:  Gita, I have just two quick questions --

MS. O'NEILL:  Uh-huh.

THE COURT:  -- and I'm not going to go any further today.  Help me understand, because in June of 2026 there was 30.4 million still owing from the initial 50.8 million.

MS. O'NEILL:  Uh-huh.

THE COURT:  And although that's a part of the concern that the Court had, I focused on this early on, that 28.4 million is still owed, does that mean that the 2 million that

was collected in about three months came from 20 providers and I'm trying to understand, is that on track with what you expect to finally recoup this money?

**MS. O'NEILL:**  You know, I think that we will be recouping it at a faster rate.  I do think that -- these are the same providers that are having some monetary shortfalls due to some of the accounting practices --

**THE COURT:**  Right.

**MS. O'NEILL:**  -- that we have given the advances.  I think that's all been in the media.  So I think we're -- the County and LAHSA are trying to work in partnership with those providers so they don't -- they still are able to provide services, even though through financial strain.

So I think, you know, really the County is leading this and I think they're trying to lead it in a way that they get the money back, but that we make the providers still whole so they can still operate.  So I think there's that balance. But I do believe the County will be able to recoup all of this money.

**THE COURT:**  Okay.  And that's all that transition that will take place in July.

**MS. O'NEILL:**  Yes.

**THE COURT:**  Or is it June?

**MS. O'NEILL:**  June 30th, Your Honor.

**THE COURT:**  June 30th, thank you.

**8**

The other and only other question I had, let's see, I wrote this down. What was -- do you have a copy of Question 9? Mia, do you have a copy of Question 9?

Give me just one second. I wrote down a couple of questions, but there's only two that I want to ask you today.

The last time we left, I'd asked for -- well, I've got it memorized. I asked how that recoupment was being or was taking place. Were these in kind services, cash back, I didn't expect cash back, but I wasn't certain if they were in kind services that were being counted towards the recoupment, I expect that they were. And how is that being measured? How is that in kind service, so I don't know if this $2 million what's cash versus in kind service and what the in kind services look like.

MS. O'NEILL: It's my understanding that it's money back, Your Honor.

THE COURT: Money back?

MS. O'NEILL: I can double-check that, but it's my understanding that it's money back.

THE COURT: Well, come on over, just -- she's double-checking with you, counsel. Money back?

UNIDENTIFIED: No, that is correct, it's --

THE COURT: So it's actual cash back?

UNIDENTIFIED: Yeah. There's no in kind --

MS. O'NEILL: Absolutely. Because it would be really

difficult to measure that, so it's just money back.

THE COURT:  Let me just start with thank you because you've inherited a heck of a job part-way through, Gita.

MS. O'NEILL:  Thank you.

THE COURT:  Easier way to become the CEO of something, but --

MS. O'NEILL:  Interim CEO, yes, thank you, Your Honor.

THE COURT:  Yeah, I recognize that, but yeah.

MS. O'NEILL:  Sorry, it's a tough job.

THE COURT:  Welcome to the whirlwind, right?

MS. O'NEILL:  Thank you, I know.

THE COURT:  No, but your efforts are being recognized and I want you to hear that.  Would you extend that back to your staff, I really appreciate the promptness of this.  I have other questions, but I don't want to ask them now.

MS. O'NEILL:  Okay.  We really appreciate that and I will pass that to our staff who under immense pressure and anxiety, they will appreciate it, thank you.

THE COURT:  Justice Goethals is going to continue to get together with you.  I want to make certain that there's a smooth transition in June, that the County's picking this up because I'm going to come right back to this recoupment of the $50.8 million.  Okay?

MS. O'NEILL:  Absolutely.

**THE COURT:** Okay. Well, thank you. The last time I was impolite, I kept you at the very end and you were politely sitting here --

**MS. O'NEILL:** That's okay.

**THE COURT:** -- let's get you out of here. You've got better things to do.

**MS. O'NEILL:** It was great testimony to watch. I appreciate it.

**THE COURT:** Okay. Thank you very much.

**MS. O'NEILL:** Thank you, Your Honor.

**UNIDENTIFIED:** Thank you, Your Honor.

**THE COURT:** Okay. Let me turn to the City and LA Alliance. Why don't I turn the lectern to each of you as well as the intervenors. Tell me what you choose to tell me to begin with, because I may have absolutely no questions except what I call wisdom questions, and that is, what do we do in light of what you may know without disclosing necessarily to me where you're at --

**MS. KUMAR:** Yep.

**THE COURT:** -- just in terms of that May 8th date, because right now that's the date in place.

**MS. KUMAR:** So, Your Honor, I think I can speak on behalf of all three, but obviously my colleagues will correct me if I get anything wrong, but we did discuss this before this moment.

**11**

The City and the Alliance and the intervenors have been discussing frequently with Judge Birotte. I think I spoke to Ms. Mitchell every day this week so far. We've been making substantial progress.

We do, as we advised the Court, have an agreement on 7.1, 7.2, data monitor issues and we are still talking about a broader scope agreement. All of that is subject, as the Court observed, to the approval of City Council and we -- our intention is to present one deal to the Council. So the goal was to get, if we can come to an agreement on the broader deal, to present the entire package to Council as soon as Wednesday, the 29th of April.

That is the current plan, Your Honor. We have made substantial progress. There are still some issues we're talking about, but we are actively discussing those issues and hope to resolve them.

To your second question about the scope of the hearing scheduled for May 8th, we are -- I would like to say optimistic that regardless of how these last few issues come where they land, that there won't be a need for further testimony.

I can't guarantee that to the Court right now --

**THE COURT:** That's fine.

**MS. KUMAR:** But we are optimistic that there won't be a need for further testimony.

So unless my colleagues disagree, I would recommend that we -- you can either hold it abeyance or we can revisit once we go to counsel or take it down whatever the Court prefers, but I don't anticipate we will be hearing witness testimony on the 8th.

THE COURT:  I'm going to suggest a couple of things, that we simply keep the May 8th date in case.

MS. KUMAR:  Sure.

THE COURT:  Number two, if you don't have a universal resolution, do you have a partial resolution with 7.1 and 7.2?

MS. KUMAR:  We are hopeful that we do.  It does -- I mean, obviously it has to go to Council and Council --

THE COURT:  Right.

MS. KUMAR:  -- has to approve and there are some issues, you know, inherent in that, but I think we are -- hopeful that that will -- that partial resolution will move several issues pending before the Court.

THE COURT:  I'd like to take just a couple of moments with both Justice Goethals for a moment and Michelle.  But do you have anything that you'd like to add on behalf of LA Alliance?

MS. MITCHELL:  No, Your Honor.  I think -- I do think that keeping the May 8th hearing on calendar for now is the right call.  I am also hopeful, as counsel stated, that we will reach at minimum a -- what we're calling the skinny deal, but

we're also I think hopeful and all signs are pointing to a broader deal that will be presented to Council on the 29th.

As far as timing issues, I did just want to notify the Court I am in trial in front of Judge Bernal starting on May 12th.  So to the extent, you know, .01 presents --

**THE COURT:**  No, you'll be there on May 12th --

**MS. MITCHELL:**  -- JS (phonetic), we do continue --

**THE COURT:**  -- right?

**MS. MITCHELL:**  What's that?

**THE COURT:**  You're in trial on May 12th.

**MS. MITCHELL:**  Correct, starting May 12th.

**THE COURT:**  You'll be there, period.

**MS. MITCHELL:**  So May 8th, no problem at all, I just wanted to give the Court notification in case we were looking at subsequent dates.

**THE COURT:**  I'll work with Judge Bernal, I'll make sure his trial goes forward.  He won't -- there won't be interference.

**MS. MITCHELL:**  Thank you, Your Honor.

**MS. KUMAR:**  I'm sorry, Your Honor, one note that I should make for the record on May 8th is if -- to the degree Mr. Szabo is needed, that will be a challenging date for him.

**THE COURT:**  Okay.

**MS. KUMAR:**  I think as everyone knows, the budget process and the Council is ongoing, and there's a chance it

will bleed into May 8th.  And so is he asking to advise the Court that that would be challenging.  And so we can talk about it if we get closer to that date --

THE COURT:  Okay.

MS. KUMAR:  -- Your Honor, but I did want to flag that.

THE COURT:  Let's not raise a problem unless it occurs.  If so, I've got a morning calendar also, so I'd start in the afternoon and I can go late and not interfere with the Council.

Shayla, on behalf of the intervenors, do you have any thoughts?

MS. MYERS:  Nothing more to add.  Nothing more to add, Your Honor.

THE COURT:  Could I have -- then if you don't, could I have just a few moments just to talk to the Special Masters for both the County.  Does the County have any input?

MS. BRODY:  No, Your Honor, thank you.

THE COURT:  Okay.  Give us a few moments.  Why don't you go get a cup of coffee and why don't we see you in 20 minutes, okay?  Thank you very much.

**(Recessed at 1:46 p.m.; reconvened at 2:22 p.m.)**

THE COURT:  Go on the record.  Counsel, have a seat. By the way, any time that you need to talk to each other, I'm at your disposal.  In other words, ten minutes doesn't mean ten

minutes.  So if you're having a conversation that's substantive, please.

I want to make sure I avoid any public embarrassment or potential embarrassment and there's no surprises, because eventually whatever you're agreeing upon if you finally reach agreement, it's coming to the Court.

And Judge Birotte's available, he may not be in the best of mood this afternoon, he had some teeth pulled this morning but he's upstairs and if you need to talk to him.  And I really want to make certain that counsel and the Court are on the same page, because it caused a little bit of tension amongst the parties I think on the last occasion concerning the scope.

So I want to understand what motion the City Council will hear and for approval on April 29th regarding the monitor. To be clear, the scope of the monitor's work must be consistent with what the parties agree to in their settlement agreement and what the Court has previously required of the monitor.

So I'm really asking for your input, so we don't get in a situation where if the Council approved it, there was a concern later on about the scope.  And so take your time with that, talk to each other.  But we got into an issue last time over that and I'd like to head that off if possible.

**MS. KUMAR:**  Your Honor, you're asking about the scope of work of the 7.2, Your Honor?

**16**

THE COURT:  Yes.

MS. KUMAR:  I believe and obviously all counsel should correct me if I'm wrong, I think it tracks pretty closely what the Court outlined the last time we had --

THE COURT:  Okay.

MS. KUMAR:  -- this issue.  And so -- and the parties have extensively discussed it.  But do you --

THE COURT:  Why don't you two, talk amongst yourselves for a moment, don't -- have that conversation.  Shayla, why don't you join in this also just to be certain.

And you understand, folks, I don't want this going to the Council and then coming back if we don't have a pretty clear understanding of the settlement and what the Court had previously ordered.

(Pause)

MS. KUMAR:  Your Honor, I do believe it tracks what the Court said, but let us continue to think about ways that we can head this issue off at the pass and continue to talk amongst ourselves about how we're able to resolve the Court's concern, which we understand.  I think we appreciate it, that there isn't a conflict --

THE COURT:  Okay.

MS. KUMAR:  -- if the Council approves something and the Court sees it differently.  Let us see what we can do.

THE COURT:  What I've been careful about, I don't

know if you've actually drafted this versus with Judge Birotte --

MS. KUMAR: Yeah.

THE COURT: -- I don't know if it's in a concrete form some place --

MS. KUMAR: It is, Your Honor. And I think what we're thinking about is whether or not there's a way to get it before the Court so that the Court can see it before the Council.

THE COURT: That's what I'm wondering also.

MS. KUMAR: Yeah, we just need to run that down and make sure, and see if we can sequence it appropriately. Totally understood, Your Honor.

THE COURT: It's really courtesy, I don't want any surprises --

MS. KUMAR: Nor do we, Your Honor.

THE COURT: -- if we've got an agreement I don't want that to be a public embarrassment where the Court might come back and start questioning certain portions. And last time we ran into some tension concerning that.

MS. KUMAR: Absolutely, Your Honor. I think we can obviate this concern.

THE COURT: So give me -- so why don't all of you talk and tell me when I would be looking at -- first of all, here's what I'm absorbing and then correct me.

I'm absorbing that you've reached an agreement on the monitor which is 7.2. I'm absorbing that you've reached agreements on 7.1. I'm only raising the scope of the monitor pursuant to your settlement agreement and the Court's ruling in 7.2.

And in doing that, I don't want this to go to the Council if there's a disagreement or a concern or we haven't asked a couple of questions that there is, and then have the Court start asking those questions after, in good faith that counsel considers it. And then there's the surprise of the Court coming back on the back side, I'd like to head off that tension.

**MS. KUMAR:** I think there's a way we can get it to the Court so that the scope of work, Your Honor, so that Your Honor can observe with the others to be able to make sure that those questions are fully considered and thought through. So I think we'll be able to work through that. I'm confident we'll be able to do that.

**THE COURT:** And you go to the Council on April 29th.

**MS. KUMAR:** That's the current plan, Your Honor.

**THE COURT:** And you minimally go with 7.1, 7.2 and I've heard you're working -- and no representation --

**MS. KUMAR:** Potentially. Potentially broader.

**THE COURT:** -- but you're trying to work on a more universal agreement, whether you get there or not. Could I

suggest to you and then you discuss this, because I'm looking for your wisdom, a status report by May 4th at noon and that way if we're back to Mr. Szabo, he's got some ability with his Council, Daniel Garrie's up in northern California working with two federal courts, I don't know what his scheduling is --

MS. KUMAR:  That seems evidently reasonable, Your Honor.

THE COURT:  -- and I think as a courtesy, you know.

So how do we get -- why don't you talk amongst yourselves how this gets to the Court so that there are no surprises, there's no embarrassment to the Council.

MS. KUMAR:  Yeah, absolutely, Your Honor.  I think we will -- the parties will talk and we'll find a way to get to you the scope of work.

THE COURT:  Why don't you talk now.  I'm here.  Yeah, you know, discuss, go to the back, I'm going to go get a cup of coffee.

MS. KUMAR:  I think we won't need more than two minutes, Your Honor.

THE COURT:  And how do we get back to the Court so that we don't have that tension.  And by the way, folks, that way the Council knows we're -- and, counsel, also that way the Council knows we're working in good faith with that, and we're not trying to --

MS. KUMAR:  Your Honor, if it's okay with Your Honor,

I think our plan would be to judge -- Judge Birotte has it, but authorize Judge Birotte to provide to you the scope of work that the parties have agreed upon so that the Court can review it and everyone can review and raise any questions and then we can continue to talk about it if we need to.  I think that's a prudent way to proceed, if that's okay with the Court.

THE COURT:  Would tomorrow be comfortable so I could look at it over the weekend?

MS. KUMAR:  Today.  We can do it today, Your Honor. We can send it to -- no later than tomorrow at noon, Your Honor, just to give us time, but we have the written agreement, but just so counsel can align, but if not earlier we'll get it to Judge Birotte for his transmission and a May 4th noon status report is fine with the parties, Your Honor.

THE COURT:  First of all, thank you, that would give me the weekend.  You know what our calendars look like on a Monday.  So that would give me the weekend.  And if we could then schedule a status report by May 4th and at that time if we reach a universal agreement, that resolves it, then we're going to call of the May 8th date.  If not, then we ought to be courteous to Mr. Szabo, Garrie, Michelle, anybody else that we have.

Okay.  Listen, do you have any more input for me? Let me start with LA Alliance.

MS. MITCHELL:  Not at this time, Your Honor.

**21**

THE COURT:  Huh?

MS. MITCHELL:  No.  Nothing further, thank you, Your Honor.

THE COURT:  No?  Okay.  Let me go to the City.

MS. KUMAR:  No, Your Honor.

THE COURT:  Okay.  Thank you.  Intervenors?

MS. MYERS:  No, thank you.

THE COURT:  The County?

MS. BRODY:  No, thank you, Your Honor.

THE COURT:  Why don't you go home and have a wonderful day then.  Thank you for your input, I really appreciate it.  And by the way, a compliment to all of you, whether you finally reach the ultimate, the universal agreement, you've gotten a long way with a partial agreement. You need to hear the Court's really commending you for the effort.

UNIDENTIFIED:  Thank you, Your Honor.

THE COURT:  Thank you very much.

    (Proceedings concluded at 2:30 p.m.)

* * * * *

EXCEPTIONAL REPORTING SERVICES, INC

22

## CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    April 25, 2026

            Signed                                          Dated


*TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC